# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **JOHNNY M. HUNT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. _____** |
| ) | |
| **SOUTHERN BAPTIST CONVENTION;** ) | **JURY TRIAL DEMANDED** |
| **GUIDEPOST SOLUTIONS LLC; and** ) | |
| **EXECUTIVE COMMITTEE OF THE** ) | |
| **SOUTHERN BAPTIST CONVENTION,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

1.  This is a case about defamation and invasion of privacy.

2.  The Plaintiff is Dr. Johnny Hunt – or, as his congregation affectionally called him, "Pastor Johnny." Pastor Johnny is a dedicated servant who has worked his entire adult life to help other people. He has been extraordinarily successful, eventually becoming the first elected Native American to hold the office of President of the Southern Baptist Convention (the "SBC") – a cooperative of almost 50,000 Southern Baptist churches across the country.

3.  But Pastor Johnny has also made mistakes in his life. In particular, in 2010 – after his term as SBC President had ended – Pastor Johnny had a brief, inappropriate, extramarital encounter with a married woman. Some of the precise details are disputed, but at most, the encounter lasted only a few minutes, and it involved only kissing and some awkward fondling. It is undisputed that Pastor Johnny abruptly ended the encounter, both Pastor Johnny and the woman disclosed the encounter to their spouses, and they jointly sought counseling and forgiveness.

1

4.     This was a private failing by Pastor Johnny and the woman involved, and the story should have ended there. But it didn't.

5.     Instead, in May 2022, more than a decade after Pastor Johnny's service as the SBC President had ended, the SBC was facing a public relations nightmare. Like the Catholic church before it, the SBC was facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches for years, enabling perpetrators to move from church to church with impunity.

6.     As an example, in 2019, the Houston Chronicle published a six-part series of articles on the SBC entitled "Abuse of Faith." The first article ran under the headline: "20 years, 700 victims: Southern Baptist sexual abuse spreads as leaders resist reforms," and it included a collection of "mug shots" for 218 people who were said to have "worked or volunteered in Southern Baptist churches and **were convicted of or pleaded guilty to sex crimes**." (Emphasis added.)

7.     Pastor Johnny had nothing to do with these awful allegations. Nonetheless, the SBC, its leadership, and the firm hired for "damage control" – Defendant Guidepost Solutions LLC ("Guidepost") – decided to use Pastor Johnny as their scapegoat.

8.     On May 22, 2022, Guidepost, the SBC and its leadership publicly released a report that purported to focus on whether the SBC's executive leadership had inappropriately responded to allegations of child and other sexual abuse. But the first name mentioned in the report was Pastor Johnny – not because he was accused of ignoring reports of child or other abuse and not because he was accused of some similarly heinous crime.

9.     Instead, Pastor Johnny was named because the woman with whom he had the brief, extramarital encounter in 2010 had disclosed that encounter to the Guidepost investigators.

2

10.     The encounter involving Pastor Johnny had nothing to do with the types of reports that led to Guidepost's engagement. It should not have been included in Guidepost's report. Indeed, it should not have been published at all.

11.     Defendants' decision to feature the allegation against Pastor Johnny in their public report was a strategic decision to deflect attention from the SBC's historical failure to take aggressive steps to respond to reports of child sex abuse and other sex crimes in its past. By focusing on the allegation against Pastor Johnny – an allegation by an adult woman that involved noncriminal conduct – and by then taking aggressive action against Pastor Johnny, the Defendants sought to create the appearance that the SBC has learned from its previous mistakes and is now working to protect victims of sex crimes.

12.     But by publishing the allegation against Pastor Johnny in a report purporting to focus on "child molesters and other abusers," Defendants intentionally and maliciously created the false impression that Pastor Johnny is a sex criminal. As recently as December 5, 2022, the SBC's president reinforced this false impression by publishing a tweet in which he falsely asserted that the allegations against Pastor Johnny would "constitute a felony in any jurisdiction in the US."

13.     Pastor Johnny's life forever changed when the Defendants' publicly released their report. He lost his job; he lost income from speaking engagements; and he lost income from publishing opportunities. His losses are substantial, and Defendants should be held liable.

