**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| JOHNNY M. HUNT, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHERN BAPTIST CONVENTION; GUIDEPOST SOLUTIONS LLC; and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION, <br><br> Defendants. | Case No. 3:23-cv-00243 <br><br> Judge Richardson <br> Magistrate Judge Frensley |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT GUIDEPOST SOLUTIONS LLC TO DISMISS THE COMPLAINT

### INTRODUCTION

Defendant Guidepost Solutions LLC ("Guidepost") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) to dismiss the Complaint of Plaintiff Johnny M. Hunt ("Hunt") for lack of subject matter jurisdiction and/or for failure to state a claim for which relief may be granted.

### PRELIMINARY STATEMENT

Hunt was once the President of the Southern Baptist Convention ("SBC"), the largest Protestant denomination in the United States, representing almost 50,000 congregations nationally. By Hunt's own account, until he was accused of sexual abuse by the wife of a fellow Baptist minister, he was the pastor of a megachurch in Georgia and a sought-after speaker and author. Hunt's influence was at its zenith.

But after accounts of widespread sexual abuse on the part of SBC clergy and church staff, the SBC's Executive Committee ("EC"), acting in conjunction with a Sexual Abuse Task Force appointed by the SBC President (the "SBC Task Force"), commissioned Guidepost to conduct an investigation into, among other things, allegations of sexual abuse by EC members (which included Hunt at one time). It is undisputed that when Guidepost was investigating these matters, the accuser and her husband came forward with the allegation that Hunt had sexually assaulted her in a Florida condominium. Following interviews with the accuser (and two interviews with Hunt), Guidepost authored a report that identified Hunt as one of many sexual offenders (the "Report").

Hunt predictably seeks in his Complaint to set up a "he said/she said" narrative. Hunt concedes that he entered into an "inappropriate, extramarital encounter with a married woman" but minimizes his conduct as "only kissing and some awkward fondling." (Compl., ¶ 2.) (Doc. 1.) At the outset, it is quite curious that Hunt never said anything about a "consensual" encounter during his two interviews with the Guidepost investigators detailed in the Report, which he attached to his Complaint as Exhibit B, and as shown in the Report gave internally inconsistent accounts of the incident.[1] But the Court need not assess Hunt's credibility or resolve issues of fact on this motion because the Complaint is dismissible on its face.

*First,* before addressing Hunt's claims on the merits, the Court can dismiss his Complaint outright under the ecclesiastical abstention doctrine. Guidepost was acting as agent of the EC and the SBC Task Force. Because Hunt's allegations of defamation and the related torts are

---

[1] Indeed, in the Complaint Hunt conspicuously omits any *mention* of his two interviews with Guidepost, much less his failure (until now) to describe his encounter with his accuser as "consensual," an account that appears to be constantly evolving. (Compl., Exhibit B at 157-161.) (Doc. 1-2) It should also be noted that the Report included the statements that Dr. Hunt gave the investigators in which he gave his own account of what had happened.

2

inextricably intertwined with the SBC's investigation into its internal ecclesiastical affairs, the court should refrain from exercising jurisdiction over this matter.

*Second,* apart from the abstention issue, the Complaint also fails to state a claim for relief on the merits. The Complaint's first two causes of action for libel and libel per se should be dismissed because Hunt is a public figure for all purposes and the Complaint fails to plead facts plausibly supporting an inference that Guidepost published the Report with actual malice. And even if Hunt were not a public figure for all purposes, as the former President of the SBC, and pastor of an SBC megachurch, he would at least be a limited-purpose public figure who could not avoid being drawn into a controversy of national importance. In the alternative, even if Hunt were deemed to be a private figure, the Complaint fails plausibly to allege negligence. As Hunt concedes, Guidepost interviewed not only the accuser and her husband but a counselor whom Hunt, the accuser, and her husband met with after the incident, as well as three other witnesses.

In addition, the claim for libel per se is defective on its face because Florida does not have a crime of "sexual assault." While Florida does have a "sexual battery" statute, that offense would not be established by the events described in the Report. See Fla. Stat. Ann. § 794.011. Thus, Guidepost did not accuse him of a crime and it is not libel per se.

Furthermore, to the extent that the Complaint relies upon statements attributable solely to Guidepost, the communications in the Report were protected by a privilege arising from the common interest of the SBC Task Force in investigating EC members' responsibility for sexual abuse, retaliation, intimidation of victims and resistance to reform, and Guidepost, which was engaged to conduct a review and report to the SBC Task Force on those issues. Because the Complaint fails to allege facts supporting an inference of malice on the part of Guidepost, the privilege dooms the libel causes of action.

3

Hunt's other tort causes of action for invasion of privacy (false light), intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and public disclosure of private facts must be dismissed because tort claims founded upon defamatory speech are subject to the actual malice standard, which is not met in this case. See Hustler Magazine, Inc. v. Falwell, 485 U.S. 46 (1988).

