**IN THE UNITED STATES DISTRICT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHNNY M. HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Docket No.: 23-CV-00243** |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **SOUTHERN BAPTIST CONVETION,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANT SOUTHERN BAPTIST CONVENTION**

---

Defendant Southern Baptist Convention ("SBC") submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) for lack of subject matter jurisdiction and/or failure to state a claim upon which relief may be granted.

**I.    INTRODUCTION**

This case involves the aftermath of the release of the May 2022 "Report of the Independent Investigation: The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee" that was prepared by Guidepost Solutions LLC ("Guidepost") (the "Guidepost Report," attached to Plaintiff's Complaint as Exhibit B). The Guidepost Report, as well as its underlying investigation, was prepared in response to sustained efforts by many within the SBC community to address the problem of sexual abuse within churches, which culminated in the approval by the attendees of the 2021 SBC annual meeting in Nashville, Tennessee to create a Sexual Abuse Task Force to oversee an independent third-party review and investigation into "any allegations of abuse, mishandling of

1

abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the SBC Executive Committee ("EC") between January 1, 2000 to June 14, 2021.

The essence of the Complaint is that the inclusion in the Guidepost Report of information that was obtained by Guidepost investigators during the course of its investigation from an SBC pastor and his wife that Plaintiff, former SBC President Johnny Hunt (2008-2010), sexually assaulted the wife on July 25, 2010 constitutes defamation and related torts. Plaintiff's claims come despite the fact that the Guidepost report sets forth all sides of the allegations concerning the July 2010 incident, including multiple interviews with the couple, forensic examination of electronic data, interviews of other witnesses, and two (2) interviews with Plaintiff himself.

As stated in the Guidepost Report, "[Guidepost] include[d] this sexual assault allegation in the report because the [Guidepost] investigators found [the couple] to be credible; their report was corroborated in part by [a third party – Roy Blankenship – witness] and three other credible witnesses; and [Plaintiff], while denying physical contact, does acknowledge that he had interactions with [the wife], including on the condo balcony during the relevant time period." *Id.*, at 161. "The [Guidepost] investigators did not find [Plaintiff] to be credible in their interviews with him." *Id.*

Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the ecclesiastical abstention doctrine requires dismissal of Plaintiff's defamation and related claims as the same are inextricably intertwined with the SBC's investigation into internal ecclesiastical affairs. In addition, Fed. R. Civ. P. 12(b)(6) requires dismissal because Plaintiff is a public figure, including as it pertains to the public controversy at issue in the Guidepost Report, and Plaintiff has failed to sufficiently plead the constitutionally required standard of actual malice. The remaining

torts are entirely founded upon the same alleged defamatory speech, which are subject to the same actual malice standard, which requires their dismissal as well.

## II.     FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

The SBC is a network of independent churches.  Its purpose is to "provide a general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad."  Exhibit B to Complaint ("Report"), at 29 (quoting Article II of the SBC Constitution).[1]  Over 47,000 Baptist Churches in the United States and its territories cooperate with the SBC, encompassing over 14 million people.  *Id.*  The SBC "is under the direction of the Messengers, i.e., the representatives of local churches that cooperate with the SBC."  *Id.*, at 32.  The "day-to-day functioning of the SBC" is managed by the Executive Committee ("EC") whose operations are "intended to carry out the business" of the convention between the annual two-day meeting of the Messengers that convenes once a year in June.  *Id.*, at 32-33.

In 2021, and after sustained efforts by many within the SBC community to address the problem of sexual abuse within SBC churches, a Sexual Abuse Task Force ("Task Force") was created by Motion of the Messengers (the "Messengers' Motion") at the largest SBC annual meeting since 1995,[2] which took place in Nashville, Tennessee in June 2021 (the "2021 Nashville Convention").  *Id.*, at 15.  The Task Force was approved to oversee an independent third-party

---

[1] As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56.  However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.  *Blanch v. Trans Union, LLC*, 333 F.Supp.3d 789, 791-92 (M.D. Tenn. 2018).

[2] The 2021 Nashville Convention was attended by over 15,000 Messengers representing 5,570 churches.  Report, at 15.

