IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-00243 |
| | ) |
| SOUTHERN BAPTIST CONVENTION; | ) Judge Richardson |
| GUIDEPOST SOLUTIONS LLC; and | ) Magistrate Judge Frensley |
| EXECUTIVE COMMITTEE OF THE | ) Jury Demand |
| SOUTHERN BAPTIST CONVENTION, | ) |
| | ) |
| Defendants. | ) |

## PROPOSED INITIAL CASE MANAGEMENT ORDER

Counsel for the parties met and conferred as to a discovery and case management plan on May 1, 2023, and respectfully submit this proposed Initial Case Management Order.

A. JURISDICTION: The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants have moved to dismiss, in part, on the grounds that the court lacks subject matter jurisdiction. (*See* Docs. 25, 29, and 31).

B. BRIEF THEORIES OF THE PARTIES:

**For Plaintiff:** Plaintiff JOHNNY M. HUNT is a dedicated and extraordinarily successful pastor who was previously elected to hold the office of President of the Southern Baptist Convention (the "SBC") – a cooperative of almost 50,000 Southern Baptist churches across the country. In May 2022, more than a decade after Plaintiff's service as the SBC President had ended, the SBC became engulfed in a public relations nightmare, facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches for years, enabling perpetrators to move from church to church without consequence. Despite Plaintiff's having nothing to do with any of these awful allegations against the SBC, the SBC, and the firm engaged by the SBC – Defendant Guidepost

1

Solutions LLC ("Guidepost") – decided to use Plaintiff as their scapegoat.

On May 22, 2022, Guidepost, the SBC and its leadership publicly released a report that purported to focus on whether the SBC's executive leadership had inappropriately responded to allegations of child and other sexual abuse. Despite Plaintiff's not being accused of ignoring reports of child or other abuse and not being accused of some similarly heinous crime, Plaintiff was the first person named in the report because of a brief, extramarital encounter with an adult woman in 2010 that had been disclosed to Guidepost investigators during the investigation. Shortly following Plaintiff's brief, inappropriate, extramarital encounter with the woman in 2010, the encounter was disclosed to Plaintiff's spouse and the woman's spouse, and Plaintiff and the woman jointly sought counseling and forgiveness. The encounter involving Plaintiff was wholly unrelated to the types of reports that led to Guidepost's engagement by the SBC, and it should not have been included in Guidepost's report or published at all.

Defendants knowingly, intentionally, and strategically decided to feature the allegation against Plaintiff in their public report to deflect attention from the SBC's historical failure to aggressively respond to reports of child sex abuse and other sex crimes. Defendants' focus on the allegation against Plaintiff – an allegation by an adult woman that involved noncriminal conduct – and subsequent aggressive action against Plaintiff, amounted to an effort by Defendants to create an appearance that the SBC had learned from its previous mistakes and is now working to protect victims of sex crimes. Plaintiff asserts that Defendants intentionally and maliciously created the false impression that Plaintiff is a sex criminal, and that Plaintiff has suffered significant damages as a result of Defendants' public release of their report and related false allegations against him. Plaintiff's damages include, but are not limited to, the loss of his job, lost income from speaking engagements, and lost income from publishing opportunities. Defendants' actions against Plaintiff are defamatory, have caused Plaintiff significant damages, and have caused Plaintiff extreme mental anguish and emotional distress, and Defendants should be held liable.

**For Defendant Southern Baptist Convention:** In June 2021, after sustained efforts by many within the SBC community to address the problem of sexual abuse within SBC churches, a Sexual Abuse Task Force was approved to oversee an independent third-party review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives" by the Executive Committee between January 1, 2000 to June 14, 2021. Guidepost was engaged to conduct the independent investigation which resulted in the "Report of the Independent Investigation: The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee" that was issued by Guidepost on May 15, 2022 (the "Guidepost Report").

During the course of Guidepost's investigation into allegations of abuse during the relevant time period, "an SBC pastor and his wife came forward to report that former SBC President [Plaintiff] Johnny Hunt (2008-2010), who was the immediate past president at the time, had sexually assaulted his wife on July 25, 2010" (the "July 2010 Incident"). The Guidepost Report went on to summarize the allegations and the ensuing investigation. Guidepost investigators "conducted multiple interviews with the couple," forensically examined electronic data from 2009-2010 that pertained to portions of the couples' report, contacted multiple witnesses with relevant information, and interviewed Plaintiff himself – twice. As stated in the Guidepost Report, Guidepost included this sexual assault allegation in the report because the Guidepost investigators found the couple to be credible; their report was corroborated in part by other credible witnesses; and Guidepost investigators did not find Plaintiff to be credible in their interviews with him.

