IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY M. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-00243 |
| | ) | |
| SOUTHERN BAPTIST CONVENTION; | ) | JUDGE RICHARDSON |
| GUIDEPOST SOLUTIONS LLC; and | ) | MAGISTRATE JUDGE FRENSLEY |
| EXECUTIVE COMMITTEE OF THE | ) | |
| SOUTHERN BAPTIST CONVENTION, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS

---

This case arises from the Defendants' mass distribution of private, embarrassing information about Pastor Johnny Hunt and their decision to misleadingly feature him in a highly publicized Report alongside child molesters, rapists and sex criminals. The information about Pastor Johnny – that he had a brief, consensual extramarital encounter with the wife of another pastor – had nothing to do with the Defendants or the controversy that led to their Report. Indeed, the Report itself purported to focus on the response by SBC executive staff to allegations that "child molesters and other abusers . . . were in the pulpit or employed as church staff." But the information about Pastor Johnny was unrelated to any such response or to any public issue or controversy facing the SBC. Instead, it was private information, and it should have stayed that way.

But it did not. Instead, in May 2022, the Defendants released a 288-page Report that largely rehashed previously disclosed incidents of child molestation, rape, and other sex crimes

within churches affiliated with the SBC. Pastor Johnny had no connection to these heinous crimes. Nonetheless, Pastor Johnny was the first person mentioned in the Report, and 13 pages were dedicated to allegations that, in 2010 – after his short tenure as president of the SBC had ended – he had briefly kissed and fondled the wife of another pastor.

Prior to issuance of this Report, the only people who knew about this encounter were Pastor Johnny, the woman involved, each of their spouses, and a counselor they had jointly consulted afterwards. Not only did the Defendants disclose this private information to the world, but they also falsely labeled the incident as a "sexual assault." By using this incorrect term and then featuring the information about Pastor Johnny in their public Report that otherwise focused on criminal conduct, the Defendants created the false impression that Pastor Johnny is an accused sex criminal, even though Defendants now concede – as they must – that the allegations against him do not fit the definition of a crime. Pastor Johnny has suffered reputational, pecuniary, and emotional damages as a result of Defendants' false statements, and he is entitled to recover damages for defamation, invasion of privacy, and related claims.

Attempting to evade liability, the Defendants filed three largely duplicative motions to dismiss. None should succeed. First, Defendants cannot avoid this Court's jurisdiction by invoking the ecclesiastical abstention doctrine. Pastor Johnny's civil tort claims do not involve any church doctrine, practice, or adjudicatory proceeding. They involve the neutral application of secular law to public statements. The abstention doctrine does not apply. Second, the Complaint plausibly alleges claims for defamation, false light, infliction of emotional distress, and invasion of privacy. Contrary to Defendants' argument, Pastor Johnny is neither a "general-purpose public figure" nor a "limited-purpose public figure" for purposes of the First Amendment. And, in any event, Pastor Johnny has plausibly alleged that Defendants acted with malice because they either

2

knew or were recklessly indifferent to the fact that – as they now admit – the allegations against him did not describe a criminal act.

As set forth below, Defendants' remaining arguments also fail. This Consolidated Opposition first addresses the common arguments made by all three Defendants and then separately addresses the Defendant-specific arguments. All three motions should be denied.

## I. FACTS ALLEGED IN THE COMPLAINT

Pastor Johnny is a dedicated servant who has worked his entire adult life to help other people. (Compl. ¶ 2.) He has been extraordinarily successful, eventually serving for two years as the President of the Southern Baptist Convention (the "SBC") – a cooperative of almost 50,000 Southern Baptist churches across the country. *Id.*

But Pastor Johnny has also made mistakes in his life. *Id.* ¶ 3. In particular, in 2010 – after his term as SBC President had ended – Pastor Johnny had a brief extramarital encounter with a married woman. *Id.* Some of the precise details are disputed, but it is undisputed that Pastor Johnny abruptly ended the encounter, both Pastor Johnny and the woman disclosed the encounter to their spouses, and they jointly sought counseling and forgiveness. *Id.* This was a private failing by Pastor Johnny and the woman involved, and the story should have ended there. *Id.* ¶ 4.

Instead, in May 2022, more than a decade after Pastor Johnny's service as the SBC President had ended, the SBC was facing a public relations nightmare. *Id.* ¶ 5. Like the Catholic church before it, the SBC was facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches for years, enabling perpetrators to move from church to church with impunity. *Id.* As an example, in 2019, the Houston Chronicle published a six-part series of articles on the SBC entitled "Abuse of Faith." *Id.* ¶ 6. The first article ran under the headline: "20 years, 700 victims: Southern Baptist sexual abuse spreads as leaders resist reforms," and it included a collection of "mug shots" for 218

3

people who were said to have "worked or volunteered in Southern Baptist churches and were convicted of or pleaded guilty to sex crimes." *Id.*

Pastor Johnny had nothing to do with these awful allegations. *Id.* ¶ 7. Nonetheless, the SBC, its leadership, and the firm hired for "damage control" – Defendant Guidepost Solutions LLC ("Guidepost") – decided to use Pastor Johnny as their scapegoat. *Id.* On May 22, 2022, Guidepost, the SBC, and its leadership publicly released a Report that purported to focus on whether staff of the Executive Committee of the SBC (the "Executive Committee") had inappropriately responded to allegations of child and other sexual abuse. *Id.* ¶ 8. But the first name mentioned in the Report was Pastor Johnny – not because he was accused of ignoring reports of child or other abuse and not because he was accused of some similarly heinous crime. *Id.* Instead, Pastor Johnny was named because the woman with whom he had the brief, extramarital encounter in 2010 had disclosed that encounter to the Guidepost investigators. *Id.* ¶ 9.

