**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>      Plaintiff,<br><br> v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>      Defendants. | Case No. 3:23-cv-00243<br><br>Judge Richardson<br>Magistrate Judge Frensley |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY
GUIDEPOST SOLUTIONS LLC TO DISMISS THE COMPLAINT**

## I. THE ECCLESIASTICAL ABSTENTION DOCTRINE APPLIES.

Hunt relies heavily upon the unpublished decision in Ogle v. Hocker, 279 F. App'x 391 (6th Cir. 2008), arguing that because resolution of his claim does not require the interpretation of Baptist theology or rules of church government, his Complaint therefore presents a purely civil dispute implicating only neutral principles of tort law. (Hunt Opp. at 5-9.) But Hunt gives the underlying policies and reach of the ecclesiastical abstention doctrine too short a shrift.

The ecclesiastical abstention doctrine prohibits courts from delving not only into matters of "theological controversy," but *any* matter involving "church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 714 (1976). The SBC's institutional response to a cancer within its ranks certainly qualifies for this important protection as a matter of religious liberty.

Moreover, Ogle is distinguishable. There, the defendant disparaged the plaintiff not only in sermons but in conversations outside the context of church worship. Here, however, the SBC published the statements about Hunt by delivering the Report on its website under a message addressed to the "SBC Family."[1] Significantly, the panel in Ogle suggested that the result in that case would have been different if Ogle had been a member of the defendant's congregation, in which instance the comments would have been entitled to First Amendment protection as the exercise of church discipline against an errant member. Ogle, 279 Fed. App'x at 396. Indeed, Hunt's case is much closer to the companion case of Ogle v. Church of God, 153 F. App'x 371 (6th Cir. 2005), which barred Ogle's claims against the church itself where his tort claims arose out of a church investigation and disciplinary action. In publishing the Report, the SBC was exercising church discipline at the highest level, holding its leadership accountable for abuse and failures of leadership. See Engagement Letter at § 3.1 (Doc. 1-1). Accountability *is* discipline.

Hunt's effort to distinguish In re Diocese of Lubbock, 624 S.W.3d 506 (Tex. 2021), only underscores why the doctrine should apply here. Like this case, Diocese of Lubbock arose out of an internal investigation by the church into its own clergy's conduct, followed by a public-facing report. Hunt argues that Diocese of Lubbock only required abstention because hearing the tort claim would require the court to interpret Canon Law's proscription of abuses against a "minor." (Hunt Opp. at 9.) But the court's decision had a broader reach, holding that "[i]nvestigations that relate to the character and conduct of church leaders are inherently ecclesiastical." Id. at 517. If this Court adopts Hunt's view, it would inevitably chill the Catholic Church's and any other religious institution's efforts to ensure accountability of offending clergy.

---

[1] See Task Force Updates (May 22, 2022), at https://www.sataskforce.net/updates/ guidepost-solutions-report-of-the-independent-investigation.

## II. HUNT IS A PUBLIC FIGURE AND HIS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE MALICE.

"Whether a person is a public figure, general or limited, is a question of law for the court to resolve." Atlanta J.-Const. v. Jewell, 555 S.E.2d 175, 183 (Ga. 2001). Hunt's status as a general-purpose public figure is easily discerned on the face of the pleadings. Hunt was the President of the largest Protestant denomination in the United States.[2] The factors defining his status as a public figure, such as the "voluntariness of [Hunt's] prominence" and "whether [Hunt] has assumed the risk of reputational injury and whether he has access to the media" amply support this conclusion. Riddle v. Golden Isle Broad., 621 S.E.2d 822, 825 (Ga. 2005).

In the alternative, it is undisputed that the sexual abuse crisis was a public controversy, thus satisfying the first prong of the test for determining whether Hunt is a limited purpose public figure. See Santoni v. Mueller, No. 3:20-cv-00975, 2022 WL 97049, at *11 (M.D. Tenn. Jan. 10, 2022) (Richardson, J.). The second prong of the analysis identified by this Court in Santoni, which focuses on Hunt's role in the controversy, also supports his status as (at least) a limited purpose public figure. By having accepted the office of SBC President and engaging in what *he* describes as consensual fondling of his accuser, Hunt put himself in a position where he would inevitably be front and center in the controversy. It was not Defendants who thrust Hunt into that vortex, as he misleadingly argues—he did. (Hunt Opp. at 11-12.) Moreover, he certainly would have more access to the media than the hundreds of other accused SBC clergy and was in a position to refute the Report on social media and through the news media, as he did.[3] Finally, his role in the

---

[2] The SBC "accounts for 5.3% of the U.S. adult population, according to Pew Research Center's 2014 Religious Landscape Study." https://www.pewresearch.org/short-reads/2019/06/07/7-facts-about-southern-baptists/. "Southern Baptists make up about a fifth of all U.S. evangelical Protestants (21%)." Id.

