UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) No. 3:23-cv-00243 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| SOUTHERN BAPTIST CONVENTION; | ) MAGISTRATE JUDGE FRENSLEY |
| GUIDEPOST SOLUTIONS LLC; and | ) |
| EXECUTIVE COMMITTEE OF THE | ) JURY DEMAND |
| SOUTHERN BAPTIST CONVENTION, | ) |
| | ) |
| *Defendants*. | ) |

**REPLY IN FURTHER SUPPORT OF THE EXECUTIVE COMMITTEE OF THE
<u>SOUTHERN BAPTIST CONVENTION'S MOTION TO DISMISS</u>**

## I. THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.

Ignoring the church doctrine and practice that led to Guidepost's investigation and Report, Hunt incorrectly claims the Court can apply secular standards without any impingement upon "church doctrine or practice." (*See* Doc. 40, PageID #534–35). Hunt disregards the fact that the Messengers[1] voted to create the Task Force to investigate allegations of abuse committed by EC members, including Hunt, and allegations that the EC mishandled allegations of abuse. (*See* Doc. 1–1, PageID #23, § 3.1). In accordance with this mandate, the Task Force engaged Guidepost (*see id.*, PageID #24, § 3.2), who uncovered allegations of abuse committed by Hunt.[2] (*See* Doc. 1–2, PageID #182). When confronted, Hunt lied about knowing his accuser and her husband, lied when he claimed he had no "contact whatsoever" with his accuser, and lied about why he contacted his church counselor. (*See id.*, PageID #191–93). Guidepost diligently investigated the accuser's account and corroborated it with forensic records and interviews of the counselor, the accuser's husband, and three additional witnesses. (*See id.*, PageID #188–90). Simply put, Hunt's attempted cover-up of the abuse is precisely the type of behavior the Messengers voted to expose and eradicate. (*See* Doc. 1–1, PageID #23, § 3.1). Having emphatically told Guidepost he had "no contact whatsoever" with his accuser, Hunt's inclusion in the Report was inevitable.

Hunt incorrectly equates the statements at issue here to the statements made by the rogue pastor in *Ogle v. Hocker*, 279 F. App'x 391 (6th Cir. 2008). The process that led to discovering

---

[1] Messengers meet annually to elect officers and determine the programs, policies, and budgets of the SBC. (Doc. 1–2, PageID #65–66).
[2] Hunt twice claims "Defendants" have "concede[d] . . . that the allegations against [Hunt] do not fit the definition of a crime." (*See* Doc. 40, PageID #530–31). The EC has done nothing of the sort. Hunt has been accused of sexual assault, and it is up to various local and state authorities to determine whether to charge Hunt with a crime, not the EC. Hunt also says it is "undisputed" that he and his accuser "jointly sought counseling and forgiveness." (*See id.*, PageID #531). Hunt, however, contacted his counselor under a ruse and ultimately told Guidepost he "did not apologize [in counseling] . . . because there was no contact between [Hunt and his accuser]." (*See* Doc. 1–2, PageID #193).

Hunt's abuse, however, was put in motion by the SBC's Messengers' desire to investigate and eliminate abuse within the EC's ranks, not to smear Hunt outside the pulpit or by making comments "outside the religious practice context." *See id*. at 396. The remaining cases cited by Hunt either support dismissal or are inapplicable. Three of the five affirmed dismissal on ecclesiastical grounds. *Myhre v. Seventh-Day Adventist Church*, 719 F. App'x 926, 928 (11th Cir. 2018); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 552 (8th Cir. 2015); *Askew v. Trs. of the Gen. Assemb.*, 684 F.3d 413, 418 (3rd Cir. 2012). The others involved copyright infringement and fair use, *see Merkos L'Inyonei Chinuch, Inc. v. Ostar Sifrei Lubavitch, Inc.*, 312 F.3d 94 (2nd Cir. 2002), or involved undeveloped facts. *See McRaney v. N. Am. Mission Bd.*, 966 F.3d 346, 349 (5th Cir. 2020). The facts here are more analogous to *Ogle v. Church of God*, 153 F. App'x 371 (6th Cir. 2005) and directly on point with *In re Lubbock*, 624 S.W.3d 506 (Tex. 2021). The courts in both cases upheld dismissal on subject matter jurisdiction, which this Court should do here.

