IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>    Defendants. | Case No. 3:23-cv-00243<br>Judge Campbell<br>Magistrate Judge Frensley |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT GUIDEPOST SOLUTIONS LLC FOR A PROTECTIVE ORDER AND IN CAMERA REVIEW

## INTRODUCTION

Defendant Guidepost Solutions LLC ("Guidepost") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 26(c) for a protective order relieving Guidepost of the obligation to produce to Plaintiff Johnny M. Hunt ("Hunt") certain materials that he has requested in discovery in this action.[1] To assist the Court in making its determination, Guidepost is prepared to produce the subject discovery materials for an *in camera* review.

---

[1] Guidepost files this motion for a protective order concurrently with its opposition to Hunt's motion to compel, which was filed on October 6, 2023, at ECF Doc. No. 57-58.

**PRELIMINARY STATEMENT**

The Court should grant a protective order to avoid the prospect of re-victimizing an alleged victim of sexual abuse—this time through the discovery process. As the Court is aware, this action arises out of Guidepost's submission to the Southern Baptist Convention ("SBC") of its Report of the Independent Investigation (the "Report") of the Executive Committee of the Southern Baptist Convention ("EC"), as set forth in the engagement letter with the SBC Sexual Abuse Task Force. Although Guidepost originally arranged for a stipulated protective order (ECF Doc. No. 52) permitting a standard confidentiality designation to avoid public disclosure of the survivor's or witnesses' identities, when Guidepost later gathered and reviewed documents for production in response to Hunt's discovery requests, it became apparent that the existing protective order was insufficient. As document review progressed, counsel realized that Guidepost was prohibited altogether under its engagement letter with the SBC from producing certain categories of documents requested by Hunt that contained information provided by the survivor at issue in this action that would reveal the survivor's or witnesses' identities in the absence of either (1) the contractually stipulated "appropriate survivor approval" referred to in the engagement letter or (2) a "lawful, final judicial or administrative order." Those categories of documents include:

1. Audio recordings that the husband made of counseling sessions with his wife and the purported marriage counselor referred to in the Guidepost Report, Roy Blankenship, following Hunt's alleged assault of the survivor;

2. The husband's private journal;

3. A summary document that contained information provided by the survivor and her husband to the Guidepost investigators;

4. Text messages exchanged between the survivor and a Guidepost investigator who interviewed her for the Report;

5. Guidepost's notes of its interview with the survivor and her husband; and

6. Blackline drafts of Guidepost's interview notes.

The Court should grant the requested relief for two reasons.

*First*, production of these discovery materials would disclose information relating to the identity of an alleged sexual abuse survivor and witnesses, thereby triggering Guidepost's contractual obligation either to secure survivor approval pursuant to its engagement agreement with the SBC or await an order from this Court to produce the documents over the survivor's objection. As of October 11, 2023, after a prolonged attempt by Guidepost to secure the survivor's consent to produce the documents, the survivor's counsel abruptly refused consent to the production of any of the subject documents under any condition absent a court order. See the accompanying Declaration of Steven G. Mintz ("Mintz Decl.") at ¶ 12. In this connection, Guidepost emphasizes that it has no interest in frustrating legitimate discovery, but it is constrained by its contract with the SBC to protect an alleged victim of sexual abuse—an issue with which the courts have ample experience.

*Second*, even apart from the technical contractual issue, unrestricted production of some of the documents that Hunt seeks would unjustifiably disclose deeply intimate details of the survivor's marriage, to which Hunt is not entitled. Indeed, as to the audio recordings Hunt is seeking, Hunt was not even present during those recordings and his name is not mentioned in them. Thus, the Court should exercise the broad latitude accorded under Fed. R. Civ. P. 26(c) to deny discovery of these documents altogether, thereby avoiding (1) undue embarrassment and emotional distress to the alleged victim of sexual assault and her husband and (2) the risk of placing Guidepost in jeopardy of breaching its undertakings to the SBC.

\* \* \* \* \*

## BACKGROUND

A.   <u>The Engagement Letter Between the SBC Task Force and Guidepost</u>.

As stated more fully in Hunt's pleadings and the various motions to dismiss the Complaint, which are fully submitted and currently awaiting the Court's determination, in 2021 Guidepost was commissioned to conduct an independent investigation of the EC and prepare a Report which was published by the SBC's Sexual Abuse Task Force (the "<u>SBC Task Force</u>") on May 22, 2022.

