IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>                Plaintiff,<br><br>    v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>                Defendants. | Case No. 3:23-cv-00243<br>Judge Campbell<br>Magistrate Judge Frensley |

**RESPONSE OF DEFENDANT GUIDEPOST SOLUTIONS LLC
TO NON-PARTY ROY BLANKENSHIP'S MOTION FOR A
PROTECTIVE ORDER AND TO QUASH**

Defendant Guidepost Solutions LLC ("Guidepost") respectfully submits this Response in Opposition to the motion brought by third-party witness Roy Blankenship ("Blankenship") for a protective order and to quash Guidepost's Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena"). (ECF Doc. No. 89.1.)

**PRELIMINARY STATEMENT**

Blankenship is at the epicenter of a controversy in which Plaintiff Johnny Hunt ("Hunt"), who is the former President of the Southern Baptist Convention ("SBC"), is alleged to have sexually abused the young wife of another Baptist clergyman (the "accuser") in July 2010. Blankenship was an unlicensed marriage counselor whom Hunt enlisted shortly after the incident to meet with the accuser and her husband and help Hunt to deal with the aftermath. While

Blankenship seeks refuge behind a claim of clergy-penitent privilege, his motion is procedurally and substantively defective.

*First,* the Court should deny the motion to quash because it should have been filed in Georgia. Fed. R. Civ. P. 45(d)(3). *Second,* to the extent that Blankenship seeks a protective order, the motion should otherwise be denied because he is not entitled to invoke the clergy-penitent privilege in the first instance and, contrary to his arguments in the motion, both he and the accuser and her husband repeatedly waived the privilege. Hunt *also* waived any privilege by disclosing to Guidepost's investigators information about a meeting between Hunt, his wife, Blankenship, and the accuser and her husband. *Third,* as stated below, Blankenship has discoverable information concerning topics outside the purported marriage counseling services that he relies upon. Thus, he cannot be shielded from being required to testify in a deposition.

## FACTS

Hunt's sexual impropriety came to light after accounts of widespread sexual abuse on the part of SBC clergy and church staff were published in 2019 in the *Houston Chronicle* and *San Antonio Express-News*. In response to the crisis, the SBC's Executive Committee ("EC"), acting in conjunction with a Sexual Abuse Task Force appointed by the SBC President (the "SBC Task Force"), commissioned Guidepost to conduct an independent investigation into, among other things, allegations of sexual abuse by EC members (which included Hunt because he had been the President of the SBC).

Following a comprehensive investigation into the allegations against Hunt and other members of the EC, Guidepost authored a report that identified Hunt along with other alleged sexual offenders and members of the EC who had covered up instances of abuse and retaliated against the victims (the "Report"). The Report states that when Hunt was interviewed twice by

Guidepost investigators, he flatly denied engaging in any misconduct towards his accuser. In fact, in his first interview with the Guidepost investigators, Hunt denied even knowing the accuser's husband. Then, in the second interview, Hunt acknowledged he had known the couple for at least twenty years but, while he attended the 2010 annual convention, he did not remember any personal contact with the couple. The Report included Hunt's interview denials. (Hunt attached a copy of the Report as Exhibit B to his Complaint at ECF Doc. No. 1-2.) The portions of the Report that relate specifically to Hunt's alleged sexual assault and Blankenship's subsequent role as a purported marriage counselor to the accuser and the accuser's husband are attached as Exhibit 1 to the Declaration of Samantha Kilpatrick in Opposition of Blankenship's Motion to Quash ("Kilpatrick Decl."), filed contemporaneously herewith.

With regard to Hunt in particular, during the Guidepost investigation the accuser and her husband approached the investigators with the allegation that Hunt had sexually assaulted her in a Florida condominium in 2010. (Report at 149.) According to the accuser, after Hunt assaulted her, he then attempted to contain the damage by manipulating the accuser and her husband into meeting with him and Blankenship. (Id. at 151-53.) Specifically, the Report related the accuser's explanation that Hunt quietly arranged for Blankenship to conduct a series of marriage counseling sessions with the accuser and her husband, *i.e.,* in an effort to gaslight the couple into thinking that the encounter at the condominium was a function of the wife's marital and other emotional problems and not a sexual assault by Hunt. (Id. at 152-53.) The Report recites that as part of this arrangement, at a meeting where Hunt was present, Blankenship directed the couple never to discuss what had happened. (Id. at 153.) As the Report explains, and as Blankenship concedes in his motion to quash the Subpoena, Blankenship was not a licensed marriage counselor. (Id. at 153-54.) Rather, he was involved with a program at Hunt's megachurch, First Baptist Church

3

Woodstock, called "City of Refuge for Pastors," a ministry for clergy who had "moral failures," and was CEO of HopeQuest, which provided counseling to drug addicts and alcoholics.

