## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHNNY M. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 3:23-cv-00243 |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NON-PARTY ROY BLANKENSHIP'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH

In support of his motion for protective order and motion to quash (Doc. 89), Roy Blankenship states as follows:

## INTRODUCTION

Roy Blankenship is a non-party to this action that received a subpoena from Defendant Guidepost Solutions, LLC (hereinafter "Guidepost") commanding him to appear for deposition. In his role as Senior Counseling Pastor of First Baptist Church of Woodstock, Blankenship provided counseling to Johnny Hunt, Janet Hunt, "Survivor," and "Survivor's Husband." The subpoena does not indicate that Guidepost provided notice to Janet Hunt, "Survivor," or "Survivor's Husband," who are interested parties. Georgia law and professional standards require Blankenship to hold in confidence all information obtained during those sessions. Georgia law provides a privilege that precludes courts from compelling him to testify. Absent a court order, or consent from the parties, Blankenship cannot disclose any of the information from the sessions. To date, the parties to the counselling have not authorized Blankenship to disclose the information. Janet Hunt, Survivor, and Survivor's Husband may not have notice of these proceedings and have not had an opportunity to respond. Blankenship, who is obligated to protect the confidential

1

information at issue, requires either an order from this Court or the consent of the parties to the counselling session before he can comply with the subpoena.

## STATEMENT OF FACTS

On November 20, 2023, Guidepost served Blankenship with a subpoena commanding him to appear for a deposition. (Doc. 89-1.) The Subpoena does not describe the matters for examination, but it does designate for production documents relating to counseling sessions conducted by Blankenship in 2010. (Doc. 89-1.) The subpoena does not indicate that Guidepost provided notice to Janet Hunt, "Survivor," or "Survivor's Husband," who are interested parties. (Doc. 89-1.)

Blankenship was ordained as a minister by First Baptist Church of Woodstock in 1996. (Blankenship s., Ex. 1 at ¶ 3.) In 2010, he held the role of Senior Counseling Pastor under which he led various counseling ministries and provided counseling services grounded in Biblical doctrine to guests, members, fellow ministers, and members of the community. (Ex. 1 at ¶¶ 5, 10.) It was in this role and capacity that he provided counseling to Johnny Hunt, Janet Hunt, "Survivor," and "Survivor's Husband" as defined in the Subpoena. (Ex. 1 at ¶¶ 7–10.) To date, Johnny Hunt, Janet Hunt, "Survivor," and "Survivor's Husband" have not authorized Blankenship to disclose the confidential information he holds.

## ARGUMENT AND CITATION OF AUTHORITY

### I.      This Court Has Jurisdiction To Enter A Protective Order And Quash Or Modify Guidepost's Subpoena.

It is undisputed that this Court has subject matter jurisdiction over the underlying action. That provides this Court with inherent power to manage its docket, including discovery in this action. *See generally   Link v. Wabash R. Co.*, 370 U.S. 626, 630, (1962); *see also Tolson v. Washburn*, No. 3:19-CV-00175, 2022 WL 1479942, at *4 (M.D. Tenn. May 10, 2022) ("Federal

2

courts may use a wide array of tools to manage the discovery process, some provided by the Federal Rules of Civil Procedure, some stemming from their inherent power 'to achieve the orderly and expeditious disposition of cases." (internal quotation omitted)). "Outside of their inherent authority, district courts also derive authority over discovery from the Federal Rules of Civil Procedure." *Santini v. Farris*, Case No. 2:21-13045, 2023 WL 8874236, at *2 (E.D. Mich. Oct. 12, 2023) (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407–08 (5th Cir. 1993)). Between this Court's inherent authority and the authority that the Federal Rules of Civil Procedure provides, this Court can provide the relief Blankenship seeks.

