# EXHIBIT 6

R. Brandon Bundren
bbundren@bradley.com
615.252.4647 direct



December 12, 2023

**VIA EMAIL**

Robert D. MacGill (robert.macgill@macgilllaw.com)
Scott E. Murray (scott.murray@macgilllaw.com)
Patrick J. Sanders (patrick.sanders@macgilllaw.com)
MACGILL, PC
156 E. Market St.
Suite 1200
Indianapolis, Indiana 46204

Todd G. Cole (tcole@colelawgrouppc.com)
Andrew Goldstein (agoldstein@colelawgrouppc.com)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, Tennessee 37027

      Re:    *Johnny M. Hunt v. Southern Baptist Convention et al.*, C.A. No. 3:23-cv-00243; United States District Court for the Middle District of Tennessee

Counsel for Plaintiff:

We write to address a number of issues presented by the current posture of this case.

First, Plaintiff's initial document production of November 15, 2023, revealed that in and around March of 2023, Plaintiff repeatedly represented to governmental entities that his domicile was Woodstock, Georgia. This is in direct conflict with paragraph 14 of the Complaint where Plaintiff asserted he was domiciled in Florida.

Our recent review of publicly available information also shows the following, additional facts demonstrating Plaintiff's domicile was in Georgia at the time he filed the Complaint:

- On March 19, 2023, two days after the filing of the Complaint, Plaintiff and his wife jointly filed federal and state tax returns identifying their current address as 4072 Earney Road, Woodstock, Georgia.

- On May 22, 2023, an Amended Annual Registration for Johnny Hunt Ministries, Inc. was filed with the Georgia Secretary of State. This registration identifies Plaintiff as the CEO and Janet Hunt as the registered agent, both having an address of 4072 Earney Road, Woodstock, Georgia.

- In November 2023, the Hunts paid the property taxes for their home at 4072 Earney Road, Woodstock, Georgia.

- The Hunts' Facebook profiles state that they "live[] in Woodstock, Georgia." Indeed, Plaintiff recently posted on Instagram that he was "[p]reaching close to my home in Woodstock this Sunday November 12 at Church 1025 in Monroe, Ga."

- Plaintiff also produced a spreadsheet showing his speaking / ministering schedule, with some entries indicating distance / drive time from his Georgia home. For example, on February 12, 2023, Plaintiff planned to give a Sunday sermon in Maryville, Tennessee and that his trip was a three-hour drive from his home, which is approximately the time it takes to drive from Woodstock to Maryville. This and other similar entries reflect that Plaintiff was located at and operating from his Woodstock, Georgia home at or near the time of the filing of the Complaint.

The foregoing facts demonstrate that there is no subject matter jurisdiction in this action because Plaintiff is a Georgia resident and there is not diversity of citizenship. *See, e.g.*, *Bd. of License Comm'rs v. Pastore,* 469 U.S. 238, 240 (1985) ("When a development after this Court . . . notes probable jurisdiction could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court without delay."). In light of the foregoing facts and given the pace of discovery and the upcoming deadlines, we intend to bring this issue to the Court promptly via a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules.

Second, we ask Plaintiff's consent to extend the February 4, 2023, fact deposition deadline by at least 30 days. Of course, the Court has already extended written discovery at Plaintiff's request for a similar time frame. This additional time for depositions seems reasonable under the circumstances, and we are prepared seek relief from the Court if an agreement can't be reached.

Third, Plaintiff advised by letter dated November 28, 2023, that he intends to depose more than ten fact witnesses during the month of January. We object to Plaintiff's intent to exceed the ten-deposition limitation under Rule 30(a)(2)(A)(i) of the Federal Rules, particularly in light of the timeframe proposed and the fact that Plaintiff has not yet deposed a single witness. *See Osborne v. Billings Clinic*, No. CV-14-126-BLG-SPW, 2015 WL 150252, *2-3 (D. Mont. Jan. 12, 2015) (request for depositions in excess of ten are premature because it is "impossible for [Plaintiff] to make the particularized showing for extra depositions [when Plaintiff] has not yet taken even one."). *See also Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008) (motion denied when "[h]aving taken not a single deposition to date, Atrua cannot possibly know what information it needs but cannot obtain from its 10 permitted depositions."); *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586–87 (D. Minn. 1999) ("At a minimum, Aon should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking leave to depose a legion of others."). Moreover, Plaintiff's proposed deposition schedule is unreasonable given that many of the fact witnesses Plaintiff intends to depose do not reside in Tennessee and can't be compelled to appear here for a deposition.

