# EXHIBIT 7



156 E. Market Street
Suite 1200
Indianapolis, IN 46204
www.MacGillLaw.com

Robert D. MacGill
317.442.3825
Robert.MacGill@MacGillLaw.com

**Via Email**
December 14, 2023

R. Brandon Bundren, Esq.
Bradley Arant Boult Cummings LLP
rbundren@bradley.com

> RE: *Hunt v. Southern Baptist Convention et al.*, 3:23-cv-243 (M.D. Tenn.) – Response to Letter Dated December 12, 2023

Dear Counsel:

We write in response to your December 12, 2023 letter.

**Jurisdictional Issues**

You state in your letter that the Executive Committee intends to file a motion to dismiss the Complaint for lack of diversity jurisdiction because it believes that Pastor Johnny Hunt's domicile was in Georgia, not Florida, at the time he filed his Complaint. The Executive Committee is wrong.

A person's domicile "can be established by presence (residence) plus intent to remain permanently or indefinitely." *Rayburn v. Anderson,* 2021 U.S. Dist. LEXIS 1092, at *9 (M.D. Tenn. Jan. 5, 2021) (quotation marks and citation omitted). By February 2023 – before the filing of the Complaint – the Hunts had decided to make Florida their permanent home. Consistent with this decision, both Pastor Johnny and wife, Janet, registered to vote in Florida on February 13, 2023. On February 15, 2023, they both obtained Florida driver's licenses. On February 13, 2023, Janet filed an official "Declaration of Domicile" in Walton County, Florida. On February 10, 2023, Janet notified Cherokee County that they were moving to Walton County, Florida, and that Cherokee County should cancel their home exemption on the Earney Road property, which they would retain as a "2nd home." In August 2022, the Hunts officially transferred their church membership to Hiland Park Baptist Church in Panama City, Florida. Both Pastor Johnny and Janet will testify that, as of February 2023, they were residing in Florida with the intent to remain there indefinitely and to make it their permanent home. And although they retained their real estate holdings in Georgia, they viewed those properties as only a "second home" and a rental home, not as their domicile.[1]

---

[1] It is not surprising or atypical that there are some documents that do not reflect their new residence. As stated above, the Hunts still own two properties in Georgia, one of which was previously their primary residence for many years. Numerous courts have recognized that it is normal for there to be delays and inconsistencies in the paperwork associated with a person's changing their domicile. *See, e.g., Mucerino v. Martin,* 2021 U.S. Dist. LEXIS 228340 (at

## Discovery Extension

Plaintiff has no objection to the Executive Committee's request to extend the deposition discovery deadline by 30 days.

## Discovery Issues Raised by the Executive Committee

Your letter raises several additional discovery issues for discussion. We briefly address them below.

First, the Executive Committee objects to the number of depositions Plaintiff has proposed. This objection is not well-taken. The Executive Committee itself identified fifteen individuals and entities in its Initial Disclosures who it says it may use to support its defenses in this action. Guidepost and the SBC have each identified similar numbers of potential witnesses. All of the individuals identified by Plaintiff for deposition are clearly central players in the parties' dispute, including the Guidepost investigators and employees who drafted the relevant section, the woman who made the relevant accusations against Plaintiff, that woman's husband, and the representatives on the Committee on Cooperation who were appointed by the SBC and the Executive Committee. We are confident that the Court will permit these depositions, regardless of the presumptive 10-deposition limit.

With respect to depositions of the members of the Committee on Cooperation, please let us know if you will accept service of their subpoenas.

Second, you challenge certain discovery responses provided by Plaintiff. We address each in turn:

- Damages – Plaintiff is currently preparing a damages calculation, and he will supplement his discovery responses with that calculation.
- Interrogatory 7 and Requests 13-14 – Plaintiff has agreed to produce his tax returns from 2015 forward. Plaintiff is in the process of attempting to collect additional returns prior to that date. If and when such returns are available, Plaintiff will produce them.
- Interrogatories 10-13 and Request 17 – As previously stated, Plaintiff has identified the defamatory and other tortious statements that he knows about. They are all set forth in the Complaint. Obviously, if we identify additional such statements based on our ongoing review of documents produced by the Defendants, we will supplement our discovery responses. Given this explanation, we do not understand your objection.

---

#12) (M.D. Tenn. Nov. 30, 2021) (holding that party had changed domicile from Tennessee to Florida even though some documents suggested that domicile was still in Tennessee; "all of these records can be easily explained by the fact that Mucerino, like many individuals, was not perfectly efficient in terms of completing every task associated with his move ahead of time").

**MacGill** PC

- Interrogatory 15 – We do not understand your continued objection to Plaintiff's response. As set forth in our November 17 letter and Plaintiff's discovery responses, the Executive Committee owed a legal duty to Pastor Johnny to exercise reasonable care with respect to the statements published in the Report. The Executive Committee failed to do so, as set forth in the Complaint.
- Request 12 – We are working to determine whether Plaintiff has any other documentation relating to his heritage.
- Lost book deals and speaking engagements – We do not understand your objections to Plaintiff's response. As previously stated, Plaintiff has identified the book deals and speaking engagements that he knows were lost as a result of Defendants' tortious conduct. Obviously, Plaintiff cannot identify book deals and speaking engagements that would have happened in the future if Defendants had not committed the alleged torts.
- Privilege log – No log is required for privileged documents created after the filing of the Complaint. *See* Administrative Order 174-1, 8b. Similarly, Plaintiff has not attempted to log communications between our firm and the Hunts that pre-date the filing of the Complaint. Such documents are clearly privileged. No other documents are being withheld. A redaction log will be produced shortly.
- Scope of collection – Plaintiff has undertaken a reasonable search for responsive documents. As a general practice, prior to the filing of this action, Plaintiff did not retain emails and text messages. To the extent he has responsive documents, we believe they have been collected and produced. You can obviously ask him questions about his communications related to the encounter and document retention practices at his deposition.

Please let us know if you have any additional questions or concerns.

    Best regards.

Very truly yours,

Robert D. MacGill