IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>    Plaintiff,<br> v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>    Defendants. | Case No. 3:23-cv-00243<br>Judge Campbell<br>Magistrate Judge Frensley |

**RESPONSE OF DEFENDANT GUIDEPOST SOLUTIONS LLC
TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Guidepost Solutions LLC ("Guidepost") respectfully submits this Response in Opposition to the motion brought by Plaintiff Johnny M. Hunt ("Hunt") to compel discovery. (ECF Doc. No. 106-107.)

**PRELIMINARY STATEMENT**

Hunt's motion to compel is made solely for the purpose of optics, to create a narrative of discovery violations that never took place. And like other such tactically conceived discovery motions, it is an effort to make the case about the discovery rather than tailor the discovery to the case. Despite Hunt's claim that Guidepost made a deficient document production, Guidepost has produced **23,318** pages of documents to date. This is a motion in search of a rationale and should be denied.

Hunt raises three distinct complaints about Guidepost's responses to his discovery requests. *First,* Hunt complains that Guidepost improperly designated documents as Attorneys' Eyes Only" ("AEO") (Hunt Mem. at 3-5.) But Guidepost only did so pursuant to this Court's Order entered on November 22, 2023 (the "November 22 Order") (ECF Doc. No. 76.) In the November 22 Order, the Court noted that "[g]iven the intimate nature of the responsive items and the potentially tenuous relevance of some of them, the Court will order that the responsive items be produced under an Attorney's Eyes' Only designation." Guidepost did so, and it is not up to Guidepost to *de-designate* those documents without authorization from this Court. Guidepost's original purpose in seeking the protective order, which was accommodated by the Court's November 22 Order, was to protect an alleged survivor of sexual assault from being re-victimized by the sharing of intimate matters with her alleged abuser. While Hunt argues that the designation should be lifted entirely due to his alleged survivor's sharing of some information with a reporter from the *Houston Chronicle*, Hunt points to no public news report in which the alleged survivor's name was revealed or intimate portions of the documents were publicly disclosed. Thus, there is no rationale for giving them to Hunt.[1]

*Second,* Hunt falsely claims that Guidepost refused during the meet and confer process to answer Hunt's questions regarding documents that had been produced by third parties but did not appear in Guidepost's initial document productions. (Hunt Mem. at 5-7.) As Hunt is forced to admit, following Hunt's inquiry, Guidepost reviewed its original collection process and determined that a number of emails had not been collected due to human error. Although

---

[1] When Hunt's counsel first challenged Guidepost's AEO designations and signaled their intention to move to compel Guidepost to remove those AEO designations, Hunt's counsel took the position that "none" of the AEO designations were supported. Hunt's position is without merit. Guidepost (properly) produced thousands of pages of documents under an AEO designation because they include not only the name of Hunt's alleged victim but those of a number of other survivors whose information should be protected and which Hunt is not entitled to see under any circumstance.

Guidepost undertook to review and produce the additional emails (and did), Hunt wanted to make a discovery motion and did not wait for the documents. This motion is therefore at once premature and moot. Hunt's further effort to spin a narrative that Guidepost destroyed documents reflecting communications with the alleged survivor and her husband, and otherwise made an incomplete production of text messages or other documents is without merit. The real spoliation in this case is **Hunt's admitted deletion of his own communications,** which Guidepost anticipates will be the subject of a separate cross-motion to compel.

*Third,* Hunt takes issue with certain of Guidepost's interrogatory responses. This too is a waste of the Court's time and resources because the information requested in the interrogatories is amply set forth in Guidepost's answers.

## BACKGROUND

The Court is familiar with the history of the previous motion to compel by Hunt and Guidepost's cross-motion for a protective order. Guidepost briefly recaps the critical facts underlying the Court's November 22 Order solely for the purpose of rebutting Hunt's mischaracterization of the record.

As the Court will recall, once certain documents provided to the Guidepost investigators by the alleged survivor and her husband were gathered and provided to its ESI vendor (and to Guidepost's counsel for review), it became apparent that the alleged survivor's consent would be required before a number of the documents could be produced to Hunt's counsel. This was because the Engagement Letter between Guidepost and the SBC Task Force placed an obligation on Guidepost to secure either the survivor's consent or a court order before releasing documents that

3

would reveal the identity of a sexual abuse survivor or a witness.[2] It was only after the alleged survivor's counsel refused consent to disclose those documents on October 11, 2023, that Guidepost requested that they be withheld entirely or produced, if at all, under an AEO designation. As the Court recognized in the November 22 Order, Guidepost had no choice but to resist production lest it breach the Engagement Letter.

