# EXHIBIT H

**FINCH MCCRANIE, LLP**
225 PEACHTREE STREET, N.E
1700 SOUTH TOWER
ATLANTA, GEORGIA 30303
Phone: (404) 658-9070
*www.finchmccranie.com*

May 20, 2022

**VIA EMAIL**

Samantha Kilpatrick
skilpatrick@guidepostsolutions.com
samantha@kilpatricklawgroup.com

   Re: *Pastor Johnny Hunt*

Dear Ms. Kilpatrick:

  We understand that Pastor Hunt was recently interviewed twice by you on behalf of Guidepost Solutions ("Guidepost"), which firm has been retained by the Southern Baptist Convention ("SBC") and/or the SBC Executive Committee ("SBC EC") to conduct an internal investigation. We also understand from publicly available information that Guidepost is preparing to release a report ("Report") in the imminent future regarding its investigation.

  Yesterday, we were advised by Anthony Collura that it is "probable" that Pastor Hunt will be mentioned in the Report. For that reason, I am writing to caution you as to a significant ethical issue that requires your immediate attention and remedial action. In sum, Pastor Hunt believed that his conversations with you were covered by attorney-client privilege because he understood that you were a lawyer for the SBC and/or the SBC EC, he was an active employee of the SBC when he talked to you, he did not understand that his employer's lawyer was not his lawyer too, he was not told he could have his own lawyer or that he may need one, he was not told that SBC and/or SBC EC would provide him with a personal lawyer, he believed he could talk to you frankly to obtain legal advice and counsel, and you, contrary to your ethical obligations as a lawyer, did not provide him with an *Upjohn* warning (*i.e.*, a corporate *Miranda* warning). As such, his conversations with you are protected by attorney-client privilege. Pastor Hunt does not waive that privilege and requests that any portions of the Report that mention or identify him and/or information you learned from him either be redacted or removed in full.

  We trust you will recognize the seriousness of the ethical concern addressed here. At the time you interviewed Pastor Hunt, there is no doubt that you were a lawyer and as such you have ethical obligations that you cannot avoid. Simply put, ethical rules apply to all lawyers, including you. You cannot avoid your ethical obligations as a lawyer, and you are obligated to address them now. Please respond to us immediately to discuss these matters further.

         \*      \*      \*

  In connection with your review, please consider the following, additional information. You interviewed Pastor Hunt on or about April 26, 2022, and May 12, 2022. During both interviews, Pastor Hunt was an active employee of the SBC, where he worked for the North American Missions Board.

In these interviews, you did not provide Pastor Hunt with any form of an *Upjohn* warning (complete or incomplete) at any point during either of the interviews. That is, you did not advise Pastor Hunt, among other things: (i) that you represented the SBC and/or the SBC EC, not Pastor Hunt; (ii) that you were conducting the investigation in order to gather information and provide legal advice to the SBC and/or the SBC EC, not Pastor Hunt; (iii) that the attorney-client privilege belonged to the SBC and/or the SBC EC, not Pastor Hunt, and that the SBC and/or the SBC EC may elect to waive the privilege and disclose to third parties any information learned from the interview, without Pastor Hunt's consent; and (iv) that in order to maintain the privilege, the substance of the interview was and should remain confidential. *See Upjohn v. United States*, 449 U.S. 383, 395 (1981); *see also* Michael M. Farhang and Daniel L. Weiss, *Corporate Miranda Warnings: Defining Your Role and Avoiding Pitfalls In Internal Company Investigations*, Litigation, Spring 2010, at 21–22.[1]

North Carolina (where you are barred), Tennessee (where SBC is based), and Georgia (where Pastor Hunt resides) have ethical rules emphasizing the importance of giving similar warnings. *See, e.g.,* N.C. Rules of Prof'l Conduct 1.18, Cmt. 2 ("In such a situation [i.e., where meeting with a potential client], to avoid the creation of a duty to the person under this Rule, a lawyer has an affirmative obligation to warn the person that a communication with the lawyer will not create a client-lawyer relationship and information conveyed to the lawyer will not be confidential or privileged."); 1.13, Cmt. 10 ("There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.").

The failure to give adequate *Upjohn* warnings can have serious consequences, both for the entity conducting the investigation and for the individual attorney involved.

---

[1] In 2009, a working group of the American Bar Association proposed the following *Upjohn* warning as a model: "I am a lawyer for or from Corporation A. I represent only Corporation A, and I do not represent you personally. I am conducting this interview to gather facts in order to provide legal advice for Corporation A. This interview is part of an investigation to determine the facts and circumstances of X in order to advise Corporation A how best to proceed. Your communications with me are protected by the attorney-client privilege. But the attorney-client privilege belongs solely to Corporation A, not you. That means that Corporation A alone may elect to waive the attorney-client privilege and reveal our discussion to third parties. Corporation A alone may decide to waive the privilege and disclose this discussion to such third parties as federal or state agencies, at its sole discretion, and without notifying you. In order for this discussion to be subject to the privilege, it must be kept in confidence. In other words, with the exception of your own attorney, you may not disclose the substance of this interview to any third party, including other employees or anyone outside of the company. You may discuss the facts of what happened but you may not discuss this discussion. Do you have any questions?"

