IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:23-cv-00243 |
| | ) Judge Campbell/Frensley |
| SOUTHERN BAPTIST CONVENTION, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

**I. INTRODUCTION**

Johnny Hunt, a pastor and former President of the Southern Baptist Convention ("SBC"), brought this suit against SBC, the Executive Committee of the SBC ("the Executive Committee"), and Guidepost Solutions LLC ("Guidepost") (collectively, "Defendants") alleging torts including defamation and libel related to an investigative report ("the Report") prepared by Guidepost for SBC that includes allegations that Mr. Hunt sexually assaulted the wife ("the accuser") of another SBC pastor.[1] Docket No. 1. All three Defendants have filed Motions to Dismiss, which are pending. Docket Nos. 25, 29, 31.

This matter is now before the Court upon "Non-Party Roy Blankenship's Motion for Protective Order and Motion to Quash Subpoena to Take Deposition." Docket No. 89.[2] Mr.

---

[1] Guidepost was engaged by SBC to investigate possible sexual abuse by members of the Executive Committee. Docket No. 1-1, p. 2.
[2] This document comprises Mr. Blankenship's Supporting Memorandum as well as his Motion.

Blankenship has also filed three supporting documents. Docket Nos. 89-1, 89-2, 89-3. Guidepost (which served the disputed subpoena) has filed a Response in Opposition. Docket No. 95.[3] Guidepost has also filed supporting documents. Docket Nos. 92, 92-1, 92-2, 92-3, 96, 96-1, 97. Mr. Blankenship has filed a Reply and the Declaration of Roy Blankenship. Docket Nos. 104, 104-1. For the reasons set forth below, Mr. Blankenship's Motion (Docket No. 89) is GRANTED IN PART and DENIED IN PART.

## II. LAW AND ANALYSIS

### A. Subpoenas to Non-Parties and Motions to Quash

Rule 45 sets forth the conditions under which, on timely motion, a court must or may quash or otherwise modify a subpoena:

> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
>     (i)    fails to allow a reasonable time to comply;
>
>     (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
>     (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
>     (iv)  subjects a person to undue burden.
>
> (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>
>     (i)    disclosing a trade secret or other confidential research, development, or commercial information; or

---

[3] A redacted version of this document has been filed in the public record at Docket No. 91.

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

Fed. R. Civ. P. 45(d)(3).

  The court where compliance is required may adjudicate a motion to quash or modify, or "it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The advisory committee notes explain that the purpose of providing for "local resolution of disputes about subpoenas" is to ensure the protection of local nonparties. Fed. R. Civ. P. 45(f) advisory committee's notes. Absent consent, the proponent of transfer bears the burden of showing that exceptional circumstances are present. *Id.* These exceptional circumstances include an interest in avoiding disruption of the issuing court's management of the underlying litigation. *Id.* But "[t]ransfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

## B. **Motions for Protective Order**

  A motion for a protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c). The court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Good cause for the issuance of a protective order is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on merely conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001) *quoting Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987). But "a showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *Anwar v. Dow Chemical Co.*, 876 F.3d 841, 854 (6th Cir. 2017), *quoting Smith v. Dawson*, 158 F.R.D. 138, 140-42 (D. Minn. 1994) (internal quotation marks omitted); *Large v. Blazer*, Case No. 3:20-cv-1012, 2022 WL 99986, 2022 U.S. Dist. LEXIS 4337, at *5 (M.D. Tenn. Jan. 10, 2022).

C. **Mr. Blankenship's Motion**

On November 20, 2023, Guidepost served a subpoena upon Mr. Blankenship that commanded him to appear for deposition and to produce documents. Docket No. 89-1. While the subpoena does not list proposed topics for Mr. Blankenship's testimony, it sets forth the following document requests:

1. All communications between or among You and Johnny Hunt, Janet Hunt, Survivor, or Survivor's Husband concerning Johnny Hunt's extramarital encounter in 2010 with Survivor as described in the Report.[4]

2. All communications between or among You and Johnny Hunt, Janet Hunt, Survivor, or Survivor's Husband concerning counseling sessions relating to the Survivor's marriage.

