## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>               Plaintiff,<br><br>   v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>               Defendants. | Case No. 3:23-cv-00243<br>Judge Campbell<br>Magistrate Judge Frensley |

**MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION BY DEFENDANT
GUIDEPOST SOLUTIONS LLC
TO COMPEL DISCOVERY**

Defendant Guidepost Solutions LLC ("Guidepost") respectfully submits this cross-motion to compel discovery from Plaintiff Johnny M. Hunt ("Hunt"). Hunt is seeking over $100,000,000 in damages but has simultaneously admitted to having destroyed critical evidence and has failed and refused to produce other evidence in his possession, custody, and control. Therefore, this Court should order Hunt to (1) turn his phone and computer over to an IT professional to retrieve any deleted text messages, phone records, and emails with *each* of the witnesses identified in his initial disclosures and responses to Guidepost's interrogatories, retrieve and produce them from the cloud if necessary and practicable, and report back to Guidepost and the Court; (2) produce documents that Hunt has admitted in his initial disclosures are in his possession but has failed and refused to produce; (3) produce or explain the absence of metadata and/or missing email communications relating to that metadata; (4) supplement his privilege log to identify communications preceding the filing of his Complaint and supplement the privilege log based

upon improper redactions; (5) supplement his document production to disclose pertinent evidence regarding his claim for emotional harm and monetary damages; (6) produce documents regarding his so-called "restoration" to the ministry by the Hiland Park Baptist Church; and (7) supplement his responses to Guidepost's requests for jurisdictional discovery. Pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, this Court should also award Guidepost its reasonable expenses, including attorney's fees, incurred in making this motion.

As required by Local Rule 7.01, counsel for Guidepost certifies that they have conferred in good faith with Hunt's counsel regarding the matters set forth in this motion, and the relief requested thereby.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court is aware, this action arises out of Guidepost's submission to the Southern Baptist Convention ("SBC") of its Report of the Independent Investigation concerning the sexual abuse crisis within the SBC (the "Report"). Guidepost served two (2) sets of document requests and interrogatories in this action. The first set was served on August 17, 2023. Hunt served responses and objection on September 18, 2023. (Hunt's responses and objections to the first set of document requests and interrogatories were previously filed with the parties' Joint Discovery Dispute Statement as Exhibit A and Exhibit B, respectively.)[1] Guidepost's counsel served a deficiency letter in response to Hunt's objections on November 13, 2023, to which they did not receive a response or supplemental responses from Hunt.

---

[1]     In this memorandum of law, Guidepost adopts by reference the attached exhibits to Hunt and Guidepost's February 9, 2024 Joint Discovery Dispute Statement. (ECF Doc. No. 119-1 to 119-7, 121-1 to 121-6.) The exhibits at ECF Doc. No. 121-1 to 121-6 were filed under seal. In the event that the Court prefers that the parties re-file the exhibits with this cross-motion, Guidepost is prepared to do so.

2

In the meantime, due to concerns that Hunt may have falsely claimed to be a Florida domiciliary (and thus contrived diversity jurisdiction), Guidepost served a second set of document requests and interrogatories seeking information regarding Hunt's domicile on November 20, 2023. Hunt served responses and objections on December 20, 2023. See Exhibit C.

Due to outstanding deficiencies in Hunt's document production in response to Guidepost's first set of discovery requests as well as the second set, Guidepost wrote an additional deficiency letter dated January 8, 2024. (Exhibit D.) Hunt's counsel responded by letter dated January 15, 2024. (Exhibit E.) Counsel met and conferred by virtual conference on January 30, 2024, at 1:00 p.m. (Eastern) via Zoom. Counsel were unable to resolve the outstanding discovery disputes informally. This motion followed.

## ARGUMENT

### A.  Hunt Has Not Produced a Single Text Message or Any Phone Records and Has Indicated that Such Messages as Well as Emails Have Been Deleted.

