# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY M. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-00243 |
| | ) | |
| SOUTHERN BAPTIST CONVENTION; | ) | Judge Campbell |
| GUIDEPOST SOLUTIONS LLC; and | ) | Magistrate Judge Frensley |
| EXECUTIVE COMMITTEE OF THE | ) | Jury Demand |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO GUIDEPOST SOLUTIONS LLC'S CROSS-MOTION TO COMPEL DISCOVERY

Faced with having to defend against three separate motions to compel and continuing allegations of discovery misconduct, Defendant Guidepost Solutions LLC has apparently decided to try a new, cynical tactic – hurl unfounded allegations of discovery abuse against Plaintiff, and hope it all comes out even in the wash. The Court should not fall for it.

## ARGUMENT

**A. There is no basis for Guidepost's insinuation of spoliation.**

Guidepost is intentionally seeking to mislead this Court and to inoculate itself from its own discovery abuses and document destruction by falsely accusing Plaintiff of having engaged in discovery misconduct. Guidepost's misleading efforts are beyond cynical, and they will not work.

As a preliminary matter, there is no reasonable, objective basis for Guidepost's suggestion that Pastor Johnny may have destroyed relevant emails or text messages after issuance of the Report. Pastor Johnny's counsel has explained to Guidepost's counsel that Pastor Johnny did not

have any substantive written communications with anyone about the 2010 Florida encounter with the accuser. Thus, it is not at all surprising that no such written communications, whether by text or email, were in Pastor Johnny's document production. Such written communications never existed; they were not destroyed.

Guidepost tries to create a different impression by stating that, "[a]s revealed in the Report, . . . Hunt communicated with the [accuser and her husband] via text from his phone." (Doc. No. 126 at 3.) This assertion is highly misleading. First, it is true that Pastor Johnny sporadically engaged in text messaging with the accuser and her husband **in and around 2010**, when the encounter occurred. But that was almost 12 years before the Report was issued that contained the false allegations against Pastor Johnny. As has been explained to Guidepost's counsel, Pastor Johnny did not retain these old text messages, and he does not even use the same phone. Pastor Johnny has not had any written communications with the accuser or her husband for many years on any topic; and he has never had written communications with them relating to the substantive accusations that are contained in the Report. A "forensic" examination of his current phone would not change these facts.

Second, Guidepost does not even attempt to offer any support for its assertion that Pastor Johnny should also be required to complete a "forensic" analysis of his hard drive and emails. And for good reason—there is no reasonable, objective basis for requiring either. As Guidepost's counsel knows, Pastor Johnny **does not have access** to any email account that he used prior to issuance of the Report in 2022. From 2010 through 2019, Pastor Johnny worked at the First Baptist Church of Woodstock and used an email account provided by the church. From 2019 through 2022, Pastor Johnny used an email address provided by the North American Mission Board (an

2

entity affiliated with Defendant SBC). Pastor Johnny does not have access to either email address now.

As for his current email address, Pastor Johnny has already used an e-discovery vendor to collect and search his emails, and any responsive emails have been produced. There is no basis for ordering anything more.

As for the time period after the Report was drafted, Guidepost speculates that, once Plaintiff learned of Guidepost's intent to publish false accusations against him, he must have gone into "overtime" generating emails and text messages that he should have preserved and produced because he surely must have understood that litigation was imminent. Guidepost has no factual basis for either of these assumptions. Guidepost can ask Plaintiff about his email and texting habits when they depose him. He can explain to Guidepost then – just as his counsel has explained in the parties' pre-motion correspondence – that he has not had any substantive communications with anyone by email or text about the encounter or the Report. That is just not how he communicates with people. And, as for the list of 42 people listed in his interrogatory responses with whom he had communications – a list that is primarily made up of his children, grandchildren, and close friends – those communications were oral and consisted primarily of some acknowledgement of the Report's existence – they were not substantive. Moreover, Plaintiff was advised of his obligation to retain relevant, responsive documents when he began considering filing this case. And he has honored that obligation. Again, Guidepost can ask him about this in his deposition.

At root, Guidepost's misleading allegations of "spoliation" are an attempt to inoculate itself from its own discovery misconduct. As is set forth in Pastor Johnny's Second Motion to Compel (Doc. No. 107), it is Guidepost and its investigators – not Pastor Johnny – who appear to have destroyed relevant communications. Indeed, at a recent deposition, one of the lead investigators

for Guidepost admitted under oath that he routinely deleted text messages and emails during the course of the investigation, which likely included communications with other parties to the investigation. This same investigator also admitted that the accuser's husband had specifically asked him to destroy documents provided to Guidepost during the investigation, a request that was memorialized in a text message. (*See* Doc. No. 102, Ex. U.)

