IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:23-cv-00243 |
| ) | |
| SOUTHERN BAPTIST CONVENTION, et al., ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE FRENSLEY |
| Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the Court are Defendants' motions to dismiss (Doc. Nos. 25, 29, 31), which are fully briefed (Doc. Nos. 40, 47, 49, 48). For the reasons discussed below, the motions will be granted as to Count II and denied as to the remaining counts.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from Defendants' mass distribution of allegedly private and embarrassing information about Plaintiff Johnny M. Hunt ("Hunt") and Defendants' alleged decision to misleadingly feature him in a highly publicized report alongside child molesters, rapists, and sex criminals. Hunt brings this action against Defendants Southern Baptist Convention, Guidepost Solutions LLC ("Guidepost"), and the Executive Committee of the Southern Baptist Convention ("Executive Committee") for defamation, defamation/libel per se, invasion of privacy, intentional and negligent infliction of emotional distress, and public disclosure of embarrassing private facts, all arising from a report published in May 2022. (*See* Doc. No. 1). Defendants filed the pending motions dismiss under Rule 12(b)(6) for failure to state a claim.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citation and internal quotations omitted). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

### III. LAW AND ANALYSIS

**A. Choice of Law**

Guidepost and Hunt argue that Georgia should apply. The Executive Committee asserts that Tennessee or Georgia law could apply, but that the result would be the same on the issues raised in its motion. (Doc. No. 32 at 14 n.5). The Southern Baptist Convention contends that Tennessee law applies because this Court sits in Tennessee.

The instant matter was brought to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013). In tort cases, Tennessee abides by the Restatement (Second) of Conflict of Laws, *see Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992); *Wahl v. General Elec. Co.*, 786 F.3d 491, 494 (6th Cir. 2015), which provides that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principals stated in [Restatement (Second) of Conflict of Laws] § 6." *Hataway*, 830 S.W.2d at 59 (citation omitted).

Accordingly, the Court must apply the law of the state with the most significant relationship to the occurrences and parties. In a libel action, the location of the reputational harm to the plaintiff typically provides the applicable law. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 137 (6th Cir. 1996). That location is not discernable from the face of the complaint. Here, Hunt was a resident of Georgia when the actions that serve as the basis for his claims occurred, but subsequently moved to Florida. (Doc. No. 1 ¶ 14). Hunt "trained many pastors, staff and lay leaders in evangelism and leadership" from 2017 until May 2022. (*Id*. ¶ 29). Following the publication of the report at issue, the Southern Baptist Convention and the Executive Committee contacted

3

multiple churches where Hunt had been scheduled to speak and threatened them with disassociation from the Southern Baptist Convention. (*Id*. ¶¶ 72-73). The complaint does not specify whether Hunt's reputational harm was primarily experienced in a specific geographical location. Conversely, the Southern Baptist Convention is located in Tennessee, as is the Executive Committee. Guidepost contracted with the Southern Baptist Convention to conduct an investigation into, among other things, the actions of the Executive Committee. Given the lack of a clear choice-of-law based on reputational harm to Hunt, Tennessee has the most significant relationship to the occurrences and the parties, thus the Court will apply Tennessee law.

## B. Ecclesiastical Abstention Doctrine

While all three defendants argue the ecclesiastical doctrine deprives this Court of subject matter jurisdiction, courts have been clear that this doctrine constitutes an affirmative defense, not a jurisdictional bar. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 202 n.4 (2012); *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015). The defendants cite no law to the contrary. A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted). Accordingly, the Court must review the allegations in the complaint to determine if the ecclesiastical doctrine affirmative defense clearly applies.

Rooted in the First Amendment, the ecclesiastical abstention doctrine cautions against courts weighing into internal church matters that involve "questions of discipline, or of faith, or ecclesiastical rule, custom, or law [that are decided by] church judicatories." *Ogle v. Hocker*, 279

4

Fed. Appx. 391, 395 (6th Cir. 2008). A companion doctrine involving the review by courts of employment decisions is referred to as the "ministerial exception," which is also based on First Amendment concerns. *See Hosanna-Tabor*, 565 U.S. 171; *Conlon*, 777 F.3d 829. The ecclesiastical abstention doctrine looks to whether the lawsuit would require the court to consider disputes involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 714 (1976).

