IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:23-cv-00243 |
| | ) Judge Campbell/Frensley |
| SOUTHERN BAPTIST CONVENTION, et al., | ) |
| Defendants. | ) |

# ORDER

## I. INTRODUCTION

Johnny Hunt, a pastor and former President of the Southern Baptist Convention ("SBC"), brought this suit against the SBC, the Executive Committee of the SBC ("the Executive Committee"), and Guidepost Solutions LLC ("Guidepost") (collectively, "Defendants") alleging torts including defamation and libel related to an investigative report ("the Report") prepared by Guidepost for the SBC that includes allegations that Mr. Hunt sexually assaulted the wife ("the accuser") of another SBC pastor.[1,2] Docket No. 1. All three Defendants have filed Motions to Dismiss, which have been disposed of. Docket Nos. 25, 29, 31, 150, 151.

This matter is now before the Court upon Mr. Hunt's Motion to Compel. Docket No. 106. Mr. Hunt has also filed a Supporting Memorandum and other supporting documents.

---

[1] Guidepost was engaged by SBC to investigate possible sexual abuse by members of the Executive Committee. Docket No. 1-1, p. 2.
[2] In some instances, the accuser is referred to as "the survivor."

Docket Nos. 107, 107-1 through 107-4, 109, 109-1 through 109-4.[3] Guidepost has filed a Response in Opposition. Docket Nos. 113, 115. Mr. Hunt has filed a Reply. Docket Nos. 116, 118. The Parties have also filed a Joint Discovery Dispute Statement and other supporting documents. Docket Nos. 100, 100-1 through 100-22, 102, 102-1 through 102-6. For the reasons set forth below, Mr. Hunt's Motion (Docket No. 106) is GRANTED IN PART and DENIED IN PART.

## II. LAW AND ANALYSIS

### A. Discovery Requests and Motions to Compel

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery. Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1). Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery. Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016),

---

[3] Many of the briefs and supporting documents related to this Motion have been filed both under seal and as redacted versions in the public record.

*quoting* Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). "Relevance for purposes of discovery is broadly construed and the information sought need not be admissible to be discoverable." *T.C. ex rel S.C. v. Metro Gov't of Nashville & Davidson Cty.*, No. 3:17-01098, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at *17 (M.D. Tenn. July 9, 2018). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5 (internal quotation marks and citation omitted). Further, for purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

B. **Mr. Hunt's Motion to Compel**

Mr. Hunt moves the Court to compel Guidepost to: "(1) redesignate documents marked 'Attorneys' Eyes Only' to 'Confidential' under the Amended Agreed Protective Order; (2) state whether specifically-identified missing documents were destroyed and provide a complete document production; and (3) supplement its responses to Plaintiff's Third Set of Interrogatories." Docket No. 106, p. 1.

1. **Redesignation of Attorneys' Eyes Only ("AEO") Documents**

Previously, Guidepost and Mr. Hunt had a discovery dispute related to material that was responsive to Mr. Hunt's document requests, but which Guidepost, due to its contractual relationship with the SBC, was unable to produce without the accuser's consent or a court order. *See* Docket Nos. 57, 61. Guidepost described that material ("the responsive items") as follows:

1. Audio recordings that the husband of an alleged sexual abuse survivor made of his counseling sessions with his wife and a purported marriage counselor;

2. The husband's private journal;

3. A summary document that contained information provided by the alleged survivor and her husband to Guidepost's investigators;

4. Text messages exchanged between the survivor and a Guidepost investigator who interviewed her for the report prepared by Guidepost;

5. Guidepost's notes of its interview with the alleged survivor and her husband; and

6. Blackline drafts of Guidepost's interview notes.

Docket No. 61, p. 1-2.

