# Exhibit A

Page 1

```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE


_____X
                              :
JOHNNY M. HUNT                :
                              :
        Plaintiff             :
                              :   CASE NUMBER:
vs.                           :
                              :   3:23-CV-00243
SOUTHERN BAPTIST CONVENTION,  :
GUIDEPOST SOLUTIONS, LLC, and :
EXECUTIVE COMMITTEE OF THE    :
SOUTHERN BAPTIST CONVENTION   :
                              :
        Defendants            :
                              :
_____X
```

The video-taped Zoom teleconferenced deposition of JULIA MYERS WOOD was held on Thursday, February 15, 2024, commencing at 9:04 A.M., at virtual location before Louisa B. McIntire-Brooks, Notary Public.

Also present: Orson Braithwaite, Official Videographer, Johnny M. Hunt, plaintiff

REPORTED BY: Louisa B. McIntire-Brooks

Veritext Legal Solutions
www.veritext.com                                888-391-3376
Case 3:23-cv-00243   Document 163-1   Filed 04/08/24   Page 2 of 4 PageID #: 2156

Page 226

1  representatives?
2    A.  Yes.
3    Q.  How many board representatives do they
4  have?
5    A.  Two.
6    Q.  Two?  Who else is on the board?
7    A.  Kevin Keene and Bart Schwartz and Anthony
8  Collura.
9    Q.  How do you spell Mr. Collura's name?
10   A.  C-O-L-L-U-R-A.
11   Q.  Is your chief legal officer?
12   A.  Yes.
13   Q.  And chief operating officer?
14   A.  Yes, and me.
15   Q.  And you?  What are the names of the
16  Carriage House representatives?
17   A.  It's Kevin Keen and Anthony Collura are
18  really representing them.
19   Q.  So you have a total of four board members?
20   A.  Yes.  I would like to follow-up with
21  additional information on that, yes.

Page 227

1    Q.  You don't know of any additional board
2  members?
3    A.  No, I think that's -- the Carriage House
4  representatives are Kevin Keen and Anthony Collura.
5    Q.  So you only have four board members, is
6  that what you're testifying to?
7    A.  Yes, that's my recollection.
8    Q.  How do you have -- what happens in a case
9  of a two to two tie?
10   A.  I'll need to double check.  Sorry about
11  that.
12   Q.  How often does your board meet?
13   A.  It meets on occasion when needed.
14   Q.  Quarterly?
15   A.  No, as needed.
16   Q.  Do you have annual meetings?
17   A.  Yes, we meet annually or by e-mail.
18   Q.  So you said SolutionPoint International is
19  the owner of your company?
20   A.  Yes.
21   Q.  And are they a hundred percent owner?

Page 228

1    A.  Yes.
2    Q.  At the time this report was issued, did you
3  get any congratulatory texts from any of the board
4  members?
5    A.  I don't recall.
6    Q.  Who else did you get texts from?  We have a
7  screenshot or two of a text from you, congratulatory in
8  nature, but we don't have all your texts yet, we're
9  awaiting a court ruling.  Who else did you get texts
10  from associated with this report?
11   A.  I don't recall.
12   Q.  Did you text your investigatory team from
13  time to time about the report?
14   A.  I don't recall specifically.
15   Q.  Do you recall generally doing texting on
16  the reports at some point?
17   A.  After the report was published?
18   Q.  Before.
19   A.  Yes.
20   Q.  How frequently would you text about the
21  contents of this report?

Page 229

1    A.  Before the report was published?
2    Q.  Before the report was issued.
3    A.  It depends on the time period.
4    Q.  Would you text, generally speaking, with
5  the senior investigatory team from time to time, text
6  with them on information and issues pertaining to the
7  report?
8    A.  Not usually.  By senior investigative team,
9  you mean Samantha and Russ or do you mean other people?
10   Q.  Yes.
11   A.  Okay.  Not usually, so as they would text
12  me, I wouldn't really be texting -- I wouldn't initiate
13  a text.
14   Q.  You would respond to their texts?
15   A.  Usually.
16   Q.  These responses would be information
17  pertaining to the report specifically in some cases?
18   A.  They worked on multiple matters.
19   Q.  Including this one?
20   A.  Yes.
21   Q.  You would text from time to time on this

