IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT,<br><br>    Plaintiff,<br> v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION<br><br>    Defendants. | Case No. 3:23-cv-00243<br><br>Judge Campbell<br>Magistrate Judge Frensley<br><br>JURY DEMAND |

## MEMORANDUM OF LAW IN SUPPORT
## OF NON-PARTY JANE DOE'S MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), non-party Jane Doe ("Jane Doe") respectfully submits this Memorandum of Law in support of Jane Doe's Motion for Protective Order. Jane Doe has engaged in best efforts to meet and confer with Defendants and Plaintiff in order to come to an agreement and avoid this motion.

## BACKGROUND

Jane Doe is the survivor of sexual assault committed by Plaintiff Johnny Hunt as described in the Guidepost report mentioned in Plaintiff's Complaint. This assault occurred in 2010 and it has taken Jane Doe and her spouse many years to untangle and address the trauma associated with that event, its cover up, and the manipulation employed by Plaintiff throughout that process and its aftermath.

It took tremendous courage and a thoughtful weighing of the potential impact on her and her family, in light of valuing the truth, protection of victims, and accountability of Plaintiff and

1

Defendant Southern Baptist Convention, for her to come forward to Defendant Guidepost in the course of their investigation into allegations of abuse, mishandling of abuse allegations, mistreatment of sexual abuse victims, and patterns of intimidation of sexual abuse victims or advocates within the Southern Baptist Convention. Upon doing so, Jane Doe had to revisit extremely traumatic and confusing experiences and risk upending her life again.

Notably, Jane Doe is **not** a defendant in this action. While she seeks to comply with the orders of the court, she also wishes to simply live her life and continue to heal. As such, she and her spouse each willingly complied with subpoenas duces tecum from Plaintiff in December 2023, at significant time and expense immediately before the Christmas holidays.

Defendant Guidepost noticed and subpoenaed Jane Doe on January 17, 2024, for a deposition on February 8, 2024, but Jane Doe and her counsel were unavailable for that time and location and the parties began conferring on a future date for the deposition and other parameters to protect Jane Doe from annoyance, embarrassment, oppression, or undue burden or expense, more specifically protecting her privacy, her physical and emotional well-being, and her and her spouse's employment prospects and relationships.

On February 15, 2024, Plaintiff emailed counsel for Jane Doe a subpoena for a deposition on March 15, 2024, despite having been repeatedly informed by counsel for Jane Doe that she was not authorized to accept service on behalf of Jane Doe. After attempting to set up a call with Plaintiff counsel and receiving no response, on February 29, 2024, counsel for Jane Doe sent an email to Plaintiff and reiterated that she never agreed to accept service on behalf of Jane Doe. Of course, Plaintiff has always had the option of personally serving Jane Doe a subpoena for deposition. To date, this has not occurred. Plaintiff has had over a year to subpoena and depose Jane Doe and instead waited until the final months of the discovery cutoff to ignore communication

from Jane Doe's counsel, but then complain if we don't reply quickly enough and then attempt to schedule such depositions at times when either Jane Doe or her counsel were not available.

Since fall of 2023, Defendants and Plaintiff were otherwise engaged in numerous discovery disputes in this case that would potentially affect deposition testimony by Jane Doe, including (1) disputes related to discovery documents provided both by Defendant Guidepost and Jane Doe and/or her spouse, (2) third party Roy Blankenship's motion to quash or for a protective order (ECF Doc. No. 89), and (3) disputes related to the substantive application of the Protective Order and its application to third parties such as Jane Doe (now Second Amended and Agreed Protective Order, ECF Doc. No. 153).

As these disputes continued, counsel for Jane Doe conferred further with both Defendants and Plaintiff on possible deposition dates and parameters. Despite attempting to come to an agreement on the deposition dates and parameters, counsel has been unable to come to a global agreement amongst the parties. This case has been pending for over a year and Jane Doe, a non-party who has had to engage counsel and local counsel at considerable expense, is not responsible for the delay or any upcoming discovery deadline.

Therefore, Jane Doe has proposed several dates when she, her lead counsel, and her local counsel are available, along with parameters for the reasonable protection of a victim of sexual assault who is not even a party to the instant action, for her deposition. We request that the court consider each request and issue a protective order appropriate for a survivor of sexual assault unwillingly thrust into the middle of this litigation.

**ARGUMENT**

1. **Legal Standards**

    Rule 26 of the Federal Rules of Civil Procedure provides that discovery:

    > Shall be limited by the court if it determines that (i) the discovery
    > sought is unreasonably cumulative or duplicative, or is obtainable

from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(2)(C). With respect to limiting discovery through protective orders, Rule 26(c) permits entry of a protective order "for good cause" when necessary to prevent "annoyance, oppression or undue burden or expense ..." Fed. R. Civ. P. 26(c)(1). The Sixth Circuit notes, "the harassment or oppression should be unreasonable, but 'discovery has limits and ... these limits grow more formidable as the showing of need decreases.' Thus, even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012).

