# Exhibit 1

*(Excerpt from Hunt Deposition)*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY M. HUNT,                          )
                                         )
        Plaintiff,                       )
                                         )C.A. No.
vs.                                      )3:23-cv-00243
                                         )
SOUTHERN BAPTIST CONVENTION;             )
GUIDEPOST SOLUTIONS LLC; and             )
EXECUTIVE COMMITTEE OF THE               )
SOUTHERN BAPTIST CONVENTION,             )
                                         )
                                         )
        Defendants.                      )


HYBRID VIDEOTAPED DEPOSITION OF
JOHNNY HUNT
April 18, 2024
9:01 a.m.


Bradley Arant Boult Cummings LLP

1230 Peachtree Street NE

20th Floor

Atlanta, GA 30309

Robin K. Ferrill, CCR-B-1936, RPR
Magna Legal Services
866.624.6221
www.MagnaLS.com

1   fresh.

2            Because I frankly have forgot the question

3   I was going to ask.  And I don't think Rob is doing

4   that intentionally, but that's okay.

5            You had said that you weren't sure -- well,

6   neither of us knew, sitting here today, whether or

7   not they verified it.  My question to you was:  Are

8   you challenging the assertion, now that you have seen

9   it now, that they view the report as being verified

10  with a high level of professionalism?

11      A.   I would say they spoke uneducatedly.

12  Further, what proof do they have it's a report of

13  verity?

14      Q.   Yes.  I'm just asking you and you have

15  given me an answer, which is fine.

16      A.   Right.

17      Q.   Let's move on to a different subject.

18      A.   Okay.

19      Q.   Let's talk about your retention of emails

20  and text messages, which have been discussed a little

21  bit today.  I'm going into a little more detail.

22      A.   Okay.

23      Q.   Your counsel has represented to us that

24  prior to this litigation in March of 2023, that it

25  was not your practice to keep text messages and

1 emails.  Is that correct?

2      A.   Correct.

3      Q.   Did you routinely -- let's talk about texts

4 first, so there's no confusion.

5      A.   All right.

6      Q.   And then we will talk about emails.  So as

7 to texts, was there a practice for you to routinely

8 delete texts or was it more random?

9      A.   It was routinely.  It was a habit.  It was

10 a:  Let's get this phone cleaned up and make sure I

11 have answered all my texts, emails.  Done with them.

12 Move on.

13      Q.   So was it after you have read them, you

14 would just swipe and delete, or was it a weekly event

15 or something else?

16      A.   It could be a daily event, read them, make

17 sure they are answered if they need an answer, delete

18 and move.

19      Q.   What about with regard to emails, same

20 practice?

21      A.   Same practice.

22      Q.   So if we were to sneak into your office

23 tonight without you knowing and look in your inbox,

24 there would be very little emails in your inbox?

25      A.   Probably 20, maybe.

1          Q.    I promise I won't do that, but I will take

2    your word for it.

3                You said you changed phones, meaning the

4    phone you had in 2010, certainly not the same phone

5    you had in 2022?

6          A.    Correct.

7          Q.    Do I have that right?

8          A.    Yes, sir.

9          Q.    The phone you had in 2022, is that the same

10   phone you have today?

11         A.    In '22, yes, sir.

12         Q.    When did you switch to that current phone?

13   We know it was at least in 2022.  How much prior to

14   that did you purchase the phone that you are

15   currently using?

16         A.    Okay.  When I was in counseling, one of the

17   things that we discussed and it's because of my

18   nature of being available to pastors, I was

19   attempting to return every call, answer every email,

20   and someone said -- and my wife along with them, you

21   are too accessible to the world.  You need to get a

22   new number.  And so we just changed phones at that

23   time.

24         Q.    When was that?  I'm sorry.

25         A.    That would have been the -- after -- around

1   end of the summer of 2022.  I'm sorry, 2022, 2010.

2   2010.  So in the time of my counseling and all.

3       Q.   And the counseling you are talking about is

4   with Roy?

5       A.   Roy Blankenship, yes, sir.

6       Q.   So the phone you currently have, you have

7   had that same phone since at least 2011?

8       A.   Correct.

9       Q.   And I believe you said it was an iPhone?

10      A.   Correct.

11      Q.   You haven't upgraded to a new version of

12  the iPhone?

