# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                  NASHVILLE DIVISION
 3   - - - - - - - - - - - - - - - :
     JOHNNY M. HUNT,                 :
 4                                   :
             Plaintiff,             :   CASE NO.
 5                                   :
             vs.                     :   3:23-cv-0000243
 6                                   :
     SOUTHERN BAPTIST CONVENTION,   :
 7   GUIDEPOST SOLUTIONS LLC and    :
     EXECUTIVE COMMITTEE OF THE     :
 8   SOUTHERN BAPTIST CONVENTION    :
                                     :
 9           Defendant.             :
                                     :
10   - - - - - - - - - - - - - - - :
11            DEPOSITION OF RUSSELL HOLSKE
12   DATE:               February 1, 2024
13   TIME:               9:37 a.m.
14   LOCATION:           Veritext Legal Solutions
                         1250 I Street, NW
15                       Suite 901
                         Washington, DC 20005
16
17
18   REPORTED BY:        Constance H. Rhodes
                         Reporter, Notary
19
20              Veritext Legal Solutions
                1250 Eye Street, Northwest
21               Washington, DC 20005
22
```

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 2 of 441 PageID #: 3614

```
 1              A P P E A R A N C E S
 2   On behalf of Plaintiff:
 3        ROBERT D. MACGILL, ESQUIRE
          PATRICK J. SANDERS, ESQUIRE
 4        MacGill, PC
          156 East Market Street
 5        Suite 1200
          Indianapolis, Indiana 46204
 6        Robert.macgill@macgilllaw.com
 7   On behalf of Russell Holske:
 8        SCOTT A. KLEIN, ESQUIRE
          ALEX J. OTCHY, ESQUIRE
 9        Mintz & Gold LLP
          600 Third Avenue
10        New York New York 10016
          Klein@mintzandgold.com
11
12   On behalf of the Southern Baptist Convention:
13        MATT PIETSCH, ESQUIRE (via Zoom)
          Taylor, Pigue, Marchetti & Blair, PLLC
14        2908 Poston Avenue
          Nashville, Tennessee 37203
15        Matt@tpmblaw.com
16   On behalf of the Executive Committee:
17        GRETCHEN M. CALLAS, ESQUIRE
          JacksonKelly, PLLC
18        1600 Laidley Tower
          Charleston, West Virginia 25433
19        Gcallas@jacksonkelly.com
20        R. BRANDON BUNDREN, ESQUIRE
          Bradley Arant Boult Cummings, LLP
21        1221 Broadway, Suite 2400
          Nashville, Tennessee 37203
22
```

```
1    ALSO PRESENT (Via Zoom)

2         Scott Murray

          Kathy Klein

3         Ella Merritt

          Jon Anderson

4         Johnny Hunt

5

6                    *  *  *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

1                    C O N T E N T S
2     EXAMINATION BY:                              PAGE

3          Counsel for Plaintiff                    5
4          Counsel for Executive Committee        351
5
6     HOLSKE DEPOSITION EXHIBITS:*
7     1    Responses and Objections of Defendant
           Guideport Solutions, LLC to Plaintiff
8          Johnny Hunt's First Interrogatories      10
      2    Engagement Letter                        16
9     3    Text Exchange 2/1/22                      73
      4    Text Exchange 4/29/22                     74
10    5    REDACTED        email to Holske re:
           REDACTED for REDACTED                     85
11    6    Text Exchange 2/11/22                    120
      7    REDACTED                                 161
12    8    Report of Independent Investigation
           5/15/22                                  162
13    9    REDACTED                                 163
      10   Holske email 4/1/22 re: Hunt Discussion  165
14    11   Draft Report of Investigation 4/6/22     177
      12   Metadata                                 178
15    13   Christina Bischoff email 5/5/22 re:
           SBC Leadership Issues                    197
16    14   Text Exchange                            213
      15   Holske 5/9/22 email re: proposed
17         language for Hunt                        231
      16   Proposed Language for Hunt REDACTED
18         Incident                                 232
      17   Excerpt paragraph from Incident          233
19    18   Text Exchange 5/12/22                    238
      19   Text Exchange  5/13/22                   249
20    20   Notes from Interview of REDACTED         326
      21   Holske 4/12/22 email     REDACTED        341
21    22   Text Exchange 7/20/22                    345
22    (* Exhibits attached to transcript.)

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3.23-cv-00243   Document 219-5   Filed 07/03/24   Page 5 of 441 PageID #: 3617

1    P R O C E E D I N G S

2            VIDEOGRAPHER:  Good morning.  Today's date

3    is February 1, 2024.  And this is the video-recorded

4    deposition of Dr. -- pardon -- Mr. Russell Holske,

5    Jr., in the matter of Johnny M. Hunt versus Southern

6    Baptist Convention.  We are in Washington, D.C., and

7    we're now on the record.  The time is 9:37.

8            Court reporter, please swear in the

9    witness and you can start.

10   WHEREUPON,

11            RUSSELL HOLSKE, JR

12   called as a witness, and having been first duly

13   sworn, was examined and testified as follows:

14            EXAMINATION BY COUNSEL FOR PLAINTIFF

15   BY MR. MACGILL:

16       Q    Sir, good morning.  Would you state your

17   name for the record, please.

18       A    Russell Holske.

19       Q    And how do you pronounce your last name?

20       A    Holske.

21       Q    Holstein.

22       A    Holske.

1      Q     Holske?

2      A     H-O-L-S-K-E.

3      Q     Thank you.  So Mr. Holske, you are

4  appearing pursuant to notice of deposition in this

5  case?

6      A     Yes.

7      Q     All right.  And you understand that this

8  is a lawsuit brought by Pastor Johnny M. Hunt

9  against Southern Baptist Convention, Guidepost

10  Solutions, LLC, and the Executive Committee of the

11  Southern Baptist Convention.

12      A     Yes.

13      Q     Tell us about your educational

14  background, if you would, sir.

15      A     I received a bachelor of science degree

16  from Northeastern University in Boston,

17  Massachusetts.  I earned a master of business

18  administration from St. Leo University in Florida.

19      Q     What year was your bachelor's awarded?

20      A     1989.

21      Q     And when was your MBA received?

22      A     2013.

1       Q       How are you employed, sir.

2       A       I am a senior managing director for

3  Guidepost Solutions, LLC, based out of Washington,

4  D.C.

5       Q       How long have you been in that role,

6  sir?

7       A       Since -- I've been in that role since

8  August 2nd, 2021.

9       Q       And were you employed prior to

10  Guidepost?  How long have you been employed by

11  Guidepost?

12      A       That would be two years and six months

13  to the day.

14      Q       So you began your employment with

15  Guidepost on August 2nd, 3021?

16      A       Correct.

17      Q       And where were you employed prior to

18  that, sir?

19      A       Estee Lauder Asia-Pacific.

20      Q       And what did you do for Estee Lauder?

21      A       I was the regional director of

22  investigations, security, and trademark protection

1  for Estee Lauder based in Hong Kong, responsible

2  for the Asia-Pacific region, which included 13

3  country offices.

4      Q     How long did you have that role, sir?

5      A     I was employed by Estee Lauder from

6  November of 2019 until July 2021.

7      Q     Where were you employed prior to Estee

8  Lauder?

9      A     I was employed by the US Department of

10 Justice Drug Enforcement Administration.

11     Q     And what did you do for the drug

12 enforcement administration.

13     A     At the time of my retirement I was the

14 regional director for the Far East region based on

15 Bangkok, Thailand, responsible for the country

16 offices from Beijing south to Wellington, New

17 Zealand.

18     Q     And what was your respons- -- how many

19 years were you employed by the DEA, sir?

20     A     I was employed by the DEA for 32 years.

21     Q     When did you begin your role with the

22 DEA?

1    A    I began as a investigative aide in 1987

2    while attending Northeastern University.

3    Q    So did you -- you were employed for a

4    couple years prior to your graduation at

5    Northeastern University; is that right?

6    A    Correct.  I attended the DEA training at

7    the FBI Academy from September through December,

8    1989, at which time I became -- I was awarded the

9    position of special agent, federal investigator.

10   Q    Beginning in the year 1989?

11   A    Correct.

12   Q    Now, sir, with respect to the matters

13   involved in this case, did you serve as the lead

14   investigator for the portion of a report issued by

15   Guidepost that is related to the plaintiff, Pastor

16   Johnny Hunt?

17   A    I wouldn't term my role as lead

18   investigator, but I was one of the primary

19   investigators.

20         MR. MACGILL:  All right.  So let me hand

21   you some interrogatory answers.

22         If I could take a look at tab five.

1              (HOLSKE Exhibit Number 1 was marked for

2              identification.)

3    BY MR. MACGILL:

4        Q    Sir, I'm going to hand you what I've

5    marked as Exhibit 1.  Have you seen these

6    interrogatory answers before?

7              MR. KLEIN:  Feel free to look at the

8    entire document in order to answer that question.

9    BY MR. MACGILL:

10       Q    And sir, I'm referring to page 2 of

11   responses to interrogatory one.  Do you see your

12   name referenced there, Russell Holske, Jr.?

13       A    I do.

14       Q    And your role is described here as the

15   lead investigator in the report related to the

16   plaintiff.

17             Do you see that?

18       A    Yes.

19       Q    Is that a fair statement, sir, in your

20   mind?

21       A    Now that I'm reading this report, I see

22   that my partner, Samantha Kilpatrick, is also

1   named as a lead investigator.  I'm comfortable

2   with that as.

3       Q    So is it fair to say that based on your

4   work in this case, you yourself served as a lead

5   investigator for the portion of the report related

6   to Pastor Johnny Hunt?

7           MR. KLEIN:  Objection.  Asked and

8   answered.  You can answer.

9           THE WITNESS:  A lead investigator.  Not

10  the investigator.

11  BY MR. MACGILL:

12      Q    So a lead is a fair description?

13      A    Correct.

14      Q    And is it also a fair description, as

15  far as you were concerned, that Samantha

16  Kilpatrick was also a lead investigator for a

17  portion of the report related to the plaintiff,

18  Pastor Johnny Hunt?

19      A    Yes.

20      Q    And did you -- is it fair for the

21  company or for the person executing these

22  interrogatories under oath, that is Anthony

1    Collura, to represent that you, sir, for your part

2    drafted the portion of the report related to

3    Pastor Johnny Hunt?

4         A    I am one of the draftees, yes.

5         Q    And, you know, so the words are also

6    fair that the Samantha Kilpatrick was described as

7    having drafted a portion of the report related to

8    Pastor Johnny Hunt as well?

9         A    Yes.

10        Q    All right.  So it was the two of you,

11   sir, was it not, that drafted the portion of the

12   Guidepost report related to the plaintiff in this

13   case pastor, Pastor Johnny Hunt?

14             MR. KLEIN:  Objection as to form, but you

15   can answer.

16             THE WITNESS:  Yes.

17   BY MR. MACGILL:

18        Q    Yes.  Okay.  Now, sir --

19             MR. KLEIN:  I didn't mean to interrupt

20   you.  I just noticed something, Rob.  I'm going

21   to -- are these exhibits going on the Zoom screen,

22   do we know?  And I ask for one reason.  Part of the

1  document you just showed -- and you did not discuss

2  it with the client, so it's totally fine -- does

3  reveal some names of witnesses and survivors -- or

4  witnesses I should say.  So if we're going to use

5  this document as part of the exhibits, I would just

6  ask -- and I can work with Patrick -- just to make

7  sure those names, just two or three, we can discuss

8  off the record are just redacted if this is going to

9  be shared as part of the exhibits.  That's all I

10  would ask.

11         MR. MACGILL:  Not at this time.  We will

12  not share these exhibits at this time on the screen.

13         MR. KLEIN:  Thank you.

14         MR. MACGILL:  Unless we -- we will let you

15  know in advance if we're going to.

16         MR. KLEIN:  I appreciate that.  Thank you.

17  BY MR. MACGILL:

18     Q    So sir, just to round out -- strike

19  that.

20         I want to make sure we understand the

21  metes and bounds, so to speak, of your involvements

22  in this matter.

1          Is it also fair to say that you, for your

2     part, you were involved in the decision to include

3          REDACTED      allegations against Pastor Johnny

4     Hunt and the Guidepost report.

5          A    I'm sorry.  Could you repeat that

6     question?

7          Q    Is it also true, sir, that you yourself

8     were involved in the decision to include REDACTED

              allegations against Pastor Johnny Hunt in

10    the Guidepost report?

11         A    I provided my input.

12         Q    Is it fair to say you were involved in

13    the decision, sir?  To repeat:  You were involved

14    In the decision?

15         A    Involved in the decision.

16         Q    Yes.  And the decision that you were

17    involved in, based on your work in this case, was

18    to include      REDACTED      allegations against

19    Pastor Johnny Hunt in the report from Guidepost?

20         A    That's correct.

21         Q    Okay.  And again, if we look at the

22    interrogatories, what you testified is consistent

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 15 of 441 PageID #: 3627

1   with what's in those interrogatory answers, right?

2       A    I haven't read this entire document.

3       Q    Okay.  Not seen Exhibit 1 before; is

4   that correct?

5       A    I don't recall seeing this exhibit.

6       Q    Now the person who executed these

7   interrogatories is a person by the name of Anthony

8   Collura.  Do you know Mr. Collura?

9       A    Yes, I do.

10      Q    Is he the chief operating officer of

11  Guidepost at the present time?

12      A    Yes.

13      Q    Was he the chief operating officer at

14  Guidepost at the time that the Guidepost report

15  was published?

16      A    Yes.

17      Q    Sir, I'm going to ask you some basic

18  background questions pertaining to the engagement

19  of Guidepost.  How were you involved in the

20  engagement with -- between Guidepost and the SBC?

21          MR. KLEIN:  Objection as to form.  You can

22  answer.

1        THE WITNESS:  I'm not sure I understand

2   your question.  I'm sorry.

3   BY MR. MACGILL:

4        Q    Do you understand that there was an

5   engagement letter executed between Guidepost and

6   the SBC?

7        A    Yes.  But I was not involved in that.

8        Q    Okay.  When did you first become

9   involved in this matter?

10        A    Once the engagement was secured, I guess

11   you could say, secured would be the right word --

12   agreed upon, or signed, I was asked to be a member

13   of the team.

14        Q    At some point did you see with your own

15   eyes the engagement letter?

16        A    I don't remember seeing the engagement

17   letter.

18        Q    Okay.  Let me ask -- I'm going to hand

19   you the engagement letter and we'll make this

20   Exhibit 2.

21             (HOLSKE Exhibit Number 2 was marked for

22             identification.)

1   BY MR. MACGILL:

2        Q    And my first question, sir, is have you

3   seen the engagement letter before?

4        A    No.

5        Q    How did you know -- strike that.

6             How did you come to understand what you

7   were to do in connection with the investigation in

8   this matter?

9        A    We at Guidepost had meetings among the

10  team where we were provided an explanation as to

11  where our role was.  And the portions on page 5 of

12  the document you handed me, under section 3.1,

13  specifically and as directed by the SBC Motion,

14  Guidepost will investigate.  There are five

15  bullets and then a paragraph regarding an audit of

16  procedures and actions of the credentials

17  committee.  Those were clearly explained by the

18  team -- to the team.

19       Q    By whom, sir?

20       A    I don't remember.

21       Q    Were you in a roomful of people when

22  this was explained or was this a one-off meeting

1    with you individually?

2         A    No.   It would have been a group meeting.

3    I don't recall the date.  I don't recall who was

4    present.  But I do remember at some point in time

5    one of the principals for the investigation would

6    have talked about these elements of our role.

7         Q    Who were the principals involved in the

8    investigation?

9         A    Krista Tongring; our CEO Julie

10   Myers-Wood.  Those two.

11        Q    What was Krista Tongring's role in this?

12            MR. KLEIN:  Objection as to form.  You can

13   answer.

14            THE WITNESS:  I don't know if there's a

15   term.  She would be the project manager for lack of

16   a better term.

17   BY MR. MACGILL:

18        Q    When you met with her did you understand

19   essentially she was going to function as the

20   project manager for this investigation?

21        A    I did.

22        Q    All right.  And who did you report to in

1   connection with your work at Guidepost on this

2   report that is the subject of this lawsuit?

3        A    Krista Tongring and, at times, Julie

4   Wood.

5        Q    So your direct report was Krista

6   Tongring?

7        A    Yes.

8        Q    And is she your boss generally speaking?

9        A    No.  And that's why I pause --

10       Q    Who is your boss generally speaking?

11            MR. KLEIN:  I just want to make sure he

12   finished the answer because you ask the question,

13   Robert.  You were still answering.

14            THE WITNESS:  I don't report to Krista.

15   In these engagements when someone is deemed the

16   project manager, that's who you report to.  But it's

17   engagement by engagement.

18   BY MR. MACGILL:

19       Q    I see.  So generally speaking, is it

20   fair to say that you report to the project manager

21   in a particular investigation?

22       A    That would be fair to say.

1          Q     Okay.  Now, just to get a better

2     understanding of what you understood your job was

3     to be as one of the lead investigators, did you

4     understand that your job was going to include the

5     five bullet points on the second page of this

6     engagement letter, Exhibit 2?

7          A     Yes.

8          Q     And the scope of the engagement was

9     described to you by the spoken word; is that

10    right?

11         A     Yes.

12         Q     You were not provided this written

13    document, Exhibit 2?

14         A     I was provided these bullets at a

15    certain time, a date I don't recall, on a template

16    for all interviews.  So for each and every

17    interview there was a template, and it included

18    these bullet points so that we could explain to

19    each witness the scope of our role at Guidepost

20    Solutions in support of this engagement.

21         Q     Okay.  Now what else was on that

22    template for the interviews in addition to these

1    five bullet points?

2         A    The witness's -- the witness's ability

3    to request anonymity.  That's -- that's -- that's

4    one of the elements I can remember.  All questions

5    about whether they -- the witness is a member of a

6    Southern Baptist Church, a sentence along the

7    lines of asking them if they have any relevant

8    information to share related to those five

9    bullets.

10        Q    Who prepared the template?

11        A    I don't know.

12        Q    You did not prepare the template?

13        A    I did not.

14        Q    What did you do to prepare for giving

15   testimony to the court and jury today?

16        A    I prepared reports related to this

17   matter.

18        Q    Any other documents that you reviewed?

19        A    Other than things directly related to

20   this matter, no.

21        Q    When you say what other things related

22   to this matter, other than Guidepost?

1      A      I reviewed emails, investigator
2   interview reports, text messages.  I think that
3   encompasses everything that I reviewed.
4      Q      Which -- which text messages did you
5   review?
6      A      My own.
7      Q      And they were text messages that you
8   sent to whom?
9      A      Text messages between myself and members
10  of the team such as Samantha Kilpatrick, Krista
11  Tongring, Julie Myers-Wood, and witnesses.
12     Q      And witnesses?
13     A      Such as      REDACTED      .
14     Q      Okay.  What's the volume of text
15  messages approximately you reviewed in preparation
16  to give your testimony?
17     A      I couldn't put a number on it.
18     Q      Do you know your -- were the text
19  messages, did they have Bates numbers on them?
20     A      Bates number?  What do you mean?
21     Q      Do you understand what Bates numbers
22  are?

 1      A    I don't.  That's why I asked.

 2      Q    So in the litigation process, and

 3  perhaps this was the case at the DOJ or the DEA,

 4  when documents are produced in a proceeding there

 5  are Bates numbers which are legend -- they are

 6  numbers that are put as a legend on a document.

 7      A    I'm not aware of that.

 8      Q    Not aware of that.  Okay.  So -- but in

 9  any event, how long did it take you -- how much

10  time did you spend reviewing documents to prepare

11  to give testimony today?

12      A    Several hours.

13      Q    And when -- during what period of time

14  did you make that review?

15      A    Over the last week.

16      Q    Okay.  Now, did you meet with counsel as

17  well?

18      A    I did.

19      Q    When?

20      A    Last Thursday.  Give me just a moment.

21  Tuesday of this week.

22      Q    Who did you meet with on Thursday?

1      A     Mr. Klein and Alex Otchy.

2      Q     Okay.  The two gentleman here in the

3  room with us?

4      A     Yes.  And also, I'm not sure who the

5  third gentleman was last Thursday, but a member of

6  Mintz and Gold.  And then on Tuesday, Mr. Steven

7  Mintz participated.

8      Q     With Mr. Klein?

9      A     Mr. Klein and Mr. Otchy.

10      Q     Anyone else on the meeting Tuesday?

11      A     No.

12      Q     How long was the meeting on the Tuesday?

13      A     Approximately four hours.

14      Q     And where was the meeting?

15      A     Online.

16      Q     Was the meeting Tuesday of last week --

17  I'm sorry -- Thursday of last week online also?

18      A     Yes.

19      Q     And when did you first meet in person

20  with the lawyers that are in the room today?

21      A     This morning about 8:30.

22      Q     Did you review any documents this

1    morning?

2        A    I did not.

3        Q    Did you review the template that you

4    utilized in connection with the interviews as a

5    part of your preparation?

6        A    It would have been embedded into an

7    interview that I would have reviewed.  So yes a

8    blank template, no, but it would have been

9    embedded into one of the templates, at least one

10   of the interview templates.

11       Q    I want to ask you some questions about

12   the engagement and the work that was done.  You

13   understood that Guidepost Solutions, LLC, had been

14   engaged by the Southern Baptist Convention through

15   the leadership of the task force that had been

16   assembled; is that right?

17       A    Could you say that again.

18       Q    Who did you understand you were working

19   for in connection with this case?

20       A    Our client was the Southern Baptist

21   Convention.

22       Q    And did you report to anybody

1    specifically at the Southern Baptist Convention?

2        A    No.

3        Q    Others in your company did?

4            MR. KLEIN:  Objection as to form.  You can

5    answer.

6            THE WITNESS:  I don't know.

7    BY MR. MACGILL:

8        Q    So you weren't involved in the

9    communications about your work with SBC?

10       A    None whatsoever.

11       Q    The engagement letter says our client --

12   strike that.

13           Our client in this matter will be the task

14   force of the SBC.  Is that consistent with your

15   understanding?

16           MR. KLEIN:  Can you just -- I'm sorry, can

17   you just point to the paragraph number you are

18   referring, Rob, so I can follow along.

19           MR. MACGILL:  It's paragraph 2.1.

20           MR. KLEIN:  Thank you.

21           THE WITNESS:  I'm sorry.  What was the

22   question?

1    BY MR. MACGILL:

2        Q    It says in Section 2.1, our client in

3    this matter will be the task force of the SBC.  Is

4    that your understanding?

5        A    Now that I'm reading it.

6        Q    But you didn't have that understanding

7    coming into this matter today?

8        A    Directly, no?

9        Q    Did you understand your company was

10   going to take guidance from the SBC in connection

11   with your work?

12           MR. KLEIN:  Objection as to form.  You can

13   answer.

14           THE WITNESS:  I took guidance from the

15   project manager.

16   BY MR. MACGILL:

17       Q    You didn't have any understanding of how

18   the SBC would, if at all, guide the work of

19   Guidepost; is that fair?

20       A    Correct.

21       Q    Who was the -- who is the president of

22   SBC at the time you did your work?

1     A    I'm not sure.

2     Q    Are you aware of the fees charged by

3  your company in connection with this work?

4     A    I am not.

5     Q    Do you have an estimate of what your

6  company Guidepost charged for its work?

7     A    I do not.

8     Q    Not even a general estimate?

9     A    I'm sorry.  I do not.

10     Q    Was it millions of dollars?

11     MR. KLEIN:  Objection.  Asked and

12  answered.  You can answer.

13     THE WITNESS:  I don't know.

14  BY MR. MACGILL:

15     Q    Don't know?  So is it fair to say that

16  you operated in your job with no orientation to

17  the finances of the engagements of your company;

18  is that fair?

19     MR. KLEIN:  Objection as to form.

20     THE WITNESS:  That's fair.

21  BY MR. MACGILL:

22     Q    Okay.  You just do investigations,

1   right?

2        A    Correct.

3        Q    Okay.  Now, with respect to this work,

4   was this -- could you tell us how many hours you

5   spent in connection with your work in this case?

6        A    I couldn't.

7        Q    Did you understand that the Guidepost

8   engagement was to provide an independent

9   investigation?

10       A    Yes.

11       Q    Tell the jury here what you mean when

12  you say that your company engaged in doing an

13  independent investigation.

14            MR. KLEIN:  Objection.  I would just note

15  and I'm sure it's high habit from you, Rob, but your

16  said the jury.  I just want -- and I'm only saying

17  that I want the witness to know there's no jury

18  present today.  And so I just wanted to note that.

19  BY MR. MACGILL:

20       Q    Yeah.  Let me make sure you understand.

21  We will play your testimony in the court and jury

22  in this case, so I want you to understand that

1   your testimony is just as if you were in the

2   courtroom today.  Do you understand that?

3        A    Yes.

4        Q    And do you understand that we have the

5   right to play this videotape of your deposition to

6   a court and jury to the extent the judge

7   authorizes it.  Do you understand that?

8        A    Yes.

9        Q    And you understand you gave an oath at

10  the beginning of this proceeding, right?

11       A    I understood I took an oath, yes.

12       Q    And you understood that oath was just as

13  important to you in your truthfulness as if you

14  were the courtroom live, right?

15       A    Yes.

16       Q    Okay.  So when I make reference to --

17  when I'm asking you about explaining to the court

18  and jury, I want you to understand, it's with the

19  intention we will be playing this for the court

20  and jury.  Fair enough.

21       A    Yes.

22       Q    Now, let's just look a little bit at the

1    details here.  Strike that.

2              I'd like for you to explain in your own

3    words to this court and to this jury what you meant

4    when you said that your company, Guidepost, was

5    going to conduct an "independent" investigation?

6         A    I didn't make that statement.

7         Q    You agreed with me, sir, that your

8    company was to conduct an independent

9    investigation, right?

10        A    I didn't get a chance to answer your

11   question.

12        Q    All right.  Did your -- okay.  Let me

13   ask it.  Did your company conduct an independent,

14   underscore independent, investigation or not?

15        A    Yes.

16        Q    Okay.  Now, when you agreed with my

17   question that your company did in fact conduct an

18   independent investigation, what did you mean by

19   the term independent?

20        A    Without influence from a third party.

21        Q    Okay.  Let's talk a little bit about

22   without influence from a third party.  So

1    third-party influence would include the SBC,

2    right?

3         A    Correct.

4         Q    It would include any influence

5    especially or in particular by a particular

6    witness, right?

7         A    We -- it was discussed among our team

8    that our role was to gather facts and to come up

9    with a report that would be independent, and would

10   not be changed or altered by anybody else.  It

11   would be Guidepost Solutions' investigative

12   report.

13        Q    Sir.  What I'm going to do, I'm going to

14   ask the court reporter to read your answer back.

15   I'd like to listen to it, and I've got a follow-up

16   question.  Okay?

17             (Whereupon, the Reporter read the record

18             as requested.)

19   BY MR. MACGILL:

20        Q    You heard that answer?

21        A    I'm sorry?

22        Q    Did you hear the court reporter?

1      A     I heard what she read.

2      Q     And among -- she read a portion of your

3    testimony that this was going to be an independent

4    report that would be "not be changed or altered by

5    anyone."  You heard that portion of your answer?

6      A     Correct.

7      Q     Now, relative to not being changed or

8    altered by anyone -- that is, your report -- is it

9    fair to say that from the Guidepost perspective,

10   to be independent that your report could not be

11   changed by any particular witness, right?

12     A     Witnesses provide the facts to us.  We

13   write the report.  So it does take into account

14   witness input.

15     Q     But not influenced in particular or

16   strongly by any particular witness's preferences

17   right?

18           MR. KLEIN:  Objection as to form you can

19   answer.

20   BY MR. MACGILL:

21     Q     Let me ask a better question.

22     A     We make the ultimate decision at

1   Guidepost on what goes into the report.

2        Q    Right.  And it's also fair to say and

3   you'll confirm to the jury now, sir, to be

4   independent you understood at all times that

5   Guidepost was not to be influenced in particular

6   by the preferences of any witness.  Fair

7   statement?

8        A    Factual input received from witnesses

9   would be a part of what we reported.

10       Q    But to be independent Guidepost could

11  not be influenced by the preferences of any

12  particular witness in order to be independent.

13       A    A witness would not be able to determine

14  the ultimate end product of the report.

15       Q    But again, I just want to make sure.  I

16  just want to make sure you are going to able to

17  tell the jury right now under oath that

18  Guidepost agrees -- strike that.

19            I want you to be able to confirm as one of

20  the lead investigators that you aren't going to be

21  influenced by the preferences of any particular

22  witness.  Fair statement?

1          MR. KLEIN:  Objection.  Asked and

2     answered.  You can answer again.

3          THE WITNESS:  I'm sorry.  Could you repeat

4     that.

5     BY MR. MACGILL:

6     Q     Be happy to.  I'm going to ask the court

7     reporter to read it back and then let's see if you

8     can answer it.

9          (Whereupon, the Reporter read the record

10          as requested.)

11          Let me start over.  Sir, so I want to

12     make sure you can confirm to us now, you for your

13     part as a lead investigator, you are not going to

14     be influenced in your work by the preferences of

15     any one witness.  Is that fair?

16          MR. KLEIN:  Objection.  You can answer.

17          THE WITNESS:  I have a problem with the

18     word preferences because we sought review by a

19     survivor to make sure that survivor was comfortable

20     with the -- or was comfortable with the accuracy of

21     what her experience was.

22

1    BY MR. MACGILL:

2         Q    So you would be deferring to the

3    "survivor" preferences in your report; is that

4    right?

5              MR. KLEIN:  Objection as to form.  You can

6    answer.

7              THE WITNESS:  We sought to ensure complete

8    accuracy of what was going in the report by what the

9    survivor told us.

10   BY MR. MACGILL:

11        Q    But you were -- but did you in any

12   respect yield, so to speak, to the preferences of

13        REDACTED     ?

14             MR. KLEIN:  Objection as to form.  I

15   believe he's answered this two or three times.

16             THE WITNESS:  Ultimately, it was our

17   decision what went into that report.

18   BY MR. MACGILL:

19        Q    So to be independent you did not, at any

20   time, to the best of your knowledge as you sit

21   here today, not yield, so to speak, to the

22   preferences of      REDACTED      ?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 37 of 441 PageID #: 3649

1      MR. KLEIN:  Objection as to form.  It's

2  the fourth time you've asked it, Rob.  I'll let him

3  answer, of course, again, but then I think we're

4  going to have to move on.  But you can answer.

5      THE WITNESS:  Ultimately, Guidepost

6  Solution decided the content of the report.

7  BY MR. MACGILL:

8      Q    Okay.  I want to ask you about REDACT

9  REDACTED  Did you -- for your part, sir, as lead

10  investigator, did you agree to preferences

11  expressed by    REDACTED    in any way in connection

12  with the report?

13      MR. KLEIN:  Objection as to form.  You can

14  answer.

15      THE WITNESS:    REDACTED    provided

16  input as to -- as to what -- what was going to be

17  reported, but ultimately Guidepost Solutions decided

18  what went into that report.

19  BY MR. MACGILL:

20      Q    Sir, I'm going to use a phrase and I'm

21  going to ask you if you understand the phrase

22  because I'm going to ask you some questions about

1      it.  Do you understand in human interactions what

2      it means when you say that I have a arm's length

3      relationship with someone?  Do you understand that

4      generally?

5          A     Yes.

6          Q     Tell the court what you understand an

7      arm's length relationship to be.

8          A     A relationship with boundaries.

9          Q     In what sense?

10              MR. KLEIN:  I'm going to object as to

11      form.  It calls for a legal conclusion, but he can

12      answer.

13              THE WITNESS:  There are certain parts in a

14      relationship where there are boundaries that aren't

15      crossed I guess.

16      BY MR. MACGILL:

17          Q     All right.  And in your -- and in your

18      work as a lead investigator, what boundaries would

19      you not cross with a witness?

20          A     Allowing a witness to write the report

21      on behalf of Guidepost Solutions.

22          Q     Any others?

1    A    Asking a witness -- asking or providing
2  untruthful information that we accept as truth.
3    Q    Any other boundaries?
4    A    It's a very general question.  I'm
5  really not sure what else you are looking for.
6    Q    Well, in terms of arm's length
7  relationship, did you keep an arm's length
8  relationship with all the witnesses that you cited
9  in the Guidepost report?
10        MR. KLEIN:  Objection as to form.  You can
11  answer.
12        THE WITNESS:  Can you be more specific?
13  BY MR. MACGILL:
14    Q    Yes.  I want to use just arm's length
15  relationship in the way that you've described it.
16  Okay?  You've described it in your -- in your
17  understanding an arm's length relationship is a
18  relationship that has certain boundaries.  Do you
19  recall that testimony?
20    A    Yes.
21    Q    You've also confirmed that in connection
22  with your work that you wouldn't want -- one

1  boundary would be you wouldn't want the witness to

2  write the report, right?

3      A    Correct.

4      Q    Another boundary you wouldn't want the

5  witness to provide untrue statements, right?

6      A    Right.

7      Q    Would another boundary be that you don't

8  want the witness to provide bias and unsupported

9  allegations?

10      A    I wouldn't want that.  It wouldn't

11  impact what we ultimately decide to put in the

12  report.

13      Q    But would that be a boundary, that you

14  wouldn't want the witness to supply biased or

15  unsupported allegations?

16      A    Again, if there's bias in reporting by a

17  witness, it doesn't impact ultimately what goes

18  into the report.

19      Q    All right.  Now let's -- I want to ask

20  you generally.  How many witnesses did you

21  interview that were actually included in your

22  report?

1    MR. KLEIN:  Objection.  Are you talking

2    just the Johnny Hunt section or the entirety of the

3    report, just to focus the witness.

4          MR. MACGILL:  The Johnny Hunt section.

5          THE WITNESS:  How many witnesses?

6    BY MR. MACGILL:

7    Q    Yes.

8    A    Approximately seven.

9    Q    Okay.  Can you tell us who they were?

10         MR. KLEIN:  Objection.  Some of them are

11   witnesses who are not named in the report and so he

12   can obviously provided ones that are named in

13   public, but some of the witnesses were not

14   identified.  So I would ask if you want those names

15   then we would ask quickly for Johnny Hunt to be --

16   so I'll leave it to you then, Rob, if you want those

17   names --

18         MR. MACGILL:  If those witnesses are not

19   -- you've not designated the witness names.  It's

20   attorney client or attorney AEO or confidential.

21   There's been no designation by you at any time on

22   the witnesses that support the report.

1          MR. KLEIN:  That's not true.  The
2   witnesses were redacted from the report.  They were
3   not listed -- some of the witnesses.  And I'm only
4   talking about the ones who were not named, and we
5   know the ones who were named.  The ones who are not
6   named in the report are some of the people that I
7   imagine he's about to respond in answer to your
8   question.
9   BY MR. MACGILL:
10         Q    All right.  Let's name those that are
11  public first.  Then we'll go to the others.  Who
12  are the names -- who are the witnesses that you
13  named in the report associated with the Johnny
14  Hunt allegations?
15         A    Roy Blankenship.
16         Q    Okay.  Who else?
17         A    And Dr. Hunt.
18         Q    Any others?
19         A    No.
20         Q    So you didn't list any other -- you said
21  there were seven witnesses and there were only two
22  that were referenced in the report, Dr. Hunt and

1    Mr. Blankenship?

2         A    The survivor and husband were not named

3    in the report.

4         Q    Any other witnesses?

5         A    Three other witnesses are not named in

6    the report.

7         Q    And you want Mr. -- you want Pastor Hunt

8    not to hear these other three witnesses?

9         A    Correct.

10        Q    All right.  So Pastor Johnny, if you

11   would, I'd ask you to turn the volume off on your

12   phone.

13             MR. KLEIN:  I thought there was a breakout

14   that we could do for Johnny just to ensure he will

15   not hear the testimony.

16             MR. MACGILL:  He can do that or do the

17   volume.  Either one.

18             MR. KLEIN:  I'd prefer the breakout room

19   if it won't take up too much time.

20             (Pause for technical adjustment.)

21   BY MR. MACGILL:

22        Q    Now, sir, when you are ready, we'll

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 44 of 441 PageID #: 3656

1    start up again.

2         A    I'm ready.

3         Q    Now your lawyers and you are not willing

4    to share the identities of witnesses associated

5    with your work to Pastor Johnny Hunt; is that

6    right?

7         A    I think that's what my attorney just

8    said.

9         Q    I'd like you to tell the court why it is

10   that you are unwilling to share the names of

11   witnesses with Pastor Johnny Hunt.  Tell us why.

12              MR. KLEIN:  Objection.  You can answer.

13              THE WITNESS:  To protect the identity of

14   witnesses that asked for anonymity.

15   BY MR. MACGILL:

16        Q    Why do you -- why do you, sir, from the

17   Guidepost standpoint publish a report to the world

18   pertaining to Pastor Johnny Hunt on May 22nd of

19   2022, yet you refuse, as you sit here this

20   morning, to provide Pastor Johnny Hunt with the

21   identity of anonymous witnesses that are

22   associated with allegations pertaining to him?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 45 of 441 PageID #: 3637

1      A    I don't know how to answer that
2  question.
3      Q    Well, just as a matter of fundamental
4  fairness, sir, let's just make sure you admit some
5  things as we get started here.  You'll admit now,
6  without any equivocation on your part, that your
7  company published to the world your report on
8  May 22nd, 2022.
9            MR. KLEIN:  Objection as to form.
10           THE WITNESS:  The report was published.
11  BY MR. MACGILL:
12      Q    To the world.  To the world.  Wasn't it,
13  sir?
14           MR. KLEIN:  Objection as to form.
15           THE WITNESS:  I don't know what you mean,
16  to the world.
17  BY MR. MACGILL:
18      Q    You put it on your website, did you not?
19  Guidepost put this report with Johnny Hunt's name
20  in it and allegations associated with him on your
21  website on May 22, 2022, did it now?
22           MR. KLEIN:  Objection as to form.  You can

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 46 of 441 PageID #: 3658

```
 1   answer.
 2           THE WITNESS:  Guidepost published the
 3   report on May 22nd, 2022.
 4   BY MR. MACGILL:
 5       Q    And you knew they were going to do so at
 6   the time that you were served as a lead
 7   investigator, right?
 8       A    Did I know the exact date?  I don't
 9   know.
10       Q    Do you know how many people -- how many
11   thousands of people, sir, looked at the report
12   that was posted by your company on your website?
13       A    I do not.
14       Q    You never were told how many thousands
15   of people looked at that particular report?
16       A    I was not.
17       Q    But in any event, as you sit here today,
18   you know without any doubt, sir, that your company
19   on May 22, 2022, posted a report pertaining to
20   your investigation, including allegations
21   associated with the Pastor Johnny Hunt, right?
22       A    Correct.
```

1     Q   Now, as you sit here right now with your

2  lawyers -- two of them here, some of them in New

3  York -- with respect to your lawyers you are

4  refusing, sir, to let Pastor Johnny Hunt know the

5  identity of three people who you interviewed

6  pertaining to his allegations.  Is that right?

7         MR. KLEIN:  Objection as to form.  I'm the

8  one who made the objection.  The witness did not

9  make the objection.  I ** logged the objection by a

10  court order that said witnesses were attorney's eyes

11  only.  It was my -- you can ask the question, Rob,

12  but I want to make clear for the record that it was

13  my -- it was my objection.

14  BY MR. MACGILL:

15     Q   You are refusing, are you not, sir, to

16  provide Pastor Johnny Hunt with the identity of

17  these three witnesses, are you not?

18     A   I am not providing those names.  It is

19  not my decision.

20     Q   You are deferring to the executives of

21  your company and the lawyers in New York City

22  employed by your company; is that right?

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 48 of 441 PageID #: 3660

1          MR. KLEIN:  Objection as to form.  You can

2     answer.

3          THE WITNESS:  My lawyer.

4          MR. KLEIN:  And I just want to be clear

5     that he's not revealing any attorney-client

6     communication which he cannot and will not do, and I

7     know you are not asking him to do.

8          MR. MACGILL:  No.  We're not asking that.

9          MR. KLEIN:  Thank you.

10    BY MR. MACGILL:

11         Q    But in any event, whether you have been

12    instructed by lawyers or not, your company is

13    taking the position -- I'm not asking about lawyer

14    communications -- Guidepost will not reveal the

15    names of these three witnesses to Pastor Johnny

16    Hunt; is that right?

17         A    I don't know.

18         Q    Now, what are the names of the three

19    witnesses, sir?

20         A                        REDACTED

1

3      Q      Okay.   Now, you are saying that three
4   people, these three witnesses, provided you
5   information for your report -- for the Guidepost
6   report; is that right?
7      A      Correct.
8      Q      Did you rely on the information they
9   provided?
10     A      Did I rely upon it?
11     Q      Yes.
12     A      It was utilized in the report.
13     Q      How was the information from
14   REDACTED    utilized in the report?
15     A      It was explained in the report what that
16   witness told us.
17     Q      What did that witness tell you?
18     A      These three witnesses provided varying
19   degrees of information related to what they
20   understood regarding this incident.  I would have
21   to see the report in front of me.  I haven't
22   committed it exactly to memory what I was told, so

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 50 of 441 PageID #: 3682

1    I would have to see it.

2         Q    Did any one of these -- did   REDACTED

3    have any firsthand information pertaining to the

4    incident?

5         A    Firsthand, he was not -- no, he was not

6    present on July 25th, 2010.

7         Q    What was the source of his information

8    about the incident?

9              MR. KLEIN:   Objection.   You can answer if

10   you know.

11             THE WITNESS:   A conversation that he had

12   with   REDACTED   .   A conversation or

13   conversations that he had the   REDACTED   .

14   BY MR. MACGILL:

15        Q    So in terms of your own work as an

16   investigator, you understood that there were

17   credibility issues -- to repeat -- credibility

18   issues based on your experience on the information

19   that   REDACTED   gave to you, right?

20        A    No.

21        Q    As an investigator, sir, if somebody's

22   requesting that they remain anonymous, doesn't

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 51 of 441 PageID #: 3663

1  that suggest to you as an investigator, sir, based

2  on more than 30 years of experience that that may

3  not -- that may impact the credibility of that

4  particular witness?

5      A    Not particularly, no.  Witnesses ask for

6  confidentiality for a variety of reasons,

7  including retaliation, their own safety, a variety

8  of reasons.

9      Q    Let's talk about you as a lead

10  investigator and whether you had other obvious --

11  to repeat -- obvious indicia of unreliability,

12  sir, with respect to    REDACTED    and what he

13  told you.  You had another indicia of

14  unreliability because what he was telling you was

15  based on hearsay, a report from    REDACTED    .

16  Right?

17          MR. KLEIN:  Objection as to form.  Calls

18  for a legal conclusion, but you can answer.

19          THE WITNESS:  I didn't have any indicia of

20  Credibility.

21  BY MR. MACGILL:

22      Q    Right.  That's right.  Because all

Veritext Legal Solutions
www.veritext.com                                   888-391-3376
Case 3:23-cv-00243  Document 219-5  Filed 07/03/24  Page 52 of 441 PageID #: 3604

1      REDACTED      told you was that he had heard

2  about the incident from      REDACTED     , the spouse

3  of the alleged victim of this circumstance.

4          Is that right?

5      A    I don't understand.  You just made a

6  statement to me.

7      Q    Yes, I did.  And I want to make sure we

8  know how unreliable this information was.  You

9  understand that      REDACTED      wanted to remain

10  anonymous.  Right?

11      A    He requested anonymity.

12      Q    And any reasonable investigator would se

13  that as some indication of unreliability.  Right?

14      A    No.

15          MR. KLEIN:  Correct.  I mean not.

16  Objection as to form.  My apologies.

17  BY MR. MACGILL:

18      Q    Let's talk about the second indicia of

19  unreliability as far as      REDACTED      is

20  concerned.

21      A    I didn't agree to the first indicia of

22  unreliability.  So I don't know why you are moving

1    to an agreed upon second indicia --

2         Q    Okay.  Let me talk about?

3         A    -- of unreliability.

4         Q    Let me talk about what's obvious, sir,

5    in terms of what the jury and the court will hear.

6    The court will determine whether or not it's an

7    obvious circumstance of unreliability when you, as

8    an investigator, relied on a hearsay report given

9    to        REDACTED       by REDACTE  Would you agree

10   that any reasonable investigator would understand

11   that a hearsay report lacks reliability to some

12   extent?

13              MR. KLEIN:  Objection as to form.  Calls

14   for a legal conclusion.  You can answer if you can.

15              THE WITNESS:  No.

16   BY MR. MACGILL:

17        Q    Okay.  Let's talk about the next

18   witness.  Dr. -- I'm sorry --      REDACTED     .

19   How did you rely on his word?

20        A    I interviewed him.

21        Q    And what information did he have?

22        A    Again, he corroborated in part the

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 54 of 441 PageID #: 3666

1   account given by     REDACTED   .

2        Q     How did he corroborate?   What

3   corroboration did he provide?

4        A     He was aware of an incident between

5   Dr. Hunt and     REDACTED   .

6        Q     How did he gain awareness of that

7   incident?

8        A     He had conversation or conversations

9   with     REDACTED     .

10       Q     Any other basis for his report to you,

11   sir?

12       A     I'm not understanding what that -- what

13   you mean by that.

14       Q     Well, as an investigator don't you need

15   to understand what the basis is for somebody's

16   report to you about "facts of a circumstance"?

17       A     The basis of his report -- again, I

18   don't understand what you're asking me.

19       Q     You have another -- you have a report by

20   another witness about what     REDACTED     said to

21   him, right?

22       A     Correct.   What     REDACTED     said to us

1  was based on his conversation or conversations

2  with       REDACTED       .

3      Q    And there was no other basis for what he

4  told you about the incident other than what RED
                                                ACT
          said to him.                           ED

6              MR. KLEIN:  Objection as to form.  You can

7  answer.

8              THE WITNESS:  If you are asking me if he's

9  a firsthand witness as you did with    REDACTED    ,

10  likewise he was not a firsthand witness.

11  BY MR. MACGILL:

12     Q    I'm asking you something different.  I

13  want you to admit now before we proceed any

14  further that he had nothing to report to you other

15  than the hearsay of    REDACTED    , right?

16              MR. KLEIN:  Objection as to form.  Calls

17  for a legal conclusion.  You can answer.

18              THE WITNESS:  He only reported to us his

19  conversations with    REDACTED    , but he also added

20  his -- his personal relationship with    REDACTED

21  and what his observations were.

22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 56 of 441 PageID #: 3668

1    BY MR. MACGILL:

2        Q    Okay.  So his observations of her in

3    what sense, sir?

4        A    I would have -- again, I would have to

5    refer to the report.  But to the best of my

6    recollection, the fact that she had trust issues.

7    That's one thing that stands out.

8    BY MR. MACGILL:

9        Q    Let's go to the third witness.  This

10   is -- who is the third witness who wanted to

11   remain anonymous?

12       A    The third witness was  REDACTED  or

13   REDACTED   I'm not sure.

14       Q    And what information did he have that

15   you relied on?

16       A    Likewise, he had conversations with

17   REDACTED

18       Q    Any other -- did he have any other

19   information with the incident to report to you

20   other than his conversation with  REDACTED  ?

21       A    I don't believe so.

22       Q    So did you understand just as a very

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 57 of 441 PageID #: 3669

1    fundamental matter that as far as he was concerned
2    that he was just giving to you a hearsay report?
3              MR. KLEIN:  Objection as to form.  Calls
4    for a legal conclusion.  You can answer.
5              THE WITNESS:  He was providing me with
6    information based on his conversation or
7    conversations with    REDACTED    .
8    BY MR. MACGILL:
9         Q    And did you regard that as hearsay?
10             MR. KLEIN:  Objection as to form.  Asked
11   and answered.  And calls for a legal conclusion.
12   You can answer one more time.
13             THE WITNESS:  It wasn't firsthand
14   information.
15   BY MR. MACGILL:
16        Q    Okay.  Now, when I use the term hearsay,
17   that's a legal and an investigatory term, right?
18             MR. KLEIN:  Objection as to form.
19   BY MR. MACGILL:
20        Q    As an investigator how do you use the
21   term hearsay?  How do you understand that term.
22             MR. KLEIN:  Objection.  You can answer.

Veritext Legal Solutions
www.veritext.com                                         888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 58 of 441 PageID #: 3670

1          THE WITNESS:  As an investigator that is
2    third-hand informa- -- second-hand information.
3    BY MR. MACGILL:
4        Q    Okay.  So as an investigator you define
5    hearsay as second-hand information?
6          MR. KLEIN:  Objection.  Again, calls for a
7    legal conclusion, but he can answer.
8          THE WITNESS:  It's a legal term that's not
9    used in the day-to-day activity of an investigator.
10   It's something we hear as investigators in a
11   courtroom.
12   BY MR. MACGILL:
13       Q    So you had -- with respect to these
14   three witnesses that you will not disclose to
15   Pastor Johnny Hunt, you understand that each of
16   them was giving to you a secondhand account of the
17   incident; is that right?
18       A    That's fair to say.
19       Q    Now, with respect to you as an
20   investigator and your company, Guidepost as an
21   investigating entity, do you agree, sir, that
22   second-hand information is less reliable than

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 59 of 441 PageID #: 3671

```
 1   first-hand observation?
 2            MR. KLEIN:  Objection.  He's not
 3   testifying on behalf of Guidepost.  I believe you
 4   asked if Guidepost.  He can answer in his individual
 5   capacity and of course then the question is
 6   allowable, but he is not testifying today on behalf
 7   of Guidepost.
 8            With that caveat you can answer.
 9   BY MR. MACGILL:
10       Q    You agree, sir, as lead investigator on
11   this matter involving Pastor Johnny Hunt that
12   secondhand information is less reliable -- to
13   repeat -- less reliable than firsthand
14   observations?
15       A    I don't know that I'm comfortable with
16   reliable, but I would give more weight to a
17   firsthand account.
18       Q    Now, did you make any notations in what
19   you included in the report pertaining to Pastor
20   Johnny Hunt about the fact that you had three --
21   three of your seven witnesses were providing
22   secondhand information.  Did you say that in any
```

1   part of your report?

2         A    I don't think I used the term

3   secondhand.

4         Q    Did you indicate that this -- did you

5   indicate -- just so the court here and the jury

6   can understand what you did or what you failed to

7   do, sir -- did you indicate anywhere that you had

8   three of seven witnesses that were providing

9   accounts that came from -- about the incident --

10  that came from    REDACTED    ?

11             MR. KLEIN:  Objection as to form and the

12  use of the word fail, but you can answer.

13             THE WITNESS:  I was very clear in my

14  interview reports that the information that they

15  provided me during the interview came directly from

16      REDACTED       So I did not fail to provide that.

17             MR. MACGILL:  Can we put Pastor Johnny

18  Hunt back into the Zoom.

19             MS. CALLAS:  Pastor Johnny is now in the

20  room.

21  BY MR. MACGILL:

22        Q    Sir, we've covered the details of these

1    three witnesses.  You stated that you are

2    withholding the identity of these three witnesses

3    from Pastor Johnny Hunt because of their request

4    to you; is that right?

5         A    I don't believe that's what my statement

6    was.

7         Q    But did they request -- did these three

8    witnesses -- and don't name them in your answer,

9    please -- did these three witnesses that you

10   identified in your report that you are refusing to

11   disclose to Pastor Johnny Hunt, did each one of

12   them request to be anonymous?

13        A    To the best of my recollection, yes.

14        Q    And based on that, did you -- did you

15   undertake to make sure that they were not listed

16   by name in the report?

17        A    Did I ensure that they were not named.

18        Q    Take steps.  Did you take steps?

19        A    In my drafting, I didn't use their name.

20        Q    Okay.  So -- and again, just so we're

21   clear, you are refusing even as we sit here today

22   to disclose their names to Pastor Johnny Hunt,

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 62 of 441 PageID #: 3674

 1    right?

 2              MR. KLEIN:  Objection.  Asked and answered

 3    several times.

 4              THE WITNESS:  I am not providing the names

 5    today.

 6    BY MR. MACGILL:

 7        Q    Okay.  Now, sir, I want to go back to

 8    where we started on some things.  We talked about

 9    arm's-length relationships with witnesses?

10        A    Yes.

11        Q    How many times did you interview the

12    three witnesses that you referenced in the private

13    proceedings this morning?

14        A    I interviewed --

15              MR. KLEIN:  Without revealing their names.

16    BY MR. MACGILL:

17        Q    Without out their names.

18        A    I interviewed each witness one time.

19        Q    One time.  I'm going to make a note of

20    that.  Give me a second.  One time.

21              How many times did you interview Mr.

22    Blankenship?

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 63 of 441 PageID #: 3675

1     A    One time.

2     Q    Tell the court how many times you

3  interviewed Dr. Hunt?

4     A    Two times.

5     Q    Tell the court, now, sir, and this jury

6  how many times you interviewed    REDACTED    ?

7     A    Less than -- less than five times.  I

8  don't have an exact number.  There were --

9          MR. KLEIN:  You've answered the question.

10  BY MR. MACGILL:

11     Q    Did you answer less than five times?

12     A    That was my answer, yes.

13     Q    How many times did your company

14  interview    REDACTED    in connection with this

15  report about Johnny Hunt?

16          MR. KLEIN:  Objection as to form.  You can

17  answer.

18          THE WITNESS:  By my company?  What do you

19  mean?

20  BY MR. MACGILL:

21     Q    Guidepost.

22     A    I was one of the interviewers along with

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 64 of 441 PageID #: 3676

1  Samantha Kilpatrick.  So Samantha and I

2  interviewed      REDACTED      .  We were the only two

3  to interview      REDACTED      .

4        Q    How many times did you interview the

5  REDACTED collectively,      REDACTED      , in

6  connection with your investigation.

7        A      REDACTED      was interviewed one time.

8        Q    Did Guidepost conduct at least nine

9  interviews of the  REDACTED before the report was

10  published?

11           MR. KLEIN:  Objection as to form.

12           THE WITNESS:  Nine interviews?  I don't

13  know where you are getting that number, but I had a

14  series of conversations the week of February 10th

15  with      REDACTED      , so you could say those were

16  interviews, approximately three.  And then on

17  March 31st, 2022, Samantha Kilpatrick and I

18  interviewed          REDACTED

19  present.

20  BY MR. MACGILL:

21        Q    And your answer was how many times did

22  you say?  You didn't agree -- I asked if you --

Veritext Legal Solutions
www.veritext.com                                                 888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 65 of 441 PageID #: 3677

1      A     Nine.  I don't know where you get that

2  number nine.

3      Q     You think that's excessive?

4          MR. KLEIN:  Objection as to form.  You can

5  answer.

6          THE WITNESS:  I just -- I don't know where

7  you get that number because I just answered your

8  question as to when they were interviewed.  Now,

9  were there other conversations, yes, but not

10  interviews.

11  BY MR. MACGILL:

12      Q     I asked you specifically, and I want to

13  make sure you are hearing my question and I'm

14  hearing your answer.

15          Did Guideposts conduct at least nine

16  interviews of the  REDACTED  before the report was

17  published?

18          MR. KLEIN:  Objection as to form.  Asked

19  and answered.  You can answer.

20          THE WITNESS:  I don't recall the exact

21  number.

22

1  BY MR. MACGILL:

2     Q     All right.  I'm going to hand you -- go

3  back to the interrogatories.  Remember we were

4  referring to the interrogatories, this Exhibit 1.

5            You saw that this was -- these

6  interrogatories were executed by your chief

7  operating officer, Mr. Collura.

8     A     Yes.

9     Q     And you look on page 3 if you would,

10  sir.

11    A     Yes.

12    Q     We asked did Guideposts conduct any

13  interviews of the complainant, Johnny Hunt, or any

14  other person related to the complainant's

15  allegations against Johnny Hunt.

16            Do you see that?

17    A     Do I see --

18    Q     That question.

19    A     Okay.

20    Q     Do you see that, sir?

21    A     Yes.

22    Q     And then your company responded saying

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 67 of 441 PageID #: 3679

1  yes.  Do you see that?

2      A    Yes.

3      Q    And you see the listing then that your

4  company made through its chief operating officer

5  on his oath?

6      A    I'm comfortable with the dates that are

7  provided here.

8      Q    And what he showed -- you can count

9  them -- but there are at least nine interviews

10  that your company identified under penalties of

11  perjury of the  REDACTED  prior to the time the

12  report was given.  Right?

13      A    Okay.

14      Q    Right?

15      A    Okay.

16      Q    Yeah.  Now, back to arm's length, sir.

17  Do you think it's an arm's-length relationship

18  with a witness or witnesses like the  REDACTED  to

19  have nine interviews before your report?

20      A    I don't think a number determines

21  appropriateness of witness interaction.

22      Q    Now, let's talk about boundaries in an

1    arm's length relationship.  Is it ordinarily the
2    case that you would be doing text messaging over a
3    period of months with a witness that is used in
4    your report?
5         A    Is it what now?
6         Q    Is that customary to have a text
7    relationship -- a texting relationship with a
8    witness that has extensive text messages sent
9    between you and    REDACTED    for months?
10             MR. KLEIN:  Objection as to form.
11             THE WITNESS:  That's consistent with my
12    experience.
13    BY MR. MACGILL:
14        Q    And did you have text messages with the
15    three witnesses that you won't identify for Pastor
16    Johnny Hunt?
17        A    I did not.
18        Q    But you did have many text messages with
19    REDACTED    did you not?
20        A    Yes.
21        Q    Did you talk to    REDACTED    , one of
22    the witnesses in your report, about a job at some

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 69 of 441 PageID #: 3681

1  point?

2        A     He sent me a message.

3        Q     About a job, didn't he?

4        A     Yes.

5        Q     Now, let's just look at you for just a

6  minute about you being a lead investigator.  Is

7  that out of bounds in terms for you in terms of

8  the type of work you do, as lead investigator on

9  this matter, to be speaking with a witness about a

10  job?

11        A     I received a message.  I did not

12  initiate that discussion, and I believe my

13  response to that was minimal and did not encourage

14  the witness in any way.  It was responsive.

15        Q     Do you remember getting a text message

16  from him on February 1st saying I'm going to apply

17  far job with GPS.  Does that refer to the

18  Guidepost?

19        A     It does.

20        Q     Is that your company?

21        A     Yes.  It's a commonly used acronym.

22        Q     Great.  Thank you.  Do you remember

1  getting a text from him on February 1st on that

2  topic?

3          MR. KLEIN:  What year are we talking

4  about?  I'm sorry.

5  BY MR. MACGILL:

6      Q    February 1st of any year.  Do you

7  remember getting a text from him February 1st of

8  any year.

9          THE WITNESS:  Could I see want document.

10 BY MR. MACGILL:

11     Q    I'm just asking if you remember first.

12     A    Generally, yes.

13     Q    And do you remember being asked by text

14 by     REDACTED     , would you mind if I used you as

15 a reference.

16          Do you remember that?

17     A    That sounds familiar.

18     Q    And do you remember responding to him?

19     A    I'm sure I responded to him.

20     Q    How did you respond to this witnesses in

21 the report, sir?

22     A    I don't remember my exact response.

1     Q   Generally, do you have any recollection

2  of what you said?

3     A   I did not respond in a negative fashion.

4     Q   Did you say, sure, you'd do that?

5     A   I may have.

6     Q   Did he thank you for that?

7     A   I don't remember.

8     Q   Did you ask him job what job he was

9  applying for at Guidepost?

10     A   I don't remember.

11     Q   Do you remember him telling you he

12  wanted to be considered as a senior consultant

13  physical security?

14     A   I don't remember that.

15     Q   Now, let's talk about you for a few

16  minutes.  And you as an investigator, whether you

17  have a arm's-length with a witness.

18     Does this type of communication to you put

19  up any "red flags" so to speak?

20     MR. KLEIN:  Objection as to form.  You can

21  answer.

22     THE WITNESS:  No.

1    BY MR. MACGILL:

2        Q    Let me ask you about other relationships

3    that you had with    REDACTED         , you as lead

4    investigator for Guidepost, do you remember before

5    the publication itself sending text messages to --

6    exchanging text messages with    REDACTED    about

7    interceding on his behalf in any way?

8              MR. KLEIN:  Objection as to form.  You can

9    answer.

10             THE WITNESS:  I don't remember.  And I'm

11   not sure what you are talking about.

12   BY MR. MACGILL:

13       Q    Do you remember reading text messages

14   yesterday that you got from    REDACTED    prior to

15   the time of the publication of the report?

16       A    In general, yes.

17       Q    Okay.  What in general were you texting

18   with him about prior to the publication of the

19   Guidepost report?

20       A    His availability to get on a call

21   perhaps?  I -- I don't know.  It's a very general

22   question.  I don't know.

1      Q    Sir, I'm going to hand you -- first, I'm

2   going to hand you Exhibit 3 and ask if you can

3   tell us what that is.

4                          REDACTED

1  with    REDACTED    before February 10th of 2022.

2  So it couldn't have been in 2022 because I didn't

3  know who    REDACTED    was on February 1st, 2022.

4  So it had to have been February 1st, 2023.

5  BY MR. MACGILL:

6      Q    When did you first get a relationship

7  with -- when did you first start your texting

8  relationship with  REDACTED ?

9          MR. KLEIN:  Objection as to form.  You can

10  answer.

11          THE WITNESS:  After February 10th, 2022.

12  BY MR. MACGILL:

13      Q    And at that point you began texting him

14  on various matters?

15      A    Him texting me mostly, but yes.  I

16  texted him after February 10th, 2022.

17          (HOLSKE Exhibit Number 4 was marked for

18          identification.)

19  BY MR. MACGILL:

20      Q    Let me hand you the next exhibit, sir.

21  Exhibit 4.

22      A    Can I have a minute to review this

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243  Document 219-5  Filed 07/03/24  Page 75 of 441 PageID #: 3687

1  please.

2      Q    Of course.

3      A    Okay.

4      Q    And do you recognize this as a text

5  between you and   REDACTED   ?

6      A    Yes.

7      Q    What was the topic that you were

8  speaking with him about?

9      A    I don't have context here because it

10  doesn't seem that the whole message string is

11  included.  So I'm not sure.

12      Q    So there were some -- have you seen this

13  document in recent months?

14      A    I don't know that I've seen this

15  particular screen shot.

16      Q    Now, what's the date of this text

17  exchange, which is Exhibit 4?

18      A                              REDACTED


21      Q    Now, sir, I'm going to talk about your

22  conduct during this period of time, April of 2022.

1    By this time were you writing internal memorandas
2    or emails saying that you would not, in connection
3    with your work on this case, be creating a "paper
4    trail"?
5         A     I don't recall.
6         Q     You don't recall in April of 2022 having
7    internal communications at Guidepost that
8    indicated very specifically that you would not be
9    creating a "paper trail" in connection with your
10   work and certain features of it?
11            MR. KLEIN:  Objection.  Asked and
12   answered.
13            THE WITNESS:  I don't recall.
14   BY MR. MACGILL:
15        Q     Don't recall anything like that, sir?
16            MR. KLEIN:  Objection.  Asked and
17   answered.
18            THE WITNESS:  Again, I don't remember.
19   BY MR. MACGILL:
20        Q     So by this time, whether you recall any
21   internal communications or not, by April of 2022,
22   were you being secretive in terms of

Veritext Legal Solutions
www.veritext.com                                            888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 77 of 441 PageID #: 3689

1    communications in that you were being cautious

2    about not creating a "paper trail" on certain

3    topics.

4         A    I don't agree with the term secretive.

5         Q    But you do agree that you took steps to

6    avoid creating a "paper trail" as of the April

7    period of time?

8              MR. KLEIN:  Objection.  Asked and

9    answered.

10             THE WITNESS:  I don't recall the term that

11   you used, paper trail.

12   BY MR. MACGILL:

13        Q    Now,    REDACTED    -- let me ask you this:

14   In terms of having an arm's length witness for the

15   -- strike that.

16             In terms of having a arm's length

17   relationship with a witness, would it be appropriate

18   for a witness to be asking you to destroy records of

19   an investigation?

20        A    I'm sorry.  Could you ask that one more

21   time?

22        Q    Would it be appropriate in a

1   relationship with a witness that you had in an

2   investigation for you to have a witness who made a

3   specific request to destroy documents?

4        A    That's the decision of the witness to

5   ask that question.  Whether it's appropriate or

6   not is really not for me to determine that he asks

7   that.

8        Q    So you would -- it wouldn't raise any

9   concerns on your mind if a witness, after an

10  investigation was published, asked whether you had

11  destroyed documents as requested?

12       A    I would only be concerned with my

13  particular reaction to that.

14       Q    Do you recall   REDACTED   requesting you

15  specifically to destroy documents in connection

16  with this investigation?

17       A    I don't.

18       Q    You don't recall anything about RED
                                                ACT

19  REDACTE  at any time asking you to destroy
      D

20  documents?

21       A    No, I do not.

22       Q    Sir, I want you to look back at the

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 79 of 441 PageID #: 3691

```
 1   engagement letter if you would, Exhibit 2.  And
 2   I'd like you to refer to the scope of the
 3   engagement.  Tell me when you are there, please.
 4        A    Page 5, I assume?
 5        Q    Yes, sir.
 6        A    Okay.
 7        Q    It's Bates number EC00013.  Do you have
 8   that in front of you?
 9        A    Yes, sir.
10        Q    And it says -- bullet point two, which
11   is what -- these are the bullet points that you
12   operated under; is that right?
13        A    Correct.
14        Q    This was part of your interview
15   template, correct?
16        A    Correct.
17        Q    And you were -- you were -- you were
18   going to investigate mishandling of abuse
19   allegations by executive committee members between
20   January 1, 2000, and June 14, 2021.
21             Do you see that?
22        A    I see that.
```

1      Q    So Pastor Johnny Hunt was not an

2   executive committee member between January 1, 2000

3   and June 1, 2021, was he?

4      A    He was.

5      Q    He was?  What membership did he have

6   between January 1st, 2000, and January 14, 2021?

7      A    As president of the SBC from 2008 until

8   2010 he was -- I think the term is ex officio

9   member of the executive committee.

10          MR. MACGILL:  May I hear that answer back,

11   please?

12          (Whereupon, the Reporter read the record

13          as requested.)

14   BY MR. MACGILL:

15      Q    And when was he an ex officio member of

16   the executive committee?

17      A    Do you want me to repeat what I just

18   said.

19      Q    Yeah.  When?  You said 2008 to 2000 --

20      A    10.

21      Q    And what did you base that on?

22      A    Records provided by the Southern Baptist

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 81 of 441 PageID #: 3693

1   Convention of who the presidents were from

2   January 1, 2000 to June 14th, 2021.

3        Q    Bullet point one references allegations

4   of abuse by executive committee members.

5        A    Correct.

6        Q    All right.  Now, you were engaged --

7   just so we know, and keep in mind the date of this

8   letter, you were engaged on October 5, 2021,

9   right?

10          MR. KLEIN:  Objection.  The letter speaks

11   for itself, but you can answer.

12          THE WITNESS:  One moment please.

13   Actually, the engagement signatures are -- by my

14   company was on October 6, 2021.

15   BY MR. MACGILL:

16        Q    Okay.  So you would say that the

17   engagement began October 6th, 2021?

18        A    Yes.

19        Q    Okay.  And looking at the first bullet

20   point it says that your investigation was to

21   include allegations of abuse by executive

22   committee members.

1          Do you see that?

2      A    I do.

3      Q    All right.  Now, for what period of

4  time?  You were engaged in 2021, allegations of

5  abuse -- you were to look at allegations of abuse

6  by executive committee members for what period of

7  time, sir?

8      A    No date is provided here.

9      Q    So what did you do.  There was no date

10  provided so what did you look -- what was your

11  look-back period?

12      A    We would have taken any allegation of

13  sexual abuse by anybody over any period of time.

14  What would have ended up in the report would have

15  been the decision of the engagement project

16  manager and leadership from Guidepost Solutions.

17      Q    So your footprint was any allegation of

18  abuse by executive committee member, right?

19      A    Correct.

20      Q    Didn't matter what time?

21      A    We would have heard anybody that would

22  have called forward to make a report.  What ended

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 83 of 441 PageID #: 3695

1  up being in the report, the general parameters
2  were January 1, 2000 to June 14, 2021.  But as you
3  and I both see here on this engagement letter,
4  there's no date under the first bullet, so I can't
5  answer more specific than that.
6      Q    So the incident involving Pastor Johnny
7  Hunt was when?
8      A    I'm sorry?
9      Q    The incident involving Pastor Johnny
10 Hunt was when?
11     A    July 25, 2010.
12     Q    So when did you first become aware of
13 this incident?
14     A    During the week of February 10th, 2022.
15     Q    Okay how did you become aware of it?
16     A    In conversations with       REDACTED     .
17     Q    How were you referred to      REDACTED     ?
18     A       REDACTED       -- so we had at -- at
19 Guidepost Solutions we had a hotline set up where
20 witnesses could email or call to report matters
21 involving sexual abuse and the Southern Baptist
22 Convention.  And    REDACTED     wrote into that

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243  Document 219-5  Filed 07/03/24  Page 84 of 441 PageID #: 3696

1  hotline an email.

2        Again, I use the term project manager but

3  the one leading the engagement, Krista Tongring

4  forwarded me that email, I believe, and asked me to

5  follow up with      REDACTED      .  And so that's what I

6  did.  I think by email I reached out to him and

7  asked him about his availability or if he wished to

8  talk to Guidepost Solutions.

9     Q    Now, when you had your initial contact

10 with    REDACTED    did he ask you about what your

11 company would do to validate that the authenticity

12 of stories given to them before going public?

13    A    That sounds familiar.

14    Q    And do you remember that specifically

15 that he wanted to know how Guidepost will validate

16 the authenticity of stories provided?

17    A    I recall that I told him that we would

18 corroborate or validate information received in a

19 general sense.  This is before I knew anything

20 about what he was going to tell me.  By reviewing

21 documents, emails, talking to other witnesses,

22 something like that.

1    Q    From the outset,    REDACTED    was

2    concerned in terms of what he expressed to you

3    about slander or liability issues, right?

4    A    I remember him being concerned about

5    retaliation against him as a witness specifically.

6    I don't recall specifically his concerns about --

7    what is it you said?  Slander or --

8    Q    Right.  Did he wonder to you how

9    Guidepost ensures that slander and/or liability

10   issues are not breached?

11   A    I don't recall.

12        (HOLSKE Exhibit Number 5 was marked for

13        identification.)

14        MR. SANDERS:  So we're going to mark this

15   as Exhibit 5 -- we only have electronic copies.

16   Bates number from the first page is Guidepost

17   013946.  It's a three-page document.  Final Bates

18   number is Guidepost 013948.

19   BY MR. MACGILL:

20   Q    So we're going to give you an iPad that

21   has this document electronically on it.  I ask

22   that you read it first and I have one question for

1  you.

2          MR. KLEIN:  Give us one second and I can

3  pull it up or you have one.

4          MR. SANDERS:  I have one for you.

5  BY MR. MACGILL:

6      Q    Tell us when you've read it, sir.

7      A    Okay.  I will.

8          MR. KLEIN:  Thank you.  I'm going to read

9  it, too.

10  BY MR. MACGILL:

11      Q    All right, sir.  Just so we're

12  oriented --

13      A    I haven't finished yet.

14      Q    I'm just going to ask you about one

15  email, just so we're clear.  I'm going to ask you

16  only about the email of February -- Friday,

17  February 11 at 2:43.  I'm not going to ask you

18  about anything else.  And I'm not going to recite

19  the document.  So a question about this email.

20          MR. KLEIN:  No problem.  And I appreciate

21  that.  You still -- if you need to understand that

22  in context, you can read the entirety of the email

1    thread.

2            THE WITNESS:  I would like to read it.

3    BY MR. MACGILL:

4        Q    Go ahead.

5        A    Review the chain of the email.  It won't

6    take me on.

7        Q    Don't worry.  I'll ask you about all of

8    it then, okay, just so we're clear.

9            Have you read Exhibit 5 in its entirety?

10       A    I have.

11       Q    You testified earlier to this court that

12   February 10th was the first day that you reached

13   out to   REDACTED ; is that right?

14       A    On or about that date, yes.

15       Q    And is it fair to say one of the things

16   that you asked him is you wanted corroborating

17   information pertaining to his hotline inquiry; is

18   that right?

19           MR. KLEIN:  Objection as to form.  You can

20   answer.

21           THE WITNESS:  In this email string?

22

1    BY MR. MACGILL:

2          R
           E
           D
           A
           C
           T
           E
           D

17          A     Yes.

18          Q     Okay.

19          A     That's not a question, though.

20          Q     I'm sorry?

21          A     That's not a question.

22          Q     We'll just keep moving on.  All right.

1    So no question that's what you wrote, right?

2         A     What you just recited, that's what I

3    wrote.

4         R
         E
         D
         A
         C
         T
         E
         D

1        THE WITNESS:  Yes.  I think I testified

2    earlier that I sent him an email in response to

3    Krista Tongring's request for me to reach out to RED

4    REDACTE  So that would have been before this email.

5    BY MR. MACGILL:

6        Q    Yes, you did.  I think you testified to

7    that.  I'm asking you something different that you

8    may not have understood.

9             I asked you is this the first email that

10   he sent to you?

11       A    I don't know.

12       Q                           REDACTED

17             MR. KLEIN:  Objection as to form.  Asked

18   and answered.  You can answer.

19             THE WITNESS:  I don't know.

20   BY MR. MACGILL:

21       Q    Don't recall as you sit here today?

22       A    I don't.

Veritext Legal Solutions
www.veritext.com                                   888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 91 of 441 PageID #: 3703

1          Q          REDACTED

1      A          REDACTED

1           REDACTED

10      Q    Okay.  But for your part, you never, at

11   Guidepost -- you, for your part or Guidepost,

12   never at any time validated the authenticity of

13       REDACTED       allegations separately, did you?

14           MR. KLEIN:  Objection as to form.  He's

15   testifying in his individual behalf, not on behalf

16   of Guidepost.  With that caveat you can answer if

17   you can.

18           THE WITNESS:  Yes.  We validated the

19   authenticity of     REDACTED     statement about what

20   happened between her and Dr. Hunt on July 25th,

21   2010.

22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 94 of 441 PageID #: 3706

```
1    BY MR. MACGILL:

2         Q    What validation did you have, sir?

3    Strike that.

4              I would like you to explain to the jury,

5    specifically now, under oath what validation did you

6    have of the account of the encounter between Pastor

7    Johnny Hunt and      REDACTED      ?

8              Specifically, what did you have?

9         A    We had a statement of three witnesses.

10        Q    Please name the three -- are these the

11   three witnesses that you named previously?

12        A    I did not name the witnesses previously.

13             MR. KLEIN:  I think he meant in the

14   private section.  Are those the three?

15             THE WITNESS:  Yes.

16             MR. KLEIN:  I didn't mean to speak over

17   you, Rob.

18   BY MR. MACGILL:

19        Q    We are not going to name the names, but

20   with respect to those three witnesses, each of

21   them was relying on      REDACTED       information

22   about the incident, right?
```

1     A    Yes.  The first witness provided his

2  recollection of conversations that happened

3  contemporaneous to the event in 2010.  The second

4  witness provide the information about his

5  conversation or conversations with   REDACTED

6  from the year 2012.  And then the third witness

7  provided information regarding his conversations

8  that happened in approximately 2018.  And then Roy

9  Blankenship's statements to us were another form

10  of corroboration as to the statement by the  REDACTED

11  REDACTED

12     Q    Any other validation other than these

13  three witnesses that you have named on the record

14  and the Mr. Blankenship?

15     A    Yes.

16     Q    What other validation, sir?

17     A    We obtained a hard drive from   REDACTED

18  that contained writings and audio recordings

19  contemporaneous to the event that speak to the

20  trauma of both     REDACTED     regarding

21  the sexual assault by Dr. Hunt in 2010.  And then

22  lastly, we have the false statement of Dr. Hunt on

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 96 of 441 PageID #: 3708

1    May 12, 2022.

2         Q    Any other validation in your mind, sir?

3         A    I believe there's a document, perhaps

4    the rental agreement of the condominium where the

5    incident -- where the assault took place.  That

6    may be all of the information, but I don't recall

7    if that's exactly everything.

8         Q    To the best of your recollection, having

9    met with lawyers on two days, having looked for

10   documents for hours, and otherwise prepared for

11   this testimony, those are each of the validations,

12   according to you, for the report that you

13   issued -- that Guidepost issued?

14        A    Those are validation.

15        Q    Now, just to -- with respect to each of

16   those, let's just cover witness one, two, and

17   three that you -- you know, were going to honor

18   the requests at this point, we have no choice but

19   to honor your demand that Pastor Johnny Hunt not

20   be told of witness one, two, and three.  Okay?  I

21   want you to understand this.  I'm going to use

22   witness one, two, or three.  Not names.

1          Fair enough?

2     A    Okay.

3     Q    Now, witness one, that report was based

4   on what    REDACTED    said to witness one.

5          MR. KLEIN:  Objection.  Asked and

6   answered.  You can answer again.

7          THE WITNESS:  What witness one told us was

8   based on his conversation or conversations with

9       REDACTED

10  BY MR. MACGILL:

11    Q    And witness two, the same is true.  It's

12  based on his conversations with    REDACTED    ,

13  right?

14         MR. KLEIN:  Objection.  Asked and

15  answered.

16         THE WITNESS:  Yes.

17  BY MR. MACGILL:

18    Q    Witness three, again based on the

19  conversations witness three had with    REDACTED    ;

20  is that right?

21         MR. KLEIN:  Objection.  You can answer.

22         THE WITNESS:  Yes.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 98 of 441 PageID #: 3710

1    BY MR. MACGILL:

2         Q    And you knew and you saw with your own

3    eyes documentation that    REDACTED    wrote in

4    written materials that he believed specifically in

5    the encounter between    REDACTED    and Johnny Hunt

6    was consensual until only recent years, right?

7         A    I'd have to look at the exact document

8    you are referring to.

9         Q    Well, sir, you published -- you went

10   back 12 years to put -- to put a claim about an

11   incident 12 years prior in your report, right?

12   Right?

13        A    The incident took place in 2010.

14        Q    And that you wrote a report dated May

15   2022, right?

16        A    Correct.  The report was issues in May

17   of 2022.

18        Q    So someone like you, doing investigatory

19   work in the way that you do it, you understood,

20   even for your part that you were going 12 years

21   back in time, right?

22        A    That's 12 years between 2010 and 2022.

1        Q    And you knew without any doubt that RED

2  REDACTE himself, at or near the time of this

3  incident, described the incident as consensual,

4  didn't you, sir?

5            MR. KLEIN:  Objection as to form.

6            THE WITNESS:  I don't know when REDACTED

7            REDACTED        discussed the consensual

8  nature or nonconsensual nature of the incident.

9  BY MR. MACGILL:

10       Q    This is important for the jury to hear,

11  sir, and for the court to hear directly from you.

12  You knew, sir, that    REDACTED   , near the time of

13  the 2010 incident, described this incident as

14  between his wife and Pastor Johnny Hunt as

15  consensual, right?

16            MR. KLEIN:  Objection as to form.  The

17  jury and the court need to hear that you asked the

18  same question over and over again.  And so I'm going

19  to object and, of course, allow him to answer unless

20  it becomes harassing.  We're not there yet.  You can

21  answer now again.

22            MR. MACGILL:  Can I have the question read

1   back, sir.

2           THE WITNESS:  That would be great.

3           (Whereupon, the Reporter read the record

4           as requested.)

5   BY MR. MACGILL:

6       Q    Let me start with a new question.  You

7   understood, did you not, that at or near the time

8   of the 2010 incident that    REDACTED    described

9   this incident as consensual between his  REDACTED  and

10  Pastor Johnny Hunt?

11          MR. KLEIN:  Objection as to form.  You can

12  answer.

13          THE WITNESS:  I recall that    REDACTED

14  told us that Roy Blankenship termed the incident

15  between  REDACTED  and Dr. Hunt as inappropriate but

16  Consensual, and that that is the narrative, false

17  narrative according to    REDACTED   , that he received

18  and accepted at the time.

19  BY MR. MACGILL:

20      Q    So   REDACTED   did admit to you when you

21  interviewed him that he understood after 2010 for

22  some period of time that the encounter between

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 101 of 441 PageID #: 3713

1  pastor Johnny Hunt and his REDACT was consensual?

2          MR. KLEIN:  Objection.  Mischaracterizes

3  his testimony.  And it's been asked and answered.

4  You can answer.

5          THE WITNESS:  I understood that he

6  accepted the narrative defined by Roy Blankenship in

7  the presence of Dr. Hunt and      REDACTED      as

8  unappropriate but consensual and that he accepted

9  that narrative at that time.

10 BY MR. MACGILL:

11     Q     And you understood that prior to this

12 report being published?

13     A     I understood that he accepted that

14 narrative at that time.

15     Q     And he changed that narrative with

16 information that was provided eight or nine years

17 later to you, right?

18          MR. KLEIN:  Objection as to form?

19          THE WITNESS:  Who changed the narrative.

20 BY MR. MACGILL:

21     Q        REDACTED       changed his views on

22 whether it was consensual or not eight or nine

1   years after the event, didn't he?

2           MR. KLEIN:  Objection as to form.

3           THE WITNESS:  I don't know when that

4   happened.

5   BY MR. MACGILL:

6       Q    Well, sir, you knew based on your

7   work -- we've got all the documents right here

8   that we're going to show you today.  But you knew

9   by 2018 or 2019 REDACT had a different opinion as
                    ED

10  to whether the encounter was consensual or not,

11  right?

12      A    It changed from August 2, 2010, until

13  when I spoke to him in February of 2022, but I do

14  not know when that changed.

15      Q    Because there was a change in his view

16  from consensual to not consensual, did that raise

17  any red flags with you as an investigator with

18  some 30 years experience?

19      A    It did not because I took into

20  consideration that Roy Blankenship manipulated the

21  narrative for a period of several months and that

22  that impacted how he viewed the encounter between

1    Dr. Hunt and his wife,    REDACTED    .

2         Q    Are you saying to this court that

3    Mr. Blankenship is a liar?

4         A    No, I'm not.

5         Q    Are you saying anything that -- are you

6    saying he spoke something that was untruthful in

7    any way at any time, sir?

8         A    That's not what I said.

9         Q    All right.  So he's -- he's an honest

10   person as far as you know?

11              MR. KLEIN:  Objection as to form.

12   BY MR. MACGILL:

13         Q    Right?

14         A    He was honest.  I believe he was being

15   honest with us when he interviewed him on May 9,

16   2022, if that's what you're asking.

17         Q    Did you -- sir, did you listen to the --

18   did you -- strike that.

19              You came to learn that    REDACTED

20   had tape recorded the counseling session with his

21   wife and Pastor Johnny Hunt, right?

22         A    No.

1    Q    You didn't know that?

2    A    Tape recorded the conversation

3  between -- with Pastor Johnny Hunt?

4    Q    Between Blankenship, Hunt, and his REDACTED

5  Did you understand there had been a tape recording

6  of that?

7    A    I listened to tape recordings, audio

8  recordings, between Roy Blankenship and the

9  REDACTED .

10   Q    All right.  And you did that prior to

11 the publication of the report?

12   A    Correct.

13   Q    Now, sir, we're going to review later in

14 your testimony a request of   REDACTED   about

15 document destruction.  Did you yourself destroy

16 any documents in this case?

17   A    No.

18   Q    Now, we have the record evidence.  By

19 the time you testify, sir, will be before this

20 court and jury pertaining to the documents

21 produced by   REDACTED   and the documents that

22 were produced by your company.  And there are

1    documents missing from your company's production.

2    And that's been documented and will be proven to

3    this court and to this jury.

4              Did you have anything to do with the

5    missing documents, sir?

6              MR. KLEIN:  Objection as to form.

7              THE WITNESS:  I don't know what you're

8    referring to.

9    BY MR. MACGILL:

10       Q    You don't have any knowledge about

11   issues pertaining to the production of your

12   company of the failure to produce documents that

13   were produced by the REDACTED ?

14             MR. KLEIN:  Objection as to form.

15             THE WITNESS:  I don't know what you're

16   referring to.

17   BY MR. MACGILL:

18       Q    But for your part, what you are

19   confirming is you did not take any steps yourself

20   to destroy documents?

21       A    Destroy documents?

22       Q    Yes.

1     A    No.

2     Q    Pertaining to this investigation, you

3  did not destroy documents?

4     A    I am aware that there are some text

5  messages perhaps between me and other parties that

6  were provided by other parties that I did not

7  retain.

8     Q    Why not?

9     A    I, as a practice, do not retain every

10  text message that I receive.  I frequently clean

11  out my emails and my texts.  That's how I operate.

12  If you were to look at my email inbox right now,

13  you'd probably see a half dozen emails.  Some

14  people, if you looked at their email, they'd have

15  a thousand, 800 not read.  In general on a

16  periodic basis, I swipe my text messages and I do

17  so to maintain organization and to keep myself

18  focused, and that's how I organize myself.  And

19  perhaps I deleted a text at some point in time

20  between me and another party to this

21  investigation.

22     Q    But, you know, I think you understand

1    what I'm asking.    REDACTED    wrote you and asked

2    whether you had destroyed documents as requested.

3    Do you recall that?

4              MR. KLEIN:  Objection.  I believe asked

5    and answered earlier, but you can answer.

6              THE WITNESS:  I don't recall specifically.

7    BY MR. MACGILL:

8         Q                      REDACTED


11        A    I don't know the exact date, but I

12   recall an email or something of that sort.

13   Perhaps a text message.

14        Q    Did you respond to him?

15        A    I did.

16        Q    How did you respond to him?

17        A    I think I referred him to the firm Mintz

18   and Gold.

19        Q    To the law firm?

20        A    Correct.

21        Q    Now, sir, you talk about how you

22   maintain organization, but you'll admit right now

 1   without any equivocation on your part that you

 2   took steps in connection with this investigation

 3   involving Pastor Johnny Hunt to make sure there

 4   was "paper trail" as to portions of your work.

 5              MR. KLEIN:  Objection as to form.  Asked

 6   and answered.

 7              THE WITNESS:  I disagreed with you before,

 8   and I disagree with you now.

 9   BY MR. MACGILL:

10       Q                    REDACTED

14              MR. KLEIN:  Objection as to form.  Asked

15   and answered.

16              THE WITNESS:  I don't remember that.

17   BY MR. MACGILL:

18       Q    You don't recall that?

19       A    I don't recall that.

20       Q    As a part of your work on this matter,

21   sir, did you or did you not take steps to make

22   sure there was      REDACTED        on certain

```
 1   matters?
 2          MR. KLEIN:  Objection as to form.  This is
 3   the seventh time.  You can answer one more time.
 4          THE WITNESS:  No.
 5   BY MR. MACGILL:
 6      Q    You don't recall such an email, and to
 7   your knowledge, you never sent such an email?
 8          MR. KLEIN:  Objection.  Do not answer that
 9   question.  It's been asked eight times.  Please
10   don't ask for a different answer.
11          MR. MACGILL:  Why don't we take about a
12   ten-minute break.  Then maybe a short -- then we'll
13   come back for a little session before lunch.
14          VIDEOGRAPHER:  Off the record at 11:31.
15          (Whereupon, a brief recess was taken.)
16          VIDEOGRAPHER:  We're now back on the
17   records at 11:50.
18   BY MR. MACGILL:
19      Q    Sir, welcome back.  I want to -- you
20   testified before the break that you've used the
21   phrase sexual assault.  Do you remember that
22   phrase?
```

1     A     I don't remember exactly using that

2     phrase, but I won't disagree.

3     Q     You used it at least twice in your

4     testimony.  What did you mean when you said sexual

5     assault.  How do you define sexual assault for

6     purposes of the answers that you have given?

7     A     Unwanted sexual contact between two

8     individuals.

9     Q     And where do you get that definition?

10     A     By common understanding.

11     Q     Did you define terms in your report?

12     A     I don't recall if it was defined in the

13     report.

14     Q     Did you describe this incident between

15     Pastor Johnny Hunt and     REDACTED     as a sexual

16     assault?

17     A     I believe that was how it was referred

18     to in the document.  I don't have it in front of

19     me, but that's how it was referred to.

20     Q     That was how it was referred to?  Is

21     that what you're testifying to?

22              MR. KLEIN:  Objection.  Mischaracterizes

1  his testimony.

2          THE WITNESS:  I would need to see it.

3  BY MR. MACGILL:

4      Q    All right.  But if you did use the term

5  sexual assault in the report, what you mean is

6  unwanted sexual contact.

7      A    Between two individuals.

8      Q    Okay.  Fair enough.  Now, sir, we

9  covered this in part before, but would you take a

10 look at the engagement letter, the third page of

11 it, which is EC0014.  This is Exhibit 2.

12     A    Where on this page would you like me to

13 look?

14     Q    Top of page 6.  It says:  As to

15 transparency, the ** report would be a "public

16 report."  Is that right?

17     A    That's what it says here.

18     Q    And that was always your understanding

19 from the beginning of your work that you did.

20 Until the report was published by Guidepost,

21 right?

22          MR. KLEIN:  Objection as to form.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 112 of 441 PageID #: 3724

1         THE WITNESS:  Yes.

2  BY MR. MACGILL:

3    Q   Now, sir, I want to ask if you turn to

4  the page number 6, which is EC00016, do you see a

5  section on indemnification?

6    A   I do see that section.

7    Q   There's a -- it says here that the SBC

8  agrees to indemnify Guidepost for any actions,

9  judgments or claims against Guidepost arising out

10  of the engagement.

11        Do you know why your company asked for SBC

12  to indemnify your company for any actions, judgments

13  or claims arising out of the engagement?

14        MR. KLEIN:  Objection.  Calls for a legal

15  conclusion.  You can answer.

16        THE WITNESS:  I don't.

17  BY MR. MACGILL:

18    Q   And then it continues:  Unless and until

19  it were to be finally adjudicated that Guidepost

20  actions were negligent, tortious, or beyond the

21  scope of the engagement.

22        Do you see that?

1      A    I see it.

2      Q    So as you sit here as a lead

3  investigator, do you understand that if your

4  judgment -- if your actions are deemed negligent,

5  that there is no indemnity obligation.

6           MR. KLEIN:  Objection.  Calls for a legal

7  conclusion.  You can answer.

8           THE WITNESS:  I understand.

9  BY MR. MACGILL:

10     Q    You understand that to be the case?

11     A    What you just said, I understand.

12     Q    Yeah.  And I want to ask you, as a lead

13 investigator, so you knew that if you or those

14 working with you at Guidepost were negligent,

15 tortious, for example, that you would not have

16 indemnity from SBC.  Right?

17          MR. KLEIN:  Objection.  At what point are

18 we talking about?

19          THE WITNESS:  This is the first time I've

20 read this today.

21 BY MR. MACGILL:

22     Q    Not seen this before?

1       A    No.

2       Q    Now that you've read it -- well, let me

3  just ask you this.  Did you -- as you did your

4  work, did you understand that if you were

5  negligent in your work that you would not have the

6  right to be indemnified by Guidepost?

7       A    That was never discussed.

8       Q    Okay.  So it never came up on your radar

9  screen?

10      A    Not with me directly, no.

11      Q    Sir, if you look at section 3.6, in

12  terms of your understanding, the last sentence of

13  3.6 of this engagement letter, which is Exhibit 2,

14  says:  A written report will be made public in its

15  entirety prior to 2022 SBC annual meeting.

16           Did you understand that to be the case at

17  the time you were doing your work?

18      A    I wasn't aware of these terms here

19  outlined in 3.6.

20      Q    Okay.  But you understood your work

21  needed to be finished prior to that SBC meeting,

22  annual meeting, in 2022?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 115 of 441 PageID #: 3727

1          A     I just knew that the report would be

2     published at the end of our investigation.  I

3     didn't have it related to any certain event or

4     date.

5          Q     At the beginning of your work did you

6     work on making a request for documents to the

7     executive committee?  Was that part of your

8     personal work?

9          A     Me personally, I did not make any

10    requests for documents to the executive committee.

11         Q     Who did that?

12         A     I don't know.

13         Q     Did Guidepost receive documents in

14    response to requests of information from the SBC?

15         A     Yes.

16         Q     Now, sir, you testified earlier that in

17    preparation for the deposition you reviewed four

18    different text messages involving four different

19    parties.  Do you remember that?

20         A     Number four doesn't -- I don't remember

21    that, but I did review text messages from

22    different parties.

1      Q    And one was from the -- you reviewed

2  text messages from your CEO?

3      A    Yes.

4      Q    And from Krista Tongring?

5      A    Correct.

6      Q    From Ms. Kilpatrick?

7      A    Yes.

8      Q    And who was the fourth person?

9           MR. KLEIN:  Objection as to form.  You can

10  answer.

11          THE WITNESS:    REDACTED    was one -- an

12  additional person.

13  BY MR. MACGILL:

14     Q    And how did you gain access to these

15  text messages from these four parties?

16     A    Some were text messages that I had that

17  I -- that I provided upon request.

18     Q    Provided to whom?

19     A    We were directed to utilize some type of

20  software to upload text messages.

21     Q    Who directed you to do that?

22     A    Someone in our organization.  Brian Kim.

1      Q    Brian Kim.  You said that your custom

2  and practice is to simply delete text messages,

3  keep your phone clean, so to speak, right?

4      A    That's fair to say.

5      Q    And so you didn't look at any text

6  messages on your phone?

7      A    I'm sorry?

8      Q    You did not look at any text messages on

9  your phone in preparation for your testimony?

10      A    I didn't directly look back at my phone

11  because everything I had on my phone I uploaded as

12  directed.

13      Q    By whom?

14      A    So the directive to upload text messages

15  came from someone on our technical staff named

16  Brian Kim.  He handles eDiscovery I believe.

17      Q    All right.  And what's his job in your

18  firm?

19      A    As I said, eDiscovery facilitation I

20  guess.

21      Q    Is he a lawyer?

22      A    He might have a law degree.

1      Q    All right.  So did you -- did you go --

2    did you seek him out when you said you wanted to

3    review the text messages from these, involving

4    these four people?

5      A    Seek him out, no.

6          MR. KLEIN:  You mean to prep for the --

7    deposition prep.

8    BY MR. MACGILL:

9      Q    Why did -- what did you -- so why in the

10   world did you go to him and say I want to look at

11   text messages.  Why did you do that?

12      A    Why did I not?

13      Q    Why did you?

14      A    I didn't go to him.

15      Q    What did you do?  You looked at text

16   messages.  How did you go about getting that

17   accomplished?

18      A    I -- I looked at my text messages.

19      Q    Using the software that he directed you

20   to?

21      A    I looked at them I believe through the

22   software, but also --

1          MR. KLEIN:  Without revealing
2    communications -- if you want to answer regarding
3    anything we did, you cannot disclose any
4    communications.
5          THE WITNESS:  I'm not sure I understood
6    that.
7          MR. KLEIN:  Can we take a moment so I can
8    get clarity on a privilege issue.
9          (Brief pause.)
10   BY MR. MACGILL:
11        Q    So how did you know to go to use this
12   particular software?  Was it Mr. Brian Kim who
13   told you that this software is available?
14        A    Yes.
15        Q    All right.  And then you took advantage
16   of what he told you and looked at the text
17   messages involving these four parties, right?
18        A    Yes.
19        Q    And you weren't reviewing just screen
20   shots of them, you were reviewing the full text
21   streams that you were interested in; is that
22   right?

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 120 of 441 PageID #:
3732

1    A   I don't know that they had the full text

2  streams.  I'd have to -- each one would be -- I

3  would have to look at.

4    Q   But you were looking at text messages,

5  not screen shots of text messages; is that right?

6    A   No.  They would be screen shots;

7  otherwise, to look at the text message you would

8  have to be looking at the device.

9    Q   How much time did you spend looking at

10  those text messages?

11    A   Including emails and documents, I

12  probably spent more than five hours.  Perhaps

13  upwards of ten hours looking at documents.

14    Q   Including text messages from the four

15  parties you mentioned?

16    A   That would have been part of what I

17  reviewed.

18          (HOLSKE Exhibit Number 6 was marked for

19          identification.)

20  BY MR. MACGILL:

21    Q   Sir, I'm going to hand you Exhibit 6.

22  Sir, do you recognize Exhibit 6?

1      A    If you give me a moment, I just to

2   review it.

3      Q    Yeah.  Sure.

4      A    Okay.

5      Q                        REDACTED

REDACTED

19    Q   Okay.  So I want to be very specific

20  now.  As of this point in time in your

21  investigation had you identified any abuse by

22  executive committee members during the 2000 to

1    2021 period of time?

2         A    I'm sorry.  Can you repeat that?

3         Q    So you were engaged -- you had a 21-year

4    look-back period for your work, right?

5         A    That's correct.

6         Q    Two decades in a year, right?

7         A    Yes.

8         Q    So as of February 11th --

9         A    Two decades and six months.

10        Q    Okay.  Two decades and six months.  So

11   during that two-decade-and-six-month period of

12   time as of February 11th, had you identified any

13   abuse allegations that were new in addition to

14   what the SBC already had?

15        A    In addition to the incident involving

16   Dr. Hunt, you mean?

17        Q    Yeah.  Did you have anything.  I mean

18   did you have any -- I just want to know.  Did you

19   have nothing at that point in time?

20        A    I may have had Dr. Hunt's identity at

21   this time.  I don't -- there was a series of

22   conversations where    REDACTED    was scared about

1  retaliation, was concerned for his wife.  He
2  didn't immediately come out with all the facts and
3  so I -- at this -- when this particular text took
4  place, I can't tell you, sitting here at this
5  moment, how much I knew at that time.
6      Q    So you may not have understood my
7  question.  Or maybe you did and gave the answer
8  you did, but let me just restate it.
9      A    Okay.
10     Q    For this, you were involved in an
11 investigation involving a
12 two-decade-plus-six-month period of time, right?
13     A    Yes, sir.
14     Q    On February 11th, 2022, how many abuse
15 allegations did you have that you had uncovered
16 through your work on this investigation since
17 October that were in addition to what the SBC
18 already had?
19     A    I had talked to other witnesses about
20 other sexual abuse allegations besides this one.
21     Q    How many?  I've got my pen right here.
22 I'm going to write them down.  I want you to tell

Veritext Legal Solutions
www.veritext.com                                            888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 125 of 441 PageID #: 3737

1    this jury and me, and I'll make notes as we go,

2    how many new allegations of sexual abuse did you

3    have, sir, prior to February 11th, 2022, that the

4    SBC did not already have.  How many?

5         A    I can't tell you that.  I don't know.

6         Q    List one.  I'd like to you list one

7    allegation that you had as of February 11, 2022,

8    that was new and different from what the SBC

9    already had?

10             MR. KLEIN:  Objection as to form.  You can

11   answer if you know.

12             THE WITNESS:  I took other reports of

13   sexual abuse, and I don't know that I'm comfortable

14   revealing the names of the parties involved.

15   BY MR. MACGILL:

16        Q    Did you have a single -- can you name a

17   single one, sir?  Whether you're comfortable or

18   not, the court will tell --

19        A    Cases the sexual abuse?

20        Q    Yeah.

21             MR. KLEIN:  Without identifying the name,

22   you can answer his question.

1          REDACTED

1    engagement with the SBC and run a hotline since

2    May of 2022, and I've taken a lot of reports from

3    survivors and advocates, and I just can't remember

4    the exact cases.

5    BY MR. MACGILL:

6         Q    Sir, you prepared for your testimony.

7    You've met with lawyers, these New York lawyers

8    twice, right?

9         A    Right.

10        Q    And now is your opportunity.  I want you

11   to identify for this court and jury any other

12   allegations of sexual abuse prior to February 11,

13   2022, that you had identified as a part of your

14   investigation other than    REDACTED    incident

15   that he identified with his wife and this

16   allegation involving the music minister.  Any

17   others?

18        A    This had nothing to do with my

19   preparation for this testimony today, so I'm sorry

20   did not prepare to talk about other victims of

21   sexual abuse during the course of the

22   investigation.

1          Q    The unvarnished truth of it is, sir --

2    and to repeat -- the unvarnished truth of this is

3    you didn't have a single other sexual abuse

4    allegation other than what you're claiming about

5    Johnny Hunt prior to February 11, 2022, did you?

6              MR. KLEIN:  Objection as to form.

7    Mischaracterizes his testimony.

8              THE WITNESS:  That's not correct.

9    BY MR. MACGILL:

10         Q    List every one that you had knowledge of

11   prior to February 11, 2022.

12             MR. KLEIN:  Objection as to form.  He just

13   did that.  He can do it again one more time, but he

14   just answered that exact question.

15             THE WITNESS:  As I told you, I'm not

16   prepared, I did not prepare in advance to talk about

17   other sexual abuse victim cases that I encountered

18   during my investigation prior to the release of the

19   report during the course of the investigation.

20   BY MR. MACGILL:

21         Q    Now, but the fact is, sir, the

22   unvarnished truth of this is you had nothing -- to

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 129 of 441 PageID #:
3741

1  repeat -- you had nothing as of February 11, 2022,

2  that you could put in this draft report that was

3  new, did you?

4         MR. KLEIN:  Objection as to form.  Asked

5  now three times and answered three times.

6         THE WITNESS:  That is incorrect.

7  BY MR. MACGILL:

8      Q         REDACTED

       it's all I thought and more.  You were

10  expressing enthusiasm about what    REDACTED    had

11  told you, right?

12        MR. KLEIN:  Objection.  Asked and

13  answered.  You can answer.

14        THE WITNESS:  Enthusiasm would not be the

15  correct term.

16  BY MR. MACGILL:

17     Q    Okay.  But this was just the first or

18  second interview with the -- first or second of

19  nine interviews you did with the REDACTE during

20  the course of your investigation, right?  Here on

21  February 11?

22     A    I don't know how many conversations I

1    had had at the time of February 11 at 4:26 p.m.

2         Q    Why didn't you include the allegations

3    pertaining to this music minister in your report,

4    sir?

5              MR. KLEIN:  Objection as to form.  You can

6    answer.

7              THE WITNESS:  In the report?

8    BY MR. MACGILL:

9         Q    Yes, sir.

10        A    I believe it's in the report.

11        Q    It's in the report?

12        A    I don't know for sure, but it was

13   something I investigated.

14        Q    Now, the SBC recently settled a lawsuit.

15   You are aware of that settlement that recently

16   occurred?

17        A    I am not aware of the settlement.

18        Q    But you are aware of the parties

19   involved?

20        A    I'm not aware.

21             MR. KLEIN:  Objection as to form.  Give me

22   a second to object.  The court reporter needs some

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 131 of 441 PageID #: 3743

1  space between our questions and the answers.  I

2  object as to form.  You can answer if you know.

3          THE WITNESS:  I'm not aware of a

4  settlement.

5  BY MR. MACGILL:

6      Q    All right.  Let's pull up those names.

7  So did your draft report include references to a

8  Mr. Page, a Mr. Patterson, and a Mr. Pressler as

9  of May 10, 2022?

10     A    I'm sorry.  Can you ask me that question

11  again?

12     Q    Yeah.  Are you confused about what I'm

13  asking about when I talk about Page, Patterson,

14  and Pressler?

15         MR. KLEIN:  Objection.  That wasn't his

16  question.  He asked if you can say it again, not

17  that he was confused.  Please do not mischaracterize

18  his question to you.  Thank you.

19  BY MR. MACGILL:

20     Q    Do you have any confusion about the

21  names Page, Patterson, and Pressler, sir?

22     A    No.

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 132 of 441 PageID #: 3744

1          Q     And you know that they were in your

2     draft report on May 10, 2022, weren't they?

3          A     I don't remember.

4          Q     You removed them from your report, did

5     you not?

6                 MR. KLEIN:  Objection as to form.  You can

7     answer.

8                 THE WITNESS:  I am not aware of that.

9     BY MR. MACGILL:

10         Q     So did you review versions of your

11    report where they were included at one point and

12    they were taken out in another?

13                THE WITNESS:  Can I answer?

14                MR. KLEIN:  Yes.  You can.

15                THE WITNESS:  I only reviewed documents

16    related to Dr. Hunt.

17    BY MR. MACGILL:

18         Q     Why was -- why are the allegations as to

19    Mr. Pressler removed from your report?

20                MR. KLEIN:  Objection as to form.  You can

21    answer.

22                THE WITNESS:  I don't know.

1  BY MR. MACGILL:

2      Q    Did you have any role in that?

3           MR. KLEIN:  Objection as to form.

4           THE WITNESS:  I did not.

5  BY MR. MACGILL:

6      Q    Do you know anybody who did?

7           MR. KLEIN:  Objection as to form.  It

8  mischaracterizes his testimony that it was removed,

9  but you can answer if you can.

10          THE WITNESS:  I don't know.

11 BY MR. MACGILL:

12     Q    Well, sir, let's look at just some very

13 basic things.  You told us this whole thing that

14 you were involved with, this entire thing that you

15 did, involved a period of two decades and six

16 months.  Do you remember that?

17     A    The entire thing that I did?

18     Q    Yeah.  All that you've caused here

19 relates to that period of time, doesn't it?

20          MR. KLEIN:  Object.

21 BY MR. MACGILL:

22     Q    The 2000-to-2021 period of time.  You

1  understand that, do you not?

2          MR. KLEIN:  Objection as to form as to

3  what "caused" means, but you can answer if you can.

4          THE WITNESS:  Your question is not clear

5  to me.

6  BY MR. MACGILL:

7      Q    Your foot -- the footprint of your work

8  covered what period of time?

9      A    The scope of our engagement was from

10  January 1, 2000, through June -- forgive me --

11  June 14th, 2021.

12      Q    Now, did the Pressler -- was the

13  Pressler conduct, did that involve -- was

14  Pressler's conduct occurring, at least in part,

15  during that period of time?

16      A    I had no role in that aspect of the

17  investigation.

18      Q    Why not, sir?  You were charged -- it

19  was on your own interview template, right?  You

20  were supposed to do interviews pertaining to that

21  period of time.  Why did you not include Pressler

22  in your work, sir.

1          MR. KLEIN:  Are you asking him in his

2     individual capacity or as Guidepost?

3     BY MR. MACGILL:

4          Q    Why didn't you include that, sir?

5          MR. KLEIN:  You can answer in your

6     individual capacity if you know.

7          THE WITNESS:  The responsibilities for

8     investigating the different allegations were shared

9     among different team members.  I had nothing to do

10    with the Pressler or Patterson matters.

11    BY MR. MACGILL:

12         Q    Who did.

13         A    I do not know.

14         Q    One of your colleagues at Guidepost?

15         A    I assume, yes.

16         Q    You have no knowledge of who was

17    involved there?

18         A    I don't recall which of the

19    investigators had Mr. Patterson.  I don't recall

20    which investigator had Mr. Pressler.

21         Q    Now, your CEO was involved in those

22    matters, right?  You saw it with your own eyes

1  emails involving her and Pressler and Patterson,

2  right?

3         MR. KLEIN:  Objection as to form.  You can

4  answer.

5         THE WITNESS:  I don't recall any emails

6  from our CEO on the Pressler and Patterson matters.

7  BY MR. MACGILL:

8       Q    So what --

9       A    Once again, I was not the investigator

10  for those allegations.

11      Q    What were you the investigator for?

12      A    I interviewed several past presidents of

13  the SBC that fell within the scope of our

14  engagement including Jack Graham, Morris Chapman,

15  Steve Gaines, Frank Page, perhaps others.

16      Q    And why were you interviewing them?

17  Were there sexual abuse allegations associated

18  with them?

19      A    We interviewed executive committee

20  members, including presidents of the SBC, trustees

21  to the executive committee, employees of the

22  Baptist Press, sexual abuse survivors, sexual

1  abuse survivor family members, and any other
2  witnesses willing to come forward and speak to us
3  about this matter.
4      Q   Were any of the four gentlemen that you
5  mentioned, were they -- did you interview them
6  pertaining to allegations of sexual abuse by them?
7      A   We interviewed all of them and asked
8  questions related to the five bullets here.
9      Q   Okay.  You have a section in the report
10 entitled allegations of abuse committed by
11 executive committee members.  And Frank Page,
12 there was information drafted as to him in the
13 report -- in the draft report, right?
14     A   I don't recall.  I didn't prepare to
15 talk about Frank Page for today.
16     Q   The only name, sir, in the final report
17 pertaining to "allegations of abuse committed by
18 executive committee members" was Pastor Johnny
19 Hunt.  Is that right?
20         MR. KLEIN:  Objection.  Asked and
21 answered.
22         THE WITNESS:  Again, I did not prepare to

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 138 of 441 PageID #: 3750

1  speak about anything today besides the incident

2  involving Dr. Hunt.

3  BY MR. MACGILL:

4      Q    Well, sir, I'm just asking about the

5  work you did and all the circumstances that

6  resulted from the Guidepost report here.  Don't

7  you understand at a very basic level that there's

8  a section of your report entitled allegations of

9  abuse committed by the executive committee

10  members?

11          Do you understand that?

12          MR. KLEIN:  Objection as to form.  You say

13  your report.  This is not his report.  It's

14  Guidepost's report.  But of course, you can ask him

15  questions about his memory about his individual

16  role.  With that, you can answer.

17          THE WITNESS:  I would have to see the

18  report in its entirety and look to see if there was

19  anything involving Dr. Frank Page.  I don't recall

20  what ended up in the report related to him.

21  BY MR. MACGILL:

22      Q    You were the principal drafts person of

1   this report, were you not?

2           MR. KLEIN:  Objection.  Mischaracterizes

3   his testimony.  You can answer.

4           THE WITNESS:  I was not.

5   BY MR. MACGILL:

6       Q    Who was?

7       A    The report is several hundred pages long

8   and several members of the investigative team

9   provided draft input.

10      Q    Who was the principal drafts person,

11  sir, of the section entitled allegations of abuse

12  committed by executive committee members?

13          MR. KLEIN:  Objection as to form.  You can

14  answer.

15          THE WITNESS:  If you are referring to the

16  event involving Dr. Hunt, Samantha Kilpatrick and I

17  were the principal drafters of the draft language

18  involving the incident with Dr. Hunt.

19  BY MR. MACGILL:

20      Q    Well, sir, we covered this before.  It

21  sounds like we need to cover it again.  So you

22  testified previously that you were the -- that you

1 drafted the portion of the report related to the

2 plaintiff, right?

3    A    Isn't that what I just said.

4    Q    Yeah.  That's what you said this morning

5 and that's what we need to follow up on.  That was

6 the section that you drafted, right?

7        MR. KLEIN:  Objection.  That's exactly

8 what we just testified to, but you can ask your

9 follow-up question.

10 BY MR. MACGILL:

11   Q    You understand that.  All right.  In

12 what section did that report -- portion of the

13 report appear.

14   A    I don't recall.

15   Q    Sir, in black and white terms, we'll

16 look at it this afternoon.  It's Allegations of

17 Abuse Committed By Executive Committee Members,

18 isn't it?

19        MR. KLEIN:  Objection as to form.  He just

20 answer your question.  He can answer it again or you

21 can show him the document.

22

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 141 of 441 PageID #: 3753

1  BY MR. MACGILL:

2      Q    Answer the question, sir?

3           MR. KLEIN:  You can.

4           THE WITNESS:  I don't recall the title

5  under which it was listed.  I just remember the

6  content of the report.

7  BY MR. MACGILL:

8      Q    Okay.  I'll represent to you, sir, that

9  the section A allegations of abuse committed by

10 the executive committee members contains

11 information reported as to Pastor Johnny Hunt.

12 And as you sit here today, you have no

13 recollection that that's where this portion of the

14 report appeared, right?

15          MR. KLEIN:  Objection.  Asked and

16 answered.  You can answer.

17          THE WITNESS:  I don't.

18 BY MR. MACGILL:

19     Q    All right.  Now, let's see what else you

20 don't know or maybe you do know.  Now, in prior

21 drafts the report -- prior drafts of the report

22 pertaining to this particular section, Allegations

1    of Abuse Committed by Executive Committee Members,

2    there were references to these gentlemen, weren't

3    there -- Mr. Pressler, Mr. Patterson, right?

4            MR. KLEIN:  Objection.  Is that a

5    question?

6            THE WITNESS:  I don't know.

7    BY MR. MACGILL:

8       Q    Well, did you overwrite that portion of

9    the report where you deleted those two gentlemen

10   included Pastor Johnny Hunt, sir?

11           MR. KLEIN:  Objection.  That

12   mischaracterizes his role and his testimony, but he

13   can answer again.

14           THE WITNESS:  As I told you before, I had

15   no input on Mr. Patterson -- Dr. Patterson or

16   Dr. Pressler.

17   BY MR. MACGILL:

18      Q    Now, in the second interview with

19      REDACTED   , did you conduct that interview?

20           MR. KLEIN:  Objection as to form.

21           THE WITNESS:  Second interview.  Could you

22   be more specific.

1    BY MR. MACGILL:

2        Q    Well, don't you remember that there were

3    various interviews that you did.  We covered that

4    this morning.  Do you want to go over that again,

5    sir.  I'm happy to do it.  Do you want to go over

6    it again?

7        A    What do you mean?

8        Q    February 15, 2022, you did an interview

9    with    REDACTED    .  Do you remember that?

10       A    That date doesn't speak to me.

11       Q    All right.  Well, sir, we went through

12   this --

13            MR. KLEIN:  Can you let him finish --

14            MR. MACGILL:  Pull out --

15            MR. KLEIN:  Let him finish the answer.

16            MR. MACGILL:  Pull out the --

17            MR. KLEIN:  Rob, please let him finish the

18   answer.  He's happy to answer any questions you

19   have.

20   BY MR. MACGILL:

21       Q    Pull out the interrogatory answers, sir.

22   You confirmed that this is true.  Pull it out and

1  let's go through it.

2  MR. KLEIN:  Rob, I would just ask that you

3  let him finish his answer, and then, of course, you

4  can ask any follow-up question you like, please.

5  BY MR. MACGILL:

6  Q  Do you have page 3 of this exhibit in

7  front of you, sir?

8  A  I do.

9  Q  All right.  And do you see -- do you

10 remember confirming that this, to the best of your

11 knowledge, was a truthful under-oath answer by the

12 chief operating officer of your company?

13 A  Yes.

14 Q  And you trust his word?

15 A  Yes.

16 Q  Okay.  Now, interrogatory two:

17 Complainant's husband.  Do you see that entry of

18 February 15, 2022?

19 A  I see the entry.

20 Q  And you did any interview that day,

21 right?

22 MR. KLEIN:  Objection as to form.  You can

1   answer.

2           THE WITNESS:  I documented a conversation,

3   yes.

4   BY MR. KLEIN:

5       Q    And you did an interview that day?

6           MR. KLEIN:  Objection.  Asked and

7   answered.

8           THE WITNESS:  I documented a conversation.

9   BY MR. KLEIN:

10      Q    Okay.  So you didn't do an interview.

11  You documented a conversation?  Why didn't you

12  interview him on that day?

13      A    I would need to see the document that's

14  referred to in the last column to characterize

15  accurately what happened on the 15th of February.

16      Q    Why in your mind, sir, is there a

17  difference between documenting a conversation and

18  an interview?

19      A    Perhaps on that date -- a conversation

20  can happen where you say I need a name, a full

21  name, a contact number.  I don't know what that

22  conversation entailed that particular day.

1    Q    Okay.  Now, did you do a joint interview

2    of the REDACTED with Samantha Kilpatrick on

3    March 31?

4    A    Yes.

5    Q    And did you create notes of that?

6    A    Yes.

7    Q    And you were in person for that

8    interview?

9    A    Yes, sir.

10   Q    And where did you go?

11   A    I went to Eatonton, North Carolina.

12   Q    And did Ms. Kilpatrick attend with you?

13   A    She did.

14   Q    Now, I take it this was an hour? two

15   hours?  What was it?  How long was that interview

16   there on March 31.

17   A    I remember it being an entire day.

18   Q    You met with the two of them for an

19   entire day in Eatonton, North -- South Carolina or

20   North Carolina, I should say.

21   A    Yes.  I don't recall exactly the number

22   of hours and number of minutes, but I recall it

1    being a long -- a long day.

2        Q    Did you have typed notes -- notes typed

3    up from this interview?

4        A    Yes.

5        Q    It says here documents and notes.  Do

6    you think it was not handwritten notes?  Do you

7    think it was typewritten notes on that day.

8        A    I remember having my laptop with me on

9    that trip.

10       Q    Okay.  And you took notes during the

11   conversation with them?

12       A    Correct.

13       Q    Okay.  Now, you did another joint

14   interview of the  REDACTED  on April 5, 2022; is that

15   right?

16       A    Yes.

17       Q    And that was with Ms. Kilpatrick, right?

18       A    Yes.

19       Q    And then you have an interviewee, you

20   say the plaintiff.  Who is the plaintiff?

21       A    That's Dr. Hunt.

22       Q        REDACTED       - --

1          MR. KLEIN:  Hold on.  I ask you not to --

2          MR. MACGILL:  I agree.

3          MR. KLEIN:  I appreciate it, Rob.

4          MR. MACGILL:  I agree.

5          MR. KLEIN:  Thank you, sir.

6  BY MR. MACGILL:

7      Q    Okay.  Now, you had an interview with

8  Mr. Blankenship on May 9th, 2022; is that right?

9      A    Yes.

10      Q    And that was in person?

11      A    Yes.

12      Q    Was that all day?

13      A    No.  He limited that conversation.  He

14  stated he would only talk to us for 20 minutes,

15  but we ended up speaking to him for 45 minutes.

16      Q    Sir, with respect to Mr. Blankenship,

17  how did you arrange for the interview?  Did you

18  call ahead of time and say we'd like to meet with

19  you, give him the courtesy of head-up notice, that

20  kind of thing?

21          MR. KLEIN:  Objection as to form.  You can

22  answer.

1           THE WITNESS:  We initially emailed him

2     asking him to meet with us, so he knew that we

3     wanted to speak to him about this matter.

4     BY MR. KLEIN:

5           Q     And what happened?

6           A     He replied regarding his availability,

7     his work schedule, and that he would need to get

8     back in touch with us.

9           Q     And did he?

10          A     No.

11          Q     So how did you arrange then for a

12    meeting with him if he didn't respond to you?

13          A     We went to his office.

14          Q     Uninvited?

15          A     Yes.

16          Q     Why would you go to his office

17    uninvited?

18          A     To speak to him.

19          Q     So you traveled -- and your home is

20    what?  You live here in the Washington, D.C. area?

21          A     I did at the time.

22          Q     And so you and Ms. Kilpatrick got on a

1    plane and went to Georgia to meet with him

2    uninvited?

3        A    I took a plane to get to Georgia.

4        Q    Did she also?

5        A    I believe yes.

6        Q    How did you know you were going to be

7    able to meet with Mr. Blankenship if he had not

8    agreed to a meeting?

9        A    We did not know that we would be able

10   to.

11       Q    Then how did you -- did you force a

12   meeting somehow?

13       A    No.  We did not force a meeting.

14       Q    Well, how did you get -- if you -- you

15   weren't invited and the meeting wasn't agreed to,

16   how did you have a meeting then, sir?

17       A    We approached him on public property,

18   asked him if he would be willing to speak to us.

19       Q    When you approached him, where did you

20   approach him?

21       A    Outside of his office.

22       Q    When you say outside of his office,

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 151 of 441 PageID #:
3763

1    where were you and where was he?

2         A    Kennesaw, Georgia.

3         Q    Right.  Were you on a sidewalk or --

4    where were you?

5         A    Sidewalk.

6         Q    Who was there on the sidewalk?

7         A    Me, Samantha Kilpatrick and Roy

8    Blankenship.

9         Q    What did you do to him to get him to

10   talk to you then?  You're on the sidewalk.  How do

11   you ten cause a conversation to take place when

12   you are not invited and there's a meeting that has

13   not been agreed to.  How does that happen?

14        A    We didn't do anything to him first.  We

15   identified ourselves.

16        Q    When?  When did you identify yourself?

17        A    When he encountered him on the sidewalk.

18        Q    Well, did he walk out of an office

19   building?

20        A    Correct.

21        Q    Oh, so you were waiting for him when he

22   walked outside his own office building?

1      A      That would be fair to say.

2      Q      Was he surprised to see you?

3      A      I don't know how he felt about it.

4      Q      Fair enough.  Did he know who you were

5   when he walked outside his office building?

6            MR. KLEIN:  Objection as to form.  You can

7   answer.

8            THE WITNESS:  I don't know.

9   BY MR. KLEIN:

10     Q      Okay.  Well, how did you engage him in

11  conversation then?

12     A      As I said before, we identified

13  ourselves as employees of Guidepost Solutions and

14  that we wanted to speak to him pursuant to the

15  prior email contact.

16     Q      What did he say?

17     A      He listened.

18     Q      And what happened?

19     A      He agreed to speak to us.

20     Q      Where?

21     A      Inside his office.

22     Q      How long did that conversation take

1  place?

2       A    As I said earlier, 45 minutes

3  approximately.

4       Q    Did you take notes?

5       A    I did.

6       Q    Who else took notes?

7       A    Samantha Kilpatrick.

8       Q    And this meeting was -- this meeting

9  took place how long after the incident at issue?

10      A    Eleven years and approximately nine

11  months.

12      Q    Did you tell him that you had a tape

13  recording of the interview that    REDACTED    had

14  procured of the meeting back in 2010?

15      A    I didn't.

16      Q    Why didn't you tell him, sir?  Wouldn't

17  that have been a fair way to approach this, to

18  say, look, you need to know I have a tape

19  recording of the conversation between you and

20  REDACTED    and his wife.  Did you tell him that?

21           MR. KLEIN:  Objection as to form.  You can

22  answer.

 1          THE WITNESS:  No.  But we told him that we

 2     had a signed waiver from the <span style="color:red">REDACTED</span> and that we'd

 3     like to speak to him.

 4     BY MR. KLEIN:

 5          Q    Did you tell him you had a signed waiver

 6     from Johnny Hunt?

 7          A    I didn't have a signed waiver from

 8     Johnny Hunt.

 9          Q    Well, why didn't you tell him that you

10     need to know that in terms of this counseling

11     session, I just have one waiver, not the other?

12     Why didn't you tell him that?

13          MR. KLEIN:  Objection as to form.  Your

14     can answer.

15          THE WITNESS:  Because the counseling

16     sessions that we have recordings for didn't involve

17     Dr. Hunt.  He wasn't present during the counseling

18     sessions.

19     BY MR. KLEIN:

20          Q    He wasn't present during any of the

21     counseling sessions?

22          A    The ones that I listened to that were

1    provided by    REDACTED    , I don't remember

2    hearing the voice of Dr. Hunt on those recordings.

3         Q    Let me make sure I understand.  Are you

4    saying that at the time you wrote the report you

5    did not know whether Johnny -- Pastor Johnny Hunt

6    was in the room during the time the conversation

7    was taped?

8         A    He was not in the room.

9         Q    You are certain of that?

10         MR. KLEIN:  What room are you talking

11   about?  The room where the audio recordings?

12   BY MR. MACGILL:

13         Q    Yeah.

14         A    The counseling sessions were between Roy

15   blankenship after the incident on July 25th, and

16   the parties present were        REDACTED

17   REDACTE , and Roy Blankenship.

18         Q    Okay.  Did you -- did you describe to

19   Mr. Blankenship the content of that tape recording

20   in any way?

21         A    No.

22         Q    Did you describe that there was no

1          (Whereupon, a luncheon recess was

2          taken.)

1    complaint about Johnny Hunt in the tape recordings

2    that you'd heard with your own ears?

3        A    We didn't discuss the recordings with

4    Roy Blankenship.

5        Q    Well, sir, you knew -- you knew as a

6    matter of fact -- you'd heard with your own ears

7    that there was no complaint about Johnny Hunt and

8    any sexual abuse or sexual encounter in the tape

9    recordings that you heard, right?

10              MR. KLEIN:  Objection as to form.  You can

11   answer.

12              THE WITNESS:  I don't recall whether in

13   nose recordings that I listened to back in the

14   spring of 2022 if during those conversations that I

15   listened to whether either Roy Blankenship, REDACTED

                                said the name Johnny Hunt.

17   BY MR. KLEIN:

18        Q    Are you saying because this occurred

19   approximately two years you have some inability to

20   remember what was on those tape recordings?

21              MR. KLEIN:  Objection as to form.  You can

22   answer.

                        Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 158 of 441 PageID #:
                                      3770

1          THE WITNESS:  That's not what I said.  I

2    listened to those tapes in the spring of 2022.  And

3    I don't recall whether or not Roy Blankenship, REDAC
                                                    TED
                        said the name Johnny Hunt.

5    BY MR. KLEIN:

6      Q    Okay.  But I'm asking you something

7    different, and I hope you understand that.  I'm

8    asking you whether you gave the simple courtesy to

9    Mr. Blankenship to say that, with respect to

10   recordings made in 2010, there is no reference by

11     REDACTED    to any form of sexual abuse in that

12   tape recording.

13          MR. KLEIN:  Objection.  I believe that was

14   asked and answered, but you can answer again.

15          THE WITNESS:  We did not talk about the

16   recordings.

17   BY MR. KLEIN:

18     Q    Why wouldn't you as a matter of being

19   fair and forthright in your investigatory approach

20   to explain I have evidence, Mr. Blankenship about

21   what actually occurred in 2010, and this evidence

22   is a tape recording.  Why didn't you tell him

1    that, sir?

2         MR. KLEIN:  Objection as to form.

3    Mischaracterizes the testimony.  You can answer.

4         THE WITNESS:  The tape recordings were

5    counseling sessions between Mr. Blankenship and

6              REDACTED              subsequent to the

7    incident involving Dr. Hunt.  And I don't recall

8    whether Dr. Hunt's name was ever mentioned.  So that

9    was not an element that I utilized to interview

10   Mr. Blankenship.  I used other elements of

11   information I had received prior to May 9th to ask

12   him very direct questions about the incident on

13   July 25th, 2010.

14   BY MR. KLEIN:

15        Q    But sir, you had actual evidence as what

16   was spoken 12 years prior that you had and Mr.

17   Blankenship did not have.  Why did you, sir, not

18   as a matter of common courtesy or good

19   investigatory practice simply say to Mr.

20   Blankenship I have a recording, I'd like you to

21   listen to it.

22             MR. KLEIN:  Objection as to form.  Asked

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 160 of 441 PageID #:
3772

1  and answered several times.  Please stop badgering

2  the witness.  I'd ask him not to answer that

3  question.  You've asked it several times now.

4  BY MR. KLEIN:

5      Q    Answer the question, sir.?

6           MR. KLEIN:  You can answer one more time.

7           THE WITNESS:  The evidentiary value of

8  those recordings was that Roy Blankenship had in

9  fact acted as a counselor subsequent to July 25th,

10  2010 with        REDACTED          .

11  BY MR. KLEIN:

12      Q    You sow no evidentiary value, as you

13  say, using your term, to the tape recording itself

14  that was made in 2010?

15      A    The evidentiary value was the fact that

16  in fact Roy Blankenship acted as a counselor

17  subsequent to the incident with      REDACTED


19           MR. MACGILL:  Why don't we go ahead and

20  take a break.

21           VIDEOGRAPHER:  We are now off the record

22  at 12:43.

         1              A F T E R N O O N   S E S S I O N

         2                                      (1:34 p.m.)

         3              VIDEOGRAPHER:  We're now back on the

         4     record at 13:34.

         5     WHEREUPON,

         6                     RUSSELL HOLSKE

         7     was called for continued examination, and having

         8     been previously duly sworn, was examined and

         9     testified further as follows:

        10              EXAMINATION BY COUNSEL FOR PLAINTIFF

        11              CONTINUED

        12     BY MR. MACGILL:

        13         Q    Sir, I want to go to the March 31, 2022

        14     interview you had an all day interview with the

        15         REDACTED         ; is that right?

        16         A    Yes.

        17         Q    And that was in person?

        18         A    Yes.

        19         Q    Did you review every document they

        20     provided to you prior to the time you had that

        21     meeting?

        22              MR. KLEIN:  Objection as to form.  You can

1   answer.

2            THE  WITNESS:   I had reviewed every

3   document provided prior to that day, prior to the

4   meeting.

5            (HOLSKE Exhibit Number 7 was marked for

6            identification.)

7   BY MR. MACGILL:

8        Q    Okay.  I'm going to hand you the next

9   exhibit.  So this is Exhibit 7.  Can you tell us

10  what Exhibit 7 is?

11       A    This is a narrative document

12  describing --

13       Q                        REDACTED



16       A    Correct.

17       Q    When did they provide this to you, sir?

18       A    On March 31.

19       Q    Did you have access to this document

20  when you authored the report?

21       A    Yes.  I would have had the report

22  available.

1          R
           E
           D
           A
           C
           T
           E
           D

14              (HOLSKE Exhibit Number 8 was marked for

15              identification.)

16  BY MR. MACGILL:

17       Q    All right.  Let's take a look at the

18  next exhibit.  Can you tell us what Exhibit 8 is?

19       A    This is the published report by

20  Guidepost Solutions to the Southern Baptist

21  Convention.

22       Q    And is this -- with respect to the

1  journal that we referred to previously --

2          MR. KLEIN:  When you say journal, Rob, are

3  you referring to Exhibit 7?

4          MR. MACGILL:  Exhibit 8.

5          MR. KLEIN:  You said journal, so I --

6          MR. MACGILL:  Yeah.  Let me get --

7          MR. KLEIN:  No problem.

8          (HOLSKE Exhibit Number 9 was marked for

9          identification.)

10          MR. MACGILL:  My mistake it's Exhibit 9.

11  BY MR. MACGILL:

12      Q    Can you tell us what Exhibit 9 is, sir?

13      A    This is a journal that was on the hard

14  drive that    REDACTED    provided to Guidepost.

15      Q    And when did you first get access to

16  this?

17      A    I don't remember the date.

18      Q    Now, do you know when the -- when this

19  journal was offered?

20      A    According to forensic review it was

21  between the years 2009 and 2011, but I did not

22  conduct that review.

1     Q    When you say -- who did a review of

2  Exhibit 9?

3     A    I can't say for certain.

4     Q    You say it was a forensic review?  Was

5  it review by somebody in your firm?

6     A    I believe so.

7     Q    And who in your firm would have been

8  would have had the skills to do a "forensic

9  review"?

10     A    We have more than one person that has

11  that skill set.  I do not possess that skill set,

12  so I'm not sure.

13     Q    What is a forensic review?

14     A    It would include determining when a

15  record was created -- digital record was created.

16     Q    And you believe, based on the forensic

17  review, this record was created sometime between

18  2009 and 2011?

19     A    That's the feedback I got.

20     Q    Did you review these journal entries on

21  Exhibit 9 prior to the time that you authored your

22  portion of the report?

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 166 of 441 PageID #: 3778

1      A     Yes.

2      Q     Did you have access to Exhibit 9 during

3  the entire time you did your report?

4            MR. KLEIN:  Objection as to form.

5  BY MR. MACGILL:

6      Q     Did you have access to these -- to

7  Exhibit 9 during the time you were working on the

8  report?

9      A     Yes.

10           (HOLSKE Exhibit Number 10 was marked for

11           identification.)

12  BY MR. MACGILL:

13     Q     Sir, I'm going to hand you what's been

14  marked as Exhibit 10.

15           Sir, this is a series of emails.  Do you

16  recognize this email -- if you look at the backside,

17  which is Bates 14527, there's an email from you to

18  yourself, Krista Tongring, Julie Wood Myers or Julie

19  Myers Wood, and Samantha Kilpatrick.

20           Do you see that?

21     A     I do see it.

22     Q     And this is an email, an invitation

1   invite?

2       A     Yes.

3       Q     And looking at this, do you remember

4   what you were conversing about?

5       A     Just sharing what information we had

6   obtained the day before.

7       Q     And this was after your all-day,

8   in-person meeting with the REDACTED ?

9       A     This email was authored the day after.

10      Q     And you say at the bottom of page 2 that

11  you're trying to set up a meeting with Mr. Hunt;

12  is that right?  A Hunt discussion?

13      A     No.  I'm seeking a time that I can talk

14  to Krista Tongring and Julie Myers Wood with

15  Samantha Kilpatrick present.

16      Q     My mistake.  But this was scheduling a

17  time to talk about Pastor Johnny Hunt; is that

18  right?

19      A     It was about scheduling a time for the

20  four of us to talk about what we had learned the

21  day before, which includes information about

22  Dr. Hunt.

1      Q    On the back page you say specifically --
2  the subject is Hunt Discussion.  Do you see that?
3      A    Correct.
4      Q    And what about Dr. -- what about Pastor
5  Johnny Hunt were you aiming to speak about?
6      A    What we had learned the day before from
7          REDACTED                    involving
8  Dr. Hunt.
9      Q    Why did you want to have all four of you
10 have a conversation rather than a just subset of
11 this group?
12     A    Well, Samantha Kilpatrick was with me
13 that day.  Krista Tongring was the project
14 manager, and Julie Wood was providing oversight
15 for the entire investigation.
16     Q    Now at this time, April 1st, 2022, the
17 allegations that the REDACTED were -- made this a
18 unique case as far as you were concerned, right?
19 That is, the Hunt circumstances?
20          MR. KLEIN:  Objection as to form.  You can
21 answer.
22          THE WITNESS:  It was unique with respect

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 169 of 441 PageID #:
3781

1    to my experience up until that date in that I had

2    not received or I had been involved with an

3    allegation against an executive committee member as

4    outlined in the first bullet of the scope of our

5    engagement.

6    BY MR. MACGILL:

7        Q    So this was the first time, April 1st,

8    2022, that you found a case that would meet the

9    particular requirements of the engagement letter

10   that you've outlined?

11            MR. KLEIN:  Objection.  Mischaracterizes

12   his testimony.  You can answer.

13            THE WITNESS:  No there were other

14   instances that would have been covered under the

15   second through fifth bullets of the scope, but this

16   was the only one having to do with the first bullet

17   in my experience up until that date.

18   BY MR. MACGILL:

19       Q    All right.  So this, as of April 1,

20   2022, in terms of all the work that you'd been

21   doing in this matter since October 2021 this was

22   the only case that met the requirements, or the

1  bullet point as you say, "Allegations of Abuse by

2  Executive Committee Members"; is that correct?

3          MR. KLEIN:  Objection as to form.

4          THE WITNESS:  That I was involved with

5  directly.

6  BY MR. MACGILL:

7      Q   Are you aware of anyone else involved in

8  any other allegations in connection with this

9  particular investigation involving allegations of

10  abuse by executive committee members?

11      A   I don't know.

12      Q   You don't have any knowledge of any such

13  example.

14      A   I did my work, my contribution.  I'm not

15  sure what all the other team members accomplished.

16      Q   But as far as you know, sitting here

17  today, you know of no other case that would -- no

18  other case that was investigated that would meet

19  the allegations of abuse by executive committee

20  members criterion?

21          MR. KLEIN:  Objection.  Asked and answered

22  you can answer.

1           THE WITNESS:  I don't know.

2    BY MR. MACGILL:

3        Q    When you say you don't know, you don't

4    know of any other case, right?

5        A    I don't know.

6        Q    Okay.  So I'm going to take by your

7    answer that you don't know of any other case

8    involving allegations of abuse by executive

9    committee members as you sit here today.

10           Do you have any reason to correct me on

11   that?

12           MR. KLEIN:  Objection as to form.  You can

13   answer.

14           THE WITNESS:  You seem to have made

15   reference to some earlier, so it's possible that

16   there were others.  But in my experience I don't

17   know.

18   BY MR. MACGILL:

19       Q    Okay.  Now, your words April 1 you said:

20   There's no other case like this to the best of my

21   knowledge and we need to decide how to proceed?

22           Do you see that?

1      A      Correct.

2      Q      When you said there is no other case

3  like this, what did you mean?

4      A      In my experience from the time I got

5  involved in this engagement up until that date, I

6  had not been made aware of a similar case.

7      Q      All right.  And you then said, we need

8  to decide how to proceed.  Do you see that?

9      A      I do see that.

10      Q      What needed to be decided as far as you

11  were concerned.

12      A      Next steps.

13      Q      Well, why did you -- why was this -- why

14  did you need to have four people on the phone,

15  including the CEO of the company, to make this

16  decision on how to proceed?

17      A      Because we had an instance of alleged

18  sexual abuse by a member of the executive

19  committee.  And as I had just mentioned previous,

20  in my experience up until that date, I had not

21  encountered that.

22      Q      Okay.  And at this point what you had

Veritext Legal Solutions
www.veritext.com                                                     888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 173 of 441 PageID #:
3785

1    was you had an interview with    REDACTED    and

2    an interview -- you had interviews with    REDACTED

3    REDACTE and    REDACTED    at this point pertaining

4    to -- at this point pertaining to this allegation?

5        A    Yes.

6        Q    And you had not done any other

7    interviews as of this point in time to corroborate

8    what they had to say.

9        A    Other than speaking to    REDACTED    and

10    REDACTE I had not spoken to any other witness.

11        Q    As of this time?

12        A    As of March 31st.

13        Q    Now, ultimately did you have a meeting

14    with the CEO of company, Guidepost, to determine

15    how top proceed?

16            MR. KLEIN:  Objection.  At what point?  At

17    the point listed in this email or any time?

18    BY MR. MACGILL:

19        Q    At any time after April 1st?

20        A    I would have had a discussion with

21    Krista Tongring and Julie Wood and Samantha

22    Kilpatrick and I.

1    Q    What happened in that discussion?

2    A    We shared what we had heard on the 31st,

3  the explanation by    REDACTED    on what she

4  experienced in graphic detail on July 25th, 2010.

5    Q    When you say in graphic detail, did she

6  tell you what she experienced?

7    A    Yes.

8    Q    And so you were relying on her spoken

9  word in addition to Exhibit 9.

10    A    No.

11    Q    You were relying just on her spoken

12  word?

13    A    No.  We relied on Exhibit 7, we relied

14  on prior conversations with    REDACTED    , and we

15  relied on her description of what she experienced

16  with Dr. Hunt on July 25th, 2010.

17    Q    So what was decided when all of you --

18  when you spoke with the CEO about next steps after

19  April 1st?

20    A    I think that initial conversation was us

21  explaining, as I mentioned, what we -- what we

22  heard the day before from the    REDACTED    and

1        REDACTED        and informed them so they could

2    absorb that information.  And I don't know if we

3    actually determined next steps at that -- in that

4    initial discussion or we circled back after they

5    had time to digest what they heard from us.

6        Q    All right.  Did you then -- was there a

7    subsequent interview of    REDACTED    ?

8        A    I did not interview -- I was party to a

9    conversation, a phone call, that may have been

10   very limited in content after that date.  But a

11   full-blown interview similar to what we

12   experienced on March 31st where she explained in

13   graphic detail what she experienced on July 25th,

14   2010, no.

15       Q    So on April 4, 2023, did Samantha

16   Kilpatrick do an interview with    REDACTED    ?

17       A    Can I refer to the document from the Mr.

18   Collura.

19       Q    Exhibit 1.  Yes.

20            MR. KLEIN:  Just for the record, I believe

21   you said April 4, 2023.  Did you mean 2022?

22            MR. MACGILL:  2022.  Yeah.

1            MR. KLEIN:  Just for the record.

2            THE WITNESS:  In looking at this document

3    under interrogatory number two, I can see that a

4    telephonic contact took place between    REDACTED

5    and Samantha Kilpatrick.  This document is dated

6    April 4, 2022.

7    BY MR. MACGILL:

8        Q    All right.  And did you see notes of

9    that conversation yourself?

10        A    At some point in time I did see those

11    notes.

12        Q    All right.  Now is this the fifth

13    interview with the  REDACTED ?  April 4, 2022?

14        A    I can't put an exact number on it right

15    here.

16        Q    All right.  Well, if you look at the

17    interrogatory response, you have your interview on

18    February 11th.  That's one, right?

19        A    Uh-huh.

20        Q    You have then another interview with

21    complainant's husband -- that's two -- on

22    February 15th; is that correct?

1    A    So a -- there's a conversation,

2  telephonic conversation, between Samantha

3  Kilpatrick and    REDACTED    , as it says here,

4  prior to March 31st, 2022.  So one, two, three --

5  April 4th would have been the fifth document of

6  conversation with one of the two    REDACTED   .

7    Q    Okay.  So now from February 11 to

8  April 4, you have five interviews of either or

9  both of the    REDACTED  ?

10          MR. KLEIN:  Objection as to form.

11  Mischaracterizes the testimony of it being an

12  interview.  But he can answer.

13          THE WITNESS:  Documents a discussion

14  between the parties that you mentioned.

15  BY MR. MACGILL:

16    Q    Now, let's go back to interrogatory

17  number two.  Look at the top.  Could you read

18  aloud the first two lines -- could you read the

19  first question there, sir?

20    A    Did Guideposts conduct any interviews of

21  the complainant Johnny Hunt or any other person

22  related to the claimant's allegation.  If so,

1    identify the date --

2        Q    That's enough, sir.  So the question was

3    to ask about interviews, right?  And so the answer

4    was, as you understood it, the chief operating

5    officer described interviews of the REDACTED here,

6    right?

7        A    That's correct.

8        Q    Now, so the fifth interview of the

9    REDACTED, either or both of the REDACTED, that

10   occurred as of April 4, 2022; is that right?

11       A    Yes.

12       Q    Was there a sixth interview of the

13   REDACTED?

14       A    Yes.

15       Q    When was that, sir?

16       A    April 5th, 2022.

17       Q    Did you participate in that

18   sixth interview?

19       A    Yes.

20            (HOLSKE Exhibit Number 11 was marked for

21            identification.)

22

1    BY MR. MACGILL:

2         Q    Let's take a look at the next exhibit.

3    This will be Exhibit 11, sir.

4              Okay, sir.  Is Exhibit 11 a draft of

5    your -- of the Guidepost report that was drafted as

6    of    REDACTED    ?

7         A    I'm seeing this report for the first

8    time.  So I don't know exactly 14 pages of -- 15

9    pages of content -- exactly what it is.

10             (HOLSKE Exhibit Number 12 was marked for

11             identification.)

12   BY MR. MACGILL:

13        Q    I'm going to hand you Exhibit 12.  Sir,

14   I'm going to ask you to compare the Bates number

15   on Exhibit 11 and Exhibit 12.  Do you see the

16   Bates number GP004328 on Exhibit 11?

17        A    GP004328.  Is that what you said?  Yes.

18        Q    Yes.  And then look at Exhibit 12.

19        A    Yes.

20        Q    Do you recognize this as a metadata

21   sheet for this particular exhibit.

22        A    It appears as one.  I'm not very well

1   versed in that, but it appears as one.

2        Q    Is this -- is this the metadata, sir,

3   for that particular report?

4            MR. KLEIN:  Objection as to form.  You can

5   answer if you know.

6            THE WITNESS:  I don't know.

7   BY MR. MACGILL:

8        Q    On the right-hand side you see the

9   file -- the date time?

10       A    Yes, sir.

11       Q    And do you see the file name draft

12   REDACTED

13       A    I do.

14       R
        E
        D
        A
        C
        T
        E

18       Q    Okay.  So sir, I'm going -- you can -- I

19   will tell you that we don't have the custodian as

20   yet.  We'll hopefully get that eventually.  But do

21   you recognize this now that you have this Exhibit

22   11 in your hand as the status of the draft report

1   as of that date?

2        A    I don't know because this is the first

3   time I'm ever seeing it.  I don't know exactly

4   what it is.

5        Q    But you see in the metadata -- I'll

6   represent Exhibit 12 is the metadata -- shows a

7   datetime creation of      REDACTED      .  Do you see

8   that?

9             MR. KLEIN:  Objection.  Asked and

10  answered.  You can answer.

11            THE WITNESS:  I see it.

12  BY MR. MACGILL:

13       Q    Sir, look at Bates number GP4344?

14            MR. KLEIN:  Is that within Exhibit 11?

15            MR. MACGILL:  Yes.

16            THE WITNESS:  Page 14?

17            MR. MACGILL:  Page 4 --4344.  Yeah.

18  Page 14.

19            THE WITNESS:  Yeah.

20  BY MR. MACGILL:

21       R

22       A    I do.

1       R
        E
        D

3   Do you see that?

4       A    I do.

5       Q    And did you draft this portion of this

6   particular report on April 6th?

7       A    I did not draft it.  This the first time

8   I'm seeing it.

9       Q    Well, and this, sir, says underneath

10                      REDACTED

16      A    I see it.

17      Q    Is that a true statement in this draft

18  document that has been produced to us by

19  Guidepost?

20           MR. KLEIN:  Objection.  He said he hasn't

21  seen this document before, but you can answer if you

22  know.

1           THE WITNESS:  So I -- we just discussed

2    that I had interviewed         REDACTED

3    REDACT in the days before April 5th, 2022.  That is

4    not in this draft.  That's all I can say for

5    certain.

6    BY MR. MACGILL:

7        Q    Right.  But what we know, he absolutely

8    know for certain, sir, that this is a document

9    that has been produced by your company to us in

10   this litigation.  We know that.  I'll represent it

11   to be true.  And we have the metadata for this

12   Exhibit 12, and we have Exhibit 11.  And we have a

13   business document from you and your company --

14   from your company I should say, that says:

15                    REDACTED



18           Do you see that?

19       A    I see it.

20       Q    Do you have any reason to doubt the

21   veracity of the statement made by this document

22   maintained by your company in the ordinary course

```
 1   of business?

 2            MR. KLEIN:  Objection as to form.  You can

 3   answer.

 4            THE WITNESS:  The veracity of it?  I don't

 5   question the veracity of it.  I question the

 6   accuracy of it.

 7   BY MR. MACGILL:

 8       Q    Okay.  Well, so let's look at this.  At

 9   the time this was written and given to us in this

10   lawsuit, you'd had as of this time at least five

11   interviews with the REDACTE at this point.  Had

12   you not?

13       A    Correct.

14       Q    And maybe a sixth one on April 5th,

15   right?  Because this document is April 6th, isn't

16   it?

17       A    Correct.

18       Q    So it's better and more fair to be

19   accurate to the reality of what happened here is

20   to say to this court and to this jury there are

21   six interviews of the REDACTE, either individually

22   or together, that occurred prior to the time of
```

1   the dates that appear through the metadata

2   exhibit, Exhibit 12, right?

3        A    Can you repeat the question.

4        Q    I can see with my own eyes on Exhibit 11

5   that there is a specific statement:     REDACTED


8             Do you see that with your own eyes here,

9   sir?

10       A    Sorry.

11       Q    And you've admitted already that as of

12  this time there had been six interviews with

13  either with the REDACTE individually or together

14  as of that time.  Right?

15       A    I did state that there were interviews

16  prior to that date.

17       Q    All right.  Now, as of this time you

18  have now had -- well, how many months?  Your first

19  discussion with the REDACTE was on the 11th of

20  February?

21            MR. KLEIN:  Objection.  Asked and

22  answered, but you can answer again.

1          THE WITNESS:  On or about

2     February 11th was my first conversation with REDACTED

4     BY MR. MACGILL:

5          Q     You never took a step to interview the

6     Pastor Johnny Hunt during the month of February,

7     did you?

8          A     I don't know if that's accurate.

9          Q     Do you recall taking any steps to

10    interview Pastor Johnny Hunt during the month of

11    February 2022?

12         A     The arranging of interviews of executive

13    committee members, including past presidents was

14    not done by me.  We had someone else dedicated in

15    an administrative capacity in trying to set up

16    current and future interviews with people in those

17    positions.  I was not involved so I don't know

18    when that process initiated with respect to

19    Dr. Hunt.

20         Q     So you maybe anticipated my next

21    question.  Dr. Hunt wasn't interviewed in February

22    or March or April regarding the alleged sexual

1    incident, right?

2        A    He was interviewed in April.

3        Q    But he wasn't interviewed on the

4    incident involving the REDACTED at that time, was

5    he?

6        A    The specifics of it, no.

7        Q    No.  So you did an interview with

8    respect to all that you are doing.  You didn't

9    take one minute of time to interview Dr. Hunt in

10   February, did you, sir?

11            MR. KLEIN:  Objection.  Asked and

12   answered.

13            THE WITNESS:  He was not interviewed in

14   February.

15   BY MR. MACGILL:

16       Q    You also will admit, just so everyone

17   hears it from you, you didn't interview Dr. Hunt

18   in March, did you, sir?

19            MR. KLEIN:  Objection as to form.

20   Everybody already heard it from him, but they can

21   hear it again.  He can give answer.

22            THE WITNESS:  He wasn't interviewed in

1    March.

2    BY MR. MACGILL:

3        Q    By you or anyone else at Guidepost?

4            MR. KLEIN:  Objection as to form.

5            THE WITNESS:  Not by me.

6    BY MR. MACGILL:

7        Q    He wasn't introduced by you on matters

8    associated with this incident or anyone at

9    Guidepost to you knowledge in the month of

10   April 2022, was he?

11           MR. KLEIN:  Objection --

12           THE WITNESS:  That's not accurate.

13           MR. KLEIN:  -- as to form. let me get my

14   objection in and then you can answer.

15           THE WITNESS:  He was interviewed in April.

16   You just said he was not interviewed in April.

17   BY MR. MACGILL:

18       Q    He was interviewed pertaining to this

19   incident in April of 2022, right?

20       A    With specific detail, no.

21       Q    Okay.  Now --

22       A    But he was asked in the scope about --

1  there were five elements, five bullets, and what

2  we learned on March 31, 2022, would have been one

3  of those elements, and he could have volunteered

4  it at the time.

5      Q   Now, so while you are not taking one

6  step to interview Pastor Johnny Hunt, you've

7  interviewed the  REDACTED  how many times?

8          MR. KLEIN:  Objection as to form.  It's

9  been answered several times this morning and this

10 afternoon.

11         THE WITNESS:  Attempts were made to

12 interview Johnny Hunt before April 26th, and there

13 was difficulty in getting him or acquiring his

14 availability.  His own schedule prevented an

15 interview prior to April 26th.  There were several

16 attempts made to try to schedule him before

17 April 26th.

18 BY MR. MACGILL:

19     Q   So -- but in any event you and Samantha

20 Kilpatrick did an in-person interview of Pastor

21 Johnny Hunt at one point in April on April 26.

22 2022; is that right?

1      A      That is correct.

2      Q      In Branson, Missouri?

3      A      That is correct.

4      Q      And this is in person as you said?

5      A      That is correct.

6      Q      And you typed up notes pertaining to

7    that.

8      A      Yes, sir.

9      Q      And since you were there and since

10   Ms. Kilpatrick were there, tell this court and

11   jury what you asked about this incident during

12   that in-person meeting with Johnny Hunt?

13     A      I asked him if he was aware of any

14   sexual abuse by any members of the executive

15   committee.  I asked him if there were any -- if he

16   had any knowledge of any mistreatment of sexual

17   abuse victims by executive committee members from

18   January 1, 2000, to June 14, 2021.  But I did not

19   get any more specific than that related to what

20      REDACTED      told us on March 31st, 2022.

21     Q      All right.  So let's talk about you for

22   a few minutes now in terms of your conduct.  On

1  April 26th, 2022, when you were in person face to

2  face with Pastor Johnny Hunt, you didn't mention a

3  word what had been said to you by   REDACTED

4  on February 11, 2022, did you?

5      A    That's correct.

6      Q    Sir, when you are face to face with

7  Pastor Johnny Hunt on February 15 -- or I'm

8  sorry -- when you are on the phone -- let me back

9  up.

10          When you were in person with Pastor Johnny

11  Hunt on April 26, you not didn't share with him any

12  of the specific details of your interviews -- of any

13  of your six interviews regarding this incident that

14  we're talking about in this case, did you?

15      A    On that date I did not.

16      Q    You did not.  And not only did you fail

17  to do so, sir, Samantha Kilpatrick also stood

18  silent on this topic.  She didn't mention a word

19  about the six interviews that had been conducted

20  of the   REDACTED , individually or together?

21          MR. KLEIN:  Objection as to form.  You can

22  answer if you know.

 1          THE WITNESS:  We did not disclose the fact
 2    that we had interviewed the REDACTED or any other
 3    witness to Dr. Hunt on April 26, 2022.
 4    BY MR. MACGILL:
 5        Q    So for three and a half months you've
 6    had information pertaining to this but yet when
 7    you have an opportunity to hear "the other side of
 8    the story," you stood silent, did you not, sir?
 9          MR. KLEIN:  Objection as to form.  Asked
10    and answered now three times.  I'd ask you to move
11    on, but he can answer it one more time.
12          THE WITNESS:  I wouldn't characterize it
13    as stood silent.
14    BY MR. MACGILL:
15        Q    Okay.  You talk about other things.  But
16    you certainly didn't talk to Pastor Johnny Hunt
17    about the specifics as alleged by the REDACTED,
18    right?
19          MR. KLEIN:  Objection.  Asked and
20    answered.
21          THE WITNESS:  Correct.
22

1    BY MR. MACGILL:

2         Q    Let's be even more specific.  You didn't

3    hand him, for example, Exhibit 9, did you?  This

4    REDACTE document, you didn't hand him that, did

5    you?

6         A    I did not hand that to him.

7         Q    You didn't -- you didn't hand him

8    Exhibit 7 either, did you?

9         A    I did not.

10        Q    Okay.  You, for your part, said that you

11   were conducting an independent investigation,

12   right?

13        A    Yes.

14        Q    And you were not, according to you,

15   influenced improperly or with improper motivations

16   yourself as far as the REDACTED were concerned

17   according to you, right?

18        A    I was not influenced.

19        Q    All right.  Now, if you're doing an

20   independent investigation, sir, why is it that you

21   don't provide the information to somebody like

22   Pastor Johnny Hunt, when you are with him face to

www.veritext.com                                                888-391-3376

1  face.

2        A    At that point in the investigation we

3  wanted to speak to Roy Blankenship to provide

4  additional corroboration before we spoke to

5  Dr. Hunt.

6        Q    Well, you didn't talk to Mr. Blankenship

7  until May 9th, right?

8        A    Correct.

9        Q    Now, you are keeping a secret from

10  Pastor Johnny Hunt the identity of three of your

11  "corroborating witnesses."  Right?

12            MR. KLEIN:  Objection as to form and

13  mischaracterization.  You can answer.

14            THE WITNESS:  I would not call it keeping

15  a secret.

16  BY MR. MACGILL:

17        Q    Well, you won't tell --

18        A    I would call it -- can I finish?

19        Q    Yes.

20        A    We did not disclose the identities or

21  the allegations on April 26th.

22        Q    He's on the phone.  He's listening to

1   this testimony.  Why don't you tell him right now
2   who these three men are, sir?
3           MR. KLEIN:  Objection as to form.  We've
4   discussed it.  We are not going to identify those
5   names.  They are attorneys eyes only pursuant to a
6   court order, and we are happy to discuss if and when
7   your motion is decided.
8   BY MR. MACGILL:
9       Q    All right, sir.  So let's handle it this
10  way.  So you named three witnesses in your
11  testimony.  Do you recall that line of testimony?
12      A    When Mr. Hunt -- Dr. Hunt was not on the
13  line.  Yes.  I disclosed to that to you.
14      Q    To me, but not to him, right?
15          MR. KLEIN:  Objection.  We've gone over
16  this all morning.  That's correct.
17          THE WITNESS:  I just said that.
18  BY MR. MACGILL:
19      Q    All right.  So just to orient us as to
20  what you are doing here?
21          MR. KLEIN:  Objection as to the
22  characterization that he is doing anything.  But you

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 196 of 441 PageID #:
3808

1    can answer the question.

2    BY MR. MACGILL:

3         Q    No I'm just referring to the fact that

4    you refuse to tell Pastor Johnny Hunt the identity

5    of these witnesses.  Nothing more.  All right?  So

6    I want to ask you, sir, with respect to these

7    three witnesses, witness one was referred to you

8    by    REDACTED    ; is that right?

9         A    Yes.

10        Q    Witness two was referred to you by REDACTED

11   REDACTE ; ins that right?

12        A    Yes.

13        Q    And witness three was referred to you by

14      REDACTED   ; is that right?

15        A    Yes.

16        Q    And you interviewed one on May 4, 2022;

17   is that right?

18        A    Yes.

19        Q    Witness two you interviewed on May 5,

20   2022.  Correct?

21        A    Yes.

22        Q    And witness three you interviewed on

1    May 5, 2022, also; is that right?

2         A    Yes.

3         Q    All right.  Now, did you think that it

4    might be a fair approach as a person with 32 years

5    of investigation experience and someone conducting

6    this work on behalf of Guidepost to explain on

7    April 26th to Pastor Johnny Hunt that these

8    allegations had been made and did he have any

9    witnesses that would be to describe what had

10   happened according to him?

11        A    We did not confront Dr. Hunt on April 26

12   with the allegations from     REDACTED     at that

13   time.  And the second interview he was asked if he

14   had any witnesses that he thinks we should talk

15   to.

16        Q    Okay.  Now, so you spoke to -- Samantha

17   Kilpatrick spoke to Pastor Johnny Hunt on May 10;

18   is that right?

19        A    That's what it says here in this

20   document.

21        Q    Let's back up to -- let's go to this

22   exhibit.  I want to talk about an email before we

1    go to the next exhibit, sir.

2              (HOLSKE Exhibit Number 13 was marked for

3              identification.)

4    BY MR. MACGILL:

5         Q     Sir, I've handed you Exhibit 13.  Would

6    you please take a look at Exhibit 13?

7         A     Yes.

8         Q     And if you start on the back there's an

9    email from you, May 4th, that I want to ask you

10   about.  And then you can look at everything

11   obviously.

12        A     I've read it.

13        Q     The first email is from you to Christina

14   Bischoff.  Do you see that?

15        A     I do see it.

16        Q     What was her job?

17        A     She was the drafter, the writer of --

18   her role was not investigative in any way.  It was

19   to write the report.

20        Q     And did she respond to your email on

21   May 4th at 10:14 saying:  Thanks -- she responding

22   to you -- What do you think about language like

1    this.  Re alleged Hunt assault?

2          Do you see that?

3       A    I see what she wrote.

4       Q    And it says what she's proposing: "In

5    the course of our investigation and the

6    interviewee who did not want to be named, provided

7    [credible]? information that a former member of

8    SBC leadership had committed a sexual assault

9    because we were unable to obtain additional

10   corroboration during the investigation period, we

11   do not report the allegation in this report."

12          Do you see that?

13      A    I do see it.

14      Q    And she's referring to Pastor Johnny

15   Hunt, is she not?

16      A    Yes.  And she says the interviewee who

17   did not want to be named, who is that, sir?

18          MR. KLEIN:  If it's one of the names that

19   had been identified publicly, you can give that

20   name.  If it's not anyone who's yet been identified

21   publicly, then you cannot.

22          THE WITNESS:  I don't know who she is

1  referring to in this email, so I'm hesitant to

2  potentially name one of the three witnesses that we

3  agreed we wouldn't name.

4  BY MR. MACGILL:

5      Q     But do you agree with the statement she

6  made as of that time, May 4 of 2022 at 10:14 that

7  we were unable to obtain -- because we were unable

8  to obtain additional and corroboration during the

9  investigation period, we do not report the

10 allegation in this report.  Do you agree with that

11 statement, sir?

12     A     At this point Ms. Bischoff is creating

13 the shell of what will become the final report.  I

14 think by this date on the 4th I had spoken to

15 witness one, but had not spoken to witness two and

16 three.  And you may have misspoken and I may have

17 mis-answered when you said April 4 potentially or

18 5th.  I'm not exactly sure.

19         Let me look at the dates -- can I refer to

20 the list of interviews so I can make sure I get the

21 dates correct.

22     Q     Sure.

1    A    So in fact witness one to corroborate

2  the allegation was the day of this email, and I

3  had not yet spoken to witness two and three.  So

4  in her attempting to draft the shell of the

5  document, this is a language that she proposed to

6  me that I said could work based on what we knew at

7  that point.

8    Q    So --

9    A    And I am referring, based on the date

10  and time, if you look at my email, Wednesday

11  May 4th, at 10:19 p.m., I am referring to witness

12  one in paragraph 2.

13    Q    And you are saying I did get a pastor to

14  corroborate the relating of the incident in the

15  month or two after it occurred.  That's witness

16  one according to you?

17    A    Yes, sir.

18    Q    And specifically, the victim's husband

19  told another pastor what happened, right?

20    A    Yes.  And that would be witness two, who

21  I had not spoken to at the time of this email.

22    Q    And again, this just is confirming again

1    that this is secondhand information provided by

2        REDACTED        to two other pastors?

3         A     This is relating that fact.

4         Q     Okay.  And you weren't representing that

5    they had firsthand knowledge.  You were saying

6    that, you know, this is -- you know, for example,

7    the victim's husband told another pastor what

8    happened.  That's one example of what you said,

9    right?

10        A     I'm identifying it as corroboration.

11        Q     Okay.  Now, then she says:  Let's see

12   what happens tomorrow, adding in -- this is her on

13   May 5 at 2:22 a.m. -- let's see what happens

14   tomorrow, adding in the info about pastor, even

15   without naming Hunt would lend credence to the

16   allegation.  Right?

17        A     That's what she wrote.

18        Q     And then you had an interview later that

19   day with witness number three, right?  May 5,

20   2022?

21        A     Let me look.

22        Q     Or Samantha Kilpatrick did I could say.

1    A    No.  We -- we interviewed witness two,

2    and we interviewed witness three on that date.  So

3    one possibly happened before -- oh, this is

4    2:22 a.m.  I'm sorry I thought it was p.m.  So we

5    had not yet interviewed witness two and three on

6    the 5th.

7    Q    Okay.  And you didn't -- she -- you both

8    interviewed witness two, and she interviewed

9    witness three; is that right?

10    A    No.  That's not right.

11    Q    Did you interview REDACTED -- did you

12    interview that third witness?

13    A    Samantha Kilpatrick and I conducted the

14    interview together of witness two and witness

15    three.

16    Q    Okay.  I see it on the second page.

17    A    On May 5th.

18    Q    Okay.  Now, all of this is happening

19    only -- how many days prior to the publication of

20    the report?

21    A    Are you referring to the last email here

22    on the chain?

1    Q    Yeah.

2    A    So this would be the 22nd.  So 17 days.

3    Q    Okay.  So you are at the end of the

4  line.  And 18 days before the report is published

5  it says:  Because we are unable to obtain the

6  additional cooperation during the investigation

7  period, we do not report the allegation in this

8  report.

9         So --

10   A    Which line are you referring to?

11   Q    May 4.

12   A    Oh, from Christine.

13   Q    So she's saying 18 days before the

14  report -- what she's saying -- her proposed

15  language is, as simply put, we do not report the

16  allegation in this report.  Right?

17   A    That's what she wrote there.

18   Q    And then the -- the -- what changed is

19  you claimed that there was corroboration by the

20  repeating of what    REDACTED    said to three

21  people?

22         MR. KLEIN:  Objection as to form.  You can

1    answer.

2              THE WITNESS:  No.  I wrote here that I got

3    corroboration from witness one.  That's what I state

4    in this --

5    BY MR. MACGILL:

6         Q    All you got --

7         A    -- response.

8         Q    Sir, all you got after May 4 was

9    "corroboration by three people who said what REDACT
                                                   ED

10   REDACTE told them."  Right?
     D

11        A    No.  What I say here is that I spoke to

12   witness one from whom I acquired corroboration of

13   the incident in the month or two after it

14   occurred.

15        Q    I didn't ask you what it says.  I just

16   want you to admit the reality here.  All you got

17   after these words were written by Christina

18   Bischoff was interviews of three people, witness

19   one, two, and three, who reported what REDACT
                                                ED

20   REDACTED had said to them at three different points

21   in time, right?

22              MR. KLEIN:  Objection as to form.  Asked

1    and answered.

2              THE WITNESS:  That's not accurate.  I got

3    more than the three witnesses.  I spoke to Dr. Hunt

4    on two occasions, and I also interviewed Roy

5    Blankenship.  And I also obtained the hard drive

6    which contained the journal and the audio, which

7    forensic analysis confirmed happened between 2009

8    and 2011.  So what you said is not accurate.

9    BY MR. MACGILL:

10      Q    So let's talk about being accurate.  Did

11   you report -- did you report      REDACTED

12   comments correctly in the Guidepost report, or did

13   you edit the statements made by      REDACTED      to

14   you that you just described on this record?

15             MR. KLEIN:  Objection as to form.  You can

16   answer.

17             THE WITNESS:  Could you repeat it one more

18   time?

19   BY MR. MACGILL:

20      Q    So you took      REDACTED      report to you

21   in writing, and you edited those words in the

22   Guidepost report, didn't you, sir?

1           MR. KLEIN:  Objection as to form.  You can

2     answer.

3           THE WITNESS:  No.  That's not accurate.

4     BY MR. MACGILL:

5       Q   You're denying -- let's make sure you

6     know what you are denying.  You're denying that

7     Guidepost edited the information provided by the

8     REDACTED pertaining to the incident at issue in

9     this case.

10          MR. KLEIN:  Objection as to form.  He's

11    testifying in his individual capacity.  To that

12    extent you can answer the question.

13          THE WITNESS:  No.  What I'm saying -- what

14    I will say is that specific references to the abuse

15    by Dr. Hunt on July 25th, 2010, that we, and not

16    REDACTED     , drafted was provided to the   REDACTED

17    to ensure that we had accurately captured what she

18    described to us on March 31 and what happened on

19    July 25th, 2010.  He -- they made comments on that,

20    that we did not necessarily adopt.

21    BY MR. MACGILL:

22      Q   You had a witness -- you had two

1    witnesses to your investigation edit your report?

2              MR. KLEIN:  Objection as to form.

3    Mischaracterizes his testimony.

4              THE WITNESS:  We had a survivor of sexual

5    abuse ensure that we accurately described what

6    happened to her on July 25th, 2010.

7    BY MR. MACGILL:

8        Q    Did you have    REDACTED      edit your

9    Guidepost report prior to the time it was

10   published on May 22nd, 2022?

11             MR. KLEIN:  Objection as to form.  Asked

12   and answered.

13             THE WITNESS:  She did not edit the report.

14   She reviewed the draft and made comments as to the

15   content in order that we could provide an accurate

16   description of what happened.

17   BY MR. MACGILL:

18       Q    So based on that, you as an independent

19   investigator, wanting to be fair to the facts and

20   the realties of what occurred, you also gave the

21   report to Johnny Hunt for his review, didn't you,

22   sir?

1      A     No.

2      Q     Sir, you gave it to one witness.  Why

3   did you -- why in the world did you not provide

4   the same opportunity to Pastor Johnny Hunt, sir?

5      A     We provided it to the survivor of sexual

6   abuse to make sure that the intimate, painful

7   details of what happened to her were accurately

8   described.  We did not provide it to witness one,

9   two, or three.  We did not provide it to Roy

10  Blankenship.

11     Q     So it is one sided from your standpoint.

12  You are going to take one side of the story and

13  allow one person or one person and her husband be

14  an editor of your report.  But when it comes to

15  the other side of the story, not one word is

16  reviewed or edited, right?

17           MR. KLEIN:  Objection as to form.

18  Mischaracterizes his testimony.  You can answer.

19           THE WITNESS:  That is not accurate.  We

20  interviewed Dr. Hunt, and his description of the

21  event on July 25th, 2010, is in our final draft

22  report that was published.

1    BY MR. MACGILL:

2        Q    So you forced Parter Johnny Hunt to

3    respond to you on -- very promptly and in short

4    order, didn't you, sir?

5            MR. KLEIN:  Objection as to form.  You can

6    answer.

7            THE WITNESS:  That's not accurate.

8    BY MR. MACGILL:

9        Q    After the interview you gave -- tell the

10   jury here, sir, and the court how long you gave

11   Johnny Hunt to contact Guidepost if he remembered

12   any more details regarding the encounter with

13   REDACTED    ?

14       A    He was given no time ultimatums.

15       Q    You didn't limit his time for a response

16   to 24 to 48 hours?

17       A    After he spoke to us the second time on

18   May 12, at the end of the interview after I had

19   asked him if he had any other witnesses that he

20   thinks we should talk to and he said the REDACTED

21   and Roy Blankenship only and not his wife and

22   didn't provide any other names, I asked him if he

1  had any other information to share, and he

2  declined, I told him, notwithstanding that, he

3  still had at least 48 hours to provide more

4  information upon further reflection, and we did

5  not hear back from him.

6      Q    So you gave him 24 to 48 hours did you

7  say or just 48 -- I can't remember what his

8  limitation was.  What was the limitation that you

9  put on his response?

10          MR. KLEIN:  Objection as to form.  You can

11  answer.

12          THE WITNESS:  I don't recall.

13  BY MR. MACGILL:

14      Q    Was it 24 hours, sir?

15      A    I don't believe so.

16      Q    Was it 48 hours?

17      A    I don't recall.

18      Q    Now, you didn't put any limitations on

19  the REDACTED , did you, sir?

20      A    They had the same window of time after

21  May 12th to provide us with additional

22  information.  So if they had additional

1    information between May 12 and when our report was

2    due to the SBC on May 15th, they would have had

3    that same time limitation.

4        Q    On May 10th you had yet -- Samantha

5    Kilpatrick had yet another interview on -- I'm

6    sorry.

7              On May 12, 2022, you conducted another

8    interview -- strike that.  I to the date wrong.  Let

9    me start over.

10             So on May 10, 2022, you had yet another

11   interview with the -- with    REDACTED    , right?

12       A    I did not.

13       Q    Who did?

14       A    Samantha Kilpatrick.

15       Q    So that was interview number seven?

16       A    I don't know the exact number.

17       Q    Did you have an eighth interview of the

18   REDACTED  on the 13th of May, 2022, nine days before

19   the published report?

20             MR. KLEIN:  Objection as to form.

21   Mischaracterizes.  You can answer.

22

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 213 of 441 PageID #:
3825

1   BY MR. MACGILL:

2          Q    Did you have another interview of REDACTED

3   and   REDACTED      on May 13, 2022?

4          A    Yes.

5          Q    And that was interview number eight?

6               MR. KLEIN:  Objection as to form.  You can

7   answer.

8               THE WITNESS:  I don't know what number it

9   was.

10  BY MR. MACGILL:

11         Q    Did you have a ninth interview with

12     REDACTED     on May 19, 2022?

13              MR. KLEIN:  Objection as to form.

14  Mischaracterizes his testimony.  He can answer.

15              THE WITNESS:  I did not.

16  BY MR. MACGILL:

17         Q    Did Samantha Kilpatrick?

18         A    Yes.

19              MR. KLEIN:  Same objection.  You can

20  answer.

21  BY MR. MACGILL:

22         Q    Sir, did you write a text message to the

1  CEO of your company and Krista Tongring on May 9th

2  pertaining to this report?

3      A    I don't know.

4          (HOLSKE Exhibit Number 14 was marked for

5          identification.)

6  BY MR. MACGILL:

7      Q    I'm going to hand you Exhibit 14.  Is

8  this a screen shot of one of your texts?

9      A    Can I read it for a moment, please.

10     Q    Yes.

11         R
           E
           D
           A
           C

14     Q    And why are you writing the CEO about

15  the fact that you've arrived in  REDACTED ,

16                         REDACTED


18     A    As I explained earlier, myself and

19  Samantha communicated upward to the program

20  manager, for lack of better term, and the CEO in

21  these matters.

22     Q    Now sir, this is -- tell the jury what

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 215 of 441 PageID #: 3827

1    the date is of this text?

2              MR. KLEIN:  Objection.  Asked and answered

3    you can answer.

4                      REDACTED

5    BY MR. MACGILL:

6         Q    All right.  And this is prior to the

7    time that you had -- you and Ms. Kilpatrick

8    interviewed Pastor Johnny Hunt on May 12th?

9         A    May 9th is prior to May 12th, yes.

10        Q    And you'll admit that you did interview

11   Johnny Hunt on May 12th, 2022.

12        A    I and Samantha Kilpatrick interviewed

13   Dr. Hunt on May 12th, 2022.

14        Q    So to put crystal clarity on this, three

15   days before you interviewed Pastor Johnny Hunt,

16   you wrote to the CEO of your company:   REDACTED

21              That's what you wrote three days, sir,

22   before you interviewed Pastor Johnny Hunt; is that

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 216 of 441 PageID #: 3828

1    REDACTED

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 217 of 441 PageID #: 3829

1        R
         E
         D
         A
         C
         T
         E
         D

11            THE WITNESS:  As I said earlier, he was

12   interviewed on April 26th but not confronted with

13   the specific point-by-point allegations of abuse on

14        REDACTED

15   BY MR. MACGILL:

16        Q    So you had never -- to repeat -- you had

17   never talked to Pastor Johnny Hunt before May 12,

18   2022, about the incident involving    REDACTED    ,

19   right?

20            MR. KLEIN:  Objection as to form.  Asked

21   and answered.  I ask you to move on.  Please answer

22   one more time.

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 218 of 441 PageID #:
3830

 1              THE WITNESS:  As I just mentioned, I did

 2    not get into the detailed specific allegations on

 3    April 26th, 2020.

 4    BY MR. MACGILL:

 5         Q    You didn't get in -- sir, you didn't get

 6    into a single issue associated with the REDACTED

 7    REDACTED encounter at the time that you interviewed

 8    Pastor Johnny Hunt on April 26th, 2022, right?

 9              MR. KLEIN:  Objection.  Asked and answered

10    again.

11              THE WITNESS:  We did not discuss anything

12    that happened on July 25th, 2010, in our interview

13    with Dr. Hunt on April 26, 2022.

14    BY MR. MACGILL:

15         Q    So on May 12, the first time that you

16    talked to Pastor Johnny Hunt about this matter,

17    three days prior to that interview you wrote this

18    text to the CEO of your company, right?

19         A    I did.

20         Q                        REDACTED

1                              REDACTED

1          MR. KLEIN:  Objection.  Mischaracterizes

2   the document.  The document speaks for itself, but

3   you can answer.

4          THE WITNESS:  That's not accurate.

5   BY MR. MACGILL:

6      Q   Okay.  So let's go through the words and

7   the timing one more time because you just said to

8   this court it's not accurate.  Let's take it very

9   slowly.

10     A   It's not accurate in the way you

11  characterize it.

12     Q   Fine.  Let's take it so literally there

13  will be no confusion between you and me in any

14  way.  The exact words that you wrote on May 9,

15  2022, to the CEO of your company and the project

16  manager are the following:

17                         REDACTED

1    that correct.

2         A    In here I am referring to the detailed

3    specific description by REDACTED of what

4    occurred on July 25th, 2010.

5         Q    Did I read your text correctly, sir,

6    just a minute ago?

7         A    The REDACTE did not review anything

8    other than the specifics, as I mentioned earlier,

9    of what REDACTED told us happened on

10   July 25th, 2010.

11        Q    Okay.  Let's try this one more time.

12   Did you or did you not write the following words

13   to the CEO of your company and your project

14   manager?

15             MR. KLEIN:  I will stipulate to it that

16   you read it accurately if that will help you, Rob.

17   Just so we can move past that.  I'll stipulate that,

18   as you wrote -- as you say it, that's what the words

19   on the document say.

20   BY MR. MACGILL:

21        Q    And you agree with that?  I want to make

22   sure that your counsel -- you agree with you

1                               REDACTED

4   BY MR. MACGILL:

5       Q    Okay.  Thank you.  Now, and you've

6   admitted I think, but let's just make sure because

7   of the answers two times ago.  This May 9th was

8   three days before you'd ever interviewed Pastor

9   Johnny Hunt about the incident involving REDACTED

10  REDACTED  Right?

11            MR. KLEIN:  Objection.  Asked and

12  answered.  You can answer.

13            THE WITNESS:  On May 9th we had not yet

14  confronted Dr. Hunt with the specific sexual abuse

15  allegation by     REDACTED

16  BY MR. MACGILL:

17      Q    And you not -- in fact, it's worse than

18  that, sir.  It's much worse than that.  You hadn't

19  whispered a word or stated a word to Pastor Johnny

20  Hunt about     REDACTED    claims about this

21  incident at the time of April 26, 2022.  Right?

22            MR. KLEIN:  Objection.  I'm directing the

1  witness not to the answer.  We've gone over this for

2  20 minutes now.  I ask you please, Mr. MacGill, to

3  move on.  I think you've established whatever you

4  need to establish.  I'm directing the witness not to

5  answer.

6  BY MR. MACGILL:

7        Q        REDACTED

20           MR. KLEIN:  Objection.  Asked and

21  answered.

22           THE WITNESS:  As I explained before,

1   including intimate, personal, sexual abuse details

2   in a report that will be publicized, we want to

3   ensure that the survivor of that sexual abuse is

4   convinced that how we described what happened to her

5   was 100 percent accurate.

6   BY MR. MACGILL:

7       Q    Well, sir.  Weren't you concerned at a

8   the basic level of humanity, forget your

9   investigator role -- but as a human being, weren't

10  you concerned, sir, that Mr. Blankenship had

11  stated that he thought the encounter between REDACTE

12  REDACTE and Pastor Johnny was consensual?

13      A    I wasn't concerned because he told me

14  that he felt he wasn't given the entire accurate

15  story by Dr. Hunt.

16      Q    Oh, and this is what happened when you

17  stood to the sidewalk and waited for him to come

18  outside his office?

19      A    No.  This is what happened when he

20  invited us into his office to have a discussion.

21      Q    He invited you in after you were waiting

22  on the sidewalk for him to leave his office that

1  day?

2      A    Those did happen in that order of

3  events, yes.  We were on the sidewalk, and then we

4  were inside the building.

5      Q                    REDACTED


8      Q    And that's Woodstock, Georgia, right?

9      A    Kennesaw is actually the location of the

10  office.

11     Q    Okay.  So you miswrote -- you wrote this

12  incorrectly?

13     A    I haven't been to Georgia too many

14  times.

15     Q    Okay.  And you are sitting out in front

16  of Roy Blankenship's office there in Woodstock or

17  Kennesaw as the case may be, and his car -- you

18  identified his car.  How did you know it was his

19  car?

20     A    Investigation.

21     Q    So you did some investigation to find

22  out what kind of car he drove before you flew over

1    to Georgia; is that right?

2         A    Yes.

3         Q    And then you made a plan, and that is

4    when he would come out, you would approach him and

5    try to get him to talk to you, right?

6         A    Yes.

7         Q    And you were hopeful that might happen?

8         A    Of course.  I wanted him to speak to us.

9         Q    Right.  You put an emoji in there of

10   crossed fingers, right?  Is that correct?

11        A    That's correct.

12   REDACTED

1    R

2         Q    And just continuing, sir, the final

3    report says the following, and I'm quoting at

4    page 155 of the report.  You say as to

5    Mr. Blankenship:  He reported very similar details

6    and events to those reported by survivor and

7    pastor.

8              Do you remember writing those words?

9         A    Can you point me to the specific entry

10   that you are referring to, please?

11        Q    Page 155.

12        A    Right.  And where?  Which paragraph?

13        Q    Do you recall those words, sir.  Do you

14   need to see them?  Do you recall those words, sir?

15        A    I'd like to read what you just stated.

16        Q    Just generally, do you recall those

17   words?

18        A    What words?

19        Q    Do you recall writing the words as far

20   as Mr. Blankenship is concerned:  He reported very

21   similar details and events to those reported by

22   survivor and pastor.

1          Do you recall those words, sir?

2      A    I don't see those words in this

3  document.

4      Q    Well, we'll get there.  Do you recall,

5  just separate from the -- do you have any

6  recollection of writing those exact words in the

7  report?

8      A    No.

9      Q    Now, if you look at page 155 -- are you

10 on page 155?

11     A    Yes, I am.

12     Q    You said in the last paragraph:  Our

13 investigators found Mr. Blankenship to be

14 credible.

15          Your words?

16     A    I didn't write this last paragraph.

17 This is not my words.

18     Q    Is that correct?

19     A    I have no problem with the accuracy of

20 what's stated here.

21     Q    And then continuing, the Guidepost says:

22  As stated above, he did not seek to participate

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 229 of 441 PageID #:
3841

1  in the investigation and only reluctantly agreed

2  to speak with investigators.

3      A    I'm comfortable with that statement.

4      Q    True to the best of your knowledge?

5          MR. KLEIN:  Objection as to form.  Asked

6  and answered.

7          THE WITNESS:  I'm comfortable with what's

8  written there.

9  BY MR. MACGILL:

10     Q    Okay.  So then the report continues:  He

11 reported very similar details and events to those

12 reported by survivor and pastor.

13         Is that true as far as Mr. Blankenship is

14 concerned?

15     A    Comma, with the only significant

16 difference being on the issue of consent.

17     Q    Okay.  Well --

18     A    That's an accurate statement.  That last

19 sentence in its entirety is accurate.

20     Q    So the entire sentence is correct?

21     A    I think to only include the first phrase

22 changes the meaning of the sentence.

1      Q    I didn't mean to.  I just want to get

2   clear admissions from you here, sir.  Maybe we can

3   be do it in a more expansive way.  Okay?

4          Do you agree in all respects with the

5   following statement in the Guidepost report:  He

6   reported -- meaning Mr. Blankenship -- very similar

7   details and events to those reported by survivor and

8   pastor with the only significant difference being on

9   the issue of consent.

10         Do you agree in all respects with that

11   portion of the Guidepost report?

12     A    That is an accurate statement.

13     Q    And is it accurate in terms of how

14   you -- what you learned in your interview with

15   Mr. Blankenship?

16     A    Could you be more specific?

17     Q    When of interviewed Mr. Blankenship on

18   May 9, 2022, is this part of what he confirmed to

19   you on that day, what we just read?

20     A    Being as specific as I can to that last

21   sentence, Roy Blankenship said that he believed

22   that the encounter was consensual based solely

1    upon what Dr. Hunt told him.

2        Q    Okay.  Now, but again, what you said in

3    the report, those aren't the words of your report.

4    You said with the only significant difference

5    between on the issue of consent.  Those are the

6    exact words in the Guidepost report, right?

7            MR. KLEIN:  Objection.  That those are his

8    words?  But he can answer.

9            THE WITNESS:  They are not my words, but

10   I'm comfortable with the accuracy of that sentence.

11   BY MR. MACGILL:

12       Q    You are comfortable in every respect

13   with that last sentence, are you not?

14           MR. KLEIN:  Objection as to form.  Asked

15   and answered.

16           THE WITNESS:  I'm comfortable with it.

17   BY MR. MACGILL:

18       Q    Okay.  Is there any portion of this

19   sentence that you are not comfortable with based

20   on your interview with Mr. Blankenship?

21           MR. KLEIN:  Objection.  Same question.

22   You can answer one more time.

1          THE WITNESS:  I am comfortable with it.

2     BY MR. MACGILL:

3          Q     Okay.  Thank you.  So in terms of what

4     your -- what the report says, the report indicates

5     that there's a significant difference from

6     Mr. Blankenship between the quote survivor and the

7     pastor on the issue of consent, right?

8          A     I don't really understand your question.

9          Q     Okay.  Fair enough.

10         A     If you could repeat it, please.

11         Q     Sir, did you write to your CEO before

12    you met with Mr. Blankenship saying that you

13    basically have, at that point, the story to date

14    before you add whatever we do -- whatever we get

15    or don't get from Mr. Blankenship.

16         A     I don't see that here in this document.

17         Q     It's not in that document.  Did you

18    write that?

19         A     I don't recall.

20         Q     Let's look at another exhibit.

21               (HOLSKE Exhibit Number 15 was marked for

22               identification.)

1    BY MR. MACGILL:

2        Q    I'll hand you Exhibit 15, sir.

3              Sir, take a look at Exhibit 15 if you

4    would.

5        A    Yes.

6        Q    Is this an email, sir, that you wrote to

7    the CEO of your company and others?

8        A    Yes, it is.

9        Q     Including Samantha Kilpatrick?

10       A    Yes.

11       Q     And the subject line was proposed

12   language for Hunt; is that right?

13       A    Yes.

14       Q     And you're talking about, and what you

15   attach here is proposed language for Hunt.  Do you

16   see?  Do you see that?

17       A    I see it.

18       Q     And you're 13 days before you publish

19   the report -- before Guidepost published the

20   report, you are reporting on your approach to

21   Mr. Blankenship; is that right?

22       A     I state in here that -- that Samantha

1   and I will approach Roy Blankenship.

2           (HOLSKE Exhibit Number 16 was marked for

3           identification.)

4   BY MR. MACGILL:

5       Q    Let's go to the next exhibit, sir.

6   We'll do this then take a break.

7           Sir, just as an overview question and then

8   take a look at it, is this the proposed language

9   that you had drafted for the        REDACTED           "?

10          MR. KLEIN:  Objection.  At what point in

11  time?  Are you asking him for a particular point in

12  time or just in general?

13  BY MR. MACGILL:

14      Q    Looking at Exhibit 15, sir.  Is this the

15  attachment to Exhibit 15?

16      A    I don't know.

17      Q    Don't know?

18      A    I don't know.

19      Q    All right.  Is Exhibit 16 something that

20  you authored?

21      A    I need a couple moments to review it.

22      Q    That's fine.

```
 1      A    Because Samantha Kilpatrick and I had a
 2  very similar experience.
 3           (HOLSKE Exhibit Number 17 was marked for
 4           identification.)
 5  BY MR. MACGILL:
 6      Q    Sir, I'm going to hand you Exhibit 17.
 7      A    So you don't want me to look at this
 8  then?
 9      Q    I do.  But I want you to have Exhibit 17
10  in your hand because it may help you.
11           MR. KLEIN:  One moment, Rob, do you want
12  us to look at Exhibit 16.
13  BY MR. MACGILL:
14      Q    Look at 16 and 17 together.  Put them
15  next to one another, if you would.  You see
16  there's a Bates number convention here.  It shows
17  want GP_012444.  Do you see that?
18      A    I do.
19      Q    And on 17, do you see the same Bates
20  number?
21      A    I do.
22      Q    And I'll represent to you that this is
```

1  part of the metadata and it shows a creation date

2  of                    REDACTED                         Do you

3  see that?

4       A    I see that.

5       Q    Okay.  So relative to that, does this

6  let you understand that -- when Exhibit 16 was

7  created?

8            MR. KLEIN:  Objection as to form.  The

9  document speaks for itself.

10            THE WITNESS:  It indicates when it was

11  started.  So started -- created -- started on the

12     REDACTED      It doesn't identify when it ends up

13  being -- four pages long?

14  BY MR. MACGILL:

15       Q    Yes.

16       A    And shared.

17       Q    Now, is this one of the first versions

18  of the portion of the report relating to

19  allegations against Pastor Johnny Hunt?

20       A    It's a draft.

21       Q    And one of the first drafts you made?

22       A    I don't know that I can characterize as

1   one of the first drafts.  It's a draft.

2          Q                    REDACTED

12              MR. KLEIN:  I think he's trying to finish

13   reading the entire document to give you an accurate

14   answer.

15   BY MR. MACGILL:

16          Q    Okay.  Why don't we go ahead and take a

17   break.  He can look at it and see if he has

18   anything else -- we'll starts with that question

19   when we come back.  We've been going an hour and a

20   half.  Maybe about 15 or 20 minutes.

21              VIDEOGRAPHER:  We are off the record

22   14:58.

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 238 of 441 PageID #:
3850

1                (Whereupon, a brief recess was taken.)

2                VIDEOGRAPHER:  Back on the record at

3      15:24.

4          REDACTED

1        R

2        Q    Page 5 of the final report says

3   survivors, those persons who actually suffered at

4   the hands of SBC clergy or SBC church staff or

5   volunteers, that's what your final report says in

6   pertinent part, right?

7        A    I haven't read that section.  If you

8   want to call my attention to it, I can look at it.

9        Q    No, I -- we'll move ahead.

10           I'm going to happened you exhibit 18.

11           (HOLSKE Exhibit Number 18 was marked for

12           identification.)

13  BY MR. MACGILL:

14        R
          E
          D
          A
          C
          T
          E
          D

1    REDA CTED

2        Q    Okay.  So looking at this, sir, have you

3    heard in journalism the reference to an ambush

4    interview?

5        A    No.

6        Q    No, you've not -- do you ever watch 60

7    Minutes for example?

8        A    I've seen 60 minutes before.

9        Q    Yeah.  You've seen some of these where

10   it's referred to commonly as ambush interviews

11   where the 60 Minutes reporter would essentially

12   "ambush" somebody about a topic and then put

13   microphone in front of him.  Are you familiar with

14   that phenomenon?

15       A    I can't say that I am.

16       Q    Okay.  Well, you're familiar with doing

17   an ambush interview because that's what you did on

18   May 12th, isn't it?

19            MR. KLEIN:  Objection as to form.

20            THE WITNESS:  No.

21   BY MR. MACGILL:

22       Q    That's what you did on May 12th, 2022.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 241 of 441 PageID #: 3853

1       R
      E
      D
      A
      C
      T
      E
      D

7       Are those your notes or Ms. Kilpatrick's?

8     A    I believe the dark blue on the right

9 corresponds to the sender.

10     Q    When you say the dark blue on the right,

11 what are you referring to.

12     A    The darker shaded bubbles?

13     Q    So the bubbles, you think that this

14 Samantha Kilpatrick?

15     A    Yes.

16     Q    So with you-all having the job of

17 providing an independent report, why are you

18 worried about REDACT?

19     A    Accuracy.

20     Q    Well, sir, she didn't say accuracy.  The

21 word here is REDACT.  Of what concern of yours, if

22 any, was there to having REDACT to your report?

1      A     That the substance of what happened to

2   her is accurately portrayed.  I didn't write that

3   sentence, so I can't really answer what REDACT

4   means in this sense, but that's, I believe, how I

5   took it.

6      Q     Then the words -- are you saying these

7   REDACTED

10          Is that your word?  Yes?

11     A     I believe so.

12     Q     Why would a description of demeanor be

13  important for purposes of an independent

14  investigation by your company?

15     A     I think it speaks to the atmosphere of

16  the interview, and we did likewise refer to

17  demeanor for Mr. Blankenship.  So I don't remember

18  exactly.

19     Q     Now, are you referring to his demeanor

20  on May 12?

21     A     This text appears as though it took

22  place after we spoke to Dr. Hunt on the 12th.  So

1     A    That's not accurate.  We interviewed --

2     Q    Let me finish my question.  You did an

interview where you ambushed Pastor Johnny Hunt

without him giving him any notice of months of

communications you'd had with each of the REDACTED,

right?

7          MR. KLEIN:  Objection as to form.

Mischaracterizes the testimony, but you can answer.

9          THE WITNESS:  No.  We gave Dr. Hunt an

opportunity to be confronted with the facts that at

that point we were confident in confronting him with

after talking to Roy Blankenship and presenting him

with the facts, and he denied them.

14   BY MR. MACGILL:

15     Q    Did you tell him that Mr. Blankenship

continued to believe that there was -- this was a

consensual event?  Did you tell him that when you

interviewed him on May 12th.

19     A    I would need to refer to that interview

report to be able to answer your question.

21   BY MR. MACGILL:

22     Q    How about this?  Did you give him the

1    tape recording of the Mr. Blank- -- of the

2    counseling session that you had possession of?

3    Did you play that for him?

4         A    No.  I wouldn't have played that for

5    him.

6         Q    Let's talk about you some more, sir.

7    Did you take some steps to tell him that you had

8    no sexual abuse of any executive committee member

9    prior to February of 2022?  Did you tell him that?

10        A    I wouldn't have been able to.  I wasn't

11   aware of what the other strings of the

12   investigation, where they were at at that point.

13   I can only speak to what my own experiences were.

14   But I did not bring up that first bullet in the

15   scope of our investigation.

16        Q    Did you tell him that you had already

17   been drafting the section of the report pertaining

18   to him as of May 12?

19        A    No.

20        Q    Did you tell him that specifically that

21   you were going to -- you were going to send

22   interview information that he gave to you to the

1    REDACTED for feedback?  Did you tell him that, sir?

2         A    No.

3         Q    Okay.  How about -- on May 12 did you

4    share with Pastor Johnny Hunt that on May 4th,

5    Christina Bischoff, one of the authors of the

6    report, had indicated that we don't report the

7    allegation in the -- the Hunt allegation in this

8    report.  Did you tell Pastor Johnny Hunt that?

9              MR. KLEIN:  Objection as to form.

10   Mischaracterizes the testimony, but you can answer.

11   BY MR. MACGILL:

12        Q    Did tell him that?

13        A    Did I tell him that I was emailing with

14   the writer of the draft on May 4th before I'd

15   spoken to witness two, witness three, Roy

16   Blankenship?  No, I didn't tell him that.

17        Q    No, no.  I didn't ask you that.  You

18   know -- well, let's make sure we get you --

19        A    I'm trying to understand your question.

20        Q    Yes, sir.  Let me start with a new one

21   and maybe it's easier for you to answer.  Exhibit

22   11, did you share with him Exhibit 11, sir.

1       A     As I stated earlier, I only saw this

2    document today for the very first time.  So I

3    wouldn't have been able to share that with him.

4       Q     Wouldn't it have been fair -- if you

5    were going to be independent in this, wouldn't it

6    have been appropriate for you to say that as of

7    April of 2022 that your company, as far as

8    allegations of abuse committed by executive

9    committee members, had a document in his files

10   saying this is from messenger's motion:

11   Investigation so far has not revealed any

12   allegations of abuse committed directly by EC.

13           Wouldn't it have been fair to show that to

14   Johnny Hunt --

15           MR. KLEIN:  Objection.

16           MR. MACGILL:  -- on May 12th.

17           MR. KLEIN:  Objection as to form.  You can

18   answer.

19           THE WITNESS:  I was unaware of the

20   existence of that particular draft.  I had no

21   involvement of it.  I had never seen it, so I

22   wouldn't have been able to share it.

1    BY MR. MACGILL:

2         Q    Looking back at this text string that

3    we've been -- that you have in front of you with

4    Ms. Kilpatrick, sir, we have the metadata in

5    front, and it shows that you are the custodian of

6    this text and specifically that the comment -- the

7    dark shade, these are your comments, sir.  That's

8    what the metadata show.  I'm represent that to be

9    the case.

10             Sir, the evidence in this case will be --

11   let me start with the first question.  The evidence

12   in this case will be that you wrote a text to your

13                     REDACTED



16             Sir, the evidence in this case will be

17   that that is -- those are your words.

18        A    Okay.

19        Q    What did you mean by REDACT, sir?

20        A    I really can't answer that question

21   because I'm not clear on what -- where the draft

22   was at that point, what I was looking at to cause

1  engagement letter.  I saw it for the first time

2  today.

3  BY MR. MACGILL:

4       Q    And you never -- you never understood

5  that part of your charge as an investigator was to

6  have a report that had REDACTED

7            MR. KLEIN:  Objection.

8  BY MR. MACGILL:

9       Q    Right?

10           MR. KLEIN:  Asked and answered.

11           THE WITNESS:  REDACT referring to accuracy

12  of the survivor's statement of what occurred on the

13  July 25th, 2010.

14  BY MR. MACGILL:

15      Q    Well, if that's what you meant, why

16  didn't you say accuracy?

17      A    Because if the draft -- and I don't have

18  what I'm referring when I made this text message

19  to Samantha -- if it lacked detail, then it is not

20  fully accurate.

21      Q    Now, did you -- did REDACTED write you

22  about the type of language that he wanted in your

1    me to make that statement.

2         Q    But sir, I noticed -- I've looked at the

3    engagement letter carefully.  I don't see anywhere

4    where it's written that you are to write a report

5    that has  REDACTED

6              Am I missing something in the engagement

7    here, sir.

8         A    As I said earlier, when I incorrectly

9    attributed it to Samantha Kilpatrick, in this way

10   REDACT would have referred to an accurate

11   description of what the survivor,    REDACTED    ,

12   had undergone on July 25th, 2010.

13        Q    I'm looking, sir, I have it right in

14   front of me.  I'm looking at the engagement letter

15   itself, Exhibit 2.  I've read it.  Here, again, I

16   don't see any references here, sir, to REDACT

17   anywhere in that document.

18             Do you know of some part of your template

19   that you are to investigate and evaluate REDACT.

20             MR. KLEIN:  Objection.  Asked and

21   answered.  You can answer one more time.

22             THE WITNESS:  I haven't read the entire

1      REDACTED

4            (HOLSKE Exhibit Number 19 was marked for
5            identification.)
6  BY MR. MACGILL:
7      Q    Well, there was -- let's look at text
8                     REDACTED                          .
9  Will you look at -- what exhibit is this?
10           MR. KLEIN:  19.
11 BY MR. MACGILL:
12     Q    Thank you -- Exhibit 19, sir, have you
13 seen this text string before?
14     A    Okay.  I've reviewed it.
15     Q    And this is -- these are your -- in
16 blue, in the darker shade, these are your comments
17 to Samantha Kilpatrick?
18     A    Yes.
19     R
       E
       D
21           What language are you referring to?
22     A    The specific description of the sexual

1  contact between Dr. Hunt and  REDACTED  .

2      Q    In what sense?  Were there words?  Was

3  there a phrase that he wanted to have included?

4          MR. KLEIN:  Objection as to form.  You can

5  answer.

6  BY MR. MACGILL:

7      Q    Did he tell you there was a phrase he

8  wanted included?

9      A    I don't recall.

10     Q    You don't recall, sir?  This is nine

11  days before the publication of the report.  You

12  don't recall what he wase asking you to do, sir?

13     A    Specifically as it pertains to the

14  touching of the breasts or the pulling down of

15  pants, I don't -- I don't recall.

16     Q    But we talked about arm's length and

17  whether you as an investigator should be at arm's

18  length with your witnesses.  Do you think Exhibit

19  19 shows that you are arm's length with REDACTED
        sir?

21         MR. KLEIN:  Objection as to form.  Calls

22  for a legal conclusion.  You can answer.

1          THE WITNESS:  I think I handled the

2     survivor and her husband appropriately.

3     BY MR. MACGILL:

4          Q    But just one last question on Exhibit

5     19.  You are telling the court and jury you don't

6     remember what he was asking you to do specifically

7     nine days before the publication of the report?

8          A    This does not refer to specific

9     language, so it's difficult for me to answer your

10    question.

11         Q    Did you do what he told you, sir?

12         A    No.

13         Q    Did you do what he told you to do in

14    this respect?

15         MR. KLEIN:  Objection.  He just answered

16    that question.  Exact question.

17         THE WITNESS:  No.

18    BY MR. MACGILL:

19         Q    No, you do not.  That's your testimony?

20         A    For the third time, no.

21         Q    Right.  You did not.  Did you go to the

22    CEO of your company and say nine days before the

1  publication of the report words to the effect of

2  this has gotten completely outs of control.  This

3  man is controlling our report, and I'm letting

4  him.  Did anything like that -- did you share

5  anything like that that all bounds of fairness,

6  all bounds of any reasonable proportion had been

7  exceeded?  Did you say anything like that to the

8  CEO of the company?

9         MR. KLEIN:  Objection.  Compound.  You can

10  answer.

11         THE WITNESS:  A decision not made solely

12  by me was made to ensure that the survivor's

13  description of sexual contact between Dr. Hunt and

14  her be reviewed by REDAC to ensure that it was

15  accurate.  Now, when that came back and it had

16  comments, those were considered.  Ultimately, our

17  version without the comments by    REDACTED    went

18  into the final report.

19  BY MR. MACGILL:

20      Q    Your testimony is that the nine -- to

21  repeat -- nine different interviews you had with

22  either or both of the REDACTE did not influence

1  this report to be in favor of their version and

2  against Pastor Johnny Hunt?

3          MR. KLEIN:  Objection as to form.  Asked

4  and answered.  You can answer.

5          THE WITNESS:  Guidepost Solutions had no

6  agenda in investigating the allegations against

7  Dr. Hunt.  If Roy Blankenship had not talked to us,

8  if Dr. Hunt had not talked to us the second time, we

9  were comfortable with the report not going in as it

10  relates to Dr. Hunt.

11         What we were not comfortable with is

12  gathering facts.  And because we weren't prepared,

13  having made a draft, that it did not end up in the

14  report.

15  BY MR. MACGILL:

16     Q    Sir, would you turn to Exhibit 7 and

17  look at the -- Exhibit 7.  Let's start at the top

18  of page 7.

19                 REDAC
                   TED

1

REDACTED

1     REDACTED

7    BY MR. MACGILL:

8         Q    Okay.  And look at page 150 of your

9    report.  And at the bottom, the second-to-last --

10             MR. KLEIN:  Hold on one second.  He's not

11   there yet.

12   BY MR. MACGILL:

13        Q    Second-to-last line.

14             MR. KLEIN:  Let us know when you're there.

15   BY MR. MACGILL:

16        Q    Second-to-last line.  It says:  Survivor

17   said he could come sit in the shade on her

18   balcony.  That's what your final report says,

19   right?

20             MR. KLEIN:  Objection to being his final

21   report.  It's guidepost's final report.

22

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 257 of 441 PageID #:
3869

1    BY MR. MACGILL:

2          Q     That's what the Guidepost final report

3    says, right?

4          A     That's what that sentence say, yes.

5          R
           E
           D
           A
           C
           T
           E
           D

1      R
       E
       D
       A
       C
       T
       E
       D

19     A    I don't know how much it would have

20  weighed on my assessment of Dr. Hunt's actions.

21     Q    Well, wait a minute, sir.  You did nine

22  interviews with the REDACTE individually and

1  collectively, and wouldn't it be important to you

2  as a matter of being independent and fair in your

3  report or honest in your report -- let me state it

4  to this:  Wouldn't it be important to you in terms

5  of being honest and forthright in the Guidepost

6  report that the only other person besides Pastor

7  Johnny Hunt who was actually present during the

8                    REDACTED


10     A     I don't know how to answer that

11  question.

12     Q     Sir, it's right here in black and white,

13  the story that this document, Exhibit 7, confirms

14                    REDACTED


16  your report, did you?

17             MR. KLEIN:  Objection.  He didn't draft

18  this report.  It mischaracterizes his testimony.

19  You can answer.

20  BY MR. MACGILL:

21     Q     You and everyone that you worked with,

22  including the CEO of the company, took no steps to

1    include the description that the alleged victim

2    here had began -- was beginning to feel foggy.

3    Not one of you -- to repeat -- not one of you made

4    any reference to that fact, did you?

5              MR. KLEIN:  Objection.  Asked and

6    answered.  That wasn't his testimony, but you can

7    answer.

8              THE WITNESS:  Again, I have to look.

9    BY MR. MACGILL:

10        Q    Well, how about REDACTED, sir?  Didn't

11   you and those that work in concert with you in

12   terms of publishing this report to the world,

13   didn't you take any steps to make sure that

14   REDACTED  was taken by    REDACTED    prior to the

15   time of this encounter were documented in your

16   report?

17        A    I don't remember reference to REDACTED

18   at any point.

19        Q    So you took, sir, an account of REDACTED

          and the report of her husband that was made

21   on events 12 years prior, and you didn't report

22                         REDACTED

1  right?

2          MR. KLEIN:  Objection.  Asked and

3  answered.  You can answer.

4  BY MR. MACGILL:

5      Q    Right?

6      A    I don't see it included in the report in

7  front of me.

8      Q    Now, would REDACTED alone be a reason

9  independently to question what she reported in

10  2022 about an encounter in 2010?

11          MR. KLEIN:  Objection as to form.  He

12  never stated he was aware of REDACTED but he can

13  answer.

14          THE WITNESS:  In our interview with her on

15  March 31st, she provided intimate embarrassing

16  details to such a degree that our assessment after

17  many hours in her recalling specific words said,

18  touches made with hand and mouth on her body and

19  specifics down to hair on Dr. Hunt's legs as she

20  turned.  With that degree of specificity, I feel as

21  though whatever REDACTED she was on did not impair

22  her ability to recollect very detailed,

1  embarrassing, painful facts to her.

2  BY MR. MACGILL:

3      Q    So again, I want to focus more on

4  independent validations of what occurred or didn't

5  occur here for a few more minutes, sir, just so we

6  focus on what you did and what you failed to do.

7  Turn to page 8 in the report.

8          MR. KLEIN:  Objection to the

9  characterization of him failing to do anything.  But

10  you can answer the question.

11  BY MR. MACGILL:

12      Q    Fair objection.  Let me just make sure

13  that it's very clear.  Sir, you ignored completely

14                  REDACTED


17      A    This is a -- I would say -- 53-page

18  document, and the narrative that ended up in the

19  final report was accurate but does not have the

20  same degree of specificity that this document had

21  including where people were seated in the

22  condominium.

1       R
           E
           D
           A
           C
           T
           E
           D

1                          REDACTED

1    reference that, right?

2        A    No.  Just the lack of consent for the

3    sexual contact.

4        Q    Well, that's not true, is it, sir.  You

5    began fabrications in your report on this.  Here's

6    what you said.  The Guidepost report says only

7    "Dr. Hunt slides closer while survivor was telling

8    a story."  That's what you said on the report at

9    page 151, right?

10       A    Let me look at it, sir.  I don't have a

11   photographic recollection of this document.

12       Q    Please go to page 51 and go to

13   paragraph number three.

14       A    Okay.  He moved closer to her.

15       Q    Well, what Guidepost said is Dr. Hunt

16   slid closer while survivor was the telling a

17   story.  Right?  Those are your words -- slid

18   closer -- right?

19       A    I don't know that they are my words.

20       Q    They are the words of Guidepost.

21       A    They're the words that ended up in the

22   report.

1    Q    And the inference of that is that there

2    was something just unilateral on his part and that

3    slid closure to her, right?

4              MR. KLEIN:  Objection as to form.

5              THE WITNESS:  Not necessarily.

6    BY MR. MACGILL:

7    Q    Let's look at what -- let's just remind

8    you and the court and jury of what happened in

9    this particular -- you know, you've admitted that

10   according to REDAC,    REDACTED    to Pastor Johnny

11                    REDACTED

12   That's what she said compared to what's written

13   here.

14             MR. KLEIN:  Objection as to form as to

15   what she actually said to him versus what's in a

16   document he did not prepare, but he can answer.

17             THE WITNESS:  It's not contradictory.  It

18   has less detail.

19   BY MR. MACGILL:

20   Q    Or is it characterized in the Guidepost

21   language of Dr. Hunt   REDACTED   , is that a

22   characterization of what actually happened as

1   contrasted with what is actually reported by the

2   REDACTE themselves in the report?

3       A    In the report?  Yes.  But she was

4   interviewed on March 31st, and I would have to

5   check the notes from that to see if she phrased it

6   in a different manner on the 31st.

7       Q    Okay.  Well, if she said something

8   different in the interview compared to what she

9   wrote, would that be a reason for you to think

10  that she wasn't credible?

11          MR. KLEIN:  Objection as to form.  Calls

12  your speculation.  You can answer.

13          THE WITNESS:  To me, it's not

14  contradictory.

15  BY MR. MACGILL:

16      Q    They were different, sir.

17      A    Did he slide over?  Did he walk over?

18  He's still in the end moved closer, whether it's

19  characterized as a slide or a shuffle or two steps

20  and a turn.  Bottom line he moved closer.

21  BY MR. MACGILL:

22      Q             REDACTED

1    REDAC
     TED

16          Q    Consent is a big word in this case,
17    isn't it, sir, in terms of what happened that
18    night.
19               MR. KLEIN:  Objection as to form.  You can
20    answer.
21               THE WITNESS:  Yes.  Especially as it
22    relates to sexual contact.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 269 of 441 PageID #: 3881

1    REDACTED

                    .

12       Q    Okay.  Now let's talk about the layout
13   of the room.  Are you familiar with what the room
14   looked like, sir, of this alleged encounter?
15       A    In general terms.
16       Q    Okay.
17       A    It's a condominium I believe.  Could be
18   a two bedroom or one bedroom.  I'd have to look at
19   the plan.
20       Q    So let's look at Exhibit 7.
21       A    Okay.  Where?
22       Q    Paragraph -- page 8, paragraph 4.

```
 1          So sir, looking at page 8 of Exhibit 7, if
 2   you look at the fourth paragraph down, REDAC is
 3   sitting slouched backward.  Do you see that?  Do you
 4   see the paragraph I'm referring to.
 5       A    Not yet.
 6       Q    Johnny moved closer on the couch.  Do
 7   you see that section?
 8       A    Okay.  Yes.
 9       Q    All right.  If you go down to the fourth
10   paragraph --
11          MR. KLEIN:  Fourth paragraph in that
12   section.  I'm sorry, Rob.  I'm just going to point
13   him in the right place.
14          THE WITNESS:  Okay.  Got it now.
15   BY MR. MACGILL:
16       Q    I want to focus on the second sentence.
17   REDAC sat on the far left side of the couch next
18   to the left armrest and end table.  Johnny sat on
19   the far right side of the couch.
20          Do you see that.
21       A    I do see it.
22       Q    If you look at page 9, second paragraph,
```

1    REDACTED

18   BY MR. MACGILL:

19        Q    This is what she said in her report,

20   Exhibit 8, which you had prior to the time that

21   you and your firm, Guidepost, published the

22   report.  Right?

1            MR. KLEIN:  Objection.  Objection.

2    There's no evidence as to who drafted it.  The

3    document speaks for itself.

4    BY MR. MACGILL:

5        Q    Exhibit 7 and this sentence that I just

6    read into the record, this was available to

7    Guidepost and part of your file and part of your

8    investigation in this work, was it not?

9        A    We had this document.

10       Q    Yeah.  And you had, specifically it

11   REDAC
       TED

13            Is that right?

14       A    That's what is written at the top of the

15   document, yes.

16       Q    Whose document is this?  Who wrote this

17   document?

18       R

19       Q    And so this is something they handed to

20   you on that day?

21       A    That's right.

22       Q    And so why is this the title, REDAC and

1                          REDACTED


3              MR. KLEIN:  Objection.  You are asking why

4      that's the title?

5      BY MR. MACGILL:

6              MR. MACGILL:  Yeah.

7              MR. KLEIN:  Objection.

8      BY MR. MACGILL:

9          Q    Did you put that title on there?  Did

10     Guidepost put that on there?

11         A    I didn't prepare this document.

12         Q    So they gave this document to you in

13     this form, Exhibit 7?

14         A    Yes.

15         Q    Okay.  Handed it over to you.

16         A    Yes.

17         Q    Okay.  Got it.  All right.  So they hand

18     it over to you this information that has into it

19     -- has specifically in the reference, it says

20                          REDACTED

1    REDACTED

15         A     To her left, right?

16         Q     Yeah.  To her left, correct?

17              MR. KLEIN:  Objection.  Again, the

18    document speaks for itself.  You can read the words.

19              THE WITNESS:  Tell me what sentence you

20    are reading right now and then I can read it as well

21    and agree to it.

22

1   BY MR. MACGILL:

2       Q    Maybe this is more helpful.  So anyone

3   who was reading this carefully and paying

4   attention to the facts of this case would

5   understand specifically that when REDAC REDACTED

                                            D

                                                on

7   Pastor Johnny's side, right?

8               MR. KLEIN:  Objection as to form.  Are you

9   asking if that's what the words say or that's what

10  happened?

11  BY MR. MACGILL:

12      Q    Answer the question.

13      A                        REDACTED


15      Q    Which was on Pastor Johnny's side of the

16  couch, right?

17              MR. KLEIN:  Objection as to form.  You can

18  answer.

19              THE WITNESS:  I don't know.

20  BY MR. MACGILL:

21      Q    How could you not know, sir?  You spent

22  the entire day with them, and you had the

1    information right here in front of you.  She

2    describes to you where she was, right?

3         A    It's described here.

4         Q    And she describes to you where he was,

5    right?

6              MR. KLEIN:  Objection.  Within the

7    document or in their conversation on that day?

8    BY MR. MACGILL:

9         Q    Both.

10        A    My living room has three end tables.  I

11   don't know what end table she's referring to.  It

12   could be more than one end table.  I -- I

13   didn't --

14        Q    Didn't pay attention in this particular

15   detail, did you, sir?

16        A    I read this particular detail.

17        Q    But you ignored it.  You ignored these

18   details that you're just -- you can't testify to

19   any of these details because you don't know them

20   or understand them, do you, sir?

21             MR. KLEIN:  Objection as to form.  You can

22   answer.

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 277 of 441 PageID #:
3889

1          THE WITNESS:  Not true.

2     BY MR. MACGILL:

3          Q    All right then.  Looking at couch, sir,

4     which side of the couch was she seated on?

5          A    Sat on the far left side of the couch.

6          Q    Where was Pastor Johnny Hunt seated,

7     sir.

8          MR. KLEIN:  Objection.  Are you asking for

9     his memory or asking him read what the document

10    says.

11         MR. MACGILL:  I'm asking to testify to the

12    most basic facts associated with an investigation he

13    did not conduct in any way, shape, or form about who

14    did what on that day.  That's my question, sir.

15         MR. KLEIN:  I'm asking just if you want

16    his memory or if you want him to read from the

17    document.  That's all, Rob.

18    BY MR. MACGILL:

19         Q    I want you to admit, sir, now that you

20    are here and you are under oath, I want you to

21    admit you don't know even know where Pastor Johnny

22    was on the couch, right?

1      A     That's not true.

2      Q     Where was he?

3      A     On the far right side of the couch.

4      Q     Okay.  She's on the far left side of the

5   couch according to this report and according to

6   your investigation, right?

7      A     Right.

8      Q     According to your investigation and this

9   report, he's on the far right side of the couch,

10  right?

11     A     He's on the far right side of the couch.

12     Q     Based on your work on this case, all the

13  interviews you did, receiving Exhibit 7, where did

14          REDACTED

16          MR. KLEIN:  Are of asking him for his

17  memory or are you asking him to read from the

18  document you provided him?

19          MR. MACGILL:  Answer the question.

20          MR. KLEIN:  Objection.  He needs -- I'm

21  objecting to the question.  He needs to understand

22  it.  If he's asking for his memory or if you are

1    asking him to read the words of the document.

2    That's all.  So he can answer your question

3    accurately.

4    BY MR. MACGILL:

5         Q    Sir, this is your chance to answer the

6    questions.  Based on all the work that you did;

7    based on the interviews that you conducted; based

8    on your communications of the people at Guidepost,

9    all of them; based on your communications with the

10   CFO; based on your one-day interview with the

11   REDACTE ; based on all the work that you did; were

12   you able to ascertain where she    REDACTED

             on that night?

14        A    In the interview of her on the 31st I

15   don't remember if we discussed -- I don't

16   remember, I'd have to read my notes, if we jotted

17   down where she        REDACTED        .  But I can

18   see from this document here, 53 pages long, that

19   it says she placed it on the right -- on the end

20   table right of the couch.

21        Q    Which means she        REDACTED

22   according to this statement and according your

1                           REDACTED

4             MR. KLEIN:  Objection as to form.

5     Mischaracterizes his testimony.

6             THE WITNESS:  That's the way it reads in

7     this document, yes.

8     BY MR. MACGILL:

9         Q    And that's what your investigation

10    showed, right?  Did you pay attention to this fact

11    in your work?

12        A    To this particular fact?  I don't know

13    how much weight we gave to it.  It did not end up

14    in the final draft.

15        Q    All right.  Now, it didn't end up in the

16    final draft, did it?  But you understand for her

17                          REDACTED

22        A    Not necessarily.  If there's a coffee

1   table she could walk around it to get to the end

2   table.  I'm not sure.

3           R
            E
            D
            A
            C
            T
            E
            D

11  BY MR. MACGILL:

12      Q   Okay.  But did you -- okay.  Another

13  thing, sir.  Did you even make an analysis

14  yourself as to whether there was an end table next

15  to her?

16      A   I did not.

17      Q   Well, sir, these are very basic facts

18  about a series of events that you, for your part,

19  are calling sexual abuse, right?

20          MR. KLEIN:  Objection as to form.  You can

21  answer.

22          THE WITNESS:  I'm sorry?

1  BY MR. MACGILL:

2      Q    These are the -- you ignored the most

3  basic facts about this evening in terms of what

4                    REDACTED

7            MR. KLEIN:  Objection as to form and to

8  the characterization.  You can answer.

9            THE WITNESS:  We can not ignore facts.

10  BY MR. MACGILL:

11      Q    Okay.  Well, you ignored this fact,

12  didn't you?  Was there an end table, sir -- was

13  there an end table next to REDAC on the left side

14  of the couch?

15            MR. KLEIN:  Objection.  Compound question.

16  You can answer.

17  BY MR. MACGILL:

18      Q    Was there an end table, sir, to

19  REDACTE -- next to REDAC on the left side of the

20  couch?

21      A    I don't know.

22      Q    Sir, how could you not know that in

1                                            REDACTED

22

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 284 of 441 PageID #: 3896

1     REDACTED

13        A    I see that written here.

14        Q    And you didn't make any reference to

15   that in your report, did you?

16        A    It's not in the final report.

17        Q    And let's talk about other things that

18   are not in your report.  You also didn't make

19   anything -- put anything in the Guidepost report

20   in terms of what you authored to confirm that her

21                     REDACTED

1    Pastor Johnny Hunt, right?

2              MR. KLEIN:  Objection.  Asked and

3    answered.  You can answer one more time.

4                   REDACTED


6    BY MR. MACGILL:

7         Q    With respect to that, do you know how

8    close she was in proximity Pastor Johnny Hunt when

9    she         REDACTED        that she had taken off

10   next to Johnny Hunt on the end table?

11            R
                E
                D
                A
                C
                T
                E
                D


20         Q    Do you know any of these facts, sir?

21         A    I'm reading it right here.

22         Q    Do you know any of these facts, sir?

1      A     I'm reading it right here.

2      Q     You're reading but you don't understand

3   what happened here, sir.  You are speculating,

4   aren't you now?  Let me ask this question.  You

5   are speculating as to what happened.  You never

6   yourself in your investigation ascertained even

7   the most basic fact of where REDACTE   REDACTED

8   that night, did you?

9           MR. KLEIN:  Objection.  I'm asking the

10  witness not to answer.  You've asked that same

11  question three times.  He's given you the exact same

12  answer every time.  Can we please move on to a

13  different portion of this report?

14  BY THE WITNESS:

15     Q     He wrote a report without making any

16  references to where she       REDACTED        right?

17          MR. KLEIN:  Objection.  Do not answer.

18  Asked and answered.  I just want to get through

19  this.  Let's move on.

20          MR. MACGILL:  You can't instruct him not

21  to answer.

22          MR. KLEIN:  Rob, but if it gets to a point

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 287 of 441 PageID #:
3899

1    where you are asking the same question name five

2    times, Rob --

3              MR. MACGILL:  He needs to answer my

4    question.

5              MR. KLEIN:  He answered your question five

6    times.  Five times he's answered your question.  And

7    I'm approximating five times, unlike your eight or

8    nine.  Five times approximately he's answered your

9    question.

10   BY MR. MACGILL:

11        Q    Sir -- so, let's talk about your company

12   has refused to produce text messages -- do you

13   know that -- in this case?

14        A    No.

15        Q    Do you know that the text messages that

16   you reviewed have never been produced to us?

17             MR. KLEIN:  Objection.  Objection.

18   BY MR. MACGILL:

19        Q    Do you know that, sir?

20             MR. KLEIN:  Objection.

21             THE WITNESS:  I'm not involved in the

22   discovery process.

1   BY MR. MACGILL:

2       Q    Sir, but do you know you read text

3   messages in preparation for the deposition that we

4   have never seen.  Do you know that to be a fact?

5       A    I do not.

6       Q    All right, sir.  Do you know

7   specifically, in addition you are embargoing

8   information about people that you claim support

9   your report in this case, and you will not let

10  Pastor Johnny Hunt know about that, right?

11          MR. KLEIN:  Objection.  Asked and answered

12  in the morning session ad nauseam.

13  BY MR. MACGILL:

14      Q    Right?

15      A    We did not disclose the identities of

16  witness one, two, and three this morning.  That's

17  what you are asking me?

18      Q    Yeah.  Right.

19      A    The answer remains.  Yes, we did not

20  disclose those witnesses.

21      Q    So for your part, can you give any

22  justification, sir, to this court and jury as to

1   why you are withholding these three forms of

2   evidence that I've just outlined for you in these

3   last three questions?

4            MR. KLEIN:  Objection.  Asked and

5   answered.

6   BY MR. MACGILL:

7       Q    You may answer.  Can you give us any

8   reason why you are taking -- why you're doing what

9   you're doing in keeping this evidence from us at

10  this point in time, sir.

11           MR. KLEIN:  Which evidence are you

12  referring to, Rob?

13  BY MR. MACGILL:

14      Q    The three questions that I just asked.

15  You've withhold text messages.  You've withheld

16  from our client identify of witnesses, and we're

17  not able to speak to our client.  You've deleted

18  in the ordinary course of business your text

19  messages.  You deleted in the ordinary course of

20  text messages -- I'm sorry -- emails.  You have

21  failed -- you were asked to destroy documents and

22  you haven't produced documents that were produced

1   by the REDACTED

2           My question, sir, is with respect to those

3   five or six areas of conduct, can you tell this

4   court and jury why your company is doing these

5   things in this case?

6           MR. KLEIN:  Objection.  That

7   mischaracterizes the witness's testimony.  He is

8   here as an individual.  He is not here on behalf of

9   Guidepost.  He is not prepared and will not answer

10  questions on behalf of Guidepost.  He is not

11  prepared and will not answer questions regarding

12  Guidepost.  Please move on.

13  BY MR. MACGILL:

14          R
            E
            D
            A
            C

17          MR. KLEIN:  Objection.  I believe we've

18  already gone over this.

19  BY MR. MACGILL:

20      Q    Answer the question, sir?

21          MR. KLEIN:  Are you asking for his memory,

22  Rob, or should he refer to Exhibit 7?

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 291 of 441 PageID #: 3903

1          MR. MACGILL:  His recollection based on

2    his investigation.

3          THE WITNESS:  I don't recall that detail.

4    BY MR. MACGILL:

5      Q    Can you tell the court why you didn't

6                        REDACTED

            Why you did not include that in your

8    report?

9      A    As I mentioned earlier, this document is

10   53 pages long, and our final section regarding the

11   incident with Dr. Hunt is much shorter naturally.

12   It doesn't have the same degree of detail.

13     Q    So looking back at the Exhibit 7, sir,

14   page 10, last paragraph, so the last paragraph

15   REDAC
       TED

20          Do you see those words in this Exhibit 7?

21     A    I see the words.

22     Q    Sir, go to page 11.

1 REDACTED

www.veritext.com 888-391-3376

REDACTED

1

2      A      Those words are not in our final draft.

3      Q      Now, sir, page 151 of your report.   I

4   want to contrast what we just covered with what

5   you wrote in your report, what Guidepost wrote in

6   its report.   If you look at page 151 -- if you

7   look at the third full paragraph about three

8   quarters of the way down, the sentence:   But then

9   he forced himself...

10           Do you see that?

11     A      Uh-huh.

12     Q      It says the following:   But then he

13   forced herself on her again by groping her, trying

14   to pull her shirt down and violently kissing her.

15           Do you see that?

16     A      I do.

17     Q      That's not in the story -- that's not in

18   Exhibit 7, is it?   Those words?

19     A      They do not match.

20     Q      And then speaking of things, sir, that

21   do not match, your report, Guidepost report, also

22   says:   Survivor did not reciprocate, but rather

1    stood eyes wide open and very stiff.

2          Do you see that?

3     A    I do see it.

4     Q    That's different from what we just read

5    on pages 10 and 11, isn't it, sir.

6     A    What is on page 151 is consistent with

7    what we were told when we interviewed her on

8    March 31, 2022.

9     Q    When was this -- are you saying that --

10   so you're saying that if she said something

11   different from what she wrote in this Exhibit 7,

12   you would go with the words spoken to you rather

13   than Exhibit 7?

14    A    What has ended up in the final report

15   and what we wrote from our notes is not a

16   word-by-word accounting of this document here in

17   my right hand.

18    Q    But sir, this document here in your

19   right hand is Exhibit 7.  If you were going to be

20   true to what actually happened that night,

21   wouldn't it be appropriate, sir, if you were going

22   to do an independent and fair investigation here,

1  to report what she actually wrote about the

2  incident as compared to how you characterized the

3  incident in the Guidepost report.

4          MR. KLEIN:  Objection.  You can answer.

5          THE WITNESS:  Her being on the receiving

6  end of the physical contact and not fighting back,

7  to me, does not describe her as an equal party to

8  the moment.                    REDACTED

9          To me, that's -- that's different.  That's

10  more reflective of not reciprocating.

11  BY MR. MACGILL:

12      Q    Now, sir, in your interview notes of

13  that day, you wrote some interview notes on

14  March 31, 2022, right?

15      A    I did write some notes.

16      Q    And your notes are different from -- to

17  repeat -- your notes are different from the

18  Guidepost report, aren't they?

19  BY MR. KLEIN:  Objection.

20  BY MR. MACGILL:

21      Q    On what happened that night.

22          MR. KLEIN:  Objection.

1           THE WITNESS:  I would need to see them to

2    answer that question.

3    BY MR. MACGILL:

4        Q    You don't -- you don't recall

5    understanding in fact that what is written in that

6    Guidepost report is different from Exhibit 7 and

7    different from your own notes?

8           MR. KLEIN:  Objection as to form.  You can

9    answer.

10          THE WITNESS:  What ended up in the final

11   report would be of less detail than what our notes

12   reflected in that full day of meetings.  But if you

13   are asking me if it's contradictory, I need to

14   see -- if that's what you're alleging, I would need

15   to see the two side by side.

16   BY MR. MACGILL:

17       Q    Sir, on page 151 you said:  Survivor did

18   not reciprocate.

19          Do you see that?

20       A    I do see it.

21       Q    And it continues:  Survivor did not

22   reciprocate but rather stood up, eyes open and

```
1   very stiff, hoping he would just stop and leave.
2           Right?
3       A   Yes.
4       Q   But what your own interview notes say is
5   that,                    REDACTED
6   right?
7           MR. KLEIN:  Objection as to form.  Are you
8   asking him to memorize his interview notes.
9   BY MR. MACGILL:
10      Q   You may answer.
11      A   I see in Exhibit 7 the quote you just
12  said.                    REDACTED
13  REDACTE
       D
14      Q   And that's what your interview notes
15  said, right?
16      A   I don't know.
17      Q   Well, she went with it -- your interview
18  from that day:              REDACTED
RE
D
20          Do you recall saying that, sir?
21          MR. KLEIN:  Objection.  Asked and answered
22  three times.  I direct you not to answer again.  If
```

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 298 of 441 PageID #: 3910

1   you want to show him the interview notes, have at

2   it, or not.  You keep asking the same question in

3   hopes of a different answer.

4           MR. MACGILL:  What was his answer?

5           MR. KLEIN:  His answer was the same thing.

6   He needs to see the report.

7   BY MR. MACGILL:

8     Q   Do you recall writing in your notes from

9   March of 2022 that specifically   REDACTED


11     A   I don't remember that exact quote.

12     Q   But the words   REDACTED

13   REDACTED   never found it into the final

14   report on page 151, did it?

15     A   Let me look and see.

16     Q   We're referring to page 151.

17           MR. KLEIN:  He's going to look at the

18   entire section he said.

19           THE WITNESS:  It does say "hoping he would

20   just stop and leave."

21   BY MR. MACGILL:

22     Q   But the words that I just read to you

1  never found it in page -- never found -- they were

2  never published here in section -- or page 151,

3  were they?

4      A    Didn't you just say hoping he would just

5  stop and leave.

6      Q    The words          REDACTED

        Did those words find it into

8  page 151?

9      A    Some of them did.

10     Q    Some of them did.  You feel it was your

11 job to characterize information reported to you in

12 your meeting?

13     A    The survivor reviewed the description

14 before it went in the report to make sure that it

15 was accurate, and so when she confirmed that that

16 was an accurate statement, we included it.

17     Q    Did you feel that you had the right to

18 edit, to make changes to what your notes said in

19 the final report?

20     A    I haven't seen my notes.

21     Q    Did you feel like you had the right to

22 do that, to make changes to what your interview

1  notes said about the incident?

2      A    I have the right to change my notes?  I

3  wouldn't have changed my notes.  My notes are my

4  notes.

5      Q    Did you have the right to write

6  something different in the report than is included

7  in your notes when you describe this incident?

8           MR. KLEIN:  Objection as to form.  You can

9  answer if you can.

10 BY MR. MACGILL:

11     Q    Let me ask a better question.  Do you

12 believe, sir, that as acting as an independent

13 investigator here that you had discretion to edit

14 the words that are contained in your interview

15 notes when you wrote the report?

16          MR. KLEIN:  Action as to form.  You can

17 answer.

18          THE WITNESS:  I wouldn't edit my interview

19 notes.  I stand by the accuracy of this report.

20 BY MR. MACGILL:

21     Q    You understand that I'm not asking you

22 whether you would edit your notes.  I'm asking

1    where you would write something different in your

2    report than your notes state?

3            MR. KLEIN:  That's a different question.

4    You can answer that question.

5            THE WITNESS:  If I had three pages of

6    notes to describe a particular aspect of the

7    sexual -- unwanted sexual contact between Dr. Hunt

8    and    REDACTED    and it ended up being less than

9    that, it wouldn't necessarily be inaccurate or

10   contradictory.  It would just be less detail.

11   BY MR. MACGILL:

12       Q    Was there financial pressure on your

13   company to come up with something in this report

14   to justify million of dollars of expenditures?

15       A    We had no pressure whatsoever to produce

16   anything, either position or negative.  We had

17   freedom under the agreement to produce an

18   independent report.  We did not have pressure to

19   write any part of the report about Dr. Hunt.  That

20   report without Dr. Hunt is a report that we could

21   have been proud of.  That said, this part of the

22   report that does involve Dr. Hunt is accurate, and

1    I have no issue with it.

2         Q                          REDACTED

13           MR. KLEIN:  Hold on before you answer.

14   Can you tell me where you are reading from so I can

15   just make sure you read it --

16           MR. MACGILL:  No.  I'm just going to ask

17   my question.  I'm not going to have any more

18   harangues on this.

19   BY MR. MACGILL:

20         Q                          REDACTED

1      REDACTED




                                                    .

5             MR. KLEIN:  And before you answer that,
6      I'd like to know that you are reading it correctly,
7      Rob.  So if you can point me to the page just so I
8      can follow along, which is a simple professional
9      courtesy, I want to make sure you're reading it
10     accurately into the record as you are reading from
11     a document and then asking my client to comment on
12     the accuracy of words you are reading, though
13     pretending -- or preventing us from knowing if you
14     are reading it accurately.  Please just tell me the
15     page so I can follow along.
16            MR. MACGILL:  Page 12.
17            MR. KLEIN:  Thank you.  Give me one
18     second.  Now that I'm on page 12, if you can then --
19     BY MR. MACGILL:
20        Q                    REDACTED


22            Do you recall that, sir?

1      MR. KLEIN:  Where are you reading on page

2  12?  There are six paragraphs on page 12.

3      MR. MACGILL:  I'm not reading on page --

4  I'm not reading anymore.

5  BY MR. MACGILL:

6      Q                    REDACTED

9      Do you recall that, sir?

10     A    I do not recall that.

11     Q    Now, you don't -- you didn't include

12  that particular comment or words to that effect in

13  your report, did you?

14     MR. KLEIN:  Objection.  There's no

15  evidence those words were spoken to him.  He said he

16  did not recall those words.

17     THE WITNESS:  I just said she could not --

18     MR. KLEIN:  There's no question before

19  you.

20  BY MR. MACGILL:

21     Q    So you don't recall those -- you don't

22  -- you did not include those words in the

1    Guidepost final report, right?

2         A    I don't see those words.

3         Q    Right.  And again, looking at whether

4    your report was independent, truthful, wouldn't

5    that be important information to give a fair

6    rendition of the events involving this incident.

7              MR. KLEIN:  Objection as to form.  You can

8    answer.

9              THE WITNESS:  I think how the survivor

10   reacted to aggression is important.  There were

11   multiple steps that are common -- push towards and

12   then back off, and there were multiple words spoken

13   and actions taken and not every single word spoken

14   or action taken ended up in the document.  Yet I

15   stand by the accuracy of this document.

16   BY MR. MACGILL:

17        Q    Let's talk about accuracy and whether

18   there was any fair work by you or the people you

19   work with in this connection.  Look at page 152,

20   the top of the page.  This is your final report in

21   your hand, right?

22              MR. KLEIN:  Objection as to has final

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 306 of 441 PageID #: 3918

1    report.  You can answer.

2         A    This is --

3         Q    Guidepost.  Right.

4         A    Guidepost's final report.

5         Q    And this is -- you were a lead

6    investigator on this report.

7         A    I was one of the two lead investigators

8    in this section of the report.

9         Q    Did you read this section before it was

10   published?

11        A    Yes.

12        Q    Did you approve it?

13        A    I concurred with it.

14        Q    Did you approve of every word of this

15   particular section?

16        A    I posed no objection to any word in this

17   section.

18        Q    Okay.  And did you understand as you

19   reviewed this section that it ought to be fair in

20   terms of what was included and what was not

21   included?

22             MR. KLEIN:  Objection as to form.  You can

1    answer.

2         THE WITNESS:  I didn't see any fundamental

3    unfairness in what was written there.

4    BY MR. MACGILL:

5         Q    Did you believe that you needed to be

6    fair with what you included and didn't include in

7    your contributions to this portion of the report

8    on the sexual involving Pastor Johnny Hunt?

9         A    Yes.  And that's why I made ** and

10   talked to Dr. Hunt and gave him the same

11   opportunity to provide hours and hours of detail

12   on his version of the events, but he denied any

13   physical contact whatsoever.

14        Q    All right.  Let's talk about you for a

15   minute.

16        A    Look at the top page and let's look at

17   what you did and what you failed to include.

18             MR. KLEIN:  Objection to the

19   characterization.  If you have a question, by all

20   means, ask it.

21   BY MR. MACGILL:

22        Q    Sir, I want to focus on what you failed

1  to do with my next question.  At the top of the

2  page, you say --

3          MR. KLEIN:  What page are you on?

4          MR. MACGILL:  The same page.  152.

5          MR. KLEIN:  Thank you.

6  BY MR. MACGILL:

7      Q    Hunt stated said he would like to have

8  sex with her three times a day.  Do you see that?

9      A    I do.

10     Q    You approved these words, didn't you?

11     A    I wasn't the approving official.

12     Q    You signed off on these words, didn't

13 you?

14     A    I did not pose any objections to the

15 words used.

16     Q    And then you continue:  The survivor

17 could not believe what she was hearing and could

18 not get inside her condo quickly enough.  That's

19 what you wrote on this, right?

20         MR. KLEIN:  Objection.  You can answer.

21         THE WITNESS:  I don't know that I'm the

22 author of that particular sentence.

1    BY MR. MACGILL:

2         Q                          REDACTED

9         A    Where is that?  I don't see that on

10   page 12.

11        Q    Page 12, 2nd line.

12        A    Okay.  I see it here in writing.

13        Q                          REDACTED

16        A    It's not in the final report.

17        Q    It's not in the Guidepost report, is it?

18        A    Correct.

19        Q                        REDACTED

22        A    I would need to look at my interview

```
 1   notes to see if she said that on March 31st.
 2        Q    Well, she sure didn't say it in
 3   paragraph 12 -- or page 12, top paragraph, did
 4   she?
 5        A    It's not in this document on page 12 in
 6   the same paragraph.
 7        Q    All right.
 8        A    I don't know if it's somewhere else in
 9   the document or if it's in the interview notes
10   from March 31, 2022.
11        Q    So were you trying to create impressions
12   rather than report facts here in this particular
13   paragraph, sir?
14        A    No.  We were trying to report the facts.
15        Q    But you have no fact.  There's nowhere
16   anywhere where there's a phrase where it is said
17   that she couldn't get back into her condo quickly
18   enough.  That appears nowhere in this record, does
19   it, sir?
20             MR. KLEIN:  Objection.  Mischaracterizes
21   his technology.  You can answer.
22             THE WITNESS:  As I mentioned earlier, the
```

1  level of detail in this  REDACTED  is less

2  than the final document than it is in the  REDACTED


4  BY MR. MACGILL:

5      Q    But nowhere in this record, sir -- we

6  have all the papers here, you can look at what you

7  want, but there is nowhere in this record where

8  she made reference at any time anywhere that "I

9  could not get back to my condo fast enough."

10          MR. KLEIN:  Objection.  Mischaracterizes

11  his testimony.  You can answer.

12          THE WITNESS:  It's not in the document.

13  BY MR. MACGILL:

14      Q    Not in any document, is it, sir?

15          MR. KLEIN:  Objection.  You can answer.

16  BY MR. MACGILL:

17      Q    It's not in any document anywhere.

18      A    Those are your words.

19      Q    No, I'm asking you, sir.  That

20  characterization is not in any --

21      A    No.  It's in the final report.

22      Q    Yeah.  It's not in any document except

```
 1    your document.  That's no reference in Exhibit 7.

 2    There's no evidence anywhere in the record of

 3    proceedings than this -- any interview notes

 4    anywhere.

 5         A    That's your statement.  I've would need

 6    to see my interview notes to verify that or

 7    Samantha Kilpatrick's interview notes to verify

 8    that.

 9         Q    Now, let's say --

10         A    Ultimately, as I said earlier, the

11    survivor herself looked at the description to

12    ensure 100 percent accuracy of what we reported.

13    And that is why we let her review it.

14         Q    Now, if it's not there, if there's no

15    reference anywhere in the record here to that

16    phrase, that she couldn't get back into her condo

17    quickly enough, you would agree that that would be

18    misleading and unfair on your part in terms of how

19    you depicted the events between Pastor Johnny Hunt

20    on the one hand, and      REDACTED      on they other.

21              MR. KLEIN:  Calls for speculation.  You

22    may answer.
```

1        THE WITNESS:  That's a hypothetical I'm

2    not comfortable answering.

3    BY MR. MACGILL:

4        Q                    REDACTED

19        Q    And not only to you but to Samantha B.

20    Kilpatrick, right?

21        A    That's correct.

22        Q    Now, you didn't reference anywhere in

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 314 of 441 PageID #: 3926

1  the Guidepost -- or I should say -- let me

2  restart.

3                          REDACTED

7       A    I need to look at the report to answer

8        REDACTED

1          REDACTED

21         R
           E
           D
           ^

1 REDACTED

18    Q    Okay.  And what you are claiming now --
19  what you are claiming is what you read is the same
20  as I just read; is that right?
21          MR. KLEIN:  Objection.  Mischaracterizes
22  his testimony.

1          THE WITNESS:  I never --

2          MR. KLEIN:  Let me finish the objection so

3   the reporter can get it down.

4          Objection.  Mischaracterizes his

5   testimony.  You can answer.

6          THE WITNESS:  It's not the same, but it's

7   not contradictory.

8   BY MR. MACGILL:

9          R
           E
           D
           A
           C
           T
           E
           D

1    REDACTED

                                           .

3    BY MR. MACGILL:

4        Q    And it was Guidepost -- to repeat -- it

5    was Guidepost that made the decision to leave

6    these two facts out of the final report, right?

7            MR. KLEIN:  Objection.  He's here in his

8    individual capacity.  He can answer in that regard.

9            THE WITNESS:  I did not take that out of

10   any draft.  I did not suggest putting that into any

11   draft.

12   REDACTED

1              REDACTED

20        Q    So but the final report says that the
21   meeting was at FBC Woodstock.  Is that in error?
22        A    There was a meeting at FBC Woodstock in

1  that same week, but apparently it's REDACTED

2  church, REDACTED church and not Dr. Hunt's church

3  with the very first meeting happening Monday

4  evening.

5      Q   On page 152 your final report is

6  incorrect in saying the meeting was at FBC

7  Woodstock?

8          MR. KLEIN:  Objection as to form.  I'm not

9  sure that was his testimony, but you can answer.

10          THE WITNESS:  I'm not 100 percent sure.

11  BY MR. MACGILL:

12          R
                E
                D
                A
                C
                T
                E
                D

1          REDACTED

1           Do you see that?

2      A    I do see it.

3      Q    Now, in the final report Guidepost wrote

4  on page 153, Dr. Hunt asked for pastor's

5  forgiveness, and pastor said he agreed.  That's

6  what you wrote, right?

7      A    Correct.

8      Q    And that's different, sir, isn't it,

9  than what the          REDACTED


12     A    This document is -- yes.

13     Q    So did you understand that you were

14 writing something different than what the  REDACTED

           when you said in the final report

16 "Dr. Hunt asked for pastor's forgiveness, and the

17 pastor said he agreed."

18     A    Again, I'll have to refer back to what I

19 said a few times now, that we interviewed REDACTED on

20 March 31, 2022.  And this document, we were not

21 present during its drafting.  It did not oversee

22 how the information was put to paper.  And we put

1    more weight on the firsthand account in

2    debriefing, interviewing,    REDACTED    .  And I

3    don't have my notes in front of me.  So perhaps in

4    those notes I would see.  And ultimately, the

5    survivor viewed this and approved of the language,

6    and her husband.

7         Q    Do you agree, sir, that as a part of

8    your work that you understood specifically that

9         REDACTED         had used a type journal to

10   narrate their storey from 2010 to present?  Did

11   you understand that?

12        A    I'm sorry.  Can you repeat the question?

13        Q    Yeah.  Did you understand specifically

14   that    REDACTED        had met with you and

15   your coinvestigator over an entire day and that

16   you used a type journal -- the REDACTED  had used a

17   type journal to narrate their story from 2010 to

18   present.

19        A    They had this document present that day,

20   but he -- we interviewed REDACTED specifically and

21   caused her to provide in great detail what

22   happened on July 25th, 2010.

1      Q    And then you made -- you followed along

2    their narration along with copies that were

3    provided of Exhibit 7, right?

4      A    As best we could, we tried to follow

5    along, but she was telling her story, and we

6    wanted to give our undivided attention to her but

7    were there to hear it from her and not read it off

8    a        REDACTED        , to have the ability to ask

9    questions.

10     Q    And then what you did in your interview

11   notes is, as they narrated their story, you then

12   created a timeline and typed the timeline up as

13   you -- as they went through their description,

14   right?

15     A    If they told the story in a

16   chronological linear fashion, in all likelihood

17   our notes would have been linear as well and

18   chronological.  But I don't have those notes s in

19   front of me to refer to.

20     Q    Sir, I'm looking at your notes of the

21   meeting that you had.  Did you take notes -- do

22   you recall taking notes on this August 5, 2010,

1   meeting that we've been focused on here in these

2   last series of questions?

3        A    I don't have my notes in front of me.

4        Q                    REDACTED

8        A    Roy Blankenship.

9        Q    Continuing:            REDACTED

11       A    Yes.

12       Q    And JH is Pastor Johnny Hunt.

13       A    Yes.

14       Q    Your entry here says:       REDACTED

16       A    I don't.

17       Q    And your final report didn't say

18  anything like that.  It said instead, Dr. Hunt

19  asked for Pastor's forgiveness and pastor said he

20  agreed.  That's what you wrote on page 153.

21            MR. KLEIN:  Objection.  You read one

22  sentence from all those interview notes, so I would

1  object to the characterization of the entirety of

2  his notes from -- going from one sentence.  But you

3  can answer if you can.

4          THE WITNESS:  Samantha Kilpatrick would

5  have taken notes as well.  REDACTED        would

6  have reviewed --

7          MR. MACGILL:  Why don't we take a break

8  now and then go to the next exhibit.

9          MS. CALLAS:  He's not finished.

10          MR. KLEIN:  He's in the middle of an

11  answer.  Are you withdrawing the question?

12  BY MR. MACGILL:

13      Q     No.  Do you have more to say?

14      A     I was halfway through my response.

15      Q     Go ahead, please.  I'll have her read my

16  question and the portion of your answer and then

17  go -- finish it.

18          (Whereupon, the Reporter read the record

19          as requested.)

20          THE WITNESS:  The final session of the

21  draft to ensure we accurately reported that event.

22

1  BY MR. MACGILL:

2      Q    And the last question before we take a

3  break, your notes confirm what's in the report of

4  the   REDACTED   Exhibit 7, don't they?

5           MR. KLEIN:  Objection.

6  BY MR. MACGILL:

7      Q    The notes you took during the March 31,

8  2022, meeting?

9      A    You told me they do.  I haven't seen my

10  notes.

11          MR. MACGILL:  Okay.  Let's take a break.

12          VIDEOGRAPHER:  Off the record at 17:03.

13          (Whereupon, a brief recess was taken.)

14          VIDEOGRAPHER:  Back on the record at

15  17:11.

16          (HOLSKE Exhibit Number 20 was marked for

17          identification.)

18  BY MR. MACGILL:

19      Q    Sir, we're going to show you Exhibit 20

20  in an electronic format.

21          MR. SANDERS:  So the Bates number is --

22  for the page is GP007645.  It's an eight-page

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 328 of 441 PageID #:
3940

1 document, and the last page Bates number is

2 GP007652.

3 BY MR. MACGILL:

4     Q   Sir, do you have that Exhibit 20 in

5 front of you?

6     A   I do.

7     Q   Can you tell us what this is?

8     A   These are interview notes from

9 March 31st, 2022.

10     Q   Did you create these notes?

11     A   Forgive me.  I'm just looking to see if

12 they are mine or Samantha's notes.  It would be

13 one of the two of us that created this document.

14 We're the only two present.

15     Q   Can you tell by looking at them whether

16 you prepared these or whether your colleague did?

17     A   I don't want to -- similar to the text

18 messages you showed me, I thought Samantha was in

19 the right column and I was in the left.  I don't

20 want to make a mistake here.  So...

21     Q   All right.  So let's -- did you rely on

22 these as a part of your work?

1      A      I would say that these notes by me or by

2   Samantha would be reflective of the interview that

3   day.

4      Q      With the REDACTED ?

5      A      On the 31st of March.

6      Q      And to the best of your knowledge they

7   are an accurate description of what they said to

8   you?

9      A      Yes.  I would say so.

10     Q      All right.  Now, in Exhibit 7, I've been

11  asking you about the                REDACTED

16            Do you remember those questions.

17     A      Yes.

18     Q      In then remember in your report what you

19  said is something different.  You said -- now in

20  the final report what you said is -- this is

21  page 153:  Dr. Hunt asked for pastor's forgiveness

22  and pastor said he agreed.

1        Do's you remember that?

2    A    I don't but let me look and then I'll

3  say if that's what was here, then I'll agree.

4    Q    Page 153.

5    A    Okay.

6    Q    Do you see where you wrote the Guidepost

7  report --

8    A    Yes, I see.  Dr. Hunt asked for pastor's

9  forgiveness and pastor said he agreed.

10   Q    And now that you're -- you see there's a

11  different between the final report and Exhibit 7,

12  right?

13        MR. KLEIN:  Hold on.  Just to make sure

14  he's referring to Exhibit 7, not the iPad.  So just

15  make sure you're on the same page with the --

16        THE WITNESS:  That's right.

17  BY MR. MACGILL:

18   Q    Exhibit 7 and your report are different,

19  aren't they?

20        MR. KLEIN:  Objection.  Asked and

21  answered, but you can answer again.

22        THE WITNESS:  Can I look here at.

1   BY MR. MACGILL:   --

2          Q     Yeah.

3          A     -- page 7?

4          Q     Page 16, Exhibit 7.

5          A     Sixteen.

6          Q                          REDACTED

11          Q     You indicated before that your interview

12   notes might be showing that there was a basis for

13   page 153.  Do you remember that line of testimony?

14          A     Yes.

15          Q     All right.  Let's look at the interview

16   notes and specifically the entries of August 5.

17   Could you go back there?  Are you on August 5?

18          A     I'm here.

19          Q     And the interview notes say the

20   following:R
                   E
                   D
                   ^

22                Do you see that?

```
 1      A    I see it.

 2      Q                    REDACTED


 4      A    Yes.

 5      Q    First bullet point of your interview

 6   notes, the Guidepost interview notes.    REDACTED

                      .

 8           Do you see that?

 9      A    I do.

10      Q                           REDACTED


12      R

13      Q    That's what your notes from the meeting

14   say.  Agreed?

15      A    That's what these notes say.

16      Q                          REDACTED




21      A    Correct.

22      Q    And then your notes also say:    RED
                                              ACTED
```

1  REDACTED

21        Q    Those are all part of your notes,
22   correct?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 334 of 441 PageID #: 3946

1      A     Yes.   Those are -- in these notes that

2   are either mine or Samantha's.

3      Q     Now, in reality, you didn't put any one

4   of these bullet points from your notes in your

5   report, did you?   In the Guidepost report I should

6   say.

7      A     Not with this level of detail, but I

8   don't see them as contradictory.

9      Q                      REDACTED

1                    REDACTED

7   BY MR. MACGILL:

8        Q    In the final report, the Guidepost

9   report, it is Pastor Johnny who is asking for

10  forgiveness, isn't it.

11            MR. KLEIN:  Objection.  Asked and

12  answered.

13            THE WITNESS:  Yes.

14  BY MR. MACGILL:

15       Q    And you made an intentional decision,

16  sir, you and those working in concert with you to

17  intentionally alter the story on this matter to

18  fit the narrative that you wanted to create of

19  creating REDACT.  Right?

20            MR. KLEIN:  Objection.  Mischaracterizes

21  want testimony.  You can answer.

22            THE WITNESS:  Incorrect.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 336 of 441 PageID #:
3948

1  BY MR. MACGILL:

2      Q    You wanted to tell an explosive story,

3  didn't you, sir?

4          MR. KLEIN:  Objection.  You can answer.

5          THE WITNESS:  Incorrect.

6  BY MR. MACGILL:

7      Q    Okay.  But with respect to events of

8      REDACTED    , you came to understand that there

9  was a meeting between    REDACTED    and Johnny Hunt

10  on    REDACTED

11     A    REDACTED    No.

12     Q    No?

13     A    I don't see    REDACTED    , either in

14  Exhibit 7 or Exhibit 20 you just gave me.

15     Q    All right.  Well, look at Exhibit 7, and

16  if you turn to page 17 --

17     A    Okay.

18     Q              REDACTED


20     A    Right.  But I don't see Dr. Hunt as a

21  party to that conversation.

22     Q              REDACTED

REDACTED

---

6    Q    Did there make you understand there had

7  been marital problems?

8          MR. KLEIN:  Objection as to form.

9          THE WITNESS:  My understanding is that

10  that's the narrative that was implanted by Roy

11  Blankenship in the aftermath of the event, and there

12  was no ability for REDACTED or REDACTED to discuss the

13  event itself.  Their directive was to forgive,

14  forget, and move on.

15  BY MR. MACGILL:

16    Q    Well, here it says, sir, this is their

17  own story where it says that REDACTED, for her part,

18                    REDACTED

19          Do you see that?

20    A    I do see it.

21    Q    Are you saying that the Mr. Blankenship

22  caused her to write those words?

```
1      A    I am saying that there were counseling
2  sessions with Roy Blankenship and that was the
3  narrative that was implanted upon them to forgive,
4  forget, and move on with no focus to the actual
5  physical contact between Dr. Hunt and her on
6  July 25th, 2010, and that they were to focus on
7  themselves as a couple as the root cause of what
8  happened on January 25th, 2010.
9      Q    Are you saying that Mr. Blankenship
10 somehow forced                REDACTED



14           MR. KLEIN:  Objection.  You can answer.
15           THE WITNESS:  I didn't say that.
16 BY MR. MACGILL:
17      Q    So why did you give us the paragraphs of
18 testimony that you just did?  Why are you blaming
19 Mr. Blankenship for something.  Are you blaming
20 him -- strike that.
21           Are you blaming Mr. Blankenship for the
22 written words here:              REDACTED
```

1      REDACTED

2         A     What I'm saying is that after the

3    REDACTED  are requested to meet with Dr. Hunt and

4    Roy Blankenship on August 2nd, and then again on

5    August 5th, and instructed that they cannot talk

6    about what happened between Dr. Hunt and REDACTED and

7    that they need to forgive, forget, and move on;

8    and REDACTED has stated that he forgives him, that

9    the focus, according to both REDACTED , by Roy

10   Blankenship was that their marriage was the

11   problem and that the assault was not the problem

12   and was to not be spoken about.

13        Q     Did anyone say this to you?  Are you

14   just giving an opinion, or did somebody say those

15   exact words?

16        A     I'm not giving an opinion.

17        Q     Who said those words to you, sir?

18        A     I'm paraphrasing what I was told by the

19    REDACTED

20        Q     In which interview did they tell you

21   this?

22        A     They talked about it various times about

1  a false narrative and about the counseling, not

2  being allowed to talk about July 25th, 2010.

3       Q    Did REDACTED reach out to Pastor Johnny

4  after the allegation incident?

5            MR. KLEIN:  Objection as to form.  You can

6  answer.

7            THE WITNESS:  As you pointed out earlier,

8  two days later, there was an attempt to confront

9  Dr. Hunt.

10 BY MR. MACGILL:

11      Q    I didn't say confront.  I said reach

12 out.  Did she reach out -- did REDACTED reach

13 out to Pastor Johnny Hunt at sometime in December

14 of 2022?

15      A    That's a different questions.

16           MR. KLEIN:  Yes.  And objection as to form

17 as to his knowledge, but he can answer.

18           THE WITNESS:  I don't recall.

19 BY MR. MACGILL:

20      Q    So looking at page 26, sir, of this

21 Exhibit 7, in the last paragraph, sir.  So looking

22 at the second paragraph, the second sentence --

1    third sentence: REDACTED

3              Do you see that?

4        A    Yes.

5        Q    Continuing,          REDACTED

8              Do you see those words, sir?

9        A    I do.

10       Q    And it's reported here by the    REDACTED

14             Do you see that?

15       A    Yes.

16       Q                        REDACTED

19             Do you see that?

20       A    I do see it.

21             REDACTED

1        MR. KLEIN:  Objection -- sorry, Rob.

2  Objection as to form.  You can answer.

3        THE WITNESS:  I'm aware of that and a lot

4  of other intimate details including her being

5  encouraged to write     REDACTED     to her family

6  members, to  REDACTED  family, as she was dealing with

7  this trauma.  All at the encouragement of Roy

8  Blankenship.

9        (HOLSKE Exhibit Number 21 was marked for

10        identification.)

11  BY MR. MACGILL:

12    Q    I'm going to hand you Exhibit 21, sir.

13  Did you write this email on     REDACTED     , to

14  Samantha Kilpatrick?

15    A    Yes.

16    Q    And you say:          REDACTED

19                REDACTED

1    R
     E
     D
     ^

3         Do you see that?

4    A    I do see it.

5    Q    Why were you interested in not having a

R
~

7    A    I don't know.

8    Q    Were you trying to hide details of your

9    connections in your work with    REDACTED   , sir?

10         MR. KLEIN:  Objection.  Asked and

11   answered.

12         THE WITNESS:  No.  My contact connections

13   with    REDACTED    were well known to the entire

14   team.

15   BY MR. MACGILL:

16   Q    But not to people like Pastor Johnny

17   Hunt.  We didn't know about anything as between

18   you and    REDACTED   , did we?

19         Well, let me ask a better question.  You

20   certainly didn't say one word about your interviews

21   with    REDACTED    and your exchanges of emails and

22   texts when you met with Pastor Johnny Hunt the first

1   time, did you?

2       A    The first time I did not.  The second

3   time I did.

4       Q    You did -- you didn't in April?  You did

5   not in April.

6           MR. KLEIN:  Objection.  We've gone over

7   this a dozen times.

8   BY MR. MACGILL:

9       Q    What documents did you hand over to

10  Pastor Johnny Hunt in May of 2022?

11          MR. KLEIN:  Objection as to form.  You can

12  answer.

13          THE WITNESS:  I did not pass him any

14  documents in May of 2022.

15  BY MR. MACGILL:

16      Q    Did you tell him that, just like you say

17  here, that your work in this case as a Guidepost

18  representative and as a leading negotiator

19  involved you from time to time making sure there

20  was quote no    REDACTED

21      A    I don't understand your question.

22      Q    Well, what you are saying here is you

1  are telling your colleague that you were going to

2  take steps to make sure    REDACTED

3  Did you disclose to Pastor Johnny Hunt, for

4  example, that you were going to take steps in your

5  investigation to protect against having a REDACTED

7      A    I did not tell Pastor Johnny Hunt that I

8  was taking steps to prevent a    REDACTED    .  And I

9  don't have the context of this document, so I

10  don't know exactly what we're dealing with right

11  here because this looks like a response to an

12  earlier email or a phone call or something.

13      Q    Well, you say          REDACTED

                           .  You are referring to

15    REDACTED    , right?

16      A    Yes.  I'm saying that I will call him in

17  lieu of an email or a text message.

18      Q    Because you did not want to have a REDACTED

         of this particular communication with REDACTED

20  REDACTED  right?

21      A    Putting him in contact with REDACTED

22    REDACTED    had no impact on the investigation.

1   It didn't inform future steps.  It didn't prevent

2   future steps.  It didn't prevent Johnny Hunt from

3   telling us the truth on May 12th.  It didn't

4   prevent Roy Blankenship from talking to us or not

5   talking to us.  It had no impact on the next steps

6   in the investigation subsequent to April 12th,

7   2022.  And as I told you, I don't know what this

8   last sentence of the email means.

9       Q    But this is a context where you are not

10  only saying to your colleague, the other lead

11  investigator, you are      REDACTED

15          MR. KLEIN:  Objection.  Asked and

16  answered.

17          THE WITNESS:  I don't recall that request.

18          (HOLSKE Exhibit Number 22 was marked for

19          identification.)

20  BY MR. MACGILL:

21       Q    All right.  Let's show you another

22  document.

1          MR. SANDERS:  We'll mark as Exhibit 22.

2  We will show a virtual version, a one-page document,

3  Bates stamp     REDACTED

4  BY MR. MACGILL:

5          Q     Sir, do you have Exhibit 22 in front of

6  you electronically?

7          A     I do.

8          Q     Is this a text message exchange between

9  you and     REDACTED

10         A     Yes.

11         Q     And did he write to you a text message

12  on July 20 at 10:03 a.m. saying:     REDACTED

15                Did he write those words to you?

16         A     Yes, he did.

17         Q     And did he also write in that same text:

18                     REDACTED

19                He wrote that to you as well, right?

20         A     He did.

21         Q                    REDACTED

1          REDACTED

2     A     No.   I have no recollection of him

3   asking us to          REDACTED


5     Q     But he did say specifically, sir,   RED
                                                 ACT
                                                 ED




9     A     Evidently from his text.

10    Q     And you responded, you said:   REDACTE
                                            D




14    A     Hope you are well.  Thank you.

15    Q     Now, and you are telling this court and

16  this jury you don't recall him specifically asking

17               REDACTED


19    A     I have not seen any request.  I never

20  took down any request in writing.  I don't have

21  any emails or text messages asking me to   REDACTED

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 349 of 441 PageID #: 3961

```
 1      Q    Now, sir, we -- we got this from -- we
 2   got this Exhibit 22 from   REDACTED    Do you
 3   understand that?
 4      A    If that's what you are telling me.
 5      Q    Have you seen this before?
 6      A    Have I seen this?  Yes.
 7      Q    And you saw it in the ordinary course of
 8   accident?
 9           MR. KLEIN:  Objection as to form.
10           THE WITNESS:  Yes.
11   BY MR. MACGILL:
12      Q    Yeah.  And that's why you responded to
13   him, but you didn't recall this until we put it in
14   front of you, right?
15           MR. KLEIN:  Objection.  I don't believe
16   that was his testimony.  I don't think he recalled
17   it even after seeing it; but his testimony will
18   control.
19   BY MR. MACGILL:
20      Q    You are saying that you don't remember
21   ever seeing this document other than when you
22   responded.
```

1      A     Other than when I responded?

2      Q     Well, that's a bad question.  So you had

3  no recollection of this coming into today, this

4  text, Exhibit 21, right?

5      A     Among the documents I reviewed, this was

6  one among them.

7      Q     You did review this in preparation for

8  your testimony?

9      A     I did look at this document.

10     Q     When did you review it?

11     A     Sometime between last Thursday and

12 Tuesday --

13     Q     Okay.

14     A     -- of this week.

15     Q     So, sir, do you have any knowledge as to

16 why your company did not produce this document to

17 us?

18     A     You have it.

19     Q     I don't have it from your company.  We

20 got it only from   REDACTED   .  Do you know why your

21 company did not produce this document to us.

22            MR. KLEIN:  Objection as to form.  You can

```
 1   answer.

 2             THE WITNESS:  I don't.

 3   BY MR. MACGILL:

 4        Q    You don't?  Now, are you aware of any

 5   directive from the CEO of your company to withhold

 6   documents in this lawsuit?

 7        A    I was never directed by anybody to

 8   withhold any documents or destroy any documents.

 9        Q    Around the water cooler, so to speak,

10   have you had conversations with people about

11   destroying documents pertaining to this

12   investigation?

13        A    No.

14        Q    And you don't recall overhearing anybody

15   talking about destroying documents associated with

16   this particular investigation?

17        A    Quite to the contrary.  We were told to

18   retain documents with respect to this

19   investigation.

20        Q    When did you get that request?

21        A    I don't recall.

22        Q    Now, you have the habit of deleting
```

1   things, right?  You know you clear off your email,

2   you clear off your texts as you testified to

3   earlier, right?

4        A    Correct.

5        Q    Did you clear everything out before you

6   got that litigation hold notice?

7        A    If anything had been cleared from my

8   text, it would have been before the hold notice.

9   I did not delete anything subsequent to the hold

10  notice, and anything I deleted prior to the hold

11  notice would have been in the normal course of my

12  organizational habits.

13            MR. MACGILL:  That's all we have.  Thank

14  you.

15            MR. KLEIN:  I have no questions, but I

16  believe Gretchen may have questions for you.

17            EXAMINATION BY COUNSEL FOR THE EC

18  BY MS. CALLAS:

19       Q    Hi Mr. Holske.  Gretchen Callas, counsel

20  for the executive committee.  I want to just be

21  clear about a couple things you testified earlier,

22  and this relates to your contact of communications

1 with -- I think it was referred to the SBC.

2     A    Yes, ma'am.

3 BY MR. MACGILL:

4     Q    So I'm going to go back to earlier in

5 the day.  As you sit here today do you recall --

6 you, Russell Holske -- having any contact or

7 communications with a person you understood to be

8 a representative of the executive committee of the

9 Southern Baptist Convention?

10     A    Only the ones I interviewed, but not

11 with respect to this matter we're here on today.

12     Q    Okay.  So not in connection with the

13 drafting, editing, or finalization of the report?

14     A    No.  I wasn't in direct contact on any

15 of that.

16     Q    So similarly, do you recall having any

17 communications or contact with a person you

18 understood to be a member of the sexual abuse task

19 force of the Southern Baptist Convention during

20 the course of your work finalizing or drafting the

21 report?

22     A    No, ma'am.

1        Q    And finally and similarly, do you recall

2   having any communication or contact with the

3   person you understood to be a member of the

4   cooperation -- committee on cooperation?

5        A    No, ma'am.

6        Q    Now, we've touch a little bit on the

7   question you did ask Mr. Hunt in the second

8   interview, which was May 12th of 2022, correct?

9        A    Yes, ma'am.

10       Q    And you did at that time ask him quite

11  clearly whether he had had any physical contact

12  with     REDACTED     ; is that correct?

13       A    Yes, ma'am.

14       Q    What was his response?

15       A    Absolutely no physical contact.

16       Q    At any time in that interview with

17  Pastor Hunt did he admit to you that he had kissed

18       REDACTED      on the mouth?

19       A    No.

20       Q    At any time in that second interview did

21  Pastor Hunt admit to you that he had fondled   REDACTED

1    A    No.

2    Q    Did he tell you at that time Pastor Hunt

3  that    REDACTED    had initiated contact with him?

4    A    No.  When I asked that question he said

5  no.

6         MS. CALLAS:  That's all the questions I

7  have.

8         MR. KLEIN:  I have no questions.  Thank

9  you, Mr. Holske.

10        VIDEOGRAPHER:  This ends the deposition

11 today.  We're now off the record at 17:41.

12        (Whereupon, at 5:41 p.m., the deposition

13        of RUSSELL HOLSKE was concluded.)

14             *  *  *  *  *

15

16

17

18

19

20

21

22

1              CERTIFICATE OF NOTARY PUBLIC

2              I, CONSTANCE HUNT RHODES, the officer

3    before whom the foregoing deposition was taken, do

4    hereby certify that the witness whose testimony

5    appears in the foregoing deposition was duly sworn

6    by me; that the testimony of said witness was

7    taken by me in stenotypy and thereafter reduced to

8    typewriting under my direction; that said

9    deposition is a true record of the testimony given

10   by said witness; that I am neither counsel for,

11   related to, nor employed by any of the parties to

12   the action in which this deposition was taken; and

13   further, that I am not a relative or employee of

14   any attorney or counsel employed by the parties

15   thereto, nor financially or otherwise interested

16   in the outcome of the action.

17
                        *Constance Hunt Rhodes*
18
                        CONSTANCE HUNT RHODES

19                      Notary Public in and for
                        the District of Columbia

20

     My commission expires:
21   January 31, 2028

22

Veritext Legal Solutions
www.veritext.com                                888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 357 of 441 PageID #: 3969

```
 1                      Veritext Legal Solutions

                           1100 Superior Ave

 2                            Suite 1820

                        Cleveland, Ohio 44114

 3                       Phone: 216-523-1313

 4    February 19, 2024

 5    To: SCOTT A. KLEIN

 6    Case Name: Hunt, Johnny M.  v. Southern Baptist Convention; Et Al.

 7    Veritext Reference Number: 6438462

 8    Witness:  Russell Holske       Deposition Date:  2/1/2024

 9    Dear Sir/Madam:

10    Enclosed please find a deposition transcript.  Please have the witness

11    review the transcript and note any changes or corrections on the

12    included errata sheet, indicating the page, line number, change, and

13    the reason for the change.  Have the witness' signature notarized and

14    forward the completed page(s) back to us at the Production address

      shown

15

      above, or email to production-midwest@veritext.com.

16

      If the errata is not returned within thirty days of your receipt of

17

      this letter, the reading and signing will be deemed waived.

18

      Sincerely,

19

20    Production Department

21

22    NO NOTARY REQUIRED IN CA
```

```
1              DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
2
          ASSIGNMENT REFERENCE NO: 6438462
3         CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
   Et Al.
          DATE OF DEPOSITION: 2/1/2024
4         WITNESS' NAME: Russell Holske
5         In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7         I have made no changes to the testimony
   as transcribed by the court reporter.
8

    _____          _____
9  Date                       Russell Holske
10        Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
          They have read the transcript;
13        They signed the foregoing Sworn
               Statement; and
14        Their execution of this Statement is of
               their free act and deed.
15
          I have affixed my name and official seal
16
   this _____ day of_____, 20_____.
17
                    _____
18                  Notary Public
19                  _____
                    Commission Expiration Date
20
21
22
23
24
25
```

```
1                  DEPOSITION REVIEW
                 CERTIFICATION OF WITNESS
2

         ASSIGNMENT REFERENCE NO: 6438462
3        CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
   Et Al.
         DATE OF DEPOSITION: 2/1/2024
4        WITNESS' NAME: Russell Holske
5        In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7        I have listed my changes on the attached
   Errata Sheet, listing page and line numbers as
8  well as the reason(s) for the change(s).
9        I request that these changes be entered
   as part of the record of my testimony.

10
         I have executed the Errata Sheet, as well
11  as this Certificate, and request and authorize
   that both be appended to the transcript of my
12  testimony and be incorporated therein.
13  _____      _____
   Date                  Russell Holske

14
         Sworn to and subscribed before me, a
15  Notary Public in and for the State and County,
   the referenced witness did personally appear
16  and acknowledge that:
17       They have read the transcript;
         They have listed all of their corrections
18            in the appended Errata Sheet;
         They signed the foregoing Sworn
19            Statement; and
         Their execution of this Statement is of
20            their free act and deed.
21       I have affixed my name and official seal
22  this _____ day of_____, 20_____.
23       _____
         Notary Public

24
         _____
25       Commission Expiration Date
```

Veritext Legal Solutions
www.veritext.com                                         888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 360 of 441 PageID #: 3972

1                    ERRATA SHEET
            VERITEXT LEGAL SOLUTIONS MIDWEST
2                 ASSIGNMENT NO: 6438462
3     PAGE/LINE(S) /        CHANGE        /REASON
4     _____
5     _____
6     _____
7     _____
8     _____
9     _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19

      _____      _____
20    Date                  Russell Holske
21    SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22    DAY OF _____, 20_____ .
23            _____
              Notary Public
24
              _____
25            Commission Expiration Date

# [& - 178]

**&**

**&** 2:9,13

**0**

**0000243** 1:5
**0000401** 347:3
**012444** 235:17
**013946** 85:17
**013948** 85:18

**1**

**1** 1:12 4:7 5:3 10:1,5 15:3 66:4 73:9,17 79:20 80:2,3 81:2 83:2 134:10 169:19 171:19 175:19 190:18
**10** 4:8,13 80:20 131:9 132:2 166:10,14 197:17 212:10 291:14 294:5
**100** 224:5 312:12 320:10
**10016** 2:10
**10:03** 347:12
**10:14** 198:21 200:6
**10:19** 201:11
**10th** 64:14 74:1 74:11,16 83:14 87:12 212:4
**11** 4:14 86:17 88:9 89:5,11

90:15 91:4 121:8,14,17 125:7 126:5 127:12 128:5 128:11 129:1 129:21 130:1 177:7 178:20 179:3,4,15,16 180:22 181:14 183:12 185:4 191:4 245:22 245:22 291:22 292:3 294:5
**1100** 357:1
**11:31** 109:14
**11:50** 109:17
**11th** 89:8 92:18 123:8,12 124:14 125:3 176:18 185:19 186:2
**12** 4:14 96:1 98:10,11,20,22 108:11 158:16 179:10,13,15 179:18 181:6 183:12 185:2 210:18 212:1,7 217:17 218:15 241:20 244:18 245:3 247:13 260:21 303:16 303:18 304:2,2 309:4,10,11 310:3,3,5

342:13
**120** 4:11
**1200** 2:5
**1221** 2:21
**1250** 1:14,20
**12:30** 73:9
**12:43** 159:22
**12th** 211:21 215:8,9,11,13 216:3,8 241:22 242:18,22 243:18 246:16 346:3,6 354:8
**13** 4:15 8:2 198:2,5,6 213:3 233:18 250:8 313:8 318:18
**13573** 356:18
**13:34** 161:4
**13th** 212:18
**14** 4:16 79:20 80:6 83:2 179:8 181:16 181:18 190:18 214:4,7
**14527** 166:17
**14:58** 237:22
**14th** 81:2 134:11
**15** 4:16 143:8 144:18 179:8 191:7 232:21 233:2,3 234:14 234:15 237:20

**150** 256:8
**151** 265:9 293:3,6 294:6 296:17 298:14 298:16 299:2,8
**152** 305:19 308:4 319:1 320:5
**153** 322:4 325:20 329:21 330:4 331:13
**155** 227:4,11 228:9,10
**156** 2:4
**15:24** 238:3
**15:25** 247:13
**15th** 145:15 176:22 212:2
**16** 4:8,17 234:2 234:19 235:12 235:14 236:6 238:5 320:14 331:4
**1600** 2:18
**161** 4:11
**162** 4:12
**163** 4:13
**165** 4:13
**16:26** 121:8
**17** 4:18 204:2 235:3,6,9,14,19 336:16
**177** 4:14
**178** 4:14

Veritext Legal Solutions
www.veritext.com                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 362 of 441 PageID #: 3974

**17:03**  327:12
**17:11**  327:15
**17:41**  355:11
**18**  4:19 204:4
  204:13 239:10
  239:11,14
**1820**  357:2
**19**  4:19 213:12
  250:4,8,10,12
  251:19 252:5
  357:4
**197**  4:15
**1987**  9:1
**1989**  6:20 9:8
  9:10
**1:11**  214:12
  215:4
**1:33**  236:2,12
**1:34**  161:2
**1st**  69:16 70:1,6
  70:7 73:9 74:3
  74:4 80:6
  168:16 169:7
  173:19 174:19

**2**

**2**  4:8 10:10
  16:20,21 20:6
  20:13 79:1
  102:12 111:11
  114:13 167:10
  201:12 216:16
  216:22 248:15
**2.1**  27:2
**2.1.**  26:19

**2/1/2024**  357:8
  358:3 359:3
**2/1/22**  4:9
**2/11/22**  4:11
**20**  4:20 107:8
  148:14 223:2
  237:20 327:16
  327:19 328:4
  336:14 347:12
  358:16 359:22
  360:22
**2000**  79:20
  80:2,6,19 81:2
  83:2 122:22
  133:22 134:10
  190:18
**20005**  1:15,21
**2008**  80:7,19
**2009**  164:21
  165:18 206:7
**2010**  50:6 80:8
  83:11 93:21
  95:3,21 98:13
  98:22 99:13
  100:8,21
  102:12 153:14
  157:10,21
  158:13 159:10
  159:14 174:4
  174:16 175:14
  207:15,19
  208:6 209:21
  218:12 221:4
  221:10 223:14
  248:12 249:13

261:10 323:10
323:17,22
324:22 325:5
331:20 336:8
336:10,13
338:6,8 340:2
**2011**  164:21
  165:18 206:8
**2012**  95:6
**2013**  6:22
**2018**  95:8
  102:9
**2019**  8:6 102:9
**2020**  218:3
**2021**  7:8 8:6
  79:20 80:3,6
  81:2,8,14,17
  82:4 83:2
  123:1 133:22
  134:11 169:21
  190:18
**2022**  44:19
  45:8,21 46:3
  46:19 64:17
  74:1,2,3,11,16
  75:18,22 76:6
  76:21 83:14
  88:9 90:16
  91:4 96:1
  98:15,17,22
  102:13 103:16
  108:11 114:15
  114:22 121:8
  124:14 125:3,7
  126:5 127:2,13

128:5,11 129:1
131:9 132:2
143:8 144:18
147:14 148:8
156:14 157:2
161:13 168:16
169:8,20
175:21,22
176:6,13 177:4
178:10,16
179:6 181:7
183:3 186:11
188:10,19
189:2,22
190:20 191:1,4
192:3 196:16
196:20 197:1
200:6 202:20
208:10 212:7
212:10,18
213:3,12
214:12 215:4
215:11,13
217:18 218:8
218:13 220:15
220:22 222:21
230:18 236:2
242:22 244:9
246:7 247:13
250:8 261:10
272:12 273:2
294:8 295:14
298:9 310:10
316:13 322:20
327:8 328:9

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 363 of 441 PageID #: 3975

340:14 342:13
344:10,14
346:7 354:8
**2023**  73:9,18
74:4 107:8
175:15,21
**2024**  1:12 5:3
357:4
**2028**  356:21
**21**  4:20 123:3
342:9,12 350:4
**213**  4:16
**216-523-1313**
357:3
**22**  4:21 45:21
46:19 346:18
347:1,5 349:2
**22nd**  44:18
45:8 46:3
204:2 208:10
**231**  4:17
**232**  4:18
**233**  4:18
**238**  4:19
**24**  210:16
211:6,14
**2400**  2:21
**249**  4:19
**25**  83:11
**25433**  2:18
**25th**  50:6 93:20
155:15 158:13
159:9 174:4,16
175:13 207:15
207:19 208:6

209:21 218:12
221:4,10
223:14 248:12
249:13 323:22
338:6,8 340:2
**26**  189:21
191:11 192:3
197:11 218:13
222:21 340:20
**26th**  189:12,15
189:17 191:1
194:21 197:7
217:12 218:3,8
**27th**  314:9
316:7
**29**  75:18
**2908**  2:14
**2:22**  202:13
203:4
**2:43**  86:17
89:11 90:16
**2:50**  88:9 89:5
**2nd**  7:8,15
309:11 318:15
339:4

**3**

**3**  4:9 66:9 73:2
73:4,7 144:6
163:1
**3.1**  17:12
**3.6**  114:11,13
**3.6.**  114:19
**30**  51:2 102:18
**3021**  7:15

**31**  146:3,16
161:13 162:18
189:2 207:18
272:12 273:2
294:8 295:14
303:4 310:10
316:13 322:20
327:7 356:21
**31st**  64:17
173:12 174:2
175:12 177:4
190:20 261:15
267:4,6 279:14
310:1 328:9
329:5
**32**  8:20 197:4
**326**  4:20
**341**  4:20
**345**  4:21
**351**  4:4
**37203**  2:14,21
**3:23**  1:5

**4**

**4**  4:9 74:17,21
75:17 175:15
175:21 176:6
176:13 177:8
178:10 181:17
196:16 200:6
200:17 204:11
205:8 269:22
**4/1/22**  4:13
**4/12/22**  4:20
**4/29/22**  4:9

**4/6/22**  4:14
**40,000**  333:2
**4344**  181:17
**44114**  357:2
**45**  148:15
153:2
**46204**  2:5
**48**  210:16
211:3,6,7,16
**4:26**  121:9
130:1
**4th**  177:5 198:9
198:21 200:14
201:11 245:4
245:14

**5**

**5**  4:3,10 17:11
79:4 81:8
85:12,15 87:9
147:14 196:19
197:1 202:13
202:19 239:2
324:22 325:5
331:16,17,20
**5/12/22**  4:19
**5/13/22**  4:19
**5/15/22**  4:12
**5/5/22**  4:15
**5/9/2022**  236:2
**5/9/22**  4:16
**51**  265:12
**53**  262:17
279:18 291:10
311:1,2 313:15
324:8

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 364 of 441 PageID #: 3976

**5:41**  355:12
**5:47**  75:19
**5th**  178:16
    183:3 184:14
    200:18 203:6
    203:17 329:11
    339:5

**6**

**6**  4:11 81:14
    111:14 112:4
    120:18,21,22
    179:6
**60**  242:6,8,11
**600**  2:9
**6438462**  357:7
    358:2 359:2
    360:2
**6th**  81:17 181:7
    182:6 184:15

**7**

**7**  4:11 162:5,9
    162:10,13
    164:3 174:13
    193:8 254:16
    254:17,18,19
    254:19,20,21
    255:20 257:13
    258:2 259:13
    263:1 269:20
    270:1 271:10
    272:5 273:13
    274:4 278:13
    290:22 291:13
    291:20 293:18

294:11,13,19
296:6 297:11
302:3,8,22
309:3,8 312:1
313:9 316:1,4
316:12 318:14
321:2 324:3
327:4 329:10
330:11,14,18
331:3,4 336:14
336:15 337:1
340:21
**7/20/22**  4:21
**73**  4:9
**74**  4:9

**8**

**8**  4:12 163:14
    163:18 164:4
    262:7,15 263:2
    269:22 270:1
    271:20 283:8
**800**  106:15
**85**  4:10
**8:30**  24:21

**9**

**9**  4:13 103:15
    164:8,10,12
    165:2,21 166:2
    166:7 174:9
    193:3 215:4
    220:14,22
    226:14 230:18
    236:2 270:22
    336:8,11,13

337:1,2
**901**  1:15
**9:37**  1:13 5:7
**9th**  148:8
    158:11 194:7
    214:1,12 215:9
    222:2,7,13
    236:12 336:10

**a**

**a.m.**  1:13
    202:13 203:4
    347:12
**ability**  21:2
    261:22 324:8
    337:12
**able**  34:13,16
    34:19 150:7,9
    243:20 244:10
    246:3,22
    279:12 289:17
**above**  216:18
    228:22 357:15
**absolutely**
    183:7 354:15
**absorb**  175:2
**abuse**  79:18
    81:4,21 82:5,5
    82:13,18 83:21
    122:21 123:13
    124:14,20
    125:2,13,19
    126:4 127:12
    127:21 128:3
    128:17 136:17
    136:22 137:1,6

137:10,17
138:9 139:11
140:17 141:9
142:1 156:8
157:11 170:1
170:10,19
171:8 172:18
182:2,10,13
183:16 185:6
190:14,17
207:14 208:5
209:6 217:13
222:14 224:1,3
244:8 246:8,12
281:19 342:21
353:18
**abused**  126:16
**academy**  9:7
**accept**  39:2
    217:2
**accepted**
    100:18 101:6,8
    101:13 126:2
**access**  116:14
    162:19 164:15
    166:2,6
**accident**  349:8
**accomplished**
    118:17 170:15
**accordance**
    358:5 359:5
**account**  33:13
    54:1 58:16
    59:17 94:6
    259:15 260:19

Veritext Legal Solutions
www.veritext.com                                                        888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 365 of 441 PageID #:
3977

263:20 292:21
323:1
**accounting**
294:16
**accounts** 60:9
258:7
**accuracy** 35:20
36:8 184:6
228:19 231:10
240:19,20
249:11,16
300:19 303:12
305:15,17
312:12
**accurate** 88:6
184:19 186:8
188:12 206:2,8
206:10 207:3
208:15 209:19
210:7 220:4,8
220:10 224:5
224:14 227:1
229:18,19
230:12,13
237:13 243:1
248:10 249:20
253:15 262:19
285:13 299:15
299:16 301:22
329:7
**accurately**
145:15 207:17
208:5 209:7
221:16 241:2
279:3 303:10

303:14 326:21
**acknowledge**
329:12 358:11
359:16
**acquired**
205:12
**acquiring**
189:13
**acronym** 69:21
**act** 358:14
359:20
**acted** 159:9,16
**acting** 300:12
**action** 300:16
305:14 356:12
356:16
**actions** 17:16
112:8,12,20
113:4 258:20
305:13
**activity** 58:9
**actual** 158:15
269:3 338:4
**actually** 40:21
81:13 157:21
175:3 225:9
239:3 259:7
266:15,22
267:1 294:20
295:1 316:3,12
347:22
**ad** 288:12
**add** 216:16
232:14 241:8

**added** 55:19
**adding** 202:12
202:14
**addition** 20:22
123:13,15
124:17 174:9
288:7 321:20
**additional**
116:12 194:4
199:9 200:8
204:6 211:21
211:22 283:7
**address** 92:21
357:14
**adjacent** 281:4
**adjudicated**
112:19
**adjustment**
43:20
**administration**
6:18 8:10,12
**administrative**
186:15
**admission**
338:11
**admissions**
230:2
**admit** 45:4,5
55:13 100:20
107:22 187:16
205:16 215:10
277:19,21
316:10 354:17
354:21

**admits** 337:2
337:18 338:22
**admitted**
185:11 222:6
258:8,16 266:9
**admittedly**
219:13
**admitting**
314:17
**adopt** 207:20
**adopted** 250:3
**advance** 13:15
128:16
**advantage**
119:15
**advocates**
127:3
**aeo** 41:20
**affirmatively**
334:11
**affixed** 358:15
359:21
**aftermath**
337:11
**afternoon**
140:16 189:10
**agenda** 254:6
**agent** 9:9
**aggression**
305:10
**ago** 221:6
222:7 317:16
**agree** 37:10
52:21 53:9
58:21 59:10

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 366 of 441 PageID #: 3978

64:22 77:4,5
148:2,4 200:5
200:10 221:21
221:22 230:4
230:10 274:21
312:17 323:7
330:3
**agreed** 16:12
31:7,16 53:1
150:8,15
151:13 152:19
200:3 229:1
309:8 322:5,17
325:20 329:22
330:9 332:14
**agreement** 96:4
301:17
**agrees** 34:18
112:8
**ahead** 87:4
148:18 159:19
237:16 239:9
316:4 326:15
**ahold** 292:4
**aide** 9:1
**aiming** 168:5
**al** 357:6 358:3
359:3
**alex** 2:8 24:1

REDACTED

**allegation**
82:12,17 125:7
126:3,15
127:16 128:4
169:3 173:4
177:22 199:11

200:10 201:2
202:16 204:7
204:16 222:15
245:7,7 340:4
**allegations**
14:3,9,18 40:9
40:15 42:14
44:22 45:20
46:20 47:6
66:15 79:19
81:3,21 82:4,5
93:13 123:13
124:15,20
125:2 126:13
127:12 130:2
132:18 135:8
136:10,17
137:6,10,17
138:8 139:11
140:16 141:9
141:22 168:17
170:1,8,9,19
171:8 182:1,10
182:13 183:16
185:6 194:21
197:8,12
217:13 218:2
236:19 240:6
246:8,12 254:6
**alleged** 52:3
172:17 186:22
192:17 199:1
226:15,22
259:8 260:1
269:14

| | | | |
|---|---|---|---|
| **alleging** 296:14 | 37:3,4,14 | 143:15,18,18 | 259:19 260:7 |
| **allow** 99:19 | 38:12 39:11 | 144:3,11 145:1 | 261:3,13 |
| 209:13 | 42:7 44:12 | 148:22 152:7 | 262:10 264:1 |
| **allowable** 59:6 | 45:1 46:1 48:2 | 153:22 154:14 | 266:16 267:12 |
| **allowed** 126:8 | 50:9 51:18 | 156:11,22 | 268:3,20 |
| 126:12 340:2 | 53:14 55:7,17 | 157:14 158:3 | 271:16 274:8 |
| **allowing** 38:20 | 57:4,12,22 | 159:2,5,6 | 275:12,18 |
| **aloud** 177:18 | 58:7 59:4,8 | 162:1 168:21 | 276:22 278:19 |
| **alter** 335:17 | 60:12 61:8 | 169:12 170:22 | 279:2,5 281:21 |
| **altered** 32:10 | 63:11,12,17 | 171:7,13 | 282:8,16 |
| 33:4,8 | 64:21 65:5,14 | 177:12 178:3 | 283:21 285:3 |
| **ambush** 242:3 | 65:19 71:21 | 180:5 181:10 | 286:10,12,17 |
| 242:10,12,17 | 72:9 73:21 | 182:21 184:3 | 286:21 287:3 |
| **ambushed** | 74:10 80:10 | 185:22 187:21 | 288:19 289:7 |
| 243:3 | 81:11 83:5 | 188:14 191:22 | 290:9,11,20 |
| **analysis** 206:7 | 87:20 89:22 | 192:11 194:13 | 295:4 296:2,9 |
| 263:11 281:13 | 90:18 91:16 | 196:1 205:1 | 297:10,22 |
| **anderson** 3:3 | 93:16 97:6,21 | 206:16 207:2 | 298:3,4,5 |
| **annual** 114:15 | 99:19,21 | 207:12 209:18 | 300:9,17 301:4 |
| 114:22 | 100:12 101:4 | 210:6 211:11 | 302:13 303:5 |
| **anonymity** | 107:5 109:3,8 | 212:21 213:7 | 305:8 306:1 |
| 21:3 44:14 | 109:10 112:15 | 213:14,20 | 307:1 308:20 |
| 52:11 | 113:7 116:10 | 215:3 216:11 | 310:21 311:11 |
| **anonymous** | 119:2 122:5 | 217:10,21 | 311:15 312:22 |
| 44:21 50:22 | 124:7 125:11 | 219:12,15 | 314:7 315:1,11 |
| 52:10 56:11 | 125:22 126:12 | 220:3 222:12 | 317:5,14 318:1 |
| 61:12 | 126:14 129:13 | 223:1,5 231:8 | 318:8 319:12 |
| **answer** 10:8 | 130:6 131:2 | 231:22 237:14 | 320:9,21 |
| 11:8 12:15 | 132:7,13,21 | 241:3 243:8,20 | 321:12 326:3 |
| 15:22 18:13 | 133:9 134:3 | 245:10,21 | 326:11,16 |
| 19:12 26:5 | 135:5 136:4 | 246:18 247:20 | 330:21 335:4 |
| 27:13 28:12 | 138:16 139:3 | 248:21 251:5 | 335:21 336:4 |
| 31:10 32:14,20 | 139:14 140:20 | 251:22 252:9 | 338:14 340:6 |
| 33:5,19 35:2,8 | 140:20 141:2 | 253:10 254:4 | 340:17 342:2 |
| 35:16 36:6 | 141:16 142:13 | 256:2 259:10 | 344:12 351:1 |

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 368 of 441 PageID #: 3980

answered 11:8
28:12 35:2
36:15 57:11
62:2 63:9 65:7
65:19 76:12,17
77:9 90:18
97:6,15 101:3
107:5 108:6,15
122:5 128:14
129:5,13
137:21 141:16
145:7 157:14
159:1 170:21
181:10 185:22
187:12 189:9
192:10,20
200:17 206:1
208:12 215:2
217:10,21
218:9 222:12
223:21 229:6
231:15 248:21
249:10 252:15
254:4 260:6
261:3 268:13
285:3 286:18
287:5,6,8
288:11 289:5
297:21 315:1
317:22 330:21
335:4,12
343:11 346:16
answering
19:13 313:2

answers 9:21
10:6 15:1
110:6 131:1
143:21 222:7
anthony 11:22
15:7
anticipated
186:20
anybody 25:22
32:10 82:13,21
133:6 351:7,14
anymore 304:4
apologies 52:16
apologized
333:10
apologizing
333:14
apparently
320:1
appear 140:13
163:10 185:1
358:11 359:15
appeared
141:14
appearing 6:4
appears 121:15
179:22 180:1
241:21 310:18
356:5
appended
359:11,18
apply 69:16
applying 71:9
appreciate
13:16 86:20

148:3
approach
150:20 153:17
157:19 197:4
226:4 233:20
234:1
approached
150:17,19
appropriate
77:17,22 78:5
246:6 294:21
appropriately
252:2
appropriaten...
67:21
approve 306:12
306:14
approved
308:10 323:5
approving
308:11
approximately
22:15 24:13
41:8 64:16
95:8 153:3,10
156:19 287:8
approximating
287:7
april 75:18,22
76:6,21 77:6
108:10 147:14
168:16 169:7
169:19 171:19
173:19 174:19
175:15,21

176:6,13 177:5
177:8 178:10
178:16 179:6
181:7 182:6
183:3 184:14
184:15 186:22
187:2 188:10
188:15,16,19
189:12,15,17
189:21,21
191:1,11 192:3
194:21 197:7
197:11 200:17
217:12 218:3,8
218:13 222:21
246:7 342:13
344:4,5 346:6
arant 2:20
area 149:20
areas 290:3
arising 112:9
112:13
arm 284:3,7
arm's 38:2,7
39:6,7,14,17
62:9 67:16,17
68:1 71:17
77:14,16
251:16,17,19
armrest 270:18
274:11 284:7
arms 291:18
arrange 148:17
149:11

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 369 of 441 PageID #: 3981

**arranging**
  186:12
**arrived**  214:15
  225:5
**ascertain**
  279:12
**ascertained**
  286:6
**asia**  7:19 8:2
**asked**  11:7
  16:12 23:1
  28:11 35:1
  37:2 44:14
  57:10 59:4
  62:2 64:22
  65:12,18 66:12
  70:13 76:11,16
  77:8 78:10
  84:4,7 87:16
  88:3 90:9,17
  91:4 97:5,14
  99:17 101:3
  107:1,4 108:5
  108:14 109:9
  112:11 122:4
  129:4,12
  131:16 137:7
  137:20 141:15
  145:6 150:18
  157:14 158:22
  159:3 170:21
  181:9 185:21
  187:11 188:22
  190:11,13,15
  192:9,19

197:13 205:22
208:11 210:19
210:22 215:2
217:9,20 218:9
222:11 223:20
229:5 231:14
248:20 249:10
254:3 260:5
261:2 263:6,15
266:11 268:12
285:2 286:10
286:18 288:11
289:4,14,21
297:21 313:11
314:4,19,22
315:9 316:15
317:22 322:4
322:16 325:19
329:12,21
330:8,20
332:16 334:10
335:3,11
343:10 346:12
346:15 347:22
355:4
**asking**  21:7
  30:17 39:1,1
  48:7,8,13
  54:18 55:8,12
  70:11 77:18
  78:19 90:7
  92:6 103:16
  107:1 131:13
  135:1 138:4
  149:2 157:6,8

219:16 223:15
223:16 234:11
251:12 252:6
264:22 269:2
273:3 275:9
277:8,9,11,15
278:16,17,22
279:1 286:9
287:1 288:17
290:21 296:13
297:8 298:2
300:21,22
303:11 311:19
314:12 329:11
335:9 348:3,16
348:21
**asks**  78:6
**aspect**  134:16
  301:6
**assault**  95:21
  96:5 109:21
  110:5,5,16
  111:5 199:1,8
  226:15,22
  238:21 259:8
  314:10 315:17
  316:8 339:11
**assembled**
  25:16
**assessment**
  258:20 261:16
**assignment**
  358:2 359:2
  360:2

**associated**
  42:13 44:4,22
  45:20 46:21
  136:17 188:8
  218:6 277:12
  351:15
**assume**  75:19
  79:4 135:15
**atmosphere**
  241:15
**attach**  233:15
**attached**  4:22
  359:7
**attachment**
  234:15
**attempt**  315:20
  340:8
**attempted**
  314:9 315:16
  316:8
**attempting**
  201:4 238:20
**attempts**
  189:11,16
**attend**  146:12
**attended**  9:6
**attending**  9:2
**attention**  239:8
  275:4 276:14
  280:10 283:6
  283:17 324:6
**attorney**  41:20
  41:20 44:7
  48:5 348:12
  356:14

attorney's
47:10
attorneys 195:5
attributed
248:9
audio 95:18
104:7 155:11
206:6
audit 17:15
august 7:8,15
102:12 324:22
325:5 329:11
331:16,17,20
336:8,10,11,13
337:1,2 339:4
339:5
authenticity
84:11,16 91:6
92:22 93:12,19
author 308:22
authored
162:20 165:21
167:9 234:20
263:22 284:20
authorize
359:11
authorizes 30:7
authors 245:5
availability
72:20 84:7
149:6 189:14
available
119:13 162:22
272:6

ave 357:1
avenue 2:9,14
avoid 77:6
aw 333:7
awarded 6:19
9:8
aware 23:7,8
28:2 54:4
83:12,15 106:4
114:18 130:15
130:17,18,20
131:3 132:8
170:7 172:6
190:13 244:11
261:12 342:3
351:4
awareness 54:6
awkward 302:9
302:10,22
309:5

**b**

b 272:12 273:1
313:19
bachelor 6:15
bachelor's 6:19
back 32:14
35:7 60:18
62:7 66:3
67:16 78:22
80:10 82:11
89:7 98:10,21
100:1 109:13
109:16,19
117:10 123:4
149:8 153:14

156:13 161:3
168:1 175:4
177:16 191:8
197:21 198:8
211:5 220:19
237:19 238:2
247:2 253:15
257:9 258:10
291:13 292:5
292:10 295:6
305:12 309:20
310:17 311:9
312:16 322:18
327:14 331:17
353:4 357:14
background
6:14 15:18
backside
166:16
backward
270:3
backwards
291:16 292:4
bad 350:2
badgering
159:1 283:20
balconies 255:3
balcony 255:10
255:13 256:5
256:18
bangkok 8:15
baptist 1:6,8
2:12 5:6 6:9,11
21:6 25:14,20
26:1 80:22

83:21 136:22
163:20 319:3,6
319:14,17
342:21 353:9
353:19 357:6
358:3 359:3
baptists 333:4
base 80:21
based 7:3 8:1
8:14 11:3
14:17 50:18
51:1,15 55:1
57:6 61:14
97:3,8,12,18
102:6 165:16
201:6,9 208:18
215:19 220:20
230:22 231:19
278:12 279:6,7
279:7,9,10,11
281:3 291:1
332:18 334:16
basic 15:17
133:13 138:7
224:8 277:12
281:17 282:3
286:7
basically
232:13
basis 54:10,15
54:17 55:3
106:16 331:12
bates 22:19,20
22:21 23:5
79:7 85:16,17

166:17 179:14
179:16 181:13
235:16,19
327:21 328:1
347:3
**bears** 283:3
**bedroom**
269:18,18
**began** 7:14 9:1
74:13 81:17
257:6 259:14
260:2 265:5
291:15
**beginning** 9:10
30:10 111:19
115:5 260:2
**begins** 257:16
**behalf** 2:2,7,12
2:16 38:21
59:3,6 72:7
93:15,15 197:6
290:8,10
**beijing** 8:16
**believe** 36:15
56:21 59:3
61:5 69:12
84:4 96:3
103:14 107:4
110:17 117:16
118:21 130:10
150:5 157:13
165:6,16
175:20 211:15
238:11 240:8
241:4,11

243:16 269:17
290:17 300:12
307:5 308:17
319:3,7 349:15
352:16
**believed** 98:4
230:21
**belonging**
75:20
**best** 36:20 56:5
61:13 90:12
96:8 144:10
171:20 229:4
271:16 324:4
329:6 348:12
**better** 18:16
20:1 33:21
89:10 184:18
214:20 300:11
343:19
**beyond** 112:20
163:2
**bias** 40:8,16
**biased** 40:14
**big** 268:16
**bischoff** 4:15
198:14 200:12
205:18 245:5
**bit** 30:22 31:21
354:6
**black** 140:15
259:12 263:2
**blair** 2:13
**blaming** 338:18
338:19,21

**blank** 25:8
244:1
**blankenship**
42:15 43:1
62:22 95:14
100:14 101:6
102:20 103:3
104:4,8 148:8
148:16 150:7
151:8 155:15
155:17,19
156:4,15 157:3
157:9,20 158:5
158:10,17,20
159:8,16 194:3
194:6 206:5
209:10 210:21
216:19,20
224:10 226:13
226:14,21
227:5,20
228:13 229:13
230:6,15,17,21
231:20 232:6
232:12,15
233:21 234:1
241:17 243:12
243:15 245:16
254:7 318:16
320:20 325:8
332:3 337:11
337:21 338:2,9
338:19,21
339:4,10 342:8
346:4

**blankenship's**
95:9 214:17
225:16
**blown** 175:11
**blue** 240:8,10
250:16
REDACTED

**body** 261:18
**book** 341:17
**boss** 19:8,10
129:8
**boston** 6:16
**bottom** 167:10
216:19 256:9
257:13 267:20
267:22
**boult** 2:20
**boundaries**
38:8,14,18
39:3,18 67:22
**boundary** 40:1
40:4,7,13
**bounds** 13:21
69:7 253:5,6
**boys** 126:16
**bradley** 2:20
**brandon** 2:20
**branson** 190:2
**breached** 85:10
92:12 93:6
**break** 109:12
109:20 159:20
234:6 237:17

326:7 327:3,11
**breakout** 43:13
43:18
**breasts** 251:14
**brian** 116:22
117:1,16
119:12
**brief** 109:15
119:9 238:1
327:13
**bring** 244:14
**broadway** 2:21
**brought** 6:8
**bubbles** 240:12
240:13
**building**
151:19,22
152:5 225:4
**bullet** 20:5,18
21:1 79:10,11
81:3,19 83:4
169:4,16 170:1
244:14 332:5
334:4
**bullets** 17:15
20:14 21:9
137:8 169:15
189:1
**bundren** 2:20
**business** 6:17
183:13 184:1
289:18

**c**

**c** 2:1 4:1 5:1
**ca** 357:22
**call** 72:20
83:20 148:18
175:9 194:14
194:18 239:8
343:2 345:12
345:13,16
**callas** 2:17
60:19 326:9
352:18,19
355:6
**called** 5:12
82:22 161:7
**calling** 122:8
281:19
**calls** 38:11
51:17 53:13
55:16 57:3,11
58:6 112:14
113:6 251:21
267:11 281:7
312:21
**capacity** 59:5
135:2,6 186:15
207:11 318:8
**captured**
207:17
**car** 225:17,18
225:19,22
**carefully** 248:3
275:3
**carolina** 146:11
146:19,20

**case** 1:4 6:5
9:13 11:4
12:13 14:17
23:3 25:19
29:5,22 68:2
76:3 104:16
113:10 114:16
168:18 169:8
169:22 170:17
170:18 171:4,7
171:20 172:2,6
191:14 207:9
217:5 225:17
237:10 247:9
247:10,12,16
268:16 275:4
278:12 287:13
288:9 290:5
344:17 357:6
358:3 359:3
**cases** 125:19
127:4 128:17
**cause** 151:11
247:22 338:7
**caused** 122:16
133:18 134:3
323:21 337:22
**cautious** 77:1
**caveat** 59:8
93:16
**ceo** 18:9 116:2
135:21 136:6
172:15 173:14
174:18 214:1
214:14,20

215:16 218:18
218:22 219:1
220:15 221:13
225:5 232:11
233:7 252:22
253:8 259:22
351:5
**certain** 20:15
38:13 39:18
76:10 77:2
108:11,22
115:3 155:9
165:3 183:5,8
**certainly**
192:16 343:20
**certificate**
356:1 359:11
**certification**
358:1 359:1
**certify** 356:4
**cetera** 88:16
**cfo** 279:10
**chain** 87:5
203:22
**chair** 92:16
**chairs** 255:12
**chance** 31:10
279:5
**change** 102:15
300:2 357:12
357:13 359:8
360:3
**changed** 32:10
33:4,7,11
101:15,19,21

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 373 of 441 PageID #: 3985

102:12,14
204:18 300:3
**changes** 229:22
299:18,22
357:11 358:7
359:7,9
**chapman**
136:14
**characterizati...**
126:8 195:22
262:9 266:22
282:8 307:19
311:20 326:1
**characterize**
145:14 192:12
220:11 236:22
299:11
**characterized**
266:20 267:19
295:2
**charge** 249:5
**charged** 28:2,6
134:18
**charleston** 2:18
**check** 267:5
**chief** 15:10,13
66:6 67:4
144:12 178:4
**choice** 96:18
**christ** 333:4
**christianity**
341:17
**christina** 4:15
198:13 205:17
245:5

**christine**
204:12
**chronological**
324:16,18
**church** 21:6
239:4 319:4,6
319:14,17
320:2,2,2
341:7
**churches** 333:2
**circled** 175:4
**circumstance**
52:3 53:7
54:16
**circumstances**
138:5 168:19
334:13
**cited** 39:8
**city** 47:21
**civil** 358:5
359:5
**claim** 98:10
288:8
**claimant's**
177:22
**claimed** 204:19
**claiming** 128:4
316:18,19
**claims** 112:9,13
222:20
**clarity** 93:4
119:8 215:14
**clean** 106:10
117:3

**clear** 47:12
48:4 60:13
61:21 86:15
87:8 134:4
230:2 247:21
262:13 352:1,2
352:5,21
**cleared** 352:7
**clearly** 17:17
354:11
**clergy** 239:4
**cleveland** 357:2
**client** 13:2
25:20 26:11,13
27:2 41:20
48:5 289:16,17
303:11
**close** 285:8
**closer** 263:6,16
263:21 264:6
264:22 265:7
265:14,16,18
266:11,21
267:18,20
268:4,9 270:6
285:14,18
**closure** 266:3
**coffee** 280:22
**coinvestigator**
323:15
**colead** 247:13
**colleague**
328:16 345:1
346:10

**colleagues**
135:14 314:19
**collectively**
64:5 259:1
**collura** 12:1
15:8,8 66:7
175:18
**columbia**
356:19
**column** 145:14
328:19
**come** 17:6 32:8
109:13 124:2
137:2 224:17
226:4 237:19
255:7,11 256:4
256:17 301:13
**comes** 126:18
209:14
**comfortable**
11:1 35:19,20
59:15 67:6
125:13,17
229:3,7 231:10
231:12,16,19
232:1 254:9,11
313:2
**coming** 27:7
350:3
**comma** 229:15
**comment** 247:6
250:2 302:10
302:22 303:11
304:8,12 309:5

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 374 of 441 PageID #:
3986

**comments**
206:12 207:19
208:14 247:7
250:16 253:16
253:17
**commission**
356:20 358:19
359:25 360:25
**committed**
49:22 137:10
137:17 138:9
139:12 140:17
141:9 142:1
182:2,10,14
183:16 185:7
199:8 246:8,12
**committee** 1:7
2:16 4:4 6:10
17:17 79:19
80:2,9,16 81:4
81:22 82:6,18
115:7,10
122:22 136:19
136:21 137:11
137:18 138:9
139:12 140:17
141:10 142:1
169:3 170:2,10
170:19 171:9
172:19 182:2
182:11 186:13
190:15,17
244:8 246:9
352:20 353:8
354:4

**common**
110:10 158:18
305:11
**commonly**
69:21 242:10
**communicated**
214:19
**communicating**
333:10,19
**communication**
48:6 71:18
89:16 345:19
354:2
**communicati...**
26:9 48:14
76:7,21 77:1
119:2,4 243:5
279:8,9 352:22
353:7,17
**company** 11:21
26:3 27:9 28:3
28:6,17 29:12
31:4,8,13,17
45:7 46:12,18
47:21,22 48:12
58:20 63:13,18
66:22 67:4,10
69:20 81:14
84:11 104:22
105:12 112:11
112:12 144:12
172:15 173:14
183:9,13,14,22
214:1 215:16
218:18,22

220:15 221:13
233:7 241:14
246:7 252:22
253:8 259:22
287:11 290:4
301:13 350:16
350:19,21
351:5
**company's**
105:1
**compare**
179:14
**compared**
266:12 267:8
295:2 334:11
**complainant**
66:13 177:21
**complainant's**
66:14 144:17
176:21
**complaint**
156:1,7
**complete** 36:7
**completed**
357:14
**completely**
253:2 262:13
**compound**
253:9 282:15
**concern** 240:21
**concerned**
11:15 52:20
57:1 78:12
85:2,4 91:14
124:1 168:18

172:11 193:16
216:4 224:7,10
224:13 227:20
229:14
**concerns** 78:9
85:6 92:16
**concert** 260:11
335:16
**concluded**
355:13
**conclusion**
38:11 51:18
53:14 55:17
57:4,11 58:7
112:15 113:7
251:22
**conclusions**
181:21
**concurred**
306:13
**condo** 255:21
308:18 309:21
310:17 311:9
312:16
**condominium**
96:4 262:22
269:17
**conduct** 31:5,8
31:13,17 64:8
65:15 66:12
75:22 134:13
134:14 142:19
164:22 177:20
190:22 277:13
290:3

conducted
   191:19 203:13
   212:7 279:7
   283:1
conducting
   193:11 197:5
confident
   243:11
confidential
   41:20
confidentiality
   51:6
confirm   34:3
   34:19 35:12
   284:20 327:3
confirmed
   39:21 143:22
   206:7 230:18
   299:15
confirming
   105:19 144:10
   201:22
confirms
   259:13
confront
   197:11 314:10
   314:13 315:16
   315:20 316:8
   340:8,11
confronted
   217:12 222:14
   243:10
confronting
   243:11

confused
   131:12,17
confusion
   131:20 220:13
connection
   17:7 19:1 25:4
   25:19 27:10
   28:3 29:5
   37:11 39:21
   63:14 64:6
   76:2,9 78:15
   108:2 170:8
   305:19 353:12
connections
   343:9,12
consensual
   98:6 99:3,7,15
   100:9,16 101:1
   101:8,22
   102:10,16,16
   224:12 230:22
   243:17
consent   229:16
   230:9 231:5
   232:7 264:5,8
   264:21,22
   265:2 267:22
   268:6,9,16
   269:2,3,5,10
consented
   263:20 266:10
   268:1
consideration
   102:20

considered
   71:12 253:16
consistent
   14:22 26:14
   68:11 294:6
constance   1:18
   356:2,18
consultant
   71:12
contact   73:22
   84:9 110:7
   111:6 145:21
   152:15 176:4
   210:11 251:1
   253:13 265:3
   268:22 295:6
   301:7 307:13
   338:5 342:17
   342:19 343:12
   345:21 348:12
   352:22 353:6
   353:14,17
   354:2,11,15
   355:3
contained
   95:18 206:6
   300:14
contains
   141:10
contemplated
   341:22
contemporan...
   95:3,19
content   37:6
   141:6 155:19

   175:10 179:9
   208:15
context   75:9
   86:22 345:9
   346:9
continue
   263:14 308:16
continued
   126:22 161:7
   161:11 243:16
continues
   112:18 229:10
   271:4 292:13
   296:21
continuing
   227:2 228:21
   255:15 257:5
   325:9 332:16
   341:5
contradict
   314:11
contradictory
   266:17 267:14
   296:13 301:10
   317:7 334:8,9
contrary
   351:17
contrast   293:4
contrasted
   267:1
contribution
   170:14
contributions
   238:20 307:7
   309:14 321:16

| | | | |
|---|---|---|---|
| **control** 253:2 | 123:22 129:22 | 200:21 221:1 | **couch** 262:15 |
| 349:18 | 156:14 174:14 | 226:10,11 | 263:3 264:20 |
| **controlling** | 351:10 | 228:18 229:20 | 270:6,17,19 |
| 253:3 | **conversing** | 238:9,17 239:1 | 271:8,13 |
| **convention** 1:6 | 167:4 | 255:22 263:21 | 273:21 274:5,5 |
| 1:8 2:12 5:6 | **convey** 238:20 | 268:14 274:2 | 274:10 275:14 |
| 6:9,11 25:14 | **convinced** | 274:16 285:4 | 275:16 277:3,4 |
| 25:21 26:1 | 224:4 | 309:18 313:18 | 277:5,22 278:3 |
| 81:1 83:22 | **cooler** 351:9 | 313:21 315:13 | 278:5,9,11 |
| 163:21 235:16 | **cooperation** | 318:2 319:18 | 279:20 280:3 |
| 342:22 353:9 | 204:6 354:4,4 | 322:7 332:21 | 280:18,19,21 |
| 353:19 357:6 | **copies** 85:15 | 333:22 352:4 | 282:14,20 |
| 358:3 359:3 | 324:2 | 354:8,12 | 283:10 284:3,6 |
| **conversation** | **correct** 7:16 | **corrections** | 284:12 285:12 |
| 50:11,12 54:8 | 9:6,11 11:13 | 357:11 359:17 | **counsel** 4:3,4 |
| 55:1 56:20 | 14:20 15:4 | **correctly** | 5:14 23:16 |
| 57:6 95:5 97:8 | 27:20 29:2 | 206:12 221:5 | 161:10 221:22 |
| 104:2 145:2,8 | 32:3 33:6 40:3 | 303:6 | 222:1 352:17 |
| 145:11,17,19 | 43:9 46:22 | **corresponds** | 352:19 356:10 |
| 145:22 147:11 | 49:7 52:15 | 240:9 | 356:14 |
| 148:13 151:11 | 54:22 79:13,15 | **corroborate** | **counseling** |
| 152:11,22 | 79:16 81:5 | 54:2 84:18 | 103:20 154:10 |
| 153:19 155:6 | 82:19 98:16 | 173:7 201:1,14 | 154:15,17,21 |
| 168:10 174:20 | 104:12 107:20 | **corroborated** | 155:14 158:5 |
| 175:9 176:9 | 116:5 123:5 | 53:22 | 244:2 325:5 |
| 177:1,2,6 | 128:8 129:15 | **corroborating** | 331:20 338:1 |
| 186:2 276:7 | 147:12 151:20 | 87:16 88:14 | 340:1 |
| 336:18,21,22 | 162:16 168:3 | 194:11 | **counselor** |
| **conversations** | 170:2 171:10 | **corroboration** | 159:9,16 |
| 50:13 54:8 | 172:1 176:22 | 54:3 88:3 | **count** 67:8 |
| 55:1,19 56:16 | 178:7 184:13 | 95:10 194:4 | **country** 8:3,15 |
| 57:7 64:14 | 184:17 190:1,3 | 199:10 200:8 | **county** 358:10 |
| 65:9 83:16 | 190:5 191:5 | 202:10 204:19 | 359:15 |
| 95:2,5,7 97:8 | 192:21 194:8 | 205:3,9,12 | **couple** 9:4 |
| 97:12,19 | 195:16 196:20 | | 234:21 317:15 |

www.veritext.com                                                    888-391-3376

320:12 338:7
352:21
**couples** 325:6
332:2
**course** 37:3
59:5 75:2
99:19 127:21
128:19 129:20
138:14 144:3
183:22 199:5
226:8 289:18
289:19 349:7
352:11 353:20
**court** 1:1 5:8
21:15 29:21
30:6,17,19
31:3 32:14,22
35:6 38:6 44:9
47:10 53:5,6
60:5 63:2,5
87:11 99:11,17
103:2 104:20
105:3 125:18
127:11 130:22
184:20 190:10
195:6 210:10
220:8 252:5
266:8 288:22
290:4 291:5
348:15 358:7
**courtesy**
148:19 157:8
158:18 303:9
**courtroom** 30:2
30:14 58:11

**cover** 96:16
139:21
**covered** 60:22
111:9 134:8
139:20 143:3
169:14 293:4
<span style="color:red">REDACTED</span>
**create** 146:5
310:11 328:10
335:18 346:11
**created** 165:15
165:15,17
180:14 236:7
236:11 324:12
328:13
**creating** 76:3,9
77:2,6 200:12
335:19
**creation** 181:7
236:1
**credence**
202:15
**credentials**
17:16
**credibility**
50:17,17 51:3
51:20
**credible** 199:7
228:14 267:10
**criterion**
170:20
**cross** 38:19
**crossed** 38:15
226:10

**crystal** 215:14
**cummings** 2:20
**current** 186:16
**currently**
215:20 219:5
220:20
**custodian**
180:19 247:5
**custom** 117:1
**customary** 68:6
**cv** 1:5

## d

**d** 2:3 5:1
**d.c.** 5:6 7:4
149:20
**damage** 333:3
**dark** 240:8,10
247:7
**darker** 240:12
250:16
<span style="color:red">REDACTED</span>

**date** 1:12 5:2
18:3 20:15
46:8 75:16
81:7 82:8,9
83:4 87:14
91:3 93:7
107:11 115:4
143:10 145:19
164:17 169:1
169:17 172:5
172:20 175:10

178:1 180:9
181:1 185:16
191:15 200:14
201:9 203:2
212:8 215:1
217:6,8 232:13
236:1 357:8
358:3,9,19
359:3,13,25
360:20,25
**dated** 98:14
176:5
**dates** 67:6
75:18 185:1
200:19,21
**datetime**
180:14,16,17
181:7
**day** 7:13 58:9,9
87:12 144:20
145:5,12,22
146:17,19
147:1,7 148:12
161:14 162:3
167:6,7,9,21
168:6,13
174:22 201:2
202:19 225:1
230:19 272:20
275:22 276:7
277:14 279:10
295:13 296:12
297:18 302:5
304:7 308:8
323:15,19

329:3 353:5
358:16 359:22
360:22
**days** 96:9 183:3
203:19 204:2,4
204:13 212:18
215:15,21
216:2,8 218:17
219:6 222:8
223:15 233:18
251:11 252:7
252:22 320:12
340:8 357:16
**daytime** 180:15
**dc** 1:15,21
**dea** 8:19,20,22
9:6 23:3
**dealing** 342:6
345:10
**dear** 357:9
**debriefing**
323:2
**decade** 123:11
124:12
**decades** 123:6
123:9,10
133:15
**december** 9:7
340:13
**decide** 40:11
171:21 172:8
**decided** 37:6,17
172:10 174:17
195:7 216:6

**decision** 14:2,8
14:13,14,15,16
33:22 36:17
47:19 78:4
82:15 172:16
253:11 264:11
318:5 335:15
**declined** 211:2
**dedicated**
186:14
**deed** 358:14
359:20
**deemed** 19:15
113:4 357:17
**defendant** 1:9
4:7
**deferring** 36:2
47:20
**define** 58:4
110:5,11
**defined** 101:6
110:12 238:14
**definition**
110:9
**degree** 6:15
117:22 261:16
261:20 262:20
291:12
**degrees** 49:19
**delete** 117:2
352:9
**deleted** 106:19
142:9 289:17
289:19 352:10

**deleting** 351:22
**demand** 96:19
**demeanor**
241:9,12,17,19
**denhollander**
342:17,19,20
345:22
**denials** 240:5
**denied** 243:13
307:12
**denying** 207:5
207:6,6
**department** 8:9
357:20
**depicted**
312:19
**deposition** 1:11
4:6 5:4 6:4
30:5 115:17
118:7 288:3
355:10,12
356:3,5,9,12
357:8,10 358:1
358:3 359:1,3
<span style="color:red">REDACTED</span>

**describe**
110:14 126:13
155:18,22
197:9 295:7
300:7 301:6
**described**
10:14 12:6
20:9 39:15,16

99:3,13 100:8
178:5 206:14
207:18 208:5
209:8 224:4
269:4 276:3
284:10,11
**describes** 276:2
276:4 292:16
**describing**
162:12
**description**
11:12,14
174:15 208:16
209:20 221:3
223:13 241:8
241:12 248:11
250:22 253:13
260:1 299:13
312:11 324:13
329:7
**designated**
41:19
**designation**
41:21
**destroy** 77:18
78:3,15,19
104:15 105:20
105:21 106:3
289:21 346:13
348:1,3,4,8,17
348:21 351:8
**destroyed**
78:11 107:2,10
347:18 348:6

| | | | |
|---|---|---|---|
| **destroying** 351:11,15 | **device** 120:8 **difference** 145:17 229:16 230:8 231:4 232:5 | **direction** 356:8 **directive** 117:14 337:13 351:5 | **discussion** 4:13 69:12 167:12 168:2 173:20 174:1 175:4 177:13 185:19 224:20 |
| **destruction** 104:15 | **different** 55:12 90:7 102:9 109:10 115:18 115:18,22 125:8 135:8,9 157:7 205:20 253:21 267:6,8 267:16 286:13 294:4,11 295:9 295:16,17 296:6,7 298:3 300:6 301:1,3 322:8,14 329:19 330:11 330:18 334:13 334:19 340:15 | **directly** 21:19 27:8 60:15 99:11 114:10 117:10 170:5 183:16 185:7 246:12 342:17 | **district** 1:1,1 356:19 |
| **detail** 174:4,5 175:13 188:20 216:14 249:19 263:14 266:18 276:15,16 291:3,12 296:11 301:10 307:11 311:1 323:21 334:7 334:20 | | **director** 7:2,21 8:14 | **division** 1:2 **do's** 330:1 **doctor** 48:21 **document** 10:8 13:1,5 15:2 17:12 20:13 23:6 70:9 75:13 85:17,21 86:19 96:3 98:7 104:15 110:18 140:21 145:13 161:19 162:3,11,19 175:17 176:2,5 177:5 182:18 182:21 183:8 183:13,21 184:15 193:4 197:20 201:5 220:2,2 221:19 228:3 232:16 232:17 236:9 237:13 238:10 238:12 246:2,9 248:17 254:20 255:17,18 256:1 257:8 |
| **detailed** 218:2 221:2 261:22 | | **disagree** 108:8 110:2 | |
| **details** 31:1 60:22 191:12 209:7 210:12 224:1 227:5,21 229:11 230:7 261:16 276:18 276:19 283:6 283:17 342:4 343:8 | | **disagreed** 108:7 | |
| | | **disclose** 58:14 61:11,22 119:3 192:1 194:20 288:15,20 345:3 | |
| | **difficult** 252:9 **difficulty** 189:13 **digest** 175:5 **digital** 165:15 **direct** 19:5 158:12 297:22 353:14 | **disclosed** 195:13 | |
| | | **discovery** 287:22 | |
| **determine** 34:13 53:6 78:6 173:14 | | **discretion** 300:13 | |
| **determined** 175:3 | **directed** 17:13 116:19,21 117:12 118:19 351:7 | **discuss** 13:1,7 156:3 195:6 218:11 219:21 337:12 | |
| **determines** 67:20 | | **discussed** 32:7 99:7 114:7 183:1 195:4 279:15 | |
| **determining** 165:14 | **directing** 222:22 223:4 | | |

Veritext Legal Solutions

www.veritext.com
Case 3:23-cv-00243  Document 219-5  Filed 07/03/24  Page 380 of 441 PageID #: 3992
888-391-3376

259:13 262:18
262:20 263:8
264:1 265:11
266:16 271:14
272:3,9,15,16
272:17 273:11
273:12 274:8
274:13,18
276:7 277:9,17
278:18 279:1
279:18 280:7
291:9 294:16
294:18 303:11
305:14,15
310:5,9 311:1
311:2,3,12,14
311:17,22
312:1 313:15
319:11,11,19
321:18 322:12
322:20 323:19
324:8 328:1,13
329:13 335:5
338:10 345:9
346:22 347:2
349:21 350:9
350:16,21
**documentation**
98:3
**documented**
105:2 145:2,8
145:11 260:15
**documenting**
145:17

**documents**
21:18 23:4,10
24:22 78:3,11
78:15,20 84:21
88:15 96:10
102:7 104:16
104:20,21
105:1,5,12,20
105:21 106:3
107:2,10 115:6
115:10,13
120:11,13
132:15 147:5
177:13 226:19
289:21,22
344:9,14
346:13 348:1,8
348:18,22
350:5 351:6,8
351:8,11,15,18
**doing**   29:12
68:2 98:18
114:17 169:21
187:8 193:19
195:20,22
242:16 289:8,9
290:4
**doj**   23:3
**dollars**   28:10
301:14
**door**   315:20
**doubt**   46:18
99:1 183:20
**dozen**   106:13
344:7

**dr**   5:4 42:17,22
48:20,22 49:1
49:14 50:2,19
51:12 52:1,9
52:19 53:9,18
54:5 56:13
63:3 93:20
95:21,22
100:15 101:7
103:1 123:16
123:20 132:16
138:2,19
139:16,18
142:15,16
147:21 154:17
155:2 158:7,8
167:22 168:4,8
174:16 186:19
186:21 187:9
187:17 192:3
194:5 195:12
197:11 206:3
207:15 209:20
215:13 217:2
218:13 222:14
224:15 231:1
241:22 243:9
251:1 253:13
254:7,8,10
255:9 256:4
258:20 261:19
265:7,15
266:21 291:11
301:7,19,20,22
307:10 314:10

315:16,20
316:8 320:2
322:4,16
325:18 329:21
330:8 334:10
336:20 338:5
339:3,6 340:9
**draft**   4:14
129:2 131:7
132:2 137:13
139:9,17 179:4
180:11,22
182:5,7,17
183:4 201:4
208:14 209:21
215:17 219:2
220:18 223:9
223:16 236:20
237:1 245:14
246:20 247:21
249:17 254:13
259:17 280:14
280:16 292:12
293:2 318:10
318:11 326:21
**drafted**   12:2,7
12:11 137:12
140:1,6 179:5
207:16 234:9
271:15 272:2
**draftees**   12:4
**drafter**   198:17
**drafters**   139:17
**drafting**   61:19
226:15,21

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 381 of 441 PageID #: 3993

238:19 244:17
322:21 353:13
353:20
**drafts** 138:22
139:10 141:21
141:21 236:21
237:1
**drive** 95:17
164:14 206:5
**drove** 225:22
291:16
**drug** 8:10,11
**due** 212:2
**duly** 5:12 161:8
356:5

**e**

**e** 2:1,1 4:1 5:1,1
6:2 161:1,1
**earlier** 87:11
90:2 107:5
115:16 153:2
171:15 214:18
217:11 221:8
246:1 248:8
283:13 291:9
310:22 312:10
340:7 345:12
352:3,21 353:4
**earned** 6:17
**ears** 156:2,6
**easier** 245:21
**east** 2:4 8:14
**eatonton**
146:11,19

**ec** 182:14
183:16 185:7
246:12 352:17
**ec00013** 79:7
**ec00016** 112:4
**ec0014** 111:11
**ediscovery**
117:16,19
**edit** 206:13
208:1,8,13
299:18 300:13
300:18,22
**edited** 206:21
207:7 209:16
**editing** 353:13
**editor** 209:14
**edits** 240:4
247:14
**educational**
6:13
**effect** 253:1
304:12
**eight** 101:16,22
109:9 213:5
287:7 327:22
**eighth** 212:17
**either** 43:17
156:15 177:8
178:9 184:21
185:13 193:8
253:22 301:16
334:2 336:13
**electronic**
85:15 327:20

**electronically**
85:21 347:6
**element** 158:9
**elements** 18:6
21:4 158:10
189:1,3
**eleven** 153:10
**ella** 3:3
**email** 4:10,13
4:15,16,20
83:20 84:1,4,6
86:15,16,19,22
87:5,21 88:10
88:12 89:12,13
89:15 90:2,4,9
90:13,14,15
106:12,14
107:12 108:10
109:6,7 152:15
166:16,17,22
167:9 173:17
197:22 198:9
198:13,20
200:1 201:2,10
201:21 203:21
233:6 342:13
345:12,17
346:8 352:1
357:15
**emailed** 149:1
**emailing** 92:18
245:13
**emails** 22:1
76:2 84:21
88:15 89:19

91:2 106:11,13
120:11 136:1,5
166:15 289:20
343:21 348:21
**embargoing**
288:7
**embarrassing**
261:15 262:1
**embedded** 25:6
25:9
**emoji** 226:9
**employed** 7:1,9
7:10,17 8:5,7,9
8:19,20 9:3
47:22 356:11
356:14
**employee**
163:13 356:13
**employees**
136:21 152:13
**employment**
7:14
**enclosed**
357:10
**encompasses**
22:3
**encounter** 94:6
98:5 100:22
102:10,22
156:8 210:12
218:7 224:11
230:22 257:20
258:10,17
260:15 261:10
269:14

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 382 of 441 PageID #: 3994

**encountered**
  128:17 151:17
  172:21
**encourage**
  69:13
**encouraged**
  342:5
**encouragement**
  342:7
**ended**  82:14,22
  138:20 148:15
  262:18 265:21
  294:14 296:10
  301:8 305:14
**ends**  236:12
  355:10
**enforcement**
  8:10,12
**engage**  152:10
**engaged**  25:14
  29:12 81:6,8
  82:4 123:3
**engagement**
  4:8 15:18,20
  16:5,10,15,16
  16:19 17:3
  19:17,17 20:6
  20:8,20 25:12
  26:11 29:8
  79:1,3 81:13
  81:17 82:15
  83:3 84:3
  111:10 112:10
  112:13,21
  114:13 127:1

  134:9 136:14
  169:5,9 172:5
  248:3,6,14
  249:1
**engagements**
  19:15 28:17
**ensure**  36:7
  43:14 61:17
  207:17 208:5
  224:3 253:12
  253:14 312:12
  326:21
**ensures**  85:9
  92:11 93:5
**entailed**  145:22
**entered**  359:9
**enthusiasm**
  129:10,14
**entire**  10:8 15:2
  133:14,17
  146:17,19
  166:3 168:15
  224:14 229:20
  237:13 248:22
  275:22 298:18
  323:15 343:13
  358:5 359:5
**entirety**  41:2
  86:22 87:9
  114:15 138:18
  229:19 326:1
**entitled**  137:10
  138:8 139:11
**entity**  58:21

**entries**  165:20
  331:16
**entry**  144:17,19
  227:9 325:14
**equal**  295:7
**equivocation**
  45:6 108:1
**errata**  357:12
  357:16 359:7
  359:10,18
  360:1
**error**  319:21
**especially**  32:5
  268:21
**esquire**  2:3,3,8
  2:8,13,17,20
**essentially**
  18:19 242:11
**establish**  223:4
**established**
  223:3
**estee**  7:19,20
  8:1,5,7
**estimate**  28:5,8
**et**  88:16 357:6
  358:3 359:3
**evaluate**
  248:19
**evening**  282:3
  320:4
**event**  23:9
  46:17 48:11
  91:1 95:3,19
  102:1 115:3
  139:16 189:19

  209:21 243:17
  263:20 313:5
  326:21 337:11
  337:13
**events**  225:3
  227:6,21
  229:11 230:7
  255:20 260:21
  281:18 305:6
  307:12 312:19
  313:10 336:7
**eventually**
  180:20
**everybody**
  187:20
**evidence**
  104:18 157:20
  157:21 158:15
  247:10,11,16
  272:2 289:2,9
  289:11 304:15
  312:2
**evidentiary**
  159:7,12,15
**evidently**  348:9
**ex**  80:8,15
**exact**  46:8 63:8
  65:20 70:22
  98:7 107:11
  127:4 128:14
  176:14 212:16
  220:14 228:6
  231:6 252:16
  286:11 298:11
  339:15

| | | | |
|---|---|---|---|
| **exactly** 49:22 | **executing** | 163:14,18,18 | 293:18 294:11 |
| 96:7 110:1 | 11:21 | 164:3,4,8,10,12 | 294:13,19 |
| 121:22 140:7 | **execution** | 165:2,21 166:2 | 296:6 297:11 |
| 146:21 179:8,9 | 358:14 359:19 | 166:7,10,14 | 302:3,8,21 |
| 181:3 200:18 | **executive** 1:7 | 174:9,13 | 309:3,7 312:1 |
| 241:18 345:10 | 2:16 4:4 6:10 | 175:19 178:20 | 313:9 316:1,3 |
| **examination** | 79:19 80:2,9 | 179:2,3,4,10,13 | 316:12 318:14 |
| 4:2 5:14 161:7 | 80:16 81:4,21 | 179:15,15,16 | 321:2 324:3 |
| 161:10 352:17 | 82:6,18 115:7 | 179:18,21 | 326:8 327:4,16 |
| **examined** 5:13 | 115:10 122:22 | 180:21 181:6 | 327:19 328:4 |
| 161:8 | 136:19,21 | 181:14 183:12 | 329:10 330:11 |
| **example** | 137:11,18 | 183:12 185:2,2 | 330:14,18 |
| 113:15 170:13 | 138:9 139:12 | 185:4 193:3,8 | 331:4 336:14 |
| 193:3 202:6,8 | 140:17 141:10 | 197:22 198:1,2 | 336:14,15 |
| 242:7 345:4 | 142:1 169:3 | 198:5,6 214:4 | 337:1 340:21 |
| **exceeded** 253:7 | 170:2,10,19 | 214:7 232:20 | 342:9,12 |
| **except** 311:22 | 171:8 172:18 | 232:21 233:2,3 | 346:18 347:1,5 |
| **excerpt** 4:18 | 182:2,11 | 234:2,5,14,15 | 349:2 350:4 |
| **excessive** 65:3 | 186:12 190:14 | 234:19 235:3,6 | **exhibits** 4:6,22 |
| **exchange** 4:9,9 | 190:17 244:8 | 235:9,12 236:6 | 12:21 13:5,9 |
| 4:11,16,19,19 | 246:8 352:20 | 238:5 239:10 | 13:12 334:21 |
| 4:21 75:17 | 353:8 | 239:11,14 | **existence** |
| 347:8 | **executives** | 245:21,22 | 246:20 |
| **exchanges** | 47:20 | 248:15 250:4,9 | **expansive** |
| 343:21 | **exhibit** 10:1,5 | 250:12 251:18 | 230:3 |
| **exchanging** | 15:3,5 16:20 | 252:4 254:16 | **expenditures** |
| 72:6 | 16:21 20:6,13 | 254:17,19,20 | 301:14 |
| **excitement** | 66:4 73:2,4,7 | 254:21 255:20 | **experience** |
| 302:4 | 74:17,20,21 | 258:2 259:13 | 35:21 50:18 |
| **exclamation** | 75:17 79:1 | 263:1 269:20 | 51:2 68:12 |
| 292:13 | 85:12,15 87:9 | 270:1 271:10 | 102:18 169:1 |
| **executed** 15:6 | 111:11 114:13 | 271:20 272:5 | 169:17 171:16 |
| 16:5 66:6 | 120:18,21,22 | 273:13 274:4 | 172:4,20 197:5 |
| 359:10 | 144:6 162:5,9 | 278:13 290:22 | 235:2 |
| | 162:9,10,13 | 291:13,20 | |

www.veritext.com                                                          888-391-3376

| experienced | f | factual 34:8 | familiar 70:17 |
|---|---|---|---|
| 174:4,6,15 | **f** 161:1 | **fail** 60:12,16 | 84:13 242:13 |
| 175:12,13 | **fabrications** | 191:16 | 242:16 269:13 |
| **experiences** | 265:5 | **failed** 60:6 | **family** 137:1 |
| 244:13 | **face** 191:1,2,6,6 | 262:6 289:21 | 342:5,6 |
| **expiration** | 193:22 194:1 | 307:17,22 | **far** 8:14 11:15 |
| 358:19 359:25 | **facilitation** | 315:6,7,8 | 52:19 57:1 |
| 360:25 | 117:19 | 341:17 | 69:17 91:13 |
| **expires** 356:20 | **fact** 31:17 56:6 | **failing** 262:9 | 103:10 168:18 |
| **explain** 20:18 | 59:20 128:21 | **failure** 105:12 | 170:16 172:10 |
| 31:2 94:4 | 156:6 159:9,15 | **fair** 10:19 11:3 | 182:12 183:15 |
| 157:20 197:6 | 159:16 192:1 | 11:12,14,20 | 185:6 193:16 |
| **explained** | 196:3 201:1 | 12:6 14:1,12 | 216:4 227:19 |
| 17:17,22 49:15 | 202:3 214:15 | 19:20,22 27:19 | 229:13 246:7 |
| 175:12 214:18 | 222:17 257:19 | 28:15,18,20 | 246:11 270:17 |
| 223:22 | 258:2,16 260:4 | 30:20 33:9 | 270:19 274:10 |
| **explaining** | 264:5,21 | 34:2,6,22 | 277:5 278:3,4 |
| 30:17 174:21 | 280:10,12 | 35:15 58:18 | 278:9,11 280:1 |
| **explanation** | 282:11 286:7 | 87:15 97:1 | 283:9 284:3,6 |
| 17:10 174:3 | 288:4 292:9 | 111:8 117:4 | **fashion** 71:3 |
| **explosive** 336:2 | 296:5 310:15 | 152:1,4 153:17 | 324:16 |
| **expressed** | 313:8 314:19 | 157:19 184:18 | **fast** 311:9 |
| 37:11 85:2 | 317:9,18 | 197:4 208:19 | **favor** 254:1 |
| **expressing** | **factor** 263:11 | 232:9 246:4,13 | **fbc** 319:1,21,22 |
| 129:10 | **facts** 32:8 | 259:2 262:12 | 320:6 |
| **extensive** 68:8 | 33:12 54:16 | 294:22 305:5 | **fbi** 9:7 |
| **extent** 30:6 | 124:2 208:19 | 305:18 306:19 | **features** 76:10 |
| 53:12 207:12 | 241:7,8 243:10 | 307:6 | **february** 1:12 |
| **eye** 1:20 | 243:13 254:12 | **fairness** 45:4 | 5:3 64:14 |
| **eyes** 16:15 | 262:1 264:17 | 253:5 | 69:16 70:1,6,7 |
| 47:10 98:3 | 275:4 277:12 | **faith** 341:7,13 | 73:9,9,17 74:1 |
| 135:22 185:4,8 | 281:17 282:3,9 | **falling** 292:4 | 74:3,4,11,16 |
| 195:5 291:17 | 285:20,22 | **false** 95:22 | 83:14 86:16,17 |
| 294:1 296:22 | 310:12,14 | 100:16 340:1 | 87:12 88:9 |
| | 318:6 | | 89:5,8,11 |

90:15 91:4
92:18 102:13
121:8,14,17
123:8,12
124:14 125:3,7
126:5 127:12
128:5,11 129:1
129:21 130:1
143:8 144:18
145:15 176:18
176:22 177:7
185:20 186:2,6
186:11,21
187:10,14
191:4,7 244:9
357:4
**federal** 9:9
**feedback**
165:19 215:19
219:4 220:20
223:11,18
245:1
**feel** 10:7 240:3
247:14 257:7
257:16 259:15
260:2 261:20
299:10,17,21
**feeling** 258:8
**fees** 28:2
**fell** 136:13
**fellow** 237:6
**felt** 152:3
224:14 257:19
REDACTED

**fifth** 169:15
176:12 177:5
178:8
**fighting** 295:6
**file** 180:9,11
272:7
**files** 246:9
**final** 85:17
137:16 200:13
209:21 227:2
238:16 239:2,5
250:1 253:18
256:18,20,21
257:2,21 258:3
258:4 262:19
264:6,7 280:14
280:16 284:16
291:10 292:12
293:2 294:14
296:10 298:13
299:19 305:1
305:20,22
306:4 309:16
311:2,21
314:14 315:3
317:11,20
318:6,22
319:20 320:5
322:3,15
325:17 326:20
329:20 330:11
334:21 335:8
**finalization**
353:13

**finalizing**
353:20
**finally** 112:19
354:1
**finances** 28:17
**financial**
301:12
**financially**
356:15
**find** 225:21
299:7 357:10
**fine** 13:2
220:12 234:22
342:16
**fingers** 226:10
**finish** 126:11
143:13,15,17
144:3 194:18
237:12 243:2
317:2 326:17
**finished** 19:12
86:13 114:21
326:9
**firm** 107:17,19
117:18 165:5,7
271:21
**first** 4:8 5:12
16:8 17:2
24:19 42:11
52:21 59:1
70:11 73:1
74:6,7 81:19
83:4,12 85:16
85:22 87:12
89:13,15 90:9

92:21 95:1
113:19 129:17
129:18 151:14
164:15 169:4,7
169:16 177:18
177:19 179:7
181:2 182:7
185:18 186:2
198:13 218:15
219:6 229:21
236:17,21
237:1 244:14
246:2 247:11
249:1 320:3
332:5 343:22
344:2
**firsthand** 50:3
50:5 55:9,10
57:13 59:13,17
202:5 323:1
**fit** 335:18
**five** 9:22 17:14
20:5 21:1,8
63:7,11 120:12
137:8 177:8
184:10 189:1,1
287:1,5,6,7,8
290:3
**flags** 71:19
102:17
**flew** 225:22
**florida** 6:18
**focus** 41:3
262:3,6 270:16
307:22 338:4,6

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 386 of 441 PageID #:
3998

| | | | |
|---|---|---|---|
| 339:9 | **forensic** 164:20 | 55:6,16 57:3 | 206:15 207:1 |
| **focused** 106:18 | 165:4,8,13,16 | 57:10,18 60:11 | 207:10 208:2 |
| 325:1 | 206:7 | 63:16 64:11 | 208:11 209:17 |
| **foggy** 257:7,16 | **forgave** 325:9 | 65:4,18 68:10 | 210:5 211:10 |
| 257:19 258:8 | 325:15 332:7 | 71:20 72:8 | 212:20 213:6 |
| 259:8,15 260:2 | 332:10 334:16 | 74:9 87:19 | 213:13 216:10 |
| 260:22 | **forget** 224:8 | 89:21 90:17 | 217:20 219:9 |
| **follow** 26:18 | 337:14 338:4 | 91:15 93:14 | 229:5 231:14 |
| 32:15 84:5 | 339:7 | 95:9 99:5,16 | 236:8 242:19 |
| 140:5,9 144:4 | **forgive** 134:10 | 100:11 101:18 | 243:7 245:9 |
| 303:8,15 324:4 | 321:4,9 322:10 | 102:2 103:11 | 246:17 251:4 |
| **followed** 324:1 | 328:11 329:14 | 105:6,14 108:5 | 251:21 254:3 |
| **following** | 331:6 334:12 | 108:14 109:2 | 261:11 266:4 |
| 220:16 221:12 | 335:2 337:13 | 111:22 116:9 | 266:14 267:11 |
| 227:3 230:5 | 338:3 339:7 | 122:4 125:10 | 268:2,19 269:6 |
| 293:12 331:20 | **forgived** | 128:6,12 129:4 | 273:13 274:7 |
| **follows** 5:13 | 334:17 | 130:5,21 131:2 | 275:8,17 |
| 161:9 292:3 | **forgiveness** | 132:6,20 133:3 | 276:21 277:13 |
| 316:14 | 322:5,16 | 133:7 134:2 | 280:4 281:7,20 |
| **fondled** 354:21 | 325:19 329:21 | 136:3 138:12 | 282:7 296:8 |
| **foot** 134:7 | 330:9 333:2 | 139:13 140:19 | 297:7 300:8,16 |
| **footprint** 82:17 | 334:10,15 | 142:20 144:22 | 305:7 306:22 |
| 134:7 | 335:10 | 148:21 152:6 | 315:10 319:10 |
| **force** 25:15 | **forgives** 333:17 | 153:21 154:13 | 320:8 337:8 |
| 26:14 27:3 | 333:18 339:8 | 156:10,21 | 340:5,16 342:2 |
| 150:11,13 | **form** 12:14 | 157:11 158:2 | 344:11 349:9 |
| 342:21 353:19 | 15:21 18:12 | 158:22 161:22 | 350:22 |
| **forced** 210:2 | 26:4 27:12 | 166:4 168:20 | **format** 327:20 |
| 293:9,13 | 28:19 33:18 | 170:3 171:12 | **former** 199:7 |
| 338:10,12 | 36:5,14 37:1 | 177:10 180:4 | **forms** 289:1 |
| **forcefully** | 37:13 38:11 | 184:2 187:19 | **forthright** |
| 291:18 | 39:10 45:9,14 | 188:4,13 189:8 | 157:19 259:5 |
| **foregoing** | 45:22 47:7 | 191:21 192:9 | **forward** 82:22 |
| 356:3,5 358:13 | 48:1 51:17 | 194:12 195:3 | 137:2 357:14 |
| 359:18 | 52:16 53:13 | 204:22 205:22 | |

forwarded 84:4
found 169:8
  228:13 298:13
  299:1,1
four 24:13
  115:17,18,20
  116:15 118:4
  119:17 120:14
  137:4 167:20
  168:9 172:14
  236:13
fourth 37:2
  116:8 270:2,9
  270:11
frank 136:15
  137:11,15
  138:19
free 10:7
  358:14 359:20
freed 285:16
freedom 301:17
  REDACTED )AC
  TED
frequently
  106:10
friday 86:16
  89:7
front 49:21
  79:8 90:15
  110:18 144:7
  214:16 225:15
  242:13 247:3,5
  248:14 261:7
  276:1 323:3
  324:19 325:3

328:5 347:5
  349:14
froze 292:13
  295:8
full 119:20
  120:1 145:20
  175:11 293:7
  296:12
fully 122:8
  249:20
function 18:19
fundamental
  45:3 57:1
  307:2
further 55:14
  161:9 211:4
  237:8 341:12
  356:13
future 186:16
  346:1,2
fyi 250:19

**g**

g 5:1
gain 54:6
  116:14
gaines 136:15
gather 32:8
gathering
  254:12
gcallas 2:19
general 28:8
  39:4 72:16,17
  72:21 83:1
  84:19 106:15
  234:12 269:15

generally 19:8
  19:10,19 38:4
  40:20 70:12
  71:1 227:16
gentleman 24:2
  24:5 92:17
gentlemen
  137:4 142:2,9
georgia 150:1,3
  151:2 214:16
  225:8,13 226:1
getting 64:13
  69:15 70:1,7
  118:16 189:13
give 22:16
  23:11,20 59:16
  62:20 85:20
  86:2 121:1
  130:21 148:19
  187:21 199:19
  237:13 243:22
  288:21 289:7
  303:17 305:5
  324:6 338:17
  343:1
given 53:8 54:1
  67:12 84:12
  110:6 162:14
  184:9 210:14
  224:14 286:11
  302:21 303:3
  356:9
giving 21:14
  57:2 58:16
  243:4 339:14

339:16
glad 321:22,22
  329:15 331:8
go 42:11 56:9
  62:7 66:2 87:4
  118:1,10,14,16
  119:11 125:1
  143:4,5 144:1
  146:10 149:16
  159:19 161:13
  177:16 197:21
  198:1 220:6
  234:5 237:16
  252:21 257:15
  265:12,12
  270:9 291:22
  294:12 315:22
  316:4 326:8,15
  326:17 331:17
  334:21 353:4
goes 34:1 40:17
going 10:4
  12:20,21 13:4
  13:8,15 15:17
  16:18 18:19
  20:4 27:10
  31:5 32:13,13
  33:3 34:16,20
  35:6,13 36:8
  37:4,16,20,21
  37:22 38:10
  46:5 62:19
  66:2 69:16
  73:1,2 75:21
  79:18 84:12,20

| | | | |
|---|---|---|---|
| 85:14,20 86:8 | **gp007645** | 27:19 28:6 | 272:7 273:10 |
| 86:14,15,17,18 | 327:22 | 29:7 31:4 | 279:8 284:19 |
| 91:7 92:17 | **gp007652** | 32:11 33:9 | 290:9,10,12 |
| 94:19 96:17,21 | 328:2 | 34:1,5,10,18 | 293:5,21 295:3 |
| 98:20 99:18 | **gp4344**  181:13 | 37:5,17 38:21 | 295:18 296:6 |
| 102:8 104:13 | **gps**  69:17 | 39:9 44:17 | 305:1 306:3 |
| 120:21 124:22 | 347:12 | 45:19 46:2 | 309:17 314:1,3 |
| 150:6 162:8 | **grab**  292:4 | 48:14 49:5 | 314:18 317:20 |
| 166:13 171:6 | **grabbed**  271:5 | 58:20 59:3,4,7 | 318:4,5 321:17 |
| 179:13,14 | **graduation**  9:4 | 63:21 64:8 | 322:3 330:6 |
| 180:18 195:4 | **graham**  136:14 | 69:18 71:9 | 332:6 334:5 |
| 209:12 214:7 | **graphic**  174:4,5 | 72:4,19 76:7 | 335:8 344:17 |
| 216:6 219:12 | 175:13 | 82:16 83:19 | **guidepost's** |
| 235:6 237:19 | **great**  69:22 | 84:8,15 85:9 | 138:14 256:21 |
| 239:10,14 | 100:2 323:21 | 85:16,18 91:5 | 306:4 |
| 244:21,21 | **gretchen**  2:17 | 92:11 93:5,11 | **guideposts** |
| 246:5 254:9 | 352:16,19 | 93:11,16 96:13 | 65:15 66:12 |
| 257:13 270:12 | **groping**  293:13 | 111:20 112:8,9 | 177:20 |
| 294:19,21 | **group**  18:2 | 112:19 113:14 | **h** |
| 298:17 302:16 | 168:11 | 114:6 115:13 | |
| 302:17,20 | **guess**  16:10 | 135:2,14 138:6 | **h**  1:18 6:2 |
| 313:11 316:1 | 38:15 117:20 | 152:13 163:12 | **habit**  29:15 |
| 316:15 326:2 | **guidance**  27:10 | 163:20 164:14 | 351:22 |
| 327:19 342:12 | 27:14 | 173:14 179:5 | **habits**  352:12 |
| 345:1,4 346:11 | **guide**  27:18 | 182:19 188:3,9 | **hair**  261:19 |
| 353:4 | **guideport**  4:7 | 197:6 206:12 | **half**  106:13 |
| **gold**  2:9 24:6 | **guidepost**  1:7 | 206:22 207:7 | 192:5 237:20 |
| 107:18 | 6:9 7:3,10,11 | 208:9 210:11 | **halfway**  326:14 |
| **good**  5:2,16 | 7:15 9:15 | 223:17 228:21 | **hand**  9:20 10:4 |
| 158:18 | 12:12 14:4,10 | 230:5,11 231:6 | 16:18 58:2,2,5 |
| **gotten**  253:2 | 14:19 15:11,14 | 233:19 254:5 | 58:22 59:1 |
| **gp**  235:17 | 15:14,19,20 | 257:2,21 259:5 | 66:2 73:1,2 |
| **gp004328** | 16:5 17:9,14 | 264:7 265:6,15 | 74:20 120:21 |
| 179:16,17 | 19:1 20:19 | 265:20 266:20 | 162:8 166:13 |
| | 21:22 25:13 | 268:10 271:21 | 179:13 180:8 |
| | | | 180:22 193:3,4 |

www.veritext.com 888-391-3376

193:6,7 214:7
233:2 235:6,10
239:14 261:18
271:5 273:17
294:17,19
305:21 312:20
342:12 344:9
**handed** 17:12
198:5 272:19
273:15
**handle** 195:9
**handled** 252:1
**handles** 117:16
**hands** 239:4
**handwritten**
147:6 163:2,3
163:4,7
**happen** 145:20
151:13 225:2
226:7
**happened**
93:20 95:2,8
102:4 145:15
149:5 152:18
174:1 184:19
197:10 201:19
202:8 203:3
206:7 207:18
208:6,16 209:7
218:12 221:9
224:4,16,19
239:10 241:1
266:8,22
268:17 275:10
282:4 286:3,5

294:20 295:21
323:22 338:8
339:6
**happening**
203:18 320:3
**happens**
202:12,13
**happy** 35:6
143:5,18 195:6
283:21
**harangues**
302:18
**harassing**
99:20
**harassment**
283:20
**hard** 95:17
164:13 206:5
REDACTED

**he'll** 283:21
**head** 148:19
271:6
**heading** 182:10
**hear** 32:22 43:8
43:15 53:5
58:10 80:10
99:10,11,17
187:21 192:7
211:5 321:22
324:7 329:15
331:8
**heard** 32:20
33:1,5 52:1
82:21 156:2,6

156:9 174:2,22
175:5 187:20
242:3
**hearing** 65:13
65:14 155:2
308:17
**hears** 187:17
**hearsay** 51:15
53:8,11 55:15
57:2,9,16,21
58:5
**help** 221:16
235:10
**helpful** 275:2
**hesitant** 200:1
**hi** 352:19
**hide** 343:8
**high** 29:15
**hold** 148:1
256:10 291:19
302:13 330:13
352:6,8,9,10
**holske** 1:11 2:7
4:6,10,13,16,20
5:4,11,18,20,22
6:1,3 10:1,12
16:21 73:4
74:17 85:12
120:18 161:6
162:5 163:14
164:8 166:10
178:20 179:10
198:2 214:4
232:21 234:2
235:3 239:11

250:4 272:12
273:2 327:16
342:9 346:18
352:19 353:6
355:9,13 357:8
358:4,9 359:4
359:13 360:20
**holstein** 5:21
**home** 149:19
**honest** 103:9
103:14,15
259:3,5
**hong** 8:1
**honor** 96:17,19
**hope** 157:7
348:14
**hopeful** 226:7
**hopefully**
180:20
**hopes** 298:3
**hoping** 292:18
292:22 295:8
297:1,5,12,18
298:10,12,19
299:4,6
**hot** 255:9 256:6
**hotline** 83:19
84:1 87:17
127:1
**hour** 146:14
237:19
**hours** 23:12
24:13 29:4
96:10 120:12
120:13 146:15

146:22 210:16
211:3,6,14,16
261:17 307:11
307:11
**huh** 176:19
293:11
**human** 38:1
224:9
**humanity**
224:8
**hundred** 139:7
**hunt** 1:3 3:4
4:13,17,17 5:5
6:8 9:16 11:6
11:18 12:3,8
12:13 14:4,9
14:19 41:2,4
41:15 42:14,17
42:22 43:7
44:5,11,18,20
46:21 47:4,16
48:16 54:5
58:15 59:11,20
60:18 61:3,11
61:22 63:3,15
66:13,15 68:16
80:1 83:7,10
93:20 94:7
95:21,22 96:19
98:5 99:14
100:10,15
101:1,7 103:1
103:21 104:3,4
108:3 110:15
123:16 126:6

128:5 132:16
137:19 138:2
139:16,18
141:11 142:10
147:21 154:6,8
154:17 155:2,5
156:1,7,16
157:4 158:7
167:11,12,17
167:22 168:2,5
168:8,19
174:16 177:21
186:6,10,19,21
187:9,17 189:6
189:12,21
190:12 191:2,7
191:11 192:3
192:16 193:22
194:5,10
195:12,12
196:4 197:7,11
197:17 199:1
199:15 202:15
206:3 207:15
208:21 209:4
209:20 210:2
210:11 215:8
215:11,13,15
215:17,22
216:5,7,16,22
217:2,17 218:8
218:13,16
219:3,7,20
220:18 222:9
222:14,20

223:9,16
224:15 231:1
233:12,15
234:9 236:19
241:22 243:3,9
245:4,7,8
246:14 251:1
253:13 254:2,7
254:8,10 255:9
256:4 259:7
265:7,15
266:21 277:6
278:15 280:3
280:19 281:5
283:2 285:1,8
285:10 288:10
291:11 301:7
301:19,20,22
302:4 307:8,10
308:7 312:19
313:6 314:5,10
314:20 315:16
315:20 316:8
318:16 320:13
322:4,16
325:12,18
329:21 330:8
332:11,16
333:1,11,18,19
334:10,12,14
334:18 336:9
336:20 338:5
339:3,6 340:9
340:13 343:17
343:22 344:10

345:3,7 346:2
354:7,17,21
355:2 356:2,18
357:6 358:3
359:3
**hunt's** 4:8
45:19 123:20
158:8 258:20
261:19 320:2
333:15
**husband** 43:2
144:17 176:21
201:18 202:7
209:13 252:2
260:20 313:17
323:6 341:22
**hypothetical**
313:1

**i**

**identification**
10:2 16:22
73:5 74:18
85:13 120:19
162:6 163:15
164:9 166:11
178:21 179:11
198:3 214:5
232:22 234:3
235:4 239:12
250:5 327:17
342:10 346:19
**identified**
41:14 61:10
67:10 122:21
123:12 127:13

127:15 151:15
152:12 199:19
199:20 225:18
**identify** 68:15
126:3,8 127:11
151:16 178:1
195:4 236:12
289:16
**identifying**
125:21 126:13
202:10
**identities** 44:4
194:20 288:15
**identity** 44:13
44:21 47:5,16
61:2 122:14
123:20 194:10
196:4
**ignore** 282:9
**ignored** 262:13
262:16 276:17
276:17 282:2
282:11
**imagine** 42:7
**immediately**
124:2
**impact** 40:11
40:17 51:3
240:4,18,21,22
241:3 247:15
247:19 248:5
248:10,16,19
249:6,11
335:19 345:22
346:5

**impacted**
102:22
**impair** 261:21
**implanted**
337:10 338:3
**implied** 255:11
**important**
30:13 99:10
241:13 259:1,4
305:5,10
**impression**
238:18 348:7
**impressions**
310:11
**improper**
193:15
**improperly**
193:15
**inability**
156:19
**inaccurate**
216:12 301:9
**inappropriate**
100:15 320:16
**inbox** 106:12
**incident** 4:18
4:18 49:20
50:4,8 52:2
54:4,7 55:4
56:19 58:17
60:9 83:6,9,13
94:22 96:5
98:11,13 99:3
99:3,8,13,13
100:8,9,14

110:14 122:10
122:10 123:15
126:6 127:14
138:1 139:18
153:9 155:15
158:7,12
159:17 187:1,4
188:8,19
190:11 191:13
201:14 205:13
207:8 217:5,18
219:7,21 222:9
222:21 234:9
291:11 295:2,3
300:1,7 305:6
314:5,20
320:12 340:4
**include** 14:2,8
14:18 20:4
32:1,4 81:21
130:2 131:7
134:21 135:4
165:14 229:21
260:1 264:12
291:7 292:9
304:11,22
307:6,17
309:13 314:18
315:15
**included** 8:2
20:17 40:21
59:19 75:11
132:11 142:10
251:3,8 261:6
299:16 300:6

306:20,21
307:6 309:7
317:11,20
357:12
**includes** 167:21
**including** 46:20
51:7 120:11,14
136:14,20
172:15 186:13
224:1 233:9
259:22 262:21
342:4
**incorporated**
359:12
**incorrect** 129:6
320:6 335:22
336:5
**incorrectly**
225:12 248:8
**indemnificati...**
112:5
**indemnified**
114:6
**indemnify**
112:8,12
**indemnity**
113:5,16
**independent**
4:12 29:8,13
31:5,8,13,14,18
31:19 32:9
33:3,10 34:4
34:10,12 36:19
193:11,20
208:18 240:17

www.veritext.com                                                  888-391-3376

241:13 246:5
259:2 262:4
294:22 300:12
301:18 305:4
**independently**
261:9
**indiana** 2:5
**indianapolis**
2:5
**indicate** 60:4,5
60:7
**indicated** 76:8
245:6 331:11
**indicates** 232:4
236:10
**indicating**
357:12
**indication**
52:13
**indicia** 51:11
51:13,19 52:18
52:21 53:1
**individual** 59:4
93:15 135:2,6
138:15 207:11
290:8 318:8
**individually**
18:1 184:21
185:13 191:20
258:22
**individuals**
110:8 111:7
**inference** 266:1
**influence** 31:20
31:22 32:1,4

253:22
**influenced**
33:15 34:5,11
34:21 35:14
193:15,18
**info** 202:14
**inform** 346:1
**informa** 58:2
**information**
21:8 39:2 49:5
49:8,13,19
50:3,7,18 52:8
53:21 56:14,19
57:6,14 58:2,5
58:22 59:12,22
60:14 84:18
87:17 88:15
92:7 94:21
95:4,7 96:6
101:16 115:14
137:12 141:11
158:11 167:5
167:21 175:2
192:6 193:21
199:7 202:1
207:7 211:1,4
211:22 212:1
244:22 273:18
276:1 288:8
299:11 305:5
322:22
**informed** 175:1
**initial** 84:9
174:20 175:4

**initially** 122:6
149:1 255:5
**initiate** 69:12
**initiated**
186:18 355:3
**input** 14:11
33:14 34:8
37:16 139:9
142:15
**inquiry** 87:17
**ins** 196:11
**inside** 152:21
225:4 257:15
308:18 309:21
**instance** 163:2
172:17
**instances**
169:14
**instruct** 286:20
**instructed**
48:12 339:5
**intention** 30:19
**intentional**
335:15
**intentionally**
335:17
**interaction**
67:21
**interactions**
38:1
**interceding**
72:7
**interested**
119:21 343:5
356:15

**internal** 76:1,7
76:21
**interrogatories**
4:8 11:22
14:22 15:7
66:3,4,6
**interrogatory**
9:21 10:6,11
15:1 143:21
144:16 176:3
176:17 177:16
**interrupt** 12:19
**interview** 4:20
20:17 22:2
25:7,10 40:21
60:14,15 62:11
62:21 63:14
64:3,4 79:14
129:18 134:19
137:5 142:18
142:19,21
143:8 144:20
145:5,10,12,18
146:1,8,15
147:3,14 148:7
148:17 153:13
158:9 161:14
161:14 163:13
173:1,2 175:7
175:8,11,16
176:13,17,20
177:12 178:8
178:12,18
186:5,10 187:7
187:9,17 189:6

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 393 of 441 PageID #: 4005

189:12,15,20
197:13 202:18
203:11,12,14
210:9,18 212:5
212:8,11,15,17
213:2,5,11
215:10 217:2,4
218:12,17
219:7 230:14
231:20 241:7,9
241:16 242:4
242:17 243:3
243:19 244:22
261:14 267:8
279:10,14
295:12,13
297:4,8,14,17
297:19 298:1
299:22 300:14
300:18 303:4
309:22 310:9
312:3,6,7
324:10 325:22
328:8 329:2
331:11,15,19
332:5,6 339:20
354:8,16,20
**interviewed**
47:5 53:20
62:14,18 63:3
63:6 64:2,7,18
65:8 100:21
103:15 136:12
136:19 137:7
183:2 186:21

187:2,3,13,22
188:15,16,18
189:7 192:2
196:16,19,22
203:1,2,5,8,8
206:4 209:20
215:8,12,15,22
216:8 217:4,12
218:7 222:8
230:17 243:1
243:18 267:4
294:7 322:19
323:20 353:10
**interviewee**
147:19 199:6
199:16
**interviewers**
63:22
**interviewing**
136:16 323:2
**interviews**
20:16,22 25:4
64:9,12,16
65:10,16 66:13
67:9,19 126:19
129:19 134:20
143:3 173:2,7
177:8,20 178:3
178:5 184:11
184:21 185:12
185:15 186:12
186:16 191:12
191:13,19
200:20 205:18
242:10 253:21

258:22 278:13
279:7 343:20
**intimate** 209:6
224:1 261:15
342:4
**introduced**
188:7
**investigate**
17:14 79:18
248:19
**investigated**
130:13 170:18
**investigating**
58:21 91:13
135:8 254:6
**investigation**
4:12,14 17:7
18:5,8,20
19:21 29:9,13
31:5,9,14,18
46:20 64:6
77:19 78:2,10
78:16 81:20
106:2,21 108:2
115:2 122:21
124:11,16
126:5,20
127:14,22
128:18,19
129:20 134:17
168:15 170:9
182:12 183:15
185:5 193:11
193:20 194:2
197:5 199:5,10

200:9 204:6
208:1 225:20
225:21 229:1
241:14 244:12
244:15 246:11
272:8 277:12
278:6,8 280:1
280:9 281:3
286:6 291:2
294:22 345:5
345:22 346:6
346:14 348:18
351:12,16,19
**investigations**
7:22 28:22
**investigative**
9:1 32:11
139:8 198:18
**investigator**
9:9,14,18
10:15 11:1,5,9
11:10,16 22:1
35:13 37:10
38:18 46:7
50:16,21 51:1
51:10 52:12
53:8,10 54:14
57:20 58:1,4,9
58:20 59:10
69:6,8 71:16
72:4 92:10
102:17 113:3
113:13 135:20
136:9,11
208:19 224:9

Veritext Legal Solutions
www.veritext.com
888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 394 of 441 PageID #: 4006

| | | **j** | 45:19 46:21 |
|---|---|---|---|

247:13 249:5
251:17 300:13
306:6 346:11
**investigators**
9:19 20:3
34:20 58:10
135:19 228:13
229:2 306:7
**investigatory**
57:17 98:18
157:19 158:19
**invitation**
166:22
**invite** 167:1
**invited** 150:15
151:12 224:20
224:21 255:21
256:3,4
**involve** 134:13
154:16 301:22
**involved** 9:13
14:2,8,12,13,15
14:17 15:19
16:7,9 18:7
26:8 122:10
124:10 125:14
130:19 133:14
133:15 135:17
135:21 169:2
170:4,7 172:5
186:17 287:21
344:19
**involvement**
246:21

**involvements**
13:21
**involving** 59:11
83:6,9,21
108:3 115:18
118:3 119:17
123:15 124:11
126:16 127:16
136:1 138:2,19
139:16,18
158:7 168:7
170:9 171:8
187:4 217:18
219:21 222:9
305:6 307:8
320:13
**ipad** 85:20
330:14
**issuance**
347:22
**issue** 119:8
153:9 207:8
217:5 218:6
219:21 229:16
230:9 231:5
232:7 302:1
314:6,21
**issued** 9:14
96:13,13
**issues** 4:15
50:17,18 56:6
85:3,10 98:16
105:11

**j** 2:3,8
**jack** 136:14
**jacksonkelly**
2:17
**jacksonkelly....**
2:19
**janet** 318:15
333:18
**january** 79:20
80:2,6,6 81:2
83:2 134:10
190:18 338:8
356:21
**jh** 325:9,12,15
332:7,16,22
**job** 20:2,4
28:16 68:22
69:3,10,17
71:8,8 117:17
198:16 240:16
299:11
<span style="color:red">REDACTED</span>

**johnny** 1:3 3:4
4:8 5:5 6:8
9:16 11:6,18
12:3,8,13 14:3
14:9,19 41:2,4
41:15 42:13
43:10,14 44:5
44:11,18,20

45:19 46:21
47:4,16 48:15
58:15 59:11,20
60:17,19 61:3
61:11,22 63:15
66:13,15 68:16
80:1 83:6,9
94:7 96:19
98:5 99:14
100:10 101:1
103:21 104:3
108:3 110:15
126:6 128:5
137:18 141:11
142:10 154:6,8
155:5,5 156:1
156:7,16 157:4
167:17 168:5
177:21 186:6
186:10 189:6
189:12,21
190:12 191:2,7
191:10 192:16
193:22 194:10
196:4 197:7,17
199:14 208:21
209:4 210:2,11
215:8,11,15,22
216:7 217:17
218:8,16 219:7
219:19 222:9
222:19 223:16
224:12 236:19
243:3 245:4,8
246:14 254:2

255:3,21
257:15,20
258:10,17
259:7 263:6,15
264:6 266:10
270:6,18 277:6
277:21 278:15
280:3,19 281:5
283:2 285:1,8
285:10 288:10
290:15 291:15
302:4 307:8
312:19 313:5
314:5,20
317:10,18
318:15 320:13
320:17 321:4,9
321:20,21
322:10 325:12
329:13,14
331:6,7 332:11
332:16 333:1
333:10,15,19
334:12,14,18
335:2,9 336:9
340:3,13 341:2
341:11,16
343:16,22
344:10 345:3,7
346:2 357:6
358:3 359:3

**johnny's** 275:7
275:15

**join** 313:5,12
314:4,12,19

315:9 316:16
317:20

**joint** 146:1
147:13 317:10

**jon** 3:3

**jotted** 279:16

**journal** 4:13
164:1,2,5,13,19
165:20 206:6
323:9,16,17

**journalism**
242:3

**jr** 5:5,11 10:12

**judge** 30:6

**judgment**
113:4

**judgments**
112:9,12

**julie** 18:9 19:3
22:11 166:18
166:18 167:14
168:14 173:21
214:12 342:16

**july** 8:6 50:6
83:11 93:20
107:8 155:15
158:13 159:9
174:4,16
175:13 207:15
207:19 208:6
209:21 218:12
221:4,10
223:14 248:12
249:13 314:9
316:7 323:22

338:6 340:2
347:12

**june** 79:20 80:3
81:2 83:2
134:10,11
190:18

**jury** 21:15
29:11,16,17,21
30:6,18,20
31:3 34:3,17
53:5 60:5 63:5
94:4 99:10,17
104:20 105:3
125:1 127:11
184:20 190:11
210:10 214:22
252:5 266:8
288:22 290:4
348:16

**justice** 8:10

**justification**
288:22

**justify** 301:14

### k

**k** 6:2

**kathy** 3:2

**keep** 39:7 81:7
88:22 106:17
117:3 292:4
298:2 302:10
303:1,21 304:8
309:6,14

**keeping** 194:9
194:14 289:9

**kennesaw**
151:2 225:9,17

**key** 334:16

**kilpatrick**
10:22 11:16
12:6 22:10
64:1,17 116:6
139:16 146:2
146:12 147:17
149:22 151:7
153:7 166:19
167:15 168:12
173:22 175:16
176:5 177:3
189:20 190:10
191:17 197:17
202:22 203:13
212:5,14
213:17 215:7
215:12 233:9
235:1 239:17
240:14 247:4
248:9 250:17
272:12 273:1
313:20 326:4
342:14

**kilpatrick's**
163:7,10 240:7
312:7

**kim** 116:22
117:1,16
119:12

**kind** 148:20
225:22

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 396 of 441 PageID #: 4008



REDACTED

| | | | |
|---|---|---|---|
| | 93:14 94:13,16 | 157:5,13,17 | 242:19 243:7 |
| | 97:5,14,21 | 158:2,14,22 | 245:9 246:15 |
| | 99:5,16 100:11 | 159:4,6,11 | 246:17 248:20 |
| | 101:2,18 102:2 | 161:22 164:2,5 | 249:7,10 |
| | 103:11 105:6 | 164:7 166:4 | 250:10 251:4 |
| **klein** 2:8,10 3:2 | 105:14 107:4 | 168:20 169:11 | 251:21 252:15 |
| 10:7 11:7 | 108:5,14 109:2 | 170:3,21 | 253:9 254:3 |
| 12:14,19 13:13 | 109:8 110:22 | 171:12 173:16 | 256:1,10,14,20 |
| 13:16 15:21 | 111:22 112:14 | 175:20 176:1 | 257:8 259:17 |
| 18:12 19:11 | 113:6,17 116:9 | 177:10 180:4 | 260:5 261:2,11 |
| 24:1,8,9 26:4 | 118:6 119:1,7 | 181:9,14 | 262:8 263:8,22 |
| 26:16,20 27:12 | 122:4 125:10 | 182:20 184:2 | 266:4,14 |
| 28:11,19 29:14 | 125:21 126:7 | 185:21 187:11 | 267:11 268:2 |
| 33:18 35:1,16 | 126:11 128:6 | 187:19 188:4 | 268:12,19 |
| 36:5,14 37:1 | 128:12 129:4 | 188:11,13 | 269:6 270:11 |
| 37:13 38:10 | 129:12 130:5 | 189:8 191:21 | 271:14 272:1 |
| 39:10 41:1,10 | 130:21 131:15 | 192:9,19 | 273:3,7 274:7 |
| 42:1 43:13,18 | 132:6,14,20 | 194:12 195:3 | 274:17 275:8 |
| 44:12 45:9,14 | 133:3,7,20 | 195:15,21 | 275:17 276:6 |
| 45:22 47:7 | 134:2 135:1,5 | 199:18 204:22 | 276:21 277:8 |
| 48:1,4,9 50:9 | 136:3 137:20 | 205:22 206:15 | 277:15 278:16 |
| 51:17 52:15 | 138:12 139:2 | 207:1,10 208:2 | 278:20 280:4 |
| 53:13 55:6,16 | 139:13 140:7 | 208:11 209:17 | 281:7,20 282:7 |
| 57:3,10,18,22 | 140:19 141:3 | 210:5 211:10 | 282:15 283:19 |
| 58:6 59:2 | 141:15 142:4 | 212:20 213:6 | 285:2 286:9,17 |
| 60:11 62:2,15 | 142:11,20 | 213:13,19 | 286:22 287:5 |
| 63:9,16 64:11 | 143:13,15,17 | 215:2 216:10 | 287:17,20 |
| 65:4,18 68:10 | 144:2,22 145:4 | 217:6,9,20 | 288:11 289:4 |
| 70:3 71:20 | 145:6,9 148:1 | 218:9 219:9 | 289:11 290:6 |
| 72:8 73:20 | 148:3,5,21 | 220:1 221:15 | 290:17,21 |
| 74:9 76:11,16 | 149:4 152:6,9 | 222:11,22 | 295:4,19,22 |
| 77:8 81:10 | 153:21 154:4 | 223:20 229:5 | 296:8 297:7,21 |
| 86:2,8,20 | 154:13,19 | 231:7,14,21 | 298:5,17 300:8 |
| 87:19 89:21 | 155:10 156:10 | 234:10 235:11 | 300:16 301:3 |
| 90:17 91:15 | 156:17,21 | 236:8 237:12 | 302:13 303:5 |

303:17 304:1
304:14,18
305:7,22
306:22 307:18
308:3,5,20
310:20 311:10
311:15 312:21
314:22 315:10
316:21 317:2
317:13,22
318:7,17,20
319:10 320:8
320:21 321:10
325:21 326:10
327:5 330:13
330:20 335:3
335:11,20
336:4 337:8
338:14 340:5
340:16 342:1
343:10 344:6
344:11 346:15
349:9,15
350:22 352:15
355:8 357:5
**knew** 46:5
84:19 98:2
99:1,12 102:6
102:8 113:13
115:1 124:5
149:2 156:5,5
201:6 332:18
334:17
**knock** 315:19

**know** 12:5,22
13:15 15:8
17:5 18:14
21:11 22:18
26:6 28:13,15
29:17 42:5
45:1,15 46:8,9
46:10,18 47:4
48:7,17,21
50:10 52:8,22
59:15 64:13
65:1,6 72:21
72:22 74:3
75:14 81:7
84:15 89:18
90:11,19 91:4
96:17 99:6
102:3,14
103:10 104:1
105:7,15
106:22 107:11
112:11 115:12
119:11 120:1
122:9,11,13
123:18 125:5
125:11,13
126:18 129:22
130:12 131:2
132:1,22 133:6
133:10 135:6
135:13 141:20
141:20 142:6
145:21 150:6,9
152:3,4,8
153:18 154:10

155:5 163:9
164:18 170:11
170:16,17
171:1,3,4,5,7
171:17 175:2
179:8 180:5,6
181:2,3 182:22
183:7,8,10
186:8,17
191:22 199:22
202:6,6 207:6
212:16 213:8
214:3 215:20
219:5 220:21
225:18 234:16
234:17,18
236:22 245:18
248:18 256:14
257:22 258:6
258:13,15,19
259:10 264:14
265:19 266:9
271:15 274:3
275:19,21
276:11,19
277:21,21
280:1,12
282:21,22
283:3 285:7,20
285:22 287:13
287:15,19
288:2,4,6,10
297:16 302:11
303:1,6 308:21
309:2 310:8

313:8 343:7,17
345:10 346:7
348:11 350:20
352:1
**knowing** 292:5
303:13
**knowledge**
36:20 89:18
90:12 105:10
109:7 128:10
135:16 144:11
170:12 171:21
188:9 190:16
202:5 229:4
319:11 329:6
340:17 350:15
**known** 343:13
**kong** 8:1
**krista** 18:9,11
19:3,5,14
22:10 84:3
90:3 116:4
121:5 166:18
167:14 168:13
173:21 214:1
214:13

**l**

**l** 6:2
**lack** 18:15
214:20 265:2
**lacked** 249:19
**lacks** 53:11
**laidley** 2:18
**language** 4:17
4:17 139:17

198:22 201:5
204:15 233:12
233:15 234:8
249:22 250:19
250:21 252:9
266:21 309:14
323:5
**laptop** 147:8
**lastly** 95:22
**lauder** 7:19,20
8:1,5,8
**law** 107:19
117:22
**lawsuit** 6:8
19:2 130:14
184:10 351:6
**lawyer** 48:3,13
117:21
**lawyers** 24:20
44:3 47:2,3,21
48:12 96:9
127:7,7
**layout** 269:12
**lead** 9:13,17
10:15 11:1,4,9
11:12,16 20:3
34:20 35:13
37:9 38:18
46:6 51:9
59:10 69:6,8
72:3 92:9
113:2,12 306:5
306:7 346:10
**leadership** 4:15
25:15 82:16

199:8
**leading** 84:3
344:18
**lean** 290:14
**learn** 103:19
**learned** 167:20
168:6 189:2
230:14
**leave** 41:16
224:22 297:1
298:20 299:5
318:5 341:13
**leaving** 341:22
REDACT
ED



**left** 270:17,18
274:5,10,11,14
274:15,16
277:5 278:4
280:19 281:10
282:13,19
283:9 284:3,7
284:7,12
285:12,15,19
328:19
**legal** 1:14,20
38:11 51:18
53:14 55:17
57:4,11,17
58:7,8 112:14
113:6 251:22
357:1 360:1

**legend** 23:5,6
**legs** 261:19
**lend** 202:15
**length** 38:2,7
39:6,7,14,17
62:9 67:16,17
68:1 71:17
77:14,16
251:16,18,19
**leo** 6:18
**letter** 4:8 16:5
16:15,17,19
17:3 20:6
26:11 79:1
81:8,10 83:3
111:10 114:13
169:9 248:3,14
249:1 357:17
**letting** 253:3
**level** 138:7
224:8 311:1
334:7,20
**liability** 85:3,9
92:12,19 93:6
**liar** 103:3
**lieu** 345:17
**light** 302:9,22
309:4
**likelihood**
324:16
**likewise** 55:10
56:16 241:16
**limit** 210:15
**limitation**
211:8,8 212:3

**limitations**
126:2 211:18
**limited** 148:13
175:10
**line** 195:11,13
204:4,10
233:11 256:13
256:16 267:20
268:1 309:11
331:13 357:12
359:7 360:3
**linear** 324:16
324:17
**lines** 21:7
177:18
**lisa** 302:9
**list** 42:20 125:6
125:6 128:10
200:20
**listed** 42:3
61:15 141:5
173:17 359:7
359:17
**listen** 32:15
103:17 126:10
158:21
**listened** 104:7
152:17 154:22
156:13,15
157:2
**listening**
194:22
**listing** 67:3
359:7

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 399 of 441 PageID #: 4011

literally   220:12
litigation   23:2
   183:10 348:11
   352:6
little   30:22
   31:21 109:13
   354:6
live   30:14
   149:20
living   276:10
llc   1:7 4:7 6:10
   7:3 25:13
llp   2:9,20
location   1:14
   225:9
logged   47:9
long   7:5,10 8:4
   23:9 24:12
   139:7 146:15
   147:1,1 152:22
   153:9 210:10
   236:13 279:18
   291:10
longer   285:17
look   9:22 10:7
   14:21 30:22
   66:9 69:5
   78:22 82:5,10
   82:11 88:14
   98:7 106:12
   111:10,13
   114:11 117:5,8
   117:10 118:10
   120:3,7 123:4
   133:12 138:18

140:16 153:18
163:1,17
166:16 176:16
177:17 179:2
179:18 181:13
184:8 198:6,10
200:19 201:10
202:21 215:18
219:3 220:18
223:10 228:9
232:20 233:3
234:8 235:7,12
235:14 237:17
238:5 239:8
250:7,9 254:17
256:8 258:4
260:8 263:2,5
265:10 266:7
269:18,20
270:2,22 283:8
283:16 293:6,7
298:15,17
305:19 307:16
307:16 309:22
311:6 314:7
330:2,22
331:15 336:15
350:9
looked   46:11
   46:15 96:9
   106:14 118:15
   118:18,21
   119:16 248:2
   269:14 283:9
   312:11

looking   39:5
   81:19 120:4,8
   120:9,13 167:3
   176:2 234:14
   242:2 247:2,22
   248:13,14
   254:19 270:1
   277:3 291:13
   305:3 318:13
   324:20 328:11
   328:15 340:20
   340:21
looks   214:11
   240:2 285:11
   345:11
lot   93:4 127:2
   342:3
lots   126:19
lunch   109:13
luncheon   160:1

**m**

m   1:3 2:17 5:5
   6:8 357:6
   358:3 359:3
ma'am   353:2
   353:22 354:5,9
   354:13
macgill   2:3,4
   5:15 9:20 10:3
   10:9 11:11
   12:17 13:11,14
   13:17 16:3
   17:1 18:17
   19:18 26:7,19
   27:1,16 28:14

28:21 29:19
32:19 33:20
35:5 36:1,10
36:18 37:7,19
38:16 39:13
41:4,6,18 42:9
43:16,21 44:15
45:11,17 46:4
47:14 48:8,10
50:14 51:21
52:17 53:16
55:11 56:1,8
57:8,15,19
58:3,12 59:9
60:17,21 62:6
62:16 63:10,20
64:20 65:11
66:1 68:13
70:5,10 72:1
72:12 73:6
74:5,12,19
76:14,19 77:12
80:10,14 81:15
85:19 86:5,10
87:3 88:1 90:5
90:20 91:19
94:1,18 97:10
97:17 98:1
99:9,22 100:5
100:19 101:10
101:20 102:5
103:12 105:9
105:17 107:7
108:9,17 109:5
109:11,18

| | | | |
|---|---|---|---|
| 111:3 112:2,17 | 194:16 195:8 | 268:5,15 269:1 | 328:3 330:17 |
| 113:9,21 | 195:18 196:2 | 269:8 270:15 | 331:1 335:7,14 |
| 116:13 118:8 | 198:4 200:4 | 271:18 272:4 | 336:1,6 337:15 |
| 119:10 120:20 | 205:5 206:9,19 | 273:5,6,8 | 338:16 340:10 |
| 122:18 125:15 | 207:4,21 208:7 | 274:12 275:1 | 340:19 342:11 |
| 126:1,10 127:5 | 208:17 210:1,8 | 275:11,20 | 343:15 344:8 |
| 128:9,20 129:7 | 211:13 213:1 | 276:8 277:2,11 | 344:15 346:20 |
| 129:16 130:8 | 213:10,16,21 | 277:18 278:19 | 347:4 349:11 |
| 131:5,19 132:9 | 214:6 215:5 | 279:4 280:8 | 349:19 351:3 |
| 132:17 133:1,5 | 216:13 217:8 | 281:11 282:1 | 352:13 353:3 |
| 133:11,21 | 217:15 218:4 | 282:10,17 | **macgilllaw.c...** |
| 134:6 135:3,11 | 218:14 219:18 | 284:1 285:6 | 2:6 |
| 136:7 138:3,21 | 220:5 221:20 | 286:20 287:3 | **madam** 357:9 |
| 139:5,19 | 222:4,16 223:2 | 287:10,18 | **made** 47:8 52:5 |
| 140:10 141:1,7 | 223:6 224:6 | 288:1,13 289:6 | 67:4 78:2 |
| 141:18 142:7 | 229:9 231:11 | 289:13 290:13 | 108:12 114:14 |
| 142:17 143:1 | 231:17 232:2 | 290:19 291:1,4 | 157:10 159:14 |
| 143:14,16,20 | 233:1 234:4,13 | 295:11,20 | 168:17 171:14 |
| 144:5 148:2,4 | 235:5,13 | 296:3,16 297:9 | 172:6 183:21 |
| 148:6 155:12 | 236:14 237:15 | 298:4,7,21 | 189:11,16 |
| 159:19 161:12 | 238:4 239:13 | 300:10,20 | 197:8 200:6 |
| 162:7 163:16 | 242:21 243:14 | 301:11 302:16 | 206:13 207:19 |
| 164:4,6,10,11 | 243:21 245:11 | 302:19 303:16 | 208:14 226:3 |
| 166:5,12 169:6 | 246:16 247:1 | 303:19 304:3,5 | 236:21 249:18 |
| 169:18 170:6 | 249:3,8,14 | 304:20 305:16 | 253:11,12 |
| 171:2,18 | 250:6,11 251:6 | 307:4,21 308:4 | 254:13 260:3 |
| 173:18 175:22 | 252:3,18 | 308:6 309:1 | 260:20 261:18 |
| 176:7 177:15 | 253:19 254:15 | 311:4,13,16 | 307:9 311:8 |
| 179:1,12 180:7 | 256:7,12,15 | 313:3 315:4,14 | 318:5 321:16 |
| 181:12,15,17 | 257:1,12 | 317:8,17 318:3 | 324:1 335:15 |
| 181:20 183:6 | 259:20 260:9 | 318:12,18,21 | 358:7 |
| 184:7 186:4 | 261:4 262:2,11 | 319:15 320:11 | **maintain** |
| 187:15 188:2,6 | 263:10 264:4 | 321:1,14 326:7 | 106:17 107:22 |
| 188:17 189:18 | 266:6,19 | 326:12 327:1,6 | **maintained** |
| 192:4,14 193:1 | 267:15,21 | 327:11,18 | 183:22 |

make 13:6,20
16:19 19:11
23:14 29:20
30:16 31:6
33:22 34:15,16
35:12,19 45:4
47:9,12 52:7
59:18 61:15
62:19 65:13
82:22 88:4
108:3,21 115:9
125:1 155:3
172:15 200:20
207:5 209:6
221:21 222:6
245:18 248:1
260:13 262:12
264:11 281:13
284:14,18
299:14,18,22
302:15 303:9
309:20 314:3
315:8 328:20
330:13,15
337:6 345:2
making 115:6
286:15 344:19
man 253:3
manager 18:15
18:20 19:16,20
27:15 82:16
84:2 129:9
168:14 214:20
218:22 219:1
220:16 221:14

managing 7:2
manipulated
102:20
manner 267:6
march 64:17
146:3,16
161:13 162:18
173:12 175:12
177:4 186:22
187:18 188:1
189:2 190:20
207:18 261:15
267:4 272:12
273:2 294:8
295:14 298:9
303:4 310:1,10
316:13 322:20
327:7 328:9
329:5
marchetti 2:13
marital 337:7
mark 85:14
347:1
marked 10:1,5
16:21 73:4
74:17 85:12
120:18 162:5
163:14 164:8
166:10,14
178:20 179:10
198:2 214:4
232:21 234:2
235:3 239:11
250:4 327:16
342:9 346:18

market 2:4
marriage
339:10
married 341:6
massachusetts
6:17
master 6:17
match 293:19
293:21
material
258:15
materials 98:4
matt 2:13,15
matter 5:5
13:22 16:9
17:8 21:17,20
21:22 26:13
27:3,7 45:3
57:1 59:11
69:9 82:20
91:13,18
108:20 137:3
149:3 156:6
157:18 158:18
169:21 218:16
259:2 335:17
348:11 353:11
matters 9:12
74:14 83:20
109:1 135:10
135:22 136:6
188:7 214:21
mba 6:21
mean 12:19
22:20 29:11

31:18 45:15
52:15 54:13
63:19 91:21
94:16 110:4
111:5 118:6
123:16,17
143:7 172:3
175:21 226:18
230:1 247:19
meaning
229:22 230:6
means 38:2
134:3 241:4
279:21 307:20
333:17 346:8
meant 31:3
94:13 216:5
249:15
REDACTED

medicine 258:9
258:11,17
meet 23:16,22
24:19 148:18
149:2 150:1,7
169:8 170:18
223:16 319:2
339:3
meeting 17:22
18:2 24:10,12
24:14,16
114:15,21,22

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 402 of 441 PageID #: 4014

149:12 150:8
150:12,13,15
150:16 151:12
153:8,8,14
161:21 162:4
167:8,11
173:13 190:12
299:12 318:22
319:21,22
320:3,6 324:21
325:1 327:8
329:11 332:13
336:9
**meetings** 17:9
296:12
**meltdown**
341:1
**member** 16:12
21:5 24:5 80:2
80:9,15 82:18
169:3 172:18
199:7 244:8
342:20 353:18
354:3
**members** 22:9
79:19 81:4,22
82:6 122:22
135:9 136:20
137:1,11,18
138:10 139:8
139:12 140:17
141:10 142:1
170:2,10,15,20
171:9 182:2,11
182:14 183:17

185:7 186:13
190:14,17
246:9 342:6
**membership**
80:5
**memorandas**
76:1
**memorize**
297:8
**memory** 49:22
138:15 277:9
277:16 278:17
278:22 290:21
**men** 195:2
**mentee** 237:6
**mention** 191:2
191:18 291:6
314:3 317:16
**mentioned**
120:15 137:5
158:8 172:19
174:21 177:14
218:1 221:8
257:15 291:9
310:22 317:15
**merritt** 3:3
**message** 69:2
69:11,15 73:8
75:10 106:10
107:13 120:7
213:22 214:11
249:18 345:17
347:8,11
**messages** 22:2
22:4,7,9,15,19

68:8,14,18
72:5,6,13
106:5,16
115:18,21
116:2,15,16,20
117:2,6,8,14
118:3,11,16,18
119:17 120:4,5
120:10,14
121:19 287:12
287:15 288:3
289:15,19,20
328:18 348:21
**messaging** 68:2
**messenger's**
246:10
**messengers**
182:12
**met** 18:18 96:9
127:7 146:18
169:22 219:20
226:20 232:12
318:16 323:14
325:6 332:2
343:22
**metadata** 4:14
179:20 180:2
181:5,6 183:11
185:1 236:1
247:4,8
**metes** 13:21
**microphone**
242:13
**middle** 1:1
285:18 318:18

326:10
**midwest**
357:15 360:1
**million** 301:14
**millions** 28:10
**mind** 10:20
70:14 78:9
81:7 96:2
126:18 145:16
**mine** 328:12
334:2
**minimal** 69:13
**minister**
126:16 127:16
130:3
**ministry** 48:21
341:6,13
**mintz** 2:9 24:6
24:7 107:17
348:12
**mintzandgol...**
2:10
**minute** 69:6
74:22 109:12
187:9 221:6
258:21 307:15
**minutes** 71:16
146:22 148:14
148:15 153:2
190:22 223:2
237:20 242:7,8
242:11 262:5
317:16
**mis** 200:17

| | | | |
|---|---|---|---|
| **mischaracteri...** 194:13 | **miswrote** 225:11 | 246:10 | 125:16,21 |

mischaracteri...
  194:13
mischaracteri...
  131:17
mischaracteri...
  101:2 110:22
  128:7 133:8
  139:2 142:12
  158:3 169:11
  177:11 208:3
  209:18 212:21
  213:14 220:1
  243:8 245:10
  259:18 269:7
  280:5 290:7
  310:20 311:10
  316:21 317:4
  335:20
**mishandling**
  79:18
**misleading**
  312:18
**missing**   105:1,5
  240:4,5 247:14
  248:6
**mississippi**
  126:17
**missouri**   190:2
**misspoken**
  200:16
**mistake**   164:10
  167:16 328:20
**mistreatment**
  190:16

**miswrote**
  225:11
**moment**   23:20
  81:12 119:7
  121:1 124:5
  214:9 235:11
  292:6,16,18,22
  295:8 297:12
**moments**
  234:21
**monday**   320:3
  337:2
**month**   123:11
  124:12 186:6
  186:10 188:9
  201:15 205:13
**months**   7:12
  68:3,9 75:13
  102:21 123:9
  123:10 133:16
  153:11 185:18
  192:5 243:4
**morn**   313:4
**morning**   5:2,16
  24:21 25:1
  44:20 62:13
  140:4 143:4
  189:9 195:16
  288:12,16
  313:10 316:14
**morris**   136:14
**mother**   341:6
  341:12
**motion**   17:13
  182:12 195:7

246:10
**motivations**
  193:15
**mouth**   261:18
  354:18
**move**   37:4
  192:10 217:21
  219:13 221:17
  223:3 239:9
  264:22 286:12
  286:19 290:12
  337:14 338:4
  339:7
**moved**   265:14
  267:18,20
  270:6 285:14
**moving**   52:22
  88:22 268:9
  275:13
**multiple**
  305:11,12
**murray**   3:2
**music**   126:16
  127:16 130:3
**myers**   18:10
  22:11 166:18
  166:19 167:14

| **n** |
|---|

**n**   2:1 4:1,1 5:1
  161:1,1,1
**name**   5:17,19
  10:12 15:7
  42:10 45:19
  61:8,16,19
  94:10,12,19

125:16,21
126:13 137:16
145:20,21
156:16 157:4
158:8 180:11
199:20 200:2,3
287:1 333:3
357:6 358:3,4
358:15 359:3,4
359:21
**named**   11:1
  41:11,12 42:4
  42:5,6,13 43:2
  43:5 61:17
  94:11 95:13
  117:15 195:10
  199:6,17
**names**   13:3,7
  41:14,17,19
  42:12 44:10
  47:18 48:15,18
  61:22 62:4,15
  62:17 94:19
  96:22 125:14
  126:9 131:6,21
  195:5 199:18
  210:22
**naming**   202:15
**narrate**   323:10
  323:17
**narrated**
  324:11
**narration**
  324:2

**narrative**
  100:16,17
  101:6,9,14,15
  101:19 102:21
  162:11,13
  215:18 219:3
  219:19 220:18
  223:10 257:6
  262:18 318:13
  318:14 335:18
  337:10 338:3
  340:1
**nashville** 1:2
  2:14,21
**naturally**
  291:11
**nature** 99:8,8
**nauseam**
  288:12
**near** 99:2,12
  100:7
**necessarily**
  207:20 250:3
  266:5 280:22
  301:9 314:11
  <span style="color:red">REDACTED</span>

<span style="color:red">REDACTED</span>

**need** 54:14
  86:21 99:17
  111:2 139:21
  140:5 145:13
  145:20 149:7
  153:18 154:10
  171:21 172:7
  172:14 223:4
  227:14 234:21
  243:19 296:1
  296:13,14
  309:22 312:5
  314:7 339:7
**needed** 114:21
  172:10 307:5
  332:17
**needs** 130:22
  278:20,21
  287:3 298:6
**negative** 71:3
  301:16
**negligent**
  112:20 113:4
  113:14 114:5
**negotiator**
  344:18
**neither** 356:10
**nervous** 122:7
**never** 46:14
  93:10,12 109:7
  114:7,8 186:5

  217:16,17
  246:21 249:4,4
  261:12 286:5
  287:16 288:4
  298:13 299:1,1
  299:2 314:10
  316:9 317:1
  348:19 351:7
**new** 2:10,10
  8:16 47:2,21
  100:6 123:13
  125:2,8 127:7
  129:3 245:20
**night** 268:18
  279:13 283:2
  286:8 294:20
  295:21
**nine** 64:8,12
  65:1,2,15 67:9
  67:19 101:16
  101:22 129:19
  153:10 212:18
  251:10 252:7
  252:22 253:20
  253:21 258:21
  287:8
**ninth** 213:11
**nonconsensual**
  99:8
**normal** 352:11
**north** 146:11
  146:19,20
**northeastern**
  6:16 9:2,5

**northwest** 1:20
**nose** 156:13
**notarized**
  357:13
**notary** 1:18
  356:1,19
  357:22 358:10
  358:18 359:15
  359:23 360:23
**notations** 59:18
**note** 29:14,18
  62:19 357:11
**notes** 4:20
  125:1 146:5
  147:2,2,5,6,7
  147:10 153:4,6
  163:3,3,4,7,11
  176:8,11 190:6
  240:7 241:7,9
  267:5 279:16
  294:15 295:12
  295:13,15,16
  295:17 296:7
  296:11 297:4,8
  297:14,19
  298:1,8 299:18
  299:20 300:1,2
  300:3,3,4,7,15
  300:19,22
  301:2,6 310:1
  310:9 312:3,6
  312:7 323:3,4
  324:11,17,18
  324:20,21,22
  325:3,4,15,22

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 405 of 441 PageID #: 4017

326:2,5 327:3
327:7,10 328:8
328:10,12
329:1 331:12
331:16,19
332:6,6,13,15
332:19,22
333:9,21 334:1
334:4 342:5
**notice** 6:4
148:19 243:4
352:6,8,10,11
**noticed** 12:20
248:2
**notwithstandi...**
211:2 316:10
**november** 8:6
**number** 10:1
16:21 22:17,20
26:17 63:8
64:13 65:2,7
65:21 67:20
73:4 74:17
79:7 85:12,16
85:18 112:4
115:20 120:18
145:21 146:21
146:22 162:5
163:14 164:8
166:10 176:3
176:14 177:17
178:20 179:10
179:14,16
181:13 198:2
202:19 212:15

212:16 213:5,8
214:4 232:21
234:2 235:3,16
235:20 239:11
250:4,8 265:13
327:16,21
328:1 342:9
346:18 357:7
357:12
**numbers** 22:19
22:21 23:5,6
359:7
**nw** 1:14

**o**

**o** 4:1 5:1 6:2
161:1,1,1
**o'clock** 239:19
**oath** 11:22 30:9
30:11,12 34:17
67:5 94:5
144:11 277:20
**object** 38:10
99:19 126:7,7
130:22 131:2
133:20 326:1
**objecting**
278:21
**objection** 11:7
12:14 15:21
18:12 26:4
27:12 28:11,19
29:14 33:18
35:1,16 36:5
36:14 37:1,13
39:10 41:1,10

44:12 45:9,14
45:22 47:7,8,9
47:9,13 48:1
50:9 51:17
52:16 53:13
55:6,16 57:3
57:10,18,22
58:6 59:2
60:11 62:2
63:16 64:11
65:4,18 68:10
71:20 72:8
73:20 74:9
76:11,16 77:8
81:10 87:19
89:21 90:17
91:15 93:14
97:5,14,21
99:5,16 100:11
101:2,18 102:2
103:11 105:6
105:14 107:4
108:5,14 109:2
109:8 110:22
111:22 112:14
113:6,17 116:9
122:4 125:10
128:6,12 129:4
129:12 130:5
130:21 131:15
132:6,20 133:3
133:7 134:2
136:3 137:20
138:12 139:2
139:13 140:7

140:19 141:15
142:4,11,20
144:22 145:6
148:21 152:6
153:21 154:13
156:10,21
157:13 158:2
158:22 161:22
166:4 168:20
169:11 170:3
170:21 171:12
173:16 177:10
180:4 181:9
182:20 184:2
185:21 187:11
187:19 188:4
188:11,14
189:8 191:21
192:9,19
194:12 195:3
195:15,21
204:22 205:22
206:15 207:1
207:10 208:2
208:11 209:17
210:5 211:10
212:20 213:6
213:13,19
215:2 216:10
217:9,20 218:9
219:9 220:1
222:11,22
223:20 229:5
231:7,14,21
234:10 236:8

242:19 243:7
245:9 246:15
246:17 248:20
249:7 251:4,21
252:15 253:9
254:3 256:1,20
259:17 260:5
261:2,11 262:8
262:12 263:8
263:22 266:4
266:14 267:11
268:2,12,19
269:6 271:14
272:1,1 273:3
273:7 274:7,17
275:8,17 276:6
276:21 277:8
278:20 280:4
281:7,20 282:7
282:15 283:19
283:19 285:2
286:9,17
287:17,17,20
288:11 289:4
290:6,17 295:4
295:19,22
296:8 297:7,21
300:8 304:14
305:7,22
306:16,22
307:18 308:20
310:20 311:10
311:15 314:22
315:10 316:21
317:2,4,22

318:7 319:10
320:8,21
321:10 325:21
327:5 330:20
335:3,11,20
336:4 337:8
338:14 340:5
340:16 342:1,2
343:10 344:6
344:11 346:15
349:9,15
350:22
**objections** 4:7
308:14
**obligation**
113:5
**observation**
59:1
**observations**
55:21 56:2
59:14 181:21
**obtain** 199:9
200:7,8 204:5
**obtained** 95:17
167:6 206:5
**obvious** 51:10
51:11 53:4,7
226:19
**obviously**
41:12 198:11
**occasions** 206:4
**occur** 262:5
**occurred**
130:16 156:18
157:21 178:10

184:22 201:15
205:14 208:20
221:4 223:14
249:12 262:4
320:16
**occurring**
134:14
**october** 81:8,14
81:17 124:17
169:21 318:15
**offer** 255:16
**offered** 164:19
**office** 149:13
149:16 150:21
150:22 151:18
151:22 152:5
152:21 214:17
224:18,20,22
225:10,16
318:16 319:8
319:13
**officer** 15:10,13
66:7 67:4
144:12 178:5
356:2
**offices** 8:3,16
**official** 308:11
358:15 359:21
**officio** 80:8,15
**oh** 151:21
203:3 204:12
224:16
**ohio** 357:2
**okay** 12:18
14:21 15:3

16:8,18 20:1
20:21 22:14
23:8,16 24:2
28:22 29:3
30:16 31:12,16
31:21 32:16
37:8 39:16
41:9 42:16
49:3 53:2,17
56:2 57:16
58:4 61:20
62:7 66:19
67:13,15 72:17
73:10 75:3
79:6 81:16,19
83:15 86:7
87:8 88:18
89:18 91:1
93:10 96:20
97:2 111:8
114:8,20 121:4
121:16 122:19
123:10 124:9
126:10 129:17
137:9 141:8
144:16 145:10
146:1 147:10
147:13 148:7
152:10 155:18
157:6 162:8
163:10 171:6
171:19 172:22
177:7 179:4
180:18 184:8
188:21 192:15

193:10 197:16
202:4,11 203:7
203:16,18
204:3 220:6
221:11 222:5
225:11,15
226:12 229:10
229:17 230:3
231:2,18 232:3
232:9 236:5
237:16 242:2
242:16 245:3
247:18 250:14
254:19 256:8
265:14 267:7
269:12,16,21
270:8,14
273:15,17
274:13 278:4
281:12,12
282:11 306:18
309:12 313:8
314:15 315:21
316:18 327:11
330:5 336:7,17
350:13 353:12
**oklahoma**
126:17
**once** 16:10
136:9
**ones** 41:12 42:4
42:5,5 154:22
353:10
**online** 24:15,17

**open** 291:17
294:1 296:22
**opened** 121:11
**operate** 106:11
**operated** 28:16
79:12
**operating**
15:10,13 66:7
67:4 144:12
178:4
**opinion** 102:9
339:14,16
**opportunity**
127:10 192:7
209:4 243:10
307:11 314:13
**order** 10:8
34:12 47:10
195:6 208:15
210:4 225:2
285:13
**ordinarily** 68:1
**ordinary**
183:22 289:18
289:19 349:7
**organization**
106:17 107:22
116:22
**organizational**
352:12
**organize**
106:18
**orient** 195:19
**orientation**
28:16

**oriented** 86:12
**otchy** 2:8 24:1
24:9
**ought** 306:19
**outcome**
356:16
**outlined** 114:19
169:4,10 289:2
**outs** 253:2
**outset** 85:1
**outside** 150:21
150:22 151:22
152:5 224:18
**overhearing**
351:14
**oversee** 322:21
**oversight**
168:14
**overview** 234:7
**overwrite**
142:8
**own** 16:14 22:6
31:2 50:15
51:7 88:8 98:2
134:19 135:22
151:22 156:2,6
185:4,8 189:14
244:13 263:19
269:4 292:21
296:7 297:4
337:17

**p**

**p** 2:1,1 5:1
**p.m.** 75:19 88:9
89:5,11 90:16

130:1 161:2
201:11 203:4
214:12 215:4
236:2 355:12
**pacific** 7:19 8:2
**page** 4:2 10:10
17:11 20:5
66:9 79:4
85:16,17
111:10,12,14
112:4 131:8,13
131:21 136:15
137:11,15
138:19 144:6
163:1 167:10
168:1 181:16
181:17,18
203:16 227:4
227:11 228:9
228:10 239:2
254:18,19
256:8 257:13
257:14 262:7
262:15,17
263:2 265:9,12
269:22 270:1
270:22 283:8
291:14,22
292:3 293:3,6
294:6 296:17
298:14,16
299:1,2,8
303:7,15,16,18
304:1,2,3
305:19,20

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 408 of 441 PageID #: 4020

307:16 308:2,3
308:4 309:4,10
309:11 310:3,5
311:1,2 313:8
313:15 318:17
318:18,19
319:1 320:5,14
322:4 324:8
325:20 327:22
327:22 328:1
329:21 330:4
330:15 331:3,4
331:13 336:16
340:20 347:2
357:12,14
359:7 360:3
**pages** 139:7
179:8,9 236:13
279:18 291:10
294:5 301:5
**paid** 283:5
**painful** 209:6
262:1
**pants** 251:15
**paper** 4:20 76:3
76:9 77:2,6,11
108:4,13,22
322:22 343:2,6
344:20 345:2,5
345:8,14,18
346:11
**papers** 311:6
**paragraph**
4:18 17:15
26:17,19

201:12 227:12
228:12,16
265:13 269:22
269:22 270:2,4
270:10,11,22
283:8 291:14
291:14 293:7
310:3,3,6,13
320:14 340:21
340:22
**paragraphs**
263:5 304:2
338:17
**parameters**
83:1
**paraphrasing**
339:18
**pardon** 5:4
**part** 12:1,22
13:5,9 14:2
25:5 34:9
35:13 37:9
45:6 53:22
60:1 79:14
93:10,11 98:20
105:18 108:1
108:20 111:9
115:7 120:16
127:13 134:14
193:10 230:18
236:1 238:19
239:6 248:18
249:5 266:2
272:7,7 273:22
281:18 288:21

301:19,21
303:4 312:18
323:7 328:22
332:19 333:21
337:17 359:9
**parter** 210:2
**participate**
178:17 228:22
**participated**
24:7
**particular**
19:21 32:5,5
33:11,15,16
34:5,12,21
46:15 51:4
75:15 78:13
119:12 124:3
141:22 145:22
169:9 170:9
179:21 180:3
182:6 234:11
246:20 263:12
266:9 276:14
276:16 280:12
301:6 304:12
306:15 308:22
310:12 345:19
351:16
**particularly**
51:5
**parties** 106:5,6
115:19,22
116:15 119:17
120:15 122:15
125:14 130:18

155:16 177:14
356:11,14
**partner** 10:22
**parts** 38:13
**party** 31:20,22
32:1 106:20
175:8 295:7
336:21
**pass** 344:13
**passing** 342:17
**past** 136:12
186:13 221:17
**pastor** 6:8 9:15
11:6,18 12:3,8
12:13,13 14:3
14:9,19 43:7
43:10 44:5,11
44:18,20 46:21
47:4,16 48:15
58:15 59:11,19
60:17,19 61:3
61:11,22 68:15
80:1 83:6,9
94:6 96:19
99:14 100:10
101:1 103:21
104:3 108:3
110:15 137:18
141:11 142:10
155:5 167:17
168:4 186:6,10
189:6,20 191:2
191:7,10
192:16 193:22
194:10 196:4

197:7,17
199:14 201:13
201:19 202:7
202:14 209:4
215:8,15,22
216:5,7 217:17
218:8,16 219:7
222:8,19
224:12 227:7
227:22 229:12
230:8 232:7
236:19 237:6
243:3 245:4,8
254:2 255:2,21
257:20 258:10
258:17 259:6
263:15 264:5
266:10 275:7
275:15 277:6
277:21 283:2
285:1,8 288:10
290:15 307:8
312:19 313:5
314:5,20
317:10,18
318:15 320:13
322:5,17
325:12,19
329:22 330:9
335:9 340:3,13
343:16,22
344:10 345:3,7
354:17,21
355:2

pastor's   237:9
   237:11 238:8
   322:4,16
   325:19 329:21
   330:8
pastors   202:2
patrick   2:3
   13:6
patterson
   131:8,13,21
   135:10,19
   136:1,6 142:3
   142:15,15
pause   19:9
   43:20 119:9
pay   276:14
   280:10
paying   275:3
   283:17
pc   2:4
pen   124:21
penalties   67:10
people   17:21
   42:6 46:10,11
   46:15 47:5
   49:4 106:14
   118:4 172:14
   186:16 204:21
   205:9,18
   262:21 279:8
   288:8 305:18
   315:7 343:16
   351:10
perceive   92:5,6

percent   224:5
   312:12 320:10
period   23:13
   68:3 75:22
   77:7 82:3,6,11
   82:13 100:22
   102:21 123:1,4
   123:11 124:12
   133:15,19,22
   134:8,15,21
   199:10 200:9
   204:7
periodic   106:16
perjury   67:11
person   11:21
   15:6,7 24:19
   66:14 103:10
   116:8,12
   138:22 139:10
   146:7 148:10
   161:17 165:10
   167:8 177:21
   189:20 190:4
   190:12 191:1
   191:10 197:4
   209:13,13
   259:6 353:7,17
   354:3
personal   55:20
   115:8 224:1
personally
   115:9 358:11
   359:15
persons   239:3

perspective
   33:9 92:15
pertaining
   15:18 44:18,22
   46:19 47:6
   50:3 59:19
   87:17 104:20
   105:11 106:2
   126:6 130:3
   134:20 137:6
   137:17 141:22
   173:3,4 188:18
   190:6 192:6
   207:8 214:2
   244:17 346:13
   348:18 351:11
pertains   251:13
pertinent   239:6
phenomenon
   242:14
phone   43:12
   75:20 117:3,6
   117:9,10,11
   172:14 175:9
   191:8 194:22
   341:1 345:12
   357:3
photographic
   265:11
phrase   37:20
   37:21 73:20
   109:21,22
   110:2 229:21
   251:3,7 263:12
   310:16 312:16

phrased   267:5
physical   71:13
  295:6 307:13
  338:5 354:11
  354:15
pietsch   2:13
pigue   2:13
place   96:5
  98:13 124:4
  151:11 153:1,9
  176:4 241:22
  270:13 280:17
  280:20
placed   271:7,12
  273:20 275:6
  275:13 279:12
  279:19 280:1
  285:9
placing   282:5
plaintiff   1:4 2:2
  4:3,7 5:14 9:15
  10:16 11:17
  12:12 140:2
  147:20,20
  161:10
plan   226:3
  269:19
plane   150:1,3
play   29:21 30:5
  244:3
played   244:4
playing   30:19
please   5:8,17
  61:9 75:1 79:3
  80:11 81:12

94:10 109:9
131:17 143:17
144:4 159:1
198:6 214:9
217:21 223:2
226:17 227:10
232:10 265:12
286:12 290:12
303:14 316:2
326:15 357:10
357:10
pllc   2:13,17
plus   124:12
  333:2
point   16:14
  18:4 26:17
  69:1 74:13
  79:10 81:3,20
  91:5 96:18
  106:19 113:17
  122:12,13,20
  123:19 132:11
  170:1 172:22
  173:3,4,7,16,17
  176:10 184:11
  189:21 194:2
  200:12 201:7
  217:13,13
  227:9 232:13
  234:10,11
  238:13 243:11
  244:12 247:22
  260:18 270:12
  286:22 289:10
  292:14 303:7

316:4 318:17
332:5 334:16
pointed   340:7
points   20:5,18
  21:1 79:11
  205:20 334:4
portion   9:14
  11:5,17 12:2,7
  12:11 33:2,5
  140:1,12
  141:13 142:8
  165:22 182:5
  230:11 231:18
  236:18 286:13
  307:7 326:16
portions   17:11
  108:4
portrayed
  241:2
pose   308:14
posed   306:16
position   9:9
  48:13 301:16
positions
  186:17
possess   165:11
possession
  244:2 321:18
  347:13
possible   171:15
  215:17 219:2
  220:17
possibly   203:3
posted   46:12
  46:19

poston   2:14
potential   92:17
potentially
  200:2,17
practice   106:9
  117:2 158:19
prefer   43:18
preferences
  33:16 34:6,11
  34:21 35:14,18
  36:3,12,22
  37:10
prep   118:6,7
preparation
  22:15 25:5
  115:17 117:9
  127:19 288:3
  350:7
prepare   21:12
  21:14 23:10
  127:20 128:16
  137:14,22
  266:16 273:11
prepared   21:10
  21:16 96:10
  127:6 128:16
  254:12 290:9
  290:11 328:16
presence   101:7
present   3:1
  15:11 18:4
  29:18 50:6
  64:19 154:17
  154:20 155:16
  163:13 167:15

Veritext Legal Solutions
www.veritext.com                                                                 888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 411 of 441 PageID #: 4023

259:7 320:15
322:21 323:10
323:18,19
328:14
**presenting**
243:12
**president** 27:21
80:7
**presidents** 81:1
136:12,20
186:13
**press** 136:22
**pressler** 131:8
131:14,21
132:19 134:12
134:13,21
135:10,20
136:1,6 142:3
142:16
**pressler's**
134:14
**pressure**
301:12,15,18
**pretending**
303:13
**prevent** 345:8
346:1,2,4
**prevented**
189:14
**preventing**
303:13
**previous**
172:19
**previously**
94:11,12

139:22 161:8
164:1
**primary** 9:18
**principal**
138:22 139:10
139:17
**principals** 18:5
18:7
**prior** 7:9,17 8:7
9:4 67:11
72:14,18 89:19
90:13,14 91:3
98:11 101:11
104:10 114:15
114:21 125:3
127:12 128:5
128:11,18
141:20,21
152:15 158:11
158:16 161:20
162:3,3 165:21
174:14 177:4
184:22 185:16
189:15 203:19
208:9 215:6,9
217:6,8 218:17
226:13,20
244:9 260:14
260:21 271:20
352:10
**private** 62:12
94:14
**privilege** 119:8
**probably**
106:13 120:12

**problem** 35:17
86:20 164:7
228:19 337:3
337:18 338:11
339:11,11
**problems** 337:7
339:1
**procedure**
358:5 359:5
**procedures**
17:16
**proceed** 55:13
171:21 172:8
172:16 173:15
**proceeding**
23:4 30:10
**proceedings**
62:13 312:3
**process** 23:2
186:18 287:22
**procured**
153:14
**produce** 105:12
287:12 301:15
301:17 350:16
350:21
**produced** 23:4
104:21,22
105:13 182:18
183:9 287:16
289:22,22
**product** 34:14
**production**
105:1,11
357:14,15,20

**professional**
303:8
**program**
214:19
**project** 18:15
18:20 19:16,20
27:15 82:15
84:2 129:8
168:13 218:21
219:1 220:15
221:13
**promptly** 210:3
**pronounce**
5:19
**property**
150:17
**proportion**
253:6
**proposed** 4:16
4:17 201:5
204:14 233:11
233:15 234:8
**proposing**
199:4
**protect** 44:13
345:5
**protection** 7:22
**proud** 301:21
**proven** 105:2
**provide** 29:8
33:12 40:5,8
44:20 47:16
54:3 60:16
95:4 162:17
193:21 194:3

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 412 of 441 PageID #: 4024

208:15 209:3,8
209:9 210:22
211:3,21
307:11 323:21
**provided** 14:11
17:10 20:12,14
37:15 41:12
49:4,9,18
60:15 67:7
80:22 82:8,10
84:16 89:14
95:1,7 101:16
106:6 116:17
116:18 139:9
155:1 161:20
162:3 164:14
199:6 202:1
207:7,16 209:5
250:2 261:15
273:22 278:18
324:3 347:13
**providing** 39:1
47:18 57:5
59:21 60:8
62:4 168:14
240:17
**proximity**
285:8
**public** 41:13
42:11 84:12
91:7 111:15
114:14 150:17
356:1,19
358:10,18
359:15,23

360:23
**publication**
72:5,15,18
73:19 104:11
203:19 251:11
252:7 253:1
**publicized**
224:2
**publicly** 199:19
199:21
**publish** 44:17
233:18
**published**
15:15 45:7,10
46:2 64:10
65:17 78:10
98:9 101:12
111:20 115:2
163:19 204:4
208:10 209:22
212:19 233:19
271:21 299:2
306:10
**publishing**
260:12
**pull** 86:3 131:6
143:14,16,21
143:22 293:14
**pulled** 271:6
**pulling** 251:14
**purposes** 110:6
241:13
**pursuant** 6:4
152:14 195:5

**push** 305:11
**put** 22:17 23:6
40:11 45:18,19
60:17 71:18
98:10,10 129:2
176:14 204:15
211:9,18
215:14 226:9
235:14 242:12
273:9,10
278:14 279:17
279:21 281:4
284:19,21,22
285:5 286:7,16
290:15 322:22
322:22 334:3
349:13
**putting** 318:10
345:21

**q**

**quarters** 293:8
**question** 10:8
14:6 16:2 17:2
19:12 26:22
31:11,17 32:16
33:21 39:4
42:8 45:2
47:11 59:5
63:9 65:8,13
66:18 72:22
78:5 85:22
86:19 88:19,21
89:1,11 92:3,6
92:21,21 93:2
93:7 99:18,22

100:6 109:9
124:7 125:22
126:14 128:14
131:10,16,18
134:4 140:9,20
141:2 142:5
144:4 159:3,5
177:19 178:2
184:5,5 185:3
186:21 196:1
207:12 217:7
219:10 231:21
232:8 234:7
237:18 243:2
243:20 245:19
247:11,20
252:4,10,16,16
259:11 261:9
262:10 275:12
277:14 278:19
278:21 279:2
282:15 283:21
284:2 286:4,11
287:1,4,5,6,9
290:2,20 296:2
298:2 300:11
301:3,4 302:17
302:20 304:18
307:19 308:1
314:8 323:12
326:11,16
327:2 343:19
344:21 350:2
354:7 355:4

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 413 of 441 PageID #: 4025

**questioning**
  93:4
**questions**  15:18
  21:4 25:11
  37:22 92:7
  131:1 137:8
  138:15 143:18
  158:12 219:14
  279:6 283:7
  289:3,14
  290:10,11
  324:9 325:2
  329:16 340:15
  348:13 352:15
  352:16 355:6,8
**quickly**  41:15
  308:18 309:21
  310:17 312:17
**quite**  351:17
  354:10
**quote**  232:6
  297:11 298:11
  325:4 344:20
**quoting**  227:3

**r**

**r**  2:1,20 5:1
  161:1
**rachel**  342:20
  345:21
**radar**  114:8
**raise**  78:8
  92:16 102:16
**rather**  168:10
  281:5 293:22
  294:12 296:22

310:12
**ravi**  341:17
**rb**  325:6,7
  332:2
**reach**  90:3
  340:3,11,12,12
**reached**  84:6
  87:12
**reacted**  255:7
  305:10
**reaction**  78:13
**read**  15:2 32:14
  32:17 33:1,2
  35:7,9 80:12
  85:22 86:6,8
  86:22 87:2,9
  92:20 93:1
  99:22 100:3
  106:15 113:20
  114:2 177:17
  177:18 198:12
  214:9 221:5,16
  227:15 230:19
  239:7 248:15
  248:22 257:14
  263:12 272:6
  274:18,20
  276:16 277:9
  277:16 278:17
  279:1,16
  285:19 288:2
  294:4 298:22
  302:15 306:9
  315:21 316:1,2
  316:3,4,5,19,20

324:7 325:21
  326:15,18
  358:5,6,12
  359:5,6,17
**reading**  10:21
  27:5 72:13
  93:7 122:15
  237:13 274:20
  275:3 285:21
  286:1,2 302:14
  303:6,9,10,12
  303:14 304:1,3
  304:4 341:16
  357:17
**reads**  280:6
**ready**  43:22
  44:2
**reality**  184:19
  205:16 334:3
**really**  39:5 78:6
  93:8 232:8
  241:3 247:20
**realties**  208:20
**reason**  12:22
  171:10 183:20
  261:8 267:9
  289:8 357:13
  359:8 360:3
**reasonable**
  52:12 53:10
  253:6
**reasons**  51:6,8
**recall**  15:5 18:3
  18:3 20:15
  39:19 49:2

65:20 76:5,6
  76:13,15,20
  77:10 78:14,18
  84:17 85:6,11
  90:21 96:6
  100:13 107:3,6
  107:12 108:18
  108:19 109:6
  110:12 121:18
  121:22 126:15
  126:18 135:18
  135:19 136:5
  137:14 138:19
  140:14 141:4
  146:21,22
  156:12 157:3
  158:7 186:9
  195:11 211:12
  211:17 227:13
  227:14,16,19
  228:1,4 232:19
  251:9,10,12,15
  258:1,11,12
  291:3 296:4
  297:20 298:8
  302:6,12 303:3
  303:22 304:9
  304:10,16,21
  324:22 325:15
  340:18 346:17
  348:16 349:13
  351:14,21
  353:5,16 354:1
**recalled**  349:16

Veritext Legal Solutions
www.veritext.com                                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 414 of 441 PageID #: 4026

**recalling**
  261:17
**receipt** 357:16
**receive** 106:10
  115:13
**received** 6:15
  6:21 34:8
  69:11 84:18
  93:1 100:17
  158:11 169:2
  239:15 335:6
**receiving**
  278:13 295:5
**recent** 75:13
  98:6
**recently** 130:14
  130:15
**recess** 109:15
  160:1 238:1
  327:13
**reciprocate**
  293:22 296:18
  296:22
**reciprocating**
  295:10
**recite** 86:18
**recited** 89:2
**recognize** 75:4
  120:22 166:16
  179:20 180:21
  239:15
**recollect**
  261:22
**recollection**
  56:6 61:13

71:1 95:2 96:8
141:13 228:6
265:11 291:1
348:2 350:3
**record** 5:7,17
13:8 32:17
35:9 47:12
80:12 95:13
100:3 104:18
109:14 126:12
159:21 161:4
165:15,15,17
175:20 176:1
206:14 237:21
238:2 272:6
303:10 310:18
311:5,7 312:2
312:15 326:18
327:12,14
355:11 356:9
359:9
**recorded** 5:3
103:20 104:2
**recording**
104:5 153:13
153:19 155:19
157:12,22
158:20 159:13
244:1
**recordings**
95:18 104:7,8
154:16 155:2
155:11 156:1,3
156:9,13,20
157:10,16

158:4 159:8
**records** 77:18
80:22 109:17
**red** 71:19
102:17
**redacted** 13:8
42:2
**reduced** 356:7
**refer** 56:5
69:17 79:2
175:17 200:19
216:19 237:3
241:16 243:19
252:8 290:22
316:2 322:18
324:19
**reference** 30:16
70:15 88:8
157:10 171:15
238:7 242:3
260:4,17
264:17 265:1
273:19 284:14
292:9 309:20
311:8 312:1,15
313:22 314:8
315:2,6,8,22
337:1 357:7
358:2 359:2
**referenced**
10:12 42:22
62:12 268:6,8
268:10 269:5
316:11 358:11
359:15

**references** 81:3
131:7 142:2
207:14 248:16
286:16
**referencing**
258:1 316:5
**referred** 83:17
107:17 110:17
110:19,20
145:14 164:1
196:7,10,13
237:5,8 238:11
238:15 242:10
248:10 264:18
283:12 353:1
**referring** 10:10
26:18 66:4
98:8 105:8,16
139:15 164:3
196:3 199:14
200:1 201:9,11
203:21 204:10
216:20 217:1
221:2 227:10
240:11 241:19
249:11,18
250:21 257:9
270:4 276:11
289:12 298:16
315:7 316:5
330:14 345:14
**reflected**
296:12
**reflection**
211:4

Veritext Legal Solutions
www.veritext.com                                                         888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 415 of 441 PageID #:
4027

**reflective**
  295:10 329:2
**refuse**  44:19
  196:4
**refused**  287:12
**refusing**  47:4
  47:15 61:10,21
**regard**  57:9
  318:8
**regarding**
  17:15 49:20
  95:7,20 119:2
  149:6 186:22
  191:13 210:12
  217:4 290:11
  291:10
**regardless**  91:1
**region**  8:2,14
**regional**  7:21
  8:14
**registered**  92:9
**rehobeth**  319:3
  319:6,14,17
**rejected**  317:10
  317:19,19
**related**  9:15
  10:15 11:5,17
  12:2,7,12 21:8
  21:16,19,21
  49:19 66:14
  115:3 132:16
  137:8 138:20
  140:1 177:22
  190:19 356:11

**relates**  133:19
  254:10 268:22
  352:22
**relating**  201:14
  202:3 236:18
**relation**  282:5
  283:1
**relationship**
  38:3,7,8,14
  39:7,8,15,17,18
  55:20 67:17
  68:1,7,7 73:18
  73:21 74:6,8
  77:17 78:1
  320:16
**relationships**
  62:9 72:2
**relative**  33:7
  236:5 356:13
**release**  128:18
**relevant**  21:7
**reliability**
  53:11
**reliable**  58:22
  59:12,13,16
**relied**  53:8
  56:15 174:13
  174:13,15
**reluctantly**
  229:1
**rely**  49:8,10
  53:19 328:21
**relying**  94:21
  174:8,11

**remain**  50:22
  52:9 56:11
**remains**  288:19
**remember**
  16:16 17:20
  18:4 21:4 66:3
  69:15,22 70:7
  70:11,13,16,18
  70:22 71:7,10
  71:11,14 72:4
  72:10,13 73:10
  76:18 84:14
  85:4 91:2
  108:16 109:21
  110:1 115:19
  115:20 127:3
  132:3 133:16
  141:5 143:2,9
  144:10 146:17
  147:8 155:1
  156:20 164:17
  167:3 211:7
  227:8 241:17
  252:6 260:17
  279:15,16
  298:11 329:16
  329:18 330:1
  331:13 349:20
**remembered**
  210:11
**remind**  266:7
  347:21
**removed**  132:4
  132:19 133:8
  275:5 291:6

**removing**
  271:6,12
  273:20
**rendition**  305:6
  313:9
**rental**  96:4
**repeat**  14:5,13
  35:3 50:17
  51:11 59:13
  80:17 123:2
  128:2 129:1
  185:3 206:17
  217:16 218:20
  219:11 232:10
  253:21 260:3
  295:17 317:19
  318:4 323:12
**repeating**
  204:20 219:13
**replied**  149:6
**report**  4:12,14
  9:14 10:15,21
  11:5,17 12:2,7
  12:12 14:4,10
  14:19 15:14
  18:22 19:2,5
  19:14,16,20
  25:22 32:9,12
  33:4,8,10,13
  34:1,14 36:3,8
  36:17 37:6,12
  37:18 38:20
  39:9 40:2,12
  40:18,22 41:3
  41:11,22 42:2

Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 416 of 441 PageID #:
4028

42:6,13,22
43:3,6 44:17
45:7,10,19
46:3,11,15,19
49:5,6,12,14,15
49:21 51:15
53:8,11 54:10
54:16,17,19
55:14 56:5,19
57:2 59:19
60:1 61:10,16
63:15 64:9
65:16 67:12,19
68:4,22 70:21
72:15,19 73:19
82:14,22 83:1
83:20 96:12
97:3 98:11,14
98:16 101:12
104:11 110:11
110:13 111:5
111:15,16,20
114:14 115:1
128:19 129:2
130:3,7,10,11
131:7 132:2,4
132:11,19
137:9,13,13,16
138:6,8,13,13
138:14,18,20
139:1,7 140:1
140:12,13
141:6,14,21,21
142:9 155:4
162:20,21

163:19 165:22
166:3,8 179:5
179:7 180:3,22
182:6 198:19
199:11,11
200:9,10,13
203:20 204:4,7
204:8,14,15,16
206:11,11,12
206:20,22
208:1,9,13,21
209:14,22
212:1,19 214:2
224:2 227:3,4
228:7 229:10
230:5,11 231:3
231:3,6 232:4
232:4 233:19
233:20 236:18
238:16,19
239:2,5 240:17
240:22 243:20
244:17 245:6,6
245:8 248:4
249:6 250:1
251:11 252:7
253:1,3,18
254:1,9,14
256:9,18,21,21
257:2,21 258:3
258:4,7 259:3
259:3,6,16,18
260:12,16,20
260:21 261:6
262:7,19 264:7

264:18 265:5,6
265:8,22 267:2
267:3 268:7,8
268:10 271:19
271:22 278:5,9
284:10,15,16
284:18,19
286:13,15
288:9 291:8
292:11 293:1,1
293:3,5,6,21,21
294:14 295:1,3
295:18 296:6
296:11 298:6
298:14 299:14
299:19 300:6
300:15,19
301:2,13,18,19
301:20,20,22
303:3 304:13
305:1,4,20
306:1,4,6,8
307:7 309:15
309:16,17
310:12,14
311:21 313:13
313:16 314:4,7
314:14,18
315:3 317:12
317:13,21
318:6,22
319:20 320:5
321:3,8,17
322:3,15
325:17 327:3

329:18,20
330:7,11,18
334:5,5,21
335:8,9 348:1
353:13,21
**reported** 1:18
34:9 37:17
55:18 141:11
205:19 227:5,6
227:20,21
229:11,12
230:6,7 261:9
267:1 299:11
312:12 321:20
322:9,15
326:21 341:10
**reporter** 1:18
5:8 32:14,17
32:22 35:7,9
80:12 100:3
130:22 242:11
317:3 326:18
358:7
**reporting**
40:16 233:20
**reports** 21:16
22:2 60:14
125:12 126:19
127:2 320:14
**reportsl.docx**
180:12
**represent** 12:1
141:8 181:6
183:10 235:22
247:8 333:3

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 417 of 441 PageID #: 4029

representative
344:18 353:8
representing
202:4
request 21:3
61:3,7,12 78:3
90:3 104:14
115:6 116:17
315:22 317:10
317:19 346:17
348:19,20
351:20 359:9
359:11
requested
32:18 35:10
52:11 78:11
80:13 100:4
107:2,10
326:19 339:3
347:18 348:6,7
requesting
50:22 78:14
348:17
requests 96:18
115:10,14
required
357:22
requirements
169:9,22
reservations
321:4,9 322:11
329:14 331:7
respect 9:12
29:3 36:12
47:3 51:12

58:13,19 94:20
96:15 148:16
157:9 163:22
168:22 186:18
187:8 196:6
226:12 231:12
252:14 269:5
285:7 290:2
292:21 336:7
351:18 353:11
respects 230:4
230:10
respond 42:7
70:20 71:3
93:8 107:14,16
149:12 198:20
210:3
responded
66:22 70:19
303:21 304:7
348:10 349:12
349:22 350:1
responding
70:18 198:21
respons 8:18
response 69:13
70:22 90:2
92:20 93:2,3
115:14 176:17
205:7 210:15
211:9 326:14
345:11 354:14
responses 4:7
10:11

responsibilities
135:7
responsible 8:1
8:15
responsive
69:14
restart 314:2
restate 124:8
resulted 138:6
retain 106:7,9
351:18
retaliation 51:7
85:5 124:1
retirement 8:13
returned
357:16
reveal 13:3
48:14
revealed
182:13 183:15
185:6 246:11
revealing 48:5
62:15 119:1
125:14
review 22:5
23:14 24:22
25:3 35:18
73:12,14 74:22
87:5 104:13
115:21 118:3
121:2 132:10
161:19 164:20
164:22 165:1,4
165:5,9,13,17
165:20 208:21

221:7 234:21
312:13 350:7
350:10 357:11
358:1 359:1
reviewed 21:18
22:1,3,15 25:7
115:17 116:1
120:17 132:15
162:2 208:14
209:16 250:14
253:14 287:16
299:13 306:19
326:6 350:5
reviewing
23:10 84:20
119:19,20
302:3
rhodes 1:18
356:2,18
right 6:7 9:5,20
12:10 15:1
16:11 18:22
20:10 25:16
29:1 30:5,10
30:14 31:9,12
32:2,6 33:11
33:17 34:2,17
36:4 38:17
40:2,5,6,19
42:10 43:10
44:6 46:7,21
47:1,6,22
48:16 49:6
50:19 51:16,22
51:22 52:4,10

Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 418 of 441 PageID #: 4030

| | | | |
|---|---|---|---|
| 52:13 54:21 | 161:15 162:15 | 234:19 237:10 | 306:3 307:14 |
| 55:15 57:17 | 163:17 167:12 | 238:22 239:6 | 308:19 309:7 |
| 58:17 61:4 | 167:18 168:18 | 240:8,10 243:6 | 310:7 313:17 |
| 62:1 66:2 | 169:19 171:4 | 248:13 249:9 | 313:20 314:6 |
| 67:12,14 73:17 | 172:7 175:6 | 252:21 254:21 | 315:9 316:16 |
| 79:12 81:6,9 | 176:8,12,14,16 | 255:4,8,13,17 | 316:20 317:9 |
| 82:3,18 85:3,8 | 176:18 178:3,6 | 256:19 257:3,5 | 318:6 319:16 |
| 86:11 87:13,18 | 178:10 180:8 | 259:12 261:1,5 | 322:6,11 324:3 |
| 88:4,7,22 89:1 | 183:7 184:15 | 263:7,16,17 | 324:14 328:19 |
| 89:5,10,15 | 185:2,14,17 | 265:1,9,17,18 | 328:21 329:10 |
| 92:2,4,8 94:22 | 187:1 188:19 | 266:3,11 268:7 | 330:12,16 |
| 97:13,20 98:6 | 189:22 190:21 | 269:5,9 270:9 | 331:15 332:11 |
| 98:11,12,15,21 | 192:18 193:12 | 270:13,19 | 332:20 333:15 |
| 99:15 101:17 | 193:17,19 | 271:5,8,13,22 | 333:19 335:2 |
| 102:7,11 103:9 | 194:7,11 195:1 | 272:13,21 | 335:19 336:15 |
| 103:13,21 | 195:9,14,19 | 273:17,21 | 336:20 345:10 |
| 104:10 106:12 | 196:5,8,11,14 | 274:1,4,6,14,15 | 345:15,20 |
| 107:22 111:4 | 196:17 197:1,3 | 274:20 275:7 | 346:21 347:19 |
| 111:16,21 | 197:18 201:19 | 275:14,16 | 348:8,13 |
| 113:16 114:6 | 202:9,16,19 | 276:1,2,5 | 349:14 350:4 |
| 117:3,17 118:1 | 203:9,10 | 277:3,22 278:3 | 352:1,3 |
| 119:15,17,22 | 204:16 205:10 | 278:6,7,9,10,11 | **rob** 12:20 |
| 120:5 123:4,6 | 205:21 209:16 | 279:19,20 | 26:18 29:15 |
| 124:12,21 | 212:11 215:6 | 280:2,3,3,10,15 | 37:2 41:16 |
| 127:8,9 129:11 | 216:1,9 217:3 | 280:18,21,21 | 47:11 94:17 |
| 129:20 131:6 | 217:19 218:8 | 281:19 282:6 | 126:12 143:17 |
| 134:19 135:22 | 218:18 219:8 | 285:1,13,16,16 | 144:2 148:3 |
| 136:2 137:13 | 219:22 222:2 | 285:18,19,21 | 164:2 221:16 |
| 137:19 140:2,6 | 222:10,21 | 286:1,16 288:6 | 235:11 257:9 |
| 140:11 141:14 | 223:7,12,19 | 288:10,14,18 | 270:12 277:17 |
| 141:19 142:3 | 225:6,8 226:1 | 294:17,19 | 286:22 287:2 |
| 143:11 144:9 | 226:5,9,10,16 | 295:14 297:2,6 | 289:12 290:22 |
| 144:21 147:15 | 226:22 227:12 | 297:15 299:17 | 303:7 342:1 |
| 147:17 148:8 | 231:6 232:7 | 299:21 300:2,5 | **robert** 2:3 |
| 151:3 156:9 | 233:12,21 | 305:1,3,21 | 19:13 |

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 419 of 441 PageID #: 4031

**robert.macgill**
2:6
**role**   7:5,7 8:4
8:21 9:17
10:14 17:11
18:6,11 20:19
32:8 133:2
134:16 138:16
142:12 198:18
224:9
**roman**   182:1
**room**   24:3,20
43:18 60:20
155:6,8,10,11
269:13,13
276:10
**roomful**   17:21
**root**   338:7
**round**   13:18
**roy**   42:15 95:8
100:14 101:6
102:20 104:8
151:7 155:14
155:17 156:4
156:15 157:3
159:8,16 194:3
206:4 209:9
210:21 214:16
216:16,17,19
216:21 225:16
230:21 234:1
243:12 245:15
254:7 318:16
320:15,20
325:8 336:19

337:10 338:2
339:4,9 342:7
346:4
**rules**   358:5
359:5
**run**   127:1
317:11
**russell**   1:11 2:7
5:4,11,18
10:12 22:13
37:15 50:12,13
51:15 52:2
54:9,20 55:2
55:15,19 56:17
56:20 57:7
60:10,16 63:6
63:14 64:2,3,5
64:15,18 68:19
70:14 74:1,3
75:20 83:16,17
83:18 84:5
88:13 93:13
94:21 95:5,20
97:9,12 99:6
100:13 116:11
155:1,16
156:15 157:4
158:6 159:10
159:17 161:6
164:14 168:7
173:1,2,9
174:14 175:1
183:2 186:2
191:3 204:20
207:16 253:17

272:12 273:2
326:5 332:10
334:17 343:13
353:6 355:13
357:8 358:4,9
359:4,13
360:20

REDACTED

REDACTED

|  **s**  |
| --- |

**s**   2:1 4:1 5:1 6:2
161:1,1,1
324:18 357:14
359:8,8 360:3
**safety**   51:7
**samantha**
10:22 11:15
12:6 22:10
64:1,1,17
139:16 146:2
151:7 153:7
163:6 166:19
167:15 168:12
173:21 175:15
176:5 177:2
189:19 191:17
197:16 202:22
203:13 212:4
212:14 213:17
214:19 215:12
233:9,22 235:1
239:17 240:2
240:14 248:9
249:19 250:17

Veritext Legal Solutions
www.veritext.com                                                      888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 420 of 441 PageID #: 4032

| | | | |
|---|---|---|---|
| 272:11 273:1 | 338:1,9,12 | **sbc** 4:15 15:20 | **seated** 262:21 |
| 312:7 313:19 | 339:2 344:22 | 16:6 17:13 | 277:4,6 285:15 |
| 326:4 328:18 | 345:16 346:10 | 26:9,14 27:3 | **second** 20:5 |
| 329:2 342:14 | 347:12 349:20 | 27:10,18,22 | 52:18 53:1 |
| 347:14 | **says** 26:11 27:2 | 32:1 80:7 | 58:2,5,22 |
| **samantha's** | 79:10 81:20 | 112:7,11 | 62:20 86:2 |
| 328:12 334:2 | 111:14,17 | 113:16 114:15 | 93:2 95:3 |
| **sanders** 2:3 | 112:7 114:14 | 114:21 115:14 | 129:18,18 |
| 85:14 86:4 | 147:5 177:3 | 123:14 124:17 | 130:22 142:18 |
| 327:21 347:1 | 182:1,9,11 | 125:4,8 127:1 | 142:21 169:15 |
| **sat** 92:16 | 183:14 197:19 | 130:14 136:13 | 197:13 203:16 |
| 270:17,18 | 199:4,16 | 136:20 199:8 | 210:17 217:1,3 |
| 271:4 277:5 | 202:11 204:5 | 212:2 237:6 | 254:8 256:9,10 |
| 283:9 284:2,6 | 205:15 216:15 | 239:4,4 353:1 | 256:13,16 |
| **save** 216:15 | 225:7 227:3 | **scared** 122:7 | 270:16,22 |
| **saw** 66:5 98:2 | 228:21 232:4 | 123:22 | 303:18 340:22 |
| 135:22 246:1 | 239:2,5,17,19 | **schedule** 149:7 | 340:22 344:2 |
| 249:1 314:10 | 255:7,14,17,18 | 189:14,16 | 354:7,20 |
| 316:9 321:15 | 256:16,18 | **scheduling** | **secondhand** |
| 349:7 | 257:3,6 259:14 | 167:16,19 | 58:16 59:12,22 |
| **saying** 29:16 | 263:2 265:6 | **science** 6:15 | 60:3 202:1 |
| 49:3 66:22 | 271:1,11 | **scope** 20:8,19 | **secret** 194:9,15 |
| 69:16 76:2 | 272:11 273:19 | 79:2 112:21 | **secretive** 76:22 |
| 103:2,5,6 | 274:9 277:10 | 134:9 136:13 | 77:4 |
| 155:4 156:18 | 279:19 291:15 | 169:4,15 | **section** 17:12 |
| 198:21 201:13 | 293:12,22 | 188:22 244:15 | 27:2 41:2,4 |
| 202:5 204:13 | 302:9,22 | **scott** 2:8 3:2 | 94:14 112:5,6 |
| 204:14 207:13 | 313:10 316:16 | 357:5 | 114:11 137:9 |
| 219:1 232:12 | 316:17 318:22 | **screen** 12:21 | 138:8 139:11 |
| 241:6 246:10 | 319:19,20 | 13:12 75:15 | 140:6,12 141:9 |
| 294:9,10 | 321:3 325:5,14 | 114:9 119:19 | 141:22 226:15 |
| 297:20 303:21 | 329:13 333:1 | 120:5,6 214:8 | 226:22 239:7 |
| 315:18,22 | 333:17 334:14 | **se** 52:12 | 244:17 270:7 |
| 320:6 321:11 | 337:2,16,17 | **seal** 358:15 | 270:12 283:11 |
| 334:15 337:21 | | 359:21 | 283:12 291:10 |

298:18 299:2
306:8,9,15,17
306:19 309:19
316:2
**sections** 334:20
**secured** 16:10
16:11
**security** 7:22
71:13
**see** 10:11,17,21
16:14 19:19
35:7 49:21
50:1 66:16,17
66:20 67:1,3
70:9 79:21,22
82:1 83:3 88:7
91:8 92:8,13
92:14 93:2
106:13 111:2
112:4,6,22
113:1 138:17
138:18 141:19
144:9,17,19
145:13 152:2
166:20,21
168:2 171:22
172:8,9 176:3
176:8,10
179:15 180:8
180:11,14
181:5,7,11,21
182:3,15,16
183:18,19
185:4,8 198:14
198:15 199:2,3

199:12,13
202:11,13
203:16 216:18
227:14 228:2
232:16 233:16
233:16,17
235:15,17,19
236:3,4 237:5
237:8,17 248:3
248:16 257:7
257:17,18
258:4 261:6
263:3,4,17
267:5 270:3,4
270:7,20,21
271:2,3,9,17
279:18 283:10
283:10,15
284:4,5,8,13
285:13 291:20
291:21 292:7
292:14,15,19
293:10,15
294:2,3 296:1
296:14,15,19
296:20 297:11
298:6,15 305:2
307:2 308:8
309:9,12 310:1
312:6 320:18
320:19 321:5,6
321:13 322:1,2
323:4 328:11
330:6,8,10
331:9,10,22

332:1,8 333:5
333:12 334:8,9
334:12 336:13
336:19,20
337:4,5,19,20
341:3,8,14,19
341:20 343:3,4
**seeing** 15:5
16:16 179:7
181:3 182:8
349:17,21
**seek** 118:2,5
228:22
**seeking** 167:13
**seem** 75:10
171:14
**seen** 10:5 15:3
17:3 75:12,14
113:22 182:21
242:8,9 246:21
250:13 288:4
299:20 327:9
348:19 349:5,6
**send** 215:18
219:4 220:19
220:19 223:11
223:18 244:21
**sender** 240:9
**sending** 72:5
**senior** 7:2
71:12
**sense** 38:9 56:3
84:19 122:1
241:4 251:2

**sensitive** 92:1
**sensitivity**
91:12,17,20,21
92:5
**sent** 22:8 68:8
69:2 90:2,10
109:7
**sentence** 21:6
92:10,13
114:12 229:19
229:20,22
230:21 231:10
231:13,19
241:3 257:4,14
270:16 272:5
274:19 292:2,3
293:8 308:22
325:22 326:2
340:22 341:1
346:8
**separate** 228:5
255:3
**separately**
93:13 262:16
263:3
**september** 9:7
**series** 64:14
123:21 166:15
281:18 325:2
**serve** 9:13
**served** 11:4
46:6
**session** 103:20
109:13 154:11
244:2 288:12

325:6 326:20
331:21
**sessions** 154:16
154:18,21
155:14 158:5
338:2
**set** 83:19
165:11,11
167:11 186:15
**settled** 130:14
**settlement**
130:15,17
131:4
**seven** 41:8
42:21 59:21
60:8 212:15
257:10
**seventh** 109:3
**several** 23:12
62:3 102:21
136:12 139:7,8
159:1,3 189:9
189:15
REDACTED

**sexual** 82:13
83:21 95:21
109:21 110:4,5
110:7,15 111:5
111:6 124:20
125:2,13,19
126:3 127:12
127:21 128:3
128:17 136:17
136:22,22

137:6 156:8,8
157:11 172:18
186:22 190:14
190:16 199:8
208:4 209:5
222:14 224:1,3
226:22 238:21
244:8 250:22
253:13 259:8
265:3 268:22
281:19 301:7,7
307:8 342:21
353:18
**shade** 247:7
250:16 255:8
255:12,12
256:17
**shaded** 240:12
**shape** 277:13
**share** 13:12
21:8 44:4,10
191:11 211:1
245:4,22 246:3
246:22 253:4
**shared** 13:9
122:16 135:8
174:2 236:16
**sharing** 122:8
167:5
**sheet** 179:21
357:12 359:7
359:10,18
360:1
**shell** 200:13
201:4

**shep** 147:22
REDACTED

**shirt** 293:14
**shocked** 255:15
**short** 109:12
210:3
**shorter** 291:11
**shorthand**
216:20
**shot** 75:15
214:8
**shots** 119:20
120:5,6
**show** 102:8
140:21 246:13
247:8 298:1
327:19 346:21
347:2
**showed** 13:1
67:8 280:10
328:18
**showing** 331:12
**shown** 357:14
**shows** 181:6
235:16 236:1
247:5 251:19
**shuffle** 267:19
**side** 180:8
192:7 209:12
209:15 255:11
270:17,19

274:4,5,10
275:7,15 277:4
277:5 278:3,4
278:9,11
280:19 282:13
282:19 283:10
284:3,6,12
285:12,17,18
291:18 296:15
296:15
**sided** 209:11
**sidewalk** 151:3
151:5,6,10,17
224:17,22
225:3
**signature**
356:18 357:13
**signatures**
81:13
**signed** 16:12
154:2,5,7
308:12 358:13
359:18
**significant**
229:15 230:8
231:4 232:5
**signing** 357:17
**silent** 191:18
192:8,13
**similar** 172:6
175:11 227:5
227:21 229:11
230:6 235:2
328:17

Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 423 of 441 PageID #: 4035

| | | | |
|---|---|---|---|
| **similarly** | 91:20,20 92:15 | 183:8 185:9 | 267:16 268:17 |
| 353:16 354:1 | 94:2 95:16 | 187:10,18 | 269:14 270:1 |
| **simple** 157:8 | 96:2 98:9 99:4 | 190:8 191:6,17 | 275:21 276:15 |
| 303:8 | 99:11,12 100:1 | 192:8 193:20 | 276:20 277:3,7 |
| **simply** 117:2 | 102:6 103:7,17 | 195:2,9 196:6 | 277:14,19 |
| 158:19 204:15 | 104:13,19 | 198:1,5 199:17 | 279:5 281:3,6 |
| **sincerely** | 105:5 107:21 | 200:11 201:17 | 281:13,17 |
| 357:18 | 108:10,21 | 205:8 206:22 | 282:12,18,22 |
| **single** 125:16 | 109:19 111:8 | 208:22 209:2,4 | 283:5,11,18 |
| 125:17 128:3 | 112:3 114:11 | 210:4,10 | 284:8 285:20 |
| 218:6 305:13 | 115:16 120:21 | 211:14,19 | 285:22 286:3 |
| **sir** 5:16 6:14 | 120:22 124:13 | 213:22 214:22 | 287:11,19 |
| 7:1,6,18 8:4,19 | 125:3,17 127:6 | 215:21 218:5 | 288:2,6,22 |
| 9:12 10:4,10 | 128:1,21 130:4 | 221:5 222:18 | 289:10 290:2 |
| 10:19 12:1,11 | 130:9 131:21 | 223:7 224:7,10 | 290:20 291:13 |
| 12:18 13:18 | 133:12 134:18 | 227:2,13,14 | 291:22 293:3 |
| 14:7,13 15:17 | 134:22 135:4 | 228:1 230:2 | 293:20 294:5 |
| 17:2,19 31:7 | 137:16 138:4 | 232:11 233:2,3 | 294:18,21 |
| 32:13 34:3 | 139:11,20 | 233:6 234:5,7 | 295:12 296:17 |
| 35:11 37:9,20 | 140:15 141:2,8 | 234:14 235:6 | 297:20 300:12 |
| 43:22 44:16 | 142:10 143:5 | 238:5 240:1,20 | 302:2,12 |
| 45:4,13 46:11 | 143:11,21 | 242:2 244:6 | 303:22 304:6,9 |
| 46:18 47:4,15 | 144:7 145:16 | 245:1,20,22 | 307:22 309:2 |
| 48:19 50:21 | 146:9 148:5,16 | 247:4,7,10,16 | 310:13,19 |
| 51:1,12 53:4 | 150:16 153:16 | 247:19 248:2,7 | 311:5,14,19 |
| 54:11 56:3 | 156:5 158:1,15 | 248:13,16 | 313:14 314:16 |
| 58:21 59:10 | 158:17 159:5 | 250:12 251:10 | 315:6,15 |
| 60:7,22 62:7 | 161:13 162:17 | 251:12,20 | 316:10 318:13 |
| 63:5 66:10,20 | 163:1 164:12 | 252:11 254:16 | 320:12 322:8 |
| 67:16 70:21 | 166:13,15 | 255:8 257:11 | 323:7 324:20 |
| 73:1,7 74:20 | 177:19 178:2 | 258:6,13,21 | 325:4 327:19 |
| 75:21 76:15 | 178:15 179:3,4 | 259:12 260:10 | 328:4 334:10 |
| 78:22 79:5,9 | 179:13 180:2 | 260:19 262:5 | 335:16 336:3 |
| 82:7 86:6,11 | 180:10,18 | 262:13 263:12 | 336:22 337:16 |
| 88:2,12 90:12 | 181:13 182:9 | 265:4,10 | 339:17 340:20 |

Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 424 of 441 PageID #: 4036

340:21 341:8
342:12 343:9
347:5 348:5
349:1 350:15
357:9
**sit** 36:20 44:19
46:17 47:1
61:21 89:20
90:21 113:2
141:12 171:9
255:7,12
256:17 262:15
263:3,6,16
264:8 266:11
353:5
**sitting** 124:4
170:16 214:16
225:15 263:20
264:6,20 268:4
270:3 285:17
285:18
**six** 7:12 123:9
123:10,11
124:12 133:15
184:21 185:12
191:13,19
290:3 304:2
**sixteen** 331:5
**sixth** 178:12,18
184:14
**skill** 165:11,11
**skills** 165:8
**slander** 85:3,7
85:9 92:11,19
93:5

**slid** 265:16,17
266:3,21
285:11
**slide** 267:17,19
**slides** 265:7
**slouched** 270:3
**slowly** 220:9
**software**
116:20 118:19
118:22 119:12
119:13
**solely** 230:22
253:11
**solution** 37:6
**solutions** 1:7
1:14,20 4:7
6:10 7:3 20:20
25:13 32:11
37:17 38:21
82:16 83:19
84:8 152:13
163:20 254:5
357:1 360:1
**somebody**
165:5 193:21
223:9 242:12
339:14
**somebody's**
50:21 54:15
**sorry** 14:5 16:2
24:17 26:16,21
28:9 32:21
35:3 53:18
70:4 77:20
83:8 88:20

117:7 123:2
126:22 127:19
131:10 185:10
191:8 203:4
212:6 256:3
270:12 281:22
289:20 323:12
342:1
**sort** 107:12
**sought** 35:18
36:7
**sound** 88:6
**sounds** 70:17
84:13 139:21
**source** 50:7
**south** 8:16
146:19
**southern** 1:6,8
2:12 5:5 6:9,11
21:6 25:14,20
26:1 80:22
83:21 163:20
333:4 342:21
353:9,19 357:6
358:3 359:3
**sow** 159:12
**space** 131:1
**speak** 13:21
36:12,21 71:19
94:16 95:19
117:3 121:13
121:16 137:2
138:1 143:10
149:3,18
150:18 152:14

152:19 154:3
168:5 194:3
226:8 229:2
244:13 289:17
351:9
**speaking** 19:8
19:10,19 69:9
75:8 122:2
148:15 173:9
293:20
**speaks** 81:10
220:2 236:9
241:15 256:2
263:8 271:15
272:3 274:8,18
317:13
**special** 9:9
**specific** 39:12
78:3 83:5 88:8
122:19 142:22
185:5 188:20
190:19 191:12
193:2 207:14
217:13 218:2
221:3 222:14
223:13 227:9
230:16,20
250:22 252:8
258:2 261:17
264:17 269:3
**specifically**
17:13 26:1
65:12 76:8
78:15 84:14
85:5,6 94:5,8

98:4 107:6,9
168:1 183:15
201:18 244:20
247:6 251:13
252:6 258:9
271:11 272:10
273:19 275:5
288:7 298:9
323:8,13,20
331:16 346:12
348:5,16
**specificity**
261:20 262:20
**specifics** 187:6
192:17 221:8
261:19
**speculating**
286:3,5
**speculation**
267:12 281:8
312:21
**spend** 23:10
120:9
**spent** 29:5
120:12 275:21
**spoke** 102:13
103:6 121:11
122:6 174:18
194:4 197:16
197:17 205:11
206:3 210:17
226:13 241:22
**spoken** 20:9
158:16 173:10
174:8,11

200:14,15
201:3,21
245:15 294:12
304:15 305:12
305:13 339:12
**spouse** 52:2
**spring** 156:14
157:2
**st** 6:18
**staff** 117:15
239:4
**stamp** 347:3
**stand** 300:19
305:15
**standpoint**
44:17 209:11
**stands** 56:7
**start** 5:9 35:11
44:1 74:7
100:6 126:20
198:8 212:9
245:20 247:11
254:17
**started** 45:5
62:8 219:10,10
226:15,21
236:11,11,11
**starts** 237:18
**state** 5:16
126:17 185:15
205:3 233:22
259:3 301:2
358:10 359:15
**stated** 61:1
108:11 148:14

222:19 224:11
227:15 228:20
228:22 246:1
256:6 261:12
308:7 319:8
320:15 325:9
325:14 332:6
339:8
**statement**
10:19 31:6
34:7,22 52:6
61:5 93:19
94:9 95:10,22
182:17 183:21
185:5 200:5,11
229:3,18 230:5
230:12 248:1
249:12 279:22
299:16 312:5
358:13,14
359:19,19
**statements**
40:5 88:16
95:9 206:13
**states** 1:1
126:17 302:3
303:20 304:6
318:14
**stating** 226:18
255:7 304:8
332:10 334:11
**status** 180:22
**stay** 250:20
341:5,6,6,7,12

**stenotypy**
356:7
**step** 186:5
189:6 332:17
**steps** 61:18,18
77:5 105:19
108:2,12,21
172:12 174:18
175:3 186:9
244:7 259:22
260:13 267:19
305:11 345:2,4
345:8 346:1,2
346:5
**steve** 136:15
**steven** 24:6
348:12
**stiff** 294:1
297:1
**stipulate**
221:15,17
**stood** 191:17
192:8,13
224:17 294:1
296:22
**stop** 159:1
292:18 293:1
295:9 297:1,5
297:13,19
298:10,13,20
299:5,7 341:11
**storey** 323:10
**stories** 84:12,16
91:6 92:22

| story 4:11 93:1 | strongly 33:16 | 39:5 45:4 52:7 | 252:2 256:16 |
|---|---|---|---|
| 192:8 209:12 | subject 19:2 | 56:13 61:15 | 265:7,16 |
| 209:15 224:15 | 168:2 233:11 | 65:13 70:19 | 293:22 296:17 |
| 232:13 254:21 | subscribed | 71:4 72:11 | 296:21 299:13 |
| 254:22 255:2,6 | 358:10 359:14 | 75:11 88:4 | 305:9 308:16 |
| 258:2 259:13 | 360:21 | 89:17 108:3,12 | 312:11 314:9 |
| 265:8,17 | subsequent | 108:22 119:5 | 315:16 316:7 |
| 271:11 272:11 | 158:6 159:9,17 | 121:3 130:12 | 323:5 |
| 273:1 274:3 | 175:7 346:6 | 155:3 165:12 | survivor's |
| 293:17 302:2,8 | 352:9 | 170:15 200:18 | 249:12 253:12 |
| 302:21 303:20 | subset 168:10 | 200:20,22 | survivors 13:3 |
| 304:6 309:3 | substance | 207:5 209:6 | 127:3 136:22 |
| 316:13 320:14 | 241:1 | 221:22 222:6 | 239:3 |
| 323:17 324:5 | substantive | 245:18 260:13 | swear 5:8 |
| 324:11,15 | 122:16 | 262:12 281:2 | swipe 106:16 |
| 334:22 335:17 | sudden 291:15 | 299:14 302:15 | sworn 5:13 |
| 336:2 337:1,17 | suffered 239:3 | 303:9 310:2 | 161:8 356:5 |
| strangling | suggest 51:1 | 320:9,10 | 358:10,13 |
| 271:1 292:17 | 318:10 | 321:22 329:15 | 359:14,18 |
| stream 121:5 | suggests 341:16 | 330:13,15 | 360:21 |
| streams 119:21 | suicide 342:5 | 331:8 344:19 | |
| 120:2 | suite 1:15 2:5 | 345:2 | **t** |
| street 1:14,20 | 2:21 357:2 | surprised | |
| 2:4 | sun 256:5 | 152:2 | t 4:1,1 161:1 |
| strike 13:18 | superior 357:1 | survived | tab 9:22 |
| 17:5 26:12 | supply 40:14 | 238:21 | table 270:18 |
| 31:1 34:18 | support 20:20 | survivor 35:19 | 271:8,13 |
| 77:15 94:3 | 41:22 288:8 | 35:19 36:3,9 | 273:21 274:14 |
| 103:18 212:8 | supposed | 43:2 137:1 | 275:6,14 |
| 338:20 | 134:20 | 208:4 209:5 | 276:11,12 |
| string 75:10 | sure 13:7,20 | 224:3 227:6,22 | 278:14,15 |
| 87:21 89:14 | 16:1 19:11 | 229:12 230:7 | 279:20 280:2 |
| 247:2 250:13 | 24:4 28:1 | 232:6 237:7,10 | 280:17,20 |
| strings 244:11 | 29:15,20 34:15 | 238:10,12,14 | 281:1,2,5,6,10 |
| | 34:16 35:12,19 | 238:16 248:11 | 281:14 282:6 |
| | | | 282:12,13,18 |
| | | | 284:8,11,21,22 |

285:10,17
290:16
**tables**   276:10
**take**   9:22 23:9
27:10 33:13
43:19 61:18,18
87:6 105:19
108:21 109:11
111:9 119:7
146:14 151:11
152:22 153:4
159:20 163:17
171:6 179:2
187:9 198:6
209:12 220:8
220:12 233:3
234:6,8 237:16
244:7 260:13
318:9 324:21
326:7 327:2,11
345:2,4
**taken**   82:12
108:11 109:15
127:2 132:12
160:2 238:1,5
260:14 285:9
305:13,14
326:5 327:13
356:3,7,12
**talk**   31:21 51:9
52:18 53:2,4
53:17 67:22
68:21 71:15
75:21 84:8
107:21 127:20

128:16 131:13
137:15 148:14
151:10 157:15
167:13,17,20
190:21 192:15
192:16 194:6
197:14,22
206:10 210:20
223:7 226:5
244:6 269:12
284:17 287:11
305:17 307:14
339:5 340:2
**talked**   18:6
62:8 124:19
217:17 218:16
251:16 254:7,8
307:10 339:22
**talking**   41:1
42:4 70:3
72:11 84:21
91:10,11
113:18 155:10
191:14 233:14
243:12 346:4,5
351:15
**talks**   269:10
**tape**   103:20
104:2,5,7
153:12,18
155:19 156:1,8
156:20 157:12
157:22 158:4
159:13 244:1

**taped**   155:7
**tapes**   157:2
**task**   25:15
26:13 27:3
342:21 353:18
**taylor**   2:13
**team**   16:13
17:10,18,18
22:10 32:7
135:9 139:8
170:15 343:14
**technical**   43:20
117:15
**technology**
310:21
**telephonic**
176:4 177:2
**tell**   6:13 29:4
29:11 34:17
38:6 41:9 44:9
44:11 49:17
63:2,5 73:3
79:3 84:20
86:6 122:12,14
124:4,22 125:5
125:18 153:12
153:16,20
154:5,9,12
157:22 162:9
163:5,18
164:12 174:6
180:19 190:10
194:17 195:1
196:4 210:9
214:22 239:22

243:15,17
244:7,9,16,20
245:1,8,12,13
245:16 251:7
274:19 290:3
291:5 302:14
303:14 319:1
328:7,15 336:2
339:20 344:16
345:7 355:2
**telling**   51:14
71:11 252:5
265:7,16 324:5
345:1 346:3
348:15 349:4
**template**   20:15
20:17,22 21:10
21:12 25:3,8
79:15 134:19
248:18
**templates**   25:9
25:10
**ten**   109:12
120:13 151:11
239:19
**tennessee**   1:1
2:14,21
**term**   9:17
18:15,16 31:19
57:16,17,21,21
58:8 60:2 77:4
77:10 80:8
84:2 111:4
129:15 159:13
214:20 237:7

www.veritext.com                                                                 888-391-3376

269:3
**termed** 100:14
**terminology**
237:2
**terms** 39:6
50:15 53:5
69:7,7 76:22
77:14,16 85:2
110:11 114:12
114:18 140:15
154:10 169:20
190:22 216:5
230:13 232:3
259:4 260:12
268:17 269:3
269:15 282:3
283:1,5 284:20
306:20 309:2
312:18
**testified** 5:13
14:22 87:11
90:1,6 109:20
115:16 139:22
140:8 161:9
352:2,21
**testify** 104:19
276:18 277:11
**testifying** 59:3
59:6 93:15
110:21 207:11
**testimony**
21:15 22:16
23:11 29:21
30:1 33:3
39:19 43:15

96:11 101:3
104:14 110:4
111:1 117:9
127:6,19 128:7
133:8 139:3
142:12 158:3
169:12 177:11
195:1,11,11
208:3 209:18
213:14 243:8
245:10 252:19
253:20 259:18
260:6 269:7,11
280:5 290:7
311:11 316:22
317:5 320:9
331:13 335:21
338:18 349:16
349:17 350:8
356:4,6,9
358:6,7 359:6
359:9,12
**text** 4:9,9,11,16
4:19,19,21
22:2,4,7,9,14
22:18 68:2,6,8
68:14,18 69:15
70:1,7,13 72:5
72:6,13 73:8
73:18 75:4,16
106:4,10,16,19
107:13 115:18
115:21 116:2
116:15,16,20
117:2,5,8,14

118:3,11,15,18
119:16,20
120:1,4,5,7,10
120:14 121:5
121:19 124:3
213:22 214:11
215:1 216:18
216:19 218:18
219:17 221:5
239:15,21
241:21 247:2,6
247:12 249:18
250:7,8,13
287:12,15
288:2 289:15
289:18,20
328:17 345:17
347:8,11,17
348:9,21 350:4
352:8
**texted** 74:16
**texting** 68:7
72:17 74:7,13
74:15
**texts** 106:11
214:8 343:22
352:2
**thailand** 8:15
**thank** 6:3 13:13
13:16 26:20
48:9 69:22
71:6 86:8
131:18 148:5
222:5 232:3
250:12 303:17

308:5 318:20
333:1 334:14
348:14 352:13
355:8
**thanked** 334:18
**thanks** 198:21
**therapy** 4:10
**thereto** 356:15
**thing** 56:7
133:13,14,17
148:20 281:13
298:5
**things** 21:19,21
45:5 62:8
87:15 133:13
192:15 284:17
290:5 293:20
352:1,21
**think** 22:2 37:3
44:7 60:2 65:3
67:17,20 80:8
84:6 90:1,6
94:13 106:22
107:17 121:21
147:6,7 174:20
197:3 198:22
200:14 222:6
223:3 227:1
229:21 237:12
240:5,13 241:8
241:15 251:18
252:1 267:9
305:9 349:16
353:1

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 429 of 441 PageID #: 4041

| | | | |
|---|---|---|---|
| **thinking** 292:11 | 129:5 177:4 192:5,10 | 63:1 64:7 67:11 72:15 | 201:21 205:21 206:18 208:9 |
| **thinks** 197:14 210:20 | 194:10 195:2 195:10 196:7 | 75:22 76:1,20 77:7,21 78:19 | 210:14,15,17 211:20 212:3 |
| **third** 2:9 24:5 | 196:13,22 | 82:4,7,13,20 | 215:7 216:15 |
| 31:20,22 32:1 | 200:2,16 201:3 | 89:20 93:12 | 217:22 218:7 |
| 56:9,10,12 | 202:19 203:2,5 | 98:21 99:2,12 | 218:15,21 |
| 58:2 95:6 | 203:9,15 | 100:7,18,22 | 219:11,15 |
| 111:10 203:12 | 204:20 205:9 | 101:9,14 103:7 | 220:7 221:11 |
| 252:20 293:7 | 205:18,19,20 | 104:19 106:19 | 222:21 226:13 |
| 320:14 341:1 | 206:3 209:9 | 109:3,3 113:19 | 226:17,20,20 |
| **thirty** 357:16 | 215:14,21 | 114:17 120:9 | 231:22 234:11 |
| **thought** 43:13 | 216:2,8 218:17 | 121:13 122:12 | 234:12 246:2 |
| 121:20 122:3 | 219:6 222:8 | 122:20 123:1 | 248:21 249:1 |
| 129:9 203:4 | 223:15 245:15 | 123:12,19,21 | 252:20 254:8 |
| 224:11 328:18 | 265:13 276:10 | 124:5,12 | 257:6,16 |
| 332:18 | 286:11 288:16 | 128:13 130:1 | 259:14 260:15 |
| **thousand** | 289:1,3,14 | 133:19,22 | 260:22 271:20 |
| 106:15 | 293:7 297:22 | 134:8,15,21 | 283:16 285:3 |
| **thousands** | 301:5 302:5 | 148:18 149:21 | 286:12 289:10 |
| 46:11,14 | 304:7 308:8 | 155:4,6 159:6 | 311:8 319:13 |
| **thread** 87:1 | 336:18 | 161:20 165:21 | 321:15 332:19 |
| **three** 13:7 | **thursday** 23:20 | 166:3,7 167:13 | 334:17 344:1,2 |
| 36:15 43:5,8 | 23:22 24:5,17 | 167:17,19 | 344:3,19,19 |
| 47:5,17 48:15 | 73:15 329:11 | 168:16 169:7 | 354:10,16,20 |
| 48:18 49:3,4 | 350:11 | 172:4 173:7,11 | 355:2 |
| 49:18 58:14 | **time** 1:13 5:7 | 173:17,19 | **timeline** 324:12 |
| 59:20,21 60:8 | 8:13 9:8 13:11 | 175:5 176:10 | 324:12 |
| 61:1,2,7,9 | 13:12 15:11,14 | 179:8 180:9 | **times** 19:3 34:4 |
| 62:12 64:16 | 18:4 20:15 | 181:3 182:7 | 36:15 62:3,11 |
| 68:15 85:17 | 23:10,13 27:22 | 184:9,10,22 | 62:21 63:2,4,6 |
| 94:9,10,11,14 | 36:20 37:2 | 185:12,14,17 | 63:7,11,13 |
| 94:20 95:13 | 41:21 43:19 | 187:4,9 189:4 | 64:4,21 109:9 |
| 96:17,20,22 | 46:6 57:12 | 192:11 197:13 | 129:5,5 159:1 |
| 97:18,19 129:5 | 62:18,19,20 | 200:6 201:10 | 159:3 189:7,9 |

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 430 of 441 PageID #: 4042

192:10 222:7
225:14 286:11
287:2,6,6,7,8
297:22 302:5
304:7 308:8
322:19 339:22
344:7
**timing** 220:7
**title** 141:4
272:22 273:4,9
**today** 21:15
23:11 24:20
27:7 29:18
30:2 36:21
46:17 59:6
61:21 62:5
89:20 90:21
102:8 113:20
127:19 137:15
138:1 141:12
170:17 171:9
215:18 219:3
220:18 223:10
246:2 249:2
350:3 353:5,11
355:11
**today's** 5:2
**together**
184:22 185:13
191:20 203:14
235:14
**told** 36:9 46:14
49:16,22 51:13
52:1 55:4
84:17 96:20

97:7 100:14
119:13,16
128:15 129:11
133:13 142:14
154:1 190:20
201:19 202:7
205:10 211:2
221:9 224:13
225:5 231:1
252:11,13
294:7 324:15
327:9 339:18
341:11,12,21
346:7 351:17
**tomorrow**
202:12,14
**tongring** 18:9
19:3,6 22:11
84:3 116:4
121:6 166:18
167:14 168:13
173:21 214:1
214:13
**tongring's**
18:11 90:3
**tongue** 292:17
**took** 27:14
30:11 77:5
96:5 98:13
102:19 108:2
119:15 122:11
124:3 125:12
126:18 147:10
150:3 153:6,9
176:4 186:5

206:20 241:5
241:21 255:16
259:22 260:19
271:5 285:14
327:7 348:20
**top** 111:14
173:15 177:17
254:17 272:14
305:20 307:16
308:1 309:4
310:3
**topic** 70:2 75:7
191:18 242:12
**topics** 77:3
**tortious** 112:20
113:15
**totally** 13:2
**touch** 149:8
354:6
**touches** 261:18
**touching**
122:11 251:14
**towards** 305:11
**tower** 2:18
**tpmblaw.com**
2:15
**trademark**
7:22
**trail** 4:20 76:4
76:9 77:2,6,11
108:4,13,22
343:2,6 344:20
345:2,6,8,14,19
346:12

**training** 9:6
**transcribed**
358:7
**transcript** 4:22
357:10,11
358:5,12 359:5
359:11,17
**transparency**
111:15
**trauma** 95:20
342:7
**travel** 280:18
**traveled** 149:19
**tried** 324:4
**trip** 147:9
**true** 14:7 42:1
97:11 143:22
182:17 183:11
229:4,13 265:4
277:1 278:1
294:20 356:9
**trust** 56:6
144:14
**trustees** 136:20
**truth** 39:2
128:1,2,22
346:3
**truthful** 144:11
305:4
**truthfulness**
30:13 283:4
**try** 189:16
221:11 226:5
302:10 303:1
303:21 304:8

309:5,13

**trying** 167:11
186:15 237:12
245:19 293:13
310:11,14
343:8

**tuesday** 23:21
24:6,10,12,16
73:16 313:4,10
314:9 316:7,14
350:12

**turn** 43:11
112:3 254:16
262:7 267:20
283:8 336:16

**turned** 261:20

**twice** 110:3
127:8

**two** 7:12 12:10
13:7 18:10
24:2 36:15
42:21 47:2
63:4 64:2
79:10 96:9,16
96:20,22 97:11
110:7 111:7
123:6,9,10,11
124:12 133:15
142:9 144:16
146:14,18
156:19 176:3
176:21 177:4,6
177:17,18
196:10,19
200:15 201:3

201:15,20
202:2 203:1,5
203:8,14
205:13,19
206:4 207:22
209:9 222:7
245:15 263:5
267:19 269:18
288:16 296:15
306:7 318:6
328:13,14
340:8

**type** 69:8 71:18
116:19 249:22
323:9,16,17

**typed** 147:2,2
190:6 324:12

**typewriting**
356:8

**typewritten**
147:7

**u**

**uh** 176:19
293:11

**ultimate** 33:22
34:14

**ultimately**
36:16 37:5,17
40:11,17
173:13 253:16
312:10 323:4

**ultimatums**
210:14

**unable** 199:9
200:7,7 204:5

**unappropriate**
101:8

**unaware**
246:19

**uncovered**
124:15 126:4

**under** 11:22
17:12 34:17
67:10 79:12
83:4 94:5
141:5 144:11
169:14 176:3
256:4 259:8
277:20 301:17
348:7 356:8

**undergone**
248:12

**underneath**
182:9

**underscore**
31:14

**understand** 6:7
13:20 16:1,4
17:6 18:18
20:4 22:21
25:18 27:9
29:7,20,22
30:2,4,7,9,18
37:21 38:1,3,6
52:5,9 53:10
54:15,18 56:22
57:21 58:15
60:6 86:21
88:5 91:10,12
93:8 96:21

104:5 106:22
113:3,8,10,11
114:4,16 134:1
138:7,11
140:11 155:3
157:7 232:8
236:6 245:19
275:5 276:20
278:21 280:16
286:2 300:21
306:18 314:15
321:7 322:13
323:11,13
336:8 337:6
341:21 344:21
349:3

**understanding**
20:2 26:15
27:4,6,17
39:17 54:12
110:10 111:18
114:12 296:5
321:11 337:9

**understood**
20:2 25:13
30:11,12 34:4
49:20 50:16
90:8 98:19
100:7,21 101:5
101:11,13
114:20 119:5
124:6 178:4
249:4 323:8
353:7,18 354:3

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 432 of 441 PageID #: 4044

**undertake**
61:15
**undivided**
324:6
**unfair** 312:18
**unfairness**
307:3
**unilateral**
266:2
**uninvited**
149:14,17
150:2
**unique** 168:18
168:22
**united** 1:1
**university** 6:16
6:18 9:2,5
**unreliability**
51:11,14 52:13
52:19,22 53:3
53:7
**unreliable** 52:8
**unsupported**
40:8,15
**untrue** 40:5
**untruthful** 39:2
103:6
**unvarnished**
128:1,2,22
**unwanted**
110:7 111:6
301:7
**unwilling** 44:10
**upload** 116:20
117:14

**uploaded**
117:11
**upward** 214:19
**upwards**
120:13
**use** 13:4 37:20
39:14 57:16,20
60:12 61:19
75:20 84:2
96:21 111:4
119:11 237:7
**used** 58:9 60:2
68:3 69:21
70:14 77:11
109:20 110:3
158:10 237:3
308:15 323:9
323:16,16
**using** 110:1
118:19 159:13
219:11
**utilize** 116:19
**utilized** 25:4
49:12,14 158:9

**v**

**v** 182:1 357:6
358:3 359:3
**validate** 84:11
84:15,18 91:6
**validated** 93:12
93:18
**validation** 92:7
92:22 94:2,5
95:12,16 96:2
96:14

**validations**
96:11 262:4
**value** 159:7,12
159:15
**variety** 51:6,7
**various** 74:14
143:3 339:22
**varying** 49:18
**veracity** 183:21
184:4,5
**verify** 312:6,7
**veritext** 1:14,20
357:1,7 360:1
**veritext.com.**
357:15
**versed** 180:1
**version** 253:17
254:1 255:19
307:12 347:2
**versions** 132:10
236:17
**versus** 5:5
266:15
**victim** 52:3
128:17 260:1
**victim's** 201:18
202:7
**victims** 127:20
190:17
**video** 5:3
**videographer**
5:2 109:14,16
159:21 161:3
237:21 238:2
327:12,14

355:10
**videotape** 30:5
**view** 91:5
102:15
**viewed** 102:22
323:5
**views** 101:21
**violently**
291:16 293:14
**virginia** 2:18
**virtual** 347:2
**voice** 155:2
**volume** 22:14
43:11,17
**volunteered**
189:3
**volunteers**
239:5
**vs** 1:5

**w**

**wait** 258:21
**waited** 224:17
**waiting** 151:21
224:21
**waived** 357:17
**waiver** 154:2,5
154:7,11
**walk** 151:18
267:17 281:1
315:19
**walked** 151:22
152:5 285:16
**want** 13:20
19:11 25:11
29:16,17,22

Case 3:23-cv-00243    Document 219-5    Filed 07/03/24    Page 433 of 441 PageID #: 4045

30:18 34:15,16
34:19 35:11
37:8 39:14,22
40:1,4,8,10,14
40:19 41:14,16
43:7,7 47:12
48:4 52:7
55:13 62:7
65:12 70:9
78:22 80:17
96:21 109:19
112:3 113:12
118:10 119:2
122:19 123:18
124:22 127:10
143:4,5 161:13
168:9 196:6
197:22 198:9
199:6,17
205:16 221:21
223:18 224:2
230:1 235:7,9
235:11,17
239:8 250:20
262:3 270:16
277:15,16,19
277:20 286:18
293:4 298:1
302:5 303:9
307:22 311:7
314:16 316:2
328:17,20
333:1,3 334:14
335:21 345:18
352:20

**wanted** 29:18
52:9 56:10
71:12 84:15
87:16 118:2
149:3 152:14
194:3 216:7
219:19 223:9
223:11 226:8
249:22 251:3,8
324:6 335:18
336:2
**wanting** 208:19
**wants** 250:19
**wase** 251:12
**washington**
1:15,21 5:6 7:3
149:20
**watch** 242:6
**water** 250:20
351:9
**way** 37:11
39:15 69:14
72:7 98:19
103:7 153:17
155:20 195:10
198:18 220:10
220:14 230:3
248:9 277:13
280:6 293:8
335:6 336:18
342:16
**we've** 60:22
102:7 126:22
195:3,15 223:1
237:19 247:3

290:17 302:2
325:1 334:19
344:6 354:6
**website** 45:18
45:21 46:12
**wednesday**
201:10
**week** 23:15,21
24:16,17 64:14
73:15,16 83:14
320:1 350:14
**weighed** 258:20
**weight** 59:16
280:13 323:1
**welcome**
109:19
**wellington** 8:16
**went** 36:17
37:18 98:9
143:11 146:11
149:13 150:1
253:17 292:17
292:22 297:5
297:12,17,18
298:9,12 299:6
299:14 324:13
**west** 2:18
**whatsoever**
26:10 301:15
307:13
**whispered**
222:19
**white** 140:15
259:12 263:2

**wide** 294:1
**wife** 99:14
100:9 101:1
103:1,21 104:4
124:1 127:15
153:20 210:21
237:4,5,9,11
238:8,8 333:10
333:15,17
341:11
**willing** 44:3
137:2 150:18
**window** 211:20
**wished** 84:7
**withdrawing**
326:11
**withheld**
289:15
**withhold**
289:15 351:5,8
**withholding**
61:2 289:1
**witness** 5:9,12
11:9 12:16
16:1 18:14
19:14 20:19
21:5 26:6,21
27:14 28:13,20
29:17 32:6
33:11,14 34:6
34:12,13,22
35:3,15,17
36:7,16 37:5
37:15 38:13,19
38:20 39:1,12

Veritext Legal Solutions
www.veritext.com                                         888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 434 of 441 PageID #: 4046

40:1,5,8,14,17
41:3,5,19
44:13 45:10,15
46:2 47:8 48:3
49:16,17 50:11
51:4,19 53:15
53:18 54:20
55:8,9,10,18
56:9,10,12
57:5,13 58:1,8
60:13 62:4,18
63:18 64:12
65:6,20 67:18
67:21 68:3,8
68:11 69:9,14
70:9 71:17,22
72:10 73:22
74:11 76:13,18
77:10,14,17,18
78:1,2,4,9
81:12 85:5
87:2,21 88:16
90:1,19 91:17
92:18 93:18
94:15 95:1,4,6
96:16,20,22
97:3,4,7,7,11
97:16,18,19,22
99:6 100:2,13
101:5,19 102:3
105:7,15 107:6
108:7,16 109:4
111:2 112:1,16
113:8,19
116:11 119:5

122:6 125:12
126:15 128:8
128:15 129:6
129:14 130:7
131:3 132:8,13
132:15,22
133:4,10 134:4
135:7 136:5
137:22 138:17
139:4,15 141:4
141:17 142:6
142:14,21
145:2,8 149:1
152:8 154:1,15
156:12 157:1
157:15 158:4
159:2,7 162:2
168:22 169:13
170:4 171:1,14
173:10 176:2
177:13 180:6
181:11,16,19
183:1 184:4
186:1 187:13
187:22 188:5
188:12,15
189:11 192:1,3
192:12,21
194:14 195:17
196:7,10,13,19
196:22 199:22
200:15,15
201:1,3,11,15
201:20 202:19
203:1,2,5,8,9

203:12,14,14
205:2,3,12,18
206:2,17 207:3
207:13,22
208:4,13 209:2
209:8,19 210:7
211:12 213:8
213:15 215:4
216:12 217:11
218:1,11
219:16 220:4
222:13 223:1,4
223:22 229:7
231:9,16 232:1
236:10 242:20
243:9 245:15
245:15 246:19
248:22 249:11
252:1,17
253:11 254:5
256:3 257:11
260:8 261:14
264:2 266:5,17
267:13 268:4
268:14,21
270:14 271:17
274:9,19
275:19 277:1
280:6 281:9,22
282:9 285:4
286:10,14
287:21 288:16
291:3 295:5
296:1,10
298:19 300:18

301:5 304:17
305:9 307:2
308:21 310:22
311:12 313:1
315:2,13 317:1
317:6,15 318:2
318:9 319:13
320:10,22
321:13 326:4
326:20 330:16
330:22 335:5
335:13,22
336:5 337:9
338:15 340:7
340:18 342:3
343:12 344:13
346:17 349:10
351:2 356:4,6
356:10 357:8
357:10 358:1,4
358:11 359:1,4
359:15
**witness's** 21:2
21:2 33:16
290:7
**witnesses** 13:3
13:4 22:11,12
33:12 34:8
39:8 40:20
41:5,11,13,18
41:22 42:2,3
42:12,21 43:4
43:5,8 44:4,11
44:14,21 47:10
47:17 48:15,19

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-5 Filed 07/03/24 Page 435 of 441 PageID #: 4047

49:4,18 51:5
58:14 59:21
60:8 61:1,2,8,9
62:9,12 67:18
68:15,22 70:20
83:20 84:21
94:9,11,12,20
95:13 124:19
137:2 194:11
195:10 196:5,7
197:9,14 200:2
206:3 208:1
210:19 219:14
251:18 288:20
289:16
**witness'**   357:13

REDACTED

| | | | |
|---|---|---|---|
| | 205:17 206:21 | 35:14 38:18 | 89:12 107:8 |
| | 218:20 219:6 | 39:22 44:5 | 108:10 122:2 |
| | 219:11 220:6 | 50:15 69:8 | 122:16 124:22 |
| | 220:14 221:12 | 76:3,10 98:19 | 163:9 198:19 |
| | 221:18 222:1,3 | 102:7 108:4,20 | 213:22 216:7 |
| **woman** 282:4 | 227:8,13,14,17 | 111:19 114:4,5 | 221:12 228:16 |
| **wonder** 85:8 | 227:18,19 | 114:17,20 | 232:11,18 |
| **wondering** | 228:1,2,6,15,17 | 115:5,6,8 | 241:2 248:4 |
| 91:5 92:11 | 231:3,6,8,9 | 123:4 124:16 | 249:21 295:15 |
| 93:5 | 240:3 241:6,7 | 134:7,22 138:5 | 300:5 301:1,19 |
| **wood** 18:10 | 247:17 251:2 | 149:7 169:20 | 337:22 338:10 |
| 19:4 22:11 | 253:1 261:17 | 170:14 197:6 | 342:5,13 |
| 166:18,19 | 265:17,19,20 | 201:6 260:11 | 347:11,15,17 |
| 167:14 168:14 | 265:21 269:4 | 272:8 278:12 | **writer** 198:17 |
| 173:21 214:12 | 273:22 274:18 | 279:6,11 | 245:14 |
| **woodstock** | 275:9 279:1 | 280:11 305:18 | **writing** 76:1 |
| 214:15 225:6,8 | 291:20,21 | 305:19 315:8 | 206:21 214:14 |
| 225:16 319:1 | 293:2,18 | 323:8 328:22 | 227:8,19 228:6 |
| 319:21,22 | 294:12 298:12 | 333:4 343:9 | 298:8 309:12 |
| 320:7 | 298:22 299:6,7 | 344:17 353:20 | 322:14 325:15 |
| **word** 16:11 | 300:14 303:12 | **worked** 259:21 | 338:13 348:20 |
| 20:9 35:18 | 304:12,15,16 | **working** 25:18 | **writings** 95:18 |
| 53:19 60:12 | 304:22 305:2 | 113:14 166:7 | **written** 20:12 |
| 73:21 144:14 | 305:12 308:10 | 335:16 | 98:4 114:14 |
| 174:9,12 191:3 | 308:12,15 | **world** 44:17 | 184:9 205:17 |
| 191:18 209:15 | 311:18 321:13 | 45:7,12,12,16 | 216:6 219:20 |
| 222:19,19 | 321:15 337:22 | 118:10 209:3 | 229:8 248:4 |
| 240:21 241:10 | 338:22 339:15 | 260:12 | 264:3 266:12 |
| 268:16 294:16 | 339:17 341:8 | **worried** 240:18 | 272:14 284:13 |
| 294:16 305:13 | 347:15 | **worry** 87:7 | 296:5 307:3 |
| 306:14,16 | **work** 11:4 13:6 | **worse** 222:17 | 313:16 314:14 |
| 343:20 | 14:17 19:1 | 222:18 | 316:13 335:6 |
| **words** 12:5 | 25:12 26:9 | **write** 33:13 | 338:22 |
| 31:3 88:8 | 27:11,18,22 | 38:20 40:2 | **wrong** 212:8 |
| 122:2 171:19 | 28:3,6 29:3,5 | 88:9,12 89:7 | |

Veritext Legal Solutions
www.veritext.com                                                                  888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 437 of 441 PageID #:
4049

**wrote**  83:22
89:1,3,4 98:3
98:14 107:1
155:4 199:3
202:17 204:17
205:2 215:16
215:21 216:2
218:17 219:16
220:14,22
221:18 222:1,3
225:11 233:6
247:12 262:14
267:9 272:16
286:15 293:5,5
294:11,15
295:1,13
300:15 308:19
309:4 321:16
322:3,6 325:20
330:6 335:1
347:19

**y**

**yeah**  29:20
67:16 80:19
113:12 121:3
123:17 125:20
131:12 133:18
140:4 155:13
164:6 175:22
181:17,19
204:1 217:8
226:18 242:9
264:21 272:10
273:6 274:16
283:14 288:18

311:22 323:13
331:2 349:12
**year**  6:19 9:10
70:3,6,8 95:6
123:3,6
**years**  7:12 8:19
8:20 9:4 51:2
98:6,10,11,20
98:22 101:16
102:1,18
153:10 156:19
158:16 164:21
197:4 260:21
**yesterday**
72:14 73:12,13
**yield**  36:12,21
**york**  2:10,10
47:3,21 127:7
**young**  126:16

**z**

**zacharias**
341:17
**zealand**  8:17
**zoom**  2:13 3:1
12:21 60:18
239:20

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-5   Filed 07/03/24   Page 438 of 441 PageID #: 4050

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.