# EXHIBIT 7

```
 1              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                    NASHVILLE DIVISION
 3   - - - - - - - - - - - - - - - - :
     JOHNNY M. HUNT,                  :
 4                                    :
             Plaintiff,               :   CASE NO.
 5                                    :
             vs.                      :   3:23-cv-0000243
 6                                    :
     SOUTHERN BAPTIST CONVENTION,     :
 7   GUIDEPOST SOLUTIONS LLC and      :
     EXECUTIVE COMMITTEE OF THE       :
 8   SOUTHERN BAPTIST CONVENTION      :
                                      :
 9           Defendants.              :
                                      :
10   - - - - - - - - - - - - - - - - :
11       VIDEO DEPOSITION OF SAMANTHA KILPATRICK
12
13   DATE:               February 2, 2024
14   TIME:               9:12 a.m.
15   LOCATION:           Veritext Legal Solutions
                         1250 I Street, NW
16                       Suite 901
                         Washington, DC 20005
17
18
19   REPORTED BY:        Constance H. Rhodes
                         Reporter, Notary
20
21           Veritext Legal Solutions
             1250 Eye Street, Northwest
22            Washington, DC 20005
```

```
 1              A P P E A R A N C E S
 2   On behalf of Plaintiff:
 3       ROBERT D. MACGILL, ESQUIRE
         PATRICK J. SANDERS, ESQUIRE
 4       MacGill, PC
         156 East Market Street
 5       Suite 1200
         Indianapolis, Indiana 46204
 6       Robert.macgill@macgilllaw.com
 7   On behalf of Samantha Kilpatrick:
 8       SCOTT A. KLEIN, ESQUIRE
         ALEX J. OTCHY, ESQUIRE
 9       Mintz & Gold LLP
         600 Third Avenue
10       New York New York 10016
         Klein@mintzandgold.com
11
12   On behalf of the Southern Baptist Convention:
13       MATT PIETSCH, ESQUIRE (via Zoom)
         Taylor, Pigue, Marchetti & Blair, PLLC
14       2908 Poston Avenue
         Nashville, Tennessee 37203
15       Matt@tpmblaw.com
16   On behalf of the Executive Committee:
17       GRETCHEN M. CALLAS, ESQUIRE
         JacksonKelly, PLLC
18       1600 Laidley Tower
         Charleston, West Virginia 25433
19       Gcallas@jacksonkelly.com
20
         R. BRANDON BUNDREN, ESQUIRE
21       Bradley Arant Boult Cummings, LLP
         1221 Broadway, Suite 2400
22       Nashville, Tennessee 37203
```

Case 3.23-cv-00243    Document 219-7    Filed 07/03/24    Page 3 of 386 PageID #: 4057

1

2    ALSO PRESENT (Via Zoom)

3          Scott Murray

          Kathy Klein

4          Ella Merritt

          Jon Anderson

5          Johnny Hunt

6

7                        *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1                   C O N T E N T S
```

```
 2   EXAMINATION BY:                                    PAGE
 3        Counsel for Plaintiff                            6
 4        Counsel for Defendant EC                       304
 5
 6   KILPATRICK DEPOSITION EXHIBITS:*
 7   Exhibit 23  Interview Notes for Johnny Hunt         75
     Exhibit 24  Draft of Facts sent to REDACTED        103
 8   Exhibit 25  Redlined draft of facts by REDACTED    129
     Exhibit 26  Rewrite of Facts                       139
 9   Exhibit 27    REDACTED    email 4/4/22 to Kilpatrick
                   re: Update and Recomendations to the SBC   201
10   Exhibit 28     REDACTED    unsent peacemaking
                   proposal                             214
11   Exhibit 29  Text exchange 5/16/22                  244
     Exhibit 30    REDACTED   5/31/22 email with article  259
12   Exhibit 31  Op-Ed article Protestia               260
     Exhibit 32  Text exchange 5/24/22                  284
13   Exhibit 33  Holske 5/10/22 email re edited Hunt rpt.  299
14   EXHIBITS PREVIOUSLY MARKED:
15   Exhibit 1   Guidepost Responses to Plaintiff's First
                   Interrogatories
16   Exhibit 2   Engagement letter
     Exhibit 8   Guidepost Final Report
17   Exhibit 9    REDACTED   Journal
     Exhibit 18  Text Exchange 5/12/22
18   Exhibit 20  Interview notes re: REDACTED
```

```
19
20
21
22   (* Exhibits attached to transcript.)
```

1                    P R O C E E D I N G S

2              VIDEOGRAPHER:  Good morning.  We are going

3    on the record at 9:12 a.m., on February 2nd, 2024.

4    This is media unit one for the video-recorded

5    deposition of Samantha Kilpatrick, taken by counsel

6    for the plaintiff in the matter of the Johnny Hunt

7    versus Southern Baptist Convention, filed in the US

8    District Court for the Middle District of Tennessee.

9    Case Number 3:33-cv-0024.

10             The location of the deposition is at

11   1250 I Street, Northwest, Suite 901, Washington,

12   DC.  My name is Warren Brey, representing Veritext

13   Legal Solutions.  I'm the videographer.  The court

14   reporter is Connie Rhodes from the firm Veritext

15   Legal Solutions.

16             Counsel, please introduce yourselves for

17   the record.

18             MR. MACGILL:  Good morning, Rob MacGill

19   and Patrick Sanders representing plaintiff Pastor

20   Johnny Hunt.

21             MR. KLEIN:  And representing the witness,

22   Samantha Kilpatrick, Scott Klein and Alex Otchy for

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 6 of 386 PageID #: 4060

1    Mintz & Gold.

2              MS. CALLAS:  Gretchen Callas for the

3    Executive Committee.

4              MR. BUNDREN:  Brandon Bundren for the

5    Executive Committee.

6              VIDEOGRAPHER:  Will the court reporter

7    please swear in the witness?

8    WHEREUPON,

9                   SAMANTHA KILPATRICK

10   called as a witness, and having been first duly

11   sworn, was examined and testified as follows:

12              EXAMINATION BY COUNSEL FOR PLAINTIFF

13   BY MR. MACGILL:

14        Q    Good morning, ma'am.

15        A    Good morning.

16        Q    Could you state your name for the

17   record, please?

18        A    Samantha Kilpatrick.

19        Q    All right.  And where are you employed,

20   ma'am?

21        A    I'm employed with Guidepost Solutions.

22        Q    And what is your role with Guideposts?

1      A    I'm the senior managing director of the

2   faith-based practice.

3      Q    Of the what based?

4      A    Faith-based --

5      Q    Faith-based practice.

6      A    -- practice.

7      Q    And what is the faith-based practice?

8      A    The faith-based practice is just an

9   area, a group of us who work on primarily cases

10  that involve faith-based institutions.

11     Q    Have you yourself worked on more than

12  one faith-based institution?

13     A    Yes.

14     Q    Which faith-based institutions have you

15  worked on?

16     A    I've worked on a number of them.  The

17  ones that are public facing -- I've have worked on

18  Christianity Today faith-based matter; United

19  Methodist Church matter; several individual

20  Baptist church matters; some PCA -- Presbyterian

21  Churches of America matters; and some PRCA matters

22  -- Presbyterian Reform Churches of America.  I've

1   worked with camps, schools.

2       Q    What's the last one?

3       A    Schools.

4       Q    What schools?

5       A    Faith-based schools.

6       Q    Faith-based schools.  Okay.  Is there a

7   name for the faith-based schools?

8       A    We just have had -- we've had -- I've

9   had clients in the past and with Guidepost that

10  have been faith-based schools.

11      Q    Okay.  Fair enough.  Now, how long have

12  you worked with Guidepost?

13      A    I have been employed by Guidepost as

14  senior managing director since November of 2022.

15      Q    And did you -- when did you become

16  involved with the investigation involving the SBC?

17      A    In the fall of 2021.

18      Q    In the fall of 2021?

19      A    Yes.

20      Q    What was your role in -- what role did

21  you have before you were senior managing director?

22      A    I worked with Guidepost as an

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 9 of 386 PageID #: 4063

1     independent contractor.

2          Q     And for how long did you work with

3     Guidepost as an independent contractor?

4          A     From the fall of 2021 through November

5     of 2022 when they hired me.

6          Q     Where did you work before Guidepost as

7     an independent contractor?

8          A     I had a law practice in North Carolina.

9          Q     In North Carolina?

10         A     Uh-huh.

11         Q     And let's go through your education

12    background and we'll talk about your law practice?

13         A     Sure.

14         Q     Where were you educated, ma'am.

15         A     I attended Meredith College in Raleigh

16    North Carolina.

17         Q     When it you graduate?

18         A     1993.

19         Q     And what was your field of study?

20         A     I received a BA in political studies and

21    psychology.

22         Q     And did you pursue a postgraduate

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 10 of 386 PageID #: 4064

1    education?

2           A    I did.

3           Q    Law school?

4           A    Yes, sir.

5           Q    Where did you graduate from law school.

6           A    University of New Carolina at Chapel

7    Hill.

8           Q    In what year.

9           A    1996.

10               (Technical issues.)

11               VIDEOGRAPHER:  Going off the record at

12   9:17 a.m.

13               (Whereupon, a brief recess was taken.)

14               VIDEOGRAPHER:  We're now back on the

15   record as 9:18 a.m. you may proceed.

16   BY MR. MACGILL:

17          Q    You graduated from law school in the

18   1996; is that right?

19          A    That's correct.

20          Q    What did you do after your law school

21   graduation?

22          A    After law school graduation I worked for

1    a small family law firm for six months.

2         Q      Where did you go?

3         A      I went to the Wake County district

4    attorney's office.

5         Q      Wait, W-A-I-T?

6         A      Wake, W-A-K-E.

7         Q      Thank you.   And how long did you work at

8    the district attorney's office in Wake.

9         A      I worked at the district attorney's

10   office from 19 -- early 1997 to mid-2001.

11        Q      And where did you go in 2001?

12        A      In 2001 I went and started doing solo

13   practice on a less full-time basis.

14        Q      And for how many years did you do the

15   solo practice?

16        A      2001 until 2012.

17        Q      And where did you go in 2012?

18        A      In 2012 I formed a law practice with my

19   husband, who is also an attorney.   We formed that

20   practice in 2012.

21        Q      And you continued in that practice until

22   you joined as an independent contractor for

1  Guidepost?

2       A    Yes.   There was a short time frame

3  towards the end, where I did some work -- I did --

4  I was employed by GRACE, Godly Response to Abuse

5  in Christian Environments.

6       Q    In what year did you do that?

7       A    May -- I was with them from May of 2021

8  until August of 2021.

9       Q    All right.  So with respect to -- and

10 does your husband still have the law firm?

11      A    No.

12      Q    And so the law firm was dissolved?

13      A    Yes.

14      Q    Now, you're married?

15      A    Yes.

16      Q    And children?

17      A    Yes.

18      Q    How many children?

19      A    Two.

20      Q    All right.  And where do you live,

21 ma'am?

22      A    Raleigh, North Carolina.

1     Q    And do you work remotely for Guidepost?

2     A    Yes, I do.

3     Q    Now, you understand you are being --

4  going to be asked today about the work that you

5  did and that your company did in connection with

6  some publications that were made about Pastor

7  Johnny Hunt.  Is that your general understanding?

8     A    Yes.

9     Q    What have you done to prepare for your

10 testimony today?

11    A    I had a few prep sessions with Scott and

12 Alex and reviewed documents with them.

13    Q    And who is Scott and who is Alex?

14    A    Scott Klein who is an attorney

15 representing Guidepost and Alex as well is an

16 attorney.

17    Q    Alex's last name, do you remember?

18    A    I'm drawing a blank.  I'm sorry.

19         MR. OTCHY:  I'm not offended.

20 BY MR. MACGILL:

21    Q    It's Alex Otchy, right?

22    A    Yes.

1    Q    Okay.  Fair enough.  So these two
2 gentleman are the gentlemen that you met with to
3 prepare; is that right?
4    A    Yes, sir.
5    Q    And you said you reviewed some documents
6 to prepare to give testimony?
7    A    Yes, sir.
8    Q    First of all, how many meetings did you
9 have with Mr. Klein and Mr. Otchy?
10   A    I had two meetings with them.
11   Q    When were they, ma'am?
12   A    I had a meeting last Friday with them
13 and then a meeting on Monday morning.
14   Q    And how long was the meeting on Friday.
15   A    I think the meeting on Friday was around
16 three hours.
17   Q    And how long was the meeting on Monday.
18   A    Around two.
19   Q    And was it -- were these meetings by
20 Zoom or virtually?
21   A    They were virtual, yes.
22   Q    And you said you reviewed documents.

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 15 of 386 PageID #: 4069

1  Describe the documents you reviewed to give

2  testimony today?

3      A    I reviewed some emails and some

4  documents that -- where I had taken notes on

5  matters related to this.

6      Q    What was the subject matter of the

7  emails?

8      A    The subject matter of the emails.  I

9  believe that the secretary matter of the emails

10 had to do with communications with the REDACTED

11 that I was part of those emails.

12     Q    You said you reviewed documents.  What

13 documents did you review?

14     A    Those emails and then some photocopied

15 notes that I had submitted as part of discovery.

16     Q    Did you put notes on the REDACTED story,

17 so to speak?

18     A    I did.

19     Q    And you recognize your own handwriting

20 in that REDACTED story?

21     A    Yes, sir.

22     Q    And that was pertaining to a REDACTED

1   story dated March 31, 2022; is that right?

2       A    Yes, sir.

3       Q    Did you do typewritten notes of the

4   interview on March 31, 2022 with the REDACTED?

5       A    I did do some typewritten notes on that

6   interview.  Yes.

7       Q    I'm going to hand you Exhibit 20 that

8   was marked yesterday and I'm going to ask you,

9   Exhibit 20, are those typewritten notes that you

10  prepared?

11      A    Yes, sir.

12      Q    So with respect to those notes were

13  they -- did you endeavor in preparing these notes

14  to be accurate and truthful in terms of

15  information you provided?

16      A    Yes, sir.

17      Q    So at the time that you created these

18  notes, Exhibit 20, you did so in the ordinary

19  course of your work at Guidepost?

20      A    Yes, sir.

21      Q    And when I say at Guidepost, you

22  prepared Exhibit 20 in connection with your role

1   as you've described it on this record in working

2   on the investigation that's at issue in this case;

3   is that right?

4        A    Yes, sir.

5        Q    And did you circulate these notes of the

6   interview and materials provided on March 31,

7   2022, to anyone else at Guidepost?

8        A    Yes.

9        Q    Who?

10       A    Russ -- Russell Holske.

11       Q    Anyone else?

12       A    I don't recall.

13       Q    Okay.  Now, looking at these notes, I

14  just want to understand the process that you

15  engaged yourself in on March 31.  On March 31,

16  2022, you were in person with the REDACTED; is that

17  right?

18       A    Yes.

19       Q    Second, this was an all-day meeting,

20  wasn't it?

21       A    Yes.

22       Q    Third.  At the time that you had this

1  all-day meeting with the REDACTED you had the

2  REDACTED story in front of you as well, right?

3       A    Yes, sir.

4       Q    And as you took your notes did you have

5  their "story" in front of you?

6       A    Yes, I did.

7       Q    And I'm going to ask you if this is the

8  REDACTED story that you had in front of you at the

9  time that you created Exhibit 20.

10      A    Yes, it is.

11      Q    Now, ma'am, I want to be somewhat

12 specific about this.  With respect to the

13 materials you had in front of you on that March 31

14 meeting you had Exhibit 7 in front of you, right,

15 as you just confirmed, right?

16      A    Yes.

17      Q    And you were listening to what they had

18 to say, the REDACTED?

19      A    Yes.

20      Q    And at the same time, while having those

21 materials, Exhibit 7, in front of you and

22 listening to their words spoken, you were creating

1    Exhibit 20; is that right?

2            MR. KLEIN:  Objection as to form.  You can

3    answer.

4            THE WITNESS:  Can want ask that question

5    again.

6    BY MR. MACGILL:

7        Q    Did you create the document as the

8    meeting was progressing or once you got back to

9    Raleigh.

10       A    No, I did not create that document as

11   the meeting was progressing.

12       Q    You did afterwards.

13       A    Yes.

14       Q    Now, where are the -- did you create --

15   take notes?

16       A    I took notes on this document that's

17   Exhibit 7, and I had a note pad with me that I

18   also took notes on.

19       Q    Did you turn over the note pad with your

20   notes to counsel?

21       A    I don't have those notes.  I didn't have

22   those notes.

1    Q    Now, when you created Exhibit 20, did

2  you make use of the notes on the notepad that you

3  had during the meeting on March 31?

4    A    I did.

5    Q    And did you make use of Exhibit 7 in

6  creating the document Exhibit 20?

7    A    Yes, sir.

8    Q    So the sources for Exhibit 20 -- you had

9  three sources at least for Exhibit 20, what you

10 heard during that meeting; is that right?

11   A    Yes.

12   Q    You had the Exhibit 7 as a source for

13 Exhibit 20?

14   A    Yes.

15   Q    And you had your recollections as you

16 reflected on them when you created Exhibit 20,

17 right?

18   A    Yes.

19   Q    All right.  So was Exhibit 20 prepared

20 with the aim of being accurate in all respects in

21 what you reported?

22   A    Yes.

1     Q   And now I want to refer you to Exhibit 7

2  specifically, and I'd like to refer you to the

3  entry of the REDACTED pertaining to August 5th?

4         Could you please turn to that.  And if it

5  would help you, I can give you a page number.

6     A   If you could give me a page number,

7  please.

8     Q   Yes.  It's page number 16.

9     A   Yes.

10    Q   Now, as we look at page 16 of Exhibit 7,

11                 REDACTED

12                 REDACTED

13         REDACTED

14     A   REDACTED

15     Q       REDACTED

16     A       REDACTED

17     Q        REDACTED

18   REDACTED

19     A   REDACTED

20     Q     REDACTED

21     A   REDACTED

22     Q      REDACTED

1      A          REDACTED

2      Q        REDACTED

3      A      REDACTED

4      Q          REDACTED

5                            REDACTED

6   REDACTED

7      A      REDACTED

8      Q      REDACTED

9                      REDACTED

10   REDACTED

11      A      REDACTED

12      Q    Now, I want to refer you to some

13   specific language here.          REDACTED

14                      REDACTED

15                      REDACTED

16                      REDACTED

17      REDACTED

18      A    I did not write this document, but...

19      Q              REDACTED

20   REDACTED

21      A                      REDACTED

22      Q    Did you have any reason to challenge

1  what               REDACTED

2              REDACTED

3                REDACTED

4    REDACTED

5     A    Can you repeat that?

6     Q    Did you challenge or disagree with these

7  words written by          REDACTED

8             REDACTED

9             REDACTED

10  REDACTED

11        MR. KLEIN:  Objection as to form.  You can

12  answer.

13        THE WITNESS:  Did I challenge is at the

14  time.

15  BY MR. MACGILL:

16     Q    At the time.

17     A    No, sir.

18     Q    Did you challenge it in terms of the

19  words you wrote yourself in creating a report in

20  Exhibit 20?

21        MR. KLEIN:  Objection as to form.  You can

22  answer.

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 24 of 386 PageID #: 4078

 1          THE WITNESS:  Do you have a specific place
 2    that you want me to reference?
 3    BY MR. MACGILL:
 4       Q    Well, yes.  I mean if you look at your
 5    own entry on Exhibit 20 you can see that you
 6    yourself in Exhibit 20 describe the August 5th
 7    events, right?  And I'll refer you to Bates number
 8    GP7650?
 9       A    Okay.
10       Q    Do you see your entry about August 5,
11    2010?
12       A    Yes.
13       Q    You didn't make any report of any kind
14    about                    REDACTED
15                        REDACTED
16                         REDACTED
17    REDACTED   You didn't make any reference to that in
18    your own notes about the August 5th events in your
19    Exhibit 20, did you?
20       A    No, sir.
21       Q    And in fact, ma'am, this description of
22                        REDACTED

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 25 of 386 PageID #: 4079

1                          REDACTED

2         REDACTED              So you agree with that?

3              MR. KLEIN:  Objection as to form.  You can

4    answer.

5              THE WITNESS:  I don't.

6    BY MR. MACGILL:

7         Q    You don't agree with that.   REDACTED

8                         REDACTED

9         REDACTED

10        A    In -- in the work that I do, REDACTED

11                       REDACTED

12                       REDACTED                    .

13        Q    I didn't ask about    REDACTED

14                     REDACTED

15                     REDACTED

16                     REDACTED

17                    REDACTED

18                       REDACTED

19     REDACTED

20        A    I would repeat.     REDACTED

21                      REDACTED

22                     REDACTED

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 26 of 386 PageID #: 4080

1            REDACTED

2         REDACTED

3     Q    And you made no reference -- when it

4  came to your part you made no reference in your

5  notes            REDACTED

6         REDACTED

7            MR. KLEIN:  Are you talking about just on

8      REDACTED

9  BY MR. MACGILL:

10     Q         REDACTED

11     A      REDACTED

12     Q    No.  So we can read with our own eyes

13  that when you reported the events      REDACTED

14            REDACTED

15            REDACTED

16            REDACTED

17     A    No, I did not.

18     Q    Now, let's be more specific.  If you

19  look at what your notes on Exhibit 7, the second

20  line, if you look at      REDACTED

21            REDACTED

22    REDACTED

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 27 of 386 PageID #: 4081

1          Do you see that?

2      A    I do.

3      Q    So did you hear with your own ears,

4  ma'am, that this is what had occurred,  REDACTED

5                      REDACTED

6    REDACTED

7          Do you see the reference I'm --

8      A    I do.  I do.  I don't recall.

9      Q    Well, but let's look at what you

10  actually did.

11      A    Uh-huh.

12      Q    Okay.  When it came time for you to

13  write about              REDACTED

14   REDACTED

15                REDACTED                , which are

16  Exhibit 20, please read to the court what you

17  wrote as the first bullet entry under  REDACTED

18  REDACTED

19      A              REDACTED

20      Q                      REDACTED

21    REDACTED

22      A          REDACTED

1      Q                    REDACTED

2          REDACTED

3      A     Yes, sir.

4      Q     So this is what you then heard with your

5   own ears.  You listened to them and you heard that

6                      REDACTED

7                      REDACTED

8   REDACTED

9      A     Yes.

10     Q     So looking back at Exhibit 7, now what

11   you wrote -- I just want to pause here for a

12   minute -- exhibit 20 is your document.  You said

13   that.  Now, this portion of Exhibit 20 of your

14   exhibit, where you said        REDACTED

15                     REDACTED

16                     REDACTED

17         REDACTED

18          MR. KLEIN:  Objection as to who wrote the

19   other document.  You can answer.

20   BY MR. MACGILL:

21     Q     The REDACTED, for their part, in Exhibit

22   7 confirmed what you said in your document in

1   Exhibit 20 when you described the     REDACTED
2   right?
3           MR. KLEIN:  Same objection.  You can
4   answer.
5           THE WITNESS:  Yes.
6   BY MR. MACGILL:
7       Q    And let's talk about the specific
8                      REDACTED
9         REDACTED            If you look about four
10  lines down on the     REDACTED     that is Exhibit
11  7, do you see the sentence beginning REDACTED
12  REDACTED
13      A    Yes.
14      Q                    REDACTED
15                      REDACTED
16    REDACTED    You understood that that was a
17  rendition of what occurred by the REDACTED?
18          MR. KLEIN:  Objection.  Competence to
19  speak to that, but you can answer.
20          THE WITNESS:  That is what I understood
21  based on this document.
22

 1  BY MR. MACGILL:

 2      Q    And you understood that based on what

 3  the REDACTED told you at the time on March 31,

 4  2022?

 5      A    Yes.

 6      Q    And that is consistent with what you

 7  wrote in your Exhibit 20, right?

 8      A    Yes.

 9      Q    And in fact, I want to remind you of

10  something.  In your exhibit 20 not only was this

11  in the document that the REDACTED prepared, you

12  recited that for your part in your Exhibit 20,

13  didn't you,              REDACTED            .

14          Do you see it?

15      A    Yes.

16      Q    And what you wrote -- you repeated

17  this -- you said,              REDACTED

18                      REDACTED

19              REDACTED

20                  REDACTED

21      REDACTED        You recorded that in your

22  Exhibit 20, right?

```
 1        A    Yes.
 2        Q    Now, ma'am, none of these details -- to
 3   repeat -- not one of these details that we just
 4   covered appears in the final Guidepost report,
 5   does it?
 6        A    I would have to see the report.  I don't
 7   know.
 8        Q    Ma'am, I'm going to hand you Exhibit 8
 9   from yesterday.  I'm going to open it for your
10   reference to page 153.
11             And ma'am, I've handed you now, Exhibit 8,
12   and I've opened it to page 153.  Do you see that?
13        A    Yes.
14        Q    Focusing on this topic of who forgave
15   who, the final report which is Exhibit 8 on page
16   153 makes a specific reference to forgiveness,
17   doesn't it?
18             MR. KLEIN:  I'm going to object and just
19   allow the witness the opportunity to read other
20   portions of the document if she feels that will help
21   her answer your question in proper context.
22
```

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 32 of 386 PageID #: 4080

1    BY MR. MACGILL:

2        Q    We are just focusing on this at this

3    point, ma'am.  Do you have that in front of you?

4    Do you have page 153 in front of you?

5        A    I do.

6        Q    And do you see where there's a reference

7    to forgiveness?

8        A    Yes.

9        Q    And do you see that there's a reference

10    on August -- in the final Guidepost report,

11    Exhibit 8:  On August 5, Mr. Blankenship brought

12    Dr. Hunt, his wife, pastor, and survivor in for

13    another meeting at Hope Quest, a counseling

14    ministry to bring closure to the events on the

15    25th of July.

16            Do you see that?

17        A    Yes.

18        Q    Dr. Hunt and Mr. Blankenship stated they

19    could never talk about what happened and if they

20    did it would negatively impact over the 40,000

21    churches Dr. Hunt represented.

22            Do you see that?

1      A     Yes.

2      Q     And then ma'am, the sentence that I want

3  to focus you on, in contract to what was written

4  by the REDACTED and in contrast to what was written

5  by you in Exhibit 20, it says -- the report says:

6  "Dr. Hunt asked for pastor's forgiveness, and

7  pastor said he agreed.

8            Do you see that?

9            MR. KLEIN:  Objection as to your

10  characterization of the facts.  You can answer.

11  BY MR. MACGILL:

12     Q     Let me restate just so we're clear and

13  there's a -- we obviate the objection on this

14  important point of your testimony.

15            So ma'am, the jury can see this on the

16  screen here in the courtroom today, and what I want

17  the jury to focus on is the following sentence:

18  Dr. Hunt asked for pastor's forgiveness and pastor

19  said he agreed.

20            That is the language of the final

21  Guidepost report, isn't it?

22     A     Yes.  The report says Dr. Hunt asked for

1    Pastor's forgiveness and pastor said he agreed.

2         Q    And you will admit without any

3    equivocation on your part that that is different

4    from what you wrote on your own computer in

5    Exhibit 20.

6              MR. KLEIN:  Objection as to form.  You can

7    answer.

8              THE WITNESS:  The words are different.

9    BY MR. MACGILL:

10        Q    Okay.  And then --

11        A    But --

12        Q    Okay.  Please continue.  The words are

13   different but what?

14        A    The words are different, but on the

15   Exhibit 20 where it says          REDACTED

16                        REDACTED

17                        REDACTED

18                     REDACTED

19                     REDACTED

20        Q    Now, let's talk about -- perhaps what

21   the jury might find to be licenses that you took

22   in connection with the final report yourself and

1  those acting in concert with you --

2        MR. KLEIN:  I'll object to that

3  non-question.  You can ask now a question.

4  BY MR. MACGILL:

5        Q    Okay so --

6        MR. KLEIN:  I just want to make sure it's

7  a question, Rob -- that's all -- that she's getting.

8  That was a statement it appeared to me.  That's all.

9        MR. MACGILL:  That's fair.

10  BY MR. MACGILL:

11        Q    So let me see -- make sure I can

12  understand.  I want to focus very specifically

13  here at this point on your testimony.  So I want

14  to focus again on the Guidepost report.  Okay?

15  This particular sentence.  And I want to compare

16  it now not to what you wrote in Exhibit 20; I want

17  to compare it what the REDACTED wrote in Exhibit 7.

18  Okay?  Do you understand where we're going?

19        A    Yes, sir.

20        Q    All right.  Now, making sure we're

21  really cautious and very careful about all of this

22  and very literal as counsel has insisted, which is

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 36 of 386 PageID #: 4090

```
 1   fair, I want to now very carefully go through what

 2   the REDACTED wrote in Exhibit 20 -- 7.  And in

 3   Exhibit 7, just to remind this jury, what it says

 4   is                    REDACTED

 5            REDACTED

 6            Do you see that?

 7        A    Yes.

 8        Q    And ma'am, I've put that up on the

 9   courtroom -- on the screen here in the courtroom

10   so the jury can see that.          REDACTED

11                        REDACTED

12     REDACTED     Okay.  That's up.

13            Now, let's put this -- let's compare this

14   to what the Guidepost report said.  The Guidepost

15   final report, Exhibit 8, page 151, says

16   Mr. Blankenship -- well, it says the following:

17   Dr. Hunt asked for pastor's forgiveness, and pastor

18   said he agreed.

19            That's what the report says, right?

20        A    Uh-huh.

21        Q    And you'll agree, ma'am, that what the

22   REDACTED wrote in Exhibit 7 is different from what
```

1  the Guidepost final report says on the issue of

2  forgiveness, right?

3          MR. KLEIN:  Objection.  Asked and answered

4  you can answer.

5          THE WITNESS:  The words are different.

6  BY MR. MACGILL:

7      Q    Okay.  Now, ma'am, I want to ask you a

8  few other things about your work.  If we look now

9  at -- let me ask this first.  Did you participate

10 in the answering of interrogatories in this case?

11     A    I did work with counsel, yes.

12     Q    I'm going to hand you Exhibit 1.  Did

13 you participate in preparing these answers, ma'am?

14     A    I participated in providing some

15 answers.  I don't recall seeing the final version

16 of this document.

17     Q    Of that document.  All right.  Could you

18 hand me back the exhibits.  I don't want to have

19 too many papers in front of you.  I'd like to

20 bring some more documents to you, but could you

21 hand me back these exhibits, please?

22     A    All of them?

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 38 of 386 PageID #: 4092

1    Q    Yes, please.  And I'm going to hand you

2  another one here.  Okay?

3    A    Uh-huh.

4    Q    And by the way, I think I had mentioned

5  that the -- in the last question that the

6  quotation "Dr. Hunt asked for pastor's forgiveness

7  and Pastor said he agreed," I made reference to

8  that as being the Guidepost final report on

9  page 151.  It was actually page 153.

10    A    That's correct.

11    Q    Okay.  Sorry about that.

12          Now, ma'am, I want to talk about your work

13  in some additional respects.  I want to talk about

14  whether    REDACTED    provided you with a  REDACTED ?

15    A        REDACTED   did not provide me with a

16  REDACTED .

17    Q    All right.  I'm going to hand you the

18  next Exhibit 9.  I'm going to hand you Exhibit 9.

19  Did you ever receive Exhibit 9 before?

20    A    Yes, I did.

21    Q    And when did you ask for this Exhibit 9?

22          MR. KLEIN:  Objection as to form.

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 39 of 386 PageID #: 4093

1    BY MR. MACGILL:

2          Q     Yeah.  Let me back up.  Is this REDACTED

3          REDACTED      ?

4                MR. KLEIN:  Objection as to form.  You can

5    answer.

6                THE WITNESS:  My understanding is that

7    this is          REDACTED          .

8    BY MR. MACGILL:

9          Q     Tell the court how you got that

10   understanding.

11         A     My understanding is that my colleague,

12   Russell Holske, received this and then -- I'm not

13   sure -- then I received it in some fashion.  I

14   don't know if it was through email or through a

15   shared folder.

16         Q     Did you yourself make any requests

17   regarding the     REDACTED     ?

18         A     I don't understand your question.

19         Q     Did you use this REDACTED in connection

20   with your work?

21         A     Yes.

22         Q     How did you use this REDACTED?

1      A     But we reviewed all the documents that

2  we were given.

3      Q     Now, the            REDACTED            ?

4      A              REDACTED

5      Q     And was there a forensic examination

6  conducted by your company as to when the document

7  was created?

8      A     I'm aware that there was a forensic

9  analysis of what was provided, but I was not

10  personally involved in that.

11      Q     Did you come to understand what the

12  forensic examination showed in terms of when this

13  REDACTED was created?

14      A     I understood that it was created within

15  a time frame I think  REDACTED .

16      Q     You don't recall that the forensic

17  examination showed that this document that you

18  have in front of you, Exhibit 9, was created in

19  the year REDACTED?

20      A     That may be true.

21      Q     Did you ever learn yourself that this

22  document was created in REDACTED?

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 41 of 386 PageID #: 4095

 1      A    I did not.  I don't remember.  I really

 2  don't.

 3      Q    Ma'am, with respect to your work, didn't

 4  you come to understand that your forensic team had

 5  specifically ascertained, at least according to

 6  them, that the data on the hard drive showed that

 7  this particular REDACTED was in fact created in the

 8  years        REDACTED        ?

 9           MR. KLEIN:  Objection as to form.  Asked

10  and answered.  You can answer.

11           THE WITNESS:  I did become aware of that.

12  BY MR. MACGILL:

13      Q    And in fact, the final Guidepost report

14  says that on page 153.  It says -- I'll quote for

15  you:  "Guidepost has confirmed forensically that

16  the data on the hard drive was in fact created in

17  2009-2011, which corroborates the counseling

18  relationship between Mr. Blankenship and the

19  couple."

20           Do you remember those words in your

21  report?

22      A    I do.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 42 of 386 PageID #: 4096

1     Q    Now, you testified to this court today
2  that you understood -- or that the REDACTED itself
3  is stated to have started on     REDACTED    ; is
4  that correct?
5     A    Yes.  That's the date that's on the
6  document that you gave me.
7     Q    May I see that document, please?
8     A    Yes.
9     Q    Thank you.  And this is the Exhibit 9
10  that I had just given you?
11     A    Yes.
12     Q    Okay.  And the     REDACTED
13    REDACTED  , right?
14     A    Yes.
15     Q    Now, did you have this document prior to
16  the time the final Guidepost report was issued?
17     A    Yes.
18     Q    Now, as an investigator, your job was
19  you were one of the lead investigators on this
20  case; is that right?
21     A    That's true.
22     Q    And you were one of the lead

Veritext Legal Solutions
www.veritext.com
888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 43 of 386 PageID #: 4097

1  investigators with respect to the statements and

2  the claims made as to the incident involving

3  Pastor Johnny Hunt and   REDACTED   ; is that

4  right?

5      A    Could you restate that question?

6      Q    Your work was focused, among other

7  things, on Pastor Johnny Hunt, was it not?

8          MR. KLEIN:  Objection as to form.  You can

9  answer.

10         THE WITNESS:  Yes.  I was assigned to that

11 part of the investigation.

12 BY MR. MACGILL:

13     Q    Now, in determining Mr. REDACTED's

14 credibility -- strike that.

15         I take it as a part of your role as being

16 a lead investigator that it was important, in fact

17 critical to you, to make sure that you assessed the

18 credibility of   REDACTED   in his reports to your

19 and your company, right?

20     A    Yes.

21     Q    And let's emphasize the word critical.

22 It was critical for you as a lead investigator to

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 44 of 386 PageID #: 4098

1  determine the credibility of what    REDACTED

2  reported, right?

3           MR. KLEIN:  Objection.  Asked and

4  answered.  You can answer again.

5           THE WITNESS:  Absolutely.  It was

6  important for us to determine credibility for each

7  person that we interviewed.

8  BY MR. MACGILL:

9     Q    Now, as you assessed in this critical

10  matter of    REDACTED  's credibility on Exhibit 9,

11  did you challenge him in any way to say why do you

12  have an August 2nd, 2010, date on Exhibit 9 when

13  this document had been created during the year --

14  at least in part during the year 2009?

15           MR. KLEIN:  Objection as to form as to her

16  personal competence to answer that.  You can.

17           THE WITNESS:  I don't know.  I was -- I

18  did not deal directly with Mr. REDACTED regarding this

19  document.

20  BY MR. MACGILL:

21     Q    But as a lead investigator, ma'am, you

22  knew specifically that your own company had

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 45 of 386 PageID #: 4099

1   identified that Exhibit 9 had been created in the

2   year 2009 -- beginning in the year 2009, right?

3            MR. KLEIN:  Objection as to form.  You can

4   answer that question.

5            THE WITNESS:  That's what the forensic

6   review showed, yes.

7   BY MR. MACGILL:

8        Q    And you understood that before the

9   Guidepost report was published, right?

10       A    Yes.

11       Q    And in fact, not only did you understand

12  that, the Guidepost publication represented in

13  fact that forensically your company had identified

14  that Exhibit 9 was created in the years 2009

15  through 2011, right?

16           MR. KLEIN:  Objection.  Asked and

17  answered.  You can answer again.

18           THE WITNESS:  That is true.

19  BY MR. MACGILL:

20       Q    With that context in mind, as your role

21  as a lead investigator on this matter, didn't that

22  concern you about the credibility of Mr. REDACTED

1    and the information in Exhibit 9 when you indicate

2    -- when you see that it was not     REDACTED

3    REDACTED.

4         A     That is something to consider and that

5    we considered, but we don't know -- we don't know

6    exactly when each word on that document was

7    created.

8         Q     Right.  And because of that, you had to

9    cast some doubt on what he was writing, correct?

10         MR. KLEIN:  Objection as to form.  You can

11   answer.

12         THE WITNESS:  That was one of the things

13   that we had to evaluate as we were going through

14   this.

15   BY MR. MACGILL:

16         Q     And did you come to look at that

17   Mr. REDACTED, at least at some point in time, asked

18   your company, specifically Mr. Holske, to destroy

19   documents?

20         A     I am aware of that message.

21         Q     That text message?

22         A     Yes.

1     Q    You were aware specifically as you sit

2  here this morning and testifying in this court

3  that Mr. REDACTED, at least at one point in time,

4  had sent a message to Mr. Holske asking to confirm

5  that certain documents that he had provided had

6  been destroyed "as requested."

7     A    I'm aware of that text message.

8     Q    And when did you become aware of that

9  text message?

10     A    I'm not sure.  I'd have to see the date

11  of the text message.

12     Q    Who told you about that text message?

13  And I don't want -- I don't want you to provide

14  any communications with your counsel, but just did

15  somebody other than your counsel tell you that or

16  somebody other than Guidepost's counsel?

17     A    I can't recall who -- how -- I don't

18  recall how I first learned about the text message.

19     Q    Okay.  Let me ask another thing about

20  the credibility of Mr. REDACTED.  Did you learn he

21  at one point asked to use Mr. Holske as a

22  reference for a job at your company Guidepost?

1     A     I don't recall that.  No, I don't.

2     Q     I'd like you to tell the jury here, now

3  that you are here with us all this morning, do you

4  believe that your company and you -- strike that.

5           Do you believe that you yourself had an

6  arm's length relationship with the REDACTED?

7           MR. KLEIN:  Objection as to form.  Calls

8  for a legal conclusion.  You can answer.

9           THE WITNESS:  I believe that we had good

10 rapport with the REDACTED.

11 BY MR. MACGILL:

12    Q     Now, if you had -- if you are assessing

13 the credibility of a witness -- strike that.

14          Is it your general experience, ma'am, in

15 your line of work as a lawyer or as a person who is

16 doing investigatory work, is it your experience that

17 a credible witness needs to be interviewed perhaps

18 as many as nine times?

19    A     I think a witness needs to be

20 interviewed multiple times.  Nine doesn't -- I'm

21 not going to say nine times, but you need to have

22 multiple encounters with the people that you are

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 49 of 386 PageID #: 4103

1    interviewing.

2        Q    How many encounters did you have Johnny

3    Hunt on the sexual abuse, as you say it,

4    allegations here?

5        A    We had two.

6        Q    When were they?

7        A    We interviewed Mr. Hunt, I believe, at

8    the end of April 2022 and the first week of

9    May 2022.

10       Q    But ma'am, the interview on April '22

11   you did not raise the issue of the incident

12   involving Mrs. REDACTED, right?

13       A    We did not.

14       Q    So the interviews -- the only interviews

15   that you had -- you had only -- strike that.

16            You had only one interview with REDACTED

17   REDACTED -- pardon me.  Let's try a third time.

18            You had only one interview with Pastor

19   Johnny Hunt pertaining to the allegations of REDACTED

20   REDACTED; is that right?

21       A    We had one interview with Mr. Hunt that

22   was primarily related to the report from REDACTED

1   REDACTED .  However, in the earlier interview with

2   Mr. Hunt, we asked him about the pastor who had

3   resigned from Rehobeth, and we did not refer to

4   REDACTED , but it was Mr. REDACTED that we were

5   asking about and gave him a time frame.  And he

6   said to us that he didn't know who that pastor was

7   or anything about that.  And --

8       Q    And who was --

9            MR. KLEIN:  I think she wasn't finished

10  with her answer, Rob.  If you could just allow her

11  to finish her answer.

12  BY MR. MACGILL:

13      Q    All right.  Let's read the question back

14  and the answer to extent you gave it, and then

15  let's have to add to it.

16           MR. KLEIN:  Hold on.  She's in the middle

17  of her answer.  She doesn't need it read back.  She

18  understood the question.

19  BY MR. MACGILL:

20      Q    Do you want it read back?  Okay.  Please

21  Continue.

22      A    So in our first interview with Mr. Hunt,

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 51 of 386 PageID #: 4105

1  we asked him, without naming    REDACTED  , about a

2  pastor that resigned and went on sabbatical in a

3  specific time frame, which I believe was 2010.

4  And he stated that he did not know who that pastor

5  was, and he did not know anything about that.  And

6  we also, I believe, asked him if it was related to

7  sexual abuse, and he said no.

8            At that point, based on the information

9  that we had, we believed that Mr. Hunt was being

10 untruthful with us about knowing the REDACTED even

11 though we had not mentioned their name.

12 BY MR. MACGILL:

13     Q    Okay.  Let's make sure we understand

14 what you just said.  He was being untruthful --

15 Pastor Johnny Hunt was being untruthful to you in

16 April of 2022 because why?

17     A    Because we asked him if he knew anything

18 about a pastor who had gone on sabbatical at

19 Rehobeth Baptist church in Georgia and whether he

20 knew anything about that.  And he said he did not

21 know the pastor.  He didn't know anything about

22 that.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243  Document 219-7  Filed 07/03/24  Page 52 of 386 PageID #: 4106

1      Q     All right.  Why did you think that was

2   an indication that he had been untruthful.  You

3   didn't name a pastor in your question, right?

4      A     Correct.

5      Q     And you -- tell the court and jury why

6   you didn't name the pastor that you were asking

7   him about so he would understand specifically what

8   you were asking about?  Why did you do that?

9      A     Well, part of our work, we try our best

10  to keep survivor's names and those who reported

11  abuse confidential.  And at that point, we were

12  trying to keep the REDACTED' information

13  confidential until we were able to corroborate

14  more of their story.  And so that's why we didn't

15  name the name.

16         The reason we thought that he would know

17  exactly who we were talking about is because we had

18  information that there had been a longstanding

19  relationship between the REDACTED and Mr. Hunt and

20  that heave would know, because of his position in

21  the Georgia Baptist world and the fact that he had

22  been to that church, we had pretty good information

1  that he knew exactly who had been the pastor there

2  at that time.

3      Q    You had pretty good information?

4      A    Yes.

5      Q    When you say you had pretty good

6  information, what are you referring to?

7      A    Well, the REDACTED had shared with us

8  about their relationship with Johnny Hunt, and

9  Mr. Hunt had helped Mr. REDACTED get some positions,

10 and I believe that they told us that they -- I

11 can't remember which church this happened at,

12 whether it was Mr. Hunt's church or the REDACTED's

13 church, but that they had been in each other's

14 churches in different ways.

15     Q    So the jury understands, I just want to

16 follow up on your claim -- your claim that you had

17 quote "pretty good information" to suggest that

18 Pastor Johnny Hunt was untruthful in April of

19 2022, right?

20          MR. KLEIN:  Objection as to form, the word

21 claim, but you can answer.

22

1    BY MR. MACGILL:

2         Q    Well, let me restate.

3              You made a statement under oath just now

4    to this court and to this jury that you had "pretty

5    good information" that Pastor Johnny Hunt had not

6    been honest with you in April 2022 during an

7    interview; is that right?

8         A    We felt like --

9         Q    Is that right?

10        A    Yes.  I said that.

11        Q    Okay.  Now, when you had pretty good

12   information about what you claim to be indicia of

13   being untruthful, did you understand what church

14   that pastor had founded in Georgia?

15        A    Yes.

16        Q    What was the name of that church?

17        A    First Baptist Church, Woodstock.

18        Q    First Baptist Church, Woodstock.  All

19   right.  Where at the time of the interview did

20    REDACTED  , Pastor REDACTED, work?

21        A    I believe at the time of the interview

22   Mr. REDACTED worked at a church in Eastern North

1    Carolina.

2         Q    And what church were you asking about

3    when you made an inquiry in April 2022 about an

4    unnamed pastor, did you make a reference to a

5    specific church when you were talking to Pastor

6    Johnny Hunt about some unnamed pastor?  What

7    church were you talking about?

8         A    Rehobeth Baptist Church.

9         Q    All right.  Let's spell that together.

10   Would you please spell it?

11        A    R-E-H-O-B-E-T-H.

12        Q    So Rehobet Baptist Church.  Where is

13   Rehobet Baptist Church?

14        A    I believe there's an H on the end of

15   that.

16        Q    I'm sorry.

17        A    I think there's an H on the end of that.

18        Q    Rehobeh Baptist Church.  Thank you.  And

19   where was Rehobeh Baptist Church located at the

20   time of your inquiry?

21        A    I don't recall.  It's in Georgia.

22        Q    It was in Georgia.

www.veritext.com                                                888-391-3376

1      A     It's in Georgia.

2      Q     Now, let's just make sure we understand

3   this.  So you're saying that you had "pretty good

4   information" that Pastor Johnny Hunt was being

5   untruthful to you because you asked him about an

6   unnamed pastor at Rehobeh Baptist Church; is that

7   right?

8      A     Yes.

9      Q     In what year?  What year did you ask?

10     A     2010.

11     Q     Okay.  So let's set the scene.  So

12   you're interviewing Johnny Hunt how many years

13   after the event that you were making an inquiry

14   about this unnamed pastor?

15     A     2022.

16     Q     How many years?

17          MR. KLEIN:  Objection.  The record will

18   reflect that that's 12 years.  I'll stipulate to

19   that.

20   BY MR. MACGILL:

21     Q     Is that 12 years?  I'm not very good at

22   math.  Is it 12 years?

1     A    Yes.

2     Q    Okay.  So you had a conversation with

3  Pastor Johnny Hunt 12 years after -- 12 years

4  later about an unnamed pastor; is that right?

5     A    Yes.

6     Q    And you had a conversation with Pastor

7  Hunt about -- you asked him what about events 12

8  years ago and this unnamed pastor.  What did you

9  ask him in April of 2022?

10        MR. KLEIN:  Objection.  Asked and

11  answered.  You can answer again.

12        THE WITNESS:  We asked him about a pastor

13  who took a sabbatical and resigned in 2010 from that

14  church.

15  BY MR. MACGILL:

16     Q    So in 2022 you asked Pastor Johnny Hunt

17  about an unnamed pastor who had taken a sabbatical

18  and resigned at the Rehobeth Baptist Church in the

19  year 2010; is that correct?

20     A    Yes.

21     Q    Okay.  Now, when you asked him that were

22  you there in person with him?

 1      A    Yes.

 2      Q    Who was with you?

 3      A    Russell Holske.

 4      Q    What did he say when you asked him

 5   that -- let me ask -- let me back up.

 6           Tell the court and jury exactly what you

 7   said to him when you made this inquiry.

 8           MR. KLEIN:  Objection.  I believe that's

 9   been asked and answered.

10   BY MR. MACGILL:

11      Q    Exactly this time, not generally.

12   Please tell the jury what you asked Pastor Johnny

13   Hunt during your interview of April 2022.

14           MR. KLEIN:  I'll just note that there's no

15   indication that she gave an exact or a general

16   answer, but she can answer the question again.

17   BY MR. MACGILL:

18      Q    Of course.  We want your -- I want to

19   make sure -- I don't want the lawyer speaking to

20   influence you, any of them, any of these lawyers

21   here in the room -- I just want you to answer for

22   your own part.  Please tell the jury exactly what

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 59 of 386 PageID #: 4113

 1   you asked Pastor Johnny Hunt in April 2022 during

 2   your meeting with him on this topic?

 3              MR. KLEIN:  Objection.  Asked and

 4   answered.

 5              THE WITNESS:  I cannot give you the exact

 6   words I asked Johnny Hunt on that day.  I've given

 7   you the summary of what was asked at that time.

 8   BY MR. MACGILL:

 9        Q    One moment, please.  Did you take notes

10   of in interview of Pastor Johnny Hunt?

11        A    Which one are you talking about?

12        Q    The interview that you just indicated

13   that you interviewed Pastor Johnny Hunt on April

14   26th, 2022.

15        A    Yes.

16        Q    And did you type those notes up?

17        A    Yes.

18        Q    And this interview took place in

19   Branson, Missouri; is that right?

20        A    That's correct.

21        Q    And when you created these notes did you

22   create them at or near the time that the meeting

1    took place?

2        A    Yes.

3        Q    And did you review those notes in

4    preparation for your testimony today?

5        A    I don't -- no, I didn't.

6        Q    You did not.

7        A    I don't think I did.

8        Q    Okay.

9             Now, just focusing on -- I want to ask you

10   about your memory of this interview of Pastor Johnny

11   Hunt.  Did you interview him about whether Rehobeth

12   Baptist Church had a history that included the abuse

13   of several young boys?

14       A    I don't recall the exact questions that

15   we asked, but that may have been a question.  I'm

16   happy to look at the document.

17       Q    No need, ma'am.  Do you remember whether

18   you asked during the interview of Pastor Johnny

19   Hunt whether in fact the Rehobeth Baptist Church

20   had a history that included the abuse of several

21   young boys by a music minister named --

22            MR. KLEIN:  Hold on.  I'd ask you not to

1  the minister.  I don't know if that document is

2  identified as attorney's eyes only, Robert.

3        MR. MACGILL:  It's not.  It is not.

4        MR. KLEIN:  I would ask, though, that the

5  name of the minister not be revealed.  I don't

6  believe there's any need --

7  BY MR. MACGILL:

8    Q    It's confidential.  It is only

9  confidential.  It's going to be revealed here in

10  this deposition.  These are interview notes that

11  she took of our client.  They are going to be

12  public.

13        MR. BUNDREN:  Can you give me the Bates

14  number?

15        MR. MACGILL:  It's 441.  Do you want to

16  have a minute to look at this?

17        MR. BUNDREN:  This is Hunt's documents?

18        MR. MACGILL:  This is guidepost's.

19  Everybody all right?

20        MR. KLEIN:  I just want to get a second

21  just to -- because I don't have a copy.  Do you have

22  a copy of it to show me?  I take you at your word.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 62 of 386 PageID #: 4116

1            MR. MACGILL:  You take me at my word.

2            MR. KLEIN:  Meaning that it is not

3    designated at attorney's eyes only.

4            MR. MACGILL:  Confidential.  It's only

5    confidential.

6            MR. KLEIN:  So I'd ask that it remain

7    confidential as described in the protective order.

8            MR. MACGILL:  No objection to that.

9    BY MR. MACGILL:

10       Q    All right, ma'am.  So did you -- in your

11   April -- so in your interview, ma'am, of Pastor

12   Johnny Hunt did you ask him about whether the

13   Rehobeth Baptist Church had a history that

14   included the abuse of several young boys by a

15   music minister, Mr. Frankie Wiley that came to

16   light in 2012 when David Pitman made his case

17   public?

18       A    I don't recall.

19       Q    Did you make reference in your meeting

20   in April of 2022 with Pastor Johnny Hunt that

21   Wiley is "known, confessed, to have molested many

22   young boys while working as a music minister at

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 63 of 386 PageID #: 4117

1  multiple Georgia Southern Baptist churches."  Did

2  you raise that with him, too?

3      A    I don't recall if I raised that to him.

4      Q    Did you say to him, ma'am, in contrast

5  to what you testified to today, that there was a

6  time in last -- in last 2010 when the pastor at

7  Rehobeth stepped down.  Did you make reference to

8  that?

9          MR. KLEIN:  Objection as to -- it

10  mischaracterized her testimony, but you can answer.

11          THE WITNESS:  Can you restate the

12  question?

13  BY MR. MACGILL:

14      Q    Did you specifically confer with Pastor

15  Johnny Hunt and state to him specifically with

16  respect to the Rehobeth Baptist Church that

17  specifically "there was a time in last 2010 when

18  the pastor of Rehobeth stepped down."  Did you ask

19  him that?  Did you make mention of that?

20      A    We did make mention of a pastor stepping

21  down and going on -- going on sabbatical and

22  stepping down.

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 64 of 386 PageID #: 4118

1      Q     Now, you then said we understand that

2  you came in to help Rehobeth in the interim and

3  were recognized there for your efforts by Pastor

4  Troy Bush in 2012.  Do you remember referencing

5  that?

6      A     I do remember referencing Troy Bush in

7  that interview.

8      Q     Now, speaking of Troy Bush specifically,

9  did you ask with respect to Mr. Bush, Mr. Troy

10  Bush, do you know any of the circumstances as why

11  that pastor left in 2010?

12      A     Can you repeat that?

13      Q     Do you remember writing or confirming --

14  strike that.

15          Do you remember stating to Pastor Johnny

16  Hunt asking him if he knew of the circumstances of

17  why that pastor left Rehobeth in 2010?

18      A     We asked him about the pastor in 2010 if

19  he knew why he left.

20      Q     So in 2012 do you remember recording in

21  your interview notes -- strike that.

22          In 2022 in this interview do you remember

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 65 of 386 PageID #: 4119

1    recording in the interview notes that Pastor Johnny

2    Hunt does not remember the circumstances of that

3    pastor leaving but remembers coming in to help that

4    church.  Do you remember making such a notation in

5    your notes, ma'am?

6        A    I do not specifically remember making a

7    notation in my notes.

8        Q    Okay.  Now, and it's on the basis of

9    what we just described that you claim today in

10   your testimony that you feel that there was in

11   your words pretty good information -- "pretty good

12   information" that Pastor Johnny Hunt was not

13   honest with you in the April 26, 2022 interview;

14   is that right?

15           MR. KLEIN:  Objection as to form.  You can

16   answer.

17           THE WITNESS:  Yes.

18   BY MR. MACGILL:

19       Q    Now, specifically in your notes you

20   indicate -- in your own notes in this interview

21   you indicate that Dr. Hunt stated -- strike that.

22           Now, in the final report, and you are

1   welcome to look at it, you indicated on page 158,

2   that Dr. Hunt stated to you he did not know who the

3   pastor was.  Do you remember that?

4          MR. KLEIN:  Before you answer, feel

5   free -- if you need to look at the report, it's no

6   longer in front of you.

7   BY MR. MACGILL:

8      Q     Do you remember that?

9      A     If you'll let me see the report.

10     Q     Just first, do you remember that, and

11  then we'll get into the report.  Do you

12  remember --

13     A     Ask the question again, please.

14     Q     Do you remember the final Guidepost

15  report saying that Dr. Hunt stated he did not know

16  who the pastor was that was referenced in this

17  2010 event?

18     A     Yes.

19     Q     Now, in the interview you had in May

20  before the report was published -- let's make sure

21  we're precise -- after this interview on April 26

22  that we just covered, you had an interview about

1    the allegations of the REDACTED with Pastor Johnny

2    Hunt on May 10, 2022, right?

3         A    I know that I had an interview with

4    Johnny in May.  I'd have to have my memory

5    refreshed to give you the exact date.

6         Q    But this was -- the only interview you

7    had with Pastor Johnny Hunt on the allegations of

8    the    REDACTED    was in May 2022?

9         A    Yes.  That second interview.

10        Q    I'm going to hand you back Exhibit 1,

11   the interrogatories answers, and I'm going to ask

12   you to look at page 4 and ask if you can confirm

13   the date.

14        A    I believe that May 12 is correct as the

15   date.  So the date of your interview, the only

16   interview that was conducted of Pastor Johnny Hunt

17   by you or those at Guidepost was on May 12, 2022;

18   is that right?

19             MR. KLEIN:  Objection.  Mischaracterizes

20   her statement, but you can answer.  You had said the

21   only interview at all.  You didn't focus it.

22             MR. MACGILL:  Fair objection.

1  BY MR. MACGILL:

2      Q    So counsel's corrected me.  The only

3  interview that you had ever of Pastor Johnny Hunt,

4  dealing specifically with the allegations

5  pertaining to the incident with   REDACTED    was

6  on what date?

7      A    May 12.

8      Q    Now, with respect to that only

9  interview -- and I want to focus on this issue

10  about the 2010 pastor sabbatical and resignation.

11  Okay?

12          Now, on this issue of the -- what Pastor

13  Johnny Hunt had to say to you about the 2010

14  sabbatical and resignation, in this interview on

15  May 12, 2022, Pastor Johnny Hunt acknowledged to you

16  at that time in that interview on this particular

17  series of allegations that he knew the pastor,

18  didn't he?

19      A    He did.

20      Q    So at that time then you knew that now

21  that there was further context and more detailed

22  context brought to your question of the 2010

1  sabbatical and resignation, he told you exactly

2  what had happened, right?

3          MR. KLEIN:  Objection as to form.  You can

4  answer.

5  BY MR. MACGILL:

6      Q    Let me ask a better question.  On

7  May 12, 2022, Pastor Johnny Hunt explained to you

8  that, yes, he did know the pastor that you had

9  asked about in the 2010 period.

10     A    He did.

11     Q    Looking at the final report, you didn't

12  confirm that in your final report, did you?

13     A    I'd have to read the report.

14     Q    Well, ma'am, at page 158 of the report,

15  you said Dr. Hunt stated that he did not know who

16  the pastor was, right?

17     A    And I believe that that part of the

18  report references in that first interview.

19     Q    Okay.  Let's talk about whether you were

20  being fair or those acting in concert with you at

21  Guidepost were being fair or not, now I'm going to

22  hand page 158 of your report.  Okay?

1      A     Uh-huh.

2      Q     Before I do that, let me ask you

3  something, because everybody in this room, there's

4  lots of lawyers here.  We're all lawyers.  You are

5  still a practicing lawyer, right?

6      A     I am not practicing.

7      Q     Not practicing, but you are still a

8  member of the bar; is that right.

9      A     Yes.

10      Q     In terms of your commercial

11  relationships be it inside a company or outside a

12  company, you need to be forthright in your

13  transactions, do you not?

14      A     Correct.

15      Q     And you need to be acting in good faith

16  to describe fully and fairly circumstances of your

17  business, right?

18          MR. KLEIN:  Objection as to form.

19          THE WITNESS:  Yes.

20  BY MR. MACGILL:

21      Q     So when to came to do your work at

22  Guidepost, you understood that you needed to be

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 71 of 386 PageID #: 4125

1    fair to the facts and the circumstances of your

2    investigation, right?

3         A    Yes.

4         Q    And that was true whether you were an

5    ordinary citizen or a lawyer, right?

6         A    Yes.

7         Q    And it was also true that you needed to

8    be fair and full in your representation of facts

9    as an investigator, right?

10        A    Yes.

11        Q    All right.  Now, let's look at page --

12   together -- let's look at page 158.  And again,

13   ma'am, what I'm going to do here in this case is

14   I'm going to open it to page 158, and this is in

15   Exhibit 8, and I'm going to hand to you page 158.

16             MR. KLEIN:  In answering the question that

17   comes, if you need to review other portions of the

18   report, feel free.

19   BY MR. MACGILL:

20        Q    All right.  Are you there?

21             Now, ma'am, I'm going to refer you -- see

22   that top paragraph?  During the first interview, did

1   Dr. Hunt acknowledge?

2        A    Yes.

3        Q    Then if you continue down with that

4   paragraph with that heading I just referenced, you

5   make reference about seven lines down:  Dr. Hunt

6   stated he did not know who Pastor was or why he

7   had resigned.

8             Do you see that?

9        A    Yes.

10       Q    Now, ma'am, you did not describe in the

11  report, you or those acting in concert with you,

12  you did not describe in the report specifically,

13  that in the interview associated with this

14  particular incident, in the second interview on

15  May 12, 2022, Pastor Johnny Hunt acknowledged that

16  he knew who the pastor was.  You did not say that

17  in this report, did you?

18       A    In this report down in the third

19  paragraph it says:  In the second interview Dr.

20  Hunt acknowledged this time that he knew Pastor.

21       Q    Now, with respect to focusing further on

22  this during the first interview, you said Dr. Hunt

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 73 of 386 PageID #: 4127

1   stated that he did not know who Pastor was, right?

2       A    Correct.

3       Q    Why didn't you tell the readers of the

4   report that you didn't disclose the name of the

5   pastor in April of 2022?

6            MR. KLEIN:  Objection.  Asked and

7   answered.  You can answer again.

8            THE WITNESS:  Restate your question,

9   please.

10  BY MR. MACGILL:

11      Q    I'm sorry?

12      A    Restate your question.

13      Q    Why in that first paragraph did you not

14  make specific reference that you for your part in

15  that April interview did not make any reference to

16  the particular or specific name of the pastor

17  involved?

18      A    We did.  In line four it says:

19  Investigators asked Dr. Hunt several questions

20  about pastor's church without identifying pastor.

21      Q    Right.  And then when it came to your

22  interview notes, what you wrote is the following:

1   Does not remember the circumstances of that pastor

2   leaving, but remembers coming in to help that

3   church.  Right?

4        A    Correct.

5        Q    You put none of that information in this

6   paragraph here, did you?

7             MR. KLEIN:  Objection as to form.

8   Mischaracterizes her testimony but you can answer.

9             THE WITNESS:  We put in the report that we

10  asked him questions about the pastor's church

11  without identifying the pastor.

12  BY MR. MACGILL:

13       Q    But ma'am, but the reality here is --

14  and again we're going to give you the note -- hoe

15  never denied knowing at any time the pastor,

16  right?

17            MR. KLEIN:  Objection as to form.  Asked

18  and answered.  You can answer again.

19            THE WITNESS:  Dr. Hunt stated that he did

20  not know who that pastor was or why he had resigned.

21  BY MR. MACGILL:

22       Q    Right.  So were you -- in terms of the

1    impression you were attempting to create by those

2    at Guidepost and those that acted with you at

3    Guidepost, were you trying to convey in this

4    paragraph at the top of page 158 that he was not

5    honest or forthright in his answers to you.

6            MR. KLEIN:  Objection as to any impression

7    they were trying to create, but you can answer the

8    question.

9            THE WITNESS:  We were trying to report

10   back the findings of fact that we discovered during

11   our you investigation.

12   BY MR. MACGILL:

13       Q    Ma'am, I'm going to hand you -- and then

14   we're going to mark as the next exhibit -- 23.

15           (KILPATRICK Exhibit Number 23 was marked

16           for identification.)

17           MR. SANDERS:  This is going to be

18   electronic.  The Bates first page is GP 000434, and

19   the last page is GP0000444.

20   BY MR. MACGILL:

21       Q    So ma'am, Mr. Sanders is going to put in

22   front of you an iPad with this document on it.

```
 1   We'll provide a paper copy here in a few minutes.
 2              Now, ma'am, are these your interview notes
 3   that you created associated with an interview on
 4   April 26, 2022?
 5        A    Yes.  They appear to be.
 6        Q    And these are notes that you created at
 7   or near the time of the interview?
 8        A    Yes.
 9        Q    And did you circulate these to people at
10   Guidepost?
11        A    Yes.
12        Q    Who did you send this document to?
13        A    Russell Holske and I would have shared
14   this document and then shared with -- I'm not --
15   actually, I don't recall exactly who it got shared
16   with past Russ and I.
17        Q    We'll be reviewing later today some
18   information that you sent to the CEO of the
19   company.  Do you remember sending in connection
20   with your work some information to the CEO?
21              MR. KLEIN:  Some information or this
22   particular document.
```

1          MR. MACGILL:   Some information.

2          THE WITNESS:   Yes, I do remember sending

3    some information to the CEO.

4    BY MR. MACGILL:

5      Q    Looking at paragraph D that you were

6    summarizing, did you summarize the scope of the

7    investigation in your notes here at the bottom of

8    page 1 at the top of page 2?

9      A    Yes.

10     Q    Now Roman II says that this is the

11   summary where you summarize questions that he was

12   asked about being an SBC president?

13     A    I'm sorry --

14         MR. KLEIN:   Can you just point to the page

15   if you would.

16   BY MR. MACGILL:

17     Q    Page 3, Roman II, you are summarizing in

18   this section a portion of the interview where you

19   were asking questions concerning being an SBC

20   president; is that right?

21     A    Yes.

22     Q    And looking at Roman III on page 6, you

1  had questions about the Southern Baptist

2  Convention Executive Committee questions, right;

3  is that right?

4      A    I'm trying to find where --

5      Q    Page 6, Roman III?

6      A    Okay.  I'm at Roman III.

7      Q    So the second part of your interview --

8  the first part is what you've referenced, the

9  first part of your interview with Pastor Johnny

10 Hunt is you asked him questions concerning being

11 an SBC president, right?

12     A    We did.

13     Q    The next section of a portion of your

14 interview you've made reference had you've shown

15 here is you had questions for Pastor Johnny Hunt

16 about the Executive Committee; is that right?

17     A    Yes.

18     Q    And you summarized those questions and

19 his answers on pages six and seven; is that right?

20     A    Yes.

21     Q    If you go to page -- the next portion of

22 your interview with Pastor Johnny Hunt was

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 79 of 386 PageID #: 4133

1    pertaining to Roman IV Bylaws working group.

2              Do you see that?

3         A    Yes.

4         Q    Then the next section, Baptist Press

5    Communication questions, that was also part of

6    your interview, was it not?

7         A    Yes.

8         Q    And you summarize your questions and his

9    answers there; is that right?

10        A    Correct.

11        Q    And then here you have review of Hunt

12   post-presidency activity in the Roman VI?

13        A    Yes.

14        Q    And there you asked him about his own

15   sabbatical; is that right?

16        A    Correct.

17        Q    You asked him about his work with FBC

18   Woodstock; is that right?

19        A    Yes.

20        Q    You asked him about being -- you asked

21   him about Roy Blankenship as well, agreed?

22        A    Correct.

1    Q    You also covered with him under this

2  portion of the interview in this post-presidency

3  activity, you spoke with him about the Rehobeth

4  Baptist church history and its music minister; is

5  that right?

6    A    Yes.

7    Q    And specifically, you spoke to him --

8  you told him that you had understood that he had

9  come to help the folks at Rehobeth in the interim

10  and was recognized for his efforts as a pastor,

11  right?

12    A    Yes.

13    Q    And then one question that you reference

14  here, and did you ask him this question:  Do you

15  know any of the circumstances on why that pastor

16  left the Rehobeth in 2010?

17         Is that the question you asked him?

18    A    Yes.

19    Q    He answered you -- according to his

20  answer, at least according to you, does not

21  remember the circumstances of that pastor leaving

22  but remembers coming in to help the church; do you

1  see that?

2      A    Yes.

3      Q    Now, you knew when you asked that

4  question that you were asking about events 12

5  years prior, right?  Is that right?

6      A    Yes.

7      Q    And then you asked him about what Pastor

8  Johnny Hunt had done to incorporate initiatives

9  that involve sexual abuse; is that right?

10     A    Correct.

11     Q    And Roman VI, recommendations, closing

12 comments, you summarized those recommendations and

13 closing comments?

14     A    In Roman VII?

15          MR. KLEIN:  I believe you said six.  Did

16 you mean roman numeral VII, Rob?

17          MR. MACGILL:  Yes.  Roman VII.

18          MR. KLEIN:  You said six.  That's what's

19 in the record.

20          MR. MACGILL:  My mistake.

21          MR. KLEIN:  That's okay.

22

1    BY MR. MACGILL:

2        Q    Roman VI -- pardon me.  You have two

3    Roman VIIs, do you not?

4        A    Yes, you're right.

5        Q    Okay.  So Hunt-incorporated initiatives.

6    That was part of your interview, right?

7        A    Yes.

8        Q    And then the second Roman VII is

9    recommendation/closing, right?

10       A    Correct.

11       Q    Now, in these notes, now that you see

12   them again.  There's no express -- as you

13   testified, you made no express reference to the

14   allegations involving the REDACTED, right?

15       A    Correct.

16       Q    And with respect to this one question

17   that you asked about this pastor, you got an

18   answer within three weeks about whether he knew

19   that pastor, right?

20            MR. KLEIN:  Objection as to form.

21   BY MR. MACGILL:

22       Q    Let me have a better question.  Within

 1   three weeks of you doing the interview on these

 2   general topics that we've now reviewed, Pastor

 3   Johnny Hunt did confirm to you that he knew about

 4   the pastor's sabbatical and resignation in 2010.

 5           MR. KLEIN:  Objection.  Asked and

 6   answered.  You can answer again.

 7           THE WITNESS:  Yes.

 8   BY MR. MACGILL:

 9       Q    Now, I want to ask you about a comment

10   you made to the jury and to the court here.  You

11   said that you had "pretty good information" about

12   Pastor Johnny Hunt not being credible.  Remember

13   that testimony?

14           MR. KLEIN:  Objection.  I don't believe

15   those were exact words, but her memory will control.

16           THE WITNESS:  I said I had pretty good

17   information that he might not have been truthful

18   with us in that first interview when we asked about

19   the pastor without identifying him.

20   BY MR. MACGILL:

21       Q    Using your words, you had pretty good

22   information Pastor Johnny Hunt might not have been

1   truthful when asked about that pastor in 2010?

2        A    Correct.

3        Q    Now, were you yourself and Guidepost in

4   the business of reporting pretty good information

5   that might not have been truthful in a report that

6   would be made public to millions of people?

7             MR. KLEIN:  Objection as to form.  You can

8   answer in your individual capacity, not behalf of

9   the Guidepost if you can answer.

10            THE WITNESS:  Please ask the question

11  again.

12  BY MR. MACGILL:

13       Q    Did you understand, ma'am, that you

14  yourself were in the business of publishing to

15  millions of people "pretty good information" that

16  might not have been truthful?

17       A    I was not in the business of publishing

18  information to hundreds of people.

19       Q    But you understood that this document,

20  this was going to be published by Guidepost,

21  right?

22            MR. KLEIN:  Objection as to form.  You can

1    answer.

2              THE WITNESS:  Yes.

3    BY MR. MACGILL:

4        Q    And you understood just by the nature of

5    this, that this publication by Guidepost was going

6    to reach millions -- to repeat -- millions of

7    people, right?

8              MR. KLEIN:  Objection as to form.  You can

9    answer.

10             THE WITNESS:  I don't -- I don't -- I

11   don't have an idea of how many people it would

12   reach, but it was going to be published.

13   BY MR. MACGILL:

14       Q    Okay.  And you knew that there was going

15   to be a detailed report which would be made

16   public, right?

17       A    Correct.

18       Q    And for your part, you were comfortable

19   for your part to include "pretty good information"

20   that might not have been truthful in a report that

21   you knew was going to be made public.

22       A    So let me explain.  You asked me after

1    that first interview with Mr. Hunt, that was my

2    impression after that first interview.  After we

3    continued to interview and corroborate

4    information, that information was then considered

5    for the report.  That -- what's in the report is

6    not based on a single interview of him in April.

7    It's based on the totality of the investigation we

8    did.

9         Q    Right.  And you had no evidence that he

10   had been the untruthful with you on this topic

11   once it was confirmed who the pastor was and what

12   the year was, right?

13             MR. KLEIN:  Objection as to form.

14   Mischaracterizes her testimony.

15             THE WITNESS:  Please repeat the question?

16   BY MR. MACGILL:

17        Q    When the full reality, the full

18   disclosure by you about what you were actually

19   asking about in terms of the pastor in 2010 was

20   confirmed to Pastor Johnny Hunt, he told you

21   exactly what the reality was, didn't he?

22             MR. KLEIN:  Objection as to form.

1          THE WITNESS:  He -- he admitted that he

2    knew who the pastor was, and we provided it in that

3    second -- second paragraph of the report.

4    BY MR. MACGILL:

5      Q    Right.  And you were acting

6    surreptitiously yourself in that interview in

7    April 2022 when you did not disclose to him the

8    particular pastor that you were asking about,

9    right?

10          MR. KLEIN:  Objection.  Argumentative.

11    You can answer.

12          THE WITNESS:  I disagree with that

13    characterization.

14          MR. MACGILL:  You wanted --

15          MR. KLEIN:  I'd ask you to just let her

16    finish her answer, Rob, and then you can ask away.

17    BY MR. MACGILL:

18      Q    You wanted to create a false impression

19    to get a report out in the third week in May by

20    virtue of saying that you had "pretty good

21    information" that Pastor Johnny Hunt had not been

22    honest in circumstances where you didn't even give

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 88 of 386 PageID #: 4142

1  him the courtesy of telling him who the pastor was

2  that you were asking about, right?

3            MR. KLEIN:  Objection.  Argumentive.

4  Asked and answered.  You can answer.

5            THE WITNESS:  I disagree with your

6  characterization.

7            MR. MACGILL:  Okay.  So we can go ahead

8  and take a break.

9            VIDEOGRAPHER:  We're off the record at

10  10:35.

11            (Whereupon, a brief recess was taken.)

12            VIDEOGRAPHER:  We're back on the record at

13  10:53 a.m.  You may proceed.

14  BY MR. MACGILL:

15       Q    Now, I want to speak to you about your

16  investigative approach here and those that worked

17  in concert with you, including Mr. Holske.  Fair

18  enough?  Do you understand?

19       A    Yes.

20       Q    Okay.  Now, I want to focus on the way

21  in which you conducted yourself with the REDACTED.

22  I think you've confirmed earlier in your testimony

1    and you've seen with your own eyes what your

2    company said about how many interviews you and

3    Mr. Holske had, right?

4         A    Yes.

5         Q    And combined, you had nine interviews

6    with the REDACTED?

7              MR. KLEIN:  Objection as to form.  You can

8    answer.

9    BY MR. MACGILL:

10        Q    Just by reference, I just want to ask

11   you generally, do you remember approximately five

12   interviews with the REDACTED.

13             MR. KLEIN:  You said five.  Did you mean

14   nine, Rob.

15             MR. MACGILL:  Yeah.

16             MR. KLEIN:  And I apologize if I confused

17   you.

18             MR. MACGILL:  No.  He's the police here.

19   BY MR. MACGILL:

20        Q    Nine.  Nine.  Do you recall

21   approximately nine?

22        A    I don't recall an exact number.  I know

1  that there were several instances where we

2  interacted with the REDACTED.

3      Q    All right.  Now, as you went -- let me

4  just make sure we understand the background.  As

5  of April of 2022, did you as an investigative team

6  at Guidepost have any new information about the

7  sexual abuse allegations that had not already been

8  brought to the attention of the SBC prior to

9  Guidepost?

10     A    I don't know the answer to that.

11     Q    You don't think so?

12     A    I don't know.

13     Q    Don't know.  Okay.  Can you identify for

14 the court here any instances of sexual abuse your

15 investigative team had identified between October

16 of 2021 and April 30 of 2022 that had not been

17 already identified by the SBC prior to Guidepost's

18 involvement.

19          MR. KLEIN:  Objection.  Asked and

20 answered.  You can answer again.

21          THE WITNESS:  I don't recall.

22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 91 of 386 PageID #: 4145

1    BY MR. MACGILL:

2         Q    Don't recall?

3         A    Specifics, no.

4         Q    Okay.  Now, during the deposition today

5    we're going to go through some documents, but I

6    would ask you, if you are willing, to volunteer at

7    any time any sexual abuse allegation that is new

8    that you discovered prior to April 30, 2022, in

9    your work.  Okay?

10        A    Okay.

11             MR. KLEIN:  And I'm going to say you

12   should answer the question asked and you don't need

13   to volunteer anything.  But you should fully answer

14   whatever question Rob asks you.

15   BY MR. MACGILL:

16        Q    So this is up to you, but would you be

17   willing to provide me a name of any such person if

18   it comes to mind?

19        A    I'll answer your questions.

20        Q    Okay.  Fair enough.  Okay.  So what I'll

21   do, just so we're clear, I don't want to violate

22   any procedural requirements or anything that the

1    lawyers here are insisting on.  So what I'll do is

2    I'll periodically ask you, now that we've spent

3    another hour, do you remember.  Okay?

4        A    Uh-huh.

5        Q    I'm ask you just repeatedly that

6    question.  And Patrick Sanders, my colleague, will

7    remind me to do that.  All right?  Fair enough?

8        A    Uh-huh.

9        Q    Okay.  But remember, I'll be asking you

10    about whether any new sexual abuse allegations

11    came to light based on your many hours of work

12    from October 2021 to April 30 of 2022.

13           MR. KLEIN:  She's answered that question

14    already, Rob.

15           MR. MACGILL:  No, I know.

16           MR. KLEIN:  So if you ask the

17    same question --

18           MR. MACGILL:  She said no.  I'm just

19    saying all I want to know is when we go through more

20    documents does she remember something now.

21    BY MR. MACGILL:

22        Q    Okay?  Fair enough?

1      A      Fair.

2      Q      Now, as an investigator working in this

3   Guidepost effort, I want to see if we can't be a

4   little more specific about how you communicated

5   with the REDACTED?  Did you email them on matters

6   of substance pertaining to the details of what

7   happened?

8      A      I believe that we communicated with the

9   REDACTED, some through text messaging.  I think

10  most of that was logistical in nature.  There were

11  probably some emails and then phone calls or Zoom

12  or Teams -- Team calls.

13     Q      However, you'll admit now, right now

14  while we're here with you under oath, that you

15  emailed them about draft of the facts of the

16  report?

17     A      Right.

18          MR. KLEIN:  Objection.  I'm not sure that

19  was her testimony, but you can answer that question.

20          THE WITNESS:  Yes, we did.

21  BY MR. MACGILL:

22     Q      Okay.  So just to be clear, you didn't

1    just email pertaining to logistics of conferences

2    or meetings or calls, you emailed with drafts of

3    the facts of the report to the REDACTED?

4            MR. KLEIN:  Objection.  That

5    mischaracterizes her statement, but you can answer.

6            THE WITNESS:  I was referring to text

7    messages being about logistics, not about emails.

8    BY MR. MACGILL:

9        Q    Okay.  But you admit you emailed the

10   REDACTED and transmitted to them drafts of the

11   facts of the report?

12       A    We did.

13       Q    You did?

14       A    Yes.

15       Q    I want you to compare now.  Did you

16   ever, ma'am, ever email a draft of facts to Pastor

17   Johnny Hunt?

18       A    No.

19       Q    So it was one way as far as you were

20   concerned.  It was going to be draft of facts to

21   the REDACTED, never draft of facts to Pastor Johnny

22   Hunt, right?

1        A     There was never a request for Mr. Hunt

2   to view -- see anything with the facts.

3        Q     Request or not you never gave him a

4   draft of facts.

5        A     We never gave him a draft.  The REDACTED

6   requested to see a draft of their facts.

7        Q     Now, that would be inappropriate to give

8   them a draft of the facts, would it not, as an

9   Investigator working as you did in something as

10  sensitive as this matter.

11              MR. KLEIN:  Objection as to form.  You can

12  answer.

13              THE WITNESS:  No.

14  BY MR. MACGILL:

15       Q     Now, we have in the room some esteemed

16  lawyers representing the SBC Executive Committee,

17  and on the phone are some lawyers representing I

18  believe to SBC.

19              I want to know did you disclose to any of

20  the entities, the Executive Committee or the SBC,

21  that Guidepost, as a matter of its investigative

22  approach was sending a draft of the facts for the

1  report to the REDACTED?

2      A    I'm not aware of that.

3      Q    Now, wouldn't it be fair, if you were

4  going to be fair to the lawyers here in the room

5  or their clients or the lawyers on the phone or

6  their clients, to inform them that you are

7  communicating with drafts of facts to REDACTED and

8    REDACTED  ?

9      A    Please repeat the question.

10     Q    Can you admit now that it would have

11 been fair and appropriate to advise the SBC and

12 the Executive Committee that you were sending

13 draft facts to the REDACTED of the report?

14         MR. KLEIN:  Objection as to form.  You can

15 answer.

16         THE WITNESS:  No.

17 BY MR. MACGILL:

18     Q    It wouldn't be fair?

19     A    We were hired as an independent

20 third-party investigator, which means that we

21 control the methodology and the way that we

22 approach our work.  Who we interview, how we

1   interview, how we put a report together, and that

2   all.  They are not driving it and we don't -- we

3   don't tell them how we're doing things.

4       Q   Did you tell the Executive Committee or

5   their lawyers or the SBC that you had interviewed

6   the REDACTED on repeated occasions?

7       A   I did not tell them anything.

8       Q   Did anyone from your company to your

9   knowledge advise the Executive Committee or the

10   SBC that there were perhaps as many nine

11   interviews of the REDACTED in connection with this

12   investigation?

13       A   I don't know what was told to the SBC.

14       Q   One last question on this line.  Now,

15   with respect to the manner in which you did your

16   work, did you disclose to the executive or they

17   SBC that you had conducted a single interview on

18   this incident of Johnny Hunt and that you had

19   elected to have as many as perhaps nine interviews

20   of the REDACTED individually or collectively?

21       A   I did not have interaction with the

22   Executive Committee or the SBC.

1      Q      Fair enough.  To your knowledge, did

2   anybody at Guidepost so inform the Executive

3   Committee or the SBC?

4      A      I don't have any knowledge of that.

5      Q      Now, you spoke about your methodology,

6   and you said the methodology was up to Guidepost;

7   that is right?

8      A      Correct.

9      Q      And do you believe that the -- under the

10  terms of engagement that you had been, as a

11  company, entrusted to use appropriate

12  investigatory techniques?

13     A      Yes.

14     Q      Did you believe, ma'am, that when you

15  did your work that you were doing it pursuant to a

16  chain of command inside Guidepost?

17          MR. KLEIN:  Objection as to form.  You can

18  answer.

19          THE WITNESS:  Yes.

20  BY MR. MACGILL:

21     Q      And the boss was?

22     A      Julie Myers-Wood.

1          Q     Julie Myers-Wood was the CEO at that

2     time?

3          A     Yes.

4          Q     And was she involved in the manner in

5     which you did your investigation yourself as one

6     of the principal investigators?

7          A     I'm not sure what you are asking.

8          Q     Did she tell you what to do sometimes in

9     your investigation?

10          A     We discussed matters at times with

11    Ms. Myers Wood.

12          Q     And she would tell you what to do or, in

13    some cases, what not to do, right?

14          A     I don't recall it being directives or we

15    would -- we would meet and discuss the case on a

16    sporadic basis.

17          Q     But there were times or one at least one

18    time where she told you not to do certain things,

19    right?

20               MR. KLEIN:  Objection as to form.  You can

21    answer.

22               THE WITNESS:  I am not remembering

1   something specifically, but if you've got a document

2   I'm happy to look at it and see if I remember.

3   BY MR. MACGILL:

4      Q   Do you remember her telling you not to

5   do certain things or to take certain steps to the

6   REDACTED specifically in this investigation?

7      A   I don't recall anything specific. But

8   like I said, I'm happy to look at the document.

9      Q   Do you believe that she would be in the

10   best position to determine for the company

11   Guidepost what was appropriate in terms of an

12   investigatory technique as compared to yourself?

13         MR. KLEIN: Objection as to form.

14   Competence. But you can answer.

15         THE WITNESS: I think that Julie is very

16   competent and she is the CEO of the company.

17   BY MR. MACGILL:

18      Q   She's the boss?

19      A   Yeah. She's the boss.

20      Q   And she would be better able to

21   determine for the company what was an appropriate

22   investigatory technique as to compared to one of

1  the investigators like yourself or Mr. Holske?

2  Fair statement?

3      A    She would have the final word.

4      Q    Now, I want to be little bit more

5  specific.  Do you recall writing an email to REDACTED

6  REDACTED 11 days prior to the publication of the

7  report, where you provided to him a draft of

8  facts?

9      A    I do recall us providing a draft of

10  facts.  I'd have to see documents to verify the

11  dates.

12      Q    And with respect to this is an

13  investigatory technique, are you, fairly stated,

14  way out of bounds at this point of any

15  investigatory technique that would be advised by

16  any accredited organization in providing a draft

17  of facts to a complainant's husband?

18          MR. KLEIN:  Objection as to form.  You can

19  answer.

20          THE WITNESS:  No.  We were communicating

21  with the REDACTED together.  And no, I would say we

22  were not out of bounds.  We had had conversations

1   and interviews with the REDACTED.  And at any

2   point -- we told the REDACTED at any point prior to

3   us having to turn in the report, they could say no

4   that they didn't want to be part of it.

5       So we provided a draft for the REDACTED,

6   not for them to change anything or to put in what

7   they wanted.  The final decision was ours.  But we

8   wanted to make sure to protect and respect REDACTED

9   REDACTED's story and just make sure that we had

10  gotten the facts correct and that if there was

11  anything nuanced or that we had mischaracterized

12  in some way we wanted to consider that.

13  BY MR. MACGILL:

14      Q   Let's talk about exactly what you asked

15  them.  And one point, 11 days prior to the report

16  being published, didn't you ask the REDACTED,

17  specifically REDACTED and   REDACTED  , to review the

18  draft of facts, one, and to let those of you at

19  Guidepost know if they had any corrections or

20  clarifications or questions.

21      A   If that's what you are reading from the

22  email, then yes.  But what I'm telling you is that

1   was to give them a chance to give us comments for

2   them to see and for them to make a final decision

3   whether they were going to participate.  So part

4   of working with survivors is that you want them to

5   have the ability to say, no, I don't want to go

6   forward with this.  And so we were giving her that

7   ability.

8           (KILPATRICK Exhibit Number 24 was marked

9           for identification.)

10  BY MR. MACGILL:

11      Q    I'm going to hand you Exhibit 24.  And

12  before we get to the details of Exhibit 24 --

13  before we get to the details of Exhibit 24, I want

14  to go back to the question at the time as of

15  May 11, your company has not a single sexual abuse

16  incident to report that is in addition or

17  different to what the SBC already had, right?

18          MR. KLEIN:  Objection as to form.  Asked

19  and answered.

20          MR. MACGILL:  You may answer.

21          MR. KLEIN:  You can answer.  I'm sorry.

22          THE WITNESS:  So when you look at the

1    engagement scope of abuse allegations involving EC

2    members, at that point I was not aware of any other

3    allegations other than this one.

4    BY MR. MACGILL:

5         Q    Other than Pastor Johnny Hunt?

6         A    Correct.

7         Q    So as of May 11, 2022, you, as you sit

8    here today, having prepared to testify, having met

9    with the counsel here representing Guidepost for

10   two days or during two days, you have no -- you

11   cannot identify an additional sexual abuse

12   allegation other than what the SBC already knew

13   about as of this date May 11, 2022?

14             MR. KLEIN:  And I just want to make

15   sure -- and Rob is not asking you for this, but make

16   sure that you are not revealing any communications

17   between us and yourself.  I'm mention that.  He's

18   not looking for that, but just make sure you don't

19   mention that.

20             THE WITNESS:  For the portion of the

21   report that dealt with allegations of abuse against

22   Executive Committee members, at that point I knew of

```
 1   no other -- no other situations other than the

 2   situation with Mr. Hunt in that section.

 3   BY MR. MACGILL:

 4       Q    And you know, even outside the realm of

 5   Executive Committee members, you knew of no other

 6   abuse allegations that the SBC did not already

 7   know about as of this date May 11.

 8       A    I don't -- I don't know about that

 9   question.

10       Q    . you don't know of any other person.

11   Your investigation didn't reveal any Executive

12   Committee member or anyone else that was involved

13   in any sexual abuse allegation that the SBC did

14   not already know about at of this date, May 11.

15       A    I don't -- I don't know that I can

16   answer that.  I don't know the answer to that

17   question.

18       Q    You don't have any person you can

19   identify?

20           MR. KLEIN:  Objection.  I don't believe

21   that was her testimony, but you can answer.

22           THE WITNESS:  I don't -- I don't know the
```

1   answer to the question that you are asking.

2   BY MR. MACGILL:

3        Q    Why?

4        A    Well, the scope of our engagement in

5   that first prong was abuse allegations involving

6   Executive Committee members.  The other -- the

7   other things in our investigation were mishandling

8   of abuse, mistreatment of survivors, retaliation

9   resistance to initiatives, and those types of

10  things.

11       Q    Okay.  I understand?

12       A    Over the course of our engagement we

13  received calls from reporters of abuse, and we had

14  to sort through those to determine whether it fit

15  into that top prong.

16       Q    I see.

17       A    But some of the people we talked about,

18  the SBC may not -- that we talked to, the SBC

19  might not know about.  I don't know the answer to

20  that.

21       Q    I see.  I now understand your answer.

22  Okay.  So with that clarification we can move

1    forward.  Now, you have Exhibit 24 in front of

2    you.  All right.  Now, Exhibit 24, this is your

3       REDACTED    prior to the publication of the

4    report, right?

5         A    Publication on May 22nd.

6         Q    Yes.

7         A    Yes.

8         Q    And you are sending this to   REDACTED

9    with a copy to your co-lead investigator; is that

10   right?

11        A    Yes.

12        Q    And it is -- you attached the REDACTED'

13   facts document, right?

14        A    I did.

15        Q    And you say to REDACTED -- this was

16   addressed to not just REDACTED but to also REDACTED.

17        A    Yes.

18        Q    So let's set the context for the jury

19   here.  So this is a   REDACTED  , and this is a

20   day after you had spoken to -- you yourself had

21   spoken to   REDACTED  ; is that right?

22        A    I'm want recalling exactly when I spoke

1  with her -- if I spoke with her before this or

2  after this.

3      Q   If you take a look at the

4  interrogatories, the interrogatories show that on

5  May 10, 2022, you talked to the complainant, you

6  yourself by telephone.

7          MR. KLEIN:  I don't believe she has

8  Exhibit 1 in front of her.  I can show her mine,

9  Rob --

10          MR. MACGILL:  Yeah, that would a good --

11          MR. KLEIN:  -- to make it quick.  And then

12  if you can just ask your question again, Rob, once

13  she had the document in from of her.

14  BY MR. MACGILL:

15      Q   So you see complainant interview on

16  May 10, 2022?

17      A   Yes.

18      Q   Does this remind you that you spoke to

19                      REDACTED

20      A   Yes.

21      Q   And then so you say to them:  REDACTED

22                  REDACTED                          Do

1   you see that?

2        A    Yes.

3        Q    You spoke to both of them REDACTED

4   REDACTED on May 10?

5        A    I would have to look at my notes on

6   that.

7        Q    But according to these interrogatories

8   and this email you had done so?

9        A    If that's what's there, then yes.

10       Q    Okay.  Then continuing,    REDACTED

11                      REDACTED

12            REDACTED            Was this proposed

13   language pertaining to Pastor Johnny Hunt and the

14   REDACTED for the final report which was going to be

15   published REDACTED later?

16       A    This was proposed language only for the

17   facts that the REDACTED were aware of from their

18   Interviews.

19       Q    But you, nevertheless, were giving the

20   person you regarded as the complainant and you

21   were                REDACTED              , were you

22   not?

1      A      We were               REDACTED

2    REDACTED .

3      Q      Yeah.   And you were asking -- you were

4    asking them to REDACTED -- you said,      REDACTED

5    Right?

6      A      Yes.

7      Q      And then you were calling them to

8    action.      REDACTED      right?

9            MR. KLEIN:  Objection.  Asked and

10   answered.  You can answer again.

11           THE WITNESS:  Yes.

12   BY MR. MACGILL:

13     Q      Yes.  Now, looking at what you asked

14   them to do, in this call to action REDACTED

15   REDACTED you said:               REDACTED

16      REDACTED

17           Do you see that?

18     A      Yes.

19     Q      By that you meant      REDACTED

20           REDACTED

21     A      If they have      REDACTED

22    REDACTED

1          REDACTED                         Yes.

2      Q    All right.  And       REDACTED

3          REDACTED

4      A    Yes.

5      Q    And also tell -- you were    REDACTED

6      REDACTED      prior to the publication if the

7   Guidepost report, if      REDACTED        right?

8      A    Correct.

9      Q    Now, you then say:         REDACTED

10                    REDACTED                      Do

11   you see that?

12      A    Yes.

13      Q    When you said        REDACTED        you

14   are referring to you and the  REDACTED ?

15      A    No.  I was referring to myself and

16   Mr. Holske.

17      Q    But you addressed this to  REDACTED  and

18   REDACTED  and you said in the last line    REDACTED

19     REDACTED   weren't you referring to them?

20          MR. KLEIN:  Objection.  Asked and answered

21   she can answer again.

22

1    BY MR. MACGILL:

2         Q    Yeah.  I think that's a fair objection.

3              Were you mistaken when you said to this

4    court that when you said -- you said REDACTED and

5    REDACTED, in the last clause, you said, REDACTED

6      REDACTED    You were not referring to you and REDACTED

7    and REDACTED.  Is that your testimony?

8         A    That's correct.

9         Q    Okay.  So you were referring to we.  Is

10   that who?  You and Mr. Holske and the Guidepost

11   team?

12        A    Myself, Mr. Holske, the Guidepost team

13   would decide what got shortened, what went into

14   the report, and like I said, we had talked to the

15   REDACTED and had told them at any point they could

16   decide that they did not want to move forward and

17   that we would allow them to see a draft of the

18   facts prior to moving forward.

19        Q    But let's make it clear so there's no

20   question about what you were doing here.  You

21   didn't ask them in a single line or word of this

22   Exhibit 24 about whether they wanted to move

1   forward, did you?

2          A     Not in this particular REDACTED.

3          Q     No, ma'am.  And had you intended to ask

4   them whether they wanted to move forward or not,

5   you as an investigator and as a citizen, would

6   have taken care to say we're asking you now to

7   tell us REDACTED before the publication of this

8   report whether you want to move forward or not?

9          MR. KLEIN:  Objection as to form.  You can

10  answer.

11          THE WITNESS:  Please ask the question.

12  BY MR. MACGILL:

13         Q     You didn't ask them whether they wanted

14  to move forward, did you, in this REDACTED?

15         A     Not in this REDACTED.

16         Q     And in fact, you asked something very

17  different in this REDACTED.  You didn't ask them

18  whether they wanted to move forward.  You called

19  them to action by saying            REDACTED

20                         REDACTED

21  REDACTED .  Those were your words, right?

22          MR. KLEIN:  Objection.  The REDACTED speaks

1   for itself.  She can answer the question.

2            THE WITNESS:  Yes.  That's what I put in

3   the REDACTED.

4   BY MR. MACGILL:

5        Q    Now, it's worse than that, isn't it,

6   because you not only          REDACTED          ,

7   they gave you redline changes to the Guidepost

8   document, didn't they?

9        A    I'm not sure what you are referring to

10  as it's worse than that.

11       Q    It's much worse than you asking for

12            REDACTED          in sense that you

13  received and utilized red lines to the Guidepost

14  report from the REDACTED, did you not?

15           MR. KLEIN:  Objection as to form.  You can

16  answer the question.

17           THE WITNESS:  So --

18  BY MR. MACGILL:

19       Q    Let me restate.  What happened was you

20  received and made changes to the Guidepost request

21  made by the REDACTED, right?

22       A    We received -- we received a red line

1  document back from the REDACTED.

2      Q    And you used the red line?

3      A    And we, Russell Holske and I, went

4  through it line by line and considered everything

5  they said and made decisions about what we were

6  going to use and what we were not going to use,

7  whether we felt like it lined up with the facts

8  that we had found that they had shared with us or

9  not.  Most of it was more about just -- I don't

10  know a good word for it.  Like their -- they

11  wanted a certain tone and wording.  That was not

12  something that we changed.

13     Q    So ma'am, with respect to what happened,

14  in fact, you and Mr. Holske was emailing about

15  whether the draft report had "impact," right?

16     A    I'm not sure what you are referring to.

17     Q    So you exchanged some texts at this very

18  point in time, did you not, that is a day after

19  this email, you and Mr. Holske were texting one

20  another, and Mr. Holske said to you that the --

21  that the draft, even after edits, was "missing the

22  impact," right?

 1          MR. KLEIN:  Objection as to form.  You can

 2   answer.

 3          THE WITNESS:  I'm happy to take a look at

 4   your document.

 5   BY MR. MACGILL:

 6      Q    You don't remember that?

 7      A    I don't remember that specifically.  I

 8   mean I'm not saying -- there's a lot of

 9   communication in this case about all different

10   types of matters unrelated to Hunt, so if you want

11   to let me look at the text message, I'm happy to

12   respond.

13      Q    Now one other context before we go to

14   how you and Mr. Holske were acting at the time, I

15   want to focus on something different.  So at the

16   time that you asked for the facts to be reviewed,

17   the draft of facts to be reviewed by the REDACTED,

18   you had not yet interviewed Pastor Johnny Hunt on

19   the issues pertaining to this matter, had you?

20      A    I believe that his interview came just

21   after -- like it may have been May 12th I think.

22      Q    Yes.  So you sent -- you sent Exhibit 24

1  before you interviewed Pastor Johnny Hunt on the

2  incident, didn't you?

3      A    That is correct.  That's why it's called

4  a draft because we knew that time was -- it was

5  coming time for us to turn in a report on the

6  14th.

7      Q    Ma'am, how in the world can you act as

8  an investigator in an independent investigation,

9  draft the facts, send it to complaining parties,

10  without having even interviewed Johnny Hunt about

11  this incident.  How could you do that?

12      A    We did this because that was the order

13  in which Mr. Hunt was available, and we knew that

14  if Mr. hunt were available, then we were going to

15  interview him, but we had to start getting some

16  things written for deadlines.  These things were

17  not set in stone until we got the full

18  investigation finished and were not submitted

19  until we got everything done.

20      Q    Now, if you look at the draft of facts,

21  ma'am, you are very specific about the incident,

22  are you not?

 1      A    Yes.

 2      Q    To be specific --

 3      A    Yes.

 4      Q    -- let me restate -- make a better

 5  question.  Paragraph after paragraph after

 6  paragraph, before you interviewed Dr. Johnny Hunt,

 7  you make reference to the event as alleged by

 8  REDACTED and  REDACTED  , right?

 9      A    That's correct.  This was solely based

10  on their information.

11      Q    How many paragraphs -- let's count them.

12  How many paragraphs did you reference the events

13  involving Pastor Johnny Hunt and  REDACTED  in

14  this draft of facts before you met with pastor

15  Johnny Hunt?

16          MR. KLEIN:  Objection.  The document

17  speaks for itself.  I would also ask -- and you

18  haven't done so yet, Rob, I appreciate that -- that

19  if we're going to quote from the document --

20          MR. MACGILL:  We're not.

21          MR. KLEIN:  Great.  So then my only

22  objection is the document speaks for itself.  I

1    would ask you also, Ms. Kilpatrick, not to read from

2    the document, but you certainly can answer Mr.

3    MacGill's questions.

4              MR. BUNDREN:  Mr. MacGill, can I ask a

5    question?

6              MR. MACGILL:  Yes.

7              MR. BUNDREN:  Have you marked the email

8    and the facts or just the facts.

9              MR. MACGILL:  Both.  The facts 13507

10   through 13510.

11             MR. BUNDREN:  Thank you.

12   BY MR. MACGILL:

13        Q    Now, let's count together the number of

14   paragraphs in this draft of facts that is attached

15   to Exhibit 24.

16        A    I believe there are nine.

17        Q    Nine.  Thank you.  How many total

18   paragraphs are there in your draft of facts?

19             MR. KLEIN:  Objection.  I think just asked

20   and answered unless there was a miscommunication

21   about the question.

22             THE WITNESS:  There are nine.

1  BY MR. MACGILL:

2      Q    So all nine paragraphs of this draft

3  involve the incident as between   REDACTED   and

4  Pastor Johnny Hunt, right?

5      A    Yes.

6      Q    All right.  You sent this, as you've

7  testified, just to add some context to the next

8  question, so you sent Exhibit 24 before you met

9  with Pastor Johnny Hunt, right?

10          MR. KLEIN:  Objection.  Asked and

11  answered.  You can answer.

12          THE WITNESS:  Yes.

13  BY MR. MACGILL:

14      Q    Just for context?

15      A    Yes.

16      Q    And let me hand you Exhibit 18.  Do you

17  have Exhibit 18 in front of you?

18      A    Yes, I do.

19      Q    Now, Exhibit 18.  Is this a   REDACTED

20                      REDACTED

21     REDACTED

22      A    Yes.

1      Q    And this is -- you see this?  It's REDACTED

2      REDACTED          Is this --        REDACTED

3      REDACTED

4      A    I believe that's REDACTED

5      Q    Yes, ma'am.  And ma'am, we could show

6   you the metadata, but the metadata confirms you're

7   correct, that yes, that is REDACTED   And then he

8                          REDACTED

9                          REDACTED

10    REDACTED

11           Do you see that?

12     A    Yes.

13     Q    All right.  Now, so this is    REDACTED

14  Is this -- are these edits -- have you gotten

15  edits from the REDACTED at that point in time?

16     A    I don't know the answer to that.

17     Q    All right.  Now, ma'am, your job, was it

18  not, was to provide an independent investigation,

19  right?

20     A    Yes.

21     Q    You were to report facts, right?

22     A    Yes.

1     Q   You were not -- to repeat -- you were

2  not, you nor your company, were not engaged to

3  create  REDACTED  were you?

4        MR. KLEIN:  Objection as to form.  You can

5  answer.

6        THE WITNESS:  I'm not sure -- no.  It was

7  not our job to create REDACTED.  But I'm not sure what

8  Mr. Holske actually meant by that.  You would have

9  to asked him.

10  BY MR. MACGILL:

11     Q   That would not be up to the lawyers or

12  you or anyone else.  The jury will make that

13  determination.  But with respect to their role, I

14  just want to ask you a couple follow-up questions.

15        The jury, ma'am, will determine what Mr.

16  Holske meant when he said that    REDACTED

17         REDACTED         Did you at that

18  point, when you read with your own eyes that he was

19  making reference about his feeling in this REDACTED

20        REDACTED        Did you feel

21  compelled in a sense to raise your hand and say:

22  Let's stop.  We're not, Mr. Holske, we're not

1   attempting to create REDACTED  We're attempting to

2   create an independent valid report.

3          Did you do any such thing?

4          MR. KLEIN:  Objection as to form.

5   Compound question.  You can answer.

6          THE WITNESS:  Flow.

7   BY MR. MACGILL:

8      Q   Now, I want to think about the other

9   defendants in this case for a minute.  You did not

10  do that within Guidepost, you didn't raise your

11  hand, so to speak, and say my co-lead investigator

12  is searching for REDACTED  I don't think we

13  should do this.

14          But my question is, did you raise your

15  hand, so to speak, and say we need to advise the SBC

16  or the Executive Committee that we have an

17  enterprise here that's working for REDACTED not

18  independent report.  Did you do anything like that

19  as to the other defendants in this case?

20          MR. KLEIN:  Objection.  Mischaracterizes

21  her testimony, but you can answer.

22          THE WITNESS:  No, I did not.

Veritext Legal Solutions
www.veritext.com                                                     888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 124 of 386 PageID #:
4178

1   BY MR. MACGILL:

2       Q    At any point afterwards did you yourself

3   or anybody at Guidepost reach out to the people of

4   the SBC or the people of the Executive Committee

5   of the SBC and say we've made a terrible mistake

6   here.  We weren't objective in our reporting and

7   we now know, seeing with these documents and what

8   we did at the time that we did the wrong thing

9   here.  We searched for REDACTED   We searched for

10  things like explosiveness.  We apologize.

11  Anything like that where you made an apology to

12  the SBC.

13          MR. KLEIN:  Objection.  Mischaracterizes

14  the testimony, but you can answer.

15          THE WITNESS:  I never had communications

16  with SBC or the EC.

17  BY MR. MACGILL:

18      Q    Even after the fact when you see what's

19  happened here in terms of what you did or how you

20  did it, did you remember making any entreaty, so

21  to speak, to apologize to the Executive Committee

22  that we as a company were working and looking for

1    REDACTED explosiveness, those types of things.

2    We apologize to you, the members of the Executive

3    Committee?

4            MR. KLEIN:  The fact that she answered

5    doesn't mean you have to repeat the exact same

6    question again.  However --

7            MR. MACGILL:  This is EC only, not SBC.  I

8    think they're different.  I'll restate it.

9    BY MR. MACGILL:

10       Q    Did you make any -- let me just make

11   sure -- maybe I misstated.

12           MR. KLEIN:  I thought you said the same

13   thing both times.  She gave you an answer to that

14   question.

15   BY MR. MACGILL:

16       Q    Did you make any apology at any point,

17   yourself, did you take any steps yourself to reach

18   out after the fact to the Executive Committee or

19   the SBC about these events?

20       A    I have not had communications with the

21   SBC or the EC about these events.

22       Q    One final question on the text.  So with

1    respect to this      REDACTED      -- he said --

2    Mr. Holske says                REDACTED

3            REDACTED                And then you responded

4    by saying             REDACTED

5            Do you see that?

6        A    Uh-huh.

7        Q    You are were referring to the REDACTED from

8    the REDACTED?

9        A    Yes.

10       Q    And you then say:       REDACTED

11                        REDACTED

12       REDACTED

13            MR. KLEIN:  That's not what it said there.

14   It says        REDACTED       It does not say REDACTED

15       REDACTED

16            MR. MACGILL:  My mistake.

17            MR. KLEIN:  That's okay.

18   BY MR. MACGILL:

19       Q                   REDACTED

20            REDACTED                   That's your

21   word, right?

22       A    Yes.

1      Q    Now, had you done -- as of the time of

2    this text, had you taken in and reviewed the edits

3    from the REDACTED?

4              MR. KLEIN:  Objection.  I believe asked

5    and answered.  But you can answer again.

6              THE WITNESS:  I don't -- I don't remember

7    in the time sequence whether I had looked at their

8    edits.  But from the point of that week of May

9    through the time we turned in the report, we were

10   constantly working on different parts of the report.

11   So I can't give you specifics.

12   BY MR. MACGILL:

13     Q    But I think you had their edits by this

14   time, didn't you?  Can't you tell by looking at

15   the REDACTED?

16             MR. KLEIN:  Objection.  Asked and

17   answered.  He's hoping for a different answer, but

18   answer his question.

19             THE WITNESS:  I don't know the answer to

20   that.

21   BY MR. MACGILL:

22     Q    Okay.  Fair enough.  Not hoping for -- I

1   know the facts.  Okay?

2              MR. KLEIN:  Objection.  You are not

3   testifying, so she is.  So about the facts, if you

4   are called to testify we'll hear your side of the

5   facts, but at the moment it's only Ms. Kilpatrick.

6              MR. MACGILL:  No.  I'm just answering

7   counsel.  You wanted to know, and I'm telling you I

8   know the facts, and you will too soon.

9              MR. KLEIN:  I'm aware of the facts fully.

10  BY MR. MACGILL:

11       Q    All right.  So you -- will you stipulate

12  that your company had these edits before the text?

13             MR. KLEIN:  Logistically that your client

14  lied about his conversation on May 12.

15             MR. MACGILL:  He didn't.

16             MR. KLEIN:  Well, then we won't have a

17  stipulation.  Let's just move forward, Rob.  We can

18  talk offline.

19             MR. MACGILL:  You should -- you should

20  stipulate -- okay.  We'll make the proof that you

21  should be admitting to.

22             MR. KLEIN:  As will we.

```
 1          (KILPATRICK Exhibit Number 25 was marked
 2          for identification.)
 3   BY MR. MACGILL:
 4       Q    Exhibit 25.  Do you see this is from
 5    REDACTED   dated   REDACTED
 6       A    Yes.
 7       Q    Tell this court when it was that he sent
 8   this to you.
 9       A    The            REDACTED
10    REDACTED
11       Q    So look at the     REDACTED
12          REDACTED            When did you send  REDACTED
13   REDACTED
14       A    I can tell a time that    REDACTED
15   I can't see       REDACTED
16       Q    When did he send  REDACTED
17          MR. KLEIN:  You mean  REDACTED
18   BY MR. MACGILL:
19       Q     REDACTED
20       A         REDACTED
21       Q    All right.  So that's after you had
22   received this; is that right?
```

1      A    It was after this email had come in, but

2  I can't give you -- I can't give you information

3  as to when I actually looked at this, and we did

4  anything with it.

5      Q    Now, ma'am, I am going to put up on the

6  courtroom -- through the ELMO system here, I'm

7  going to put up on the screen the attachment to

8  Exhibit 25.  This is -- just to repeat -- this

9                     REDACTED

10               REDACTED              Right?

11     A    Yes.

12     Q    And when you look at this, you can see

13 that this is --     REDACTED      -- let me ask

14 you this:  Can you confirm that    REDACTED

15 REDACTED that were described in the    REDACTED    by

16 Mr. Holske about REDACTED?

17               MR. KLEIN:  Objection as to her personal

18 knowledge as to what Mr. Holske said, but you can

19 answer.

20               THE WITNESS:  I don't know if this is what

21 we was talking about or -- I don't know, or he may

22 have been talking about something else.

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 131 of 386 PageID #: 4185

1  BY MR. MACGILL:

2      Q    Now, can you look at REDACTED that were

3  provided by the REDACTED?

4      A    Yes.

5      Q    Are these REDACTED that you received on

6  proposed language for the Hunt-REDACTED section by

7  the REDACTED themselves?

8      A    Yes.

9      Q    Now, as an investigator could you tell

10 the court and jury what your reaction was when you

11 saw REDACTED?

12     A    I was a little -- I was a little

13 frustrated.

14     Q    Why were you frustrated?

15     A    Because we -- our intent had been to

16 send the REDACTED the facts for kind of fact check

17 clarification, nuance, and we got back more

18 suggestions or contributions from their standpoint

19 than I expected.

20     Q    All right.  And in fact, they, in

21 essence, rewrote your report -- your draft report,

22 right?

1          MR. KLEIN:  Objection as to form, but you

2    can answer.

3          THE WITNESS:  They inserted significant

4    portions of text into our report.

5    BY MR. MACGILL:

6       Q    Did you consider that they had

7    essentially attempted to rewrite your report?

8       A    It felt a little bit like that, yes.

9       Q    Okay.  Now, with respect to it feeling a

10   little bit like that on May 12, that was reason

11   for you to stop and say this is a problem.  We've

12   got people who are not reporting objectively the

13   circumstances.  Right?

14          MR. KLEIN:  Objection.

15   BY MR. MACGILL:

16      Q    Did you have that kind of reaction?

17          MR. KLEIN:  My apologies.  Objection as to

18   form.  You can answer.

19          THE WITNESS:  No.  I did not have that

20   opinion.

21   BY MR. MACGILL:

22      Q    So you will deny that any reasonable

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 133 of 386 PageID #:
4187

1   person looking at this would have concluded that

2   REDACTED   and his wife at this time, REDACTED

3   REDACTED, 10 days prior to the publication of the

4   report had shown by this communication a lack of

5   objectivity to say the least?

6            MR. KLEIN:  Objection as to form.  Calls

7   for a legal conclusion.  Argumentative.  You can

8   answer.

9            THE WITNESS:  Please reask the question.

10  BY MR. MACGILL:

11       Q    Looking at this you understood that

12  there was an issue of credibility of the REDACTED

13  at the time you received this document.

14            THE WITNESS:  No, I did not.  I did not

15  see this as a credibility issue with the REDACTED.

16  BY MR. MACGILL:

17       Q    You testified earlier that credibility

18  is critical to everyone who is a witness,

19  including the REDACTED, do you recall that line of

20  testimony?

21       A    That is correct.

22       Q    Based on the REDACTED' information and

1   the details that they provided, you understood

2   that when you saw this -- this document that had

3   been sent to you on REDACTED, that there was a

4   credibility concern at least.

5           MR. KLEIN:  Objection.  Asked and

6   answered.  You can answer.

7           THE WITNESS:  There was not a credibility

8   concern with this document.

9   BY MR. MACGILL:

10      Q    Don't you agree that any reasonable

11  person, any reasonable person doing an

12  investigation would look at this document and come

13  to the conclusion that there was an issue of the

14  REDACTED' credibility on the issues involving the

15  incident and Pastor Johnny Hunt at the time they

16  read with their own eyes this document?

17          MR. KLEIN:  Objection.  Same question

18  that's been asked twice.  It's asked and answered.

19  You can answer one more time.

20          THE WITNESS:  No.

21  BY MR. MACGILL:

22      Q    I want to talk for a minute about the

1    SBC.  When this came in did you put the SBC on

2    notice or did your company put SBC on notice of

3    this document and its contents?

4              MR. KLEIN:  Objection.  You are speaking

5    on your individual behalf?

6              MR. MACGILL:  Yes.

7              MR. KLEIN:  If you know of conversation

8    with people at Guidepost you can answer.  Otherwise

9    only answer in your individual capacity.

10              THE WITNESS:  I did not have any

11    communication with the SBC or the EC, and I'm not

12    aware of any other communication that someone else

13    may have had.

14    BY MR. MACGILL:

15        Q    On this document once you received it?

16        A    On that document.

17        Q    Okay.  Is the same true of the Executive

18    Committee that you yourself nor anyone at

19    Guidepost put the Executive Committee on notice of

20    the contents of this particular document once it

21    was received?

22              MR. KLEIN:  Objection.  That was not her

1   testimony, but she can answer that question if you'd

2   like.

3              THE WITNESS:  Please ask the question

4   again.

5   BY MR. MACGILL:

6       Q    Did you take any steps once you received

7   this document to separately reach out to the

8   Executive Committee of SBC to put them on notice

9   of the contents of this document?

10      A    No.

11      Q    Do you know anybody at Guidepost that

12  did?

13      A    I don't have any information about that.

14      Q    Now, after these events that we've now

15  been covering involving you and the REDACTED and

16  involving Mr. Holske and the REDACTED that we've

17  just now been covering in your testimony, did the

18  CEO become aware that you had been providing

19  drafts of facts to the REDACTED?

20             MR. KLEIN:  Objection.  Asked and

21  answered.  You can answer.

22             THE WITNESS:  I believe that she was made

1   aware.  I mean, we were communicating with the CEO

2   regularly on the status of where things were.

3   BY MR. MACGILL:

4       Q    Including these exchanges and providing

5   drafts of facts to the REDACTED?

6       A    I believe that she was aware of this.

7       Q    Did you advise the CEO prior to sending

8   this draft of facts on May 12 -- pardon me.

9   Strike that.

10          Did you advise the CEO of Guidepost that

11  you were going to provide a draft of facts on

12  May 11, 2022, before you did so?

13      A    I believe that we did make her aware we

14  were going to provide a draft of facts to them.

15      Q    Did she approve it before you sent

16  Exhibit 24?

17      A    I don't recall whether we -- I don't

18  recall whether she viewed this email before we

19  sent it or not.  I don't recall that part.

20      Q    But your recollection is that you got

21  the CEO's approval before you sent Exhibit 24.

22              MR. KLEIN:  Objection.  Mischaracterizes

1    her testimony, you can answer.

2          THE WITNESS:  I don't recall a direct

3    approval from the CEO.  I don't have a memory of

4    that.

5    BY MR. MACGILL:

6       Q    Do you recall -- did the CEO of the

7    company Guidepost ever instruct you that you were

8    not to send a draft of any Guidepost report for

9    line by line edits to the REDACTED.

10      A    I don't recall anything like that.

11      Q    Okay.  But whether that happened or not,

12   you did send to the REDACTED for review a draft of

13   facts and potentially line-by-line edits when you

14   asked for                REDACTED

15   in Exhibit 24?

16      A    I did send them a draft of the facts.

17   It was not for a line-by-line corrections from

18   them, but I did send it, and that's what I got

19   back.

20      Q    Okay.  You anticipated my next question.

21   Whether you asked for it expressly or not in

22   Exhibit 24, what you got back was line-by-line

1    edits on the 12th of may?

2        A    Correct.

3        Q    From the REDACTED.

4        A    Yes.

5        Q    Okay.  Now, do you remember telling

6    Mr. Holske -- well, let me hand you Exhibit 26.

7            (KILPATRICK Exhibit Number 26 was marked

8            for identification.)

9            Now, I'm asking you read the   REDACTED

10   There's REDACTED at the bottom I want to ask you

11   about on            REDACTED

12           Do you see that?

13       A    Yes.

14       Q    All right.  Now, this is   REDACTED

15                   REDACTED

16                    REDACTED

17   is that right?

18       A    Yes.

19       Q    All right.  And so you shared the draft

20   of facts with the        REDACTED       , right?

21       A    Yes.

22       Q    And then they came back to you with line

```
 1   edits, line-by-line edits, right?   REDACTED

 2             MR. KLEIN:  Objection.  Asked and

 3   answered.  But if you are leading to a question,

 4   I'll let you move there.  You can answer.

 5             THE WITNESS:  Yes.

 6   BY MR. MACGILL:

 7       Q    All right.  So then you took the REDACTED

 8   line-by-line edits and created your own document,

 9   right?

10             MR. KLEIN:  Objection as to who the we is,

11   but you can answer.

12   BY MR. MACGILL:

13       Q    You created your own draft of facts

14   that's        REDACTED

15       A    I -- I -- I did this proposed language

16   for the Hunt-REDACTED that's        REDACTED

17       Q    All right.  And your intention -- or

18   strike that.

19             And Mr. Holske's intention then was to

20   then follow up with        REDACTED

21                        REDACTED

22                        REDACTED
```

1          MR. KLEIN:  Objection.  Personal

2    knowledge.  Document speaks for itself you can

3    answer.

4          THE WITNESS:  I mean, I can verify that

5    that's what   REDACTED    but I don't have any

6    recollection as far as a conversation about that.

7    BY MR. MACGILL:

8      Q    Okay.  So            REDACTED

9                   REDACTED

10    REDACTED

11          REDACTED

12          Do you see that?

13     A    Yes.

14     Q    And that's part of   REDACTED

15          Take a look and see.  Let me know.

16          And then does he continue:    REDACTED

17                    REDACTED

18          REDACTED

19          Is that right?  Is that what he said?

20     A    That's what REDACTED says, yes.

21     Q    So did you understand from  REDACTED

22    that he was going to           REDACTED

1    REDACTED and provide this version to him now a day

2    later or two days later.

3           MR. KLEIN:  Objection as to form.  You can

4    answer.

5           THE WITNESS:  All I have is  REDACTED

6    That's what it says.

7    BY MR. MACGILL:

8        Q    Do you remember that that's what

9    happened, that Mr. Holske in fact provided the

10   REDACTED with yet another draft of facts for their

11   review?

12       A    I don't know what he -- I don't know

13   what he did at that point and when he did it.  But

14   based on  REDACTED   he's saying that   REDACTED

15       REDACTED        That's all I know.

16       Q    You don't know if he did give them yet a

17   second set of facts on May 13th or after?

18       A    I do not have an independent

19   recollection of that.

20       Q    Okay.  Now, you then responded REDACTED

21        REDACTED        right?

22       A    Yes.

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 143 of 386 PageID #: 4197

1    Q   So                     REDACTED

2  then write back to him:        REDACTED

3                    REDACTED

4          Who is Julie?

5    A   That would be our CEO.

6    Q   And your CEO -- had you spoken to your

7  CEO about sharing draft of the facts with the

8  REDACTED?

9    A   I do not independently recall that

10  conversation, but on         REDACTED

11               REDACTED

12    Q   Now, did she tell you -- did she tell

13  you that           REDACTED

14              REDACTED

15    REDACTED    is that what she said?

16        MR. KLEIN:  Objection.  Asked and

17  answered, but you can answer.

18        THE WITNESS:  That is what REDACTED says,

19  yes.

20  BY MR. MACGILL:

21    Q   When did she tell you that REDACTED

22             REDACTED

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 144 of 386 PageID #: 4198

1          REDACTED

2               MR. KLEIN:  Objection.  Just asked and

3     answered.  You can answer again.

4               THE WITNESS:  I don't know exactly when

5     that conversation occurred.

6     BY MR. MACGILL:

7          Q    Go back, if you would, to Exhibit 24.

8     Do you still have that in front of you?

9          A    Yes.

10         Q    You sent a draft of facts on  REDACTED

11    Had the CEO of the company told you prior to

12    May 11th that you were not to send drafts of facts

13    to the REDACTED at that time?

14         A    I do not recall her telling us not to

15    send a draft of facts at that time.

16         Q    Okay.  So is it you just don't know when

17    she gave you the directive          REDACTED

18                              REDACTED

19         A    Correct.

20         Q    Now, as you look at this sequence of

21    events, do you realize that as least as far as

22    your CEO is concerned that you should never have

1    sent your email dated    REDACTED    , sending this

2    document to the REDACTED.

3              MR. KLEIN:  Objection as to form.  You can

4    answer.

5              THE WITNESS:  No.

6    BY MR. MACGILL:

7         Q    So you don't regard, as you sit here

8    today, the directive from your CEO that you report

9    in this particular email, Exhibit 25, that REDACTED

10                        REDACTED

11        REDACTED        you don't look at that as a

12   prohibition to what you have done in Exhibit 24?

13        A    No, I don't.

14        Q    I'm sorry.  I spoke -- it was Exhibit 26

15   that is your    REDACTED       is that correct?

16        A    Exhibit 26 is the      REDACTED

17        Q    Now, ma'am, I want to talk about the

18   "critical" nature of the credibility of the

19   REDACTED in general terms.  Were you aware that

20    REDACTED   did not like his wife talking with

21   other men?

22        A    No.

www.veritext.com                                          888-391-3376

1    Q    Was he jealous with REDACTED?

2    A    I don't recall that.

3    Q    Do you recall him writing the following

4  words:        REDACTED

5               REDACTED          .

6           MR. KLEIN:  Objection.  If you are reading

7  from a document that is marked attorney's eyes only,

8  I would ask that you not read it into the record.

9  And so if you started to, that's -- we are where we

10  are.  But I would ask if you are reading from such a

11  document that we then you stop, and then you have

12  whatever options you want, Rob, to continue reading

13  or to -- continue reading and put Mr. Hunt in a

14  breakout room or not read from it.

15           MR. MACGILL:  Hold on one minute.

16           MR. KLEIN:  No problem.

17           MR. MACGILL:  Pastor Hunt, I'd like you to

18  go in a breakout room for about three minutes.

19  BY MR. MACGILL:

20    Q    So ma'am, I want to -- if you -- may I

21  have those exhibits back.  I'll get those out of

22  your way.

 1          MR. KLEIN:  Hold on one second.  He's

 2    still showing on the screen.  He's off.  Thank you.

 3    BY MR. MACGILL:

 4          Q    Ma'am, I want to hand you Exhibit 7,

 5    page 17, and do you recognize this as the report

 6    from the REDACTED themselves, that is the REDACTED and

 7    REDACTED  story        REDACTED

 8          A    Yes.

 9          Q    Now, as to the credibility -- and had

10    you read this yourself?

11          A    Yes.

12          Q    And you read it in its entirety?

13          A    Yes.

14          Q    And you confirmed earlier to the court

15    that you placed your notes on this particular

16    document, right?

17          A    I did.

18          Q    And if you look at the    REDACTED

19    you see that there are         REDACTED            and

20    he makes         REDACTED            -- or on

21       REDACTED    on this page 17, right?

22          A    There is a         REDACTED

1         REDACTED

2    REDACTED

3        Q    And then what Mr. REDACTED wrote, and you

4    read this --                REDACTED

5          REDACTED

6             Do you see that?

7        A    Yes.

8        Q    And you understood that Mr. REDACTED, Mr.

9                      REDACTED

10   REDACTED?

11            MR. KLEIN:  Objection.  Lack of personal

12   knowledge.  You can answer.

13            THE WITNESS:  I don't have the background

14   for what he -- I just have what's on this piece of

15   paper.          REDACTED            I don't have

16   any of his knowledge as to what's behind what he

17   wrote on this paper.

18   BY MR. MACGILL:

19       Q    Right.  But as an investigator you need

20   to understand what  REDACTED  understood to be

21     REDACTED   right?

22            MR. KLEIN:  Objection as to form.  You can

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 149 of 386 PageID #: 4203

1    answer.

2              THE WITNESS:  I think that these are

3    things that should be considered as part of the

4    investigation, yes.

5    BY MR. MACGILL:

6         Q    So you understood that Mr. REDACTED

7    himself has described his   REDACTED    on this

8    page 17.

9         A    Yes.

10        Q    Let's review what he said about himself.

11   Everything written here on page 17 you knew prior

12   to the publication of the report?

13        A    I had read this document prior to the

14   publication of the report.

15        Q    And you knew that he said in his own

16   words:              REDACTED

17             Correct?

18             MR. KLEIN:  Objection as to form.  You can

19   answer?

20             THE WITNESS:  I read that in this report,

21   yes.

22

1    BY MR. MACGILL:

2        Q    You also had read his statement: REDACTED

3        REDACTED

4            You'd read that?

5        A    Yes.

6        Q    You also read:          REDACTED

7                    REDACTED

8            You read that.

9        A    Yes.

10       Q                        REDACTED

11    REDACTED

12           Do you see that?

13       A    Yes.

14       Q                        REDACTED

15                    REDACTED

16           Do you see that?

17       A    Yes.

18       Q            REDACTED

19           His words?

20       A    That's what's written here.

21       Q    And you understood based on what you

22    wrote that he is also a        REDACTED        right?

1       MR. KLEIN:  Objection as to form.

2  Personal knowledge.  You can answer.

3       THE WITNESS:  I don't know him to be

4    REDACTED     I know that on this document he writes

5       REDACTED

6  BY MR. MACGILL:

7    Q    Okay.     REDACTED

8              REDACTED

9       Do you see that?

10   A    Yes.

11 BY MR. MACGILL:

12   Q    These are his words according to what he

13 wrote, and you understood them to be his words,

14 right?

15       MR. KLEIN:  Objection as to form.  Lack of

16 personal knowledge.

17       THE WITNESS:  He and REDACTED gave us this

18 document and I can go -- it says up there REDACTED

19       REDACTED      and then this is what appears

20 below.

21 BY MR. MACGILL:

22   Q    Okay.             REDACTED

1               REDACTED

2                 REDACTED

3          Right?

4     A    Yes.  That's what's in the document.

5     Q    And then in point 5,    REDACTED

6                 REDACTED

7  REDACTED              REDACTED

8          REDACTED

9          Do you see that?

10    A    Yes.

11    Q               REDACTED

12               REDACTED

13         Do you see that?

14    A    Yes.

15    Q    Did this    REDACTED    self-description

16 cause you any concern that you evaluated what

17 Mr. REDACTED was saying?

18         MR. KLEIN:  Objection as to form.  Lack of

19 personal knowledge.  You can answer.

20         THE WITNESS:  I think everything that was

21 presented to us we took into account as data points

22 as we formed our opinions in this matter.

1   BY MR. MACGILL:

2        Q    And he also reports here:    REDACTED

3                       REDACTED

4             Do you see that?

5        A    Yes.

6        Q    So for your part, you were willing to

7   assess him as being a credible person on the

8   subject of    REDACTED    and the incident involved

9   described to you that occurred 12 years prior with

10  a gentleman who described himself this way on

11  page 17 of this report.

12            MR. KLEIN:  Objection as to form.  You can

13  answer.

14            THE WITNESS:  Please restate the question.

15  BY MR. MACGILL:

16       Q    You looked at Mr. REDACTED as credible in

17  terms of the reports that he made about this

18  incident involving his wife, notwithstanding what

19  the jury can see here on the screen about what he

20  wrote around himself on page 17?

21            MR. KLEIN:  Objection as to form.  Lack of

22  personal knowledge.  You can answer.

1          THE WITNESS:  We made determinations of

2     credibility based on what we heard   REDACTED    tell

3     us in person, the way she described her encounter

4     with Mr. Hunt in that condo.  And all of these other

5     things are data points that were considered as we

6     worked on the matter.  But    REDACTED   's

7     credibility in this matter was a significant piece

8     of this report.

9     BY MR. MACGILL:

10         Q    I'd like you to admit some things or not

11    as the case may be.  Would you admit that REDACTED

12    REDACTED thought that REDACTED had placed her affection

13    on Pastor Johnny.

14         A    I don't remember him saying that, but

15    that -- there's a possibility it could be in the

16    document somewhere.

17         Q    All right.  Do you admit that you

18    understood that   REDACTED   was jealous of Pastor

19    Johnny?

20         A    If you would like to show me a document,

21    I'm happy to -- I mean there's so many pages in

22    this.  I don't have an independent recollection

1   specific to Mr. Hunt.

2        Q    You don't.  Okay.  Fair enough.  Did you

3   understand that   REDACTED   was jealous with the

4   success that Pastor Johnny had enjoyed in his

5   ministries?

6        A    I don't have a recollection of that.

7   I'm not saying that that's not in a document

8   somewhere, but I don't have an independent

9   recollection of that.

10       Q    And do you admit, ma'am, that REDACTED

11   REDACTED was angry with Pastor Johnny's success?

12       A    I don't.

13            MR. MACGILL:  Take our lunch break.

14            VIDEOGRAPHER:  Off the record at

15   11:59 p.m.

16            (Whereupon, a luncheon recess was

17            taken.)

18                   *  *  *  *  *

19

20

21

22

1           A F T E R N O O N   S E S S I O N

2                                          (1:18 p.m.)

3           VIDEOGRAPHER:  We are now back on the

4     record at 1:18 p.m.  You may proceed.

5     WHEREUPON,

6                     SAMANTHA KILPATRICK

7     was called for continued examination, and having

8     been previously duly sworn, was examined and

9     testified further as follows:

10              EXAMINATION BY COUNSEL FOR PLAINTIFF

11              CONTINUED

12    BY MR. MACGILL:

13         Q    Welcome back, ma'am.  I want to -- I

14    asked you a series of questions before the lunch

15    break.  You recall that I asked you whether REDACTED

16    thought REDACTED had placed her infection on Pastor

17    Johnny.  Do you remember that line of questioning?

18         A    Yes.

19         Q    Do you recall, ma'am, that that question

20    or that circumstance was specifically referenced

21    in some of the materials that you read prior to

22    publication of the report?

1    A    Yes.

2    Q    And you also read prior to the

3  publication of the report that REDACTED

4  indicated he was jealous of Pastor Johnny

5  specifically?

6    A    Yes.

7    Q    And you read with your own eyes that

8  REDACTED  was jealous of Pastor Johnny's

9  success, that you read that prior to the time of

10  the publication of the report?

11    A    I don't recall.  I don't recall.  I may

12  have read it.  If you've got a document, I'm happy

13  to take a look at it.

14    Q    Okay.  If you take a look at page 36 of

15  your report -- I'm sorry -- of the March 22nd,

16  report.  This is Exhibit 7.  Do you have that

17  exhibit?

18        MR. KLEIN:  She's has no exhibits in front

19  of her.

20  BY MR. MACGILL:

21    Q    Got it.  Ma'am, I've handed you Exhibit

22  7 and I've opened it to page 36, and I'm going to

www.veritext.com                                  888-391-3376

```
1    ask you about the              REDACTED
2    REDACTED   Are you there?
3         A    Yes.
4         Q                    REDACTED
5    Exhibit 7,              REDACTED
6                    REDACTED
7              Do you see that?
8         A    Yes.
9         Q    What does the REDACTED refer to?  Do you
10   know?
11        A              REDACTED
12        Q    And you report here    REDACTED
13        REDACTED         Do you see that?
14        A    I don't report here.
15        Q    My mistake.  But this report that you
16   read prior to the publication of your report you
17   saw this entry that          REDACTED
18   REDACTED ?
19        A    Yes.
20        Q    And you saw the next sentence.  REDACTED
21              REDACTED            , right?
22        A    Yes.  That's what's in this report.
```

 1          MR. KLEIN:  Before you go any further,

 2   Rob, and my mistake for not seeing it earlier, that

 3   this is also an attorney's eyes only document you

 4   are reading from and Johnny Hunt is on there.  So

 5   again, I did notice it when you started this line of

 6   questioning, so my apologies for that.  But if you

 7   want to continue with specifics of this document

 8   like we did right before lunch, I would ask that you

 9   move Mr. Hunt into separate Zoom room.

10          MR. MACGILL:  Understood.

11          MR. KLEIN:  Thank you.

12   BY MR. MACGILL:

13      Q    All right.  So with respect to your

14   understanding before the report was published, I

15   want to have you confirm or not confirm your

16   understanding on the motivations of the financial

17   -- strike that.

18          Did you understand specifically that one

19   of the REDACTED' goals in coming forward with the

20   allegations of Pastor Johnny Hunt was financial?

21      A    I understood from the REDACTED that their

22   first concern was to make peace and make peace

1  with Johnny.  And I believe that  REDACTED

2  listed out what their reasons for coming forward

3  were, and I think to make things right -- or I

4  think he may have used the word recompense was a

5  part of what he told us.

6      Q    Okay.  So as you went through your

7  process as far as  REDACTED  was concerned prior

8  to the publication of the report you knew that he

9  had expressed REDACTED right?

10          MR. KLEIN:  Objection as to form.

11          THE WITNESS:  I know that these documents

12  reference REDACTED

13  BY MR. MACGILL:

14      Q    That he had expressed -- you knew that

15  he had expressed REDACTED

16      A    In these documents, yes.

17      Q    And you knew that he had expressed

18  anger?

19          MR. KLEIN:  Objection.  I just -- if we're

20  talking about the document, again, Rob, at least

21  she's referencing the document so I just want to be

22  careful -- it's not just you, Rob.  I'm going to

1  caution my client as well if you don't find.

2  BY MR. MACGILL:

3       Q    You knew -- just I want -- I'm not

4  talking about the document now.  You knew prior to

5  publication of the report that    REDACTED    had

6  expressed anger, right?

7            MR. KLEIN:  So I just want you to answer

8  without referencing the document if you can answer

9  that question to the best of your ability.

10            THE WITNESS:  Yes.    REDACTED    expressed

11  anger.

12  BY MR. MACGILL:

13       Q    And you also knew that that anger was

14  expressed towards Johnny -- Pastor Johnny Hunt,

15  right?

16       A    Yes.

17       Q    And you also knew prior to the

18  publication of the report as far as Mr. REDACTED was

19  concerned, that there were certain features of

20  Johnny Hunt that were    REDACTED    to him, right?

21            MR. KLEIN:  Again, without referring to

22  the document --

1   BY MR. MACGILL:

2        Q    Let me restate.  I don't want you to

3   refer to the document.  You knew separate and

4   apart from any documentation that you read prior

5   to the report that certain features of Pastor

6   Johnny Hunt and his work were  REDACTED  to Mr.

7   REDACTED; is that right?

8        A    Yes.  They were  REDACTED  to both Mr.

9   REDACTED and to  REDACTED  .

10       Q    Okay.  So you know there's  REDACTED

11  there's angry -- there's anger, there's

12       REDACTED       and you also knew there was

13  financial motivations of the REDACTED as far as

14  Johnny Hunt was concerned, right?

15            MR. KLEIN:  Objection as to form.

16  Mischaracterizes.  But you can answer.

17            THE WITNESS:  Please ask the question

18  again.

19  BY MR. MACGILL:

20       Q    You knew there was anger, you knew there

21  was  REDACTED  you knew that there was a reaction

22  of being  REDACTED  to Pastor Johnny Hunt as far as

1  the REDACTED were concerned.  Did you also know

2  that they had financial motivations in terms of

3  Pastor Johnny Hunt.

4      A    So I know that REDACTED had been

5  mentioned in this document.  I know that REDACTED and

6  REDACTED were both REDACTED with the matters

7  involving Mr. Hunt.  I know that REDACTED expressed

8  that he wanted for things to be made right.  But

9  we never spoke about financial stuff with the

10 REDACTED.

11     Q    Well, prior to the report being

12 published, though, you had been advised and had

13 learned that Mr. REDACTED, for his part, wanted some

14 form of financial compensation, right?

15     A    I had -- I know that he said that he was

16 looking to make things right in recompense for the

17 harm, but I don't know -- he didn't express

18 directly to me what he wanted or what that meant.

19     Q    Well, you reported in your report, your

20 own memorandum, Exhibit 20, your memorandum from

21     REDACTED    you indicate that there was a goal

22 in coming forward that was financial, right?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 164 of 386 PageID #: 4218

1    A                    REDACTED

2         REDACTED

3    Q    So now you are admitting, are you not?

4    And if you are not, tell us.

5    A    That could be financial, yes.

6    Q    Okay.  All right.  So let's make sure we

7    understand.  So as of    REDACTED    you know

8    that one of the goals of the REDACTED in coming

9    forward to give you information was financial,

10   right?

11        MR. KLEIN:  Objection as to form.  You can

12   answer.

13        THE WITNESS:  I'm not sure exactly what I

14   knew as of REDACTED  I may have known that part.  But

15   I'm not for certain.

16   BY MR. MACGILL:

17   Q    Let me see if I can remind you.  I'm

18   going to give you back Exhibit 20.

19        MR. KLEIN:  As you are getting that, Rob,

20   I would just note that this document is marked

21   attorney eyes only, so it can be used to refresh her

22   memory, but I would ask that neither you nor you,

1   Ms. Kilpatrick, read or reference specifically this

2   document.

3   BY MR. MACGILL:

4        Q    Now, ma'am, what we're going to do, you

5   understand your company does not want Pastor

6   Johnny Hunt to see the contents of your writings

7   on -- in Exhibit 20.  Do you understand that?

8        A    Yes.

9        Q    And they don't want to hear a word of

10  what's in Exhibit 20.

11       A    Okay.

12       Q    Do you understand that?

13       A    That's what you're telling me.

14       Q    No.  That's what they are telling us.

15            MR. KLEIN:  Well, that's what the court

16  has ordered at our -- based on our motion, the court

17  order that so we have abided by the court --

18            MR. MACGILL:  There is no order -- there

19  is no order to that effect.  We'll litigate that

20  later, but there is no order that gives protection

21  to your conduct here, counsel.  So we're going to

22  let -- we're going to make the arguments at a later

1    time.  I don't want to represent it on this record

2    that you have a court authority to do what you're

3    doing because you don't.  All right.

4              MR. KLEIN:  There is an order in place.

5    We would disagree maybe as to the interpretation of

6    that order which we can leave for another time.

7              MR. MACGILL:  Which is a pending motion.

8    BY MR. MACGILL:

9        Q    Now, ma'am, regardless of whether

10   counsel here is right to prohibit Pastor Johnny

11   Hunt from seeing your memorandum in Exhibit 20,

12   the fact is you knew that you are not allowed to

13   speak the words of what you wrote on Exhibit 20

14   while Pastor Johnny is hearing your testimony,

15   right?

16       A    Yes.

17       Q    And you're told that -- this is what

18   your lawyers have told you, right?  The lawyers

19   for Guidepost have told you.

20             MR. KLEIN:  Without waiving privilege.

21   I'm talking about right now if she's hearing me.

22   She's certainly hearing me now that that is our

1   request based on our interpretation of the order.

2   Correct.

3   BY MR. MACGILL:

4       Q    All right.  So what we are going to do,

5   ma'am, based on the fact that these lawyers and

6   Guidepost will refuse to allow Pastor Johnny Hunt

7   to hear your words or read your words, I'm going

8   to ask you to refresh your memory.

9       A    Okay.

10      Q    I'm going to hand you Exhibit 20.  And

11  I'd ask you to turn to Bates number 7651.

12           Are you reading the document regarding the

13  financial questions that I've asked you about?  Do

14  you see the          REDACTED          in the bullet

15  point?

16      A    I do.

17      Q    All right.  So now you know that -- and

18  you can confirm now that you refreshed your memory

19  that you understood as of     REDACTED     that one

20  of the interests that the REDACTED had was to make

21  a financial recovery, right?

22      A    Yes.

1    Q    All right.  And the jury will have --

2    we're going to put this up on the board -- not the

3    board -- the screen so the jury can see this.  Now

4    we put this up on the board so the jury can read

5    along with us.

6         And it's also true that you knew that

7    there was not only financial motivation in the

8    REDACTED but also that they wanted to seek

9    specifically some form of   REDACTED   right?

10   A    I think that's the word I used earlier

11   in my testimony is that that was -- that was

12   something that they were seeking.

13   Q    So the words that you had heard from the

14   REDACTED prior to publication of the report

15   included the word REDACTED yes?

16   A    Yes.  I read REDACTED

17   Q    Included the word REDACTED

18   A    Yes.

19   Q    Included the word   REDACTED

20   A    Yes.

21   Q    Included the word financial interest?

22   A    There was communication about   REDACTED

1     REDACTED

2        Q     Interest of the REDACTED?

3        A     I'm not sure exactly what words were

4     actually used, but        REDACTED         were

5     definitely used.

6        Q     Right.  And the jury can see with their

7     own eyes here that you -- what you've written in

8     the report, right?

9        A     Yes.

10       Q     So prior to the publication of the

11    report on the issue -- this critical issue

12    described about the REDACTED -- strike that.

13          With respect to the critical nature of the

14    credibility of the REDACTED, part of the publication

15    of the report, you knew for your part as a lead

16    investigator here, that you had seen in the REDACTED

17    references to             REDACTED

18       REDACTED     right?

19          MR. KLEIN:  Objection.  Asked and

20    answered.  You can answer again.

21          THE WITNESS:  Yes.

22

1   BY MR. MACGILL:

2       Q    Now, let's just talk for a minute about

3   these other parties.  With respect to the

4   Executive Committee did you make any reference to

5   any one of these five circumstances that you came

6   to learn prior to the publication of your report?

7            MR. KLEIN:  Objection.  Asked and answered

8   with regard to communications with the EC, but she

9   can answer.

10           THE WITNESS:  I did not have any

11  communications with the EC about what you just said.

12  BY MR. MACGILL:

13      Q    Those findings?

14      A    Right.  Those words.

15      Q    One more question with respect to the

16  SBC, did you have any communications prior to the

17  publication of the report about reference to

18                    REDACTED

19                    REDACTED

20      A    I did not have any conversations with

21  the SBC.

22      Q    Same question follow-up.  With respect

1    to these five forms of -- or five circumstances as

2    far as the REDACTED was concerned, did you

3    communicate internally to the CEO of your company

4    or any executive at your company at this time,

5    2022, about these specific circumstances that we

6    just described to literally or figuratively raise

7    your hand and a say, wait a minute, we need to not

8    do what we're planning to do.

9         A    Can you reask that question.  It's

10   multiple parts.

11        Q    Sure.  With all of this, reference to

12                    REDACTED

13     REDACTED   did you go to anybody in the

14   management at Guidepost and say I am concerned

15   about the core witnesses here, the REDACTED.  Did

16   you do anything like that?

17        A    No.

18        Q    Okay.  Now, ma'am, I want to make sure

19   the jury understands something else about what you

20   did as an investigator or what your company did as

21   an entity.  You've described in your prior

22   testimony the April interview of Pastor Johnny

1    Hunt in person.  Do you remember that?

2         A    Yes.

3         Q    When it came time to confront Pastor

4    Johnny Hunt about the incident involving REDACTED

5    REDACTED, this was by videoconference, was it not?

6         A    Yes.

7         Q    How long did that video conference last?

8         A    I don't remember how long it lasted.

9         Q    An hour?  Two hours?

10        A    I would think it probably lasted around

11   an hour.

12        Q    Around an hour?

13        A    I don't know.

14        Q    Now, we'd like to see the video, ma'am.

15   Did you take a video of this conference?

16        A    No, we do not.

17        Q    Why not?

18        A    Because that's not the way that we do

19   our videoconferences?

20        Q    Well, if you were going to be fair to

21   exactly to what Johnny Hunt said, why would you

22   not create a video record and indicate to him just

1  very fundamentally something like, Pastor Johnny

2  Hunt, we want you to be the first to know.  We're

3  going to record this interview so we'll have a

4  record and you will too.

5          Did you do anything like that?

6      A    No.  We were not recording interviews.

7      Q    But ma'am, you were planning in ten days

8  time to produce information about an accusation by

9   REDACTED  .  Why would you not give the courtesy

10 and the respect to the pastor, Johnny Hunt, by

11 simply doing this on video so there would be a

12 record of what you said and a record of what he

13 said.

14      A    We did not video the interviews.

15      Q    Now, instead, what you relied on were

16 your notes and recollections of what he said to

17 you, right?

18      A    Yes.

19      Q    And to err is human.  Fair statement?

20      A    Fair.

21      Q    You may have made an error in what you

22 said about what he said, right?

1      A    To err is human, and that's a

2  possibility.  That's why we have two interviewers

3  on these interviews, so that we make sure that we

4  take notes and don't miss anything.

5      Q    And if a human, you, or another human,

6  Mr. Holske, were motivated to do something other

7  than give the unvarnished truth, that could cause

8  an error in the recording of what Pastor Johnny

9  Hunt said, right?

10         MR. KLEIN:  Objection as to form.  You can

11  answer.

12         THE WITNESS:  If someone were motivated.

13  But we were not motivated to do anything except to

14  provide an independent third-party investigation,

15  looking at the facts, looking for corroboration, and

16  including that in our report.

17  BY MR. MACGILL:

18      Q    Well, if you were interested of being

19  independent, why did you call the REDACTED after

20  you called -- had a video conference with Pastor

21  Johnny Hunt?  Why did you do that?

22      A    We were coming down to the end of time

1  to where the report was going to be submitted, and

2  we were having phone calls with all different

3  types of people during that time frame.  And I'm

4  not sure how that phone call was scheduled.  It

5  was not scheduled to discuss our interview with

6  Johnnie.  It was scheduled probably to talk about

7  their notes that they sent us.

8       Q    It certainly occurred after the

9  videoconference with Pastor Johnny Hunt, didn't

10  it?  Your call to the REDACTED.  Same day.

11       A    I would have to see -- I would have to

12  see the dates on that if you would like to refresh

13  my recollection.

14       Q    Do you remember doing taped notes of

15  that conversation with REDACTED after you spoke to

16  Pastor Johnny Hunt on May 12th, 2022?

17       A    Taped notes?

18       Q    Let me back up.  Let's talk about the

19  chronology again.  May 12, 2022, you had a

20  videoconference with Pastor Johnny Hunt, right?

21       A    Yes.

22       Q    And the next day you had a conference --

1  you had another -- you had a telephone conference

2  with the REDACTED, right?

3      A    I would have to look at the schedule.  I

4  don't recall exactly the sequence.

5          MR. MACGILL:  Could you hand her Exhibit

6  1, please?

7          MR. KLEIN:  I believe you have the

8  exhibits.

9  BY MR. MACGILL:

10     Q    All right.  I'm going to hand you

11  Exhibit 1.  When did you -- you interviewed Pastor

12  Johnny Hunt on May 12, right?

13     A    Yes.

14     Q    All right.  And that was by video,

15  right?

16     A    We had a virtual meeting by video.  We

17  did not video the call.

18     Q    Fair point.  Tell the jury when you next

19  spoke to the REDACTED?

20     A    It looks like we spoke with the REDACTED

21  on the next day, May 13th.

22     Q    Do you recall why you spoke to the

 1    REDACTED the day after you spoke to Pastor Johnny

 2    Hunt?

 3         A    If I remember, let me think for a

 4    second.  I don't recall that conversation.  I

 5    believe that there may be some notes to that, but

 6    I don't recall right now offhand what we spoke

 7    about.

 8         Q    I have an important question for you

 9    about what you wrote in the report.  Did you

10    misrepresent your conversation with Pastor Johnny

11    Hunt the eligible in the Guidepost report?

12         A    No.

13         Q    In no res- -- are you denying that you

14    misrepresented your conversation with Pastor

15    Johnny Hunt on May 12th?

16              MR. KLEIN:  Objection.  Asked and

17    answered.

18              THE WITNESS:  No.  I did not represent our

19    conversation with Pastor Johnny Hunt.

20    BY MR. MACGILL:

21         Q    You did not misrepresent?

22         A    No, sir.

1      Q     Now, you realize that there are
2  independent factors that indicate, at least by a
3  common logic, that your statements about your
4  report of the interview with Johnny Hunt make no
5  sense as an independent validation.  Right?
6            MR. KLEIN:  Objection.
7            MR. MACGILL:  Let me ask a better
8  question.
9  BY MR. MACGILL:
10     Q     Evidence independent of what you said
11 Johnny Hunt said shows that there was no sexual
12 abuse or sexual assault in this case, right?
13     A     No.  I don't believe that.
14 BY MR. MACGILL:
15     Q     A day or two later  REDACTED   asked
16 Pastor Johnny Hunt to go on a jog with him, didn't
17 she?
18            MR. KLEIN:  A day or two later after when?
19 After the conversation?
20 BY MR. MACGILL:
21     Q     After the incident -- after the incident
22 that you reported in the Guidepost report.  Just a

1  few days later   REDACTED   asked Johnny Hunt to

2  go on a jog with him, didn't she?

3      A    That is what she shared with us.

4      Q    When did she share that with you?

5      A    The first time that we met with her.

6      Q    And as a reasonable person you thought

7  that would be counterintuitive to a claim of

8  sexual abuse, right?

9      A    Actually, no, I would not, because

10 survivors often have future contact with their

11 abusers.  They are often traumatized and continue

12 relationships for a long period of time with their

13 abusers.  And so that did not -- that did not

14 surprise me at all.  It's a factor.  It's

15 something to be considered but that did not

16 concern me.

17     Q    So let's talk about other indicia of

18 unreliability if the jury so considers them to be

19 indicia of unreliability of your report.  So in

20 this case did you come to learn after the incident

21 whether Johnny Hunt described this event to his

22 wife?

1      A    Can you give me more reference?

2      Q    Did Johnny Hunt describe to his wife

3    happened that evening with   REDACTED   ?

4              MR. KLEIN:  At any point in time.

5              MR. MACGILL:  Yeah.

6              MR. KLEIN:  If you know.

7              THE WITNESS:  I don't know.

8              MR. BUNDREN:  Are you waiving privilege on

9    that conversation?

10   BY MR. MACGILL:

11     Q    When did you learn there was a

12   communication involving   REDACTED   and Johnny

13   Hunt after the event?  When first did they

14   communicate again.

15              MR. KLEIN:  Objection as to form.  If you

16   know.

17              THE WITNESS:  I'm not sure.  Like -- reask

18   your question.  I'm not sure the time frame what

19   you're asking.

20   BY MR. MACGILL:

21     Q    Was they a time after the incident where

22   there was a meeting involving Pastor Johnny Hunt,

1    REDACTED    , and her husband?

2          A     Yes.

3          Q     When?

4          A     We talked about meetings between REDACTED

5    and    REDACTED     and Mr. Hunt along with Roy

6    Blankenship.

7          Q     When?

8          A     When did we -- when did those happen?

9          Q     When did that meeting happen?  Yeah.

10         A     We were told that those happened in

11   August after the July time in Panama City.

12         Q     How long after?

13         A     I'm not sure how long after.  Not -- not

14   very long after.

15         Q     Did you report that in the Guidepost

16   report?

17         A     I'd have to read the report.  I know

18   that we reported that there were two meetings.

19         Q     Two meetings with whom?

20         A     Two meetings that the REDACTED had with

21   Pastor Hunt and Roy Blankenship.

22         Q     And it's your view that those meetings

1  were consistent with sexual abuse?

2      A    Those meetings are not consistent or

3  inconsistent with sexual abuse.

4      Q    Now, what is your training on sexual

5  abuse in terms of determining whether sexual abuse

6  has occurred or not?

7      A    So I have worked with survivors for most

8  of my career, both in the prosecutor's office and

9  in private practice.  I've had many trainings on

10  trauma.  I'm actually a licensed marriage and

11  family therapist and so I've had training on

12  trauma and abuse.  And so that includes just

13  information about the way that survivors and

14  abusers report abuse, the way they share it when

15  they disclose it, and how to listen to that.

16      Q    Now, with respect to the incident

17  involving    REDACTED    and Pastor Johnny Hunt, how

18  did you characterize that?  Was it a sexual abuse

19  event?  What is the terminology that was used in

20  the report?

21          MR. KLEIN:  Objection to her terminology.

22  You can answer in your individual capacity if you

1  know.

2  BY MR. MACGILL:

3      Q    In the report.

4          MR. KLEIN:  Objection.  The document

5  speaks for itself, but you can answer.

6          THE WITNESS:  I would have to refer back

7  to the document.

8  BY MR. MACGILL:

9      Q    You don't recall, as you sit here,

10 whether Guidepost characterized this event as

11 involving sexual abuse or something else?

12     A    I don't want to guess on the word that

13 was used.

14     Q    So there's a heading in this on page 149

15 that says Allegations of Abuse Committed by the

16 Executive Committee Members.  Do you recall that

17 heading?

18     A    Yes.

19     Q    Now, in the report the reference by

20 Guidepost is that you found the sexual --

21 Guidepost found the sexual -- strike that.

22          There's reference in the Guidepost report

1   to this incident involving Pastor Johnny Hunt and

2   REDACTED   as a sexual assault.  Do you understand

3   that's the language that was used in the Guidepost

4   report?

5              MR. KLEIN:  Objection.  Asked and

6   answered.  You can answer.

7              THE WITNESS:  Yes.

8   BY MR. MACGILL:

9        Q    Now, did you agree to that language

10  sexual assault?

11       A    Agree to the language of sexual assault?

12       Q    Right.  The word -- these are words that

13  were used in the report.  Are these words that you

14  agreed should be used.

15       A    I do agree they should be used.

16       Q    Did you at that time?

17       A    Yes.

18       Q    Now, what did sexual -- at the time you

19  made that agreement for your part, what did you

20  understand sexual assault to mean?

21       A    Sexual assault was what was described to

22  me by   REDACTED   when I met with her personally

1   on March 31.

2        Q    What does it mean?  Is it defined in the

3   law somewhere?

4        A    So she -- she described a sexual battery

5   of Mr. Hunt touching her in sexual ways, pulling

6   her pants down, touching her breast, turning her

7   over and kissing her and pulling her shirt off of

8   her shoulder and that she did not consent to that.

9   So that is why I would describe that as sexual

10  assault.

11       Q    Now, is that defined in the law

12  somewhere or is this just a definition that you

13  use for your own purposes in reports like this?

14            MR. KLEIN:  Objection.  Calls for a legal

15  conclusion.  You can answer.

16            THE WITNESS:  We did not base the

17  definition on a particular jurisdiction's law, but

18  that a sexual assault is a pretty general definition

19  and those things that she described to us would fit

20  that.

21  BY MR. MACGILL:

22       Q    So you used no legal standard yourself

1    in approving the language sexual assault.  There

2    was no legal reference to that for your part.

3         A    We did not reference anything legal in

4    the report, no.

5         Q    And you didn't -- I mean I'm just saying

6    you agreed to the terms of this report -- when you

7    agreed to the use of the phrase sexual assault,

8    you didn't make any reference to any particular

9    law?

10        A    No, we did not.

11        Q    You just used your common understanding

12   of the term?

13             MR. KLEIN:  Objection as to that question

14   as to form.  You can answer.

15             THE WITNESS:  Yes.  The common

16   understanding, the things that   REDACTED

17   described to us, would fit a general definition of

18   sexual assault.

19   BY MR. MACGILL:

20        Q    Fit a general definition of a sexual

21   assault.  That's your testimony?

22        A    Yes.

1      Q    What definition would it meet?

2      A    Well, I think if you were to talk to any

3  prosecutor across the country that what she

4  described to us would meet the definition of

5  sexual assault.  Now, it might be in different

6  degrees, but that would be a definition of sexual

7  assault.

8      Q    Where would it be defined?  Where would

9  it be written?  Where would this jury find a

10  definition of the term "sexual assault"?

11          MR. KLEIN:  Objection as to form.  You can

12  answer.

13          THE WITNESS:  I mean, there's all kinds of

14  places you can look for a definition of sexual

15  assault.

16  BY MR. MACGILL:

17      Q    Where did you -- what definition did you

18  rely on, ma'am, in determining that it was

19  appropriate, as you saw it, to include the word

20  sexual assault?

21      A    I relied on my understanding of sexual

22  assault and what it --

1    Q    Your understanding of sexual assault.

2    A    Yes.

3    Q    Where did you get the understanding?

4    Does your understanding have any reference in any

5    legal standard?

6         MR. KLEIN:  Objection.  Compound question.

7    You can answer.

8         THE WITNESS:  We did not reference any

9    legal standard.

10   BY MR. MACGILL:

11   Q    You did not?

12   A    I did not.

13   Q    And Guidepost did not to your knowledge?

14   A    I don't know what Guidepost did.

15   Q    Now, you had -- there's a chief

16   operating officer of this business, Mr. Collura

17   right?

18   A    Yes.

19   Q    Did he sign off on this report?

20   A    I don't know how to answer that.

21   Q    Sexual assault requires -- for there to

22   be a sexual assault there has to be a situation

1   where there was not consent, right?

2       A    That's correct.

3       Q    Okay.  Now, I'd like you to tell us what

4   evidence you had that perhaps there was consent by

5       REDACTED    to the encounter that evening?

6           MR. KLEIN:  Objection as to form.  You can

7   answer.

8           THE WITNESS:  Can you ask your question

9   again?

10  BY MR. MACGILL:

11      Q    Tell us what evidence you have that

12  there was -- that indicated there may have been

13  consent by    REDACTED  ?

14          MR. KLEIN:  Objection as to form.  You can

15  answer.

16  BY MR. MACGILL:

17      Q    To the events that occurred on that

18  evening?

19      A    And you are talking about July 25th, the

20  evening in question is what you're talking about?

21      Q    Yeah.  2010.

22      A    Yes, yes.  So I think the -- looking at

1   the totality of the things she talked to us about

2   REDACTED provided us details that, you know, are

3   details that some could argue may be represented

4   or showed or could be used as evidence of consent.

5        Q    What would those be?

6        A    Potentially her inviting him over onto

7   her balcony.

8        Q    Anything else, ma'am?

9        A    Potentially -- and these are things that

10  someone else could use.

11       Q    Understood.

12       A    Continuing the conversation with him,

13  having him come into the condo -- right now, those

14  are the ones I can think of.

15       Q    What about put being her necklace on his

16  side of the couch as compared to her own side of

17  the couch?  Would that be consent in your mind?

18            MR. KLEIN:  Objection as to form.  You can

19  answer.

20            THE WITNESS:  No.  I don't think so.

21  BY MR. MACGILL:

22       Q    Tell the jury what you understand about

1  when she removed her necklace and where she placed

2  the necklace?

3          MR. KLEIN:  Objection as to form.  You may

4  answer.

5          THE WITNESS:  I recall her talking about

6  taking off her necklace because it was bothering

7  her.

8  BY MR. MACGILL:

9      Q    Right.

10     A    And she laid it on a table.

11     Q    Which table, ma'am?  Isn't that an

12  important fact for you as an investigator to

13  understand specifically which table she placed her

14  necklace on?

15     A    I don't recall right this minute which

16  table she put it on.  I'm happy to take a look at

17  every notes and refresh my memory.

18     Q    Well, wait a minute.  You don't know

19  those facts as to where they were sitting on the

20  couch?  Were they sitting close to one other on

21  the couch?

22          MR. KLEIN:  Objection.  Compound

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 192 of 386 PageID #: 4246

1   questions.

2   BY MR. MACGILL:

3        Q    That's fair.  Break it down.  Are you

4   even able to tell this jury where they were seated

5   on the couch, ma'am, on the night of this

6   incident?

7        A    Well, I think that they started off at

8   separate places.  She told us they started out in

9   at separate locations on the couch.

10  BY MR. MACGILL:

11       Q    Who was where?

12       A    Well, she was on one side and he was on

13  the other.

14       Q    What side -- looking at the couch,

15  ma'am, which side was she on?

16       A    I can't tell you that today what side of

17  the couch that she was on.

18       Q    Let's see what else you know or don't

19  know about really what happened.  Okay?  Was there

20  an end table on each side of the couch?

21       A    I do not have an independent

22  recollection of that as I sit here today.

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 193 of 386 PageID #: 4247

1      Q    Well, ma'am, you did an investigation.

2  You referenced sexual abuse in a report that went

3  to millions of people, and you can't tell this

4  jury whether there were end tables on each side of

5  the couch one way or another?

6              MR. KLEIN:  Objection.  Argumentative.

7  You can answer.

8  BY MR. MACGILL:

9      Q    Now, let's talk about what else you

10  don't know.

11             MR. KLEIN:  Objection.  Is that a question

12  or is that a lead in to a proper question.

13  BY MR. MACGILL:

14     Q    It's a lead in to a proper question.

15  It's also true that you don't know which end table

16  she placed her necklace on, do you?

17             MR. KLEIN:  You can answer.  Objection as

18  to form, but you can answer if you remember today.

19             THE WITNESS:  I don't remember.

20  BY MR. MACGILL:

21     Q    Ma'am, the evidence in this case is that

22  she -- as you look at the couch is that she was

```
 1   seated on left side of the couch.  All right?  I
 2   want you to assume that's true.  And I want you to
 3   assume that's been documented in this case by the
 4   documentary evidence.  Okay?  Would you make that
 5   assumption?
 6            MR. KLEIN:  Objection.  Calls for
 7   speculation and assumptions.  You can ask this
 8   witness of her observations and memories and ask a
 9   proper question with regard to that.
10   BY MR. MACGILL:
11       Q    Okay.  Let's just then deal with what
12   you don't know.  You don't know where she was
13   seated on the couch, right?
14            MR. KLEIN:  Objection.
15   BY MR. MACGILL:
16       Q    You don't know that.
17            MR. KLEIN:  Objection.  Mischaracterizes
18   her testimony.
19            MR. MACGILL:  I'm not with your
20   objections.  You need to be quiet now.
21            MR. KLEIN:  I just want you to
22   characterize --
```

1    BY MR. MACGILL:

2        Q    You don't know --

3            MR. KLEIN:  -- testimony properly, Rob, if

4    you are going to refer to her question.  That's all.

5            MR. MACGILL:  Enough.

6    BY MR. MACGILL:

7        Q    You don't know where she was seated on

8    the couch, do you, ma'am.

9        A    I know that she was seated on one side,

10   and he was seated on the other.

11       Q    You don't know whether she leaned over

12   him to place her necklace on the end table next to

13   him, do you?

14       A    I don't recall that.

15       Q    Now, wouldn't that be another fact that

16   would be perhaps a detail or evidence potentially

17   of consent?

18       A    I don't believe that it would.

19       Q    Well, ma'am, if you were seated next to

20   a man on a couch and you leaned over that

21   gentleman and placed a necklace that you had just

22   taken off and leaned over him and put your

1  necklace on the end table next to him when you

2  were seated on the opposite side of the couch,

3  wouldn't that be indicative of some kind of

4  conduct that might mean consent?

5          MR. KLEIN:  Objection.  Asked and

6  answered.

7          THE WITNESS:  I disagree.

8  BY MR. MACGILL:

9      Q    You disagree.  But you don't know what

10 happened with respect to the necklace in any

11 material respect, do you?

12         MR. KLEIN:  Objection.  Mischaracterizes.

13 You can answer.

14         THE WITNESS:  I don't recall all the

15 details sitting here today about the necklace.  I

16 know she took it off, and she placed it on a table.

17 BY MR. MACGILL:

18     Q    You will admit -- you've already

19 admitted that she invited Johnny into her

20 condominium, right?

21     A    She told us that she asked him over onto

22 her balcony.

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 197 of 386 PageID #: 4251

1    Q    Into her balcony or into her condo?

2    A    Well, he -- she told us that he had to

3  actually come through the front door to get to the

4  balcony because it was not a cross-through

5  balcony.

6    Q    She consented to him coming into her

7  condominium?

8    A    She unlocked the door for him and let

9  him come into her condominium.

10   Q    She consented to him sliding closer on

11 the couch, right?

12   A    Yes.  I believe she told us that she

13 told him he could -- he could sit closer to her.

14   Q    And you've already confirmed and

15 admitted here that she consented to continuing

16 conversation with him in her condominium, right?

17   A    Yes.

18   Q    You admit also that she told him, with

19 respect to her allegation that he has sex three

20 times a day, that she said I'll try to keep up.

21   Q    You understand that occurred, right?

22   A    She told us about that, yes.

1     Q   And the very next day -- the very next

2  day after what you are claiming to be a sexual --

3  let me use your words -- what you are claiming to

4  be a "sexual assault," the very next day she asked

5  to go on a run with him, right?

6         MR. KLEIN:  Objection.  Those are not her

7  words; those are Guidepost's words.  But she can

8  answer the question.

9  BY MR. MACGILL:

10     Q   Fair enough.  Let's restate to comply

11  with counsel's objection.  So Guidepost put in the

12  final report the words sexual assault, right?

13     A   Yes.

14     Q   And you agreed to the use of the words

15  sexual assault in the report, final report, right?

16         MR. KLEIN:  Objection.  Asked and

17  answered.  You can answer one more time.

18         THE WITNESS:  I didn't agree to the -- to

19  anything about the final report, but I agree that

20  what   REDACTED   described to us was sexual

21  assault.

22

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 199 of 386 PageID #: 4253

1   BY MR. MACGILL:

2        Q    Do you agree that the word sexual

3   assault never should have been used in the

4   Guidepost report based on the investigation that

5   you did?

6        A    No.

7        Q    So you agree -- you're okay with the

8   word sexual assault in the final Guidepost report.

9            MR. KLEIN:  Objection.  I direct you not

10  to answer that question.  We've gone over it five

11  times, Rob.  I've asked you politely to move on now.

12  BY MR. MACGILL:

13       Q    So ma'am, so you have no reason to

14  disagree with the term sexual assault based on

15  your testimony today, right?

16           MR. KLEIN:  Objection.  I'm directing you

17  not to answer the question.

18           Rob, I'd ask you professionally to move

19  on.  I think you've established that she's given

20  you answers to those questions.

21  BY MR. MACGILL:

22       Q    The next day after the alleged sexual

Veritext Legal Solutions
www.veritext.com                                         888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 200 of 386 PageID #:
4254

1    assault, she in fact asked Pastor Johnny Hunt to

2    go on a run with him, agreed?

3         A    She told us that.  I believe he somehow

4    communicated to her that he was going on a run and

5    she asked to go with him.

6         Q    And you could agree that that could be

7    evidence that might -- to repeat -- might be

8    evidence of consent.

9         A    That might be evidence that someone

10   would use to argue that it's consent.

11        Q    And did you read in her report that she

12   French kissed him back at some point during this

13   alleged sexual assault?

14        A    Yes.

15        Q    And would someone who French kissed the

16   alleged assailant back, would that be potential

17   evidence that might indicate consent?

18        A    I think it would be potential evidence

19   that might indicate consent, but it could also be

20   evidence that there was not consent and that the

21   person who was being assaulted was trying to get

22   it over with quickly and hopefully things would

1    end sooner rather than later.

2              (KILPATRICK Exhibit Number 27 was marked

3              for identification.)

4    BY MR. MACGILL:

5         Q    I'm going to hand you Exhibit 27.

6    Ma'am, before we go to that, I want to review with

7    you the details of potential arguments in favor of

8    consent that you confirmed earlier.  Fair enough?

9    You listed a variety of evidence that could be

10   potentially evidence of consent by    REDACTED    .

11             Do you remember that testimony?

12        A    Yes.

13        Q    And the jury has heard the testimony,

14   and you listed, by my count, five different

15   details of evidence or five different types of

16   evidence that perhaps could be evidence of

17   consent.  But my question is, do you agree that an

18   objective reader would want to know about this

19   evidence of potential consent in understanding

20   what happened between    REDACTED    on the one hand

21   and Pastor Johnny Hunt in this incident?

22        A    I'm not sure -- I'm not sure what a

1    reader -- I can't say what a reader is going to

2    expect.  What I can say is the things that we have

3    talked about that are potential arguments for

4    consent are things that we considered during our

5    investigation, and there were other things that we

6    also considered to determine that we felt like

7    that    REDACTED    's testimony to us was credible

8    and that she was describing a nonconsensual

9    assault.

10        Q    Well, ma'am, your -- the Guidepost role

11   was not to be judge and jury, was it?  The

12   engagement letter didn't tell you that you were to

13   be judge and jury as to who was right and who was

14   wrong in any sex abuse incident, right?

15        MR. KLEIN:  Objection.  Compound question.

16   BY MR. MACGILL:

17        Q    That's fair.

18        There's nowhere -- there's not one word in

19   this engagement where you, the company -- you or the

20   company were instructed to be judge and jury as to

21   what happened in relation to any "sexual abuse"

22   allegation, right?

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 203 of 386 PageID #:
4257

1          MR. KLEIN:  Objection as to form.  You can

2    answer.

3          THE WITNESS:  We were not judge and jury.

4    BY MR. MACGILL:

5      Q    Well, ma'am, you were, because -- we can

6    read the words back to you, but you said you found

7    Dr. Hunt not to be credible, right?

8          MR. KLEIN:  Objection.  Argumentative.

9    BY MR. MACGILL:

10     Q    That's what Guidepost said, right?  You

11   found Dr. Hunt not to be credible.

12     A    That's correct.

13     Q    Where in your engagement letter -- I'm

14   going to hand it to you -- where is it said that

15   you are to judge the credibility of witnesses.

16   Let's look together at the letter.  It's Exhibit

17   2.  I'm going to hand you back Exhibit 2, and

18   could you point out to us where it is that you are

19   to judge the credibility of people involved in

20   sexual abuse allegations?

21         MR. KLEIN:  If you need to read the entire

22   document you can.  Read whatever part you are

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 204 of 386 PageID #:
4258

1   comfortable with to answer the question.

2   BY MR. MACGILL:

3       Q    And let me tell you, I'm going to focus

4   you on section 3.1 where you were indicated, as

5   directed by the SBC motion, Guidepost will

6   investigate allegations of abuse by the Executive

7   Committee members.

8            Do you see that?

9       A    Yes.

10      Q    And when you were involved with Pastor

11  Johnny Hunt, that was a portion of the

12  investigation that caused the analysis that you

13  did pertaining to Pastor Johnny Hunt, right?

14      A    That's correct.

15      Q    And so the charge you had as a company

16  was to investigate allegations of abuse.  You

17  weren't asked, were you, to be judge and jury

18  about those allegations, were you?

19      A    I was not asked to be judge and jury of

20  anything.

21      Q    Guidepost wasn't either, were they?

22           MR. KLEIN:  Objection as to form.  You can

1    answer.

2          THE WITNESS:  Guidepost was asked to

3    investigate allegations of abuse by Executive

4    Committee members.

5    BY MR. MACGILL:

6       Q    So I read here on page 161, the

7    investigators did not find Dr. Hunt to be credible

8    in their interviews with him, right?  Part of the

9    report?

10      A    That's correct.

11      Q    Where is it written anywhere that that

12   was part of your job in this case to determine

13   whether Dr. Hunt was credible in interviews.

14   Where is that written, ma'am?

15      A    It's not written explicitly in this

16   letter of engagement.

17      Q    So it's just gratuitous on your part to

18   make mention of his credibility you felt you, as

19   an investigator, had a license to make such a

20   statement in a report that would go ultimately to

21   millions of people?

22          MR. KLEIN:  Objection.  Argumentative and

1    compound, but you can answer.

2             THE WITNESS:  Please restate your

3    question.

4    BY MR. MACGILL:

5        Q    So you -- you felt you had the right

6    yourself, as an investigator, to be a sponsor of

7    the sentence that investigators did not find

8    Dr. Hunt to be credible in their interviews with

9    him?

10       A    As an investigator, we were

11   investigating the facts, and we had to interview

12   witnesses.  And we were making determinations of

13   credibility of those witnesses that we spoke with.

14       Q    What authority did you have from

15   anywhere, ma'am, to make assessments of

16   credibility of witnesses.  I have the engagement

17   letter right here.  There's no reference to your

18   job being to assess credibility, is there?

19            MR. KLEIN:  Objection.  Compound

20   questions.  You can answer if you can.

21            THE WITNESS:  Please repeat your question.

22

1  BY MR. MACGILL:

2      Q    There is no authorization anywhere in

3  this engagement letter, Exhibit 2, for you as an

4  investigator to judge the credibility of witnesses

5  is there?

6          MR. KLEIN:  Objection.  Asked and answered

7  but you can answer.

8          THE WITNESS:  This letter of engagement

9  engages Guidepost to do an investigation of

10  allegations of being abused by an Executive

11  Committee member.  Part of an investigation is

12  interviewing witnesses and evaluating credibility,

13  and that's exactly what we did.

14  BY MR. MACGILL:

15      Q    Want when did Pastor Johnny Hunt cease

16  to be a representative of the Executive Committee?

17      A    I don't know the answer to that.

18      Q    Well, wait a minute, ma'am, you said

19  that you've done it -- you made a report about

20  Pastor Johnny Hunt and your investigatory period

21  for Executive Committee period of members was

22  what, ma'am?

1      A    I'm sorry.  What did you say?

2      Q    What is the period of time of the

3  investigation that you were to conduct?  What

4  years?

5      A    From 2000 to June of 2021.

6      Q    It's written right here in Exhibit 2,

7  isn't it?

8      A    Yes.

9      Q    And what you were charged with was to

10 investigate allegations of -- abuse allegations by

11 Executive Committee member between January 1,

12 2000, and January 14, 2021; is that correct?

13     A    Yes.

14     Q    Was Pastor Johnny Hunt a member of the

15 Executive Committee during that period of time?

16     A    Johnny Hunt, I believe, was the

17 president of the SBC.  And in 2010 he became the

18 immediately past president I believe in June of

19 2010 of that year.

20     Q    When was the alleged assault.

21     A    July of 2010.

22     Q    Was the Pastor Johnny Hunt a member of

1  the Executive Committee during the alleged

2  assault?

3       A    I think that he was the immediate past

4  president.  He was not acting SBC president at the

5  time.

6       Q    So he what -- to repeat -- let me make

7  sure we're crystal clear.  Pastor Johnny Hunt was

8  not a member of the Executive Committee on

9  July 28, 2010, agreed?

10      A    I do not think that he was.

11      Q    You do not think that he was.  Well,

12  wait a minute, ma'am.  You written a report that

13  has a specific time frame in it.  And are you

14  telling this jury and this judge that you don't --

15  that are admitting that he was not a member of the

16  Executive Committee at the time of the alleged

17  assault?

18           MR. KLEIN:  Objection.  Asked and

19  answered.  Now just asked in a different way.  Same

20  question.  You can answer if you can.

21           THE WITNESS:  He was not a member of the

22  Executive Committee in July of 2010.

1    BY MR. MACGILL:

2         Q    All right.  And you knew that at the

3    time that you did your investigation?

4         A    Yes.

5         Q    So let's talk about what you did and

6    whether it was authorized by the metes and bounds,

7    so to speak, of the engagement letter.  Let's look

8    at the engagement letter together.  Look at the

9    bullet point number two.

10             Bullet point number two says:  Mishandling

11   of abuse allegations by Executive Committee members

12   between January 1, 2020, and June 14th 2021.  Do you

13   see that?

14        A    Yes.

15        Q    Who was it -- with respect to the

16   mishandling component of this, who at the SBC

17   mishandled incident associated with Johnny Hunt?

18             MR. KLEIN:  Objection as to form.  No

19   foundation.  But you can answer.

20             THE WITNESS:  I don't believe that that

21   was a situation because it was unknown.  His

22   situation was unknown to the Executive Committee.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 211 of 386 PageID #: 4265

1    BY MR. MACGILL:

2         Q    So at the time you authored -- strike

3    that.

4              At the time that you did your

5    investigation, you understood at all times that as

6    far as the alleged assault committed, that Pastor

7    Johnny Hunt was not in the Executive Committee at

8    the time of the alleged sexual assault?

9              MR. KLEIN:  Objection.  Asked and

10   answered.  You can answer.

11             THE WITNESS:  Johnny -- Mr. Hunt was not a

12   member of the Executive Committee in July of 2010.

13   However, there was an ongoing relationship over the

14   years between the REDACTED and Mr. Hunt where REDACTED

15   REDACTED shared with us several time frames when she

16   was made to feel uncomfortable by the attention that

17   Mr. Hunt showed her.  So he was in the capacity of

18   Southern Baptist Convention president when some of

19   these things took place.

20   BY MR. MACGILL:

21        Q    Back to Exhibit 27.  Is this REDACTED

22             REDACTED

1      A     It's                    REDACTED

2           REDACTED

3           MR. KLEIN:  Rob, I would just say, before

4   you get into any specifics of the document, it is

5   designated as attorney eyes only.  We don't have to

6   have our back and forth about our positions on that.

7   That's already on the record, but I would ask if you

8   are going to read from it -- and also

9   Ms. Kilpatrick, if you are going to read from it --

10  that we do that outside the presence of Mr. Hunt.

11  BY MR. MACGILL:

12      Q     Did you understand, ma'am, that --

13  specifically that the REDACTED wanted the Southern

14  -- wanted the SBC to compensate them?

15          MR. KLEIN:  Again, without referring to

16  the document, you can certainly answer that question

17  if you can.

18          THE WITNESS:  Please ask your question

19  again.

20  BY MR. MACGILL:

21      Q     Did you understand that the REDACTED in

22          REDACTED        -- strike that.

www.veritext.com                                    888-391-3376

1          Did you understand that as of REDACTED

2                          REDACTED

3              REDACTED

4        A                      REDACTED

5    REDACTED   So no.

6        Q     Did the              REDACTED

7                        REDACTED

8              MR. KLEIN:  Again, Ms. Kilpatrick, I ask

9    you if you can -- very simple.  If you can answer it

10   without reading from the document, based on your own

11   memory, then you are free to answer.  If you are

12   unable to from your own memory answer that question,

13   then just advise Mr. MacGill, and he'll either ask a

14   different question or we'll separate Mr. Hunt out.

15   So just however you can answer in that capacity you

16   can do so.

17             THE WITNESS:  I do recall the

18                REDACTED               shared, and I took

19   the recommendations to mean, as we ask every

20   survivor that we talk to in this investigation, we

21   ask for general recommendations for the SBC for us

22   to consider in our report.  I took the

1          REDACTED              conveyed to us as those

2    being general recommendations to survivors of abuse

3    in general.

4    BY MR. MACGILL:

5          Q    Did              REDACTED

6                              REDACTED

7                              REDACTED

8    REDACTED

9          A    I don't recall whether    REDACTED

10                            REDACTED

11      REDACTED

12              (KILPATRICK Exhibit Number 28 was marked

13              for identification.)

14    BY MR. MACGILL:

15          Q    I'm going to hand you Exhibit 28.  Did

16    you see this document -- strike that.

17              Is exhibit 28        REDACTED

18    REDACTED

19          A    Yes, it is.

20          Q    And was this        REDACTED

21                            REDACTED

22    REDACTED

1     A    Yes.                    REDACTED

2                      REDACTED

3     Q    And this was           REDACTED

4        REDACTED

5     A    That's correct.

6     Q    And this is REDACTED prior to the

7   publication of the Guidepost report?

8     A    Roughly.  I mean,      REDACTED     yes.

9     Q    So when you received this on REDACTED

10  you understand that there was financial motivation

11  in Mr. REDACTED in terms of collecting

12  information -- I'm sorry --         REDACTED

13  Pastor Johnny Hunt?

14         MR. KLEIN:  Before you answer that,

15  Ms. Kilpatrick -- Rob, again, this is an attorney's

16  eyes only document.  I just want to make sure

17  neither you nor Ms. Kilpatrick are reading or

18  quoting from it.  You, of course, can ask general

19  questions about refreshing her memory about it.  I

20  would ask that if you want to have her get more

21  specific that you do so with Mr. Hunt in a breakout

22  room.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 216 of 386 PageID #:
4270

1           MR. MACGILL:  Yeah.  Well, we're going to

2    come back.  Let's get the court ruling, then we'll

3    redepose the witness on these topics.  But let me do

4    what I can --

5           MR. KLEIN:  That is not going to happen,

6    Rob.

7           MR. MACGILL:  It's going to happen.

8           MR. KLEIN:  You had your -- let me just

9    say one thing on the record then, Rob.  You had your

10   opportunity, Rob.  There's a mechanism in the

11   protective order that explains how to challenge

12   designations.  You have exercised that right.  You

13   had that opportunity then to wait to depose these

14   witnesses until that motion was decided of your own

15   choosing, which is certainly your prerogative.  You

16   chose to go forward with them now.  And if you now

17   have to live with that decision.  All I'm saying is

18   we have an ability, as we did yesterday and earlier

19   today, to question this witness sufficiently and

20   adequately with this information with your client

21   not present.  And if in fact your motion is granted,

22   your client will not be prejudiced at all because he

1   will then be able to read the exact transcript and

2   be shown those documents.  So he will not be

3   prejudiced if in fact the ruling is in your favor.

4   You have this witness now.  You can ask her

5   questions about this document now.  All we are

6   asking and we agreed yesterday and earlier today is

7   that you, for the moment, move Mr. Hunt to a Zoom

8   private room so you can ask this witness anything

9   you want and nothing will be prejudiced if you are

10  successful in the motion.

11          MR. MACGILL:  Disagree.  Now, what you all

12  have done -- and we'll make a record of this -- you

13  have been unfair with us in your production of

14  documents.  You produced 10,000 pages a week ago.

15  You should have produced those documents last year.

16  You refused to produce documents for months upon

17  months.  We've been prejudiced by that.  You

18  designated AEO materials without any basis in the

19  law, and the court will so rule we hope.  Right?

20          You are making claims of attorney's eyes

21  only on documents that have nothing to do with the

22  designation itself.  It's prejudiced our ability

1  to talk to our client during the deposition

2  proceedings, and we're not going to have it

3  anymore.

4          We're going to ask the court to

5  resume -- once we get the ruling -- to bring both

6  witnesses back.  And if we have to bring the CEO,

7  Julie Wood, back, we're going to do that too.  But

8  we're not putting up with this anymore.  We have

9  the right to consult with our client live during

10  the deposition itself about these documents.

11  You've prevented that.  We're not going to allow

12  it.  The judge will tell us what's allowed.

13          With respect to documents that have been

14  destroyed, you've never answered our question of

15  who destroyed what when.  You've refused to answer

16  the question.  We've asked you repeatedly, and now

17  we've asked for a court order to have you confirm

18  who destroyed what when.  All right?

19          So we can all make our arguments.  I'm

20  just putting you on notice that we intend to come

21  back, okay?  And that's -- we're going to bring the

22  witness yesterday back, and we're going to bring

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 219 of 386 PageID #: 4273

1   this witness back if the court rules in our favor.

2   If we lose that's it.

3            MR. KLEIN:  Okay.  Well, I will just

4   disagree with that.  And we will, of course, oppose

5   such application.  I'm just putting a record now

6   that you are not being prejudiced by asking this

7   witness any questions you want about these documents

8   just outside the presence of Mr. Hunt for now.  And

9   I think our record is made, Rob.

10            MR. MACGILL:  It's clear.  You provided

11   our ability to consult with our client on important

12   documents in the case and on this one as well, and

13   we deal with -- the court will make a ruling.

14   BY MR. MACGILL:

15       Q    Now, ma'am, this is -- you've heard the

16   exchange with counsel.  Your counsel is refusing

17   to allow Pastor Johnny Hunt to hear the content of

18   Exhibit 28.  You understand that, right?

19       A    Yes.

20       Q    And it's not your decision.  That's

21   Guidepost and its counsel making that decision,

22   right?  That's not your decision.

1          MR. KLEIN:  Objection as to that.  I told

2    you, Rob, that that's our decision as counsel.  I'm

3    not going to reveal those communications.  But yes,

4    you can take me that it's our decision to do this.

5    BY MR. MACGILL:

6        Q    When you saw on     REDACTED     Exhibit

7    28, you understood that    REDACTED   is a

8    gentleman who wanted to          REDACTED

9          REDACTED       right?

10          MR. KLEIN:  I'm going to ask you, though,

11    the same admonition earlier.  If you can answer

12    that -- you can use the document to refresh your

13    memory.  If it refreshes your memory, you, of

14    course, can and must answer Mr. MacGill's question.

15    It is doesn't, just let us know that.  And then

16    we'll go from there.

17          THE WITNESS:  Please ask your question

18    again.

19    BY MR. MACGILL:

20        Q    You understood when you received Exhibit

21    28 on REDACTED that   REDACTED   wanted REDACTED

22                REDACTED

1      A    I recall receiving these emails and

2   recall that they mentioned    REDACTED

3   REDACTED among other things.  I remember reading

4   about                    REDACTED

5                        REDACTED

6              REDACTED

7           But my understanding also of these

8   documents is that these documents were never -- like

9   they were dated prior to us speaking with the

10  REDACTED and I have no information that they were

11  ever sent to Mr. Hunt.

12     Q    Okay.  But you knew, just as any citizen

13  walking down the street would know that on

14              REDACTED                  and he had

15              REDACTED                right?

16     A    I think that's a part of   REDACTED

17  yes.

18     Q    You understood that he    REDACTED

19                  REDACTED                  Right?

20     A    I do not recall that piece sitting here

21  right now.

22     Q    Well, don't you -- didn't you have the

1  understanding that there was a request that --

2  well, let me ask it this way:  Didn't you

3  understand that his          REDACTED

4                   REDACTED                 those

5  kinds of things?

6          Didn't you understand that?

7      A    I do recall him talking about his

8                   REDACTED

9      Q    He          REDACTED                too,

10  as you understood it on     REDACTED     right?

11      A    Yes.  But I don't know REDACTED -- I

12  don't know        REDACTED

13      Q    Yes, you do.  You read it with your own

14  eyes.  He had told you -- you read in this

15  document, Exhibit 28, what          REDACTED

16  You saw that, ma'am.  Right?

17          MR. KLEIN:  Objection.  Compound

18  questions.  You can answer if you can.

19  BY MR. MACGILL:

20      Q    You saw with your own eyes his REDACTED

21  REDACTED in Exhibit 28, right?

22      A    I saw the document, and right now

1    sitting here, I can't recall what it is.  I'll

2    take a look.

3         Q    All right.  Let's take a look at page

4    554.

5              MR. KLEIN:  Again, we cannot speak to this

6    document specifically with Mr. Hunt -- Dr. Hunt

7    present.  So Mr. McGill, I would ask if you want to

8    reference it specifically, then we have a breakout

9    room for Dr. Hunt.

10             MR. MACGILL:  Look at page 554.

11             MR. KLEIN:  Rob, are you going -- I just

12   want to know if you are going to ignore my request.

13             MR. MACGILL:  No, I'm not.  That's why

14   we're coming back.  No.  I'm not going to ignore

15   your request.

16             MR. KLEIN:  That's fine.  I disagree with

17   the coming back part but I respect your saying

18   you're not going to read from it.  That's fine.

19   Thank you.

20             MR. MACGILL:  We're coming back as far as

21   I'm concerned.

22

1    BY MR. MACGILL:

2         Q    Now, ma'am, do not ref -- we're going to

3    follow the demands of the counsel.  Okay?  He's

4    demanding that we not speak the words on the

5    record.  You understand that.

6         A    Yes.

7         Q    You should not in answering my questions

8    speak the words that are contained in this

9    document.  Okay?

10        A    Okay.

11        Q    Now, with that in mind, you understood

12   and you had read with your own eyes   REDACTED

13                        REDACTED

14       REDACTED           right?

15        A    Yes.  I had read this document.  Sitting

16   here today, I did not have an independent

17   recollection of   REDACTED   that was listed in this

18   document.

19        Q    Now, without mentioning the content of

20   the document, it was            REDACTED

21                          REDACTED

22   REDACTED  as you understood it.

1          MR. KLEIN:  Objection.  Asked and

2    answered.  She said she didn't recall.

3    BY MR. MACGILL:

4        Q    She recalls now.  She's just read it.

5    You just read to refresh your recollection as to

6    the            REDACTED            wrote on Bates

7    number 554, Exhibit 28.  Right?

8          MR. KLEIN:  I don't know -- are you going

9    to ask -- I'm not sure it's refreshed her memory,

10   Rob.  You certainly can ask her if it's refreshed

11   her memory.

12          THE WITNESS:  It is not -- I don't recall.

13   I mean I don't recall    REDACTED    of my

14   independent recollection.  I did read these emails.

15   BY MR. MACGILL:

16       Q    Great.  Let's read it together.  Not out

17   loud.  Please read paragraph number two on the

18   bottom of page 554.  Do not read it aloud, but

19   read it to yourself.

20       A    I can read.

21       Q    Now, you've read a reference by

22                REDACTED                right?

1      A    I have.

2      Q    Does this refresh your memory that on

3 April 1st, 2022, you knew that Mr. REDACTED was

4 interested in REDACTED

5 REDACTED from Pastor Johnny Hunt?

6      A    It refreshes my recollection as to Mr.

7 REDACTED

8      Q    Now, as a lawyer, you were admitted to

9 the bar in 1990, right.

10     A    Yes.

11     Q    As a lawyer, you could look at the

12 information on this, 554, and see that when

13 somebody makes a reference to REDACTED that

14 that has a meaning in the law, right?

15     A    Yes.

16     Q    And if you've REDACTED

17 REDACTED that you could be -- if there was a legal

18 right, you could be REDACTED

19 REDACTED right?

20         MR. KLEIN:  Objection.  Calls for a legal

21 conclusion.  You can answer if you can.

22         THE WITNESS:  I can't make that legal

1   conclusion.  I see the REDACTED that are written on

2   this document, and that's what's here.  And I can't

3   read it, but that's what here.

4   BY MR. MACGILL:

5       Q    Of course, it is.  Now, you as a lawyer

6   understand that if somebody says that I've REDACTED

7                    REDACTED              as a matter

8   of just an approach in court, then that person

9   would come to the court and say I want REDACTED

10   REDACTED  right?

11           MR. KLEIN:  Objection.  Calls for a legal

12  conclusion.  You can answer.

13           THE WITNESS:  I can't give you a legal

14  conclusion.  And I can't read what's on this -- this

15  -- this paper.  I mean, I think that -- I cannot say

16  what these REDACTED are, but I do not agree with what

17  you're saying.

18  BY MR. MACGILL:

19      Q    But you know -- okay.  Well, let's just

20  make sure -- let's see if we can do two things.

21  You knew that   REDACTED   -- you knew it as of

22      REDACTED   that   REDACTED   wanted a

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 228 of 386 PageID #: 4282

1      REDACTED            from Pastor Johnny

2  Hunt.

3           MR. KLEIN:  Objection asked and answered.

4  You can answer.

5           THE WITNESS:  He wanted REDACTED from Johnny

6  Hunt.

7  BY MR. MACGILL:

8      Q    Okay.  Now let's talk about math.  Let's

9  do some math together.  I want you to assume --

10  don't read the document -- I want you to assume

11  that Mr. REDACTED told you on      REDACTED      that

12  he had            REDACTED            and that that

13                 REDACTED                      he'd

14  had a          REDACTED          Right?

15           I want to make those two assumptions.  If

16  the conduct by Pastor Johnny Hunt were found to be

17  wrongful, the       REDACTED       of the claim

18  would be  REDACTED  on my assumptions, wouldn't it?

19           MR. KLEIN:  Objection.  Calls for

20  speculation.  Calls for a legal conclusion.  You can

21  answer.

22           THE WITNESS:  First off, Mr. REDACTED didn't

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 229 of 386 PageID #: 4283

1    say what you just said to me.  And so I -- he

2    didn't -- he didn't tell me over a period of time

3    and document it all out.  He just gives these

4    REDACTED and I can't read to you what it says.  He

5    is requesting -- he is -- he is talking about REDACTED

6    REDACTED and you are trying to get me to say that

7    it's significant.  And what's on this document is

8    not significant.  I'm not going to say it's

9    significant.

10   BY MR. MACGILL:

11        Q    You say it's not significant?

12        A    Well, when you look at other situations

13   in cases involving reporters of sexual abuse,

14   that's not a significant    REDACTED

15        Q    Okay.  Now, Pastor Johnny Hunt, I know

16   you are on the line, I would like to speak to you

17   about these circumstances, but what I'd like to do

18   now, you need to see the content of this letter in

19   order for us to do our job here today.  We're not

20   able to do it without speaking to you about what

21   is in this letter directed to you, this draft

22   letter, but I'm going to proceed by asking you now

1  to leave the meeting, and I'm going to ask this

2  witness now some questions even though I don't

3  have the ability to speak with you about it.

4  We'll ask the court to authorized this witness to

5  return once they have the opportunity to get your

6  counsel and guidance on the meaning and effect of

7  this document.

8          MR. KLEIN:  We're going to object to that,

9  if that application is made.  I appreciate you

10 letting Dr. Hunt leave the video room.

11         Warren, if you can assist in having

12 Johnny Hunt.

13         VIDEOGRAPHER:  I'll give it a try again.

14 BY MR. MACGILL:

15     Q    So ma'am, I've made my record about

16 this, but I want to now talk about what you knew

17 on     REDACTED      You had a    REDACTED     from

18   REDACTED  , did you not?

19     A    Yes.

20     Q    And we'll put in front of the jury what

21 your counsel has refused Dr. Hunt to see, but I'm

22 going to do this for now, and we're going to come

1   back if the court allows.  Turn to 544.

2         A    I'm there.

3         Q    The   REDACTED   from   REDACTED  , your

4   witness in your investigation, ma'am, that you met

5   with not one time but perhaps as many as nine

6   times informs you that he wants -- he's demanding

7   from Dr. Hunt a               REDACTED          .

8              Do you see that?

9         A    I see where Mr. REDACTED is saying he

10  would               REDACTED                 , and

11  he lists          REDACTED          under that.

12        Q    Well, let's not use your

13  characterization.  Let's look at the words, the

14  actual words that you were provided at the time

15  that you were conducting your work as a lead

16  investigator.  Your star witness, ma'am, the

17  witness that you relied on from the beginning to

18  the end of your work says the following on page

19  554:              REDACTED

20                    REDACTED

21                    REDACTED

22                    REDACTED

1          Do you see that?

2          MR. KLEIN:  Objection as to form.  But you

3   can answer the question.

4          THE WITNESS:  Yes.

5   BY MR. MACGILL:

6      Q    And that he has also claimed on the next

7   page that he, Johnny Hunt, has caused him to REDACTED

8       REDACTED      .  Do you see that?

9      A    I do.

10     Q    Now, how many        REDACTED        do

11  you read that as a lawyer practicing for decades?

12     A    So I would apologize.  You were

13  referencing me to the Bates number 14554, and I

14  did not see the        REDACTED        listed

15  in his list.

16     Q    So the REDACTED -- let's just do some doe

17  math together, ma'am, now that we're looking with

18  our own eyes and not tethered by what these

19  lawyers are doing to us.  I want to just focus on

20  what the reality is in terms of what you knew on

21   REDACTED   Your star witness, ma'am,   REDACTED

22  wanted a                REDACTED                He

1  wanted      REDACTED      , didn't he?

2          MR. KLEIN:  Objection as to form.  Lack of

3  personal knowledge.  You can answer.

4          THE WITNESS:  I can only testify and talk

5  about what is in this letter.  And so he says that

6                  REDACTED

7                      REDACTED

8                      REDACTED

9      REDACTED      That's what I know from this

10  letter.  But I will also tell you that our witness

11  that you are talking about was not   REDACTED  .  It

12  was   REDACTED  .

13  BY MR. MACGILL:

14      Q    Now -- we'll get to that, ma'am.  But

15  let's just do some math so the jury knows what you

16  knew at the time.  What you know is, if you just

17  did simple math on the   REDACTED   of his

18  claim, the unvarnished truth of this is he was

19  asking for            REDACTED            in

20  this   REDACTED   wasn't he?

21          MR. KLEIN:  Objection as to form.  Calls

22  for a speculation.  Lack of personal knowledge.  You

 1   can answer.

 2          THE WITNESS:  I can only tell you what the

 3   REDACTED states that he was asking for.  He didn't

 4   give a     REDACTED      I mean you can multiply it

 5   out.  It's a             REDACTED

 6   BY MR. MACGILL:

 7      Q    Let's do the math together.  He was

 8   asking for a           REDACTED          ; is that

 9   right?

10          MR. KLEIN:  Objection as to form.  You can

11   answer.

12   BY MR. MACGILL:

13      Q    Is that right?

14      A    A           REDACTED

15   REDACTED  .

16      Q    All right.  Now, how many years?

17   REDACTED  ?

18      A    I mean if you are talking    REDACTED

19   REDACTED  .

20      Q    Yeah.

21      A    Yes.

22      Q    So let's just do the math together while

1    we're here together this afternoon.  REDACTED

2        REDACTED    , isn't it?

3        A    I agree with your math.

4        Q    Okay. now, on the    REDACTED    of his

5    claim, you knew on REDACTED that your witness, your

6    star witness, ma'am, in this matter,  REDACTED ,

7    was asking for, at least on the   REDACTED   of

8    his potential claim for  REDACTED , right?

9            MR. KLEIN:  Mischaracterizes her

10   testimony, but she can answer.

11           THE WITNESS:  So to start with, REDACTED

12   REDACTED was not our star witness.   REDACTED   was

13   our star witness.  And the answer to your math

14   question is, yes, I knew that he had REDACTED and he

15   was asking Mr. Hunt to    REDACTED

16   BY MR. MACGILL:

17       Q    But it wasn't just   REDACTED , he also

18   wanted REDACTED on top of that, right?

19           MR. KLEIN:  Objection as to form.  You can

20   answer.

21           THE WITNESS:

22

1    BY MR. MACGILL:

2         Q    In this    REDACTED

3         A    In this    REDACTED    I'm aware of --

4    that he mentions a        REDACTED        and a

5             REDACTED        .

6         Q    And in this draft letter that you saw

7    with your own eyes on    REDACTED    you now know that

8    he is asking for in these two elements alone,

9     REDACTED .  Is that right?

10        A    The math would be correct, and that's

11   what's in this REDACTED that he gave us that I have

12   no information that it was ever asked for.  But

13   that's what's in this REDACTED

14        Q    Okay.  Now, we don't want to short

15   Mr. REDACTED on what he was planning to do at the

16   time that he informed you about his intentions on

17   REDACTED  His        REDACTED        could have been

18   more than REDACTED, right?

19             MR. KLEIN:  Objection.  Calls for

20   speculation.  You can answer.

21             THE WITNESS:  It's possible.

22

1    BY MR. MACGILL:

2         Q    Yeah.   Because it would be -- his REDACTED

3    REDACTED could extend beyond 2022, right?

4              MR. KLEIN:   Objection.   Same objection.

5    You can answer.

6              THE WITNESS:   It's possible.

7    BY MR. MACGILL:

8         Q    Right.   And so you knew on REDACTED

9    having read this with your own eyes as a lawyer

10   who's practiced law for decades, as a sole

11   proprietor and otherwise, that this gentleman,

12   your star witness, ma'am, is a person who could

13   have a demand for perhaps         REDACTED

14         REDACTED       right?

15             MR. KLEIN:   Objection.   Intentionally

16   Mischaracterizing the testimony, but you can answer.

17             THE WITNESS:   So again, Mr. REDACTED is not

18   my star witness.    REDACTED   is the significant

19   main witness in this matter.   And yes, we were aware

20   by these         REDACTED          that Mr. REDACTED

21   was          REDACTED

22

1    BY MR. MACGILL:

2        Q    Okay.  Now, so did you make -- I just

3    want to know -- and I think this jury is entitled

4    to know, did you make reference to Exhibit 28 in

5    the Guidepost report?

6        A    No, I don't believe we did.

7        Q    Now, ma'am, to be fair and to be

8    independent as an investigator, didn't you feel an

9    obligation as a citizen, not to mention as a lead

10   investigator, to make sure that the details of

11   Exhibit 28 were found to the text of your report

12   and included in the text of your report?

13       A    No, I did not.

14       Q    You said that Johnny Hunt was not

15   credible, ma'am.  Do you remember those words?

16   That's what Guidepost said in the report?

17       A    Yes.

18       Q    Do you think this gentleman, Mr. REDACTED,

19   is credible when he's sharing with you a document

20   that says that he may demand    REDACTED

21   from Pastor Johnny Hunt.  Do you think he's

22   credible in those circumstances?

1     A     I think that the story and the -- the

2  testimony we received about   REDACTED   about her

3  encounter with Mr. Hunt was credible.

4     Q     Now, let's talk about the star witness.

5  I've used the term star witness,   REDACTED  , and

6  you don't like it when I do that, right?  You

7  don't think that's fair for me to use star witness

8  in connection with   REDACTED  ?

9     A     I just disagree.

10     Q     Okay.  That's fine.  Let's agree to

11  disagree.  Let me ask you about his role as a

12  witness then.  Let's not use an adjective.  Okay?

13  I won't use an adjective in my question.

14            REDACTED   is the person who first

15  reached out to Guidepost; is that correct?

16     A     I believe that that's correct, but he

17  did not reach out to me.

18     Q     The majority of the communications with

19  Guidepost were from   REDACTED  , were they not?

20     A     I don't know that I could calculate

21  that.  The majority of my interactions were with

22     REDACTED  .

1    Q    The volume of materials -- the volume of

2    written materials -- we have them right here.  We

3    could go through the pages if you like, but the

4    volume, the majority of the pages written to

5    Guidepost came from    REDACTED    , right?

6            MR. KLEIN:  Objection as to form.  You can

7    answer.

8            THE WITNESS:  Yes.

9    BY MR. MACGILL:

10    Q    Now, with respect to the    REDACTED

11    report -- this is Exhibit 7, right?  You

12    understood that this had been generated -- this

13    had been prepared by    REDACTED    as well as his

14    wife?

15    A    I believe that's correct.

16    Q    What was the role of    REDACTED    in

17    this document.  Was he the author primarily?

18            MR. KLEIN:  Objection as to form.  You can

19    answer.

20            THE WITNESS:  My understanding was that

21    they prepared the document together.

22

1  BY MR. MACGILL:

2      Q    This is what you referred to as REDACTED

3  REDACTED isn't it?

4          MR. KLEIN:  Objection.  You can answer if

5  you know.

6  BY MR. MACGILL:

7      Q    Let me ask a better question.  This

8  document, Exhibit 7, is           REDACTED

9  isn't it?

10     A    I think that parts of Exhibit 7 towards

11 the back of Exhibit 7 where he -- where he, I

12 believe starts    REDACTED    is potentially

13 REDACTED  But I believe there was another REDACTED

14 that was provided to us in electronic form.

15     Q    Now, ma'am, I've looked through the

16 report from beginning to end, and I have not seen

17 any reference that Guidepost had the interest in

18 making this report have REDACTED  Do you agree

19 that you didn't make reference to that interest of

20 Guidepost wanting this report to have REDACTED?

21         MR. KLEIN:  Objection as to form.  You can

22 answer.

1          THE WITNESS:  Can you ask the question

2     again.  I'm not sure what you're asking.

3     BY MR. MACGILL:

4          Q    Did Guidepost disclose that one of the

5     lead investigators in this report wanted it to

6     have REDACTED?

7          MR. KLEIN:  Objection.  Asked and answered

8     you can answer.

9          THE WITNESS:  No.

10    BY MR. MACGILL:

11         Q    Why not?

12         A    I'm not sure what you are asking me.

13         Q    Well, ma'am, you -- you are talk -- you

14    talked from the beginning of this deposition ask

15    throughout that this was an independent report,

16    right?

17         A    Yes.

18         Q    But you have your co-lead investigator

19    saying to you that the draft that he had seen did

20    not have REDACTED   Do you remember that?

21         MR. KLEIN:  Objection.  Asked and

22    answered.  We went over this this morning.  But you

1   can answer again.

2   BY MR. MACGILL:

3       Q    Why didn't you disclose in the written

4   materials at Guidepost that in fact one of the

5   lead investigators wanted this report to have

6   REDACTED?

7            MR. KLEIN:  Objection as to form.  You can

8   answer.

9            THE WITNESS:  I'm still unsure what you

10  are actually asking me.

11  BY MR. MACGILL:

12      Q    You talked about credibility being

13  important?

14      A    Yes.

15      Q    Guidepost credibility was important in

16  terms of this report also, right?

17      A    Yes.

18      Q    Is Guidepost independent if it's wanting

19  its report to have REDACTED?

20      A    I think it depends on how you define

21  REDACTED.

22      Q    How did your co-lead investigator define

1    REDACTED to your knowledge?

2              MR. KLEIN:  Objection.

3              THE WITNESS:  I don't know.

4              MR. KLEIN:  I'm sorry.  Let me just

5    object.  You said you don't know.  The answer will

6    stand.  My apologies.

7              (KILPATRICK Exhibit Number 29 was marked

8              for identification.)

9    BY MR. MACGILL:

10       Q    I'm going to hand you Exhibit 29.  Now,

11   ma'am, I just want to identify this document,

12   Exhibit 29, is this a          REDACTED

13        REDACTED

14       A    Yes.

15       Q    And is the          REDACTED

16       A    Only the      REDACTED      which I

17   think you're referring to, is      REDACTED

18   REDACTED

19       Q    Okay.  Mr. Holske, it's his beginning

20     REDACTED

21       A    Yes.

22       Q    That's his REDACTED   And then you REDACTED

1    REDACTED

2         A    Yes.

3         Q    And this was         REDACTED        is

4    that right?

5         A    Yes.

6         Q    And this would have been -- this would

7    have been    REDACTED    you interviewed Pastor

8    Johnny Hunt.

9         A    Yes.

10        Q    And you're learning that    REDACTED

11               REDACTED                      Right?

12   Yes?

13        A    Yes.

14        Q    And then you    REDACTED   did you not?

15        A    I did.

16        Q    You said            REDACTED

17            REDACTED

18                       REDACTED

19           REDACTED

20           Are those your words?

21        A    Yes.

22        Q    Are those words to you do you think

1  fairly placed in context to be that of an

2  independent investigator?

3       A    I don't think that they speak to

4  independence or nonindependence.

5            MR. MACGILL:  Let's go ahead and take a

6  break.

7            VIDEOGRAPHER:  We're going off the record

8  at 2:54 p.m.

9            (Whereupon, a brief recess was taken.)

10            VIDEOGRAPHER:  We're now back on the

11  recorded at 3:15 p.m.  You may proceed.

12  BY MR. MACGILL:

13       Q    I want to focus for a few more minutes

14  on the role of   REDACTED   in your investigation.

15  So   REDACTED  , we've reviewed the   REDACTED

16  REDACTED document that he was a part of.  Do you

17  remember that?

18       A    Yes.

19       Q    That was Exhibit 7; is that right?

20       A    Yes.

21       Q    Okay.  Now, in addition to that your

22  report also -- the Guidepost report also cites

1   that there was witness one, two, and three that

2   validated or corroborated what REDACTED or

3   REDACTED said, right?

4       A   Yes.

5       Q   Now, witness one and witness two were

6   unnamed pastors; is that right?

7       A   Yes.

8       Q   And witness three, was that a pastor

9   also?

10       A   I believe he had some sort of pastoral

11   type of job.

12       Q   Not a pastor himself?

13       A   I think he had been a pastor maybe.

14       Q   Okay.  Fair enough.  So three pastors

15   were the independent witnesses who validated REDACTED

16   REDACTED and REDACTED had to say in your view as

17   a lead investigator; is that right?

18       A   Well, in addition -- yes.  But in

19   addition I would say that Mr. blankenship also did

20   the same thing and to a certain extent Mr. Hunt in

21   his second interview corroborated some details.

22       Q   You didn't call them corroborating

1    witnesses, did you?

2         A    The three that you are talking about?

3         Q    No.  Did Roy Blankenship -- did you

4    indicate that he validated the report of the

5    REDACTED in the report?  Do you recall?

6         A    I don't think we used those words, but

7    we used his testimony or his interview with us to

8    display those facts that were similar to what the

9    REDACTED had shared.

10        Q    All right.  But I want to focus now on

11   the role of    REDACTED    and the words that he

12   spoke to different people?

13        A    Okay.

14        Q       REDACTED    had a conversation with

15   witness one in the year 2010; is that right?

16             MR. KLEIN:  Objection as to form.  You can

17   answer.

18             THE WITNESS:  Yes.  I believe that's

19   correct.  And I may need to confirm one, two, and

20   three, the names, to kind of keep it straight.

21             MR. MACGILL:  Okay.

22             MR. KLEIN:  But the names cannot be

1    revealed publicly.

2              THE WITNESS:  Right.  Correct.

3              MR. KLEIN:  So if you need to reveal the

4    names or if documents can refresh your memory

5    without revealing the names --

6    BY MR. MACGILL:

7         Q    Would the report help you, to see the

8    report and the references to witness one, two, and

9    three?

10        A    Yes.

11        Q    All right.  I'm going to hand you -- why

12   don't you hand me back the exhibits you have and

13   I'm going to hand you back the report.

14             All right.  I'm going to turn exhibit --

15   I'm going to hand over Exhibit 8 and going to

16   page 158.  I'm going to ask you to find the witness

17   one, two, and three references that you think would

18   help you.

19        A    Okay.

20        Q    All right.  What page are you on?

21        A    Hunt 286.

22             MR. KLEIN:  She's referring to the Bates

1    number.

2              THE WITNESS:   I started on 156.

3    BY MR. MACGILL:

4         Q     Page 156.  All right.  Okay.  So on

5    page 156 of the Guidepost report, which is Exhibit

6    8, you have made -- the Guidepost company makes

7    reference to witness one, right?

8         A     Correct.

9         Q     And this witness one, there was a

10   conversation with pastor in 2010.  Right?

11        A     That's what witness one shared.

12        Q     So witness one repeated a conversation

13   with Pastor REDACTED back in 2010; is that right?

14        A     Yes.  That's what witness one shared

15   with us.

16        Q     All right.  Now, you said he had a

17   conversation with pastor in 2010 and said it was

18   like an atomic bomb.  Do you see that?

19        A     Yes.

20        Q     And then you report various things.  He

21   said that pastor -- that Dr. Hunt had made

22   advances is, et cetera.  That's the report, right?

1  A   Yes.

2  Q   All right.  Then we get to witness two.

3  And this is talking about -- witness two said that

4  the pastor that is  REDACTED   had told him about

5  Dr. Hunt "using survivor."  Do you see that?

6  A   Yes.

7  Q   All right.  Then again, this is a 2012

8  report where you are making reference here in the

9  Guidepost or the Guidepost is making reference to

10 a sexual abuse involving the survivor; is that

11 right?

12 A   Yes.  That's what witness number two

13 shared with us, the conversation that witness two

14 had with Pastor  REDACTED .

15 Q   And Pastor  REDACTED , as we can see by

16 reading this part of the document, Pastor  REDACTED ,

17   REDACTED   had said that in 2012 the witness two

18 that there had been sexual abuse involving

19 survivor.  Right?

20 A   Yes.

21 Q   I'd like to go back to witness one and

22 look at what's referenced here in the description

1 with witness one in 2010 there's a reference

2 pastor told him that it had happened at a beach

3 condo and that Dr. Hunt kissed her, touched her

4 breasts, undid her shorts, and it may have stopped

5 there.

6          Do you see that?

7     A    Yes.

8     Q    And using your definition of sexual

9 abuse that you provided to this court and jury

10 earlier, you would characterize the report by

11 Pastor          REDACTED          as reporting a sexual

12 abuse in 2010 in witness one, right?

13     A    That's what we understood from witness

14 one.

15     Q    Let's move to witness three.  And

16 witness three we see a reference on witness three

17 on page 157.  Do you see that?

18     A    Yes.

19     Q    And it is reported here that, again, it

20 was    REDACTED  , once again, speaking to witness

21 three, right?

22     A    That is correct.

1      Q    And   REDACTED   said, "Pastor told him

2  about Dr. Hunt making advances on survivor and

3  groping her and then subsequently covering it up."

4        Do you see that?

5    A   Yes.

6    Q   All right.  And so again, it is Pastor

7  REDACTED  making a report to witness three that

8  there had been, in your view as you define it, a

9  sexual abuse report?

10    A   Correct.

11    Q   Right?

12    A   Yes.

13    Q   All right.  So let's summarize.  So in

14  connection with your work, you relied on REDACTED

15  REDACTED and his reports to you in writing and by

16  his spoken word, right?

17        MR. KLEIN:  Objection as to form.  You can

18  answer.

19        THE WITNESS:  We interviewed Mr. REDACTED

20  and took documents from Mr. REDACTED, and those were

21  part of our consideration in the investigation.

22

1  BY MR. MACGILL:

2       Q      And you relied on what  REDACTED   told

3  you; is that fair?

4       A      Yes.

5       Q      All right.   And you also relied on

6  witnesses who reported -- witness one who reporter

7  what  REDACTED   told him in 2010, right?

8       A      Yes.

9       Q      You relied on witness two, who reported

10 what  REDACTED   told him about a sexual abuse in

11 2012, right?

12      A      Yes.

13      Q      And third, you relied on witness three

14 who had been told by  REDACTED   that there had

15 been a sexual abuse as described by you in this

16 report?

17      A      Yes.

18      Q      So  REDACTED   is -- is -- you rely on

19 him by his direct communications to you, and then

20 you rely on his communications that he made to

21 witness one, two, and three.   Right?

22      A      Yes.

1     Q    All right.  Now, the reality is that in

2   2010    REDACTED    at the time that he may have had

3   the conversation with witness one,    REDACTED

4   didn't believe there had been a sexual abuse,

5   right?

6              MR. KLEIN:  Objection as to form.  You can

7   answer.

8              THE WITNESS:  I don't have any knowledge

9   of exactly what    REDACTED    believed in 2010, that

10  he didn't believe it was that.

11  BY MR. MACGILL:

12     Q    Do you have knowledge specifically --

13  and I want you to be very precise in your

14  testimony to the jury -- do you have evidence

15  specifically, ma'am, based on your work in this

16  case that in 2012    REDACTED    did not consider

17  there to have been a sexual abuse of his wife?

18              MR. KLEIN:  Objection as to form.  You can

19  answer.

20              THE WITNESS:  What was shared with us by

21  the REDACTED is that they felt like what had happened

22  was wrong, but they didn't have the words to

1    describe it.

2    BY MR. MACGILL:

3        Q    Okay.  But he did describe it in words

4    as we just reviewed.

5        A    The specific definition words to

6    describe it as sexual abuse or sexual assault.

7        Q    Right.  But   REDACTED   didn't -- he

8    himself described this, and you characterized what

9    he described as sexual abuse, right?

10       A    Yes.

11       Q    But did you say in your report that

12     REDACTED   did not believe -- never used the

13   word sexual abuse when he described the 2010

14   incident to this pastor?

15            MR. KLEIN:  Objection.  The document

16   speaks to itself.  You can answer.

17            THE WITNESS:  Restate your question,

18   please.

19   BY MR. MACGILL:

20       Q    REDACTED   never told witness one

21   there had been sexual abuse, did he?

22       A    Witness one told us that -- what REDACTED

1  told him.

2      Q    He never told witness one that there had

3  been a sexual assault, did he?

4          MR. KLEIN:  Objection as to form.  Lack of

5  personal knowledge.  You can answer.

6          THE WITNESS:  So witness one did not use

7  the word sexual abuse.

8  BY MR. MACGILL:

9      Q    And    REDACTED    never -- you had no

10 information that    REDACTED    had told witness one

11 there had been either a sexual abuse or a sexual

12 assault, right?

13     A    I do not.  But the witness told us that

14 it was not appropriate behavior, and that it

15 happened in a condo and Mr. Hunt had kissed her,

16 touched her breasts, undid her short and that it

17 may have stopped there.

18     Q    Let's focus on witness two.  Witness two

19 never reported that    REDACTED    had reported to

20 him that there had been either a sexual abuse or

21 sexual assault, right?

22          MR. KLEIN:  Objection as to form.  You can

1    answer.

2              THE WITNESS:  I don't believe that witness

3    two used the word sexual assault or sexual abuse,

4    but said that he told him about Dr. Hunt abusing

5    survivor and did not give specific details but

6    shared it was sexual in nature.

7    BY MR. MACGILL:

8        Q    And so to your knowledge,   REDACTED

9    never told witness two that there had been a

10   sexual abuse or sexual assault in his conference

11   with him -- or communication with him in 2012.

12             MR. KLEIN:  Objection.  Asked and

13   answered.  You can answer again.

14             THE WITNESS:  He talked to witness two --

15   or witness two shared with us that Mr. REDACTED shared

16   with him about Dr. Hunt abusing survivor and also

17   shared that it was sexual in nature.

18   BY MR. MACGILL:

19       Q    Okay.  So do you conclude that that was

20   a report of sexual abuse by   REDACTED  ?

21       A    What witness two reported to us was a

22   report that   REDACTED   had reported to him

1   sexual abuse of Mrs. REDACTED.

2        Q    Witness three.  Did    REDACTED    report

3   to witness three that there had been sexual abuse

4   or sexual assault of his wife?

5        A    Witness three did not use the words

6   sexual abuse or sexual assault.  He told us that

7     REDACTED    told him about Dr. Hunt making

8   advances on survivor and groping her and then

9   subsequently covering it up.

10        Q    Were you told after the publication of

11   this report by   REDACTED    that Guidepost report

12   causes the readers to think that he had known it

13   was a sexual assault at the time?

14        A    I don't recall that statement.

15             (KILPATRICK Exhibit Number 30 was marked

16             for identification.)

17   BY MR. MACGILL:

18        Q    I'm going to hand you Exhibit 30.  I'm

19   going to ask you about   REDACTED    This is  REDACT

20     REDACTED    Did you receive -- looking at  REDACTED

21             REDACTED             did   REDACTED

22             REDACTED

1     A    Yes.

2     Q    And then on REDACTED did    REDACTED    --

3  did he                    REDACTED

4                            REDACTED

5  REDACTED

6          Do you see what I'm referring to.

7     A    Yes.

8     Q    I'm just referring to -- did you get

9  that    REDACTED

10    A    Yes, I did.

11    Q    All right.  I'm going to ask you,

12 Exhibit 31.

13         (KILPATRICK Exhibit Number 31 was marked

14         for identification.)

15 BY MR. MACGILL:

16    Q    Exhibit 31, is this the article that REDACT

17    REDACTED

18    A    Let me go back.  I'm not sure -- I

19 received this article at some point.  I'm not sure

20 if it was originally sent to me or if it was a

21 part of            REDACTED            you are

22 referencing on REDACTED   I'm not sure.

1      Q    You're not sure.  Okay.  Focusing on REDACTED

2  REDACT --

3           MR. KLEIN:  Before you ask, the document

4  you just gave us, is this Exhibit 32?

5           MR. MACGILL:  31.

6           MR. KLEIN:  31.  Hold on.  This does not

7  have a Bates number.  Was this produced by someone

8  or did you find this --

9           MR. MACGILL:  Yeah.  It was produced by

10  you as a part of this document -- not produced by

11  you, but it's referenced here.

12           MR. KLEIN:  Okay.

13  BY MR. MACGILL:

14      Q    All right.  Now, sir, do you -- ma'am,

15  do you see -- is this -- you can't tell us whether

16  31, exhibit 31, is the REDACTED or is the article

17  attached to this REDACTED?

18      A    No.

19           MR. KLEIN:  You can answer if you know.

20           THE WITNESS:  I don't know.  I don't know

21  if that is.  It may be.  I don't know.

22

1   BY MR. MACGILL:

2       Q    Now, is this -- do you recognize this

3   article as to who the author -- where was this

4   article published.  Do you know?

5       A    I don't.  I mean I can read here that it

6   says Protestia.com.

7       Q    Do you know an entity called Protestia?

8       A    It does not ring a bell.

9       Q    Now, can you look at this article at 31,

10  exhibit 31, is this the kind of article that you

11  anticipated as one of the investigators here that

12  you would have within a few days a headline

13  entitled op-ed "Johnny Hunt assaulted a young

14  pastor's wife.  Her husband should be disqualified

15  from the ministry."  Do you anticipate that kind

16  of press associated with the work that you had

17  done, ma'am?

18              MR. KLEIN:  Objection.  Calls for

19  speculation.

20              THE WITNESS:  I don't know.  I don't -- I

21  don't know what I anticipated.

22

1    BY MR. MACGILL:

2         Q    It's just logical, isn't it, that

3    somebody like you doing the kind of work that you

4    did, making the statements that you made, that the

5    logical extension of what you did was articles

6    like this, Exhibit 31, right?

7              MR. KLEIN:  Objection.  Argumentative.

8    You can answer.

9              THE WITNESS:  I -- I don't know what I

10   expected the articles would be.  There would be

11   articles on all sides of the issue.

12   BY MR. MACGILL:

13        Q    How in the world, ma'am, could you not

14   have expected a media firestorm in relation to the

15   Guidepost report that you were a lead investigator

16   on.  Are you telling us you had no expectation of

17   a press firestorm?

18             MR. KLEIN:  Objection.  Compound.  You can

19   answer.

20             THE WITNESS:  I had an expectation that

21   the report would generate media.  I did not have an

22   expectation for specifically this article or what

1   the articles would actually be like.  I expected

2   them to be all over the spectrum.

3   BY MR. MACGILL:

4       Q    All over the media spectrum.

5       A    Yes.

6       Q    You expected that the results of your

7   report would be on national news of different

8   types, right?

9       A    I mean I expected that -- yeah, I

10  expected it would be out there.

11       Q    Okay.  It would be out there.  You

12  expected it would be, for example, on NBC Nightly

13  News, didn't you?

14       A    I don't know if I expected it to be on a

15  news channel, but I expected it to be out there in

16  the public space.

17       Q    National news.  You expected your report

18  to be national news, right?

19           MR. KLEIN:  Objection.  Asked and

20  answered.  You can answer.

21           THE WITNESS:  I expected it to be out in

22  the national news.

1   BY MR. MACGILL:

2       Q    And you know, we've seen some of your

3   texts.  We'll get more of them, I'm sure, if we --

4   if the court so orders.  But some of your texts

5   you were starting to congratulate yourself and

6   your co-investigator, lead investigator, even

7   before the report, right?

8            MR. KLEIN:  Objection as to form.  You can

9   answer.

10           THE WITNESS:  I -- I don't recall.  I'm

11  happy to take a look at the texts and explain --

12  BY MR. MACGILL:

13      Q    Now, wait a minute.  Before the break we

14  showed you one text.  You don't think that was

15  self-congratulatory, that text that I showed you

16  before the break, where you and Mr. Holske are

17  exchanging the information that you did?

18      A    I would not describe it as

19  self-congratulatory.

20      Q    You wouldn't?

21      A    No.

22      Q    Okay.  Well, but look at yourself here

1   and your role here.  You and the people you work

2   in concert with, you expected that you would have

3   REDACTED from the moment this report was

4   published, didn't you?

5            MR. KLEIN:  Objection.  Mischaracterizes

6   her testimony and asked and answered.  You can

7   answer.

8            THE WITNESS:  I think I said earlier in my

9   testimony it depends on what you define REDACTED to

10  mean.

11  BY MR. MACGILL:

12       Q    National news, ma'am.  NBC national

13  news, ABC national news, Fox national news.

14  That's what I'm indicating when I talk about the

15  kind of REDACTED that you anticipated from what you

16  called an "investigation"?

17            MR. KLEIN:  Objection.  Argumentative.

18  You can answer.

19            THE WITNESS:  We expected for this to be a

20  very important report that would be out in the

21  national media and that people were going to -- like

22  people were interested in it.  People were following

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 267 of 386 PageID #: 4321

 1    it the whole time.  They were -- you know, they were

 2    -- we had an email for people to contact us if they

 3    wanted to participate in the investigation.  There

 4    was news media all around it from the beginning.

 5    BY MR. MACGILL:

 6        Q    What evidence did you have that people

 7    would have any interest in a 12-year-old event

 8    between    REDACTED    and Pastor Johnny Hunt?  What

 9    indication did you have that that would be of

10    interest to anyone?

11            MR. KLEIN:  Objection.  Mischaracterizes

12    her statement.  You can answer.

13            THE WITNESS:  I'm saying the engagement as

14    a whole was of interest to people who were in the

15    Southern Baptist Convention and people who followed

16    the denomination.  There has been, for several

17    years, a reform on sexual abuse, and there were a

18    lot of people that were interested in what the

19    investigation would find.

20    BY MR. MACGILL:

21        Q    Right.  And you found nothing, ma'am.

22    You and your co-investigator, you found nothing

1  new of import to anybody or any person in the

2  United States except a 12-year-old allegation by

3  REDACTED  and her husband, right?

4          MR. KLEIN:  Objection.  Argumentive.  You

5  can answer.

6          THE WITNESS:  I would say we found a

7  number of things.  The only thing that fell under

8  that first prong of abuse by an Executive Committee

9  member was the situation involving Mr. Hunt.

10          MR. MACGILL:  There was no Executive

11 Committee member at the time of this incident.  He

12 wasn't an Executive Committee member, ma'am.  You've

13 already admitted that.

14          MR. KLEIN:  Objection.  Asked and

15 answered.  You can answer again.

16 BY MR. MACGILL:

17    Q    You've admitted already he was not an

18 Executive Committee member at the time of this

19 incident, right?

20          MR. KLEIN:  Objection.  Asked and

21 answered.

22

1    BY MR. MACGILL:

2         Q    Right?

3              MR. KLEIN:  You can answer.

4              THE WITNESS:  At the time of the assault

5    Mr. Hunt was not an Executive Committee member.  But

6    what I also told you was prior to that.  While he

7    was an Executive Committee member, there were

8    instances in time where he showed special treatment

9    and attention to    REDACTED    -- kisses on the hand,

10   statements about, hey, hang back with me on the golf

11   cart, and different things.  And I would say in my

12   experience that those indicate grooming.

13   BY MR. MACGILL:

14        Q    Grooming.  Now, that's a term.  So is

15   grooming a term of art, ma'am, in your business?

16        A    Grooming is -- yeah, I would say it's a

17   term of art that's part of different types of

18   abuse.

19        Q    Ma'am, on Exhibit 30, Mr. REDACTED on

20   REDACTED this is    REDACTED    the publication of

21   the report says:              REDACTED

22                        REDACTED

1    REDACTED

2          Do you see that?

3      A    Yes.

4      Q    And what is your understanding he meant

5    by REDACT .

6          MR. KLEIN:  Objection.  Calls for

7    speculation.  Lack of firsthand knowledge and this

8    is an attorney's eyes only document.  I ask that we

9    not refer to the specific quotes of this document,

10   which you hadn't done earlier.  And I'd ask if we do

11   that, if you need to do that, then we very shortly

12   remove Dr. Hunt, or you can ask general questions

13   about refreshing her memory.

14   BY MR. MACGILL:

15     Q    There's a reference to the word REDACT .

16   What did you understand the word REDACT to mean in

17   Exhibit 30?

18     A    I could understand that to mean one of

19   two things.  So I don't know exactly what he meant

20   by that.

21     Q    What did you think at the time?

22     A    It could have been -- he could have been

1  using it to abbreviate    REDACTED    or  REDACTED

2  REDACTED .

3      Q    Now, based on this, based on Mr.  REDACTED

4  writing to you on this day, did you understand

5  that Mr.  REDACTED  now had doubts about whether there

6  was    REDACTED    or    REDACTED    involved in the

7  information that he had reported to you?

8      A    Can you ask that question again?

9      Q    Did you understand based on this email

10 that Mr.  REDACTED  himself had doubts as to whether

11 or not there was    REDACTED    or    REDACTED

12 involved in this matter?

13     A    No, I did not.  I think earlier in my

14 testimony I explained to you that at the time back

15 in 2010, the  REDACTED  described to us what happened

16 --  REDACTED  explained in detail what happened to her

17 and how Mr. Hunt had assaulted her and that they

18 didn't know exactly what to call it.  They felt

19 like that it was wrong, but they didn't know what

20 to call it because they were convinced by Mr. Hunt

21 and Mr. Blankenship that because she didn't fight

22 it off that it was consensual.

1     Q    But you -- you now know that your

2    witness, the person you were relying on in your

3    report was undermining the information that you

4    reported to millions of people, ma'am, in terms of

5    what had been said to witness one, witness two,

6    and witness three, right?

7              MR. KLEIN:  Objection.  Mischaracterizes

8    the statement.

9              THE WITNESS:  I don't have any knowledge

10   of that.

11   BY MR. MACGILL:

12    Q    Ma'am, it's confirmed to you by your own

13   -- by    REDACTED    on         REDACTED          the

14   report that there had had been  REDACTED  --

15             MR. KLEIN:  Objection.  Please do not read

16   from this document.

17   BY MR. MACGILL:

18    Q    I'm going to read two words -- only

19       REDACTED       .  Do you see those two words?

20   Do you see those two words?

21    A    Yes, I do.

22

1     Q   All right.  Now, so the core witness --

2  can I use the word core and not -- will you agree

3  with the word that  REDACTED  was a core witness

4  supporting your report?  Is that fair?

5     A   Sure.

6     Q   Your core witness --

7          MR. KLEIN:  Objection.  I'm sorry.  I'll

8  let you finish your sentence.

9  BY MR. MACGILL:

10    Q   Your core witness is indicating that

11  with respect to witness one, two, and three there

12  had been    REDACTED    , right?

13          MR. KLEIN:  Objection as to form.  You can

14  answer.

15          THE WITNESS:  That's what this REDACTED says.

16  BY MR. MACGILL:

17    Q   And the REDACTED also informed you -- I'm

18  just going to quote part of it -- that your core

19  witness confirms that witness one, two, three had

20  only been given information in    REDACTED

21  right?

22     A   Correct.

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 274 of 386 PageID #: 4328

1     Q   Now, at this point, ma'am, you had every

2  reason to know that your core witness had

3  undermined the core elements of your report that

4  had been punished now to millions of people.

5  Right?

6         MR. KLEIN:  Objection.  Mischaracterizes

7  her statement.  You can answer.

8         THE WITNESS:  That's incorrect.

9  BY MR. MACGILL:

10     Q   What steps did you take for your part,

11  ma'am, after you received this Exhibit 30 to see

12  if you could stop the media fire form that had

13  been created by your work?

14         MR. KLEIN:  Objection.  You can answer.

15         THE WITNESS:  I did not do anything as a

16  result of this email.  I did not talk to anybody.

17  BY MR. MACGILL:

18     Q   All right.  Let's talk about the

19  firestorm created by the SBC and the Executive

20  Committee.  You understood that they were going to

21  release the report as well as your own company,

22  right?

1              MR. KLEIN:  Objection as to form.

2     Compound.  You can answer.

3              THE WITNESS:  Yes.

4     BY MR. MACGILL:

5        Q    You understood that the Executive

6     Committee authorized publication of your report?

7              MR. KLEIN:  Objection.  You can do it in

8     your independent memory --

9              THE WITNESS:  Yeah.  I --

10             MR. KLEIN:  Let me finish the objection.

11    Just for clarity you are speaking on behalf of your

12    yourself, not on behalf of Guidepost.  In that

13    capacity you can answer Rob's question.

14             THE WITNESS:  Please ask your question

15    again.

16    BY MR. MACGILL:

17       Q    You understood the Executive Committee

18    was going to publish the Guidepost report,

19    correct?

20       A    I don't know -- I don't have any -- I

21    don't have independent recollection of actually

22    who was publishing the report as far as the SBC

1    was concerned.

2        Q    Did you understand the SBC was going to

3    on publish the report?

4        A    I understood that some part within that

5    was to publish the report.

6        Q    All right.  And did you understand there

7    had been some board members associated with either

8    entity that resigned for the reason that the

9    report was going to be published?

10        A    Do you have a time frame?

11        Q    No.  I -- let's first, did you

12    understand there had been board resignations based

13    on the idea that your report would be published?

14        A    I know that there were board

15    resignations but I'm not -- I don't know

16    specifically the reasons behind.  I don't have

17    personal knowledge.

18        Q    All right.  Which board -- what boards

19    members do you know in terms of resignations that

20    occurred that were associated with the prospect of

21    publishing the report of Guidepost?

22            MR. KLEIN:  Objection.  Mischaracterizes

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 277 of 386 PageID #: 4331

1   her statement.  You can answer.

2   BY MR. MACGILL:

3       Q    What do you know about board

4   resignations?

5           MR. KLEIN:  You can answer.

6           THE WITNESS:  I know that there were board

7   members who resigned.  Sitting here at this table, I

8   don't know -- I don't recollect the names of board

9   members who resigned.  I think there's over 80,

10  maybe close to hundred maybe total.

11  BY MR. MACGILL:

12      Q    How many resigned?

13      A    I don't recall.

14      Q    When did you learn that there were going

15  to be board resignations that were related to

16  these events of your report?

17          MR. KLEIN:  Objection.  Mischaracterizes

18  her statement.

19  BY MR. MACGILL:

20      Q    That's fair.  That's fair.

21          You understood there were board of

22  directors resignations based on the Guidepost

1  report, right?

2          MR. KLEIN:  You said board of directors

3  now?

4          MR. MACGILL:  Yeah.

5          MR. KLEIN:  You can answer that question

6  if you know.

7          THE WITNESS:  I don't know about that.  I

8  know -- I know that earlier in the engagement there

9  were resignations, but I'm not sure about what

10  you're talking about right this minute.

11  BY MR. MACGILL:

12      Q    You get Exhibit 30 and your core

13  witness, Mr.  REDACTED   is --

14          MR. KLEIN:  I ask you not -- it looks like

15  you're about to read from it, Rob.  I'm going to ask

16  again that you don't read from it.  You've read a

17  portion that I allowed as a professional courtesy.

18  I ask you not to read from it any further.  You

19  certainly can, I would just ask that before you do

20  that Dr. Hunt move into a separate Zoom room.

21  BY MR. MACGILL:

22      Q    Your core witness has provided the

1    information that we see in this Exhibit 30.  All

2    right?  Agreed?

3         A    Yes.

4         Q    Now, we're displaying this for the court

5    and jury here so they can read along with us.

6    With respect to this REDACTED did you at this time,

7    based on the information in this email, suggest to

8    anybody at Guidepost or for your own part, provide

9    notice immediately to the Executive Committee of

10   the content of this REDACTED

11        A    No, I did not.

12        Q    And that's true with respect to the SBC.

13   You didn't take any steps to immediately advise

14   them of this information in Exhibit 30; is that

15   right?

16        A    No, I did not.

17        Q    When did you, ma'am, or your company to

18   your knowledge, submit this REDACTED to the SBC

19   and/or the Executive Committee?

20             MR. KLEIN:  Objection as to form you can

21   answer.

22             THE WITNESS:  I did not submit this REDACTED

1   to anyone.  I don't have any knowledge of whether
2   someone else submitted it or not.
3   BY MR. MACGILL:
4       Q    Now, Mr. Holske responded to this REDACTED
5   from    REDACTED    to you and the CEO of the
6   company, did he not?
7       A    Yes.  It appears that he did.
8       Q    And do you why Mr. Holske responded to
9   the CEO of your company?
10      A    I don't.  You would need to ask him.
11      Q    Now, Mr. Holske indicated -- I don't --
12  to the CEO of the company and with a copy to you
13  in the manner that we can see on the court's
14  screen, right?
15           MR. KLEIN:  Objection to what's being seen
16  action on the court's screen, but you can answer.
17           THE WITNESS:  What's the question?
18           MR. MACGILL:  That's your problem.  That's
19  your fault.  That's what you've caused here.
20           MR. KLEIN:  No, I'm just saying we're not
21  in the courtroom.  I have no idea --
22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 281 of 386 PageID #: 4335

1          MR. MACGILL:  I'm read it.

2          MR. KLEIN:  That's all.

3          MR. MACGILL:  I'll read it.

4          MR. KLEIN:  Rob, you are missing my point.

5   I wasn't --

6          MR. MACGILL:  Enough.

7          MR. KLEIN:  I was just saying you're

8   talking about a courtroom.  We don't know what's

9   going to be on the court screen.  I just want to

10  make it easier for the witness so she knows what

11  you're saying.  That's all.

12  BY MR. MACGILL:

13      Q    Ma'am, I'm going to -- the jury is going

14  to see the following words on the court's screen.

15         MR. KLEIN:  Rob, please.  I object.  I

16  wasn't trying to be tricky or anything.  I just

17  wanted to point out you were saying what's being

18  shown on a screen in the courtroom.  I just wanted

19  to say we're not in a courtroom now.  That's all.

20  BY MR. MACGILL:

21      Q    Ma'am, I want you to know that we can't

22  compel you to come testify to defend what you did

 1   here in the courtroom in this case.  Do you

 2   understand that?  We do not have the power to

 3   compel your testimony in the court.  Do you

 4   understand that?

 5        A    Yes.

 6        Q    So do you understand that we'll be

 7   utilizing your testimony to display the video of

 8   your testimony to this court and this jury?  Do

 9   you understand that?

10        A    I understand that could be a

11   possibility, yes.

12        Q    Do you understand also that in order for

13   the jury to see what you did or failed to do, as

14   we say, that we're going to be displaying actual

15   court documents -- actual exhibits to the jury so

16   they can read along in the exhibits, so they can

17   see what we're asking you about simultaneously?

18             MR. KLEIN:  Objection.  Argumentative.

19   You can answer.

20             THE WITNESS:  Yes.

21   BY MR. MACGILL:

22        Q    Now, your counsel is not allowing us to

1   communicate Mr. Holske's information, but let me

2   just tell you this.  We're going to put it up so

3   the jury can see it and the judge of this Court

4   can see it.  Now, looking at this statement, would

5   you agree that the REDACTED that   REDACTED   sent to

6   you was a viewpoint.

7          MR. KLEIN:  Objection.  Lack of personal

8   knowledge.  You can answer.

9          THE WITNESS:  I think my understanding of

10  this REDACTED is that the news article is being

11  referred to as a viewpoint, but I have personal

12  knowledge of what Russ Holske was talking about.

13  But that would have been my interpretation.

14  BY MR. MACGILL:

15      Q    The jury can what Exhibit 30 means and

16  particularly the       REDACTED        But it's

17  fair to say, ma'am, that you understand for your

18  part when you received this REDACTED that Mr. REDACTED

19  REDACTED was not communicating some type of

20  viewpoint.  He was communicating facts to you,

21  wasn't he?

22          MR. KLEIN:  Objection as to form.  Lack of

1  knowledge.  You can answer.

2          THE WITNESS:  I think Mr. REDACTED was

3  communicating his thoughts and feelings and facts

4  about the articles that he was seeing and about the

5  report.

6  BY MR. MACGILL:

7      Q    He was disclosing facts about what he

8  said to witness one, two, and three, wasn't he?

9          MR. KLEIN:  Objection.  Asked and

10 answered.  You can answer.

11         THE WITNESS:  Yes.

12         MR. MACGILL:  Go to the next exhibit,

13 ma'am.

14         (KILPATRICK Exhibit Number 32 was marked

15         for identification.)

16 BY MR. MACGILL:

17     Q    I'll hand you Exhibit 32?  Now, is this

18    REDACTED    involving you -- well, let me ask

19 you.  Who is this -- strike that.

20         Is this    REDACTED    involving you and

21 certain people at Guidepost?

22     A    It appears to be    REDACTED    between

 1    Julie Myers Wood, Krista Tongring, and myself.

 2         Q    Did you initiate this?

 3         A    I'm not sure.  I'm not sure.  I don't

 4    know the answer on that.

 5         Q    Now, sir -- I'm sorry -- ma'am, on

 6                         REDACTED

 7    says in part:                   REDACTED

 8         REDACTED

 9              Do you see that?

10         A    Yes.

11         Q    Do you know who is writing that?

12         A    I don't.

13         Q    Do you know why?

14         A    Why?  I don't know.

15         Q    Do you know why    REDACTED    is sending

16    a text to your co-lead investigator on May 24,

17    2022, pertaining to Johnny Hunt?

18              MR. KLEIN:  Objection.  Calls for

19    speculation.

20    BY MR. MACGILL:

21         Q    Did he say why he was doing this?

22         A    I don't recall.  I don't recall.

1     Q    Okay.  And then this -- is this -- let

2  me use a common phrase, if you don't mind, is this

3  a victory lap for the three of you -- the CEO of

4  your company, Ms. Tongring, and yourself -- where

5  you are congratulating yourself on what you've

6  done in relation to your report?

7     A    I wouldn't call it a victory lap.  I

8  think it was just information of what was going on

9  in real time.

10     Q    Well, the CEO says    REDACTED

11  right?

12     A    Yes.

13     Q    Did you speak to the CEO of your company

14  about that?

15         MR. KLEIN:  Objection.

16         THE WITNESS:  I don't recall us having --

17  I don't recall us having a conversation about that,

18  but I knew that    REDACTED

19  BY MR. MACGILL:

20     Q    All right.  Did do speak -- did you

21  speak at any time to the CEO of your company about

22  the results of your investigation in terms of the

1  press.

2       THE WITNESS:  I do not think -- I don't

3  recall any conversations with Ms. Wood about the

4  results out in the press.  I mean I had multiple

5  conversations with Ms. Wood over the course of

6  working for her, and I don't specifically recall us

7  talking about the press.

8  BY MR. MACGILL:

9       Q    All right, now, ma'am, you know, God

10  willing and this court providing, we're hoping to

11  get the text strings of you and all the people

12  involved here.  And so perhaps we'll know more

13  once we get the text information and we get your

14  phone and everybody else's phone imaged properly.

15  But we don't have that right now.  All we have is

16  your recollection.  Okay?

17       A    Uh-huh.

18       Q    Do you recall, ma'am, separate and apart

19  from seeing what your phone has to say and those

20  on the phones of everybody else in your company,

21  can you tell us whether you recall having any text

22  exchanges where you were congratulating one

1    another on the press results of the work by

2    Guidepost?

3         A     I do not recall text exchanges

4    congratulating each other on the media.

5         Q     Next question.  Do you recall any text

6    exchanges where you communicated with the CEO of

7    your company and others about any press coverage

8    associated with this report?

9              MR. KLEIN:  Objection.  Asked and

10   answered.  You can answer again.

11             THE WITNESS:  I don't recall.

12   BY MR. MACGILL:

13        Q     Now, in terms of looking at Exhibit 32,

14                    REDACTED

15                       REDACTED

16              REDACTED

17             Do you see that?

18        A     Yes.

19        Q     Okay.  Now, was that -- was having

20   something that was  REDACTED  was that something

21   that you intended, ma'am, based on your work as

22   colead investigator here?

1      A    I didn't intend anything except to
2   perform an independent investigation and follow
3   the facts where they led.
4      Q    Now, based on this investigation, was
5   there follow-on work in the religious community
6   for Guidepost?
7      A    I'm sorry.  Repeat that.
8      Q    Based on this -- well, strike that.
9   After this report was published, was there
10  follow-on business that you received that
11  Guidepost associated with religious organizations?
12     A    I was an independent contractor at that
13  time and continued to work with Guidepost.  I
14  wasn't always privy to what was coming in the door
15  as a result of that until I became a full-time
16  employee.
17     Q    Once you became a full-time employee,
18  was there additional business that came in the
19  religious sector associated with investigations as
20  you described at the outset of this testimony
21  today?
22     A    I don't know the answer to that.  I do

Veritext Legal Solutions
www.veritext.com                                           888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 290 of 386 PageID #:
4344

1  know that Guidepost has always worked in this

2  sector, so I don't know if it's additional

3  business or it's just the normal course of what

4  comes over the course of the year.  I don't have

5  an answer for that.

6      Q    So have you done any metrics on that at

7  all in your work to find out whether as a matter

8  of looking at this longitudinally.  That is, over

9  time, that the business has increased in this

10 sector?

11     A    I have not.

12     Q    Okay.  Now, I'm guessing, sir, that --

13 we've seen some news accounts regarding the

14 building of a database by your company after this

15 report was published.  Do you remember that?

16     A    Yes.

17     Q    What is the entity ARITF?  What does

18 that stand for, that acronym?

19     A    The abuse reform implementation task

20 force.

21     Q    Is that an independent organization of

22 some entity?

```
 1        A    I believe it's a task force, and I'm
 2   not -- I'm not sure exactly where it sits.  But
 3   it's related to the Southern Baptist Convention.
 4        Q    Okay.  And after this initial report,
 5   did the ARITF recommend Guidepost for further work
 6   after the report?
 7             MR. KLEIN:  Objection.  You can answer.
 8             THE WITNESS:  Yes, they did.
 9   BY MR. MACGILL:
10        Q    Now, after this -- let's talk about you
11   now, if you don't mind, ma'am, for a few minutes.
12   I want to talk about how you were impacted or
13   affected by this report.  Once this report was
14   published, it's a fact, isn't it, that you became
15   a leader of a new division at your company, right?
16             MR. KLEIN:  Objection as to form.  At what
17   point, Rob?
18   BY MR. MACGILL:
19        Q    After this report was published.
20        A    In November of 2022.
21        Q    Yes.  You did.
22        A    The report was published in May of 2022.
```

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 292 of 386 PageID #: 4346

1    Q    Right.  And that's why -- I just want to

2  make sure the jury understands.  So within how

3  many months, within six months of the publication

4  of this report -- within six months, there's a new

5  division created at Guidepost; is that right?

6    A    The division had always been there, but

7  they asked me to lead it.

8    Q    Well, I'm reading what Mr. Blalock said.

9  Mr. Blalock said that Guidepost has established a

10  faith-based division of their firm called

11  faith-based solutions.  Is that right?

12        MR. KLEIN:  Objection as to form.  Lack of

13  personal knowledge.  You can answer.

14        THE WITNESS:  Yeah.  I'm not sure -- those

15  things were done before I came on in November of

16  2022.  Guidepost has always been involved in faith

17  work and has always had a core group of people that

18  do that.  And we have started to call ourself the

19  faith-based solutions kind of group.  That's what we

20  call ourselves.

21  BY MR. MACGILL:

22    Q    But did you tell Mr. Blalock that you --

1    did you tell the Executive Committee of the SBC

2    that you led a new division?

3         A    I may have said that to Mr. Blalock.

4    Mr. Blalock interviewed me at some point.

5         Q    But in any event, you became head of

6    this division within six months of the publication

7    of this report?

8         A    That's correct.

9         Q    Now, the Guidepost report included

10   information about convicted child molesters; is

11   that right?

12        A    I believe so, yes.

13        Q    It talked about -- it also contained

14   information about convicted sexual abusers; is

15   that right?

16        A    You are talking about.

17        Q    The report itself.

18        A    Exhibit 8?

19        Q    Yeah.

20        A    Yes.

21        Q    Now, with respect to the Houston

22   Chronicle article as one example, there wasn't

 1   reference to convicted child molesters in the

 2   report, but instead the Houston Chronicled focused

 3   exclusive on -- exclusively on Pastor Johnny Hunt,

 4   did it not?

 5            MR. KLEIN:  Objection as to form.  You can

 6   answer.

 7            THE WITNESS:  I haven't read those

 8   articles in a while.  I'm not sure what all they

 9   did, but I know that they did write an article, as

10   you've given me these text messages, about the

11   matter involving Mr. Hunt.

12   BY MR. MACGILL:

13        Q     Now, your company Guidepost Solutions,

14   does it have a code of commitment?

15            MR. KLEIN:  Objection as to form.  You can

16   answer.

17            THE WITNESS:  I'm not sure.

18   BY MR. MACGILL:

19        Q     You have not seen what your company

20   designates as its code of commitment?

21        A     If you are talking about a code of

22   commitment or code of conduct, I think they do

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 295 of 386 PageID #: 4349

1    have that, yes.

2         Q    And there's a code of commitment at

3    Guidepost that you are familiar with, right?

4         A    I believe so.

5         Q    And integrity is at the heart of

6    everything we do.  That's what you say.  That's

7    what Guidepost says; is that right?

8         A    That's correct.

9         Q    Okay.  And with respect to that code of

10   commitment, did you endeavor to follow that in

11   terms of your work on the Guidepost work for --

12   associated with this investigation that's the

13   subject of this lawsuit?

14        A    Yes.

15        Q    Did you understand that the code of

16   commitment obligates you to act ethically and

17   honestly and with integrity in your work?

18        A    Yes.

19        Q    Now, you wrote in the report -- or

20   strike that.

21             Guidepost wrote in its final report that

22   "state licensing records from the time indicate that

1    Mr. Blankenship was not a licensed counselor."

2            Do you remember that.

3        A    Yes.

4        Q    Now, in fact, it's a reality that

5    Mr. Blankenship did not need a professional

6    counseling license in 2010, did he?

7        A    I'm not aware of whether he needed

8    REDACTED or not.  That's a legal conclusion.

9        Q    Why would you say in the report that he

10   was not a licensed counselor without looking to

11   whether it was required that he would be a

12   licensed counselor?

13       A    Because that's the information that we

14   had, that he was not a licensed counselor.

15       Q    But the fact of the matter is he was

16   providing counseling under an exception to the

17   counseling license agreement -- licensing

18   requirements, wasn't he?

19            MR. KLEIN:  Objection as to form.  You can

20   answer.

21            THE WITNESS:  I'm not sure about exactly

22   how he was practicing at that time.

1   BY MR. MACGILL:

2        Q    Ma'am, you said he was not a licensed

3   counselor in the report, the Guidepost --

4        A    He did not hold a state license.  That's

5   all that we said in the report.  That's what we

6   said.

7        Q    Right.  But if you were going to be fair

8   about it, ma'am, you would have confirmed by your

9   own writing at Guidepost that he was authorized

10  specifically by Georgia law to do what he did as a

11  counselor, right?

12            MR. KLEIN:  Objection.  Calls for a legal

13  conclusion.  You can answer.

14            THE WITNESS:  We did not -- we did not

15  include Georgia law in the report describing an

16  exception.

17  BY MR. MACGILL:

18       Q    You did no investigation as to whether

19  he was exempted from any licensing requirement,

20  that is Mr. Blankenship, as a part of your report,

21  right?

22            MR. KLEIN:  Objection as to what she did

1  versus what Guidepost did.  You can ask her

2  certainly what she did.

3  BY MR. MACGILL:

4      Q    Let's make sure -- you took no steps.

5  You did nothing yourself to determine whether

6  licensing was required for Mr. blankenship; is

7  that right?

8      A    I did not, but I will also tell you that

9  the REDACTED were under the impression or told us

10 that they were impression that he was a licensed

11 counselor.

12     Q    Now, let's continue based on the

13 counsel's objection, not only did you fail to take

14 any investigatory steps to determine whether

15 licensing was required for Mr. Blankenship, your

16 colead investigator didn't do so either to your

17 knowledge, did he?

18          MR. KLEIN:  Objection.  You can answer.

19          THE WITNESS:  I'm not sure what, if

20 anything, Mr. Holske did as well.

21 BY MR. MACGILL:

22     Q    And as a matter of fact, to your

1   knowledge, Guidepost the company, the entire

2   company, did nothing -- to repeat -- nothing to

3   determine whether or not Mr. Blankenship required

4   a licensure to be a counselor under Georgia law?

5       A    I do not know of anything -- I do not

6   know of anything that Guidepost did -- anybody in

7   the company did in that regard.

8       Q    But nevertheless, what Guidepost said to

9   the public published to millions of people, "State

10  licensing records from the time indicate that

11  Mr. Blankenship was not a licensed counselor.

12  That's what the report says, right?

13          MR. KLEIN:  Objection.  Mischaracterizes

14  the statement, but you can answer.

15          THE WITNESS:  The report does say that he

16  was not a licensed counselor.

17  BY MR. MACGILL:

18      Q    One more exhibit and then I think we're

19  finished.

20          (KILPATRICK Exhibit Number 33 was marked

21          for identification.)

22

1    BY MR. MACGILL:

2         Q    Ma'am, I'm going to hand you Exhibit 33.

3    And my question first is if you look at    REDACTED

4    REDACTED    on Exhibit 33, this        REDACTED

5      REDACTED

6         A    At the very bottom it looks like it's    REDACT

7                         REDACTED

8         REDACTED

9         Q    My mistake.  Now, what role did Sunny

10   Lee have?

11        A    Sunny Lee works in our -- she works on

12   faith-based matters and worked on this engagement

13   as well.

14        Q    So, ma'am, I want to look at the    REDACTED

15                    REDACTED                    Do you

16   see that?

17        A       REDACTED

18        Q    REDACTED

19        A    Yes.

20        Q    Mr. Holske says to you:       REDACTED

21                    REDACTED

22     REDACTED

1          Do you see that?

2      A     Yes.

3      Q                    REDACTED

4      A     Yes.

5      Q     Then you responded on REDACTED

6  REDACTED

7                         REDACTED

8                         REDACTED

9               REDACTED

10         Is that your REDACTED

11     A     Yes.

12     Q     And by          REDACTED

13   REDACTED

14     A     The REDACTED.

15     Q     Now, I want to go back to the REDACTED

16             REDACTED              that you

17  identified earlier.  In this REDACTED she says in

18  the last sentence at the bottom of the first

19  paragraph.          REDACTED

20                  REDACTED

21        REDACTED

22        REDACTED              Do you see that?

1      A      I do see it.

2      Q      Now, focusing on her words, REDACTED

3              REDACTED                    do you agree

4  with her characterization that the Guidepost

5  report had as its        REDACTED

6          REDACTED

7              MR. KLEIN:  Objection as to form.  Lack of

8  personal knowledge.  You can answer.

9              THE WITNESS:  I don't know what Ms. Lee

10 meant by this, but the way that I read it is that

11                        REDACTED

12                        REDACTED

13         REDACTED

14             MR. MACGILL:  Take a short break.  I think

15 we're virtually finished.

16             VIDEOGRAPHER:  We're off the record at

17 4:10 p.m.

18             (Whereupon, a brief recess was taken.)

19             VIDEOGRAPHER:  We're now back on the

20 record at 4:17 p.m.  You may proceed.

21 BY MR. MACGILL:

22     Q      Ma'am, just a few more questions.

1      A    With respect to the event involving

2    REDACTED    and Pastor Johnny Hunt that is the

3    subject of the Guidepost report, if you as an

4    investigator, ma'am, had concluded that the

5    interactions between them were consensual, would

6    you have left Johnny Hunt out of the report.

7              MR. KLEIN:  Objection.  Calls for

8    speculation, but you can answer.

9              THE WITNESS:  Yes.

10   BY MR. MACGILL:

11      Q    One final question, ma'am.  If you had,

12   based on your investigation, determined that the

13   events between    REDACTED    and Pastor Johnny Hunt

14   in 2010 were likely consensual, would you have

15   left the reference to this event out of the

16   Guidepost report?

17              MR. KLEIN:  Objection.  Calls for

18   speculation.  You can answer.

19              THE WITNESS:  Do you have a definition for

20   likely?

21   BY MR. MACGILL:

22      Q    Yes, I do.  More likely than not.

1    MR. KLEIN:  Same objection, but you can

2  answer.

3    THE WITNESS:  So you are saying if it was

4  more likely than not that it was consensual.

5  BY MR. MACGILL:

6    Q    Right.

7    A    Yes.

8    Q    Then you would have let it out of the

9  report?

10    A    Yes.

11    MR. MACGILL:  Okay.  That's all we have,

12  sir.

13    MR. KLEIN:  I believe Brandon has a couple

14  of questions.

15    EXAMINATION BY COUNSEL FOR THE EC

16  BY MR. BUNDREN:

17    Q    Ms. Kilpatrick, my name is Brandon

18  Bundren.  You understand that I represent the

19  Executive Committee in this lawsuit?

20    A    Yes.

21    Q    And earlier today plaintiff's counsel

22  asked you about the meeting between yourself and

1  Mr. Holske and Dr. Hunt that occurred on May 12,

2  2022, correct?

3       A    Yes.

4       Q    And that was the second meeting that you

5  had with Dr. Hunt?

6       A    That's correct.

7       Q    And in that meeting that was when you

8  and Mr. Holske discussed the specifics of the

9  incident that took place between Dr. Hunt and

10  Ms. REDACTED on July 25th, 2010; is that right?

11  That's correct.

12       A    That's correct.

13       Q    And that's when you confronted Dr. Hunt

14  about those allegations that Ms. REDACTED made; is

15  that right?

16       A    Yes.

17       Q    Did Dr. Hunt during that interview ever

18  tell you on May 12, 2022, that he had kissed

19  Ms. REDACTED?

20       A    No.

21       Q    During that interview did Dr. Hunt ever

22  tell you that he awkwardly fondled Ms. REDACTED?

1     A    No, he did not.

2     Q    In fact, I believe whats in your report

3 is he told you there was no contact whatsoever

4 between himself and Ms. REDACTED; is that right?

5     A    That's what he told us.

6     Q    Did Dr. Hunt ever tell you during that

7 interview that it was Mrs. REDACTED who initiated

8 the encounter between him and Dr. Hunt?

9     A    No, he did not.

10    Q    Are you aware that less than a year

11 after your conversation with Dr. Hunt that he told

12 the world that he kissed Mrs. REDACTED, awkwardly

13 fondled her and that Ms. REDACTED initiated the

14 contact between he and Mrs. REDACTED?

15    A    Yes.  I am aware of that.

16    Q    But Hunt -- Dr. Hunt never told you that

17 during your conversations with you, did he?

18    A    No, he did not.

19         MR. BUNDREN:  Pass the witness.

20         MR. KLEIN:  I have no questions.  Thank

21 you.

22

 1   BY MR. MACGILL:

 2       Q    So ma'am, let's be more specific.  Let's

 3   now -- Mr. Bundren has had a chance to ask you

 4   some questions about May 12, 2022.  I'd like you

 5   to tell this court and jury exactly what you asked

 6   Pastor Johnny Hunt on May 12, 2022.  Your

 7   questions of him when you quote "confronted him."

 8   Tell the court and jury exactly what you asked

 9   him?

10           MR. KLEIN:  Objection.  Asked and

11   answered, but you can answer again.

12           THE WITNESS:  Mr. Holske led that

13   interview and so I asked follow-up questions as

14   necessary but I did not ask the specific questions

15   of him.

16   BY MR. MACGILL:

17       Q    What specifically, ma'am, did Mr. Holske

18   ask Pastor Johnny Hunt?

19       A    I believe that he asked him --

20       Q    You believe or know?

21       A    I do not have an independent

22   recollection apart of notes as to the specific

1    questions that Mr. Holske asked.

2         Q    One minute.  So you, ma'am, have no

3    independent recollection of the specific questions

4    that Mr. Holske asked Pastor Johnny Hunt on

5    May 12, 2022?

6         A    That's correct.

7         Q    Did you take contemporaneous notes of

8    that?

9         A    Yes, I did.

10        Q    Did Mr. Holske?

11             MR. KLEIN:  Objection as to form.  You can

12   answer.

13             THE WITNESS:  That interview, as we said

14   earlier, was conducted virtually, and Mr. Holske was

15   in a different location than I was.  And so I'm not

16   sure if he took them.  I didn't see -- I wasn't able

17   to see what he was taking.  I think that afterwards

18   we compared our reports.

19             MR. MACGILL:  Give us one minute, if you

20   would.

21             VIDEOGRAPHER:  Off the record at 4:26 p.m.

22             (Whereupon, a brief recess was taken.)

1        VIDEOGRAPHER:  We are now back on they

2    record at 4:40 p.m.  You may proceed.

3        MR. MACGILL:  We have no further

4    questions.  Thank you.  Thank you, everyone.

5        VIDEOGRAPHER:  This now end the deposition

6    Samantha Kilpatrick.  We are off the record at 4:40

7    p.m.

8        (Whereupon, at 4:40 p.m., the deposition

9        of SAMANTHA KILPATRICK was concluded.)

10        * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

1          CERTIFICATE OF NOTARY PUBLIC

2              I, CONSTANCE HUNT RHODES, the officer

3    before whom the foregoing deposition was taken, do

4    hereby certify that the witness whose testimony

5    appears in the foregoing deposition was duly sworn

6    by me; that the testimony of said witness was

7    taken by me in stenotypy and thereafter reduced to

8    typewriting under my direction; that said

9    deposition is a true record of the testimony given

10   by said witness; that I am neither counsel for,

11   related to, nor employed by any of the parties to

12   the action in which this deposition was taken; and

13   further, that I am not a relative or employee of

14   any attorney or counsel employed by the parties

15   thereto, nor financially or otherwise interested

16   in the outcome of the action.

17

18              *Constance Hunt Rhodes*

                 CONSTANCE HUNT RHODES

19               Notary Public in and for

                 the District of Columbia

20

     My commission expires:

21   January 31, 2028

22

```
 1                 Veritext Legal Solutions

                    1100 Superior Ave

 2                      Suite 1820

                  Cleveland, Ohio 44114

 3                Phone: 216-523-1313

 4   February 22, 2024

 5   To: Mr. Klein

 6   Case Name: Hunt, Johnny M.  v. Southern Baptist Convention; Et Al.

 7   Veritext Reference Number: 6438470

 8   Witness:  Samantha  Kilpatrick      Deposition Date:  2/2/2024

 9   Dear Sir:

10   Enclosed please find a deposition transcript.  Please have the witness

11   review the transcript and note any changes or corrections on the

12   included errata sheet, indicating the page, line number, change, and

13   the reason for the change.  Have the witness' signature notarized and

14   forward the completed page(s) back to us at the Production address

     shown

15

     above, or email to production-midwest@veritext.com.

16

     If the errata is not returned within thirty days of your receipt of

17

     this letter, the reading and signing will be deemed waived.

18

     Sincerely,

19

20   Production Department

21

22   NO NOTARY REQUIRED IN CA
```

Veritext Legal Solutions

1                    DEPOSITION REVIEW
                  CERTIFICATION OF WITNESS
2

         ASSIGNMENT REFERENCE NO: 6438470
3        CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
    Et Al.
         DATE OF DEPOSITION: 2/2/2024
4        WITNESS' NAME: Samantha  Kilpatrick
5        In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
6    my testimony or it has been read to me.
7        I have made no changes to the testimony
    as transcribed by the court reporter.
8

    _____         _____
9    Date                    Samantha  Kilpatrick
10       Sworn to and subscribed before me, a
    Notary Public in and for the State and County,
11   the referenced witness did personally appear
    and acknowledge that:
12

         They have read the transcript;
13       They signed the foregoing Sworn
              Statement; and
14       Their execution of this Statement is of
              their free act and deed.
15

         I have affixed my name and official seal
16
    this _____ day of_____, 20_____.
17

                  _____
18                Notary Public
19                _____
                  Commission Expiration Date
20
21
22
23
24
25

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 313 of 386 PageID #:
4367

```
 1              DEPOSITION REVIEW
              CERTIFICATION OF WITNESS
 2
          ASSIGNMENT REFERENCE NO: 6438470
 3        CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
    Et Al.
          DATE OF DEPOSITION: 2/2/2024
 4        WITNESS' NAME: Samantha  Kilpatrick
 5        In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
 6  my testimony or it has been read to me.
 7        I have listed my changes on the attached
    Errata Sheet, listing page and line numbers as
 8  well as the reason(s) for the change(s).
 9        I request that these changes be entered
    as part of the record of my testimony.
10
          I have executed the Errata Sheet, as well
11  as this Certificate, and request and authorize
    that both be appended to the transcript of my
12  testimony and be incorporated therein.
13  _____        _____
    Date                    Samantha  Kilpatrick
14
          Sworn to and subscribed before me, a
15  Notary Public in and for the State and County,
    the referenced witness did personally appear
16  and acknowledge that:
17        They have read the transcript;
          They have listed all of their corrections
18            in the appended Errata Sheet;
          They signed the foregoing Sworn
19            Statement; and
          Their execution of this Statement is of
20            their free act and deed.
21        I have affixed my name and official seal
22  this _____ day of_____, 20_____.
23            _____
              Notary Public
24
              _____
25            Commission Expiration Date
```

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS MIDWEST

ASSIGNMENT NO: 6438470

PAGE/LINE(S) /          CHANGE          /REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



_____        _____

Date                     Samantha  Kilpatrick

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____

DAY OF _____, 20_____ .

                  _____

                  Notary Public


                  _____

                  Commission Expiration Date

| & | 1100  311:1 | 131,000  231:22 | 18  4:17 120:16 |
|---|---|---|---|

**&**

**&**   2:9,13 6:1

**0**

**0000243**   1:5
**000434**   75:18
**0024**   5:9
**05/12**   129:10

**1**

**1**   4:15 37:12
  67:10 77:8
  108:8 176:6,11
  208:11 210:12
  227:22 235:5
  236:17 237:8
**1,200,000**
  228:18
**10**   67:2 108:5
  108:16 109:4
  133:3 301:5
**10,000**   217:14
**100,000**   228:12
**10016**   2:10
**103**   4:7
**10:35**   88:10
**10:53**   88:13
**10th**   300:15,17
**11**   101:6
  102:15 103:15
  104:7,13 105:7
  105:14 107:3
  107:19 109:15
  111:6,6 113:7
  137:12 145:1

**1100**   311:1
**11:59**   155:15
**11th**   139:20
  144:10,12
**12**   56:18,21,22
  57:3,3,7 67:14
  67:17 68:7,15
  69:7 72:15
  81:4 121:2,8
  128:14 129:5
  132:10 133:2
  134:3 137:8
  139:11 140:1
  141:9 153:9
  175:19 176:12
  228:14 233:1
  234:18 235:2
  236:18 267:7
  268:2 305:1,18
  307:4,6 308:5
**1200**   2:5
**1221**   2:21
**1250**   1:15,21
  5:11
**129**   4:8
**12:38**   142:21
**12th**   116:21
  121:13 130:10
  139:1,16
  175:16 177:15
**13**   142:21
  145:15,16
  147:18,21
  148:1 151:18
  231:22

**131,000**   231:22
  235:18 236:5
**13507**   119:9
**13510**   119:10
**13573**   310:18
**139**   4:8
**13:50**   285:6
**13th**   142:17
  147:20,22
  176:21
**14**   208:12
**14554**   232:13
**149**   183:14
**14th**   117:6
  210:12
**151**   36:15 38:9
**153**   31:10,12,16
  32:4 38:9
  41:14
**156**   2:4 250:2,4
  250:5
**156,000**   231:20
**157**   252:17
**158**   66:1 69:14
  69:22 71:12,14
  71:15 75:4
  249:16
**15:25**   129:20
**16**   21:8,10
  245:3
**1600**   2:18
**161**   205:6
**17**   147:5,21
  149:8,11
  153:11,20

**18**   4:17 120:16
  120:17,19
**180**   234:14
**180,000**   231:21
  233:1 234:8
  235:1
**1820**   311:2
**19**   11:10
**1990**   226:9
**1993**   9:18
**1996**   10:9,18
**1997**   11:10
**1:18**   156:2,4
**1st**   215:4,9
  220:6,21
  221:14 222:10
  226:3 228:11
  230:17 232:21
  236:7

**2**

**2**   1:13 4:16
  42:13 46:3
  77:8 203:17,17
  207:3 208:6
**2,160,000**
  233:19 235:2,8
**2,291,000**   236:9
**2.1**   235:17
**2/2/2024**   311:8
  312:3 313:3
**20**   4:18 16:7,9
  16:18,22 18:9
  19:1 20:1,6,8,9
  20:13,16,19
  23:20 24:5,6

24:19 27:16
28:12,13 29:1
30:7,10,12,22
33:5 34:5,15
35:16 36:2
163:20 164:18
165:7,10
166:11,13
167:10 312:16
313:22 314:22
**2000** 208:5,12
**20005** 1:16,22
**2001** 11:10,11
11:12,16
**2009** 40:19,22
41:8 44:14
45:2,2,14
**2009-2011**
41:17
**201** 4:9
**2010** 24:11
25:17 27:18
40:4,15 41:8
42:3,13 44:12
46:3 51:3
56:10 57:13,19
63:6,17 64:11
64:17,18 66:17
68:10,13,22
69:9 80:16
83:4 84:1
86:19 148:1
189:21 208:17
208:19,21
209:9,22

211:12 228:13
234:19 248:15
250:10,13,17
252:1,12 254:7
255:2,9 256:13
271:15 296:6
303:14 305:10
**2011** 40:15
41:8 45:15
231:22
**2012** 11:16,17
11:18,20 62:16
64:4,20 251:7
251:17 254:11
255:16 258:11
**2020** 210:12
**2021** 8:17,18
9:4 12:7,8
90:16 92:12
208:5,12
210:12
**2022** 8:14 9:5
16:1,4 17:7,16
30:4 49:8,9
51:16 53:19
54:6 55:3
56:15 57:9,16
58:13 59:1,14
62:20 64:22
65:13 67:2,8
67:17 68:15
69:7 72:15
73:5 76:4 87:7
90:5,16 91:8
92:12 104:7,13

108:5,16 121:2
121:8 129:5
133:3 137:12
145:1,15,16
147:7 163:21
164:7 167:19
171:5 175:16
175:19 212:22
213:2 215:4
220:6 222:10
226:3 227:22
228:11,13
230:17 234:19
237:3 240:10
245:3 246:16
259:21 283:16
285:6,17
291:20,22
292:16 300:15
300:18 305:2
305:18 307:4,6
308:5
**2024** 1:13 5:3
311:4
**2028** 310:21
**214** 4:10
**216-523-1313**
311:3
**22** 49:10 311:4
**22nd** 107:5
157:15
**23** 4:7 75:14,15
**24** 4:7 103:8,11
103:12,13
107:1,2 112:22

116:22 119:15
120:8 137:16
137:21 138:15
138:22 144:7
145:12 285:6
285:16
**2400** 2:21
**244** 4:11
**25** 4:8 129:1,4
130:8 145:9
**25433** 2:18
**259** 4:11
**25th** 32:15
189:19 305:10
**26** 4:8 65:13
66:21 76:4
139:6,7 145:14
145:16
**260** 4:12
**26th** 59:14
158:2,4
**27** 4:9 201:2,5
211:21
**28** 4:10 209:9
214:12,15,17
219:18 220:7
220:21 222:15
222:21 225:7
238:4,11
**284** 4:12
**286** 249:21
**29** 4:11 244:7
244:10,12
259:21

| | | | |
|---|---|---|---|
| **2908** 2:14 | **32** 4:12 261:4 | **5/31/22** 4:11 | 249:15 250:6 |
| **299** 4:13 | 284:14,17 | **544** 231:1 | 293:18 |
| **2:14** 129:10 | 288:13 | **554** 223:4,10 | **80** 277:9 |
| 130:10 | **33** 4:13 299:20 | 225:7,18 | **8:06** 139:11 |
| **2:54** 246:8 | 300:2,4 | 226:12 231:19 | 141:9 |
| **2nd** 5:3 40:4 | **36** 157:14,22 | **5:12** 300:18 | |

**9**

| | | | |
|---|---|---|---|
| 42:3 44:12 | **37203** 2:14,22 | **5th** 21:3 22:15 | **9** 4:17 38:18,18 |

**3**

| | | | |
|---|---|---|---|
| **3** 77:17 237:13 | **3:15** 246:11 | 24:6,18 26:5 | 38:19,21 40:18 |
| **3.1** 204:4 | **3:23** 1:5 | 26:13 27:13 | 42:9 44:10,12 |
| **3/31** 164:14 | **3:25** 121:8 | 28:6 | 45:1,14 46:1 |
| **30** 4:11 90:16 | **3:33** 5:9 | | **901** 1:16 5:11 |

**6**

| | | | |
|---|---|---|---|
| 91:8 92:12 | | **6** 4:3 77:22 | **9:06** 260:3 |

**4**

| | | | |
|---|---|---|---|
| 167:19 259:15 | **4** 67:12 212:22 | 78:5 | **9:12** 1:14 5:3 |
| 259:18 260:2,9 | 213:1 | **600** 2:9 | **9:17** 10:12 |
| 261:2 269:19 | **4/4/22** 4:9 | **6438470** 311:7 | **9:18** 10:15 |
| 269:20 270:17 | **40,000** 29:15 | 312:2 313:2 | **9:32** 121:2 |
| 272:13 274:11 | 30:19 32:20 | 314:2 | |

**a**

| | | | |
|---|---|---|---|
| 278:12 279:1 | **441** 61:15 | | **a.m.** 1:14 5:3 |

**7**

| | | | |
|---|---|---|---|
| 279:14 283:15 | **44114** 311:2 | **7** 18:14,21 | 10:12,15 88:13 |
| 283:16 | **46204** 2:5 | 19:17 20:5,12 | 142:21 260:3 |
| **304** 4:4 | **4:10** 302:17 | 21:1,10 26:19 | **abbreviate** |
| **30th** 260:22 | **4:17** 302:20 | 28:10,22 29:11 | 271:1 |
| **31** 4:12 16:1,4 | **4:26** 308:21 | 35:17 36:2,3 | **abc** 266:13 |

**5**

| | | | |
|---|---|---|---|
| 17:6,15,15 | | 36:22 147:4 | **abided** 165:17 |
| 18:13 20:3 | **5** 24:10 25:17 | 157:16,22 | **ability** 103:5,7 |
| 30:3 147:7 | 26:8,11,20 | 158:5 240:11 | 161:9 216:18 |
| 163:21 164:7 | 27:15,17 29:1 | 241:8,10,11 | 217:22 219:11 |
| 185:1 240:10 | 29:10 32:11 | 246:19 | 230:3 |
| 246:15 260:12 | 152:5 | **75** 4:7 | **able** 52:13 |
| 260:13,16 | **5/10/22** 4:13 | **7651** 167:11 | 100:20 192:4 |

**8**

| | | | |
|---|---|---|---|
| 261:5,6,16,16 | **5/12/22** 4:17 | **8** 4:16 31:8,11 | 217:1 229:20 |
| 262:9,10 263:6 | **5/16/22** 4:11 | 31:15 32:11 | 308:16 |
| 310:21 | **5/24/22** 4:12 | 36:15 71:15 | **above** 311:15 |

**absent**  140:22
141:18
**absolutely**  44:5
**abuse**  12:4 25:2
25:9,12 49:3
51:7 52:11
60:12,20 62:14
81:9 90:7,14
91:7 92:10
103:15 104:1
104:11,21
105:6,13 106:5
106:8,13
178:12 179:8
182:1,3,5,5,12
182:14,18
183:11,15
193:2 202:14
202:21 203:20
204:6,16 205:3
208:10 210:11
214:2 229:13
251:10,18
252:9,12 253:9
254:10,15
255:4,17 256:6
256:9,13,21
257:7,11,20
258:3,10,20
259:1,3,6
267:17 268:8
269:18 271:1,6
271:11 290:19
301:21 302:3,6
302:13

**abused**  207:10
**abusers**  179:11
179:13 182:14
293:14
**abusing**  258:4
258:16
**accordance**
312:5 313:5
**account**  152:21
**accounts**
290:13
**accredited**
101:16
**accurate**  16:14
20:20
**accusation**
173:8
**acknowledge**
72:1 312:11
313:16
**acknowledged**
68:15 72:15,20
**acronym**
290:18
**act**  117:7
295:16 312:14
313:20
**acted**  75:2
**acting**  35:1
69:20 70:15
72:11 87:5
116:14 209:4
**action**  110:8,14
113:19 280:16
310:12,16

**actions**  152:2
221:6 231:19
233:7
**activity**  26:1
79:12 80:3
**actual**  231:14
282:14,15
**actually**  22:1
27:10 29:8
38:9 76:15
86:18 122:8
130:3 169:4
179:9 182:10
197:3 243:10
264:1 275:21
**add**  50:15
120:7 126:19
**addition**
103:16 246:21
247:18,19
**additional**
38:13 104:11
289:18 290:2
**address**  311:14
**addressed**
107:16 111:17
**adequately**
216:20
**adjective**
239:12,13
**admit**  34:2
93:13 94:9
96:10 154:10
154:11,17
155:10 196:18

197:18
**admitted**  87:1
196:19 197:15
226:8 268:13
268:17
**admitting**
128:21 164:3
209:15
**admonition**
220:11
**advances**
250:22 253:2
259:8
**advise**  96:11
97:9 123:15
137:7,10
213:13 279:13
**advised**  101:15
163:12
**aeo**  217:18
**affected**  291:13
**affection**
154:12
**affixed**  312:15
313:21
**afternoon**
235:1
**ago**  57:8
217:14
**agree**  25:2,7
36:21 134:10
184:9,11,15
198:18,19
199:2,7 200:6
201:17 227:16

235:3 239:10
241:18 273:2
283:5 302:3
**agreed**  33:7,19
34:1 36:18
38:7 79:21
184:14 186:6,7
198:14 200:2
209:9 217:6
279:2
**agreement**
184:19 296:17
**ahead**  88:7
246:5
**aim**  20:20
**al**  311:6 312:3
313:3
**alex**  2:8 5:22
13:12,13,15,21
**alex's**  13:17
REDACTED

REDACTED

**allegation**  91:7
104:12 105:13
197:19 202:22
268:2
**allegations**
49:4,19 67:1,7
68:4,17 82:14
90:7 92:10
104:1,3,21
105:6 106:5
159:20 183:15
203:20 204:6
204:16,18
205:3 207:10
208:10,10
210:11 305:14
**alleged**  118:7
199:22 200:13

200:16 208:20
209:1,16 211:6
211:8
**allow**  31:19
50:10 112:17
167:6 218:11
219:17
**allowed**  166:12
218:12 278:17
**allowing**  110:1
282:22
**allows**  231:1
**aloud**  225:18
**amends**  221:2
**america**  7:21
7:22
**american**
158:11
**amount**  224:12
224:17 226:4
226:18 228:1
229:14 233:9
234:5
**amounts**
237:20
**analysis**  40:9
204:12
**anderson**  3:4
**anger**  158:21
160:18 161:6
161:11,13
162:11,20
169:17 170:18
171:12

**angry**  155:11
162:11 168:17
**announced**
158:5
**annual**  222:15
225:6 226:19
227:9
**answer**  19:3
23:12,22 25:4
28:19 29:4,19
31:21 33:10
34:7 37:4 39:5
41:10 43:9
44:4,16 45:4
45:17 46:11
48:8 50:10,11
50:14,17 53:21
57:11 58:16,16
58:21 63:10
65:16 66:4
67:20 69:4
73:7 74:8,18
75:7 80:20
82:18 83:6
84:8,9 85:1,9
87:11,16 88:4
89:8 90:10,20
91:12,13,19
93:19 94:5
95:12 96:15
98:18 99:21
100:14 101:19
103:20,21
105:16,16,21
106:1,19,21

| | | | |
|---|---|---|---|
| 110:10 111:21 | 211:10 212:16 | 302:8 303:8,18 | **anticipate** |
| 113:10 114:1 | 213:9,11,12,15 | 304:2 307:11 | 262:15 |
| 114:16 116:2 | 215:14 218:15 | 308:12 | **anticipated** |
| 119:2 120:11 | 220:11,14 | **answered** 37:3 | 138:20 262:11 |
| 121:16 122:5 | 222:18 226:21 | 41:10 44:4 | 262:21 266:15 |
| 123:5,21 | 227:12 228:4 | 45:17 57:11 | **anybody** 98:2 |
| 124:14 125:13 | 228:21 232:3 | 58:9 59:4 73:7 | 124:3 136:11 |
| 127:5,17,18,19 | 233:3 234:1,11 | 74:18 80:19 | 171:13 268:1 |
| 130:19 132:2 | 235:10,13,20 | 83:6 88:4 | 274:16 279:8 |
| 132:18 133:8 | 236:20 237:5 | 90:20 92:13 | 299:6 |
| 134:6,19 135:8 | 237:16 240:7 | 103:19 110:10 | **anymore** 218:3 |
| 135:9 136:1,21 | 240:19 241:4 | 111:20 119:20 | 218:8 |
| 138:1 140:4,11 | 241:22 242:8 | 120:11 125:4 | **apart** 162:4 |
| 141:3 142:4 | 243:1,8 244:5 | 127:5,17 134:6 | 287:18 307:22 |
| 143:17 144:3 | 248:17 253:18 | 134:18 136:21 | **apologies** |
| 145:4 148:12 | 255:7,19 | 140:3 143:17 | 132:17 159:6 |
| 149:1,19 151:2 | 256:16 257:5 | 144:3 169:20 | 244:6 |
| 152:19 153:13 | 258:1,13 | 170:7 177:17 | **apologize** 89:16 |
| 153:22 161:7,8 | 261:19 263:8 | 184:6 196:6 | 124:10,21 |
| 162:16 164:12 | 263:19 264:20 | 198:17 207:6 | 125:2 232:12 |
| 169:20 170:9 | 265:9 266:7,18 | 209:19 211:10 | **apology** 124:11 |
| 174:11 182:22 | 267:12 268:5 | 218:14 225:2 | 125:16 221:5 |
| 183:5 184:6 | 268:15 269:3 | 228:3 242:7,22 | **appear** 76:5 |
| 185:15 186:14 | 273:14 274:7 | 258:13 264:20 | 312:11 313:15 |
| 187:12 188:7 | 274:14 275:2 | 266:6 268:15 | **appeared** 35:8 |
| 188:20 189:7 | 275:13 277:1,5 | 268:21 284:10 | **appears** 31:4 |
| 189:15 190:19 | 278:5 279:21 | 288:10 307:11 | 151:19 280:7 |
| 191:4 193:7,17 | 280:16 282:19 | **answering** | 284:22 310:5 |
| 193:18 196:13 | 283:8 284:1,10 | 37:10 71:16 | **appended** |
| 198:8,17 | 285:4 288:10 | 128:6 224:7 | 313:11,18 |
| 199:10,17 | 289:22 290:5 | **answers** 37:13 | **application** |
| 203:2 204:1 | 291:7 292:13 | 37:15 67:11 | 219:5 230:9 |
| 205:1 206:1,20 | 294:6,16 | 75:5 78:19 | **appreciate** |
| 207:7,17 | 296:20 297:13 | 79:9 199:20 | 118:18 230:9 |
| 209:20 210:19 | 298:18 299:14 | | |

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 321 of 386 PageID #: 4375

**approach**
  88:16 95:22
  96:22 227:8
**appropriate**
  96:11 98:11
  100:11,21
  187:19 257:14
**approval**
  137:21 138:3
  300:22
**approve** 137:15
**approving**
  186:1
**approximately**
  89:11,21
**april** 49:8,10
  51:16 53:18
  54:6 55:3 57:9
  58:13 59:1,13
  62:11,20 65:13
  66:21 73:5,15
  76:4 86:6 87:7
  90:5,16 91:8
  92:12 171:22
  212:22 213:1
  215:4,9 220:6
  220:21 221:14
  222:10 226:3
  227:22 228:11
  230:17 232:21
  235:5 236:7,17
  237:8
**arant** 2:21
**arbitration**
  221:4

**area** 7:9
**argue** 190:3
  200:10
**argumentative**
  87:10 133:7
  152:11,15
  193:6 203:8
  205:22 263:7
  266:17 282:18
**argumentive**
  88:3 268:4
**arguments**
  165:22 201:7
  202:3 218:19
**aritf** 290:17
  291:5
**arm's** 48:6
**art** 269:15,17
**article** 4:11,12
  259:22 260:4,5
  260:16,19
  261:16 262:3,4
  262:9,10
  263:22 283:10
  288:14,15
  293:22 294:9
**articles** 263:5
  263:10,11
  264:1 284:4
  294:8
**ascertained**
  41:5
**asked** 13:4
  25:14 33:6,18
  33:22 34:17

  36:17 37:3
  38:6 41:9 44:3
  45:16 46:17
  47:21 50:2
  51:1,6,17 56:5
  57:7,10,12,16
  57:21 58:4,9
  58:12 59:1,3,6
  59:7 60:15,18
  64:18 69:9
  73:6,19 74:10
  74:17 77:12
  78:10 79:14,17
  79:20,20 80:17
  81:3,7 82:17
  83:5,18 84:1
  85:22 88:4
  90:19 91:12
  102:14 103:18
  110:9,13
  111:20 113:16
  116:16 119:19
  120:10 122:9
  127:4,16 134:5
  134:18,18
  136:20 138:14
  138:21 140:2
  143:16 144:2
  156:14,15
  167:13 169:19
  170:7 177:16
  178:15 179:1
  184:5 196:5,21
  198:4,16
  199:11 200:1,5

  204:17,19
  205:2 207:6
  209:18,19
  211:9 218:16
  218:17 225:1
  228:3 236:12
  242:7,21
  258:12 264:19
  266:6 268:14
  268:20 284:9
  288:9 292:7
  304:22 307:5,8
  307:10,13,19
  308:1,4
**asking** 47:4
  50:5 52:6,8
  55:2 64:16
  77:19 81:4
  86:19 87:8
  88:2 92:9 99:7
  104:15 106:1
  109:21 110:3,4
  111:5 113:6
  114:11 139:9
  180:19 217:6
  219:6 229:22
  233:19 234:3,8
  235:7,15 236:8
  237:21 242:2
  242:12 243:10
  282:17
**asks** 91:14
**assailant**
  200:16

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 322 of 386 PageID #: 4376

**assault** 25:12
26:2 178:12
184:2,10,11,20
184:21 185:10
185:18 186:1,7
186:18,21
187:5,7,10,15
187:20,22
188:1,21,22
198:4,12,15,21
199:3,8,14
200:1,13 202:9
208:20 209:2
209:17 211:6,8
256:6 257:3,12
257:21 258:3
258:10 259:4,6
259:13 269:4
271:2,6,11
**assaulted**
200:21 262:13
271:17
**assess** 153:7
206:18
**assessed** 43:17
44:9
**assessing** 48:12
**assessments**
206:15
**assigned** 43:10
**assignment**
312:2 313:2
314:2
**assist** 230:11

**associated** 26:5
72:13 76:3
210:17 262:16
276:7,20 288:8
289:11,19
295:12
**assume** 194:2,3
228:9,10
**assumption**
194:5
**assumptions**
194:7 228:15
228:18
**atomic** 250:18
**attached** 4:22
107:12 109:11
109:12 119:14
140:14,16
261:17 313:7
**attachment**
130:7 139:16
**attachments**
215:1
**attempted**
132:7
**attempting**
75:1 123:1,1
**attended** 9:15
**attention** 90:8
211:16 269:9
**attitude** 152:1
**attorney** 11:19
13:14,16
164:21 212:5
310:14

**attorney's** 11:4
11:8,9 61:2
62:3 146:7
159:3 215:15
217:20 270:8
**attribute** 22:9
**attributed**
25:17
**august** 12:8
21:3 22:14,14
24:6,10,18
25:17 26:5,8
26:11,13,20
27:13,15,17
28:6 29:1,10
32:10,11 40:4
42:3,13 44:12
46:2 147:18,20
147:21,22
148:1 151:18
158:1,4 181:11
**author** 240:17
262:3
**authored** 211:2
**authority** 166:2
206:14
**authorization**
207:2
**authorize**
313:11
**authorized**
210:6 230:4
275:6 297:9
**available**
117:13,14

**ave** 311:1
**avenue** 2:9,14
**aware** 40:8
41:11 46:20
47:1,7,8 96:2
104:2 109:17
128:9 135:12
136:18 137:1,6
137:13 145:19
236:3 237:19
296:7 306:10
306:15
**awkwardly**
305:22 306:12

**b**

**b** 55:11
**ba** 9:20
**back** 10:14
19:8 28:10
37:18,21 39:2
50:13,17,20
58:5 67:10
75:10 88:12
103:14 115:1
131:17 138:19
138:22 139:22
143:2 144:7
146:21 156:3
156:13 164:18
175:18 183:6
200:12,16
203:6,17
211:21 212:6
216:2 218:6,7
218:21,22

Case 3:23-cv-00243　　Document 219-7　　Filed 07/03/24　　Page 323 of 386 PageID #: 4377

219:1 223:14
223:17,20
231:1 241:11
246:10 249:12
249:13 250:13
251:21 260:18
269:10 271:14
301:15 302:19
309:1 311:14
**background**
9:12 90:4
148:13
**balcony** 190:7
196:22 197:1,4
197:5
**baptist** 1:6,8
2:12 5:7 7:20
51:19 52:21
54:17,18 55:8
55:12,13,18,19
56:6 57:18
60:12,19 62:13
63:1,16 78:1
79:4 80:4
211:18 267:15
291:3 311:6
312:3 313:3
**baptists** 21:13
30:21
**bar** 70:8 226:9
**base** 185:16
**based** 7:2,3,4,5
7:7,8,10,12,14
7:18 8:5,6,7,10
29:21 30:2

51:8 86:6,7
92:11 118:9
133:22 142:14
150:21 154:2
165:16 167:1,5
199:4,14
213:10 255:15
271:3,3,9
276:12 277:22
279:7 288:21
289:4,8 292:10
292:11,19
298:12 300:12
303:12
**basis** 11:13
65:8 99:16
217:18
**bates** 24:7
61:13 75:18
167:11 225:6
232:13 249:22
261:7
**battery** 185:4
**beach** 252:2
**began** 228:13
**beginning**
29:11 45:2
231:17 241:16
242:14 244:19
267:4
**behalf** 2:2,7,12
2:16 84:8
135:5 275:11
275:12

**behavior**
257:14
**believe** 15:9
48:4,5,9 49:7
51:3,6 53:10
54:21 55:14
58:8 61:6
67:14 69:17
81:15 83:14
93:8 95:18
98:9,14 100:9
105:20 108:7
116:20 119:16
121:4 127:4
136:22 137:6
137:13 160:1
176:7 177:5
178:13 195:18
197:12 200:3
208:16,18
210:20 238:6
239:16 240:15
241:12,13
247:10 248:18
255:4,10
256:12 258:2
291:1 293:12
295:4 304:13
306:2 307:19
307:20
**believed** 51:9
255:9
**bell** 262:8
**best** 52:9
100:10 148:4

161:9
**better** 69:6
82:22 100:20
118:4 178:7
241:7
**beyond** 237:3
**biblical** 221:4
**bit** 101:4 132:8
132:10
**bits** 273:20
**blair** 2:13
**blalock** 292:8,9
292:22 293:3,4
**blame** 22:6
**blank** 13:18
**blankenship**
22:17,20,21
25:18 32:11,18
36:16 41:18
79:21 181:6,21
247:19 248:3
271:21 296:1,5
297:20 298:6
298:15 299:3
299:11
**blurted** 26:21
27:5 36:4,11
**board** 158:11
168:2,3,4
276:7,12,14,18
277:3,6,8,15,21
278:2
**boards** 276:18
**bold** 244:15,17
245:17

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 324 of 386 PageID #: 4378

**bomb** 250:18
**boss** 98:21
  100:18,19
**bothering**
  191:6
**bottom** 77:7
  139:9,10 158:1
  225:18 259:21
  300:3,6 301:16
  301:18
**boult** 2:21
**bounds** 101:14
  101:22 210:6
**boys** 60:13,21
  62:14,22
**brackets** 21:11
**bradley** 2:21
**brandon** 2:20
  6:4 304:13,17
**branson** 59:19
**break** 88:8
  155:13 156:15
  192:3 246:6
  265:13,16
  302:14
**breakout**
  146:14,18
  215:21 223:8
**breast** 185:6
**breasts** 252:4
  257:16
**brey** 5:12
**brief** 10:13
  88:11 246:9
  302:18 308:22

**bring** 32:14
  37:20 218:5,6
  218:21,22
**broadway** 2:21
**brought** 32:11
  68:22 90:8
**building**
  290:14
**bullet** 27:17
  30:13 167:14
  210:9,10
**bundren** 2:20
  6:4,4 61:13,17
  119:4,7,11
  180:8 304:16
  304:18 306:19
  307:3
**bush** 64:4,6,8,9
  64:10
**business** 70:17
  84:4,14,17
  188:16 269:15
  289:10,18
  290:3,9
**bylaws** 79:1

**c**

**c** 2:1 4:1 5:1
**ca** 311:22
**calculate**
  239:20
**call** 110:14
  141:17 174:19
  175:4,10
  176:17 247:22
  271:18,20

  285:8 286:7
  292:18,20
  301:8
**callas** 2:17 6:2
  6:2
**called** 6:10
  113:18 117:3
  128:4 156:7
  174:20 262:7
  266:16 292:10
**calling** 110:7
**calls** 48:7 93:11
  93:12 94:2
  106:13 133:6
  175:2 185:14
  194:6 226:20
  227:11 228:19
  228:20 233:21
  236:19 262:18
  270:6 285:18
  297:12 303:7
  303:17
**camps** 8:1
**capacity** 84:8
  135:9 182:22
  211:17 213:15
  275:13
**care** 113:6
**career** 182:8
**careful** 35:21
  160:22
**carefully** 36:1
**carolina** 9:8,9
  9:16 10:6
  12:22 55:1

**cart** 269:11
**case** 1:4 5:9
  17:2 37:10
  42:20 62:16
  71:13 99:15
  116:9 123:9,19
  154:11 178:12
  179:20 193:21
  194:3 205:12
  219:12 255:16
  282:1 311:6
  312:3 313:3
**cases** 7:9 99:13
  229:13
**cast** 46:9
**cause** 152:16
  174:7
**caused** 204:12
  231:20 232:7
  233:7 280:19
**causes** 259:12
  269:21
**caution** 161:1
**cautious** 35:21
**cease** 207:15
**ceo** 76:18,20
  77:3 99:1
  100:16 136:18
  137:1,7,10
  138:3,6 143:5
  143:6,7 144:11
  144:22 145:8
  171:3 218:6
  280:5,9,12
  286:3,10,13,21

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 325 of 386 PageID #: 4379

288:6
**ceo's** 137:21
**certain** 47:5
99:18 100:5,5
115:11 161:19
162:5 164:15
247:20 284:21
**certainly** 119:2
166:22 175:8
212:16 216:15
225:10 278:19
298:2
**certificate**
310:1 313:11
**certification**
312:1 313:1
**certify** 310:4
**cetera** 250:22
**chain** 98:16
259:20
**challenge** 22:22
23:6,13,18
44:11 216:11
**chance** 103:1
307:3
**change** 102:6
311:12,13
313:8 314:3
**changed**
115:12
**changes** 114:7
114:20 311:11
312:7 313:7,9
**channel** 264:15

**chapel** 10:6
**characterizati...**
33:10 87:13
88:6 231:13
302:4
**characterize**
182:18 194:22
252:10
**characterized**
183:10 256:8
**charge** 204:15
**charged** 208:9
**charleston** 2:18
**check** 131:16
**chief** 188:15
**child** 293:10
294:1
**children** 12:16
12:18
**choosing**
216:15
**chose** 216:16
**christ** 21:12
30:20
**christian** 12:5
**christianity**
7:18
**chronicle**
288:14 293:22
**chronicled**
294:2
**chronology**
175:19
**church** 7:19,20
51:19 52:22

53:11,12,13
54:13,16,17,18
54:22 55:2,5,7
55:8,12,13,18
55:19 56:6
57:14,18 60:12
60:19 62:13
63:16 65:4
73:20 74:3,10
80:4,22
**churches** 7:21
7:22 29:15
30:19 32:21
53:14 63:1
**circle** 152:5
**circulate** 17:5
76:9
**circumstance**
156:20
**circumstances**
64:10,16 65:2
70:16 71:1
74:1 80:15,21
87:22 132:13
170:5 171:1,5
229:17 238:22
**cites** 246:22
**citizen** 71:5
113:5 221:12
238:9
**city** 181:11
**civil** 312:5
313:5
**claim** 25:2
53:16,16,21

54:12 65:9
179:7 228:17
233:18 235:5,8
**claimed** 232:6
**claiming** 198:2
198:3
**claims** 43:2
217:20
**clarification**
106:22 131:17
**clarifications**
102:20 111:3
113:20 114:12
138:14
**clarity** 275:11
**clause** 112:5
**clear** 33:12
91:21 93:22
112:19 209:7
219:10
**cleveland** 311:2
**client** 61:11
128:13 161:1
216:20,22
218:1,9 219:11
**clients** 8:9 96:5
96:6
**close** 191:20
277:10
**closer** 197:10
197:13
**closing** 81:11
81:13 82:9
**closure** 32:14

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 326 of 386 PageID #: 4380

**code**   294:14,20
  294:21,22
  295:2,9,15
**colead**   288:22
  298:16
**colleague**   39:11
  92:6
**collecting**
  215:11,12
**collectively**
  97:20
**college**   9:15
**collura**   188:16
**colon**   167:14
**columbia**
  310:19
**combined**   89:5
**come**   40:11
  41:4 46:16
  80:9 130:1
  134:12 179:20
  190:13 197:3,9
  216:2 218:20
  227:9 230:22
  245:19 281:22
**comes**   71:17
  91:18 290:4
**comfortable**
  85:18 204:1
**coming**   65:3
  74:2 80:22
  117:5 159:19
  160:2 163:22
  164:8 174:22
  197:6 223:14

  223:17,20
  289:14
**command**
  98:16
**comment**   83:9
**commentary**
  260:4
**comments**
  81:12,13 103:1
  114:6
**commercial**
  70:10
**commission**
  310:20 312:19
  313:25 314:25
**commitment**
  294:14,20,22
  295:2,10,16
**committed**
  183:15 211:6
**committee**   1:7
  2:16 6:3,5 78:2
  78:16 95:16,20
  96:12 97:4,9
  97:22 98:3
  104:22 105:5
  105:12 106:6
  123:16 124:4
  124:21 125:3
  125:18 135:18
  135:19 136:8
  170:4 183:16
  204:7 205:4
  207:11,16,21
  208:11,15

  209:1,8,16,22
  210:11,22
  211:7,12 268:8
  268:11,12,18
  269:5,7 274:20
  275:6,17 279:9
  279:19 293:1
  304:19
**committing**
  301:21 302:3,6
  302:13
**common**   178:3
  186:11,15
  286:2
**communicate**
  171:3 180:14
  283:1
**communicated**
  93:4,8 200:4
  288:6
**communicating**
  96:7 101:20
  137:1 283:19
  283:20 284:3
**communication**
  79:5 116:9
  133:4 135:11
  135:12 168:22
  180:12 258:11
**communicati...**
  15:10 47:14
  104:16 124:15
  125:20 170:8
  170:11,16
  220:3 239:18

  254:19,20
**community**
  289:5
**company**   13:5
  40:6 43:19
  44:22 45:13
  46:18 47:22
  48:4 70:11,12
  76:19 89:2
  97:8 98:11
  100:10,16,21
  103:15 122:2
  124:22 128:12
  135:2 138:7
  144:11 165:5
  171:3,4,20
  202:19,20
  204:15 250:6
  274:21 279:17
  280:6,9,12
  286:4,13,21
  287:20 288:7
  290:14 291:15
  294:13,19
  299:1,2,7
**compare**   35:15
  35:17 36:13
  94:15
**compared**
  100:12,22
  190:16 308:18
**compel**   281:22
  282:3
**compelled**
  122:21

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 327 of 386 PageID #:
4381

**compensate**
212:14
**compensated**
226:18
**compensation**
163:14 213:3
220:8 222:4
228:17 231:21
232:10,22
233:19 234:15
**competence**
29:18 44:16
100:14
**competent**
100:16
**complainant**
108:5,15
109:20
**complainant's**
101:17
**complaining**
117:9
**completed**
311:14
**comply** 198:10
**component**
210:16
**compound**
123:5 188:6
191:22 202:15
206:1,19
222:17 263:18
275:2
**computer** 34:4

**concern** 45:22
134:4,8 152:16
159:22 179:16
**concerned**
94:20 144:22
160:7 161:19
162:14 163:1
171:2,14
223:21 276:1
**concerning**
77:19 78:10
**concert** 35:1
69:20 72:11
88:17 266:2
**conclude**
258:19
**concluded**
133:1 303:4
309:9
**conclusion** 48:8
133:7 134:13
185:15 226:21
227:1,12,14
228:20 296:8
297:13
**condo** 154:4
190:13 197:1
252:3 257:15
**condominium**
196:20 197:7,9
197:16
**conduct** 165:21
170:18 171:12
196:4 208:3
228:16 294:22

**conducted** 40:6
67:16 88:21
97:17 308:14
**conducting**
231:15
**confer** 63:14
**conference**
172:7,15
174:20 175:22
176:1 258:10
**conferences**
94:1
**confessed**
62:21
**confidential**
52:11,13 61:8
61:9 62:4,5,7
**confirm** 47:4
67:12 69:12
83:3 130:14
159:15,15
167:18 218:17
248:19
**confirmation**
29:8
**confirmed**
18:15 28:16,22
41:15 86:11,20
88:22 147:14
197:14 201:8
272:12 297:8
**confirming**
64:13
**confirms** 121:6
273:19

**confront** 172:3
**confronted**
305:13 307:7
**confused** 89:16
**congratulate**
265:5
**congratulating**
286:5 287:22
288:4
**congratulatory**
265:15,19
**connection**
13:5 16:22
34:22 39:19
76:19 97:11
239:8 253:14
**connie** 5:14
**consensual**
26:1 271:22
303:5,14 304:4
**consent** 185:8
189:1,4,13
190:4,17
195:17 196:4
200:8,10,17,19
200:20 201:8
201:10,17,19
202:4
**consented**
197:6,10,15
**consider** 46:4
102:12 132:6
213:22 255:16
**consideration**
253:21

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 328 of 386 PageID #: 4382

considered
  46:5 86:4
  115:4 149:3
  154:5 179:15
  202:4,6
considers
  179:18
consistent 30:6
  182:1,2
constance 1:19
  310:2,18
constantly
  127:10
consult 218:9
  219:11
contact 179:10
  267:2 306:3,14
contained
  224:8 293:13
contemporan...
  308:7
content 219:17
  224:19 229:18
  279:10
contents 135:3
  135:20 136:9
  165:6
context 31:21
  45:20 68:21,22
  107:18 116:13
  120:7,14 246:1
continue 34:12
  50:21 72:3
  141:16 146:12
  146:13 159:7

179:11 245:18
  298:12
continued
  11:21 86:3
  156:7,11
  289:13
continuing
  109:10 190:12
  197:15
contract 33:3
contractor 9:1
  9:3,7 11:22
  289:12
contrast 33:4
  63:4
contributions
  131:18
control 83:15
  96:21
controlling
  150:22 151:4,5
  151:7 152:2
convention 1:6
  1:8 2:12 5:7
  78:2 211:18
  267:15 291:3
  311:6 312:3
  313:3
conversation
  57:2,6 128:14
  135:7 141:6
  143:10 144:5
  175:15 177:4
  177:10,14,19
  178:19 180:9

190:12 197:16
  248:14 250:10
  250:12,17
  251:13 255:3
  286:17 306:11
conversations
  101:22 170:20
  287:3,5 306:17
convey 75:3
conveyed 214:1
convicted
  293:10,14
  294:1
convinced
  271:20
copy 61:21,22
  76:1 107:9
  280:12
core 171:15
  273:1,2,3,6,10
  273:18 274:2,3
  278:12,22
  292:17
correct 10:19
  28:17 38:10
  42:4 46:9 52:4
  57:19 59:20
  67:14 70:14
  73:2 74:4
  79:10,16,22
  81:10 82:10,15
  84:2 85:17
  98:8 102:10
  104:6 111:8
  112:8 117:3

118:9 121:7
  133:21 139:2
  144:19 145:15
  149:17 167:2
  189:2 203:12
  204:14 205:10
  208:12 215:5
  236:10 239:15
  239:16 240:15
  248:19 249:2
  250:8 252:22
  253:10 273:22
  275:19 293:8
  295:8 305:2,6
  305:11,12
  308:6
corrected 68:2
corrections
  102:19 110:16
  110:20,21
  113:20 114:12
  138:14,17
  311:11 313:17
corroborate
  52:13 86:3
corroborated
  247:2,21
corroborates
  41:17
corroborating
  247:22
corroboration
  174:15
couch 190:16
  190:17 191:20

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 329 of 386 PageID #: 4383

191:21 192:5,9
192:14,17,20
193:5,22 194:1
194:13 195:8
195:20 196:2
197:11
**counsel** 4:3,4
5:5,16 6:12
19:20 35:22
37:11 47:14,15
47:16 104:9
128:7 156:10
165:21 166:10
219:16,16,21
220:2 224:3
230:6,21
282:22 304:15
304:21 310:10
310:14
**counsel's** 68:2
198:11 298:13
**counseling**
32:13 41:17
296:6,16,17
**counselor**
296:1,10,12,14
297:3,11
298:11 299:4
299:11,16
**count** 118:11
119:13 201:14
**counterintuiti...**
179:7
**country** 187:3

**county** 11:3
312:10 313:15
**couple** 41:19
122:14 141:11
304:13
**course** 16:19
58:18 106:12
215:18 219:4
220:14 227:5
287:5 290:3,4
**court** 1:1 5:8
5:13 6:6 27:16
39:9 42:1 47:2
52:5 54:4 58:6
83:10 90:14
112:4 129:7
131:10 147:14
165:15,16,17
166:2 216:2
217:19 218:4
218:17 219:1
219:13 227:8,9
230:4 231:1
252:9 265:4
279:4 281:9
282:3,8,15
283:3 287:10
307:5,8 312:7
**court's** 280:13
280:16 281:14
**courtesy** 88:1
173:9 278:17
**courtroom**
33:16 36:9,9
130:6 280:21

281:8,18,19
282:1
**coverage** 288:7
**covered** 31:4
66:22 80:1
**covering**
136:15,17
253:3 259:9
**create** 19:7,10
19:14 59:22
75:1,7 87:18
122:3,7 123:1
123:2 172:22
**created** 16:17
18:9 20:1,16
40:7,13,14,18
40:22 41:7,16
44:13 45:1,14
46:7 59:21
76:3,6 140:8
140:13 274:13
274:19 292:5
**creating** 18:22
20:6 23:19
**credibility**
43:14,18 44:1
44:6,10 45:22
47:20 48:13
133:12,15,17
134:4,7,14
145:18 147:9
154:2,7 169:14
203:15,19
205:18 206:13
206:16,18

207:4,12
243:12,15
**credible** 48:17
83:12 153:7,16
202:7 203:7,11
205:7,13 206:8
238:15,19,22
239:3
**critical** 43:17
43:21,22 44:9
133:18 145:18
169:11,13
**cross** 197:4
**crystal** 209:7
**cummings** 2:21
**cv** 1:5 5:9

**d**

**d** 2:3 5:1 77:5
**damage** 21:12
30:20 226:19
237:2
**data** 41:6,16
152:21 154:5
**database**
290:14
**date** 1:13 40:3
42:5 44:12
47:10 67:5,13
67:15,15 68:6
104:13 105:7
105:14 311:8
312:3,9,19
313:3,13,25
314:20,25

**dated** 16:1 46:2
  129:5 145:1
  147:7 221:9
**dates** 101:11
  175:12 241:12
**david** 62:16
**day** 17:19 18:1
  26:8,10 59:6
  107:20 115:18
  142:1 175:10
  175:22 176:21
  177:1 178:15
  178:18 197:20
  198:1,2,4
  199:22 260:3
  269:20 271:4
  312:16 313:22
  314:22
**days** 101:6
  102:15 104:10
  104:10 107:3
  109:15 111:6
  113:7 133:3
  142:2 173:7
  179:1 245:7
  262:12 272:13
  311:16
**dc** 1:16,22 5:12
**deadlines**
  117:16
**deal** 44:18
  194:11 219:13
**dealing** 68:4
**dealt** 104:21

**dear** 311:9
**decades** 232:11
  237:10
**decide** 112:13
  112:16
**decided** 216:14
**decision** 102:7
  103:2 216:17
  219:20,21,22
  220:2,4
**decisions** 115:5
**deed** 312:14
  313:20
**deemed** 311:17
**defend** 281:22
**defendant** 4:4
**defendants** 1:9
  123:9,19
**define** 243:20
  243:22 253:8
  266:9
**defined** 185:2
  185:11 187:8
**definitely** 169:5
**definition**
  185:12,17,18
  186:17,20
  187:1,4,6,10,14
  187:17 252:8
  256:5 303:19
**degree** 151:8
**degrees** 187:6
**demand** 236:17
  237:13 238:20

**demanding**
  224:4 231:6
**demands** 224:3
**demeanor**
  126:11,20
**denied** 74:15
**denomination**
  267:16
**deny** 132:22
**denying** 177:13
**department**
  311:20
**depends** 243:20
  266:9
**depose** 216:13
**deposition** 1:11
  4:6 5:5,10
  61:10 91:4
  218:1,10
  242:14 309:5,8
  310:3,5,9,12
  311:8,10 312:1
  312:3 313:1,3
**describe** 15:1
  24:6 25:11,22
  70:16 72:10,12
  180:2 185:9
  256:1,3,6
  265:18
**described** 17:1
  26:14 27:14
  29:1 62:7 65:9
  130:15 149:7
  153:9,10 154:3
  169:12 171:6

  171:21 179:21
  184:21 185:4
  185:19 186:17
  187:4 198:20
  254:15 256:8,9
  256:13 271:15
  289:20
**describes**
  288:15
**describing**
  202:8 297:15
**description**
  24:21 126:11
  126:19 152:15
  251:22
**designate** 213:7
**designated**
  62:3 212:5
  217:18
**designates**
  294:20
**designation**
  217:22
**designations**
  216:12
**destroy** 46:18
**destroyed** 47:6
  218:14,15,18
**detail** 195:16
  271:16
**detailed** 68:21
  85:15
**details** 31:2,3
  93:6 103:12,13
  134:1 190:2,3

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 331 of 386 PageID #: 4385

196:15 201:7
201:15 238:10
247:21 258:5
301:22
**determinating**
43:13
**determination**
122:13
**determinations**
154:1 206:12
**determine** 44:1
44:6 100:10,21
106:14 122:15
202:6 205:12
298:5,14 299:3
**determined**
303:12
**determining**
182:5 187:18
**different** 34:3,8
34:13,14 36:22
37:5 53:14
103:17 113:17
116:9,15 125:8
127:10,17
175:2 187:5
201:14,15
209:19 213:14
248:12 264:7
269:11,17
308:15
**dilemma**
301:19
**direct** 138:2
199:9 254:19

**directed** 204:5
229:21
**directing**
199:16
**direction** 310:8
**directive**
144:17 145:8
**directives**
99:14
**directly** 44:18
163:18 214:10
**director** 7:1
8:14,21
**directors**
277:22 278:2
**disagree** 23:6
87:12 88:5
166:5 196:7,9
199:14 217:11
219:4 223:16
239:9,11
**disclose** 73:4
87:7 95:19
97:16 182:15
242:4 243:3
**disclosing**
284:7
**disclosure**
86:18 272:19
273:12
**discovered**
75:10 91:8
**discovery**
15:15

**discuss** 99:15
152:6 175:5
**discussed** 99:10
305:8
**display** 248:8
282:7
**displaying**
279:4 282:14
**disqualified**
262:14
**dissolved** 12:12
**distinct** 25:1
**district** 1:1,1
5:8,8 11:3,8,9
310:19
**division** 1:2
291:15 292:5,6
292:10 293:2,6
**document** 19:7
19:10,16 20:6
22:18 26:16
28:12,19,22
29:21 30:11
31:20 37:16,17
40:6,17,22
42:6,7,15
44:13,19 46:6
60:16 61:1
75:22 76:12,14
76:22 84:19
100:1,8 107:13
108:13 114:8
115:1 116:4
118:16,19,22
119:2 133:13

134:2,8,12,16
135:3,15,16,20
136:7,9 140:8
140:21 141:2
145:2 146:7,11
147:16 148:1
149:13 151:4
151:18,19
152:4 154:16
154:20 155:7
157:12 158:4
159:3,7 160:20
160:21 161:4,8
161:22 162:3
163:5 164:20
165:2 167:12
183:4,7 203:22
212:4,16
213:10 214:16
215:16 217:5
220:12 222:15
222:22 223:6
224:9,15,18,20
227:2 228:10
229:3,7 230:7
238:19 240:17
240:21 241:8
244:11 246:16
251:16 256:15
261:3,10 270:8
270:9 272:16
**documentary**
194:4
**documentation**
162:4

**documented**
  194:3
**documents**
  13:12 14:5,22
  15:1,4,12,13
  37:20 40:1
  46:19 47:5
  61:17 91:5
  92:20 101:10
  124:7 160:11
  160:16 217:2
  217:14,15,16
  217:21 218:10
  218:13 219:7
  219:12 221:8,8
  249:4 253:20
  282:15
**doe** 232:16
**doing** 11:12
  48:16 83:1
  97:3 98:15
  112:20 134:11
  166:3 173:11
  175:14 232:19
  245:19 263:3
  285:21
**dollars** 221:19
  224:21 238:20
**door** 197:3,8
  289:14
**doubt** 46:9
**doubts** 271:5
  271:10
**dr** 32:12,18,21
  33:6,18,22

34:17 36:17
38:6 65:21
66:2,15 69:15
72:1,5,19,22
73:19 74:19
118:6 203:7,11
205:7,13 206:8
223:6,9 230:10
230:21 231:7
250:21 251:5
252:3 253:2
258:4,16 259:7
270:12 278:20
305:1,5,9,13,17
305:21 306:6,8
306:11,16
**draft** 4:7,8
93:15 94:16,20
94:21 95:4,5,6
95:8,22 96:13
101:7,9,16
102:5,18
109:11,12,21
110:2 112:17
115:15,21
116:17 117:4,9
117:20 118:14
119:14,18
120:2 131:21
137:8,11,14
138:8,12,16
139:19 140:13
142:10 143:7
143:13,22
144:10,15

214:6,21
224:21 229:21
230:17 231:3
233:20 236:2,3
236:6 242:19
**drafted** 221:15
**drafts** 94:2,10
  96:7 136:19
  137:5 144:12
**drawing** 13:18
**drive** 41:6,16
  152:2
**driving** 97:2
**duly** 6:10 156:8
  310:5

**e**

**e** 2:1,1 4:1 5:1,1
  11:6 55:11,11
  156:1,1
**earlier** 50:1
  88:22 133:17
  147:14 159:2
  168:10 201:8
  216:18 217:6
  220:11 252:10
  266:8 270:10
  271:13 278:8
  301:17 304:21
  308:14
**early** 11:10
  301:8
**ears** 27:3 28:5
**easier** 281:10
**east** 2:4

**eastern** 54:22
**ec** 4:4 104:1
  124:16 125:7
  125:21 135:11
  170:8,11
  301:20 302:3,5
  302:12 304:15
**ed** 4:12 262:13
**edit** 301:6
**edited** 4:13
**edits** 115:21
  121:9,14,15
  122:16,20
  126:2 127:2,8
  127:13 128:12
  130:13,15
  131:2,5,11
  138:9,13 139:1
  140:1,1,8
  141:9,11 143:3
  143:15 144:1
  144:18 145:11
**educated** 9:14
**education** 9:11
  10:1
**effect** 165:19
  221:15 230:6
**effort** 93:3
**efforts** 64:3
  80:10
**eight** 269:20
  272:13
**either** 204:21
  213:13 257:11
  257:20 276:7

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376

298:16
**elected** 97:19
**electronic**
  75:18 241:14
**element** 228:17
  233:17 235:4,7
**elements** 236:8
  274:3
**eligible** 177:11
**ella** 3:4
**elmo** 130:6
**else's** 287:14
**email** 4:9,11,13
  39:14 93:5
  94:1,16 101:5
  102:22 107:3
  107:19 108:19
  109:8,11 113:2
  113:14,15,17
  113:22 114:3
  115:19 119:7
  130:1,9 137:18
  139:9,10,14
  140:16 141:5,8
  141:14,20,21
  142:5,14
  143:10,18
  145:1,9,15,16
  211:21 212:1
  213:5 214:5,17
  215:3 259:19
  259:20,21
  260:3,9,21,21
  261:16,17
  267:2 271:9

273:15,17
274:16 279:6,7
279:10,18,22
280:4 283:5,10
283:16,18
284:18 300:4,4
300:7,14
301:10,15,17
311:15
**emailed** 93:15
  94:2,9 214:9
**emailing**
  115:14
**emails** 15:3,7,8
  15:9,11,14
  93:11 94:7
  221:1 225:14
**emphasize**
  43:21
**employed** 6:19
  6:21 8:13 12:4
  310:11,14
**employee**
  289:16,17
  310:13
**enclosed**
  311:10
**encounter**
  154:3 189:5
  239:3 306:8
**encounters**
  48:22 49:2
**endeavor** 16:13
  295:10

**engaged** 17:15
  122:2
**engagement**
  4:16 98:10
  104:1 106:4,12
  202:12,19
  203:13 205:16
  206:16 207:3,8
  210:7,8 267:13
  278:8 300:12
**engages** 207:9
**enjoyed** 155:4
**entered** 313:9
**enterprise**
  123:17
**entire** 203:21
  299:1 312:5
  313:5
**entirety** 147:12
**entities** 95:20
**entitled** 238:3
  262:13
**entity** 171:21
  262:7 276:8
  290:17,22
**entreaty**
  124:20
**entries** 39:17
**entrusted**
  98:11
**entry** 21:3 24:5
  24:10 27:17
  29:1,10 147:20
  158:1,4,17

**environments**
  12:5
**equivocation**
  34:3
**err** 173:19
  174:1
**errata** 311:12
  311:16 313:7
  313:10,18
  314:1
**error** 173:21
  174:8
**esquire** 2:3,3,8
  2:8,13,17,20
**essence** 131:21
**essentially**
  132:7
**established**
  199:19 292:9
**esteemed** 95:15
**et** 250:22 311:6
  312:3 313:3
**ethically**
  295:16
**evaluate** 46:13
**evaluated**
  152:16
**evaluating**
  207:12
**evening** 180:3
  189:5,18,20
**event** 26:6
  56:13 66:17
  118:7 179:21
  180:13 182:19

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 334 of 386 PageID #: 4388

183:10 267:7
293:5 303:1,15
**events** 24:7,18
26:13 27:15
32:14 57:7
81:4 118:12
125:19,21
136:14 144:21
189:17 277:16
303:13
**everybody**
61:19 70:3
287:14,20
**evidence** 86:9
178:10 189:4
189:11 190:4
193:21 194:4
195:16 200:7,8
200:9,17,18,20
201:9,10,15,16
201:16,19
255:14 267:6
**exact** 58:15
59:5 60:14
67:5 83:15
89:22 125:5
217:1
**exactly** 46:6
52:17 53:1
58:6,11,22
69:1 76:15
86:21 102:14
107:22 144:4
164:13 169:3
172:21 176:4

207:13 255:9
270:19 271:18
291:2 296:21
307:5,8
**examination**
4:2 6:12 40:5
40:12,17 156:7
156:10 304:15
**examined** 6:11
156:8
**example**
264:12 293:22
**except** 174:13
268:2 289:1
**exception**
296:16 297:16
**exchange** 4:11
4:12,17 219:16
244:12
**exchanged**
115:17 129:12
**exchanges**
137:4 287:22
288:3,6
**exchanging**
265:17
**exclusive** 294:3
**exclusively**
294:3
**executed**
313:10
**execution**
312:14 313:19
**executive** 1:7
2:16 6:3,5 78:2

78:16 95:16,20
96:12 97:4,9
97:16,22 98:2
104:22 105:5
105:11 106:6
123:16 124:4
124:21 125:2
125:18 135:17
135:19 136:8
170:4 171:4
183:16 204:6
205:3 207:10
207:16,21
208:11,15
209:1,8,16,22
210:11,22
211:7,12 268:8
268:10,12,18
269:5,7 274:19
275:5,17 279:9
279:19 293:1
304:19
**exempted**
297:19
**exercised**
216:12
**exhibit** 4:7,7,8
4:8,9,10,11,11
4:12,12,13,15
4:16,16,17,17
4:18 16:7,9,18
16:22 18:9,14
18:21 19:1,17
20:1,5,6,8,9,12
20:13,16,19

21:1,10 23:20
24:5,6,19
26:19 27:16
28:10,12,13,14
28:21 29:1,10
30:7,10,12,22
31:8,11,15
32:11 33:5
34:5,15 35:16
35:17 36:2,3
36:15,22 37:12
38:18,18,19,21
40:18 42:9
44:10,12 45:1
45:14 46:1
67:10 71:15
75:14,15 103:8
103:11,12,13
107:1,2 108:8
112:22 116:22
119:15 120:8
120:16,17,19
129:1,4 130:8
137:16,21
138:15,22
139:6,7 144:7
145:9,12,14,16
147:4 157:16
157:17,21
158:5 163:20
164:18 165:7
165:10 166:11
166:13 167:10
176:5,11 201:2
201:5 203:16

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 335 of 386 PageID #: 4389

203:17 207:3
208:6 211:21
214:12,15,17
219:18 220:6
220:20 222:15
222:21 225:7
238:4,11
240:11 241:8
241:10,11
244:7,10,12
246:19 249:14
249:15 250:5
259:15,18
260:12,13,16
261:4,16
262:10 263:6
269:19 270:17
274:11 278:12
279:1,14
283:15 284:12
284:14,17
288:13 293:18
299:18,20
300:2,4
**exhibits** 4:6,14
4:22 37:18,21
146:21 157:18
176:8 249:12
282:15,16
**expect** 202:2
**expectation**
263:16,20,22
**expected**
131:19 263:10
263:14 264:1,6

264:9,10,12,14
264:15,17,21
266:2,19
**experience**
48:14,16
269:12
**expiration**
312:19 313:25
314:25
**expires** 310:20
**explain** 85:22
148:5,15
265:11
**explained** 69:7
271:14,16
**explaining**
148:9
**explains** 216:11
**explicitly**
205:15
**explosive**
288:16,20
**explosiveness**
124:10 125:1
**express** 82:12
82:13 163:17
**expressed**
160:9,14,15,17
161:6,10,14
163:7
**expressive**
150:15
**expressly**
138:21

**extend** 237:3
**extension** 263:5
**extent** 50:14
247:20
**eye** 1:21 245:17
**eyes** 26:12 61:2
62:3 89:1
122:18 134:16
146:7 157:7
159:3 164:21
169:7 212:5
215:16 217:20
222:14,20
224:12 232:18
236:7 237:9
270:8

**f**

**f** 156:1
**facing** 7:17
**fact** 24:21 30:9
41:7,13,16
43:16 45:11,13
52:21 60:19
75:10 113:16
115:14 124:18
125:4,18
131:16,20
142:9 166:12
167:5 191:12
195:15 200:1
216:21 217:3
243:4 291:14
296:4,15
298:22 306:2

**factor** 179:14
**factors** 178:2
**facts** 4:7,8,8
33:10 71:1,8
93:15 94:3,11
94:16,20,21
95:2,4,6,8,22
96:7,13 101:8
101:10,17
102:10,18
107:13 109:11
109:12,17
110:20,22
112:18 115:7
116:16,17
117:9,20
118:14 119:8,8
119:9,14,18
121:21 126:4,7
128:1,3,5,8,9
131:16 136:19
137:5,8,11,14
138:13,16
139:16,20
140:13 142:10
142:17 143:7
144:10,12,15
174:15 191:19
206:11 248:8
283:20 284:3,7
289:3
**fail** 298:13
**failed** 282:13
**fair** 8:11 14:1
35:9 36:1

67:22 69:20,21
71:1,8 88:17
91:20 92:7,22
93:1 96:3,4,11
96:18 98:1
101:2 112:2
127:22 155:2
172:20 173:19
173:20 176:18
192:3 198:10
201:8 202:17
238:7 239:7
247:14 254:3
273:4 277:20
277:20 283:17
297:7
**fairly** 70:16
101:13 246:1
**faith** 7:2,4,5,7,8
7:10,12,14,18
8:5,6,7,10
70:15 292:10
292:11,16,19
300:12
**fall** 8:17,18 9:4
**false** 87:18
**familiar** 295:3
**family** 11:1
150:11 182:11
**fantastic**
141:10
**far** 94:19 141:6
144:21 160:7
161:18 162:13
162:22 171:2

211:6 223:20
275:22
**fashion** 39:13
**fault** 280:19
**favor** 201:7
217:3 219:1
**fbc** 79:17
**fbcw** 158:5
**features** 161:19
162:5
**february** 1:13
5:3 311:4
**feel** 65:10 66:4
71:18 121:9
122:20 126:2
211:16 238:8
**feeling** 122:19
132:9 150:14
222:8
**feelings** 284:3
**feels** 31:20
**fell** 268:7
**felt** 54:8 115:7
132:8 202:6
205:18 206:5
255:21 271:18
**field** 9:19
**fight** 271:21
**figuratively**
171:6
**figure** 222:21
301:9
**filed** 5:7
**final** 4:16 31:4
31:15 32:10

33:20 34:22
36:15 37:1,15
38:8 41:13
42:16 65:22
66:14 69:11,12
101:3 102:7
103:2 109:14
125:22 198:12
198:15,19
199:8 295:21
303:11
**financial**
159:16,20
162:13 163:2,9
163:14,22
164:5,9 167:13
167:21 168:7
168:21 169:1,4
169:17 170:18
171:12 215:10
**financially**
310:15
**find** 34:21 78:4
109:10 161:1
187:9 205:7
206:7 249:16
261:8 267:19
290:7 311:10
**findings** 75:10
170:13
**fine** 150:11
223:16,18
239:10
**finish** 50:11
87:16 273:8

275:10
**finished** 50:9
117:18 299:19
302:15
**fire** 274:12
**firestorm**
263:14,17
274:19
**firm** 5:14 11:1
12:10,12
292:10
**first** 4:15 6:10
14:8 22:13
27:17 37:9
47:18 49:8
50:22 54:17,18
66:10 69:18
71:22 72:22
73:13 75:18
78:8,9 83:18
86:1,2 106:5
159:22 173:2
179:5 180:13
228:22 239:14
244:16 268:8
269:21 276:11
300:3 301:18
**firsthand** 270:7
**fit** 106:14
185:19 186:17
186:20
**five** 89:11,13
170:5 171:1,1
199:10 201:14
201:15

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 337 of 386 PageID #: 4391

**flow** 123:6
**focus** 33:3,17
35:12,14 67:21
68:9 88:20
116:15 204:3
232:19 246:13
248:10 257:18
**focused** 43:6
294:2
**focusing** 31:14
32:2 60:9
72:21 261:1
302:2
**folder** 39:15
**folks** 80:9
**follow** 53:16
122:14 140:20
141:22 170:22
224:3 289:2,5
289:10 295:10
307:13
**followed**
267:15
**following** 33:17
36:16 73:22
121:8 146:3
231:18 266:22
281:14
**follows** 6:11
148:10 156:9
**fondled** 305:22
306:13
**force** 290:20
291:1

**foregoing**
310:3,5 312:13
313:18
**forensic** 40:5,8
40:12,16 41:4
45:5
**forensically**
41:15 45:13
**forgave** 28:1,14
31:14 34:19
**forgive** 26:21
27:5,19 28:7
28:15 34:15
36:4,10,11
**forgiveness**
29:15 30:18
31:16 32:7
33:6,18 34:1
34:18 36:17
37:2 38:6
**form** 19:2
23:11,21 25:3
34:6,18 38:22
39:4 41:9 43:8
44:15 45:3
46:10 48:7
53:20 65:15
69:3 70:18
74:7,17 82:20
84:7,22 85:8
86:13,22 89:7
95:11 96:14
98:17 99:20
100:13 101:18
103:18 113:9

114:15 116:1
122:4 123:4
132:1,18 133:6
142:3 145:3
148:22 149:18
151:1,15
152:18 153:12
153:21 160:10
162:15 163:14
164:11 168:9
174:10 180:15
186:14 187:11
189:6,14
190:18 191:3
193:18 203:1
204:22 210:18
213:2 232:2
233:2,21
234:10 235:19
240:6,18
241:14,21
243:7 248:16
253:17 255:6
255:18 257:4
257:22 265:8
273:13 274:12
275:1 279:20
283:22 291:16
292:12 294:5
294:15 296:19
302:7 308:11
**formed** 11:18
11:19 152:22
**forms** 171:1

**forth** 212:6
**forthright**
70:12 75:5
**forward** 103:6
107:1 112:16
112:18 113:1,4
113:8,14,18
128:17 159:19
160:2 163:22
164:9 216:16
259:22 260:21
311:14
**forwarded**
214:10 260:17
**forwarding**
215:2 260:4
**found** 115:8
183:20,21
203:6,11
228:16 238:11
267:21,22
268:6
**foundation**
210:19
**founded** 54:14
**four** 29:9 73:18
143:1 245:7
**fox** 266:13
**frame** 12:2
40:15 50:5
51:3 175:3
180:18 209:13
276:10
**frames** 211:15

Veritext Legal Solutions
www.veritext.com
888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 338 of 386 PageID #: 4392

frankie 62:15
free 66:5 71:18
 213:11 312:14
 313:20
french 200:12
 200:15
friday 14:12,14
 14:15 147:22
 245:11
front 18:2,5,8
 18:13,14,21
 32:3,4 37:19
 40:18 66:6
 75:22 107:1
 108:8 120:17
 144:8 157:18
 197:3 230:20
frustrated
 131:13,14
full 11:13 71:8
 86:17,17
 117:17 289:15
 289:17
fully 70:16
 91:13 128:9
 152:8
fundamentally
 173:1
further 68:21
 72:21 156:9
 159:1 278:18
 291:5 309:3
 310:13
future 179:10
 222:9 232:8,14

232:22 233:8
236:17

**g**

g 5:1
gcallas 2:19
general 13:7
 48:14 58:15
 83:2 145:19
 185:18 186:17
 186:20 213:21
 214:2,3 215:18
 270:12
generally 58:11
 89:11
generate
 263:21
generated
 240:12
gentleman 14:2
 153:10 195:21
 220:8 237:11
 238:18
gentlemen 14:2
georgia 51:19
 52:21 54:14
 55:21,22 56:1
 63:1 297:10,15
 299:4
getting 35:7
 117:15 164:19
give 14:6 15:1
 21:5,6 59:5
 61:13 67:5
 74:14 87:22
 95:7 103:1,1

127:11 130:2,2
142:16 164:9
164:18 173:9
174:7 180:1
227:13 230:13
234:4 258:5
300:21 308:19
given 29:8 40:2
 42:10 59:6
 199:19 273:20
 294:10 310:9
gives 165:20
 229:3
giving 103:6
 109:19
go 9:11 11:2,11
 11:17 36:1
 78:21 88:7
 91:5 92:19
 103:5,14
 116:13 144:7
 146:18 151:18
 159:1 171:13
 178:16 179:2
 198:5 200:2,5
 201:6 205:20
 216:16 220:16
 240:3 246:5
 251:21 260:18
 284:12 301:15
goal 163:21
goals 159:19
 164:8
god 287:9

godly 12:4
going 5:2 10:11
 13:4 16:7,8
 18:7 31:8,9,18
 35:18 37:12
 38:1,17,18
 46:13 48:21
 61:9,11 63:21
 63:21 67:10,11
 69:21 71:13,14
 71:15,21 74:14
 75:13,14,17,21
 84:20 85:5,12
 85:14,21 91:5
 91:11 94:20
 96:4 103:3,11
 109:14 115:6,6
 117:14 118:19
 130:5,7 137:11
 137:14 141:22
 142:15 148:4
 157:22 160:22
 164:18 165:4
 165:21,22
 167:4,7,10
 168:2 172:20
 173:3 175:1
 176:10 195:4
 200:4 201:5
 202:1 203:14
 203:17 204:3
 212:8,9 214:15
 216:1,5,7
 218:2,4,7,11,21
 218:22 220:3

220:10 223:11
223:12,14,18
224:2 225:8
229:8,22 230:1
230:8,22,22
244:10 246:7
249:11,13,14
249:15,15,16
259:18,19
260:11 266:21
272:18 273:18
274:20 275:18
276:2,9 277:14
278:15 281:9
281:13,13
282:14 283:2
286:8 297:7
300:2
**gold** 2:9 6:1
**golf** 269:10
**good** 5:2,18
6:14,15 48:9
52:22 53:3,5
53:17 54:5,11
56:3,21 65:11
65:11 70:15
83:11,16,21
84:4,15 85:19
87:20 108:10
115:10
**gotten** 102:10
121:14
**gp** 75:18
**gp0000444**
75:19

**gp7650** 24:8
**gps** 269:21
**grace** 12:4
**graduate** 9:17
10:5
**graduated**
10:17
**graduation**
10:21,22
**granted** 216:21
**gratuitous**
205:17
**great** 118:21
225:16
**gretchen** 2:17
6:2
**grooming**
269:12,14,15
269:16
**groping** 253:3
259:8
**group** 7:9 79:1
292:17,19
**guess** 183:12
**guessing**
290:12
**guidance** 230:6
**guidepost** 1:7
4:15,16 6:21
8:9,12,13,22
9:3,6 12:1 13:1
13:15 16:19,21
17:7 31:4
32:10 33:21
35:14 36:14,14

37:1 38:8
41:13,15 42:16
45:9,12 47:22
66:14 67:17
69:21 70:22
75:2,3 76:10
84:3,9,20 85:5
90:6,9 93:3
95:21 98:2,6
98:16 100:11
102:19 104:9
111:7 112:10
112:12 114:7
114:13,20
123:10 124:3
135:8,19
136:11 137:10
138:7,8 166:19
167:6 171:14
177:11 178:22
181:15 183:10
183:20,21,22
184:3 188:13
188:14 198:11
199:4,8 202:10
203:10 204:5
204:21 205:2
207:9 215:7
219:21 238:5
238:16 239:15
239:19 240:5
241:17,20
242:4 243:4,15
243:18 246:22
250:5,6 251:9

251:9 259:11
263:15 275:12
275:18 276:21
277:22 279:8
284:21 288:2
289:6,11,13
290:1 291:5
292:5,9,16
293:9 294:13
295:3,7,11,21
297:3,9 298:1
299:1,6,8
300:8 302:4
303:3,16
**guidepost's**
47:16 61:18
90:17 198:7
**guideposts** 6:22

**h**

**h** 1:19 55:11,11
55:14,17
**hand** 16:7 31:8
37:12,18,21
38:1,17,18
67:10 69:22
71:15 75:13
103:11 120:16
122:21 123:11
123:15 139:6
147:4 167:10
171:7 176:5,10
201:5,20
203:14,17
214:15 244:10
249:11,12,13

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 340 of 386 PageID #: 4394

249:15 259:18
269:9 284:17
300:2
**handed** 31:11
157:21
**handwriting**
15:19
**hang** 269:10
**happen** 181:8,9
216:5,7
**happened**
32:19 53:11
69:2 93:7
114:19 115:13
124:19 138:11
142:9 180:3
181:10 192:19
196:10 201:20
202:21 252:2
255:21 257:15
271:15,16
**happy** 60:16
100:2,8 116:3
116:11 154:21
157:12 191:16
265:11
**hard** 41:6,16
**harm** 163:17
**he'll** 213:13
**head** 293:5
**heading** 42:12
72:4 183:14,17
**headline**
262:12

**heads** 285:7
**hear** 25:20 27:3
128:4 165:9
167:7 219:17
**heard** 20:10
28:4,5 34:17
154:2 168:13
201:13 219:15
**hearing** 166:14
166:21,22
**heart** 295:5
**heave** 52:20
**help** 21:5 31:20
64:2 65:3 74:2
80:9,22 231:10
233:6 235:15
249:7,18
**helped** 53:9
**hey** 269:10
**hi** 285:7
**highlight** 21:15
**hill** 10:7
**hired** 9:5 96:19
**history** 60:12
60:20 62:13
80:4
**hoe** 74:14
**hold** 50:16
60:22 146:15
147:1 261:6
297:4
**holske** 4:13
17:10 39:12
46:18 47:4,21
58:3 76:13

88:17 89:3
101:1 111:16
112:10,12
115:3,14,19,20
116:14 120:21
122:8,16,22
126:2 129:12
130:16,18
136:16 139:6
139:15 142:9
174:6 212:2
214:11 244:13
244:15,18,19
265:16 280:4,8
280:11 283:12
298:20 300:5,7
300:15,20
301:6,16 305:1
305:8 307:12
307:17 308:1,4
308:10,14
**holske's** 140:19
283:1
**honest** 54:6
65:13 75:5
87:22
**honestly**
295:17
**hope** 32:13
217:19
**hopefully**
200:22
**hoping** 127:17
127:22 287:10

**hour** 92:3
172:9,11,12
**hours** 14:16
92:11 143:1
172:9
**house** 231:22
236:4
**houston** 288:14
288:14 293:21
294:2
**huh** 9:10 27:11
36:20 38:3
70:1 92:4,8
126:6 287:17
**human** 173:19
174:1,5,5
**hundred**
277:10
**hundreds**
84:18 221:19
224:20
**hunt** 1:3 3:5
4:7,13 5:6,20
13:7 22:3,3,4,5
28:2,7,16
30:17 32:12,18
32:21 33:6,18
33:22 34:16,17
34:19 36:17
38:6 43:3,7
49:3,7,19,21
50:2,22 51:9
51:15 52:19
53:8,9,18 54:5
55:6 56:4,12

57:3,7,16
58:13 59:1,6
59:10,13 60:11
60:19 62:12,20
63:15 64:16
65:2,12,21
66:2,15 67:2,7
67:16 68:3,13
68:15 69:7,15
72:1,5,15,20,22
73:19 74:19
78:10,15,22
79:11 81:8
82:5 83:3,12
83:22 86:1,20
87:21 94:17,22
95:1 97:18
104:5 105:2
109:13 116:10
116:18 117:1
117:10,13,14
118:6,13,15
120:4,9 131:6
134:15 140:16
146:13,17
154:4 155:1
159:4,9,20
161:14,20
162:6,14,22
163:3,7 165:6
166:11 167:6
172:1,4,21
173:2,10 174:9
174:21 175:9
175:16,20

176:12 177:2
177:11,15,19
178:4,11,16
179:1,21 180:2
180:13,22
181:5,21
182:17 184:1
185:5 200:1
201:21 203:7
203:11 204:11
204:13 205:7
205:13 206:8
207:15,20
208:14,16,22
209:7 210:17
211:7,11,14,17
212:10 213:14
214:8,22
215:13,21
217:7 219:8,17
220:9,22
221:11 222:8
223:6,6,9
226:5,7 228:2
228:6,16
229:15 230:10
230:12,21
231:7 232:7
233:6 235:15
238:14,21
239:3 245:8,11
247:20 249:21
250:21 251:5
252:3 253:2
257:15 258:4

258:16 259:7
262:13 267:8
268:9 269:5
270:12 271:17
271:20 278:20
285:17 294:3
294:11 302:11
303:2,6,13
305:1,5,9,13,17
305:21 306:6,8
306:11,16,16
307:6,18 308:4
310:2,18 311:6
312:3 313:3

**hunt's** 53:12
61:17
**husband** 11:19
12:10 101:17
181:1 262:14
268:3

## i

**idea** 85:11
276:13 280:21
**identification**
75:16 103:9
129:2 139:8
201:3 214:13
244:8 259:16
260:14 284:15
299:21
**identified** 45:1
45:13 61:2
90:15,17
301:17

**identify** 90:13
104:11 105:19
244:11
**identifying**
73:20 74:11
83:19
**ignore** 223:12
223:14
**ii** 77:10,17
**iii** 77:22 78:5,6
**imaged** 287:14
**immediate**
209:3
**immediately**
208:18 279:9
279:13
**impact** 32:20
115:15,22
121:10 122:7
122:17,20
123:1,12,17
124:9 125:1
126:3 130:16
241:18,20
242:6,20 243:6
243:19,21
244:1 266:3,9
266:15
**impacted**
291:12
**impacts** 122:3
**implementati...**
290:19
**import** 268:1

Veritext Legal Solutions
www.veritext.com                                                     888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 342 of 386 PageID #: 4396

**important**
33:14 43:16
44:6 177:8
191:12 219:11
243:13,15
266:20
**impression**
75:1,6 86:2
87:18 298:9,10
**inappropriate**
22:16 23:3,8
24:15,22 25:8
25:11,13,14,18
25:21 95:7
**incident** 43:2
49:11 68:5
72:14 97:18
103:16 117:2
117:11,21
120:3 134:15
153:8,18 172:4
178:21,21
179:20 180:21
182:16 184:1
192:6 201:21
202:14 210:17
256:14 268:11
268:19 305:9
**include** 85:19
187:19 297:15
**included** 60:12
60:20 62:14
168:15,17,19
168:21 222:3
238:12 293:9

311:12
**includes** 182:12
**including** 25:12
88:17 133:19
137:4 174:16
**income** 222:9
224:14 225:6
225:22 226:13
226:16,19
227:7 231:7,11
231:20 232:8
232:14,22
233:8,8 234:8
234:14 235:7
236:17 237:14
**inconsistent**
182:3
**incorporate**
81:8
**incorporated**
82:5 313:12
**incorrect** 274:8
**increased**
290:9
**independence**
246:4
**independent**
9:1,3,7 11:22
96:19 117:8
121:18 123:2
123:18 142:18
154:22 155:8
174:14,19
178:2,5,10
192:21 224:16

225:14 238:8
242:15 243:18
246:2 247:15
275:8,21 289:2
289:12 290:21
307:21 308:3
**independently**
143:9
**indiana** 2:5
**indianapolis**
2:5
**indicate** 46:1
65:20,21
163:21 172:22
178:2 200:17
200:19 248:4
269:12 295:22
299:10
**indicated** 59:12
66:1 157:4
189:12 204:4
280:11
**indicating**
266:14 273:10
311:12
**indication** 52:2
58:15 267:9
**indicative**
196:3
**indicia** 54:12
179:17,19
**individual** 7:19
84:8 135:5,9
182:22

**individually**
97:20
**infection**
156:16
**influence** 58:20
**inform** 96:6
98:2
**information**
16:15 46:1
51:8 52:12,18
52:22 53:3,6
53:17 54:5,12
56:4 65:11,12
74:5 76:18,20
76:21 77:1,3
83:11,17,22
84:4,15,18
85:19 86:4,4
87:21 90:6
118:10 130:2
133:22 136:13
164:9 167:14
173:8 182:13
214:6 215:12
216:20 221:10
226:12 236:12
257:10 265:17
271:7 272:3
273:20 279:1,7
279:14 283:1
286:8 287:13
293:10,14
296:13
**informed**
236:16 273:17

| | | | |
|---|---|---|---|
| **informs** 231:6 | **intentions** | 17:6 49:10,16 | 97:5 116:18 |
| **initial** 291:4 | 236:16 | 49:18,21 50:1 | 117:1,10 118:6 |
| **initiate** 285:2 | **interacted** 90:2 | 50:22 54:7,19 | 176:11 245:7 |
| **initiated** 306:7 | **interaction** | 54:21 58:13 | 253:19 293:4 |
| 306:13 | 97:21 | 59:10,12,18 | **interviewers** |
| **initiatives** 81:8 | **interactions** | 60:10,11,18 | 174:2 |
| 82:5 106:9 | 239:21 303:5 | 61:10 62:11 | **interviewing** |
| **inquiry** 55:3,20 | **interest** 168:21 | 64:7,21,22 | 49:1 56:12 |
| 56:13 58:7 | 169:2 170:19 | 65:1,13,20 | 207:12 |
| **insecure** 153:2 | 222:3 241:17 | 66:19,21,22 | **interviews** |
| **inserted** 132:3 | 241:19 267:7 | 67:3,6,9,15,16 | 49:14,14 89:2 |
| **inside** 70:11 | 267:10,14 | 67:21 68:3,9 | 89:5,12 97:11 |
| 98:16 | **interested** | 68:14,16 69:18 | 97:19 102:1 |
| **insisted** 35:22 | 174:18 226:4 | 71:22 72:13,14 | 109:18 173:6 |
| **insisting** 92:1 | 266:22 267:18 | 72:19,22 73:15 | 173:14 174:3 |
| **instances** 90:1 | 310:15 | 73:22 76:2,3,7 | 205:8,13 206:8 |
| 90:14 269:8 | **interesting** | 77:18 78:7,9 | **introduce** 5:16 |
| **institution** 7:12 | 21:16 | 78:14,22 79:6 | **investigate** |
| **institutions** | **interests** | 80:2 82:6 83:1 | 204:6,16 205:3 |
| 7:10,14 | 167:20 | 83:18 86:1,2,3 | 208:10 |
| **instruct** 138:7 | **interim** 64:2 | 86:6 87:6 | **investigating** |
| **instructed** | 80:9 | 96:22 97:1,17 | 206:11 |
| 202:20 | **internally** | 108:15 116:20 | **investigation** |
| **integrity** 295:5 | 171:3 | 117:15 126:4 | 8:16 17:2 |
| 295:17 | **interpretation** | 126:12,20 | 43:11 71:2 |
| **intend** 218:20 | 166:5 167:1 | 171:22 173:3 | 75:11 77:7 |
| 289:1 | 283:13 | 175:5 178:4 | 86:7 97:12 |
| **intended** 113:3 | **interpreted** | 206:11 247:21 | 99:5,9 100:6 |
| 288:21 | 213:4 | 248:7 301:9 | 105:11 106:7 |
| **intent** 131:15 | **interrogatories** | 305:17,21 | 117:8,18 |
| **intention** | 4:15 37:10 | 306:7 307:13 | 121:18 134:12 |
| 140:17,19 | 67:11 108:4,4 | 308:13 | 149:4 174:14 |
| **intentionally** | 109:7 | **interviewed** | 193:1 199:4 |
| 237:15 | **interview** 4:7 | 44:7 48:17,20 | 202:5 204:12 |
| | 4:18 16:4,6 | 49:7 59:13 | 207:9,11 208:3 |

210:3 211:5
213:20 231:4
246:14 253:21
266:16 267:3
267:19 286:22
288:16 289:2,4
295:12 297:18
303:12
**investigations**
289:19
**investigative**
88:16 90:5,15
95:21
**investigator**
42:18 43:16,22
44:21 45:21
71:9 93:2 95:9
96:20 107:9
113:5 117:8
120:20 123:11
131:9 148:19
169:16 171:20
191:12 205:19
206:6,10 207:4
231:16 238:8
238:10 242:18
243:22 246:2
247:17 263:15
265:6,6 267:22
285:16 288:22
298:16 303:4
**investigators**
42:19 43:1
73:19 99:6
101:1 205:7

206:7 242:5
243:5 262:11
**investigatory**
48:16 98:12
100:12,22
101:13,15
207:20 298:14
**invited** 196:19
**inviting** 190:6
**involve** 7:10
81:9 120:3
**involved** 8:16
40:10 73:17
99:4 105:12
153:8 203:19
204:10 271:6
271:12 287:12
292:16
**involvement**
90:18
**involving** 8:16
43:2 49:12
82:14 104:1
106:5 118:13
134:14 136:15
136:16 153:18
163:7 172:4
180:12,22
182:17 183:11
184:1 229:13
251:10,18
268:9 284:18
284:20 294:11
302:11 303:1

**ipad** 75:22
**issue** 17:2 37:1
49:11 68:9,12
133:12,15
134:13 152:5
169:11,11
263:11
**issued** 42:16
**issues** 10:10
116:19 134:14
**iv** 79:1

**j**

**j** 2:3,8 22:1
**jacksonkelly**
2:17
**jacksonkelly....**
2:19
**january** 208:11
208:12 210:12
310:21
**jealous** 146:1,4
150:3,18
154:18 155:3
157:4,8 168:15
168:16
**jealousy** 160:9
160:12,15
162:10,21
163:4 169:17
170:18 171:12
**jh** 22:1,2 27:19
28:1,7,14
30:17
**job** 42:18 47:22
121:17 122:7

205:12 206:18
229:19 247:11
**jog** 178:16
179:2
**johnnie** 29:11
29:14 175:6
**johnny** 1:3 3:5
4:7 5:6,20 13:7
22:3,4,5,17
23:4,10 24:17
26:21 27:5
28:2,7,15
30:17 34:16,19
36:4,11 43:3,7
49:2,19 51:15
53:8,18 54:5
55:6 56:4,12
57:3,16 58:12
59:1,6,10,13
60:10,18 62:12
62:20 63:15
64:15 65:1,12
67:1,4,7,16
68:3,13,15
69:7 72:15
78:9,15,22
81:8 83:3,12
83:22 86:20
87:21 94:17,21
97:18 104:5
109:13 116:18
117:1,10 118:6
118:13,15
120:4,9 134:15
154:13,19

155:4 156:17
157:4 158:5
159:4,20 160:1
161:14,14,20
162:6,14,22
163:3 165:6
166:10,14
167:6 171:22
172:4,21 173:1
173:10 174:8
174:21 175:9
175:16,20
176:12 177:1
177:10,15,19
178:4,11,16
179:1,21 180:2
180:12,22
182:17 184:1
196:19 200:1
201:21 204:11
204:13 207:15
207:20 208:14
208:16,22
209:7 210:17
211:7,11 214:7
214:21 215:13
219:17 220:9
220:22 226:5
228:1,5,16
229:15 230:12
232:7 238:14
238:21 245:8
262:13 267:8
285:17 294:3
303:2,6,13

307:6,18 308:4
311:6 312:3
313:3
**johnny's**
155:11 157:8
**joined** 11:22
**jon** 3:4
**journal** 4:17
38:14,16 39:3
39:7,17,19,22
40:3,13 41:7
42:2 241:3,8
241:13,13
**judge** 202:11
202:13,20
203:3,15,19
204:17,19
207:4 209:14
218:12 283:3
**julie** 98:22 99:1
100:15 143:2,4
143:11 145:9
218:7 285:1
**july** 32:15
181:11 189:19
208:21 209:9
209:22 211:12
231:22 305:10
**june** 208:5,18
210:12
**jurisdiction's**
185:17
**jury** 33:15,17
34:21 36:3,10
48:2 52:5

53:15 54:4
58:6,12,22
83:10 107:18
122:12,15
131:10 153:19
168:1,3,4
169:6 171:19
176:18 179:18
187:9 190:22
192:4 193:4
201:13 202:11
202:13,20
203:3 204:17
204:19 209:14
230:20 233:15
238:3 252:9
255:14 279:5
281:13 282:8
282:13,15
283:3,15 292:2
307:5,8

**k**

**k** 11:6
**kathy** 3:3
**keep** 52:10,12
197:20 245:17
248:20
**kilpatrick** 1:11
2:7 4:6,9 5:5
5:22 6:9,18
75:15 103:8
119:1 128:5
129:1 139:7
156:6 165:1
201:2 212:9

213:8 214:12
215:15,17
244:7 259:15
260:13 284:14
299:20 304:17
309:6,9 311:8
312:4,9 313:4
313:13 314:20
**kind** 24:13
131:16 132:16
196:3 221:5
248:20 262:10
262:15 263:3
266:15 292:19
**kinds** 187:13
222:5
**kissed** 200:12
200:15 252:3
257:15 305:18
306:12
**kisses** 269:9
**kissing** 185:7
**klein** 2:8,10 3:3
5:21,22 13:14
14:9 19:2
23:11,21 25:3
26:7 28:18
29:3,18 31:18
33:9 34:6 35:2
35:6 37:3
38:22 39:4
41:9 43:8 44:3
44:15 45:3,16
46:10 48:7
50:9,16 53:20

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 346 of 386 PageID #: 4400

56:17 57:10
58:8,14 59:3
60:22 61:4,20
62:2,6 63:9
65:15 66:4
67:19 69:3
70:18 71:16
73:6 74:7,17
75:6 76:21
77:14 81:15,18
81:21 82:20
83:5,14 84:7
84:22 85:8
86:13,22 87:10
87:15 88:3
89:7,13,16
90:19 91:11
92:13,16 93:18
94:4 95:11
96:14 98:17
99:20 100:13
101:18 103:18
103:21 104:14
105:20 108:7
108:11 110:9
111:20 113:9
113:22 114:15
116:1 118:16
118:21 119:19
120:10 122:4
123:4,20
124:13 125:4
125:12 126:13
126:17 127:4
127:16 128:2,9

128:13,16,22
129:17 130:17
132:1,14,17
133:6 134:5,17
135:4,7,22
136:20 137:22
140:2,10 141:1
142:3 143:16
144:2 145:3
146:6,16 147:1
148:11,22
149:18 151:1
151:15 152:18
153:12,21
157:18 159:1
159:11 160:10
160:19 161:7
161:21 162:15
164:11,19
165:15 166:4
166:20 169:19
170:7 174:10
176:7 177:16
178:6,18 180:4
180:6,15
182:21 183:4
184:5 185:14
186:13 187:11
188:6 189:6,14
190:18 191:3
191:22 193:6
193:11,17
194:6,14,17,21
195:3 196:5,12
198:6,16 199:9

199:16 202:15
203:1,8,21
204:22 205:22
206:19 207:6
209:18 210:18
211:9 212:3,15
213:8 215:14
216:5,8 219:3
220:1,10
222:17 223:5
223:11,16
225:1,8 226:20
227:11 228:3
228:19 230:8
232:2 233:2,21
234:10 235:9
235:19 236:19
237:4,15 240:6
240:18 241:4
241:21 242:7
242:21 243:7
244:2,4 248:16
248:22 249:3
249:22 253:17
255:6,18
256:15 257:4
257:22 258:12
261:3,6,12,19
262:18 263:7
263:18 264:19
265:8 266:5,17
267:11 268:4
268:14,20
269:3 270:6
272:7,15 273:7

273:13 274:6
274:14 275:1,7
275:10 276:22
277:5,17 278:2
278:5,14
279:20 280:15
280:20 281:2,4
281:7,15
282:18 283:7
283:22 284:9
285:18 286:15
288:9 291:7,16
292:12 294:5
294:15 296:19
297:12,22
298:18 299:13
302:7 303:7,17
304:1,13
306:20 307:10
308:11 311:5
**knew**   44:22
51:17,20 53:1
64:16,19 68:17
68:20 72:16,20
81:3 82:18
83:3 85:14,21
87:2 104:12,22
105:5 117:4,13
149:11,15
160:8,14,17
161:3,4,13,17
162:3,12,20,20
162:21 164:14
166:12 168:6
169:15 210:2

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 347 of 386 PageID #: 4401

221:12 226:3
227:21,21
230:16 232:20
233:16 235:5
235:14 237:8
269:22 286:18
**know** 31:7
39:14 44:17
46:5,5 50:6
51:4,5,21,21
52:16,20 61:1
64:10 66:2,15
67:3 69:8,15
72:6 73:1
74:20 80:15
89:22 90:10,12
90:13 92:15,19
95:19 97:13
102:19 105:4,7
105:8,10,14,15
105:16,22
106:19,19
110:15 113:19
115:10 121:16
124:7 127:19
128:1,7,8
130:20,21
135:7 136:11
141:15 142:12
142:12,15,16
144:4,16 148:4
151:3,4 152:11
158:10 160:11
162:10 163:1,4
163:5,7,15,17

164:7 167:17
172:13 173:2
180:6,7,16
181:17 183:1
188:14,20
190:2 191:18
192:18,19
193:10,15
194:12,12,16
195:2,7,9,11
196:9,16
201:18 207:17
220:15 221:13
222:11,12
223:12 225:8
227:19 229:15
231:19 233:7,9
233:16 236:7
238:3,4 239:20
241:5 244:3,5
261:19,20,20
261:21 262:4,7
262:20,21
263:9 264:14
265:2 267:1
270:19 271:18
271:19 272:1
274:2 275:20
276:14,15,19
277:3,6,8
278:6,7,8,8
281:8,21 285:4
285:11,13,14
285:15 287:9
287:12 289:22

290:1,2 294:9
299:5,6 301:3
302:9 307:20
**knowing** 51:10
74:15
**knowledge**
97:9 98:1,4
130:18 141:2
148:12,16
151:2,16
152:19 153:22
188:13 233:3
233:22 244:1
255:8,12 257:5
258:8 270:7
272:9 276:17
279:18 280:1
283:8,12 284:1
292:13 298:17
299:1 302:8
**known** 62:21
164:14 259:12
**knows** 233:15
281:10
**krista** 285:1

**l**

**lack** 133:4
148:11 151:15
152:18 153:21
233:2,22 257:4
270:7 283:7,22
292:12 302:7
**ladies** 285:7
**laid** 191:10

**laidley** 2:18
**language** 22:13
33:20 109:13
109:16 131:6
140:15 184:3,9
184:11 186:1
**lap** 286:3,7
**lasted** 172:8,10
**late** 143:1
**law** 9:8,12 10:3
10:5,17,20,22
11:1,18 12:10
12:12 185:3,11
185:17 186:9
217:19 226:14
237:10 297:10
297:15 299:4
**lawsuit** 295:13
304:19
**lawyer** 48:15
58:19 70:5
71:5 226:8,11
227:5 232:11
237:9
**lawyers** 58:20
70:4,4 92:1
95:16,17 96:4
96:5 97:5
122:11 166:18
166:18 167:5
232:19
**lead** 42:19,22
43:16,22 44:21
45:21 107:9
120:20 123:11

169:15 193:12
193:14 231:15
238:9 242:5,18
243:5,22
247:17 263:15
265:6 285:16
292:7
**leader** 291:15
**leading** 140:3
**leaned** 195:11
195:20,22
**learn** 40:21
47:20 170:6
179:20 180:11
277:14
**learned** 47:18
163:13
**learning**
245:10
**leave** 166:6
230:1,10
**leaving** 65:3
74:2 80:21
158:5
**led** 289:3 293:2
307:12
**lee** 300:10,11
301:16 302:9
**left** 64:11,17,19
80:16 194:1
303:6,15
**legal** 1:15,21
5:13,15 48:8
133:7 185:14
185:22 186:2,3

188:5,9 226:17
226:20,22
227:11,13
228:20 296:8
297:12 311:1
314:1
**length** 48:6
**letter** 4:16
202:12 203:13
203:16 205:16
206:17 207:3,8
210:7,8 214:6
214:21 221:15
221:16 224:22
229:18,21,22
230:17 231:3
233:5,6,10,20
234:3 236:2,3
236:6,11,13
237:21 311:17
**letters** 215:1
237:20
**letting** 230:10
231:19
**license** 205:19
296:6,17 297:4
**licensed** 182:10
296:1,10,12,14
297:2 298:10
299:11,16
**licenses** 34:21
**licensing**
295:22 296:17
297:19 298:6
298:15 299:10

**licensure** 299:4
**lied** 128:14
**light** 62:16
92:11
**likely** 111:9
303:14,20,22
304:4
**line** 26:20
48:15 73:18
97:14 111:18
112:21 114:22
115:2,4,4
133:19 138:9,9
138:13,13,17
138:17,22,22
139:22 140:1,1
140:8,8 143:3
143:3,15,15
144:1,1,18,18
145:11,11
156:17 159:5
229:16 311:12
313:7 314:3
**lined** 115:7
**lines** 29:10 72:5
114:13
REDACTED
**list** 232:15
**listed** 160:2
201:9,14
224:17 232:14
313:7,17
**listen** 182:15
**listened** 28:5

**listening** 18:17
18:22
**listing** 241:12
313:7
**lists** 231:11
**literal** 35:22
**literally** 171:6
**litigate** 165:19
**little** 93:4 101:4
131:12,12
132:8,10
**live** 12:20
216:17 218:9
**llc** 1:7
**llp** 2:9,21
**located** 55:19
**location** 1:15
5:10 308:15
**locations** 192:9
**lock** 262:9
**logic** 178:3
**logical** 263:2,5
**logistical** 93:10
**logistically**
128:13
**logistics** 94:1,7
**long** 8:11 9:2
11:7 14:14,17
172:7,8 179:12
181:12,13,14
**longer** 66:6
**longitudinally**
290:8
**longstanding**
52:18

Veritext Legal Solutions
www.veritext.com
888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 349 of 386 PageID #: 4403

| | | | |
|---|---|---|---|
| **look** 21:10 24:4<br>26:19,20 27:9<br>29:9 37:8<br>46:16 60:16<br>61:16 66:1,5<br>67:12 71:11,12<br>100:2,8 103:22<br>108:3 109:5<br>116:3,11<br>117:20 129:11<br>130:12 131:2<br>134:12 141:15<br>144:20 145:11<br>147:18 157:13<br>157:14 176:3<br>187:14 191:16<br>193:22 203:16<br>210:7,8 223:2<br>223:3,10<br>226:11 229:12<br>231:13 251:22<br>265:11,22<br>300:3,14<br>**looked** 127:7<br>130:3 153:16<br>241:15<br>**looking** 17:13<br>28:10 69:11<br>77:5,22 104:18<br>110:13 124:22<br>127:14 133:1<br>133:11 163:16<br>174:15,15<br>189:22 192:14<br>232:17 259:20 | 283:4 288:13<br>290:8 296:10<br>**looks** 176:20<br>278:14 300:6<br>**lose** 219:2<br>231:20 232:7<br>233:7<br>**losing** 222:8<br>**loss** 222:9<br>226:13 228:13<br>231:7,11,22<br>232:14,16<br>233:8 234:8,14<br>236:5<br>**losses** 222:4<br>228:14 235:14<br>**lost** 222:4<br>224:14 225:22<br>226:16 227:6<br>228:12 237:14<br>**lot** 25:11 116:8<br>267:18<br>**lots** 70:4<br>221:18<br>**loud** 225:17<br>**lunch** 155:13<br>156:14 159:8<br>**luncheon**<br>155:16<br><br>**m**<br><br>**m** 1:3 2:17<br>311:6 312:3<br>313:3<br>**ma'am** 6:14,20<br>9:14 12:21 | 14:11 18:11<br>24:21 25:15<br>27:4 31:2,8,11<br>32:3 33:2,15<br>36:8,21 37:7<br>37:13 38:12<br>41:3 44:21<br>48:14 49:10<br>60:17 62:10,11<br>63:4 65:5<br>69:14 71:13,21<br>72:10 74:13<br>75:13,21 76:2<br>84:13 94:16<br>98:14 113:3<br>115:13 117:7<br>117:21 121:5,5<br>121:17 122:15<br>130:5 145:17<br>146:20 147:4<br>155:10 156:13<br>156:19 157:21<br>165:4 166:9<br>167:5 171:18<br>172:14 173:7<br>187:18 190:8<br>191:11 192:5<br>192:15 193:1<br>193:21 195:8<br>195:19 199:13<br>201:6 202:10<br>203:5 205:14<br>206:15 207:18<br>207:22 209:12<br>212:12 219:15 | 222:16 224:2<br>230:15 231:4<br>231:16 232:17<br>232:21 233:14<br>235:6 237:12<br>238:7,15<br>241:15 242:13<br>244:11 255:15<br>261:14 262:17<br>263:13 266:12<br>267:21 268:12<br>269:15,19<br>272:4,12 274:1<br>274:11 279:17<br>281:13,21<br>283:17 284:13<br>285:5 287:9,18<br>288:21 291:11<br>297:2,8 300:2<br>300:14 302:22<br>303:4,11 307:2<br>307:17 308:2<br>**macgill** 2:3,4<br>5:18,18 6:13<br>10:16 13:20<br>19:6 23:15<br>24:3 25:6 26:9<br>28:20 29:6<br>30:1 32:1<br>33:11 34:9<br>35:4,9,10 37:6<br>39:1,8 41:12<br>43:12 44:8,20<br>45:7,19 46:15<br>48:11 50:12,19 |

| | | | |
|---|---|---|---|
| 51:12 54:1 | 126:16,18 | 193:13,20 | 262:1 263:1,12 |
| 56:20 57:15 | 127:12,21 | 194:10,15,19 | 264:3 265:1,12 |
| 58:10,17 59:8 | 128:6,10,15,19 | 195:1,5,6 | 266:11 267:5 |
| 61:3,7,15,18 | 129:3,18 131:1 | 196:8,17 198:9 | 267:20 268:10 |
| 62:1,4,8,9 | 132:5,15,21 | 199:1,12,21 | 268:16 269:1 |
| 63:13 65:18 | 133:10,16 | 201:4 202:16 | 269:13 270:14 |
| 66:7 67:22 | 134:9,21 135:6 | 203:4,9 204:2 | 272:11,17 |
| 68:1 69:5 | 135:14 136:5 | 205:5 206:4 | 273:9,16 274:9 |
| 70:20 71:19 | 137:3 138:5 | 207:1,14 210:1 | 274:17 275:4 |
| 73:10 74:12,21 | 140:6,12 141:7 | 211:1,20 | 275:16 277:2 |
| 75:12,20 77:1 | 142:7 143:20 | 212:11,20 | 277:11,19 |
| 77:4,16 81:17 | 144:6 145:6 | 213:13 214:4 | 278:4,11,21 |
| 81:20 82:1,21 | 146:15,17,19 | 214:14 216:1,7 | 280:3,18 281:1 |
| 83:8,20 84:12 | 147:3 148:18 | 217:11 219:10 | 281:3,6,12,20 |
| 85:3,13 86:16 | 149:5 150:1 | 219:14 220:5 | 282:21 283:14 |
| 87:4,14,17 | 151:6,11,21 | 220:19 222:19 | 284:6,12,16 |
| 88:7,14 89:9 | 153:1,15 154:9 | 223:10,13,20 | 285:20 286:19 |
| 89:15,18,19 | 155:13 156:12 | 224:1 225:3,15 | 287:8 288:12 |
| 91:1,15 92:15 | 157:20 159:10 | 227:4,18 228:7 | 291:9,18 |
| 92:18,21 93:21 | 159:12 160:13 | 229:10 230:14 | 292:21 294:12 |
| 94:8 95:14 | 161:2,12 162:1 | 232:5 233:13 | 294:18 297:1 |
| 96:17 98:20 | 162:19 164:16 | 234:6,12 | 297:17 298:3 |
| 100:3,17 | 165:3,18 166:7 | 235:16 236:1 | 298:21 299:17 |
| 102:13 103:10 | 166:8 167:3 | 237:1,7 238:1 | 300:1 302:14 |
| 103:20 104:4 | 170:1,12 | 240:9 241:1,6 | 302:21 303:10 |
| 105:3 106:2 | 174:17 176:5,9 | 242:3,10 243:2 | 303:21 304:5 |
| 108:10,14 | 177:20 178:7,9 | 243:11 244:9 | 304:11 307:1 |
| 110:12 112:1 | 178:14,20 | 246:5,12 | 307:16 308:19 |
| 113:12 114:4 | 180:5,10,20 | 248:21 249:6 | 309:3 |
| 114:18 116:5 | 183:2,8 184:8 | 250:3 254:1 | **macgill's**   119:3 |
| 118:20 119:4,6 | 185:21 186:19 | 255:11 256:2 | 220:14 |
| 119:9,12 120:1 | 187:16 188:10 | 256:19 257:8 | **macgilllaw.c...** |
| 120:13 122:10 | 189:10,16 | 258:7,18 | 2:6 |
| 123:7 124:1,17 | 190:21 191:8 | 259:17 260:15 | **made**   13:6 26:3 |
| 125:7,9,15 | 192:2,10 193:8 | 261:5,9,13 | 26:4,15 38:7 |

43:2 54:3 55:3
58:7 62:16
78:14 82:13
83:10 84:6
85:15,21
114:20,21
115:5 124:5,11
136:22 141:10
153:17 154:1
163:8 173:21
184:19 207:19
211:16 219:9
230:9,15 250:6
250:21 254:20
263:4 305:14
312:7
**main** 237:19
301:20 302:2,5
302:11
**majority**
239:18,21
240:4
**make** 20:2,5
24:13,17 25:16
35:6,11 39:16
43:17 51:13
55:4 56:2
58:19 62:19
63:7,19,20
66:20 72:5
73:14,15 90:4
102:8,9 103:2
104:14,15,18
108:11 112:19
118:4,7 122:12

125:10,10,16
128:20 137:13
159:22,22
160:3 163:16
164:1,6 165:22
167:20 170:4
171:18 174:3
178:4 186:8
194:4 205:18
205:19 206:15
209:6 215:16
217:12 218:19
219:13 226:22
227:20 228:15
238:2,4,10
241:19 281:10
292:2 298:4
301:21
**makes** 31:16
147:20 150:18
226:13 250:6
**making** 35:20
56:13 65:4,6
122:19 124:20
206:12 217:20
219:21 221:2
241:18 251:8,9
253:2,7 259:7
263:4
**man** 195:20
**management**
171:14
**managing** 7:1
8:14,21

**manner** 97:15
99:4 280:13
**march** 16:1,4
17:6,15,15
18:13 20:3
30:3 147:7
157:15 163:21
164:7 167:19
185:1 240:10
246:15
**marchetti** 2:13
**mark** 75:14
**marked** 4:14
16:8 75:15
103:8 119:7
129:1 139:7
146:7 164:20
201:2 214:12
244:7 259:15
260:13 284:14
299:20
**market** 2:4
**marriage**
182:10
**married** 12:14
**material**
196:11
**materials** 17:6
18:13,21
156:21 217:18
240:1,2 243:4
**math** 56:22
228:8,9 232:17
233:15,17
234:7,22 235:3

235:13 236:10
**matt** 2:13,15
**matter** 5:6 7:18
7:19 15:6,8,9
44:10 45:21
95:10,21
116:19 152:22
154:6,7 227:7
235:6 237:19
271:12 290:7
294:11 296:15
298:22
**matters** 7:20,21
7:21 15:5 93:5
99:10 116:10
163:6 300:12
**mcgill** 223:7
**mean** 24:4
81:16 89:13
116:8 125:5
129:17 137:1
141:4 154:21
184:20 185:2
186:5 187:13
196:4 213:19
215:8 225:13
227:15 234:4
234:18 262:5
264:9 266:10
270:16,18
287:4
**meaning** 62:2
226:14 230:6
**means** 96:20
283:15

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 352 of 386 PageID #: 4406

| | | | |
|---|---|---|---|
| **meant** 110:19 | **members** 104:2 | **meredith** 9:15 | 224:11 286:2 |
| 122:8,16 | 104:22 105:5 | **merritt** 3:4 | 291:11 |
| 163:18 270:4 | 106:6 125:2 | **message** 46:20 | **mine** 108:8 |
| 270:19 302:10 | 183:16 204:7 | 46:21 47:4,7,9 | 129:15 |
| **mechanism** | 205:4 207:21 | 47:11,12,18 | **minister** 60:21 |
| 216:10 | 210:11 276:7 | 116:11 129:9 | 61:1,5 62:15 |
| **media** 5:4 | 276:19 277:7,9 | 130:15 244:16 | 62:22 80:4 |
| 263:14,21 | **memorandum** | **messages** 94:7 | **ministries** |
| 264:4 266:21 | 163:20,20 | 294:10 | 155:5 |
| 267:4 274:12 | 166:11 | **messaging** 93:9 | **ministry** 32:14 |
| 288:4 | **memories** | **met** 14:2 104:8 | 225:22 231:7 |
| **meet** 99:15 | 194:8 | 118:14 120:8 | 231:11,20 |
| 187:1,4 | **memory** 60:10 | 179:5 184:22 | 233:7 234:14 |
| **meeting** 14:12 | 67:4 83:15 | 231:4 | 262:15 |
| 14:13,14,15,17 | 138:3 164:22 | **metadata** 121:6 | **mintz** 2:9 6:1 |
| 17:19 18:1,14 | 167:8,18 | 121:6 | **mintzandgol...** |
| 19:8,11 20:3 | 191:17 213:11 | **metes** 210:6 | 2:10 |
| 20:10 32:13 | 213:12 215:19 | **methodist** 7:19 | **minute** 28:12 |
| 59:2,22 62:19 | 220:13,13 | **methodology** | 61:16 123:9 |
| 176:16 180:22 | 225:9,11 226:2 | 96:21 98:5,6 | 134:22 146:15 |
| 181:9 230:1 | 249:4 270:13 | **metrics** 290:6 | 170:2 171:7 |
| 304:22 305:4,7 | 275:8 | **mid** 11:10 | 191:15,18 |
| **meetings** 14:8 | **men** 145:21 | **middle** 1:1 5:8 | 207:18 209:12 |
| 14:10,19 94:2 | 146:5 150:7,10 | 50:16 | 265:13 278:10 |
| 181:4,18,19,20 | **mention** 63:19 | **midwest** | 308:2,19 |
| 181:22 182:2 | 63:20 104:17 | 311:15 314:1 | **minutes** 76:1 |
| **member** 70:8 | 104:19 205:18 | **million** 235:17 | 146:18 246:13 |
| 105:12 207:11 | 238:9 | 237:13 | 291:11 |
| 208:11,14,22 | **mentioned** 38:4 | **millions** 84:6 | **mischaracteri...** |
| 209:8,15,21 | 51:11 163:5 | 84:15 85:6,6 | 63:10 102:11 |
| 211:12 268:9 | 221:2 | 193:3 205:21 | **mischaracteri...** |
| 268:11,12,18 | **mentioning** | 238:20 272:4 | 67:19 74:8 |
| 269:5,7 300:7 | 224:19 | 274:4 299:9 | 86:14 94:5 |
| 301:21 302:3,6 | **mentions** 236:4 | **mind** 45:20 | 123:20 124:13 |
| 302:13 | | 91:18 190:17 | 137:22 162:16 |

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 353 of 386 PageID #: 4407

194:17 196:12
235:9 266:5
267:11 272:7
274:6 276:22
277:17 299:13
**mischaracteri...**
237:16
**miscommuni...**
119:20
**mishandled**
210:17
**mishandling**
106:7 210:10
210:16
**misrepresent**
177:10,21
**misrepresented**
177:14
**missing** 115:21
121:9 122:17
122:20 126:3
281:4
**mission** 158:11
**missouri** 59:19
**misstated**
111:1 125:11
**mistake** 81:20
124:5 126:16
158:15 159:2
300:9
**mistaken** 112:3
**mistreatment**
106:8
**molested** 62:21

**molesters**
293:10 294:1
**moment** 59:9
128:5 217:7
266:3 270:1
**monday** 14:13
14:17
**money** 213:7
215:12 220:21
221:14,19
222:3 224:13
226:5,7 228:1
228:5 229:6,14
234:5 237:20
**months** 11:1
217:16,17
292:3,3,4
293:6
**morning** 5:2,18
6:14,15 14:13
47:2 48:3
242:22
**motion** 165:16
166:7 204:5
216:14,21
217:10
**motivated**
174:6,12,13
**motivation**
168:7 170:19
215:10
**motivations**
159:16 162:13
163:2

**move** 106:22
112:16,22
113:4,8,14,18
128:17 140:4
159:9 199:11
199:18 217:7
252:15 278:20
**moving** 112:18
215:8
**multiple** 48:20
48:22 63:1
171:10 287:4
**multiply** 234:4
**murray** 3:3
**music** 60:21
62:15,22 80:4
**myers** 98:22
99:1,11 285:1

**n**

**n** 2:1 4:1,1 5:1
156:1,1,1
**namb** 158:6,9
245:18
**name** 5:12 6:16
8:7 13:17
21:12 30:20
51:11 52:3,6
52:15,15 54:16
61:5 73:4,16
91:17 304:17
311:6 312:3,4
312:15 313:3,4
313:21
**named** 60:21

**names** 52:10
248:20,22
249:4,5 277:8
**naming** 51:1
**nashville** 1:2
2:14,22
**national** 264:7
264:17,18,22
266:12,12,13
266:13,21
**nature** 85:4
93:10 145:18
152:2 169:13
258:6,17
**nbc** 264:12
266:12
**near** 59:22 76:7
**necessarily**
151:22
**necessary**
307:14
**necklace**
190:15 191:1,2
191:6,14
193:16 195:12
195:21 196:1
196:10,15
**need** 48:21
50:17 60:17
61:6 66:5
70:12,15 71:17
91:12 111:10
123:15 148:19
171:7 194:20
203:21 229:18

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 354 of 386 PageID #: 4408

248:19 249:3
270:11 280:10
296:5 300:20
301:6
**needed** 70:22
71:7 296:7
**needs** 48:17,19
140:21 141:17
**negatively**
32:20
**neither** 164:22
215:17 310:10
**never** 32:19
74:15 94:21
95:1,3,5
124:15 144:22
163:9 199:3
218:14 221:8
256:12,20
257:2,9,19
258:9 306:16
**nevertheless**
109:19 299:8
**new** 2:10,10
10:6 90:6 91:7
92:10 268:1
291:15 292:4
293:2
**news** 158:12,17
264:7,13,15,17
264:18,22
266:12,13,13
266:13 267:4
283:10 290:13

**night** 108:19,22
109:4 143:1
192:5
**nightly** 264:12
**nine** 48:18,20
48:21 89:5,14
89:20,20,21
97:10,19
119:16,17,22
120:2 231:5
**non** 35:3
**nonconsensual**
26:2,6,15
202:8
**nonindepend...**
246:4
**normal** 290:3
**north** 9:8,9,16
12:22 54:22
158:11
**northwest** 1:21
5:11
**notarized**
311:13
**notary** 1:19
310:1,19
311:22 312:10
312:18 313:15
313:23 314:23
**notation** 65:4,7
**note** 19:17,19
58:14 74:14
141:11 164:20
311:11

**notepad** 20:2
**notes** 4:7,18
15:4,15,16
16:3,5,9,12,13
16:18 17:5,13
18:4 19:15,16
19:18,20,21,22
20:2 21:20
24:18 26:5,19
27:15 59:9,16
59:21 60:3
61:10 64:21
65:1,5,7,19,20
73:22 76:2,6
77:7 82:11
109:5 126:4,12
147:15,18,19
173:16 174:4
175:7,14,17
177:5 191:17
307:22 308:7
**notice** 135:2,2
135:19 136:8
159:5 218:20
279:9
**notwithstandi...**
153:18
**november** 8:14
9:4 291:20
292:15
**nuance** 131:17
**nuanced**
102:11
**number** 5:9
7:16 21:5,6,8

24:7 61:14
75:15 89:22
103:8 119:13
129:1 139:7
167:11 201:2
210:9,10
214:12 225:7
225:17 232:13
234:4 244:7
250:1 251:12
259:15 260:13
261:7 268:7
284:14 299:20
311:7,12
**numbers**
225:13 227:1
227:16 229:4
313:7
**numeral** 81:16
**nw** 1:15

**o**

**o** 4:1 5:1 55:11
156:1,1,1
**oath** 54:3 93:14
**object** 31:18
35:2 230:8
244:5 281:15
**objection** 19:2
23:11,21 25:3
28:18 29:3,18
33:9,13 34:6
37:3 38:22
39:4 41:9 43:8
44:3,15 45:3
45:16 46:10

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 355 of 386 PageID #: 4409

| | | | |
|---|---|---|---|
| 48:7 53:20 | 151:1,15 | 253:17 255:6 | **obligation** |
| 56:17 57:10 | 152:18 153:12 | 255:18 256:15 | 238:9 |
| 58:8 59:3 62:8 | 153:21 160:10 | 257:4,22 | **observations** |
| 63:9 65:15 | 160:19 162:15 | 258:12 262:18 | 194:8 |
| 67:19,22 69:3 | 164:11 169:19 | 263:7,18 | **obviate** 33:13 |
| 70:18 73:6 | 170:7 174:10 | 264:19 265:8 | **occasions** 97:6 |
| 74:7,17 75:6 | 177:16 178:6 | 266:5,17 | **occurred** 22:16 |
| 82:20 83:5,14 | 180:15 182:21 | 267:11 268:4 | 23:3,9 24:16 |
| 84:7,22 85:8 | 183:4 184:5 | 268:14,20 | 27:4 29:17 |
| 86:13,22 87:10 | 185:14 186:13 | 270:6 272:7,15 | 144:5 153:9 |
| 88:3 89:7 | 187:11 188:6 | 273:7,13 274:6 | 175:8 182:6 |
| 90:19 93:18 | 189:6,14 | 274:14 275:1,7 | 189:17 197:21 |
| 94:4 95:11 | 190:18 191:3 | 275:10 276:22 | 276:20 305:1 |
| 96:14 98:17 | 191:22 193:6 | 277:17 279:20 | **october** 90:15 |
| 99:20 100:13 | 193:11,17 | 280:15 282:18 | 92:12 |
| 101:18 103:18 | 194:6,14,17 | 283:7,22 284:9 | **offended** 13:19 |
| 105:20 110:9 | 196:5,12 198:6 | 285:18 286:15 | **offhand** 177:6 |
| 111:20 112:2 | 198:11,16 | 288:9 291:7,16 | **office** 11:4,8,10 |
| 113:9,22 | 199:9,16 | 292:12 294:5 | 182:8 |
| 114:15 116:1 | 202:15 203:1,8 | 294:15 296:19 | **officer** 188:16 |
| 118:16,22 | 204:22 205:22 | 297:12,22 | 310:2 |
| 119:19 120:10 | 206:19 207:6 | 298:13,18 | **official** 312:15 |
| 122:4 123:4,20 | 209:18 210:18 | 299:13 302:7 | 313:21 |
| 124:13 127:4 | 211:9 220:1 | 303:7,17 304:1 | **offline** 128:18 |
| 127:16 128:2 | 222:17 225:1 | 307:10 308:11 | **ohio** 311:2 |
| 130:17 132:1 | 226:20 227:11 | **objections** | **okay** 8:6,11 |
| 132:14,17 | 228:3,19 232:2 | 194:20 | 14:1 17:13 |
| 133:6 134:5,17 | 233:2,21 | **objective** 124:6 | 24:9 27:12 |
| 135:4,22 | 234:10 235:19 | 201:18 | 34:10,12 35:5 |
| 136:20 137:22 | 236:19 237:4,4 | **objectively** | 35:14,18 36:12 |
| 140:2,10 141:1 | 237:15 240:6 | 132:12 | 37:7 38:2,11 |
| 142:3 143:16 | 240:18 241:4 | **objectivity** | 42:12 47:19 |
| 144:2 145:3 | 241:21 242:7 | 133:5 | 50:20 51:13 |
| 146:6 148:11 | 242:21 243:7 | **obligates** | 54:11 56:11 |
| 148:22 149:18 | 244:2 248:16 | 295:16 | 57:2,21 60:8 |

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 356 of 386 PageID #: 4410

65:8 68:11
69:19,22 78:6
81:21 82:5
85:14 88:7,20
90:13 91:4,9
91:10,20,20
92:3,9,22
93:22 94:9
106:11,22
109:10 112:9
126:17 127:22
128:1,20 132:9
135:17 138:11
138:20 139:5
141:8 142:20
144:16 151:7
151:22 155:2
157:14 160:6
162:10 164:6
165:11 167:9
171:18 189:3
192:19 194:4
194:11 199:7
218:21 219:3
221:12 224:3,9
224:10 227:19
228:8 229:15
235:4 236:14
238:2 239:10
239:12 244:19
246:21 247:14
248:13,21
249:19 250:4
256:3 258:19
261:1,12

264:11 265:22
286:1 287:16
288:19 290:12
291:4 295:9
304:11
**old** 267:7 268:2
**once** 19:8 86:11
108:12 135:15
135:20 136:6
218:5 230:5
252:20 287:13
289:17 291:13
301:8
**ones** 7:17
190:14
**ongoing** 211:13
**op** 4:12 262:13
**open** 31:9
71:14
**opened** 31:12
157:22
**operating**
188:16
**opinion** 132:20
**opinions**
152:22
**opportunity**
31:19 216:10
216:13 230:5
**oppose** 219:4
**opposite** 196:2
**options** 146:12
**order** 62:7
110:22 117:12
165:17,18,19

165:20 166:4,6
167:1 216:11
218:17 229:19
282:12
**ordered** 165:16
**orders** 265:4
**ordinary** 16:18
71:5
**organization**
101:16 290:21
**organizations**
289:11
**originally**
260:20
**otchy** 2:8 5:22
13:19,21 14:9
**ourself** 292:18
**outcome**
310:16
**outset** 289:20
**outside** 70:11
105:4 212:10
219:8
**own** 15:19 24:5
24:18 26:12
27:3,14 28:5
34:4 44:22
58:22 65:20
79:14 89:1
122:18 134:16
140:8,13 149:7
149:15 157:7
163:20 169:7
185:13 190:16
213:10,12

216:14 222:13
222:20 224:12
232:18 236:7
237:9 272:12
274:21 279:8
297:9

## p

**p** 2:1,1 5:1
**p.m.** 129:10
130:10 139:11
141:9 155:15
156:2,4 246:8
246:11 302:17
302:20 308:21
309:2,7,8
**pad** 19:17,19
**page** 4:2 21:5,6
21:8,10 31:10
31:12,15 32:4
36:15 38:9,9
41:14 66:1
67:12 69:14,22
71:11,12,14,15
75:4,18,19
77:8,8,14,17,22
78:5,21 147:5
147:21 149:8
149:11 153:3
153:11,20
157:14,22
183:14 205:6
223:3,10
225:18 231:18
232:7 249:16
249:20 250:4,5

252:17 311:12
311:14 313:7
314:3
**pages** 78:19
154:21 217:14
240:3,4
**panama** 181:11
**pants** 185:6
**paper** 76:1
148:15,17
227:15
**papers** 37:19
**paragraph**
71:22 72:4,19
73:13 74:6
75:4 77:5 87:3
118:5,5,6
225:17 301:19
**paragraphs**
118:11,12
119:14,18
120:2
**pardon** 49:17
82:2 137:8
**part** 15:11,15
26:4,14 28:21
30:12 34:3
43:11,15 44:14
52:9 58:22
69:17 73:14
78:7,8,9 79:5
82:6 85:18,19
102:4 103:3
137:19 141:14
149:3 153:6

160:5 163:13
164:14 169:14
169:15 184:19
186:2 203:22
205:8,12,17
207:11 221:16
223:17 246:16
251:16 253:21
260:21 261:10
269:17 273:18
274:10 276:4
279:8 283:18
285:7 297:20
313:9
**partial** 272:19
273:12
**participate**
37:9,13 103:3
267:3
**participated**
37:14
**particular**
35:15 41:7
68:16 72:14
73:16 76:22
87:8 113:2
135:20 140:21
145:9 147:15
185:17 186:8
**particularly**
283:16
**parties** 117:9
170:3 310:11
310:14

**parts** 127:10
171:10 241:10
**party** 96:20
174:14 288:16
**pass** 306:19
**passing** 214:20
**past** 8:9 76:16
208:18 209:3
**pastor** 5:19
13:6 22:4 28:1
30:17 32:12
33:7,18 34:1
36:17 38:7
43:3,7 49:18
50:2,6 51:2,4
51:15,18,21
52:3,6 53:1,18
54:5,14,20
55:4,5,6 56:4,6
56:14 57:3,4,6
57:8,12,16,17
58:12 59:1,10
59:13 60:10,18
62:11,20 63:6
63:14,18,20
64:3,11,15,17
64:18 65:1,3
65:12 66:3,16
67:1,7,16 68:3
68:10,12,15,17
69:7,8,16 72:6
72:15,16,20
73:1,5,16,20
74:1,11,15,20
78:9,15,22

80:10,15,21
81:7 82:17,19
83:2,12,19,22
84:1 86:11,19
86:20 87:2,8
87:21 88:1
94:16,21 104:5
109:13 116:18
117:1 118:13
118:14 120:4,9
134:15 146:17
154:13,18
155:4,11
156:16 157:4,8
159:20 161:14
162:5,22 163:3
165:5 166:10
166:14 167:6
171:22 172:3
173:1,10 174:8
174:20 175:9
175:16,20
176:11 177:1
177:10,14,19
178:16 180:22
181:21 182:17
184:1 200:1
201:21 204:10
204:13 207:15
207:20 208:14
208:22 209:7
211:6 214:7,21
215:13 219:17
220:9,22 226:5
228:1,16

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 358 of 386 PageID #: 4412

229:15 238:21
245:7 247:8,12
247:13 250:10
250:13,17,21
251:4,14,15,16
252:2,11 253:1
253:6 256:14
267:8 294:3
303:2,13 307:6
307:18 308:4
**pastor's** 33:6
33:18 34:1
36:17 38:6
73:20 74:10
83:4 262:14
**pastoral** 247:10
**pastors** 247:6
247:14
**patrick** 2:3
5:19 92:6
**pause** 28:11
**pc** 2:4
**pca** 7:20
**peace** 159:22
159:22
**peacemaking**
4:10
**pending** 166:7
**people** 48:22
76:9 84:6,15
84:18 85:7,11
106:17 124:3,4
132:12 135:8
175:3 193:3
203:19 205:21

248:12 266:1
266:21,22,22
267:2,6,14,15
267:18 272:4
274:4 284:21
287:11 292:17
299:9
**perform** 289:2
**period** 69:9
179:12 207:20
207:21 208:2
208:15 226:16
226:19 227:7
228:14 229:2
237:3
**periodically**
92:2
**person** 17:16
44:7 48:15
57:22 91:17
105:10,18
109:20 133:1
134:11,11
150:22 153:7
154:3 172:1
179:6 200:21
227:8 237:12
239:14 268:1
272:2
**personal** 44:16
130:17 141:1
148:11 151:2
151:16 152:19
153:22 233:3
233:22 257:5

276:17 283:7
283:11 292:13
302:8
**personally**
40:10 184:22
312:11 313:15
**pertaining**
15:22 21:3
49:19 68:5
79:1 93:6 94:1
109:13 116:19
204:13 285:17
**phone** 93:11
95:17 96:5
140:20 175:2,4
287:14,14,19
311:3
**phones** 287:20
**photocopied**
15:14
**phrase** 25:8
186:7 286:2
**pics** 245:19
**piece** 148:14
154:7 221:20
**pieces** 273:20
**pietsch** 2:13
**pigue** 2:13
**pitman** 62:16
**place** 24:1
59:18 60:1
166:4 195:12
211:19 305:9
**placed** 147:15
154:12 156:16

191:1,13
193:16 195:21
196:16 246:1
**places** 187:14
192:8
**plaintiff** 1:4 2:2
4:3 5:6,19 6:12
156:10
**plaintiff's** 4:15
304:21
**planning** 171:8
173:7 236:15
**please** 5:16 6:7
6:17 21:4,7
27:16 34:12
37:21 38:1
42:7 50:20
55:10 58:12,22
59:9 66:13
73:9 84:10
86:15 96:9
109:10 110:4,8
110:14,15
111:2 113:11
113:19 133:9
136:3 153:14
162:17 176:6
206:2,21
212:18 220:17
225:17 256:18
272:15 275:14
281:15 311:10
311:10
**pllc** 2:13,17

| | | | |
|---|---|---|---|
| **plus** 29:15 | **position** 52:20 | **prca** 7:21 | **president** 77:12 |
| 30:19 231:22 | 100:10 | **preaching** | 77:20 78:11 |
| 236:5 | **positions** 53:9 | 245:17 | 158:6 208:17 |
| **point** 30:13 | 212:6 222:8 | **precise** 66:21 | 208:18 209:4,4 |
| 32:3 33:14 | **possessive** | 255:13 | 211:18 |
| 35:13 46:17 | 149:16 | **prejudiced** | **press** 79:4 |
| 47:3,21 51:8 | **possibility** | 216:22 217:3,9 | 262:16 263:17 |
| 52:11 77:14 | 154:15 174:2 | 217:17,22 | 287:1,4,7 |
| 101:14 102:2,2 | 282:11 | 219:6 | 288:1,7 |
| 102:15 104:2 | **possible** 236:21 | **prep** 13:11 | **pretty** 52:22 |
| 104:22 112:15 | 237:6 | **preparation** | 53:3,5,17 54:4 |
| 115:18 121:15 | **post** 79:12 80:2 | 60:4 | 54:11 56:3 |
| 122:18 124:2 | 245:18 | **prepare** 13:9 | 65:11,11 83:11 |
| 125:16 127:8 | **postgraduate** | 14:3,6 | 83:16,21 84:4 |
| 142:13 143:11 | 9:22 | **prepared** 16:10 | 84:15 85:19 |
| 152:5 167:15 | **poston** 2:14 | 16:22 20:19 | 87:20 185:18 |
| 176:18 180:4 | **potential** | 30:11 104:8 | 245:16 |
| 200:12 203:18 | 200:16,18 | 214:7,21 | **prevented** |
| 210:9,10 | 201:7,19 202:3 | 240:13,21 | 218:11 |
| 260:19 274:1 | 235:8 | **preparing** | **previously** 4:14 |
| 281:4,17 | **potentially** | 16:13 37:13 | 156:8 |
| 291:17 293:4 | 138:13 190:6,9 | **prerogative** | **primarily** 7:9 |
| **pointed** 22:5 | 195:16 201:10 | 216:15 | 49:22 240:17 |
| **points** 152:21 | 241:12 | **presbyterian** | **principal** 99:6 |
| 154:5 | **power** 282:2 | 7:20,22 | **prior** 42:15 |
| **police** 89:18 | **practice** 7:2,5,6 | **presence** | 81:5 90:8,17 |
| **politely** 199:11 | 7:7,8 9:8,12 | 212:10 219:8 | 91:8 101:6 |
| **political** 9:20 | 11:13,15,18,20 | **present** 3:2 | 102:2,15 107:3 |
| **portion** 28:13 | 11:21 182:9 | 22:15 23:2,8 | 111:6 112:18 |
| 77:18 78:13,21 | **practiced** | 216:21 223:7 | 133:3 137:7 |
| 80:2 104:20 | 237:10 | **presented** | 144:11 149:11 |
| 204:11 278:17 | **practicing** 70:5 | 152:21 | 149:13 153:9 |
| **portions** 31:20 | 70:6,7 232:11 | **presidency** | 156:21 157:2,9 |
| 71:17 132:4 | 296:22 | 79:12 80:2 | 158:16 160:7 |
| | | | 161:4,17 162:4 |

Case 3:23-cv-00243    Document 219-7    Filed 07/03/24    Page 360 of 386 PageID #: 4414

163:11 168:14
169:10 170:6
170:16 171:21
215:6 221:9
269:6
**private** 182:9
217:8
**privilege**
166:20 180:8
**privy** 289:14
**probably** 93:11
172:10 175:6
**problem**
132:11 146:16
280:18
**problems** 148:5
148:9,15,21
149:7 152:6
**procedural**
91:22
**procedure**
312:5 313:5
**proceed** 10:15
88:13 156:4
229:22 246:11
302:20 309:2
**proceedings**
218:2
**process** 17:14
160:7
**produce** 173:8
217:16
**produced**
217:14,15
261:7,9,10

**production**
217:13 311:14
311:15,20
**professional**
278:17 296:5
**professionally**
199:18
**progressing**
19:8,11
**prohibit** 166:10
**prohibition**
145:12
**prong** 106:5,15
268:8
**proof** 128:20
**proper** 31:21
193:12,14
194:9
**properly** 195:3
287:14
**proposal** 4:10
**proposed**
109:12,16
131:6 140:15
**proprietor**
237:11
**prosecutor**
187:3
**prosecutor's**
182:8
**prospect**
276:20
**protect** 102:8
**protection**
165:20

**protective** 62:7
216:11
**protestia** 4:12
262:7
**protestia.com.**
262:6
**provide** 38:15
47:13 76:1
91:17 121:18
137:11,14
142:1 174:14
279:8
**provided** 16:15
17:6 38:14
40:9 47:5 87:2
101:7 102:5
131:3 134:1
142:9 190:2
219:10 231:14
241:14 252:9
278:22
**providing**
37:14 101:9,16
136:18 137:4
214:6 287:10
296:16
**psychology**
9:21
**public** 7:17
61:12 62:17
84:6 85:16,21
264:16 299:9
310:1,19
312:10,18
313:15,23

314:23
**publication**
45:12 85:5
101:6 107:3,5
111:6 113:7
133:3 149:12
149:14 156:22
157:3,10
158:16 160:8
161:5,18
168:14 169:10
169:14 170:6
170:17 215:7
259:10 269:20
275:6 292:3
293:6
**publications**
13:6
**publicly** 249:1
**publish** 275:18
276:3,5
**published** 45:9
66:20 84:20
85:12 102:16
109:15 159:14
163:12 262:4
266:4 276:9,13
289:9 290:15
291:14,19,22
299:9
**publishing**
84:14,17
275:22 276:21
**pulling** 185:5,7

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 361 of 386 PageID #: 4415

**punished** 274:4
**purposes**
185:13
**pursuant** 98:15
**pursue** 9:22
**push** 152:6
**put** 15:16 21:11
36:8,13 74:5,9
75:21 97:1
102:6 114:2
130:5,7 135:1
135:2,19 136:8
146:13 168:2,4
190:15 191:16
195:22 198:11
230:20 283:2
**putting** 218:8
218:20 219:5

**q**

**quest** 32:13
**question** 19:4
31:21 35:3,3,7
38:5 39:18
43:5 45:4
50:13,18 52:3
58:16 60:15
63:12 66:13
68:22 69:6
71:16 73:8,12
75:8 80:13,14
80:17 81:4
82:16,22 84:10
86:15 91:12,14
92:6,13,17
93:19 96:9

97:14 103:14
105:9,17 106:1
108:12 112:20
113:11 114:1
114:16 118:5
119:5,21 120:8
123:5,14 125:6
125:14,22
127:18 133:9
134:17 136:1,3
138:20 140:3
153:14 156:19
161:9 162:17
170:15,22
171:9 177:8
178:8 180:18
186:13 188:6
189:8,20
193:11,12,14
194:9 195:4
198:8 199:10
199:17 201:17
202:15 204:1
206:3,21
209:20 212:16
212:18 213:12
213:14 216:19
218:14,16
220:14,17
232:3 235:14
239:13 241:7
242:1 256:17
271:8 275:13
275:14 278:5
280:17 288:5

300:3 303:11
**questioning**
156:17 159:6
**questions** 60:14
73:19 74:10
77:11,19 78:1
78:2,10,15,18
79:5,8 91:19
102:20 111:7
113:21 119:3
122:14 138:14
156:14 167:13
192:1 199:20
206:20 215:19
217:5 219:7
222:18 224:7
230:2 270:12
302:22 304:14
306:20 307:4,7
307:13,14
308:1,3 309:4
**quick** 108:11
**quickly** 200:22
**quiet** 194:20
**quotation** 38:6
**quote** 41:14
53:17 118:19
273:18 307:7
**quotes** 270:9
**quoting** 215:18

**r**

**r** 2:1,20 5:1
55:11 156:1
**raise** 49:11
63:2 122:21

123:10,14
171:6
**raised** 63:3
**raleigh** 9:15
12:22 19:9
**rapport** 48:10
**rather** 201:1
**reach** 85:6,12
124:3 125:17
136:7 239:17
**reached** 239:15
**reaction** 131:10
132:16 162:21
**reactions**
162:12
**read** 26:12
27:16 31:19
50:13,17,20
69:13 119:1
122:18 134:16
139:9 146:8,14
147:10,12
148:4 149:13
149:20 150:2,4
150:6,8 156:21
157:2,7,9,12
158:16 162:4
165:1 167:7
168:4,16
181:17 200:11
203:6,21,22
205:6 212:8,9
217:1 222:13
222:14 223:18
224:12,15

225:4,5,14,16
225:17,18,19
225:20,21
227:3,14
228:10 229:4
232:11 237:9
262:5 272:15
272:18 278:15
278:16,16,18
279:5 281:1,3
282:16 294:7
302:10 312:5,6
312:12 313:5,6
313:17
**reader** 201:18
202:1,1
**readers** 73:3
259:12 269:22
**reading** 102:21
146:6,10,12,13
159:4 167:12
213:10 215:17
221:3 251:16
292:8 311:17
**reads** 141:10
**real** 286:9
**reality** 74:13
86:17,21
232:20 255:1
296:4
**realize** 144:21
178:1
**really** 35:21
41:1 141:10
192:19

**realm** 105:4
**reask** 133:9
171:9 180:17
**reason** 22:22
25:15 52:16
132:10 199:13
274:2 276:8
311:13 313:8
314:3
**reasonable**
132:22 134:10
134:11 179:6
**reasons** 160:2
276:16
**recall** 17:12
27:8 37:15
40:16 47:17,18
48:1 55:21
60:14 62:18
63:3 76:15
89:20,22 90:21
91:2 99:14
100:7 101:5,9
133:19 137:17
137:18,19
138:2,6,10
143:9 144:14
146:2,3 156:15
156:19 157:11
157:11 176:4
176:22 177:4,6
183:9,16 191:5
191:15 195:14
196:14 213:17
214:9 221:1,2

221:20 222:7
223:1 225:2,12
225:13 248:5
259:14 265:10
277:13 285:22
285:22 286:16
286:17 287:3,6
287:18,21
288:3,5,11
**recalling**
107:22
**recalls** 225:4
**receipt** 311:16
**receive** 38:19
259:20
**received** 9:20
39:12,13
106:13 114:13
114:20,22,22
129:22 131:5
133:13 135:15
135:21 136:6
215:9 220:20
239:2 260:19
274:11 283:18
289:10
**receiving** 221:1
**recess** 10:13
88:11 155:16
246:9 302:18
308:22
**recited** 30:12
**recognize**
15:19 147:5
262:2

**recognized**
64:3 80:10
**recollect** 277:8
**recollection**
137:20 141:6
142:19 154:22
155:6,9 175:13
192:22 224:17
225:5,14 226:6
275:21 287:16
307:22 308:3
**recollections**
20:15 173:16
**recomendatio...**
4:9
**recommend**
213:6 291:5
**recommendat...**
82:9
**recommendat...**
81:11,12
213:18,19,21
214:1,2
**recompense**
160:4 163:16
164:1 168:9,22
169:4,18
170:19 171:13
**reconciliation**
221:4
**record** 5:3,17
6:17 10:11,15
17:1 56:17
81:19 88:9,12
146:8 155:14

Veritext Legal Solutions
www.veritext.com                                                                    888-391-3376
Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 363 of 386 PageID #: 4417

156:4 166:1
172:22 173:3,4
173:12,12
212:7 216:9
217:12 219:5,9
224:5 230:15
246:7 302:16
302:20 308:21
309:2,6 310:9
313:9
**recorded** 5:4
30:21 246:11
**recording**
64:20 65:1
173:6 174:8
**records** 295:22
299:10
**recovering**
226:4
**recovery**
167:21
**red** 114:13,22
115:2
**redepose** 216:3
**redline** 114:7
**redlined** 4:8
**reduced** 310:7
**ref** 224:2
**refer** 21:1,2,22
22:2,12 24:7
50:3 71:21
158:9 162:3
183:6 195:4
270:9

**reference** 21:17
24:2,17 25:16
26:3,4,15 27:7
31:10,16 32:6
32:9 38:7
47:22 55:4
62:19 63:7
72:5 73:14,15
78:14 80:13
82:13 89:10
118:7,12
122:19 160:12
165:1 170:4,17
171:11 180:1
183:19,22
186:2,3,8
188:4,8 206:17
223:8 225:21
226:13 238:4
241:17,19
250:7 251:8,9
252:1,16
270:15 294:1
303:15 311:7
312:2 313:2
**referenced**
66:16 72:4
78:8 156:20
193:2 224:13
251:22 261:11
312:11 313:15
**references**
69:18 169:17
249:8,17

**referencing**
64:4,6 160:21
161:8 232:13
260:22
**referred** 241:2
283:11
**referring** 27:21
53:6 94:6
111:14,15,19
112:6,9 114:9
115:16 126:7
161:21 212:15
244:17 249:22
260:6,8 301:13
**reflect** 56:18
**reflected** 20:16
**reflects** 129:9
**reform** 7:22
267:17 290:19
**refresh** 164:21
167:8 175:12
191:17 220:12
225:5 226:2
249:4
**refreshed** 67:5
167:18 225:9
225:10
**refreshes**
220:13 226:6
**refreshing**
215:19 270:13
**refuse** 167:6
**refused** 217:16
218:15 230:21

**refusing** 219:16
**regard** 145:7
170:8 194:9
299:7
**regarded**
109:20
**regarding**
39:17 44:18
167:12 290:13
**regardless**
166:9
**regularly** 137:2
**rehobeh** 55:18
55:19 56:6
**rehobet** 55:12
55:13
**rehobeth** 50:3
51:19 55:8
57:18 60:11,19
62:13 63:7,16
63:18 64:2,17
80:3,9,16
**related** 15:5
49:22 51:6
222:8 277:15
291:3 310:11
**relation** 202:21
263:14 286:6
**relationship**
22:16 23:3,9
24:16,22 25:8
25:14,19,21
26:16 41:18
48:6 52:19
53:8 211:13

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 364 of 386 PageID #: 4418

| relationships | remembering | 65:22 66:5,9 | 174:16 175:1 |
|---|---|---|---|
| 70:11 179:12 | 99:22 | 66:11,15,20 | 177:9,11 178:4 |
| **relative** 310:13 | **remembers** | 69:11,12,13,14 | 178:22 179:19 |
| **release** 274:21 | 65:3 74:2 | 69:18,22 71:18 | 181:15,16,17 |
| **relied** 173:15 | 80:22 | 72:11,12,17,18 | 182:14,20 |
| 187:21 231:17 | **remind** 30:9 | 73:4 74:9 75:9 | 183:3,19,22 |
| 253:14 254:2,5 | 36:3 92:7 | 84:5 85:15,20 | 184:4,13 186:4 |
| 254:9,13 | 108:18 164:17 | 86:5,5 87:3,19 | 186:6 188:19 |
| **religious** 289:5 | **remotely** 13:1 | 93:16 94:3,11 | 193:2 198:12 |
| 289:11,19 | **remove** 270:12 | 96:1,13 97:1 | 198:15,15,19 |
| **rely** 187:18 | **removed** 191:1 | 101:7 102:3,15 | 199:4,8 200:11 |
| 254:18,20 | **rendition** 29:17 | 103:16 104:21 | 205:9,20 |
| **relying** 272:2 | **repeat** 23:5 | 107:4 109:14 | 207:19 209:12 |
| **remain** 62:6 | 25:20 31:3 | 111:7 112:14 | 213:22 215:7 |
| **remember** | 64:12 85:6 | 113:8 114:14 | 238:5,11,12,16 |
| 13:17 41:1,20 | 86:15 96:9 | 115:15 117:5 | 240:11 241:16 |
| 53:11 60:17 | 122:1 125:5 | 121:21 123:2 | 241:18,20 |
| 64:4,6,13,15,20 | 130:8 200:7 | 123:18 127:9 | 242:5,15 243:5 |
| 64:22 65:2,4,6 | 206:21 209:6 | 127:10 131:21 | 243:16,19 |
| 66:3,8,10,12,14 | 289:7 299:2 | 131:21 132:4,7 | 246:22,22 |
| 74:1 76:19 | **repeated** 30:16 | 133:4 138:8 | 248:4,5 249:7 |
| 77:2 80:21 | 97:6 250:12 | 140:14 145:8 | 249:8,13 250:5 |
| 83:12 89:11 | **repeatedly** 92:5 | 147:5 149:12 | 250:20,22 |
| 92:3,9,20 | 218:16 | 149:14,20 | 251:8 252:10 |
| 100:2,4 116:6 | **report** 4:16 | 153:11 154:8 | 253:7,9 254:16 |
| 116:7 124:20 | 22:14 23:19 | 156:22 157:3 | 256:11 258:20 |
| 127:6 139:5 | 24:13 25:15 | 157:10,15,16 | 258:22 259:2 |
| 142:8 154:14 | 27:14 31:4,6 | 158:12,14,15 | 259:11,11 |
| 156:17 172:1,8 | 31:15 32:10 | 158:16,22 | 263:15,21 |
| 175:14 177:3 | 33:5,21,22 | 159:14 160:8 | 264:7,17 265:7 |
| 193:18,19 | 34:22 35:14 | 161:5,18 162:5 | 266:3,20 |
| 201:11 221:3 | 36:14,15,19 | 163:11,19 | 269:21,21 |
| 238:15 242:20 | 37:1 38:8 | 168:14 169:8 | 272:3,14 273:4 |
| 246:17 290:15 | 41:13,21 42:16 | 169:11,15 | 274:3,21 275:6 |
| 296:2 | 45:9 49:22 | 170:6,17 | 275:18,22 |

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 365 of 386 PageID #: 4419

276:3,5,9,13,21
277:16 278:1
284:5 286:6
288:8 289:9
290:15 291:4,6
291:13,13,19
291:22 292:4
293:7,9,17
294:2 295:19
295:21 296:9
297:3,5,15,20
299:12,15
302:5 303:3,6
303:16 304:9
306:2
**reported** 1:19
20:21 24:14
25:16 26:13
44:2 52:10
163:19 178:22
181:18 252:19
254:6,9 257:19
257:19 258:21
258:22 271:7
272:4 302:12
**reporter** 1:19
5:14 6:6 254:6
312:7
**reporters**
106:13 229:13
**reporting** 84:4
124:6 132:12
252:11
**reports** 43:18
153:2,17

185:13 253:15
308:18
**represent**
29:16 30:19
166:1 177:18
304:18
**representation**
71:8
**representative**
207:16
**represented**
32:21 45:12
190:3
**representing**
5:12,19,21
13:15 95:16,17
104:9
**request** 95:1,3
114:20 167:1
222:1 223:12
223:15 313:9
313:11
**requested** 47:6
95:6
**requesting**
229:5
**requests** 39:16
**required**
296:11 298:6
298:15 299:3
311:22
**requirement**
297:19
**requirements**
91:22 296:18

**requires**
188:21
**res** 177:13
**reservations**
26:22 27:6
36:5,12
**resignation**
68:10,14 69:1
83:4
**resignations**
276:12,15,19
277:4,15,22
278:9
**resigned** 50:3
51:2 57:13,18
72:7 74:20
276:8 277:7,9
277:12 286:10
286:18
**resistance**
106:9
**respect** 12:9
16:12 18:12
41:3 43:1
63:16 64:9
68:8 72:21
82:16 97:15
101:12 102:8
115:13 122:13
126:1 132:9
159:13 169:13
170:3,15,22
173:10 182:16
196:10,11
197:19 210:15

218:13 223:17
240:10 273:11
279:6,12
293:21 295:9
303:1
**respects** 20:20
38:13
**respond** 116:12
**responded**
126:3 142:20
244:22 245:14
280:4,8 301:5
**response** 12:4
**responses** 4:15
**responsibility**
221:6
**restate** 33:12
43:5 54:2
63:11 73:8,12
114:19 118:4
125:8 153:14
162:2 198:10
206:2 256:17
**result** 274:16
289:15
**results** 264:6
286:22 287:4
288:1
**resume** 218:5
**resurfaced**
158:21
**retaliation**
106:8
**return** 230:5

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 366 of 386 PageID #: 4420

**returned**
311:16
**reveal** 105:11
220:3 249:3
**revealed** 61:5,9
249:1
**revealing**
104:16 249:5
**review** 15:13
45:6 60:3
71:17 79:11
102:17 109:21
110:1,4,4,8,15
111:2 138:12
142:11 149:10
201:6 311:11
312:1 313:1
**reviewed** 13:12
14:5,22 15:1,3
15:12 40:1
83:2 116:16,17
127:2 246:15
256:4
**reviewing**
76:17
**rewrite** 4:8
132:7
**rewrote** 131:21
**rhodes** 1:19
5:14 310:2,18
**right** 6:19
10:18 12:9,20
13:21 14:3
16:1 17:3,17
18:2,14,15

19:1 20:10,17
20:19 22:8
24:7 26:16
28:2,8 29:2
30:7,22 35:20
36:19 37:2,17
38:17 42:13,20
43:4,19 44:2
45:2,9,15 46:8
49:12,20 50:13
52:1,3 53:19
54:7,9,19 55:9
56:7 57:4
59:19 61:19
62:10 65:14
67:2,18 69:2
69:16 70:5,8
70:17 71:2,5,9
71:11,20 73:1
73:21 74:3,16
74:22 77:20
78:2,3,11,16,19
79:9,15,18
80:5,11 81:5,5
81:9 82:4,6,9
82:14,19 84:21
85:7,16 86:9
86:12 87:5,9
88:2 89:3 90:3
92:7 93:13,17
94:22 98:7
99:13,19
103:17 107:2,4
107:10,13,21
110:5,8 111:2

111:7 113:21
114:21 115:15
115:22 118:8
120:4,6,9
121:13,17,19
121:21 126:21
128:11 129:21
129:22 130:10
131:20,22
132:13 139:14
139:17,19,20
140:1,7,9,17,22
141:19 142:21
144:18 147:16
147:21 148:19
148:21 150:22
151:14 152:3
154:17 158:21
159:8,13 160:3
160:9 161:6,15
161:20 162:7
162:14 163:8
163:14,16,22
164:1,6,10
166:3,10,15,18
166:21 167:4
167:17,21
168:1,9 169:6
169:8,18
170:14 173:17
173:22 174:9
175:20 176:2
176:10,12,14
176:15 177:6
178:5,12 179:8

184:12 188:17
189:1 190:13
191:9,15 194:1
194:13 196:20
197:11,16,21
198:5,12,15
199:15 202:13
202:14,22
203:7,10
204:13 205:8
206:5,17 208:6
210:2 216:12
217:19 218:9
218:18 219:18
219:22 220:9
220:22 221:15
221:19,21
222:10,16,21
222:22 223:3
224:14 225:7
225:22 226:9
226:14,18,19
227:10 228:14
234:9,13,16
235:8,18 236:9
236:18 237:3,8
237:14 239:6
240:2,5,11
242:16 243:16
245:4,11
246:19 247:3,6
247:17 248:10
248:15 249:2
249:11,14,20
250:4,7,10,13

250:16,22
251:2,7,11,19
252:12,21
253:6,11,13,16
254:5,7,11,21
255:1,5 256:7
256:9 257:12
257:21 260:11
261:14 263:6
264:8,18 265:7
267:21 268:3
268:19 269:2
272:6 273:1,12
273:21 274:5
274:18,22
276:6,18 278:1
278:10 279:2
279:15 280:14
286:11,20
287:9,15
291:15 292:1,5
292:11 293:11
293:15 295:3,7
297:7,11,21
298:7 299:12
304:6 305:10
305:15 306:4
**ring** 262:8
**rob** 5:18 35:7
50:10 81:16
87:16 89:14
91:14 92:14
104:15 108:9
108:12 118:18
128:17 146:12

159:2 160:20
160:22 164:19
195:3 199:11
199:18 212:3
215:15 216:6,9
216:10 219:9
220:2 223:11
225:10 278:15
281:4,15
291:17
**rob's** 275:13
**robert** 2:3 61:2
**robert.macgill**
2:6
**role** 6:22 8:20
8:20 16:22
43:15 45:20
122:13 202:10
239:11 240:16
246:14 248:11
266:1 300:9
**roman** 77:10
77:17,22 78:5
78:6 79:1,12
81:11,14,16,17
82:2,3,8
**room** 58:21
70:3 95:15
96:4 146:14,18
159:9 215:22
217:8 223:9
230:10 278:20
**roughly** 215:8
**roy** 22:15,17,19
22:21 23:2,7

24:14 79:21
181:5,21 248:3
**rpt** 4:13
**rule** 217:19
**rules** 219:1
312:5 313:5
**ruling** 216:2
217:3 218:5
219:13
**run** 198:5
200:2,4
**russ** 17:10
76:16 143:10
283:12
**russell** 17:10
REDACTED 39:12
58:3 76:13
115:3 212:2
244:17 300:7
REDACTED

REDACTED

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 368 of 386 PageID #: 4422

273:3 278:13
280:5 283:5,18
285:8,15
300:21
REDACTED's  241:2
REDACTE  27:19,20
28:14 34:15

**s**

**s**  2:1 4:1 5:1
156:1,1,1
311:14 313:8,8
314:3
**sa**  269:22 270:5
270:15,16
**sabbatical**  51:2
51:18 57:13,17
63:21 68:10,14
69:1 79:15
83:4
**salary**  222:4,15
222:20 231:21
233:17,19
235:4
**sale**  236:4
**samantha**  1:11
2:7 5:5,22 6:9
6:18 156:6
309:6,9 311:8
312:4,9 313:4
313:13 314:20
**sanders**  2:3
5:19 75:17,21
92:6
**saved**  148:1

**saw**  131:11
134:2 158:17
158:20 187:19
220:6 222:16
222:20,22
236:6
**saying**  56:3
66:15 87:20
92:19 113:19
116:8 126:4
142:14 152:17
154:14 155:7
186:5 216:17
223:17 227:17
231:9 242:19
267:13 280:20
281:7,11,17
301:6 304:3
**says**  30:17 33:5
33:5,22 34:15
36:3,15,16,19
37:1 41:14,14
72:19 73:18
77:10 126:2,14
141:5,20 142:6
143:18 151:18
183:15 210:10
227:6 229:4
231:18 233:5
238:20 262:6
269:21 273:15
285:7 286:10
286:10 295:7
299:12 300:20
301:17

**sbc**  4:9 8:16
77:12,19 78:11
90:8,17 95:16
95:18,20 96:11
97:5,10,13,17
97:22 98:3
103:17 104:12
105:6,13
106:18,18
123:15 124:4,5
124:12,16
125:7,19,21
135:1,1,2,11
136:8 170:16
170:21 204:5
208:17 209:4
210:16 212:14
213:3,7,21
274:19 275:22
276:2 279:12
279:18 293:1
**scene**  56:11
**schedule**  176:3
**scheduled**
175:4,5,6
**school**  10:3,5
10:17,20,22
**schools**  8:1,3,4
8:5,6,7,10
**scope**  77:6
104:1 106:4
**scott**  2:8 3:3
5:22 13:11,13
13:14

**screen**  33:16
36:9 130:7
143:3,14,22
144:17 145:10
147:2 153:19
168:3 280:14
280:16 281:9
281:14,18
**seal**  312:15
313:21
**searched**  124:9
124:9
**searching**
123:12
**seated**  192:4
194:1,13 195:7
195:9,10,19
196:2
**second**  17:19
26:19 61:20
67:9 72:14,19
78:7 82:8 87:3
87:3 142:17
147:1 177:4
247:21 305:4
**secretary**  15:9
**section**  77:18
78:13 79:4
105:2 131:6
204:4
**sector**  289:19
290:2,10
**see**  21:18 24:5
24:10 27:1,7
29:11 30:14

| | | | |
|---|---|---|---|
| 31:6,12 32:6,9 | 250:18 251:5 | 260:3 | **sequence** 127:7 |
| 32:16,22 33:8 | 251:15 252:6 | **sending** 76:19 | 144:20 176:4 |
| 33:15 35:11 | 252:16,17 | 77:2 95:22 | **series** 68:17 |
| 36:6,10 42:7 | 253:4 260:6 | 96:12 107:8 | 156:14 |
| 46:2 47:10 | 261:15 270:2 | 137:7 145:1 | **sessions** 13:11 |
| 66:9 71:21 | 272:19,20 | 285:15 | **set** 56:11 |
| 72:8 79:2 81:1 | 274:11 279:1 | **senior** 7:1 8:14 | 107:18 117:17 |
| 82:11 93:3 | 280:13 281:14 | 8:21 158:6 | 142:17 |
| 95:2,6 100:2 | 282:13,17 | **sense** 114:12 | **seven** 72:5 |
| 101:10 103:2 | 283:3,4 285:9 | 122:21 178:5 | 78:19 |
| 106:16,21 | 288:17 300:16 | 301:21 | **several** 7:19 |
| 108:15 109:1 | 301:1,22 302:1 | **sensitive** 95:10 | 60:13,20 62:14 |
| 110:17 111:11 | 308:16,17 | **sent** 4:7 47:4 | 73:19 90:1 |
| 112:17 121:1 | **seeing** 37:15 | 76:18 116:22 | 211:15 267:16 |
| 121:11 124:18 | 124:7 159:2 | 116:22 120:6,8 | **sex** 197:19 |
| 126:5 129:4,15 | 166:11 284:4 | 129:7,9,14 | 202:14 |
| 130:12 133:15 | 287:19 | 134:3 137:15 | **sexual** 25:2,9 |
| 139:12 141:12 | **seek** 168:8 | 137:19,21 | 25:12,12 26:1 |
| 141:15 147:19 | **seeking** 168:12 | 139:15,15 | 26:2 49:3 51:7 |
| 148:1,6 150:12 | 213:2 224:21 | 141:8 144:10 | 81:9 90:7,14 |
| 150:16 151:9 | **seen** 89:1 | 145:1 175:7 | 91:7 92:10 |
| 152:9,13 153:4 | 169:16 241:16 | 215:3 221:11 | 103:15 104:11 |
| 153:19 158:7 | 242:19 265:2 | 260:20 283:5 | 105:13 178:11 |
| 158:13 164:17 | 280:15 290:13 | 288:15 | 178:12 179:8 |
| 165:6 167:14 | 294:19 | **sentence** 21:11 | 182:1,3,4,5,18 |
| 168:3 169:6 | **self** 152:15 | 22:13 29:11 | 183:11,20,21 |
| 172:14 175:11 | 265:15,19 | 33:2,17 35:15 | 184:2,10,11,18 |
| 175:12 192:18 | **sell** 231:21 | 158:20 206:7 | 184:20,21 |
| 204:8 210:13 | **send** 76:12 | 273:8 301:18 | 185:4,5,9,18 |
| 214:16 226:12 | 117:9 129:12 | **separate** 159:9 | 186:1,7,18,20 |
| 227:1,20 | 129:16 131:16 | 162:3 192:8,9 | 187:5,6,10,14 |
| 229:18 230:21 | 138:8,12,16,18 | 213:14 278:20 | 187:20,21 |
| 231:8,9 232:1 | 143:3,13,14,22 | 287:18 | 188:1,21,22 |
| 232:8,14 | 144:12,15,18 | **separately** | 193:2 198:2,4 |
| 245:18 249:7 | 145:10 214:7 | 136:7 | 198:12,15,20 |

Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 370 of 386 PageID #: 4424

199:2,8,14,22
200:13 202:21
203:20 211:8
229:13 251:10
251:18 252:8
252:11 253:9
254:10,15
255:4,17 256:6
256:6,9,13,21
257:3,7,11,11
257:20,21
258:3,3,6,10,10
258:17,20
259:1,3,4,6,6
259:13 267:17
271:1,1,6,6,11
271:11 293:14
**share** 143:2,14
143:22 144:17
145:10 179:4
182:14 231:10
**shared** 39:15
53:7 76:13,14
76:15 115:8
139:19 179:3
211:15 213:18
248:9 250:11
250:14 251:13
255:20 258:6
258:15,15,17
**sharing** 143:7
238:19
**sheet** 311:12
313:7,10,18
314:1

**shirt** 185:7
**short** 12:2
231:21 236:4
236:14 257:16
302:14
**shorten** 111:10
**shortened**
34:18 112:13
**shortly** 270:11
**shorts** 252:4
**shoulder** 185:8
**show** 61:22
108:4,8 121:5
154:20 245:11
**showed** 40:12
40:17 41:6
45:6 190:4
211:17 265:14
265:15 269:8
**showing** 147:2
301:20 302:5
302:12
**shown** 78:14
133:4 217:2
281:18 311:14
**shows** 178:11
**side** 128:4
190:16,16
192:12,14,15
192:16,20
193:4 194:1
195:9 196:2
**sides** 263:11
**sign** 188:19

**signature**
310:18 311:13
**signed** 312:13
313:18
**significant**
132:3 154:7
229:7,8,9,11,14
234:5 237:18
**signing** 311:17
**similar** 27:13
248:8
**simple** 213:9
233:17
**simply** 173:11
**simultaneously**
282:17
**sincerely**
311:18
**single** 86:6
97:17 103:15
112:21
**sir** 10:4 14:4,7
15:21 16:2,11
16:16,20 17:4
18:3 20:7
23:17 24:20
28:3 35:19
177:22 261:14
285:5 290:12
304:12 311:9
**sit** 47:1 104:7
145:7 183:9
192:22 197:13
**site** 245:18

**sits** 291:2
**sitting** 191:19
191:20 196:15
221:20 223:1
224:15 277:7
**situation** 105:2
188:22 210:21
210:22 268:9
**situations**
105:1 229:12
**six** 11:1 78:19
81:15,18 215:6
292:3,4 293:6
**sliding** 197:10
**small** 11:1
141:11
**sole** 237:10
**solely** 118:9
**solicited** 114:6
**solo** 11:12,15
**solutions** 1:7
1:15,21 5:13
5:15 6:21
292:11,19
294:13 311:1
314:1
**somebody**
47:15,16
226:13 227:6
263:3
**somewhat**
18:11
**soon** 128:8
**sooner** 201:1

**sorry** 13:18
38:11 55:16
73:11 77:13
103:21 145:14
157:15 208:1
215:12 244:4
273:7 285:5
289:7
**sort** 106:14
247:10
**source** 20:12
**sources** 20:8,9
**southern** 1:6,8
2:12 5:7 21:13
30:21 63:1
78:1 211:18
212:13 267:15
291:3 311:6
312:3 313:3
**space** 264:16
**speak** 15:17
29:19 88:15
108:22 123:11
123:15 124:21
166:13 210:7
223:5 224:4,8
229:16 230:3
246:3 286:13
286:20,21
**speaking** 58:19
64:8 135:4
221:9 229:20
252:20 275:11
**speaks** 113:22
118:17,22

141:2 183:5
256:16
**special** 269:8
**specific** 18:12
22:13 24:1
26:18 29:7
31:16 51:3
55:5 73:14,16
93:4 100:7
101:5 117:21
118:2 155:1
171:5 209:13
215:21 256:5
258:5 270:9
307:2,14,22
308:3
**specifically**
21:2 35:12
41:5 44:22
46:18 47:1
52:7 63:14,15
63:17 64:8
65:6,19 68:4
72:12 80:7
100:1,6 102:17
116:7 156:20
157:5 159:18
165:1 168:9
191:13 212:13
223:6,8 255:12
255:15 263:22
276:16 287:6
297:10 307:17
**specifics** 91:3
127:11 159:7

212:4 305:8
**spectrum** 25:22
264:2,4
**speculation**
194:7 228:20
233:22 236:20
262:19 270:7
285:19 303:8
303:18
**spell** 55:9,10
**spent** 92:2
**spoke** 80:3,7
98:5 107:22
108:1,18 109:3
145:14 163:9
175:15 176:19
176:20,22
177:1,6 206:13
248:12
**spoken** 18:22
22:9 107:20,21
143:6 253:16
**sponsor** 206:6
**sporadic** 99:16
**staff** 300:8
**stamp** 129:15
**stand** 244:6
290:18
**standard**
185:22 188:5,9
**standpoint**
131:18
**star** 231:16
232:21 235:6
235:12,13

237:12,18
239:4,5,7
**start** 111:10,13
111:19 112:6
117:15 235:11
**started** 11:12
42:3 146:9
159:5 192:7,8
250:2 292:18
**starting** 265:5
**starts** 40:3
241:12
**state** 6:16
63:15 295:22
297:4 299:9
312:10 313:15
**stated** 22:15
23:2,7 24:14
27:19 28:7,14
28:15 32:18
34:15,19 42:3
51:4 65:21
66:2,15 69:15
72:6 73:1
74:19 101:13
**statement**
34:16 35:8
54:3 67:20
94:5 101:2
150:2 173:19
205:20 259:14
267:12 272:8
274:7 277:1,18
283:4 299:14
312:13,14

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 372 of 386 PageID #: 4426

313:19,19
**statements**
    43:1 178:3
    263:4 269:10
**states**  1:1 234:3
    268:2
**stating**  64:15
**status**  137:2
**stenotypy**
    310:7
**stepped**  63:7,18
**stepping**  63:20
    63:22
**steps**  100:5
    125:17 136:6
    274:10 279:13
    298:4,14
**stipulate**  56:18
    128:11,20
**stipulation**
    128:17
**stone**  117:17
**stop**  122:22
    132:11 146:11
    274:12
**stopped**  252:4
    257:17
**story**  15:16,20
    16:1 18:2,5,8
    52:14 102:9
    147:7 239:1
    301:20 302:3,5
    302:11
**straight**  248:20

**stream**  284:22
**street**  1:15,21
    2:4 5:11
    221:13
**strike**  43:14
    48:4,13 49:15
    64:14,21 65:21
    137:9 140:18
    159:17 169:12
    183:21 211:2
    212:22 214:16
    284:19 289:8
    295:20
**string**  120:19
    284:18,20
**strings**  287:11
**stripping**
    301:19
**studies**  9:20
**study**  9:19
**stuff**  163:9
**subject**  15:6,8
    153:8 295:13
    303:3
**submit**  279:18
    279:22
**submitted**
    15:15 117:18
    175:1 280:2
**subscribed**
    312:10 313:14
    314:21
**subsequently**
    253:3 259:9

**substance**  93:6
**substantial**
    226:4 228:1
    233:9
**success**  155:4
    155:11 157:9
**successful**
    217:10
**sufficiently**
    216:19
**suggest**  53:17
    279:7
**suggestions**
    131:18
**suite**  1:16 2:5
    2:21 5:11
    311:2
**sum**  229:5
**summarize**
    77:6,11 79:8
    253:13
**summarized**
    78:18 81:12
**summarizing**
    77:6,17
**summary**  59:7
    77:11
**sunny**  300:9,11
**superior**  311:1
**supporting**
    273:4
**suppressed**
    158:21
**sure**  9:13 35:6
    35:11,20 39:13

43:17 47:10
51:13 56:2
58:19 66:20
90:4 93:18
99:7 102:8,9
104:15,16,18
114:9 115:16
122:6,7 125:11
164:6,13 169:3
171:11,18
174:3 175:4
180:17,18
181:13 201:22
201:22 209:7
215:16 225:9
227:20 238:10
242:2,12
260:18,19,22
261:1 265:3
273:5 278:9
285:3,3 291:2
292:2,14 294:8
294:17 296:21
298:4,19
308:16
**surprise**  179:14
**surreptitiously**
    87:6
**survivor**  32:12
    213:20 251:5
    251:10,19
    253:2 258:5,16
    259:8
**survivor's**
    52:10

www.veritext.com                                                                                    888-391-3376

| | | | |
|---|---|---|---|
| **survivors** 103:4 106:8 179:10 182:7,13 214:2 | **taken** 5:5 10:13 15:4 57:17 88:11 113:6 | 189:20 191:5 222:7 229:5 233:11 234:18 | 154:2 164:4 176:18 189:3 189:11 190:22 |
| **swear** 6:7 | 127:2 155:17 | 248:2 251:3 | 192:4,16 193:3 |
| **sworn** 6:11 156:8 310:5 312:10,13 313:14,18 314:21 | 195:22 246:9 302:18 308:22 310:3,7,12 | 278:10 281:8 283:12 287:7 293:16 294:21 | 202:12 204:3 218:12 229:2 233:10 234:2 261:15 283:2 |
| **system** 130:6 | **talk** 9:12 29:7 32:19 34:20 | **taped** 175:14 175:17 | 287:21 292:22 293:1 298:8 |
| **t** | 38:12,13 69:19 102:14 128:18 | **task** 290:19 291:1 | 305:18,22 306:6 307:5,8 |
| **t** 4:1,1 11:5 55:11 156:1 | 134:22 145:17 150:10 170:2 | **taylor** 2:13 | **telling** 88:1 100:4 102:22 |
| **table** 191:10,11 191:13,16 192:20 193:15 195:12 196:1 196:16 277:7 | 175:6,18 179:17 187:2 193:9 210:5 213:20 218:1 228:8 230:16 | **team** 41:4 90:5 90:15 93:12 112:11,12 **teams** 93:12 301:8 **technical** 10:10 | 128:7 139:5 143:10 144:14 165:13,14 209:14 263:16 **ten** 173:7 227:7 227:10 |
| **tables** 193:4 | 233:4 239:4 | **technique** | **tennessee** 1:1 |
| **take** 19:15 43:15 59:9 61:22 62:1 88:8 100:5 | 242:13 266:14 274:16,18 291:10,12 301:8 | 100:12,22 101:13,15 **techniques** 98:12 | 2:14,22 5:8 **term** 186:12 187:10 199:14 239:5 269:14 |
| 108:3 116:3 125:17 136:6 141:15 155:13 157:13,14 | **talked** 106:17 106:18 108:5 112:14 181:4 190:1 202:3 | **teen** 152:12 **telephone** 108:6 176:1 **tell** 39:9 47:15 | 269:15,17 **terminology** 182:19,21 **terms** 16:14 |
| 172:15 174:4 191:16 220:4 221:5 223:2,3 246:5 265:11 274:10 279:13 298:13 302:14 308:7 | 242:14 243:12 258:14 293:13 **talking** 26:7 52:17 55:5,7 59:11 130:21 130:22 145:20 160:20 161:4 166:21 189:19 | 48:2 52:5 58:6 58:12,22 73:3 97:3,4,7 99:8 99:12 111:5 113:7 127:14 129:7,14 131:9 140:20 141:17 143:12,12,21 | 23:18 40:12 70:10 74:22 86:19 98:10 100:11 124:19 145:19 153:17 163:2 182:5 |

www.veritext.com 888-391-3376

| | | | |
|---|---|---|---|
| 186:6 215:11 | 271:14 282:3,7 | 119:17 147:2 | 93:9 100:15 |
| 224:14,21 | 282:8 289:20 | 159:11 223:19 | 112:2 116:21 |
| 232:20 243:16 | 310:4,6,9 | 306:20 309:4,4 | 119:19 123:8 |
| 272:4 276:19 | 312:6,7 313:6 | **therapist** | 123:12 125:8 |
| 286:22 288:13 | 313:9,12 | 182:11 | 126:10,14,14 |
| 295:11 | **tethered** | **thereto** 310:15 | 126:19 127:13 |
| **terrible** 124:5 | 232:18 | **thing** 47:19 | 141:16 149:2 |
| **testified** 6:11 | **text** 4:11,12,17 | 123:3 124:8 | 152:1,20 160:3 |
| 42:1 63:5 | 46:21 47:7,9 | 125:13 216:9 | 160:4 168:10 |
| 82:13 120:7 | 47:11,12,18 | 247:20 268:7 | 172:10 177:3 |
| 133:17 156:9 | 93:9 94:6 | 302:12 | 187:2 189:22 |
| **testify** 104:8 | 116:11 120:19 | **things** 25:12 | 190:14,20 |
| 128:4 233:4 | 121:3,7 125:22 | 37:8 43:7 | 192:7 199:19 |
| 281:22 | 126:1,1 127:2 | 46:12 97:3 | 200:18 209:3 |
| **testifying** 47:2 | 127:15 128:12 | 99:18 100:5 | 209:10,11 |
| 128:3 | 129:11,13,14 | 106:7,10 | 219:9 221:16 |
| **testimony** | 129:16,17,19 | 117:16,16 | 227:15 238:3 |
| 13:10 14:6 | 129:20 130:15 | 124:10 125:1 | 238:18,21 |
| 15:2 33:14 | 132:4 238:11 | 137:2 149:3 | 239:1,7 241:10 |
| 35:13 60:4 | 238:12 244:12 | 154:5,10 160:3 | 243:20 244:17 |
| 63:10 65:10 | 244:16,22 | 163:8,16 164:1 | 245:22 246:3 |
| 74:8 83:13 | 245:3 265:14 | 185:19 186:16 | 247:13 248:6 |
| 86:14 88:22 | 265:15 284:20 | 190:1,9 200:22 | 249:17 259:12 |
| 93:19 105:21 | 284:22 285:6 | 202:2,4,5 | 265:14 266:8 |
| 112:7 123:21 | 285:16 287:11 | 211:19 221:3,3 | 269:22 270:21 |
| 124:14 133:20 | 287:13,21 | 222:5 227:20 | 271:13 277:9 |
| 136:1,17 138:1 | 288:3,5 294:10 | 250:20 268:7 | 283:9 284:2 |
| 166:14 168:11 | **texting** 115:19 | 269:11 270:19 | 286:8 287:2 |
| 171:22 186:21 | **texts** 115:17 | 292:15 | 294:22 299:18 |
| 194:18 195:3 | 121:8 265:3,4 | **think** 14:15 | 300:20 301:3,6 |
| 199:15 201:11 | 265:11 | 25:7 38:4 | 302:14 308:17 |
| 201:13 202:7 | **thank** 11:7 22:2 | 40:15 48:19 | **third** 2:9 17:22 |
| 235:10 237:16 | 29:14 30:18 | 50:9 52:1 | 30:13 49:17 |
| 239:2 248:7 | 42:9 55:18 | 55:17 60:7 | 72:18 87:19 |
| 255:14 266:6,9 | 108:21 119:11 | 88:22 90:11 | 96:20 174:14 |

Veritext Legal Solutions

| | | | |
|---|---|---|---|
| 254:13 288:16 | 58:11 59:7,22 | 290:9 295:22 | 166:17,18,19 |
| **thirty** 311:16 | 63:6,17 68:16 | 296:22 299:10 | 181:10 192:8 |
| **thought** 21:16 | 68:20 72:20 | **times** 25:21 | 196:21 197:2 |
| 52:16 125:12 | 74:15 76:7 | 48:18,20,21 | 197:12,13,18 |
| 154:12 156:16 | 91:7 99:2,18 | 99:10,17 | 197:22 200:3 |
| 179:6 | 103:14 108:22 | 125:13 197:20 | 220:1 222:14 |
| **thoughts** 284:3 | 115:18 116:14 | 199:11 211:5 | 228:11 245:10 |
| **thousands** | 116:16 117:4,5 | 227:10 231:6 | 251:4 252:2 |
| 221:19 224:20 | 121:15 124:8 | 233:1 235:1 | 253:1 254:2,7 |
| **three** 14:16 | 127:1,7,9,14 | **today** 7:18 13:4 | 254:10,14 |
| 20:9 82:18 | 129:14,15 | 13:10 15:2 | 256:20,22 |
| 83:1 146:18 | 133:2,13 | 33:16 42:1 | 257:1,2,10,13 |
| 197:19 247:1,8 | 134:15,19 | 60:4 63:5 65:9 | 258:4,9 259:6 |
| 247:14 248:2 | 144:13,15 | 76:17 91:4 | 259:7,10 269:6 |
| 248:20 249:9 | 157:9 166:1,6 | 104:8 145:8 | 298:9 306:3,5 |
| 249:17 252:15 | 171:4 172:3 | 192:16,22 | 306:11,16 |
| 252:16,16,21 | 173:8 174:22 | 193:18 196:15 | **tomorrow** |
| 253:7 254:13 | 175:3 179:5,12 | 199:15 216:19 | 301:8 |
| 254:21 259:2,3 | 180:4,18,21 | 217:6 224:16 | **tone** 115:11 |
| 259:5 272:6 | 181:11 184:16 | 229:19 289:21 | **tongring** 285:1 |
| 273:11,19 | 184:18 198:17 | 304:21 | 286:4 |
| 284:8 286:3 | 208:2,15 209:5 | **together** 55:9 | **tonight** 301:7 |
| **thursday** 22:14 | 209:13,16 | 71:12 97:1 | **took** 18:4 19:16 |
| 26:20 139:11 | 210:3 211:2,4 | 101:21 119:13 | 19:18 34:21 |
| 141:9 | 211:8,15 213:7 | 203:16 210:8 | 57:13 59:18 |
| **time** 1:14 11:13 | 226:17 227:7 | 225:16 228:9 | 60:1 61:11 |
| 12:2 16:17 | 229:2 231:5,14 | 232:17 234:7 | 140:7 152:21 |
| 17:22 18:9,20 | 233:16 236:16 | 234:22 235:1 | 196:16 211:19 |
| 23:14,16 26:16 | 255:2 259:13 | 240:21 | 213:18,22 |
| 27:12 30:3 | 267:1 268:11 | **told** 30:3 47:12 | 253:20 298:4 |
| 40:15 42:16 | 268:18 269:4,8 | 53:10 69:1 | 305:9 308:16 |
| 46:17 47:3 | 270:21 271:14 | 80:8 86:20 | **top** 71:22 75:4 |
| 49:17 50:5 | 276:10 279:6 | 97:13 99:18 | 77:8 106:15 |
| 51:3 53:2 | 286:9,21 | 102:2 112:15 | 235:18 |
| 54:19,21 55:20 | 289:13,15,17 | 144:11 160:5 | |

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 376 of 386 PageID #: 4430

**topic** 31:14
59:2 86:10
**topics** 83:2
216:3
**total** 119:17
222:4 231:21
234:14 277:10
**totality** 86:7
190:1
**touched** 252:3
257:16
**touching** 185:5
185:6
**towards** 12:3
161:14 241:10
**tower** 2:18
**tpmblaw.com**
2:15
**training** 182:4
182:11
**trainings** 182:9
**transactions**
70:13
**transcribed**
312:7
**transcript** 4:22
217:1 311:10
311:11 312:5
312:12 313:5
313:11,17
**transmitted**
94:10
**trauma** 182:10
182:12

**traumatized**
179:11
**treatment**
269:8
**tricky** 281:16
**troy** 64:4,6,8,9
**true** 40:20
42:21 45:18
71:4,7 135:17
140:22 141:18
168:6 193:15
194:2 279:12
310:9
**truth** 174:7
233:18
**truthful** 16:14
83:17 84:1,5
84:16 85:20
**try** 49:17 52:9
197:20 230:13
**trying** 52:12
75:3,7,9 78:4
152:7,7 200:21
229:6 281:16
**turn** 19:19 21:4
102:3 117:5
167:11 231:1
249:14
**turned** 127:9
**turning** 185:6
**twelve** 234:17
**twice** 134:18
**two** 12:19 14:1
14:10,18 49:5
82:2 104:10,10

142:2 172:9
174:2 178:15
178:18 181:18
181:19,20
210:9,10
225:17 227:20
228:15 236:8
247:1,5 248:19
249:8,17 251:2
251:3,12,13,17
254:9,21
257:18,18
258:3,9,14,15
258:21 270:19
272:5,18,19,20
273:11,19
284:8
**type** 59:16
247:11 283:19
**types** 106:9
116:10 125:1
175:3 201:15
264:8 269:17
**typewriting**
310:8
**typewritten**
16:3,5,9

**u**

**uh** 9:10 21:17
21:22 27:11
36:20 38:3
70:1 92:4,8
126:6 287:17
**ultimately**
205:20

**unable** 213:12
**uncomfortable**
211:16
**under** 27:17
54:3 80:1
93:14 98:9
231:11 268:7
296:16 298:9
299:4 310:8
**undermined**
274:3
**undermining**
272:3
**understand**
13:3 17:14
35:12,18 39:18
40:11 41:4
45:11 51:13
52:7 54:13
56:2 64:1
84:13 88:18
90:4 106:11,21
141:21 148:20
155:3 159:18
164:7 165:5,7
165:12 184:2
184:20 190:22
191:13 197:21
212:12,21
213:1 215:10
219:18 222:3,6
224:5 227:6
270:16,18
271:4,9 276:2
276:6,12 282:2

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 377 of 386 PageID #: 4431

282:4,6,9,10,12
283:17 295:15
304:18
**understanding**
13:7 39:6,10
39:11 152:8
159:14,16
186:11,16
187:21 188:1,3
188:4 201:19
221:7 222:1
240:20 270:4
283:9
**understands**
53:15 171:19
292:2
**understood**
22:19,21 29:16
29:20 30:2
40:14 42:2
45:8 50:18
70:22 80:8
84:19 85:4
133:11 134:1
148:8,20 149:6
150:21 151:13
154:18 159:10
159:21 167:19
190:11 211:5
220:7,20
221:18 222:10
224:11,22
240:12 252:13
274:20 275:5
275:17 276:4

277:21
**undid** 252:4
257:16
**unfair** 217:13
**unit** 5:4
**united** 1:1 7:18
268:2
**university** 10:6
**unknown**
210:21,22
**unlocked** 197:8
**unnamed** 55:4
55:6 56:6,14
57:4,8,17
247:6
**unrelated**
116:10
**unreliability**
179:18,19
**unsent** 4:10
**unsettled**
162:22 163:6
**unsettling**
158:13,17
161:20 162:6,8
168:19 169:17
170:18 171:12
**unsettlings**
162:12
**unsure** 243:9
**untruthful**
51:10,14,15
52:2 53:18
54:13 56:5
86:10

**unvarnished**
174:7 233:18
**update** 4:9
**use** 20:2,5
39:19,22 47:21
98:11 115:6,6
185:13 186:7
190:10 198:3
198:14 200:10
220:12 231:12
239:7,12,13
257:6 259:5
273:2 286:2
**used** 25:11,21
115:2 160:4
164:2,21
168:10 169:4,5
182:19 183:13
184:3,13,14,15
185:22 186:11
190:4 199:3
239:5 248:6,7
256:12 258:3
**using** 83:21
251:5 252:8
271:1
**utilized** 114:13
**utilizing** 282:7

**v**

**v** 311:6 312:3
313:3
**valid** 123:2
**validated** 247:2
247:15 248:4

**validation**
178:5
**variety** 201:9
**various** 250:20
**verbally** 152:6
**verify** 101:10
141:4
**veritext** 1:15,21
5:12,14 311:1
311:7 314:1
**veritext.com.**
311:15
**version** 37:15
140:22 141:17
142:1
**versus** 5:7
298:1
**vi** 79:12 81:11
82:2
**vice** 158:6
**victory** 286:3,7
**video** 1:11 5:4
172:7,14,15,22
173:11,14
174:20 176:14
176:16,17
230:10 282:7
**videoconfere...**
172:5 175:9,20
**videoconfere...**
172:19
**videographer**
5:2,13 6:6
10:11,14 88:9
88:12 155:14

Case 3:23-cv-00243   Document 219-7   Filed 07/03/24   Page 378 of 386 PageID #:
4432

| | | | |
|---|---|---|---|
| 156:3 230:13 | **wake** 11:3,6,8 | 194:21 201:6 | **way** 26:1 38:4 |
| 246:7,10 | **walking** 221:13 | 201:18 207:15 | 44:11 88:20 |
| 302:16,19 | **want** 17:14 | 215:16,20 | 94:19 96:21 |
| 308:21 309:1,5 | 18:11 19:4 | 217:9 219:7 | 101:14 102:12 |
| **view** 95:2 | 21:1,12 22:12 | 223:7,12 227:9 | 146:22 153:10 |
| 181:22 247:16 | 24:2 28:11 | 228:9,10,15 | 154:3 172:18 |
| 253:8 | 29:14 30:9,18 | 230:16 232:19 | 182:13,14 |
| **viewed** 137:18 | 30:19 33:2,16 | 236:14 238:3 | 193:5 209:19 |
| **viewpoint** | 35:6,12,13,15 | 244:11 246:13 | 213:4 222:2 |
| 283:6,11,20 | 35:16 36:1 | 248:10 255:13 | 302:10 |
| **vii** 81:14,16,17 | 37:7,18 38:12 | 281:9,21 | **ways** 53:14 |
| 82:8 | 38:13 47:13,13 | 291:12 292:1 | 185:5 231:10 |
| **viis** 82:3 | 50:20 53:15 | 300:14 301:15 | 233:6 |
| **violate** 91:21 | 58:18,18,19,21 | **wanted** 87:14 | **we've** 8:8 83:2 |
| **virginia** 2:18 | 60:9 61:15,20 | 87:18 102:7,8 | 92:2 124:5 |
| **virtual** 14:21 | 68:9 83:9 | 102:12 112:22 | 132:11 136:14 |
| 176:16 | 88:15,20 89:10 | 113:4,13,18 | 136:16 199:10 |
| **virtually** 14:20 | 91:21 92:19 | 115:11 128:7 | 217:17 218:16 |
| 302:15 308:14 | 93:3 94:15 | 163:8,13,18 | 218:17 246:15 |
| **virtue** 87:20 | 95:19 101:4 | 168:8 212:13 | 265:2 290:13 |
| **volume** 240:1,1 | 102:4 103:4,5 | 212:14 220:8 | **week** 49:8 |
| 240:4 | 103:13 104:14 | 220:21 221:14 | 87:19 127:8 |
| **volunteer** 91:6 | 107:22 112:16 | 221:18 222:9 | 217:14 |
| 91:13 | 113:8 116:10 | 227:22 228:5 | **weekly** 245:19 |
| **vs** 1:5 | 116:15 122:14 | 232:22 233:1 | **weeks** 82:18 |
| | 123:8 134:22 | 235:18 242:5 | 83:1 215:6 |
| **w** | 139:10 145:17 | 243:5 267:3 | **welcome** 66:1 |
| **w** 11:5,6 | 146:12,20 | 281:17,18 | 156:13 |
| **wait** 11:5 171:7 | 147:4 148:15 | **wanting** 226:7 | **went** 11:3,12 |
| 191:18 207:18 | 156:13 159:7 | 241:20 243:18 | 51:2 90:3 |
| 209:12 216:13 | 159:15 160:21 | **wants** 231:6 | 112:13 115:3 |
| 265:13 | 161:3,7 162:2 | **warren** 5:12 | 160:6 193:2 |
| **waived** 311:17 | 165:5,9 166:1 | 230:11 | 242:22 |
| **waiving** 166:20 | 171:18 173:2 | **washington** | **west** 2:18 |
| 180:8 | 183:12 194:2,2 | 1:16,22 5:11 | |

| | | | |
|---|---|---|---|
| **whatsoever** | 113:11 114:2 | 217:8 218:22 | 263:9,20 |
| 306:3 | 114:17 116:3 | 219:1,7 220:17 | 264:21 265:10 |
| **wife** 32:12 | 119:22 120:12 | 225:12 226:22 | 266:8,19 |
| 133:2 145:20 | 122:6 123:6,22 | 227:13 228:5 | 267:13 268:6 |
| 153:18 179:22 | 124:15 127:6 | 228:22 230:2,4 | 269:4 272:2,5 |
| 180:2 240:14 | 127:19 130:20 | 231:4,16,17 | 272:5,6,9 |
| 255:17 259:4 | 132:3,19 133:9 | 232:4,21 233:4 | 273:1,3,6,10,11 |
| 262:14 | 133:14,18 | 233:10 234:2 | 273:15,19,19 |
| **wiley** 62:15,21 | 134:7,20 | 235:5,6,11,12 | 274:2,8,15 |
| **willing** 91:6,17 | 135:10 136:3 | 235:13,21 | 275:3,9,14 |
| 153:6 287:10 | 136:22 138:2 | 236:21 237:6 | 277:6 278:7,13 |
| **witness** 5:21 | 140:5 141:4 | 237:12,17,18 | 278:22 279:22 |
| 6:7,10 19:4 | 142:5 143:18 | 237:19 239:4,5 | 280:17 281:10 |
| 23:13 24:1 | 144:4 145:5 | 239:7,12 240:8 | 282:20 283:9 |
| 25:5 29:5,20 | 148:13 149:2 | 240:20 242:1,9 | 284:2,8,11 |
| 31:19 34:8 | 149:20 151:3 | 243:9 244:3 | 286:16 287:2 |
| 37:5 39:6 | 151:17 152:20 | 247:1,5,5,8 | 288:11 291:8 |
| 41:11 43:10 | 153:14 154:1 | 248:15,18 | 292:14 294:7 |
| 44:5,17 45:5 | 160:11 161:10 | 249:2,8,16 | 294:17 296:21 |
| 45:18 46:12 | 162:17 164:13 | 250:2,7,9,11,12 | 297:14 298:19 |
| 48:9,13,17,19 | 169:21 170:10 | 250:14 251:2,3 | 299:15 302:9 |
| 57:12 59:5 | 174:12 177:18 | 251:12,13,17 | 303:9,19 304:3 |
| 63:11 65:17 | 180:7,17 183:6 | 251:21 252:1 | 306:19 307:12 |
| 70:19 73:8 | 184:7 185:16 | 252:12,13,15 | 308:13 310:4,6 |
| 74:9,19 75:9 | 186:15 187:13 | 252:16,16,20 | 310:10 311:8 |
| 77:2 83:7,16 | 188:8 189:8 | 253:7,19 254:6 | 311:10 312:1,4 |
| 84:10 85:2,10 | 190:20 191:5 | 254:9,13,21 | 312:11 313:1,4 |
| 86:15 87:1,12 | 193:19 194:8 | 255:3,8,20 | 313:15 |
| 88:5 90:21 | 196:7,14 | 256:17,20,22 | **witnesses** |
| 93:20 94:6 | 198:18 203:3 | 257:2,6,6,10,13 | 171:15 203:15 |
| 95:13 96:16 | 205:2 206:2,21 | 257:18,18 | 206:12,13,16 |
| 98:19 99:22 | 207:8 209:21 | 258:2,2,9,14,14 | 207:4,12 |
| 100:15 101:20 | 210:20 211:11 | 258:15,21 | 216:14 218:6 |
| 103:22 104:20 | 212:18 213:17 | 259:2,3,5 | 247:15 248:1 |
| 105:22 110:11 | 216:3,19 217:4 | 261:20 262:20 | 254:6 |

| witness' 311:13 | REDACTED | | |
|---|---|---|---|

REDACTED

**wood** 98:22
99:1,11 218:7
285:1 287:3,5
**woodstock**
54:17,18 79:18
**word** 25:10
43:21 46:6
53:20 61:22
62:1 101:3
112:21 115:10
126:21 160:4
165:9 168:10
168:15,17,19
168:21 183:12
184:12 187:19
199:2,8 202:18
253:16 256:13
257:7 258:3
270:15,16
273:2,3
**wording**
115:11
**words** 18:22
22:8,9 23:7,19
25:17,20 27:13
28:16 34:8,12
34:14 37:5
41:20 59:6
65:11 83:15,21
113:21 146:4
149:16 150:19
151:12,13,22
164:2 166:13
167:7,7 168:13

169:3 170:14
184:12,13
198:3,7,7,12,14
203:6 224:4,8
231:13,14
238:15 245:20
245:22 248:6
248:11 255:22
256:3,5 259:5
272:18,19,20
281:14 302:2
**work** 7:9 9:2,6
11:7 12:3 13:1
13:4 16:19
21:13 25:10,22
30:20 37:8,11
38:12 39:20
41:3 43:6
48:15,16 52:9
54:20 70:21
76:20 79:17
91:9 92:11
96:22 97:16
98:15 162:6
231:15,18
253:14 255:15
262:16 263:3
266:1 274:13
288:1,21 289:5
289:13 290:7
291:5 292:17
295:11,11,17
301:7
**worked** 7:11,15
7:16,17 8:1,12

8:22 10:22
11:9 54:22
88:16 154:6
182:7 290:1
300:12
**working** 17:1
62:22 79:1
93:2 95:9
103:4 123:17
124:22 127:10
287:6
**works** 300:11
300:11
**world** 52:21
117:7 263:13
306:12
**worse** 114:5,10
114:11
**write** 22:18
27:13 143:2
214:5 294:9
**writes** 147:19
148:1 151:4,19
**writing** 46:9
64:13 101:5
146:3 253:15
271:4 285:11
297:9
**writings** 165:6
**written** 23:1,7
24:22 33:3,4
34:16 117:16
149:11 150:20
169:7 187:9
205:11,14,15

208:6 209:12
227:1 240:2,4
243:3
**wrong** 124:8
202:14 255:22
271:19
**wrongful**
228:17
**wrote** 23:19
27:17 28:11,17
28:18 30:7,16
34:4 35:16,17
36:2,22 73:22
148:3,17
150:22 151:13
153:20 166:13
177:9 225:6
295:19,21

**y**

**yeah** 26:10
39:2 89:15
100:19 108:10
110:3 112:2
180:5 181:9
189:21 216:1
234:20 237:2
261:9 264:9
269:16 275:9
278:4 292:14
293:19
**year** 10:8 12:6
40:19 44:13,14
45:2,2 56:9,9
57:19 86:12
208:19 217:15

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-7 Filed 07/03/24 Page 382 of 386 PageID #: 4436

227:7 228:13
228:14 248:15
267:7 268:2
290:4 306:10
**years**   11:14
41:8 45:14
56:12,16,18,21
56:22 57:3,3,8
81:5 152:12
153:9 208:4
211:14 232:10
233:1 234:4,16
234:17,18
236:18 267:17
**yesterday**   16:8
31:9 216:18
217:6 218:22
**york**   2:10,10
**young**   60:13,21
62:14,22
262:13

**z**

**zoom**   2:13 3:2
14:20 93:11
121:3 159:9
217:7 278:20

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.