# EXHIBIT 12

1        UNITED STATES DISTRICT COURT FOR THE
              MIDDLE DISTRICT OF TENNESSEE
2                   NASHVILLE DIVISION
3     ------------------------------
      JOHNNY M. HUNT,                    :
4                                        :
           Plaintiff,                    :
5                                        :      Case No.:
      vs.                                :
6                                        :      3:23-cv-00243
      SOUTHERN BAPTIST CONVENTION; :
7     GUIDEPOST SOLUTIONS, LLC; and:
      EXECUTIVE COMMITTEE OF THE    :
8     SOUTHERN BAPTIST CONVENTION. :
           Defendants.                   :
9     ------------------------------
10            VIDEOTAPED 30(b)(6) DEPOSITION OF
11                    KRISTA TONGRING
12    DATE:          March 20, 2024
13    TIME:          1:05 p.m. to 5:43 p.m.
14    LOCATION:      Veritext Legal Solutions
                     1250 I Street, Northwest
15                   Suite 900
                     Washington, D.C. 20005
16
17    REPORTED BY:  Felicia A. Newland, CSR
18
19
20
                     Veritext Legal Solutions
21            1250 Eye Street, N.W., Suite 350
                     Washington, D.C. 20005
22

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 2 of 342 PageID #: 4634

1              A P P E A R A N C E S

2     On behalf of Plaintiff:

3          ROBERT D. MACGILL, ESQUIRE

4          PATRICK J. SANDERS, ESQUIRE

5          SCOTT E. MURRAY, ESQUIRE (ZOOM)

6          MacGill, PC

7          156 E. Market Street

8          Suite 1200

9          Indianapolis, Indiana 46204

10         robert.macgill@macgilllaw.com

11         scott.murray@macgilllaw.com

12         patrick.sanders@macgilllaw.com

13    On behalf of Executive Committee of the Southern

14    Baptist Convention:

15         GRETCHEN M. CALLAS, ESQUIRE

16         Bradley Arant Boult Cummings, LLP

17         500 Lee Street East

18         Suite 1600

19         Charleston, West Virginia 25322

20         gcallas@jacksonkelly.com

21         -- and ---

22

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 3 of 342 PageID #: 4635

```
 1              A P P E A R A N C E S (Cont'd)
 2          R. BRANDON BUNDREN, ESQUIRE
 3          Bradley Arant Boult Cummings, LLP
 4          1600 Division Street
 5          Suite 700
 6          Nashville, Tennessee 37203
 7          bbundren@bradley.com
 8      On behalf of Guidepost Solutions, LLC
 9          SCOTT KLEIN, ESQUIRE
10          ALEX OTCHY, ESQUIRE
11          Mintz & Gold, LLP
12          600 Third Avenue
13          2nd Floor
14          New York, New York 10016
15          klein@mintzandgold.com
16          otchya@mintzandgold.com
17      On behalf of Southern Baptist Convention:
18          MATT C. PIETSCH, ESQUIRE
19          Taylor Pigue Marchetti & Blair, PLLC
20          2908 Poston Avenue
21          Nashville, Tennessee 37203
22          matt@tpmblaw.com
```

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 4 of 342 PageID #: 4636

1                    A P P E A R A N C E S (Cont'd)

2          Also Present:

3                Gordon Thomas, Videographer.

4          Also Present Appearing Via Zoom:

5                Kathy Klein

6                Gene Besen

7                Ella Merritt

8                Jon Anderson

9                Scarlett Nokes

10               Pastor Johnny Hunt

11

12

13

14

15

16

17

18

19

20

21

22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 5 of 342 PageID #: 4637

C O N T E N T S

EXAMINATION BY:                                    PAGE

    Counsel for Plaintiff                          8

    Counsel for SBC Executive Committee          259

    Counsel for Plaintiff                        262

          TONGRING DEPOSITION EXHIBITS

NO.  DESCRIPTION                                 PAGE

105  Krista Tongring LinkedIn                      9

106  Second Amended Notice                        16

107  Bates Numbers GP_003968 through 3971        123

108  Bates Numbers COC000014 through 16          158

109  Bates Numbers GP_013490 through 13503       160

110  Bates Numbers GP_012582 through 12595       171

111  Bates Numbers GP_016152 through 16155       187

112  Snapshot screen of Guidepost's website      208

113  Guidepost website, SBC Investigation and    232
     Report


    (*Exhibits retained by counsel for Plaintiff.)

Veritext Legal Solutions
www.veritext.com                                           888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 6 of 342 PageID #: 4638

1                    P R O C E E D I N G S

2                         * * * * * *

3                    VIDEOGRAPHER:  Good afternoon.  We

4          are going on the record on the 1:05 p.m. on

5          March 20th, 2024.  Please note that the microphones

6          are sensitive and may pick up whispering and

7          private conversations.  Please mute your phones at

8          this time.

9                    Audio and video recording will

10         continue to take place unless all parties agree

11         to go off the record.

12                    This is Media Unit 1 of the

13         30(b)(6) deposition of Guidepost Solutions, LLC,

14         on their behalf Ms. Krista Tongring, in the

15         matter of Johnny M. Hunt versus Southern Baptist

16         Convention, et al., filed in the United States

17         District Court for the Middle District of

18         Tennessee, Nashville Division, Case Number

19         3:23-cv-00243.

20                    The location of this deposition is

21         1250 I Street, Northwest, Suite 901, Washington,

22         D.C. 20005.

1          My name is Gordon Thomas

2    representing Veritext Legal Solutions.  And I'm

3    the videographer.  The court reporter is Felicia

4    Newland from the firm Veritext Legal Solutions.

5               Counsel and all present, including

6    remotely, will now state their appearances and

7    affiliations for the record, beginning with the

8    noticing attorney.

9               MR. MACGILL:  Rob MacGill and Patrick

10   Sanders on behalf of Pastor Johnny Hunt, the

11   Plaintiff.

12              MR. KLEIN:  Good afternoon.  Scott

13   Klein.  And with me is Alex Otchy, from Mintz &

14   Gold, representing Guidepost, in particular, Krista

15   Tongring, in her role as corporate representative

16   for the 30(b)(6) deposition.

17              MS. CALLAS:  Gretchen M. Callas and

18   Brandon Bundren for the Executive Committee of the

19   Southern Baptist Convention.

20              MR. MURRAY:  This is Scott Murray

21   from MacGill, PC, also for the Plaintiff, Johnny

22   Hunt.

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 8 of 342 PageID #: 4640

1              MS. KLEIN:  Patty Klein on behalf of

2       Guidepost Solutions.

3              MR. PIETSCH:  Matt Pietsch on behalf

4       of Southern Baptist Convention.

5              MR. BESEN:  Gene Besen on behalf of

6       the Southern Baptist Convention Executive

7       Committee.

8              MS. NOKES:  Scarlett Nokes on behalf

9       of the Southern Baptist Executive Committee.

10             MR. MACGILL:  Okay.  Do you want to

11       swear the witness?

12                       *  *  *  *  *  *

13       Whereupon,

14                       KRISTA TONGRING

15       was called as a witness and, having been first duly

16       sworn, was examined and testified as follows:

17             EXAMINATION BY COUNSEL FOR PLAINTIFF

18       BY MR. MACGILL:

19             Q      Would you state your name for the

20       record, please?

21             A      Krista Tongring.

22             Q      And are you appearing today in

1          response to a notice of deposition for a corporate

2          representative of Guidepost?

3                    A      Yes.

4                    Q      Okay.  Well, let's start with your

5          background.  Do you have a LinkedIn profile?

6                    A      I do.

7                    Q      All right.

8                    MR. MACGILL:  Let's put that up as

9          the next exhibit Exhibit 105.

10                   (Tongring Deposition Exhibit Number 105

11                    marked for identification.)

12         BY MR. MACGILL:

13                   Q      Ma'am, do you see 105 on the screen?

14                   A      I don't.

15                   Q      And is this your --

16                   MR. KLEIN:  Hold on.  She said "I

17         don't" --

18                   THE WITNESS:  I do not --

19                   MR. KLEIN:  Does she have to --

20                   THE WITNESS:  Do I have to click

21         something?

22                   MR. MACGILL:  You do.

```
 1                    MR. KLEIN:  You have to -- there's a
 2        little bit of --
 3                    THE WITNESS:  Okay.
 4                    MR. KLEIN:  -- role-playing in this.
 5                    THE WITNESS:  That's fine.
 6                    Okay.
 7        BY MR. MACGILL:
 8             Q    Okay.  Have you clicked on it?
 9             A    I see it.
10             Q    And is this -- is Exhibit 105 your
11        LinkedIn profile?
12             A    Let me scroll through, please.
13                  I'm not sure if it's the entire
14        thing.  I don't know if there's a way to make it
15        bigger.
16             Q    Do you think something is missing?
17             A    Oh, no.  It made it bigger.  Sorry.
18        Thank you.  It's just it's not -- I can't see the
19        whole first page.  Sorry --
20             Q    Okay.  What are --
21             A    -- I'm not sure how to make it --
22             Q    Okay.  Do you --
```

```
1            A      -- the whole first page come up
2     but --
3            Q      If you --
4            A      Okay.  Hold on.  Just a second,
5     please.
6                   MR. KLEIN:  And, Patrick, I'm fine
7     obviously if you want to help with the technical
8     aspect of it.  It's totally up to you.
9                   MR. SANDERS:  I'm happy to help.
10                  THE WITNESS:  There we go.  Yes, it
11    appears to be a -- some -- like a download or a
12    screenshot of my profile.  I haven't looked at it
13    for a while, but that's what it appears to be.
14    BY MR. MACGILL:
15           Q      This is your LinkedIn profile?
16           A      I just said it appears to be.
17           Q      Okay.
18           A      I haven't seen one that's been
19    downloaded like this, but it --
20           Q      Okay.
21           A      -- appears to be, yeah.
22           Q      You need -- just -- I'm just -- you
```

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 12 of 342 PageID #: 4644

1    say "it appears to be."  I -- it sounds like we're

2    going to have some challenges here just on

3    identifying basic things.  Is this or is this not

4    your LinkedIn profile, to the best of your

5    knowledge?

6            A    Okay.  We're not going to have

7    issues.  I have never seen it that look this way --

8            Q    Okay.

9            A    -- so I can't say that it's my

10   LinkedIn profile.  What I can say is that the

11   information here is correct, as I understand that

12   it is on my LinkedIn page, but I've not seen my

13   LinkedIn profile in this way.

14           Q    Okay.  Fair enough.

15                So let's look at page 2 of 2.

16           A    Okay.

17           Q    Does this page, which is exhibit --

18   page 2 of Exhibit 5, properly summarize your

19   education?

20           A    From college forward, yes, it does.

21           Q    All right.  And you -- you were a --

22   you got a bachelor's degree from Providence

```
 1       College.  Is that correct?

 2              A     That's correct.

 3              Q     And that degree was awarded in --

 4       with a field of study concentrating in sociology?

 5              A     That's correct.

 6              Q     The degree was awarded in 1993?

 7              A     That's correct.

 8              Q     You graduated from the Seton Hall

 9       University School of Law in 1996?

10              A     Yes.

11              Q     And you attended the executive

12       education course at the University of Notre Dame?

13              A     Yes.

14              Q     And you attended that during the year

15       2017.  Is that right?

16              A     It is.

17              Q     All right.  So if you look at page 1

18       of 2, you'll see that there is -- there's a banner

19       at the left.  Do you recognize that banner to be

20       something that's associated with the LinkedIn

21       profile?

22              A     I don't.
```

1          Q      Okay.  Fair enough.

2                 There's a name at the top, "Krista

3     Tongring."  Is that you?

4          A      It is.

5          Q      And is your current -- is your

6     employment experience there summarized properly?

7          A      It is.

8          Q      Okay.  Any inaccuracies in Exhibit

9     105, in terms of your employment experience?

10         A      No.

11         Q      Now, you had some DEA experience for

12    six years and five months.  Did anyone that is

13    currently employed at Guidepost have a background

14    with the DEA as well, to your knowledge?

15         A      Currently?

16         Q      Yes.

17         A      Yes.

18         Q      Who?

19         A      Do you want me to name all of them?

20         Q      How many?  Can you -- is it several

21    people?

22         A      Yes.

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 15 of 342 PageID #: 4647

1    Q    Can you estimate how many?

2    A    About ten.

3    Q    Okay.

4    A    Maybe more.

5    Q    Did you have any role in assisting in

6    securing the employment of any of -- one of those

7    ten or more --

8    A    Yes.

9    Q    -- people?

10         How many?

11    A    At least four, possibly five.

12    Q    Okay.  Now, I noticed here that you

13    state on this piece of paper that's in front of

14    you, Exhibit 105, or this electronic image, that

15    from November 21 through September 2023, you were

16    employed as a senior managing director.  Is that

17    right?

18    A    Yes.

19    Q    And then you were promoted-- were you

20    promoted to executive vice president?

21    A    Yes.

22    Q    And your executive vice president

1    role is designated as DEA regulatory compliance

2    practice.  What is "DEA"?

3              A     Drug Enforcement Administration.

4              Q     Okay.  What does your practice

5    currently as executive vice president involve, in

6    general terms?

7              A     In general terms, we assist DEA

8    registrants in being compliant with DEA controlled

9    substance laws and regulations.

10             Q     Can you give us an example of what a

11   registrant would be?

12             A     A manufacturer, distributor,

13   pharmacy, hospital, doctor, who holds a DEA

14   registration to handle controlled substances.

15             Q     All right.  Sir, I wanted to -- sir.

16                   Ma'am, I want to go to the next

17   Exhibit.  I'm going to put up Exhibit 106.

18                   (Tongring Deposition Exhibit Number 106

19                    marked for identification.)

20                   MR. KLEIN:  Same thing, when you see

21   it, just click on it.

22                   THE WITNESS:  Okay.  Thank you.

1    Okay.

2    BY MR. MACGILL:

3         Q     Do you that in front of you?

4         A     I do.

5         Q     Have you read this -- is this a

6    Second Amended Notice of Deposition of Guidepost,

7    LLC?

8         A     Yes, that's what it is.

9         Q     And when did you read this?

10        A     I don't remember the day.  Recently.

11        Q     Recently you reviewed it?

12        A     Yes.

13        Q     And can you tell us, are you the

14   representative who has been designated by Guidepost

15   Solutions, LLC to give testimony in connection with

16   this notice of deposition, Exhibit 106?

17        A     Yes.

18        Q     And could you tell the Court what you

19   did to prepare to give testimony today on the

20   topics listed on Exhibit 106?

21             MR. KLEIN:  And I will just advise

22   you, as you know, that you currently can discuss

Veritext Legal Solutions
www.veritext.com                                                  888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 18 of 342 PageID #:
4650

1      the fact that you may have spoken with counsel,

2      but -- and Rob is not looking for it, do not reveal

3      any of the actual communications that you actually

4      had with us.  But with that caveat, you, of course,

5      are free to answer Mr. MacGill's questions.

6                      THE WITNESS:  Thank you.

7                      I met with counsel.  I reviewed

8      documents and e-mails.  And I believe I

9      communicated with some of my colleagues.

10     BY MR. MACGILL:

11             Q     Who were the colleagues you

12     communicated with?

13             A     Russ Holske, Samantha Kilpatrick,

14     Julie Myers Wood.  I think that was it.

15             Q     Okay.  What did you speak to Julie

16     Myers Wood about in connection with your

17     preparation?

18                     MR. KLEIN:  And I would just caution

19     you that if you're discussing a conversation that

20     counsel was on as well, please do not provide that

21     communication, but if it was a conversation with

22     you and Ms. Myers Wood and others with counsel not

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 19 of 342 PageID #:
4651

1   present, then you are free to provide that

2   information.

3               THE WITNESS:  Thank you.

4               Counsel was present during that

5   conversation.

6   BY MR. MACGILL:

7       Q     Okay.  And when was that conversation

8   with -- and this was the CEO of your company?

9       A     Yes.

10      Q     Do you report to her in connection

11  with your -- as the executive vice president?

12      A     I do.

13      Q     Okay.  Do you report to anyone else?

14      A     I don't.

15      Q     Okay.  When was that conversation

16  with your boss --

17      A     Yesterday.

18      Q     -- Ms. Julie Myers Wood?

19      A     Yesterday.

20      Q     And how long did that take?

21      A     I believe it was the -- the entire

22  conversation was approximately a half hour.

1    Q    And counsel was present at all times?

2    A    Correct.

3    Q    And were you there in person with

4    Julie Myers Wood?

5    A    No.

6    Q    Where was she?

7    A    I don't know where she was.

8    Q    Where were you?

9    A    I was at home.

10   Q    And so it was a videoconference?

11   A    It was a Teams call.

12   Q    Okay.

13   A    But we weren't all on video.

14   Q    Okay.  And Mr. Klein was on that

15   call?

16   A    Correct.

17   Q    Anyone else?

18   A    Mr. Otchy.

19        THE WITNESS:  I'm sorry if I'm saying

20   that wrong.

21        MR. OTCHY:  That's okay.

22        MR. KLEIN:  You're not the first

1      person to.

2      BY MR. MACGILL:

3              Q      All right.

4                     MR. KLEIN:  That's --

5      BY MR. MACGILL:

6              Q      So what -- did you review any

7      deposition testimony?

8              A      I did not.

9              Q      What documents did you review to

10     prepare?

11             A      Mostly e-mails or document -- and

12     documents that were attached to e-mails or had been

13     attached to e-mails.

14             Q      How much time did you spend reviewing

15     e-mails and documents attached to them?

16                    MR. KLEIN:  And, Rob, just for

17     clarity, I'm not objecting, but for clarity, are

18     you looking for an answer just regarding her

19     preparation for the corporate representative

20     deposition, because she is being deposed tomorrow

21     in her individual capacity?  Just so you're aware,

22     it may be tricky for her to separate the two, but I

1          wanted to raise that.

2                          MR. MACGILL:  You don't need to

3          separate the two.

4                          THE WITNESS:  Okay.

5                          MR. KLEIN:  And that's fine.

6                          THE WITNESS:  I would say several

7          hours total.

8          BY MR. MACGILL:

9                  Q     How did you choose the documents and

10         the e-mails that you were going to review?

11                 A     It was based on the topics.

12                 Q     I'm sorry?

13                 A     Based on the topics in the

14         deposition --

15                 Q     How did you --

16                 A     -- notice.

17                 Q     All right.  And once you looked --

18         you looked at the topics in Exhibit 106 --

19                 A     Yes.

20                 Q     -- and then determined what you

21         thought might be relevant to those topics?

22                 A     Correct.  I was looking for things

```
1        that might be relevant to those topics.
2               Q      All right.  Did you review financial
3        records?
4               A      I did not.
5               Q      Do you have this access to financial
6        records in the ordinary course of business of
7        Guidepost?
8               A      I do not.
9               Q      Okay.  Do you have any access to
10       budget information?
11              A      For the company?
12              Q      Yes.
13              A      No.
14              Q      Okay.  What did you speak to Mr. --
15       was Mr. -- was counsel present when you spoke to
16       Mr. Holske?
17              A      I did not speak to Mr. Holske, but
18       when we communicated, no, counsel was not present.
19              Q      How did you communicate?
20              A      Over text message.
21              Q      Okay.  What did you text him about?
22              A      How he collected his text messages
```

Veritext Legal Solutions
www.veritext.com                                   888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 24 of 342 PageID #:
4656

1      during the discovery process.

2              Q       Why did you ask him that?

3              A       Because I wanted to be prepared to

4      answer that question as a 30(b)(6) witness.

5              Q       Okay.  How did Mr. Holske go about

6      collecting his text messages?

7              A       He took screenshots of them and

8      provided them to the IT department of Guidepost.

9      And then I believe he uploaded them to a portal

10     also Relativity for counsel to review.

11             Q       What did you speak to Ms. Kilpatrick

12     about?

13             A       The same.

14             Q       What did she tell you?

15             A       That she took screenshots of them and

16     then provided them to -- I'm trying to -- to the IT

17     department.

18             Q       Which IT department?

19             A       Guidepost.  Excuse me.

20             Q       Now, just focusing a little bit on

21     your background as you come to give testimony

22     today, is it fair to say that you were involved in

1     drafting the portions of the report that involved

2     Pastor Johnny Hunt?

3            A     No.

4            Q     Okay.  Ma'am, we put in front of you

5     the next exhibit, which is Exhibit No. 1.

6            A     Okay.

7            Q     Have you seen these interrogatory

8     responses before?

9            A     I have.

10           Q     And when did you last review those?

11           A     I'm not sure.  In the last few

12    months.

13           Q     Okay.  And if you would turn to page

14    2 of 8, there's Interrogatory 1 asking to be --

15    specifically asking your company to identify each

16    individual involved in drafting the portions of the

17    report that involved Johnny Hunt.

18                 Do you see that?

19           A     I do.

20           Q     Okay.  And your company answered this

21    specifically in a way differently than you just

22    testified.  Did it -- did it not when it said that

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 26 of 342 PageID #:
4658

1      Krista Tongring, senior managing director, reviewed

2      and edited a portion of the report of a report

3      related to Plaintiff.  That was your answer from

4      your company, was it not?

5                    MR. KLEIN:  Objection.

6      Mischaracterizes her earlier testimony.  But she

7      can answer.

8                    THE WITNESS:  Thank you.

9                    Yes.  When you asked me did I draft

10     it, I stated no.  Reviewed and edited, I did

11     define as differently than drafted.

12     BY MR. MACGILL:

13          Q     Okay.  So you would -- reviewed and

14     editing, you would not -- strike that.

15                   When I asked you whether you reviewed

16     and edited, you denied that because reviewing and

17     editing is not drafting in your view?

18                   MR. KLEIN:  I believe your question

19     you miss -- you started --

20                   MR. MACGILL:  All right.  Fair

21     enough.

22                   MR. KLEIN:  -- your question, just to

1    make sure --

2    BY MR. MACGILL:

3         Q    So I asked specifically not just a

4    minute ago whether you were involved in drafting

5    the report, and you denied that you were involved

6    in drafting your report, did you not?

7         A    You said, "Did you draft the Johnny

8    Hunt portion of the report," and I said, "No."

9         Q    Okay.  Let me be more specific about

10   what I asked you and your answer will speak for

11   itself, but I will tell you what I asked you.

12             What I asked you specifically, were

13   you, quote, involved in drafting the portions of

14   the report that involved Johnny Hunt?  That's

15   exactly what I asked you, ma'am, and you said "no,"

16   did you not?

17        A    I said no, that I --

18        Q    So --

19        A    -- didn't draft report --

20        Q    -- the words you parsed --

21        A    -- Johnny --

22        Q    The word that you parsed just as we

1      began the deposition today --

2              A       Okay.

3              Q       -- is the word "drafting."

4              A       Correct.

5              Q       Did you not?

6                      And you parsed, quote, drafting to

7      not include reviewed and edited, right?

8                      MR. KLEIN:  Objection.

9      Argumentative.

10                     But you can answer.

11                     THE WITNESS:  Yeah, that's correct, I

12     did.

13     BY MR. MACGILL:

14             Q      Okay.  Now, is the kind of parsing of

15     words that we -- we should expect to hear today as

16     the jury and the court listen to your testimony?

17                     MR. KLEIN:  Objection.  Objection.

18     Argumentative.

19                     But you can answer.

20                     THE WITNESS:  You can expect me to

21     answer truthfully.

22

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 29 of 342 PageID #: 4661

1    BY MR. MACGILL:

2            Q    Okay.  And we'll parse the words in

3    the -- just like you did not three minutes ago when

4    you edited that you -- you used the word "drafting"

5    in contrast to that word differently than reviewed

6    and edited?

7                 MR. KLEIN:  Objection.

8    Mischaracterizes her testimony.

9                 But you can answer.

10                THE WITNESS:  I'm not sure I

11   understand what you -- what your question actually

12   was, so if you could repeat it, that would be

13   really helpful.

14   BY MR. MACGILL:

15           Q    Let me got to the next topic.

16           A    Okay.

17           Q    Will you admit now, without any

18   equivocation on your part, that you, Krista

19   Tongring, were involved in the decision to include

20   the Complainant's allegations against the Plaintiff

21   in the report?

22                A    I will.

1          Q     Okay.  And, in fact, your company

2     admitted that in interrogatory answers that have

3     been filed in this case, right?

4          A     I don't recall so you'd have to show

5     the interrogatory answer to me.

6          Q     Would you describe Guidepost's

7     decision to include allegations of Pastor Johnny

8     Hunt in the report?

9          A     Sure.  Our investigators, who were

10     responsible for that section of the report,

11     conducted their investigation.  Throughout that

12     investigation, myself and Julie Myers Wood kept in

13     touch with them and apprised of their

14     investigation.  At the conclusion of the

15     investigation, we reviewed the section that was

16     prepared of the -- the report.

17               We discussed it internally.  There

18     was editing that occurred.  And based upon our

19     reliance on their expertise and our belief that it

20     was corroborated by all of the witnesses, and by

21     Mr. Hunt's denial, we determined that it was

22     appropriate to include as something that was

1    covered by Bullet Point 1 of the Messenger's

2    motion.

3         Q    When you say you discussed it, that

4    is whether to include to the Complainant's

5    allegations against Pastor Johnny Hunt in the

6    report, who discussed it?

7         A    It was discussed internally, among

8    and between myself, Ms. Myers Wood, Mr. Holske,

9    Ms. Kilpatrick.  I don't know if I can discuss

10   whether the fact that it was discussed among our

11   counsel.

12              MR. KLEIN:  You can say just what you

13   said, you --

14              THE WITNESS:  Right.

15              MR. KLEIN:  -- can't describe any

16   communications if there were any.

17              THE WITNESS:  Okay.

18              MR. KLEIN:  But you can say --

19              THE WITNESS:  Yes, our --

20              MR. KLEIN:  -- that counsel --

21              THE WITNESS:  -- our chief legal

22   officer, Mr. Anthony Collura.  I recall an e-mail

1      with Mr. Bart Schwartz, our chairman, but I don't

2      recall an actual discussion with Mr. Schwartz.  And

3      I believe that's all.

4      BY MR. MACGILL:

5          Q     Now, you indicated that the decision

6      to include the Complainant's allegations against

7      Pastor Johnny Hunt in the report, that that

8      decision had been corroborated in some way.

9               Do you recall that testimony?

10         A     I'm sorry.  If I said "decision," I

11     misspoke.  I meant that the allegations had been

12     corroborated.  My apologies for misspeaking.

13         Q     So you -- you made the judgment that

14     the allegations of whom had been corroborated?

15         A     Mrs. ███████

16               And I -- let me also be very clear.

17     We, as a company, made the determination that the

18     allegations had been corroborated.

19         Q     And you're saying that the -- the

20     company included the deliberation of sorts, it

21     included yourself, your CEO Mr. Holske,

22     Ms. Kilpatrick, your chief legal officer, and

1          perhaps your chairman, is that right, Mr. Schwartz?

2                    A      That's correct.

3                    Q      All right.  Now, the allegations of

4          Mrs. █████ had been, in your judgment, quote,

5          corroborated, unquote, to some extent.  Is that

6          right?

7                    A      As the 30(b)(6), yes.

8                    Q      How -- how had the allegations of

9          Mrs. █████ been corroborated?

10                   MR. KLEIN:  Objection.  I believe

11         it's beyond the scope of the topics, so she is

12         certainly able to answer in her personal capacity.

13                   So you can answer in your personal

14         capacity, but I believe it's beyond the scope of

15         the 30(b)(6) topics.

16                   THE WITNESS:  Thank you.

17                   In my personal capacity, as a

18         prosecutor for over a dozen years, I relied on

19         the judgment of our very two seasoned

20         investigators, their interaction with

21         Mrs. █████ the interviews that they conducted,

22         in addition to Mrs. █████ including the

1    interview of Mr. Hunt, where he denied that any

2    contact occurred between him and Mrs. █████████

3    BY MR. MACGILL:

4         Q    How were the -- what specific

5    corroboration was there of Mrs. █████████

6    allegation?

7                   MR. KLEIN:  Same objection.

8                   You can answer in your personal

9    capacity.

10                  THE WITNESS:  That their --

11   Mr. Blankenship admitted -- or told the

12   investigators that there had been physical sexual

13   contact between Mrs. ██████ and Mr. Hunt, that he

14   was told by Mr. Hunt that that occurred, as well as

15   three other witnesses told the investigators that

16   they were aware that there had been physical sexual

17   contact between Mrs. ██████ and Mr. Hunt, as had

18   been told to them, by Mr. ██████ combined with the

19   fact that then Mr. Hunt denied that any physical

20   sexual contact had occurred when asked by our

21   investigators after having told Mr. Blankenship.

22

1    BY MR. MACGILL:

2            Q    Now, with respect to Mr. Blankenship,

3    did you -- did you review the information

4    Mr. Blankenship had provided?

5                    MR. KLEIN:  Same objection.

6                    You can answer in your personal

7    capacity.

8                    THE WITNESS:  I reviewed the

9    investigator's notes.

10   BY MR. MACGILL:

11           Q    And did you understand that he

12   believed -- strike that.

13                   Do you understand that

14   Mr. Blankenship included that this interaction

15   between Mr. Hunt and Mrs. ██████ was consensual in

16   nature?

17                   MR. KLEIN:  Same objection.

18                   You can answer in your personal

19   capacity, if you know.

20                   THE WITNESS:  I recall that.

21   BY MR. MACGILL:

22           Q    You recall that to be true, do you

1    not?

2           A     I recall that he said that.

3           Q     Yes, ma'am.

4                 And so when you said this was -- the

5    allegations were corroborated, they were

6    consensual, unquote, interaction between

7    Mrs. ███████ and Johnny Hunt would not corroborate

8    anything in terms of sexual abuse, would it?

9                 MR. KLEIN:  Objection.

10   Mischaracterizes her testimony.  And objection.

11   Beyond the scope.

12                 But you can answer in your personal

13   capacity.

14                 THE WITNESS:  Again, in my personal

15   capacity, our investigators made the judgment, and

16   it was in their judgment capacity that they

17   believed Mrs. ███████ when she stated that it was a

18   nonconsensual sexual encounter and that they

19   believed her over Mr. Blankenship.  And we relied

20   on their judgment with -- with all of their

21   encounters with Mrs. ███████ and that's why we

22   believed that it was a nonconsensual encounter.

1    BY MR. MACGILL:

2         Q    Did you make that judgment, ma'am,

3    based on your experience as a lawyer and as a

4    prosecutor, that to disregard what Mr. Blankenship

5    said in terms of what he found after interviewing

6    both parties and participating in a meeting with

7    both parties, concluding that this -- this

8    interaction between the two of them was, quote,

9    consensual, unquote?

10                   MR. KLEIN:  Objection.  Beyond the

11   scope.

12                   But you can answer in your

13   personally capacity, if you know.

14                   THE WITNESS:  In my personal

15   capacity, I agreed with their assessment.

16   BY MR. MACGILL:

17        Q    So you, for your part, rejected

18   Mr. Blankenship's conclusion that this was a

19   consensual interaction in terms of your decision

20   and your judgment individually to include the

21   allegations made by Mrs. █████  in the Guidepost

22   report?

1              MR. KLEIN:  Same objection.

2              You can answer in your personal

3    capacity.

4              THE WITNESS:  I would like for you to

5    repeat that question.

6    BY MR. MACGILL:

7         Q    So for your part, when it came to

8    deciding whether you would be in favor of including

9    the allegations of Mrs. ███ in the report, you

10   decided to give no weight to the conclusion of

11   Mr. Blankenship that the interaction was

12   consensual?

13             MR. KLEIN:  Objection.

14             You can answer in your personal

15   capacity.

16             THE WITNESS:  I -- I don't believe

17   that we gave Mr. Blankenship's word no weight in

18   the sense that we did include his statements in the

19   report, but by including Mrs. ███ statements,

20   then yes, I did choose -- I did believe her and her

21   statements and agreed with the assessment of our

22   investigators.

1    BY MR. MACGILL:

2              Q     Okay.  Now, with respect to these

3    three other witnesses that you made reference to as

4    potentially -- strike that.

5              You made reference to three other

6    witnesses as corroborating the allegations made by

7    Mrs. ███████  Is that right?

8              A     I did.

9              Q     And these three other witnesses had

10   no firsthand knowledge of the encounter between

11   Mrs. ██████  and Pastor Johnny Hunt.  Is that right?

12                   MR. KLEIN:  Objection.  Outside the

13   scope.

14              But you can answer in your personal

15   capacity if you know.

16                   THE WITNESS:  Yes, that's my

17   understanding.

18   BY MR. MACGILL:

19              Q     And you understood as a lawyer,

20   generally speaking, and as a former prosecutor

21   specifically, that you had no firsthand knowledge

22   from any one of these three other witnesses.  Is

1    that right?

2                        MR. KLEIN:  Objection.  Asked and

3    answered.  Objection.  Outside the scope.

4                        But you can answer.

5                        THE WITNESS:  Yes.

6    BY MR. MACGILL:

7         Q    All right.  And with respect to these

8    three other witnesses, put it in very clear terms,

9    these three witnesses only described what

10   Mrs. ████ husband told them, right?

11                       MR. KLEIN:  Same objection.

12                       You can answer.

13                       THE WITNESS:  Yes, that's what I

14   stated.

15   BY MR. MACGILL:

16        Q    Now, with respect to the decision to

17   include this, these allegations of Mrs. ████ in

18   the report, you understood that these allegations

19   were pertaining to an event that had occurred 12

20   years prior?

21                       MR. KLEIN:  Objection.  Outside the

22   scope.

1                 You can answer in your personal

2    capacity.

3                 THE WITNESS:  Yes.

4    BY MR. MACGILL:

5         Q    Did you, yourself, read a long

6    summary that Mr. ███████ prepared pertaining to

7    these events?

8                 MR. KLEIN:  Objection.  Outside the

9    scope.

10                You can answer in your personal

11   capacity.

12                THE WITNESS:  That Mr. ██████

13   prepared?  I'm not -- I don't remember.

14   BY MR. MACGILL:

15        Q    Okay.  Let me show it to you and have

16   you take a look at this.

17        A    Great.  Thank you.

18                MR. KLEIN:  This is a previous one,

19   right, Patrick?

20                MR. MACGILL:  Correct.

21   BY MR. MACGILL:

22        Q    Ma'am, do you have Exhibit 7 in front

1      of you?

2              A    I do.

3              Q    Have you read -- do you recognize

4      this exhibit?

5              A    I would need to look through it.  So

6      I'm going --

7              Q    Looking at --

8              A    -- to do that now.

9              Q    Looking at -- let me just ask you to

10     look at page 1 for a minute.  Do you see the "█████

11     and Alias █████ Story with Samantha B. Kilpatrick

12     and Russell Holske," and dated March 31, 2022?

13             A    I see that.

14             Q    Okay.  So --

15             MR. KLEIN:  Before -- I'm sorry, Rob,

16     to interrupt you.  My apologies, before we can go

17     further, and you know this, but as a reminder

18     though, this document is marked attorney's eyes

19     only, so if you are going to read from it, I would

20     ask that you either not or you remove Mr. Hunt --

21     Dr. Hunt, I'm sorry, into a separate Zoom room.

22                      And I would remind you,

1    Ms. Tongring, that I would ask you not to read

2    from this document unless and until Dr. Hunt is

3    in a separate Zoom room because the document is

4    marked attorneys' eyes only.

5                    Sorry, Rob.

6    BY MR. MACGILL:

7        Q    Did you read this 53-page document

8    prior to the time that you participated in the

9    decision to include the allegations of Mrs. ████

10   and the Guidepost report?

11                   MR. KLEIN:  Same objection.

12                   But you can answer in your personal

13   capacity.

14                   THE WITNESS:  I don't recall.

15   BY MR. MACGILL:

16       Q    Now, focusing on the decision to

17   include Pastor Johnny Hunt in the report that the

18   Guidepost issued, did any one of these six people

19   who participated in the decision, in addition to

20   yourself, express concerns about including Pastor

21   Johnny Hunt in the Guidepost report?

22                   MR. KLEIN:  Objection.  Outside the

1        scope.

2                        But you can answer in your personal

3        capacity.

4                        THE WITNESS:  I don't understand what

5        you mean by "concerns," so if could you explain.

6        BY MR. MACGILL:

7            Q     Well, when I -- what do you -- what

8        do you -- what definition do you have of the word

9        "concern"?

10           A     I don't -- I don't know.  I need you

11       to explain to me so that I can tell you if we had

12       concerns.

13           Q     Okay.  So what can -- what concern --

14           A     Concern can be for someone's

15       well-being.  Concern can be "I think you're doing

16       something wrong.  Concern -- I mean, I need --

17           Q     Yeah.

18           A     -- I need to --

19           Q     This is easy.  Use the definition you

20       just gave, concerned that you might be doing

21       something wrong --

22           A     No.

1           Q      -- you can use that definition.
2     Let's use any reservations.  Let's use that.
3                MR. KLEIN:  You can answer with the
4     same objection.  You can answer that one.
5                THE WITNESS:  Yes.
6     BY MR. MACGILL:
7           Q      Okay.  Just so we're clear on my
8     question, so you're giving the court an unqualified
9     statement that no one, to repeat no one, at
10    Guidepost had a single reservation of any kind or
11    nature, including Pastor Johnny Hunt, in the
12    Guidepost report?
13          A      When we made the decisions --
14               THE WITNESS:  Go ahead.  I'm sorry.
15               MR. KLEIN:  I was just going to
16    object.  I --
17    BY MR. MACGILL:
18          Q      Answer the question, ma'am.
19               MR. KLEIN:  You can answer.  I was
20    just saying I object.
21    BY MR. MACGILL:
22          Q      Answer the --

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 46 of 342 PageID #:
4678

1                    MR. KLEIN:  In your personal capacity

2      you can answer.

3      BY MR. MACGILL:

4              Q     Answer the question.

5              A     Can you repeat it, please?

6              Q     You heard the question.

7                    Did any one, ma'am -- to repeat, did

8      any one of the six people that you named have any

9      reservations of any kind or nature about including

10     Pastor Johnny Hunt in the Guidepost report?

11                   MR. KLEIN:  Objection.

12                   You can answer.  Personal

13     competence, but you can answer.

14                   THE WITNESS:  At the time we

15     determined that we were going to include it, no, no

16     one had any reservations.

17     BY MR. MACGILL:

18             Q     Today?

19             A     No.

20             Q     Okay.  So just to be clear, your CEO

21     had no reservations of any kind expressed in your

22     presence ever about including Pastor Johnny Hunt in

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 47 of 342 PageID #:
4679

1      the report?

2                      MR. KLEIN:  Objection.

3                      You can answer in your personal

4      capacity if you know.

5                      THE WITNESS:  At the time that we

6      determined that we were including it in the report,

7      no --

8      BY MR. MACGILL:

9              Q       Okay.

10             A       -- she did not.

11             Q       Is there another time where she

12     became concerned about it?

13             A       No.

14             Q       How about in May of 2022, when --

15     people are starting to notify your company about

16     the report not being truthful, any concerns then

17     about including Pastor Johnny Hunt?

18                     MR. KLEIN:  Objection.  Outside the

19     scope.

20                     You can answer in your personal

21     capacity, if you know.

22                     THE WITNESS:  No.

1  BY MR. MACGILL:

2          Q       No.

3                  So even when third parties, not

4  involved in the -- in the -- not involved as being

5  named in the report, or otherwise, are expressing

6  concerns about the veracity of the report that you

7  participated in?

8                  You, for your part, never had a

9  concern about including Pastor Johnny Hunt in the

10 report, right?

11                 MR. KLEIN:  Objection.  Asked and

12 answered and assumes facts not in evidence.

13                 But you can answer in your personal

14 capacity.

15                 THE WITNESS:  No.

16 BY MR. MACGILL:

17         Q       And not a single person, to your

18 knowledge, at your company ever expressed a

19 reservation before or after the report was issued

20 about the inclusion of Pastor Johnny Hunt in the

21 report?

22                 MR. KLEIN:  Objection.

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 49 of 342 PageID #: 4681

1    Mischaracterizes her testimony.  Now you're asking

2    about the entire company.  If you meant that,

3    that's fine, Rob.

4                    MR. MACGILL:  To her -- to her

5    knowledge.

6                    MR. KLEIN:  To her knowledge.

7                    You can answer in your personal

8    capacity, if you know.

9                    THE WITNESS:  To my knowledge,

10    despite the fact that various people questioned the

11    veracity of the report that were outside of the

12    company, various people outside of the company, no

13    one within the company who participated in these

14    decisions regretted, thought that we made a wrong

15    decision or expressed reservations about the

16    information that we put in the report.

17    BY MR. MACGILL:

18        Q    And your testimony is that, to your

19    knowledge, not a single person at your company,

20    Guidepost, had any reservations about the inclusion

21    of Pastor Johnny Hunt prior to the time that the

22    publication of this report occurred?

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 50 of 342 PageID #: 4682

1                    MR. KLEIN:  Objection.  Asked and

2         answered.

3                    You can answer again.

4                    THE WITNESS:  My testimony is at the

5         time we determined that we were including the

6         information in the report, no one had a

7         reservation.

8         BY MR. MACGILL:

9              Q    Well, Ma'am, you just told this court

10        and jury not a few minutes ago that there was a

11        decision to -- to -- strike that.

12                   You just told the court and jury that

13        as to the decision to include Pastor Johnny Hunt as

14        a part of the report, there were six people

15        involved in the decision, including the CEO in

16        addition to yourself, right?

17             A    Correct.

18             Q    And you're saying there was a meeting

19        that occurred amongst these six people and you

20        about including Pastor Johnny Hunt, and not one

21        person, not one person, expressed a reservation of

22        any kind or nature about including Pastor Johnny

1    Hunt?

2              MR. KLEIN:  Objection.  She didn't

3    say that all six were involved in that decision.

4    Mischaracterizes her prior testimony.  But in her

5    personal capacity, she can answer again.

6              THE WITNESS:  So this question is

7    different than my previous answer, so let me

8    clarify.  During our deliberative process, we

9    determined -- we discussed whether there was

10   sufficient corroboration, whether we had sufficient

11   corroboration, whether there would be any issues or

12   problems with including this in the report, the

13   information and allegations with regard to your

14   client.  That was part of our deliberative process.

15              So, of course, we discussed whether

16   there were concerns, issues, reservations, and

17   things like that.  At the conclusion of our

18   deliberative process, we determined that there

19   were no reservations, there were no concerns, and

20   there were no issues and determined that we would

21   include this in our report.

22

1     BY MR. MACGILL:

2              Q     Were any reservations expressed in

3     this, quote, deliberative process, end quote, about

4     including Pastor Johnny Hunt?

5              A     I don't recall.

6              Q     You don't recall a single reservation

7     being expressed about including a 12-year-old

8     allegation of Mrs. ███████ in this report?

9                    MR. KLEIN:  Objection.  Asked and

10    answered.

11                   And in your personal capacity, you

12    can answer.

13                   THE WITNESS:  What I recall is

14    whether we felt that we had sufficient

15    corroboration to include it and the decision was

16    yes.

17    BY MR. MACGILL:

18             Q     Ma'am, are you telling this jury that

19    among the six people, including yourself -- six

20    people other than yourself, seven people total,

21    that not one person expressed a reservation of any

22    kind or nature about including a 12-year-old

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 53 of 342 PageID #:
4685

1       allegation in a report by Guidepost?

2                       MR. KLEIN:  Objection.  Outside the

3       scope.  Argumentative.  And asked and answered.

4                       You can answer again in your

5       personal capacity.

6                       THE WITNESS:  Sure.

7                       First of all, not all of us were on

8       the phone or discussing it at the same time.  So

9       when you're saying it's -- it's not all six or

10      seven of us at the same time, again, the

11      discussion was the deliberative process was did

12      we have sufficient corroboration?  The end result

13      was we did.  If there were concerns, it was

14      whether there was sufficient corroboration.  And

15      no, we did not worry about a 12-year-period, and

16      we felt that we had sufficient corroboration.

17      BY MR. MACGILL:

18              Q     Not one person raised his or her hand

19      at any time at Guidepost ever about including a

20      12-year-old allegation from Mrs. ███████ in this

21      report?

22                      MR. KLEIN:  Same objection.  Asked

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 54 of 342 PageID #: 4686

1      and answered.

2                     I'll allow you to answer one more

3      time.  And I'd like, if we can, to move beyond

4      this.  But you can answer one more time.

5                     THE WITNESS:  No.

6      BY MR. MACGILL:

7           Q    Now, with respect to the sufficient

8      corroboration, did any -- did any one of these

9      seven people, which included yourself, raise their

10     hands, so to speak, and say, "Look, these three

11     other, quote, witnesses are only repeating what the

12     husband said," anybody say anything like that,

13     ma'am?

14                    MR. KLEIN:  Objection.  Outside the

15     scope.

16                    You can answer in your personal

17     capacity.

18                    THE WITNESS:  That was taken into

19     consideration when we determined whether there was

20     sufficient corroboration.

21     BY MR. MACGILL:

22          Q    Who -- who raised concerns about a

Veritext Legal Solutions
www.veritext.com                                   888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 55 of 342 PageID #:
4687

1      12-year-old allegation that is -- that has no

2      independent witness validation of a person who had

3      knowledge of the events?

4                      Who raised concerns -- strike that.

5                      Let me state it this way:  Among the

6      seven people who participated in the decision to

7      include the allegations against Pastor Johnny Hunt

8      in the report, did any one of them specifically

9      address three, quote, corroborating, unquote,

10     witnesses?

11                     MR. KLEIN:  Objection.  Outside the

12     scope.

13                     But you can answer in your personal

14     capacity.

15                     THE WITNESS:  I -- I don't understand

16     your question.  I'm sorry.

17     BY MR. MACGILL:

18             Q     Ma'am, the obvious point is you

19     have -- you've said there were three witnesses that

20     corroborated -- or were corroborating.

21                     Do you recall that line of testimony?

22             A     I do.

1          Q     And those witnesses had no firsthand

2     knowledge of the events 12 years prior?

3          A     Yes, that's correct.

4          Q     That's correct, isn't it?

5                And those three witnesses knew only

6     what ███████  ████████ had told them about the event,

7     right?

8          A     Absolutely.

9          Q     With respect to those two basic and

10    undisputed facts about these three witnesses, did

11    any one of the seven, you at Guidepost, raise

12    concerns about those circumstances?

13                MR. KLEIN:  Objection as to form.

14                You can answer in your personal

15    capacity.

16                THE WITNESS:  Those facts that you

17    just said were taken into consideration when

18    looking at the totality of the circumstances for

19    corroboration.  So you say "raised concerns," I say

20    we considered that.

21    BY MR. MACGILL:

22          Q     Okay.  Did anyone as they, quote,

1    considered that, using your terminology, as they,

2    quote, considered that, ma'am, did any one express

3    any reservations about -- including Pastor Johnny

4    Hunt based on these three witnesses and those

5    circumstances?

6                    MR. KLEIN:  Objection.

7                    You can answer in your personal

8    capacity.

9                    I'd ask you to tone it down a

10   little bit in terms of badgering the witness,

11   Rob.  Of course, it's your deposition, but I'd

12   ask you as a courtesy to do that.

13                   But you can answer the question.

14                   THE WITNESS:  Not that I recall.

15   BY MR. MACGILL:

16        Q    Okay.  Now, focusing on whether there

17   was any, to repeat any, corroboration of any kind

18   or nature of the allegations of Mrs. ████████ did

19   any one of the seven people that participated in

20   the decision, to include Pastor Johnny Hunt, raise

21   a concern about Mr. Blankenship stating that the

22   interactions between those two 12 years prior had

```
 1      been, quote, consensual, unquote?
 2                      MR. KLEIN:  Objection.  Outside the
 3      scope.
 4                      You can answer in your personal
 5      capacity, if you know.
 6                      THE WITNESS:  No.
 7      BY MR. MACGILL:
 8           Q     Was the issue of consent
 9      corroborated?
10                      MR. KLEIN:  Objection.  Outside the
11      scope.
12                      You can answer in your personal
13      capacity.
14                      THE WITNESS:  The issue of consent,
15      was it corroborated?
16      BY MR. MACGILL:
17           Q     Yeah.  Did anyone -- anyone other
18      than Mr. Blankenship address the issue of consent?
19           A     Mrs. ████
20           Q     Okay.  Anyone else?
21           A     No.
22           Q     Okay.  So you have with respect to --
```

Veritext Legal Solutions
www.veritext.com          888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 59 of 342 PageID #: 4691

1           A      Well, let me amend that.

2           Q      You want to amend what?

3           A      The fact that I said it wasn't

4      corroborated.

5           Q      Okay.  So you want to amend the

6      testimony that you gave?

7           A      Yes.

8           Q      Okay.  Please do.

9           A      We felt that it was partially

10     corroborated when your client lied about having

11     contact with her.

12          Q      Okay.  When our client lied about

13     having contact with her?

14          A      Uh-huh.

15          Q      Okay.  And what lie are you referring

16     to?

17          A      The fact that when he was asked by

18     Ms. Kilpatrick and Mr. Holske whether they had any

19     contact whatsoever, that he denied it.

20          Q      Okay.  Now, are you aware of the

21     circumstances of that interview that you're just

22     referring to?

1           A       Yes.

2           Q       Was that an ambush interview, ma'am?

3                   MR. KLEIN:  Objection as to --

4       objection.  Outside the scope.

5       BY MR. MACGILL:

6           Q       Would you --

7                   MR. KLEIN:  And -- let me finish the

8       objection.

9                   You can answer in your personal

10      capacity, you can answer his question.

11      BY MR. MACGILL:

12          Q       Was that an ambush interview, ma'am,

13      of Pastor Johnny Hunt?

14                  MR. KLEIN:  Objection as to form.

15                  You can answer.

16                  THE WITNESS:  I don't believe so.

17      BY MR. MACGILL:

18          Q       Okay.  Did they -- did your company

19      take any steps, just in terms of it being a

20      fair-and-balanced entity, doing an independent

21      investigation give Pastor Johnny Hunt any notice in

22      advance of the topics that would be covered in this

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 61 of 342 PageID #:
4693

1      interview?

2                      MR. KLEIN:  Objection as to form.

3      And outside the scope.

4                      But you can answer in your personal

5      capacity.

6                      THE WITNESS:  I don't recall.

7      BY MR. MACGILL:

8           Q     You don't recall, but you do

9      recall --

10          A     I recall that it was a followup to

11     their first interview, but I don't recall if there

12     was a set of topics provided ahead of time.  We

13     typically didn't provide topics.

14          Q     Well, that's not --

15          A     Wouldn't --

16          Q     -- true -- that's not true, ma'am.

17     You were provided a list of topics to the ████████

18     before you interviewed them on multiple occasions,

19     did you not?

20                      MR. KLEIN:  Objection as to form.

21     Outside the scope.

22                      You can answer in your personal

 1    capacity, if you know.

 2                    THE WITNESS:  That, I don't know.

 3    BY MR. MACGILL:

 4          Q    Let met rephrase the question.  Let

 5    me rephrase the question.  I'm going to make a

 6    question out of a statement.

 7                    MR. KLEIN:  Thank you.

 8    BY MR. MACGILL:

 9          Q    It's a fact, isn't it, that your

10    company gave advance notice to the ████████ of

11    topics that they would be addressing during the

12    time that your company would on occasion interview

13    them.  Is that right?

14                    MR. KLEIN:  Objection.  Outside the

15    scope.

16                    You can answer in your personal

17    capacity if you know.

18                    THE WITNESS:  I don't know.

19    BY MR. MACGILL:

20          Q    You don't know?

21                    Well, ma'am, you were participating

22    in a decision as to whether or not this should be

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 63 of 342 PageID #: 4695

1       published.  You don't know what kind of, quote,

2       care and feeding, unquote, there was by your copy

3       of the █████████

4                       You're not aware of that?

5                       MR. KLEIN:  Objection as to form.

6       Compound and outside scope.

7                       But you can answer, if you can.

8                       THE WITNESS:  I am not aware of

9       whether they were given topics to discuss ahead of

10      time.

11      BY MR. MACGILL:

12              Q     How could you then make a decision if

13      you thought -- strike that.

14                      As an individual investigatory body,

15      and one making a decision on whether to include

16      allegations like those made against Pastor Johnny

17      Hunt, wouldn't you need to know whether there was

18      advanced notice given to the ████████ about topics

19      that they were going to be interviewed upon?

20                      MR. KLEIN:  Objection.  Outside the

21      scope.

22                      You can answer in your personal

```
 1     capacity.
 2                    THE WITNESS:  I don't believe so.
 3     BY MR. MACGILL:
 4          Q     Now, you -- I used the phrase "care
 5     and feeding."  You understand -- you've heard that
 6     phase or understand the meaning of that phrase in
 7     connection with your work as a prosecutor, right?
 8          A     I've never heard that phrase before.
 9          Q     Okay.  You don't understand the
10     concept of the, quote, care and feeding of
11     witnesses, the kind of -- the kind of reference
12     that that makes?
13                    You don't understand that?
14          A     I don't.  I've never heard that
15     phrase before.
16          Q     Okay.  Never seen that in DoJ
17     documents that have been published?
18          A     I just said that I've never heard
19     that phrase before.
20          Q     Okay.  Do you understand -- you
21     understand that with respect to the ▇▇▇▇▇ there
22     were multiple interviews that were made?
```

1                    MR. KLEIN:  Objection.  Outside the

2         scope.

3                    But you can answer.

4                    THE WITNESS:  Yes, I do understand

5         that.

6         BY MR. MACGILL:

7              Q    How many interviews -- tell the court

8         and jury here how many times your company in

9         connection with its, quote, independent, unquote,

10        investigation.

11                   MR. KLEIN:  Objection.

12        BY MR. MACGILL:

13             Q    The number of interviews that your

14        company conducted of the ████████

15                   MR. KLEIN:  You can answer.

16                   THE WITNESS:  I don't know.

17        BY MR. MACGILL:

18             Q    Can you estimate it?

19             A    I would say probably at least five,

20        if not more.

21             Q    How many interviews did your company

22        engage in with Pastor Johnny Hunt?

1          A      Two.

2          Q      Ma'am, I'm going to refer you to the

3     next document.  This is going to be Exhibit 1.

4     This is -- if you click on Exhibit 1 --

5               MR. KLEIN:  She already has access to

6     that document.

7               THE WITNESS:  Yeah.  I see that.

8     Thank you.

9               MR. KLEIN:  Yeah.

10    BY MR. MACGILL:

11         Q      If you look at Interrogatory No. 2,

12    can you see there with your own eyes that there are

13    11 interviews of these -- of the ▮▮▮▮▮▮ that are

14    referenced in your company's interrogatory

15    response?

16         A      I'm counting.

17                Actually I counted 12.

18         Q      Okay.  Now, with respect to these 12

19    interviews, do you find --

20         A      One, two, three --

21               MR. KLEIN:  Hold on, Rob, she's still

22    counting.

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 67 of 342 PageID #:
4699

1          MR. MACGILL:  She's still counting.

2    Okay.  Good.  Got it.

3    BY MR. MACGILL:

4          Q    Keep counting, please.

5          A    Nope, you were right, 11.

6          Q    All right.

7          A    Sorry.

8          Q    So you now know that -- did you know

9    it before coming here today?

10         A    I have seen that before, but I just

11   didn't recall.

12         Q    You didn't recall there were 11

13   interviews by your company?

14         A    I don't -- so from what I -- what I

15   recall of the interaction with Mr. and Mrs. ████

16   not all of these I would characterize as actual

17   interviews.  There was a lot of interaction with

18   the ████ about whether or not they even wanted

19   to come forward.  We didn't know the extent, I

20   believe, of -- I don't even think we knew who

21   the -- who Mr. Hunt was in the very beginning when

22   Mr. ████ first reached out.  So I don't know that

1          I would characterize all of these as quote,

2     unquote, interview, what I would define as an

3     interview, but, yes, there were 11 interactions

4     according to this of either Mr. and Mrs. ████

5     individually or together.

6               Q    Again, parsing words, you're --

7     you're calling this listing interactions, not

8     interviews, right?

9                    MR. KLEIN:  Objection.

10    Mischaracterizes her testimony.

11                   THE WITNESS:  I'm just trying to

12    explain.

13                   MR. KLEIN:  You can answer.

14    BY MR. MACGILL:

15               Q    You're parsing words again.  And

16    you're saying these are not interviews, these are

17    interactions in your judgment.  Is that right?

18                   MR. KLEIN:  Objection.

19    Argumentative.  And mischaracterizes her testimony.

20                   But you can answer in your personal

21    capacity.

22                   THE WITNESS:  I stand by what I said.

1      BY MR. MACGILL:

2              Q     Okay.  Now, when you parsed the words

3      and you characterized these as not as interviews,

4      but interactions.  Do you know that your company

5      was giving on its oath the description of the

6      number of interviews that had occurred?

7                    Did you know that?

8                    MR. KLEIN:  Objection.

9      Argumentative.

10                   You can answer.

11                   THE WITNESS:  I know what the

12     interrogatory was responding to, yes.

13     BY MR. MACGILL:

14             Q     And the interrogatory -- let's read

15     it together.  Could you read out loud the first

16     sentence in to Interrogatory No. 2?

17             A     "Did Guidepost conduct any interviews

18     of the Complainant, Johnny Hunt, or any other

19     person related to the Complainant's allegation

20     against Johnny Hunt?"

21             Q     Now --

22             A     Do you want me to continue?

1          Q     I think that's good.  I think that
2     confirms --
3          A     Okay.  Great.
4          Q     -- that your company, on its oath,
5     answered the -- described the number of interviews,
6     didn't it?
7                And it described 11 interviews,
8     right?
9          A     It did.
10          Q     And not only was this answered that
11     way, but that particular response, like all the
12     others, was verified to be truthful on the oath of
13     your chief legal officer, wasn't it?
14          A     I don't know who signed it, but --
15          Q     Well, let's --
16          A     -- if you tell me that --
17          Q     -- look -- let's took --
18          A     Okay.
19          Q     -- to make sure you're comfortable
20     with understanding the solemn nature of the
21     undertaking by your company in connection with
22     providing this testimony?

Veritext Legal Solutions
www.veritext.com                                           888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 71 of 342 PageID #: 4703

1       A       Yes --

2       Q       Yes?

3       A       -- it was Mr. Collura.

4       Q       And what he said was that he's chief

5       legal officer of Guidepost, right?

6       A       He is, chief operating officer and

7       chief legal officer.

8       Q       And he said, "I have personal

9       knowledge of the information set forth in the

10      answers to the foregoing interrogatories," right?

11      A       He did.

12      Q       And not only that, he said that he

13      declared under 28 United States Code 1746, under

14      penalty of perjury, that the foregoing answers to

15      those interrogatories are true and according to the

16      best of my knowledge, information, and belief,

17      right?

18      A       He did.

19      Q       Okay.  He swore to the fact there

20      were 11 interviews on one part of this, quote,

21      independent, unquote investigation, right?

22      A       I wouldn't put quotes around it, but

1    he did swear to that.

2           Q     All right.  And on -- when you looked

3    at another -- another part of this, that is Pastor

4    Johnny Hunt, your testimony is that there were

5    three interviews?

6           A     I believe I said two.

7           Q     Two.  Fair enough.

8                 Now -- but let's parse -- let's parse

9    the interviews of Pastor Johnny Hunt.  Tell this

10   court and this jury, Ma'am, how many, quote,

11   interviews, unquote, there were of Johnny Hunt

12   pertaining to the allegations at issue or raised in

13   your report on the Guidepost?

14                MR. KLEIN:  Objection.  Outside the

15   scope.

16                You can answer.

17                THE WITNESS:  I believe there was

18   one.

19   BY MR. MACGILL:

20           Q     One.

21                So you have 11 interviews on one side

22   of this, allegations associated with the ██████

1    and you have one interview of Pastor Johnny Hunt,

2    right?

3                    MR. KLEIN:  You can answer.

4                    THE WITNESS:  Yes.

5    BY MR. MACGILL:

6          Q    So let's go back.  So now we know

7    that there are seven of you, not just one, two or

8    three, but there are seven of you at Guidepost that

9    are making the decision to include allegations of

10   Johnny Hunt.

11                   Did any one of you raise a concern to

12   the effect that, "Hey, we've got 11 interviews of

13   the ███████ on the one hand by our investigators at

14   Guidepost and we have one interview of Pastor

15   Johnny Hunt"?

16                   Anybody raise a concern like that?

17                   MR. KLEIN:  Objection.  Outside the

18   scope.

19                   You can answer in your personal

20   capacity, if you know.

21                   THE WITNESS:  Not that I recall.

22

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 74 of 342 PageID #: 4706

1    BY MR. MACGILL:

2            Q      Now, after the first ███████

3    interview, did you get a text from Mr. Holske about

4    that first interview?

5                  Did you get a text --

6            A      Can I --

7            Q      Let me re --

8            A      Can I try and --

9                  MR. KLEIN:  She wants to process.

10                 THE WITNESS:  -- go through my

11   memory?

12                 I possibly did.  I -- I somewhat

13   remember that, but if there's a document that

14   would refresh my memory, that would be really

15   helpful.

16   BY MR. MACGILL:

17           Q      Okay.  Do you recall -- you said you

18   remember -- do you recall Mr. Holske sending you a

19   text immediately after his first ███████ interview?

20           A      Possibly.

21           Q      Okay.  Did you read that in

22   preparation for your testimony here today?

1          A     No.

2          Q     You don't recall?  You didn't read

3     it?

4          A     No.

5          Q     Okay.  Take a look at Exhibit 6 on

6     your computer if you would, please.

7                Do you have Exhibit 6 in front of

8     you?

9          A     I am pulling it up now.  I see it.

10         Q     And is this, Ma'am, is Exhibit 6 a

11    text that Mr. Holske sent to you immediately after

12    the first ████ interview?

13         A     No.

14         Q     When did -- when was this sent to

15    you?

16         A     Well, it wasn't after the first

17    ████ interview.  It wasn't after the first time

18    he talked to ████ because he just said, "I just

19    spoke to ████ again."

20         Q     Go back to the -- the

21    interrogatory -- the interrogatory answers that

22    were given to us by your company said that the

1    February 11th, 2022, was the first interview made

2    of the Complainant's husband by Russell Holske.

3          A    Oh, I see.  Then that explains it

4    when I was talking about interactions.  So you're

5    right, I was wrong.  Those were the interviews that

6    we did -- that we did.  And I was talking about

7    interactions, which were obviously not included in

8    that list, so I was wrong.  I apologize.

9          Q    Let's go back to the text.

10         A    Okay.  I'm here.

11         Q    So on February 11, 2022, you get a

12   text from Mr. Holske where he says, quote, Give me

13   a call when you can.  Just spoke to ███ again and

14   he opened up.

15         A    Uh-huh.

16         Q    Okay.  You got that text?

17         A    I see it, yes --

18         Q    And he --

19         A    -- I do.

20         Q    And he also says to you, "It's all

21   that I thought and more."

22         A    Uh-huh.

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 77 of 342 PageID #:
4709

1           Q     Okay.  And did you respond to that?

2           A     I did.

3           Q     And you said.  "Okay.  Will call

4     soon."

5           A     Uh-huh.

6           Q     Now, ma'am, at this time you were --

7     you were operating at Guidepost in the context

8     where you had not one new allegation of sexual

9     abuse to report, right?

10          MR. KLEIN:  Objection as to form.

11          THE WITNESS:  I don't understand what

12    you mean.

13    BY MR. MACGILL:

14          Q     It's crystal clear, ma'am.  As of

15    February 11, 2022, you don't have evidence of any

16    new allegation of sexual abuse involving an

17    executive committee member as of that time?

18          A     Oh, are you talking about Bullet

19    Point 1?

20          Q     My question stands.

21          A     Okay.

22          MR. KLEIN:  You can answer that

1    question.  That's one of the topics that was

2    raised.

3                    THE WITNESS:  Oh, okay.

4                    No, that's correct.

5    BY MR. MACGILL:

6        Q    Okay.  So the context when you get

7    this text is you have no new allegations of sexual

8    abuse involving any executive committee member, and

9    now for the first time you have a reference to what

10   we see from Mr. Holske to you in this text.  Is

11   that right?

12       A    Well, that wasn't the first time I

13   had heard about it, but yes, this is the first

14   reference in this text.

15       Q    So now for the first time you have a

16   possibility of including something new in a report

17   about sexual abuse involving executive committee

18   members that the SBC or the executive committee had

19   not seen before, right?

20       A    Yes.

21       Q    Okay.

22       A    That's correct.

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 79 of 342 PageID #:
4711

1          Q     And you responded very quickly, you

2     responded, "Okay.  Will call you soon," right?

3          A     That's --

4                MR. KLEIN:  Objection as to form.

5                THE WITNESS:  -- what I said.

6                MR. KLEIN:  You can answer.  You

7     already did.

8                THE WITNESS:  Sorry.

9                MR. KLEIN:  That's okay.

10                THE WITNESS:  That's what I said,

11     yes.

12     BY MR. MACGILL:

13          Q     And then you said -- did you text

14     back, "Hey just wanted to see if you were able to

15     send Julie something short tonight like what we

16     discussed on call."  Is that right?

17          A     That's correct.

18          Q     And had you discussed on

19     February 11th, 2022, the conversation or the

20     interview that was had by Mr. Holske with Mr. ███

21     ███

22          A     I believe so, yes.

1          Q     And so you wanted to get this news
2     to -- to the CEO of the company that night.  Is
3     that right?
4          A     That's what I see in my text message.
5          Q     Let's pause here for a minute.  And I
6     you -- I want you to tell the court and jury how
7     much money had your company spent at this time on
8     the investigation as of this date?
9          A     No idea.
10         Q     No idea.
11               Had you spent by this time hundreds
12    and hundreds of thousands of dollars and not found
13    one new allegation of any sexual abuse alleged as
14    against any executive committee member?
15               MR. KLEIN:  Objection.  Outside the
16    scope.
17               You can answer in your personal
18    capacity.
19               THE WITNESS:  I don't know how much
20    money we had spent.
21    BY MR. MACGILL:
22         Q     You can't even affirm to the jury now

1        that hundreds of thousands of dollars had been

2        spent without finding any new allegations as of

3        February 11, 2022?

4                        MR. KLEIN:  Objection.  Asked and

5        answered.  Outside the scope.

6                        You can answer again in your

7        personal capacity.

8                        THE WITNESS:  I don't know.

9        BY MR. MACGILL:

10               Q    Well, this was an exciting event for

11       you, wasn't it, February 11th, because knew you had

12       something to report to Guidepost possibly --

13                       MR. KLEIN:  Objection.

14       BY MR. MACGILL:

15               Q    -- that was new, right?

16                       MR. KLEIN:  Objection as to form.

17                       You can answer if you know.

18                       THE WITNESS:  I do not characterize

19       somebody reporting a possible sexual assault as

20       exciting.

21       BY MR. MACGILL:

22               Q    Well, ma'am, this was -- this was a

1  12-year-old allegation.  You were going to settle

2  for anything you could at that point in time on

3  February 11th, 2022 because you, and those working

4  in concert with you at Guidepost, didn't have

5  evidence of a single allegation of sexual because

6  that was new, right?

7              THE WITNESS:  No.

8              MR. KLEIN:  Objection.  Asked and

9  answered.  You can answer.

10 BY MR. MACGILL:

11         Q    But, Ma'am, you -- you then contend,

12 "If I can definitely do it, I just don't want -- I

13 just don't want to duplicate work, let me know."

14 And then he said to you, "Already sent it," right?

15         A    That's what's written there.

16         Q    And so you wanted right away to get

17 this news of this possible witness of a 12-year-old

18 allegation to your CEO of your company pronto,

19 correct?

20             MR. KLEIN:  Objection.  Outside the

21 scope.

22             You can answer in your personal

```
 1      capacity.

 2                    THE WITNESS:  Well, it appears it was

 3      five hours later, but it was that night.

 4      BY MR. MACGILL:

 5           Q    Okay.  But you -- Ma'am, your --

 6      you're doing this at night, this is -- at what

 7      time?  9:15?

 8           A    I can't do the math on --

 9           Q    It's 21 --

10           A    -- military time, but --

11           Q    Right.

12           A    -- I'll take your word for it.

13           Q    Well, you're writing at 9:15 at night

14      to get to -- to get this information to the CEO of

15      your company, right?

16           A    I consistently work very late hours,

17      not just on this case.

18           Q    So this wasn't unusual --

19           A    It was not.

20           Q    -- for you to be sending a text --

21      ma'am, I -- I -- can you point me -- point out to

22      me any other text that you sent on this matter at 9
```

1     o'clock at night?

2                    MR. KLEIN:  Objection.  Outside the

3     scope.

4                    THE WITNESS:  Yes --

5                    MR. KLEIN:  You may answer in your

6     personal capacity.

7     BY MR. MACGILL:

8          Q     You --

9          A     -- I could.

10         Q     Tell -- tell me -- we've had the

11    chance to read everything, too.

12                    Now, can you -- tell me when you

13    texted on this Guidepost report at 9 o'clock at

14    night.

15                    MR. KLEIN:  Objection.  Outside the

16    scope.

17                    You can answer if you can.

18                    THE WITNESS:  I -- you want me to

19    know -- I don't have a text in front of me, but I

20    can tell you that when the report was submitted to

21    the Task Force, I spent -- stayed up the entire

22    night and I was e-mailing and texting.

```
 1      BY MR. MACGILL:

 2              Q    Okay.  Prior to that, prior to

 3      May 2022, when, other than in this e-mail,

 4      Exhibit 6, were you texting on this matter at 9

 5      o'clock at night?

 6                  MR. KLEIN:  Objection as to form.

 7                  You can answer again if you can in

 8      your personal capacity.

 9                  THE WITNESS:  I can tell you that it

10      was my practice to consistently work at late so

11      that I could spend evenings with my daughter, but I

12      can't give you a specific text, so I apologize.

13                  MR. KLEIN:  Rob, at a convenient

14      point if we can just take a break, whenever it's

15      convenient for your questioning.

16                  MR. MACGILL:  Yeah, let me just --

17                  MR. KLEIN:  Go ahead.

18                  MR. MACGILL:  I have a question.

19      BY MR. MACGILL:

20              Q    Was there a discussion among the

21      seven of you who decided to move forward with the

22      allegations or report which -- let me start over.
```

1          Did the seven of you that

2     participated in the decision to include Pastor

3     Johnny Hunt in the report discuss whether the

4     allegations that were made by Mr. and Mrs. ████

5     fell within the scope of the engagement?

6          A    Yes.

7          Q    And who discussed --

8          A    Well --

9          Q    Who had those discussions?

10         A    Yes.  Who had those discussions?  I

11    am trying to think specifically.  I believe it was

12    at least me and -- and I don't know that if this

13    was an actual conversation or it was over e-mail,

14    but I would say at least me and Samantha and

15    Russ -- I'm sorry, Ms. Kilpatrick and Mr. Holske.

16    And I would -- and -- and Julie, excuse me,

17    Ms. Myers Wood.

18         Q    So the four of you would exchange

19    ideas on whether Pastor Johnny Hunt's 12-year-old

20    allegation was within the scope of the engagement?

21         A    Yes.

22         Q    And what was -- what was said?

1          A     The -- the discussion was, "Was it

2     within the scope of the engagement?"  And the

3     conclusion was yes, that it was.

4          Q     What was your -- what did you

5     conclude on that point?

6          A     That it was.

7          Q     Why?

8          A     Because he was a former EC president

9     who began grooming Mrs. ██████ during his

10    presidency.  I believe it was presidency.  I could

11    be wrong on the president, but he was either

12    president or trustee.  I can't remember that part.

13    I think it was president.

14         Q     So you made the decision for your

15    part to be, you felt -- strike that.

16                You felt for your part that it was

17    appropriate to include Pastor Johnny Hunt's

18    12-year-old interaction with Mrs. ██████ for what

19    reason?

20         A     Because he was a former president

21    and --

22         Q     Of what?

```
 1           A      Again, I -- this is what I was going
 2      back and forth with myself, I believe of the SBC.
 3      Sometimes I get the SBC EC and the SBC confused in
 4      that regard.  And he began grooming Mrs. ████
 5      which led to the ultimate abuse while he was the
 6      SBC president.
 7           Q      When was he SBC president?
 8           A      I can't remember.
 9           Q      Well, what information did you have
10      at the time you made this decision to --
11           A      We had an org chart of all of the
12      presidents and trustees and everything throughout
13      the time period.
14                  MR. KLEIN:  I would just ask that you
15      make sure you let Mr. MacGill --
16                  THE WITNESS:  Sorry.
17                  MR. KLEIN:  -- finish asking his
18      question --
19                  THE WITNESS:  Sorry.
20                  MR. KLEIN:  -- before you --
21                  THE WITNESS:  Sorry.
22                  MR. KLEIN:  -- answer.
```

```
 1                    THE WITNESS:  Sorry.  I apologize.
 2                    MR. KLEIN:  It also helps out with
 3        the court reporter who --
 4                    THE WITNESS:  I'm sorry.
 5        BY MR. MACGILL:
 6             Q     Where was the incident -- where was
 7        the instance first?  What state?
 8             A     I don't recall off the top of my
 9        head.  I know it was at the beach.
10             Q     When was the incident?  What time of
11        year?
12             A     I don't know.
13             Q     I'm sorry?
14             A     I don't know.
15             Q     Was Mr. -- was Pastor Johnny Hunt the
16        president of the SBC at the time of this incident
17        alleged by Mrs. ██████
18             A     No.
19             Q     Was he president of the SBC during
20        the time period covered by the engagement?
21                    MR. KLEIN:  When you say
22        "engagement," Rob, just --
```

```
 1                    MR. MACGILL:  Of Guidepost.

 2                    MR. KLEIN:  -- the engagement letter

 3        between Guidepost and SBC?

 4                    MR. MACGILL:  Yes.

 5                    THE WITNESS:  Yes.

 6        BY MR. MACGILL:

 7             Q     Okay.  Now you said he began grooming

 8        Mrs. ████ while he was SBC president.  What

 9        evidence did you have of that at the time you made

10        this decision to include him in the report?

11             A     Mrs. ████ statements.

12             Q     Specifically what did she say?

13             A     I believe that she said that he

14        kissed her inappropriately and said inappropriate

15        things to her.  He did things to -- actually, no,

16        not the kissing.  He did things to get close to

17        her, made inappropriate comments to her.  I can't

18        remember what else.

19             Q     Was the fact that Pastor Johnny Hunt

20        was not on the Executive Committee at the time of

21        the alleged incident discussed by you or any one of

22        the four that made this decision that this incident
```

1       fell within the scope of the report?

2              A      Yes.

3              Q      Okay.  What was discussed about that?

4              A      Whether it precluded it.

5              Q      Okay.  You knew that he was not on

6       the Executive Committee at the time of that alleged

7       incident, right?

8              A      Yes.

9              Q      And that was discussed openly amongst

10      the four of you, Ms. Kilpatrick, Mr. Holske,

11      yourself, and your CEO?

12                    MR. KLEIN:  Objection.  Asked and

13      answered.

14                    You can answer again.

15      BY MR. MACGILL:

16             Q      Right?

17             A      I don't -- again, I don't remember if

18      it was all four of us.  At one time it was a

19      discussion.

20             Q      And every one of those four people

21      knew that Pastor Johnny Hunt was not on the

22      Executive Committee at the time of the alleged

1      incident, right?

2              A      Uh-huh.

3              Q      Okay.

4              A      Yes.

5              Q      Did any one of the four of you make

6      mention of the fact that these allegations were

7      outside the scope of the engagement of Guidepost?

8                      MR. KLEIN:  Objection.  Asked and

9      answered.

10                     You can answer.

11                     THE WITNESS:  No.  We determined that

12     it was within the scope.

13     BY MR. MACGILL:

14             Q      Because of grooming?

15             A      Correct.

16             Q      Because of the allegations of

17     grooming made by Mrs. ███████

18             A      Correct.

19             Q      What corroboration did you have of

20     those, quote, grooming, unquote, allegations?

21                     MR. KLEIN:  Objection as to form.

22                     You can answer.

1                    THE WITNESS:  We believed

2     Mrs. ███████

3     BY MR. MACGILL:

4              Q     Okay.  Did you have any corroboration

5     other than the words that she spoke about events

6     that occurred 12 years or more prior to your

7     report?

8              A     I'm not certain.  I'd have to go back

9     to the note.

10             Q     So when it came to grooming, you're

11    not aware, as you sit here today, having prepared

12    for this deposition of any evidence of any kind or

13    nature that would corroborate statements by

14    Mrs. ███████ that there had been grooming by Pastor

15    Johnny Hunt?

16             A     Again, I'm not sure.

17                   MR. MACGILL:  Let's go ahead and take

18    a break.

19                   MR. KLEIN:  Great.

20                   VIDEOGRAPHER:  The time is 2:18 p.m.

21    We are going off the record.

22             (Recess from 2:18 p.m. to 2:33 p.m.)

1    VIDEOGRAPHER:  The time is 2:33 p.m.

2    We are going back on the record.

3    Please proceed, Counsel.

4    BY MR. MACGILL:

5    Q    Welcome back, ma'am.

6    I want to follow up on where we left

7    off.  You indicated that you -- do you remember the

8    line of testimony you just gave where you described

9    that the decision was made to include Pastor Johnny

10   Hunt in the report because he fit within the

11   engagement as having groomed Mrs. ██████ according

12   to her, when he -- when he was president of the

13   SBC?

14   Do you recall that line of testimony?

15   A    Yes.

16   Q    Okay.  Now, just following up on this

17   decision to include Johnny Hunt, there were --

18   there was an analysis of different things that you

19   talk about today by the seven of you, right?

20   For example, whether the allegations

21   were corroborated, correct?

22   A    Yes.

1          Q      There was also an evaluation of
2     whether this 12-year-old allegation even fit within
3     the terms of the engagement, right?
4          A      By the seven of us?  No, I don't
5     believe I said that.  I said there was -- that was
6     discussed between the four of --
7          Q      The four --
8          A      -- us.
9          Q      -- of you.  Yeah.
10               So the four of you, that would be --
11    the four of you that included the scope of the
12    engagement and whether that was a limit on
13    including Pastor Johnny Hunt, that included just
14    yourself, Ms. Kilpatrick, Mr. Holske, and the CEO
15    of the company, right?
16         A      That's correct.
17         Q      It did not include your chief legal
18    officer, right?
19         A      To my recollection, no.
20         Q      It didn't include Mr. Bart Schwartz,
21    the chairman of your company, right?
22         A      To my recollection, no.

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 96 of 342 PageID #:
4728

1          Q      Okay.  But it included at least the

2     four of you that also participated in -- in

3     determining whether the allegations of Mrs. █████

4     were corroborated, correct?

5          A      Yes.

6          Q      Okay.  Now, when you looked at the

7     issue of corroboration yourself, and the issue of

8     whether this incident even fell within the scope of

9     the report, did anyone express reservations at any

10    time about including Pastor Johnny Hunt?

11               MR. KLEIN:  Objection as to form.

12    Asked and answered.

13               You can answer.

14               THE WITNESS:  I stand by my previous

15    answers.

16    BY MR. MACGILL:

17         Q      Okay.  Did -- so there were no

18    reservations expressed at any time by anybody on

19    any of these things that we've talked about today,

20    whether Pastor Johnny Hunt was included by virtue

21    of the timing of the -- the scope of the engagement

22    and whether the allegations were corroborated?

Page 97

```
 1                    MR. KLEIN:  Objection as to form.

 2                    You can answer.

 3                    THE WITNESS:  I stand by my previous

 4          answers.

 5          BY MR. MACGILL:

 6               Q    Okay.  So -- so we're clear, no one

 7          ever raised any concerns at any time about --

 8          including Pastor Johnny Hunt in the report ever to

 9          your knowledge?

10                    MR. KLEIN:  Objection as to form.

11                    You can answer.

12                    THE WITNESS:  I stand by my previous

13          answer.

14          BY MR. MACGILL:

15               Q    Which is no one ever did?

16               A    Those were not my previous answers.

17               Q    Those were not?

18               A    I explained to you our process --

19               Q    Right.

20               A    -- I explained to you that we

21          deliberated, that we may have talked about, "Are

22          they corroborated?  Are they not?  Are there -- is
```

1        this there?  Is there that?"

2                        I didn't say that there weren't any

3        ever reservations or concerns.  I said that we

4        talked through things and ultimately the decision

5        was there were no reservations, there were no

6        concerns, and we were including it.

7                Q      Prior to the decision, what

8        reservations or concerns were raised by any one of

9        the seven people?

10               A      There were discussions as to was

11       there sufficient corroboration?  Did it fall within

12       the scope as we've discussed?  And, again, the

13       ultimate decision was there was sufficient

14       corroboration and it fell within the scope.

15               Q      Who raised issues about whether there

16       was sufficient corroboration as to -- in -- in

17       connection whether to include Pastor Johnny Hunt?

18                      MR. KLEIN:  Objection.  Outside the

19       scope.

20                      You can answer in your personal

21       capacity.

22                      THE WITNESS:  It was a discussion

1    point.  It wasn't somebody raising an issue.

2    BY MR. MACGILL:

3         Q    Did it -- who -- who spoke about it?

4         A    We all did.

5         Q    Okay.  So everyone spoke to some

6    extent on whether there was sufficient

7    corroboration for the allegations?

8         A    Correct.

9         Q    You did?

10        A    Correct.

11        Q    The CEO of your company raised --

12   participated in that discussion as to whether there

13   was sufficient corroboration?

14             MR. KLEIN:  Same objection.

15             You can answer.

16             THE WITNESS:  Correct.

17   BY MR. MACGILL:

18        Q    All right.  Mr. Holske did?

19             MR. KLEIN:  Same objection.

20             You can answer.

21             THE WITNESS:  Correct.

22

1      BY MR. MACGILL:

2              Q     Each and every one of the seven of

3      you, to one extent or another, addressed the issue

4      of whether or not there had been sufficient

5      corroboration to include Pastor Johnny Hunt in the

6      report.  Is that right?

7                      MR. KLEIN:  Same objection.

8                      You can answer in your personal

9      capacity.

10                     THE WITNESS:  I can't, again, speak

11     to Mr. Schwartz because, as I said in the

12     beginning, I wasn't positive the extent of his

13     participation.  I can't speak to Mr. Collura,

14     because any communications I had with him are

15     privileged.  But for the rest of us, yes.

16     BY MR. MACGILL:

17             Q     You did discuss whether there was

18     sufficient cooperation that the others of you did?

19                     MR. KLEIN:  You said "cooperation," I

20     assume you meant "corroboration"?

21                     MR. MACGILL:  Corroboration.

22                     MR. KLEIN:  Corroboration.

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 101 of 342 PageID #:
4733

1      BY MR. MACGILL:

2              Q      All right.  And then with respect to

3      this issue of whether this incident was even within

4      the scope of the engagement, did -- was that also

5      discussed by each one of the four of you?

6              A      Yes.

7              Q      And that was Ms. Kilpatrick,

8      Mr. Holske, yourself, and your CEO, right?

9              A      Yes.

10             Q      And what was his specific concern

11     that was raised by your CEO about that issue as to

12     whether this allegation was even within the scope?

13                    MR. KLEIN:  Objection as to form.

14                    You can answer.

15                    THE WITNESS:  It wasn't a concern, it

16     was a, "Is it within the scope?"  And we went

17     through whether it was in the scope and determined

18     that it was.

19     BY MR. MACGILL:

20             Q      What were the arguments against

21     concluding it was -- this allegation was within the

22     scope?

1                    MR. KLEIN:  Object as to form.

2                    You can answer.

3                    THE WITNESS:  It wasn't an argument

4      for or against.  It was, was it within the scope or

5      was it not, and determined that it was within the

6      scope.

7      BY MR. MACGILL:

8           Q    What was said as to the issue of

9      whether it was not in the -- strike that.

10                   What was said about whether you could

11     conclude that the engagement was not -- or the

12     interaction was not within the scope --

13                   MR. KLEIN:  Objection.

14     BY MR. MACGILL:

15          Q    -- of the engagement?

16                   MR. KLEIN:  I'm sorry, Rob.

17                   Objection as to form.

18                   You can answer.

19                   THE WITNESS:  If you want me to be

20     that specific, I would need to see the language of

21     the engagement letter.  That would be helpful for

22     right now.

```
 1    BY MR. MACGILL:
 2              Q      Okay.  Can you tell us without
 3    looking at the engagement letter?
 4              A      It would be helpful if I could see
 5    the language of the engagement letter to be that
 6    specific.
 7              Q      Tell us what you can without seeing
 8    the engagement letter.
 9              A      I need to see the engagement letter
10    to be that specific to answer your question, sir.
11              Q      You cannot tell -- you can't tell us
12    anything about the objections raised about whether
13    or not this engagement -- whether or not, including
14    this interaction, was within the scope of the
15    engagement?
16              A      If you would like me to give you an
17    accurate answer, which I would like since I'm under
18    oath, I would like to see the language of the
19    engagement letter.
20              Q      Okay.  Without the letter, you don't
21    have any memory yourself, as you sit here today, of
22    any -- any word spoken by anyone expressing doubts
```

1    or concerns as to whether including this

2    interaction was within the scope?

3          A     As I mentioned before, there weren't

4    doubts or concerns.  It was a decision whether it

5    fell within the scope or it didn't.  If you would

6    like for me to try to give you more specifics of

7    that, I would like to see the language of the

8    engagement letter.  That would be very helpful.

9    Thank you.

10          Q     Okay.  Now, so you know nothing you

11   can testify to -- you can't give us a single word

12   about that decision process on scope or no scope

13   without the engagement letter.  Fair statement?

14                MR. KLEIN:  Objection as to form.

15                You can answer.

16   BY MR. MACGILL:

17          Q     Fair statement; you cannot give us a

18   single word about what was said about whether this

19   interaction was within the scope without reading

20   the engagement letter, right?

21                MR. KLEIN:  Objection.

22   Mischaracterizes her testimony.  But she can

1    answer.

2                    THE WITNESS:  What I said was I would

3    like to be accurate in my testimony.

4    BY MR. MACGILL:

5         Q    Can you or can you not give us any

6    description of any kind without referring to a

7    document?

8         A    If I can answer.  What I said was I

9    would like to be accurate in my testimony since I

10   am under oath.  If you would like me to be accurate

11   in my testimony, which I will because I am under

12   oath, I need to see the language of the engagement

13   letter.

14        Q    Okay.

15        A    If you're not going to show me that,

16   then my answer is I cannot answer that at this

17   time.

18        Q    Okay.  Now -- and that's what we

19   thought, ma'am.  I just want the jury to hear that,

20   that you cannot -- without the crutch of an

21   engagement letter, you can't speak to this issue

22   and provide this jury or this court any guidance

1     whatsoever in terms of what was said by the four of

2     you in terms of whether to -- this interaction was

3     within the scope, right?

4                    MR. KLEIN:  Objection.

5     Mischaracterizes the testimony and argumentative.

6                    You can answer.

7                    THE WITNESS:  That's correct --

8     BY MR. MACGILL:

9          Q     Okay.

10         A     -- I can't discuss something that's

11    happened close to two years ago, a specific

12    conversation, without looking at a sentence or two

13    from the engagement letter, that's correct.

14         Q     Because remembering what happened two

15    years ago, in your case, would be difficult to

16    remember the exact details, right?

17                    MR. KLEIN:  You can answer.

18                    THE WITNESS:  Possibly.

19    BY MR. MACGILL:

20         Q     Possibly.

21                    Yet, you, for your part, when you

22    decided whether to include Pastor Johnny Hunt, you

Veritext Legal Solutions
www.veritext.com                                          888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 107 of 342 PageID #:
4739

```
 1        were comfortable publishing something that occurred

 2        about 12 years ago, right?

 3                     MR. KLEIN:  Objection.  Outside the

 4        scope.  Mischaracterizes her testimony.

 5                     You can answer.

 6                     THE WITNESS:  Yes.

 7        BY MR. MACGILL:

 8              Q     Yes.

 9                     And so you have doubts about

10        testifying to events two years ago for which you

11        were paid, right?

12              A     I was not paid for the work.

13              Q     You did your work for free?

14              A     Guidepost Solutions was paid for the

15        work done for the SBC.

16              Q     And they made you?

17              A     I received a salary from Guidepost

18        Solutions.

19              Q     And your salary, you -- your salary

20        was paid from -- at least in part by the money from

21        SBC Executive Committee, right?

22              A     I have no idea.
```

Veritext Legal Solutions
www.veritext.com                                                 888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 108 of 342 PageID #: 4740

1                    MR. KLEIN:  Objection.

2                    THE WITNESS:  I'm sorry.

3                    MR. KLEIN:  Objection as to form.

4     Outside the scope.

5                    You can answer if you know.

6                    THE WITNESS:  I have no idea.

7     BY MR. MACGILL:

8          Q    But you -- will you admit -- just now

9     will you admit that you billed your time and

10    charged your time for the work on this engagement?

11         A    Among many other engagements.

12         Q    How much were you paid per hour for

13    this engagement?

14                    MR. KLEIN:  Objection.  Outside the

15    scope.

16                    You can answer if you know.

17                    THE WITNESS:  I don't remember.

18    BY MR. MACGILL:

19         Q    What was -- do you have -- what was

20    your hourly rate in 2022?

21                    MR. KLEIN:  Same objection.

22                    You can answer.

```
 1                    THE WITNESS:  For what types of
 2      matters?
 3      BY MR. MACGILL:
 4            Q     This type of matter.
 5            A     This was a different matter because
 6      we had reduced rates, so that's why I'm struggling.
 7      I think it was somewhere in the ███████, but I'm
 8      not sure.
 9            Q     ████ what?
10            A     ███████████████
11            Q     You were paying more than ███████
██    ███████for your work in this case?
13            A     Again, I -- I -- I don't recall.  I
14      can't recall.
15            Q     So you --
16            A     I shouldn't guess.  I can't recall.
17            Q     Your understanding is -- what's your
18      hourly rate today?
19                    MR. KLEIN:  Objection.  Outside the
20      scope.
21                    You can answer.
22                    THE WITNESS:  █████  for DEA matters.
```

1     BY MR. MACGILL:

2              Q     And do you think that you were

3     charged -- you charged approximately ███████████

4     to the SBC for your work in connection with this

5     investigation?

6                    MR. KLEIN:  Objection as to form.

7                    You can answer.

8                    THE WITNESS:  Possibly.

9     BY MR. MACGILL:

10             Q     Were you charging ████████████████

11    of your work in this engagement?

12                   MR. KLEIN:  Same objection.  Outside

13    the scope.

14                   But you can answer.

15                   THE WITNESS:  Matters that pertain to

16    the investigation.  Administrative hours, no.

17    BY MR. MACGILL:

18             Q     So you were paid more than ████████

      ████    ██████for the services that you gave in connection

20    with this engagement, and you're telling this court

21    and jury you can't remember what you did two years

22    ago when you were being paid more than ████████

1      ████.  Is that right?

2                      MR. KLEIN:  Objection as to form.

3      Mischaracterizes her testimony.

4                      You can answer if you can.

5                      THE WITNESS:  I -- yeah, I -- you're

6      going to have to say that again.

7      BY MR. MACGILL:

8           Q    You were paid more than ████████

9      for your work on this report for the SBC.  Is that

10     right?

11                     MR. KLEIN:  Objection as to form.

12     Outside the scope.

13                     In your personal capacity, you can

14     answer.

15                     THE WITNESS:  I told you that was a

16     guess, so I'm not sure.  And -- yeah, that's my

17     answer, I'm not sure.  And, again, I wasn't paid,

18     Guidepost Solutions was paid.

19     BY MR. MACGILL:

20          Q    Okay.  So let's follow the money

21     here.  So you recorded your time and you understood

22     your time was being charged to the Southern Baptist

1     Convention Executive Committee at a rate of

2     approximately ███████████████████████████

      ████ for your time.  Is that right?

4                     MR. KLEIN:  Objection.  Outside the

5     scope.  Mischaracterizes her testimony.

6                     But you can answer.

7                     THE WITNESS:  I recorded my time and

8     the SBC was billed on a monthly basis.

9     BY MR. MACGILL:

10          Q     Who billed them?

11                    MR. KLEIN:  Same objection.

12    BY MR. MACGILL:

13          Q     Who did --

14                    MR. KLEIN:  I'm sorry, Rob.

15    BY MR. MACGILL:

16          Q     Who did the billing function in this

17    engagement?

18                    MR. KLEIN:  Objection as to form.

19    And outside the scope.

20                    You can answer.

21                    THE WITNESS:  I reviewed the bills.

22    They ultimately were approved by Julie Myers Wood

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 113 of 342 PageID #:
4745

1      and sent out by our accounting department.

2      BY MR. MACGILL:

3            Q     Did you review the bills at any time?

4                  MR. KLEIN:  Objection.  Outside the

5      scope.

6                  You can answer in your personal

7      capacity.

8                  THE WITNESS:  Yes, I'm sorry, I just

9      said that I recalled the bills.

10     BY MR. MACGILL:

11           Q     Okay.  I didn't ask a good question.

12                 Did you review the bills throughout

13     the entire engagement?

14                 MR. KLEIN:  Same objection.

15                 You can answer.

16                 THE WITNESS:  Yes.

17     BY MR. MACGILL:

18           Q     All right.  And would you approve --

19     would you edit the bills in any way?  Take time

20     off, add time, those kind of things.

21                 MR. KLEIN:  Objection.  Outside of

22     scope.  And as to form.

1                   You can answer.

2                   THE WITNESS:  I didn't have the

3        authority to do that.

4        BY MR. MACGILL:

5             Q    Okay.  Why would you review the bills

6        then?

7                   MR. KLEIN:  Same objection.

8                   You can answer.

9                   THE WITNESS:  To clean them up.

10       BY MR. MACGILL:

11            Q    When you say "clean them up," what do

12       you mean?

13            A    Grammar, spelling, form, removing

14       names of survivors and other persons that we didn't

15       include in the bills, things like that.

16            Q    And you don't -- and you -- you did

17       that each month during the engagement for the SBC

18       on this matter?

19                   MR. KLEIN:  Outside the scope

20       objection.

21                   But you can answer.

22                   THE WITNESS:  Yes.

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 115 of 342 PageID #:
4747

1    BY MR. MACGILL:

2         Q    All right.  Can you tell the court

3    approximately how much your company billed for the

4    services to the SBC in connection with the

5    Guidepost report?

6              MR. KLEIN:  Objection.  It's outside

7    the scope of the topics that we agreed to.

8              But you can answer in your personal

9    capacity.

10             MR. MACGILL:  Well, you -- we've

11   agreed to nothing.  You made statements -- these

12   are unilateral statements that you have not made.

13   We have not made any agreements.  And we're happy

14   to discuss it.  We haven't made any agreements with

15   you on this.

16             MR. KLEIN:  No, I agree with you,

17   Rob.  I'm saying it's outside the scope of anything

18   we have agreed to.  So we haven't agreed to it,

19   that's the point.

20             MR. MACGILL:  It's fair --

21             MR. KLEIN:  That's my point.

22             MR. MACGILL:  -- and these are

1      unilateral, and that's all I wanted to make clear.

2      BY MR. MACGILL:

3              Q    Answer the question, if you would.

4              A    How much total was billed?

5              Q    Yes, ma'am.

6              A    I don't know.

7              Q    Can you estimate it?

8                   MR. KLEIN:  Same objection.

9                   You can answer.

10                  THE WITNESS:  We discounted it in the

11     end significantly.  I think total -- I can't say

12     total billed, I think total paid was approximately

13     ████████████████

14     BY MR. MACGILL:

15             Q    And total billed was over ██████

16             A    No.

17                  MR. KLEIN:  Objection.

18                  THE WITNESS:  Because we didn't bill

19     it, we discounted it.

20     BY MR. MACGILL:

21             Q    Okay.  Now, so money flow was such

22     that your salary was paid by Guidepost, right?

1          A     Yes.

2          Q     Okay.  You understood that you were

3     being compensated for the work you did on this

4     engagement, right?

5                MR. KLEIN:  Objection as to form --

6     I'm sorry, objection.  Outside the scope.

7                You can answer in your personal

8     capacity.

9                THE WITNESS:  I was being compensated

10    for my total work at Guidepost --

11    BY MR. MACGILL:

12         Q     Which --

13         A     -- part of which was this engagement.

14         Q     And what percentage of your time

15    during the year 2022 was this engagement?

16                MR. KLEIN:  Objection.  Outside the

17    scope.

18                You can answer.

19                THE WITNESS:  For 2022, this

20    engagement was probably 25 percent.

21    BY MR. MACGILL:

22         Q     And 25 percent would represent how

1        many hours approximately?

2                A     I have no idea.

3                Q     How many hours do you bill in a year?

4                MR. KLEIN:  Objection.  Outside the

5        scope.

6                You can answer.

7        BY MR. MACGILL:

8                Q     How many hours did you bill

9        approximately in the year 2022?

10               MR. KLEIN:  Objection.  Outside the

11       scope.

12               But you can answer in your personal

13       capacity.

14               THE WITNESS:  I don't know.

15       BY MR. MACGILL:

16               Q     Can you estimate it?

17               A     Twelve to 1,300.

18               Q     1,200 to 1,300.

19               A     Yes.

20               Q     Okay.  And would the same be true

21       approximately in the year 2023?

22               MR. KLEIN:  Objection.  Outside the

Veritext Legal Solutions
www.veritext.com                                                     888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 119 of 342 PageID #:
4751

1    scope.

2              You can answer if you know.

3              THE WITNESS:  No.

4    BY MR. MACGILL:

5         Q    More or less?

6         A    Much less.

7         Q    Because you have an administrative

8    role now, right?

9         A    No.  Because we're not doing the

10   investigation.

11        Q    No, I'm talking about overall.

12        A    Oh, I'm sorry.

13             For my hours?

14        Q    Yeah.

15        A    Oh, yes, the same.

16        Q    So total hours in 2023 would be

17   approximately 1,200 to 1,300 billable hours for the

18   year?

19        A    Yes.

20        Q    In 2022, you estimate that your 2022

21   billable hours were in the range of approximately

22   1,200 to 1,300 billable hours, right?

1                 MR. KLEIN:  Objection.  Asked and

2       answered.  And outside the scope.

3                 But you can answer.

4                 THE WITNESS:  Uh-huh.  Yes.

5       BY MR. MACGILL:

6            Q    Yes.

7                 And so by using the math that you

8       gave us from, you spent approximately 25 percent of

9       your work year in 2022 on the Guidepost matter,

10      that would be 300 to 325 hours.  Is that right?

11                MR. KLEIN:  Objection.  Outside the

12      scope.

13                You can answer.

14                THE WITNESS:  I'm not going to do the

15      math in my head.  If that's the math, that's the

16      math.

17      BY MR. MACGILL:

18           Q    Okay.  I'll represent to you that

19      one-fourth of 1,200 is 300.  And --

20                MR. KLEIN:  I will stipulate to that.

21      BY MR. MACGILL:

22           Q    -- and one-fourth of 1,300 is 325.

1          Does that sound about right in terms of your --

2                    A     Sure.  If my counsel stipulates to

3          it, yes.

4                    Q     All right.  And in 20 -- going back a

5          year, in 2021, can you estimate for the court how

6          much time you spent on the Guidepost engagement?

7                          MR. KLEIN:  Objection.  Outside the

8          scope.

9                          You can answer.

10                         THE WITNESS:  I'd say probably about

11         the same.

12         BY MR. MACGILL:

13                   Q     About 25 percent of your work a year?

14                   A     Yes.

15                   Q     Approximately?

16                   A     Yes.

17                   Q     All right.  So during the 2020, one

18         year, if the math is -- if 25 percent is --

19         25 percent of 1,200 would be approximately 300 and

20         25 percent of 1,300 would be approximately 325

21         hours that you spent on the Guidepost matter in

22         that year of 2021.  Fair?

1                    MR. KLEIN:  Objection.  Outside the

2          scope.

3                    THE WITNESS:  As general estimates,

4          yes.

5          BY MR. MACGILL:

6               Q     Now, switching topics.  On the

7          committee -- there was a Committee on Cooperation

8          that you interacted with.  Is that fair, in terms

9          of your engagement?

10              A     Yes.

11              Q     And who did you engage with

12         specifically?

13                    Do you recall a gentleman's name?

14              A     Josh, something with a "W."  West --

15         Wester.

16              Q     Okay.  And did you also interact with

17         an SBC Task Force?

18              A     Yes, but Julie did the most -- most

19         of the interacting with them.

20              Q     Do you remember --

21              A     Ms. Myers Wood.  Excuse me.

22              Q     Do you remember that Julie Myers Wood

1     had made -- had written the Sexual Abuse Task Force

2     in late April 2022, providing some draft materials

3     from Guidepost?

4               Do you remember that?

5          A     Can you be more specific in terms of

6     draft materials?

7          Q     Do you remember that -- that your

8     company had agreed to give a copy of the actual

9     portion of the report to the Committee on

10    Cooperation for a factual review of five days prior

11    to the submission of the Task Force?

12              Do you remember that?

13         A     Yes.  Pursuant to the engagement

14    letter.

15         Q     Okay.  Let's go to the next exhibit.

16    And this exhibit will be Exhibit 107.  If you would

17    click on this.

18              (Tongring Deposition Exhibit Number 107

19               marked for identification.)

20              THE WITNESS:  Okay.

21    BY MR. MACGILL:

22         Q     And do you see that this -- this is a

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 124 of 342 PageID #: 4756

1     memorandum to the Sexual Abuse Task Force that was

2     from Ms. Wood and from you on April 26th?

3          A    I see it.

4          Q    Did you approve this memorandum

5     before the -- before it was sent?

6              MR. KLEIN:  Are you asking in her

7     personal capacity, Rob, at this moment that

8     question?

9              MR. MACGILL:  Yes.

10             MR. KLEIN:  You can answer in that

11    capacity.

12            THE WITNESS:  It would have been

13    approved by Ms. Myers Wood, but I drafted it.

14    BY MR. MACGILL:

15          Q    Okay.  And there is a suggested

16    protocol on page -- the bottom of this first page.

17    Do you see that?

18          A    Let me --

19          Q    It begins, "Below is a suggested

20    protocol" --

21          A    No, I know where it is, I just need

22    to make the page smaller so I can see it.

1          Q      Okay.

2          A      I see.

3          Q      All right.  And this is a -- as you

4     said, Exhibit 107 is a document that you authored?

5          A      I drafted it, yes.

6          Q      And you drafted it.  Is that

7     different than authored?

8                 Did you write this memorandum?

9          A      Yeah.

10         Q      Okay.  And did -- after you wrote

11    this memorandum, was it sent to the Sexual Abuse

12    Task Force?

13         A      Yes.

14         Q      And was it sent on April 26th, 2022?

15         A      I would need to see the e-mail, but

16    on or about that date, yes.

17         Q      Okay.  Now, it says here in your

18    Exhibit 107, "The CoC will only be able to review

19    the report in a designated room with either a task

20    force member or Guidepost representative (monitor

21    present at all times)."

22                Was that the protocol that you --

1      part of the protocol that you wrote?

2              A      I wrote that, yes.

3              Q      And you also say here, is Bullet

4      Point 4, "If notes are taken by the CoC, the notes

5      must be handwritten and will be collected by the

6      monitor at the end of each review date."

7                     Do you see that?

8              A      I do.

9              Q      You included that?

10             A      I wrote that.

11             Q      And you also wrote, "The notes will

12     be destroyed at the conclusion of the review,"

13     right?

14             A      I wrote that.

15             Q      And then you also wrote, "Guidepost's

16     personnel will meet with the CoC at the conclusion

17     of their review to discuss any factual issues they

18     may have with the report."

19                    You include that as part of the

20     protocol?

21             A      I wrote that.

22             Q      Continuing, you wrote also, "The --

1    the Guidepost will discuss suggested language or

2    changes with the CoC.  Guidepost will not comment

3    to any language changes during this meeting."

4              Do you see that?

5        A    I do.

6        Q    And you wrote that?

7        A    Yes.

8        Q    And that -- these all were -- these

9    were each portions of the protocol that you wrote

10   in this memorandum, Exhibit 107?

11       A    Yes.

12       Q    And does this, Ma'am, accurately

13   describe the review process for the draft report?

14       A    For the factual portion of the draft

15   report, yes.

16       Q    Now, I want to pause here, Ma'am, and

17   make sure we're clear about some things.

18       A    Uh-huh.

19       Q    Pastor Johnny Hunt was not included,

20   to repeat not included, in the version of the

21   report that was shared with the Committee on

22   corp -- Cooperation, was he?

1           A      On -- on date that they reviewed it,

2    on May -- or, sorry.  There were two separate

3    reviews that the Committee on Cooperation did; the

4    one that is being referred to here, their in-person

5    review, no.

6           Q      Okay.  Let's make sure we

7    understand --

8           A      Sure.

9           Q      -- what your answer "no" means.  It's

10   a fact, is it not, that Pastor Johnny Hunt was not

11   included, to repeat not included, in the version of

12   the report that was shared with the CoC here by

13   this memorandum, right?

14          A      I'm sorry.  I can't agree to that

15   it -- because it's not completely correct.

16          Q      Tell us -- all right.  Was Johnny

17   Hunt -- was Pastor Johnny Hunt included in the

18   version of the report that was shared with the CoC?

19          A      Yes.

20          Q      When?

21          A      I don't recall the date.  It was

22   after -- there were two -- if I can explain so that

1    we can be completely accurate.  There were two

2    times that the CoC reviewed factual portions.  The

3    first time was the -- the majority of the factual

4    portions of the report that were ready for review.

5    And it was an in-person review with most of the CoC

6    with the exception of one person, and it occurred

7    in Nashville, Tennessee.  And that's why all of

8    these protocols were in place because they were

9    reviewing a hard copy.

10                  And there were two portions that

11   weren't included.  One was the portion that -- with

12   the factual portions that pertain to your client

13   and the second was an executive -- factual portions

14   about in an executive summary.

15                  Those, because they were not prepared

16   yet and were not going to be -- were not ready for

17   inclusion into the report, obviously were not shown

18   to the CoC at that time.  At a later time they were

19   shown via Zoom or Teams or some other virtual

20   setting to the CoC.

21             Q     And the first time, that is as of

22   this memorandum that you wrote on April 26th, 2022,

1      Pastor Johnny Hunt was not included in this

2      version, that is Exhibit 107?

3                    MR. KLEIN:  Objection as to form.

4                    You can answer if you can.

5                    THE WITNESS:  The paper version

6      that's being referred to in this memo, no.  Your

7      client's factual portion was not included in this

8      paper version, that is correct.

9      BY MR. MACGILL:

10          Q     And when was this paper version

11     provided?

12                   MR. KLEIN:  Objection.  Asked and

13     answered.

14                   You can answer.

15                   THE WITNESS:  Unless it's included in

16     here, I don't recall the specific date.

17     BY MR. MACGILL:

18          Q     Okay.  Ma'am, you now have on your

19     computer screen, Exhibit 66.  Is this the paper

20     version that was provided to the Committee on

21     Cooperation, which did not include reference to

22     Pastor Johnny Hunt?

1          A     It hasn't appeared yet.  Give me a

2     minute, please.

3                    MR. KLEIN:  Is it there yet?

4                    THE WITNESS:  No.  It's --

5                    MR. KLEIN:  Well, click -- do me a

6     favor, click in that area.

7                    THE WITNESS:  Oh, okay.

8                    MR. KLEIN:  Maybe the --

9                    THE WITNESS:  Okay.  The number just

10     didn't show up.  Thank you.

11                    MR. KLEIN:  The same thing happened

12     to us.

13                    THE WITNESS:  Okay.  Yeah.

14     BY MR. MACGILL:

15          Q     This is the paper version?

16          A     An electronic copy of it, yes.

17          Q     Okay.  And so this -- you can confirm

18     now that you've seen Exhibit 66, that this is the

19     paper version that was provided to the committee on

20     the -- Committee on Cooperation that did not

21     include Pastor Johnny Hunt-related issues?

22          A     Correct.

1              Q     Now, if you go to page 112 -- well,

2       let me ask -- let me ask one other question first.

3                    Julie Myers Wood testified in this

4       case that the members of the CoC had invited two or

5       more individuals to review the report before

6       publication.  Can you tell the court who those

7       individuals were?

8                    MR. KLEIN:  Objection as to form.

9                    You can answer.

10                   THE WITNESS:  Okay.  I don't know.

11      BY MR. MACGILL:

12             Q     You don't know?

13             A     I don't remember.

14             Q     Do you recall that they did, in fact,

15      invite two other people to make a review?

16             A     It sounds somewhat familiar, but I --

17      I don't recall the specifics.  I'm sorry.

18             Q     Turn to page 112, if you would.

19             A     Okay.

20             Q     And you'll see there's a heading next

21      to Roman Numeral 5 that's been redacted.  Can you

22      tell us about this redaction?

1           A      No.

2           Q      Do you know what the heading says?

3           A      No.

4           Q      So, Ma'am, I'll represent to you that

5    the extracted text provided to us in discovery

6    says, quote --

7                  MR. KLEIN:  Hold on a second, Rob.

8    This is attorneys' eyes only, this document, so

9    especially if you're going to read from a redacted

10   portion of an attorneys' eyes only document, I

11   would ask either that you not do that or you have

12   your client in a separate Zoom room.

13                 MR. MACGILL:  All right.  Would you

14   text Pastor Johnny Hunt and ask him to just step

15   out?

16                 Okay.

17                 VIDEOGRAPHER:  I can put him in a

18   room.

19                 MR. KLEIN:  Yeah --

20                 MR. MACGILL:  Okay.  Great.

21                 MR. KLEIN:  -- if you can do that,

22   that would be great.

1                    He's in there?  Great.

2          BY MR. MACGILL:

3               Q     All right.  I'll represent to you

4          that the extracted text provided to us in discovery

5          says, quote, Observations and Conclusions.

6                    Does that refresh your memory on what

7          was involved here?

8               A     Oh, right, yes.  And we would have

9          redacted that.  Uh-huh.

10              Q     All right.  And did you also redact,

11         "Allegations of abuse committed by Executive

12         Committee members"?

13              A     If that's what it says, yeah.

14              Q     So, Ma'am, look at the third

15         redaction, and I'm going to read it to you.  Do you

16         see the first two -- the first line is

17         "Observations and conclusions"?

18              A     Uh-huh.

19              Q     I think we agreed on that.

20                    The second redaction is, "Allegations

21         of abuse committed by Executive Committee members."

22              A     Uh-huh.

1          Q     Do we agree on that?

2                MR. KLEIN:  Well, objection.  We're

3     not seeing an un-redacted form.  I'm accepting your

4     representation, Rob, but just so the record is

5     clear, we don't see the un-redacted version --

6                MR. MACGILL:  Right.

7                MR. KLEIN:  -- but I accept your

8     representation.

9                MR. MACGILL:  Right, that's --

10               THE WITNESS:  It would maybe --

11    BY MR. MACGILL:

12         Q     -- that's true?  I mean yes?

13         A     It makes sense.  It was the first

14    bullet point.

15         Q     All right.  And then also redacted

16    here is the language, "This is from Messenger's

17    Motion-Investigation so far has not revealed any

18    allegations of abuse committed directly by EC

19    members during the time period."

20               Do you see that?

21         A     I -- I don't see it because it's

22    redacted.

1          Q     Yeah.  I will represent --

2               MR. MACGILL:  And now I'm going to

3     ask Counsel to represent that that is true.  I'll

4     read it again.

5               MR. KLEIN:  Well, I'll tell you, I

6     cannot represent because I don't have an

7     un-redacted version in front of me, but I am

8     accepting your representations, Rob, if that's what

9     you say it says, as an officer of the court, I

10    accept your representation.  I don't have an

11    un-redacted version in front of me, so I cannot

12    confirm that.

13    BY MR. MACGILL:

14         Q     Okay.  Counsel -- strike that.

15               You heard what Counsel said.  I'm

16    going to read it to you again.

17         A     Okay.

18         Q     Quote, This is from the Messenger's

19    Motion-Investigation so far has not revealed any

20    allegations of abuse committed directly by EC

21    members during the time period.

22               Do you recall that being written in

1      the report?

2              A       It wouldn't surprise me.

3              Q       And do you recall those specific

4      words being written and included in the paper copy

5      that was given to the Committee on Cooperation?

6              A       If it's redacted here, it wouldn't

7      surprise me that that was in a draft of our report.

8              Q       One last question on this topic.

9      Would you -- can you admit now, based on looking at

10     this particular report, once again, that as of

11     April 20 -- as of April 26th, 2022, that the

12     Guidepost investigation, quote, So far has not

13     revealed any allegations of abuse committed

14     directly by EC members during the time period?

15             A       No.

16             Q       Okay.  Why is -- why do you not agree

17     with that?

18             A       Because this was a draft of the

19     report that was being drafted by other people in

20     a -- who were in the investigation.  Not everyone

21     knew what was happening in the -- in your client's

22     investigation.  This was a placeholder.  That was

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 138 of 342 PageID #:
4770

1    probably there for quite some time.

2              Q    Go back to page 1 of Exhibit 107,

3    your memorandum.  If you would go back to Exhibit

4    107, page 1, please.

5              A    Okay.

6                   MR. KLEIN:  Are you there?

7                   THE WITNESS:  I'm there.

8                   MR. KLEIN:  Okay.

9    BY MR. MACGILL:

10             Q    Under Roman 2 you wrote the following

11   sentence, "A copy of the factual portion of the

12   report must be provided to the Committee on

13   Cooperation for a factual review five days prior to

14   submission to the Task Force, May 10, 2022."

15                  Those are your words, right?

16             A    Yes.

17             Q    Does that tell you -- when was it

18   that you delivered the paper copy to the Committee

19   on Cooperation?

20             A    I don't know.

21             Q    Was it May 10, 2022?

22             A    I don't know.

Veritext Legal Solutions
www.veritext.com                                                  888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 139 of 342 PageID #:
4771

1          Q     Now, I'm going to ask you the same

2     question on this redaction.  I want you to go back

3     to the third redaction on page 113 of 155 of this

4     draft report.  As of May 10, 2022, is it true that

5     your company had written in this paper copy of the

6     report, quote, This is from the Messenger's

7     Motion-Investigation so far has not revealed any

8     allegations of abuse committed directly by EC

9     members during the time period.

10               Do you see admit that that was stated

11    in this draft of May 10, 2022?

12               MR. KLEIN:  For the record, again,

13    you -- I believe, Rob, you're reading from the

14    un-redacted portion of this document.  We cannot

15    see what you're reading.  I will accept your

16    representation as an officer of the court that

17    you're reading it accurately, but just for the

18    record, we cannot confirm that's what it says, but

19    with that assumption, Rob, feel free to ask your

20    question to the witness.

21    BY MR. MACGILL:

22               Q     Please answer.

1          A    If that's what you're saying it says,

2      then yes, that's what --

3          Q    It was true?

4          A    No.

5          Q    As of May 10th, it was true?

6          A    No, it's not true.

7          Q    Okay.  So in the -- what you gave the

8      Committee on Cooperation, you misled the committee

9      when you said -- when you specifically represented

10     in writing -- you misrepresented the reality of --

11     of the investigation as of that time, because what

12     you wrote to the committee is, "This is from the

13     Messenger's Motion-Investigation so far has not

14     revealed any allegations of abuse committed

15     directly by EC members during the time period."

16         A    That --

17              MR. KLEIN:  Objection.

18     Mischaracterizes the testimony and states facts not

19     in evidence that this un-redacted version went to

20     the committee.

21              Having said that, you can answer if

22     you can.

1                   THE WITNESS:  That -- the statement

2       that you are reading was not sent to the -- was not

3       provided to the Committee on Cooperation.  The

4       Committee on Cooperation received a redacted

5       version where observations and anything else that

6       is on that page 113 was redacted so they didn't get

7       to see that.  They only saw any factual portions.

8       So that representation, that language that you're

9       reading there was not seen by the Committee on

10      Cooperation.

11      BY MR. MACGILL:

12               Q    But you wrote the memo, Exhibit 107,

13      why didn't you tell them in the memo the Sexual

14      Abuse Task Force, why didn't you give them the

15      truth of the matter at that time?

16               In the memorandum that you wrote you

17      did not tell them, "Investigation so far has not

18      revealed any allegations of abuse committed

19      directly by EC members during the time period"?

20               MR. KLEIN:  Objection as to form.

21      BY MR. MACGILL:

22               Q    Tell the Court --

1                    MR. KLEIN:  You may answer.

2         BY MR. MACGILL:

3              Q    Tell the Court why you didn't include

4         that fact in your memorandum, Exhibit 107.

5                    MR. KLEIN:  Objection as to form.

6                    You can answer.

7                    THE WITNESS:  They were only seeing

8         factual portions of the report.  That was not a

9         factual portion of the report, that was an internal

10        notation of the company.  And that was factually

11        inaccurate at the time.

12        BY MR. MACGILL:

13             Q    So --

14             A    And it was redacted for them to not

15        see.

16             Q    Okay.  Now, so it was not true --

17        when somebody -- so strike that.

18                   So someone -- the drafter of this

19        report, who drafted the language, which included

20        the exact words, "Investigation so far has not

21        revealed any allegations of abuse committed

22        directly by EC members during the time period"?

1           A     I don't know.

2           Q     Did you see that with your own eyes

3     at any time?

4           A     I don't recall.

5           Q     Okay.  Who did this redaction?

6           A     I don't know.

7           Q     Did you?

8           A     Probably not because I'm not really

9     great with redactions.

10          Q     Okay.  Ma'am, as of May 10, 2020, why

11    are you holding back observations and conclusions

12    from the CoC --

13          A     Because --

14                MR. KLEIN:  Objection.

15    BY MR. MACGILL:

16          Q     -- of a copy?

17                MR. KLEIN:  Objection as to form.

18                You can answer.

19                THE WITNESS:  Because pursuant to our

20    engagement letter, they are not permitted to see

21    our observations, they only were allowed to see

22    factual information.

1      BY MR. MACGILL:

2              Q     Well, you say in the first portion

3      you didn't redact, "While President and CEO of the

4      Executive Committee 2010 to 2018, Paige maintained

5      an inappropriate relationship with a female from a

6      church where he had been an interim pastor."

7                    That was a factual statement, was it

8      not?

9              A     Exactly.

10             Q     Yeah.

11             A     They're permitted to see factual

12     information, they're not permitted to see

13     observations or conclusions.

14             Q     Okay.  And you had no -- you had no

15     factual observations as of May 10, 2022, which

16     revealed any allegations of abuse committed

17     directly by EC members during the time period?

18                   MR. KLEIN:  Objection as to form.

19                   You can answer.

20                   THE WITNESS:  We had none that were

21     definitively going into the report.  We had some.

22     We were still determining whether they were going

1    into the report, so, of course, we were not going

2    to share those with anyone outside of our

3    investigative team.

4    BY MR. MACGILL:

5         Q    So the first -- when was it the

6    first -- when was it that you provided by Zoom or

7    Teams meeting the portion to the CoC the portion --

8    or the report that included Pastor Johnny Hunt?

9         A    So I do know that date because I was

10    looking for -- I was looking at that, May 13th.  It

11    was Friday the 13th.

12         Q    And when was the report published?

13         A    I do not know when the Task Force

14    published the report, but we provided them with the

15    report either the 15th or the 16th on e-mail.

16         Q    When did Guidepost post the report on

17    its website?

18         A    We did not provide --

19              MR. KLEIN:  Objection as to form.

20              THE WITNESS:  I'm sorry.

21              MR. KLEIN:  You can answer.

22              THE WITNESS:  We did not post the

1    report on our website.

2    BY MR. MACGILL:

3         Q    Did you make any reference to the

4    report on your website?

5         A    We put a link to the Task Force --

6    excuse me, Task Force's website through a link on

7    our website.

8         Q    So one going to your website would

9    see a link that they could click on that would take

10   them to the Guidepost report.  Is that right?

11        A    No, that's not correct.  There was a

12   button that said, "SBC EC Investigation."  And then

13   they would click on that and they would see a page.

14   And there were some details about either the

15   investigation -- the whole time there were details

16   about the investigation.  At the conclusion of the

17   investigation, there were some details about the

18   hotline.  And then there was a web link to the Task

19   Force, which then took you to the Task Force

20   website.  And then you could go through there and

21   then you had to click on something to get to the

22   actual report.

1          Q      Okay.  So somebody could, by
2    navigating your website, see the full report of
3    Guidepost?
4                    MR. KLEIN:  Objection.
5    Mischaracterizes her statement.
6                    You can answer.
7                    THE WITNESS:  By clicking several
8    links, they could find the report, that's correct.
9    BY MR. MACGILL:
10         Q      And that was the purpose, that you
11   wanted people to be able to see the Guidepost
12   report by navigating through your website, right?
13         A      No, that was not the purpose.
14         Q      Okay.  How many people view the
15   report through access to your -- through your
16   website?
17                   MR. KLEIN:  Objection as to form.
18   Outside the scope.
19                   You can answer if you can.
20                   THE WITNESS:  I don't know.
21   BY MR. MACGILL:
22         Q      Have you ever looked at that?

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 148 of 342 PageID #:
4780

1          A     I don't know that we have the

2     capability.  But to answer your question, no, I

3     have not looked at that.

4          Q     Now, so the Committee on Cooperation

5     was given the updated report on May 13, 2022?

6          A     It wasn't an updated report, it was

7     portions -- portions -- excuse me, factual sections

8     that they had not seen before.

9          Q     So on May 13th, 2022, you included

10     reference to Pastor Johnny Hunt on the allegations

11     of the ██████████

12          A     Yes.

13          Q     Tell this court and tell this jury

14     how many days after you interviewed Johnny Hunt

15     that that edited report was produced.

16               MR. KLEIN:  Objection.  Outside the

17     scope.

18               You can answer.

19               THE WITNESS:  I would need to go back

20     to the exhibit to see when that second interview

21     was.

22

1    BY MR. MACGILL:

2         Q    Do you have any sense of it?

3         A    No.

4         Q    You don't remember that you

5    published -- you added to the Guidepost -- you

6    added Pastor -- strike that.

7              You don't recall, Ma'am, that you

8    added reference to Pastor Johnny Hunt one day after

9    interviewing him about the ███████ interaction?

10             MR. KLEIN:  Objection as to form.

11             You can answer.

12             THE WITNESS:  No, I don't.

13   BY MR. MACGILL:

14        Q    No, you don't recall any of that?

15        A    I just said I didn't.

16        Q    You don't recall any of your own

17   participations on May 12th and 13th about the

18   Pastor Johnny Hunt's inclusion in the report?

19             MR. KLEIN:  Objection.

20   Mischaracterizes her statement.

21             You can -- you can answer.

22             THE WITNESS:  I didn't interview him,

1      but I just said I didn't recall the time.

2      BY MR. MACGILL:

3           Q      You didn't look at any documents in

4      your preparation for this deposition to see what it

5      was that you were doing on May 12th and May 13th,

6      to determine what your role was in including Pastor

7      Johnny Hunt in the report issued by Guidepost one

8      day after his interview?

9           A      I looked to see when we showed the

10     factual portion to the Committee on Cooperation.

11     Those were the documents that I looked at.

12          Q      All right.  And what was that date?

13          A      May 13.

14          Q      May 13th, 2022, right?

15          A      (Moving head up and down.)

16          Q      And when was the interview of Pastor

17     Johnny Hunt?

18                 MR. KLEIN:  Objection.  Asked and

19     answered.

20                 THE WITNESS:  I --

21                 MR. KLEIN:  You can answer again.

22                 THE WITNESS:  I just said I didn't

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 151 of 342 PageID #:
4783

1      remember, but I think you just said it was

2      May 12th.

3      BY MR. MACGILL:

4              Q      All right.  Well, I -- I was just

5      trying to refresh your memory.

6              A      Okay.

7              Q      Right now let's make sure we can get

8      the truth of it from you here.

9              A      Great.

10             Q      Okay.  Let's go back to

11     interrogatories.  All right.  Let's look together

12     at Interrogatory 1.  And what I'd like you to do --

13     I'm sorry, Interrogatory 2, and this is page 4 of

14     8.  "Would you please indicate when it was that

15     Pastor Johnny Hunt was interviewed."

16                     MR. OTCHY:  He's on Document 3.

17                     MR. KLEIN:  Yeah, sorry, I should

18     have helped you there.

19                     THE WITNESS:  Yeah, May 12.

20     BY MR. MACGILL:

21             Q      So the interview of Pastor Johnny

22     Hunt on the issues associated with the allegations

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 152 of 342 PageID #: 4784

1    of the ███████ was on May 12th.  What year?

2           A    2022.

3           Q    And tell the court and jury when it

4    is you published for the first time a report which

5    included the name of Pastor Johnny Hunt.

6           MR. KLEIN:  Objection as to form.

7    Mischaracterizes her statement.

8           You can answer.

9           THE WITNESS:  We showed factual

10   portions of the report that contained reference to

11   that in a confidential Zoom call to the Committee

12   on Cooperation on May 13th.

13   BY MR. MACGILL:

14          Q    So it was just one day after your one

15   and only interview of Pastor Johnny Hunt pertaining

16   to the ███████ allegations that you included him in

17   the draft that was given to the Cooperation

18   Committee, right?

19          A    Correct.

20          Q    Now, as just an ordinary citizen or

21   trained lawyer or just a -- someone interested in

22   being independent and fair in a report, do you

1    think that's a good protocol in terms of naming an

2    object of allegations of sexual abuse, that is to

3    have this turned around on a one-day period of

4    time?

5                    MR. KLEIN:  Objection.  This is a

6    30(b)(6) deposition, it's not about her personal

7    views, but I'm not going to direct her not to

8    answer.  I will allow her to answer in her personal

9    capacity, but a reminder you're going to be

10   deposing her in her individual capacity tomorrow.

11                   But you can answer.

12                   THE WITNESS:  I stand by our process.

13   BY MR. MACGILL:

14        Q    How about that process, Ma'am, on the

15   day that you wrote this report including Pastor

16   Johnny Hunt on May 13th, your team went back to the

17   ████████ on that same day, didn't they?

18        A    I see that on the interrogatories,

19   yes.

20        Q    Why in the world does an independent

21   investigator interview Pastor Johnny Hunt on

22   May 12th and then go back to the ████████ on

1    May 13th?

2                   MR. KLEIN:  Objection as to form.

3    Argumentative.

4                   You can answer in your personal

5    capacity.  It's beyond the scope of the 30(b)(6),

6    but you can answer.

7                   THE WITNESS:  I don't recall.

8    BY MR. MACGILL:

9           Q    Did that raise any concerns to you as

10   somebody that was participating in what was billed

11   to be a, quote, unquote, investigation?

12                  MR. KLEIN:  Objection.  Beyond the

13   scope.

14                  You can answer.

15                  THE WITNESS:  In my personal

16   capacity, I said that I didn't recall, I didn't say

17   it didn't concern me.

18   BY MR. MACGILL:

19          Q    Look at Exhibit 18, Ma'am --

20          A    18.

21          Q    -- if you would, please.

22          A    18?

1            Q      Yeah.

2            A      Is that a new one?

3                   MR. KLEIN:  Yeah, I don't see 18

4      shown to her yet.  Is that a new one, Patrick?

5                   MR. SANDERS:  One second.  Okay.  You

6      should see it, Document 8.

7                   THE WITNESS:  8.  Okay.  Thank you.

8      BY MR. MACGILL:

9            Q      All right.  Ma'am, you were to -- the

10     Guidepost engagement was to write an independent

11     third-party report.  Is that right?

12           A      Yes.

13           Q      And looking at Exhibit 18 --

14                  MR. KLEIN:  Rob, I would note -- I'm

15     sorry to interrupt you.  I would note that this is

16     also marked attorneys' eyes only, so if you're

17     going to quote from it, I would ask that your

18     client be placed into a separate Zoom room.  If

19     you're going to ask general questions about it, but

20     if you're going to quote from it, I would ask that

21     that occur.

22                  VIDEOGRAPHER:  Okay.

```
1                    MR. MACGILL:  Please go ahead and do

2        that.

3        BY MR. MACGILL:

4              Q     Ma'am, it says right here this is a

5        text on May 12th, the day we've been focusing on,

6        the day of the interviews.  This is from

7        Ms. Kilpatrick, isn't it?

8              A     That's --

9              Q     Mr. -- and I'm sorry, this is from

10       Mr. Holske to Samantha Kilpatrick, isn't it?

11             A     I don't see Mr. Holske on there.

12             Q     The jury will hear, Ma'am, by the

13       time your testimony is played, that that is exactly

14       what this is.  This is a text stream between

15       Mr. Holske and Ms. Kilpatrick.  And Mr. Holske

16       writes on May 12th at -- 2022, at 15:25, "I feel

17       like even after edits, it's still missing the

18       ████████████

19                    Do you see that?

20             A     I --

21                    MR. KLEIN:  Objection as to form.

22                    You can answer.
```

1              THE WITNESS:  I see it.

2      BY MR. MACGILL:

3          Q     Is that what your company was about

4      here, Ma'am, and that is creating, quote, ██████

5      unquote?

6              MR. KLEIN:  Objection as to form.

7      Compound.

8              You can answer.

9              THE WITNESS:  That was -- the report

10     was an independent investigation, it was about

11     reporting the facts.

12     BY MR. MACGILL:

13         Q     But not ██████ Ma'am, isn't this

14     about facts and being independent rather than doing

15     something to create quote, ██████ unquote?

16             MR. KLEIN:  Objection.  Just asked

17     and answered.  She can answer again.

18             THE WITNESS:  I stand by my first

19     answer.

20     BY MR. MACGILL:

21         Q     So, you know, have you seen this text

22     before, Ma'am?

```
 1              A      Maybe.

 2              Q      Doesn't this raise some concerns to

 3      you about what you and those acting in concert with

 4      you were doing on May 12th, that is looking to

 5      create quote, ████████ unquote?

 6              A      No.  Reading the version of the --

 7      the whole text, it doesn't.

 8              Q      Okay.  Now, looking at the -- what

 9      the Committee on Cooperation was provided on

10      May 13, let's look at the next exhibit.

11              Ma'am, we've got Exhibit 108 in front

12      of you.

13              A      Yeah.

14              (Tongring Deposition Exhibit Number 108

15              marked for identification.)

16      BY MR. MACGILL:

17              Q      Is this an e-mail that was sent on

18      May 12th at 6:40 p.m.?

19              A      Yes.

20              Q      And this was from Joshua Wester to

21      Nancy Spalding?

22              A      Yes.  I --
```

1                    MR. KLEIN:  Objection.  The document

2      speaks for itself.

3                    But you can answer if you can.

4                    And I would note that it looks like

5      Ms. Spalding is a bcc, for the record, as I'm

6      reading the document.

7      BY MR. MACGILL:

8           Q     Who is Joshua Wester?

9           A     Josh Wester was who I was speaking

10    about earlier.  He's sort of a go-between for the

11    CoC.  He was Ed Litton's assistance.  Ed Litton was

12    one of the CoC people.

13          Q    We'll go to the next exhibit.

14                  MR. KLEIN:  You don't have it yet.

15    It's coming.

16                  THE WITNESS:  Okay.

17                  MR. SANDERS:  It will be Document 10

18    on your screen.

19                  THE WITNESS:  Oh, okay.  Thank you.

20    BY MR. MACGILL:

21          Q    Exhibit 67.  Is Exhibit 67 the report

22    that was given to the Committee on Cooperation on

1    May 13th, 2022?

2                    MR. MACGILL:   You can take Johnny

3    back in.

4                    MR. KLEIN:   Hold on.

5                    You can, yes.   I'm sorry.   Thank

6    you, Rob.

7                    THE WITNESS:   It wasn't given to

8    them, but this is what they were shown on the

9    screen via Zoom or Teams, or whatever it was that

10   we used.   I don't recall.

11   BY MR. MACGILL:

12        Q    And this -- this is -- what is shown

13   by Zoom or on Teams, this is the report you

14   described earlier that for the first time on

15   May 13, 2022, there is reference to the allegations

16   made as against Pastor Johnny Hunt?

17        A    The first time that they are seeing

18   it, yeah.

19        Q    Let's go to the next exhibit.

20             (Tongring Deposition Exhibit Number 109

21             marked for identification.)

22

1    BY MR. MACGILL:

2              Q    Exhibit 109.

3              A    Wait.  Sorry.  I just messed

4    something up.  Hold on.

5                   MR. KLEIN:  Do you need assistance?

6                   THE WITNESS:  I think I got it.

7    Yeah.  No, I'm okay.  Okay.

8    BY MR. MACGILL:

9              Q    Okay.  Now, do you see that -- you

10   see that you're included on this e-mail chain?

11             A    I see that, yes.

12             Q    And that you wanted to discuss

13   certain comments?

14             A    I need to go to the bottom.

15             Q    Okay.

16             A    Oh, wait.  Yes, I see that.

17             Q    All right.  And if you go to the page

18   number 13492.  Tell me when you're on that page.

19                  MR. KLEIN:  Those are the Bates

20   stamps.

21                  THE WITNESS:  Yep.

22                  MR. KLEIN:  You know they're down on

```
 1        the bottom right?
 2                        THE WITNESS:  Yeah.  Okay.
 3        BY MR. MACGILL:
 4               Q     And there is a reference "We were
 5        asked" that I want to ask you about.  At the top,
 6        "As per the motion" --
 7                        MR. KLEIN:  Hold on.  She just said
 8        she's --
 9                        THE WITNESS:  I'm not there yet.
10                        MR. KLEIN:  -- not there yet.
11        BY MR. MACGILL:
12               Q     That's what -- I'm trying to get you
13        there.  Are you on that page?
14                        MR. KLEIN:  Yeah.  The problem is
15        it's very slow.
16        BY MR. MACGILL:
17               Q     It's page 3 of 14.
18               A     Okay.
19                        MR. KLEIN:  She's there --
20                        THE WITNESS:  Just --
21                        MR. KLEIN:  -- the problem is, is
22        that it's very -- the print is very small on her
```

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 163 of 342 PageID #: 4795

1       screen, so just give her two seconds, Rob, just to

2       make sure she gets it so she can read what you're

3       reading.  She's on the page, but it's very small.

4                       MR. SANDERS:  There's a Zoom button

5       that you can --

6                       THE WITNESS:  Yeah, I --

7                       MR. KLEIN:  She's finding it now.

8       Great.

9                       THE WITNESS:  Okay.

10                      MR. KLEIN:  Thank you, Patrick.

11                      THE WITNESS:  Go ahead.

12      BY MR. MACGILL:

13              Q      "As per the motion we were asked to

14      examine allegations of abuse against EC members

15      during the relevant time period."

16                      Do you see that?

17              A      I do.

18              Q      And who wrote those words?

19              A      I don't know.

20              Q      And there's a comment at the right

21      margin.  Is this your comment?

22              A      Yes.

1          Q     And what did -- please read out loud
2     your comment.
3          A     It says, "Explain why - immediate
4     past president - groomed during SBC EC member as
5     president."
6          Q     Okay.  And --
7          A     "Pastor at FBC Woodstock - hopequest
8     there and that he had control over it."
9          Q     Okay.  And that was your comment?
10          A     Those were notes that I took while on
11     the call with CoC.
12          Q     And --
13          A     Or -- or just notes that I was
14     writing, one or the other.
15          Q     Were you then at that time attempting
16     to justify from your standpoint including Pastor
17     Johnny Hunt in this section?
18                    MR. KLEIN:  Objection as to form.
19                    You can answer.
20                    THE WITNESS:  No.
21     BY MR. MACGILL:
22          Q     Were you expressing concern, Ma'am,

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 165 of 342 PageID #:
4797

1          that Pastor Johnny Hunt was not a member of the

2          Executive Committee at the time of the alleged

3          assault?

4                          MR. KLEIN:  Objection as to form.

5          Outside the scope.

6                          You can answer.

7                          THE WITNESS:  No.

8                          MR. MACGILL:  Okay.  We've been going

9          close to an hour, why don't we take a break.  And

10         we'll take a look at our notes.

11                         VIDEOGRAPHER:  The time is 3:33 p.m.

12         We are going off the record.

13                 (Recess from 3:33 p.m. to 3:48 p.m.)

14                         VIDEOGRAPHER:  The time is 3:48 p.m.

15         We are going back on the record.

16                         Please proceed, Counsel.

17         BY MR. MACGILL:

18             Q     Now, Ma'am, I want to go back to the

19         exhibit that we left off on.  This is Exhibit 109,

20         at the top of that page 314.  Do you have that in

21         front of you?

22             A     I do.

1                Q      This says, "As per the motion we were
2        asked to examine allegations of abuse against EC
3        members during the relevant time period."  And then
4        this comment we -- you mentioned, and I think you
5        read it out loud, "Explain why immediate past
6        president groomed during SBC EC member as
7        president."  Was that a comment that came to you
8        from the Committee on Cooperation?
9                        MR. KLEIN:  Objection.  Asked and
10       answered.
11                       You can answer again.
12                       THE WITNESS:  It was either -- it was
13       either from them or a comment that I wrote, I don't
14       remember which.
15       BY MR. MACGILL:
16               Q      Okay.  And essentially the concern
17       had been raised by someone that Pastor Johnny Hunt
18       was not a member of the Executive Committee at the
19       time of the alleged assault.  Is that fair?
20                       MR. KLEIN:  Objection as to form.
21                       You can answer.
22                       THE WITNESS:  No, not necessarily.

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 167 of 342 PageID #:
4799

1    BY MR. MACGILL:

2         Q    Let's go to the next exhibit.  I'm

3    sorry, it's the next page, I should say.

4         A    Okay.

5         Q    It's page 493.  And then there's a

6    comment here that it -- it's the paragraph -- fifth

7    paragraph down, "Survivor began to feel foggy when

8    she went inside."

9              Do you see that?

10        A    Yeah, just give me a second to --

11             MR. KLEIN:  And I would also note,

12   Rob, while we're waiting for Ms. Tongring to get to

13   that page, this is designated attorneys' eyes only.

14   I do see your client is back on the Zoom.  If

15   you're going to ask her specifically about this

16   draft and these particular comments, that your

17   client be put in a separate Zoom room just for

18   this -- these questions.

19             MR. MACGILL:  Okay.

20             MR. KLEIN:  Thank you.

21   BY MR. MACGILL:

22        Q    "Survivor began to feel foggy when

1      she went inside."  Do you see that?

2             A     I do.

3             Q     And there's -- that's highlighted.

4      Can you tell us why that was highlighted?

5             A     No.  I don't recall.

6             Q     Then there's a comment.  Is this your

7      comment, "Make this more clear, she said no, do not

8      go into the bedroom"?

9             A     Yes.

10            Q     All right.  And this was a comment

11     that you got from the Committee on Cooperation?

12            A     Not necessarily.

13            Q     Okay.  Again, it may have been your

14     comment, it may have been from the Committee on

15     Cooperation?

16            A     No, it wouldn't have been from the

17     Committee on Cooperation.

18            Q     Okay.

19            A     That wouldn't have had that

20     information.

21            Q     All right.  Look at page 96 -- hold

22     on.  I'm sorry.  Exhibit 109, page 490.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 169 of 342 PageID #:
4801

1          A       What page number?

2          Q       13490, page 1 of 14.  Do you see at

3     the bottom May 13 at 7:56 p.m. --

4          A       Uh-huh.

5          Q       -- you are e-mailing Russell Holske,

6     Samantha Kilpatrick, with a copy to the -- to your

7     boss, right?

8          A       I do, I see that.

9          Q       And you say, "Julie is going to

10    finish up a call with one of the CoC in a few

11    minutes.  Can you guys jump on a call around

12    on Johnny Hunt -- on the JH matter?"

13                 Do you see that?

14         A       I do.

15         Q       And Samantha Kilpatrick says yes,

16    Mr. Holske says yes.  Is that right?

17         A       Yes, I see that.

18         Q       And then later that evening, Friday,

19    May 13th, at 9:15 p.m., you write "As discussed."

20         A       Uh-huh.

21         Q       Is that correct?

22                 Does that refresh your memory on what

1      you -- what you're doing?

2                      MR. KLEIN:  Objection as to form.

3                      You can answer.

4                      THE WITNESS:  I -- I mean "as

5      discussed," I assume there was something attached

6      to that e-mail.

7      BY MR. MACGILL:

8           Q     Well, look at the top e-mail then.

9      Mr. Holske writes to you and Ms. Kilpatrick and

10     says, "Attachments, draft Hunt's section for

11     cocktedits.docx."

12                     Do you see that?

13          A     I see that.

14          Q     Did you see this section -- did you

15     see these edits at some point in time?

16          A     I believe that's the attachment that

17     we're looking at.

18          Q     That's -- okay.  Fair enough.

19                     Does that remind you of the sequence

20     of events here?

21                     MR. KLEIN:  Objection as to form.

22                     You can answer.

1          THE WITNESS:  Yeah.  So I think what

2     happened was we had -- the four of us had a call,

3     and then during the phone call, I took notes and my

4     notes were reflected in the comments that I then

5     sent to Samantha and Russ and cc'd Julie.

6     BY MR. MACGILL:

7          Q     Okay.

8          A     And then Russ forwarded that to

9     Samantha and said, "Call me when you want to go

10    through it."

11         Q     Meaning the report which included

12    your comments?

13         A     Correct.

14         Q     Some of which we just reviewed?

15         A     Right.  But I don't know what they --

16    the two of them did with it obviously.  Well, maybe

17    not obviously, but . . .

18         Q     Let's go to the next exhibit.  This

19    is going to be Exhibit 130 [sic].

20              (Tongring Deposition Exhibit Number 110

21               marked for identification.)

22

1     BY MR. MACGILL:

2              Q     I'm sorry, 110.

3              A     Okay.

4              Q     And is this -- looking at page 1 of

5     14, do you see this is an e-mail on May 14, at

6     5:18 a.m. from Mr. Holske?

7              A     Uh-huh.

8              Q     And --

9              A     Yes.

10             Q     -- it's sent to you, Ms. Wood, and

11    Christina Bischoff.  Is that right?

12             A     Yes.

13             Q     And it says, "Draft Hunt section for

14    CoC edits with RH and SK edits."

15                   Do you see that?

16             A     Yes.

17             Q     "RH" stands for what?

18             A     Russ Holske.

19             Q     And "SK" stands for what?

20             A     Samantha Kilpatrick.

21             Q     Was Russ Holske editing the Guidepost

22    report, Ma'am?

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 173 of 342 PageID #:
4805

1          A     No.  He was editing this section.

2          Q     Was he editing a portion of the

3    Guidepost report?

4          A     Yes, he was editing this section.

5          Q     Which section?

6          A     The "draft Johnny Hunt" section.

7          Q     So you have -- strike that.

8                As you saw that that was an event

9    that is occurring, did you have a witness editing

10   your report?

11               Is that the protocol that you think

12   is acceptable?

13         A     Russ Holske was not a witness, he was

14   an investigator.

15         Q     So my mistake.

16               Did you come to know that Mr. █████

17   █████ was editing your report?

18         A     █████ █████ did not edit our report.

19         Q     Are you saying that █████ █████ made

20   no -- strike that.

21               Were you aware that Mr. Holske asked

22   Mr. █████ to review factual sections of the

1      Guidepost's report?

2              A      Yes.

3              Q      Do you know that he proposed edits?

4              A      Yes.

5              Q      Do you know that some of his edits

6      were included by your company?

7              A      Yes.

8              Q      Do you consider that to be an

9      independent report that is -- as edited by

10     witnesses -- a witness, Mr. █████?

11             A      I don't believe those would be

12     considered edits, but yes, I do believe that that

13     is independent and appropriate.

14             Q      Why didn't you just have Mr. ██████

15     have -- make his 53-page document your report?

16                    MR. KLEIN:  Objection as to form.

17     Outside the scope.

18                    You can answer.

19     BY MR. MACGILL:

20             Q      He was authoring part of your

21     Guidepost report, right?

22             A      I don't agree with that statement.

1          Q     He was -- all right.  Let's parse his

2     language in ways that you prefer.  So you say --

3                    MR. KLEIN:  Objection as to that

4     characterization, Rob.  And just ask the question

5     as opposed to a statement.

6     BY MR. MACGILL:

7          Q     You -- you say in your parsing of

8     words that editing -- authoring is not the right

9     word when it comes to Mr. ████████  right?

10                   MR. KLEIN:  Objection.  Outside the

11    scope.

12                   You can answer if you can.

13                   THE WITNESS:  I'm sorry.  You're --

14    BY MR. MACGILL:

15         Q     According to you --

16         A     You're confusing -- I'm sorry.

17    You're confusing me.

18         Q     According --

19         A     I thought what you said --

20         Q     I will restate --

21         A     -- that what you --

22         Q     I will restate --

1                    MR. KLEIN:  Let him restate the
2      question.
3                    THE WITNESS:  Okay.
4                    MR. KLEIN:  Ask a new question.
5      BY MR. MACGILL:
6           Q      According to you, ███████ ███████ did
7      not author any report -- part of the Guidepost
8      report?
9           A      No, he didn't author it.  No.
10          Q      Okay.  Did ████████ ████████ edit portions
11     of the Guidepost report?
12                   MR. KLEIN:  Objection.  Asked and
13     answered.
14                   You can answer.
15                   THE WITNESS:  Okay.  Thank you.
16                   No, he didn't edit.
17     BY MR. MACGILL:
18          Q      Did you give Mr. ████████ -- did the
19     Guidepost give Mr. ██████ an opportunity to provide
20     edits to the Guidepost's report?
21                   MR. KLEIN:  Objection.  Asked and
22     answered.

 1                    You can answer though.

 2                    THE WITNESS:  We gave what -- excuse

 3      me.  Guidepost gave Mr. ███████ the opportunity to

 4      review and confirm the factual accuracy.

 5      Mr. ███████ provided additional, more than what we

 6      asked him to do when he returned the portions that

 7      we gave him.

 8      BY MR. MACGILL:

 9            Q     The portions of what he gave back to

10      you were included in the Guidepost report.  Is that

11      right?

12            A     If they confirmed or enhanced the

13      factual accuracy, then yes, they would be.

14            Q     And so he gave you a redline, some of

15      which you -- redline edits, some of which Guidepost

16      accepted, some of which Guidepost did not.  Is that

17      right?

18                    MR. KLEIN:  Objection.  Asked and

19      answered.

20                    You can answer.

21                    THE WITNESS:  We accepted things that

22      confirmed or enhanced the factual accuracy.

1    BY MR. MACGILL:

2              Q      All right.  Now, I want to -- so

3    that's the process that was -- was that part of

4    your deliberative process, to give a witness a

5    chance to confirm or not certain portions of the

6    report?

7              A      Sometimes.

8              Q      Now, let's switch topics -- switch

9    witnesses.  I want you to explain to the court

10   exactly, and to this jury exactly, what you did in

11   terms of Pastor Johnny Hunt, what opportunity did

12   you give him to review and proffer or propose edits

13   to your report?

14             MR. KLEIN:  Objection as to form.

15   Outside the scope.

16             You can answer.

17             THE WITNESS:  We did not.

18   BY MR. MACGILL:

19             Q      Okay.  Now, just in terms of being an

20   ordinary citizen, or someone who's going to comply

21   with the law or be attentive to issues of

22   defamation, casting a person in a false light,

1    don't you think it would have been fair to give the

2    same opportunity to Pastor Johnny Hunt that you did

3    to Mr. ██████ ████████

4                    MR. KLEIN:  Objection.  Clearly

5    outside the scope.

6                    He's asking for your personal view,

7    so you can provide that personal view.

8                    THE WITNESS:  I stand by our process.

9    BY MR. MACGILL:

10        Q    So your process is to give it to the

11   witness -- to one witness, but not -- your

12   protocol -- strike that.

13                   Your protocol is to give it to one

14   witness and selectively choose that witness and not

15   give the opportunity to edit to any other witness.

16   Is that right?

17                   MR. KLEIN:  Objection as to form.

18                   You can answer.

19                   THE WITNESS:  I stand by our process.

20   BY MR. MACGILL:

21        Q    Okay.  And your process didn't

22   include giving Pastor Johnny Hunt an opportunity to

1      review and edit any portion of the report, right?

2                      MR. KLEIN:  Objection.  Outside the

3      scope.

4                      But you can answer.

5                      THE WITNESS:  He was not given an

6      opportunity to review the portion that applied to

7      him and his statements.

8      BY MR. MACGILL:

9           Q     Tell the Court why.  Tell the Court

10     why did you that, Ma'am.

11                     I'd you to explain in your own words

12     why it was that you, for your part, and those who

13     acted in concert with you at Guidepost, chose not

14     to give Pastor Johnny Hunt that same opportunity.

15                     MR. KLEIN:  Objection.  Outside the

16     scope.

17                     He's asking for your personal view

18     during a 30(b)(6) deposition, but you can answer

19     in your personal view if you know.

20                     THE WITNESS:  Because we did not need

21     to -- there was nothing to corroborate, he denied

22     that he had any contact with her.

1    BY MR. MACGILL:

2             Q     Anything else you want to explain to

3    the jury at this time?

4             A     No.

5             Q     Did you offer a comment at time -- at

6    some point that the Guidepost team should go into

7    more detail about journals and why they are so

8    important for corroboration?

9             MR. KLEIN:  Objection.  Outside the

10   scope.

11            You can answer.

12            THE WITNESS:  I don't remember.

13   BY MR. MACGILL:

14            Q     Did you understand that ████ ██████

15   was insecure about Johnny Hunt?

16            A     I don't know.

17            Q     Did you send a -- did you send a

18   portion of the report relating to Pastor Johnny

19   Hunt to Mr. Frank before publication?

20            A     Mr. Frank -- Dr. Frank is part of --

21   the Sexual Abuse Task Force was provided with the

22   entire report.

1            Q     Why did -- did you send him a -- did

2     you send him a portion of the report relating to

3     Pastor Johnny Hunt, that is to Mr. Frank, before

4     publication?

5                 MR. KLEIN:  Again, are you asking now

6     in her personal capacity or as -- as -- on behalf

7     of Guidepost?

8                 MR. MACGILL:  I'm asking about what

9     she did.

10                MR. KLEIN:  Okay.

11    BY MR. MACGILL:

12           Q     Did you -- I'm talking about you now.

13    Do you understand?

14                MR. KLEIN:  Well, I don't because

15    we're in a 30(b)(6), but you can ask her that.

16                MR. MACGILL:  Well, you -- all right.

17                MR. KLEIN:  You can, Rob.  I'm saying

18    that's tomorrow, and so you can ask her -- I wanted

19    to understand -- I wanted to understand in what

20    capacity, that's all.

21    BY MR. MACGILL:

22           Q     Were you aware of anyone at Guidepost

1      sending a -- the portion of the report relating to

2      Pastor Johnny Hunt to Mr. Frank?

3           A     Only that portion?

4           Q     Yes.

5           A     I don't recall.

6           Q     Would you go to Exhibit 110 --

7           A     Uh-huh.

8           Q     -- page 6 of 14?  Bates Number 587.

9           A     Okay.

10          Q     The paragraph -- there's a paragraph

11     highlighted here, "The Pastor provided us with a

12     hard drive on which he kept an electronic journal

13     that contains entries related to the counseling

14     sessions with Mr.  Blankenship, as well as some

15     audio recordings of the counseling and Pastor's

16     thoughts following the counseling sessions."

17                Do you see that?

18          A     I do.

19          Q     Are those your highlights?

20          A     It's -- it goes with both my comment

21     and Russ' comment.  They're highlighted because

22     there is a comment there, so yes.

1          Q     Your comment was to go into more

2     detail about journals why it's so important for

3     corroboration, right?

4          A     That's what's written there.  So you

5     have to understand that when my process when

6     we're -- when there is a call or something about

7     documents is I will make a comment that is

8     memorializing the collective thoughts on the call.

9     It's not necessarily what I think, it's what needs

10     to be done and why.  It doesn't mean that I'm

11     thinking this.

12          Q     There's a comment you also made that

13     you said "confirm" and that you're referring to

14     First Baptist Church Woodstock and CEO of

15     HopeQuest, a counseling ministry.

16               Why did you make that comment

17     "confirm"?

18               MR. KLEIN:  Objection as form.

19               You can answer.

20               THE WITNESS:  Again, the same process

21     that I just described.  This is likely a phone

22     group or a group was discussing this portion of the

1    report and we needed this to be confirmed, as it

2    looks like, by Russ' comment, it was.

3    BY MR. MACGILL:

4         Q    Who is Stephanie Douglas?

5         A    Stephanie Douglas is a Guidepost

6    employee.

7         Q    And did Ms. Wood sent -- are you

8    aware that Ms. Wood sent her a version of the

9    report prior to publication?

10        A    I was not, but I'm not surprised

11   because she was part of our team.

12        Q    In early portions of the Guidepost

13   drafting, Mrs. ███████ is referred to as "the wife."

14   Do you understand that?

15             MR. KLEIN:  Objection as to form.

16   Outside the scope.

17             But you can answer if you know.

18             THE WITNESS:  I have a recollection

19   that she may have been.

20   BY MR. MACGILL:

21        Q    In the final report Mrs. ███████ is

22   referred to as survivor.  Are you aware of that?

1                    MR. KLEIN:  Same objection.

2                    You can answer if you know.

3                    THE WITNESS:  That sounds correct.

4      We went through the report in the very end to make

5      it consistent throughout where sexual abuse

6      survivors were uniformly referred to as survivor.

7      BY MR. MACGILL:

8          Q     And were you attempting to create the

9      impression through that that Mrs. ████████ was the

10     survivor of a sexual assault?

11                   MR. KLEIN:  Objection as to form.

12     Outside the scope.

13                   You can answer.  It also calls for

14     a legal conclusion, but you can answer.

15                   THE WITNESS:  We, again in an attempt

16     to be uniform throughout the report, referred to

17     all survivors of sexual abuse or sexual assault as

18     survivor.  There was not an attempt to create

19     anything.  That was how we referred to anyone in

20     that capacity.

21     BY MR. MACGILL:

22         Q     Now, looking at --

1          MR. MACGILL:  If we could look at the

2     next exhibit, this is Exhibit 111.  And this is an

3     e-mail from Stephanie Douglas to Julie Myers Wood.

4               (Tongring Deposition Exhibit Number 111

5                marked for identification.)

6     BY MR. MACGILL:

7          Q    Do you see that?

8          A    I do.

9          Q    And then I -- a question that I have

10    relative to this -- did you look at this document

11    in preparation for your deposition today?

12         A    I don't recall seeing it.  No, I

13    don't believe I did.

14         Q    Now, take a look at page 2 of 4.

15    There's a highlighted -- there's highlighting here

16    on the third paragraph.  "Some of the unusual

17    attention includes remarks about her appearance,

18    unwelcome touching, including kissing her hand and

19    inappropriate comments of a sexual nature."

20               Do you see that highlighting?

21         A    I do.

22         Q    And then there's a comment here.  It

1    says, "Does this constitute grooming?"  Do you know

2    whose comment that was?

3         A    Based on the initials from the

4    comment, and in the context of the e-mail, I would

5    say Stephanie Douglas.

6         Q    Was Rachael Denhollander provided a

7    copy of the report in advance of its publication?

8         A    She was part of the Sexual Abuse Task

9    Force, so yes, she would have been.

10         Q    Are you aware that the CEO of your

11   company, Ms. Wood, testified that the actual amount

12   that Guidepost was owed for the report was closer

13   to ███████████

14              MR. KLEIN:  Objection as to form.

15   Outside the scope of the topics.  And asked and

16   answered.

17              But you can -- or mischaracterizes

18   her statement.  But you can answer.

19              THE WITNESS:  Yes, I am aware of

20   that.

21   BY MR. MACGILL:

22         Q    Are you aware that after the report

1    was published that Mr. ▇▇▇ -- strike that.

2               Do you remember Mr. ▇▇▇ writing an

3    e-mail to you and others after publication of the

4    report stating, for example, the Guidepost report,

5    quote, Causes readers to think I knew it was SA.

6    In the moment, I did not?

7               MR. KLEIN:  Objection.

8    BY MR. MACGILL:

9        Q    Do you recall that comment?

10           MR. KLEIN:  Objection as to form.

11    Outside the scope.

12           You can answer in your personal

13    capacity, if you know.

14           THE WITNESS:  I sort of recall that.

15    BY MR. MACGILL:

16        Q    Well, in fact, that's what he said,

17    isn't it?

18           Did you read that -- that -- his

19    May 30th e-mail to you and others --

20           MR. KLEIN:  Objection as to --

21    BY MR. MACGILL:

22        Q    -- his May 3rd, 2022 e-mail --

1                    MR. KLEIN:  Objection.  Outside

2      the --

3      BY MR. MACGILL:

4            Q    -- or --

5                    MR. KLEIN:  I'm sorry, Rob.  Keep

6      going.

7      BY MR. MACGILL:

8            Q    Did you read his e-mail dated May 30,

9      2022, in preparation for your testimony?

10           A    I don't think I read that in

11     preparation for my testimony, no.

12           Q    Do you recall Mr. Holske forwarding a

13     message dated May 30, 2022, from █████  █████

14     pertaining to his concerns about the Guidepost

15     report?

16                    MR. KLEIN:  Objection.  Outside the

17     scope.

18                    You can answer in your personal

19     capacity.

20                    THE WITNESS:  I recall receiving

21     e-mails.  I do not recall their content.

22

1    BY MR. MACGILL:

2         Q      Was there media attention to the

3    Guidepost report after it was published?

4         A      Yes.

5         Q      Was there -- was there a Washington

6    Post article?

7         A      I believe so.

8         Q      A Daily Mail article?

9         A      I don't know.

10         Q      CNN coverage?

11         A      I believe so.

12         Q      MBC News coverage?

13         A      I don't know.

14         Q      New York Times article?

15         A      Maybe.  I don't know.

16         Q      Just in terms of the first interview

17    of Pastor Johnny Hunt, I want to focus just on the

18    first interview for a few minutes.

19              Are you aware that during the first

20    interview of Pastor Johnny Hunt, that Mr. Holske

21    and Ms. Kilpatrick did not ask Pastor Johnny Hunt a

22    single question about the alleged sexual assault?

1    A    Yes.

2    Q    Are you aware that during that first

3    interview that Mr. Holske and Ms. Kilpatrick did

4    not even mention ███████ ████████ by name?

5    A    Yes.

6    Q    Are you aware, Ma'am, that Mr. Holske

7    and Mr. Kilpatrick during this -- or Ms. Kilpatrick

8    during this first interview did not even mention

9    ███████ ████████ by name?

10    A    Yes.

11    Q    At the time of this first interview

12    of Pastor Johnny Hunt, your investigators had

13    conducted at least six interviews of the ████████

14    individually or collectively by that time.  Is that

15    right?

16    A    If -- if you say that that is

17    correct.  I don't recall the actual dates, but I'm

18    sure that there were a number of interviews of the

19    ████████ before the first interview of Mr. Hunt.

20    Q    Ma'am, I would like you to turn --

21    let's turn to the deposition notice here for a

22    minute.  I'm going to focus on Topic 8.

1           A      What document number is that, please?

2           Q      It's Exhibit 106, Document 1, I

3      think -- 2.

4           A      Thank you.

5           Q      Did you come prepared, Ma'am, to

6      testify on Topic 8?

7           A      I need to get there.

8                MR. KLEIN:  Rob, while Ms. Tongring

9      is getting there, I will note that we objected on

10     Guidepost's behalf to this topic.  And so she was

11     not prepared to speak on behalf of Guidepost, and

12     is not prepared to speak on behalf of Guidepost,

13     with regards to this topic.  But if you want to ask

14     her in her personal capacity, she will answer as

15     best she can.

16     BY MR. MACGILL:

17          Q      Ma'am, tell the court, are you here

18     to testify as the corporate representative on Topic

19     8?

20                You understand that?

21                MR. KLEIN:  Objection.  She is not

22     here to testify about Topic No. 8.

 1                    MR. MACGILL:  Well, according to us,

 2     she is.  And you -- you had the obligation to

 3     confer with us and to come to a resolution or to

 4     file a protective order.  Mr. Mintz never made --

 5     never called me to ask about it.  You -- you had to

 6     get court relief, you didn't.  And you needed to

 7     confer about it -- specifically Mr. Mintz needed to

 8     confer with me about it.  He never proposed to do

 9     so.

10                    So you're obligated to give

11     testimony on this topic.  So if -- if you want

12     get relief after the fact, do what you need to

13     do, but she's here to testify, and is obligated

14     to give testimony, on this topic.

15                    MR. KLEIN:  She will most certainly

16     not give corporate testimony on this topic.  She

17     absolutely is -- if she knows --

18                    MR. MACGILL:  If you --

19                    MR. KLEIN:  Let me finish my -- I let

20     you speak, Rob, just let me speak.

21                    MR. MACGILL:  Okay.

22                    MR. KLEIN:  She will not give

1       corporate testimony on this topic, as we objected.

2       We sent numerous meet and confer requests.  You and

3       I had a phone call saying that we would try to meet

4       and confer.  I followed up with no less than three

5       e-mails where you were unavailable at all the times

6       I had proposed.  We tried to meet and -- let me

7       finish, Rob.  Let me finish, please.

8                       We tried to meet and confer in good

9       faith.  You refused or failed to meet us in that

10      regard.  We are here.  I asked -- in my last

11      e-mail, I invited you to --

12                      MR. MACGILL:  You are --

13                      MR. KLEIN:  -- postpone the

14      deposition if you wanted to --

15                      MR. MACGILL:  No.

16                      MR. KLEIN:  -- you choose not to.  We

17      are here in good faith to answer all of the

18      questions that we have agreed to.  Any other

19      question you can still ask her.  She has been

20      answering in her individual capacity.  It was not

21      our obligation based on that background for us to

22      run in and seek a protective order where we have

```
1        tried, without help from your side, to have the

2        meet and confer that is required.

3                    MR. MACGILL:  We repeatedly --

4        you're -- you're irrelevant to this process now.

5        You are completely irrelevant.  The only person

6        that's relevant is Mr. Mintz.  You cannot confer.

7        You know you have no authority to confer.  You're

8        not the lead counsel, Mr. Mintz is.  And I'm lead

9        counsel on my side.

10                   We offered repeatedly to meet with

11       you.  And the e-mails will confirm that.  I

12       offered Friday -- we were in testimony all week

13       last week.  I offered Friday, you didn't take my

14       Friday date.  On Monday you called it off.  We

15       offered to meet on Monday and meet and confer

16       with you on Monday as well.  Mr. Mintz has never

17       been available.

18                   You're obligated to get a

19       protective order in order to avoid the obligation

20       to testify.  And that's clear law in this

21       district.  So this was your obligation.  We don't

22       need to argue about it.  You go file your motion
```

```
1        and we'll file ours.
2                    MR. KLEIN:  We don't --
3                    MR. MACGILL:  But I want to know now
4        that she is not prepared and I want to make my
5        record.
6                    MR. KLEIN:  She is -- I'm making the
7        regard for her --
8                    MR. MACGILL:  Well, she --
9                    MR. KLEIN:  -- she is not prepared.
10                   MR. MACGILL:  No, you don't --
11                   MR. KLEIN:  This is a legal issue,
12       Rob.  She is not prepared to speak about this
13       topic.  And we have made our record crystal clear.
14       And I look forward to the motion and the reaction
15       by the judge to the paper trail that we have given.
16       And it wasn't a paper trail, we wanted to meet and
17       confer with you.  We did.
18                   MR. MACGILL:  Where were you -- where
19       were you Friday afternoon?
20                   Why didn't you --
21                   MR. KLEIN:  I told you I was in the
22       airport ready to board a plane.  I explained that
```

1         to you and your colleague when I asked --

2                   MR. MACGILL:  Enough said.

3                   MR. KLEIN:  -- when I gave you four

4         options --

5                   MR. MACGILL:  Even though you --

6                   MR. KLEIN:  -- five options.

7                   MR. MACGILL:  With all due respect,

8         you're not relevant.  The only person that's

9         relevant is Mr. Mintz.

10                  MR. KLEIN:  But you did not offer one

11        time -- you knew I was speaking for both of us.

12        You knew I was speaking for both of us and you

13        chose to sandbag me here.  That will also be

14        reflected in any motion that is brought.  But I

15        don't want to take any more time here, Rob.  You

16        can ask the questions, I will raise my objections

17        as the questions are asked.

18        BY MR. MACGILL:

19             Q    Tell the court the total number of

20        clicks, views, and overall engagement on links and

21        banners on Guidepost's website relating to the

22        report.

1                    MR. KLEIN:  Objection as to form.

2        Outside the agreed-upon topics.

3                    You can answer in your personal

4        capacity if you know.

5                    THE WITNESS:  I don't know.

6        BY MR. MACGILL:

7            Q    What did you do to repair on this --

8        prepare to give testimony specifically on the Topic

9        of 8A?

10           A    I don't know.

11                   MR. KLEIN:  Objection as to form.

12       This was not an agreed-upon topic.  We did not

13       prepare.

14                   But you can answer that question.

15                   THE WITNESS:  I did not.

16       BY MR. MACGILL:

17           Q    Tell the court what steps you took to

18       testify in Topic 8B, the total number of clicks,

19       views, shares, likes, comments, and engagements on

20       any social media post pertaining to the report.

21                   MR. KLEIN:  Objection.  Outside the

22       scope of the agreed-upon topics despite the request

1      to meet and confer.

2                    You can answer in your personal

3      capacity though if you know.

4                    THE WITNESS:  I did not.

5      BY MR. MACGILL:

6           Q     Looking at Topic 7, are you prepared

7      to testify on Topic 7?

8                    MR. KLEIN:  Same objection.  We

9      agreed to talk about reference to the report on the

10     Guidepost website, which she has.  So with that

11     limitation, she is authorized and already has given

12     corporate testimony in regard to No. 7.  The

13     breadth of it, we objected to, but we offered a

14     narrowing, which she already testified to today.

15     BY MR. MACGILL:

16          Q     What did you do to prepare to testify

17     on Topic 7?

18                    MR. KLEIN:  Again, with the

19     limitation provided, she can answer that question

20     with regard to the limitation.

21                    Please feel free to review the

22     question if you need.

1                    THE WITNESS:  The marketing of it.

2                    MR. KLEIN:  Oh, you have it there.

3                    THE WITNESS:  Yeah.

4                    MR. KLEIN:  Thank you.

5        BY MR. MACGILL:

6            Q     Are you prepared to testimony on the

7        marketing efforts of Guidepost --

8                    MR. KLEIN:  Objection.  Outside --

9        BY MR. MACGILL:

10           Q     -- as described here?

11                   MR. KLEIN:  Objection.  Outside the

12       scope of the agreed-upon topics and what we agreed

13       to provide.

14                   But you can answer that question.

15                   THE WITNESS:  I'm prepared to talk

16       about the -- how the -- basically the SBC EC tab on

17       our website and what was included therein.

18       BY MR. MACGILL:

19           Q     What marketing advertising and

20       promotional efforts were made by Guidepost

21       associated with the report?

22                   MR. KLEIN:  Objection.  Outside the

1      scope of the agreed-upon topics.

2                      But you can answer in your personal

3      capacity if you know, if there were any.

4                      THE WITNESS:  I don't believe there

5      were any.

6      BY MR. MACGILL:

7           Q     Were there any -- was there any

8      marketing effort by Guidepost associated with the

9      report?

10                     MR. KLEIN:  Objection as to form.

11                     But you can answer in your personal

12     capacity if you know.

13                     THE WITNESS:  I don't believe there

14     were any.

15     BY MR. MACGILL:

16          Q     Did you -- what did you do to prepare

17     to answer that question?

18                     MR. KLEIN:  Objection.  It was

19     outside the scope of the agreed-upon topics.

20                     You can answer.

21     BY MR. MACGILL:

22          Q     Counsel keeps referring to

1     agreed-upon topics.  There's no agreement of any

2     kind or nature with your counsel, Ma'am.  You're

3     here to testify according to our notice, not his

4     unilateral statements of what he's agreed to do.

5     There's been no agreement with your company.  And I

6     want you to know that for our part.  He can say it

7     until the end of the day, tomorrow, the next day,

8     there's no agreement, and there can't be an

9     agreement, and there will not an agreement on this

10    topic.  And if there's going to be any agreement,

11    it's going to be lead counsel, Mr. Mintz.  All

12    right?  So I made my comments.

13    BY MR. MACGILL:

14          Q     I just want -- I just want to show

15    that you have done nothing, to repeat nothing, to

16    prepare on Topic 7.  You have done nothing to

17    prepare to give testimony as the corporate

18    representative on Topic 7, have you?

19               MR. KLEIN:  Objection as to form.

20    I've already explained the basis of our objection.

21               You can answer that question.

22               THE WITNESS:  That's not true.  I am,

1    and was, prepared to talk about the SBC EC tab on

2    our web page.  Other than that, I am not prepared,

3    nor did I do anything to prepare for the remainder

4    of Topic No. 7.

5    BY MR. MACGILL:

6         Q    All right.  And then what did you

7    do -- with respect to the SBC EC tab on the

8    website, what investigation did you do?

9         A    I am aware of it because I was

10    largely responsible for it.

11         Q    And what did you -- what did you do

12    to become aware of the details associated with that

13    insofar as the Guidepost report is concerned?

14         A    Well, I typically was the one who

15    prepared the content that went on that tab.  I

16    worked with our website people to have the tab put

17    on the website.  And then would review it to make

18    sure that it was accurate at various places and

19    time and in all time frames.  When the report was

20    published by the Task Force, I made sure that the

21    content again was on the website -- or on the, you

22    know -- behind the tab when you clicked on the tab

1     on our website.  And that the -- it went to -- it's
2     still -- the Task Force link was always up there to
3     their website.  And, you know, made sure that the
4     rest of the information was correct.
5             Q     When you say the Task Force link,
6     what -- what are you referring to?
7             A     The Task Force, I believe, still has
8     their own website where they would provide updates
9     to the SBC community and whoever else was
10     interested in the investigation.  And there was a
11     link to their website on our page.
12            Q     To a link to whose website?
13            A     The Sexual Abuse Task Force.
14            Q     And why did you put a link to the
15     Sexual Abuse Task Force on your website?
16            A     Because as part of our engagement
17     letter, we agreed to keep the SBC survivor
18     community and anybody interested in the
19     investigation up to date.  And so that was part of
20     the way that we kept the community up to date as to
21     what was happening in the investigation.
22            Q     So if one went to your website to --

1       after the report was completed, describe how one

2       can get to the full report.

3                   A     I don't know exactly but -- because

4       we did not have a link to the report.  They could

5       go to the Task Force website and however the Task

6       Force had a link to the report or however they did

7       it, they could find it there.

8                   Q     Well, they could find it through

9       your -- the -- anyone who wanted to see your report

10      could utilize -- could go to your website and get

11      there, right?

12                  MR. KLEIN:  Objection.  Asked and

13      answered.  Mischaracterizes her statement.

14                  You can answer.

15                  THE WITNESS:  Assuming that there was

16      a link from the Sexual Abuse Task Force website, I

17      assumed that they could.

18      BY MR. MACGILL:

19                  Q     Well, you made sure, did you not, you

20      made sure that on your website that the report was

21      available to the people who visited your website,

22      right?

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3.23-cv-00243   Document 219-12   Filed 07/03/24   Page 207 of 342 PageID #:
4839

1                MR. KLEIN:  Objection.  Asked and

2      answered.

3                You can answer.

4      BY MR. MACGILL:

5           Q    That was your job, to make sure that

6      people could access your report, right?

7                MR. KLEIN:  Objection.

8                THE WITNESS:  No.

9                MR. KLEIN:  Asked and answered.

10                You can answer.

11                THE WITNESS:  No.

12      BY MR. MACGILL:

13           Q    Well, I'm looking at your website

14      right now, Ma'am, and there's a banner right here

15      that says, "SBC EC Report, Plus Hotline for

16      Survivors."

17                That's what it says right here on the

18      banner, right?

19           A    I don't know.  I don't have it in

20      front of me.

21           Q    Okay.  Ma'am, just to make sure that

22      we're crystal clear on what you're saying and that

1     we're clear on what you did, okay, I want to make
2     sure that the court here and the jury knows exactly
3     what you did, even as we sit here today.  All
4     right?
5               So we'll look at your screen here in
6     a minute, we'll show you -- we'll show you the --
7     what we can see today.  Okay?
8          A    Okay.
9          (Tongring Deposition Exhibit Number 112
10         marked for identification.)
11    BY MR. MACGILL:
12         Q    If you would click on Exhibit 112, if
13    you would please.
14              Are you there?
15         A    No, I'm not there yet.
16         Q    Are you there now?
17         A    I'm trying to get it so that it's --
18    okay.
19         Q    Now, this is how you manage your
20    website today.  Do you recognize that as your
21    website today?
22         A    Yes.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 209 of 342 PageID #: 4841

1          Q     And we can see here, what's the

2     top -- read the top banner out loud, if you would.

3          A     It says, "SBC EC Report and Hotline

4     for Survivors."

5          Q     And what do you -- what do you offer

6     the visitor to your website?

7                You offer to click here, right?

8          A     Uh-huh.

9          Q     And if you click here, as you're

10    instructed, as the first banner on your site, where

11    does that take you, Ma'am?

12         A     It takes you to another page, but I

13    can't click there so --

14         Q     Well, you were prepared to give

15    testimony though today so we know that you're

16    prepared on this topic, right?

17               MR. KLEIN:  Objection.

18    Argumentative.  Completely unnecessary.  And your

19    exhibit does not allow her to do what you are

20    asking her to do.  So give her something else --

21    BY MR. MACGILL:

22         Q     Ma'am --

1              MR. KLEIN:  -- to do and she will.

2              MR. MACGILL:  It's not going to

3       happen, Counsel.

4              MR. KLEIN:  That's fine.

5   BY MR. MACGILL:

6          Q     Ma'am --

7              MR. KLEIN:  She can't answer a

8       question about a document she cannot access.

9   BY MR. MACGILL:

10         Q     -- you prepared --

11             MR. KLEIN:  -- and then blame her for

12      it.

13  BY MR. MACGILL:

14         Q     You came here for -- the one thing

15      you did prepare on Topic 7, the one thing, Ma'am,

16      the one single thing that you actually prepared on

17      was the SBC EC tab on your website, right?

18             MR. KLEIN:  Objection.

19      Mischaracterizes her statement.

20             You can answer.

21             THE WITNESS:  I am aware of what

22      that -- I have not looked at it recently, so I

1      can't -- I -- I don't know what's currently there.

2      BY MR. MACGILL:

3            Q      Ma'am, you just testified not three

4      minutes ago that you took preparations to testify

5      as behalf of the corporation about the SBC EC tab

6      on the website, did you not?

7            A      I said I was prepared to testify on

8      that because that I was largely responsible during

9      the time of the investigation.

10           Q      All right.  And on May 20, did you

11     have the same tab here that you have today on -- in

12     late May 2022?

13           A      I don't know.

14           Q      Well, did -- when you prepared, did

15     you learn that one way or another, Ma'am?

16           A      No.

17           Q      Did you go back to what the website

18     looked like?

19           A      I did not.

20           Q      Well, how -- okay.  Let's -- describe

21     now what -- you know, based on your preparation,

22     when you click here, as instructed by your website

1      in the top banner, where does that take you?

2              A     It takes you to a page that has, as I

3      said before, information relating to the step --

4      again, I was talking about at the time of the

5      investigation, and at the time that the report was

6      published by the Task Force, and it had that

7      information.  My role and responsibility, which was

8      what I was prepared to testify about it, was to

9      manage that content at that time.

10             Q     Well --

11             A     I am no longer responsible for that.

12             Q     Well, the purpose of this tab is to

13     give the viewer with a means to access the report,

14     right?

15             A     No.

16             Q     No?

17                   The top banner of your website is not

18     an invitation to access the report?  No?

19             A     It's to give information regarding

20     the report and the hotline.  It is not --

21             Q     Well --

22             A     -- an invitation to view the report

1          because the report appears nowhere on our website.

2                    Q      "SBC EC Report and Hotline for

3          Survivors, Click Here," you're saying that's not an

4          invitation to review the report?

5                              MR. KLEIN:  Objection as to form.

6                              You can answer.

7                              THE WITNESS:  As I said, the

8          report -- it is informational purposes only.  The

9          report appears nowhere on our website.  It is

10         information about the report and about the hotline.

11         BY MR. MACGILL:

12                   Q      Okay.  Now, if we go -- again, let's

13         put aside what you testified to and look at the

14         realities of the website here for just a minute if

15         we could.

16                   A      Okay.

17                   Q      Okay.  Is that fair enough?

18                          Can we look in reality for a second?

19         May we do that?

20                   A      I would love to, but I can't.

21                   Q      Let's do it.  Now, if you click on

22         this, Ma'am, you know, there's a reality here that

1        we want to contrast specifically with some of your

2        testimony.  Let's -- the reality is if you click

3        here, where it takes you is to the Sexual Abuse

4        Hotline for Survivors, does it not?

5                 A     I don't know.

6                 Q     All right.  Does it -- does it take

7        you to an SBC investigation and reports section?

8                 A     I don't know.

9                 Q     Does it -- does it tell you -- does

10       it instruct the participant, or the viewer of your

11       website specifically, that the report of the

12       independent investigation is now available from the

13       Task Force?

14                A     I don't know.

15                Q     Now, separate from what you don't

16       know about the SBC EC tab on the website, you don't

17       have any information of what advertising your

18       company did with respect to the Guidepost's report?

19                      MR. KLEIN:  Objection.  Asked and

20       answered.

21                      THE WITNESS:  I would need to go back

22       to the original -- can I see the question?

1                    MR. KLEIN:  Yeah.

2                    THE WITNESS:  Can you repeat that,

3          please?  I don't have any information as to what.

4          BY MR. MACGILL:

5               Q    Let's go to Topic 5.  Did you come

6          prepared to speak about the financial statements

7          for the years 2020 through 2023?

8                    MR. KLEIN:  Objection.  Well beyond

9          the scope of the topics that we agreed to or tried

10         to agree to.  And we did not agree to provide

11         information, nor did we prepare the witness for

12         that topic, but she can answer if she knows in her

13         personal capacity.

14         BY MR. MACGILL:

15              Q    Ma'am, did you prepare to give

16         corporate testimony on behalf of the corporation on

17         any of the topics listed in Topic 5?

18                   MR. KLEIN:  Same objection.

19                   But you can answer.

20                   THE WITNESS:  I need to see Topic 5.

21                   No.  And I don't know anything in

22         my personal capacity.

1    BY MR. MACGILL:

2         Q    Did you take any steps to prepare on

3    Topic 4?

4              MR. KLEIN:  Same objection.  We

5    objected to that topic.  We're unable to meet and

6    confer despite our good-faith efforts, and so the

7    witness is not prepared to speak to that.

8              But you can answer the question.

9              THE WITNESS:  Other than I took no

10   steps to prepare on behalf of the corporation.

11   Other than what we've already discussed, I don't

12   have any other information.

13   BY MR. MACGILL:

14        Q    Okay.  How much did -- tell us about

15   how much time each employee billed on this matter.

16             MR. KLEIN:  Objection.  Outside the

17   scope of the topics we agreed to provide

18   information on.

19             But you can answer in your personal

20   capacity if you know.

21             THE WITNESS:  I don't know.

22

1    BY MR. MACGILL:

2            Q    How much did each independent

3    contractor bill in connection with this report?

4            A    I don't know.

5                 THE WITNESS:  Sorry.

6                 MR. KLEIN:  That's okay.

7                 Same objection.

8    BY MR. MACGILL:

9            Q    And, again, you didn't do any

10   preparations on Topic 4?

11               MR. KLEIN:  Objection.  Asked and

12   answered.

13               And based on the previous

14   objection, you can answer.

15               THE WITNESS:  I don't know.

16   BY MR. MACGILL:

17           Q    Guidepost's organizational structure

18   for the years 2020 through 2024, are you prepared

19   to testify on that topic?

20               MR. KLEIN:  I believe we agreed to

21   testify to a portion of that.  I believe she's

22   already testified to it in her corporate capacity.

1      But you certainly can ask her for questions about

2      the reporting relationships of the people involved

3      in the section of the report referring to your

4      client and what their organizational reporting

5      requirements were.

6      BY MR. MACGILL:

7              Q      What did you do to prepare on Topic

8      3?

9                     MR. KLEIN:  Other than communications

10     with counsel, you can answer that question if

11     you're able.

12                    THE WITNESS:  I am aware just by

13     virtue of knowing, you know, the -- who Russ

14     reports to.  And then I'm trying to think of who

15     else.  What Samantha's reporting structure was when

16     she was independent contractor.  And I think that's

17     it.

18     BY MR. MACGILL:

19             Q      You think that's it?

20             A      Yes.

21             Q      Nothing further?

22             A      Nope.

1          Q     On Topic 9, what did you do to

2     prepare on Topic 9?

3                    THE WITNESS:  I'm sorry, you can keep

4     it.

5                    MR. KLEIN:  Hang on a second.

6                    We objected to this topic as being

7     inappropriate for 30(b)(6).  We're willing to

8     meet and confer on it, but that did not happen

9     despite our efforts, and so the witness is not

10    prepared to answer in her corporate capacity,

11    though she can answer any questions you provide

12    in her personal capacity.

13    BY MR. MACGILL:

14         Q     Ma'am, what did you do to prepare on

15    Topic 9?

16                    Nothing, is that the answer?

17                    MR. KLEIN:  With that objection, you

18    can answer.

19                    THE WITNESS:  I have some personal

20    knowledge, but I did nothing to prepare as a

21    30(b)(6) witness.

22

1          BY MR. MACGILL:

2                  Q      What personal knowledge do you have

3          in terms of positions, roles, titles, compensation

4          of persons associated with the Guidepost report?

5                  A      I know what happened with me.

6                  Q      Okay.  What happened to you?

7                  A      I was promoted from senior managing

8          director to executive vice president.

9                  Q      And did the Guidepost report have

10         anything to do with that in your judgment?

11                 A      No.

12                 Q      Why were you promoted?

13                 A      Because of the work that I do.

14                 Q      Okay.  What about Mr. Holske?

15                 A      Not that I'm aware of.

16                 Q      Not promoted?

17                 A      Not that I'm aware of.

18                 Q      What about Ms. Kilpatrick?

19                 A      She was hired as a full-time

20         employee.

21                 Q      As a result of the Guidepost report?

22                 A      No.

1          Q      Why?

2          A      Why what?

3          Q      Why was she promoted?

4          A      She wasn't promoted.  She was hired

5     as a full-time employee.

6          Q      So that was not a promotion?

7          A      No.

8          Q      Okay.  Lateral -- a lateral move in

9     your view?

10         A      I don't know what she would consider

11    it.

12         Q      Okay.  You don't consider it a

13    promotion?

14         A      I don't.

15         Q      Okay.  Was she promoted to run the

16    faith-based division of the Guidepost after the

17    Guidepost report -- pardon me.

18                Yeah, was she promoted,

19    Ms. Kilpatrick, to run the faith-based division of

20    Guidepost after the report to the SBC?

21         A      She wasn't promoted because she

22    wasn't working for the company.  She was an

1       independent contractor.

2                Q      Did she --

3                A      After -- after November, I think, of

4       2022, she was hired as a full-time employee.  And

5       another division of the company was re-purposed and

6       renamed as the faith-based practice, I believe, and

7       Samantha was running it.  But she couldn't be

8       promoted because she wasn't a full-time employee,

9       so . . .

10               Q      So the -- was she in charge of the

11      faith-based practice before the Guidepost report?

12                     MR. KLEIN:  Objection.  Asked and

13      answered.

14                     You can answer.

15                     THE WITNESS:  No.

16      BY MR. MACGILL:

17               Q      No.

18                     Was she -- was she in charge of the

19      faith-based practice after the Guidepost report?

20               A      She was hired after the Guidepost

21      report.

22               Q      Very simple, Ma'am, before she wasn't

1      in charge, then after she was in charge of that

2      practice, right?

3              A      It didn't exist before.

4              Q      Right.

5                     And it came into existence because of

6      the work that you sponsored on Guidepost, right?

7              A      That's not true.

8              Q      Well, Ma'am, that's up for the jury

9      to decide.

10             A      Well, no, it's a factual issue, and

11     it's not true.  We were trying to hire Samantha

12     before we were engaged by the SBC, so it's a

13     factual issue, and it's not true.

14             Q      Well, let's talk about that, Ma'am.

15     Let's make sure we understand exactly what you're

16     saying.

17                    So was there a faith-based practice

18     before the Guidepost report?

19             A      In some way, shape or form, it just

20     wasn't called that.

21             Q      Well, Ma'am, let's talk about

22     formalities.  What was the formal name of the

1          faith-based practice prior to --

2                    A      Institutional Integrity.

3                    Q      Okay.  Institutional Integrity, that

4          was the -- was it a section?  What was it called?

5                    A      That's just what it was called.

6                    Q      Was it a department?

7                    A      It's just what it was called,

8          Institutional Integrity.

9                    Q      Practice area?

10                   A      Yeah.

11                   Q      Okay.  So the Institutional Integrity

12         Practice Area existed prior to the Guidepost

13         report.  Is that right?

14                   A      Uh-huh.

15                   Q      Who was in charge of that?

16                   A      I don't know.

17                   Q      All right.  And --

18                   A      I don't think it had a formal leader.

19                   Q      Okay.  And after the Guidepost report

20         was published, was there a faith-based practice

21         area created?

22                   A      Yes.

1          Q     And when was that faith-based

2     practice area created at Guidepost?

3          A     In November of 2022.

4          Q     I see.

5                And that was how many months after

6     the Guidepost report pertaining to the SEC was

7     published?

8          A     Six.

9          Q     Six months after the Guidepost report

10    was published the faith-based practice group was

11    formed at Guidepost.  Is that right?

12         A     Uh-huh.

13         Q     And who was in charge of the

14    faith-based practice group six months after the

15    Guidepost report was prepared?

16         A     Samantha Kilpatrick.

17         Q     Okay.  Now, was there a compensation

18    change for her based on going from an independent

19    contractor of the company to the person now in

20    charge six months after the Guidepost report as the

21    head of the faith-based practice area?

22         A     I don't know because she had her own

1      law firm, so I don't know what compensation changed

2      that would have been.

3              Q      Now, focusing on advertising and

4      promotional efforts, what advertising and

5      promotional efforts did Guidepost endeavor or

6      pursue after May 2022, in relation to the

7      faith-based practice?

8                      MR. KLEIN:  Objection.  Outside the

9      scope.

10                     You can answer.

11                     THE WITNESS:  I know there was a

12     press release when Samantha came on.  Other than

13     that, I don't know.

14     BY MR. MACGILL:

15             Q      Well, their website is an easy

16     reference here.  Did you look at your website on

17     what you said about faith-based solutions on your

18     website?

19             A      I did not.

20             Q      In preparation for your testimony

21     today, you didn't even go to the website to

22     determine what faith-based solution descriptions

1      are given on your website?

2                    MR. KLEIN:  Objection.  Asked and

3      answered.

4                    You can answer.

5                    THE WITNESS:  I did not.

6      BY MR. MACGILL:

7           Q      Ma'am, I see with my own eyes here,

8      "faith-based solutions" on your website and --

9           A      That makes sense.

10          Q      Okay.  And so this was an advertising

11     effort that was pursued after the Guidepost report

12     was issued to the SBC Executive Committee, right?

13                   MR. KLEIN:  Objection.

14     Mischaracterizes the testimony.

15                   But you can answer.

16                   THE WITNESS:  That -- I -- no, I

17     disagree with that characterization, but you can --

18     BY MR. MACGILL:

19          Q      Well, let's talk about facts, Ma'am.

20     The select experience -- the select experience

21     advertised on your website for faith-based

22     solution, the first entry is "Southern Baptist

 1       Convention," isn't it?

 2              A     I don't know.

 3              Q     "Conducted a thorough and independent

 4       investigation into the response to sexual abuse

 5       allegations and an audit of procedures and actions

 6       of the Credentials Committee."  The first entry on

 7       "Select Experience" under faith-based solutions,

 8       right?

 9              A     I don't know.

10              MR. KLEIN:  Objection as to form.

11              You can answer.

12       BY MR. MACGILL:

13              Q     Ma'am, you knew in February --

14              MR. KLEIN:  Hold you.  You have to

15       let her answer the question, Rob.  You asked her a

16       question, I told her she could answer and you

17       didn't let her answer, so I would just ask you to

18       let her answer the question unless you want to

19       withdraw it.

20              THE WITNESS:  I don't know.

21       BY MR. MACGILL:

22              Q     Okay.

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 229 of 342 PageID #:
4861

1          A     I'm not seeing what you are seeing.

2     And I said I didn't look at it.

3          Q     Well, Ma'am, we asked you in

4     connection with our notice to look at exactly this.

5     And you've already testified to this court you did

6     nothing to determine to take any steps, right?

7               MR. KLEIN:  Objection.

8     Mischaracterizes both your topics and the previous

9     testimony.

10               You can answer.

11               THE WITNESS:  You are correct that I

12     did not -- I testified that I didn't look, so --

13     BY MR. MACGILL:

14          Q     Okay.

15          A     -- I've already said I didn't look.

16     I don't know what you're reading.  And I don't know

17     what's there.

18          Q     Well, the -- I mean, you -- do you

19     have any doubt that you have a web -- a page -- a

20     landing page that says "Faith-based solutions"?

21               Any doubt about that?

22          A     I'm quite sure we do.

1          Q     And select experience, number one,

2    first reference is this Guidepost report on the

3    SBC, right?

4          A     The report is not there.

5          Q     Okay.  Now, with respect to -- are

6    you aware of a follow-on engagement with the SBC

7    Executive Committee after the publication of the

8    Guidepost report in May of 2022?

9          A     Yes.

10         Q     And are you aware that the Abuse and

11   Reform Implementation Task Force announced that it

12   made a recommendation to the Credentials Committee

13   to utilize Guidepost in establishing a ministry

14   check website?

15         A     Then we're talking about a different

16   follow-on engagement.  I'm sorry.

17         Q     You understand that that particular

18   engagement did occur?

19         A     No.  That's untrue.

20         Q     That's not true?

21         A     No.

22         Q     Okay.  Now -- so you're saying that

1      you were not engaged -- are you saying Guidepost

2      was never engaged by the Abuse Reform and

3      Implementation Task Force to do a ministry check

4      website?

5              A      That's correct.

6              Q      Okay.

7              A      To my knowledge, we were not.

8              Q      Do you know them about being fired

9      from any such engagement at some point in time?

10             A      I believe we were.

11             Q      So you were engaged and then fired or

12     you're --

13             A      No, we were --

14             Q      -- telling me --

15             A      -- no -- please.  I'm sorry.  Let

16     me -- let me stop you.

17                    We were supposed to be engaged.

18     They -- they had said to us that we were -- to my

19     understanding, we were supposed to be engaged and

20     then they decided to go with somebody else, but we

21     were never -- we never, to my knowledge, signed an

22     engagement letter, so we were never formally

1       engaged.  When I said that I knew we were engaged,

2       I was speaking of the hotline.

3              Q      Okay.  Now, Ma'am, going back to your

4       website for a minute, I'm going to show you another

5       exhibit.

6                     (Tongring Deposition Exhibit Number 113

7                     marked for identification.)

8       BY MR. MACGILL:

9              Q      All right.  Exhibit 113, do you have

10      that in front of you?

11             A      Not yet.

12                    Yes.

13             Q      And do you see that -- do you see the

14      reference to the -- the "SBC Investigation and

15      Report"?

16             A      I see it.

17             Q      And then what is the -- look at the

18      address up above, what does that say, the website

19      at the top of the page?

20             A      "Guidepostsolutions.com/

21      SBC-EC-investigation."

22             Q      Okay.  And did you look at this

1    particular page in preparation for your report --

2    or your testimony?

3          A     I said that I did not, no.

4          Q     And the report of the independent

5    investigation is linked here by this mechanism, is

6    it not?

7               MR. KLEIN:  Objection.  That is

8    factually inaccurate.  And you know she cannot

9    testify to that because she doesn't have access to

10   the link, but I do, and it does not link to the

11   report.

12              MR. MACGILL:  Do you want to take the

13   witness stand, Counsel?

14              MR. KLEIN:  No, but I want you to --

15   I want you not to deceive the witness, so I was

16   just making a record that what you said is

17   factually untrue, because it is.

18   BY MR. MACGILL:

19         Q     So, Ma'am, if we were to -- if you

20   were to click on the report of the independent

21   investigation, where would that take you?

22         A     The Task Force website.

1          Q      All right.  And the Task Force -- all

2     right.  Now -- now, ma'am, I want to see if we

3     can't confirm what you did, and those acting in

4     concert with you at Guidepost, once this litigation

5     was started.  All right?

6                Are you familiar with the ability to

7     go back historically on websites and determine

8     historically what was offered on a website over

9     time?

10         A      No.

11         Q      You have not -- did you do any of

12    that yourself in preparation of your testimony?

13         A      No.

14         Q      Now, you see that -- do you see the

15    page that we have in front of you, the report of

16    the independent investigation in blue?

17         A      Uh-huh.

18         Q      Now, prior to this particular version

19    that -- we had a witness here, Mr. Klein, was

20    giving testimony -- or attempted to give testimony

21    without being sworn here a minute ago, but let's

22    just talk about reality.

1          Historically, if you click on that

2     blue link right there what happened?

3               What happened --

4               MR. KLEIN:  Objection.  Asked and

5     answered.

6               THE WITNESS:  I have no idea.

7               MR. KLEIN:  You can answer again.

8     BY MR. MACGILL:

9          Q    Ma'am, the fact of the matter is at

10    the time that you published this report -- strike

11    that.

12               At the time that you completed this

13    report, by going to this SBC investigation and

14    report portion of your website, clicking on that

15    blue reference, quote, report of the independent

16    investigation would take you directly to the

17    Guidepost report, right?

18               MR. KLEIN:  Objection.

19               THE WITNESS:  No.

20               MR. KLEIN:  Asked and answered.

21    BY MR. MACGILL:

22          Q    Oh, you're saying that's not a fact,

1    Ma'am?

2              A     No.

3              Q     And you've done no research to

4    determine what historically existed on your

5    website, have you?

6              A     I just know because we never ever

7    linked it to the report.  We always linked it to

8    the Task Force website.

9              Q     Okay.  Now --

10             A     If you want to show me something that

11   links it to the report, please do.

12             Q     But I want to make sure your --

13             A     No, we never did it.

14             Q     Okay.  I want to make sure you're

15   testifying under oath --

16             A     I am.

17             Q     Okay.  One more question.

18                   You are testifying that you are

19   certain, Ma'am, as you sit here today, that this --

20   that you never directly linked to the Guidepost

21   report on your website?

22             A     I never linked it directly to the

```
 1     report --
 2              Q     And you're --
 3              A     -- on the website.
 4              Q     And your company never did so?
 5              A     Not that I'm aware.
 6              Q     I'm going to -- not that you're
 7     aware?
 8              A     No.
 9              Q     Are you certain of this or not?
10              A     You said did my company, and I'm
11     answering truthfully, not that I'm aware.
12              Q     Okay.  Now --
13              A     If you want to show me that they did
14     it, show me.
15              Q     I think you told us that you were in
16     charge of this portion?
17              A     I was.
18              Q     And did you do it?
19              A     I just told you I didn't.
20              Q     Now you're saying you're not aware if
21     the company did?
22              A     And that's the truth.
```

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 238 of 342 PageID #:
4870

1          Q      Okay.

2          A      If you want to show me, show me.

3          Q      Okay.  Now, you testified carefully

4     and thoughtfully in relation to this line of

5     questioning that I've just given you, have you not?

6          A      I did.

7          Q      Okay.

8          A      I'm going to need a break because I

9     need --

10         Q      Okay.  You're welcome --

11                MR. KLEIN:  You're --

12    BY MR. MACGILL:

13         Q      You're welcome to take break.

14         A      Thank you.

15                VIDEOGRAPHER:  The time is 4:53 p.m.

16    We are going off the record.

17            (Recess from 4:53 p.m. to 5:11 p.m.)

18                VIDEOGRAPHER:  The time is 5:11 p.m.

19    We're going back on the record.

20                Please continue, Counsel.

21    BY MR. MACGILL:

22         Q      Ma'am, do you have the deposition

1      notice in front of you still?

2              A      No, but I'll get to it.

3              Q      Okay.

4              A      Okay.

5              Q      Topic 12, can you tell us what you

6      did to prepare on Topic 12?

7              A      Just a second.

8              MR. KLEIN:  And while Ms. Tongring is

9      pulling that up, I will just note our objection to

10     that topic and our offer to limit her answers to

11     that topic, which she will still stand by.  And so

12     certainly to the extent you ask questions that are

13     limited by our objection, which is communications

14     just concerning the report relating to Plaintiff,

15     it was a very small limitations as opposed to the

16     entire report, and so with that objection,

17     Mr. MacGill, she is prepared to discuss No. 12, as

18     it relates to the portion of the report relating to

19     the Plaintiff.

20     BY MR. MACGILL:

21             Q      So what have you done to prepare to

22     give testimony on behalf of the company on all

Veritext Legal Solutions
www.veritext.com                                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 240 of 342 PageID #:
4872

1      edits, comments, suggestions, and feedback received

2      from anyone associated with the executive

3      committees, the SBC, the Task Force, and the

4      Cooperation Committee relating to the portion of

5      the report relating to Plaintiff?

6                    MR. KLEIN:  You can answer that.

7                    THE WITNESS:  First of all, the

8      only -- we -- we never got any -- the only people

9      who were permitted to see any portions of the

10     report at all, but specifically related to

11     Plaintiff, were the Task Force or the Cooperation

12     Committee.  The Executive Committee -- neither the

13     Executive Committee or the SEC received any portion

14     of the report.  So I just want to be clear that my

15     answer is limited to the Task Force and the

16     Cooperation Committee.

17     BY MR. MACGILL:

18              Q      The Sexual Abuse Task Force?

19              A      Correct.

20              Q      And the Committee on Cooperation?

21              A      Yes.

22              Q      Who were the members of the Task

1    Force?

2              A     Oh, my goodness.  I can name some of

3    them, but it's been a while, so I don't remember

4    all their names.

5              Q     Who were the members of the Committee

6    on Cooperation?

7              A     Same answer.  I don't even know that

8    I ever knew all of their names.

9              Q     All right.  And what edits or

10   comments, suggestions, feedback did you receive

11   from the Task Force?

12             A     There was a document that I believe

13   we had that had like a -- there was like a list of

14   potential comments that they gave us.  Everyone was

15   permitted to give, like, factual responses, factual

16   and accuracies, typos, things that related to SBC

17   policy.

18                   From the Committee on Cooperation, I

19   don't believe that they had anything that they said

20   that we saw with regard -- that they made with

21   regard to Mr. Hunt.  I think the Task Force had one

22   suggestion of a -- a word change, but that was it.

1          Q     You testified earlier about some
2    comments that were made in the margins of -- of one
3    of the drafts that was submitted.
4                Do you recall that?
5          A     I do.
6          Q     And you were -- you indicated that
7    those comments were either your own or perhaps
8    comments of the Committee on -- a member of the
9    Committee on Cooperation.  Is that fair?
10         A     I did, but then I explained, I
11   believe, in -- in a subsequent answer that those
12   were comments that I typically would write as I was
13   having a discussion with colleagues about them, and
14   that that's what I thought they were and not from
15   the Committee on Cooperation, because many of them
16   were things on the Committee on Cooperation would
17   not have known.
18         Q     All right.  Looking at Topic 13, you
19   indicated that you -- did you prepare to describe
20   the text messages exchanged or received by
21   Guidepost employees or independent contractors
22   relating to the report?

1                    MR. KLEIN:  Yeah.  And we -- again,

2           we limited it to the gathering of text messages

3           concerning the report -- I'm sorry, about the

4           report concerning Plaintiff.  With the limitation,

5           I think she's already testified to this earlier,

6           Rob, about the efforts she made to see that -- how

7           texts were gathered and collected.

8      BY MR. MACGILL:

9                Q     And you testified earlier -- so did

10          you -- you described making inquiry of two people

11          about text messages?

12               A     I think I said three.

13               Q     Three.

14               A     Ms. Myers Wood, Ms. Kilpatrick, and

15          Mr. Holske.

16               Q     And you asked what they did to

17          produce text messages?

18               A     Yes.

19               Q     And no one at your company did a

20          forensic collection of text messages.  Is that

21          correct?

22                    MR. KLEIN:  Objection as to form.

1                    You can answer.

2                    THE WITNESS:  No.

3         BY MR. MACGILL:

4              Q     No.

5                    And you understand what a forensic

6         collection of text messages is?

7              A     I do.

8              Q     Okay.  And you didn't take any steps

9         yourself to do a forensic collection, which would

10        allow you to give specific comments on the full

11        range of text messages exchanged or received by

12        Guidepost employees or independent contractors

13        relating to the report?

14             A     I'm sorry?

15             Q     You -- no forensic collection by

16        Guidepost of text messages, right?

17             A     Right, that's what I said.

18             Q     And the only thing that you did is

19        you called people to ask them what they did to get

20        screenshots of text messages they thought were

21        relevant, right?

22             A     No.  I said, "How did you get

1       them" -- let me back up.  What I originally
2       testified to was how did they get their text
3       messages to Mintz & Gold.  What we hadn't talked
4       about was the direction of how to collect text
5       messages, which I know was in an e-mail that I had
6       sent to everyone which said, "Go through all of
7       your text messages.  Identify ones that are even
8       remotely relevant.  Screenshot them and then send
9       them over."
10                     So I had given instructions
11      previously as to how to collect them, and that --
12      those were the instructions.
13              Q     And did you have a communication with
14      Ms. Wood -- Myers Wood about this?
15              A     About how to collect?
16              Q     Yes.
17              A     Yes.
18              Q     About screen shots, this --
19              A     She was -- yes, she was on the
20      e-mail.
21                     MR. KLEIN:  She was on the e-mail?
22                     THE WITNESS:  On the e-mail.

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 246 of 342 PageID #:
4878

1    BY MR. MACGILL:

2         Q     Did you make inquire of her as to

3    whether she had given to you text message

4    pertaining to the report?

5         A     She didn't give them to me, they

6    were -- they were given to her assistant who then

7    got them to IT --

8         Q     And --

9         A     -- our Guidepost IT.

10        Q     -- how did you review the text

11   messages to prepare today?

12        A     Oh, I didn't review any text

13   messages.

14        Q     Okay.  You just simply learned about

15   what had been done to collect them?

16        A     Correct.

17        Q     And did you understand that you were

18   to give testimony on the text messages that were

19   exchanged or received by Guidepost employees?

20             MR. KLEIN:  Well, object to that

21   characterization of 13 -- Request Topic 13.

22             But you can answer.

1              THE WITNESS:  No, that's not what

2     I -- are you talking that I should have -- was

3     supposed to review the content?

4     BY MR. MACGILL:

5         Q    We were asked -- we asked to get

6     you -- we asked the company to designate a witness

7     to give testimony on the text messages that were

8     exchanged and received by Guidepost employees.

9     You're not prepared to do that today?

10             MR. KLEIN:  I would just note the

11    objection.  That's not how we interpreted Topic 13,

12    Rob.  But you certainly can ask her.  But I would

13    just note our objection to, we interpreted, it

14    sounds like, maybe differently than you did.  And

15    we did not have a meet and confer to clarify that,

16    but you can ask her questions.

17             THE WITNESS:  I'm -- I'm -- no, I did

18    not review any content --

19    BY MR. MACGILL:

20        Q    Okay. I want --

21        A    -- of text messages.

22        Q    I want to review, did you collect any

1      documents to be responsive to Request No. 1?

2                    MR. KLEIN:  I would just note our

3      objection.  We objected to all of the document

4      requests.  You're free to ask her every one, Rob,

5      but I will just note for the record that we have

6      objected to the production of each of them.  And we

7      were willing -- remain willing to meet and confer

8      on each of them.  That meet and confer did not

9      happen, so the witness did not provide any

10     documents today in response.  I'm not saying you

11     can't ask her, but I --

12                    MR. MACGILL:  I promise you that

13     we're going to get to the bottom of this.  I

14     promise you.  Okay?  I'm giving you my word we will

15     resolve all these things, I promise.

16                    Now, I just want the witness to

17     testify she has nothing and did nothing.

18     BY MR. MACGILL:

19          Q     You didn't bring any documents

20     responsive to Request No. 1, did you?

21          A     Correct.

22          Q     You didn't bring any documents to --

1      to respond to Request No. 2, did you?

2              A      Correct.

3              Q      You didn't bring any documents to

4      respond to Request No. 3, did you?

5              A      No.

6              Q      You didn't bring any documents to

7      respond to Request No. 4, did you?

8              A      No.

9              Q      You didn't bring any documents to

10     respond to Request No. 5, did you?

11             A      No.

12             Q      You didn't bring any documents to

13     respond to Request No. 6, did you?

14             A      No.

15             Q      Okay.

16                    MR. KLEIN:  I would note that in

17     response to the Request No. 5, the answer is that

18     Guidepost says that no documents exist.

19                    MR. MACGILL:  Well, that's not true,

20     Counsel, and --

21                    MR. KLEIN:  Well, I would just say

22     that's what --

1           MR. MACGILL:  We --

2                MR. KLEIN:  -- that's -- I would just

3      say that's what it says.  And I would just say for

4      all the remaining ones, our objections in these

5      responses stand, subject, of course, to

6      Ms. Tongring's --

7                MR. MACGILL:  All right.  So I'm

8      going to put on the record the way we're going to

9      proceed here, we are -- we ask to meet with

10     Mr. Mintz in Nashville, Tennessee on April 10th at

11     1:00 p.m. to meet and confer on each of these

12     issues that have now arisen.

13                If he's not available to meet and

14     confer at 1:00 p.m. on April 10th in Nashville,

15     we would ask that he appear in Nashville to meet

16     and confer with me at 9:00 a.m. on April 11th.

17     Those are the two dates we will meet and confer.

18                We are going to adjourn the

19     deposition at this time.  We've been prejudiced

20     in these proceedings for reasons that we'll talk

21     about later.  But April 10th or 11th are the days

22     that we'll meet with Mr. Mintz and get to the

1    bottom of these things.  And we'll see what we

2    can resolve.  But we are not ending this

3    deposition today.

4              Second, we have been prejudiced in

5    our ability to conduct the individual deposition

6    of Ms. Tongring.  And we will not proceed

7    tomorrow.  And we will meet and confer with

8    Mr. Mintz on either of those dates.  We're hoping

9    either date works.  And we'll be asking for a

10   remedy in relation to that.

11             MR. KLEIN:  Well, I would just note

12   for the record that this deposition is ending now.

13   From our position -- again, it's just our position,

14   Rob, and you've laid your position out there, our

15   position is that this deposition is finished.

16             We gave you an opportunity in our

17   e-mails to postpone this.  I specifically asked

18   if you wanted to, no problem.  You did not

19   respond to that e-mail, you choose to wait and to

20   sandbag us here after we had made arrangements to

21   be here and be prepared to testify on the topics

22   we had tried to agree with, and all the testimony

1   she provided.  So we will not be appearing again

2   without court order on behalf of -- Ms. Tongring

3   will not on behalf of the corporate

4   representative.  We remain willing to testify

5   tomorrow.  There were no issues with topics with

6   regard to tomorrow's individual deposition, so I

7   would ask for the basis for canceling or

8   postponing tomorrow's deposition, since the

9   topics have nothing to do with that.

10              MR. MACGILL:  You defaulted on a --

11  defaulted on every topic.  Completely false, with a

12  minor exception on Topic No. 7, completely false.

13  You didn't do even the most basic thing on

14  anything.  You parsed and edited every request.

15  You didn't produce a single document.

16              We came here thinking that you were

17  not serious, you couldn't be serious, that no

18  lawyer could be serious about not producing a

19  single document in relation to our request for

20  Nos. 1 through 6.  No one could take such a

21  position.  You did.

22              So we're not going to be -- we're

1    not going to be dealt with this way.  So what
2    we're going to do is exactly what I said,
3    Mr. Mintz needs to be in Nashville, Tennessee, as
4    we requested.  If he can't be in Nashville,
5    Tennessee on those dates, he needs to tell us
6    when he can be.  And we will meet and confer.
7    We're not going to file any motions with the
8    court.  We're going to meet with Mr. Mintz and
9    see if we can't resolve all these things.  You
10   reserve your rights and we're reserving every one
11   of ours.
12                MR. KLEIN:  I understand that, but I
13   wish this conversation had been all similar to the
14   pleasant conversation we had on the phone last
15   Monday, which, of course, I guess I should not be
16   surprised is completely different from that
17   conversation.  I wish we had -- you had treated me
18   today as you tried to treat us then.  The problem
19   is you don't do that, so we are left in the
20   position that we have to now fight about things
21   that are unnecessary to fight about.
22                And so are your now -- you're now

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 254 of 342 PageID #:
4886

1    canceling the individual deposition of

2    Ms. Tongring that has nothing to do with the

3    topics?

4                    MR. MACGILL:  It has everything to do

5    with it.  Her deposition depends on those documents

6    being produced.  That's why we put the sequence in

7    that we did.  We put a sequence of a specific four

8    hours today, six requests for production that would

9    inform her personal deposition.  That's why we did

10   it.

11                   MR. KLEIN:  Well, you were aware --

12   Rob, you were aware -- crystal clear that we were

13   providing documents.  We then gave you the

14   opportunity to then postpone this deposition to

15   have this issue.  You made your choice.  You cannot

16   make your choice to continue with the deposition

17   and then say, "Okay.  Now I'm done until I choose

18   to open it up again."  That's not how it works.  So

19   your feign surprise that we're not providing

20   documents that you knew we were not providing will

21   not work.  And the record will reflect it.

22                   And so we have our --

1            MR. MACGILL:  We --

2            MR. KLEIN:  -- positions.  So we're

3    not going forward tomorrow?

4            MR. MACGILL:  We are not going

5    forward tomorrow.  And we would ask you to confirm

6    as soon as possible that Mr. Mintz will appear in

7    Nashville, Tennessee on either of these dates.  If

8    he can't appear on those dates, we need to know

9    when he can get to Nashville.  And we're going to

10   see if we can't iron all these things out with him.

11           MR. KLEIN:  And there's no desire on

12   your part, even though you had the desire on the

13   phone call with me, there is no desire on your part

14   to have a phone call to try to sort these out, as

15   you and I had spoken on the phone about to not

16   avoid meeting in person -- not to not avoid, to

17   avoid meeting in person, you and I had a discussion

18   let's try to work it out over the phone.  You

19   provided some opportunities that then you -- your

20   team could not make.

21           Are you now saying that you do not

22   want to even try to attempt to meet and confer

1    over a video or a phone and instead have now

2    changed your course and only want to meet in

3    person, just so I understand your position?

4                    MR. MACGILL:  We did everything we

5    could to meet with you ahead of time.

6                    MR. KLEIN:  Not true.

7                    MR. MACGILL:  Hold on.

8                    MR. KLEIN:  Completely untrue.  And

9    the record will reflect that.  But answer my

10   question.  Are you now not willing to at least try

11   to meet over video or over the phone or do you

12   insist on only having in person, which is different

13   than what you said to me?

14                   MR. MACGILL:  Let me explain our

15   view.

16                   MR. KLEIN:  That's fine.

17                   MR. MACGILL:  You have played us from

18   the beginning of last week until today, you played

19   us.  We assumed that you would act in good faith,

20   and you did nothing to act in good faith.  I called

21   you on the 10th to resolve things in an amicable

22   way.

1              We -- you had to take a plane on
2      Friday afternoon.  I was on a plane Friday
3      morning.  We did everything we could to get a
4      time set with you Friday afternoon.  And the
5      e-mails confirm that.  We again offered Monday as
6      a way to try to resolve some of these issues and
7      you unilaterally said, "We're not talking to
8      you."  That's what you said on Monday.
9              So we got played.  We won't have
10      this happen again.  We are insisting upon a
11      personal meeting with Mr. Mintz.  I want to meet
12      with him one on one as the court directed.
13      That's what we're going to do.  The magistrate
14      judge said specifically this is the way it's
15      going to happen.  And that's what we're going to
16      do.  He told us what to do.  I was hoping that we
17      could avoid this, but we can't.
18              MR. KLEIN:  You were not hoping.  You
19      were -- you were hoping this would happen, Rob,
20      that's the problem.
21              MR. MACGILL:  No.
22              MR. KLEIN:  The problem is you wanted

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 258 of 342 PageID #:
4890

1      this to happen exactly as it did.  The good news is

2      you forgotten the e-mails I sent on Monday and

3      Wednesday.  Those e-mails will record the efforts

4      we made.  And the good news is I have the written

5      record.  Thank you for your time.

6                      I just want to see actually before

7      we close the record to see if Counsel for the EC

8      wants to ask the witness any questions.  I just

9      noticed a hand go up, so I did not want to ignore

10     that.

11                     MR. OTCHY:  Ms. Callas will be asking

12     questions.  I just want to note for the record we

13     made non-refundable travel arrangements to be here

14     today and tomorrow for the deposition, which has

15     now been unilaterally canceled upon less than eight

16     hours' notice, this was similar to the situation

17     where a prior deposition was canceled during the

18     first week of deposition, and the EC will reserve

19     its rights with respect to seeking reimbursement

20     for the fees.

21                     MS. CALLAS:  And if I might --

22                     THE WITNESS:  Yeah, and I'm sorry, I

```
 1        closed out of the session, if you need any

 2        documents.

 3                    MS. CALLAS:  No, I don't need any

 4        documents.

 5                    THE WITNESS:  Okay.

 6        EXAMINATION BY COUNSEL FOR SBC EXECUTIVE COMMITTEE

 7        BY MS. CALLAS:

 8             Q     I just want to go back over and ask

 9        you a few additional questions.

10             A     Okay.

11             Q     So my name is Gretchen Callas, and

12        I'm counsel for the Executive Committee.

13                    I just want to be clear based on your

14        prior testimony that it is correct that the

15        Executive Committee was not shown a copy of the

16        report prior to its final issuance.  Is that

17        correct?

18             A     Yes.

19             Q     And it is correct that the Executive

20        Committee was not given an opportunity to edit,

21        comment or offer any feedback on the report prior

22        to its final issuance.  Is that correct?
```

1        A    Yes.

2        Q    You were asked a couple of questions

3    about Dr. Frank, and I just want to be clear that

4    as far as you know today, he did not receive a

5    separate copy of the Hunt portion prior to the

6    final issuance of the report.  Is that right?

7        A    Not that I recall.

8        Q    You were asked about edits, comments,

9    changes by the Committee on Cooperation.  And is it

10    correct that you do not recall any by that

11    committee, correct?

12        A    To the Dr. Hunt portion?

13        Q    To the Hunt portion, yes.

14        A    No.

15        Q    And you testified that you believe

16    there may have been a single word that was proposed

17    by the Task Force on the Hunt section.  Is that

18    right?

19        A    Yes, I believe so.

20        Q    And is it true that the Guidepost

21    held the final authority and decision whether to

22    accept that proposed change over a single word.  Is

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 261 of 342 PageID #:
4893

1    that right?

2              A    Yes, we did.

3              Q    Okay.  Do you know if it was accepted

4    or not?

5              A    No, I believe we accepted it.

6              Q    But at the end of the day, the

7    decision was Guidepost's whether to accept that

8    proposed change.  Is that right?

9              A    Yes.

10             Q    As it relates to the scope of the

11   engagement, was it Guidepost's decision whether

12   Dr. Hunt's -- the section on Dr. Hunt fell within

13   the scope of the engagement?

14             A    Yes.

15             MS. CALLAS:  That's all the questions

16   that I have.

17             MR. KLEIN:  Nothing.  Thank you.

18             MR. MACGILL:  So I've got some

19   followup.  First, we have incurred multiple fees

20   and expenses because of your cancelation at the

21   last minute.  And we reserve all our rights as

22   well.  You've canceled depositions without notice,

1      including Pastor Johnny Hunt, without any adequate

2      notice.  And we haven't heard expense prejudice,

3      and we've had the same expense prejudice from

4      Guidepost of a similar nature relatedly.

5              EXAMINATION BY COUNSEL FOR PLAINTIFF

6      BY MR. MACGILL:

7          Q    Just to followup on Counsel's

8      questions.

9                  Who hired Guidepost?

10         A    I'm sorry, I'm trying to picture the

11     engagement letter in my head.  And I apologize that

12     I -- I logged out of the --

13         Q    All right.  I'm going to -- it's

14     Exhibit 2.  I'll read it to you.

15         A    Okay.  Thank you.

16         Q    Exhibit 2 is a letter to Mr. Bruce

17     Frank.

18         A    Uh-huh.

19         Q    And do you understand that Dr. -- I

20     said mister.  It's Dr. Bruce Frank.  Do you

21     understand that he's a member of the Executive

22     Committee of the Southern Baptist Convention?

```
 1              A     No, I don't believe he was.  He was a
 2       pastor of a church.  He was the chairman -- or the
 3       chair of the Sexual Abuse Task Force.  I believe
 4       that the Executive Committee hired us, but we
 5       reported directly to the Task Force.
 6              Q     Okay.  Ma'am --
 7              A     Because the Executive Committee was
 8       paying for -- paying -- the funds had to come out
 9       of the Executive Committee.
10              Q     Take a look -- do you have the --
11              A     No, I'm not --
12                    MR. KLEIN:  Patrick, can you --
13                    THE WITNESS:  I'm really, really
14       sorry.
15                    MR. KLEIN:  That's okay.
16                    I'm sorry, Patrick, if you don't
17       mind helping her in getting to hers or you can
18       show her Rob's.  Whatever you want to do.
19                    THE WITNESS:  I'm so sorry.
20                    MR. SANDERS:  You're fine.
21                    THE WITNESS:  Yeah, like I fully
22       logged out.
```

 1                    MR. OTCHY:  I can give her mine.

 2                    THE WITNESS:  Yeah, why don't --

 3                    MR. KLEIN:  Yeah, that would be --

 4                    THE WITNESS:  I'm sorry.

 5                    MR. KLEIN:  -- great.  We don't need

 6      to waste the time.  Yeah, yeah, yeah.

 7                    THE WITNESS:  Okay.

 8      BY MR. MACGILL:

 9           Q     All right.  So looking at the

10      engagement letter, do you have this engagement

11      letter in front of you now?

12           A     Yes, I do.

13           Q     And this is the engagement letter

14      that provided the scope and details of the

15      engagement by Guidepost.  Is that correct?

16           A     Uh-huh.  Yes.

17           Q     And who signed this letter on behalf

18      of Guidepost?

19           A     I believe it will be Julie Myers

20      Wood.

21           Q     Would you take a look --

22           A     I am.  I am.

1          Q      -- and see?  It's the last page.

2          A      Just a second.  My copy is unsigned,

3     but I know that it -- it says "Julie," and I know

4     that Julie Myers Wood signed it.

5          Q      Okay.  And if you look at page 10 of

6     11.

7          A      Oh, yes, that's signed.  That one is

8     signed, yeah.  Sorry.

9          Q      And you see that it's signed by Julie

10    Myers Wood.  Is that correct?

11         A      Yes.

12         Q      And it was agreed and accepted to by

13    Dr. Bruce Frank.  Is that right?

14         A      That's correct.

15         Q      All right.  Now, if you look at page

16    1 of this engagement --

17         A      Oh, can I -- can I say one thing?

18    I'm sorry.  This copy doesn't have Pastor Slade's

19    signature.  But Pastor Slade did sign on a separate

20    copy, I know, and I've seen his signature.  So it

21    is also signed by Pastor Slade.

22         Q      Look at page 11 of 11.

1          A     Oh, sorry.  I didn't mean to get
2     ahead of you.
3          Q     Do you see Mr. -- do you see Pastor
4     Rolland Slade signing?
5          A     Yes, there it is.
6          Q     Okay.  Now -- and he signed as the --
7     on behalf of the Executive Committee, did he not?
8          A     Yes, I believe so.
9          Q     All right.  And to be as specific, if
10    we could for just a minute, if you look at page
11    1 --
12         A     Yes.
13         Q     -- of this October 5 engagement
14    letter, tell the court and jury who it's addressed
15    to.
16         A     Dr. Frank and Pastor Slade.
17         Q     And Dr. Frank at the time of this
18    letter was the Task Force Chair of the Southern
19    Baptist Convention.  Is that right?
20         A     Yes.
21         Q     And Pastor Rolland Slade was the --
22    on the Executive Committee of the Southern Baptist

1      Convention.  Is that right?

2              A      Yes.

3              Q      And the engagement in Section 1.1

4      says that, "In accordance with the mandate given by

5      the Southern Baptist Convention Messengers (SBC

6      motion) the SBC, through and under leadership of

7      the Task Force has retained Guidepost Solutions and

8      its agents."

9                      Do you see that?

10             A      I do.

11             Q      And "To conclude" -- or, I mean, "To

12     conduct an independent investigation of the

13     Executive Committee and an audit of the procedures

14     and actions of the Credentials Committee under the

15     terms and conditions set forth in this engagement."

16     Is that right?

17             A      That's what it says.

18             Q      All right.  And it says, "Our client

19     in this matter will be the Task Force of the SBC."

20                     Do you see that?

21             A      I do.

22             Q      Okay.  Section 2.2, "The Committee on

1    Cooperation of the Executive Committee will be

2    headed by the president of the SBC, who will be

3    also -- who also -- who will also be a member of

4    the committee."

5             Do you see that?

6        A     I do.

7        Q     Is that your understanding that the

8    Committee on Cooperation of the Executive Committee

9    was going to be, in fact, headed by the president

10    of the SBC?

11        A     Yes.

12        Q     All right.  And so when the

13    cooperation -- when the Committee on Cooperation

14    was pulled for its comments, did you understand

15    that the Committee on Cooperation included

16    members -- a member or members of the Executive

17    Committee?

18        A     Yes.

19        Q     And specifically it says exactly the

20    following, "The remaining four members will be

21    members of the Executive Committee who were

22    appointed to their first term on the Executive

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 269 of 342 PageID #: 4901

1          Committee in 2021," is that right?

2                    A     Yes.

3                    Q     So the Committee on Cooperation

4          included at least these four members of the

5          Executive Committee.  Is that right?

6                    A     Yes.

7                    Q     So when you transmitted this report

8          to the Committee on Cooperation -- pardon me.

9                          When you transmitted this report

10         twice to the Committee on Cooperation, you were

11         transmitting to a committee that included at least

12         four members who were members of the Executive

13         Committee.  Is that fair?

14                   A     When we showed them the report.

15                   Q     When you showed them the report?

16                   A     Yes.

17                   Q     Right.

18                         By video or Zoom.  Is that right?

19                   A     Well, the first time it was in

20         person.

21                   Q     With paper?

22                   A     Right.

1          Q     And the second time was --

2          A     It was over Zoom, yes.

3          Q     And each time you displayed to the

4    Committee on Cooperation, you displayed to a

5    Committee on Cooperation in paper form in person or

6    by Zoom or other -- other -- Teams or whatever --

7          A     Yeah, I think --

8          Q     -- it was, you displayed to them this

9    Committee on Cooperation, which in each instance

10   included four members of the Executive Committee of

11   the SBC?

12         A     Yes.

13         Q     All right.  Now, at the time that

14   you -- do you recall -- now that we're looking into

15   the actual details of what happened, do you recall

16   who the -- what the names were of the gentlemen who

17   served on the -- who served on the Cooperation

18   Committee?

19         A     So I remember Dr. Lynn was definitely

20   one of them.  I remember John or Joe Batts, because

21   he was the one who was out in Seattle who couldn't

22   come to Nashville the one time, but I don't -- and

1    I know that there was a woman, but I don't -- I'm

2    sorry, I don't recall everyone's name.

3            Q    Now, did you understand also that the

4    Committee on Cooperation had a responsibility to

5    ensure that the Executive Committee fulfilled its

6    fiduciary obligations to the SBC?

7                 MR. KLEIN:  Objection as to form.

8    Calls for a legal conclusion.

9                 You can answer.

10               THE WITNESS:  No.

11   BY MR. MACGILL:

12           Q    All right.  Let's look together at

13   2.3 then, the next page.

14           A    Okay.

15           Q    Let's read it together.  "The

16   Committee on Cooperation" -- are you there?

17           A    I do.

18           Q    "The Committee on Cooperation will

19   ensure that the Executive Committee fulfills its

20   fiduciary obligations of the SBC and the

21   Messengers."

22                 Do you see that?

1           A     I do.

2           Q     "And specifically the Committee is

3     charged with the following:"  And then there's a

4     list of four bullet points.  Do you see that?

5           A     Yes.

6           Q     Okay.  Looking now at this report

7     that you were -- or the engagement that you were

8     asked about by counsel for the SBC, and looking at

9     Section 3.1, do you see specifically that in

10    Section 3.1, that there's -- the -- the Guidepost

11    was to investigate what is delineated here in five

12    bullet points?

13                MS. CALLAS:  Object to the form.  I'm

14    not counsel for the SBC.

15                MR. MACGILL:  My mistake.

16    BY MR. MACGILL:

17          Q     In response to Counsel for --

18    questions from Counsel for the SBC Executive

19    Committee a few minutes ago, I want to bring

20    further detail into focus on your Section 3.1.

21          A     Yes.

22          Q     Are you there?

1          A      I'm seeing it.

2          Q      And Section 3.1 includes reference to

3     the scope of what Guidepost will, quote,

4     investigate, unquote, right?

5          A      Yes.

6          Q      Allegations of abuse by Executive

7     Committee members.  Is that right?

8          A      Yes.

9          Q      And then second, and there was

10     testimony that you gave in my examination today

11     about abuse allegations by Executive Committee

12     members.

13               Do you remember that line of

14     testimony, generally speaking?

15               MR. KLEIN:  Objection as to form.

16               You can answer.

17     BY MR. MACGILL:

18          Q      Do you recall that general testimony?

19          A      Allegations of abuse by Executive

20     Committee members, yes.

21          Q      And then here, looking now at the

22     engagement letter, "Mishandling of abuse

1      allegations by Executive Committee members between

2      January 1, 2000 to June 14, 2021."

3               Do you see that?

4          A     I do.

5          Q     And that's the period of time for

6      which mishandling of abuse allegations was to be

7      focused.  Is that right?

8          A     The mishandling of abuse, yes.

9          Q     Okay.  And then continuing, Bullet 3,

10     allegations of mistreatment of sexual abuse victims

11     by Executive Committee members from that same

12     period of time.  Is that right?

13         A     Yes.

14         Q     You reviewed the invoices prior to

15     their -- when they were sent.  Do you recall that

16     testimony?

17         A     Yes.

18         Q     And who did you direct the invoices

19     to?

20         A     I believe they went to Pastor Slade.

21         Q     And Pastor Rolland Slade is a

22     member -- is he one of the addressees here, that is

1      he is part of the SBC Executive Committee?

2                    MR. KLEIN:  When you say "here," are

3      you still referring to the engagement letter?

4      BY MR. MACGILL:

5           Q      The first page.

6           A      I'm going to up to --

7                    MR. KLEIN:  Yeah, first page.

8                    THE WITNESS:  There we go.  Yes.

9      BY MR. MACGILL:

10          Q      All right.  And your best

11     recollection is that you sent the invoices here to

12     the Executive Committee, specifically Pastor

13     Rolland Slade.  Is that right?

14          A      Yes --

15          Q      All right.

16          A      -- because the Task Force didn't have

17     any funding.  The only way that -- the only funding

18     was through the Executive Committee.

19          Q      So it's the SBC Executive Committee

20     that paid Guidepost?

21          A      That's correct.

22                    MR. MACGILL:  That's all I have,

1    Ma'am.  Thank you.

2                    MR. KLEIN:  I'm just going to reserve

3    our rights about tomorrow's deposition.  We're

4    prepared to go forward.  I don't need to restate

5    for the record, but we are prepared to go forward

6    tomorrow.  We reserve all our rights regarding

7    Ms. Tongring's individual deposition.

8                    Thank you everyone your time.

9                    MR. MACGILL:  Thank you.

10                    VIDEOGRAPHER:  The time is 5:43 p.m.

11    We are going off the record.

12                    (Whereupon, at 5:43 p.m.  the videotaped

13                    deposition of KRISTA TONGRING was

14                    concluded for the day; signature

15                    reserved.)

16

17

18

19

20

21

22

1          CERTIFICATE OF NOTARY PUBLIC

2              I, FELICIA A. NEWLAND, CSR, the officer before

3     whom the foregoing videotaped deposition was taken,

4     do hereby certify that the witness whose testimony

5     appears in the foregoing deposition was duly sworn

6     by me; that the testimony of said witness was taken

7     by me in stenotype and thereafter reduced to

8     typewriting under my direction; that said deposition

9     is a true record of the testimony given by said

10    witness; that I am neither counsel for, related to,

11    nor employed by any of the parties to the action in

12    which this deposition was taken; and, further, that

13    I am not a relative or employee of any counsel or

14    attorney employed by the parties hereto, nor

15    financially or otherwise interested in the outcome

16    of this action.

17

18

19

20          FELICIA A. NEWLAND, CSR
            Notary Public

21

      My commission expires:

22    September 15, 2024

1       Veritext Legal Solutions

        1100 Superior Ave

2       Suite 1820

        Cleveland, Ohio 44114

3       Phone: 216-523-1313

4    April 8, 2024

5    To: Scott Klein, Esq.

6    Case Name: Hunt, Johnny M.  v. Southern Baptist Convention; Et Al.

7    Veritext Reference Number: 6592913

8    Witness:  Krista Tongring , 30(b)(6)      Deposition Date: 3/20/2024

9

     Dear Sir/Madam:

10

     Enclosed please find a deposition transcript.  Please have the witness

11

     review the transcript and note any changes or corrections on the

12

     included errata sheet, indicating the page, line number, change, and

13

     the reason for the change.  Have the witness' signature notarized and

14

     forward the completed page(s) back to us at the Production address

15   shown

16   above, or email to production-midwest@veritext.com.

17   If the errata is not returned within thirty days of your receipt of

18   this letter, the reading and signing will be deemed waived.

19   Sincerely,

20   Production Department

21

22   NO NOTARY REQUIRED IN CA

Veritext Legal Solutions
www.veritext.com                                                       888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 279 of 342 PageID #: 4911

```
1              DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
2
          ASSIGNMENT REFERENCE NO: 6592913
3         CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
    Et Al.
          DATE OF DEPOSITION: 3/20/2024
4         WITNESS' NAME: Krista Tongring , 30(b)(6)
5         In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
6   my testimony or it has been read to me.
7         I have made no changes to the testimony
    as transcribed by the court reporter.
8

    _____        _____
9   Date                   Krista Tongring , 30(b)(6)
10        Sworn to and subscribed before me, a
    Notary Public in and for the State and County,
11  the referenced witness did personally appear
    and acknowledge that:
12
          They have read the transcript;
13        They signed the foregoing Sworn
             Statement; and
14        Their execution of this Statement is of
             their free act and deed.
15
          I have affixed my name and official seal
16
    this _____ day of_____, 20_____.
17
                   _____
18                 Notary Public
19                 _____
                   Commission Expiration Date
20
21
22
23
24
25
```

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 280 of 342 PageID #:
4912

```
 1              DEPOSITION REVIEW
                CERTIFICATION OF WITNESS
 2

        ASSIGNMENT REFERENCE NO: 6592913
 3      CASE NAME: Hunt, Johnny M.  v. Southern Baptist Convention;
    Et Al.
        DATE OF DEPOSITION: 3/20/2024
 4      WITNESS' NAME: Krista Tongring , 30(b)(6)
 5          In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
 6  my testimony or it has been read to me.
 7          I have listed my changes on the attached
    Errata Sheet, listing page and line numbers as
 8  well as the reason(s) for the change(s).
 9          I request that these changes be entered
    as part of the record of my testimony.

10
            I have executed the Errata Sheet, as well
11  as this Certificate, and request and authorize
    that both be appended to the transcript of my
12  testimony and be incorporated therein.
13  _____        _____
    Date                    Krista Tongring , 30(b)(6)
14
            Sworn to and subscribed before me, a
15  Notary Public in and for the State and County,
    the referenced witness did personally appear
16  and acknowledge that:
17          They have read the transcript;
            They have listed all of their corrections
18              in the appended Errata Sheet;
            They signed the foregoing Sworn
19              Statement; and
            Their execution of this Statement is of
20              their free act and deed.
21          I have affixed my name and official seal
22  this _____ day of_____, 20____.
23          _____
            Notary Public
24
            _____
25          Commission Expiration Date
```

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS MIDWEST

ASSIGNMENT NO: 6592913

PAGE/LINE(S) /          CHANGE          /REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____      _____

Date                    Krista Tongring , 30(b)(6)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____

DAY OF _____, 20_____ .

                    _____

                    Notary Public

                    _____

                    Commission Expiration Date

| & |
| --- |
| **&** 3:11,19 7:13 245:3 |

| 0 |
| --- |
| **00243** 1:6 6:19 |
| **003968** 5:10 |
| **012582** 5:13 |
| **013490** 5:12 |
| **016152** 5:14 |

| 1 |
| --- |
| **1** 6:12 13:17 25:5,14 31:1 42:10 66:3,4 77:19 138:2,4 151:12 169:2 172:4 193:2 248:1,20 252:20 265:16 266:11 274:2 |
| **1,200** 118:18 119:17,22 120:19 121:19 |
| **1,300** 118:17,18 119:17,22 120:22 121:20 |
| **1.1** 267:3 |
| **10** 138:14,21 139:4,11 143:10 144:15 159:17 265:5 |
| **10016** 3:14 |
| **105** 5:8 9:9,10 9:13 10:10 14:9 15:14 |

**106** 5:9 16:17 16:18 17:16,20 22:18 193:2
**107** 5:10 123:16,18 125:4,18 127:10 130:2 138:2,4 141:12 142:4
**108** 5:11 158:11,14
**109** 5:12 160:20 161:2 165:19 168:22
**10th** 140:5 250:10,14,21 256:21
**11** 66:13 67:5 67:12 68:3 70:7 71:20 72:21 73:12 76:11 77:15 81:3 265:6,22 265:22
**110** 5:13 171:20 172:2 183:6
**1100** 278:1
**111** 5:14 187:2 187:4
**112** 5:15 132:1 132:18 208:9 208:12
**113** 5:16 139:3 141:6 232:6,9

**11th** 76:1 79:19 81:11 82:3 250:16,21
**12** 40:19 52:7 52:22 53:15,20 55:1 56:2 57:22 66:17,18 82:1,17 86:19 87:18 93:6 95:2 107:2 151:19 239:5,6 239:17
**1200** 2:8
**123** 5:10
**1250** 1:14,21 6:21
**12595** 5:13
**12th** 149:17 150:5 151:2 152:1 153:22 156:5,16 158:4 158:18
**13** 148:5 150:13 158:10 160:15 169:3 242:18 246:21 246:21 247:11
**130** 171:19
**13490** 169:2
**13492** 161:18
**13503** 5:12
**13th** 145:10,11 148:9 149:17 150:5,14 152:12 153:16

**154:1 160:1 169:19
**14** 162:17 169:2 172:5,5 183:8 274:2
**14754** 277:19
**15** 277:22
**155** 139:3
**156** 2:7
**158** 5:11
**15:25** 156:16
**15th** 145:15
**16** 5:9,11
**160** 5:12
**1600** 2:18 3:4
**16155** 5:14
**16th** 145:15
**171** 5:13
**1746** 71:13
**18** 154:19,20,22 155:3,13
**1820** 278:2
**187** 5:14
**1993** 13:6
**1996** 13:9
**1:00** 250:11,14
**1:05** 1:13 6:4

| 2 |
| --- |
| **2** 12:15,15,18 13:18 25:14 66:11 69:16 116:13 138:10 151:13 187:14 188:13 193:3 249:1 262:14 |

262:16
**2.2** 267:22
**2.3** 271:13
**20** 1:12 121:4
137:11 211:10
279:16 280:22
281:22
**2000** 274:2
**20005** 1:15,21
6:22
**2010** 144:4
**2017** 13:15
**2018** 144:4
**2020** 121:17
143:10 215:7
217:18
**2021** 121:5,22
269:1 274:2
**2022** 42:12
47:14 76:1,11
77:15 79:19
81:3 82:3 85:3
108:20 117:15
117:19 118:9
119:20,20
120:9 123:2
125:14 129:22
137:11 138:14
138:21 139:4
139:11 144:15
148:5,9 150:14
152:2 156:16
160:1,15
189:22 190:9
190:13 211:12

222:4 225:3
226:6 230:8
**2023** 15:15
118:21 119:16
215:7
**2024** 1:12 6:5
217:18 277:22
278:4
**208** 5:15
**20th** 6:5
**21** 15:15 83:9
**216-523-1313**
278:3
**232** 5:16
**25** 117:20,22
120:8 121:13
121:18,19,20
**25322** 2:19
**259** 5:4
**262** 5:5
**26th** 124:2
125:14 129:22
137:11
**28** 71:13
**2908** 3:20
**2:18** 93:20,22
**2:33** 93:22 94:1
**2nd** 3:13

### 3

**3** 151:16
162:17 218:8
249:4 274:9
**3.1** 272:9,10
273:2

**3.1.** 272:20
**3/20/2024**
278:8 279:3
280:3
**30** 1:10 6:13
7:16 24:4 33:7
33:15 153:6
154:5 180:18
182:15 190:8
190:13 219:7
219:21 278:8
279:4,9 280:4
280:13 281:20
**300** 120:10,19
121:19
**30th** 189:19
**31** 42:12
**314** 165:20
**325** 120:10,22
121:20
**350** 1:21
**37203** 3:6,21
**3971** 5:10
**3:23** 1:6 6:19
**3:33** 165:11,13
**3:48** 165:13,14
**3rd** 189:22

### 4

**4** 126:4 151:13
187:14 188:13
216:3 217:10
249:7
**44114** 278:2
**46204** 2:9

**490** 168:22
**493** 167:5
**4:53** 238:15,17

### 5

**5** 12:18 132:21
215:5,17,20
249:10,17
266:13
█████████
███████████
███████████
██████
████████7
**53** 43:7 174:15
**587** 183:8
**5:11** 238:17,18
**5:18** 172:6
**5:43** 1:13
276:10,12

### 6

**6** 1:10 6:13
7:16 24:4 33:7
33:15 75:5,7
75:10 85:4
153:6 154:5
180:18 182:15
183:8 219:7,21
249:13 252:20
278:8 279:4,9
280:4,13
281:20
**600** 3:12
**6592913** 278:7
279:2 280:2

281:2
**66** 130:19
131:18
**67** 159:21,21
**6:40** 158:18

**7**

**7** 41:22 200:6,7
200:12,17
203:16,18
204:4 210:15
252:12
**700** 3:5
**7:56** 169:3

**8**

**8** 5:3 25:14
151:14 155:6,7
192:22 193:6
193:19,22
278:4
**850** 109:22
**8a** 199:9
**8b** 199:18

**9**

**9** 5:8 83:22
84:13 85:4
219:1,2,15
**900** 1:15
**901** 6:21
**96** 168:21
**9:00** 250:16
**9:15** 83:7,13
169:19

**a**

**a.m.** 172:6
250:16
**ability** 234:6
251:5
**able** 33:12
79:14 125:18
147:11 218:11
**above** 232:18
278:16
**absolutely** 56:8
194:17
**abuse** 36:8 77:9
77:16 78:8,17
80:13 88:5
123:1 124:1
125:11 134:11
134:21 135:18
136:20 137:13
139:8 140:14
141:14,18
142:21 144:16
153:2 163:14
166:2 181:21
186:5,17 188:8
205:13,15
206:16 214:3
228:4 230:10
231:2 240:18
263:3 273:6,11
273:19,22
274:6,8,10
**accept** 135:7
136:10 139:15
260:22 261:7

**acceptable**
173:12
**accepted**
177:16,21
261:3,5 265:12
**accepting**
135:3 136:8
**access** 23:5,9
66:5 147:15
207:6 210:8
212:13,18
233:9
**accordance**
267:4 279:5
280:5
**accounting**
113:1
**accuracies**
241:16
**accuracy** 177:4
177:13,22
**accurate**
103:17 105:3,9
105:10 129:1
204:18
**accurately**
127:12 139:17
**acknowledge**
279:11 280:16
**act** 256:19,20
279:14 280:20
**acted** 180:13
**acting** 158:3
234:3

**action** 277:11
277:16
**actions** 228:5
267:14
**actual** 18:3
32:2 67:16
86:13 123:8
146:22 188:11
192:17 270:15
**actually** 18:3
29:11 66:17
90:15 210:16
258:6
**add** 113:20
**added** 149:5,6
149:8
**addition** 33:22
43:19 50:16
**additional**
177:5 259:9
**address** 55:9
58:18 232:18
278:14
**addressed**
100:3 266:14
**addressees**
274:22
**addressing**
62:11
**adequate** 262:1
**adjourn** 250:18
**administration**
16:3
**administrative**
110:16 119:7

admit 29:17
108:8,9 137:9
139:10
admitted 30:2
34:11
advance 60:22
62:10 188:7
advanced
63:18
advertised
227:21
advertising
201:19 214:17
226:3,4 227:10
advise 17:21
affiliations 7:7
affirm 80:22
affixed 279:15
280:21
afternoon 6:3
7:12 197:19
257:2,4
agents 267:8
ago 27:4 29:3
50:10 106:11
106:15 107:2
107:10 110:22
211:4 234:21
272:19
agree 6:10
115:16 128:14
135:1 137:16
174:22 215:10
215:10 251:22

agreed 37:15
38:21 115:7,11
115:18,18
123:8 134:19
195:18 199:2
199:12,22
200:9 201:12
201:12 202:1
202:19 203:1,4
205:17 215:9
216:17 217:20
265:12
agreement
203:1,5,8,9,9
203:10
agreements
115:13,14
ahead 45:14
61:12 63:9
85:17 93:17
156:1 163:11
256:5 266:2
airport 197:22
al 6:16 278:6
279:3 280:3
alex 3:10 7:13
alias 42:11
████████████
allegation 34:6
52:8 53:1,20
55:1 69:19
77:8,16 80:13
82:1,5,18
86:20 95:2
101:12,21

allegations
29:20 30:7
31:5 32:6,11
32:14,18 33:3
33:8 36:5
37:21 38:9
39:6 40:17,18
43:9 51:13
55:7 57:18
63:16 72:12,22
73:9 78:7 81:2
85:22 86:4
92:6,16,20
94:20 96:3,22
99:7 134:11,20
135:18 136:20
137:13 139:8
140:14 141:18
142:21 144:16
148:10 151:22
152:16 153:2
160:15 163:14
166:2 228:5
273:6,11,19
274:1,6,10
alleged 80:13
89:17 90:21
91:6,22 165:2
166:19 191:22
allow 54:2
153:8 209:19
244:10
allowed 143:21
ambush 60:2
60:12

amend 59:1,2,5
amended 5:9
17:6
amicable
256:21
amount 188:11
analysis 94:18
anderson 4:8
announced
230:11
answer 18:5
21:18 24:4
26:3,7 27:10
28:10,19,21
29:9 30:5
33:12,13 34:8
35:6,18 36:12
37:12 38:2,14
39:14 40:4,12
41:1,10 43:12
44:2 45:3,4,18
45:19,22 46:2
46:4,12,13
47:3,20 48:13
49:7 50:3 51:5
51:7 52:12
53:4 54:2,4,16
55:13 56:14
57:7,13 58:4
58:12 60:9,10
60:15 61:4,22
62:16 63:7,22
65:3,15 68:13
68:20 69:10
72:16 73:3,19

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 286 of 342 PageID #: 4918

| | | | |
|---|---|---|---|
| 77:22 79:6 | 154:14 156:22 | 271:9 273:16 | **appearance** |
| 80:17 81:6,17 | 157:8,17,19 | **answered** | 187:17 |
| 82:9,22 84:5 | 159:3 164:19 | 25:20 40:3 | **appearances** |
| 84:17 85:7 | 165:6 166:11 | 48:12 50:2 | 7:6 |
| 88:22 91:14 | 166:21 170:3 | 52:10 53:3 | **appeared**  131:1 |
| 92:10,22 96:13 | 170:22 174:18 | 54:1 70:5,10 | **appearing**  4:4 |
| 97:2,11,13 | 175:12 176:14 | 81:5 82:9 | 8:22 252:1 |
| 98:20 99:15,20 | 177:1,20 | 91:13 92:9 | **appears**  11:11 |
| 100:8 101:14 | 178:16 179:18 | 96:12 120:2 | 11:13,16,21 |
| 102:2,18 | 180:4,18 | 130:13 150:19 | 12:1 83:2 |
| 103:10,17 | 181:11 184:19 | 157:17 166:10 | 213:1,9 277:5 |
| 104:15 105:1,8 | 185:17 186:2 | 176:13,22 | **appended** |
| 105:16,16 | 186:13,14 | 177:19 188:16 | 280:11,18 |
| 106:6,17 107:5 | 188:18 189:12 | 206:13 207:2,9 | **applied**  180:6 |
| 108:5,16,22 | 190:18 193:14 | 214:20 217:12 | **appointed** |
| 109:21 110:7 | 195:17 199:3 | 222:13 227:3 | 268:22 |
| 110:14 111:4 | 199:14 200:2 | 235:5,20 | **apprised**  30:13 |
| 111:14,17 | 200:19 201:14 | **answering** | **appropriate** |
| 112:6,20 113:6 | 202:2,11,17,20 | 195:20 237:11 | 30:22 87:17 |
| 113:15 114:1,8 | 203:21 206:14 | **answers**  30:2 | 174:13 |
| 114:21 115:8 | 207:3,10 210:7 | 71:10,14 75:21 | **approve**  113:18 |
| 116:3,9 117:7 | 210:20 213:6 | 96:15 97:4,16 | 124:4 |
| 117:18 118:6 | 215:12,19 | 239:10 | **approved** |
| 118:12 119:2 | 216:8,19 | **anthony**  31:22 | 112:22 124:13 |
| 120:3,13 121:9 | 217:14 218:10 | **anybody**  54:12 | **approximately** |
| 124:10 128:9 | 219:10,11,16 | 73:16 96:18 | 19:22 110:3 |
| 130:4,14 132:9 | 219:18 222:14 | 205:18 | 112:2 115:3 |
| 139:22 140:21 | 226:10 227:4 | **apologies**  32:12 | 116:12 118:1,9 |
| 142:1,6 143:18 | 227:15 228:11 | 42:16 | 118:21 119:17 |
| 144:19 145:21 | 228:15,16,17 | **apologize**  76:8 | 119:21 120:8 |
| 147:6,19 148:2 | 228:18 229:10 | 85:12 89:1 | 121:15,19,20 |
| 148:18 149:11 | 235:7 240:6,15 | 262:11 | **april**  123:2 |
| 149:21 150:21 | 241:7 242:11 | **appear**  250:15 | 124:2 125:14 |
| 152:8 153:8,8 | 244:1 246:22 | 255:6,8 279:11 | 129:22 137:11 |
| 153:11 154:4,6 | 249:17 256:9 | 280:15 | 137:11 250:10 |

Veritext Legal Solutions
www.veritext.com                                                888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 287 of 342 PageID #: 4919

250:14,16,21
278:4
**arant** 2:16 3:3
**area** 131:6
224:9,12,21
225:2,21
**argue** 196:22
**argument**
102:3
**argumentative**
28:9,18 53:3
68:19 69:9
106:5 154:3
209:18
**arguments**
101:20
**arisen** 250:12
**arrangements**
251:20 258:13
**article** 191:6,8
191:14
**aside** 213:13
**asked** 26:9,15
27:3,10,11,12
27:15 34:20
40:2 48:11
50:1 52:9 53:3
53:22 59:17
81:4 82:8
91:12 92:8
96:12 120:1
130:12 150:18
157:16 162:5
163:13 166:2,9
173:21 176:12

176:21 177:6
177:18 188:15
195:10 198:1
198:17 206:12
207:1,9 214:19
217:11 222:12
227:2 228:15
229:3 235:4,20
243:16 247:5,5
247:6 251:17
260:2,8 272:8
**asking** 25:14,15
49:1 88:17
124:6 179:6
180:17 182:5,8
209:20 251:9
258:11
**aspect** 11:8
**assault** 81:19
165:3 166:19
186:10,17
191:22
**assessment**
37:15 38:21
**assignment**
279:2 280:2
281:2
**assist** 16:7
**assistance**
159:11 161:5
**assistant** 246:6
**assisting** 15:5
**associated**
13:20 72:22
151:22 201:21

202:8 204:12
220:4 240:2
**assume** 100:20
170:5
**assumed**
206:17 256:19
**assumes** 48:12
**assuming**
206:15
**assumption**
139:19
**attached** 21:12
21:13,15 170:5
280:7
**attachment**
170:16
**attachments**
170:10
**attempt** 186:15
186:18 255:22
**attempted**
234:20
**attempting**
164:15 186:8
**attended** 13:11
13:14
**attention**
187:17 191:2
**attentive**
178:21
**attorney** 7:8
277:14
**attorney's**
42:18

**attorneys** 43:4
133:8,10
155:16 167:13
**audio** 6:9
183:15
**audit** 228:5
267:13
**author** 176:7,9
**authored** 125:4
125:7
**authoring**
174:20 175:8
**authority** 114:3
196:7 260:21
**authorize**
280:11
**authorized**
200:11
**available**
196:17 206:21
214:12 250:13
**ave** 278:1
**avenue** 3:12,20
**avoid** 196:19
255:16,16,17
257:17
**awarded** 13:3,6
**aware** 21:21
34:16 59:20
63:4,8 93:11
173:21 182:22
185:8,22
188:10,19,22
191:19 192:2,6
204:9,12

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 288 of 342 PageID #: 4920

210:21 218:12
220:15,17
230:6,10 237:5
237:7,11,20
254:11,12

**b**

**b** 1:10 6:13
7:16 24:4 33:7
33:15 42:11
153:6 154:5
180:18 182:15
219:7,21 278:8
279:4,9 280:4
280:13 281:20
**bachelor's**
12:22
**back** 73:6
75:20 76:9
79:14 88:2
93:8 94:2,5
121:4 138:2,3
139:2 143:11
148:19 151:10
153:16,22
160:3 165:15
165:18 167:14
177:9 211:17
214:21 232:3
234:7 238:19
245:1 259:8
278:14
**background**
9:5 14:13
24:21 195:21

**badgering**
57:10
**balanced** 60:20
**banner** 13:18
13:19 207:14
207:18 209:2
209:10 212:1
212:17
**banners** 198:21
**baptist** 1:6,8
2:14 3:17 6:15
7:19 8:4,6,9
111:22 184:14
227:22 262:22
266:19,22
267:5 278:6
279:3 280:3
**bart** 32:1 95:20
**based** 22:11,13
30:18 37:3
57:4 137:9
188:3 195:21
211:21 217:13
221:16,19
222:6,11,19
223:17 224:1
224:20 225:1
225:10,14,18
225:21 226:7
226:17,22
227:8,21 228:7
229:20 259:13
**basic** 12:3 56:9
252:13

**basically**
201:16
**basis** 112:8
203:20 252:7
**bates** 5:10,11
5:12,13,14
161:19 183:8
**batts** 270:20
**bbundren** 3:7
**bcc** 159:5
**beach** 89:9
**bedroom** 168:8
**began** 28:1
87:9 88:4 90:7
167:7,22
**beginning** 7:7
67:21 100:12
256:18
**begins** 124:19
**behalf** 2:2,13
3:8,17 6:14
7:10 8:1,3,5,8
182:6 193:10
193:11,12
211:5 215:16
216:10 239:22
252:2,3 264:17
266:7
**belief** 30:19
71:16
**believe** 18:8
19:21 24:9
26:18 32:3
33:10,14 38:16
38:20 60:16

64:2 67:20
72:6,17 79:22
86:11 87:10
88:2 90:13
95:5 139:13
170:16 174:11
174:12 187:13
191:7,11 202:4
202:13 205:7
217:20,21
222:6 231:10
241:12,19
242:11 260:15
260:19 261:5
263:1,3 264:19
266:8 274:20
**believed** 35:12
36:17,19,22
93:1
**besen** 4:6 8:5,5
**best** 12:4 71:16
193:15 275:10
**beyond** 33:11
33:14 36:11
37:10 54:3
154:5,12 215:8
**bigger** 10:15,17
**bill** 116:18
118:3,8 217:3
**billable** 119:17
119:21,22
**billed** 108:9
112:8,10 115:3
116:4,12,15
154:10 216:15

billing   112:16
bills   112:21
  113:3,9,12,19
  114:5,15
bischoff   172:11
bit   10:2 24:20
  57:10
blair   3:19
blame   210:11
blankenship
  34:11,21 35:2
  35:4,14 36:19
  37:4 38:11
  57:21 58:18
  183:14
blankenship's
  37:18 38:17
blue   234:16
  235:2,15
board   197:22
body   63:14
boss   19:16
  169:7
bottom   124:16
  161:14 162:1
  169:3 248:13
  251:1
boult   2:16 3:3
bradley   2:16
  3:3
bradley.com
  3:7
brandon   3:2
  7:18

breadth   200:13
break   85:14
  93:18 165:9
  238:8,13
bring   248:19
  248:22 249:3,6
  249:9,12
  272:19
brought   198:14
bruce   262:16
  262:20 265:13
budget   23:10
bullet   31:1
  77:18 126:3
  135:14 272:4
  272:12 274:9
bundren   3:2
  7:18
business   23:6
button   146:12
  163:4

**c**

c   2:1 3:1,18 4:1
  5:1 6:1
ca   278:22
call   20:11,15
  76:13 77:3
  79:2,16 152:11
  164:11 169:10
  169:11 171:2,3
  171:9 184:6,8
  195:3 255:13
  255:14
callas   2:15 7:17
  7:17 258:11,21

259:3,7,11
  261:15 272:13
called   8:15
  194:5 196:14
  223:20 224:4,5
  224:7 244:19
  256:20
calling   68:7
calls   186:13
  271:8
cancelation
  261:20
canceled
  258:15,17
  261:22
canceling   252:7
  254:1
capability
  148:2
capacity   21:21
  33:12,14,17
  34:9 35:7,19
  36:13,15,16
  37:13,15 38:3
  38:15 39:15
  41:2,11 43:13
  44:3 46:1 47:4
  47:21 48:14
  49:8 51:5
  52:11 53:5
  54:17 55:14
  56:15 57:8
  58:5,13 60:10
  61:5 62:1,17
  64:1 68:21

73:20 80:18
  81:7 83:1 84:6
  85:8 98:21
  100:9 111:13
  113:7 115:9
  117:8 118:13
  124:7,11 153:9
  153:10 154:5
  154:16 182:6
  182:20 186:20
  189:13 190:19
  193:14 195:20
  199:4 200:3
  202:3,12
  215:13,22
  216:20 217:22
  219:10,12
care   63:2 64:4
  64:10
carefully   238:3
case   1:5 6:18
  30:3 83:17
  106:15 109:12
  132:4 278:6
  279:3 280:3
casting   178:22
causes   189:5
caution   18:18
caveat   18:4
cc'd   171:5
ceo   19:8 32:21
  46:20 50:15
  80:2 82:18
  83:14 91:11
  95:14 99:11

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 290 of 342 PageID #: 4922

101:8,11 144:3
184:14 188:10
**certain** 93:8
161:13 178:5
236:19 237:9
**certainly** 33:12
194:15 218:1
239:12 247:12
**certificate**
277:1 280:11
**certification**
279:1 280:1
**certify** 277:4
**chain** 161:10
**chair** 263:3
266:18
**chairman** 32:1
33:1 95:21
263:2
**challenges** 12:2
**chance** 84:11
178:5
**change** 225:18
241:22 260:22
261:8 278:12
278:13 280:8
281:3
**changed** 226:1
256:2
**changes** 127:2
127:3 260:9
278:11 279:7
280:7,9
**characterizati...**
175:4 227:17

246:21
**characterize**
67:16 68:1
81:18
**characterized**
69:3
**charge** 222:10
222:18 223:1,1
224:15 225:13
225:20 237:16
**charged** 108:10
110:3,3 111:22
272:3
**charging**
110:10
**charleston** 2:19
**chart** 88:11
**check** 230:14
231:3
**chief** 31:21
32:22 70:13
71:4,6,7 95:17
**choice** 254:15
254:16
**choose** 22:9
38:20 179:14
195:16 251:19
254:17
**chose** 180:13
198:13
**christina**
172:11
**church** 144:6
184:14 263:2

**circumstances**
56:12,18 57:5
59:21
**citizen** 152:20
178:20
**civil** 279:5
280:5
**clarify** 51:8
247:15
**clarity** 21:17,17
**clean** 114:9,11
**clear** 32:16
40:8 45:7
46:20 77:14
97:6 116:1
127:17 135:5
168:7 196:20
197:13 207:22
208:1 240:14
254:12 259:13
260:3
**clearly** 179:4
**cleveland** 278:2
**click** 9:20 16:21
66:4 123:17
131:5,6 146:9
146:13,21
208:12 209:7,9
209:13 211:22
213:3,21 214:2
233:20 235:1
**clicked** 10:8
204:22
**clicking** 147:7
235:14

**clicks** 198:20
199:18
**client** 51:14
59:10,12
129:12 133:12
155:18 167:14
167:17 218:4
267:18
**client's** 130:7
137:21
**close** 90:16
106:11 165:9
258:7
**closed** 259:1
**closer** 188:12
**cnn** 191:10
**coc** 125:18
126:4,16 127:2
128:12,18
129:2,5,18,20
132:4 143:12
145:7 159:11
159:12 164:11
169:10 172:14
**coc000014** 5:11
**cocktedits.do...**
170:11
**code** 71:13
**colleague** 198:1
**colleagues** 18:9
18:11 242:13
**collect** 245:4,11
245:15 246:15
247:22

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 291 of 342 PageID #: 4923

**collected** 23:22
126:5 243:7
**collecting** 24:6
**collection**
243:20 244:6,9
244:15
**collective** 184:8
**collectively**
192:14
**college** 12:20
13:1
**collura** 31:22
71:3 100:13
**combined**
34:18
**come** 11:1
24:21 67:19
173:16 193:5
194:3 215:5
263:8 270:22
**comes** 175:9
**comfortable**
70:19 107:1
**coming** 67:9
159:15
**comment** 127:2
163:20,21
164:2,9 166:4
166:7,13 167:6
168:6,7,10,14
181:5 183:20
183:21,22
184:1,7,12,16
185:2 187:22
188:2,4 189:9

259:21
**comments**
90:17 161:13
167:16 171:4
171:12 187:19
199:19 203:12
240:1 241:10
241:14 242:2,7
242:8,12
244:10 260:8
268:14
**commission**
277:21 279:19
280:25 281:25
**committed**
134:11,21
135:18 136:20
137:13 139:8
140:14 141:18
142:21 144:16
**committee** 1:7
2:13 5:4 7:18
8:7,9 77:17
78:8,17,18
80:14 90:20
91:6,22 107:21
112:1 122:7,7
123:9 127:21
128:3 130:20
131:19,20
134:12,21
137:5 138:12
138:18 140:8,8
140:12,20
141:3,4,9

144:4 148:4
150:10 152:11
152:18 158:9
159:22 165:2
166:8,18
168:11,14,17
227:12 228:6
230:7,12 240:4
240:12,12,13
240:16,20
241:5,18 242:8
242:9,15,16
259:6,12,15,20
260:9,11
262:22 263:4,7
263:9 266:7,22
267:13,14,22
268:1,4,8,8,13
268:15,17,21
269:1,3,5,8,10
269:11,13
270:4,5,9,10,18
271:4,5,16,18
271:19 272:2
272:19 273:7
273:11,20
274:1,11 275:1
275:12,18,19
**committees**
240:3
**communicate**
23:19
**communicated**
18:9,12 23:18

**communication**
18:21 245:13
**communicati...**
18:3 31:16
100:14 218:9
239:13
**community**
205:9,18,20
**company** 19:8
23:11 25:15,20
26:4 30:1
32:17,20 47:15
48:18 49:2,12
49:12,13,19
60:18 62:10,12
65:8,14,21
67:13 69:4
70:4,21 75:22
80:2,7 82:18
83:15 95:15,21
99:11 115:3
123:8 139:5
142:10 157:3
174:6 188:11
203:5 214:18
221:22 222:5
225:19 237:4
237:10,21
239:22 243:19
247:6
**company's**
66:14
**compensated**
117:3,9

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 292 of 342 PageID #: 4924

compensation
  220:3 225:17
  226:1
competence
  46:13
complainant
  69:18
complainant's
  29:20 31:4
  32:6 69:19
  76:2
completed
  206:1 235:12
  278:14
completely
  128:15 129:1
  196:5 209:18
  252:11,12
  253:16 256:8
compliance
  16:1
compliant  16:8
comply  178:20
compound  63:6
  157:7
computer  75:6
  130:19
concentrating
  13:4
concept  64:10
concern  44:9
  44:13,14,15,16
  48:9 57:21
  73:11,16
  101:10,15

154:17 164:22
166:16
concerned
  44:20 47:12
  204:13
concerning
  239:14 243:3,4
concerns  43:20
  44:5,12 47:16
  48:6 51:16,19
  53:13 54:22
  55:4 56:12,19
  97:7 98:3,6,8
  104:1,4 154:9
  158:2 190:14
concert  82:4
  158:3 180:13
  234:4
conclude  87:5
  102:11 267:11
concluded
  276:14
concluding
  37:7 101:21
conclusion
  30:14 37:18
  38:10 51:17
  87:3 126:12,16
  146:16 186:14
  271:8
conclusions
  134:5,17
  143:11 144:13
conditions
  267:15

conduct  69:17
  251:5 267:12
conducted
  30:11 33:21
  65:14 192:13
  228:3
confer  194:3,7
  194:8 195:2,4
  195:8 196:2,6
  196:7,15
  197:17 200:1
  216:6 219:8
  247:15 248:7,8
  250:11,14,16
  250:17 251:7
  253:6 255:22
confidential
  152:11
confirm  131:17
  136:12 139:18
  177:4 178:5
  184:13,17
  196:11 234:3
  255:5 257:5
confirmed
  177:12,22
  185:1
confirms  70:2
confused  88:3
confusing
  175:16,17
connection
  17:15 18:16
  19:10 64:7
  65:9 70:21

98:17 110:4,19
  115:4 217:3
  229:4
consensual
  35:15 36:6
  37:9,19 38:12
  58:1
consent  58:8,14
  58:18
consider  174:8
  221:10,12
consideration
  54:19 56:17
considered
  56:20 57:1,2
  174:12
consistent
  186:5
consistently
  83:16 85:10
constitute
  188:1
cont'd  3:1 4:1
contact  34:2,13
  34:17,20 59:11
  59:13,19
  180:22
contained
  152:10
contains
  183:13
contend  82:11
content  190:21
  204:15,21
  212:9 247:3,18

Veritext Legal Solutions
www.veritext.com                                                           888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 293 of 342 PageID #:
                                                           4925

**context** 77:7
78:6 188:4
**continue** 6:10
69:22 238:20
254:16
**continuing**
126:22 274:9
**contractor**
217:3 218:16
222:1 225:19
**contractors**
242:21 244:12
**contrast** 29:5
214:1
**control** 164:8
**controlled** 16:8
16:14
**convenient**
85:13,15
**convention** 1:6
1:8 2:14 3:17
6:16 7:19 8:4,6
112:1 228:1
262:22 266:19
267:1,5 278:6
279:3 280:3
**conversation**
18:19,21 19:5
19:7,15,22
79:19 86:13
106:12 253:13
253:14,17
**conversations**
6:7

**cooperation**
100:18,19
122:7 123:10
127:22 128:3
130:21 131:20
137:5 138:13
138:19 140:8
141:3,4,10
148:4 150:10
152:12,17
158:9 159:22
166:8 168:11
168:15,17
240:4,11,16,20
241:6,18 242:9
242:15,16
260:9 268:1,8
268:13,13,15
269:3,8,10
270:4,5,9,17
271:4,16,18
**copy** 63:2
123:8 129:9
131:16 137:4
138:11,18
139:5 143:16
169:6 188:7
259:15 260:5
265:2,18,20
**corp** 127:22
**corporate** 7:15
9:1 21:19
193:18 194:16
195:1 200:12
203:17 215:16

217:22 219:10
252:3
**corporation**
211:5 215:16
216:10
**correct** 12:11
13:1,2,5,7 20:2
20:16 22:22
28:4,11 33:2
41:20 50:17
56:3,4 78:4,22
79:17 82:19
92:15,18 94:21
95:16 96:4
99:8,10,16,21
106:7,13
128:15 130:8
131:22 146:11
147:8 152:19
169:21 171:13
186:3 192:17
205:4 229:11
231:5 240:19
243:21 246:16
248:21 249:2
259:14,17,19
259:22 260:10
260:11 264:15
265:10,14
275:21
**corrections**
278:11 280:17
**corroborate**
36:7 93:13
180:21

**corroborated**
30:20 32:8,12
32:14,18 33:5
33:9 36:5
55:20 58:9,15
59:4,10 94:21
96:4,22 97:22
**corroborating**
39:6 55:9,20
**corroboration**
34:5 51:10,11
52:15 53:12,14
53:16 54:8,20
56:19 57:17
92:19 93:4
96:7 98:11,14
98:16 99:7,13
100:5,20,21,22
181:8 184:3
**counsel** 5:3,4,5
5:18 7:5 8:17
18:1,7,20,22
19:4 20:1
23:15,18 24:10
31:11,20 94:3
121:2 136:3,14
136:15 165:16
196:8,9 202:22
203:2,11 210:3
218:10 233:13
238:20 249:20
258:7 259:6,12
262:5 272:8,14
272:17,18
277:10,13

Veritext Legal Solutions
www.veritext.com                                                                 888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 294 of 342 PageID #: 4926

**counsel's** 262:7
**counseling**
  183:13,15,16
  184:15
**counted** 66:17
**counting** 66:16
  66:22 67:1,4
**county** 279:10
  280:15
**couple** 260:2
**course** 13:12
  18:4 23:6
  51:15 57:11
  145:1 250:5
  253:15 256:2
**court** 1:1 6:17
  7:3 17:18
  28:16 45:8
  50:9,12 65:7
  72:10 80:6
  89:3 105:22
  110:20 115:2
  121:5 132:6
  136:9 139:16
  141:22 142:3
  148:13 152:3
  178:9 180:9,9
  193:17 194:6
  198:19 199:17
  208:2 229:5
  252:2 253:8
  257:12 266:14
  279:7
**courtesy** 57:12

**coverage**
  191:10,12
**covered** 31:1
  60:22 89:20
**create** 157:15
  158:5 186:8,18
**created** 224:21
  225:2
**creating** 157:4
**credentials**
  228:6 230:12
  267:14
**crutch** 105:20
**crystal** 77:14
  197:13 207:22
  254:12
**csr** 1:17 277:2
  277:20
**cummings** 2:16
  3:3
**current** 14:5
**currently** 14:13
  14:15 16:5
  17:22 211:1
**cv** 1:6 6:19

**d**

**d** 2:3 6:1
**d.c.** 1:15,21
  6:22
**daily** 191:8
**dame** 13:12
**date** 1:12 80:8
  125:16 126:6
  128:1,21
  130:16 145:9

  150:12 196:14
  205:19,20
  251:9 278:8
  279:3,9,19
  280:3,13,25
  281:20,25
**dated** 42:12
  190:8,13
**dates** 192:17
  250:17 251:8
  253:5 255:7,8
**daughter** 85:11
**day** 17:10
  149:8 150:8
  152:14 153:3
  153:15,17
  156:5,6 203:7
  203:7 261:6
  276:14 279:16
  280:22 281:22
**days** 123:10
  138:13 148:14
  250:21 278:17
**dea** 14:11,14
  16:1,2,7,8,13
  109:22
**dealt** 253:1
**dear** 278:9
**deceive** 233:15
**decide** 223:9
**decided** 38:10
  85:21 106:22
  231:20
**deciding** 38:8

**decision** 29:19
  30:7 32:5,8,10
  37:19 40:16
  43:9,16,19
  49:15 50:11,13
  50:15 51:3
  52:15 55:6
  57:20 62:22
  63:12,15 73:9
  86:2 87:14
  88:10 90:10,22
  94:9,17 98:4,7
  98:13 104:4,12
  260:21 261:7
  261:11
**decisions** 45:13
  49:14
**declared** 71:13
**deed** 279:14
  280:20
**deemed** 278:18
**defamation**
  178:22
**defaulted**
  252:10,11
**defendants** 1:8
**define** 26:11
  68:2
**definitely** 82:12
  270:19
**definition** 44:8
  44:19 45:1
**definitively**
  144:21

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 295 of 342 PageID #: 4927

**degree** 12:22
13:3,6
**deliberated**
97:21
**deliberation**
32:20
**deliberative**
51:8,14,18
52:3 53:11
178:4
**delineated**
272:11
**delivered**
138:18
**denhollander**
188:6
**denial** 30:21
**denied** 26:16
27:5 34:1,19
59:19 180:21
**department**
24:8,17,18
113:1 224:6
278:20
**depends** 254:5
**deposed** 21:20
**deposing**
153:10
**deposition** 1:10
5:6 6:13,20
7:16 9:1,10
16:18 17:6,16
21:7,20 22:14
28:1 57:11
93:12 123:18

150:4 153:6
158:14 160:20
171:20 180:18
187:4,11
192:21 195:14
208:9 232:6
238:22 250:19
251:3,5,12,15
252:6,8 254:1
254:5,9,14,16
258:14,17,18
276:3,7,13
277:3,5,8,12
278:8,10 279:1
279:3 280:1,3
**depositions**
261:22
**describe** 30:6
31:15 127:13
206:1 211:20
242:19
**described** 40:9
70:5,7 94:8
160:14 184:21
201:10 243:10
**description** 5:7
69:5 105:6
**descriptions**
226:22
**designate** 247:6
**designated**
16:1 17:14
125:19 167:13
**desire** 255:11
255:12,13

**despite** 49:10
199:22 216:6
**despites** 219:9
**destroyed**
126:12
**detail** 181:7
184:2 272:20
**details** 106:16
146:14,15,17
204:12 264:14
270:15
**determination**
32:17
**determine**
150:6 226:22
229:6 234:7
236:4
**determined**
22:20 30:21
46:15 47:6
50:5 51:9,18
51:20 54:19
92:11 101:17
102:5
**determining**
96:3 144:22
**different** 51:7
94:18 109:5
125:7 230:15
253:16 256:12
**differently**
25:21 26:11
29:5 247:14
**difficult** 106:15

**direct** 153:7
274:18
**directed** 257:12
**direction** 245:4
277:8
**directly** 135:18
136:20 137:14
139:8 140:15
141:19 142:22
144:17 235:16
236:20,22
263:5
**director** 15:16
26:1 220:8
**disagree**
227:17
**discounted**
116:10,19
**discovery** 24:1
133:5 134:4
**discuss** 17:22
31:9 63:9 86:3
100:17 106:10
115:14 126:17
127:1 161:12
239:17
**discussed** 30:17
31:3,6,7,10
51:9,15 79:16
79:18 86:7
90:21 91:3,9
95:6 98:12
101:5 169:19
170:5 216:11

discussing
  18:19 53:8
  184:22
discussion 32:2
  53:11 85:20
  87:1 91:19
  98:22 99:12
  242:13 255:17
discussions
  86:9,10 98:10
displayed
  270:3,4,8
disregard 37:4
distributor
  16:12
district 1:1,1
  6:17,17 196:21
division 1:2 3:4
  6:18 221:16,19
  222:5
doctor 16:13
document
  21:11 42:18
  43:2,3,7 66:3,6
  74:13 105:7
  125:4 133:8,10
  139:14 151:16
  155:6 159:1,6
  159:17 174:15
  187:10 193:1,2
  210:8 241:12
  248:3 252:15
  252:19
documents
  18:8 21:9,12

21:15 22:9
64:17 150:3,11
184:7 248:1,10
248:19,22
249:3,6,9,12,18
254:5,13,20
259:2,4
doing 44:15,20
  60:20 83:6
  119:9 150:5
  157:14 158:4
  170:1
doj 64:16
dollars 80:12
  81:1 112:2
doubt 229:19
  229:21
doubts 103:22
  104:4 107:9
douglas 185:4
  185:5 187:3
  188:5
download
  11:11
downloaded
  11:19
dozen 33:18
dr 42:21 43:2
  181:20 260:3
  260:12 261:12
  261:12 262:19
  262:20 265:13
  266:16,17
  270:19

draft 26:9 27:7
  27:19 123:2,6
  127:13,14
  137:7,18 139:4
  139:11 152:17
  167:16 170:10
  172:13 173:6
drafted 26:11
  124:13 125:5,6
  137:19 142:19
drafter 142:18
drafting 25:1
  25:16 26:17
  27:4,6,13 28:3
  28:6 29:4
  185:13
drafts 242:3
drive 183:12
drug 16:3
due 198:7
duly 8:15 277:5
duplicate 82:13

e

e 2:1,1,5,7 3:1,1
  4:1,1 5:1 6:1,1
  18:8 21:11,12
  21:13,15 22:10
  31:22 84:22
  85:3 86:13
  125:15 145:15
  158:17 161:10
  169:5 170:6,8
  172:5 187:3
  188:4 189:3,19
  189:22 190:8

190:21 195:5
195:11 196:11
245:5,20,21,22
251:17,19
257:5 258:2,3
earlier 26:6
  159:10 160:14
  242:1 243:5,9
early 185:12
east 2:17
easy 44:19
  226:15
ec 87:8 88:3
  135:18 136:20
  137:14 139:8
  140:15 141:19
  142:22 144:17
  146:12 163:14
  164:4 166:2,6
  201:16 204:1,7
  207:15 209:3
  210:17 211:5
  213:2 214:16
  232:21 258:7
  258:18
ed 159:11,11
edit 113:19
  173:18 176:10
  176:16 179:15
  180:1 259:20
edited 26:2,10
  26:16 28:7
  29:4,6 148:15
  174:9 252:14

| | | | |
|---|---|---|---|
| **editing** 26:14 | **employed** | 104:8,13,20 | **equivocation** |
| 26:17 30:18 | 14:13 15:16 | 105:12,21 | 29:18 |
| 172:21 173:1,2 | 277:11,14 | 106:13 108:10 | **errata** 278:12 |
| 173:4,9,17 | **employee** 185:6 | 108:13 110:11 | 278:17 280:7 |
| 175:8 | 216:15 220:20 | 110:20 112:17 | 280:10,18 |
| **edits** 156:17 | 221:5 222:4,8 | 113:13 114:17 | 281:1 |
| 170:15 172:14 | 277:13 | 117:4,13,15,20 | **especially** |
| 172:14 174:3,5 | **employees** | 121:6 122:9 | 133:9 |
| 174:12 176:20 | 242:21 244:12 | 123:13 143:20 | **esq** 278:5 |
| 177:15 178:12 | 246:19 247:8 | 155:10 198:20 | **esquire** 2:3,4,5 |
| 240:1 241:9 | **employment** | 205:16 230:6 | 2:15 3:2,9,10 |
| 260:8 | 14:6,9 15:6 | 230:16,18 | 3:18 |
| **education** | **enclosed** | 231:9,22 | **essentially** |
| 12:19 13:12 | 278:10 | 261:11,13 | 166:16 |
| **effect** 73:12 | **encounter** | 262:11 264:10 | **establishing** |
| **effort** 202:8 | 36:18,22 39:10 | 264:10,13,15 | 230:13 |
| 227:11 | **encounters** | 265:16 266:13 | **estimate** 15:1 |
| **efforts** 201:7,20 | 36:21 | 267:3,15 272:7 | 65:18 116:7 |
| 216:6 219:9 | **endeavor** 226:5 | 273:22 275:3 | 118:16 119:20 |
| 226:4,5 243:6 | **enforcement** | **engagements** | 121:5 |
| 258:3 | 16:3 | 108:11 199:19 | **estimates** 122:3 |
| **eight** 258:15 | **engage** 65:22 | **enhanced** | **et** 6:16 278:6 |
| **either** 42:20 | 122:11 | 177:12,22 | 279:3 280:3 |
| 68:4 87:11 | **engaged** 223:12 | **ensure** 271:5 | **evaluation** 95:1 |
| 125:19 133:11 | 231:1,2,11,17 | 271:19 | **evening** 169:18 |
| 145:15 146:14 | 231:19 232:1,1 | **entered** 280:9 | **evenings** 85:11 |
| 166:12,13 | **engagement** | **entire** 10:13 | **event** 40:19 |
| 242:7 251:8,9 | 86:5,20 87:2 | 19:21 49:2 | 56:6 81:10 |
| 255:7 | 89:20,22 90:2 | 84:21 113:13 | 173:8 |
| **electronic** | 92:7 94:11 | 181:22 239:16 | **events** 41:7 |
| 15:14 131:16 | 95:3,12 96:21 | 279:5 280:5 | 55:3 56:2 93:5 |
| 183:12 | 101:4 102:11 | **entity** 60:20 | 107:10 170:20 |
| **ella** 4:7 | 102:15,21 | **entries** 183:13 | **everyone's** |
| **email** 278:16 | 103:3,5,8,9,13 | **entry** 227:22 | 271:2 |
| | 103:15,19 | 228:6 | |

www.veritext.com                                                888-391-3376

| | | | |
|---|---|---|---|
| **evidence** 48:12 | **execution** | 75:5,7,10 85:4 | 227:20,20 |
| 77:15 82:5 | 279:14 280:19 | 123:15,16,16 | 228:7 230:1 |
| 90:9 93:12 | **executive** 1:7 | 123:18 125:4 | **expertise** 30:19 |
| 140:19 | 2:13 5:4 7:18 | 125:18 127:10 | **expiration** |
| **exact** 106:16 | 8:6,9 13:11 | 130:2,19 | 279:19 280:25 |
| 142:20 | 15:20,22 16:5 | 131:18 138:2,3 | 281:25 |
| **exactly** 27:15 | 19:11 77:17 | 141:12 142:4 | **expires** 277:21 |
| 144:9 156:13 | 78:8,17,18 | 148:20 154:19 | **explain** 44:5,11 |
| 178:10,10 | 80:14 90:20 | 155:13 158:10 | 68:12 128:22 |
| 206:3 208:2 | 91:6,22 107:21 | 158:11,14 | 164:3 166:5 |
| 223:15 229:4 | 112:1 129:13 | 159:13,21,21 | 178:9 180:11 |
| 253:2 258:1 | 129:14 134:11 | 160:19,20 | 181:2 256:14 |
| 268:19 | 134:21 144:4 | 161:2 165:19 | **explained** |
| **examination** | 165:2 166:18 | 165:19 167:2 | 97:18,20 |
| 5:2 8:17 259:6 | 220:8 227:12 | 168:22 171:18 | 197:22 203:20 |
| 262:5 273:10 | 230:7 240:2,12 | 171:19,20 | 242:10 |
| **examine** | 240:13 259:6 | 183:6 187:2,2 | **explains** 76:3 |
| 163:14 166:2 | 259:12,15,19 | 187:4 193:2 | **express** 43:20 |
| **examined** 8:16 | 262:21 263:4,7 | 208:9,12 | 57:2 96:9 |
| **example** 16:10 | 263:9 266:7,22 | 209:19 232:5,6 | **expressed** |
| 94:20 189:4 | 267:13 268:1,8 | 232:9 262:14 | 46:21 48:18 |
| **exception** | 268:16,21,22 | 262:16 | 49:15 50:21 |
| 129:6 252:12 | 269:5,12 | **exhibits** 5:6,18 | 52:2,7,21 |
| **exchange** 86:18 | 270:10 271:5 | **exist** 223:3 | 96:18 |
| **exchanged** | 271:19 272:18 | 249:18 | **expressing** 48:5 |
| 242:20 244:11 | 273:6,11,19 | **existed** 224:12 | 103:22 164:22 |
| 246:19 247:8 | 274:1,11 275:1 | 236:4 | **extent** 33:5 |
| **exciting** 81:10 | 275:12,18,19 | **existence** 223:5 | 67:19 99:6 |
| 81:20 | **exhibit** 9:9,9,10 | **expect** 28:15,20 | 100:3,12 |
| **excuse** 24:19 | 10:10 12:17,18 | **expense** 262:2 | 239:12 |
| 86:16 122:21 | 14:8 15:14 | 262:3 | **extracted** 133:5 |
| 146:6 148:7 | 16:17,17,18 | **expenses** | 134:4 |
| 177:2 | 17:16,20 22:18 | 261:20 | **eye** 1:21 |
| **executed** | 25:5,5 41:22 | **experience** 14:6 | **eyes** 42:18 43:4 |
| 280:10 | 42:4 66:3,4 | 14:9,11 37:3 | 66:12 133:8,10 |

www.veritext.com                                                                    888-391-3376

143:2 155:16
167:13 227:7

**f**

**fact** 18:1 30:1
31:10 34:19
49:10 59:3,17
62:9 71:19
90:19 92:6
128:10 132:14
142:4 189:16
194:12 235:9
235:22 268:9
**facts** 48:12
56:10,16
140:18 157:11
157:14 227:19
**factual** 123:10
126:17 127:14
129:2,3,12,13
130:7 138:11
138:13 141:7
142:8,9 143:22
144:7,11,15
148:7 150:10
152:9 173:22
177:4,13,22
223:10,13
241:15,15
**factually**
142:10 233:8
233:17
**failed** 195:9
**fair** 12:14 14:1
24:22 26:20
60:20 72:7

104:13,17
115:20 121:22
122:8 152:22
166:19 170:18
179:1 213:17
242:9 269:13
**faith** 195:9,17
216:6 221:16
221:19 222:6
222:11,19
223:17 224:1
224:20 225:1
225:10,14,21
226:7,17,22
227:8,21 228:7
229:20 256:19
256:20
**fall** 98:11
**false** 178:22
252:11,12
**familiar** 132:16
234:6
**far** 135:17
136:19 137:12
139:7 140:13
141:17 142:20
260:4
**favor** 38:8
131:6
**fbc** 164:7
**february** 76:1
76:11 77:15
79:19 81:3,11
82:3 228:13

**feedback** 240:1
241:10 259:21
**feeding** 63:2
64:5,10
**feel** 139:19
156:16 167:7
167:22 200:21
**fees** 258:20
261:19
**feign** 254:19
**felicia** 1:17 7:3
277:2,20
**fell** 86:5 91:1
96:8 98:14
104:5 261:12
**felt** 52:14 53:16
59:9 87:15,16
**female** 144:5
**fiduciary** 271:6
271:20
**field** 13:4
**fifth** 167:6
**fight** 253:20,21
**file** 194:4
196:22 197:1
253:7
**filed** 6:16 30:3
**final** 185:21
259:16,22
260:6,21
**financial** 23:2,5
215:6
**financially**
277:15

**find** 66:19
147:8 206:7,8
278:10
**finding** 81:2
163:7
**fine** 10:5 11:6
22:5 49:3
210:4 256:16
263:20
**finish** 60:7
88:17 169:10
194:19 195:7,7
**finished** 251:15
**fired** 231:8,11
**firm** 7:4 226:1
**first** 8:15 10:19
11:1 20:22
53:7 61:11
67:22 69:15
74:2,4,19
75:12,16,17
76:1 78:9,12
78:13,15 89:7
124:16 129:3
129:21 132:2
134:16,16
135:13 144:2
145:5,6 152:4
157:18 160:14
160:17 184:14
191:16,18,19
192:2,8,11,19
209:10 227:22
228:6 230:2
240:7 258:18

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 300 of 342 PageID #: 4932

261:19 268:22
269:19 275:5,7
**firsthand** 39:10
39:21 56:1
**fit** 94:10 95:2
**five** 14:12
15:11 65:19
83:3 109:10
112:2 123:10
138:13 198:6
272:11
**floor** 3:13
**flow** 116:21
**focus** 191:17
192:22 272:20
**focused** 274:7
**focusing** 24:20
43:16 57:16
156:5 226:3
**foggy** 167:7,22
**follow** 94:6
111:20 230:6
230:16
**followed** 195:4
**following** 94:16
138:10 183:16
268:20 272:3
**follows** 8:16
**followup** 61:10
261:19 262:7
**force** 84:21
122:17 123:1
123:11 124:1
125:12,20
138:14 141:14

145:13 146:5
146:19,19
181:21 188:9
204:20 205:2,5
205:7,13,15
206:5,6,16
212:6 214:13
230:11 231:3
233:22 234:1
236:8 240:3,11
240:15,18
241:1,11,21
260:17 263:3,5
266:18 267:7
267:19 275:16
**force's** 146:6
**foregoing**
71:10,14 277:3
277:5 279:13
280:18
**forensic** 243:20
244:5,9,15
**forgotten** 258:2
**form** 56:13
60:14 61:2,20
63:5 77:10
79:4 81:16
85:6 92:21
96:11 97:1,10
101:13 102:1
102:17 104:14
108:3 110:6
111:2,11
112:18 113:22
114:13 117:5

130:3 132:8
135:3 141:20
142:5 143:17
144:18 145:19
147:17 149:10
152:6 154:2
156:21 157:6
164:18 165:4
166:20 170:2
170:21 174:16
178:14 179:17
184:18 185:15
186:11 188:14
189:10 199:1
199:11 202:10
203:19 213:5
223:19 228:10
243:22 270:5
271:7 272:13
273:15
**formal** 223:22
224:18
**formalities**
223:22
**formally**
231:22
**formed** 225:11
**former** 39:20
87:8,20
**forth** 71:9 88:2
267:15
**forward** 12:20
67:19 85:21
197:14 255:3,5
276:4,5 278:14

**forwarded**
171:8
**forwarding**
190:12
**found** 37:5
80:12
**four** 15:11
86:18 90:22
91:10,18,20
92:5 95:6,7,10
95:11 96:2
101:5 106:1
171:2 198:3
254:7 268:20
269:4,12
270:10 272:4
**fourth** 120:19
120:22
**frames** 204:19
**frank** 181:19
181:20,20
182:3 183:2
260:3 262:17
262:20 265:13
266:16,17
**free** 18:5 19:1
107:13 139:19
200:21 248:4
279:14 280:20
**friday** 145:11
169:18 196:12
196:13,14
197:19 257:2,2
257:4

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 301 of 342 PageID #: 4933

| | | | |
|---|---|---|---|
| **front** 15:13 | **gentleman's** | 246:3,6 259:20 | 62:5 63:19 |
| 17:3 25:4 | 122:13 | 267:4 277:9 | 66:2,3 82:1 |
| 41:22 75:7 | **gentlemen** | **giving** 45:8 | 88:1 93:21 |
| 84:19 136:7,11 | 270:16 | 69:5 179:22 | 94:2 105:15 |
| 158:11 165:21 | **getting** 193:9 | 234:20 248:14 | 111:6 120:14 |
| 207:20 232:10 | 263:17 | **go** 6:11 11:10 | 121:4 129:16 |
| 234:15 239:1 | **give** 16:10 | 16:16 24:5 | 133:9 134:15 |
| 264:11 | 17:15,19 24:21 | 42:16 45:14 | 136:2,16 139:1 |
| **fulfilled** 271:5 | 38:10 60:21 | 73:6 74:10 | 144:21,22 |
| **fulfills** 271:19 | 76:12 85:12 | 75:20 76:9 | 145:1 146:8 |
| **full** 147:2 206:2 | 103:16 104:6 | 85:17 93:8,17 | 153:7,9 155:17 |
| 220:19 221:5 | 104:11,17 | 123:15 132:1 | 155:19,20 |
| 222:4,8 244:10 | 105:5 123:8 | 138:2,3 139:2 | 165:8,12,15 |
| **fully** 263:21 | 131:1 141:14 | 146:20 148:19 | 167:15 169:9 |
| **function** | 163:1 167:10 | 151:10 153:22 | 171:19 178:20 |
| 112:16 | 176:18,19 | 156:1 159:10 | 190:6 192:22 |
| **funding** 275:17 | 178:4,12 179:1 | 159:13 160:19 | 203:10,11 |
| 275:17 | 179:10,13,15 | 161:14,17 | 210:2 225:18 |
| **funds** 263:8 | 180:14 194:10 | 163:11 165:18 | 232:3,4 235:13 |
| **further** 42:17 | 194:14,16,22 | 167:2 168:8 | 237:6 238:8,16 |
| 218:21 272:20 | 199:8 203:17 | 171:9,18 181:6 | 238:19 248:13 |
| 277:12 | 209:14,20 | 183:6 184:1 | 250:8,8,18 |
| | 212:13,19 | 196:22 206:5 | 252:22 253:1,2 |
| **g** | 215:15 234:20 | 206:10 211:17 | 253:7,8 255:3 |
| **g** 6:1 | 239:22 241:15 | 213:12 214:21 | 255:4,9 257:13 |
| **gathered** 243:7 | 244:10 246:5 | 215:5 226:21 | 257:15,15 |
| **gathering** | 246:18 247:7 | 231:20 234:7 | 262:13 268:9 |
| 243:2 | 264:1 | 245:6 258:9 | 275:6 276:2,11 |
| **gcallas** 2:20 | **given** 63:9,18 | 259:8 275:8 | **gold** 3:11 7:14 |
| **gene** 4:6 8:5 | 75:22 137:5 | 276:4,5 | 245:3 |
| **general** 16:6,7 | 148:5 152:17 | **goes** 183:20 | **good** 6:3 7:12 |
| 122:3 155:19 | 159:22 160:7 | **going** 6:4 12:2 | 67:2 70:1 |
| 273:18 | 180:5 197:15 | 12:6 16:17 | 113:11 153:1 |
| **generally** 39:20 | 200:11 227:1 | 22:10 42:6,19 | 195:8,17 216:6 |
| 273:14 | 238:5 245:10 | 45:15 46:15 | 256:19,20 |

Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 302 of 342 PageID #: 4934

258:1,4
**goodness** 241:2
**gordon** 4:3 7:1
**gp** 5:10,12,13
5:14
**graduated** 13:8
**grammar**
114:13
**great** 41:17
70:3 93:19
133:20,22
134:1 143:9
151:9 163:8
264:5
**gretchen** 2:15
7:17 259:11
**groomed** 94:11
164:4 166:6
**grooming** 87:9
88:4 90:7
92:14,17,20
93:10,14 188:1
**group** 184:22
184:22 225:10
225:14
**guess** 109:16
111:16 253:15
**guidance**
105:22
**guidepost** 1:7
3:8 5:16 6:13
7:14 8:2 9:2
14:13 17:6,14
23:7 24:8,19
37:21 43:10,18

43:21 45:10,12
46:10 49:20
53:1,19 56:11
69:17 71:5
72:13 73:8,14
77:7 81:12
82:4 84:13
90:1,3 92:7
107:14,17
111:18 115:5
116:22 117:10
120:9 121:6,21
123:3 125:20
127:1,2 137:12
145:16 146:10
147:3,11 149:5
150:7 155:10
172:21 173:3
174:21 176:7
176:11,19
177:3,10,15,16
180:13 181:6
182:7,22 185:5
185:12 188:12
189:4 190:14
191:3 193:11
193:12 200:10
201:7,20 202:8
204:13 220:4,9
220:21 221:16
221:17,20
222:11,19,20
223:6,18
224:12,19
225:2,6,9,11,15

225:20 226:5
227:11 230:2,8
230:13 231:1
234:4 235:17
236:20 242:21
244:12,16
246:9,19 247:8
249:18 260:20
262:4,9 264:15
264:18 267:7
272:10 273:3
275:20
**guidepost's**
5:15 30:6
126:15 174:1
176:20 193:10
198:21 214:18
217:17 261:7
261:11
**guidepostsol...**
232:20
**guys** 169:11

**h**

**half** 19:22
**hall** 13:8
**hand** 53:18
73:13 187:18
258:9
**handle** 16:14
**hands** 54:10
**handwritten**
126:5
**hang** 219:5
**happen** 210:3
219:8 248:9

257:10,15,19
258:1
**happened**
106:11,14
131:11 171:2
220:5,6 235:2
235:3 270:15
**happening**
137:21 205:21
**happy** 11:9
115:13
**hard** 129:9
183:12
**head** 89:9
120:15 150:15
225:21 262:11
**headed** 268:2,9
**heading** 132:20
133:2
**hear** 28:15
105:19 156:12
**heard** 46:6 64:5
64:8,14,18
78:13 136:15
262:2
**held** 260:21
**help** 11:7,9
196:1
**helped** 151:18
**helpful** 29:13
74:15 102:21
103:4 104:8
**helping** 263:17
**helps** 89:2

| | | | |
|---|---|---|---|
| **hereto** 277:14 | 169:16 170:9 | 134:18,22 | 128:10,17,17 |
| **hey** 73:12 | 172:6,18,21 | 169:4,20 172:7 | 130:1,22 |
| 79:14 | 173:13,21 | 183:7 209:8 | 131:21 133:14 |
| **highlighted** | 190:12 191:20 | 224:14 225:12 | 145:8 148:10 |
| 168:3,4 183:11 | 192:3,6 220:14 | 234:17 262:18 | 148:14 149:8 |
| 183:21 187:15 | 243:15 | 264:16 | 150:7,17 |
| **highlighting** | **home** 20:9 | **hundred** 112:2 | 151:15,22 |
| 187:15,20 | **hopequest** | **hundreds** | 152:5,15 |
| **highlights** | 164:7 184:15 | 80:11,12 81:1 | 153:16,21 |
| 183:19 | **hoping** 251:8 | 109:10 | 160:16 164:17 |
| **hire** 223:11 | 257:16,18,19 | **hunt** 1:3 4:10 | 165:1 166:17 |
| **hired** 220:19 | **hospital** 16:13 | 6:15 7:10,22 | 169:12 172:13 |
| 221:4 222:4,20 | **hotline** 146:18 | 25:2,17 27:8 | 173:6 178:11 |
| 262:9 263:4 | 207:15 209:3 | 27:14 30:8 | 179:2,22 |
| **historically** | 212:20 213:2 | 31:5 32:7 34:1 | 180:14 181:15 |
| 234:7,8 235:1 | 213:10 214:4 | 34:13,14,17,19 | 181:19 182:3 |
| 236:4 | 232:2 | 35:15 36:7 | 183:2 191:17 |
| **hold** 9:16 11:4 | **hour** 19:22 | 39:11 42:20,21 | 191:20,21 |
| 66:21 133:7 | 108:12 109:12 | 43:2,17,21 | 192:12,19 |
| 160:4 161:4 | 110:3,10,19 | 45:11 46:10,22 | 241:21 260:5 |
| 162:7 168:21 | 111:1,8 112:3 | 47:17 48:9,20 | 260:12,13,17 |
| 228:14 256:7 | 165:9 | 49:21 50:13,20 | 261:12 262:1 |
| **holding** 143:11 | **hourly** 108:20 | 51:1 52:4 55:7 | 278:6 279:3 |
| **holds** 16:13 | 109:18 | 57:4,20 60:13 | 280:3 |
| **holske** 18:13 | **hours** 22:7 83:3 | 60:21 63:17 | **hunt's** 30:21 |
| 23:16,17 24:5 | 83:16 110:16 | 65:22 67:21 | 86:19 87:17 |
| 31:8 32:21 | 118:1,3,8 | 69:18,20 72:4 | 149:18 170:10 |
| 42:12 59:18 | 119:13,16,17 | 72:9,11 73:1 | 261:12 |
| 74:3,18 75:11 | 119:21,22 | 73:10,15 86:3 | **husband** 40:10 |
| 76:2,12 78:10 | 120:10 121:21 | 89:15 90:19 | 54:12 76:2 |
| 79:20 86:15 | 254:8 258:16 | 91:21 93:15 | **i** |
| 91:10 95:14 | **huh** 59:14 | 94:10,17 95:13 | **idea** 80:9,10 |
| 99:18 101:8 | 76:15,22 77:5 | 96:10,20 97:8 | 107:22 108:6 |
| 156:10,11,15 | 92:2 120:4 | 98:17 100:5 | 118:2 235:6 |
| 156:15 169:5 | 127:18 134:9 | 106:22 127:19 | |

www.veritext.com                                               888-391-3376

**ideas** 86:19
**identification**
9:11 16:19
123:19 158:15
160:21 171:21
187:5 208:10
232:7
**identify** 25:15
245:7
**identifying**
12:3
**ignore** 258:9
**image** 15:14
**immediate**
164:3 166:5
**immediately**
74:19 75:11

████ ████
████
████

**implementati...**
230:11 231:3
**important**
181:8 184:2
**impression**
186:9
**inaccuracies**
14:8
**inaccurate**
142:11 233:8
**inappropriate**
90:14,17 144:5
187:19 219:7
**inappropriately**
90:14

**incident** 89:6
89:10,16 90:21
90:22 91:7
92:1 96:8
101:3
**include** 28:7
29:19 30:7,22
31:4 32:6
37:20 38:18
40:17 43:9,17
46:15 50:13
51:21 52:15
55:7 57:20
63:15 73:9
86:2 87:17
90:10 94:9,17
95:17,20 98:17
100:5 106:22
114:15 126:19
130:21 131:21
142:3 179:22
**included** 32:20
32:21 35:14
54:9 76:7
95:11,13 96:1
96:20 126:9
127:19,20
128:11,11,17
129:11 130:1,7
130:15 137:4
142:19 145:8
148:9 152:5,16
161:10 171:11
174:6 177:10
201:17 268:15

269:4,11
270:10 278:12
**includes** 187:17
273:2
**including** 7:5
33:22 38:8,19
43:20 45:11
46:9,22 47:6
47:17 48:9
50:5,15,20,22
51:12 52:4,7
52:19,22 53:19
57:3 78:16
95:13 96:10
97:8 98:6
103:13 104:1
150:6 153:15
164:16 187:18
262:1
**inclusion** 48:20
49:20 129:17
149:18
**incorporated**
280:12
**incurred**
261:19
**independent**
55:2 60:20
65:9 71:21
152:22 153:20
155:10 157:10
157:14 174:9
174:13 214:12
217:2 218:16
222:1 225:18

228:3 233:4,20
234:16 235:15
242:21 244:12
267:12
**indiana** 2:9
**indianapolis**
2:9
**indicate** 151:14
**indicated** 32:5
94:7 242:6,19
**indicating**
278:12
**individual**
21:21 25:16
63:14 153:10
195:20 251:5
252:6 254:1
276:7
**individually**
37:20 68:5
192:14
**individuals**
132:5,7
**inform** 254:9
**information**
12:11 19:2
23:10 35:3
49:16 50:6
51:13 71:9,16
83:14 88:9
143:22 144:12
168:20 205:4
212:3,7,19
213:10 214:17
215:3,11

Veritext Legal Solutions
www.veritext.com                                      888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 305 of 342 PageID #: 4937

216:12,18
**informational** 213:8
**initials** 188:3
**inquire** 246:2
**inquiry** 243:10
**insecure** 181:15
**inside** 167:8 168:1
**insist** 256:12
**insisting** 257:10
**insofar** 204:13
**instance** 89:7 270:9
**institutional** 224:2,3,8,11
**instruct** 214:10
**instructed** 209:10 211:22
**instructions** 245:10,12
**integrity** 224:2 224:3,8,11
**interact** 122:16
**interacted** 122:8
**interacting** 122:19
**interaction** 33:20 35:14 36:6 37:8,19 38:11 67:15,17 87:18 102:12

103:14 104:2 104:19 106:2 149:9
**interactions** 57:22 68:3,7 68:17 69:4 76:4,7
**interested** 152:21 205:10 205:18 277:15
**interim** 144:6
**internal** 142:9
**internally** 30:17 31:7
**interpreted** 247:11,13
**interrogatories** 71:10,15 151:11 153:18
**interrogatory** 25:7,14 30:2,5 66:11,14 69:12 69:14,16 75:21 75:21 151:12 151:13
**interrupt** 42:16 155:15
**interview** 34:1 59:21 60:2,12 61:1,11 62:12 68:2,3 73:1,14 74:3,4,19 75:12,17 76:1 79:20 148:20 149:22 150:8

150:16 151:21 152:15 153:21 191:16,18,20 192:3,8,11,19
**interviewed** 61:18 63:19 148:14 151:15
**interviewing** 37:5 149:9
**interviews** 33:21 64:22 65:7,13,21 66:13,19 67:13 67:17 68:8,16 69:3,6,17 70:5 70:7 71:20 72:5,9,11,21 73:12 76:5 156:6 192:13 192:18
**investigate** 272:11 273:4
**investigation** 5:16 30:11,12 30:14,15 60:21 65:10 71:21 80:8 110:5,16 119:10 135:17 136:19 137:12 137:20,22 139:7 140:11 140:13 141:17 142:20 146:12 146:15,16,17 154:11 157:10

204:8 205:10 205:19,21 211:9 212:5 214:7,12 228:4 232:14,21 233:5,21 234:16 235:13 235:16 267:12
**investigative** 145:3
**investigator** 153:21 173:14
**investigator's** 35:9
**investigators** 30:9 33:20 34:12,15,21 36:15 38:22 73:13 192:12
**investigatory** 63:14
**invitation** 212:18,22 213:4
**invite** 132:15
**invited** 132:4 195:11
**invoices** 274:14 274:18 275:11
**involve** 16:5
**involved** 24:22 25:1,16,17 27:4,5,13,14 29:19 48:4,4 50:15 51:3

134:7 218:2
**involving** 77:16
78:8,17
**iron** 255:10
**irrelevant**
196:4,5
**issuance**
259:16,22
260:6
**issue** 58:8,14
58:18 72:12
96:7,7 99:1
100:3 101:3,11
102:8 105:21
197:11 223:10
223:13 254:15
**issued** 43:18
48:19 150:7
227:12
**issues** 12:7
51:11,16,20
98:15 126:17
131:21 151:22
178:21 250:12
252:5 257:6

**j**

**j** 2:4
**jacksonkelly....**
2:20
**january** 274:2
**jh** 169:12
**job** 207:5
**joe** 270:20
**john** 270:20

**johnny** 1:3
4:10 6:15 7:10
7:21 25:2,17
27:7,14,21
30:7 31:5 32:7
36:7 39:11
43:17,21 45:11
46:10,22 47:17
48:9,20 49:21
50:13,20,22
52:4 55:7 57:3
57:20 60:13,21
63:16 65:22
69:18,20 72:4
72:9,11 73:1
73:10,15 86:3
86:19 87:17
89:15 90:19
91:21 93:15
94:9,17 95:13
96:10,20 97:8
98:17 100:5
106:22 127:19
128:10,16,17
130:1,22
131:21 133:14
145:8 148:10
148:14 149:8
149:18 150:7
150:17 151:15
151:21 152:5
152:15 153:16
153:21 160:2
160:16 164:17
165:1 166:17

169:12 173:6
178:11 179:2
179:22 180:14
181:15,18
182:3 183:2
191:17,20,21
192:12 262:1
278:6 279:3
280:3
**jon** 4:8
**josh** 122:14
159:9
**joshua** 158:20
159:8
**journal** 183:12
**journals** 181:7
184:2
**judge** 197:15
257:14
**judgment**
32:13 33:4,19
36:15,16,20
37:2,20 68:17
220:10
**julie** 18:14,15
19:18 20:4
30:12 79:15
86:16 112:22
122:18,22
132:3 169:9
171:5 187:3
264:19 265:3,4
265:9
**jump** 169:11

**june** 274:2
**jury** 28:16
50:10,12 52:18
65:8 72:10
80:6,22 105:19
105:22 110:21
148:13 152:3
156:12 178:10
181:3 208:2
223:8 266:14
**justify** 164:16

**k**

**kathy** 4:5
**keep** 67:4 190:5
205:17 219:3
**keeps** 202:22
**kept** 30:12
183:12 205:20
**kilpatrick**
18:13 24:11
31:9 32:22
42:11 59:18
86:15 91:10
95:14 101:7
156:7,10,15
169:6,15 170:9
172:20 191:21
192:3,7,7
220:18 221:19
225:16 243:14
**kind** 28:14
45:10 46:9,21
50:22 52:22
57:17 63:1
64:11,11 93:12

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 307 of 342 PageID #: 4939

| | | | |
|---|---|---|---|
| 105:6 113:20 | 72:14 73:3,17 | 135:2,7 136:5 | 194:15,19,22 |
| 203:2 | 74:9 77:10,22 | 138:6,8 139:12 | 195:13,16 |
| **kissed** 90:14 | 79:4,6,9 80:15 | 140:17 141:20 | 197:2,6,9,11,21 |
| **kissing** 90:16 | 81:4,13,16 | 142:1,5 143:14 | 198:3,6,10 |
| 187:18 | 82:8,20 84:2,5 | 143:17 144:18 | 199:1,11,21 |
| **klein** 3:9,15 4:5 | 84:15 85:6,13 | 145:19,21 | 200:8,18 201:2 |
| 7:12,13 8:1,1 | 85:17 88:14,17 | 147:4,17 | 201:4,8,11,22 |
| 9:16,19 10:1,4 | 88:20,22 89:2 | 148:16 149:10 | 202:10,18 |
| 11:6 16:20 | 89:21 90:2 | 149:19 150:18 | 203:19 206:12 |
| 17:21 18:18 | 91:12 92:8,21 | 150:21 151:17 | 207:1,7,9 |
| 20:14,22 21:4 | 93:19 96:11 | 152:6 153:5 | 209:17 210:1,4 |
| 21:16 22:5 | 97:1,10 98:18 | 154:2,12 155:3 | 210:7,11,18 |
| 26:5,18,22 | 99:14,19 100:7 | 155:14 156:21 | 213:5 214:19 |
| 28:8,17 29:7 | 100:19,22 | 157:6,16 159:1 | 215:1,8,18 |
| 31:12,15,18,20 | 101:13 102:1 | 159:14 160:4 | 216:4,16 217:6 |
| 33:10 34:7 | 102:13,16 | 161:5,19,22 | 217:11,20 |
| 35:5,17 36:9 | 104:14,21 | 162:7,10,14,19 | 218:9 219:5,17 |
| 37:10 38:1,13 | 106:4,17 107:3 | 162:21 163:7 | 222:12 226:8 |
| 39:12 40:2,11 | 108:1,3,14,21 | 163:10 164:18 | 227:2,13 |
| 40:21 41:8,18 | 109:19 110:6 | 165:4 166:9,20 | 228:10,14 |
| 42:15 43:11,22 | 110:12 111:2 | 167:11,20 | 229:7 233:7,14 |
| 45:3,15,19 | 111:11 112:4 | 170:2,21 | 234:19 235:4,7 |
| 46:1,11 47:2 | 112:11,14,18 | 174:16 175:3 | 235:18,20 |
| 47:18 48:11,22 | 113:4,14,21 | 175:10 176:1,4 | 238:11 239:8 |
| 49:6 50:1 51:2 | 114:7,19 115:6 | 176:12,21 | 240:6 243:1,22 |
| 52:9 53:2,22 | 115:16,21 | 177:18 178:14 | 245:21 246:20 |
| 54:14 55:11 | 116:8,17 117:5 | 179:4,17 180:2 | 247:10 248:2 |
| 56:13 57:6 | 117:16 118:4 | 180:15 181:9 | 249:16,21 |
| 58:2,10 60:3,7 | 118:10,22 | 182:5,10,14,17 | 250:2 251:11 |
| 60:14 61:2,20 | 120:1,11,20 | 184:18 185:15 | 253:12 254:11 |
| 62:7,14 63:5 | 121:7 122:1 | 186:1,11 | 255:2,11 256:6 |
| 63:20 65:1,11 | 124:6,10 130:3 | 188:14 189:7 | 256:8,16 |
| 65:15 66:5,9 | 130:12 131:3,5 | 189:10,20 | 257:18,22 |
| 66:21 68:9,13 | 131:8,11 132:8 | 190:1,5,16 | 261:17 263:12 |
| 68:18 69:8 | 133:7,19,21 | 193:8,21 | 263:15 264:3,5 |

271:7 273:15
275:2,7 276:2
278:5
**knew** 56:5
67:20 81:11
91:5,21 137:21
189:5 198:11
198:12 228:13
232:1 241:8
254:20
**know** 10:14
17:22 20:7
31:9 35:19
37:13 39:15
42:17 44:10
47:4,21 49:8
58:5 62:1,2,17
62:18,20 63:1
63:17 65:16
67:8,8,19,22
69:4,7,11
70:14 73:6,20
80:19 81:8,17
82:13 84:19
86:12 89:9,12
89:14 104:10
108:5,16 116:6
118:14 119:2
124:21 132:10
132:12 133:2
138:20,22
143:1,6 145:9
145:13 147:20
148:1 157:21
161:22 163:19

171:15 173:16
174:3,5 180:19
181:16 185:17
186:2 188:1
189:13 191:9
191:13,15
196:7 197:3
199:4,5,10
200:3 202:3,12
203:6 204:22
205:3 206:3
207:19 209:15
211:1,13,21
213:22 214:5,8
214:14,16
215:21 216:20
216:21 217:4
217:15 218:13
220:5 221:10
224:16 225:22
226:1,11,13
228:2,9,20
229:16,16
231:8 233:8
236:6 241:7
245:5 255:8
260:4 261:3
265:3,3,20
271:1
**knowing**
218:13
**knowledge**
12:5 14:14
39:10,21 48:18
49:5,6,9,19

55:3 56:2 71:9
71:16 97:9
219:20 220:2
231:7,21
**known** 242:17
**knows** 194:17
208:2 215:12
**krista** 1:11 5:8
6:14 7:14 8:14
8:21 14:2 26:1
29:18 276:13
278:8 279:4,9
280:4,13
281:20

**l**

**laid** 251:14
**landing** 229:20
**language**
102:20 103:5
103:18 104:7
105:12 127:1,3
135:16 141:8
142:19 175:2
**largely** 204:10
211:8
**late** 83:16
85:10 123:2
211:12
**lateral** 221:8,8
**law** 13:9
178:21 196:20
226:1
**laws** 16:9
**lawyer** 37:3
39:19 152:21

252:18
**lead** 196:8,8
203:11
**leader** 224:18
**leadership**
267:6
**learn** 211:15
**learned** 246:14
**led** 88:5
**lee** 2:17
**left** 13:19 94:6
165:19 253:19
**legal** 1:14,20
7:2,4 31:21
32:22 70:13
71:5,7 95:17
186:14 197:11
271:8 278:1
281:1
**letter** 90:2
102:21 103:3,5
103:8,9,19,20
104:8,13,20
105:13,21
106:13 123:14
143:20 205:17
231:22 262:11
262:16 264:10
264:11,13,17
266:14,18
273:22 275:3
278:18
**lie** 59:15
**lied** 59:10,12

Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 309 of 342 PageID #: 4941

light   178:22
likely   184:21
likes   199:19
limit   95:12
   239:10
limitation
   200:11,19,20
   243:4
limitations
   239:15
limited   239:13
   240:15 243:2
line   55:21 94:8
   94:14 134:16
   238:4 273:13
   278:12 280:7
   281:3
link   146:5,6,9
   146:18 205:2,5
   205:11,12,14
   206:4,6,16
   233:10,10
   235:2
linked   233:5
   236:7,7,20,22
linkedin   5:8 9:5
   10:11 11:15
   12:4,10,12,13
   13:20
links   147:8
   198:20 236:11
list   61:17 76:8
   241:13 272:4
listed   17:20
   215:17 280:7

280:17
listen   28:16
listing   68:7
   280:7
litigation   234:4
little   10:2 24:20
   57:10
litton   159:11
litton's   159:11
llc   1:7 3:8 6:13
   17:7,15
llp   2:16 3:3,11
location   1:14
   6:20
logged   262:12
   263:22
long   19:20 41:5
longer   212:11
look   12:7,15
   13:17 41:16
   42:5,10 54:10
   66:11 70:17
   75:5 134:14
   150:3 151:11
   154:19 158:10
   165:10 168:21
   170:8 187:1,10
   187:14 197:14
   208:5 213:13
   213:18 226:16
   229:2,4,12,15
   232:17,22
   263:10 264:21
   265:5,15,22
   266:10 271:12

looked   11:12
   22:17,18 72:2
   96:6 147:22
   148:3 150:9,11
   210:22 211:18
looking   18:2
   21:18 22:22
   42:7,9 56:18
   103:3 106:12
   137:9 145:10
   145:10 155:13
   158:4,8 170:17
   172:4 186:22
   200:6 207:13
   242:18 264:9
   270:14 272:6,8
   273:21
looks   159:4
   185:2
lot   67:17
loud   69:15
   164:1 166:5
   209:2
love   213:20
low   109:7,9
lynn   270:19

m

m   1:3 2:15 6:15
   7:17 278:6
   279:3 280:3
ma'am   9:13
   16:16 25:4
   27:15 36:3
   37:2 41:22
   45:18 46:7

50:9 52:18
54:13 55:18
57:2 60:2,12
61:16 62:21
66:2 72:10
75:10 77:6,14
81:22 82:11
83:5,21 94:5
105:19 116:5
127:12,16
130:18 133:4
134:14 143:10
149:7 153:14
154:19 155:9
156:4,12 157:4
157:13,22
158:11 164:22
165:18 172:22
180:10 192:6
192:20 193:5
193:17 203:2
207:14,21
209:11,22
210:6,15 211:3
211:15 213:22
215:15 219:14
222:22 223:8
223:14,21
227:7,19
228:13 229:3
232:3 233:19
234:2 235:9
236:1,19
238:22 263:6
276:1

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 310 of 342 PageID #: 4942

| macgill 2:3,6 | 83:4 84:7 85:1 | 144:1 145:4 | 199:6,16 200:5 |
|---|---|---|---|
| 7:9,9,21 8:10 | 85:16,18,19 | 146:2 147:9,21 | 200:15 201:5,9 |
| 8:18 9:8,12,22 | 88:15 89:5 | 149:1,13 150:2 | 201:18 202:6 |
| 10:7 11:14 | 90:1,4,6 91:15 | 151:3,20 | 202:15,21 |
| 17:2 18:10 | 92:13 93:3,17 | 152:13 153:13 | 203:13 204:5 |
| 19:6 21:2,5 | 94:4 96:16 | 154:8,18 155:8 | 206:18 207:4 |
| 22:2,8 26:12 | 97:5,14 99:2 | 156:1,3 157:2 | 207:12 208:11 |
| 26:20 27:2 | 99:17 100:1,16 | 157:12,20 | 209:21 210:2,5 |
| 28:13 29:1,14 | 100:21 101:1 | 158:16 159:7 | 210:9,13 211:2 |
| 32:4 34:3 35:1 | 101:19 102:7 | 159:20 160:2 | 213:11 215:4 |
| 35:10,21 37:1 | 102:14 103:1 | 160:11 161:1,8 | 215:14 216:1 |
| 37:16 38:6 | 104:16 105:4 | 162:3,11,16 | 216:13 217:1,8 |
| 39:1,18 40:6 | 106:8,19 107:7 | 163:12 164:21 | 217:16 218:6 |
| 40:15 41:4,14 | 108:7,18 109:3 | 165:8,17 | 218:18 219:13 |
| 41:20,21 43:6 | 110:1,9,17 | 166:15 167:1 | 220:1 222:16 |
| 43:15 44:6 | 111:7,19 112:9 | 167:19,21 | 226:14 227:6 |
| 45:6,17,21 | 112:12,15 | 170:7 171:6 | 227:18 228:12 |
| 46:3,17 47:8 | 113:2,10,17 | 172:1 174:19 | 228:21 229:13 |
| 48:1,16 49:4 | 114:4,10 115:1 | 175:6,14 176:5 | 232:8 233:12 |
| 49:17 50:8 | 115:10,20,22 | 176:17 177:8 | 233:18 235:8 |
| 52:1,17 53:17 | 116:2,14,20 | 178:1,18 179:9 | 235:21 238:12 |
| 54:6,21 55:17 | 117:11,21 | 179:20 180:8 | 238:21 239:17 |
| 56:21 57:15 | 118:7,15 119:4 | 181:1,13 182:8 | 239:20 240:17 |
| 58:7,16 60:5 | 120:5,17,21 | 182:11,16,21 | 243:8 244:3 |
| 60:11,17 61:7 | 121:12 122:5 | 185:3,20 186:7 | 246:1 247:4,19 |
| 62:3,8,19 | 123:21 124:9 | 186:21 187:1,6 | 248:12,18 |
| 63:11 64:3 | 124:14 130:9 | 188:21 189:8 | 249:19 250:1,7 |
| 65:6,12,17 | 130:17 131:14 | 189:15,21 | 252:10 254:4 |
| 66:10 67:1,3 | 132:11 133:13 | 190:3,7 191:1 | 255:1,4 256:4 |
| 68:14 69:1,13 | 133:20 134:2 | 193:16 194:1 | 256:7,14,17 |
| 72:19 73:5 | 135:6,9,11 | 194:18,21 | 257:21 261:18 |
| 74:1,16 77:13 | 136:2,13 138:9 | 195:12,15 | 262:6 264:8 |
| 78:5 79:12 | 139:21 141:11 | 196:3 197:3,8 | 271:11 272:15 |
| 80:21 81:9,14 | 141:21 142:2 | 197:10,18 | 272:16 273:17 |
| 81:21 82:10 | 142:12 143:15 | 198:2,5,7,18 | 275:4,9,22 |

276:9
**macgill's** 18:5
**macgilllaw.c...**
  2:10,11,12
**madam** 278:9
**made** 10:17
  32:13,17 36:15
  37:21 39:3,5,6
  45:13 49:14
  63:16 64:22
  76:1 86:4
  87:14 88:10
  90:9,17,22
  92:17 94:9
  107:16 115:11
  115:12,13,14
  123:1 160:16
  173:19 184:12
  194:4 197:13
  201:20 203:12
  204:20 205:3
  206:19,20
  230:12 241:20
  242:2 243:6
  251:20 254:15
  258:4,13 279:7
**magistrate**
  257:13
**mail** 31:22 85:3
  86:13 125:15
  145:15 158:17
  161:10 170:6,8
  172:5 187:3
  188:4 189:3,19
  189:22 190:8

191:8 195:11
245:5,20,21,22
251:19
**mailing** 84:22
169:5
**mails** 18:8
  21:11,12,13,15
  22:10 190:21
  195:5 196:11
  251:17 257:5
  258:2,3
**maintained**
  144:4
**majority** 129:3
**make** 10:14,21
  27:1 37:2 62:5
  63:12 70:19
  88:15 92:5
  116:1 124:22
  127:17 128:6
  132:15 146:3
  151:7 163:2
  168:7 174:15
  184:7,16 186:4
  197:4 204:17
  207:5,21 208:1
  223:15 236:12
  236:14 246:2
  254:16 255:20
**makes** 64:12
  135:13 227:9
**making** 63:15
  73:9 197:6
  233:16 243:10

**manage** 208:19
212:9
**managing**
  15:16 26:1
  220:7
**mandate** 267:4
**manufacturer**
  16:12
**march** 1:12 6:5
  42:12
**marchetti** 3:19
**margin** 163:21
**margins** 242:2
**marked** 9:11
  16:19 42:18
  43:4 123:19
  155:16 158:15
  160:21 171:21
  187:5 208:10
  232:7
**market** 2:7
**marketing**
  201:1,7,19
  202:8
**materials** 123:2
  123:6
**math** 83:8
  120:7,15,15,16
  121:18
**matt** 3:18,22
  8:3
**matter** 6:15
  83:22 85:4
  109:4,5 114:18
  120:9 121:21

141:15 169:12
216:15 235:9
267:19
**matters** 109:2
  109:22 110:15
**mbc** 191:12
**mean** 44:5,16
  77:12 114:12
  135:12 170:4
  184:10 229:18
  266:1 267:11
**meaning** 64:6
  171:11
**means** 128:9
  212:13
**meant** 32:11
  49:2 100:20
**mechanism**
  233:5
**media** 6:12
  191:2 199:20
**meet** 126:16
  195:2,3,6,8,9
  196:2,10,15,15
  197:16 200:1
  216:5 219:8
  247:15 248:7,8
  250:9,11,13,15
  250:17,22
  251:7 253:6,8
  255:22 256:2,5
  256:11 257:11
**meeting** 37:6
  50:18 127:3
  145:7 255:16

Veritext Legal Solutions
www.veritext.com                                        888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 312 of 342 PageID #: 4944

255:17 257:11
**member** 77:17
78:8 80:14
125:20 164:4
165:1 166:6,18
242:8 262:21
268:3,16
274:22
**members** 78:18
132:4 134:12
134:21 135:19
136:21 137:14
139:9 140:15
141:19 142:22
144:17 163:14
166:3 240:22
241:5 268:16
268:16,20,21
269:4,12,12
270:10 273:7
273:12,20
274:1,11
**memo** 130:6
141:12,13
**memorandum**
124:1,4 125:8
125:11 127:10
128:13 129:22
138:3 141:16
142:4
**memorializing**
184:8
**memory** 74:11
74:14 103:21
134:6 151:5

169:22
**mention** 92:6
192:4,8
**mentioned**
104:3 166:4
**merritt** 4:7
**message** 23:20
80:4 190:13
246:3
**messages** 23:22
24:6 242:20
243:2,11,17,20
244:6,11,16,20
245:3,5,7
246:11,13,18
247:7,21
**messed** 161:3
**messenger's**
31:1 135:16
136:18 139:6
140:13
**messengers**
267:5 271:21
**met** 18:7 62:4
**microphones**
6:5
**middle** 1:1 6:17
**midwest**
278:16 281:1
**military** 83:10
███████████
███████
**mind** 263:17
**mine** 264:1

**ministry**
184:15 230:13
231:3
**minor** 252:12
**mintz** 3:11 7:13
194:4,7 196:6
196:8,16 198:9
203:11 245:3
250:10,22
251:8 253:3,8
255:6 257:11
**mintzandgol...**
3:15,16
**minute** 27:4
42:10 80:5
131:2 192:22
208:6 213:14
232:4 234:21
261:21 266:10
**minutes** 29:3
50:10 169:11
191:18 211:4
272:19
**mischaracteri...**
26:6 29:8
36:10 49:1
51:4 68:10,19
104:22 106:5
107:4 111:3
112:5 140:18
147:5 149:20
152:7 188:17
206:13 210:19
227:14 229:8

**mishandling**
273:22 274:6,8
**misled** 140:8
**misrepresented**
140:10
**missing** 10:16
156:17
**misspeaking**
32:12
**misspoke** 32:11
**mistake** 173:15
272:15
**mister** 262:20
**mistreatment**
274:10
**moment** 124:7
189:6
**monday** 196:14
196:15,16
253:15 257:5,8
258:2
**money** 80:7,20
107:20 111:20
116:21
**monitor** 125:20
126:6
**month** 114:17
**monthly** 112:8
**months** 14:12
25:12 225:5,9
225:14,20
**morning** 257:3
**motion** 31:2
135:17 136:19
139:7 140:13

162:6 163:13
166:1 196:22
197:14 198:14
267:6
**motions** 253:7
**move** 54:3
85:21 221:8
**moving** 150:15
**multiple** 61:18
64:22 261:19
**murray** 2:5
7:20,20
**mute** 6:7
**myers** 18:14,16
18:22 19:18
20:4 30:12
31:8 86:17
112:22 122:21
122:22 124:13
132:3 187:3
243:14 245:14
264:19 265:4
265:10

**n**

**n** 2:1 3:1 4:1
5:1,1 6:1
**n.w.** 1:21
**name** 7:1 8:19
14:2,19 122:13
152:5 192:4,9
223:22 241:2
259:11 271:2
278:6 279:3,4
279:15 280:3,4
280:21

**named** 46:8
48:5
**names** 114:14
241:4,8 270:16
**naming** 153:1
**nancy** 158:21
**narrowing**
200:14
**nashville** 1:2
3:6,21 6:18
129:7 250:10
250:14,15
253:3,4 255:7
255:9 270:22
**nature** 35:16
45:11 46:9
50:22 52:22
57:18 70:20
93:13 187:19
203:2 262:4
**navigating**
147:2,12
**necessarily**
166:22 168:12
184:9
**need** 11:22 22:2
42:5 44:10,16
44:18 63:17
102:20 103:9
105:12 124:21
125:15 148:19
161:5,14
180:20 193:7
194:12 196:22
200:22 214:21

215:20 238:8,9
255:8 259:1,3
264:5 276:4
**needed** 185:1
194:6,7
**needs** 184:9
253:3,5
**neither** 240:12
277:10
**never** 12:7 48:8
64:8,14,16,18
194:4,5,8
196:16 231:2
231:21,21,22
236:6,13,20,22
237:4 240:8
**new** 3:14,14
77:8,16 78:7
78:16 80:13
81:2,15 82:6
155:2,4 176:4
191:14
**newland** 1:17
7:4 277:2,20
**news** 80:1
82:17 191:12
258:1,4
**night** 80:2 83:3
83:6,13 84:1
84:14,22 85:5
**nokes** 4:9 8:8,8
**non** 258:13
**nonconsensual**
36:18,22

**nope** 67:5
218:22
**northwest** 1:14
6:21
**nos** 252:20
**notarized**
278:13
**notary** 277:1
277:20 278:22
279:10,18
280:15,23
281:23
**notation**
142:10
**note** 6:5 93:9
155:14,15
159:4 167:11
193:9 239:9
247:10,13
248:2,5 249:16
251:11 258:12
278:11
**notes** 35:9
126:4,4,11
164:10,13
165:10 171:3,4
**notice** 5:9 9:1
17:6,16 22:16
60:21 62:10
63:18 192:21
203:3 229:4
239:1 258:16
261:22 262:2
**noticed** 15:12
258:9

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 314 of 342 PageID #: 4946

**noticing** 7:8
**notify** 47:15
**notre** 13:12
**november**
15:15 222:3
225:3
**number** 6:18
9:10 16:18
65:13 69:6
70:5 123:18
131:9 158:14
160:20 161:18
169:1 171:20
183:8 187:4
192:18 193:1
198:19 199:18
208:9 230:1
232:6 278:7,12
**numbers** 5:10
5:11,12,13,14
280:7
**numeral**
132:21
**numerous**
195:2

**o**

**o** 5:1 6:1
**o'clock** 84:1,13
85:5
**oath** 69:5 70:4
70:12 103:18
105:10,12
236:15
**object** 45:16,20
102:1 153:2

246:20 272:13
**objected** 193:9
195:1 200:13
216:5 219:6
248:3,6
**objecting** 21:17
**objection** 26:5
28:8,17,17
29:7 33:10
34:7 35:5,17
36:9,10 37:10
38:1,13 39:12
40:2,3,11,21
41:8 43:11,22
45:4 46:11
47:2,18 48:11
48:22 50:1
51:2 52:9 53:2
53:22 54:14
55:11 56:13
57:6 58:2,10
60:3,4,8,14
61:2,20 62:14
63:5,20 65:1
65:11 68:9,18
69:8 72:14
73:17 77:10
79:4 80:15
81:4,13,16
82:8,20 84:2
84:15 85:6
91:12 92:8,21
96:11 97:1,10
98:18 99:14,19
100:7 101:13

102:13,17
104:14,21
106:4 107:3
108:1,3,14,21
109:19 110:6
110:12 111:2
111:11 112:4
112:11,18
113:4,14,21
114:7,20 115:6
116:8,17 117:5
117:6,16 118:4
118:10,22
120:1,11 121:7
122:1 130:3,12
132:8 135:2
140:17 141:20
142:5 143:14
143:17 144:18
145:19 147:4
147:17 148:16
149:10,19
150:18 152:6
153:5 154:2,12
156:21 157:6
157:16 159:1
164:18 165:4
166:9,20 170:2
170:21 174:16
175:3,10
176:12,21
177:18 178:14
179:4,17 180:2
180:15 181:9
184:18 185:15

186:1,11
188:14 189:7
189:10,20
190:1,16
193:21 199:1
199:11,21
200:8 201:8,11
201:22 202:10
202:18 203:19
203:20 206:12
207:1,7 209:17
210:18 213:5
214:19 215:8
215:18 216:4
216:16 217:7
217:11,14
219:17 222:12
226:8 227:2,13
228:10 229:7
233:7 235:4,18
239:9,13,16
243:22 247:11
247:13 248:3
271:7 273:15
**objections**
103:12 198:16
250:4
**obligated**
194:10,13
196:18
**obligation**
194:2 195:21
196:19,21
**obligations**
271:6,20

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 315 of 342 PageID #: 4947

| observations | oh 10:17 76:3 | 76:10,16 77:1 | 168:18 170:18 |
|---|---|---|---|
| 134:5,17 141:5 | 77:18 78:3 | 77:3,21 78:3,6 | 171:7 172:3 |
| 143:11,21 | 119:12,15 | 78:21 79:2,9 | 176:3,10,15 |
| 144:13,15 | 131:7 134:8 | 83:5 85:2 90:7 | 178:19 179:21 |
| obvious 55:18 | 159:19 161:16 | 91:3,5 92:3 | 182:10 183:9 |
| obviously 11:7 | 201:2 235:22 | 93:4 94:16 | 194:21 207:21 |
| 76:7 129:17 | 241:2 246:12 | 96:1,6,17 97:6 | 208:1,7,8,18 |
| 171:16,17 | 265:7,17 266:1 | 99:5 103:2,20 | 211:20 213:12 |
| occasion 62:12 | ohio 278:2 | 104:10 105:14 | 213:16,17 |
| occasions 61:18 | okay 8:10 9:4 | 105:18 106:9 | 216:14 217:6 |
| occur 155:21 | 10:3,6,8,20,22 | 111:20 113:11 | 220:6,14 221:8 |
| 230:18 | 11:4,17,20 | 114:5 116:21 | 221:12,15 |
| occurred 30:18 | 12:6,8,14,16 | 117:2 118:20 | 224:3,11,19 |
| 34:2,14,20 | 14:1,8 15:3,12 | 120:18 122:16 | 225:17 227:10 |
| 40:19 49:22 | 16:4,22 17:1 | 123:15,20 | 228:22 229:14 |
| 50:19 69:6 | 18:15 19:7,13 | 124:15 125:1 | 230:5,22 231:6 |
| 93:6 107:1 | 19:15 20:12,14 | 125:10,17 | 232:3,22 236:9 |
| 129:6 | 20:21 22:4 | 128:6 130:18 | 236:14,17 |
| occurring | 23:9,14,21 | 131:7,9,13,17 | 237:12 238:1,3 |
| 173:9 | 24:5 25:4,6,13 | 132:10,19 | 238:7,10 239:3 |
| october 266:13 | 25:20 26:13 | 133:16,20 | 239:4 244:8 |
| offer 181:5 | 27:9 28:2,14 | 136:14,17 | 246:14 247:20 |
| 198:10 209:5,7 | 29:2,16 30:1 | 137:16 138:5,8 | 248:14 249:15 |
| 239:10 259:21 | 31:17 39:2 | 140:7 142:16 | 254:17 259:5 |
| offered 196:10 | 41:15 42:14 | 143:5,10 | 259:10 261:3 |
| 196:12,13,15 | 44:13 45:7 | 144:14 147:1 | 262:15 263:6 |
| 200:13 234:8 | 46:20 47:9 | 147:14 151:6 | 263:15 264:7 |
| 257:5 | 56:22 57:16 | 151:10 155:5,7 | 265:5 266:6 |
| officer 31:22 | 58:20,22 59:5 | 155:22 158:8 | 267:22 271:14 |
| 32:22 70:13 | 59:8,12,15,20 | 159:16,19 | 272:6 274:9 |
| 71:5,6,7 95:18 | 60:18 64:9,16 | 161:7,7,9,15 | old 52:7,22 |
| 136:9 139:16 | 64:20 66:18 | 162:2,18 163:9 | 53:20 55:1 |
| 277:2 | 67:2 69:2 70:3 | 164:6,9 165:8 | 82:1,17 86:19 |
| official 279:15 | 70:18 71:19 | 166:16 167:4 | 87:18 95:2 |
| 280:21 | 74:17,21 75:5 | 167:19 168:13 | |

once 22:17
137:10 234:4
ones 245:7
250:4
open 254:18
opened 76:14
openly 91:9
operating 71:6
77:7
opportunities
255:19
opportunity
176:19 177:3
178:11 179:2
179:15,22
180:6,14
251:16 254:14
259:20
opposed 175:5
239:15
options 198:4,6
order 194:4
195:22 196:19
196:19 252:2
ordinary 23:6
152:20 178:20
org 88:11
organizational
217:17 218:4
original 214:22
originally
245:1
otchy 3:10 7:13
20:18,21
151:16 258:11

264:1
otchya 3:16
outcome
277:15
outside 39:12
40:3,21 41:8
43:22 47:18
49:11,12 53:2
54:14 55:11
58:2,10 60:4
61:3,21 62:14
63:6,20 65:1
72:14 73:17
80:15 81:5
82:20 84:2,15
92:7 98:18
107:3 108:4,14
109:19 110:12
111:12 112:4
112:19 113:4
113:21 114:19
115:6,17 117:6
117:16 118:4
118:10,22
120:2,11 121:7
122:1 145:2
147:18 148:16
165:5 174:17
175:10 178:15
179:5 180:2,15
181:9 185:16
186:12 188:15
189:11 190:1
190:16 199:2
199:21 201:8

201:11,22
202:19 216:16
226:8
overall 119:11
198:20
owed 188:12
own 66:12
143:2 149:16
180:11 205:8
225:22 227:7
242:7

**p**

p 2:1,1 3:1,1
4:1,1 6:1
p.m. 1:13,13
6:4 93:20,22
93:22 94:1
158:18 165:11
165:13,13,14
169:3,19
238:15,17,17
238:18 250:11
250:14 276:10
276:12
page 5:2,7
10:19 11:1
12:12,15,17,18
13:17 25:13
42:10 43:7
124:16,16,22
132:1,18 138:2
138:4 139:3
141:6 146:13
151:13 161:17
161:18 162:13

162:17 163:3
165:20 167:3,5
167:13 168:21
168:22 169:1,2
172:4 174:15
183:8 187:14
204:2 205:11
209:12 212:2
229:19,20
232:19 233:1
234:15 265:1,5
265:15,22
266:10 271:13
275:5,7 278:12
278:14 280:7
281:3
paid 107:11,12
107:14,20
108:12 110:18
110:22 111:8
111:17,18
116:12,22
275:20
paige 144:4
paper 15:13
130:5,8,10,19
131:15,19
137:4 138:18
139:5 197:15
197:16 269:21
270:5
paragraph
167:6,7 183:10
183:10 187:16

**pardon** 221:17
269:8
**parse** 29:2 72:8
72:8 175:1
**parsed** 27:20
27:22 28:6
69:2 252:14
**parsing** 28:14
68:6,15 175:7
**part** 29:18
37:17 38:7
48:8 50:14
51:14 71:20
72:3 87:12,15
87:16 106:21
107:20 117:13
126:1,19
174:20 176:7
178:3 180:12
181:20 185:11
188:8 203:6
205:16,19
255:12,13
275:1 280:9
**partially** 59:9
**participant**
214:10
**participated**
43:8,19 48:7
49:13 55:6
57:19 86:2
96:2 99:12
**participating**
37:6 62:21
154:10

**participation**
100:13
**participations**
149:17
**particular** 7:14
70:11 137:10
167:16 230:17
233:1 234:18
**parties** 6:10
37:6,7 48:3
277:11,14
**party** 155:11
**past** 164:4
166:5
**pastor** 4:10
7:10 25:2 30:7
31:5 32:7
39:11 43:17,20
45:11 46:10,22
47:17 48:9,20
49:21 50:13,20
50:22 52:4
55:7 57:3,20
60:13,21 63:16
65:22 72:3,9
73:1,14 86:2
86:19 87:17
89:15 90:19
91:21 93:14
94:9 95:13
96:10,20 97:8
98:17 100:5
106:22 127:19
128:10,17
130:1,22

131:21 133:14
144:6 145:8
148:10 149:6,8
149:18 150:6
150:16 151:15
151:21 152:5
152:15 153:15
153:21 160:16
164:7,16 165:1
166:17 178:11
179:2,22
180:14 181:18
182:3 183:2,11
191:17,20,21
192:12 262:1
263:2 265:18
265:19,21
266:3,16,21
274:20,21
275:12
**pastor's** 183:15
**patrick** 2:4 7:9
11:6 41:19
155:4 163:10
263:12,16
**patrick.sanders**
2:12
**patty** 8:1
**pause** 80:5
127:16
**paying** 109:11
263:8,8
**pc** 2:6 7:21
**penalty** 71:14

**people** 14:21
15:9 43:18
46:8 47:15
49:10,12 50:14
50:19 52:19,20
52:20 54:9
55:6 57:19
91:20 98:9
132:15 137:19
147:11,14
159:12 204:16
206:21 207:6
218:2 240:8
243:10 244:19
**percent** 117:20
117:22 120:8
121:13,18,19
121:20
**percentage**
117:14
**period** 53:15
88:13 89:20
135:19 136:21
137:14 139:9
140:15 141:19
142:22 144:17
153:3 163:15
166:3 274:5,12
**perjury** 71:14
**permitted**
143:20 144:11
144:12 240:9
241:15
**person** 20:3
21:1 48:17

49:19 50:21,21
52:21 53:18
55:2 69:19
128:4 129:5,6
178:22 196:5
198:8 225:19
255:16,17
256:3,12
269:20 270:5
**personal** 33:12
33:13,17 34:8
35:6,18 36:12
36:14 37:14
38:2,14 39:14
41:1,10 43:12
44:2 46:1,12
47:3,20 48:13
49:7 51:5
52:11 53:5
54:16 55:13
56:14 57:7
58:4,12 60:9
61:4,22 62:16
63:22 68:20
71:8 73:19
80:17 81:7
82:22 84:6
85:8 98:20
100:8 111:13
113:6 115:8
117:7 118:12
124:7 153:6,8
154:4,15 179:6
179:7 180:17
180:19 182:6

189:12 190:18
193:14 199:3
200:2 202:2,11
215:13,22
216:19 219:12
219:19 220:2
254:9 257:11
**personally**
37:13 279:11
280:15
**personnel**
126:16
**persons** 114:14
220:4
**pertain** 110:15
129:12
**pertaining**
40:19 41:6
72:12 152:15
190:14 199:20
225:6 246:4
**pharmacy**
16:13
**phase** 64:6
**phone** 53:8
171:3 184:21
195:3 253:14
255:13,14,15
255:18 256:1
256:11 278:3
**phones** 6:7
**phrase** 64:4,6,8
64:15,19
**physical** 34:12
34:16,19

**pick** 6:6
**picture** 262:10
**piece** 15:13
**pietsch** 3:18 8:3
8:3
**pigue** 3:19
**place** 6:10
129:8
**placed** 155:18
**placeholder**
137:22
**places** 204:18
**plaintiff** 1:4 2:2
5:3,5,18 7:11
7:21 8:17 26:3
29:20 239:14
239:19 240:5
240:11 243:4
262:5
**plane** 197:22
257:1,2
**played** 156:13
256:17,18
257:9
**playing** 10:4
**pleasant**
253:14
**please** 6:5,7
8:20 10:12
11:5 18:20
46:5 59:8 67:4
75:6 94:3
131:2 138:4
139:22 151:14
154:21 156:1

164:1 165:16
193:1 195:7
200:21 208:13
215:3 231:15
236:11 238:20
278:10,10
**pllc** 3:19
**plus** 207:15
**point** 31:1
55:18 77:19
82:2 83:21,21
85:14 87:5
99:1 115:19,21
126:4 135:14
170:15 181:6
231:9
**points** 272:4,12
**policy** 241:17
**portal** 24:9
**portion** 26:2
27:8 123:9
127:14 129:11
130:7 133:10
138:11 139:14
142:9 144:2
145:7,7 150:10
173:2 180:1,6
181:18 182:2
183:1,3 184:22
217:21 235:14
237:16 239:18
240:4,13 260:5
260:12,13
**portions** 25:1
25:16 27:13

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 319 of 342 PageID #: 4951

127:9 129:2,4
129:10,12,13
141:7 142:8
148:7,7 152:10
176:10 177:6,9
178:5 185:12
240:9
**position** 251:13
251:13,14,15
252:21 253:20
256:3
**positions** 220:3
255:2
**positive** 100:12
**possibility**
78:16
**possible** 81:19
82:17 255:6
**possibly** 15:11
74:12,20 81:12
106:18,20
110:8
**post** 145:16,22
191:6 199:20
**poston** 3:20
**postpone**
195:13 251:17
254:14
**postponing**
252:8
**potential**
241:14
**potentially**
39:4

**practice** 16:2,4
85:10 222:6,11
222:19 223:2
223:17 224:1,9
224:12,20
225:2,10,14,21
226:7
**precluded** 91:4
**prefer** 175:2
**prejudice**
262:2,3
**prejudiced**
250:19 251:4
**preparation**
18:17 21:19
74:22 150:4
187:11 190:9
190:11 211:21
226:20 233:1
234:12
**preparations**
211:4 217:10
**prepare** 17:19
21:10 199:8,13
200:16 202:16
203:16,17
204:3 210:15
215:11,15
216:2,10 218:7
219:2,14,20
239:6,21
242:19 246:11
**prepared** 24:3
30:16 41:6,13
93:11 129:15

193:5,11,12
197:4,9,12
200:6 201:6,15
204:1,2,15
209:14,16
210:10,16
211:7,14 212:8
215:6 216:7
217:18 219:10
225:15 239:17
247:9 251:21
276:4,5
**presence** 46:22
**present** 4:2,4
7:5 19:1,4 20:1
23:15,18
125:21
**presidency**
87:10,10
**president** 15:20
15:22 16:5
19:11 87:8,11
87:12,13,20
88:6,7 89:16
89:19 90:8
94:12 144:3
164:4,5 166:6
166:7 220:8
268:2,9
**presidents**
88:12
**press** 226:12
**previous** 41:18
51:7 96:14
97:3,12,16

217:13 229:8
**previously**
245:11
**print** 162:22
**prior** 40:20
43:8 49:21
51:4 56:2
57:22 85:2,2
93:6 98:7
123:10 138:13
185:9 224:1,12
234:18 258:17
259:14,16,21
260:5 274:14
**private** 6:7
**privileged**
100:15
**probably** 65:19
117:20 121:10
138:1 143:8
**problem**
162:14,21
251:18 253:18
257:20,22
**problems** 51:12
**procedure**
279:5 280:5
**procedures**
228:5 267:13
**proceed** 94:3
165:16 250:9
251:6
**proceedings**
250:20

process 24:1
  51:8,14,18
  52:3 53:11
  74:9 97:18
  104:12 127:13
  153:12,14
  178:3,4 179:8
  179:10,19,21
  184:5,20 196:4
produce 243:17
  252:15
produced
  148:15 254:6
producing
  252:18
production
  248:6 254:8
  278:14,16,20
proffer 178:12
profile 9:5
  10:11 11:12,15
  12:4,10,13
  13:21
promise 248:12
  248:14,15
promoted
  15:19,20 220:7
  220:12,16
  221:3,4,15,18
  221:21 222:8
promotion
  221:6,13
promotional
  201:20 226:4,5

pronto 82:18
properly 12:18
  14:6
propose 178:12
proposed 174:3
  194:8 195:6
  260:16,22
  261:8
prosecutor
  33:18 37:4
  39:20 64:7
protective
  194:4 195:22
  196:19
protocol
  124:16,20
  125:22 126:1
  126:20 127:9
  153:1 173:11
  179:12,13
protocols 129:8
provide 18:20
  19:1 61:13
  105:22 145:18
  176:19 179:7
  201:13 205:8
  215:10 216:17
  219:11 248:9
provided 24:8
  24:16 35:4
  61:12,17
  130:11,20
  131:19 133:5
  134:4 138:12
  141:3 145:6,14

158:9 177:5
  181:21 183:11
  188:6 200:19
  252:1 255:19
  264:14
providence
  12:22
providing
  70:22 123:2
  254:13,19,20
public 277:1,20
  279:10,18
  280:15,23
  281:23
publication
  49:22 132:6
  181:19 182:4
  185:9 188:7
  189:3 230:7
published 63:1
  64:17 145:12
  145:14 149:5
  152:4 189:1
  191:3 204:20
  212:6 224:20
  225:7,10
  235:10
publishing
  107:1
pulled 268:14
pulling 75:9
  239:9
purpose 147:10
  147:13 212:12

purposed 222:5
purposes 213:8
pursuant
  123:13 143:19
pursue 226:6
pursued 227:11
put 9:8 16:17
  25:4 40:8
  49:16 71:22
  133:17 146:5
  167:17 204:16
  205:14 213:13
  250:8 254:6,7

q

question 24:4
  26:18,22 29:11
  38:5 45:8,18
  46:4,6 51:6
  55:16 57:13
  60:10 62:4,5,6
  77:20 78:1
  85:18 88:18
  103:10 113:11
  116:3 124:8
  132:2 137:8
  139:2,20 148:2
  175:4 176:2,4
  187:9 191:22
  195:19 199:14
  200:19,22
  201:14 202:17
  203:21 210:8
  214:22 216:8
  218:10 228:15
  228:16,18

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 321 of 342 PageID #: 4953

236:17 256:10
**questioned**
  49:10
**questioning**
  85:15 238:5
**questions** 18:5
  155:19 167:18
  195:18 198:16
  198:17 218:1
  219:11 239:12
  247:16 258:8
  258:12 259:9
  260:2 261:15
  262:8 272:18
**quickly** 79:1
**quite** 138:1
  229:22
**quote** 27:13
  28:6 33:4 37:8
  52:3,3 54:11
  55:9 56:22
  57:2 58:1 63:1
  64:10 65:9
  68:1 71:20
  72:10 76:12
  92:20 133:6
  134:5 136:18
  137:12 139:6
  154:11 155:17
  155:20 157:4
  157:15 158:5
  189:5 235:15
  273:3
**quotes** 71:22

**r**

**r** 2:1 3:1,2 4:1
  6:1
**rachael** 188:6
**raise** 22:1 54:9
  56:11 57:20
  73:11,16 154:9
  158:2 198:16
**raised** 53:18
  54:22 55:4
  56:19 72:12
  78:2 97:7 98:8
  98:15 99:11
  101:11 103:12
  166:17
**raising** 99:1
**range** 119:21
  244:11
**rate** 108:20
  109:18 112:1
**rates** 109:6
**rather** 157:14
**reached** 67:22
**reaction** 197:14
**read** 17:5,9
  41:5 42:3,19
  43:1,7 69:14
  69:15 74:21
  75:2 84:11
  133:9 134:15
  136:4,16 163:2
  164:1 166:5
  189:18 190:8
  190:10 209:2
  262:14 271:15

279:5,6,12
280:5,6,17
**readers** 189:5
**reading** 104:19
  139:13,15,17
  141:2,9 158:6
  159:6 163:3
  229:16 278:18
**ready** 129:4,16
  197:22
**realities** 213:14
**reality** 140:10
  213:18,22
  214:2 234:22
**really** 29:13
  74:14 143:8
  263:13,13
**reason** 87:19
  278:13 280:8
  281:3
**reasons** 250:20
**recall** 30:4
  31:22 32:2,9
  35:20,22 36:2
  43:14 52:5,6
  52:13 55:21
  57:14 61:6,8,9
  61:10,11 67:11
  67:12,15 73:21
  74:17,18 75:2
  89:8 94:14
  109:13,14,16
  122:13 128:21
  130:16 132:14
  132:17 136:22

137:3 143:4
149:7,14,16
150:1 154:7,16
160:10 168:5
183:5 187:12
189:9,14
190:12,20,21
192:17 242:4
260:7,10
270:14,15
271:2 273:18
274:15
**recalled** 113:9
**receipt** 278:17
**receive** 241:10
  260:4
**received**
  107:17 141:4
  240:1,13
  242:20 244:11
  246:19 247:8
**receiving**
  190:20
**recently** 17:10
  17:11 210:22
**recess** 93:22
  165:13 238:17
**recognize**
  13:19 42:3
  208:20
**recollection**
  95:19,22
  185:18 275:11
**recommendat...**
  230:12

**record** 6:4,11
7:7 8:20 93:21
94:2 135:4
139:12,18
159:5 165:12
165:15 197:5
197:13 233:16
238:16,19
248:5 250:8
251:12 254:21
256:9 258:3,5
258:7,12 276:5
276:11 277:9
280:9
**recorded**
111:21 112:7
**recording** 6:9
**recordings**
183:15
**records** 23:3,6
**redact** 134:10
144:3
**redacted**
132:21 133:9
134:9 135:3,5
135:15,22
136:7,11 137:6
139:14 140:19
141:4,6 142:14
**redaction**
132:22 134:15
134:20 139:2,3
143:5
**redactions**
143:9

**redline** 177:14
177:15
**reduced** 109:6
277:7
**refer** 66:2
**reference** 39:3
39:5 64:11
78:9,14 130:21
146:3 148:10
149:8 152:10
160:15 162:4
200:9 226:16
230:2 232:14
235:15 273:2
278:7 279:2
280:2
**referenced**
66:14 279:11
280:15
**referred** 128:4
130:6 185:13
185:22 186:6
186:16,19
**referring** 59:15
59:22 105:6
184:13 202:22
205:6 218:3
275:3
**reflect** 254:21
256:9
**reflected** 171:4
198:14
**reform** 230:11
231:2

**refresh** 74:14
134:6 151:5
169:22
**refundable**
258:13
**refused** 195:9
**regard** 51:13
88:4 195:10
197:7 200:12
200:20 241:20
241:21 252:6
**regarding**
21:18 212:19
276:6
**regards** 193:13
**registrant**
16:11
**registrants**
16:8
**registration**
16:14
**regretted** 49:14
**regulations**
16:9
**regulatory** 16:1
**reimbursement**
258:19
**rejected** 37:17
**related** 26:3
69:19 131:21
183:13 240:10
241:16 277:10
**relatedly** 262:4
**relates** 239:18
261:10

**relating** 181:18
182:2 183:1
198:21 212:3
239:14,18
240:4,5 242:22
244:13
**relation** 226:6
238:4 251:10
252:19
**relationship**
144:5
**relationships**
218:2
**relative** 187:10
277:13
**relativity** 24:10
**release** 226:12
**relevant** 22:21
23:1 163:15
166:3 196:6
198:8,9 244:21
245:8
**reliance** 30:19
**relied** 33:18
36:19
**relief** 194:6,12
**remain** 248:7
252:4
**remainder**
204:3
**remaining**
250:4 268:20
**remarks**
187:17

www.veritext.com                                                                         888-391-3376

| | | | |
|---|---|---|---|
| **remedy** 251:10 | **repeating** | 144:21 145:1,8 | 220:4,9,21 |
| **remember** | 54:11 | 145:12,14,15 | 221:17,20 |
| 17:10 41:13 | **rephrase** 62:4,5 | 145:16 146:1,4 | 222:11,19,21 |
| 74:13,18 87:12 | **report** 5:17 | 146:10,22 | 223:18 224:13 |
| 88:8 90:18 | 19:10,13 25:1 | 147:2,8,12,15 | 224:19 225:6,9 |
| 91:17 94:7 | 25:17 26:2,2 | 148:5,6,15 | 225:15,20 |
| 106:16 108:17 | 27:5,6,8,14,19 | 149:18 150:7 | 227:11 230:2,4 |
| 110:21 122:20 | 29:21 30:8,10 | 152:4,10,22 | 230:8 232:15 |
| 122:22 123:4,7 | 30:16 31:6 | 153:15 155:11 | 233:1,4,11,20 |
| 123:12 132:13 | 32:7 37:22 | 157:9 159:21 | 234:15 235:10 |
| 149:4 151:1 | 38:9,19 40:18 | 160:13 171:11 | 235:13,14,15 |
| 166:14 181:12 | 43:10,17,21 | 172:22 173:3 | 235:17 236:7 |
| 189:2 241:3 | 45:12 46:10 | 173:10,17,18 | 236:11,21 |
| 270:19,20 | 47:1,6,16 48:5 | 174:1,9,15,21 | 237:1 239:14 |
| 273:13 | 48:6,10,19,21 | 176:7,8,11,20 | 239:16,18 |
| **remembering** | 49:11,16,22 | 177:10 178:6 | 240:5,10,14 |
| 106:14 | 50:6,14 51:12 | 178:13 180:1 | 242:22 243:3,4 |
| **remind** 42:22 | 51:21 52:8 | 181:18,22 | 244:13 246:4 |
| 170:19 | 53:1,21 55:8 | 182:2 183:1 | 259:16,21 |
| **reminder** 42:17 | 72:13 77:9 | 185:1,9,21 | 260:6 269:7,9 |
| 153:9 | 78:16 81:12 | 186:4,16 188:7 | 269:14,15 |
| **remotely** 7:6 | 84:13,20 85:22 | 188:12,22 | 272:6 |
| 245:8 | 86:3 90:10 | 189:4,4 190:15 | **reported** 1:17 |
| **remove** 42:20 | 91:1 93:7 | 191:3 198:22 | 263:5 |
| **removing** | 94:10 96:9 | 199:20 200:9 | **reporter** 7:3 |
| 114:13 | 97:8 100:6 | 201:21 202:9 | 89:3 279:7 |
| **renamed** 222:6 | 111:9 115:5 | 204:13,19 | **reporting** |
| **repair** 199:7 | 123:9 125:19 | 206:1,2,4,6,9 | 81:19 157:11 |
| **repeat** 29:12 | 126:18 127:13 | 206:20 207:6 | 218:2,4,15 |
| 38:5 45:9 46:5 | 127:15,21 | 207:15 209:3 | **reports** 214:7 |
| 46:7 57:17 | 128:12,18 | 212:5,13,18,20 | 218:14 |
| 127:20 128:11 | 129:4,17 132:5 | 212:22 213:1,2 | **represent** |
| 203:15 215:2 | 137:1,7,10,19 | 213:4,8,9,10 | 117:22 120:18 |
| **repeatedly** | 138:12 139:4,6 | 214:11,18 | 133:4 134:3 |
| 196:3,10 | 142:8,9,19 | 217:3 218:3 | 136:1,3,6 |

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 324 of 342 PageID #: 4956

| representation | 46:21 49:15,20 | responses 25:8 | 132:15 138:13 |
|---|---|---|---|
| 135:4,8 136:10 | 51:16,19 52:2 | 241:15 250:5 | 173:22 177:4 |
| 139:16 141:8 | 57:3 96:9,18 | responsibility | 178:12 180:1,6 |
| representations | 98:3,5,8 | 212:7 271:4 | 200:21 204:17 |
| 136:8 | reserve 253:10 | responsible | 213:4 246:10 |
| representative | 258:18 261:21 | 30:10 204:10 | 246:12 247:3 |
| 7:15 9:2 17:14 | 276:2,6 | 211:8 212:11 | 247:18,22 |
| 21:19 125:20 | reserved | responsive | 278:11 279:1 |
| 193:18 203:18 | 276:15 | 248:1,20 | 280:1 |
| 252:4 | reserving | rest 100:15 | reviewed 17:11 |
| represented | 253:10 | 205:4 | 18:7 26:1,10 |
| 140:9 | resolution | restate 175:20 | 26:13,15 28:7 |
| representing | 194:3 | 175:22 176:1 | 29:5 30:15 |
| 7:2,14 | resolve 248:15 | 276:4 | 35:8 112:21 |
| request 199:22 | 251:2 253:9 | result 53:12 | 128:1 129:2 |
| 246:21 248:1 | 256:21 257:6 | 220:21 | 171:14 274:14 |
| 248:20 249:1,4 | respect 35:2 | retained 5:18 | reviewing |
| 249:7,10,13,17 | 39:2 40:7,16 | 267:7 | 21:14 26:16 |
| 252:14,19 | 54:7 56:9 | returned 177:6 | 129:9 |
| 280:9,11 | 58:22 64:21 | 278:17 | reviews 128:3 |
| requested | 66:18 101:2 | reveal 18:2 | rh 172:14,17 |
| 253:4 | 198:7 204:7 | revealed | right 9:7 12:21 |
| requests 195:2 | 214:18 230:5 | 135:17 136:19 | 13:15,17 15:17 |
| 248:4 254:8 | 258:19 | 137:13 139:7 | 16:15 21:3 |
| required 196:2 | respond 77:1 | 140:14 141:18 | 22:17 23:2 |
| 278:22 | 249:1,4,7,10,13 | 142:21 144:16 | 26:20 28:7 |
| requirements | 251:19 | review 21:6,9 | 30:3 31:14 |
| 218:5 | responded 79:1 | 22:10 23:2 | 33:1,3,6 39:7 |
| research 236:3 | 79:2 | 24:10 25:10 | 39:11 40:1,7 |
| reservation | responding | 35:3 113:3,12 | 40:10 41:19 |
| 45:10 48:19 | 69:12 | 114:5 123:10 | 48:10 50:16 |
| 50:7,21 52:6 | response 9:1 | 125:18 126:6 | 56:7 62:13 |
| 52:21 | 66:15 70:11 | 126:12,17 | 64:7 67:5,6 |
| reservations | 228:4 248:10 | 127:13 128:5 | 68:8,17 70:8 |
| 45:2 46:9,16 | 249:17 272:17 | 129:4,5 132:5 | 71:5,10,17,21 |

www.veritext.com　　　　　　　　　　　　　　　　　　　　　　　　888-391-3376

| | | | |
|---|---|---|---|
| 72:2 73:2 76:5 | 178:2 179:16 | **rob** 7:9 18:2 | 133:12,18 |
| 77:9 78:11,19 | 180:1 182:16 | 21:16 42:15 | 155:18 167:17 |
| 79:2,16 80:3 | 184:3 192:15 | 43:5 49:3 | **rules** 279:5 |
| 81:15 82:6,14 | 203:12 204:6 | 57:11 66:21 | 280:5 |
| 82:16 83:11,15 | 206:11,22 | 85:13 89:22 | **run** 195:22 |
| 91:7,16 92:1 | 207:6,14,14,17 | 102:16 112:14 | 221:15,19 |
| 94:19 95:3,15 | 207:18 208:4 | 115:17 124:7 | **running** 222:7 |
| 95:18,21 97:19 | 209:7,16 | 133:7 135:4 | **russ** 18:13 |
| 99:18 100:6 | 210:17 211:10 | 136:8 139:13 | 86:15 171:5,8 |
| 101:2,8 102:22 | 212:14 214:6 | 139:19 155:14 | 172:18,21 |
| 104:20 106:3 | 223:2,4,6 | 160:6 163:1 | 173:13 183:21 |
| 106:16 107:2 | 224:13,17 | 167:12 175:4 | 185:2 218:13 |
| 107:11,21 | 225:11 227:12 | 182:17 190:5 | **russell** 42:12 |
| 111:1,10 112:3 | 228:8 229:6 | 193:8 194:20 | 76:2 169:5 |
| 113:18 115:2 | 230:3 232:9 | 195:7 197:12 | |
| 116:22 117:4 | 234:1,2,5 | 198:15 228:15 | |
| 119:8,22 | 235:2,17 241:9 | 243:6 247:12 | |
| 120:10 121:1,4 | 242:18 244:16 | 248:4 251:14 | |
| 121:17 125:3 | 244:17,21 | 254:12 257:19 | |
| 126:13 128:13 | 250:7 260:6,18 | **rob's** 263:18 | |
| 128:16 133:13 | 261:1,8 262:13 | **robert** 2:3 | |
| 134:3,8,10 | 264:9 265:13 | **robert.macgill** | |
| 135:6,9,15 | 265:15 266:9 | 2:10 | **s** 2:1 3:1 4:1 5:1 |
| 138:15 146:10 | 266:19 267:1 | **role** 7:15 10:4 | 6:1 278:14 |
| 147:12 150:12 | 267:16,18 | 15:5 16:1 | 280:8,8 281:3 |
| 150:14 151:4,7 | 268:12 269:1,5 | 119:8 150:6 | **sa** 189:5 |
| 151:11 152:18 | 269:17,18,22 | 212:7 | **salary** 107:17 |
| 155:9,11 156:4 | 270:13 271:12 | **roles** 220:3 | 107:19,19 |
| 161:17 162:1 | 273:4,7 274:7 | **rolland** 266:4 | 116:22 |
| 163:20 168:10 | 274:12 275:10 | 266:21 274:21 | **samantha** |
| 168:21 169:7 | 275:13,15 | 275:13 | 18:13 42:11 |
| 169:16 171:15 | **rights** 253:10 | **roman** 132:21 | 86:14 156:10 |
| 172:11 174:21 | 258:19 261:21 | 138:10 | 169:6,15 171:5 |
| 175:1,8,9 | 276:3,6 | **room** 42:21 | 171:9 172:20 |
| 177:11,17 | | 43:3 125:19 | 222:7 223:11 |

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 326 of 342 PageID #: 4958

| | | | |
|---|---|---|---|
| 225:16 226:12 | **sbc**  5:4,16 | 47:19 53:3 | 199:22 201:12 |
| **samantha's** | 78:18 88:2,3,3 | 54:15 55:12 | 202:1,19 215:9 |
| 218:15 | 88:6,7 89:16 | 58:3,11 60:4 | 216:17 226:9 |
| **sandbag** | 89:19 90:3,8 | 61:3,21 62:15 | 261:10,13 |
| 198:13 251:20 | 94:13 107:15 | 63:6,21 65:2 | 264:14 273:3 |
| **sanders**  2:4 | 107:21 110:4 | 72:15 73:18 | **scott**  2:5 3:9 |
| 7:10 11:9 | 111:9 112:8 | 80:16 81:5 | 7:12,20 278:5 |
| 155:5 159:17 | 114:17 115:4 | 82:21 84:3,16 | **scott.murray** |
| 163:4 263:20 | 122:17 146:12 | 86:5,20 87:2 | 2:11 |
| **saw**  141:7 | 164:4 166:6 | 91:1 92:7,12 | **screen**  5:15 |
| 173:8 241:20 | 201:16 204:1,7 | 95:11 96:8,21 | 9:13 130:19 |
| **saying**  20:19 | 205:9,17 | 98:12,14,19 | 159:18 160:9 |
| 32:19 45:20 | 207:15 209:3 | 101:4,12,16,17 | 163:1 208:5 |
| 50:18 53:9 | 210:17 211:5 | 101:22 102:4,6 | 245:18 |
| 68:16 115:17 | 213:2 214:7,16 | 102:12 103:14 | **screenshot** |
| 140:1 173:19 | 221:20 223:12 | 104:2,5,12,12 | 11:12 245:8 |
| 182:17 195:3 | 227:12 230:3,6 | 104:19 106:3 | **screenshots** |
| 207:22 213:3 | 232:14,21 | 107:4 108:4,15 | 24:7,15 244:20 |
| 223:16 230:22 | 235:13 240:3 | 109:20 110:13 | **scroll**  10:12 |
| 231:1 235:22 | 241:16 259:6 | 111:12 112:5 | **seal**  279:15 |
| 237:20 248:10 | 267:5,6,19 | 112:19 113:5 | 280:21 |
| 255:21 | 268:2,10 | 113:22 114:19 | **seasoned**  33:19 |
| **says**  76:12,20 | 270:11 271:6 | 115:7,17 117:6 | **seattle**  270:21 |
| 125:17 133:2,6 | 271:20 272:8 | 117:17 118:5 | **sec**  225:6 |
| 134:5,13 136:9 | 272:14,18 | 118:11 119:1 | 240:13 |
| 139:18 140:1 | 275:1,19 | 120:2,12 121:8 | **second**  5:9 11:4 |
| 156:4 164:3 | **scarlett**  4:9 8:8 | 122:2 147:18 | 17:6 129:13 |
| 166:1 169:15 | **school**  13:9 | 148:17 154:5 | 133:7 134:20 |
| 169:16 170:10 | **schwartz**  32:1 | 154:13 165:5 | 148:20 155:5 |
| 172:13 188:1 | 32:2 33:1 | 174:17 175:11 | 167:10 213:18 |
| 207:15,17 | 95:20 100:11 | 178:15 179:5 | 219:5 239:7 |
| 209:3 229:20 | **scope**  33:11,14 | 180:3,16 | 251:4 265:2 |
| 249:18 250:3 | 36:11 37:11 | 181:10 185:16 | 270:1 273:9 |
| 265:3 267:4,17 | 39:13 40:3,22 | 186:12 188:15 | **seconds**  163:1 |
| 267:18 268:19 | 41:9 44:1 | 189:11 190:17 | |

**section** 30:10
  30:15 164:17
  170:10,14
  172:13 173:1,4
  173:5,6 214:7
  218:3 224:4
  260:17 261:12
  267:3,22 272:9
  272:10,20
  273:2
**sections** 148:7
  173:22
**securing** 15:6
**see** 9:13 10:9
  10:18 13:18
  16:20 25:18
  42:10,13 66:7
  66:12 75:9
  76:3,17 78:10
  79:14 80:4
  102:20 103:4,9
  103:18 104:7
  105:12 123:22
  124:3,17,22
  125:2,15 126:7
  127:4 132:20
  134:16 135:5
  135:20,21
  139:10,15
  141:7 142:15
  143:2,20,21
  144:11,12
  146:9,13 147:2
  147:11 148:20
  150:4,9 153:18

155:3,6 156:11
  156:19 157:1
  161:9,10,11,16
  163:16 167:9
  167:14 168:1
  169:2,8,13,17
  170:12,13,14
  170:15 172:5
  172:15 183:17
  187:7,20 206:9
  208:7 209:1
  214:22 215:20
  225:4 227:7
  232:13,13,16
  234:2,14,14
  240:9 243:6
  251:1 253:9
  255:10 258:6,7
  265:1,9 266:3
  266:3 267:9,20
  268:5 271:22
  272:4,9 274:3
**seeing** 103:7
  135:3 142:7
  160:17 187:12
  229:1,1 273:1
**seek** 195:22
**seeking** 258:19
**seen** 11:18 12:7
  12:12 25:7
  64:16 67:10
  78:19 131:18
  141:9 148:8
  157:21 265:20

**select** 227:20
  227:20 228:7
  230:1
**selectively**
  179:14
**send** 79:15
  181:17,17
  182:1,2 245:8
**sending** 74:18
  83:20 183:1
**senior** 15:16
  26:1 220:7
**sense** 38:18
  135:13 149:2
  227:9
**sensitive** 6:6
**sent** 75:11,14
  82:14 83:22
  113:1 124:5
  125:11,14
  141:2 158:17
  171:5 172:10
  185:7,8 195:2
  245:6 258:2
  274:15 275:11
**sentence** 69:16
  106:12 138:11
**separate** 21:22
  22:3 42:21
  43:3 128:2
  133:12 155:18
  167:17 214:15
  260:5 265:19
**september**
  15:15 277:22

**sequence**
  170:19 254:6,7
**serious** 252:17
  252:17,18
**served** 270:17
  270:17
**services** 110:19
  115:4
**session** 259:1
**sessions** 183:14
  183:16
**set** 61:12 71:9
  257:4 267:15
**seton** 13:8
**setting** 129:20
**settle** 82:1
**seven** 52:20
  53:10 54:9
  55:6 56:11
  57:19 73:7,8
  85:21 86:1
  94:19 95:4
  98:9 100:2
**several** 14:20
  22:6 147:7
**sexual** 34:12,16
  34:20 36:8,18
  77:8,16 78:7
  78:17 80:13
  81:19 82:5
  123:1 124:1
  125:11 141:13
  153:2 181:21
  186:5,10,17,17
  187:19 188:8

www.veritext.com                                                    888-391-3376

191:22 205:13
205:15 206:16
214:3 228:4
240:18 263:3
274:10
**shape** 223:19
**share** 145:2
**shared** 127:21
128:12,18
**shares** 199:19
**sheet** 278:12
280:7,10,18
281:1
**short** 79:15
**shots** 245:18
**show** 30:4
41:15 105:15
131:10 203:14
208:6,6 232:4
236:10 237:13
237:14 238:2,2
263:18
**showed** 150:9
152:9 269:14
269:15
**shown** 129:17
129:19 155:4
160:8,12
259:15 278:15
**sic** 171:19
**side** 72:21
196:1,9
**sign** 265:19
**signature**
265:19,20

276:14 277:19
278:13
**signed** 70:14
231:21 264:17
265:4,7,8,9,21
266:6 279:13
280:18
**significantly**
116:11
**signing** 266:4
278:18
**similar** 253:13
258:16 262:4
**simple** 222:22
**simply** 246:14
**sincerely**
278:19
**single** 45:10
48:17 49:19
52:6 82:5
104:11,18
191:22 210:16
252:15,19
260:16,22
**sir** 16:15,15
103:10 278:9
**sit** 93:11
103:21 208:3
236:19
**site** 209:10
**situation**
258:16
**six** 14:12 43:18
46:8 50:14,19
51:3 52:19,19

53:9 192:13
225:8,9,14,20
254:8
**sk** 172:14,19
**slade** 265:19,21
266:4,16,21
274:20,21
275:13
**slade's** 265:18
**slow** 162:15
**small** 162:22
163:3 239:15
**smaller** 124:22
**snapshot** 5:15
**social** 199:20
**sociology** 13:4
**solemn** 70:20
**solution** 226:22
227:22
**solutions** 1:7
1:14,20 3:8
6:13 7:2,4 8:2
17:15 107:14
107:18 111:18
226:17 227:8
228:7 229:20
267:7 278:1
281:1
**somebody**
81:19 99:1
142:17 147:1
154:10 231:20
**someone's**
44:14

**somewhat**
74:12 132:16
**soon** 77:4 79:2
255:6
**sorry** 10:17,19
20:19 22:12
32:10 42:15,21
43:5 45:14
55:16 67:7
79:8 86:15
88:16,19,21
89:1,4,13
102:16 108:2
112:14 113:8
117:6 119:12
128:2,14
132:17 145:20
151:13,17
155:15 156:9
160:5 161:3
167:3 168:22
172:2 175:13
175:16 190:5
217:5 219:3
230:16 231:15
243:3 244:14
258:22 262:10
263:14,16,19
264:4 265:8,18
266:1 271:2
**sort** 159:10
189:14 255:14
**sorts** 32:20
**sound** 121:1

Veritext Legal Solutions
www.veritext.com                                                            888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 329 of 342 PageID #: 4961

| | | | |
|---|---|---|---|
| **sounds** 12:1 | **specifically** | **standpoint** | **stayed** 84:21 |
| 132:16 186:3 | 25:15,21 27:3 | 164:16 | **stenotype** |
| 247:14 | 27:12 39:21 | **stands** 77:20 | 277:7 |
| **southern** 1:6,8 | 55:8 86:11 | 172:17,19 | **step** 133:14 |
| 2:13 3:17 6:15 | 90:12 122:12 | **start** 9:4 85:22 | 212:3 |
| 7:19 8:4,6,9 | 140:9 167:15 | **started** 26:19 | **stephanie** |
| 111:22 227:22 | 194:7 199:8 | 234:5 | 185:4,5 187:3 |
| 262:22 266:18 | 214:1,11 | **starting** 47:15 | 188:5 |
| 266:22 267:5 | 240:10 251:17 | **state** 7:6 8:19 | **steps** 60:19 |
| 278:6 279:3 | 257:14 268:19 | 15:13 55:5 | 199:17 216:2 |
| 280:3 | 272:2,9 275:12 | 89:7 279:10 | 216:10 229:6 |
| **spalding** | **specifics** 104:6 | 280:15 | 244:8 |
| 158:21 159:5 | 132:17 | **stated** 26:10 | **stipulate** |
| **speak** 18:15 | **spelling** 114:13 | 36:17 40:14 | 120:20 |
| 23:14,17 24:11 | **spend** 21:14 | 139:10 | **stipulates** |
| 27:10 54:10 | 85:11 | **statement** 45:9 | 121:2 |
| 100:10,13 | **spent** 80:7,11 | 62:6 104:13,17 | **stop** 231:16 |
| 105:21 193:11 | 80:20 81:2 | 141:1 144:7 | **story** 42:11 |
| 193:12 194:20 | 84:21 120:8 | 147:5 149:20 | **stream** 156:14 |
| 194:20 197:12 | 121:6,21 | 152:7 174:22 | **street** 1:14,21 |
| 215:6 216:7 | **spoke** 23:15 | 175:5 188:18 | 2:7,17 3:4 6:21 |
| **speaking** 39:20 | 75:19 76:13 | 206:13 210:19 | **strike** 26:14 |
| 159:9 198:11 | 93:5 99:3,5 | 279:13,14 | 35:12 39:4 |
| 198:12 232:2 | **spoken** 18:1 | 280:19,19 | 50:11 55:4 |
| 273:14 | 103:22 255:15 | **statements** | 63:13 87:15 |
| **speaks** 159:2 | **sponsored** | 38:18,19,21 | 102:9 136:14 |
| **specific** 27:9 | 223:6 | 90:11 93:13 | 142:17 149:6 |
| 34:4 85:12 | **stamps** 161:20 | 115:11,12 | 173:7,20 |
| 101:10 102:20 | **stand** 68:22 | 180:7 203:4 | 179:12 189:1 |
| 103:6,10 | 96:14 97:3,12 | 215:6 | 235:10 |
| 106:11 123:5 | 153:12 157:18 | **states** 1:1 6:16 | **structure** |
| 130:16 137:3 | 179:8,19 | 71:13 140:18 | 217:17 218:15 |
| 244:10 254:7 | 233:13 239:11 | **stating** 57:21 | **struggling** |
| 266:9 | 250:5 | 189:4 | 109:6 |

Case 3:23-cv-00243    Document 219-12    Filed 07/03/24    Page 330 of 342    PageID #: 4962

**study** 13:4
**subject** 250:5
**submission**
    123:11 138:14
**submitted**
    84:20 242:3
**subscribed**
    279:10 280:14
    281:21
**subsequent**
    242:11
**substance** 16:9
**substances**
    16:14
**sufficient** 51:10
    51:10 52:14
    53:12,14,16
    54:7,20 98:11
    98:13,16 99:6
    99:13 100:4,18
**suggested**
    124:15,19
    127:1
**suggestion**
    241:22
**suggestions**
    240:1 241:10
**suite** 1:15,21
    2:8,18 3:5 6:21
    278:2
**summarize**
    12:18
**summarized**
    14:6

**summary** 41:6
    129:14
**superior** 278:1
**supposed**
    231:17,19
    247:3
**sure** 10:13,21
    25:11 27:1
    29:10 30:9
    53:6 70:19
    88:15 93:16
    109:8 111:16
    111:17 121:2
    127:17 128:6,8
    151:7 163:2
    192:18 204:18
    204:20 205:3
    206:19,20
    207:5,21 208:2
    223:15 229:22
    236:12,14
**surprise** 137:2
    137:7 254:19
**surprised**
    185:10 253:16
**survivor** 167:7
    167:22 185:22
    186:6,10,18
    205:17
**survivors**
    114:14 186:6
    186:17 207:16
    209:4 213:3
    214:4

**swear** 8:11
    72:1
**switch** 178:8,8
**switching**
    122:6
**swore** 71:19
**sworn** 8:16
    234:21 277:5
    279:10,13
    280:14,18
    281:21

**t**

**t** 5:1,1
**tab** 201:16
    204:1,7,15,16
    204:22,22
    210:17 211:5
    211:11 212:12
    214:16
**take** 6:10 19:20
    41:16 60:19
    75:5 83:12
    85:14 93:17
    113:19 146:9
    160:2 165:9,10
    187:14 196:13
    198:15 209:11
    212:1 214:6
    216:2 229:6
    233:12,21
    235:16 238:13
    244:8 252:20
    257:1 263:10
    264:21

**taken** 54:18
    56:17 126:4
    277:3,6,12
**takes** 209:12
    212:2 214:3
**talk** 94:19
    200:9 201:15
    204:1 223:14
    223:21 227:19
    234:22 250:20
**talked** 75:18
    96:19 97:21
    98:4 245:3
**talking** 76:4,6
    77:18 119:11
    182:12 212:4
    230:15 247:2
    257:7
**task** 84:21
    122:17 123:1
    123:11 124:1
    125:12,19
    138:14 141:14
    145:13 146:5,6
    146:18,19
    181:21 188:8
    204:20 205:2,5
    205:7,13,15
    206:5,5,16
    212:6 214:13
    230:11 231:3
    233:22 234:1
    236:8 240:3,11
    240:15,18,22
    241:11,21

260:17 263:3,5
266:18 267:7
267:19 275:16
**taylor** 3:19
**team** 145:3
153:16 181:6
185:11 255:20
**teams** 20:11
129:19 145:7
160:9,13 270:6
**technical** 11:7
**tell** 17:13,18
24:14 27:11
44:11 65:7
70:16 72:9
80:6 84:10,10
84:12,20 85:9
103:2,7,11,11
115:2 128:16
132:6,22 136:5
138:17 141:13
141:17,22
142:3 148:13
148:13 152:3
161:18 168:4
180:9,9 193:17
198:19 199:17
214:9 216:14
239:5 253:5
266:14
**telling** 52:18
110:20 231:14
**ten** 15:2,7
**tennessee** 1:1
3:6,21 6:18

129:7 250:10
253:3,5 255:7
**term** 268:22
**terminology**
57:1
**terms** 14:9 16:6
16:7 36:8 37:5
37:19 40:8
57:10 60:19
95:3 106:1,2
121:1 122:8
123:5 153:1
178:11,19
191:16 220:3
267:15
**testified** 8:16
25:22 132:3
188:11 200:14
211:3 213:13
217:22 229:5
229:12 238:3
242:1 243:5,9
245:2 260:15
**testify** 104:11
193:6,18,22
194:13 196:20
199:18 200:7
200:16 203:3
211:4,7 212:8
217:19,21
233:9 248:17
251:21 252:4
**testifying**
107:10 236:15
236:18

**testimony**
17:15,19 21:7
24:21 26:6
28:16 29:8
32:9 36:10
49:1,18 50:4
51:4 55:21
59:6 68:10,19
70:22 72:4
74:22 94:8,14
104:22 105:3,9
105:11 106:5
107:4 111:3
112:5 140:18
156:13 190:9
190:11 194:11
194:14,16
195:1 196:12
199:8 200:12
201:6 203:17
209:15 214:2
215:16 226:20
227:14 229:9
233:2 234:12
234:20,20
239:22 246:18
247:7 251:22
259:14 273:10
273:14,18
274:16 277:4,6
277:9 279:6,7
280:6,9,12
**text** 23:20,21
23:22 24:6
74:3,5,19

75:11 76:9,12
76:16 78:7,10
78:14 79:13
80:4 83:20,22
84:19 85:12
133:5,14 134:4
156:5,14
157:21 158:7
242:20 243:2
243:11,17,20
244:6,11,16,20
245:2,4,7
246:3,10,12,18
247:7,21
**texted** 84:13
**texting** 84:22
85:4
**texts** 243:7
**thank** 10:18
16:22 18:6
19:3 26:8
33:16 41:17
62:7 66:8
104:9 131:10
155:7 159:19
160:5 163:10
167:20 176:15
193:4 201:4
238:14 258:5
261:17 262:15
276:1,8,9
**thing** 10:14
16:20 131:11
210:14,15,16
244:18 252:13

Veritext Legal Solutions
www.veritext.com 888-391-3376
Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 332 of 342 PageID #: 4964

| | | | |
|---|---|---|---|
| 265:17 | **thorough** 228:3 | 93:20 94:1 | 270:1,3,13,22 |
| **things** 12:3 | **thought** 22:21 | 96:10,18 97:7 | 274:5,12 276:8 |
| 22:22 51:17 | 49:14 63:13 | 105:17 108:9 | 276:10 |
| 90:15,15,16 | 76:21 105:19 | 108:10 111:21 | **times** 20:1 65:8 |
| 94:18 96:19 | 175:19 242:14 | 111:22 112:3,7 | 125:21 129:2 |
| 98:4 113:20 | 244:20 | 113:3,19,20 | 191:14 195:5 |
| 114:15 127:17 | **thoughtfully** | 117:14 121:6 | **timing** 96:21 |
| 177:21 241:16 | 238:4 | 129:3,18,18,21 | **titles** 220:3 |
| 242:16 248:15 | **thoughts** | 135:19 136:21 | **today** 8:22 |
| 251:1 253:9,20 | 183:16 184:8 | 137:14 138:1 | 17:19 24:22 |
| 255:10 256:21 | **thousands** | 139:9 140:11 | 28:1,15 46:18 |
| **think** 10:16 | 80:12 81:1 | 140:15 141:15 | 67:9 74:22 |
| 18:14 44:15 | **three** 29:3 | 141:19 142:11 | 93:11 94:19 |
| 67:20 70:1,1 | 34:15 39:3,5,9 | 142:22 143:3 | 96:19 103:21 |
| 86:11 87:13 | 39:22 40:8,9 | 144:17 146:15 | 109:18 187:11 |
| 109:7 110:2 | 54:10 55:9,19 | 150:1 152:4 | 200:14 208:3,7 |
| 116:11,12 | 56:5,10 57:4 | 153:4 156:13 | 208:20,21 |
| 134:19 151:1 | 66:20 72:5 | 160:14,17 | 209:15 211:11 |
| 153:1 161:6 | 73:8 116:15 | 163:15 164:15 | 226:21 236:19 |
| 166:4 171:1 | 195:4 211:3 | 165:2,11,14 | 246:11 247:9 |
| 173:11 179:1 | 243:12,13 | 166:3,19 | 248:10 251:3 |
| 184:9 189:5 | **time** 1:13 6:8 | 170:15 181:3,5 | 253:18 254:8 |
| 190:10 193:3 | 21:14 43:8 | 192:11,14 | 256:18 258:14 |
| 218:14,16,19 | 46:14 47:5,11 | 198:11,15 | 260:4 273:10 |
| 222:3 224:18 | 49:21 50:5 | 204:19,19 | **together** 68:5 |
| 237:15 241:21 | 53:8,10,19 | 211:9 212:4,5 | 69:15 151:11 |
| 243:5,12 270:7 | 54:3,4 61:12 | 212:9 216:15 | 271:12,15 |
| **thinking** | 62:12 63:10 | 220:19 221:5 | **told** 34:11,14 |
| 184:11 252:16 | 75:17 77:6,17 | 222:4,8 231:9 | 34:15,18,21 |
| **third** 3:12 48:3 | 78:9,12,15 | 234:9 235:10 | 40:10 50:9,12 |
| 134:14 139:3 | 80:7,11 82:2 | 235:12 238:15 | 56:6 111:15 |
| 155:11 187:16 | 83:7,10 88:10 | 238:18 250:19 | 197:21 228:16 |
| **thirty** 278:17 | 88:13 89:10,16 | 256:5 257:4 | 237:15,19 |
| **thomas** 4:3 7:1 | 89:20 90:9,20 | 258:5 264:6 | 257:16 |
| | 91:6,18,22 | 266:17 269:19 | |

tomorrow
  21:20 153:10
  182:18 203:7
  251:7 252:5
  255:3,5 258:14
  276:6
tomorrow's
  252:6,8 276:3
tone  57:9
tongring  1:11
  5:6,8 6:14 7:15
  8:14,21 9:10
  14:3 16:18
  26:1 29:19
  43:1 123:18
  158:14 160:20
  167:12 171:20
  187:4 193:8
  208:9 232:6
  239:8 251:6
  252:2 254:2
  276:13 278:8
  279:4,9 280:4
  280:13 281:20
tongring's
  250:6 276:7
tonight  79:15
took  24:7,15
  70:17 146:19
  164:10 171:3
  199:17 211:4
  216:9
top  14:2 89:8
  162:5 165:20
  170:8 209:2,2

212:1,17
232:19
topic  29:15
  137:8 192:22
  193:6,10,13,18
  193:22 194:11
  194:14,16
  195:1 197:13
  199:8,12,18
  200:6,7,17
  203:10,16,18
  204:4 209:16
  210:15 215:5
  215:12,17,20
  216:3,5 217:10
  217:19 218:7
  219:1,2,6,15
  239:5,6,10,11
  242:18 246:21
  247:11 252:11
  252:12
topics  17:20
  22:11,13,18,21
  23:1 33:11,15
  60:22 61:12,13
  61:17 62:11
  63:9,18 78:1
  115:7 122:6
  178:8 188:15
  199:2,22
  201:12 202:1
  202:19 203:1
  215:9,17
  216:17 229:8
  251:21 252:5,9

254:3
total  22:7 52:20
  116:4,11,12,12
  116:15 117:10
  119:16 198:19
  199:18
totality  56:18
totally  11:8
touch  30:13
touching
  187:18
tpmblaw.com
  3:22
trail  197:15,16
trained  152:21
transcribed
  279:7
transcript
  278:10,11
  279:5,12 280:5
  280:11,17
transmitted
  269:7,9
transmitting
  269:11
travel  258:13
treat  253:18
treated  253:17
tricky  21:22
tried  195:6,8
  196:1 215:9
  251:22 253:18
true  35:22
  61:16,16 71:15
  118:20 135:12

136:3 139:4
140:3,5,6
142:16 203:22
223:7,11,13
230:20 249:19
256:6 260:20
277:9
trustee  87:12
trustees  88:12
truth  141:15
  151:8 237:22
truthful  47:16
  70:12
truthfully
  28:21 237:11
try  74:8 104:6
  195:3 255:14
  255:18,22
  256:10 257:6
trying  24:16
  68:11 86:11
  151:5 162:12
  208:17 218:14
  223:11 262:10
turn  25:13
  132:18 192:20
  192:21
turned  153:3
twelve  118:17
twice  269:10
two  21:22 22:3
  33:19 37:8
  56:9 57:22
  66:1,20 72:6,7
  73:7 106:11,12

Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 334 of 342 PageID #: 4966

106:14 107:10
110:21 128:2
128:22 129:1
129:10 132:4
132:15 134:16
163:1 171:16
243:10 250:17
**type** 109:4
**types** 109:1
**typewriting**
277:8
**typically** 61:13
204:14 242:12
**typos** 241:16

**u**

**uh** 59:14 76:15
76:22 77:5
92:2 120:4
127:18 134:9
134:18,22
169:4,20 172:7
183:7 209:8
224:14 225:12
234:17 262:18
264:16
**ultimate** 88:5
98:13
**ultimately** 98:4
112:22
**un** 135:3,5
136:7,11
139:14 140:19
**unable** 216:5
**unavailable**
195:5

**under** 71:13,13
103:17 105:10
105:11 138:10
228:7 236:15
267:6,14 277:8
**understand**
12:11 29:11
35:11,13 44:4
55:15 64:5,6,9
64:13,20,21
65:4 77:11
128:7 181:14
182:13,19,19
184:5 185:14
193:20 223:15
230:17 244:5
246:17 253:12
256:3 262:19
262:21 268:14
271:3
**understanding**
39:17 70:20
109:17 231:19
268:7
**understood**
39:19 40:18
111:21 117:2
**undertaking**
70:21
**undisputed**
56:10
**uniform** 186:16
**uniformly**
186:6

**unilateral**
115:12 116:1
203:4
**unilaterally**
257:7 258:15
**unit** 6:12
**united** 1:1 6:16
71:13
**university** 13:9
13:12
**unnecessary**
209:18 253:21
**unqualified**
45:8
**unquote** 33:5
36:6 37:9 55:9
58:1 63:2 65:9
68:2 71:21
72:11 92:20
154:11 157:5
157:15 158:5
273:4
**unsigned** 265:2
**untrue** 230:19
233:17 256:8
**unusual** 83:18
187:16
**unwelcome**
187:18
**updated** 148:5
148:6
**updates** 205:8
**uploaded** 24:9
**use** 44:19 45:1
45:2,2

**used** 29:4 64:4
160:10
**using** 57:1
120:7
**utilize** 206:10
230:13

**v**

**v** 278:6 279:3
280:3
**validation** 55:2
**various** 49:10
49:12 204:18
**veracity** 48:6
49:11
**verified** 70:12
**veritext** 1:14,20
7:2,4 278:1,7
281:1
**veritext.com.**
278:16
**version** 127:20
128:11,18
130:2,5,8,10,20
131:15,19
135:5 136:7,11
140:19 141:5
158:6 185:8
234:18
**versus** 6:15
**vice** 15:20,22
16:5 19:11
220:8
**victims** 274:10
**video** 6:9 20:13
256:1,11

Case 3:23-cv-00243 Document 219-12 Filed 07/03/24 Page 335 of 342 PageID #: 4967

| | | | |
|---|---|---|---|
| 269:18 | **waived** 278:18 | 251:18 257:22 | 206:21 207:13 |
| **videoconfere...** | **want** 8:10 11:7 | **wants** 74:9 | 208:20,21 |
| 20:10 | 14:19 16:16 | 258:8 | 209:6 210:17 |
| **videographer** | 59:2,5 69:22 | **washington** | 211:6,17,22 |
| 4:3 6:3 7:3 | 80:6 82:12,13 | 1:15,21 6:21 | 212:17 213:1,9 |
| 93:20 94:1 | 84:18 94:6 | 191:5 | 213:14 214:11 |
| 133:17 155:22 | 102:19 105:19 | **waste** 264:6 | 214:16 226:15 |
| 165:11,14 | 127:16 139:2 | **way** 10:14 12:7 | 226:16,18,21 |
| 238:15,18 | 162:5 165:18 | 12:13 25:21 | 227:1,8,21 |
| 276:10 | 171:9 178:2,9 | 32:8 55:5 | 230:14 231:4 |
| **videotaped** | 181:2 191:17 | 70:11 113:19 | 232:4,18 |
| 1:10 276:12 | 193:13 194:11 | 205:20 211:15 | 233:22 234:8 |
| 277:3 | 197:3,4 198:15 | 223:19 250:8 | 235:14 236:5,8 |
| **view** 26:17 | 203:6,14,14 | 253:1 256:22 | 236:21 237:3 |
| 147:14 179:6,7 | 208:1 214:1 | 257:6,14 | **websites** 234:7 |
| 180:17,19 | 228:18 233:12 | 275:17 | **wednesday** |
| 212:22 221:9 | 233:14,15 | **ways** 175:2 | 258:3 |
| 256:15 | 234:2 236:10 | **we've** 73:12 | **week** 196:12,13 |
| **viewer** 212:13 | 236:12,14 | 84:10 96:19 | 256:18 258:18 |
| 214:10 | 237:13 238:2 | 98:12 115:10 | **weight** 38:10 |
| **views** 153:7 | 240:14 247:20 | 156:5 158:11 | 38:17 |
| 198:20 199:19 | 247:22 248:16 | 165:8 216:11 | **welcome** 94:5 |
| **virginia** 2:19 | 255:22 256:2 | 250:19 262:3 | 238:10,13 |
| **virtual** 129:19 | 257:11 258:6,9 | **web** 146:18 | **went** 101:16 |
| **virtue** 96:20 | 258:12 259:8 | 204:2 229:19 | 140:19 153:16 |
| 218:13 | 259:13 260:3 | **website** 5:15,16 | 167:8 168:1 |
| **visited** 206:21 | 263:18 272:19 | 145:17 146:1,4 | 186:4 204:15 |
| **visitor** 209:6 | **wanted** 16:15 | 146:6,7,8,20 | 205:1,22 |
| **vs** 1:5 | 22:1 24:3 | 147:2,12,16 | 274:20 |
| **w** | 67:18 79:14 | 198:21 200:10 | **west** 2:19 |
| **w** 122:14 | 80:1 82:16 | 201:17 204:8 | 122:14 |
| **wait** 161:3,16 | 116:1 147:11 | 204:16,17,21 | **wester** 122:15 |
| 251:19 | 161:12 182:18 | 205:1,3,8,11,12 | 158:20 159:8,9 |
| **waiting** 167:12 | 182:19 195:14 | 205:15,22 | **whatsoever** |
| | 197:16 206:9 | 206:5,10,16,20 | 59:19 106:1 |

| | | | |
|---|---|---|---|
| **whispering** 6:6 | 74:10 77:11 | 150:22 151:19 | 222:15 226:11 |
| **wife** 185:13 | 78:3 79:5,8,10 | 152:9 153:12 | 227:5,16 |
| **willing** 219:7 | 80:19 81:8,18 | 154:7,15 155:7 | 228:20 229:11 |
| 248:7,7 252:4 | 82:7,17 83:2 | 157:1,9,18 | 233:13,15 |
| 256:10 | 84:4,18 85:9 | 159:16,19 | 234:19 235:6 |
| **wish** 253:13,17 | 88:16,19,21 | 160:7 161:6,21 | 235:19 240:7 |
| **withdraw** | 89:1,4 90:5 | 162:2,9,20 | 244:2 245:22 |
| 228:19 | 92:11 93:1 | 163:6,9,11 | 247:1,6,17 |
| **witness** 8:11,15 | 96:14 97:3,12 | 164:20 165:7 | 248:9,16 258:8 |
| 9:18,20 10:3,5 | 98:22 99:16,21 | 166:12,22 | 258:22 259:5 |
| 11:10 16:22 | 100:10 101:15 | 170:4 171:1 | 263:13,19,21 |
| 18:6 19:3 | 102:3,19 105:2 | 173:9,13 | 264:2,4,7 |
| 20:19 22:4,6 | 106:7,18 107:6 | 174:10 175:13 | 271:10 275:8 |
| 24:4 26:8 | 108:2,6,17 | 176:3,15 177:2 | 277:4,6,10 |
| 28:11,20 29:10 | 109:1,22 110:8 | 177:21 178:4 | 278:8,10 279:1 |
| 31:14,17,19,21 | 110:15 111:5 | 178:17 179:8 | 279:4,11 280:1 |
| 33:16 34:10 | 111:15 112:7 | 179:11,11,14 | 280:4,15 |
| 35:8,20 36:14 | 112:21 113:8 | 179:14,15,19 | **witnesses** 30:20 |
| 37:14 38:4,16 | 113:16 114:2,9 | 180:5,20 | 34:15 39:3,6,9 |
| 39:16 40:5,13 | 114:22 116:10 | 181:12 184:20 | 39:22 40:8,9 |
| 41:3,12 43:14 | 116:18 117:9 | 185:18 186:3 | 54:11 55:10,19 |
| 44:4 45:5,14 | 117:19 118:14 | 186:15 188:19 | 56:1,5,10 57:4 |
| 46:14 47:5,22 | 119:3 120:4,14 | 189:14 190:20 | 64:11 174:10 |
| 48:15 49:9 | 121:10 122:3 | 199:5,15 200:4 | 178:9 |
| 50:4 51:6 | 123:20 124:12 | 201:1,3,15 | **witness'** 278:13 |
| 52:13 53:6 | 130:5,15 131:4 | 202:4,13 | ████████  ██████ |
| 54:5,18 55:2 | 131:7,9,13 | 203:22 206:15 | ██████████████ |
| 55:15 56:16 | 132:10 135:10 | 207:8,11 | ██████████████ |
| 57:10,14 58:6 | 138:7 139:20 | 210:21 213:7 | ██████████████ |
| 58:14 60:16 | 141:1 142:7 | 214:21 215:2 | ██████████████ |
| 61:6 62:2,18 | 143:19 144:20 | 215:11,20 | ██████████████ |
| 63:8 64:2 65:4 | 145:20,22 | 216:7,9,21 | ██████████████ |
| 65:16 66:7 | 147:7,20 | 217:5,15 | ████████████ |
| 68:11,22 69:11 | 148:19 149:12 | 218:12 219:3,9 | ████████████ |
| 72:17 73:4,21 | 149:22 150:20 | 219:19,21 | ████████████ |



woman   271:1
wood   18:14,16
18:22 19:18
20:4 30:12
31:8 86:17
112:22 122:21

122:22 124:2
124:13 132:3
172:10 185:7,8
187:3 188:11
243:14 245:14
245:14 264:20
265:4,10
woodstock
164:7 184:14
word   27:22
28:3 29:4,5
38:17 44:8
83:12 103:22
104:11,18
175:9 241:22
248:14 260:16
260:22
words   27:20
28:15 29:2
68:6,15 69:2
93:5 137:4
138:15 142:20
163:18 175:8
180:11
work   64:7
82:13 83:16
85:10 107:12
107:13,15
108:10 109:12
110:4,11 111:9
117:3,10 120:9
121:13 220:13
223:6 254:21
255:18

worked   204:16
working   82:3
221:22
works   251:9
254:18
world   153:20
worry   53:15
write   125:8
155:10 169:19
242:12
writes   156:16
170:9
writing   83:13
140:10 164:14
189:2
written   82:15
123:1 136:22
137:4 139:5
184:4 258:4
wrong   20:20
44:16,21 49:14
76:5,8 87:11
wrote   125:10
126:1,2,10,11
126:14,15,21
126:22 127:6,9
129:22 138:10
140:12 141:12
141:16 153:15
163:18 166:13

**y**

yeah   11:21
28:11 44:17
58:17 66:7,9
85:16 95:9

111:5,16
119:14 125:9
131:13 133:19
134:13 136:1
144:10 151:17
151:19 155:1,3
158:13 160:18
161:7 162:2,14
163:6 167:10
171:1 201:3
215:1 221:18
224:10 243:1
258:22 263:21
264:2,3,6,6,6
265:8 270:7
275:7
year   13:14 52:7
52:22 53:15,20
55:1 82:1,17
86:19 87:18
89:11 95:2
117:15 118:3,9
118:21 119:18
120:9 121:5,13
121:18,22
152:1
years   14:12
33:18 40:20
56:2 57:22
93:6 106:11,15
107:2,10
110:21 215:7
217:18
yep   161:21

Veritext Legal Solutions
www.veritext.com          888-391-3376
Case 3:23-cv-00243   Document 219-12   Filed 07/03/24   Page 338 of 342 PageID #: 4970

**yesterday**
  19:17,19
**york**  3:14,14
  191:14

**z**

**zoom**  2:5 4:4
  42:21 43:3
  129:19 133:12
  145:6 152:11
  155:18 160:9
  160:13 163:4
  167:14,17
  269:18 270:2,6

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.