**The Parties**

14.     Plaintiff Johnny M. Hunt ("Pastor Johnny") is an individual who is domiciled in Florida. For diversity purposes, Pastor Johnny is a citizen of Florida. At the time the report at issue in this case was first published, Pastor Johnny was a resident and citizen of Georgia.

3

15.     Defendant Southern Baptist Convention ("SBC") is a corporation formed by a special act of the Georgia General Assembly in 1845. SBC maintains its principal place of business in Tennessee. For diversity purposes, SBC is a citizen of both Georgia and Tennessee.

16.     Defendant Guidepost Solutions LLC ("Guidepost") is a New York limited liability company with its principal office in New York. Upon information and belief, Guidepost's sole member is Solutionpoint International, Inc., a New York corporation with its principal place of business in New York. For diversity purposes, Guidepost is a citizen of New York.

17.     Defendant Executive Committee of the Southern Baptist Convention (the "Executive Committee") is a Tennessee corporation with its principal place of business in Tennessee. For diversity purposes, the Executive Committee is a citizen of Tennessee. The Executive Committee acts on behalf of the SBC between the SBC's annual meetings and manages the SBC's day-to-day operations.

## Jurisdiction and Venue

18.     This Court has original subject matter jurisdiction over this civil action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

19.     Venue in this court is appropriate because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## Pastor Johnny's Background

20.     Johnny Hunt was born in North Carolina in 1952.

21.     Pastor Johnny is a member of the Lumbee Tribe of North Carolina.

4

22.     Pastor Johnny had a difficult upbringing – his father left the family when Johnny was 7 years old; Johnny dropped out of high school at age 16; and he became an alcoholic and gambler.

23.     As a young adult, Johnny went through a dramatic transformation. After converting to Christianity, Johnny gave up alcohol and gambling, earned degrees from Gardner-Webb College and Southeastern Baptist Theological Seminary, and entered the ministry.

24.     While attending college, Pastor Johnny served as pastor at Lavonia Baptist Church in Gaffney, South Carolina. From there, he entered the seminary while also pastoring at Falls Baptist Church in Wake Forest, North Carolina.

25.     After about six years of pastoring, he became pastor at the Long Leaf Baptist Church in his old hometown, the church where he had been saved all those years earlier.

26.     Pastor Johnny has an incredible talent for leading and growing churches. When he joined Long Leaf Baptist Church, it was about to close its doors. Five years later, under Pastor Johnny's leadership, the church was thriving.

27.     Pastor Johnny eventually joined the First Baptist Church in Woodstock, Georgia, where church membership expanded from around 1,000 to more than 19,000, becoming one of the largest churches in the United States.

28.     In 2008, Pastor Johnny was elected by the members of the SBC to serve as its president for a two-year term. That term ended in June 2010.

29.     Over the years, Pastor Johnny was a sought-after speaker and author. He was a noted speaker at state and national SBC conferences and conventions. From 2017 until May, 2022, Pastor Johnny trained many pastors, staff, and lay leaders in evangelism and leadership.

## Allegations of Sexual Abuse Against the SBC

30.     In recent years and following the sexual abuse scandals in the Catholic church, questions were raised as to whether the SBC and its cooperating churches had appropriately handled historical allegations of sexual abuse.

31.     For example, in early 2019, the Houston Chronicle and the San Antonio Express-News published a six-part series entitled "Abuse of Faith." The first part of the report was entitled "20 years, 700 victims: Southern Baptist sexual abuse spreads as leaders resist reforms." The newspaper featured many rows of headshots and mugshots of men who had been accused of sex crimes over the years.

32.     The newspaper report focused heavily on alleged crimes committed against children. For example, the first few paragraphs of Part I focused on a woman who accused her former pastor of having started molesting her when she was 14 years old and ultimately impregnating her when she was 18.

33.     The article then continued: "Many of the victims were adolescents who were molested, sent explicit photos or texts, exposed to pornography, photographed nude, or repeatedly raped by youth pastors. Some victims as young as 3 were molested or raped inside pastors' studies and Sunday school classrooms."