Finally, to the extent that the absence of actual malice does not dispose of any of the remaining causes of action, the Court must engage in a conflict of laws analysis because the interests of four states (Tennessee, Georgia, New York, and Florida) are implicated in this diversity case and their respective laws conflict as to several causes of action. Under Tennessee conflict of laws principles, Georgia law applies to those causes of action. In Tennessee, the state with the most significant relationship to the occurrence and the parties applies. See Hataway v. McKinley, 830 S.W.2d 53 (Tenn. 1992). Because Hunt alleges reputational injury that took place while he was domiciled in Georgia and the SBC is also a Georgia corporation, the State of Georgia has the most significant relationship to this action. Under Georgia law (or, with regard to claims where the states' laws do not conflict, Tennessee law), Hunt has not plausibly alleged viable claims and the Complaint should be dismissed.

## STATEMENT OF FACTS

The instant action is brought under the Court's diversity jurisdiction. Plaintiff Hunt is a citizen of Florida. However, when the Report was published, Hunt was a Georgia domiciliary. (Compl., ¶ 14.) Defendant SBC is a corporation formed under the laws of the State of Georgia, with a principal place of business in Tennessee. (Compl., ¶ 15.) Defendant Guidepost is a New York limited liability company with its principal office in New York. Guidepost's sole member is Solutionpoint International, Inc., a New York corporation with its principal place of business

in New York. (Compl., ¶ 16.) Defendant EC is a Tennessee corporation with its principal place of business in Tennessee. (Compl., ¶ 17.)

Hunt is a nationally prominent clergyperson who became the pastor of a megachurch, the First Baptist Church in Woodstock, Georgia. (Compl., ¶ 27.) From 2008-2010, Hunt was the President of the SBC. (Compl., ¶ 28.) Over the years, Hunt has become a sought-after speaker and author. (Compl., ¶ 29.)

Following revelations that the SBC had for decades condoned and covered up sexual abuse on the part of its clergy and leadership, in 2021 the SBC engaged Guidepost to conduct an independent investigation into the following topics: "(1) allegations of sexual abuse by the Executive Committee; (2) the Executive Committee's mishandling of sexual abuse allegations; (3) allegations of mistreatment of sexual abuse victims; (4) patterns of intimidation of sexual abuse victims or advocates; and (5) resistance to sexual abuse reform initiatives." (Compl., ¶¶ 34-35, 38 & Exhibit A, at p. 5, ¶ 3.1.) (Doc. 1 & 1-1.)

Arguing that Guidepost defamed him and/or placed his so-called "consensual" encounter with the survivor in a false light, and pointing to language in the Report, Hunt complains that the true focus of the investigation was wrongdoing by "child molesters and other abusers who were in the pulpit or employed as church staff," but not people like him. (Compl., ¶ 45.) Hunt complains that he should not have been mentioned in the Report because he didn't commit child abuse and wasn't implicated in efforts to cover up such crimes. (Compl., ¶¶ 8, 10.) But Hunt's spin is not entitled to any deference: the very first category of investigation mentioned in the Engagement Agreement was "allegations of sexual abuse by the Executive Committee," which Hunt, albeit grudgingly, concedes he was a member of. (Compl., ¶ 58.)

The Engagement Agreement provided that following the conclusion of Guidepost's investigation "[a] written report will be made public in its entirety prior to the 2022 SBC Annual Meeting." (Compl., ¶ 41.) However, the Engagement Agreement provided that the SBC Task Force and a Committee on Cooperation would first have the opportunity to review the draft Report for factual accuracy prior to its formal submission to the SBC Task Force. (Compl., ¶ 40.)

The Complaint alleges that "Defendants" [plural] "released" the Report on May 22, 2022. (Compl., ¶ 44.) Hunt cleverly avoids, however, the fact that the SBC Task Force—not Guidepost—published the Report on its website. See Guidepost Solutions' Report of the Independent Investigation, published at https://www.sataskforce.net. Guidepost's sole publication was to the SBC Task Force. (Compl., ¶ 40; see also id., Exhibit A ¶¶ 3.4-3.7.) For the reasons that follow, the Complaint should be dismissed with prejudice.

## ARGUMENT

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and state a claim for relief that is plausible on its face. Hensley Mfg. v. Propride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). While the Court should accept "well-pleaded" facts as true in determining whether a facially plausible claim exists, it "need not accept as true a legal conclusion couched as a factual allegation." Hensley Mfg., 579 F.3d at 609. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

I.   **HUNT'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM PURSUANT TO THE ECCLESIASTICAL ABSTENTION DOCTRINE.**

The United States Supreme Court has consistently held that the ecclesiastical abstention doctrine prohibits state courts from delving into matters of "'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 714 (1976) (quoting Watson v. Jones, 80 U.S. 679 (1871)).[2] The doctrine is an extension of the Free Exercise Clause and the Establishment Clause of the First Amendment.