Case 3:23-cv-00243   Document 30   Filed 05/04/23   Page 3 of 22 PageID #: 433

review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the EC between January 1, 2000 to June 14, 2021. *Id.*, at 16. Guidepost was engaged to conduct the independent investigation which resulted in the "Report of the Independent Investigation" entitled "The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee" that was issued by Guidepost on May 15, 2022 (the "Guidepost Report"). *Id.*

According to the Guidepost Report, during the course of Guidepost's investigation into allegations of abuse during the relevant time period – January 1, 2000 to June 14, 2021 – "an SBC pastor and his wife came forward to report that former SBC President Johnny Hunt (2008-2010), who was the immediate past president at the time, had sexually assaulted his wife on July 25, 2010" (the "July 2010 Incident"). Report, at 149. The Guidepost Report went on to summarize the allegations that were reported to Guidepost pertaining to the July 2010 Incident. Id. Guidepost investigators "conducted multiple interviews with the couple," forensically examined electronic data from 2009-2010 that pertained to portions of the couples' report, contacted multiple witnesses with relevant information, and interviewed Plaintiff himself. As stated in the Guidepost Report, "[Guidepost] include[d] this sexual assault allegation in the report because the [Guidepost] investigators found [the couple] to be credible; their report was corroborated in part by [a third party – Roy Blankenship – witness] and three other credible witnesses; and [Plaintiff], while denying physical contact, does acknowledge that he had interactions with the Survivor, including on the condo balcony during the relevant time period." *Id.*, at 161. "The [Guidepost] investigators did not find [Plaintiff] to be credible in their interviews with him." *Id.*

4

As mentioned in the Guidepost Report, Plaintiff was the President of the SBC from 2008-2010. Report, at 149. Plaintiff describes himself in the Complaint as an "extraordinarily successful" church leader with "an incredible talent for leading and growing churches" in multiple states including North Carolina and Georgia. Complaint, at ¶¶ 2, 26-27. In 2008, Plaintiff became "the first elected Native American to hold the office of President of the Southern Baptist Convention [] – a cooperative of almost 50,000 Southern Baptist churches across the country." *Id*., at ¶ 28. In the years since, Plaintiff has been "a sought-after speaker and author" and "a noted speaker at state and national SBC conferences and conventions." *Id*., at ¶ 29.

However, despite Plaintiff's high-profile status and the serious nature of the allegations that were reported to the Guidepost investigators during the course of their investigation into, among other things, allegations of abuse by the EC between January 1, 2000 to June 14, 2021, Plaintiff claims in this lawsuit that the inclusion of the July 2010 Incident in the Guidepost Report constitutes actionable defamation and related torts on the part of all the defendants, including the SBC. In addition, Plaintiff alleges that a December 2022 tweet by former SBC President Bart Barber, attached to the Complaint as <u>Exhibit C</u> (the "Barber Tweet") and a February 2022 Letter to a Florida church (the "Church Letter"), both of which reference the July 2010 Incident as described in the Guidepost Report, constitute additional tortious conduct. Complaint, at ¶ 70-76.

### III. <u>LEGAL STANDARD</u>

The purpose of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is to enable a defendant to challenge the legal sufficiency of a complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2009) (citing *Rutman Wine Co. v. E.J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). This is especially important when dealing with fundamental constitutional interests such as the First Amendment, as in this case, where the mere filing of a lawsuit imposes

a chilling effect.[3]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, which raise a right to relief above the speculative level and state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Facial plausibility exists when sufficient facts are alleged to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*.

However, a legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss.  *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 678.  Such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations.  *Id*., at 681.  Because the pleading standard for stating a libel or false light claim, or the related torts, has not been met in this case, the Court should dismiss all claims asserted against SBC with prejudice.

---

[3] *E.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 278 (1964).  The United States Supreme Court has recognized that even the burden and expense of litigating an issue can unduly impinge on the exercise of First Amendment rights.  *See, e.g., Nike, Inc. v. Kasky*, 539 U.S. 654, 668 (2003); *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967) ("Fear of large verdicts in damage suits … even fear of the expense involved in their defense, must inevitably cause publishers to 'steer … wider of the unlawful zone,' and thus 'create the danger that the legitimate utterance will be penalized.'") (internal citations omitted) (citing and quoting *New York Times*, 376 U.S. at 279.)