Despite Plaintiff's high-profile status and the serious nature of the allegations that were reported to the Guidepost investigators during the course of their investigation, Plaintiff claims in this lawsuit that the inclusion of the July 2010 Incident in the Guidepost Report constitutes actionable defamation and

3

related torts on the part of all the defendants, including the SBC. The SBC has moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim. Assuming this Court has subject matter jurisdiction, Plaintiff's claims lack merit because, among other reasons, Plaintiff is a public figure who cannot show "actual malice" on the part of the SBC, and the statements at issue relate to a matter of public concern.

**For Guidepost:** Plaintiff Johnny M. Hunt was once the President of the Southern Baptist Convention ("SBC"), the largest Protestant denomination in the United States, representing almost 50,000 congregations nationally. By Hunt's own account, until he was accused of sexual abuse by the wife of a fellow Baptist minister (the "accuser"), he was the pastor of a megachurch in Georgia and a sought-after speaker and author.

After accounts of widespread sexual abuse on the part of SBC clergy and church staff, the SBC's Executive Committee ("EC"), acting in conjunction with a Sexual Abuse Task Force appointed by the SBC President (the "SBC Task Force"), commissioned Guidepost to conduct an investigation into, among other things, allegations of sexual abuse by EC members (which included Hunt at one time). When Guidepost was investigating these matters, the accuser and her husband came forward with the allegation that Hunt had sexually assaulted her in 2010. Following interviews with the accuser and several witnesses (as well as two interviews with Hunt), Guidepost submitted a report to the SBC Task Force that identified Hunt as one of many sexual offenders in the SBC's leadership (the "Report").

After the SBC Task Force uploaded and published the Report on its website, Hunt sued the SBC, the EC, and Guidepost in this action, asserting claims for libel, intentional and negligent infliction of emotional distress and invasion of privacy, all of which arise out of what Hunt claims are defamatory statements in the Report.

Guidepost has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6)

4

on the grounds that the ecclesiastical abstention doctrine bars this action because Hunt's tort claims are inextricably intertwined with the SBC's institutional response to the sexual abuse crisis in the church and the conduct of its governing body.

Furthermore, Hunt is a public figure and has failed plausibly to allege that Guidepost published the Report with actual malice. Moreover, Guidepost enjoyed a qualified privilege to publish the statement to its client, the SBC. Finally, apart from constitutional defenses and the defense of privilege, the Complaint otherwise fails plausibly to allege viable tort claims on the merits.

If the Motion to Dismiss is denied, Guidepost will submit an Answer to assert affirmative defenses.

**For Executive Committee of the Southern Baptist Convention:** The messengers of the SBC voted to create the Sexual Abuse Task Force (the "Task Force") to investigate allegations that the SBC and the Executive Committee of the Southern Baptist Convention (the "EC") ignored sexual abuse within its ranks. The Task Force engaged Guidepost to conduct an independent investigation into the actions and decisions of the EC staff and members pursuant to the direction of the SBC messengers.

One of the individuals Guidepost uncovered in the investigation was none other than former SBC President Hunt. According to Guidepost, when confronted with sexual abuse allegations against him, Hunt initially claimed he did not know the woman or her husband. Hunt, however, later remembered that he had known the woman and her husband for "at least twenty years" but did not have any "contact whatsoever" with her even though he separately confessed in counseling "to a light kiss, touching [her] breasts over the clothes, and trying to pull her shorts down." According to Guidepost's report, Guidepost corroborated the allegations against Hunt by talking to three witnesses, a counselor, and examining computer records. Yet Hunt continued to maintain his innocence and demanded silence from his accuser and her husband.

Hunt seeks relief in this Court for a "case about defamation and invasion of privacy." This time, however, Hunt tells a new story. After telling Guidepost that he did not have any "contact whatsoever" with his accuser, Hunt finally acknowledges he "had a brief, inappropriate, extramarital encounter with a married woman" that involved "kissing and some awkward fondling." Hunt also alleges he did not initiate this "encounter," which flatly contradicts Hunt's prior story to Guidepost that "[the woman] never [came] on to him . . ." Worse yet, Hunt says he "ended the encounter" after realizing it "was a sin."