The encounter involving Pastor Johnny had nothing to do with the types of reports that led to Guidepost's engagement. *Id.* ¶ 10. It should not have been included in Guidepost's Report. *Id.* Indeed, it should not have been published at all. *Id.* Defendants' decision to feature the allegation against Pastor Johnny in their public Report was a strategic decision to deflect attention from the SBC's historical failure to take aggressive steps to respond to reports of child sex abuse and other sex crimes in its past. *Id.* ¶ 11. By focusing on the allegation against Pastor Johnny – an allegation by an adult woman that involved noncriminal conduct – and by then taking aggressive action against Pastor Johnny, the Defendants sought to create the appearance that the SBC has learned from its previous mistakes and was working to protect victims of sex crimes. *Id.*

But by publishing the allegation against Pastor Johnny in a Report purporting to focus on "child molesters and other abusers," Defendants intentionally and maliciously created the false impression that Pastor Johnny is a sex criminal. *Id.* ¶ 12. As recently as December 5, 2022, the SBC's president reinforced this false impression by publishing a Tweet in which he falsely asserted that the allegations against Pastor Johnny would "constitute a felony in any jurisdiction in the US." *Id.* Similarly, in the months since publishing the Report, the SBC has continued to falsely assert that Pastor Johnny has been accused of "sexual abuse," which the SBC itself has defined as conduct that would lead to "criminal charges or civil liability in the jurisdiction where it occurred." *Id.* ¶ 74. Even in its filings in this Court, Guidepost continues to refer to Pastor Johnny as a "sex offender" – which is defined as a "person who has been convicted of a crime involving sex." (Guidepost Mot., Doc. No. 27 at 2; Sex Offender, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sex%20offender.)

Pastor Johnny's life forever changed when the Defendants publicly released their Report. He lost his job; he lost income from speaking engagements; and he lost income from publishing opportunities. *Id.* ¶ 13. His losses are substantial, and Defendants should be held liable.

## II.     PLAINTIFF'S RESPONSE TO DEFENDANTS' COMMON ARGUMENTS

### A.     This Court has subject matter jurisdiction – the ecclesiastical abstention doctrine does not apply.

Defendants cannot evade liability for their tortious conduct by invoking the ecclesiastical abstention doctrine. Pastor Johnny's claims in this case center on whether the Defendants defamed him and invaded his privacy by publicly reporting that he had been accused of committing a "sexual assault" and featuring this assertion in a Report focused on child molesters and sex criminals. Pastor Johnny's claims apply neutral principles of tort law in a purely civil dispute. Nothing in the Complaint would require the Court to delve into matters of religious

doctrine, free-exercise rights, or church government. The ecclesiastical abstention doctrine simply does not apply.

The Sixth Circuit's opinion in *Ogle v. Hocker,* 279 F. App'x 391 (6th Cir. 2008), is directly on point. In that case, plaintiff Ogle complained that defendant Hocker committed the civil torts of defamation and intentional infliction of emotional distress by making derogatory statements during certain sermons and in other contexts. *Id.* at 394. Hocker moved to dismiss by invoking the ecclesiastical abstention doctrine.

In rejecting Hocker's position, the Sixth Circuit first noted that Ogle was not challenging the decision of "an ecclesiastical body relating to the employment of a minister." *Id.* at 395. The Sixth Circuit also rejected Hocker's attempt to rely on a broad "church autonomy" rationale for the abstention doctrine. With respect to this argument, the Sixth Circuit noted:

> Whether a secular court may hear a tort suit despite the church autonomy doctrine turns on the availability of secular standards and the ability of a court to resolve the controversy without reference to religious doctrine.

*Id.* The court then observed: "Like the inquiry into a hostile work environment . . . , the laws of defamation and intentional infliction of emotional distress (when based on defamation) can be applied based solely on secular rules." *Id.*

The facts here are similar. Pastor Johnny has asserted civil tort claims for defamation, false light, infliction of emotional distress, and invasion of privacy. These claims arise from statements made by Defendants in a publicly-released document. Pastor Johnny's claims turn on factual statements made by the Defendants, whether those statements were false, whether Defendants failed to exercise the applicable standard of care, whether the Defendants published the statements, whether the information was private and embarrassing, and the degree to which Pastor Johnny was damaged. None of these issues involve any matter of church doctrine or practice. Instead, as in *Ogle*, Pastor Johnny's claims "can be resolved through application of

6

secular standards without any impingement upon church doctrine or practice." *Id.* at 396. *See also McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 349-50 (5th Cir. 2020) (rejecting motion to dismiss tort claims based on ecclesiastical abstention doctrine because, "[a]t this early stage of the litigation, it is not clear that any of these determinations will require the court to address purely ecclesiastical questions"); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018) ("Civil courts may apply neutral principles of law to decide church disputes that 'involve[] no consideration of doctrinal matters.'" (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979))); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015) ("[A] court need not defer to an ecclesiastical tribunal on secular questions and permissibly may resolve a matter by applying neutral principles of the law." (internal quotation marks omitted)); *Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 419 (3d Cir. 2012) ("When a church dispute turns on a question devoid of doctrinal implications, civil courts may employ neutral principles of law to adjudicate the controversy."); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 99-100 (2d Cir. 2002) ("Courts may decide disputes that implicate religious interests as long as they can do so based on 'neutral principles' of secular law without undue entanglement in issues of religious doctrine.").