[3] See "Former SBC president Johnny Hunt responds to allegations in report" Atlanta Journal Constitution (May 27, 2022), https://www.ajc.com/news/former-sbc-president-johnny-hunt-responds-to-allegations-in-report/ONK7UQ24WNGATCWMBQOQNENMTY/.

3

controversy was hardly peripheral: he was the highest profile offender and that is why he was the first person named in the Report.

Hunt's opposition <u>conspicuously</u> fails to refute Guidepost's argument that the Complaint failed to plead actual malice. As noted in Guidepost's principal submission, the Complaint neither alleges that Guidepost knew the allegations to be false nor plausibly states facts supporting an inference of recklessness. (Guidepost Br. at 11-14.) Nothing in the Complaint or in Hunt's opposition supports the notion that Guidepost had a "high degree of awareness" of falsehood or doubted the truth of what it wrote in the Report. <u>See</u> <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968).[4] It should also be recalled that Guidepost included in the Report the statements that Dr. Hunt gave the investigators in which he claimed he did not have any physical contact with his accuser (which his own Complaint now shows were untruthful). Hunt's *ipse dixit* statement that he has stated actual malice is thus pure gaslighting.[5]

## III.     HUNT FAILS TO OVERCOME THE COMMON INTEREST PRIVILEGE.

Hunt argues that Guidepost published the Report outside the common interest privilege—publicly—and not just to the SBC. (Hunt Opp. at 20-23.) But even granting that the Engagement Letter anticipated that the results of Guidepost's investigation would ultimately be disclosed (by the SBC), this does not take the instant case out from under the protections set forth in O.C.G.A. §§ 51-5-7(2) and O.C.G.A. 51-5-7(3) because the Complaint does not identify a single publication *by Guidepost* to any person *other than* the SBC.

---

[4] To the extent that Hunt's tort claims depend upon the publication of defamatory statements as elements (such as his emotional distress torts), they fail because he has not alleged viable libel claims or actual malice and those statements were privileged. And while Hunt argues that he is not required to plead actual malice for tort claims grounded in defamation, this Court has held otherwise. <u>Santoni</u>, 2022 WL 97049, at *11 & n. 11.

[5] Hunt does not respond to Guidepost's alternative argument that, even if he were a private figure, the Complaint fails to state fault amounting to negligence. (Guidepost Br. at 14-15.) He has thus conceded the point.

4

Hunt does not answer Guidepost's argument that there were two (2) independent communications of the Report. First, there was Guidepost's initial delivery to the SBC Task Force, which was protected under Georgia law. Second, there was the Task Force's publication of the Report to the public. As Hunt concedes, Guidepost submitted the Report to the SBC Task Force in advance of publication. (Compl., ¶ 63.) Because Guidepost's communication of the Report to the SBC Task Force was on a "need to know" basis, it was not even a "publication" of a libel at all, either under Georgia or Tennessee law. Carter v. Willowrun Condo. Ass'n, Inc., 345 S.E.2d 924, 925 (Ga. Ct. App. 1986); Woods v. Helmi, 758 S.W.2d 219 (Tenn. Ct. App. 1988). In other words, because Guidepost never actually *published* the Report as a matter of law, it never completed a libel, and Hunt's claim fails there, full stop. (For the same reason, the element of publicity required for a claim of false light invasion of privacy is absent, Hunt's argument to the contrary notwithstanding.) (Guidepost Br. at 19-20, 23; Hunt Opp. at 23.) Nor, Hunt's opposition notwithstanding, does the Complaint plausibly support an inference that Guidepost acted in bad faith. Thus, Guidepost's defense under O.C.G.A. §§ 51-5-7(2) and 51-5-7(3) requires dismissal.

## CONCLUSION

The Complaint should be dismissed with prejudice, with costs and attorney's fees awarded to Guidepost.

Respectfully submitted,

s/John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Gene Ross Besen
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue
Suite 3600
Dallas, TX 75202
Telephone: (214) 257-9758
gbesen@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

on this 23rd day of June, 2023.

s/John R. Jacobson

7