## II. THERE ARE NO ALLEGATIONS OF SPECIFIC CONDUCT BY THE EC.

Hunt spends four paragraphs regurgitating the Complaint's conclusory allegations to support claims against the EC. (*See* Doc. 40, PageID #552–53). Each claim, however, requires allegations of *specific* conduct by the EC.[3] (*See* Doc. 32, PageID #475–76). To stave off dismissal, Hunt alleges the SBC and the EC "jointly established the Committee on Cooperation of the Executive Committee" and that two of the members of that Committee were appointed by the EC. (*See* Doc. 40, PageID #552). As an initial matter, these allegations are immaterial because the Committee on Cooperation is not a defendant in this action. Even if this were not the case, there

---

[3] Hunt's Response addresses two of the three alleged defamatory statements (the Report and the Tweet). Because Hunt does not address the third allegedly defamatory statement, the Letter (*see* Doc. 32, PageID #476), Hunt has apparently abandoned this purported statement made the basis of his claims and the EC will not address it again here in reply.

are still no plausible allegations that the EC published the Report or is responsible for it, especially when the attachments to the Complaint directly contradict any allegations of agency. (*See* Doc. 32, PageID #478–79 (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)).

      The Task Force was Guidepost's client, which was charged with investigating wrongdoing by the EC. (*See* Doc. 1–1, PageID #22, § 2.1). The SBC established the Committee on Cooperation to ensure that the EC cooperated fully with the investigation, which belies any suggestion of agency between the Committee on Cooperation and the EC. (*See id.* at PageID #22–23, §§ 2.2, 2.3). The EC could not conduct, direct, or otherwise manage Guidepost's investigation. (*See id.*, PageID #24, § 3.3). While Guidepost shared the Report with the Task Force and the Committee on Cooperation before publication for the sole purpose of reviewing the factual accuracy of the Report (*id.* § 3.5), Guidepost prohibited the EC from editing the Report prior to its public release, (*id.* § 3.6), and agreed the EC could not claim ownership of Guidepost's work product. (*Id.* at PageID #25, § 3.7). While the issue of agency may be an issue of fact under certain circumstances, (*see* Doc. 40, PageID #553), Hunt has the burden "to allege at least some facts to support an inference of an agency relationship." *See Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 3:18-cv-00518, 2021 WL 1946645, at *3 (M.D. Tenn. May 14, 2021). Here, there are no plausible allegations to support an inference of agency. In fact, the Complaint and its attachments directly contradict such an inference.

      Hunt claims that because Barber is a "member of the [EC]," (*see* Doc. 40, PageID #553), his Tweet is imputed to the EC. Hunt, however, admits the SBC and the EC are separate entities (*see* Doc. 1, PageID #4, ¶¶ 15, 17), the Messengers elect the SBC President (*see* Doc. 1–2, PageID #65–66), and the EC Trustees select and employ their own president and do not control or direct the activities of the SBC entities. (*See id.* at PageID #67). Just as the EC had no control over the

3

Messenger's decision to elect Barber, the EC had no control over Barber regarding his Tweet. Because Hunt has failed to state any specific conduct attributable to the EC, this Court should dismiss Hunt's claims against it.

## III. HUNT IS AT LEAST A LIMITED PURPOSE PUBLIC FIGURE.

Despite Hunt's claim to the contrary (*see* Doc. 40, PageID #540), whether Hunt is a public figure is a question of law (*see Elsten v. Coker*, No. M2019-00034-COA-R3-CV, 2019 WL 4899759, at *2 (Tenn. Ct. App. Oct. 4, 2019)), which can be resolved at Rule 12, especially when facts indicating Hunt's prominence are apparent from the face of the Complaint. *See*, *e.g.*, *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 142–43 (D.D.C. 2016).

Under Tennessee's two-step approach (*see Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *11 (M.D. Tenn. Jan. 10, 2022)), Hunt does not dispute a public controversy exists. (*See* Doc. 1, PageID #6, ¶¶ 30–33). Instead, Hunt challenges the first factor of the second step of the analysis alleging Hunt must have been a limited purpose public figure "prior to and separate from the alleged defamatory statements."[4] (*See* Doc. 40, PageID #539). Unfortunately for Hunt, that is exactly the situation Hunt created for himself. While the EC will not rehash the facts set forth in its Memorandum (*see* Doc. 32, PageID #481), Hunt "thrust" himself into the "vortex" of the controversy when his accuser came forward and Hunt tried to cover-up her allegations with his incessant lies to Guidepost, all of which occurred "**prior to and separate from the alleged defamatory statements**." (*See* Doc. 40, PageID #539 (emphasis in original)). Hunt, as a former SBC President, EC member, and prominent religious leader, was aware of the mandate from the Messengers and Guidepost's charge to investigate abuse within the EC's ranks. (*See* Doc. 1–1,

---

[4] The second step's relevant factors are: (1) the voluntariness of Hunt's involvement; (2) the extent to which Hunt had access to channels of communication in order to counteract false statements; and (3) the prominence of Hunt's role. *See Santoni*, 2022 WL 97049, at *11. The Response does not set forth any argument with respect to factors two or three.