The scope of the investigation was defined in paragraph 3.1 of an engagement letter executed by Guidepost, Dr. Bruce Frank, as chair of the SBC Task Force, and Dr. Rolland Slade on behalf of the EC (the "<u>Engagement Letter</u>").[2] Guidepost was expressly commissioned in the Engagement Letter to investigate "allegations of sexual abuse by the Executive Committee," *i.e.*, not by any and all SBC clergy throughout the country but only allegations of sexual abuse committed by persons serving *on the EC itself*. Hunt was once the President of the SBC, which made him a member of the EC during his term as President. (Compl., ¶ 55.)

In the interest of ensuring Guidepost's independence, the SBC expressly agreed that "[n]o attorney-client relationship will be formed between Guidepost and any other party," including the SBC's "Committee on Cooperation, the [SBC] Task Force, the SBC, the Executive Committee, and/or the Credentials Committee" (Engagement Letter at ¶ 3.3). Nevertheless, the Engagement Letter imposed certain restrictions upon Guidepost's disclosure of the identities of survivors or witnesses. Paragraph 4.3 requires, in relevant part:

---

[2]   A copy of the Engagement Letter was attached as <u>Exhibit A</u> to Hunt's Complaint. Under the Engagement Letter, the SBC engaged Guidepost to conduct an independent investigation into the following topics: "(1) allegations of sexual abuse by the Executive Committee; (2) the Executive Committee's mishandling of sexual abuse allegations; (3) allegations of mistreatment of sexual abuse victims; (4) patterns of intimidation of sexual abuse victims or advocates; and (5) resistance to sexual abuse reform initiatives." (Compl., ¶¶ 34-35, 38 & <u>Exhibit A</u>, at p. 5, ¶ 3.1.) (ECF Doc. No. 1 & 1-1.)

4

> Guidepost will treat and maintain as confidential and private all information that has been or will be communicated or provided to Guidepost relating to any survivor or witness identity ***and will not reveal or utilize it in any way except with appropriate survivor approval***; provided, however, that, subject to the provisions of Article 7 of this Agreement, Guidepost may reveal such information pursuant to a lawful, final judicial or administrative order (emphasis added).

B.  <u>The Documents at Issue Regarding Hunt, the Survivor, and Her Husband</u>.

Hunt's causes of action arise out of his claim that Defendants published a libelous account of his alleged sexual assault of a young woman. The Report, which is attached to Hunt's Complaint as <u>Exhibit B</u> (ECF Doc. No. 1-2), recites that one of the survivors and her husband alleged that Hunt had systematically developed a relationship of trust with the survivor over a number of years (*i.e.*, groomed her), including during Hunt's tenure as President of the SBC, and ultimately sexually assaulted her in a Florida condo on July 25, 2010.[3] (ECF Doc. No. 1-2 at p. 149.) During the period of the alleged grooming, which took place during his term as President, Johnny Hunt was a member of the EC; thus, Hunt's misconduct was the proper subject of investigation and inclusion in the Report.

The full details of Hunt's alleged assault need not be repeated for purposes of this motion. However, Guidepost recites below certain salient facts stated in the Report attached to Hunt's Complaint as needed to place the documents at issue in this motion in context (which documents are also the subject of Hunt's dueling motion to compel).

The Report recites that, in their interview, the survivor and her husband described to Guidepost's investigators how Hunt manipulated them after the alleged assault and attempted to gaslight them into believing that no assault had ever occurred, and that the survivor was at fault.

---

[3]  As stated in the Report, the husband was himself a minister in the SBC and had a professional relationship with Hunt, whom he considered a mentor. Hunt also had a social relationship with the couple, which he allegedly used as part of his campaign of grooming the survivor. Hunt is 24 years older than the alleged survivor. (ECF Doc. No. 1-2 at p. 150.)

(ECF Doc. No. 1-2 at p. 152.) Specifically, as described in the Report, on Monday evening, August 2, 2010, Hunt arranged to have the alleged survivor and her husband meet him at Hunt's megachurch, First Baptist Church Woodstock, accompanied by Roy Blankenship, an unlicensed marriage counselor. (ECF Doc. No. 1-2 at p. 152.) During the discussion, the husband learned for the first time that Hunt had allegedly sexually assaulted his wife. (Id.)

The Report explains that Blankenship then told the couple that he had cleared his calendar and was going to initiate marriage counseling for them. (Id. at p. 153.) That week, the couple began to meet with Blankenship, who forbade them from discussing the sexual assault that had allegedly taken place on July 25th. (Id.) On August 5th, Blankenship brought Hunt, Hunt's wife, and the alleged survivor and her husband in for another meeting at HopeQuest, a counseling ministry. (Id.) According to the Report, Hunt and Blankenship told the alleged survivor and her husband that they could never talk about what had happened, and that if they did, it would negatively impact the over 40,000 churches Hunt had represented as President of the SBC. (Id.)