The Report further recites that Hunt told Guidepost's investigators that he remembered a meeting with the couple on August 2, 2010, which included himself, his wife, and Blankenship. Hunt disclosed information to Guidepost's investigators about that meeting and what was said during the meeting. He said the meeting was brief and that he and his wife, along with his accuser, her husband, and Blankenship were present. Hunt said that he did not apologize to his accuser for sexually assaulting her during this meeting because there was no contact between the two of them. Rather, any apology would have related to Mrs. Hunt's having offended the accuser due to her concern that the accuser had been at the condominium alone, and the Hunts' apologizing for the accuser being told to leave. (Report at 160.)

Due to the conflicting accounts of the accuser, her husband and Hunt, the Guidepost investigators reviewed additional information to assess the credibility of the witnesses. The Guidepost investigators met with Blankenship in person at his office in Kennesaw, Georgia, on May 9, 2022, and included the following account in the Report:

> When investigators told him what they wanted to question him about, Mr. Blankenship expressed concern for Survivor and Pastor, but he also said he did not want to betray a confidence. The investigators explained that they had a waiver from the couple to discuss their information. Mr. Blankenship did not offer a narrative of what happened, but he said he was willing to answer yes or no questions. During questioning, at times he provided more than a yes or no answer.
>
> Mr. Blankenship confirmed that Dr. Hunt's extended sabbatical in 2010 was not related to exhaustion. He also confirmed that there was an incident in Panama City Beach involving Dr. Hunt and the Survivor. From the information he recollected, Mr. Blankenship said that Dr. Hunt had kissed Survivor and touched her breast over her clothes. He did not recall anything about pulling down pants. Mr. Blankenship stated that he did not think he received the full story. He confirmed that, at the time, his assessment was based on what Dr. Hunt told him and that the sexual contact was consensual.

4

> Mr. Blankenship stated that he and Dr. Hunt agreed to meet with the couple the following week, and they did in fact meet at Pastor's church. He stated that Dr. Hunt did not dominate the meeting, but he did apologize to Pastor, and Pastor said that he forgave him. When asked if Survivor gave an account of what happened, he said she could have spoken up, but she stayed silent. He went on to say that Dr. Hunt was the one with the power advantage and he should have been the one to stop it, adding but "it takes two to tango." He said he had been around for a while, and he knew how things worked. He questioned how Dr. Hunt and Survivor ended up in condos next door to each other. He called it a "he said/she said" situation, and he had no proof.
>
> Mr. Blankenship also confirmed that a second meeting took place at HopeQuest and that Dr. Hunt and his wife as well as Survivor and Pastor were present. At that meeting, the couples were present to forgive, forget, and move on. Mr. Blankenship stated that he did remember Dr. Hunt saying that if this (story) got out, it could negatively impact 40,000 churches. He does not think this was said at that first meeting, but he does remember it being said at some point. Mr. Blankenship said that he was focused on helping the couple.

(Report at 154-55.) The Report also states that the accuser's husband provided the Guidepost investigators with a hard drive on which he kept an electronic journal that contains entries related to the counseling sessions with Blankenship, as well as some audio recordings of the counseling and husband's thoughts following the counseling sessions. (Id. at 153.) The audio recordings and the husband's personal journal were produced to Hunt's counsel in conformity with this Court's Order entered on November 22, 2023. (ECF Doc. No. 76.) Significantly, the accuser's husband furnished the Guidepost investigators with a written consent to access the contents. (See Exhibit 2 to the Kilpatrick Declaration.)

It is undisputed in this action that, in addition to interviewing Blankenship, Guidepost conducted interviews with Hunt, who flatly denied any sexual encounter with the accuser, but did discuss with Guidepost' investigators Blankenship's meeting with Hunt, his wife, and the accuser and her husband, as well as parts of what was said during that meeting. The Report further states that the investigators also spoke with three other witnesses who corroborated the husband's

5

account that he had told them about the alleged assault at the time. (Report at 156-58.) But, as revealed above, Blankenship provided critical information.

Hunt filed the Complaint in the instant case on March 17, 2023, in which Hunt admitted he lied to the Guidepost investigators during his interviews and changed his story to allege that his sexual conduct with the accuser was "consensual" by conceding that he entered into an "inappropriate, extramarital encounter with a married woman" but minimizes his conduct as "only kissing and some awkward fondling." (Compl., ¶¶ 2, 53.) Significantly, while Hunt's Complaint does not mention Blankenship by name, Hunt does assert that "[f]ar from 'corroborating' the accuser's account, the counselor directly contradicted her key allegations." (Id., ¶ 56.) (Guidepost, by contrast, found that Blankenship's account did, indeed, corroborate the accuser's account, at least in part.). In Hunt's second interview with Guidepost, Hunt told the Guidepost investigators to speak with Blankenship to find out more information on the matter.