### A.  This Court may enter a protective order.

Blankenship may seek relief from this Court or a federal court in Georgia. The Federal Rules of Civil Procedure provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—*or as an alternative* on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1) (emphasis added); *see also Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2016 WL 11786198, at *5 (M.D. Tenn. May 16, 2016). The court where the action is pending may issue a protective order forbidding the disclosure or discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters, among other available protections. *Id.* Even if Blankenship did not file a motion, or his motion is somehow procedurally defective, "[t]he Court may also *sua sponte* quash or modify a subpoena or enter a protective order." *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2016 WL 11786198, at *6 (M.D. Tenn. May 16, 2016). Here, under its inherent authority, and Rule 26, this Court can enter a protective order providing the relief Blankenship seeks.

**B.** **Rule 45 does not strip this Court of jurisdiction to adjudicate Blankenship's Motion to Quash.**

Blankenship seeks protection from Guidepost's subpoena. Although a motion for protective order and a motion to quash have different titles, the relief is substantively the same and the two motions are not mutually exclusive. This Court should not put form over substance. The only practical difference between a motion for protective order versus a motion to quash is that a subpoena recipient—to protect the recipient from undue expense—may file the motion to quash in the venue where compliance is required rather than the venue where the underlying action is pending. *Compare* Fed. R. Civ. P. 26(c)(1) *with* Fed R. Civ. P. 45(d)(3). That distinction would carry more significance if there were great distance between the venues—for example, if Blankenship lived in California and had to travel to Tennessee. But here, Blankenship lives just a few hours away in Georgia, and retained counsel that is licensed in Georgia and Tennessee. Rather than burden a court unfamiliar with the details of this case—many of which are under seal— Blankenship raised his objection directly with this Court—that is, the Court most familiar with this action who will ultimately decide the legal issues in this action.

Under Rule 45, a motion to quash is not the exclusive means by which a non-party asserts privilege. *See, e.g.*, Fed. R. Civ. P. 45(d)(2)(B), (e)(2). Although Rule 45 provides authority for a "court for the district where compliance is required" to quash a subpoena, nothing in Rule 45 gives that court exclusive jurisdiction or strips jurisdiction from the court where the action is pending. *See* Fed R. Civ. P. 45(d)(3). Rule 45 was amended in 2013 to allow motions in district where compliance is required. Nothing in the 2013 committee notes suggests the amendment intended the compliance court to have exclusive dominion over motions to quash or that the amendment intended anything other than reducing the burden on a recipient located in a distant venue. In fact Rule 45 still allows the Court where the action is filed to adjudicate motions to quash because Rule

4

45 allows the compliance court to transfer the motion to quash to the court where the action is pending. *See* Fed. R. Civ. P. 45(f).

The 2013 amended reflects an intent to protect non-parties from the burden and costs of litigating in faraway courts. Blankenship is entitled to waive those protections if he desires, and he has submitted to this Court's personal jurisdiction to enforce compliance. This Court is in the best position to decide the privilege issue and there is no need for duplicative litigation over the issue. Consequently, this Court should decide Blankenship's motion.

## II. The Georgia Clergy-Penitent Privilege Protects Blankenship From Disclosure.

### A. There is no basis in Georgia law to recognize waiver and, alternatively, this Court should certify the issue to the Georgia Supreme Court.

As a federal court sitting in diversity, this Court must apply state substantive law. The only direct guidance from Georgia courts suggests that the relationship between ministers and persons professing religious faith or seeking spiritual comfort "is absolutely privileged, and ***the privilege cannot be waived***." *See Security Life Ins. Co. v. Newsome*, 122 Ga. App. 137, 141 (176 S.E.2d 463) (1970) (Evans, J., concurring specially) (emphasis added). Blankenship acknowledges the dicta in *Willis v. State*, 287 Ga. 703, 706, 699 S.E.2d 1, 5 (2010), which stated that "Moreover, even if there were any clergy privilege at play in this case, it was repeatedly waived." But *Willis* did not contain any citation of law or analysis that establishes Georgia law recognizes such a waiver. *Willis* is also a poor authority because it explicitly states that the privilege simply did not apply under the applicable facts. *See id.* ("the clergy-parishioner privilege is simply not applicable because Willis knowingly gave the confession to law enforcement, not privately to the chaplain.").