Fourth, pursuant to the Court's Initial Case Management Order (Doc. 37), this letter will serve as my second attempt to obtain sufficient Responses to the EC's First Requests for Production.

- Plaintiff has failed to discharge his disclosure and production obligations regarding his alleged damages. We will not wait for expert discovery before Plaintiff has to put a dollar number on his alleged damages. It is black-letter law that Plaintiff must "compute" and disclose his damages. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Accordingly, if Plaintiff will not specifically identify the amount of damages he is seeking in this case, we will move the Court for an order compelling Plaintiff to do so.

- Plaintiff implicitly admits he has responsive information to the EC's Interrogatory No. 7 and Request Nos. 13–14 but has refused to produce it despite little to no burden. This information is relevant and discoverable and must be produced.

- Contrary to your letter dated November 17, Plaintiff cannot wait "until fact discovery closes" to identify the basic information made the basis of Plaintiff's defamation claim (Interrogatory Nos. 10–13 and Request No. 17). Plaintiff's objections are without merit and we will seek an order compelling Plaintiff to provide this information.

- Interrogatory No. 15 seeks identification of all breaches by the EC of any duty owed to Plaintiff that forms the basis of Plaintiff's negligence infliction of emotional distress claim. Neither your letter nor Plaintiff's answer to Interrogatory No. 15 identifies the EC's alleged breaches. Accordingly, we expect Plaintiff to identify all of the alleged breaches. If not, we will seek an order compelling Plaintiff to do so.

- Please confirm that your client's birth certificate is the only document that supports your client's allegation that he is indeed a member of the "Lumbee Tribe."

- Your client's response that it is "impossible" to identify all speaking engagements, all book deals, and all income opportunities that Plaintiff lost is frivolous. Please be advised that we will move to preclude any efforts to expand these alleged "lost book deals" and "lost speaking engagements" if this information is not timely produced. *See* Fed. R. Civ. P. 37(c).

- Privilege and/or work-product objections were made to several of the requests for production and it was stated a privilege log describing the materials being withheld would be provided. Please provide this privilege log or, if no materials are being withheld, please confirm that is the case. We find it hard to believe that Plaintiff's counsel can serve multiple sets of additional discovery, issue multiple subpoenas for depositions and documents, but yet cannot find the time to provide a privilege log. Please produce this log or we will move to compel Plaintiff to do so.

Finally, we have serious reservations about the sufficiency of Plaintiff's document production and demand Plaintiff identify what efforts, if any, Plaintiff made to preserve relevant information, the manner in which the search for responsive information was performed, including the devices / hardware searched, the time frame searched, the email addresses and telephone numbers searched, any search terms used. To illustrate our concerns with Plaintiff's collection effort, the EC's Request for Production No. 8 sought "communications (including emails, text messages, instant messages, social media messages) between You and any third party regarding the Encounter." Request for Production No. 27 sought "all notes, journals, writings, recordings, and/or related documents regarding the Encounter." There were no text messages produced, and from our review, there were no electronic or other communications involving Plaintiff regarding the Encounter. Even from the time of the release of the Guidepost report on May 22, 2022, it is highly unlikely, if not impossible, that Plaintiff never sent a text or email to anyone about the Encounter. As such, we demand Plaintiff provide information on his efforts to preserve and search for responsive information.

We are prepared to discuss these deficiencies identified in this letter during a meet and confer call so that we can come to an agreement on how and when Plaintiff intends to address these deficiencies. We are available to discuss the issues concerning all Defendants on Thursday at 1:00 pm in connection with the already set met and confer. With respect to Plaintiff's responses to the EC's discovery, we are available December 19, 20, 21, or 22. Please advise if one of these days works for you.

Sincerely,

BRADLEY ARANT BOULT CUMMINGS LLP

By: *R. Brandon Bundren*

R. Brandon Bundren