Among those documents was a fifty-three (53) page document attached as <u>Exhibit 1</u> to Hunt's motion, titled "[Name of Alleged Survivor and Husband's] Story with Samantha B. Kilpatrick and Russell Holske." (Ms. Kilpatrick and Mr. Holske were the two Guidepost interviewers who separately interviewed the alleged survivor and her husband and Hunt.) (Filed under seal at ECF Doc. 109-1.) This is the "summary document" identified in Guidepost's prior motion for a protective order containing information provided by the survivor and her husband to the Guidepost investigators and was ordered to be produced on an AEO basis under the Court's November 22 Order. For the reasons that follow, Hunt's motion to compel should be denied.

## ARGUMENT

### A. The Court Should Not Order Redesignation of AEO Documents.

As noted above, the Court has already held that documents containing "information that has been or will be communicated or provided to Guidepost relating to any survivor or witness identity" are the proper subject of an Attorney's Eyes-Only designation as a consequence of Guidepost's obligations under Paragraph 4.3 of the Engagement Letter, as well as the privacy

---

[2]     As stated in Guidepost's previous motion, Paragraph 4.3 of the Engagement Letter stipulated that "Guidepost will treat and maintain as confidential and private all information that has been or will be communicated or provided to Guidepost relating to any survivor or witness identity and ***will not reveal or utilize it in any way except with appropriate survivor approval***; provided, however, that, subject to the provisions of Article 7 of this Agreement, Guidepost may reveal such information pursuant to a lawful, final judicial or administrative order" (emphasis added).

interests of the alleged survivor and her husband. (November 22 Order, ECF Doc. No. 76.) The Court should decline the invitation to revisit that ruling pursuant to the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The doctrine serves to "protect both court and parties against the burdens of repeated reargument by indefatigable diehards." 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.). The motion should be denied on that basis alone.

Moreover, Hunt's motion should be denied because it seeks to undo the AEO designation for **all** documents so designated—and again, designated as such *at this Court's direction*—while only specifically identifying two of them: (1) the fifty-three page "summary document" referred to above (Hunt Mot., Exhibit 1), and (2) the Guidepost investigators' interview notes with Hunt, which, if published, would identify the alleged survivor and her husband by name. That's it; Hunt does not explain why any of the other 23,318 pages of documents produced by Guidepost under an AEO designation should be made available to Hunt—thousands of which documents contain the names of other survivors and witnesses. There is absolutely no principled basis upon which to remove the AEO designations for those documents and allow Johnny Hunt to see them. Guidepost has serious concerns about Hunt's motivations for seeking documents that contain the names of other witnesses and survivors considering the retaliation suffered by the alleged survivor and her husband after the SBC Task Force's release of the Report.

Hunt's only argument for removing the AEO designation for the summary document is that, according to the alleged survivor's husband's response to a subpoena from Hunt, the document had been delivered to a reporter at the *Houston Chronicle*. (Hunt Mot. at 4.) But as Hunt reveals, none of the information that the newspaper reporter published implicated the

5

considerations that led the Court to order Guidepost to produce the document on an AEO basis. The article to which Hunt refers contains only stray quotations from the "summary document," none of which identified a victim or witness by name and none of which contained ███ ████████████████████████████████████████ contained in the "summary document" ████████████████████████████████████████ ████████████████████████.

From this springboard, Hunt seeks to get access to *every* document produced under the AEO designation (including no doubt, the audio recordings of the couple's marriage counseling sessions with Blankenship). Hunt's motion is, in effect, not really a motion to compel, but a poorly disguised motion to reargue or vacate the November 22 Order altogether. The Court should see through Hunt's subterfuge and deny the motion.