<u>Consequences of Failing to Give *Upjohn* Warning for Entity Conducting Investigation</u>:

*Upjohn* warnings help ensure both that the investigating entity has an attorney-client relationship with its investigating counsel and that no such relationship forms between counsel and the entity's interviewed employees. Where the warnings are given improperly—or not at all—the entity can lose control of its ability to create and unilaterally waive attorney-client privilege and work-product protections. In other words, the failure to provide *Upjohn* warnings can result in the employee retaining control over the privilege regarding an interview, effectively stripping the entity's right to waive the privilege and share information with third parties without first obtaining the employee's consent.

The Fourth Circuit has referred to an entity's interviews of its employees during an internal investigation as "a potential legal and ethical mine field," *In re Grand Jury Subpoena*, 415 F.3d 333, 340 (4th Cir. 2005). There, the Fourth Circuit laid out a typical test: an employee has a valid attorney-client privilege over the contents of an interview with entity counsel where the employee had a subjective belief that an attorney-client relationship existed and their subjective belief was reasonable. *Id.* at 339.

Here, Pastor Hunt believed—and did not have reason to disbelieve—that his employer's lawyer was his lawyer. He was not advised otherwise at any time, he was an active employee of the SBC, he understood that he could speak with you frankly for purposes of obtaining legal guidance and counsel, and he was not told that he could have his own lawyer or that he may need one. Based on those reasonable beliefs, which you did not attempt to correct by giving any sort of *Upjohn* warning, Pastor Hunt has the right to assert attorney-client privilege over his conversations with you, and we hereby advise you of that assertion in this letter. As such, no one is authorized to release a Report (or any other document) that contains privileged information you learned from Pastor Hunt.

<u>Consequences of Failing to Give *Upjohn* Warning for Lawyers and Firms</u>:

To be sure, *Upjohn* warnings not only protect an entity's control over the attorney-client privilege, but they also can protect the interviewing attorney and firm from possible ethical violations. *See, e.g.*, *United States v. Nicholas*, 606 F. Supp. 2d 1109, 1121 (C.D. Cal.) (referring outside counsel to the state bar for discipline), rev'd on other grounds sub nom. *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) (declining to reverse the referral to the state bar). In North Carolina, there are a host of applicable ethical rules governing attorneys:

- N.C. Rules of Prof'l Conduct r. 1.13(f) establishes that a lawyer employed or retained by a corporation represents the corporation itself. Subsection (f) acknowledges that the company's employees and officers might not always understand this principle. Therefore, it requires the attorney to "explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." A comment to the rule further acknowledges that the corporation's interests might become adverse to one of its constituents. In dealing with that constituent, it is the attorney's job to ensure that individual understands that the attorney represents only the company, and any communications will not be kept privileged from the company. *Id.* cmt. 10.

- N.C. Rules of Prof'l Conduct r. 4.3 requires attorneys to ensure that an unrepresented person does not misunderstand who the attorney represents.
- N.C. Rules of Prof'l Conduct r. 1.7 says that if an interviewing attorney is found to have created an attorney-client relationship with the interviewee, and the interests of the interviewee become directly adverse to the corporation, then this conflict of interest might require the attorney to withdraw from representing both the corporation and the interviewee.

Georgia and Tennessee have similar ethical rules. Tennessee goes further and imposes *criminal* penalties for improperly breaching attorney-client privilege in certain scenarios. *See* Tenn. Code Ann. § 23-3-107.

\*   \*   \*

In light of Guidepost's plans to release its Report imminently, we are writing to alert you to your fundamental duties as a lawyer—preservation of a client's confidences and privileges and provision of complete *Upjohn* warnings to employee witnesses—that are in jeopardy if any portions of the Report relate to Pastor Johnny Hunt. We trust that you will receive and review this letter with the seriousness and urgency it deserves.

In closing, this situation is unique because we are providing you with advance notice of a serious ethical issue that you can and must stop before it materializes in a forthcoming Report. We expect you will do so, and we look forward to talking to you immediately about the steps you will take in that regard. If we do not receive a satisfactory response, then we will consider all available legal remedies, including but not limited to injunctive relief. *See, e.g., In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (reversing district court because it abused its discretion by denying injunctive relief necessary to protect attorney-client privileged information); *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984) (affirming preliminary injunction to protect attorney-client privileged information).

Sincerely,

/s/ W. Carl Lietz, III
/s/ David H. Bouchard
For FINCH MCCRANIE, LLP

cc: Anthony Collura (via email)
Cindy Steele (via email)