3. All documents concerning Johnny Hunt's extramarital encounter in 2010 with Survivor as described in the Report, including without limitation, correspondence, journals, notes, memoranda, and calendars.

---

[4] Based on the briefs related to this Motion, Janet Hunt appears to be the name of Mr. Hunt's wife. *See* Docket Nos. 89, 95. The Parties sometimes refer to the accuser and her husband as "Survivor" and "Survivor's Husband." *Id.*

4

> 4. All documents concerning counseling sessions relating to the Survivor's marriage, including without limitation, correspondence, journals, notes, memoranda, and calendars.
>
> 5. All documents or communications concerning Your meeting with investigators from Guidepost concerning Johnny Hunt, Janet Hunt, Survivor, and Survivor's Husband.
>
> 6. All documents and communications in your possession, custody, or control concerning allegations, rumors, or other information of any kind about sexual harassment, sexual assault, harassment, intimidation, improper fondling, improper sexual conduct, unwanted touching or kissing, flirtation or any other conduct of that nature on the part of Johnny Hunt.
>
> 7. All documents and communications that You have received or obtained at any time, from any party to this litigation, or from any individual or entity possessing knowledge of this action.

*Id.* at 10-11.

Mr. Blankenship describes his role in the events leading to this matter as follows:

> Mr. Blankenship was ordained as a minister by First Baptist Church of Woodstock in 1996. In 2010, he held the role of Senior Counseling Pastor under which he led various counseling ministries and provided counseling services grounded in Biblical doctrine to guests, members, fellow ministers, and members of the community. It was in this role and capacity that he provided counseling to Johnny Hunt, Janet Hunt, "Survivor," and "Survivor's Husband" as defined in the Subpoena.

Docket No. 89, p. 1-2.

Mr. Blankenship contends that the clergy-penitent privilege prohibits him from disclosing any information about his counseling sessions with the accuser and her husband (which included Mr. and Mrs. Hunt on at least one occasion). *Id.* at 2-3. He asks the Court to quash the subpoena pursuant to Rule 45(d)(3), or, if the Court finds that the privilege has been waived, to "limit the Subpoena to command him to testify only to those particular statements for which privilege has been waived." *Id.* at 4-5. He also "requests that this Court issue an order requiring Guidepost to

elicit input from the interested parties before Blankenship acts upon the subpoena." Docket No. 104, p. 11.

Guidepost presents Mr. Blankenship's role differently, asserting that he "is at the epicenter of a controversy" and became involved with the events in this matter when "[a]ccording to the accuser, after Hunt assaulted her, he then attempted to contain the damage by manipulating the accuser and her husband into meeting with him and Blankenship." Docket No. 95, p. 1, 3. Guidepost states that its Report "related the accuser's explanation that Hunt quietly arranged for Blankenship to conduct a series of marriage counseling sessions with the accuser and her husband, *i.e.*, in an effort to gaslight the couple into thinking that the encounter . . . was a function of the wife's marital and other emotional problems and not a sexual assault by Hunt." *Id.*

Guidepost contends that Mr. Blankenship's Motion should be denied for three reasons:

> *First*, the Court should deny the motion to quash because it should have been filed in Georgia. Fed. R. Civ. P. 45(d)(3). *Second*, to the extent that Blankenship seeks a protective order, the motion should otherwise be denied because he is not entitled to invoke the clergy-penitent privilege in the first instance and, contrary to his arguments in the motion, both he and the accuser and her husband repeatedly waived the privilege. Hunt *also* waived any privilege by disclosing to Guidepost's investigators information about a meeting between Hunt, his wife, Blankenship, and the accuser and her husband. *Third*, as stated below, Blankenship has discoverable information concerning topics outside the purported marriage counseling services that he relies upon. Thus, he cannot be shielded from being required to testify at a deposition.

*Id.* at 2 (emphasis in original).

1. **Forum for Motion to Quash**

Guidepost asserts that the Motion to Quash should be denied because "[a]lthough this Court is the issuing court, compliance was required in Atlanta, Georgia, not Tennessee, because

Blankenship resides in Georgia." *Id.* at 7.  Mr. Blankenship replies that this Court "can provide the relief Blankenship seeks" because this Court "has inherent power to manage its docket, including discovery in this action" and because the Federal Rules of Civil Procedure provide authority for the Court to manage the discovery process.  Docket No. 104, p. 2-3.