It is undisputed that text messaging is a method of communication that Hunt uses. As revealed in the Report, which was attached as Exhibit B to Hunt's Complaint (ECF Doc. No. 1-2 at 150-51, 159), Hunt communicated with the alleged survivor and her husband via text from his phone. He specifically identified two such communications with the alleged survivor in his answer to Guidepost's Interrogatory No. 9. (Exhibit B.) And yet when requested to produce documents and communications with the alleged survivor, her husband, the so-called marriage counselor, Roy Blankenship, his former employer, and the other witnesses to the events described in the Complaint, Hunt advised co-defendant Executive Committee of the Southern Baptist Convention that *"[a]s a general practice, prior to the filing of this action, Plaintiff did not retain emails and text messages.* To the extent he has responsive documents, we believe they have been collected and produced. You can obviously ask him questions about his communications related to the

3

encounter and document retention practices at his deposition" (emphasis supplied). See Exhibit F at p. 3 (Letter of Robert D. MacGill, Esq., to Brandon Bundren, Esq., dated December 14, 2023). Then, in their response to Guidepost's "meet and confer" letter of January 8, 2024, counsel repeated this excuse for Hunt's missing documents, stating, ***"Plaintiff reiterates that as a general practice, prior to the filing of this action, Plaintiff did not retain emails and text messages"*** (emphasis supplied). (Exhibit E at p. 3.)

The problem with Hunt's "the dog ate my homework" excuse for not producing text message and emails is that he was under a duty to preserve documents ***well before*** he filed the Complaint against Guidepost, the Executive Committee, and the SBC on March 17, 2023. Hunt evidently contemplated litigation as early as May 19, 2022, and May 20, 2022 (a full year before he filed the Complaint), when his then counsel W. Carl Lietz, III, of the firm of Finch McCranie, wrote to both Anthony Collura (Guidepost's Chief Legal Officer) and one of the Guidepost investigators, Samantha Kilpatrick, respectively, asserting that Guidepost purportedly had an ethical duty to deliver an *Upjohn* warning to Hunt during his interview. (Exhibits G and H, respectively.) Hunt's immediate purpose at the time, of course, was to intimidate Guidepost and head it off at the pass, preventing it from including the details of his alleged sexual assault in the Report (thereby preventing the world at large from learning about his extramarital sexual encounter with the alleged survivor when the SBC Task Force published the Report three days later on May 22, 2022).

Having hired attorneys and undertaken an adversarial position in May 2022, and having thereafter carried out his plan to sue Guidepost, Hunt was under an obligation to preserve any relevant documents ***long before*** the date he commenced this action. As of May 19, 2022, at the

latest, litigation was reasonably to be anticipated and Hunt should not have deleted any texts messages, phone records, or emails concerning his potential claims against Guidepost.[2]

The significance of Hunt's failure to preserve evidence is impossible to overstate. In addition to the documents that Hunt identified in his initial disclosures—which he has not produced—it simply beggars belief that Hunt never communicated in writing with third parties in the immediate aftermath of the publication of the Report. This may have been the most consequential moment in Hunt's ministry, if not his life. In addition to his various lawyers, in his response to Guidepost Interrogatory No. 11, Hunt identified ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Human nature would not be human nature if Hunt's phone and his email account were not working overtime in the weeks following his threats to Guidepost and the publication of the Report. ███

███████████████████████ And yet, his document production was virtually devoid of such communications.[3]

---

2 ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

3 ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

When confronted with this discrepancy between his discovery responses and his document production, Hunt's counsel responded that, "while Plaintiff had communications with those identified in his response to Interrogatory No. 11, we understand that none of these were substantive conversations—by text or otherwise. There is no objective basis for a forensic examination of Plaintiff's phone." While Hunt may have told this to his lawyers, the Court need not accept that explanation at face value (and Guidepost doesn't), particularly since Hunt has otherwise admitted to have used text messaging as a method of communication with the survivor and her husband. It follows that to the extent that those documents have been irretrievably lost, Hunt has committed a spoliation of evidence for which he would be subject to discovery sanctions.

For the moment, though, the Court should not assume that Hunt cannot retrieve and produce text messages involving the events at issue in this action. As the Court is undoubtedly aware, such communications are not lost forever just because the owner of an iPhone swipes left on a text message; such documents are routinely stored on a cloud, even if deleted. It is unlikely that Hunt has the technological capability to have permanently deleted every single one of his emails and texts messages prior to filing this Complaint. Hunt has failed and refused to undertake such efforts at retrieval of his lost evidence, offering the "take my word for it" explanation that the lost communications were not "substantive." (Exhibit E, p. 3.) Fundamentally, it is not for Hunt in the first instance unilaterally to determine whether a responsive text is "substantive" or not. If it is responsive, it must be produced.