On this record, there is no basis for ordering any relief against Plaintiff. Guidepost should proceed with the deposition of Pastor Johnny, at which time Guidepost can ask him questions about his communications and record-keeping habits. If Guidepost believes such testimony then justifies further relief, it can seek such relief at that time. But Guidepost's current request that Pastor Johnny be required to conduct a forensic examination for text messages and emails should be denied.

**B. Plaintiff is not withholding any documents identified in his initial disclosures.**

All of the documents identified in Plaintiff's initial disclosures that are within his possession, custody or control have been produced. Guidepost appears to be confused by the fact that Pastor Johnny included in his disclosures certain categories of documents that he anticipated would be produced by other parties in the litigation and that he might then rely upon in proving his claims. For example, Pastor Johnny included the category "[a]ny document produced during discovery in this case . . . ." He also included "[e]xpert reports" and "[d]eposition transcripts." Clearly, these are documents that were not yet in his possession, custody or control that he anticipated would be produced later and that he would rely upon.

Plaintiff does not understand why Guidepost continues to raise this issue.

### C. Plaintiff has provided the requested metadata.

This issue is moot. Plaintiff has provided the requested metadata. He has also produced an unredacted copy of HUNT_0002759.

### D. There is no reason for a document-by-document log of Plaintiff's communications with his trial counsel.

Guidepost appears to be asking the Court to require Plaintiff to supplement his redaction log to include a document-by-document listing of his communications with the undersigned trial counsel in the period leading up to the filing of the Complaint. There is no good reason to require such a log.

It is common practice in federal litigation for privilege logs to contain certain entries by category, especially documents that are clearly covered by the attorney-client privilege, such as communications between a client and his trial counsel. *See, e.g., SEC v. Nacchio,* No. 05-cv-00480-MSK-CBS, 2007 U.S. Dist. LEXIS 5435, at *32 (D. Colo. Jan. 24, 2007) (adopting test stated in *SEC v. Thrasher,* 92 Civ. 6987 (JFK), 1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. Mar. 19, 1996)), which rejected demand for document-by-document privilege log where defendants had not explained how a categorical log impaired their ability to test claim for work product protection).

In this case – as in all others – the Plaintiff reached out to the undersigned counsel seeking advice on his claims and ultimately engaged the undersigned to represent him. As part of collecting and producing responsive documents, Plaintiff and his counsel have not sought to log these obviously privileged communications on a document-by-document basis. Instead, Plaintiff has informed Guidepost that, as one would expect, there were pre-filing communications between Plaintiff and his counsel, including communications over the terms of the engagement letter, who to hire as local counsel, etc. These documents are clearly protected by both the

attorney-client privilege and the work product doctrine. Plaintiff has identified these withheld documents by category. And there is no reason to waste time or resources in putting them individually on a log.

Separately – and unrelated to any privilege log issue – Guidepost complains that Plaintiff did not produce Exhibit K to its motion – a screenshot of the accuser's husband's phone which shows a voicemail left by Plaintiff's counsel (Robert MacGill) for the accuser's husband. This is a truly bizarre assertion. Exhibit K is a voicemail left by Mr. MacGill for the accuser's husband. Mr. MacGill does not have a copy of that voicemail – only the accuser's husband does. That's how voicemails work.

Guidepost's privilege log objections have no merit, and the Court should deny Guidepost's motion to compel supplementation.

### E. Plaintiff is not withholding documents relating to his damages, and he will contact his medical providers for additional documents.

The vast majority of Plaintiffs' damages are tied to the Defendants' destruction of his professional and personal reputation. Plaintiffs' tax returns – which he has already produced – tell this story.

That said, Plaintiff did participate in a few counseling sessions to assist him in processing and dealing with the emotional trauma he has also suffered as a result of the false accusations against him. Plaintiff has produced documents in his possession relating to these sessions. But Plaintiff now understands that Guidepost also wants him to reach out to the counselors to obtain any documents in their possession.

Guidepost could have served a subpoena to obtain these records itself, but it apparently did not want to go to the trouble. Accordingly, Plaintiff will reach out to these providers to

obtain any documents they have and then produce any that are responsive. This issue is therefore now moot.

As for documents relating to his ongoing efforts to make a living, Guidepost is correct that these efforts continue. Thus, to the extent Guidepost is seeking updated information about Plaintiff's income and speaking engagements for 2023 and 2024, it is impractical to expect Plaintiff to supplement his discovery responses on a daily basis to reflect any such efforts. However, Plaintiff will work with Guidepost to agree to a reasonable supplementation schedule to cover such documents through trial.

Lastly, as for documents in the possession of Plaintiff's assistant, Plaintiff hereby confirms that he took reasonable steps to collect any responsive documents from her, including engaging an e-discovery vendor to collect and search her emails.

### F. Plaintiff is not withholding restoration-related documents.

As Plaintiff has previously told Guidepost, he is not withholding any documents related to his restoration. This issue is moot.