Hunt alleges that a consensual extramarital encounter occurred in 2010, after his term as president of the Southern Baptist Convention had ended. (Doc. No. 1 ¶ 3). Even accepting Guidepost's argument that the scope of its engagement included the actions of the Executive Committee, Guidepost fails to identify a specific church standard, internal process, or tenant of faith that: (1) would be involved in secular review of Hunt's claims; or (2) were involved in the genesis of the allegedly wrongful acts. While some of the defendants rely on *Ogle v. Church of God*, 153 F. App'x 371 (6th Cir. 2005) and *In re Lubbock*, 624 S.W.3d 506, 509 (Tex. 2021), neither are applicable in the present case because *Ogle* involved requested judicial review of church disciplinary proceedings and *Lubbock* concerned defamation claims resulting from an application of Canon law.

On the other hand, Defendants largely ignore the case of *Ogle v. Hocker*, which is more applicable to the claims alleged by Hunt. In *Hocker*, a church bishop sued a fellow pastor for defamation and intentional infliction of emotional distress for statements made in sermons and elsewhere. In analyzing the applicability of the ecclesiastical abstention doctrine, the *Hocker* court asked "[w]hether a secular court may hear a tort suit despite the church autonomy doctrine turns on the availability of secular standards and the ability of a court to resolve the controversy without

5

reference to religious doctrine." 279 Fed. Appx. at 395. The *Hocker* court went on to point out that "the relevant question … is whether the court would interfere with any matter of church doctrine or practice by ruling on this case." *Id*. at 396. The *Hocker* court declined to invoke the ecclesiastical abstention doctrine when: (1) the majority of the purportedly defamatory statements occurred "outside of the religious practice context," and (2) no party identified "any doctrinal issues that will be involved." *Id*. In contrast, in an earlier suit filed by Bishop Ogle – *Ogle v. Church of God*, cited *supra* – challenging internal church disciplinary proceedings against him, the Sixth Circuit applied the ecclesiastical abstention doctrine because "all of defendants' actions of which Ogle complains were part of church disciplinary proceedings which were initiated precisely because Ogle's actions violated the Church of God Minutes of the General Assembly." *Ogle*, 153 F. App'x at 376.

Here, the complaint does not seek secular judicial review of a "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Milivojevich*, 426 U.S. at 714. Rather, according to the complaint, the Southern Baptist Convention hired a third party, Guidepost, to investigate how it handled matters involving sexual abuse. The fact that a church body was involved in the decision to hire Guidepost and that the resulting investigation and report involved a church entity does not prevent the court from resolving the claims asserted without reference to religious doctrine. Because it is not clear from the allegations that the ecclesiastical abstention doctrine bars this Court from presiding over the claims asserted, Defendants' motions to dismiss will not be granted on ecclesiastical abstention grounds.

### C. Public Figure

The Court now turns to Defendants' arguments that Hunt was a public figure. (*See* Doc. No. 27 at 11-15; Doc. No. 32 at 19-21; Doc. No. 30 at 11-14). There are two kinds of "public figure" plaintiffs: a "limited-purpose" public figure and a "general-purpose" public figure. *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014). "A general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'" *Id*. (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Based on the allegations in the complaint, while Hunt had some fame within the Southern Baptist denomination and had previously served as its president over ten years before the events at issue, this does not provide "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society" such that he should be "deemed a public personality for all aspects of his life." *Ogle v. Hocker*, 279 F. App'x 391, 398–99 (6th Cir. 2008) (quoting *Gertz*, 418 U.S. at 352). Accordingly, the complaint does not establish that Hunt was a general-purpose public figure.