4

The Court found that the responsive items were relevant under the broad standard for relevance in discovery, but that Guidepost had established that production of the responsive items without a court order would impose an undue burden on Guidepost. Docket No. 76, p. 5. The Court also found that the Parties' then-operative Protective Order (Docket No. 52) was "insufficient to safeguard information contained in the responsive items that is clearly very personal and relates to an instance of alleged sexual abuse." Docket No. 76, p. 6. The Court therefore ordered that "[n]o later than December 5, 2023, the Parties must file a modified Protective Order that includes an Attorney's Eyes' Only designation, and Guidepost must produce the responsive items to Mr. Hunt under that designation." *Id.* at 7.

The Parties complied by filing an Unopposed Motion to Amend/Correct Protective Order, and the Court granted the Motion and entered the Amended Agreed Protective Order. Docket Nos. 81, 82, 83. Mr. Hunt agrees that "[c]onsistent with the Court's order, Guidepost produced the documents and designated them 'Attorneys' Eyes Only" under the Amended Agreed Protective Order." Docket No. 109, p. 3, *citing* Docket No. 83.

In the instant Motion, Mr. Hunt maintains that "there is no justification for an 'Attorneys' Eyes Only' designation for any of the documents produced by Guidepost . . . ." Docket No. 106, p. 1. Mr. Hunt states that his counsel "conducted a detailed review of each document designated 'Attorneys' Eyes Only'" and that "[t]he review revealed that several documents were provided by [the accuser] and her husband to newspaper reporters, and portions of these documents were even made public through online publication." Docket No. 109, p. 3. Mr. Hunt argues that "[t]he fact that [the accuser] and her husband shared these details with both investigators and newspaper reporters confirm[s] that there is no legal basis for the 'Attorneys' Eyes Only' designation." *Id.* at 4. Additionally, Mr. Hunt contends that interview notes "taken by

5

Guidepost's investigators during [Mr. Hunt's] *own interview*—with no third-party present" do not warrant an Attorneys' Eyes Only designation because "there is no basis to prohibit [Mr. Hunt] from seeing these notes." *Id.* (emphasis in original). Mr. Hunt argues that "the 'Attorneys' Eyes Only' designation has made litigation more difficult as [Mr. Hunt's] counsel is effectively barred from discussing with [Mr. Hunt] the alleged factual underpinnings of Guidepost's Report." *Id.* at 5 (footnote omitted).[4] Mr. Hunt asks the Court to compel Guidepost to change the designation of all AEO documents to Confidential. *Id.* at 10.

Guidepost responds that it produced the responsive items as Attorneys' Eyes Only because the Court ordered it to do so, and also to further its goal of "protect[ing] an alleged survivor of sexual assault from being re-victimized by the sharing of intimate matters with her alleged abuser." Docket No. 115, p. 2. Further, Guidepost maintains that "[w]hile Hunt argues that the designation should be lifted entirely due to his alleged survivor's sharing of some information with a reporter from the *Houston Chronicle*, Hunt points to no public news report in which the alleged survivor's name was revealed or intimate portions of the document were publicly disclosed." *Id.* Guidepost contends that "[t]he article to which Hunt refers contains only stray quotations from the 'summary document,' none of which identified a victim or witness by name and none of which contained the sort of intimate personal information concerning the couple's marriage contained in the 'summary document' chronicling their period of counseling with . . . Roy Blankenship." *Id.* at 6. Guidepost asserts that "Guidepost (properly) produced

---

[4] Guidepost states that it does not oppose the redesignation of Mr. Hunt's interview notes to "Confidential" if ordered by the Court, adding that Mr. Hunt did not raise this issue in the meet and confer process, the January 10, 2024, discovery conference with the Court, or the Joint Discovery Dispute Statement. Docket No. 115, p. 6, n.3. Guidepost asserts that these notes contain the names of witnesses "unrelated to the instant controversy" and proposes to produce the notes with those witness names redacted. *Id.*

6

thousands of pages of documents under an AEO designation because they include not only the name of Hunt's alleged victim but those of a number of other survivors whose information should be protected and which Hunt is not entitled to see under any circumstance." *Id.* at 2, n.1.