58 (Pages 226 - 229)

Veritext Legal Solutions
www.veritext.com                                             888-391-3376
Case 3:23-cv-00243    Document 163-1    Filed 08/08/24    Page 3 of 4 PageID #: 2157

Page 230

1  matter, this report involving Pastor Johnny Hunt?
2      A.   My recollection is they would text me
3  occasionally on the Johnny Hunt specific matter.
4      Q.   You would from time to time text them back?
5      A.   Yes.
6      Q.   Now, when you text people, in your ordinary
7  course of business on matters such as Pastor Johnny
8  Hunt, would you text, generally speaking, on the same
9  day or would it be a day or so response?
10     A.   It depends.
11     Q.   Did you text with Krista Tongring
12 associated with this particular report?
13     A.   The report pertaining to Johnny Hunt or the
14 report overall?
15     Q.   Generally.  The report?
16     A.   Yes.
17     Q.   You texted with Sunny Lee as well on this
18 report that's at issue in this case; right?
19     A.   I don't recall that, but I have no reason
20 to dispute it.
21     Q.   Christina Bischoff, you texted with her on

Page 231

1  this report as well; right?
2      A.   I don't recall that, but I have no reason
3  to dispute it.
4      Q.   Again, Bruce Frank, you texted with him
5  occasionally with respect to this report?
6      A.   Yes.
7      Q.   Now, ma'am, I want to go back to comparing,
8  I want to go back to your report and comparing, again,
9  in another way the information that, this issue of
10 reciprocation.  We talked about that.  What does
11 reciprocation mean to you or what did it mean to you at
12 the time you reviewed and approved this report?
13     A.   I don't recall thinking specifically about
14 the reciprocation line at the time I reviewed the
15 report.
16     Q.   But in any event, what your report said
17 "survivor did not reciprocate"; right, you've seen that
18 with your own eyes this morning or this afternoon?
19     A.   Yes, that's correct.
20     Q.   And then Alisa Womack's response, that we
21 have covered before, was not included at all in the

Page 232

1  report.  Agreed?
2          MR. KLEIN:  Objection.
3      Q.  Her response of, "I'll try to keep up," do
4  you remember that?
5          MR. KLEIN:  Objection, asked and answered.
6          MR. MACGILL:  My mistake.  Give me a
7  second.
8      Q.   Ma'am, I want to go back to Exhibits 7 and
9  8 and I want to contrast what's in your investigatory
10 file with what is in the report.  There is, in your
11 file, the Womacks had told your investigators and your
12 company that Johnny Hunt had said he was going for a
13 jog and Alisa asked him if she could join.  Do you
14 recall that?  That being reported to you by Alisa
15 Womack?
16     A.   Nothing was reported to me.  I defer to the
17 investigators as what was reported to them.
18     Q.   And that was reported to the investigators?
19     A.   I defer to the investigators of what they
20 said and what the investigative files said.
21     Q.   Did you have personal knowledge of this

Page 233

1  before the report was issued?
2      A.   Personal knowledge, no.
3      Q.   Did you have knowledge that this has been
4  reported to your investigators?
5      A.   I had some awareness.  A jog sounds
6  familiar, but I don't have any specific recollection so
7  I'm not able to answer any specific questions on that
8  piece.
9      Q.   So you don't have any -- make sure, I want
10 to be exact on this.  You don't know from your own file
11 that in the Guidepost file there is a reference to "on
12 Tuesday morning," referring to Pastor Johnny Hunt, "he
13 said he was going for a jog and Alisa asked if she
14 could join."  You don't recall any such information in
15 the file of Guidepost?
16     A.   I have not seen the file of Guidepost so
17 I'm not able to speak to what is in there.
18     Q.   Well, you have seen some of the materials
19 in the files; right?
20     A.   Yes.
21     Q.   But you don't recall that specific report

59 (Pages 230 - 233)

Veritext Legal Solutions
www.veritext.com                                                                    888-391-3376