Rule 26(c) provides district courts with broad discretion to issue protective orders. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-cv-01124, 2018 WL 3326814, at *1 (M.D. Tenn. Apr. 17, 2018).

"[P]retrial discovery … ordinarily proceeds as a private interchange between the parties, the fruits of which are not presumptively public." *The Courier Journal v. Marshall*, 828 F.2d 361, 364 (6th Cir. 1987) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

**2.    Good Cause Exists to Issue a Protective Order For Jane Doe's Deposition**

    **A.    Agreed Conditions**

Plaintiff, Defendants, and Jane Doe have agreed for the deposition to occur in Orlando, Florida, at a mutually agreed location, given Jane Doe's lead counsel's location in the area and ease of air travel for all parties.

Plaintiff, Defendants, and Jane Doe have also agreed for support personnel such as court reporter and/or videographer to be female, given the sensitive nature of Jane Doe's experience

and the recognized reality of the greater number of male individuals expected to be present at the deposition.

Plaintiff, Defendants, and Jane Doe have also agreed that the Second Amended Agreed Protective Order (ECF Doc. No. 153) is controlling.

**B.     Date of Deposition**

Counsel understands that fact witness discovery cutoff is currently April 19, 2024. Although the parties are generally agreeable to a deposition date past the cutoff and have identified dates that work for parties and attorneys, Plaintiff has expressed opposition to a delay beyond the current discovery deadline for fact witnesses.

Defendant Guidepost has noticed Jane Doe's deposition for April 16, 2024; however, as of the time of this filing, Jane Doe's lead counsel, Basyle Tchividjian, as counsel for a plaintiff, is scheduled to begin a trial in New York state on April 15, 2024. Also, Jane Doe's local counsel has a hospital procedure for her minor child on April 16, 2024, out-of-state, requiring air travel for her and her child to North Carolina from Tennessee and back.

Jane Doe and her counsel noted their availability for her deposition on May 7, 2024 or May 8, 2024, but those dates did not work for Plaintiff. The next dates of availability for Jane Doe and counsel are May 21, 2024, or May 22, 2024 with a preference for May 22, 2024.

**C.     Length of Deposition**

Courts have the authority to limit the time of a deposition. In this case, Plaintiff's claims are not against Jane Doe. Plaintiff's claims, to the extent they relate to Jane Doe, should not allow him to go on a fishing expedition into her trauma. Defendants have agreed to a total of two hours among them to depose Jane Doe (this amounts to an average of forty minutes of deposition time for each Defendant). Jane Doe has requested that Plaintiff agree to an hour for a total deposition time of three hours, but Plaintiff opposes this limitation. Jane Doe should not be forced to be

5

deposed for more than a total of three hours in a matter in which she is not a party regarding a subject matter that is profoundly personal and traumatizing. It is critical to note that this case is about allegations of defamation against the Defendants, not Jane Doe.

### D. Individuals Attending Deposition

Given the highly sensitive nature of Jane Doe's experience, sitting in a room with dozens of people, most of whom she has never met and does not know, is intimidating and expected to be traumatic. A request for each party to send only one individual (with the exception of Plaintiff Hunt) and one attorney still results in possibly eleven individuals in the room with Jane Doe. All Defendants have agreed to these conditions.

Other courts have held that only one attorney may question a witness at a deposition. E.g., *Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17-cv-00072-BLF (SVK) (N.D. Cal. Sept. 9, 2019); *Applied Telematics, Inc. v. Sprint Corp.*, No. 94-cv-4603, 1995 WL 79237, at *4-5 (E.D. Pa. Feb. 22, 1995) ("Therefore, in order to proceed in an effective manner, without harassing the witness, only one attorney at a time shall be designated as the 'voice' of counsel at a deposition" and "Only one attorney for each party shall be permitted to act as counsel during a deposition"); *Cont'l Cas. Co. v. Compass Bank*, No. 04-0766, 2005 WL 8158673, at *4 (S.D. Ala. Dec. 7, 2005).

Given such a guideline regarding attorney questioning, and the privacy interest of Jane Doe in limiting the number of unknown individuals witnessing her deposition testimony, our request for only one attorney per party attending Jane Doe's deposition is reasonable.