13      A.   Yes.  I have gone up, but I still kept the

14  same number in iCloud.

15      Q.   Same number.  Because of iCloud, did the

16  texts and emails just transfer over to each new

17  upgraded device?

18      A.   They did.

19      Q.   Do you know when you started preserving

20  emails in connection with the claims that you

21  ultimately brought in this lawsuit?

22      A.   I still don't keep them.

23      Q.   You still don't keep them to this day?

24      A.   No, I figure my attorneys are handling any

25  emails that are important for me.

MAGNA
LEGAL SERVICES

1      Q.    Are you aware that there's a current

2  obligation for you to retain your emails and text

3  messages in connection with this lawsuit?

4      A.    Let me make sure I understand your

5  question.

6      Q.    I'm not looking to confuse you or trick

7  you.  Let's make sure we're talking the same

8  language.

9      A.    You mean from -- like from who?

10     Q.    Anything relevant -- I'm not sure you

11  should be deleting anything, but certainly with

12  regard to any current texts or emails relating to the

13  claims that you have brought in this lawsuit, that

14  you are not permitted to delete any of those.  So

15  let's just start with that.

16     A.    Uh-huh.

17     Q.    Are you testifying that -- and maybe

18  unwittingly and unknowingly -- but are you testifying

19  that you have been still deleting texts and emails --

20     A.    Yes.

21     Q.    -- as they come in once you are done

22  reading them?

23     A.    Yes, the texts, yes, because they haven't

24  related to the case.  The emails, I give them to my

25  wife and she files everything.

1    Q.   So those are still retained?

2    A.   They are still retained, yes.

3    Q.   The texts, you made the determination on

4 your own whether or not a text was germane to the

5 case, and if it was, you have kept it; and if not,

6 you have deleted it?

7    A.   Yes.  But I don't -- I can't even really

8 think.  There may be a couple that we have retained

9 and we have a record of, and I guess that's why my

10 phone is at forensic now.

11    Q.   And as far as you know, have you produced

12 the texts that were on your phone that were germane

13 to this case?

14    A.   The last time we did it, I don't know that

15 we found but maybe two text messages that related to

16 the case.

17    Q.   In May of 2022, Ms. Nokes asked you and you

18 acknowledged that you first retained lawyers in

19 connection with the upcoming release of the report,

20 correct?

21    A.   Right.  Yes, sir.

22    Q.   And that was not Mr. MacGill's firm, that

23 was a different firm.  Is that correct?

24    A.   Correct.  Yes, sir.

25    Q.   At that time, were you made aware of the

1    need to preserve any texts or emails that related in

2    any way to the claims that you brought?

3         A.    To the claim.  Yes.  And I believe my wife

4    has all of those.

5         Q.    And she does?

6         A.    Yes.

7         Q.    And when you say your wife has them, how

8    does she get them?

9         A.    I forward them to her.

10        Q.    That's emails.  What about texts?

11        A.    I think I have only had about two texts,

12   and they have been produced.

13        Q.    And so you are saying that since May of

14   2022, you believe there are only two responsive --

15   and when I say "responsive," that's a legal word --

16   germane or relevant texts that relate to this case

17   and you've produced them both?

18        A.    And if there are others, they will be

19   produced soon.

20        Q.    Well, I understand that.  But my question

21   is currently, as far as you know, you have only

22   produced, you say, two.  Whether more get produced,

23   you have only produced approximately two so far?

24        A.    And, again, I want clarity.  I mean, like I

25   found an old text from ███████.  So is that what you

1    are referring to?  I want to make sure I follow your

2    questioning.

3        Q.   Yes.  I am just trying to find out what

4    efforts you made to retain responsive or relevant

5    texts and emails in this case, just to make sure, as

6    your lawyer has claimed that we have less than

7    perfect in our document preservation and productive,

8    I'm trying to see if you have been less than perfect

9    in your document retention.  So I'm just trying to

10   find out what efforts you have made.

11       A.   Again, for clarity sake, you are saying if

12   I get a text like, say, from my lawyer or are you

13   saying I get a text from a friend saying, How is your

14   case going?

15       Q.   I'm looking for anything other than lawyer

16   communications.  And I just want to know what you

17   have done with them.  I think I have your answer.

18   You said there are only a couple of texts and you

19   have produced those?