## SBC's Engagement of Guidepost

34.     In response to the uproar created by the above newspaper reporting, including allegations that the SBC had not done enough to protect children and other congregants from sexual predators, the SBC engaged Guidepost in 2021 "to conduct an independent investigation into the Executive Committee . . . and an audit of the procedures and actions of the Credentials Committee under the terms and conditions set forth in [the] engagement agreement . . . ." A true and accurate copy of this "Engagement Agreement" is attached to this Complaint as **Exhibit A**.

35.     Although the SBC was Guidepost's client, the SBC authorized Guidepost to "act under the leadership and take direction and guidance from the SBC Task Force appointed by President Litton in July 2021, while engaging with the Committee on Cooperation of the Executive Committee" as described in the Engagement Agreement.

36.     The SBC Task Force acted as an agent for the SBC.

37.     The Committee on Cooperation of the Executive Committee was "headed by the President of the SBC." The remaining four members were members of the Executive Committee, with two being chosen by the Executive Committee itself and two being chosen by the SBC Task Force. The Committee on Cooperation of the Executive Committee acted as an agent for both the SBC and the Executive Committee.

38.     Guidepost was charged with investigating the following topics: allegations of abuse by SBC Executive Committee members; mishandling of abuse allegations by SBC Executive Committee members between January 1, 2000, and June 14, 2021; allegations of mistreatment of sexual abuse victims by SBC Executive Committee members from January 1, 2000, to June 14, 2021; patterns of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021; and resistance to sexual abuse reform initiatives from January 1, 2000, to June 14, 2021.

39.     The SBC and Guidepost agreed that the Guidepost report would be published to the general public upon completion.

40.     The Engagement Agreement provided the SBC Task Force and the Committee on Cooperation of the Executive Committee with the opportunity to review the draft factual information contained in Guidepost's report for factual accuracy prior to its publication. Specifically, the Engagement Agreement stated: "For the sole purpose of ensuring the factual

7

accuracy of its report, Guidepost will provide a draft of any factual information contained in the

report to the Task Force and the Committee on Cooperation 35 days prior to submitting it to the

Task Force. The Committee on Cooperation may review the draft with Guidepost together with

any supporting documents and/or information, in order to confirm the accuracy of the factual

information presented in, relied upon, or related to matters and/or issues contained in the draft

Report. Guidepost shall allow the Committee on Cooperation five (5) calendar days to review

and dispute the factual information presented in, or relied upon, and/or related conclusions

reached in the draft Report, and to provide supplemental documents and/or information to

Guidepost."

41.     The Engagement Agreement provided that Guidepost would then publicly release

the final report resulting from its investigation: "A written report will be made public in its

entirety prior to the 2022 SBC Annual Meeting."

42.     The SBC agreed to indemnify Guidepost for any actions, judgments, or claims

against Guidepost arising out of the Engagement Agreement, subject to certain exceptions,

including a final adjudication that Guidepost's actions were negligent, tortious, or beyond the

scope of the Engagement Agreement.

43.     The SBC paid at least $2 million to Guidepost for the Report.

### The Initial Defamatory Statements

44.     On May 22, 2022, the Defendants publicly released the Report of the Independent

Investigation: The Southern Baptist Convention Executive Committee's Responses to Sexual

Abuse Allegations and Audit of the Procedures and Actions of the Credentials Committee (the

"Report"). A true and accurate copy of the Report is attached to this Complaint as **Exhibit B**.

45.     The first sentence of the Executive Summary set the tone for the Report: "For

almost two decades, survivors of abuse and other concerned Southern Baptists have been

8

contacting the [SBC Executive Committee] **to report child molesters and other abusers** who were in the pulpit or employed as church staff." (Emphasis added.).

46.     In preparing the Report, Guidepost conducted hundreds of interviews. It collected over five terabytes of data. And it spent thousands of hours on its investigation.

47.     And after all of that work and money, it did not find a single instance where a member of the SBC's Executive Committee had been accused of committing sexual abuse during his or her time on the Executive Committee.

48.     In other words, Guidepost's response with respect to the first task of its engagement – determining whether members of the SBC's Executive Committee had been accused of sexual abuse during their tenures – should have been a flat "no."