In re Diocese of Lubbock, 624 S.W.3d 506 (Tex. 2021), cert. denied, 142 S. Ct. 434 (2021), is directly on point with the facts of this case. There, the Supreme Court of Texas granted mandamus and directed dismissal of a deacon's defamation claim even though a Catholic diocese publicly disclosed a report listing his name along with other clergy who had been credibly accused of sexual abuse. In Diocese of Lubbock, the deacon argued that the public dissemination of the report was ineligible for protection under the ecclesiastical abstention doctrine because it post-dated the church's investigation and concerned events long past. Although the intermediate Texas court had accepted the deacon's argument, the Supreme Court of Texas squarely rejected it and reversed, holding that:

---

[2]     Motions to dismiss under the ecclesiastical abstention doctrine have traditionally been viewed as implicating the Court's subject matter jurisdiction. Although the Supreme Court recently found that the ministerial exception to employment discrimination suits is an affirmative defense, not an issue of subject matter jurisdiction, see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 195 & n.4 (2012), courts continue to treat the larger ecclesiastical abstention issue as a jurisdictional bar, following Watson v. Jones. Guidepost submits that the distinction is without a difference in this case because the defense, if it is one, appears on the face of the Complaint in any event, and therefore moves under Rule 12(b)(1) or, in the alternative, 12(b)(6).

Whether a party's claims against a church are barred by ecclesiastical abstention, though, is based not on whether a publication goes beyond church walls but rather whether the substance and nature of the plaintiff's claims implicate ecclesiastical matters, including a church's internal affairs, governance, or administration. ... The court of appeals' focus on the publication ignores the real critical nuance in this case: that Guerrero's suit is "inextricably intertwined" with the Diocese's decision to investigate its own clergy, judicial review of which would impermissibly interfere with a church's ability to regulate the character and conduct of its leaders.

Diocese of Lubbock, 624 S.W.3d at 516 (internal citations omitted). See also Kaufmann v. Sheehan, 707 F.2d 355, 358-59 (8th Cir. 1983) (dismissing Catholic priest's defamation claims on ground that they "relate to his status and employment as a priest, and possibly to other matters of concern with the church and its hierarchy, and go to the heart of internal church discipline, faith, and church organization, all involved with ecclesiastical rule, custom and law").

The instant case is a paradigmatic illustration of why the ecclesiastical abstention doctrine precludes defamation actions. Here, upon motion of the Messengers at its 2021 Nashville Convention, the SBC urgently investigated a scandal that directly implicated a matter of internal governance of the nation's largest Protestant body and commissioned Guidepost to investigate and report back to the SBC Task Force. As to Hunt, the Report was concerned with a clearly institutional matter—sexual abuse on the part of its most senior officer. Thus, as in Diocese of Lubbock, Hunt's claims are "inextricably intertwined" with the SBC's institutional response to the sexual abuse crisis and the conduct of its governing body in particular. 624 S.W.2d at 516. See also Ogle v. Church of God, 153 F. App'x 371, 376 (6th Cir. 2005) (rejecting bishop's claim that resolution of libel claim under neutral principles implicated only secular considerations and finding court lacked subject matter jurisdiction where bishop's defamation and related tort claims arose out of church investigation and disciplinary action). Cf. Ogle v. Hocker, 279 F. App'x 391, 396 (6th Cir. 2008) (later action by same plaintiff did not require application of abstention doctrine

to libel claims arising out of statements by accuser from pulpit because they did not implicate pastor-parishioner discipline where bishop did not belong to or attend defendant's church).

Accordingly, the Complaint should be dismissed.

## II. HUNT'S CAUSES OF ACTION FOR LIBEL FAIL BECAUSE HE HAS NOT PLAUSIBLY ALLEGED FAULT, GUIDEPOST'S STATEMENTS WERE PRIVILEGED, AND THE COMPLAINT FAILS TO STATE LIBEL PER SE IN ANY EVENT.

### A. Georgia Law Applies to Hunt's Claims for Libel and Libel Per Se.

A threshold conflict of law issue arises in this diversity action because the parties are from different states and the laws of each jurisdiction differ in some respects. As a preliminary matter, therefore, the Court must assess whether an actual conflict of law exists and, if such a conflict does exist, apply Tennessee conflict of laws principle to identify the law of the state with the most significant relationship to the claim. Seals v. Delta Air Lines, Inc., 924 F. Supp. 854, 859 (E.D. Tenn. 1996) (citing Hataway v. McKinley, 830 S.W.2d 53, 55 (Tenn. 1992)).

Starting with the law of the forum state, to establish a prima facie case of defamation in Tennessee, a plaintiff must show that (1) the defendant published a statement [to a third person], (2) with knowledge that the statement is false and defaming to plaintiff, or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Chaves v. AT & T, No. 3:12-CV-80, 2012 WL 2887559, at *4 (E.D. Tenn. July 13, 2012) (citing Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999)). Significantly, Tennessee law requires proof of damages in *all cases*. "'Damages from false or inaccurate statements cannot be presumed; actual damages must be sustained and proved.'" Brown v. Christian Bros. Univ., 428 S.W.3d 38, 51 (Tenn. Ct. App. 2013) (quoting Davis v. Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)). For the same reason, Tennessee no longer recognizes libel *per se*; plaintiffs must plead and prove damages despite whether the defamatory meaning is

obvious or not. See Gallagher v. E.W. Scripps Co., No. 08–2153–STA, 2009 WL 1505649, at *6 (W.D. Tenn. May 28, 2009) ("Under Tennessee law, libel *per se* is no longer available in light of the Supreme Court's decision in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)). Florida (the state where Hunt now resides), has essentially the same elements for a libel claim as Tennessee. See Jews For Jesus, Inc. v. Rapp, 997 So.2d 1098, 1106 (Fla. 2008).