6

## IV.    ARGUMENT[4]

### A.    Plaintiff's Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction

Civil courts are barred by the First Amendment of the Constitution from interfering with determinations involving "questions of discipline, or of faith, or ecclesiastical rule, custom or law." *Watson v. Jones*, 80 U.S. 679, 727 (1871); *Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 941-42 (6th Cir. 1992). The ecclesiastical abstention doctrine prohibits courts from interfering with determinations regarding matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976) (quoting *Watson*, 80 U.S. at 679)). Specifically as it pertains to defamation claims resulting from internal church investigations, courts have dismissed such claims pursuant to the ecclesiastical abstention doctrine when it is apparent from the Complaint that "regardless of how the claims set forth in the plaintiffs' complaint may be labeled, resolving the plaintiffs' claims would require [] this court to enter into areas implicating the First Amendment." *Ogle v. Church of God*, 153 Fed.Appx. 371, 375-76 (6th Cir. 2005) (internal citations omitted) (defamation and related tort claims of a bishop asserted against the church rejected based upon lack of subject matter jurisdiction where the claims arose out of an internal church investigation).

In this case, Plaintiff's claims questioning the propriety of the decision to include the July 2010 Incident in the Guidepost Report and its relevance to the mandate for the investigation as set forth in the Messengers' Motion as adopted at the 2021 Nashville Convention, as well as questions

---

[4] Courts "ordinarily must apply the choice-of-law rules of the State in which it sits." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n. 8, (1981). A federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Tennessee substantive law therefore governs.

related to the propriety of the Barber Tweet and the Church Letter, necessarily and inextricably intertwine the precise matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them" that are prohibited from review under *Milivojevich*, 426 U.S. at 714, and *Watson*, 80 U.S. at 679. As such, this Court lacks subject matter jurisdiction over Plaintiff's claims and the same must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B.     Plaintiff's Defamation and False Light Claims Fail as a Matter of Law**

Libel is a form of defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). With respect to defamation cases specifically, the Tennessee Supreme Court has recognized that "the Supreme Court of the United States has constitutionalized the law of libel and [defamation]." *Press. Inc. v. Verran*, 569 S.W.2d 435, 440 (Tenn. 1978); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). Consequently, defamation claims present several threshold and outcome-determinative questions of law that do not require any deference to a plaintiff's own characterizations of the statements at issue. *Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012); *McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003). In order to establish a prima facie case for defamation, Plaintiff must prove that: (1) the SBC published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

The Tennessee Supreme Court has adopted the definition of false light invasion of privacy found in Section 652E of the Restatement (Second) of Torts:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

8

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977); *see West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001). When the plaintiff is a public official or public figure, the appropriate standard for false light claims is actual malice. *West*, 53 S.W.3d at 647.

In addition, Tennessee does recognize the doctrine of defamation by implication. *Isbell v. Travis Elec. Co.*, No. M1999-00052-COA-R3-CV, 2000 WL 1817252, at *6 (Tenn. Ct. App. Dec. 13, 2000) (citing *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978)). As the court explained in *Isbell*,

> *Nichols* stands for the proposition that statements literally true may be actionable if they imply facts that are not true. The rationale behind this rule is that, when truthful statements carry a defamatory innuendo, the factual implication should also be true to justify the implication. The proper question is whether the meaning reasonably conveyed by the published words is reasonably understood in a defamatory sense by the reader or listener.

*Id*. (internal quotation marks and citations omitted).