The EC has moved to dismiss Hunt's Complaint for lack of subject matter jurisdiction and for failure to state a claim. (Doc. 31). If this Court has subject matter jurisdiction, Hunt's claims should still be dismissed because Hunt has not articulated any conduct by the EC that could sustain any claim against it. Even if Hunt could point to any actionable conduct by the EC, Hunt is a public figure and cannot show that the EC acted with "actual malice" to sustain his claims for defamation, defamation per se, false light, or intentional infliction of emotional distress. Alternatively, these claims still fail because the EC has not acted negligently in making any statement. Hunt's intentional infliction of emotional distress claim also fails because any conduct by the EC was not "extreme or outrageous," and Hunt has not suffered any serious mental injury. As to the negligent infliction of emotional distress claim, that claim is without merit because (1) the EC did not owe Hunt a duty, and if it did, the EC did not breach it, and (2) Hunt has not suffered a serious or severe mental injury or a physical injury. Finally, Hunt's claim for public disclosure of private facts is not actionable because the matters at issue where either not publicly disclosed or were statements made in response to a matter of public concern.

C. ISSUES RESOLVED: Personal jurisdiction and venue.

D. ISSUES STILL IN DISPUTE: Subject matter jurisdiction, choice of law, liability, and damages. Defendants have separately moved to dismiss for lack of subject matter jurisdiction and for failure to state claims for relief. (*See* Docs. 25, 29, and 31).

E.  INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before **June 16, 2023**.

F.  CASE RESOLUTION PLAN AND JOINT STATUS REPORTS: The parties are encouraged to consider the Alternative Dispute Resolution options provided in Local Rules 16.02 through 16.05. Approximately fourteen (14) days after the conclusion of fact discovery, the parties shall submit a joint report confirming that the parties made a good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either joint report or separately, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

G.  DISCOVERY: The parties shall complete all written discovery and depose all fact witnesses on or before **February 2, 2024**. Written discovery should proceed promptly (unless otherwise provided for herein) and shall be served by no later than **December 1, 2023**. Discovery is not stayed during dispositive or other motions, unless ordered by the Court.

A party may not bring a discovery dispute to the Court for resolution before lead counsel for that party has held a telephonic or in-person discussion with lead counsel for every one of the parties adverse to it with respect to the dispute (which, in the case of multiple adverse parties, may occur separately with different adverse parties) and has made a good-faith effort to resolve the dispute. Discovery disputes that cannot be resolved after the required discussion(s) should be brought promptly to the attention of the Magistrate Judge via a request for a discovery conference. It will be within the Magistrate Judge's discretion whether to allow for the filing of discovery-related motions. All discovery motions shall be filed by no later than **February 2, 2024**. In connection with any discovery conference

7

or discovery motion, the applicable parties shall file a joint discovery dispute statement, which describes the specific discovery request(s) in dispute and details each party's position with supporting fact and legal authorities. The joint discovery dispute statement shall certify that lead counsel for every applicable party held the aforementioned telephonic or in-person discussion(s) and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01(a)(2) or (a)(3), but must clearly state in the filing (made in accordance with any timing requirements set forth in Local Rule 7.01(a)(3)) that the joint statement is adopted as the party's memorandum of law or response, as the case may be.

H. MOTIONS TO AMEND OR TO ADD PARTIES: Any motions to amend or to add parties shall be filed by no later than **September 1, 2023** and must comply with Local Rules 7.01 and 15.01.

I. DISCLOSURE AND DEPOSITIONS OF EXPERTS: The party bearing the burden of proof on an issue shall identify and disclose all expert witnesses and expert reports on or before **February 23, 2024**. The party not bearing the burden of proof on the issue shall identify and disclose all expert witnesses and reports on or before **March 29, 2024**. Rebuttal experts shall be permitted only by leave of court. Unless otherwise provided for in a separate pretrial order, supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e). Supplemental expert opinions or other expert disclosures not timely disclosed may be excluded at trial. *See* Local Rule 39.01(c)(5)(C). Expert depositions shall be completed by **April 26, 2024**.

J. SUBSEQUENT CASE MANAGEMENT CONFERENCE. A subsequent case management conference shall be held telephonically on **October 20, 2023**, to address: status of

discovery (including any known or anticipated discovery issues or disputes); prospect for settlement (including propriety of ADR); and, any other appropriate matters. Plaintiff's counsel shall initiate the call.