Defendants' reliance on *Ogle v. Church of God,* 153 Fed. Appx 371 (6th Cir. 2005), is misplaced. In that case, the plaintiff minister had been investigated by a church tribunal and found "guilty of unbecoming ministerial conduct, resulting in the suspension of his license for one year." *Id.* at 373 (internal quotation marks omitted). The plaintiff sued the church and various individuals for breach of implied contract, tortious interference with business

relationships, and related claims, seeking both damages and injunctive relief against the church. *Id.* at 374. The Sixth Circuit affirmed dismissal under the ecclesiastical doctrine because resolving the plaintiff's claims would necessarily require the court to assess whether the church had followed its internal religious guidelines in charging the plaintiff with violation of church doctrine:

> Ogle's claims . . . as well as his request for a declaratory judgment that the charging body within the Church of God lacked the legal or other proper authority to bring charges against him, all implicate the Church of God's internal disciplinary proceedings.
>
> ***
>
>  . . . . The record on the motion to dismiss is sufficient to indicate that all of defendants' actions of which Ogle complains were part of church disciplinary proceedings which were initiated precisely because Ogle's actions violated the Church of God Minutes of the General Assembly.

*Id.* at 376.

The same is not true here. Although the Report was issued at the behest of the SBC's membership, it was not the result of any internal disciplinary proceeding or investigation into whether Pastor Johnny had violated any church doctrine. In fact, as the Executive Committee itself states: "Unlike other hierarchical religious organizations where local churches follow the directives of a primary leader, the SBC does not dictate church practices or worship" and "[t]he SBC has no authority over any Baptist body, does not ordain pastors, and does not have any role in the management of any church." (SBC Mot., Doc. No. 32 at 8-9.) Indeed, the SBC itself "is not a church." (Doc. No. 1-2 at 30.) Thus, the Report was not the result of "internal disciplinary proceedings" like in *Church of God.* Instead, it was a public relations exercise that resulted from public pressure being put on the SBC to respond to allegations of child molestation, rape, and similar crimes made in the Houston Chronicle and elsewhere. And Pastor Johnny is not challenging any disciplinary decision or employment decision made by any religious body. He is

challenging public statements falsely accusing him of secular crimes. The *Church of God* decision does not apply.

Defendants' reliance on the Texas Supreme Court's opinion in *In re Diocese of Lubbock* is similarly misplaced. 624 S.W.3d 506 (Tex. 2021). There, the plaintiff complained that he had been defamed when the Diocese had published a statement accusing him of having committed a sexual offense against a "minor" when he engaged in a sexual relationship with an incompetent adult. *Id.* at 508. The term "minor" was expressly defined by the Diocese as a matter of church law. *Id.* at 511. Thus, determining whether the factual allegation against the plaintiff was true or false would have required the court to delve into matters of theological controversy and ecclesiastical government: "This inquiry would not only cause a court to evaluate whether the Diocese properly applied Canon Law but would also permit the same court to interlineate its own views of a Canonical term. Indeed, any investigation would necessarily put to question the internal decision making of a church judicatory body." *Id.* at 515. Understandably, the Texas Supreme Court declined to consider matters of church Canonical Law and dismissed the case under the ecclesiastical abstention doctrine. *Id.* at 519.

*Lubbock* does not apply here. Defendants' allegations of "sexual assault" against Pastor Johnny do not depend on any church regulation, practice, or doctrine. Instead, whether the allegations against Pastor Johnny amount to "sexual assault" will be determined based purely on secular law. *Lubbock* is consistent with *Ogle*, and both establish that this Court has subject matter jurisdiction over Pastor Johnny's claims.

9

**B.** **The Complaint plausibly alleges claims for both libel and libel per se.**

**1.** **Pastor Johnny has plausibly alleged that he is a "private figure" under the First Amendment, and, in any event, that is a fact issue for the jury.**

Defendants attempt to invoke a higher standard of liability for Pastor Johnny's defamation claims – actual malice – by arguing that he is either a "general-purpose" or "limited-purpose" public figure under the First Amendment. Defendants are wrong on both fronts.

"Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 352 (1974). "This test is a strict one . . . . [T]he general public figure is a rare creature." *Waldbaum v. Fairchild Publ'ns,* 627 F.2d 1287, 1292 (D.C. Cir. 1980). To be a general-purpose public figure, an individual must be "a well-known 'celebrity'" and "his name a 'household word' whose ideas and actions the public in fact follows with great interest." *Id.* at 1292, 1294.

Pastor Johnny does not fit this definition. The Sixth Circuit's *Ogle* decision is again on point. There, Ogle alleged in his complaint that he was an "international evangelist" who had attained "international fame and reputation throughout the nation, as well as other countries, with respect to his ministry." *Ogle,* 279 F. App'x at 399. Hocker argued that these allegations were sufficient to show Ogle's status as both a general-purpose and limited-purpose public figure. *Id.* at 398-99. The Sixth Circuit disagreed.

First, the Sixth Circuit emphasized the restrictive standard for attaining the status of a general-purpose public figure: "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 398-99 (quoting *Gertz* 418 U.S. at 352 (alteration in original)). The court then continued: "Even assuming that proclaiming oneself

10

a public figure were sufficient, Ogle's statements admit fame only 'with respect to his ministry.' Therefore, he could not have conceded that he was a public figure for all purposes." *Id.* at 399.

The same is true with respect to Pastor Johnny. While it is true that he attained prominence within his local church and community and the SBC, Pastor Johnny is not a general celebrity; he is not a household name; and he is not the "rare" public figure whose actions the public in fact follows with interest.