PageID #23, § 3.1). The Complaint is clear that Hunt lied to Guidepost. Had Hunt disclosed the facts (he now claims) of his consensual kissing, fondling indiscretion, and biblically processing of the same, the Report might have been different or not included him at all. Hunt's choices to lie and obfuscate prompted the need for, and undoubtedly led to, a more thorough and detailed investigation. As a result, Hunt is at least a limited purpose public figure, and he has no one to blame but himself for this status. Consequently, because Hunt has failed to plausibly allege the EC acted with actual malice (Doc. 32, PageID #482), his claims against the EC should be dismissed.[5]

## IV. THE REMAINING CLAIMS SHOULD BE DISMISSED.

Hunt's Response notwithstanding (*see* Doc. 40, PageID #545), Hunt has not alleged the EC's state of mind to sustain his false light claim. (*See* Doc. 1, PageID #18, ¶¶ 101–03). Hunt also admittedly has not suffered serious mental or physical injury, necessitating dismissal of his emotional distress claims. (*See* Doc. 40, PageID #547). Finally, the public disclosure claim fares no better because Hunt has failed to plausibly allege that the disclosed facts are unrelated to a matter of public concern.[6] The "true facts" here are not that "[Hunt] had a brief, consensual extramarital encounter with a married woman." (*See* Doc. 40, PageID #548). Rather, when confronted with the allegations, Hunt lied to Guidepost to cover-up the alleged abuse. (*See* Doc. 1–2, PageID #193). Hunt, therefore, is the only one to blame for inserting these facts into the realm of "public concern."[7] *Supra*, § III.

---

[5] *See Harte–Hanks, Comm'cns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989) (actual malice is a question of law)

[6] Sexual abuse and alleged cover-up efforts in major organized religion is undoubtedly a matter of public concern. *New Life Center, Inc. v. Fessio*, No. 99-1658, 2000 WL 1157800, at *5 (4th Cir. 2000). And extramarital affairs, when paired with other, newsworthy topics, become matters of public concern. *See Belk v. City of Eldon*, 228 F.3d 872, 876 (8th Cir. 2000) (in a first amendment retaliation case, the misuse of public funds to benefit one member of an extramarital affair was a matter of public concern); *Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1200–021 (Fla. Dist. Ct. App. 2014) (extramarital affair and the dissemination of a sex tape was a matter of public concern based on media).

[7] Hunt only addresses the disclosure claim in the context of the Report and the Tweet and ignores the Letter sent by the Credentials Committee to Hiland Park Baptist Church. (*See* Doc. 32, PageID #487).

Respectfully submitted,

*s/ R. Brandon Bundren*

E. Todd Presnell (BPR #17521)
Scarlett Singleton Nokes (BPR #28994)
R. Brandon Bundren (BPR #30985)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: 615.252.2355
F: 615.252.6355
tpresnell@bradley.com
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen (*pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Ave., Suite 3600
Dallas, Texas 75202
P: 214.257.9800
F: 214.939.8787
gbesen@bradley.com

*Attorneys for the Executive Committee of the Southern Baptist Convention*

# **CERTIFICATE OF SERVICE**

      I certify that on June 23, 2023, I electronically filed a true and correct copy of the Reply in Further Support of the Executive Committee of the Southern Baptist Convention's Motion to Dismiss with the Clerk of Court for the U.S. District Court Middle District of Tennessee through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

| | |
|---|---|
| Robert D. MacGill<br>Scott E. Murray<br>Patrick J. Sanders<br>MacGill PC<br>156 E. Market Street, Suite 1200<br>Indianapolis, Indiana 46204<br>robert.macgill@macgilllaw.com<br>scott.murray@macgilllaw.com<br>Patrick.sanders@macgilllaw.com<br><br>Todd G. Cole<br>Andrew Goldstein<br>Cole Law Group, P.C.<br>1648 Westgate Circle, Suite 301<br>Brentwood, Tennessee 37027<br>tcole@colelawgrouppc.com<br>agoldstein@colelawgrouppc.com<br><br>*Counsel for Plaintiff* | John R. Jacobson<br>Katherine R. Klein<br>Riley & Jacobson, PLC<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz<br>Terence W. McCormick<br>Mintz & Gold LLP<br>600 Third Avenue, 25th Floor<br>New York, New York 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br><br>*Counsel for Guidepost Solutions, LLC*<br><br>L. Gino Marchetti, Jr.<br>Matthew C. Pietsch<br>Taylor, Pique, Marchetti & Blair, PLLC<br>2908 Poston Avenue<br>Nashville, Tennessee 37203<br>gmarchetti@tpmblaw.com<br>matt@tpmblaw.com<br><br>*Counsel for Southern Baptist Convention* |

                                    *s/ R. Brandon Bundren*
                                    R. Brandon Bundren