---

4  As stated in the Report, Blankenship was not a licensed marriage counselor in the State of Georgia.

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████

In addition to voluntarily meeting with Guidepost's interviewers, the alleged survivor's husband provided the interviewers with several highly personal items, some containing deeply private matters regarding his marriage, including the aforementioned audio files of his sessions with Blankenship; his personal journal; a summary document that he prepared for the Guidepost interviewers; and proposed annotations to the Guidepost investigators' draft of the relevant portions of the Report. These highly personal items are not required by Hunt to prosecute his claims. The Guidepost interviewers also exchanged text messages with the survivor and her husband.

C.     Hunt's Discovery Requests.

On June 1, 2023, Hunt's counsel served document requests seeking, among other things, recordings of and documents relating to Hunt, the survivor, her husband, and Blankenship. Guidepost read the request for recordings to include only recordings created by Guidepost and responded that it did not have recordings of those individuals (and it had made none). Because the Engagement Letter had specifically waived attorney-client privilege, Guidepost undertook to search for and produce documents in response to most of Hunt's requests, subject to the parties' stipulation to and the Court's approval of a protective order, which was so ordered on July 25,

2023. However, as originally negotiated and so-ordered by the Court, the existing protective order does not contain a "Highly Confidential" or "Attorney's Eyes-Only" category of protection.

On July 17, 2023, Hunt sent a second request for recordings in a Second Request for Production, demanding production of "[a]ll audio recordings referenced in the letter sent by Steven G. Mintz on behalf of Guidepost to Robert D. MacGill dated March 13, 2023," *i.e.*, the 2010 audio recordings of the sessions with Blankenship made by the alleged survivor's husband (not Guidepost) and supplied to the Guidepost investigators. Because copies of the recordings were in Guidepost's possession, Guidepost duly responded that it would produce them.

In preparing to produce the requested documents to Hunt's counsel, Guidepost's counsel first listened to the audio recordings and read through the other documents provided by the alleged survivor's husband. Realizing at this juncture the highly sensitive and private nature of the information contained in the audio recordings and the journal in particular, counsel immediately concluded that the existing protective order would not be sufficient to satisfy the confidentiality provisions set forth in the Engagement Letter (and would be embarrassing to the survivor and her husband in any event). Accordingly, Guidepost was obliged to approach the survivor's counsel to obtain her and her husband's consent to produce the documents to Hunt's lawyers, not only to satisfy the stipulations in Guidepost's Engagement Letter with the SBC but as a matter of simple human decency.

As stated more fully in the Joint Discovery Dispute Statement (ECF Doc. No. 56), Hunt's counsel requested to meet and confer with Guidepost's counsel. Guidepost's counsel duly met and conferred with counsel for Hunt on September 14, 2023. While Guidepost explained that it was working with the survivor's counsel to obtain consent to production of the requested materials,

8

Case 3:23-cv-00243   Document 63   Filed 10/20/23   Page 8 of 14 PageID #: 767

Hunt's counsel determined that they would seek judicial intervention. Hunt's counsel filed the Joint Discovery Dispute Statement the following day.

Meanwhile, to the extent possible, Guidepost provided its initial production of documents, designated as confidential under the existing Protective Order on September 15, 2023 (GP_000001 – GP_003989). Guidepost made a subsequent production on October 13, 2023, again designating the production as confidential but withholding for the time being the documents at issue on this motion (GP_003990-GP_004327).

Without waiting for this Court to schedule a premotion telephonic discovery conference to discuss the matter—Hunt's counsel filed a formal Motion to Compel on October 6, 2023 (ECF Doc. No. 57-58.) The following week, the survivor's counsel notified Guidepost's counsel that the survivor flatly refused to consent to the production of the categories of documents described above. Mintz Decl., at ¶ 12.

Accordingly, Guidepost opposes the Motion to Compel and separately files this cross-motion for an enhanced protective order and *in camera* review.

\* \* \* \* \*

## ARGUMENT

The Federal Rules of Civil Procedure limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case [. . .]" Fed. R. Civ. P. 26(b)(1). The Court must limit discovery, by motion or on its own, when the discovery sought is outside the scope permitted by Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(2)(C). In other words, "a court has the duty to deny discovery directed to matters not legitimately within the scope of the Rules and to use its broad discretionary power to prevent harassment or oppression that may result from discovery." World Healthcare Sys., Inc. v. Surgical Servs., Inc., No. 1:10-CV-60, 2011 WL 849318, at *5 (E.D. Tenn. Mar. 8, 2011) (citing Fed R. Civ. P. 26(b)(2)).