Blankenship is therefore a central and indispensable witness in this matter—and Hunt has made him so as much as the accuser and her husband have. As a Georgia domiciliary, Blankenship's attendance cannot be compelled at trial in the State of Tennessee, and he is therefore the proper subject of a deposition. For the reasons that follow, his testimony is not privileged and/or to the extent that any privileges are implicated, they have been waived, and his motion to quash or for a protective order should be denied.

\* \* \* \* \*

# ARGUMENT

1. The Motion to Quash is Defective Because it is Brought in the Wrong Court.

At the outset, to the extent that Blankenship seeks an order from this Court quashing the Subpoena, the motion to quash is defective and must be denied. Although this Court is the issuing court, compliance was required in Atlanta, Georgia, not Tennessee, because Blankenship resides in Georgia. A motion to quash a subpoena should be brought in the judicial district where compliance is required, *not* the issuing court. Fed. R. Civ. P. 45(d)(3). See, e.g., Mid Am. Sols., LLC v. Merch. Sols. Int'l, Inc., No. 1:15-CV-0563-RHB, 2016 WL 1392323, at *5 (W.D. Mich. Apr. 8, 2016) (citing Fed. R. Civ. P. 45(d)(3)(A), noting motions to quash or modify subpoenas must be brought in "the district where compliance is required"); Gardner v. Cape Cod Healthcare, Inc., 344 F.R.D. 127, 131 (D. Mass. 2023) ("this court is not the compliance court and the motion to quash or modify the third-party subpoena under Rule 45(d)(3) 'is thus not properly before this court.'") (internal citation omitted); Edwards v. Thomas, No. 4:19-CV-4018, 2021 WL 4950848, at *1 (W.D. Ark. Sept. 13, 2021) (denying motion to quash in Western District of Arkansas where deposition was required within the Northern District of Alabama).

To the extent that Blankenship separately seeks a protective order from this Court under Rule 26(c), he does not explain how the proposed protective order would differ from modification of the Subpoena under Rule 45. However, Guidepost assumes for purposes of this motion that Blankenship seeks to limit questioning at the deposition and/or production of documents to protect his claim to privilege under Georgia state law as a clergyman. However, his motion is not well founded.

2. The Georgia Clergy-Penitent Privilege Does Not Apply to Blankenship's Marriage Counseling Services.

Guidepost assumes for purposes of this motion that Blankenship was, as his counsel represents in the motion, an ordained Baptist Minister in 2010. (According to the Report, Blankenship was no longer a Southern Baptist when the Guidepost investigators interviewed him.) However, the privilege does not apply under the facts of this case.

Blankenship relies exclusively upon Georgia's "clergy-penitent privilege," codified at GA Code § 24-5-502, which states that:

> "No such [Protestant] minister, priest, rabbi, or similar functionary shall disclose any communications made to him or her by any such person professing religious faith, seeking spiritual guidance, or seeking counseling, nor shall such minister, priest, rabbi, or similar functionary be competent or compellable to testify with reference to any such communication in any court."

Although Blankenship does not claim in his motion that the accuser and her husband were "seeking spiritual guidance" on religious matters, he asserts that the privilege applies because the accuser and her husband were "seeking counseling" within the meaning of the statute and that Blankenship was supplying a "ministerial" version of "professional counseling, social work, or marriage and family therapy." (Mot. at 3.)

Georgia courts have held that "the privilege does not apply… if the totality of the circumstances demonstrates that the statements were made to a person who is a minister but was not acting in the role of a clergy person at the time the statements were made to him." Hutcheson v. State, 361 Ga. App. 890, 898 (2021), reconsideration denied (Nov. 16, 2021), cert. denied (June 22, 2022) (citing Parnell v. State, 260 Ga. App. 213, 214-15 (2003)). Under the totality of the circumstances in this case, Blankenship was not engaged in the provision of spiritual solace or guidance as such but as an (unlicensed) marriage counselor, ███████████████

8

███████████████████████████████████████.[1] Although Blankenship conclusorily asserts in his motion that "[t]hose counseling sessions took place under the same or similar circumstances as all the counseling sessions conducted by Blankenship in his role as Senior Counseling Pastor," several problems remain with his claim to the clergy-penitent privilege.