If any doubt exists whether the Georgia Clergy-Penitent Privilege can be waived, this Court should certify the question to the Georgia Supreme Court. *See* Ga. R. Sup. Ct. 46; O.C.G.A. § 15-2-9. "Resort to the certification procedure is most appropriate when the question is new and state

law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Certification is an effective tool in our federal system because it prevents federal courts from having to make state law and it "promotes judicial efficiency and comity and also protects [the] state's sovereignty." *Eiswert v. United States*, 619 F. App'x 483, 486 (6th Cir. 2015) (*quoting Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cty.*, 382 S.W.3d 318, 320 (Tenn. 2012)). The only direct authority before this Court states that the Georgia Clergy-Penitent Privilege cannot be waived. Although it is not binding precedent, Guidepost did not cite anything more than dicta for its argument that the privilege can be waived. If this Court does not follow *Newsome*'s persuasive authority, it should certify the question to the Georgia Supreme Court instead of contradicting *Newsome*.

### B. Because the privilege belongs to all communicants, all communicants must intentionally waive the privilege.

The Clergy-Penitent Privilege belongs to all communicants. *See Frost v. Frost, 299 Ga. 278, 280* (holding that wife could not waive privilege as to her husband); *cf. Georgia Int'l Life Ins. Co. v. Boney*, 139 Ga. App. 575, 577, 228 S.E.2d 731, 734 (1976) ("Since the privilege belongs to the communicator, it has been held that the privilege cannot be waived by the administrator"); *Morgan v. State*, 354 Ga. App. 754, 759, 841 S.E.2d 430, 435 (2020) ("The spousal witness privilege belongs to the witness spouse, not the accused, such that only the witness spouse can assert or waive the privilege.").

The facts establish that Blankenship conducted several counseling sessions, sometimes in groups of two and sometimes in groups of three or four. Under these circumstances, all parties to the session must intentionally waive the privilege. The privilege is also not waived by the presence of more than one person seeking spiritual comfort or counseling. *See Frost* at 279–80 (holding that trial court "did not err in finding the meeting was a marriage counseling session" and correctly

rejected argument that "Wife's presence as a third party at the meeting removed the conversation from the protection of the clergy-penitent privilege"); *Alternative Health Care Sys. v. McCown*, 237 Ga. App. 355, 360 (1999) ("AHC has cited no authority for the proposition that the clerical privilege is waived by the presence of more than one person seeking spiritual comfort or counseling, and the law on other privileges indicates the opposite"); *Cuevas v. State*, 310 So. 3d 60, 65 (2021) (Communications made in the presence of third parties necessary to the furtherance of the communication are privileged). For example, in *Alternative Health*, the court held that the privilege was not waived by the presence of Defendant's daughters where the minister was providing family counseling services. *Id.* Here, the privilege has not been waived by the presence of two couples in a joint marriage counseling session.

The Georgia Supreme Court has held that the clergy-penitent privilege, where relevant to counseling sessions of more than one person, is shared by all disclosing parties to the communication and therefore may not be waived by *less than all* disclosing parties. *Frost* at 279–280; *cf. Sims v. State,* 251 Ga. 877, 880 (311 SE2d 161) (1984) (holding statements made by husband during joint psychiatric counseling with wife were privileged). In *Frost*, the court held that it was proper to exclude recordings made by a wife of a marriage counseling sessions with her husband and pastor when her husband did not waive the applicable clergy privilege. Id. Therefore, Survivor and Survivor's Husband may not waive the privilege on behalf of each other, and they certainly may not waive it on behalf of Johnny or Janet Hunt in the context of marriage counseling sessions that included them.