Guidepost does not oppose that part of the motion that seeks redesignation of the interview notes of Johnny Hunt *himself*. Although the second interview of Hunt does involve a discussion of the alleged survivor's identity (which was indisputably known to him) as well as questioning regarding the details of his encounter with her, Guidepost agrees that under these circumstances it would be an unreasonable interpretation of the Engagement Letter to construe it as prohibiting Hunt from seeing notes of his *own* interviews.[3] Guidepost hastens to add that Hunt did not specify his own interview notes in the meet and confer process, the January 10 call with the Court, or the Joint Discovery Dispute Statement. Thus, the instant motion raises for the first time a matter that could have been resolved informally. However, and solely upon the condition that the Court orders Guidepost to do so, Guidepost would not oppose designation of those notes—and those notes

---

[3] The notes of the first Hunt interview contain names of other witnesses unrelated to the instant controversy. Guidepost proposes to produce that set of notes with the witnesses' names redacted.

6

only—as "Confidential." In all other respects, Hunt's motion regarding the AEO designations is without merit and should be denied.

    **B.**  **This Motion to Compel is Premature (And Now Moot) Because Guidepost Did Not Destroy Documents And It Supplemented its Production as Promised.**

  Hunt speculates that Guidepost "destroyed" documents based upon discrepancies between the third-party document production from the alleged survivor and her husband and Guidepost's own production. The crux of Hunt's argument is an email produced by the alleged survivor's husband inquiring whether documents were "█████████████." (Hunt Mem. at 6, quoting ECF Doc. No. 102, Exhibit U.) But in a transparent effort to make this case about the discovery and not about the facts of the case, Hunt takes the wrong leap from this email and conflates issues.

  It is true that the survivor's husband did request that some of the materials provided to the Guidepost investigators not be preserved after the Report was submitted to the SBC Task Force. The husband asked the investigators not to keep the audiotapes, the "summary document," and the journal prepared by the husband in the course of his "counseling" sessions with Blankenship as a condition of his providing those highly private materials to the investigators in the first instance. The husband originally communicated this Request well before the SBC Task Force ultimately published the Report. In other words, the husband hoped that the Guidepost investigators would keep them only as long as needed to refer to them and write the Report, but that they would otherwise protect his and the alleged survivor's privacy by destroying them *after* the task was completed.[4] The husband's request encompassed only the audiotapes of the so-called marriage counseling sessions with Blankenship, the "summary document," and the husband's journal), not the entire universe of documents relating to the husband and the survivor, such as emails or text

---

[4] As of the date of the filing of this Response, Hunt will have had ample opportunity to depose the investigators regarding this matter.

messages with the investigators or other Guidepost personnel. Regardless, Guidepost investigators did *not* destroy any of the documents, resulting in the need for Guidepost to seek a protective order before producing them and the subsequent entry of the November 22 Order. Thus, the instruction from the husband to the investigators is not only irrelevant (because it was not carried out), but it is a red herring.

It is undisputed that, upon comparing the documents Hunt had obtained from the survivor and her husband to its own production, Guidepost realized that it had inadvertently missed a number of emails in the collection process[5]. Thus, in the meet and confer process Guidepost confirmed to Hunt's counsel that it would take steps to complete collection and produce additional documents—which it did on Thursday, January 25, 2024, at Hunt Bates No. 10,790-23,318. The motion to compel was therefore both premature and unnecessary, as Guidepost had already agreed to supplement the production. And it is now moot, because Guidepost did. But Hunt wanted to make his motion to compel to distract the Court and spin a false narrative. The Court should not be deceived and reject Hunt's motion to compel the production of documents that Guidepost had already agreed to search for and produce (and has).

In his motion, Hunt demands "a complete production of text messages and instant messages from all Guidepost witnesses involved in drafting the Report," including the two Guidepost investigators, Russell Holske and Samantha Kilpatrick, as well as Krista Tongring, Julie Myers Wood, and Anthony Collura. Hunt argues that Guidepost has only provided "limited screenshots" of text messages from Mr. Holske and Ms. Kilpatrick. But the Court should decline Hunt's

---

[5] This is yet another issue that could have been resolved much earlier despite Hunt's false claim that Guidepost is slowing discovery to a standstill. Hunt received and held the documents it received from the alleged survivor and her husband for *weeks* before turning them over to all Defendants—a point the Court particularly noted during the January 10, 2024 status conference. If Hunt had produced these documents to Guidepost when Hunt received them—as he was supposed to do but did not—Guidepost would have identified the issue weeks earlier and this issue would not be before the Court.