Rule 45 specifically contemplates that a motion to quash will be filed in "the court for the district where compliance is required."  Fed. R. Civ. P. 45(d)(3)(A).  The subpoena at issue requires compliance in Atlanta, Georgia, which is in the Northern District of Georgia.  Docket No. 89-1, p. 2.  While it would have been correct for Mr. Blankenship to file his Motion there, in this case, there are good reasons for this Court to decide the Motion.  First, the advisory committee notes to Rule 45 make clear that the reason to adjudicate a motion to quash in the district where compliance is required is to avoid imposing expense and burden on the subpoenaed witness (who is, by definition, a non-party).  Fed. R. Civ. P. 45(f) advisory committee's notes (discussing "the interests of the nonparty served with the subpoena in obtaining local resolution of the motion").  Because he filed his Motion in the Middle District of Tennessee, Mr. Blankenship apparently wishes for the Motion to be decided here, rather than his home district in Georgia; it seems he does not have an interest in obtaining "local resolution."

Second, the Motion is a joint motion to quash and motion for a protective order.  *See* Docket No. 89.  There is no question that this Court is the right forum in which to file a motion for protective order in this matter, and it would not aid judicial efficiency to deal with the motion for protective order here while leaving the motion to quash to be dealt with in Georgia.  Finally, such a scenario (where the motion was "split") raises the possibility of conflicting results, such that the Court for the Northern District of Georgia might well decide that exceptional circumstances exist and transfer the motion to quash back to this Court under Rule 45(f).  That

7

sequence of events would not serve the resources of the Parties nor the interests of judicial efficiency and economy, and would run contrary to the mandate of Rule 1 to "construe[], administer[], and employ[]" the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

### 2. Assertion of Clergy-Penitent Privilege

Mr. Blankenship asserts that he is prevented from testifying regarding the marital counseling sessions he conducted with the accuser and her husband by Georgia law, which "precludes the disclosure of communications made to ministers by persons seeking counseling."[5] Docket No. 89, p. 2.

### a) Applicability

Guidepost contends that the clergy-penitent privilege is not applicable to the counseling sessions because "[u]nder the totality of the circumstances in this case, Blankenship was not engaged in the provision of spiritual solace or guidance as such but as an (unlicensed) marriage counselor, guiding the parties on issues of intimacy and compatibility rather than reconciliation and sin." Docket No. 95, p. 8-9 (footnote omitted). Guidepost argues that Mr. Blankenship's statement that the "counseling sessions took place under the same or similar circumstances as all the counseling sessions conducted by Blankenship in his role as Senior Counseling Pastor" is

---

[5] The Parties agree that the Court should apply Georgia privilege law. *See* Docket Nos. 89, 95. The Court concurs. In a diversity case such as this, "the forum state's choice of law rules apply." *Burns v. Taurus Int'l Mfg.*, 826 F. App'x 496, 499 (6th Cir. 2020); *see* Fed. R. Evid. 501. Tennessee applies the "most significant relationship" test to determine which state's law should govern. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009), *citing Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Here, as Mr. Blankenship summarizes (and Guidepost does not dispute), "Georgia law should apply because all the relevant parties were citizens of the state of Georgia, [and] the vast majority of relevant communications took place in the state of Georgia . . . ." Docket No. 89, p. 2. (Mr. Blankenship also argues that he "relied on Georgia laws, protections, and exceptions in his provision of counseling to the relevant parties"). *Id.*

8

Case 3:23-cv-00243    Document 124    Filed 02/12/24    Page 8 of 16 PageID #: 1747

conclusory and should be disregarded because he "does not provide a sworn declaration in support of this statement." *Id.* at 9, *quoting* Docket No. 89, p. 3 (internal quotation marks omitted).[6] Further, based on Guidepost's access to "five audio recordings of marriage counseling sessions between Blankenship, the accuser, and her husband that are believed to have taken place in 2010, the year that Hunt allegedly assaulted the accuser," Guidepost asserts that "Blankenship was not wearing his minister's 'hat' throughout those sessions." *Id.* at 9. Guidepost concedes that "Blankenship occasionally referred to Biblical precepts from time to time," but maintains that "the balance of the recordings of the counseling sessions reveals that most if not all communications between the accuser, her husband, and Blankenship would be indistinguishable from those shared with a secular marriage counselor . . . ." *Id.*