Guidepost therefore respectfully moves this Court to direct Hunt to turn his phone over to an IT professional to attempt to retrieve any deleted communications with *each* of the witnesses identified in his initial disclosures and (if necessary) obtain such documents from the cloud and supplement his production accordingly. Hunt should be required to arrange for such IT personnel to report to counsel and the Court regarding the success (or not) of such efforts and, in the event Hunt is unable to do so, schedule a hearing for the purpose of assessing spoliation sanctions against Hunt. For the avoidance of any confusion, this includes **all** of Hunt's email communications that pre-date the filing of the Complaint and a forensic analysis of his email accounts and hard drive as well.

**B.** **Hunt Should be Ordered to Produce the Documents that He Admitted in His Initial Disclosures Are in His Possession.**

In reviewing Hunt's document production, Guidepost has been unable to locate documents that Hunt had admitted in his initial disclosures were in his possession, custody, and control. In Guidepost's January 8, 2024 "meet and confer" letter, Guidepost's counsel identified several categories of documents, which include, but are not limited to: communications from the SBC and/or the Executive Committee to churches where Hunt was scheduled to speak and documents relating to the SBC's and/or the Executive Committee's structure. Such documents bear directly upon Hunt's claim for damages.

Hunt's counsel responded as follows: "Plaintiff has not withheld documents identified in his Initial Disclosures. The identified categories of documents currently-known to Plaintiff that may be used to support his claims have been produced by Plaintiff, third parties, and Defendants." (Exhibit E.)

This was gaslighting, pure and simple. The missing documents identified in Guidepost's letter, which were brought up again in the meet and confer call on January 30, 2024, are simply

not to be found in Hunt's production, but were identified in the initial disclosures. Furthermore, it simply not logical to assume that Hunt could remember 42 individuals with whom he communicated in his response to Interrogatory #11 without looking at a single document to refresh his memory of those communications. Nor is it an answer to say that the unaccounted for documents from Hunt's production may have been produced by *"third parties[] and Defendants."* The conspicuous absence of documents he previously claimed to have had only leads Guidepost to believe that other documents have been withheld (such as the text messages and emails referred to in <u>Part A</u>, above). Hunt should be required to provide a satisfactory explanation for failing to produce them, inasmuch as he had originally said he possessed them.

**C.     Hunt Must Produce or Explain the Absence of Metadata and/or Missing Email <u>Communications Relating to that Metadata.</u>**

Upon review of Hunt's document production, Guidepost discovered that the production is missing metadata. Some documents produced by Hunt do not include any metadata, including, but not limited to HUNT_0000471 and HUNT_001780.  HUNT_0001780, in particular, █████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ (<u>Exhibit I</u>.)

Additionally, HUNT_0002759 has an improper redaction. The second redaction in the attached document is ████████████████████████ The redaction does not appear on the privilege log produced by Hunt, nor is there any basis for redacting communications ████████

████████████ (<u>Exhibit J</u>.)

8

While these discrepancies were brought up during the meet and confer process, Hunt's counsel failed to respond to Guidepost's concerns. These discrepancies only raise further questions regarding the integrity of Hunt's production and Hunt should be compelled to explain them.

**D.     Hunt Must Supplement His Privilege Log to Account for Documents Exchanged With Counsel Prior to the Filing of the Complaint.**

Although Hunt has supplied a privilege log, Hunt's counsel have taken the position that he has no obligation to create a privilege log for all communications between Hunt and his counsel prior to filing this action. When challenged on the point, Hunt's counsel cited Administrative Order 174-1, 8b which states that "[n]o log is required for privileged documents created after the filing of the Complaint." (Exhibit E.) True, but irrelevant. In his letter dated January 15, 2024, Hunt's counsel took the Administrative Order a step further than it actually goes, asserting that they have "not attempted to log communications between our firm and the Hunts that pre-date the filing of the Complaint [on the ground that] [s]uch documents are clearly privileged." Although Guidepost recognizes that a communication between Hunt and his counsel might be privileged, and may be withheld on that basis, that does not dispel the obligation to identify it on a privilege log (which may suggest grounds to contest the privilege). See Exhibit K ████████████████████████