### G. The Court should deny Guidepost's request to fish through his personal expenditures in its desperate attempt to avoid this Court's jurisdiction.

Guidepost seeks to root through Plaintiff's personal credit card statements on the pretext of seeking jurisdictional discovery. The Court should not fall for this ruse.

As a preliminary matter, there can be no reasonable dispute but that Plaintiff is a citizen of Florida for purposes of this Court's diversity jurisdiction. A person's domicile is "established by presence (residence) plus intent to remain permanently or indefinitely." *Rayburn v. Anderson,* No. 3:19-cv-00828, 2021 U.S. Dist. LEXIS 1092, at *5 (M.D. Tenn. Jan. 5, 2021). Courts generally consider several factors when determining a person's domicile, including "current residence; voting registration and voting practices; location of personal and real property; location of

brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes." *Id.* (quoting *Caffey v. Home Depot,* No. 3:13-0476, 2014 U.S. Dist. LEXIS 60184, at *2-3 (M.D. Tenn. Apr. 28, 2014) (internal quotation marks omitted)).

Here, Pastor Johnny and his wife decided to make their Florida house their permanent residence in late 2022 and early 2023, prior to the filing of the lawsuit. Consistent with that decision, they obtained Florida drivers' licenses; they registered to vote in Florida; they joined a church in Florida; and they filed a sworn Declaration of Domicile in the State of Florida. These objective facts, combined with the allegations of domicile in the Complaint and Plaintiff's sworn interrogatory response declaring Florida as his domicile, put an end to this question.

But Guidepost continues to try to distract from the main issues in this litigation – its defamatory statements against Plaintiff. Instead, it suggests in its motion that it should be permitted to scour Plaintiff's and his wife's personal credit card statements for evidence that Plaintiff somehow "manufactured diversity jurisdiction" in this case and is lying about what he considers to be his domicile. Neither of these reasons justifies Guidepost's attempt to harass Plaintiff through these discovery requests.

It is undisputed that Pastor Johnny continues to have family connections and to own property in Georgia. Therefore, documents will indeed show travel to and from Georgia. But such travel is not inconsistent with having changed their domicile to Florida, and it does not change the fact that Pastor Johnny and his wife spend the majority of their time in Florida, have registered to vote in Florida, have joined a Florida church, have obtained Florida drivers' licenses, and have filed a sworn Declaration of Domicile in the State of Florida.

Guidepost's request to obtain and scrutinize Pastor Johnny's personal credit card statements is an attempt to harass him; it is not intended to assess his domicile. The request should be denied.

**H. Expenses and Fees under Rule 37(a)(5)(A).**

Finally, the Court should reject Guidepost's request for expenses and fees incurred in making their Cross-Motion. Plaintiff's conduct was substantially justified and an award of expenses under the circumstances would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).

## CONCLUSION

Based on the foregoing, the Court should deny Guidepost's Cross-Motion to Compel Discovery.

[SIGNATURE BLOCK AND CERTIFICATE OF SERVICE TO FOLLOW]

<u>Dated:</u> February 28, 2024                     Respectfully submitted,


                                                             s/ Andrew Goldstein
                                           **Todd G. Cole, Esq., BPR # 031078**
                                           **Andrew Goldstein, Esq., BPR # 037042**
                                           COLE LAW GROUP, P.C.
                                           1648 Westgate Circle, Suite 301
                                           Brentwood, TN 37027
                                           Telephone: (615) 490-6020
                                           Fax: (615) 942-5914
                                           tcole@colelawgrouppc.com
                                           agoldstein@colelawgrouppc.com


                                           *-and-*


                                           **Robert D. MacGill, Esq. (*pro hac vice*)**
                                           **Scott E. Murray, Esq.  (*pro hac vice*)**
                                           **Patrick J. Sanders, Esq. (*pro hac vice*)**
                                           MACGILL PC
                                           156 E. Market St.
                                           Suite 1200
                                           Indianapolis, IN 46204
                                           Telephone: (317) 721-1253
                                           robert.macgill@macgilllaw.com
                                           scott.murray@macgilllaw.com
                                           patrick.sanders@macgilllaw.com


                                           *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Memorandum in Support of Response in Opposition to Guidepost's Cross-Motion to Compel Discovery to be electronically filed with the Clerk of the Court on February 28, 2024, using the CM/ECF system, which will automatically serve all counsel of record listed below:

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq.
Scott E. Murray, Esq.
Patrick J. Sanders, Esq.
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

John R. Jacobson, BPR #14365
Katharine R. Klein, BPR #19336
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

Steven G. Mintz (admitted pro hac vice)
Terence W. McCormick (admitted pro hac vice)
Scott Klein (admitted pro hac vice)
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com

*Counsel for Defendant
Guidepost Solutions LLC*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*

s/ Andrew Goldstein
ANDREW GOLDSTEIN