To be a "limited public figure" there must be a public controversy that gives rise to the alleged defamation. *Clark v. Am. Broad. Companies, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982) (quoting *Gertz*, 418 U.S. at 345). The allegations in the complaint describe a public controversy. But secondly to be a "limited public figure," Hunt must have become so involved in the public controversy as to constitute a public figure via his involvement. *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *11 (M.D. Tenn. Jan. 10, 2022). Courts consider three factors to determine a plaintiff's involvement in a public controversy: (1) the voluntariness of the involvement; (2) the extent to which the plaintiff had access to channels of communication in order to counteract false statements; and (3) the prominence of the plaintiff's role. *See id*. Accepting

Hunt's allegations as true and construing all inferences in his favor, as the Court must do, the Court does not find at this juncture that Hunt is a "limited-purpose public figure." While Hunt was voluntarily in leadership of the Southern Baptist Convention over a decade before the conduct at issue, nothing in the complaint suggests that he voluntarily injected himself into the sexual abuse controversy or the events surrounding Guidepost's report. Indeed, Hunt claims appear to arise from the position that he shouldn't have been involved at all.

While the Court finds that the complaint does not include factual allegations sufficient to establish that Hunt was a public figure, that finding is for the limited purpose of analyzing Hunt's defamation claims under Rule 12(b)(6). Should evidence advanced during discovery suggest otherwise, the parties may present that issue to the Court at a later juncture.

### D. Defamation (Count I)

To state a claim for defamation under Tennessee law, a plaintiff must allege: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013). Accepting Hunt's factual allegations as true and drawing all reasonable inferences in his favor, the Court finds Hunt has stated a claim for defamation upon which relief can be granted against Defendants.

Guidepost argues that the "common interest privilege" defeats Hunt's defamation claims against it because Guidepost only published its report to the Southern Baptist Convention. Under Tennessee law, the "common interest privilege" may defeat a defamation claim if the allegedly defamatory statements were made in "good faith" concerning "any subject-matter in which the party communicating has an interest, or in reference to which he has a duty." *Am. Addiction*

8

*Centers, Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, 515 F. Supp. 3d 820, 833 (M.D. Tenn. 2021) (citation omitted). Such a defense is not a sufficient basis for dismissal of the defamation claim because: (1) the Court finds that Hunt alleges sufficient facts to state a claim; and (2) accepting the factual allegations as true, it is not clear from the face of the complaint that the "common interest privilege" defense bars that claim. *See Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

E. **Defamation per se (Count II)**

As noted above, the Court applies Tennessee law. Following *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Tennessee Supreme Court held that the common law distinction between "libel Per se" and "libel Per quod" no longer existed. *See Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418–19 (Tenn. 1978). Accordingly, Hunt's claim for defamation/ libel per se is duplicative of Count I and will be dismissed because it is not a cognizable claim under Tennessee law.

F. **Invasion of Privacy (false light) (Count III)**

"Tennessee courts recognize the common-law tort of invasion of privacy when it occurs through an unreasonable intrusion into the private affairs of another." *Teno v. Iwanski*, 464 F. Supp. 3d 924, 939 (E.D. Tenn. 2020) (citation omitted). To state a claim for false light invasion of privacy under Tennessee law, a plaintiff must allege: "(1) publicity, (2) that places the plaintiff in a false light, (3) that is 'highly offensive to a reasonable person,' and (4) that the defendant knew of or acted with reckless disregard to the 'falsity of the publicized matter and the false light in which the other would be placed.'" *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (quoting *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001)).

Guidepost argues this claim should be dismissed because the report did not accuse Hunt of child abuse or conviction of a crime and that no reasonable reader of the report would conclude otherwise. The Executive Committee suggests that Hunt failed to plead the "requisite state of mind." The Southern Baptist Convention simply relies on its "public figure" argument, which the Court has already rejected. *See supra*.

In the complaint, Hunt alleges the report's depiction of him as an abuser and the person with whom he had an encounter as a "survivor" placed him in a false light. Hunt further alleges the report was reckless in its crediting certain witnesses who were merely repeating hearsay. Viewing these factual allegations in the light most favorable to Hunt and drawing all reasonable inferences in his favor, the complaint has pleaded facts sufficient to state a claim for false light invasion of privacy.