Mr. Hunt notes that "more than 50% of the documents produced by Guidepost have been designated as 'Attorneys' Eyes Only'" and asserts that "[i]t is obvious from this number and just a few examples that Guidepost did not make any effort to determine, on a document-by-document basis, whether such a designation is appropriate." Docket No. 118, p. 2. Mr. Hunt argues that "[w]hen the Court previously granted Guidepost's request to amend the protective order to allow for an AEO designation, neither the Court nor [Mr. Hunt] had seen the documents. But now that [Mr. Hunt's] counsel has, it is clear that the rigorous standard for an AEO designation does not apply." *Id.* at 2-3.

Pointing to a specific document that has been designated AEO, Mr. Hunt asserts that:

> This document was created by [the accuser] and her husband specifically to be provided to Guidepost so that Guidepost could then include the details of their allegations against [Mr. Hunt] in Guidepost's public Report. In other words, the information contained in that document was specifically intended to be publicized. The fact that Guidepost decided to abstract the story to make it shorter does not change this fact. The details were intended to be made public, and they should not be hidden from [Mr. Hunt] through an improper AEO designation.

*Id.* at 3. Mr. Hunt asserts that "the details contained in that 'story' are important and key to [Mr. Hunt's] claims against Guidepost." *Id.*

Mr. Hunt also maintains that, contrary to Guidepost's assertions, "[a]side from drafts of its Report, which contains names that have already been made public, there are very few pages in the production that contain any names of alleged victims or witnesses that [are] not otherwise

7

publicly known." *Id.* at 4. Mr. Hunt states that he would have no objection to Guidepost making "targeted redactions to prevent those names from being disclosed." *Id.*

The Parties appear to agree that the notes from Mr. Hunt's own interview should be re-designated as "Confidential," and the Court concurs. Further, the Court agrees with Guidepost's proposal to produce the notes with the names of witnesses "unrelated to the instant controversy" redacted. Guidepost must produce the redacted notes no later than \_\_\_\_. As to the rest of the AEO documents, as discussed above, the Court has previously found that these documents, as a group, contain sensitive information, and that the relevance of many of them appears to be tenuous. Docket No. 76, p. 6. Pursuant to the Parties' Second Amended Agreed Protective Order, the Court will order counsel for Mr. Hunt and Guidepost to meet and confer regarding the redesignation of specific AEO documents to Confidntial, using the protocol set forth in the Court's recent Order. Docket Nos. 153, 147. If the Parties are unable to resolve the issue amicably, they must file (under seal) a Joint Discovery Dispute Statement. In the Dispute Statement, Mr. Hunt's counsel must list each document that they wish to have redesignated (identified by Bates number) and explain the relevance of the document to the claims and defenses in this case and the reason or reasons why that specific document does not meet the standard for AEO designation set forth in the Second Amended Agreed Protective Order. Understanding that Guidepost produced the documents under the AEO designation pursuant to the Court's Order, to the extent that Guidepost believes that any document that Mr. Hunt seeks to redesignate should be maintained as AEO, Guidepost must provide its reasons.

2. **Document Production**

Mr. Hunt maintains that some responsive documents are missing from Guidepost's productions, as evidenced by productions from a third party. Docket No. 109, p. 5-6. Further,

Mr. Hunt suggests that Guidepost may have destroyed relevant and responsive documents, citing "a communication between [the accuser's] husband and lead investigator Russell Holske inquiring whether documents were 'destroyed as requested.'" *Id.* at 6, *quoting* Docket No. 102-6. Mr. Hunt "requests that Guidepost state whether the specifically-identified missing documents still exist and make a full production, including text messages and instant messages for Krista Tongring, Julie Myers Wood, Russell Holske, Samantha Kilpatrick, and Anthony Collura by a date certain."[5] *Id.* at 7.

### a) Missing Documents

Guidepost contends that the instant Motion is both premature and unnecessary (because Guidepost had already agreed during the Parties' meet and confer process to supplement its production) and moot (because Guidepost has now done so). Docket No. 115, p. 8. Guidepost concedes that it "inadvertently missed a number of emails in the collection process" and asserts that it took steps to complete its collection and produced the missing documents on January 25, 2024. *Id.* (footnote omitted).

Guidepost admits it erroneously failed to include certain documents in its initial production, contends that it has now produced those documents, and points to a particular Bates range where they may be found. Meanwhile, Mr. Hunt has provided no evidence that this range of documents does not encompass the missing documents that he seeks. Therefore, the Court finds that the issue of the missing documents is now moot. Mr. Hunt appears to have the previously-missing documents and there is nothing further for the Court to do.

---

[5] Mr. Hunt describes these individuals as "Guidepost witnesses involved in drafting the Report." Docket No. 109, p. 6. The Joint Discovery Dispute Statement identifies them as Guidepost personnel: lead investigators (Russell Holske and Samantha Kilpatrick), Senior Managing Director (Krista Tongring), Chief Executive Office (Julie Myers Wood), and Chief Operating Officer and Chief Legal Officer (Anthony Collura). Docket No. 100, p. 2.

9

Case 3:23-cv-00243    Document 158    Filed 04/04/24    Page 9 of 18 PageID #: 2099

b) **Destroyed Documents**

Regarding Mr. Hunt's concern that documents may have been destroyed, Guidepost states:

> It is true that the survivor's husband did request that some of the materials provided to the Guidepost investigators not be preserved after the Report was submitted to the SBC Task Force. The husband asked the investigators not to keep the audiotapes, the "summary document," and the journal prepared by the husband in the course of his "counseling" sessions with Blankenship as a condition of his providing those highly private materials to the investigators in the first instance. The husband originally communicated this Request well before the SBC Task Force ultimately published the Report.
>
> . . .
>
> The husband's request encompassed only the audiotapes of the so-called marriage counseling sessions with Blankenship, the "summary document," and the husband's journal[], not the entire universe of documents relating to the husband and the survivor, such as emails or text messages with the investigators or other Guidepost personnel. Regardless, Guidepost investigators did ***not*** destroy any of the documents, resulting in the need for Guidepost to seek a protective order before producing them and the subsequent entry of the November 22 Order.

Docket No. 115, p. 7-8 (emphasis in original), *citing* Docket No. 76.

Mr. Hunt replies that "it is now undisputed that documents were destroyed," because "[a]t his deposition on February 1, 2024, co-lead investigator Russell Holske admitted that he routinely deleted his text messages during the investigation." Docket No. 118, p. 5. Mr. Hunt further asserts that "Guidepost does not deny that it produced only select screenshots of text messages and that it has not collected responsive text messages from its CEO, Chief Operating Office/Chief Legal Officer, and Senior Managing Director (Krista Tongring), even though they were all involved in the investigation and reporting of the allegations against [Mr. Hunt]." *Id.*

A party moving to compel information in discovery bears the initial burden of demonstrating that the information sought is relevant to the claims or defenses in the lawsuit. *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5. Here, Mr. Hunt conflates two categories of documents: 1) documents that the accuser's husband gave to Guidepost investigators during the course of their investigation, and 2) text messages to or from Mr. Holske and other Guidepost investigators and Guidepost executives. *See* Docket No. 118. As to the first category, Guidepost has previously conceded that such materials are responsive, and the Court has found that they are relevant under the broad standard of relevance for the purposes of discovery. *See* Docket No. 76, p. 5-6. As discussed above, Guidepost asserts that it has produced these documents, Mr. Hunt has not shown otherwise, and the issue is now moot.

As to the second category, the Court finds that Mr. Hunt has not met his burden to demonstrate how text messages to and from Guidepost's executives and general counsel (Mr. Collura) are relevant to the claims and defenses in this case. Mr. Hunt's assertion that "they were all involved in the investigation and reporting of the allegations against [Mr. Hunt]" is insufficient, as it does not even attempt to connect the text messages to the claims or defenses in this matter. *See* Docket Nos. 109, 118. As to the investigators, Guidepost asserts that it has "produced numerous text messages from the investigators, including group text exchanges among the four Guidepost witnesses whom Hunt has or is about to depose, including Guidepost's CEO, Julie Myers Wood." Docket No. 115, p. 9. Guidepost further states that "[t]here were no 'instant messages' of the sort Hunt requested." *Id.* Apart from text messages to or from Guidepost's attorney, Mr. Collura, it appears that (to the extent that they exist) Guidepost has produced the requested documents, and the Court finds that Mr. Hunt has not demonstrated the relevance of Mr. Collura's texts.

### 3. Responses to Plaintiff's Third Set of Interrogatories

### a) Interrogatory Nos. 1, 2, 4, 6, 9:

Interrogatory Nos. 1 and 2 ask questions about each version or draft of any section (respectively) of the Report that Guidepost has produced in this litigation, specifically, the date that the document was created, the date that it was modified (if applicable), and who, if anyone, it was shared with. Docket No. 107-2, p. 1-2. Interrogatory No. 4 asks Guidepost to "[i]dentify by bates number all versions of the Report sent to the Task Force prior to May 22, 2022." *Id.* at 3. Interrogatory No. 6 asks:

> Did anyone from the SBC, the Executive Committee, the Task Force, the Cooperation Committee, or any other third party (i.e., someone unaffiliated with Guidepost) provide comments, suggestions or other feedback on any draft of the Report prior to May 22, 2022? If so, identify who; the date of such comments, suggestions, or feedback; the manner in which such comments, suggestions, or other feedback was provided; and the substance of such comments, suggestions or other feedback.

*Id.* at 4. Interrogatory No. 9 requests that Guidepost:

> Identify all persons or entities unaffiliated with Guidepost who was [*sic*] provided a copy of any version of the Report or draft section of the Report prior to May 22, 2022, and the date such copy or draft section was provided to such person or entity. This request includes, but is not limited to, any copy or draft section provided to (a) the Cooperation Committee, (b) the Task Force, (c) the SBC, and/or (d) the Executive Committee.

*Id.* at 5.

Mr. Hunt asserts that in response to Interrogatory Nos. 1, 2, 4, 6, and 9, "Guidepost referred [Mr. Hunt] to the *entire bates range* of documents it has produced in the case— thousands of pages . . . ." Docket No. 109, p. 7-8 (emphasis in original). Mr. Hunt argues that "Guidepost has failed to identify documents with sufficient detail, as required under Rule 33(d)." *Id.* at 8. Mr. Hunt maintains that "Guidepost is the author of every version of the Report, knows

12

who received each version of the Report, and has an obligation to conduct a reasonable investigation into the same." *Id.* Further, Mr. Hunt contends that while "Guidepost references unspecified metadata contained in its entire production range . . . the metadata for many of the documents is limited and does not provide any information on who the document was shared with." *Id.*

Guidepost states that "Hunt's interrogatories requested (in various different iterations) to identify when and to whom the Report was provided and whether various SBC constituencies had provided comments to it." Docket No. 115, p. 9. Guidepost maintains that it "simply referred Hunt to the drafts of the Report in its document production," that "[t]he Report itself is 288 pages long and the drafts are hard to miss in Guidepost's document production," and that information as to the date when particular drafts of the Report were created or modified "is the precise sort of information that the metadata would reveal—and there is no basis for believing Guidepost would have superior information." *Id.* at 9-10.

Mr. Hunt replies that "the metadata and documents do not answer these questions" and "[Guidepost] can answer the question. But it has chosen not to." Docket No. 118, p. 5. Mr. Hunt asks the Court to order Guidepost "to comply with its discovery obligations by answering the questions that were asked in Interrogatories No. 1-9." *Id.*

It does not appear to the Court that "simply referr[ing] Hunt to the drafts of the Report in [Guidepost's] document production" would answer all of these questions, but Guidepost has provided additional information. In response to Interrogatory No. 1: "[i]n accordance with Guidepost's Engagement Letter, dated October 5, 2021, the only person or entity that received any version of the Report from Guidepost was the SBC Task Force. Furthermore, Guidepost is currently unaware that any of the above referenced bates numbers were shared with anyone"; in

response to Interrogatory No. 2: "[i]n accordance with Guidepost's Engagement Letter, dated October 5, 2021, the only person or entity that received the section of the Report related to [Mr. Hunt] from Guidepost was the SBC Task Force and the Committee on Cooperation. Furthermore, the Survivor and Survivor's Husband received only the section of the Report pertaining to their experiences with [Mr. Hunt]"; in response to Interrogatory No. 6: "the only person or entity that provided comments or feedback to the draft Report were: (i) the Task Force, (ii) the Committee on Cooperation for factual edits to draft sections of the Report and never the entire Report, and (iii) Survivor and Survivor's Husband, and only to the section of the Report pertaining to their experiences with [Mr. Hunt]"; and in response to Interrogatory No. 9: " the Survivor and Survivor's Husband received only the section of the Report pertaining to their experiences with [Mr. Hunt]. Furthermore, in accordance with Guidepost's Engagement Letter, dated October 5, 2021, the only person or entity that received any version of the Report or section of the Report from Guidepost was the SBC Task Force and Committee on Cooperation." Docket No. 107-2, p. 2-6.

These responses appear to adequately answer the question of who received drafts or versions of the Report. Other information, such as the date on which each document was created and (where applicable) modified, should be contained in the metadata. While Mr. Hunt disputes that the metadata is sufficient, he does not explain in what way it does not provide the information that he seeks, nor does he set forth the steps he has taken to access the information from the metadata. Absent evidence that the metadata from these documents is inadequate, the Court will not compel Guidepost to provide information that should be available in the documents already produced.

14

Case 3:23-cv-00243    Document 158    Filed 04/04/24    Page 14 of 18 PageID #: 2104

### b) **Interrogatory No. 3**:

Interrogatory No. 3 asks Guidepost to "[i]dentify by bates number all versions of the Report sent to the Cooperation Committee prior to May 22, 2022." Docket No. 107-2, p. 3. Guidepost responded by stating that "[n]o version of the Report was sent to the Cooperation Committee prior to May 22, 2022." *Id.*

Mr. Hunt asserts that this response is contradicted by an answer provided by the Executive Committee to an interrogatory directed to that entity: "'the Committee on Cooperation, made up of five members of the EC, *had the opportunity to review a hard copy draft Report* five days prior to completion and submission to the Task Force.'" Docket No. 109, p. 9, *quoting* Docket No. 107-4, p. 3 (emphasis added by Mr. Hunt).

Guidepost maintains that it "answered the Interrogatory precisely and truthfully; it did not send a copy of the Report to the Committee on Cooperation," and "[t]here is no better answer to give to this Interrogatory." Docket No. 115, p. 10.

Despite Mr. Hunt's contention, these two answers are not necessarily contradictory; it could be that even though the Committee on Cooperation had the opportunity to review a hard copy draft report five days prior to completion and submission of the Report, Guidepost did not send a copy of the Report to the Committee on Cooperation. From the Executive Committee's interrogatory response, it appears that the Committee on Cooperation is comprised, at least in part, of persons who are also part of the Executive Committee. A reasonable conclusion is that this is how the Committee on Cooperation had the "opportunity to review" a draft copy of the Report. This could clearly occur without Guidepost specifically sending a draft to the Committee on Cooperation. The Court finds that the interrogatory has been sufficiently answered.

### c) **Interrogatory No. 5**:

Interrogatory No. 5 asks Guidepost to "[s]tate the total amount of money you billed for your work on the Report and the total amount of money you were paid for that work." Docket No. 107-2, p. 3. Guidepost responded by objecting that the interrogatory is vague, overbroad, ambiguous, and seeks information that is not relevant. *Id.*

Mr. Hunt contends that the information sought by the interrogatory is relevant to his claim that:

> Guidepost was embarrassed by the amount of time and money it had spent on the engagement. Or maybe Guidepost thought that such a finding would inflame rather than ameliorate the public pressure on the SBC. Whatever the reason, Guidepost decided it needed a scapegoat. It needed to uncover an 'abuser.' It needed a 'bombshell' – something to justify its $2 million fee. (Compl. ¶ 49).

Docket No. 109, p. 9, *quoting* Docket No. 1 (Complaint), p. 9.

Guidepost responds that it "stands by its objection that the Interrogatory is irrelevant to any issue in the case. The principal issue in this action is whether Guidepost committed an actionable libel and whether its delivery of the Report to the SBC Task force was privileged." Docket No. 115, p. 10.

The Court finds that the information sought by Interrogatory No. 5 is relevant under the broad standard for relevance in discovery. *T.C. ex rel S.C.*, 2018 U.S. Dist. LEXIS 113517, at *17. The burden therefore passes to Guidepost to demonstrate that producing the information would impose an undue burden or that the information is otherwise not discoverable under the Federal Rules. *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5. Guidepost has not addressed this burden. Thus, Guidepost must answer the Interrogatory.

### d) Interrogatory No. 7:

Interrogatory No. 7 asks Guidepost to "[i]dentify and describe all documents or other materials relating to the allegations against [Mr. Hunt] in the Report that you requested from [the accuser], her husband, Roy Blankenship, or any other person and state whether or not such materials were provided to you." Docket No. 107-2, p. 5. Guidepost responded by referring Mr. Hunt to its document production. *Id.* Mr. Hunt contends that "[t]his answer is deficient for the reasons described above" and that "Guidepost's productions provide little to no information on what information was requested and whether any requested materials were actually provided to Guidepost." Docket No. 109, p. 9-10. Guidepost responds that "[t]he documents obtained by Guidepost are easily located in the production and have been specifically described in correspondence between counsel (and prior motion practice)." Docket No. 115, p. 11.

The Court finds that identifying the documents within Guidepost's production (pursuant to Rule 33(d)) sufficiently answers the interrogatory. Although the documents themselves do not provide information as to which documents were requested from whom, Mr. Hunt does not explain, and the Court cannot discern, why that additional information is relevant to the claims or defenses in the case. Because Mr. Hunt has not met his burden of demonstrating why the additional information not provided by the documents themselves is relevant, the Court's inquiry ends there, and Guidepost need not provide any further response to this interrogatory.

### e) Interrogatory No. 8:

Interrogatory No. 8 asks Guidepost to "[i]dentify each document cited in a footnote in the section of the Report relating to Johnny Hunt by (1) bates number and (2) the footnote number used in the final Report." Docket No. 107-2, p. 5. Guidepost responded by referring to its production. *Id.* Mr. Hunt argues that "[t]je footnotes in the final version of the section on [Mr.

17

Case 3:23-cv-00243    Document 158    Filed 04/04/24    Page 17 of 18 PageID #: 2107

Hunt] in the final Report reference Guidepost's SharePoint files and provide no information on the underlying source." Docket No. 109, p. 10 (footnote providing example omitted).

Guidepost responds that its initial objections were proper, but asserts that "[i]n any event, this issue is moot, as Guidepost has identified the relevant Bates ranges in correspondence with Hunt's counsel." Docket No. 115, p. 11. In his Reply, Mr. Hunt does not dispute this assertion. *See* Docket No. 118. Therefore, the Court concludes that there is no live controversy as to this interrogatory and nothing for the Court to do.

### III. CONCLUSION

For the foregoing reasons, Mr. Hunt's Motion (Docket No. 106) is GRANTED IN PART and DENIED IN PART. Counsel for Mr. Hunt and Guidepost must meet and confer as described above regarding the specific documents designated as AEO that Mr. Hunt would like to have redesignated as Confidential. Guidepost does not need to make any further document production at this time. No later than April 18, 2024, Guidepost must supplement its responses to Mr. Hunt's Interrogatory No. 5.

IT IS SO ORDERED.

**Jeffery S. Frensley**
**United States Magistrate Judge**