### E. Presence of Plaintiff Hunt

Jane Doe should not be forced to sit in a room for hours with the perpetrator of her sexual assault. Plaintiff has no Constitutional right to be present for her deposition. This is not a criminal case and indeed, the only reason the case exists is because Plaintiff Hunt brought it. He can be

adequately represented at the deposition by his counsel much like the roles and protections afforded under the Highly Confidential – Attorneys' Eyes Only designation of the Second Amended Agreed Protective Order (ECF Doc. No. 153).

F. **Deposition Transcript: Highly Confidential – Attorneys' Eyes Only**

Similar to other documents provided in discovery that identify Jane Doe and discuss details of her sexual assault and were designated by this counsel as Highly Confidential – Attorneys' Eyes Only, the deposition transcript will likely include "extremely sensitive Confidential information … the disclosure of which to another party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means." See Second Amended Agreed Protective Order (ECF Doc. No. 153).

On a meet and confer call, Plaintiff's counsel stated that Jane Doe's testimony would be "very public, very public." *See* Melissa J. Hogan Declaration, ¶ 20. This suggestion that now or later, or even at trial, assuming without question that the court would require revelation of Jane Doe's identity and the details of her sexual assault to be publicly on display, which is not necessary for this case to proceed, is improper and suggestive that there is an intent and motive to reveal Jane Doe's identity.



Sharing Jane Doe's identity with more individuals risks harm to her and her spouse emotionally, financially, reputationally, relationally, and professionally by increasing the risk of her identity being revealed publicly as well as a loss of a sense of safety and agency over her own

traumatic experience, an essential part of healing from trauma.

Sexual assault involves trauma and stigma. Allegations against known figures or in cases otherwise with media interest involve an even greater risk of emotional harm to a victim, where their most intimate pain is put on display for others' commentary, judgment, and entertainment. If the general public were to learn Jane Doe's identity, the trauma she continues to endure related to the sexual assault and its aftermath will only increase as her experience, then connected to her as an individual, would then be shared widely without her ownership or consent.

The Guidepost report had a significant impact within the Southern Baptist community. The media was interested in the report and has also written about this case. However, Jane Doe's identity has not been revealed publicly. Not guarding her identity and the contents of the transcript of her deposition increases the risk of that disclosure.

Allegations against prominent leaders within a faith community carry even more risk of rupturing relationships and burdening career prospects of her spouse, who at the time of the sexual assault was a pastor within the denomination, which then could affect Jane Doe financially as well. These risks of harm outweigh any argument for a less stringent designation under the Second Amended Agreed Protective Order (ECF Doc. No. 153). She should not be penalized for being unwillingly brought into a case about a traumatic and harmful event.

### G. Control of Video Recording

Jane Doe's image identifies her in a similar way as her name and other identifiable information. In addition, as we have learned with other visual images in this digital age, whether photographs or video recordings, they rarely ever disappear completely. Indeed, the more salacious or controversial the images or recordings, as is the case for crimes such as sexual assault or other sexual images or recordings, the more likely they are to be shared and perpetuated.

For similar reasons expressed above regarding her deposition transcript, and even more so because of the vulnerability of a video representation of someone speaking about traumatic

and personal experiences, any video recording of her deposition should be protected by the court. Jane Doe never wished to participate in this proceeding. She is not a party. She does not benefit from this case. To force a victim of sexual assault to appear on video about her assault, and for that video to be in the hands of numerous individuals, their assistants, case experts, including her alleged perpetrator, is for the court to participate in further traumatizing Jane Doe.

Jane Doe does not wish to be videotaped. While we have significant concerns about a video of Jane Doe's deposition existing at all, in an effort to be reasonable, our hope is that if the Court places strict controls around the existence and maintenance of any video of her deposition, such as designating it Highly Confidential – Attorneys' Eyes Only and maintaining the recording in the custody of the Court or Jane Doe's counsel until such time as the Court authorizes release to the parties in anticipation of trial, this could offer reasonable protection for a victim of sexual assault.

### H. Cost Shifting

Rule 26(c)(1)(B) of the Federal Rules of Civil Procedure provides that when entering a protective order to protect a party or person from, among other things, "undue burden or expense," the court may specify the "time and place *or the allocation of expenses*, for the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(B) (emphasis added).

Costs to comply with the subpoena/notice, obtain protective order, and appear for the deposition to be shifted to the noticing party, Defendant Guidepost, Plaintiff Hunt (since his opposition to most of our motions and requests is what brings us to the court), and/or any other party the Court deems appropriate is a reasonable request given the limited relative resources of Jane Doe, her status as a non-party, the duplication of her information to that of the Defendant Guidepost investigators and documents otherwise provided during discovery, and the traumatic nature of her testimony.

The particular facts of the case determine whether the court will exercise its discretion to

shift costs. See *Oxbow Carbon & Minerals LLC v. Union P. R.R. Co.*, 322 F.R.D. 1, 10-11 (D.D.C. 2017) (determining whether document discovery warrants cost-shifting turns on the specific needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the proposed discovery in resolving those issues); 8A Wright & Miller, Fed. Prac. & Proc. § 2112 (3d ed.) ("the court has a wide discretion in selecting the place of examination and in attaching conditions concerning the payment of expenses," which depend on the particular facts of the case).

Factors courts consider in shifting costs under F.R.C.P. 26 include:

1. The extent to which the request is specifically tailored to discover relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources available to each party;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

*Zubulake v. UBS Warburg LLC (Zubulake I)*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003).

The focus must be: "does the request impose an 'undue burden or expense' on the responding party" and "how important is the sought-after evidence in comparison to the cost of production?" *Id.* at 133. In answering these questions, the first two factors—the marginal utility factors—are most important and the last two factors least. *Id.* at 134. "[T]he importance of the litigation" will "only rarely come into play" and "the relative benefits of the production" will generally benefit the requesting party, but "in the unusual case" may also benefit the responding party and that fact "may weigh against shifting costs." *Id.* at 135.

In this case, Jane Doe is an individual without substantial financial resources versus Defendant Guidepost as a corporate entity who received fees from Defendant Southern Baptist

10

Case 3:23-cv-00243    Document 171    Filed 04/09/24    Page 10 of 13 PageID #: 2211

Convention for its work on the report. Jane Doe was not paid for revealing these painful personal details and instead, has also incurred expenses as part of responding to requests in this case. To her, every dollar of legal expense, lost time, and additional time spent in trauma due to the case is significant. They are especially significant given that she never expected or desired to be part of this litigation. Therefore, we respectfully ask that this court shift Jane Doe's reasonable costs and legal fees to the requesting party, Defendant Guidepost, or any other appropriate party in this case, such as Plaintiff Hunt, whose opposition to these motions, despite the agreement of all other parties, brings us to the court.

Plaintiff's claims of defamation, invasion of privacy, intentional and negligent infliction of emotional distress, and public disclosure of embarrassing private facts are against Defendants. Jane Doe's testimony was officially noticed and requested by Defendant Guidepost and also sought by Plaintiff Hunt. Any other party is a more appropriate bearer of the costs and expenses of her deposition than Jane Doe.

Dated: April 9, 2024

Respectfully submitted,

s/ Melissa J. Hogan
Melissa J. Hogan (#19430)
QAVAH LAW
8757 Horton Hwy
College Grove, Tennessee 37046
Telephone: 615-293-6623
melissajhogan@qavahlaw.com

*Counsel for Jane Doe*

# CERTIFICATE OF SERVICE

The undersigned certifies that on **April 9, 2024**, I electronically filed a true and correct copy of the foregoing with the Clerk of Court for the U.S. District Court Middle District of Tennessee through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
Scott Klein, Esq.
Adam Kahan Brody, Esq.
Alex Otchy, Esq.
Mintz & Gold LLP
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: 212-696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
brody@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Defendant Guidepost Solutions LLC*

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell, Esq.
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: 615-326-9059
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
Bradley Arant Boult Cummings, LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Telephone: 214-357-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
Jackson Kelly PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, West Virginia 253322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for Defendant Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katharine R. Klein
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: 615-320-3700
jjacobson@rjfirm.com
kklein@rjfirm.com

L. Gino Marchetti, Jr. Esq.
Matthew C. Pietsch, Esq.
Taylor, Pique, Marchetti & Blair, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: 615-320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for Defendant Southern Baptist Convention*

| | |
|---|---|
| Robert D. MacGill, Esq.<br>Scott E. Murray, Esq.<br>Patrick J. Sanders, Esq<br>MacGill PC<br>156 E. Market Street, Suite 1200<br>Indianapolis, IN 46204<br>Telephone: 317-721-1253<br>Robert.macgill@macgilllaw.com<br>Scott.murray@macgilllaw.com<br>Patrick.sanders@macgilllaw.com<br><br>Todd G. Cole, Esq.<br>Andrew Goldstein, Esq.<br>Cole Law Group, P.C.<br>1648 Westgate Circle, Suite 301<br>Brentwood, TN 37027<br>Telephone: 615-326-9059<br>tcole@colelawgrouppc.com<br>agoldstein@colelawgrouppc.com<br><br>*Counsel for Plaintiff* | T. Dylan Reeves, Esq.<br>Stites & Haribson, PLLC<br>401 Commerce St.<br>Suite 800, Ste 800<br>Nashville, TN 37219<br>Telephone: (615) 782-2200<br>dreeves@stites.com<br><br>*Counsel for non-party Roy Blankenship* |

By: *s/ Melissa J. Hogan*