20       A.   Yes, correct.

21       Q.   But you said you still have the policy of

22   deleting texts that you have had throughout?

23       A.   Yes.

24       Q.   So let me now show you a couple of letters

25   and make sure we can get some clarity here.

MAGNA
LEGAL SERVICES

```
 1        A.    Okay.

 2              (Defendants' Exhibit 18, Letter to Bundren

 3        from MacGill, 12/14/23, marked for

 4        identification.)

 5              MR. KLEIN:  I only have one for your team,

 6        sorry.  Actually, I lied.  I have two for your

 7        team.

 8        Q.    (By Mr. Klein) Mr. Hunt, I have just handed

 9   you a letter that's been marked Exhibit 18.  And just

10   for the record, it's a letter on MacGill PC

11   letterhead dated December 14th, 2023 addressed to

12   Brandon Bundren at the Bradley firm.  I'm only going

13   to ask you about one portion of this letter.

14        A.    Okay.

15        Q.    I'm just curious.  Do you remember seeing

16   this letter --

17        A.    I do.

18        Q.    -- before it was sent?

19        A.    Yes, sir.

20        Q.    If you can turn to the last page of the

21   letter where Mr. MacGill's signature is on.  And that

22   last dash that says:  Scope of collection.  Do you

23   see where I'm reading?

24        A.    Yes, sir.

25        Q.    It says, Plaintiff has undertaken a
```

1   reasonable search for responsive documents.  As a

2   general practice, prior to the filing of this action,

3   Plaintiff did not retain emails and text messages.

4          Do you see where I have read?

5       A.   Yes, sir.

6       Q.   And I think I have asked you this before,

7   but that is an accurate statement?

8       A.   Yes, sir.

9       Q.   And, again, that's for both personal and

10  business emails and texts, that was your general

11  practice?

12      A.   Unless it's something that we felt we

13  needed to file and I gave it to Janet.  To go back,

14  for clarity, I don't even know how to file on a

15  computer.  I am not IT savvy, period.  So if I

16  receive an email and you were to say, Save that, I

17  would think:  How?  So I would send it to Janet.  She

18  would not only save it, but she would put it in a

19  file.

20      Q.   I understand that.  But with texts, you are

21  certainly --

22      A.   Oh, with texts, yeah.

23      Q.   Let's make sure we don't speak over each

24  other.  With texts, you are certainly tech savvy

25  enough --

1    A.    I am.

2    Q.    -- to delete a text?

3    A.    Correct.

4    Q.    Now, if I can show you now another letter,

5    which we will mark as Exhibit 19.

6          (Defendants' Exhibit 19, Letter to Jacobson

7          and Mintz from MacGill, 1/15/24, marked for

8          identification.)

9    Q.    (By Mr. Klein) This is a letter marked as

10   Defendants' Exhibit 19.  It's a letter on MacGill PC

11   letterhead, dated January 15th, 2024, addressed to

12   John Jacobson and Steven Mintz and Terrence

13   McCormick.  Have you seen this letter before,

14   Mr. Hunt?

15   A.    Yes, I have seen this letter.

16   Q.    Again, I'm going to turn right to that last

17   page on the last bullet point.

18   A.    Okay.

19   Q.    On Page 3 that says, "Text Messages."  Do

20   you see where I'm reading?

21   A.    I do, yes, sir.

22   Q.    As general practice prior to the filing of

23   this action, Plaintiff did not retain email -- emails

24   and text messages.  Do you see where I have read?

25   A.    Yes, sir.

MAGNA
LEGAL SERVICES

1      Q.    That sounds similar to the last letter.

2   That's an accurate statement as of January 15, 2024?

3      A.    Yes, sir.

4      Q.    We understand -- well, actually, I'm going

5   to back up for a second.  You say that's an accurate

6   statement, but it sounds like you do retain emails.

7   You just send them to Janet?

8      A.    My wife, yes.

9      Q.    So in your mind, sending them to your wife,

10  is that not retaining them?

11     A.    That would be retaining.

12     Q.    The next sentence says, We understand the

13  plaintiff does not have his same phone that he used

14  in 2010 when the encounter occurred.  You just

15  clarified that you got a new phone soon after that,

16  correct?

17     A.    And new number, yes.

18     Q.    Exactly.

19           Next sentence, Moreover, while Plaintiff

20  had communications with those identified in his

21  response to Interrogatory Number 11 -- I will show

22  you that shortly -- we understand that none of these

23  were substantive conversations.  Do you see where I

24  read?

25     A.    Yes, sir.

1    Q.   Who determined that these communications

2  were not substantive?  Did you?

3    A.   I guess my attorney.

4    Q.   Yes.  I don't want to know about

5  conversations you had with your attorney.

6    A.   Right.

7    Q.   I just wanted to know if you made that

8  decision or if someone other than you made that

9  decision?  And if so, who?

10    A.   I would say my attorneys.

11    Q.   You did not make that decision?

12    A.   It may have been asked about some.  I can't

13  think of any in particular.  But.

14    Q.   So that last sentence that I read, ending

15  with, We understand that none of these were

16  substantive conversations, does that mean that you

17  have certain communications but did not produce them?

18  Or did you delete them?  Which one?

19    A.   I don't remember having any that had

20  anything to do with the case.

21    Q.   But I still just want to understand just

22  procedurally whether that means you retained them and

23  just felt they were not responsive or you deleted

24  them and would not know if they were not responsive?

25    A.   If I deleted them, I would say it's because

1   they are not responsive.

2       Q.   But I don't want to know if you deleted

3   them.  I wanted to know what you actually did.  Did

4   you delete them?

5       A.   I don't know what you are talking about.

6       Q.   Well, neither do I.  That's why I'm asking

7   you the questions.  They're your text message?

8       A.   General- --

9           MR. MacGILL:  Nobody knows what you are

10          talking about.  Let's try again and see if we

11          can get some understanding of what you're

12          talking about.

13          MR. KLEIN:  No, I think he does.  He's just

14          answering as best he can.

15      A.   Yes.

16      Q.   (By Mr. Klein) Which is inconsistent with

17  some of these letters.

18          Do you have access to the emails that you

19  forward to your wife?

20      A.   Yes.

21      Q.   And how do you have that access?

22      A.   She files everything.  She's a good

23  bookkeeping person, so she don't throw anything away.

24      Q.   When you say "file," are you using that

25  term meaning that electronically, she puts them in a

1    folder on a desktop or on your computer?

2         A.    I think both.  I think that, and I think

3    then she makes prints -- copies of them.  But when I

4    say the things I forward to her, it's really stuff

5    that your firms are sending me.  We are not getting

6    rid of any of that.  That's the only communication

7    I'm having about the case that I feel is something

8    substantive to keep.

9              So when something like this comes, I will

10   assure you, she's got that.  And that's where I was

11   asking for clarity:  Is this what you are talking

12   about?  Something like this?  Or -- because I'm not

13   having communication with anyone in detail about my

14   case.

15        Q.    I'm just trying to understand your

16   retention policy of texts and emails.

17        A.    Okay.

18        Q.    And we are almost done.  I would just note

19   that in those emails that you still have access to,

20   if there are any that are responsive to outstanding

21   document requests, there is a continuing obligation

22   to produce.  And I would ask that you look and

23   produce them if they are responsive.

24        A.    And you will have my wife here tomorrow, so

25   she will be able to answer that with greater clarity

1    than me.

2         Q.   And we will ask her, but I wanted to make

3    that record clear with you as well.

4         A.   Got it.  Yes, sir.  Got it.

5         Q.   Thank you.

6              (Defendants' Exhibit 20, Plaintiff's

7              Response to Guidepost Solutions LLC's First Set

8              of Interrogatories, marked for identification.)

9         Q.   (By Mr. Klein) Mr. Hunt, I've handed you

10   what's been marked as Exhibit 20.  And for the

11   record, it's Plaintiff's response to Guidepost

12   Solutions, LLC's first set of interrogatories.  And I

13   would ask you to look through these and when you are

14   done, just let me know if this document is familiar

15   to you?

16        A.   Yes, this is.  I have read this.

17        Q.   Thank you.  If you can turn to Page 14 of

18   this document.  On top, it says, Verification of

19   responses to interrogatories only.  Let me know when

20   you are at that page.

21        A.   I have every page but 14.

22        Q.   Well, I think it's not numbered 14.  It's

23   the one right before 15.

24        A.   Oh, okay.  Right in the back there.

25   Verification --

MAGNA
LEGAL SERVICES