49.     But Guidepost refused to provide such a response. Maybe Guidepost was embarrassed by the amount of time and money it had spent on the engagement. Or maybe Guidepost thought that such a finding would inflame rather than ameliorate the public pressure on the SBC. Whatever the reason, Guidepost decided it needed a scapegoat. It needed to uncover an "abuser." It needed a "bombshell" – something to justify its $2 million fee.

50.     Despite the title's suggestion that the Report was limited to the Executive Committee's response to sexual abuse allegations and the scope set forth in the Engagement Agreement, and despite the Executive Summary's lead-in, the very first name mentioned in the Report was not the name of some child molester or convicted sexual abuser. Instead, the very first name mentioned was Pastor Johnny. At the top of the second page of the Executive Summary, the Report states: "During our investigation, an SBC pastor and his wife came forward to report that SBC President Johnny Hunt (2008-2010) had **sexually assaulted** the wife on July 25, 2010. We include this **sexual assault allegation** in the report because our

investigators found the pastor and his wife to be credible; their report was corroborated in part by a counseling minister and three other credible witnesses; and our investigators did not find Dr. Hunt's statements related to the sexual assault allegation to be credible." (Emphasis added.)

51.     The Report even labelled the wife as a "survivor," which the Report defined as a person "who **actually suffered** at the hands of SBC clergy . . . ." (Emphasis added.)

52.     These statements were unequivocally false; they were reckless; and they have caused substantial harm.

53.     First, Pastor Johnny has never sexually assaulted anyone. Pastor Johnny acknowledges that in 2010 – after his term as SBC's President had ended and when he was no longer a member of the Executive Committee – he engaged in consensual, limited contact with the wife of an SBC pastor. The wife – not Pastor Johnny – initiated the encounter. And Pastor Johnny ended the encounter after a very brief period when he realized that his acquiescence to the encounter was a sin. He abruptly stepped back, asked for forgiveness, and left the room. There was no assault or nonconsensual activity of any kind. Pastor Johnny did not "groom" the accuser; he did not initiate the encounter; he did not "force himself" on the wife; and he did not "violently" kiss her. The Report's statements to the contrary were false.

54.     Moreover, even if one were to take the accuser's word at face value, her allegations against Pastor Johnny would not amount to a sex crime under the laws of Florida, the site of the encounter. Yet that was the clear, unambiguous implication from the accusations in the Report.

55.     As set forth above, the first sentence of the Report states that it concerns "child molesters and other abusers." The Report refers to the accuser as a "survivor." Several times throughout its text the Report uses the term "sexual assault" to refer to a sex crime. But the

accusations against Pastor Johnny – even if true, which they are not – would not qualify as a sexual assault crime under the laws of Florida. Thus, the assertion that Pastor Johnny had been accused of "sexual assault" was objectively and recklessly false.

56. Second, the statement that the accuser's allegations were "corroborated in part" by four witnesses was also false and misleading. The Report does not contain a single account by any alleged "witness" that would support a claim for sexual assault. Only one of the alleged corroborators – the counselor – talked to the accuser directly, and he stated that the contact was limited to kissing and touching over her clothing. He also said that he understood the encounter to have been "consensual." Far from "corroborating" the accuser's account, the counselor directly contradicted her key allegations.

57. The other three "witnesses" are similarly unsupportive. All of them talked only to the accuser's husband and were therefore themselves relying on hearsay for their own hearsay accounts. Moreover, none of them said that the encounter was nonconsensual. Again, these witnesses provide no corroboration on the key issue of consent.

58. Third, the decision to include this accusation against Pastor Johnny in the Report was outrageous. Guidepost's engagement was limited to allegations of abuse against members of the Executive Committee, mishandling of prior abuse allegations, attempts to intimidate victims, and resistance to sexual abuse initiatives. The allegations against Pastor Johnny do not fall within any of these descriptions. He was not a member of the Executive Committee at the time of the encounter or at any time thereafter. Indeed, even before the encounter when Pastor Johnny was the SBC's elected President for two years, he was only nominally a member of the Executive Committee and was not involved in its day-to-day activities, which were instead run by its permanent staff. Moreover, no contemporaneous accusations were made against Pastor Johnny,

so there was no possibility for any such accusations to have been mishandled, and Pastor Johnny is not alleged to have resisted any sexual abuse initiatives.

59.     Thus, the inclusion of the allegations against Pastor Johnny in the Report was gratuitous and appears to have been done in an effort to cause him personal anguish and harm. This conclusion is buttressed by the fact that the allegations against Pastor Johnny are highlighted on the second page of the Report with a full paragraph and its own heading and the fact that the Report dedicates approximately 13 pages out of the 288-page report to the allegations against him. There is no reasonable justification for the disproportionate focus on Pastor Johnny given the context of the Report.

60.     Moreover, the accuser's account is incredible on its face, further demonstrating the reckless nature of the decision to publish and endorse it. For example, the accuser alleges that during the time period leading up to the encounter, Pastor Johnny gave "an unusual amount of attention" to her, made unwelcome comments about her appearance that were of a "sexual nature," and touched her in "unwelcome" ways such as by "kissing her hand." She even claims that during a short vacation with her husband, Pastor Johnny kissed her on the forehead and made "inappropriate comments about" her figure. Yet despite this purportedly "unwelcome" and "inappropriate" behavior, the accuser and her husband claim that they affirmatively reached out to Pastor Johnny for help in renting a condo for her to use alone in the same complex; that they expressly asked Pastor Johnny to "keep an eye out" for the accuser when she arrived; that the accuser then affirmatively contacted Pastor Johnny when she arrived by sending him a text; that she invited him to her balcony to escape the sun; that she willingly put her feet on his knee; and that she willingly accompanied him into her condo so that they would not be seen. None of this conduct is consistent with the accuser's story that Pastor Johnny had been "grooming" her with

inappropriate and unwelcome advances prior to the Florida encounter. Had that been the case, a reasonable person would have expected the accuser to have attempted to avoid Pastor Johnny, not to have sought him out to spend secluded time together.

61.     Despite the incredible nature of her story, the Defendants endorsed and adopted the accuser's allegations against Pastor Johnny. Among other statements, the Report refers to the accuser as a "Survivor." Not only does use of this term communicate that she did, in fact, "survive" a sexual assault, but on page 5 of the Report, Defendants made this point explicit by defining "survivors" as "those persons who **actually suffered** at the hands of SBC clergy or SBC church staff or volunteers." (Emphasis added.). By using the term "survivor" to refer to the accuser, the Report expressly adopted her version of events as true, thereby giving her accusations the Defendants' imprimatur.

62.     Finally, there was no good reason for Defendants to publish the accusations against Pastor Johnny at all, let alone to have included them in a public report detailing abhorrent instances of child molestation and other incidents of sexual crimes. The decision to smear Pastor Johnny's reputation with these accusations has led him to suffer substantial economic and other damages. He has lost he job and income; he has lost current and future book deals; and he has lost the opportunity to generate income through speaking engagements.

63.     The SBC and the Executive Committee had a chance to prevent publication of the story against Pastor Johnny. Under the Guidepost engagement letter, the SBC's Task Force and Committee on Cooperation had the opportunity to review the draft report before its release to correct any factual errors. The SBC and Executive Committee could have pointed out to Guidepost that the allegation against Pastor Johnny was outside the scope of Guidepost's

13

engagement and should have been removed. But the SBC and the Executive Committee chose not to – perhaps their then-current leadership were also happy to have a scapegoat.

64.     In addition to authorizing the public release of the Report, SBC published the false accusations against Pastor Johnny in other locations, including through reporting by the Baptist Press and website links directing readers to the Report.

65.     Predictably, the public reaction to the Defendants' allegations against Pastor Johnny have been severe. As one example, an internet site covering the Report featured a story with the headline: "Alleged Assault by Former SBC President May Be Most Damaging Part of Explosive Report."

66.     The article continued: "The assault on July 25, 2010, is one of the more graphic descriptions of sex abuse in a blockbuster report . . . ."

67.     Also, Defendants' decision to publish the allegations against Pastor Johnny in the context of a report otherwise focused on heinous sexual crimes has exacerbated the damaging impact of the allegations. For example, articles otherwise discussing the allegations against Pastor Johnny often "contextualize" the allegations by referring to the other types of conduct referenced by the Report. As an example, the Atlanta Journal-Constitution ran an article on February 11, 2023, noting that Pastor Johnny had resumed preaching at certain events. In covering that development, the article sought reaction from Christa Brown, who was described as follows: "Christa Brown, a retired attorney who lives in Colorado, said she was sexually assaulted by her church's youth and education minister beginning when she was 16 and thinks the denomination didn't do enough for her and other victims." The article then quoted Ms. Brown: "It just speaks to how utterly incapable the Southern Baptist Convention is to do

anything to hold sexually abusive pastors accountable," said Brown. "If they won't stop Johnny Hunt, I don't think they will stop anyone."

68.     By publishing the allegations against Pastor Johnny in a Report that otherwise focused on child molesters and other sexual crimes, Defendants created the false impression that Pastor Johnny had committed similar criminal acts.

**Defendants' Continuing Tortious Conduct**

69.     The SBC and the Executive Committee have continued their efforts to destroy Pastor Johnny's reputation.

70.     On December 5, 2022, the then-current President of the SBC, Bart Barber, publicly tweeted: "Hunt was the subject of a third-party investigation in response to allegations that he sexually assaulted a woman half his age in ways that would, to my knowledge, **constitute a felony in any jurisdiction in the US**." (Emphasis added.) A true and accurate copy of Mr. Barber's tweet is attached to this Complaint as **Exhibit C**.

71.     Mr. Barber's tweet was demonstrably false. Even if the factual accusations against Pastor Johnny contained in the Report were factually true, they would not amount to a felony in Florida (where the incident occurred) or Texas (where Mr. Barber resides). Mr. Barber made his contrary statement knowing it was false, particularly given that Pastor Johnny's counsel had previously sent a letter to the SBC pointing out the specifics of Florida law.

72.     The Executive Committee and the SBC have also contacted multiple churches where Pastor Johnny has been scheduled to speak and threatened them with disassociation from the SBC, making false statements in the process.

73.     For example, on February 1, 2022, the SBC Credentials Committee – a committee of the SBC – wrote a letter to the Hiland Park Baptist Church in Panama City, Florida. A true and accurate copy of this letter is attached to this Complaint as **Exhibit D**.

74.     In the February 1 letter, the Credentials Committee wrote that Pastor Johnny is "an individual who has been credibly accused of sexual abuse, according to the standards adopted by the Convention." This statement is demonstrably false. The SBC expressly adopted a definition for "sexual abuse" during its 2022 annual meeting, defining the term as follows: "Sexual abuse is defined as any sexual act that could result in criminal charges or civil liability in the jurisdiction where it occurred."

75.     Here, the allegations against Pastor Johnny – even if true (which they are not) – would not support criminal charges or civil liability in Florida, the jurisdiction at issue, because they would not qualify as "sexual battery" under Florida law.

76.     The SBC knew that its statement that Pastor Johnny has been credibly accused of "sexual abuse" as defined by the SBC was false or, alternatively, the SBC was recklessly indifferent to its truth or falsity.

**Demand for Retraction**

77.     On March 1, 2023, Pastor Johnny sent written requests to each Defendant demanding that each retract the defamatory statements made against Pastor Johnny and issue editorials specifically refuting the defamatory statements. True and accurate copies of these letters are attached to this Complaint as **Exhibits E-F**.

78.     As of the filing of this Complaint, no such retractions or editorials were issued.

**COUNT I – DEFAMATION/LIBEL**

79.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

80.     The statements by the SBC, the Executive Committee, and Guidepost that Pastor Johnny had been accused of sexual assault, that the allegation was corroborated in part by four witnesses, and the allegedly supporting details as set forth above were false and defamatory.

16

81.     The statements by the SBC and the Executive Committee that Pastor Johnny had been accused of having committed a felony and that he was credibly accused of "sexual abuse" as defined by the SBC were false and defamatory.

82.     Defendants' statements were also defamatory because they are reasonably susceptible to defamatory meaning.

83.     Defendants published these false and malicious statements in print and writing.

84.     The false and malicious statements tended to injure Pastor Johnny's reputation and expose him to public hatred, contempt, and ridicule.

85.     Defendants' publication of these statements was not privileged.

86.     Defendants acted with malice in that they acted either with knowledge that the statements were false or with reckless disregard of whether the statements were false or not. Alternatively, Defendants acted negligently in publishing these statements.

87.     Pastor Johnny is not a "public figure" for the purposes of this lawsuit.

88.     Pastor Johnny suffered damages as a result of Defendants' defamatory statements.

**COUNT II – DEFAMATION/LIBEL PER SE**

89.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

90.     The statements by SBC, the Executive Committee and Guidepost that Pastor Johnny had been accused of sexual assault, that the allegation was corroborated in part by four witnesses, and the allegedly supporting details as set forth above were false and defamatory.

91.     The statements by the SBC and the Executive Committee that Pastor Johnny had been accused of having committed a felony and that he was credibly accused of "sexual abuse" as defined by the SBC were false and defamatory.

92.     Defendants' statements were also defamatory because they are reasonably susceptible to defamatory meaning.

93.     Defendants' statements falsely imputed to Pastor Johnny a crime punishable by law.

94.     Defendants published these false and malicious statements in print and writing.

95.     The false and malicious statements tended to injure Pastor Johnny's reputation and expose him to public hatred, contempt, and ridicule.

96.     Defendants' publication of these statements was not privileged.

97.     Defendants acted with malice in that they acted either with knowledge that the statements were false or with reckless disregard of whether the statements were false or not. Alternatively, Defendants acted negligently in publishing these statements.

98.     Pastor Johnny is not a "public figure" for the purposes of this lawsuit.

99.     Pastor Johnny suffered damages as a result of Defendants' defamatory statements.

**COUNT III – INVASION OF PRIVACY (FALSE LIGHT)**

100.    Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

101.    Defendant SBC's, the Executive Committee's, and Guidepost's statements regarding Pastor Johnny, which were made in the context of a report focused on child molesters and convicted abusers, depicted him as something or someone which he is not.

102.    The false light into which Pastor Johnny was placed would be highly offensive to a reasonable person.

103.    Pastor Johnny has suffered damages as a result of this false light.

## COUNT IV – INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS

104.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

105.     Defendants' conduct as set forth above was intentional or reckless.

106.     Defendants' conduct as set forth above was extreme and outrageous.

107.     Pastor Johnny has suffered emotional distress as a direct result of Defendants' conduct.

108.     Pastor Johnny's emotional distress has been severe.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

109.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

110.     Defendants owed a legal duty to Pastor Johnny to use reasonable care in reporting the allegations against him.

111.     Defendants breached this duty by including the allegations against Pastor Johnny in a report focused on child molesters and other sex abusers and by giving undue attention to the allegations against Pastor Johnny.

112.     Defendants caused Pastor Johnny injury.

113.     Pastor Johnny suffered damages as a result.

## COUNT VI – PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS

114.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 – 78 above as though set forth fully herein.

115.     With respect to the true facts published by the Defendants (*i.e.,* the fact that Pastor Johnny and the accuser engaged in a brief, inappropriate encounter), this fact was a private fact that was not a matter of public concern.

116. The above private fact would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

117. Pastor Johnny suffered damages as a result of Defendants' publicizing this private fact.

## JURY DEMAND

118. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Pastor Johnny hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

119. Wherefore, Plaintiff asks the Court to enter judgment in his favor and against the Defendants; award general and special damages in amounts to be proven at trial; award punitive damages; award interest to Plaintiff; tax costs against Defendants; and award all other just and appropriate relief.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

/s/ Todd G. Cole

**Todd G. Cole, Esq., BPR # 031078**
**Andrew Goldstein, Esq., BPR # 037042**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 490-6020
Fax: (615) 942-5914
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com


*-and-*


**Robert D. MacGill, Esq. (Ind. Bar. 9989-49)**
(*pro hac vice motion to be filed*)
**Scott E. Murray, Esq.  (Ind. Bar. 26885-49)**
(*pro hac vice motion to be filed*)
**Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)**
(*pro hac vice motion to be filed*)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com


*Attorneys for Plaintiff*