By contrast, Georgia (the location where Hunt resided at the time of the alleged defamation), provides that, "a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." N. Atlanta Golf Operations, LLC v. Ward, 870 S.E.2d 814, 818 (Ga. Ct. App. 2022) (citation omitted). The substantive elements of the tort of libel under New York law are similar to those of Georgia. See Church of Scientology Int'l v. Eli Lilly & Co., 778 F. Supp. 661, 666 (S.D.N.Y. 1991). The laws of the four states also differ with respect to punitive damages.[3]

Under Tennessee conflict of laws principles, the state with the most significant relationship to the occurrence and the parties applies. See Hataway v. McKinley, 830 S.W.2d 53 (Tenn. 1992). Following those principles, in a libel action the domicile of the plaintiff at the time of publication will typically control because that was the location of the reputational injury. See, e.g., Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 137 (6th Cir. 1996). This is particularly so in the case of a multistate publication. See Restatement (Second) of Conflict of Laws § 150

---

[3]     In Florida punitive damages may not exceed three times the compensatory damages or $500,000 whichever is greater. Fla. Stat. Ann. § 768.73. Georgia law caps punitive damages at $250,000 for cases other than a specific intent to cause harm. O.C.G.A. 51-12-5.1 (2010). Tennessee caps punitive damages to an amount not greater than $500,000 or twice the damages. TN Code § 29-39-104 (2021). New York has no statutory cap on punitive damages.

(cmt. e) (1971) (applying the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation, which "will usually be the state of the plaintiff's domicil [sic] if the matter complained of has there been published").

Georgia is the state with the most significant relationship to the claims in this action. Hunt's Complaint alleges that he was domiciled in Georgia when the Report was published. (Compl., ¶ 14.) Moreover, the SBC was formed as a Georgia corporation and is a Georgia citizen for diversity purposes. (Compl., ¶ 15.) Accordingly, the Court should apply Georgia tort law, *i.e.,* to the extent that it is not otherwise displaced by federal constitutional constraints.

B.      Hunt Failed Plausibly to Allege Actual Malice.

However, even before considering Georgia substantive libel law, when the plaintiff in a defamation case is a public figure, constitutional concerns require the plaintiff to plead and prove that the libelous statement was made with actual malice, *i.e.,* "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Hudik v. Fox News Network, LLC, 512 F. Supp. 3d 816, 825 (M.D. Tenn. 2021) (Richardson, J.). Whether one is a public figure in the first instance is a "question of law to be determined by the courts." Falls v. Sporting News Pub. Co., 899 F.2d 1221 (6th Cir. 1990). On the face of the Complaint, Hunt should be deemed a public figure for two reasons.

*First,* while the Complaint makes a conclusory and self-serving statement that Hunt is a "private figure" (Compl., ¶¶ 87, 98), Hunt is actually a "general purpose" public figure because he has acquired "such pervasive fame or notoriety that he [has become] a public figure for all purposes and in all contexts." Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974). As the Complaint itself discloses, for two years Hunt was the President of the SBC, the largest Protestant denomination in the United States with almost 50,000 member congregations across the country

11

(Compl., ¶¶ 2, 28), and was the pastor of a Georgia megachurch. (Compl., ¶ 27.) Over the years, Hunt has become a sought-after speaker and author and has been a noted speaker at state and national SBC conferences and conventions. (Compl., ¶ 29.) In short, by virtue of his high public profile, Hunt has "invite[d] attention and comment."[4] Gertz, 418 U.S. at 345.

*Second,* even if Hunt were not a "general purpose" public figure, he would still be deemed a limited-purpose public figure or an involuntary public figure because he "voluntarily inject[ed] himself or [was] drawn into a particular public controversy," Gertz, 418 U.S. at 351, which in this case was the sexual abuse scandal that pervaded the SBC. Having accepted the position of President of a major national denomination and thereby becoming one of the central figures in its leadership, it was inevitable that allegations regarding his sexual improprieties would draw him into the vortex of the SBC's sexual abuse controversy. See, e.g., Atlanta Journal-Constitution v. Jewell, 555 S.E.2d 175, 185 (Ga. Ct. App. 2001), cert. denied, 537 U.S. 814 (2002) (applying actual malice standard in libel case brought by security guard suspected of 1996 Atlanta bombing; holding actual malice standard applies where an individual voluntarily injects himself or is drawn into a particular public controversy).

Accordingly, Hunt was required plausibly to allege facts establishing, as a matter of law, the constitutionally prescribed standard of fault amounting to actual malice—*i.e.,* that the challenged statements were made with knowledge of their falsity or reckless disregard for their truth. Mathis v. Cannon, 573 S.E.2d 376, 380 (Ga. 2002) (citing New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964)). Moreover, a mere failure to investigate does not amount to actual malice, "even when a reasonably prudent person would have done so." Harte-Hanks Commc'ns v. Connaughton, 491 U.S. 657, 688 (1989). Thus, on a motion to dismiss, Plaintiff must plead

---

[4] See https://www.johnnyhunt.com

facts, and not merely conclusory assertions, which show "more than a sheer possibility that [Guidepost] acted unlawfully" by publishing the Report with actual malice. Iqbal, 556 U.S. at 678. Hunt has come nowhere near satisfying that burden.

Hunt evidently realizes that he is a public figure (despite his pro forma denial), and implicitly concedes that the actual malice standard applies to his case, alleging that "Defendants acted either with knowledge that the statements were false or with reckless disregard of whether the statements were false or not." (Compl., ¶¶ 86, 97.) But apart from this rote allegation of actual malice, the Complaint does not even attempt to allege any fact (much less plausibly) tending to show that Guidepost actually knew that the accusation of sexual abuse was false.

Nor does the Complaint plausibly allege that Guidepost acted with reckless disregard, which requires that the publisher act with a "high degree of awareness" that the statement is false and "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Quite the contrary: the Report points to an abundance of evidence collected by Guidepost that would reasonably lead any investigator to believe that the allegations were true. In this connection, Hunt attached the Report as Exhibit B to his Complaint, which is therefore made part of the Complaint and may be considered on a motion under Rule 12(b)(6). See Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001). The Report is central to all of Hunt's causes of action and is at war with his allegations of actual malice (and negligence). The Report reveals that Guidepost conducted multiple interviews of the accuser and her husband; the counselor confirmed to Guidepost that he had meetings with Hunt after the fact regarding his inappropriate encounter, which was additionally confirmed by documents supplied to Guidepost; and several additional witnesses confirmed they were aware of the allegations of misconduct close

in time to the event. It also reports two (2) interviews with Hunt that he conveniently fails to mention in his Complaint. See Compl., Exhibit B at 149-161, n. 435-442.

Hunt supplies only the *ipse dixit* that his "accuser's account is incredible on its face." (Compl., ¶ 60.) According to Hunt, Guidepost necessarily should have had doubts of the plausibility of the accuser's story because no victim of abuse would have placed herself in an intimate situation where Hunt could take advantage of her trust. Id. But this theory cannot be countenanced for at least two reasons. *First,* to accept such a notion is to blame the victim for her own abuse—a distasteful suggestion that Hunt ought never to have made in a publicly filed Complaint (or in any other forum). *Second,* it is not inherently improbable that a victim of sexual abuse could have been groomed and manipulated into a sexual encounter by a person of superior power who had gained the trust of the victim over time (which the Guidepost investigation found Hunt had, including during his time as President of the SBC). That is the essence of what grooming is; the experience of countless victims attests to that fact; and after conducting several witness interviews Guidepost was entitled to believe that Hunt's behavior met that profile. Accordingly, the Complaint fails plausibly to state facts supporting an inference that Guidepost "in fact entertained serious doubts as to the truth" of the Report. It follows that both the first cause of action for libel and the second cause of action for libel per se should be dismissed as a matter of law for failure plausibly to allege actual malice.

C. Even if Hunt Were Deemed a Private Figure, He Fails Plausibly to Allege Fault Amounting to Negligence.

The Supreme Court held in Gertz that the First Amendment prohibits strict liability for defamation. Thus, even a private figure plaintiff must at a minimum allege negligence (unless state law prescribes a higher level of fault). Gertz, 418 U.S. at 347. Assuming (without conceding) that Georgia's negligence standard of fault for private figure libel claims applies, N. Atlanta Golf,

supra, Hunt admits in his Complaint that, in preparing the Report, Guidepost conducted hundreds of interviews, collected "over five terabytes of data," and spent thousands of hours on its investigation. (Compl., ¶ 46.) While Hunt alleges that "the Report does not contain a single account by any alleged 'witness' that would support a claim for sexual assault" (Compl., ¶ 56), the Court need not accept this allegation as true. Astonishingly, Hunt's Complaint would have the Court ignore the most important witness whom Guidepost interviewed—the accuser. And Hunt does not dispute that Guidepost interviewed him (twice), or the counselor whom Hunt admits he went to after his purported "brief, inappropriate, extramarital encounter." (Compl., ¶ 3.) Thus, on the face of the Complaint and the Report it relies upon, Guidepost discharged its duty of care through a thorough investigation.

        **D.**     **On the Face of the Complaint, Guidepost's Communications With the SBC Were Protected by a Common Interest Privilege.**

On the face of the Complaint, Guidepost's transmission of the Report to the SBC Task Force was privileged. Pursuant to O.C.G.A. 51-5-7(2), which protects "[s]tatements made in good faith in the performance of a legal or moral private duty," and O.C.G.A. 51-5-7(3), which addresses "[s]tatements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned," Guidepost's submission of the Report to the SBC Task Force was a privileged communication. Because Guidepost supplied the Report to the SBC Task Force in the performance of a legal duty under the Engagement Agreement with the SBC and was acting in furtherance of their common interest, the transmission of the Report was *prima facie* privileged as a matter of law. Indeed, when such a privilege applies, as a matter of law the alleged libel is deemed not to have been *published*, thereby negating the required element of publication for a libel law claim. See Carter v. Willowrun Condo. Ass'n, Inc., 345 S.E.2d 924, 925 (Ga. Ct. App. 1986). Tennessee law is the same. See Woods v. Helmi, 758 S.W.2d 219 (Tenn.

Ct. App. 1988), appeal denied (Tenn. 1988) (communications between persons in "need to know" relationship held not a publication for purposes of libel claim even though publisher of statement and recipient worked for different corporate entities, where the communication was within a shared interest). Cf. Lewis v. Meredith Corp., 667 S.E.2d 716, 719 (Ga. Ct. App. 2008).

Because the affirmative defense of privilege appears on the face of the Complaint, it may be raised by a pre-answer motion under Rule 12(b). See Delauter v. Nissan Supplemental Exec. Ret. Plan II, No. 3:20-cv-00609, 2021 WL 1530926, at *3 (M.D. Tenn. Apr. 19, 2021). Where, as here, the Complaint reveals a *prima facie* case of qualified privilege, the burden shifts to the plaintiff to plead actual malice sufficient to overcome the privilege. See Brown v. Scott, 259 S.E.2d 642, 644 (Ga. Ct. App. 1979), cert. denied (Oct. 23, 1979). In Georgia, the showing of actual malice required to overcome the statutory privilege is synonymous with the constitutional actual malice standard. See Hammer v. Slater, 20 F. 3d 1137, 1141-42 (11th Cir. 1994). But, as shown above, Hunt has not plausibly alleged facts permitting an inference of actual malice.[5]

Quoting the passive voice language of the Engagement Letter ("[a] written report *will be made public* in its entirety prior to the 2022 SBC Annual Meeting" see Compl., ¶ 41), Hunt deceptively implies in his Complaint that Guidepost itself published the Report outside the boundaries of the qualified privilege. However, Hunt's allegation is not entitled to any presumption of truth for purposes of this motion. See, e.g., Compl., Exhibit A, ¶¶ 3.4-3.6. As stated above, the SBC Task Force, not Guidepost, published the Report on its website on May 22, 2022, *i.e.,* after Guidepost submitted the Report to its client, a point that Hunt no doubt is aware of but seeks to obscure.[6] Pursuant to Fed. R. Evid. 201(c), Guidepost requests that the Court take

---

[5]     Even if the common law standard of malice were applicable, Hunt has not pled facts tending to show that Guidepost bore him previous ill will, hostility, threats, or rivalry.

[6]     https://www.sataskforce.net/updates/guidepost-solutions-report-of-the-independent-investigation

judicial notice of the SBC Task Force's publication of the Report on its website on May 22, 2022 for the fact of the website's publication to indicate what was in the public realm, who published it, and when. See Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P., 435 F.3d 396, 401 (3d Cir. 2006). The Complaint identifies no other publication of the Report on *Guidepost's* part. To the extent that the Court wishes to consider it, Guidepost also offers the Declaration of Anthony M. Collura ("Collura Decl.") to confirm that only the SBC Task Force, and not Guidepost, published the Report publicly. The SBC Task Force's republication of the Report, in turn, may not be attributed to Guidepost under the single publication rule. See Peacock v. Retail Credit Co., 302 F. Supp. 418, 421 (N.D. Ga. 1969) (original publisher not liable for subsequent publication by customer). Accordingly, both causes of action sounding in libel must be dismissed.

      E.      The Second Cause of Action for Libel Per Se Fails Because the Report Does Not Accuse Hunt of Committing a Crime

The theory of Hunt's second cause of action for libel per se is that the Defendants accused him of committing a felony. This claim fails for two reasons. *First,* as the Complaint and the Report reveal, nowhere did Guidepost accuse Hunt of committing a felony. *Second,* to the extent that Hunt refers to accusations of "sexual abuse" or "sexual assault" in the Report, Florida does not have such a crime. While Florida does have a "sexual battery" statute, that offense would not be established even by the events described in the Report. See Fla. Stat. Ann. § 794.011. Accordingly, in addition to Hunt's failure to plead constitutional fault or overcome the qualified privilege, he fails to state a viable claim of libel per se on the merits.

**III.    EACH OF THE OTHER CAUSES OF ACTION IN HUNT'S COMPLAINT MUST BE DISMISSED FOR FAILURE PLAUSIBLY TO ALLEGE ACTUAL MALICE AND BECAUSE THE COMPLAINT OTHERWISE FAILS TO STATE <u>ACTIONABLE CLAIMS</u>.**

A.    <u>Hunt Was Required to Plead Actual Malice as to Each of the Other Tort Claims</u>.

Just as with Hunt's two causes of action for libel, as a constitutional matter the cases are clear that the actual malice standard applies in other torts predicated on defamatory speech, including the invasion of privacy tort of false light (see <u>Time, Inc. v. Hill</u>, 385 U.S. 374, 390 (1967)) and the tort of intentional infliction of emotional distress (see <u>Hustler</u>, 485 U.S. at 56) (IIED claim by Jerry Falwell dismissed). <u>See</u> <u>also</u> <u>Santoni v. Mueller</u>, No. 3:20-cv-00975, 2022 WL 97049, at *11 (M.D. Tenn. Jan. 10, 2022) (Richardson, J.) (citing <u>Armstrong v. Shirvell</u>, 596 F. App'x 433, 444 & n.3 (6th Cir. 2015) ("The requirement that a plaintiff demonstrate actual malice when he is a public figure also applies in the context of false light and intentional infliction of emotional distress"). Each of the other tort claims in Hunt's Complaint is grounded upon the alleged defamatory statements in the Report and must therefore equally be dismissed.

B.    <u>Hunt Does Not Plausibly Allege the Remaining Tort Claims</u>.

1.    Hunt's Third Cause of Action for Invasion of Privacy/False Light Fails to <u>Allege a Plausible Claim</u>.

A conflict exists as to the tort of "invasion of privacy (false light)." Georgia and Tennessee generally follow the elements of the "invasion of privacy (false light)" tort set forth in Restatement (Second) of Torts. By contrast, neither New York nor Florida recognizes the tort at all. <u>See</u> <u>Jews For Jesus, Inc. v. Rapp</u>, 997 So.2d at 1114 and <u>Henry v. Fox News Network LLC</u>, No. 21-CV-7299 (RA), 2022 WL 4356730, at *10 (S.D.N.Y. Sept. 20, 2022). Because Georgia has the closest relationship to the controversy, Guidepost assumes that Georgia law applies.

As a threshold matter, Hunt bases his third cause of action for false light invasion of privacy upon the same defamatory statements that form the basis of his libel claims. On that

ground, it impermissibly duplicates the libel claims and must be dismissed. See Smith v. Stewart, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008), cert. denied (Sept. 8, 2008) (citing Bollea v. World Championship Wrestling, 610 S.E.2d 92, 96 & n.1 (Ga. Ct. App. 2005), cert. denied (2005)).

However, even if the claim were not duplicative, Hunt's Complaint still fails to state an actionable claim. *First,* as stated above, as a public figure, Hunt was required to plead actual malice in connection with his false light claim, as required by the holding in Time, Inc. v. Hill, supra. The cause of action for false light invasion of privacy thus ends right there.

*Second,* the claim otherwise fails on the merits. Under the Restatement, "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652E (1977). Under *Hunt's* theory of the case, publishing the account of his purportedly consensual encounter with his accuser in the Report places him in a false light because the Report concerned itself with persons who "were convicted of or pleaded guilty to sex crimes." (Compl. ¶ 6.) But no reasonable reader of the Report would understand that Guidepost or the SBC Task Force was accusing Hunt of child abuse or the commission of a crime under state law. Nor did the Report confine itself to that category; rather, it enumerated five categories, one of which involved misconduct on the part of EC Members (which by his own admission Hunt was at one time). (Compl., Exhibit A, at p. 5, ¶ 3.1.)

Further, by providing the Report to the SBC Task Force, Guidepost did not give "publicity" to this matter as required to establish a false light claim. Restatement (Second) of Torts

§ 625E (1977), upon which Georgia (and Tennessee) rely for false light claims, defines the term

"publicity" by referencing Section 652D:

> "Publicity," … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge….Thus it is not an invasion of privacy…to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Section 652E cmt. a, citing Section 652D cmt. a. Providing a report or communication to a

business associate, as was done here by Guidepost, is not sufficient "publicity" to establish a false

light invasion of privacy. See, e.g., L-S Industries, Inc. v. Matlack, 641 F. Supp. 2d 680, 687-88

(E.D. Tenn. 2009); Secured Fin. Solutions, LLC v. Winer, 2010 WL 334644, *3-4 (Nov. 5, 2009

Tenn. Ct. App.), appeal denied (2010).

     This cause of action should be dismissed as a matter of law.

        2.     Hunt's Fourth Cause of Action for Intentional Infliction of Emotional Distress Fails to Allege a Plausible Claim.

     Guidepost is unaware of any conflict in the laws of the relevant jurisdictions regarding the

tort of intentional infliction of emotional distress and therefore assumes the application of

Tennessee law. A plaintiff asserting a claim for IIED must plead and prove that the defendant's

conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized

society, and (3) resulted in serious mental injury to the plaintiff. See Lourcey v. Estate of Scarlett,

146 S.W.3d 48, 51 (Tenn. 2004). Moreover, IIED is a very narrow tort in Tennessee and "recovery

for intentional infliction of emotional distress is limited to mental injury which is 'so severe that

no reasonable [person] would be expected to endure it.'" Joiner v. Meharry Med. Coll., No. 3:18-

CV-00863, 2020 WL 7027505, at *14 (M.D. Tenn. Nov. 28, 2020) (quoting Arnett v. Domino's

Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003)).

This is not such a case. Apart from parroting the "extreme and outrageous" standard of conduct required for a claim of IIED, Hunt's Complaint does not identity what it is that makes Guidepost's conduct extreme or outrageous other than the alleged falsity of the statements in the Report (or elsewhere). See also Cottrell v. Smith, 788 S.E.2d 772, 780 (Ga. 2016) (standard of outrageous conduct "plainly not met in this case," where bloggers published allegations of sexual affairs and other misconduct on the part of Christian evangelical motivational speaker). Nor does Hunt identify any conduct aside from mere speech or publication as the predicate for his tort claim. Despite the "mere label" of intentional infliction of emotional distress, see New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964), Hunt's claim upon analysis is in reality a libel claim and should be dismissed on that ground alone. See, e.g., Carter v. Willowrun Condo. Ass'n, Inc., supra, 345 S.E.2d at 927 (holding where letter of condominium board's attorney accusing tenant of sexual misconduct was addressed to lessor, "[t]he legal remedy where one is allegedly injured by words published to a third person is an action for defamation").

Finally, following the Supreme Court's holding in Hustler, 485 U.S. at 56, Hunt was required plausibly to state facts amounting to constitutional malice to sustain the IIED claim and he has not. Accordingly, this cause of action must be dismissed.

3. Hunt's Fifth Cause of Action for Negligent Infliction of Emotional Distress Fails to Allege a Plausible Claim.

A conflict of laws exists among Tennessee, Georgia, New York, and Florida. Tennessee permits claims for negligent infliction of emotional distress ("NIED") even in the absence of physical injury but requires proof of "serious" or "severe" emotional injury supported by expert medical or scientific proof. See Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996). Under Georgia's "impact" rule, recovery for NIED is only permissible where the plaintiff experiences some physical impact that results in physical injury, unless the defendant's conduct is malicious,

wilful or wanton and the conduct was directed toward the plaintiff. See <u>Ryckeley v. Callaway</u>, 412 S.E.2d 826 (Ga. 1992). Georgia also supports recovery for emotional distress in case of a pecuniary loss, except "that for a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury may not be physical." <u>Lee v. State Farm Mut. Ins. Co.</u>, 533 S.E.2d 82, 85 (Ga. 2000). Florida and New York require either that the defendant experience a physical injury or that they witness the impact under variations of a bystander or "zone of danger" theory. See <u>LeGrande v. Emmanuel</u>, 889 So.2d 991 (Fla. 3d DCA 2004) and <u>Bah v. Apple Inc.</u>, No. 19-cv-3539 (PKC) 2020 WL 614932, at *15 (S.D.N.Y. 2020). As with Hunt's libel claims, because these states' laws are in conflict, Tennessee would apply Georgia law.

As stated above, Hunt fails plausibly to allege the threshold requirement of negligence. Moreover, Hunt does not allege physical injury as the predicate for his purported emotional distress. Nor does Hunt plausibly allege facts showing that emotional distress damages were occasioned by a pecuniary loss resulting from some other personal injury. Neither does the Complaint plausibly allege malicious, wilful or wanton conduct directed toward Hunt. See <u>Dombrowski v. Lumpkin County</u>, No. 2:11-CV-0276-RWS, 2013 WL 2099137, at *20 (N.D. Ga. Mar. 21, 2013), <u>report and recommendation adopted</u>, 2013 WL 2096658 (N.D. Ga. May 13, 2013) (citing <u>Lively v. McDaniel</u>, 522 S.E. 2d 711, 713 (Ga. Ct. App. 1999) (defamatory remarks made to others or to the public in general are directed toward the hearer of the statements, not to the plaintiff). Nothing in the Complaint suggests that Guidepost bore any sort of animus toward Hunt or that they approached his case differently from those of other accused sexual abusers. And in any event, because this cause of action is nothing more than a repackaged libel claim, it should be dismissed for the same reason that the IIED claim should be dismissed.

4. Hunt's Sixth Cause of Action for Public Disclosure of Embarrassing Private Facts Fails to Allege a Plausible Claim.

Under Georgia law, "[i]n order to sustain a claim for public disclosure of embarrassing private facts, [a plaintiff] must demonstrate the defendants' public disclosure of private facts about her that are highly offensive and objectionable to a reasonable person of ordinary sensibilities and that are not matters of public concern." Smith v. Stewart, 660 S.E.2d at 844; See also Napper v. Georgia Television Co., 356 S.E.2d 640, 644 (Ga. 1987); Restatement (Second) of Torts § 653D (["o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public"). Here, even assuming that disclosure of Hunt's sexual encounter with his accuser would be highly offensive, he fails the second prong of the Restatement test because his misconduct is plainly of legitimate concern to the public. The Report and the scandals that prompted it are of grave concern to the SBC, of which Hunt was the President. Further, as discussed in Section III.B.1 above, in providing the Report to the SBC Task Force, Guidepost did not engage in the requisite "publicity" to warrant a claim for public disclosure of embarrassing facts. The Court should therefore dismiss this claim as well.

\* \* \* \* \*

## CONCLUSION

The Complaint should be dismissed with prejudice, with costs and attorney's fees as against Guidepost.

Dated: May 4, 2023

Respectfully submitted,

**RILEY & JACOBSON, PLC**

s/John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*

on this 4th day of May, 2023.

s/John R. Jacobson