As this Court has stated, "[d]efamation by implication occurs when statements that are true are nevertheless actionable because they imply facts that are not true." *Hudik v. Fox News Network, LLC*, 512 F.Supp.3d 816, 836 (M.D. Tenn. 2021) (quoting *Aegis Scis. Corp. v. Zelenik*, No. M2012-00898-COA-R3-CV, 2013 WL 175807, at *11 (Tenn. Ct. App. Jan. 16, 2013)). Although "'[t]he question of whether [a writing] was understood by its readers as defamatory is a question for the jury,'" "the preliminary determination of whether the [writing] is 'capable of being so understood is a question of law to be determined by the court.'" *Id*. (quoting *Seaton v.*

9

*TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013) (quoting *McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003)).

However, contrary to the case in *Nichols* (where a newspaper ran a story about a wife who shot her husband and another woman (the plaintiff) after the wife found her husband at the other woman's house – falsely implying that she was having an affair), 569 S.W.2d at 414, and contrary to Plaintiff's argument, there is nothing in the Guidepost Report's statements concerning the July 2010 Incident that implies that Plaintiff sexually assaulted a minor. Plaintiff does not even allege the omission of related facts in the Guidepost Report. Rather, Plaintiff's theory is that because the Guidepost Report also contained allegations against other SBC-affiliated church pastors and staff that included sexual abuse against minors, the inclusion of the July 2010 Incident falsely implied that Plaintiff himself is "a sex criminal." Complaint, at ¶ 12.[5] This argument fails as a matter of law.

As cited previously, courts "look to the words themselves and are not bound by the plaintiff's interpretation of them." *Hudik*, 512 F.Supp.3d at 825 (internal citations omitted). There is nothing contained in the Guidepost Report that implies that the woman accuser from the July

---

[5] To the extent Plaintiff relies upon the Barber Tweet, Plaintiff's argument is still unavailing. Tennessee courts have adopted the rule promulgated in the Restatement 2d of Torts (and followed by the United States Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)) that a statement of opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. *American Addiction Centers, Inc. v. National Association of Addiction Treatment Providers*, 515 F.Supp.3d 820, 843 (M.D. Tenn. January 25, 2021) (citing *Stockdale v. Helper*, No. 3:17-cv-00241, 2020 WL 887593, at *23–24 (M.D. Tenn. Feb. 24, 2020)). The Barber Tweet makes no implication of undisclosed facts and cites directly to the Guidepost Report as the basis for his opinion (explicitly stated as "to my knowledge") as to the possible legal implications of the July 2010 Incident. As the Sixth Circuit explained in *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013), the First Amendment protects "statements that cannot reasonably be interpreted as stating actual facts about an individual." *Id*. (quoting *Milkovich*, 497 U.S. at 20 (1990)). Such statements of opinions, about another's behavior, made in "loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining" them as fact are constitutionally protected. *Id*. (quoting *Milkovich*, 497 U.S. at 20-21).

10

2010 Incident was a minor. Both the Barber Tweet and the Church Letter specifically reference the Guidepost Report as the basis for the statements contained therein and, as such, do not constitute any separate or independent actionable defamatory claim. In addition, the Guidepost Report itself, as set forth in the words of the report, covered a variety of subjects of investigation that were not limited to the issue of child sexual abuse. Plaintiff's interpretation of the Guidepost Report, the Barber Tweet and the Church Letter are nothing more than that – his characterizations – which this Court is not bound to accept. To the contrary, the words themselves are not capable of conveying the defamatory meaning Plaintiff asserts.

**C.     Plaintiff is a Public Figure**

If the plaintiff in a defamation case is a public official or public figure, he or she must prove that the libelous statement was made with actual malice – that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Hudik v. Fox News Network, LLC*, 512 F.Supp.3d 816, 825-26 (M.D. Tenn. 2021); *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "Public figures who desire to pursue defamation actions bear a heavy burden of proof because of our society's commitment to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In order to recover damages, public figures – such as Plaintiff – must prove with "convincing clarity" that SBC acted "with actual malice." *Press. Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978); *Moore v. Bailey*, 628 S.W.2d 431, 433 (Tenn. Ct. App. 1981).

As this Court has stated, "[p]ublic figures come in two varieties: general-purpose public figures and limited-purpose public figures. *Santoni v. Mueller*, No. 3:20-cv-00975, WL 97049, at *11 (M.D. Tenn. January 10, 2022) (citing *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*

["Cooley"], 759 F.3d 522, 527 (6th Cir. 2014)). "A limited-purpose public figure is a public figure with respect to 'a limited range of issues,' and one achieves that status by 'voluntarily inject[ing] himself ... into a particular public controversy.'" *Cooley*, at 527. "A general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'"

Plaintiff's own descriptions of himself as (1) an "extraordinarily successful" church leader with "an incredible talent" for leading and growing churches" across the country, Complaint, at ¶¶ 2, 26-27; (2) "the first elected Native American to hold the office of President of the Southern Baptist Convention [] – a cooperative of almost 50,000 Southern Baptist churches across the country," *Id.*, at ¶ 28; and (2) "a sought-after speaker and author" and "a noted speaker at state and national SBC conferences and conventions" *Id.*, at ¶ 29; suffice to establish Plaintiff as a general purpose public figure.

However, even if Plaintiff were not a general purpose public figure, he is, at a minimum, a limited purpose public figure in the context of the SBC and the issues surrounding the Guidepost Report.

As this Court summarized in *Santoni*:

Both federal courts and Tennessee state courts utilize a two-step approach to determine whether an individual is a limited-purpose public figure. *See Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982) (citing [*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)]); *Hibdon v. Grabowski*, 195 S.W.3d 48, 59 (Tenn. Ct. App. 2005). The first step is for the Court to determine whether there is a public controversy. *Clark*, 684 F.2d at 1218; *Hibdon*, 195 S.W.3d at 59. "A public controversy is defined as a real dispute, the outcome of which affects the general public or some identifiable segment of the public in an appreciable way." *Hibdon*, 195 S.W.3d at 59. The public controversy in question must be what "g[ave] rise to the defamation." *Gertz*, 418 U.S. 352. The second step is for the Court to determine whether Plaintiff has become so involved in the public controversy as to constitute a public figure via his involvement. *Id.*; *see also Clark*, 684 F.2d at 1218. There are three factors to consider in reviewing Plaintiff's involvement in a public controversy: the voluntariness of the involvement, the extent to which Plaintiff had

12

access to channels of communication in order to counteract false statements, and the prominence of his role. *Clark*, 684 F.2d at 1218; *see also Hibdon*, 195 S.W.3d at 62.

*Santoni*, 2022 WL 97049, at *11.

Even when viewing the facts alleged in the Complaint in the light most favorable to Plaintiff, it is clear that Plaintiff is, at the very least, a limited-purpose public figure in this case. First, the subject matter as set forth in the Guidepost Report – the "Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations" – is indisputably a matter of "real dispute, the outcome of which affects the general public or some identifiable segment of the public in an appreciable way."[6] *Hibdon*, 195 S.W.3d at 599. Second, this public controversy, and the resulting Guidepost Report, is what Plaintiff claims "g[ave] rise" to the alleged defamation. *Gertz*, 418 U.S. 352.

In addition, Plaintiff's own allegations regarding his role in the SBC during the time period relevant to the Guidepost Report – January 1, 2000 to June 14, 2021 – demonstrate that Plaintiff became so involved in the public controversy as to constitute a public figure via his involvement. *Gertz*, 418 U.S. 352; *see also Clark*, 684 F.2d at 1218. Plaintiff was the President of the Southern Baptist Convention from 2008-2010. Complaint, at ¶ 28; Report, at 149. The July 2010 Incident is alleged to have occurred while Plaintiff was the immediate past SBC president, and Plaintiff himself states in the years since, Plaintiff has been "a sought-after speaker and author" and "a noted speaker at state and national SBC conferences and conventions." Complaint, at ¶ 29; Report, at 149. As such, it is clear that the Complaint sufficiently establishes Plaintiff's status as a limited-purpose figure in this case because Plaintiff's involvement in the public controversy (1) was

_____

[6] As set forth in the Guidepost Report, there are currently over 47,000 Baptist churches in the United States and its territories that cooperate with the SBC, constituting a network of churches that encompasses over 14 million people. Id., at 29.

voluntary; (2) Plaintiff had access to channels of communication in order to counteract false statements; and (3) Plaintiff played a prominent role. *See Clark*, 684 F.2d at 1218; *see also Hibdon*, 195 S.W.3d at 62.

As this Court has acknowledged, the actual malice standard also extends to other tort claims predicated on defamatory speech including false light claims and intentional infliction of emotional distress claims. *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *11 (M.D. Tenn. January 10, 2022) (citing *Armstrong v. Shirvell*, 596 F. App'x 433, 444 n.3 (6th Cir. 2015) ("The requirement that a plaintiff demonstrate actual malice when he is a public figure also applies in the context of false light and intentional infliction of emotional distress."); *Nichols v. Moore*, 393 F. Supp. 2d 783, 799 (E.D. Mich. 2005) (finding that the "actual malice" requirement applied to an intentional infliction of emotional distress claim from a public figure); *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001) ("We hold that actual malice is the appropriate standard for false light claims when the plaintiff is a public official or public figure.").

In determining whether Plaintiff has stated a claim for libel or false light, the Court must consider the publication – the Guidepost Report – in its entirety, rather than just portions selected by Plaintiff. *See, e.g., West v. Media Gen. Operations, Inc.*, 250 F. Supp. 2d 923, 932 (E.D. Tenn. 2002); *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000). The statements must be read as persons of ordinary intelligence would understand them, in light of the surrounding circumstances. *See, e.g., Pate v. Service Merch. Co. Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996). Most importantly, the Court is "not bound by plaintiff's interpretation." *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

14

**D.      The Complaint Fails to Contain Factually Supported Averments of Actual Malice**

The Complaint establishes that Plaintiff is a public figure for purposes of the public controversy and dispute concerning the subject matter of the Guidepost Report.  As such, Plaintiff is required to plead and prove facts establishing, as a matter of law, the constitutional actual malice standard – i.e., that the challenged statements were made with knowledge of their falsity or reckless disregard for their truth. *West*, 53 S.W.3d at 647-48.  This high burden must be established by "clear and convincing evidence" under Tennessee law, requiring "a total disregard for the truth." *Id*. at 637 (citing *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (U.S. 1989)); *see, e.g., Lewis v. NewsChannel5Network, L.P.*, 238 S.W.3d 270 (Tenn. Ct. App. 2007); *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69 (Tenn. Ct. App. 1986). "This rule is founded on the concept that First Amendment freedom of speech protections require a certain degree of 'breathing space' in order to survive." *Id*. at 636 (citing *Harte-Hanks* at 686).

Accordingly, to survive a motion to dismiss, Plaintiff must plead facts, and not merely conclusory assertions, that show "more than a sheer possibility" that SBC acted unlawfully by publicly releasing the Guidepost Report on May 22, 2033, and with actual malice. *Iqbal,* 556 U.S. at 678.  Plaintiff's Complaint fails to do so.  Instead, the sole allegations in the Complaint attempting to allege actual malice amount to nothing more than the bare assertions that "Defendants acted either with knowledge that the statements were false or with reckless disregard of whether the statements were false or not."  Complaint, at ¶ 76, 86, 97.

Plaintiff's Complaint fails to allege any actual facts which would tend to show that the SBC had any knowledge that the reports concerning the July 2010 Incident were false or had any knowledge of probable falsity.  *See Campbell v. Robinson*, 955 S.W.2d 609, 613 (Tenn. Ct. App. 1997) (dismissing defamation case for failure to state a claim where the "complaints fail to allege

15

any facts which would tend to show that the publishers of the statements alleged to be false, had any knowledge of probable falsity").

Where actual malice allegations do not amount to more than legal conclusions couched as facts, courts routinely dismiss libel and false light claims. In *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012), the plaintiff's complaint used "actual malice buzzwords," including that the defendant had "knowledge" that its statements were "false" or had "serious doubts" about their truth and a "reckless disregard" for whether they were false. *Id.*, at 56. Nonetheless, the court held that these are merely legal conclusions, which must be backed by well-pled facts. *Id.*; *see also Mayfield v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (rejecting the plaintiff's argument "that allegations of malice need only be articulated in the most general terms," the court held that the complaint's allegation that the defendants' statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient. This kind of conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."); *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 289 (E.D. Pa. 2016) (Plaintiff's allegations did not satisfy the *Twombly/Iqbal* standard, as merely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations.).

Here, Plaintiff's claim of actual malice is at best pled in a conclusory fashion and lacks any facts showing "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Trigg v. The Elk Valley Times*, 720 S.W.2d 69, 75 (Tenn. Ct. App. 1986) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "Plaintiff must show that 'a false publication was made with a high degree of awareness of ... probable

falsity.... There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.... Failure to investigate does not in itself establish bad faith.'" *Id*. (quoting *St. Amant*, 390 U.S. at 731-33). Plaintiff did not and cannot plead facts to demonstrate that the SBC acted with the requisite degree of fault. To the contrary, a review of the Guidepost Report and the Complaint show a complete absence of constitutional actual malice. The Guidepost Report simply reported its investigation into a report of sexual assault against Plaintiff, who was the immediate past president of the SBC at the time, brought to the Guidepost investigators by an SBC pastor and his wife. The Guidepost Report detailed all the information it received from all sides, including that of Plaintiff, pertaining to the July 2010 Incident.

Plaintiff appears to believe that Guidepost and the SBC should have simply overlooked the July 2010 Incident, and rejected the results of the Guidepost investigation because Plaintiff disagrees with the Guidepost investigators opinions regarding the credibility of witnesses and believes that the July 2010 Incident is outside the scope of Guidepost's mandate from the Engagement Letter. Complaint, at 56-58. Plaintiff's beliefs notwithstanding, they fall well short of an actual malice allegation. Because Plaintiff has not pled facts sufficient to show that the SBC acted with actual malice – nor could he plead such facts – Plaintiff's claims should be dismissed.

**E.** **Plaintiff's Emotional Distress Claims Fail as a Matter of Law**

"The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn.2012) (citations omitted). In *Weaver v. Pardue*, the Tennessee Supreme Court observed that "[a] plaintiff's burden to demonstrate outrageous conduct

17

'is not an easy burden to meet.'" *Weaver v. Pardue*, 2010 WL 4272687, at *5 (Tenn. Ct. App. 2010)

(quoting *Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418, 428 (Tenn. Ct. App. 2006)). In *Rogers*

*v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012), the Tennessee Supreme Court outlined the

elements of the tort of negligent infliction of emotional distress and compared it to intentional

infliction of emotional distress:

> The elements of a claim for negligent infliction of emotional distress include the
> elements of a general negligence claim, which are duty, breach of duty, injury or loss,
> causation in fact, and proximate causation. In addition, the plaintiff must prove that
> the defendant's conduct caused a serious or severe emotional injury. Thus, both
> actions for intentional infliction of emotional distress and negligent infliction of
> emotional distress ... require an identical element: a showing that the plaintiff suffered
> a serious mental injury resulting from the defendant's conduct.

*Rogers*, 367 S.W.3d at 206 (internal citations and footnotes omitted).

However, as established by the United States Supreme Court, the Free Speech Clause of

the First Amendment can serve as a defense in state tort suits, including suits for infliction of

emotional distress. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citing *Hustler Magazine, Inc. v.

Falwell*, 485 U.S. 46, 50–51 (1988). Whether the First Amendment prohibits holding a defendant

liable for its speech turns largely on whether that speech is of public or private concern, as

determined by all the circumstances of the case. *Id.*

"Speech deals with matters of public concern when it can 'be fairly considered as relating

to any matter of political, social, or other concern to the community,' *Id.*, at 453 (quoting *Connick

v. Myers*, 461 U.S. 138, 146 (1983)), or when it 'is a subject of legitimate news interest; that is, a

subject of general interest and of value and concern to the public,'" *Id.* (quoting *San Diego v. Roe*,

543 U.S. 77, 83-84 (2004)). "The arguably 'inappropriate or controversial character of a statement

is irrelevant to the question whether it deals with a matter of public concern.'" *Id.* (quoting *Rankin

v. McPherson*, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

As the *Snyder* court explained:

> Deciding whether speech is of public or private concern requires us to examine the
> " 'content, form, and context' " of that speech, " 'as revealed by the whole record.'
> " [*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985)]
> (quoting *Connick*, supra, at 147–148, 103 S.Ct. 1684).   As in other First
> Amendment cases, the court is obligated "to 'make an independent examination of
> the whole record' in order to make sure that 'the judgment does not constitute a
> forbidden intrusion on the field of free expression.' " *Bose Corp. v. Consumers
> Union of United States, Inc.,* 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502
> (1984) (quoting *New York Times*, supra, at 284–286, 84 S.Ct. 710). In considering
> content, form, and context, no factor is dispositive, and it is necessary to evaluate
> all the circumstances of the speech, including what was said, where it was said, and
> how it was said.

*Id.*, at 453-54.

As set forth above, the content, form, and context of the Guidepost Report, as revealed by
the record as a whole, clearly meets the applicable standard as it can fairly be considered as relating
to a matter of political, social, or other concern to the community.  Even further, as acknowledged
by Plaintiff's citation to other media reports in the Complaint, *see* Complaint, at ¶¶ 65-67, the
Guidepost Report was a subject of legitimate news interest, as well as the subject of general interest
and of value and concern to the public.

Accordingly, as established by the United States Supreme Court, the First Amendment
prohibits holding the SBC liable in state court suits for the information contained in the Guidepost
Report under the circumstances of this case.  As such, Plaintiff's emotional distress claims fail as
a matter of law.

**F.     Plaintiff's "Public Disclosure of Embarrassing Private Facts Claim Fails as a Matter
of Law**

Plaintiff's articulation of his assertion of this cause of action states that "the true facts
published by the Defendants (i.e., the fact that [Plaintiff] and the accuser engaged in a brief,
inappropriate encounter)" "was a private fact that was not a matter of public concern."  Complaint,

at ¶ 115.  The Tennessee Supreme Court has not expressly recognized the public disclosure of private facts form of invasion of privacy.  *See Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 411 (Tenn. 2002) (stating that the Tennessee Supreme Court has recognized false light and unreasonable intrusion into private affairs forms of invasion of privacy but has reached "no decision as to whether the other forms of invasion of privacy listed in the Restatement (Second) of Torts are actionable").  However, even applying the Restatement (Second) of Torts § 652D, common law invasion of privacy does not create liability for the disclosure of information, even if "highly offensive to a reasonable person" regarding matters "of legitimate public concern." Despite Plaintiff's claim to the contrary, and as set forth in greater detail above, the information reported by the Guidepost Report were clearly matters of "public concern," including the July 2010 Incident.  As such, the SBC is entitled to a dismissal of Plaintiff's "public disclosure" claim as well.

## V.    **CONCLUSION**

Based upon the argument and authority cited above, the SBC requests that the Court dismiss Plaintiff's Complaint with prejudice.

**DATED:  May 4, 2023**

Respectfully submitted,

**TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC**

By: _____/s/ Matthew C. Pietsch_____
          L. Gino Marchetti, Jr., BPR No. 005562
          Matthew C. Pietsch, BPR No. 024659
          2908 Poston Avenue
          Nashville, TN 37203
          (615) 320-3225
          (615) 320-3244 Fax
          gmarchetti@tpmblaw.com
          matt@tpmblaw.com
          *Counsel for Defendant*
          *Southern Baptist Convention*

21

## CERTIFICATE OF SERVICE

      The undersigned certifies that a true and complete copy of the foregoing has been served through the Court's electronic filing system to the following on **May 4, 2023**:

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen, Esq.
Bradley Arant Boult Cummings, LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
gbesen@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katherine R. Klein, Esq.
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
600 Third Avenue, 25th Florr
New York, NY 10016
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions, LLC*

Robert D. MacGill, Esq.
Scott E. Murray, Esq.
Patrick J. Sanders, Esq.
MacGill PC
156 E. Market Street, Suite 1200
Indianapolis, IN 46204
Robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
Patrick.sanders@macgilllaw.com

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
Cole Law Group, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

*Counsel for Plaintiff*

                       */s/ Matthew C. Pietsch*