K.       DISPOSITIVE MOTIONS: As provided above, the parties must attempt to resolve the case prior to the filing of dispositive motions. Dispositive motions shall be filed by no later than **June 7, 2024**. Responses to dispositive motions shall be filed within 28 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 5 pages. No motion for partial summary judgment shall be filed except by permission of the Court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court.

L.       ELECTRONIC DISCOVERY. Except as expressly provided below, the default standards of Administrative Order No. 174-1 will apply to this case. The parties agree that:

  i. Discovery requests and responses shall be served via email simultaneously upon all counsel of record.

  ii. In accordance with Federal Rule of Evidence 502(d), the intentional or inadvertent disclosure of communications, information, or documents covered by the attorney-client privilege or work-product protection is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Accordingly, the provisions of Federal Rule of Evidence 502(b) do not apply, and the disclosing party is not required to satisfy the elements of Rule 502(b) to properly assert the attorney-client privilege or work-product protection over disclosed communications, information, and documents. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

iii. ESI will presumptively be produced in single page TIFF or PDF format, with accompanying extracted text files at a document level, with an accompanying standard load file from a document management system (e.g., Concordance load files). All documents will have the file name of the beginning Bates number. If preserved in a "drag and drop" collection without use of a computer forensic expert or specialized software, the following metadata fields should be extracted and provided (availability depending on document type): BegDoc#, EndDoc#, Custodian, FileName, FilePath, FileExtension, From, To, BCC, CC, DateSent, TimeSent, DateReceived, TimeReceived, Subject (Email Topic), AttchIDs, AttchBegin, AttchEnd, DateCreated, DateModified, Title, Author, and FileSize, TextFile Path, NativeFile Path. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the electronically stored information or that do not exist as part of the original metadata of the document. For all documents that are only readily usable in their native format, including but not limited to database files, Excel/Spreadsheets, Powerpoint files (produced natively only upon request, otherwise produced as a normal document), and Audio/Video files the parties will produce those documents natively with a corresponding placeholder Tiff image or PDF bearing the relevant bates stamp and cross-referenced in the load files noted above and assigned the same unique Bates number as the native file. The parties agree that de-duplicating and email threading may be used without further disclosure. All data transfers shall be done with encryption (secure FTP or other mode of encryption such as password protected .ZIP, .RAR files or hard drives).

M.     **MODIFICATION OF CASE MANAGEMENT ORDER.** Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(h)(1) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally schedule deadline and the facts demonstrating good cause for modification of the deadline as required

10

by Fed. R. Civ. P. 16(b)(4).

N.　　ESTIMATED TRIAL TIME AND TARGET TRIAL DATE: The **JURY** trial of this action is expected to last approximately **ten (10)** days. A trial date no earlier than **November 12, 2024** is respectfully requested.[1]

It is so **ORDERED.**

							_____
							Hon. Jeffery S. Frensley
							United States Magistrate Judge

---

[1] The parties were also reminded during the case management conference of their option to consent to final disposition by the Magistrate Judge pursuant to Fed. R. Civ. P. 73 and Local Rule 73.01. As discussed, if the parties wish to utilize this option, they may jointly complete and electronically file the form Notice, Consent and Reference of a Civil Action to a Magistrate Judge found on the Court's website under the link for Forms. Not consenting will not result in any adverse consequences, and the Notice should be filed **only if all parties consent** to final disposition by the Magistrate Judge.

APPROVED FOR ENTRY:

/s/ Andrew Goldstein
_____

Attorney for Plaintiff


/s/ Matthew C. Pietsch (by consent)
_____

Attorney for Defendant Southern Baptist Convention


/s/ Steven G. Mintz (by consent)
_____

Attorney for Defendant Guidepost Solutions LLC


/s/ R. Brandon Bundren (by consent)
_____

Attorney for Defendant Executive Committee of the Southern Baptist Convention

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Proposed Initial Case Management Order to be electronically filed with the Clerk of the Court on May 18, 2023, using the CM/ECF system, which will automatically serve all counsel of record listed below:

E. Todd Presnell, Esq.
Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202

*Counsel for the Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katharine R. Klein, Esq.
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
MINTZ & GOLD LLP
600 Third Avenue, 25th Fl.
New York, New York 10016
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

L. Gino Marchetti, Jr., Esq.
Matthew C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, Tennessee 37203
gmarchetti@tpmblaw.com

*Counsel for the Southern Baptist Convention*

Robert D. MacGill, Esq.
Scott E. Murray, Esq.
Patrick J. Sanders, Esq.
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, Indiana 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

/s/ Andrew Goldstein
ANDREW GOLDSTEIN