Nor is Pastor Johnny a more "limited-purpose" public figure. Such limited-purpose public figures are those who have "thrust[] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* (quoting *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 164 (1979) (internal quotation marks omitted)). "Mere association or involvement in a controversy is not necessarily enough; instead the court analyzes the 'nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" *Id.* at 399 (quoting *Gertz,* 418 U.S. at 352). Importantly, the plaintiff's involvement in a particular controversy **cannot be the result** of the defendants' defamatory statements. As the Supreme Court has warned: "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979).

Here, there is no evidence that Pastor Johnny had "thrust" himself into the "vortex" of the sexual abuse controversy surrounding the SBC prior to Defendants' publication of the Report. Defendants argue that, as a former SBC President, "it was inevitable that allegations regarding his sexual improprieties would thrust him into the vortex of the SBC's sexual abuse controversy." (Guidepost Mot., Doc. No. 27 at 12.) But Defendants misconstrue the applicable test. The question is whether, **prior to and separate from the alleged defamatory statements**,

11

Pastor Johnny was already part of the public debate regarding sex abuse within the SBC. *See Hutchinson,* 443 U.S. at 135. As the Sixth Circuit stated in *Ogle,* the Defendants cannot inject Pastor Johnny into a public debate by publishing defamatory statements against him, and then point to the "public stir" that their comments created as evidence of his status as a "public figure." *Ogle*, 279 F. App'x at 399. To hold otherwise would allow any defendant to transform a private figure into a public figure merely by publishing salacious allegations that generate the desired public attention. That is not the law.

Finally, even if it were possible to reasonably argue that Pastor Johnny is a public figure (which it is not), resolution of that argument is a highly fact-specific determination that requires discovery and evidence to be submitted. The cases on this point are legion – determining whether a plaintiff is a limited-purpose public figure is a "difficult and fact-specific [question] . . . not suitable for resolution under Rule 12(b)(6)." *Goldfarb v. Kalodios,* 539 F. Supp. 3d 435, 455 (E.D. Pa. 2021) (quoting *Woods Servs. v. Disability Advocates, Inc.,* No. 18-296, 2018 U.S. Dist. LEXIS 77752, at *13 (E.D. Pa. May 9, 2018) (alteration in original)). *See also Marous Bro. Constr., LLC v. Ala. State Univ.,* No. 2:07-cv-384-ID (WO), 2008 U.S. Dist. LEXIS 10867, at *10-11 (M.D. Ala. Feb. 11, 2008) (deferring determination until after discovery); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.,* 12 F. Supp. 2d 1035, 1044 n.1 (C.D. Cal. 1998) ("[I]t would be premature to determine, on a motion to dismiss, whether [plaintiff] is a public figure or whether the alleged statements were made with actual malice."); *Zerbe v. Guzman Pinal,* 2005 U.S. Dist. LEXIS 28548, at *1 & n.1 (D.P.R. Oct. 18, 2005) (noting that whether plaintiff was a public figure "was more appropriately addressed in the context of a motion for summary judgment," than a motion to dismiss).

### 2. The Complaint plausibly alleges claims for libel and libel per se, regardless of the applicable standard.

Regardless of whether Pastor Johnny is considered a public or private figure under the First Amendment, he has plausibly alleged claims for both defamation and defamation per se.

Under Georgia law, "[g]enerally, 'the question [of] whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury.'" *Reid v. Viacom Int'l Inc.*, No. 1:14-cv-1252-MHC, 2016 U.S. Dist. LEXIS 203731, at *12 (N.D. Ga. Sep. 14, 2016) (quoting *Monge v. Madison County Record, Inc.*, 802 F. Supp. 2d 1327, 1333 (N.D. Ga. 2011)).[1] Determining whether a particular statement is defamatory requires the statement to be read in context. If the statement "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." *Id.* at *12-13 (quoting *Hoffman-Pugh v. Ramsey,* 193 F. Supp. 2d 1295, 1299 (N.D. Ga. 2002) (internal quotation marks and citation omitted)). *See also Zielinski v. Clorox Co.,* 450 S.E.2d 222, 225-26 (Ga. Ct. App. 1994) ("The import of an alleged defamatory statement may be gathered not only from words themselves but from circumstances under which they are published."); *Kaplan v. Edmondson,* 22 S.E.2d 343, 345-46 (Ga. Ct. App. 1942) ("[W]hen the language used is capable of being understood in a double sense, the one criminal and the other innocent, the plaintiff, by making the proper allegations in his declaration, may, by an innuendo, aver the meaning with which he thinks it was published, and the jury may find

---

[1] For the purposes of this Opposition, Plaintiff agrees with Defendant Guidepost that Georgia law applies to the substantive elements of his primary tort claims. (Guidepost Mot., Doc. No. 27 at 9 – 11.) Plaintiff reserves the right to argue choice of law in future motions with respect to punitive damages, where the choice of law analysis is different. Any such analysis would be premature here.

whether the publication was made with that meaning or not.") (internal quotation marks and citation omitted).

Here, Defendants publicly stated that Plaintiff Johnny Hunt had been accused of a "sexual assault." (Compl. ¶ 50.) Defendants made this statement in the context of a 288-page Report that focused on convicted and accused child molesters and other sex criminals. For example, the opening sentence of the Report states that, for almost two decades, survivors have been contacting the SBC and its Executive Committee "to report child molesters and other abusers who were in the pulpit or employed as church staff." (Doc. No. 1-2 at 3.) The second paragraph of the Report states that reports of abuse were ignored "even if it meant that convicted molesters continued in ministry with no notice or warning to their current church or congregation." *Id.* The Executive Summary discusses Executive Committee staff members who collected "news reports of Baptist ministers who [were] arrested for sexual abuse . . . ." *Id.* at 5. The summary then includes a list of bullet points referring to reports of "sexual abuse of a child"; a pastor who allegedly allowed "an accused abuser of young boys to be dismissed quietly"; a student who was told not to report a rape; a defendant in a civil lawsuit who was accused of repeatedly abusing the plaintiff starting when he was 14 years old; and a gymnastics coach convicted of multiple counts of "sexual assault against a minor." *Id.* at 7.

The Complaint alleges that, when Defendants accused Pastor Johnny of having committed a "sexual assault" in this context – an allegation included in a Report that otherwise focuses overwhelmingly on allegations of criminal conduct – a reasonable person reading the Report could have concluded that, by using the term "sexual assault," Defendants were reporting that Pastor Johnny had been accused of committing a sex crime. And this statement was unequivocally false. As set forth in the Complaint:

54.     Moreover, even if one were to take the accuser's word at face value, her allegations against Pastor Johnny would not amount to a sex crime under the laws of Florida, the site of the encounter. Yet that was the clear, unambiguous implication from the accusations in the Report.

55.     As set forth above, the first sentence of the Report states that it concerns "child molesters and other abusers." The Report refers to the accuser as a "survivor." Several times throughout its text the Report uses the term "sexual assault" to refer to a sex crime. But the accusations against Pastor Johnny – even if true, which they are not – would not qualify as a sexual assault crime under the laws of Florida. Thus, the assertion that Pastor Johnny had been accused of "sexual assault" was objectively and recklessly false.

***

75.     Here, the allegations against Pastor Johnny – even if true (which they are not) – would not support criminal charges or civil liability in Florida, the jurisdiction at issue, because they would not qualify as "sexual battery" under Florida law.

(Compl. ¶¶ 54-55, 75.)

The fact that a reasonable person reading the Report could conclude that Pastor Johnny had been accused of committing a sex crime is apparent from the reaction of the SBC's own current President to the Report. As alleged in the Complaint, SBC President and Executive Committee member Bart Barber issued the following Tweet in December 2022:

Hunt was the subject of a third-party investigation in response to allegations that he sexually assaulted a woman half his age in ways that would, to my knowledge, **constitute a felony in any jurisdiction in the US**.

(Compl. ¶ 70.) Notably, Mr. Barber sent this defamatory Tweet after Plaintiff had sent a demand letter to the SBC pointing out the specifics of Florida law. (Compl. ¶ 71.)

And even now, in its briefing to this Court, Defendant Guidepost admits that its Report accused Pastor Johnny of having committed a sex crime. On page two of its Memorandum in Support of its Motion to Dismiss, Guidepost admits that it "authored a report that identified Hunt as **one of many sexual offenders.**" (Guidepost Mot., Doc. No. 27 at 2 (emphasis added)). Merriam-Webster defines "sex offender" as "a person who has been convicted of a crime

involving sex." (Sex Offender, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sex%20offender.) Yet it is undisputed that the specific factual allegations against Pastor Johnny contained in the Report – even if true – would not amount to a crime under Florida law, the site of the alleged "assault." *See* Fla. Stat. Ann. § 794.011. And all of the Defendants are "presumptively charged with knowledge of the law." *Atkins v. Parker,* 472 U.S. 115, 130 (1985). Thus, the impression created by the Report that Pastor Johnny had been accused of committing a sex crime was unequivocally false, and the Defendants had knowledge of or – at a minimum – were recklessly indifferent to the false impression they created.

Whether judged under the negligence standard that applies to a private plaintiff or the actual malice standard applicable to public figures, the Complaint plausibly alleges that Defendants failed to exercise the requisite standard of care. And because Defendants falsely accused Pastor Johnny of having committed a crime, they are liable for defamation and defamation per se under Georgia law. *See* Ga. Code Ann. § 51-5-4 (damages are inferred when defamatory statement falsely imputes to another a crime punishable by law).

### C. The Complaint plausibly alleges a claim for Invasion of Privacy—False Light.

Pastor Johnny has sufficiently stated a claim for invasion of privacy (false light) as an alternative to his defamation claims.[2] Defendants argue that the false light claim is duplicative of

---

[2] Defendants' suggestion that Plaintiff must prove actual malice for the non-defamation claims is incorrect. (Guidepost Mot., Doc. No. 27 at 18.); (Executive Committee Mot., Doc. No. 32, at 23.); (SBC Mot., Doc. No. 30 at 2-3.). For the reasons described in this Opposition, Plaintiff is neither a public figure nor a limited-purpose public figure, so the actual malice standard does not generally apply. And even if the actual malice standard did apply, Plaintiff has plausibly alleged that Defendants acted with actual malice.

With respect to the Public Disclosure of Embarrassing Private Facts claim (Count VI), which focuses on Defendants' publication of only true facts, Plaintiff is not aware of any caselaw applying a malice standard. However, even if such a standard applied, the Complaint sufficiently

Pastor Johnny's defamation claims. (Guidepost Mot., Doc. No. 27 at 18-19.) While it is true that Georgia does not permit false light claims based on defamatory statements, if the Court or jury ultimately determines that Defendants' statements do not qualify as defamatory, the false light claim may proceed. Such alternative claims are permissible under Georgia law. *See Krass v. Obstacle Racing Media,* No. 1:19-cv-05785-JPB, 2021 U.S. Dist. LEXIS 206760, at *10 (N.D. Ga. Feb. 2, 2021) (denying motion to dismiss false light claim as duplicative of defamation claim; "Under Federal Rule of Civil Procedure 8(d), . . . a party may assert alternative claims in his pleadings regardless of consistency."); *Maples v. Nat'l Enquirer,* 763 F. Supp. 1137, 1143 (N.D. Ga. 1990) ("[T]his Court sees no impropriety in Plaintiff's assertion of both claims.").

Moreover, the Complaint alleges each element of the claim. Contrary to Defendants' argument, the Complaint plausibly alleges that a reasonable person reading the Report would understand that, given the Report's context and its focus on child molesters and sex criminals, Guidepost was accusing Pastor Johnny of similarly criminal conduct when it labeled the accusations against him as a "sexual assault." (Compl. ¶¶ 101-103.) Indeed, that is exactly how the SBC's own president – Bart Barber – interpreted the Report, when he tweeted out that Pastor Johnny had been accused of a "felony." (Compl. ¶ 70.) It is also how the SBC elected to define "sex abuse" after the Report was issued, when it equated the term with conduct that would result in "criminal charges or civil liability." (Compl. ¶ 74.) Finally, this interpretation is confirmed by Guidepost's own characterization of its Report as having identified Hunt as "one of many sexual offenders." (Guidepost Mot., Doc. No. 27 at 2.)

---

alleges that Defendants knew, or were recklessly indifferent to, the private and confidential nature of the allegations against Pastor Johnny. Thus, any malice requirement would be satisfied.

Ultimately, whether the Report and its allegations portrayed Pastor Johnny in a "false light" is a question for the jury, and Defendants' Motions to Dismiss this claim should be denied. *See, e.g., Pierson v. News Grp. Publ'ns, Inc.,* 549 F. Supp. 635, 642 (S.D. Ga. 1982) ("The articles do not clearly favor one construction or another, thereby leaving the determination of what light it places the plaintiff to the jury.").

### D. The Complaint plausibly alleges claims for intentional infliction of emotional distress.

Defendants argue that the allegations against them do not rise to the level of "outrageous" conduct necessary to state a claim for intentional infliction of emotional distress. Defendants are wrong.

The Complaint alleges that Guidepost incurred over $2 million in fees to investigate five specific questions and that, despite its extensive investigation, it was unable to find even a single case of sexual abuse by a member of the Executive Committee. (Compl. ¶ 47.) Rather than reporting the absence of any such evidence back to the SBC, Guidepost chose to use Pastor Johnny as its scapegoat. *Id.* ¶ 49. Defendants intentionally decided to publish allegations against Pastor Johnny that did not fit anywhere within Guidepost's engagement in order to avoid the perception that the SBC had wasted its money on the investigation. *Id.* ¶¶ 47-50, 58-59. Guidepost also intentionally created the false impression that Pastor Johnny had committed a crime and had "assaulted" the wife of a fellow pastor, even though the specific allegations against him would not amount to a crime in the applicable jurisdiction. *Id.* ¶¶ 54, 55, 71, 75. A reasonable jury could conclude that these actions were sufficiently outrageous to support a finding of intentional infliction of emotional distress. And that is all that is required at this stage.

**E.     The Complaint plausibly alleges claims for negligent infliction of emotional distress.**

Under Georgia law, a plaintiff can recover for negligent infliction of emotional distress without demonstrating physical impact if he can show "malicious, willful, or wanton" conduct directed toward the plaintiff or pecuniary loss resulting from a separate tort, such as defamation. *See Mayorga v. Benton,* 875 S.E. 2d 908, 916-18 (Ga. Ct. App. 2022). Pastor Johnny meets both of these elements.

First, Pastor Johnny has alleged that Defendants falsely described him as having been accused of a sex crime when they knew or should have known that the accusations against him did not amount to a crime under Florida law, particularly given that "[a]ll citizens are presumptively charged with knowledge of the law." *Atkins,* 472 U.S. at 130. Second, Pastor Johnny alleges that he suffered pecuniary harm from these allegations. (Compl. ¶¶ 13, 62.) Third, Pastor Johnny alleges that Defendants intentionally directed their actions towards him in order to make him a scapegoat and to deflect attention from the SBC's failure to respond appropriately to sex abuse allegations. *Id.* ¶¶ 7, 47-59, 63 Finally, Pastor Johnny also alleges that the Defendants' decision to link him to a Report focused on child sex abuse, rape, and other similarly heinous acts was outrageous and malicious. *Id.* ¶¶ 58-59.

Pastor Johnny's claim for negligent infliction of emotional distress should survive.

**F.     The Complaint alleges a claim for invasion of privacy – public disclosure of embarrassing private facts.**

Pastor Johnny has plausibly alleged a claim for public disclosure of private facts. Under Georgia law, a defendant is liable for harm caused by public disclosure of embarrassing private facts if such facts are "highly offensive and objectionable to a reasonable person of ordinary sensibilities" and such facts are "not matters of public concern." *Smith v. Stewart,* 660 S.E.2d 822, 834 (Ga. Ct. App. 2008). "This disclosure tort serves as a valuable source of deterrence and

accountability for our ever-increasing population and the growing technological opportunities for invasion into others' lives, the compilation of private data, and the disclosure of purely personal matters." *Doe et al. v. Netflix et al.*, No. 1:22-cv-01281-TWP-MJD, 2023 U.S. Dist. LEXIS 98011, at \*18 (S.D. Ind. June 6, 2023). This cause of action focuses on Defendants' publication of only the true facts – i.e., that Pastor Johnny had a brief, consensual extramarital encounter with a married woman.

Defendants argue for dismissal on the basis that the alleged extramarital contact between Pastor Johnny and the wife of another pastor was a legitimate concern to the public. But whether two adults engaged in an extramarital encounter is not a matter of public concern. *See, e.g., Albert v. Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) ("That two corrections officers engaged in an affair in violation of department rules, though perhaps appealing to the prurient interest of some members of the public and Albert, does not implicate a matter of public concern."); *Lindberg v. Dow Jones & Co.*, No. 20-cv-8231 (LAX), 2021 U.S. Dist. LEXIS 151397, at \*21 (S.D.N.Y. Aug. 11, 2021) (noting that an "extramarital affair would typically not be a matter of 'public concern'"). Pastor Johnny was not the president of the SBC or a member of the Executive Committee at the time of the incident. He was merely a private citizen whose marital fidelity was nobody else's business. The fact that the SBC was enveloped in a scandal regarding **sexual abuse** within its ranks does not convert a private, consensual extramarital encounter into a matter of public concern.

## III.    PLAINTIFF'S RESPONSES TO DEFENDANT-SPECIFIC ARGUMENTS

### A.    Guidepost is wrong when it argues that its defamatory statements are protected by the common interest privilege.

Guidepost argues that the actual malice standard applies to Pastor Johnny's defamation claims because of the "common interest" privilege. This argument fails for three reasons.

First, the import of the common interest privilege is simply to require the plaintiff to prove actual malice to prevail on a defamation claim. *See Cooper-Bridges v. Ingle,* 601 S.E.2d 445, 449 (Ga. Ct. App. 2004) ("Proof that the defendant acted with actual malice in making the statement, however, defeats the defense of privilege."). As set forth above in § II.B.2, the Complaint plausibly alleges actual malice (i.e., actual knowledge that the statements were false or reckless disregard of whether they were false or not). Thus, Guidepost's invocation of the common interest privilege does not require dismissal.

Second, Guidepost's contrary argument notwithstanding, the Complaint adequately alleges that Guidepost produced a "public" Report that was shared with the world, not just Guidepost's client. "In order to claim a limited privilege . . . , the communications must be made only to proper persons . . . ." *Melton v. Bow,* 247 S.E.2d 100, 101 (Ga. 1978). Here, from the outset of its engagement, Guidepost knew and agreed that its Report would be made public to the world. As set forth in its engagement letter, Guidepost agreed to produce a "public" Report. (Doc. No. 1-1 at 3.) Paragraph 3.2 of the engagement letter defines the "key principles of Guidepost's work," which was to include "Transparency: Public Report." *Id.* Paragraph 3.6 states that the "written report will be made public in its entirety prior to the 2022 SBC Annual Meeting." *Id.* at 3. Finally, Guidepost stated in the Report itself that "[t]he culmination of our engagement was the issuance of **this public Report**." (Doc. No. 1-2 at 18 (emphasis added).)

Because Guidepost contractually obligated itself to create a "public report" from the beginning, it cannot hide from its statements by now claiming that only the SBC Task Force, the SBC, the Executive Committee, or some other entity is responsible for the Report's publication. Guidepost agreed to produce a "public report," and that is what it did. Guidepost is accountable

for the information it elected to publish. And by sharing the Report with the world, it lost any privilege that might otherwise apply.

Third, the Complaint alleges that Guidepost exceeded the scope of its engagement by including allegations against Pastor Johnny that did not fit within its assignment. The engagement letter sets out the scope of the engagement as investigating allegations of abuse by Executive Committee members; mishandling of abuse allegations by Executive Committee members; allegations of mistreatment of sexual abuse victims by Executive Committee members; patterns of intimidation of sexual abuse victims or advocates; and resistance to sexual abuse reform initiatives. (Doc. No. 1-1 at 2.) The Complaint alleges that the accusations against Pastor Johnny do not fit within this scope because he was not a member of the Executive Committee at the time of the alleged incident, and none of the other topics could even conceivably apply. (Compl. ¶ 58.) Because Guidepost exceeded the scope of its assignment and voluntarily included the allegations against Pastor Johnny when it had no duty or obligation to do so, it exceeded the scope of any applicable privilege.

Finally, a defendant can invoke a privilege only by establishing its "good faith." *See* Ga. Code § 51-5-7; *Cohen v. Hartlage*, 348 S.E.2d 331, 333 (Ga. Ct. App. 1986) ("[G]ood faith and good intentions are necessary and essential ingredients of a conditionally privileged communication."); *Harris v. Pierce Cty.*, No. CV 513-82, 2014 U.S. Dist. LEXIS 113053, at *47-48 (S.D. Ga. Aug. 14, 2014) ("The burden of proving a claim of privilege rests with the party seeking to use the privilege."). Whether Guidepost acted with the required good faith is a factual matter that requires discovery and evidence. It would be premature for this Court to hold that any privilege applies as a matter of law at the motion to dismiss stage. *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-cv-02490-SCJ, 2021 U.S. Dist. LEXIS 47196, at *15

(N.D. Ga. Mar. 10, 2021) ("[T]he Court does not deem it proper to consider good faith privilege assertions at the motion to dismiss stage of the case. . . .").

**B.      Guidepost's agreement to produce a "public report" is sufficient to satisfy the publicity element of Pastor Johnny's invasion of privacy claims.**

Guidepost argues that it cannot be held liable under a false light or public disclosure of private facts claim because it did not give "publicity" to the Report. As set forth above, this argument fails because, by entering into a contract to produce a "public" report and then issuing that "public report," Guidepost indisputably made its statements about Pastor Johnny public. Guidepost's contrary argument must be rejected.[3]

**C.      The SBC is wrong when it argues that Bart Barber's Tweet is only an opinion that cannot form the basis of a defamation claim.**

The SBC argues that it cannot be held liable for the Tweet sent by its current president – Bart Barber – because that Tweet was merely a statement of "opinion." (SBC Mot., Doc. No. 30 at 10, n.5.) But the Barber Tweet did not purport to state an opinion – it purported to state a fact. Barber wrote that Pastor Johnny was alleged to have "assaulted a woman half his age in ways that would, **to my knowledge**, constitute a felony in any jurisdiction in the US." (Compl. ¶ 70 (emphasis added).) Prior to Barber's Tweet, Pastor Johnny had written a demand letter to the SBC in which he pointed out that the conduct alleged in the Report against him would not qualify as a crime under Florida law. (Compl. ¶ 71.) Barber's statement to the contrary was objectively false, and it can serve as the basis for a defamation claim.

---

[3] The Court should not consider Guidepost's declaration submitted with its Motion because "[a]s a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56." *Pinnacle Bank v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 3d 666, 670 (M.D. Tenn. 2022). Guidepost's declaration does not meet any of the exceptions to this general rule. *See Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-cv-00643, 2018 U.S. Dist. LEXIS 200504 (M.D. Tenn. Nov. 27, 2018).

**D.      The SBC cannot avoid liability by invoking the First Amendment.**

The SBC argues that Pastor Johnny's emotional distress claims should be dismissed because the First Amendment bars such claims where the statements at issue relate to an issue of public concern. (SBC Mot., Doc. No. 30 at 17-19.) But the First Amendment does not give one license to make false statements against an individual, even if those statements otherwise relate to an issue of public interest. *Garrison v. State of La.*, 379 U.S. 64, 75 (1964) ("[T]he knowingly false statement and the false statement made with reckless disregard of the truth[] do not enjoy constitutional protection"). The SBC's Motion to Dismiss on this basis should be denied.

**E.      The Complaint sufficiently alleges affirmative acts by the Executive Committee.**

The Executive Committee broadly argues that the Complaint fails to allege any tortious acts by the Executive Committee itself as opposed to Guidepost and the SBC. The Executive Committee is wrong.

First, as set forth in the Complaint, the SBC and the Executive Committee jointly established the Committee on Cooperation of the Executive Committee. (Compl. ¶ 37.) This committee consisted of the SBC President and "four members [who] were members of the Executive Committee." *Id.* Two of the members were chosen by the SBC Task Force, and two were chosen by the Executive Committee. *Id.* Thus, the "Committee on Cooperation of the Executive Committee acted as an agent for both the SBC and the Executive Committee." *Id.* This Committee on Cooperation was provided with a draft version of the Report and had the opportunity to correct factual errors and otherwise ensure that the Report fit within the scope of Guidepost's assignment. *Id.* ¶ 63. The Cooperation Committee – as an agent of the Executive Committee – authorized and allowed the publishing of the Report with the allegations against Pastor Johnny. *Id.*

Second, Bart Barber – as the SBC's President – was also a member of the Executive Committee when he issued his Tweet accusing Pastor Johnny of having committed a felony. *Id.* ¶¶ 70-71. Whether Barber issued his Tweet in his personal capacity or as an agent of the SBC and Executive Committee is an issue of fact that cannot be resolved on a motion to dismiss. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2019 U.S. Dist. LEXIS 149288, at *25 (N.D. Ill. Sep. 3, 2019).

The Complaint sufficiently alleges tortious acts by the Executive Committee through its agents, and the Executive Committee's Motion to Dismiss on this basis should be denied.

## IV.    CONCLUSION

Defendants published private, embarrassing information about Pastor Johnny and featured him in a highly-publicized Report detailing abhorrent instances of child molestation and other sex crimes creating the false impression that Pastor Johnny is a sex criminal. The Court should deny Defendants' Motions to Dismiss.

Dated: June 9, 2023                    Respectfully submitted,


                                        s/ Andrew Goldstein
                                       **Todd G. Cole, Esq., BPR # 031078**
                                       **Andrew Goldstein, Esq., BPR # 037042**
                                       COLE LAW GROUP, P.C.
                                       1648 Westgate Circle, Suite 301
                                       Brentwood, TN 37027
                                       Telephone: (615) 490-6020
                                       Fax: (615) 942-5914
                                       tcole@colelawgrouppc.com
                                       agoldstein@colelawgrouppc.com

                                       *-and-*

                                       **Robert D. MacGill, Esq. (*pro hac vice*)**
                                       **Scott E. Murray, Esq.  (*pro hac vice*)**
                                       **Patrick J. Sanders, Esq. (*pro hac vice*)**
                                       MACGILL PC
                                       156 E. Market St.
                                       Suite 1200
                                       Indianapolis, IN 46204
                                       (317) 721-1253
                                       robert.macgill@macgilllaw.com
                                       scott.murray@macgilllaw.com
                                       patrick.sanders@macgilllaw.com

                                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Consolidated Memorandum of Law in Opposition to the Defendants' Motions to Dismiss to be electronically filed with the Clerk of the Court on June 9, 2023, using the CM/ECF system, which will automatically serve all counsel of record listed below:

E. Todd Presnell, Esq.
Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202

*Counsel for the Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katharine R. Klein, Esq.
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
MINTZ & GOLD LLP
600 Third Avenue, 25th Fl.
New York, New York 10016
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

L. Gino Marchetti, Jr., Esq.
Matthew C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, Tennessee 37203
gmarchetti@tpmblaw.com

*Counsel for the Southern Baptist Convention*

s/ Andrew Goldstein
ANDREW GOLDSTEIN