As stated in the accompanying Mintz Declaration, the audio recordings, the private journal maintained by the survivor's husband, and the summary document which were responsive to Hunt's discovery requests ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

As of October 11, 2023, counsel for the survivor and her husband ***categorically*** refused upon request to authorize Guidepost to release these documents. Although Guidepost is mindful of its discovery obligations, it is also obliged to take steps to protect a survivor. Therefore, to the extent that Hunt's requests seek information not related to any substantive issue in this case, and instead would only reveal intimate and private details about the survivor's and her husband's

marriage, Guidepost requests that the Court enter a protective order categorically relieving Guidepost of any obligation to produce such documents.

To the extent that disclosure of the remaining documents relating to Guidepost's investigation into Hunt's alleged abuse of the survivor could implicate confidential and private information that was communicated or provided to Guidepost "relating to any survivor or witness identity," the survivor and her husband have refused to permit their production in any form as well. Those would include interview notes, drafts of the Report, and text messages.

The production of the requested materials without intervention by this Court would impose a hardship upon Guidepost, which may only disclose such matters with survivor consent or pursuant to a Court order—that it why Guidepost must make this motion now. Guidepost emphasizes that it would not be making this motion but for the fact that the survivor and her husband have requested it to do so. To assist the Court in its determination as to whether the subject documents and recordings should be withheld in their entirety, or whether some measure of redaction and/or production under an AEO designation is appropriate, Guidepost is prepared to produce the subject information to the Court for *in camera* review.

The granting of a protective order under Rule 26 is within the discretion of the Court. See Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1548 (11th Cir. 1985). Furthermore, "judges should not hesitate to exercise appropriate control over the discovery process," Herbert v. Lando, 441 U.S. 153, 177 (1979). "[A] court may, for good cause, issue an order to protect a party or person from 'annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." Elvis Presley Enters. v. City of Memphis, No. 2:18-cv-02718-SHM-dkv, 2020 WL 4283279, at *2 (W.D. Tenn. Apr. 6, 2020), aff'd, No. 2:18-CV-02718, 2020 WL 4015476

(W.D. Tenn. July 16, 2020) (quoting In re Ohio Execution Protocol Litig., 845 F.3d 231, 236 (6th Cir. 2016)). Although the specifically delineated purposes for which a court may issue a protective order are annoyance, embarrassment, oppression, or undue burden, "[t]hese purposes may be extended to encompass the overall limit of Federal Rule of Civil Procedure 26—information that is relevant to a claim or defense." Underwood v. Riverview of Ann Arbor, No. 08-CV-11024-DT, 2008 WL 5235992, at *4 (E.D. Mich. Dec. 15, 2008).

Although the SBC explicitly waived privilege in the Engagement Letter, documents need not be privileged to be protected. See Seattle Times v. Rhinehart, 467 U.S. 20 (1984); Survivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005). Indeed, in Phillips v. General Motors Corp., 289 F.3d 1117 (9th Cir. 2002); amended and superseded, 307 F.3d 1206 (9th Cir. 2002), the court enumerated that the categories of confidential information identified in Rule 26(c) are not exclusive and the Court possesses "broad latitude" to enter protective orders upon a showing of good cause to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense," such as would result if Guidepost were forced to produce the foregoing documents over the objection of the survivor. Accordingly, this Court should exercise that authority to avoid undue embarrassment and emotional distress to the alleged survivor and her husband as well as the oppression to Guidepost that would result from forcing it to breach its obligation to the SBC in the absence of survivor consent or a court order.

\* \* \* \* \*

## **CONCLUSION**

For the foregoing reasons, Guidepost respectfully requests that the Court grant the requested protective order and *in camera* review.

Dated: October 20, 2023

                        Respectfully submitted,

                        s/John R. Jacobson
                        John R. Jacobson, Esq. (BPR # 014365)
                        Katharine R. Klein, Esq. (BPR # 019336)
                        1906 West End Avenue
                        Nashville, TN 37203
                        Telephone: (615) 320-3700
                        jjacobson@rjfirm.com
                        kklein@rjfirm.com

                        -and-

                        **MINTZ & GOLD LLP**
                        Steven G. Mintz (admitted pro hac vice)
                        Terence W. McCormick (admitted pro hac vice)
                        600 Third Avenue
                        25th Floor
                        New York, NY 10016
                        Telephone: (212) 696-4848
                        mintz@mintzandgold.com
                        mccormick@mintzandgold.com

                        *Counsel for Guidepost Solutions LLC*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St. Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com
*Counsel for the Southern Baptist Convention*

on this 20th day of October, 2023.

s/John R. Jacobson