*First,* Blankenship does not provide a sworn declaration in support of this statement but makes this representation solely in his brief. It should be disregarded on that ground alone. *Second,* ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ However, the balance of the recordings of the counseling sessions reveals that most if not all communications between the accuser, her husband, and Blankenship would be indistinguishable from those shared with a secular marriage counselor, ██ ████████████████████████████████████████████████████████████████████████ ████████████████████.[2]

---

[1] Blankenship does not deny that he was unlicensed at the time but asserts that "[p]ersons engaged in the practice of a specialty in accordance with Biblical doctrine in public or nonprofit agencies or entities or in private practice" are exempt from registration as marriage counselors under GA Code § 43-10A-7b(11). (Mot. at 3.) This may be, but it does not help him to the extent that his services were secular in character.

[2] To the extent required, Guidepost is prepared to submit these recordings to the Court *in camera* to protect the accuser's privacy. They have already been produced to Hunt's counsel under an Attorney's Eyes-Only designation. See Declaration of Terence McCormick in Opposition to Blankenship's Motion to Quash ("McCormick Decl."), filed contemporaneously herewith.

3. <u>Even if the Clergy-Penitent Privilege Applied at One Point, it Was Waived</u>.

Blankenship did not conduct his purported counseling services in circumstances of complete confidentiality. To begin with, as detailed in the Report, Blankenship's first meeting with the accuser and her husband included a third party (Hunt) and a later meeting included both Hunt and his wife. (Report at 152-53.) Moreover, Blankenship later met with the Guidepost investigators and discussed the details of his involvement with Hunt, the accuser, and their respective spouses. (Id. at 154-55; Mot. at 1-2.)

In his motion, Blankenship asserts that "Georgia courts have never recognized a minister's right to waive the privilege." (Mot at 3.) However, in a case cited by Blankenship, <u>Willis v. State</u>, 287 Ga. 703, 706 (2010), the Supreme Court of Georgia expressly stated that an accused criminal defendant's repeated, knowing disclosures in front of both a prison chaplain and a law enforcement officer were sufficient to waive the clergy-penitent privilege.[3] As noted above, the accuser and her husband liberally waived any privilege not only by speaking extensively with the investigators but by providing a written waiver. Thus, the accuser and her husband certainly did waive any purported "privilege" even if Blankenship claims he did not.[4] In addition Hunt, by discussing with Guidepost's investigators the contents of the meeting between the parties also waived any purported privilege.

---

[3] Moreover, an earlier lower court case in Georgia, also cited by Blankenship in his motion at p. 4, <u>Alternative Health Care Systems, Inc. v. McCown</u>, 237 Ga. App. 355 (1999), assumed, without deciding, that the privilege could be waived. Guidepost is unaware of any authoritative pronouncement by the Georgia Courts that the clergy-penitent privilege may not be waived by disclosure to a third party just like any other privilege.

[4] A review of the Report and the investigators' interview notes suggests that while Blankenship was uncomfortable at times, he ultimately was quite forthcoming for a clergy person who protested that his communications were privileged.

4. No Privilege Attaches to Blankenship's 2022 Conversations with the Guidepost Investigators Insofar as They Concern Communications Other Than Those That Took Place in the Purported Marriage Counseling Sessions.

Even if any part of Blankenship's communications were privileged—which is not conceded—Blankenship is subject to a host of questions that do not implicate any privilege. As the Report indicates, Hunt told the investigators that when he contacted Blankenship, he did not do so because of the alleged assault (as he then denied any sexual misconduct) but "for general help" because the accuser's husband was "transitioning in ministry." (Report at 160.) To the extent that Blankenship commanded the accuser and her husband never to discuss the alleged assault, that has nothing to do with spiritual guidance or counseling (licensed, unlicensed, exempt from licensing or otherwise) and cannot be the proper subject of privilege. At the very least, Hunt has made the nature and purpose of his dealings with Blankenship (ministry, counseling, or damage control) an open question which must be explored in discovery. Blankenship must be questioned, under oath, on these matters.

It also bears recalling that Blankenship was ordained in Hunt's megachurch, First Baptist Church Woodstock. As he told the investigators, "[h]e said he had been around for a while, and he knew how things worked." Moreover, as the investigators' interview notes revealed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (See Exhibit 3 to the Kilpatrick Decl.) In short, there is no principled ground upon which to excuse Blankenship from testifying altogether or providing responsive documents and his motion should be denied.

## CONCLUSION

For the foregoing reasons, Guidepost respectfully requests that the Court deny Blankenship's motion and direct him to produce the requested documents and appear for his deposition.

Dated: January 4, 2024

Respectfully submitted,

s/John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
Scott Klein (admitted pro had vice)
Adam Brody (admitted pro hac vice)
Alex Otchy (admitted pro hac vice)
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
brody@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St. Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*

T. Dylan Reeves
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Telephone: (615) 782-2323
dreeves@stites.com

*Counsel for Third-Party Roy Blankenship*

on this 4th day of January 2024.

                                                                                      s/John R. Jacobson