### C. No privilege applies to Blankenship's conversation with Guidepost investigators, wherein he did not waive privilege.

Blankenship has not asserted and does not contend that any privilege applies to his conversation with Guidepost investigators on May 9, 2022. The Georgia Clergy-Penitent privilege

applies to communications between persons professing religious faith, seeking spiritual guidance, or seeking counseling—none of which apply to the Guidepost investigators who surprised Blankenship outside of his office for an interview—and ministers, a role Blankenship is no longer in. O.C.G.A. § 24-5-502. Blankenship maintained confidentiality and the applicable privilege at all times during his conversation with Guidepost investigators because he did not discuss the substance of his counseling sessions. *Alternative Health* at 360 (Subsequent disclosures that "do not address in any way the substance" of privileged conversations "do not amount to a waiver of the privilege"). Furthermore, Blankenship's unilateral actions cannot result in a waiver of the privilege. *See Frost* at 279–80.

### III. The Georgia Clergy-Penitent Privilege Applies To Blankenship's Counseling

Blankenship agrees with Guidepost that the privilege does not apply in situations where the totality of the circumstances demonstrate that the statements were made to a person who was not acting in the role of a clergy person at the time the statements were made. *Hutcheson v. State*, 361 Ga. App. 890, 898. (2021). But this is not such a situation, and the facts here confirm that the privilege applies. Blankenship was a minister ordained by First Baptist Church of Woodstock and was acting in the role of Senior Counseling Pastor when he was called upon to provide marriage counseling to the parties, who were evidently seeking such counseling.

Guidepost relies on *Hutcheson*, where a senior pastor arranged to meet at a restaurant with a youth group leader from his church, to confront him about allegations of sexual misconduct and instruct the youth leader to resign. *Id.* The court found that the totality of the circumstances demonstrated that the senior pastor was acting not in his role as clergy but instead "in his capacity as either an employer or supervisor." *Id* at 899.

Blankenship did not have an employment or supervisory role over Johnny or Janet Hunt, much less over Survivor or Survivor's Husband. In fact, Blankenship's *only* relationship with the

8

disclosing parties was in his role as Senior Counseling Pastor of First Baptist Church of Woodstock. Mr. Hunt had an employment or supervisory role over Blankenship, but in this instance had called upon him not to discuss his role but to provide marriage counseling to him and his wife. Blankenship was not a licensed counselor at the time but was providing counseling services under the protections of O.C.G.A. § 43-10A-7(11) in the practice of a specialty in accordance with Biblical doctrine in a public or nonprofit agency or entity. Therefore, his role as a minister is the *only* role in which he was able to provide counseling, and it is the role in which he provided counseling to the Hunts, Survivor, and Survivor's Husband.

When Guidepost argues that the information shared "would be indistinguishable from those shared with a secular marriage counselor," Guidepost asks this Court to impose a restriction the statute does not. The statute's express text state that it applies to "communications . . . by any such person professing religious faith, seeking spiritual guidance, *or seeking counseling*." O.C.G.A. § 24-5-502 (emphasis added). The statute's unambiguous language does not set any standard for the theological substance of the discussions. Instead, a person broadly "seeking counseling" from a "minister" is sufficient for the privilege to apply. Out of respect for religious liberties, this Court should leave great discretion to ministers for what qualifies as "seeking counseling" under that minister's faith and religious and professional standards.

The privilege should apply equally to a Protestant Christian seeking general counselling from his or her minister as it does to a deep theological Talmudic discussion. Certainly when Blankenship engaged in his role as Senior Counseling Pastor with individuals sharing private details of their lives in search of advice or support, those communications were privileged based on the parties' intentions in communicating and on Blankenship's role as a minister, *not* on whether Blankenship persistently cited Biblical scriptures or explicitly referred to Christianity throughout

9

the session. Georgia cases analyzing whether the privilege applies have focused on whether the minister was acting in the role of a clergy person, and those cases are very black and white examples. For example, in *Hutcheson v. State*, 361 Ga. App. 890, 864 S.E.2d 106, 114 (2021), the minister "was not acting within his role as clergy but was instead acting in his capacity as either an employer or supervisor" of a youth pastor investigating sexual misconduct. *Id.* at 899. In *Parnell v. State*, 260 Ga. App. 213, 581 S.E.2d 263, 267 (2003), the Court held that a minster was not acting in his role as clergy, but as a father offering exculpatory statements for the charges against his son. *Id.* at 214.

In support of its argument, Guidepost submits an affidavit from its counsel offering the opinion, based upon hearsay, that "my overall recollection from listening to the recordings was that for the most part Blankenship was not providing religiously themed counseling throughout those sessions." Unqualified opinions from Guidepost's counsel about whether the discussions were sufficiently religious in character are not admissible to support its argument. The affidavit does not offer any testimony that Guidepost's counsel has the knowledge, skill, experience, training, or education to offer opinions about what constitutes sufficiently "religiously themed" statements and discussion to qualify as Christian counseling. *See* Fed. R. Evid. 702. Notably, the affidavit does confirm that "Blankenship and his clients did occasionally refer to Biblical precepts from time[.]" (Doc. 91 at ¶ 7.)

That confirms that there is, indeed, a Biblical basis for the counseling session. Southern evangelicals often look to apply Biblical concepts in their everyday life. Christian men often reflect upon Ephesians 5:25–29, an epistle from St. Paul and a staple at Southern weddings, which instructs husbands to love their wives as Christ loved the church. Similarly, Christian women often seeks guidance on Ephesians 5:22–24, another staple at Southern weddings, that instructs wives to

submit to their husbands at they do the Lord. This scripture provides the foundation for how Southern evangelicals live and interact in their marriage. Although Guidepost's counsel may hold the opinion that the practical application of this scripture to marriage is not sufficiently "religiously themed" advice distinct from secular marriage counselors, that opinion is immaterial. What matters for the privilege is that persons with sincerely held religious beliefs seek guidance on these issues—no matter how general the advice may be—from ministers who believe in the same Biblical foundations.

This Court should not weigh whether the statements are sufficiently religiously themed. The statute's express text does not promulgate the purity test that the affidavit offers. There is a reasonable basis—in fact, a very concrete basis—for finding the persons at issue were seeking counseling from a minister. Consequently, the Georgia clergy-penitent privilege applies.

## IV.     This Court Should Require The Interest Parties To Provide Input.

There is no evidence that Guidepost provided notice to the interested parties. The privilege is not Blankenship's to waive. If the interested parties all consent to Blankenship complying the subpoena, he will certainly do so. However, Blankenship requests that this Court issue an order requiring Guidepost to elicit input from the interested parties before Blankenship acts upon the subpoena.

**<u>CONCLUSION</u>**

This Court should enter a protective order and/or quash the subpoena to Blankenship under the clergy penitent privilege of O.C.G.A. § 24-5-502.


/s/ T. Dylan Reeves
T. Dylan Reeves
Attorney For Roy Blankenship

**<u>OF COUNSEL:</u>**

Stites & Harbison PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2323 (telephone)
(615) 782-2371 (facsimile)
dreeves@stites.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2024, I electronically filed this document, that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system as follows:

Andrew P. Goldstein
Cole Law Group, PC.
1648 Westgate Circle Suite 301
Brentwood, TN 37027
(615) 490-6020
Fax: (615) 942-5914
Email: agoldstein@colelawgrouppc.com
*Counsel for Johnny M. Hunt*

Patrick J. Sanders
MacGill PC
156 E. Market Street Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Email: patrick.sanders@macgilllaw.com
*Counsel for Johnny M. Hunt*

Robert D. MacGill
MacGill PC
156 E. Market Street Suite 1200
Indianapolis, IN 46204
317-961-5085
Email: robert.macgill@macgilllaw.com
*Counsel for Johnny M. Hunt*

Scott E. Murray
MacGill PC
156 E. Market Street
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Email: scott.murray@macgilllaw.com
*Counsel for Johnny M. Hunt*

Todd G. Cole
Cole Law Group, PC.
1648 Westgate Circle Suite 301
Brentwood, TN 37027
(615) 490-6020
Fax: (615) 942-5914
Email: tcole@colelawgrouppc.com
*Counsel for Johnny M. Hunt*

Louis Gino Marchetti , Jr.
Taylor, Pigue, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, TN 37203
(615) 320-3225
Fax: (615) 320-3244
Email: gmarchetti@tpmblaw.com
*Counsel for Southern Baptist Convention*

Matthew C. Pietsch
Taylor, Pigue, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, TN 37203
(615) 320-3225
Fax: (615) 320-3244
Email: matt@tpmblaw.com
*Counsel for Southern Baptist Convention*

Adam Kahan Brody
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
(212) 696-4848
Email: brody@mintzandgold.com
*Counsel for Guidepost Solutions, LLC*

Alex Otchy
Mintz & Gold LLP

John R. Jacobson
Riley & Jacobson, PLC

13

600 Third Avenue
25th Floor
New York, NY 10016
(212) 696-4848
Email: otchy@mintzandgold.com
*Counsel for Guidepost Solutions, LLC*

Katharine R. Klein
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
615-320-3700
Email: kklein@rjfirm.com
*Counsel for Guidepost Solutions, LLC*


Steven G. Mintz
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
(212) 696-4848
*Counsel for Guidepost Solutions, LLC*


E. Todd Presnell
Bradley Arant Boult Cummings LLP
(Nashville, TN Office)
1221 Broadway Suite 2400
Nashville, TN 37203
615-252-2355
Email: tpresnell@bradley.com
*Counsel for Executive Committee of the
Southern Baptist Convention*

Gretchen M. Callas
Jackson Kelly PLLC
500 Lee Street East Suite 1600
PO Box 553
Charleston, WV 25322
(304) 340-1000
Email: gcallas@jacksonkelly.com
*Counsel for Executive Committee of the
Southern Baptist Convention*

1906 West End Avenue
Nashville, TN 37203
615-320-3700
Email: jjacobson@rjfirm.com
*Counsel for Guidepost Solutions, LLC*

Scott Klein
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
(212) 696-4848
Email: klein@mintzandgold.com
*Counsel for Guidepost Solutions, LLC*


Terence William McCormick
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
(212) 696-4848
Email: mccormick@mintzandgold.com
*Counsel for Guidepost Solutions, LLC*


Gene Ross Besen
Bradley Arant Boult Cummings LLP
1445 Ross Avenue Suite 3600
Dallas, TX 75202
214-257-9758
Fax: 214-939-8787
Email: gbesen@bradley.com
*Counsel for Executive Committee of the
Southern Baptist Convention*

R. Brandon Bundren
Bradley Arant Boult Cummings
1221 Broadway Ste 2400
Nashville, TN 37203
615-252-4647
Fax: 615-248-3047
Email: bbundren@bradley.com
*Counsel for Executive Committee of the
Southern Baptist Convention*

14

Scarlett Singleton Nokes
Bradley Arant Boult Cummings LLP
(Nashville, TN Office)
1221 Broadway Suite 2400
Nashville, TN 37203
615-252-3556
Email: snokes@bradley.com
*Counsel for Executive Committee of the*
*Southern Baptist Convention*

Thomas J. Hurney, Jr
Jackson Kelly PLLC
500 Lee Street East Suite 1600
PO Box 553
Charleston, WV 25322
(304) 340-1000
Email: thurney@jacksonkelly.com
*Counsel for Executive Committee of the*
*Southern Baptist Convention*

*s/ T. Dylan Reeves*
T. Dylan Reeves