8

suggestion that Guidepost withheld text messages. Guidepost produced numerous text messages from the investigators, including group text exchanges among the four Guidepost witnesses whom Hunt has or is about to depose, including Guidepost's CEO, Julie Myers Wood. There were no "instant messages" of the sort Hunt requested.

With respect to Anthony Collura, Guidepost's Chief Legal Officer, Hunt's request to force production of his text messages is without merit. Guidepost produced very limited documents involving Anthony Collura relating to a few questions he had on the Hunt section of the Report. Guidepost produced these documents in good faith. Now, Hunt seeks to intrude upon obvious protected communications between Guidepost employees and its general counsel–Mr. Collura. Hunt identified no principled basis upon which to order production of Mr. Collura's protected communications with Guidepost employees.

**C.     Guidepost's Interrogatory Responses Were Proper.**

<u>Interrogatory No. 1-2, 4, 6, 9</u>

Hunt complains that Guidepost referred him to the entire bates range of its document production pursuant to Fed. R. Civ. P. 33(d) when Hunt's interrogatories requested (in various different iterations) to identify when and to whom the Report was provided and whether various SBC constituencies had provided comments to it. Hunt's argument is not well founded.

Rule 33(d) provides that, when an answer to an interrogatory may be determined from a producing party's document production, it is "sufficient answer to the interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory a reasonable opportunity to examine, audit, or inspect the records and to make copies, compilations, abstracts, or summaries." Guidepost in no way hid the ball from Hunt; it simply referred Hunt to the drafts of the Report in its document production. Indeed, Hunt *himself* specified

9

the bates ranges of drafts of the Report in his own interrogatories and apparently knew how to find them. The Report itself is 288 pages long and the drafts are hard to miss in Guidepost's document production.

To the extent that Hunt seeks the date when particular drafts of the Report were created or modified, that is the precise sort of information that the metadata would reveal—and there is no basis for believing Guidepost would have superior information. The Responses otherwise make it amply clear to whom the Report was provided.

Interrogatory No. 3

This Interrogatory asks Guidepost to "Identify by bates number all versions of the Report sent to the Cooperation Committee prior to May 22, 2022." Guidepost answered the Interrogatory precisely and truthfully; it did not send a copy of the Report to the Committee on Cooperation. Hunt simply wants another answer to a question he did not ask. While the Executive Committee responded differently, disclosing that the Committee on Cooperation was given an opportunity to review a hard copy in a controlled setting, this underscores the point that the document was treated on a "close hold" basis. There is no better answer to give to this Interrogatory.

Interrogatory No. 5

Hunt complains that Guidepost objected to his request that Guidepost "[s]tate the total amount of money you billed for your work on the Report and the total amount of money you were paid for that work." Guidepost stands by its objection that the Interrogatory is irrelevant to any issue in the case. The principal issue in this action is whether Guidepost committed an actionable libel and whether its delivery of the Report to the SBC Task force was privileged.

Interrogatory No. 7

In this Interrogatory, Hunt asked Guidepost to "Identify and describe all documents or other materials relating to the allegations against Plaintiff in the Report that you requested from Complainant, her husband, Roy Blankenship, or any other person and state whether or not such materials were provided to you." Hunt asserts that Guidepost's response under Rule 33(d) improperly referred Hunt to Guidepost's document production. The documents obtained by Guidepost are easily located in the production and have been specifically described in correspondence between counsel (and prior motion practice).

Interrogatory No. 8

In this Interrogatory, Hunt asked Guidepost to "Identify each document cited in a footnote in the section of the Report relating to Johnny Hunt by (1) bates number and (2) the footnote number used in the final Report." Guidepost properly objected on the grounds that, among other things, the documents were part of Guidepost's document production and two of the footnotes were website articles as easily obtainable by Hunt as by Guidepost. In any event, this issue is moot, as Guidepost has identified the relevant Bates ranges in correspondence with Hunt's counsel.

\* \* \* \* \*

## CONCLUSION

For the foregoing reasons, Guidepost respectfully requests that the Court deny the motion to compel in its entirety.

Dated: February 2, 2024

Respectfully submitted,

s/John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St. Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com
*Counsel for the Southern Baptist Convention*

on this 2nd day of February, 2024.

s/John R. Jacobson