Mr. Blankenship argues that the totality of the circumstances demonstrates that the privilege does apply here. He asserts that "Blankenship was a minister ordained by First Baptist Church of Woodstock and was acting in the role of Senior Counseling Pastor when he was called upon to provide marriage counseling to the parties, who were evidently seeking such counseling." Docket No. 104, p. 8. Mr. Blankenship contends that "the statute's unambiguous language does not set any standard for the theological substance of the discussions" and argues that "when Blankenship engaged in his role as Senior Counseling Pastor with individuals sharing private details of their lives in search of advice or support, those communications were privileged based on the parties' intentions in communicating and on Blankenship's role as a minister, *not* on whether Blankenship persistently cited Biblical scriptures or explicitly referred to Christianity throughout the session." *Id.* at 9-10 (emphasis in original). Mr. Blankenship

---

[6] The Court's conclusion regarding the applicability of the privilege is not based on Mr. Blankenship's assertion; regardless, he has since provided a sworn declaration in which he reiterates this statement. Docket No. 104-1, p. 2.

maintains that "[t]his Court should not weigh whether the statements are sufficiently religiously themed." *Id.* at 11.

Georgia law provides that:

> Every communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to any Protestant minister of the Gospel, any priest of the Roman Catholic faith, any priest of the Greek Orthodox Catholic faith, any Jewish rabbi, or any Christian or Jewish minister or similar functionary, by whatever name called, shall be deemed privileged. No such minister, priest, rabbi, or similar functionary shall disclose any communications made to him or her by any such person professing religious faith, seeking spiritual guidance, or seeking counseling, nor shall such minister, priest, rabbi, or similar functionary be competent or compellable to testify with reference to any such communication in any court.

O.C.G.A. § 24-5-502.

It is undisputed that at the time of the counseling sessions, Mr. Blankenship held the role of Senior Counseling Pastor at First Baptist Church of Woodstock. *See* Docket Nos. 89, 95. It is further undisputed that the participants were seeking counseling.[7] *Id.* The statute does not address the substance of the communications made in the counseling sessions nor provide for a test as to their religious content. *See* O.C.G.A. § 24-5-502. There is no avenue for this Court to weigh the religious character of the communications, and the Court declines to do so. The counseling sessions fall within the terms set forth in the statute and the privilege therefore applies.

---

[7] As previously noted, Guidepost's Report suggests that Mr. Hunt's motivation in arranging for the sessions was not marital well-being but rather covering up the alleged assault by manipulating the accuser and her husband. Docket No. 95, p. 3. Yet, regardless of Mr. Hunt's intentions in initiating these sessions, Guidepost does not assert that the accuser and her husband were not seeking marriage counseling and it is undisputed that they attended these sessions repeatedly, beyond the session initially arranged by Mr. Hunt.

**b) <u>Waiver</u>**

Guidepost contends that if the communications are privileged (which it disputes), the privilege has been waived. Docket No. 95, p. 10. Guidepost asserts that "Blankenship did not conduct his purported counseling services in circumstances of complete confidentiality" because the first session "included a third party (Hunt)" and at least one session "included both Hunt and his wife." *Id.* Further, Guidepost argues that Mr. Blankenship waived the privilege when he "later met with the Guidepost investigators and discussed the details of his involvement with Hunt, the accuser, and their respective spouses." *Id.*, *citing* Docket No. 92-1, p. 6-7; Docket No. 89, p. 1-2.

Mr. Blankenship argues that "[t]he facts establish that Blankenship conducted several counseling sessions, sometimes in groups of two and sometimes in groups of three or four. Under these conditions, all parties to the session must intentionally waive the privilege." Docket No. 104, p. 6. He asserts that "the privilege is also not waived by the presence of more than one person seeking spiritual comfort or counseling" and that "[h]ere, the privilege has not been waived by the presence of two couples in a joint marriage counseling session." *Id.* at 6-7.

Mr. Blankenship further asserts that "[t]he only direct guidance from Georgia courts suggests that the relationship between ministers and persons professing religious faith or seeking spiritual comfort 'is absolutely privileged, and ***the privilege cannot be waived***.'" *Id.* at 5, *quoting Security Life Ins. Co. v. Newsome*, 176 S.E.2d 463, 466 (1970) (Evans, J., concurring specially) (emphasis added by Mr. Blankenship).[8] He maintains that "Georgia courts have never recognized a minister's right to waive the privilege." Docket No. 89, p. 4.

---

[8] Mr. Blankenship somewhat misquotes Judge Evans's concurrence, although the meaning is preserved. In relevant part, the opinion reads: "I think that from the language of the statute as to ministers and persons seeking spiritual comfort, as stated in Ga. L. 1951, p. 468, supra, such

11

The language of the Georgia statute is clear: "No such minister, priest, rabbi, or similar functionary shall disclose any communications made to him or her by any such person," and the clergyperson in question is neither "competent [n]or compellable to testify with reference to any such communication in any court." O.C.G.A. § 24-5-502. There is no qualifying language to indicate an exception even when the clergyperson has (as Guidepost maintains) already revealed some of the privileged communications.

While the concurring opinion in *Newsome* is dicta, Guidepost has not provided the Court with any clearly contrary authority, and the Court has not located any. Guidepost points to *Willis*, but the *Willis* Court found that the privilege did not exist in the first place before stating that "if there were any clergy privilege at play in this case, it was repeatedly waived" when Mr. Willis confessed his crime to a police officer while the prison chaplain was in the room. *Willis v. State*, 287 Ga. 703, 706 (Ga. 2010). In addition to finding that the privilege did not exist, the facts of *Willis* also involve (the concept of) waiver by a counselee, not by a clergyperson. Nor does *Willis* address an attempt to compel testimony from a clergyperson, as is the posture here. Therefore, the only guidance the Court has from Georgia caselaw indicates that under Georgia law, the clergyperson cannot waive the privilege. *See Newsome*, 176 S.E.2d at 466. In the absence of any other authority, the Court is unable to find that Mr. Blankenship has waived the privilege, despite his conversation with Guidepost investigators.[9]

---

communications and anything regarding the same are absolutely privileged and excluded by public policy in order that persons may feel free and secure in seeking aid in their difficulties, and without protection to the ministers as well, such persons would fear that their secrets would be disclosed to society in general. These conversations or communications cannot be waived, as public policy will not allow it." *Newsome*, 176 S.E.2d at 466 (Evans, J., concurring specially).

[9] As Guidepost notes, the other case cited by Mr. Blankenship that somewhat addresses this issue is an opinion from a lower Georgia Court that "[a]ssum[es] without deciding that the clerical privilege may indeed be waived" while pointing cautiously at *Newsome* before ultimately finding that there was no waiver under the facts before the Court. *Alternative Health Care Sys. v.*

Apart from the question of whether Mr. Blankenship can waive or has waived the privilege, Guidepost argues that the privilege has been waived by the accuser, her husband, and Johnny Hunt. Docket No. 95, p. 10. Guidepost maintains that both the accuser and her husband discussed the substance of the counseling sessions with the Guidepost investigators, and asserts that "the accuser's husband provided the Guidepost investigators with a hard drive on which he kept an electronic journal that contains entries related to the counseling sessions with Blankenship, as well as some audio recordings of the counseling and husband's thoughts following the counseling sessions," and that "the accuser's husband furnished the Guidepost investigators with a written consent to access the contents." *Id.* at 5, *citing* Docket No. 92-2. Guidepost further argues that Mr. Hunt waived any applicable privilege by discussing the sessions with Guidepost investigators. *Id.* at 10.

Mr. Blankenship argues that "because the privilege belongs to all communicants, all communicants must intentionally waive the privilege," and states that the accuser and her husband may not waive the privilege on behalf of each other and "certainly not . . . on behalf of Johnny or Janet Hunt in the context of marriage counseling sessions that included them." Docket No. 104, p. 6-7.

It is unclear to what extent the accuser, her husband, or Mr. Hunt may have waived the privilege. While Guidepost states that "the accuser and her husband liberally waived any privilege not only by speaking extensively with investigators but by providing a written waiver" (Docket No. 95, p. 10), Guidepost does not explicitly assert that the accuser herself has provided a written waiver, nor has Guidepost provided the Court with any such waiver. As to the waiver

---

*McCown*, 237 Ga. App. 355, 360 (Ga. App. 1999). Further, the disclosure at issue in *McCown* was a disclosure by the counselee, not the clergyperson. This is neither clear nor controlling authority for the proposition that the privilege can be waived.

signed by the accuser's husband, while it provided access for Guidepost investigators to his electronic journal, it may not suffice to waive his privilege as to all communications made in all counseling sessions with Mr. Blankenship. Nor does the Court know the contents of conversations between the accuser and her husband with Guidepost investigators, or Mr. Hunt's conversations with investigators, beyond the assertions contained in Guidepost's Report, a portion of which has been provided to the Court. Docket No. 92-2. This Report is not sworn testimony.[10] The only caselaw provided to the Court supports Mr. Blankenship's contention that one participant in a counseling session cannot waive the privilege for the others, and the Court has located no contrary authority. Docket No. 104, p. 6-7, *citing Frost v. Frost*, 787 S.E.2d 693, 695 (Ga. 2016). Further, the language of the Georgia statute, discussed above with reference to potential waiver by Mr. Blankenship, suggests that Mr. Blankenship is neither competent nor compellable to testify regarding the counseling sessions, regardless of whether the other participants have waived the privilege. O.C.G.A. § 24-5-502.

Therefore, Mr. Blankenship need not testify to or produce documents regarding the marriage counseling sessions with the accuser and her husband.

Nevertheless, the Court finds that there are questions that Mr. Blankenship could answer and information that he could provide without violating the privilege. Specifically, he could provide information with regard to Document Request Nos. 6 and 7:

> 6. All documents and communications in your possession, custody, or control concerning allegations, rumors, or other information of any kind about sexual harassment, sexual assault, harassment, intimidation, improper fondling, improper sexual conduct, unwanted touching or kissing, flirtation or any other conduct of that nature on the part of Johnny Hunt.

---

[10] No one suggests that Mrs. Hunt has had any conversations with Guidepost investigators or provided any waivers.

> 7. All documents and communications that You have received or obtained at any time, from any party to this litigation, or from any individual or entity possessing knowledge of this action.

*Id.* at 10-11.

Therefore, the Court will modify the subpoena pursuant to Rule 45(A)(iii). Mr. Blankenship must provide any documents within his possession, custody, or control and answer questions related to Document Request Nos. 6 and 7. Additionally, because it is undisputed that Mr. Hunt involved Mr. Blankenship in this matter (for whatever purpose) and Mr. Hunt has not disputed the assertion that he told Guidepost investigators that he did so to gain "'general help' because the accuser's husband was 'transitioning in ministry,'" the Court agrees with Guidepost that Mr. Hunt "has made the nature and purpose of his dealings with Blankenship (ministry, counseling, or damage control) an open question" which can properly be explored in discovery, to the extent that Mr. Blankenship can answer such questions without divulging communications made to him by the participants in the counseling sessions.

Finally, the Court denies Mr. Blankenship's request "that this Court issue an order requiring Guidepost to elicit input from the interested parties before Blankenship acts upon the subpoena." Docket No. 104, p. 11. Mr. Blankenship's Motion was filed on December 21, 2023. Docket No. 89. Mr. Hunt is a party to this action and his counsel was electronically served with notice of the Motion. *Id.* at 6. While the accuser and her husband are not parties and may not be aware of the Motion, the topics about which the Court orders Mr. Blankenship to provide information do not include privileged communications made by the accuser or her husband made within the context of counseling; therefore, it is unnecessary for Guidepost to "elicit input" from them before requiring Mr. Blankenship to comply with the subpoena as modified.

## III. CONCLUSION

For the foregoing reasons, Mr. Blankenship's Motion (Docket No. 89) is GRANTED IN PART and DENIED IN PART.

                    IT IS SO ORDERED.

_____
**Jeffery S. Frensley**
**United States Magistrate Judge**