████████████

████████████████████████████████████████████████

████████████ is noteworthy for a different reason: while Hunt has persistently (and falsely) accused Guidepost of withholding documents that were produced by the alleged survivor and her husband, documents produced by the accuser and her husband in response to Hunt's subpoena (such as this one) show that *Hunt* withheld and failed to produce documents responsive to Guidepost's seventh request in its First Request for the Production of Documents, which requested "[a]ll documents and communications between Plaintiff and Survivor's Husband from January 1, 2000 to present."

9

Hunt did not object to that request except to object to the definition of his accuser as the "Survivor." But Guidepost defined Hunt to include all parties acting on his behalf, including his counsel.

███████████████████████████████████████████████████████████

████████████████████████████████████████ that were never produced by Hunt. Hunt should be required to produce *all* documents responsive to Guidepost's requests, including his counsel's correspondence with the alleged survivor and her husband, as well as supplement their privilege log.

**E.      Hunt is Withholding Evidence Concerning his Claims for Emotional Injury and Monetary Damages.**

Guidepost's first set of discovery requests sought documents regarding the professional services Hunt received in connection with the emotional injury for which he seeks damages in this action. Hunt objected to those requests. (Exhibit A, Requests No. 12, and 67 and objections thereto.)

Hunt produced very limited documents relating to ██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ Hunt's failure to produce responsive documents is untenable. Because Hunt placed his medical condition at issue in this case, Guidepost is entitled to his medical records, documents concerning his care, diagnosis, and prescriptions. (See Coats v. McDonough, No. 3:20-cv-00298, 2022 WL 801507 (M.D. Tenn. Mar. 15, 2022) (granting defendant's motion to compel plaintiff's medical records as plaintiff asserted claims for emotional distress); see also McPherson v. Vignobles Sullivan, LLC, No. 3:20-cv-00384, 2022 WL 815061 (M.D. Tenn. Mar. 16, 2022) ("Courts in this circuit generally find that medical records are relevant to claims for emotional distress or mental anguish.") (citations omitted).

Hunt simply ignored Guidepost's efforts to resolve this matter in its meet and confer letter dated January 8, 2024, and a follow-up call on January 30, 2024 did not resolve the issue. During the January 30 "meet and confer" call, Hunt's counsel attempted to take the position that his client is not seeking damages related to his medical care, and thus the question of medical records was, by counsel's logic, off the table. However, Plaintiff's Amended Statement of Damages, served on January 9, 2024, calculates a range of damages in the amount of $30,000,000 to $45,000,000. Such medical records are obviously probative of the severity (or not) of Hunt's purported multi-million dollar emotional injury. The Court should order Hunt to comply.

Guidepost further requested documents relevant to Hunt's monetary damages, requesting "[a]ll documents and communications concerning new business opportunities that came to the Plaintiff after the publication of the Report on May 22, 2022." (Exhibit A, Requests No. 66 and objections thereto.)

Hunt is under a continuing obligation to update his discovery as the litigation progresses. Guidepost finds it implausible that this calendar has never been updated ██████████ ████████████████████ ████████████████ ████████████ ████████████████ Such documents would be

probative of both realized (and lost) speaking engagements from which Hunt claims to have received (or lost) considerable revenue.

Relatedly, given that the only emails produced by Hunt almost predominantly include his assistant, Kerry, it begs the question whether Kerry likewise had her email account searched for all responsive documents. As this matter has not been resolved, the Court should order Hunt to supplement his production.

**F.    Hunt Has Not Produced Documents Concerning His "Restoration" to the Ministry.**

The return of a fallen clergyperson to the ministry after the public revelation of an act of moral turpitude necessarily involves accountability for the past transgressions. Here, rather than seek redemption at the megachurch that Hunt once led, First Baptist Church Woodstock, Hunt went to a friendly congregation, Hiland Park Baptist Church in Panama City, Florida, where the senior minister, Steven Kyle, and three other sympathetic clergypersons, Benny Tate, Mark Hoover, and Mike Whitson, conducted Hunt's "restoration."

Guidepost's First Request for Production of Documents (No. 71) requested documents associated with the Hiland Park rehabilitation procedure. Although raising certain privilege objections, Hunt undertook to produce certain nonprivileged documents. However, Hunt produced limited, if any, documents and communications concerning his "restoration" to public ministry at Hiland Park. Plaintiff has produced **two** communications with Steven Kyle and has not produced any communications with Benny Tate, Mark Hoover, or Mike Whitson. It is implausible that Hunt does not have any communications with the individuals that allegedly "restored" him to the pulpit.

Guidepost's counsel raised this issue in their letter dated January 8, 2024 (Exhibit D); Hunt's response letter of January 15, 2024 simply ignored the issue. (Exhibit E.) Whether Hunt admitted only the anodyne "kissing and some awkward fondling" that he referred to in paragraph

3 of his Complaint (ECF Doc. No. 1) or committed the more serious sexual assault alleged by his accuser would inevitably be part of his "restoration" process. Hunt has not indicated that such facts are part of documents withheld on privilege grounds and the Court should direct Hunt to supplement his production.

**G.      Hunt Must Respond to Guidepost's Requests for Jurisdictional Discovery.**

As Hunt admits in his Complaint, "[a]t the time the report at issue in this case was first published, [Hunt] was a resident and citizen of Georgia." (ECF Doc. No. 1, Compl. ¶ 14.) He bases subject matter jurisdiction in this action upon his claim that on the date he filed his Complaint, he was a domiciliary of the State of Florida. If he were still a Georgia domiciliary, of course, jurisdiction would be destroyed because Defendant Southern Baptist Convention is a Georgia corporation.

In the course of this action, Guidepost learned that Hunt still maintains his former main residence in Georgia, as well as another Georgia residence, and had only recently purported to move to his property in Florida on the eve of filing the Complaint, suggesting that Hunt may have manufactured diversity jurisdiction without truly having an intent permanently to remain in Florida.

> To determine a person's domicile, [c]ourts consider several factors … including:
>
> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

Caffey v. Home Depot, No. 3:14-0476, 2014 WL 1681705, at *2 (M.D. Tenn. Apr. 28, 2014) (Haynes, C.J.) (quoting 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3612 (2d ed. 1984)). Accordingly, by a second set of discovery requests,

Guidepost sought to test the relevant jurisdictional facts. Hunt responded to some of the requests but conspicuously resisted responding to two others, specifically:

> 4.      **Documents sufficient to show Plaintiff's travel during the Relevant Time Period.[4]**
>
> 9.      **All credit card statements of credit cards issued to Plaintiff, including merchant location information, showing Plaintiff's expenditures during the Relevant Time Period.**

(Exhibit C). In response to Request No. 4, Hunt objected that on the basis that it was "not relevant to any issue in this case to the extent it seeks information for the time period prior to March 17, 2023, the date he filed his complaint. Plaintiff also objects to Request No. 4 as seeking information that is not relevant to any issue in this case to the extent it seeks information broadly related to all of Plaintiff's travel – where Plaintiff travelled from 2020 to 2023 has nothing to do with his domicile at the time he filed his complaint. Plaintiff also objects to Request No. 4 as vague, ambiguous, and overly broad to the extent it request undefined "documents" relating to his "travel." Accordingly, this request does not identify requested documents with the "reasonable particularity" required by Rule 34. Plaintiff will not be produced documents in response to this request."

In response to Request No. 9, Hunt objected on the basis that it is "not relevant to any issue in this case to the extent that it seeks information for the time period prior to March 17, 2023, the date he filed his complaint. Plaintiff also objects to Request No. 9 as overly broad and as seeking information wholly unrelated to any issue in this case because it seeks 'all credit card statements'

---

[4]      The Relevant Time Period was calibrated to measure the time Hunt would have spent in each of the two States and was defined as January 1, 2020 (*i.e.,* two years prior to SBC Task Force's publication of the Report) to the date of the requests.

of any credit card use by Plaintiff since 2020. Plaintiff will not be producing documents in response to this request." (Exhibit C).

In the meet and confer process, Guidepost pointed out that the term travel was not ambiguous but could be construed to refer to every time that Hunt traveled over 20 miles from his alleged homestead in Florida, or his alleged "second" home in Woodstock, Georgia. The relevance of such travel records is not hard to discern. If, for example, Hunt's EZPass records, flight confirmations, and other such travel records demonstrated that every time in the year 2023 Hunt got on a plane he flew from and returned to Georgia rather than Florida, that would be *prima facie* evidence that Georgia, not Florida, was his true domicile. By the same token, if the credit card and bank statements were to reveal that Hunt's gasoline, food, and other incidental purchases were made mostly in or around Woodstock, Georgia, that would give the lie to his claim that he was a Florida domiciliary on the date he filed his Complaint. And if those records reflect transactions centered around *Florida*, it is impossible to understand why he would not want to produce them. Hunt was certainly happy to produce Florida-centered documents that supported his position when he wanted to (such as his voting registration card, obtained only a few weeks before he filed the Complaint). But Hunt has withheld the powerful, real-time evidence of where he "lived and moved and had his being," particularly in the critical years of 2022 and 2023.

In his letter dated January 15, 2024, Hunt pretended not to understand Guidepost's concerns, responding that "Domicile is determined at the time a Complaint is filed. Smith v. Sperling, 354 U.S. 91, 93 n.1, (1975) ("[J]urisdiction is tested by the facts as they existed when the action is brought."). Thus, Plaintiff's travel from 2020 to 2023 is irrelevant, and so are his credit card statements for those years." But Hunt should not be let off the hook so easily.

Guidepost's concerns were only further amplified when it recently learned, through searching the Georgia Secretary of State database, that Hunt's main business, Johnny Hunt Ministries, filed an amended annual registration on May 22, 2023, over two months after filing the March 17, 2023 Complaint, listing Janet Hunt as registered agent of the business in Woodstock, Georgia. Pursuant to Georgia law, a registered agent must be a resident of the State of Georgia. Hunt has been doing business in Georgia for over 20 years and knows this. Guidepost cannot avoid the conclusion that Hunt may have sought to contrive a Florida domicile for *litigation* purposes only to subsequently claim Georgia domicile in filings with the Georgia Secretary of State for his *business* purposes. Federal courts are scrupulous in ensuring that the diversity jurisdiction of the court is properly invoked. Hunt's studied evasion of discovery regarding his true domicile raises serious questions as to whether he was forthright in the jurisdictional allegations of the Complaint and he should be ordered to comply with those requests forthwith.

**H.     Hunt Should Pay Guidepost the Reasonable Expenses and Attorneys' Fees Incurred in Making this Motion.**

Pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, in the event this motion is granted – or if the requested documents are provided by Hunt after the filing of this motion – the Court should also award Guidepost its reasonable expenses, including attorney's fees, incurred in making this motion. Hunt's conduct in failing even to respond to the initial "meet and confer" letter dated November 13, 2023 for weeks until after receiving a follow-up from Guidepost's counsel, along with the egregious nature of the apparent destruction of critical evidence makes an appropriate sanction all the more necessary.

16

**CONCLUSION**

For the foregoing reasons, Guidepost respectfully requests that the Court grant

Guidepost's cross-motion to compel discovery.

Dated: February 14, 2024

Respectfully submitted,

s/John R. Jacobson
John R. Jacobson, Esq. (BPR # 014365)
Katharine R. Klein, Esq. (BPR # 019336)
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

-and-

**MINTZ & GOLD LLP**
Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
600 Third Avenue – 25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served through the Court's electronic filing system on the following:

Todd G. Cole, Esq. (BPR # 031078)
Andrew Goldstein, Esq. (BPR # 037042)
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq. (Ind. Bar. 9989-49)
Scott E. Murray, Esq. (Ind. Bar. 26885-49)
Patrick J. Sanders, Esq. (Ind. Bar. 36950-29)
MACGILL PC
156 E. Market St. Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS
LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com
*Counsel for the Southern Baptist Convention*

18

on this 14 day of February, 2024.

s/John R. Jacobson