### G. Intentional Infliction of Emotional Distress (Count IV)

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must allege that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 21 (Tenn. 2021). The Southern Baptist Convention argues that free speech under the First Amendment bars this claim because the report was concerning a matter of public concern; however, Hunt has pleaded facts sufficient to show that a reasonable jury could find the portions of the report concerning him were not of public concern. The Executive Committee argues Hunt's conduct shows he didn't view the allegations against him as extreme or outrageous and Hunt also failed to allege serious mental injury. Guidepost attacks this claim on the basis that Hunt failed to plead "extreme and outrageous" conduct by Guidepost.

In his response, Hunt points to the allegations that Guidepost incurred over $2 million in fees to investigate five specific questions and that, despite its extensive investigation, it was unable to find even a single case of sexual abuse by a member of the Executive Committee. (Doc. No. 40 at 18 (citing Doc. No. 1 ¶ 47)). Hunt also points to his allegations that Defendants chose to use him as its scapegoat, intentionally decided to publish allegations against him to avoid the perception that the Southern Baptist Convention had wasted its money on the investigation, and that Guidepost intentionally created the false impression that Hunt had criminally assaulted the wife of a fellow pastor. (*Id*. (citing Doc. No. 1 ¶¶ 47-50, 54-55, 58-59, 71, 75)). While a claim of intentional infliction of emotional distress is a relatively narrow cause of action, Hunt has pleaded facts, which accepted as true, could support an intentional infliction of emotional distress claim.

## H. Negligent Infliction of Emotional Distress (Count V)

The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation; the plaintiff must also prove that the defendant's negligence caused the plaintiff serious or severe emotional injury. *See Doe 1 v. Woodland Presbyterian*, 661 S.W.3d 87, 109 (Tenn. Ct. App. 2022) (citing *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012)). Guidepost seeks dismissal of this claim on the basis that Hunt fails to allege physical injury. Because physical injury is not required under Tennessee law, *see supra*, this claim will not be dismissed against Guidepost. The Southern Baptist Convention argues free speech rights under the First Amendment bars this claim because the report was concerning a matter of public concern – an argument the Court has already rejected. *See supra*. The Executive Committee attacks the duty element, noting Hunt's allegations that it breached a duty to use reasonable care in reporting by including the allegations against Hunt in a report focused on child molesters and other sex abusers.

11

(Doc. No. 32 at PageID # 485 (citing Doc. No. 1 ¶ 111)). Specifically, the Executive Committee argues Hunt fails to allege facts showing it breached its duty of care because the report "fairly and accurately describes subject matter within the scope of Guidepost's investigative mandate." (*Id*.). This argument asks the Court to view the factual allegations in the Executive Committee's favor rather than Hunt's, which is the Court cannot do at this stage.

In his response, Hunt points to the allegations that Defendants falsely described him as having been accused of a sex crime, intentionally directed their actions towards him to make him a scapegoat, and outrageously and maliciously decided to link him to a report focused on child sex abuse, rape, and other similarly heinous acts. (Doc. No. 40 at 19 (citing Doc. No. 1 ¶¶ 54, 13, 62, 7, 47-59, 63)). At this stage, viewing the factual allegations in the light most favorable to Hunt and drawing all reasonable inferences in his favor, the Court finds that Hunt has stated a claim for negligent infliction of emotional distress against these defendants.

I. Public Disclosure of Embarrassing Private Facts (Count VI)

Guidepost argues Hunt's actions were of public concern and the other defendants make similar arguments, all of which draw factual inferences in their favor rather than Hunt's. The complaint alleges the incident involving the fellow pastor's wife occurred after Hunt's tenure as the Southern Baptist Convention's president and years before the Southern Baptist Convention initiated an investigation into itself via Guidepost. Based on these allegations, Hunt has alleged facts to support the proposition that the parts of the Guidepost report pertaining to him were not of public concern.

## IV. CONCLUSION

For the foregoing reasons Defendants' motions to dismiss will be granted as to Count II and denied as to the remaining counts.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE