# EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY M. HUNT,                    )
    Plaintiff,                 )
                               )
    -vs-                       ) C.A. NO.
                               )
                               ) 3:23-cv-00243
SOUTHERN BAPTIST CONVENTION;   )
GUIDEPOST SOLUTIONS LLC; and   )
EXECUTIVE COMMITTEE OF THE     )
SOUTHERN BAPTIST CONVENTION,   )
    Defendants.                )


       Videotaped deposition of JANET HUNT,
taken on behalf of the Defendants, pursuant to the
stipulations contained herein, reading and signing
of the deposition being reserved, in accordance
with the Federal Rules of Civil Procedure, before
Theresa B. Kramer, Certified Court Reporter, at
Bradley Arant Boult Cummings, LLP, Promenade Tower,
1230 Peachtree Street, N.E., Atlanta, Georgia,
30309, on the 19th day of April, 2024, commencing
at the hour of 11:02 a.m.

_____

```
 1              APPEARANCES OF COUNSEL
    On behalf of the Plaintiff:
 2
        ROBERT D. MACGILL, ESQ.
 3      PATRICK J. SANDERS, ESQ.
        ELIZABETH L. MERRITT, ESQ. (via Zoom)
 4      MacGill PC
        156 E. Market Street
 5      Suite 1200
        Indianapolis, Indiana  46204
 6      T:  (317) 721-1253
        E:   robert.macgill@macgilllaw.com
 7           patrick.sanders@macgilllaw.com
 8           elizabeth.merritt@macgilllaw.com
 9
10  On behalf of Defendant GUIDEPOST SOLUTIONS LLC:
11      TERENCE W. MCCORMICK, ESQ.
        SCOTT A. KLEIN, ESQ
12      ALEX OTCHY, ESQ. (via Zoom)
        Mintz & Gold LLP
13      600 Third Avenue
        25th Floor
14      New York, New York  10016
        T:  (212) 696-4848
15      E:  mccormick@mintzandgold.com
             klein@mintzandgold.com
16           otchy@mintzandgold.com
17
        KATHERINE R. KLEIN, ESQ. (via Zoom)
18      Riley & Jacobson, PLC
        1906 West End Avenue
19      Nashville, Tennessee  37203
        T:  (615) 320-3700
20      E:  kklein@rjfirm.com
21
22
23
24
25
```

```
 1          APPEARANCES OF COUNSEL (continued)
 2   On behalf of Defendant EXECUTIVE COMMITTEE OF THE
     SOUTHERN BAPTIST CONVENTION:
 3
          GRETCHEN M. CALLAS, ESQ. (pro hac vice)
 4        JON L. ANDERSON, ESQ. (via Zoom)
          Jackson Kelly PLLC
 5        500 Lee Street East
          Suite 1600
 6        Charleston, West Virginia  25322
          T:  (304) 340-1000
 7        E:  gcallas@jacksonkelly.com
               jlanderson@jacksonkelly.com
 8
 9        SCARLETT SINGLETON NOKES, ESQ.
          Bradley Arant Boult Cummings LLP
10        1221 Broadway
          Suite 2400
11        Nashville, Tennessee  37203
          T:  (615) 244-3556
12        E:  snokes@bradley.com
13
          GENE R. BESEN, ESQ. (pro hac vice)
14        Bradley Arant Boult Cummings LLP
          1445 Ross Avenue
15        Suite 3600
          Dallas, Texas  75202
16        T:  (214) 257-9800
          E:  gbesen@bradley.com
17
18        MATTHEW C. PIETSCH, ESQ. (via Zoom)
          Taylor, Pique, Marchetti & Blair, PLLC
19        2908 Poston Avenue
          Nashville, Tennessee  37203
20        T:  (615) 320-3225
          E:  matt@tpmblaw.com
21
22   Also Present:
23        Josh Coleman, Videographer
          Johnny Hunt
24
25
```

**MAGNA**
LEGAL SERVICES

```
 1                    INDEX TO EXAMINATION
 2   Examination by Mr. McCormick                        5
     Examination by Ms. Callas                          32
 3
 4
 5                    INDEX TO EXHIBITS
 6   (none marked)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

MAGNA
LEGAL SERVICES

1      VIDEOGRAPHER:  We are now on the record.

2      This begins videotape No. 1 in the

3 deposition of Janet Hunt in the matter of Johnny M.

4 Hunt versus Southern Baptist Convention, Guidepost

5 Solutions, et al., in the United States District

6 Court for the Middle District of Tennessee,

7 Nashville Division.

8      Today's date is April 19th, 2024 and the

9 time is approximately 11:02 a.m.

10      This deposition is being taken at Bradley

11 Arant Boult Cumming at the request of Bradley Arant

12 Boult Cumming.  The videographer is Josh Coleman of

13 Magna Legal Services.  And the court reporter is

14 Theresa Kramer of Magna Legal Services.

15      Counsel will be noted on the stenographic

16 rec -- record.

17      Will the court reporter please swear in

18 the witness.

19                 JANET HUNT,

20 having been called as a witness, was sworn and

21 testified as follows:

22                 CROSS-EXAMINATION

23 BY MR. MCCORMICK:

24      Q.   Hello again, Mrs. Hunt.  I am still

25 Terence McCormick of the firm of Mintz & Gold and I

1   still represent Guidepost Solutions.

2          Earlier this morning I went through all

3   the, you know, rules of the road regarding a

4   deposition I -- when I took your deposition of the

5   30(b)(6) for Johnny Hunt Ministries.

6          I'm sure you recall them all.

7   A.   Yes, sir.

8   Q.   Just -- just by way of reminder, again,

9   this is testimony in a conference room, but it's

10  also testimony that you have a legal obligation

11  because you're under oath to testify truthfully and

12  fully just as though we were in a courtroom and in

13  a very real sense, we are in a courtroom.

14  A.   Yes, sir.

15  Q.   You understand.  Okay.

16         Mrs. Hunt, could you please just tell me

17  something about yourself.  Background, where did

18  you go to school?

19  A.   I was born in Wilmington, North Carolina.

20  I went to John T. Hoggard High School.  I did not

21  pursue any education beyond high school.

22         I was married in 1970 as a junior in high

23  school.  Went on to complete high school in the

24  National Honor Society which I'm very proud of

25  after being a married woman, a married child in

1  high school.

2          I met the love of my life in early age so

3  we married early.

4          And I am a very proud wife and mother of

5  two daughters, four grandchildren, and one great

6  grandchild and a great grandchild on the way.

7          Q.  Congratulations.

8          A.  Thank you.

9          Q.  Apart from high school education, did you

10  have any kind of professional education?

11         A.  No, not exactly.

12         My husband -- my -- my father was a

13  public accountant for 50 years and I worked

14  alongside him in his -- his accounting firm, but I

15  didn't have any other formal education.

16         Q.  My dad was -- was an accountant too so

17  I'm sure you learned a lot from him.

18         A.  April 15th is a nightmare.

19         Q.  Yeah.  So tell me about -- after you got

20  married, you became a homemaker.  You also had a

21  role in Mr. Hunt's ministry, did you not?

22         A.  I was the women's ministry director at

23  our church for 17 years.

24         Q.  And what did that entail?

25         A.  Planning events for women once a month.

1      Q.   Uh-huh.  And did that have financial

2   responsibilities as well?

3      A.   Eventually I was given a little sti- --

4   stipend.

5      Q.   You have been described at various points

6   including I believe by your husband as the

7   bookkeeper.

8      A.   Yes.

9      Q.   Did you ever study accounting?

10      A.   Just in high school.

11      Q.   High school.  You're familiar with the

12   double-sided ledger system of debits and credits?

13      A.   Yes, sir.

14      Q.   And accounting in terms of, you know,

15   balance sheets, asset, you know, profit and loss

16   statements and so forth?

17      A.   Yes, sir.

18      Q.   Right.

19           In addition to your role that you just

20   described, you also had a role, did you not, in

21   connection with certain businesses associated with

22   your husband's ministry; is that right?

23      A.   I don't follow you.

24      Q.   Well, I just took your deposition in

25   connection with Johnny Hunt Ministries; right?

```
1         A.    Yes.

2         Q.    You had a role in -- in that

3    organization?

4         A.    Yes.

5         Q.    Yes.  Okay.

6              And I'm not going to go over what you

7    already testified to upon the admonishment of your

8    counsel.

9              Were there other such businesses that you

10   were associated with?

11        A.    I worked for a law firm for a short time.

12        Q.    Oh, really?  What kind of law?

13        A.    Real estate.

14        Q.    Real estate law.  What did you do for

15   them?

16        A.    Just secretarial work.

17        Q.    That wasn't associated with Johnny Hunt's

18   Ministries, though?

19        A.    No, it wasn't.

20        Q.    Were you associated with an entity called

21   3H Publishers?

22        A.    Yes.

23        Q.    All right.  What was your role?

24        A.    Bookkeeper.  That's about it.

25        Q.    Were you an officer?
```

```
 1          A.   I don't know that I was an officer.  I
 2    could have been.  I don't remember.
 3          Q.   Did you draw a salary?
 4          A.   I don't think so.
 5          Q.   No?  You did it for free?
 6          A.   I -- probably, like now.
 7          Q.   When did you do that?
 8          A.   From the beginning of the organization.
 9          Q.   Uh-huh.
10          A.   Until it ended.
11          Q.   Which was when?
12          A.   I don't remember.
13          Q.   Okay.  Were there employees there?
14          A.   No.
15          Q.   No.
16          A.   Wait a minute.  There may have been
17    employees early, early on.
18          Q.   And who might they have been?
19          A.   Do you have that information?
20          Q.   I'm asking you.
21          A.   I don't remember.  I don't remember.
22          Q.   This is -- this is the one room where I
23    get to ask the questions.
24          A.   I get it.  I just don't remember.
25          Q.   Family members?
```

MAGNA

LEGAL SERVICES

1      A.   Probably 'cause we were a family

2  organization --

3      Q.   Yeah.

4      A.   -- at that time.

5      Q.   3H Publishers was?

6      A.   It was, yes.

7      Q.   And what family members; do you remember?

8      A.   My daughter -- it -- it involved -- or am

9  I thinking about It's a New Day?  My daughter --

10  one of my daughters probably worked there making

11  tapes.

12      Q.   Uh-huh.  Was she -- was she paid a

13  salary?

14      A.   I don't know.  I don't remember.

15      Q.   Okay.  What about Timothy+Barnabas?

16      A.   Yes.

17      Q.   Okay.  You worked for them?

18      A.   Unofficially.

19      Q.   Unofficially?

20      A.   Well, at a time I did the bookkeeping.

21      Q.   Okay.

22      A.   And then we hired a CEO who took over

23  everything.

24      Q.   Uh-huh.  Did you draw a salary from

25  Timothy+Barnabas?

```
 1          A.    No.  I wasn't getting --
 2          Q.    Did you receive any income --
 3          A.    -- a salary --
 4          Q.    -- from Timothy+Barnabas?
 5          A.    I think I did receive an income at one
 6   point for something, but I don't remember --
 7          Q.    10 --
 8          A.    -- what it was for --
 9          Q.    1099?
10          A.    Yes.
11          Q.    Yeah.  And 3H Publishers, did you get a
12   1099 from them?
13          A.    I don't believe so.
14          Q.    No?  Okay.
15                What about New Song Ministries?
16          A.    No.
17          Q.    No?
18                Xtreme Conferences?
19          A.    No.
20          Q.    3H Travel?
21          A.    No.
22          Q.    It's a New Day?
23          A.    No.
24          Q.    No.  Any others?
25          A.    Not that I recall.
```

MAGNA
LEGAL SERVICES

1     Q.   Okay.  I want to be very clear, I do not

2  wish you to and I'm not asking you to divulge any

3  communications that took place simply between

4  yourself and Mr. Hunt.  I don't want that.  I'm not

5  entitled to it.  If I stray into that, I trust that

6  Mr. McGill will interject.  I will not take that

7  personally.

8         I also don't want to invade the substance

9  of your communications, you know, with a clergy

10  person or with a therapist.  Okay?  But to the

11  extent that you have knowledge that's your own that

12  is not defined entirely by those communications,

13  that's what my questions are going to.

14     A.   (Nods head up and down.)  Okay.

15     Q.   You're aware, as I said earlier, that

16  this lawsuit arises out of an encounter between

17  Mr. Hunt and another woman, who just for purposes

18  of privacy we are referring to now as John Doe --

19  Jane Doe.  Yes?

20     A.   ████████  ████████

21     Q.   Okay.  All right.  Has been named.  Okay.

22  I'm referring to this person as Jane Doe

23  henceforth --

24         MR. MACGILL:  We'll agree.  When he

25  refers to Jane Doe, he is referring to ████████

1      ██████████   So if you would understand that.  We're

2    getting close to an agreement I think on this so

3    just understand that.

4              THE WITNESS:  Okay.

5              MR. KLEIN:  Thank you.

6    BY MR. MCCORMICK:

7        Q.   If -- if for no other reason to avoid

8    having to have some poor paralegal at my firm black

9    out her name in the transcript of this deposition a

10   hundred times, I'm going to try to say Jane Doe and

11   I hope you understand who I'm referring to.  And

12   when I say Jane Doe's husband, we know who that

13   person is, yes?

14       A.   ████████  █████████

15       Q.   All right.  You did it.  There we go.

16   All right.

17              There was an encounter.  Do you remember

18   when it took place?

19       A.   July 25th, 2010.

20       Q.   A Sunday?

21       A.   Yes.

22       Q.   Yes.  All right.  When did you first

23   learn that Jane Doe was where she was?  Well, let

24   me back -- withdrawn.

25              Where did it take place?

1       A.    Panama City Beach.

2       Q.    And it took place in a condo on the

3  beach?

4       A.    Yes.

5       Q.    Yes.

6             MR. MACGILL:  And could we agree that

7  we're going to allow her to testify but this is not

8  a waiver of the spousal privilege?  We just don't

9  want to invite -- we don't want to fight on every

10 question here this morning.  May we agree to the

11 extent we let her answer, we're not waiving the

12 privilege?

13            MR. MCCORMICK:  To the extent it has not

14 already been waived, yes, and we'll get to that if

15 we have to.  Hopefully we won't have to.  Okay.

16            MR. MACGILL:  But her answers today will

17 not be a waiver.  We'll allow this to go forward on

18 a nonwaiver basis.  Her answers today.

19            MR. MCCORMICK:  I don't know that that's

20 necessarily possible, Counsel, because if this is

21 testimony in open court, and an answer is given and

22 you haven't objected on basis of privilege, I -- I

23 don't see how you can say it hasn't been waived.

24            MR. MACGILL:  What I'm trying to do is

25 let you ask your questions, get the answers that

MAGNA
LEGAL SERVICES

1    you want without shutting down entirely.

2            Her knowledge has come from her husband

3    and so we'd like to have the deposition proceed

4    without a -- you -- without us waiving the rights.

5    If you want us to instruct her not to answer on

6    her -- all communications, we'll do it.  But I

7    don't think that's a good idea.

8            MR. MCCORMICK:  I think that's why God

9    made lawyers and that's why you're here.  If I ask

10   a question that elicits a communication between her

11   and Mr. Hunt --

12           MR. MACGILL:  Okay.  Then we'll object.

13           MR. MCCORMICK:  -- then I will -- I will

14   respect the objection.

15           MR. MACGILL:   All right.

16           MR. MCCORMICK:  Okay?

17           MR. MACGILL:  All right.

18           MR. MCCORMICK:  All right.

19           MR. MACGILL:  We've offered a way to

20   facilitate this and --

21           MR. MCCORMICK:  I --

22           MR. MACGILL:  -- it's been rejected and

23   so we'll instruct her not to answer.

24           MR. MCCORMICK:  It has been.  It has

25   been.  And I thank you, Counsel, for making that

1  clear on the record.

2         And, again, I am not trying to pull a

3  fast one and -- and I trust that Mr. McGill will

4  object as appropriate.  Okay.

5  BY MR. MCCORMICK:

6      Q.  So Panama City Beach, Florida, Sunday,

7  July 25, 2010.

8      A.  (Nods head up and down.)

9      Q.  You became aware that Jane Doe was

10  present there at that time?

11      A.  No.  I became aware that she was there on

12  Monday, the 26th of July.

13      Q.  I see.  Very well.

14         When did you arrive at Panama City Beach

15  at the --

16      A.  It would have either been the end of June

17  or it could have been the first of June.  I don't

18  know 'cause we spend most of the summer there.

19      Q.  Got it.

20         So you had already been there when Jane

21  Doe arrived?

22      A.  Yes.

23      Q.  For a while?

24      A.  Yes.

25      Q.  Okay.  Who else was there?

MAGNA
LEGAL SERVICES

1        A.    My daughter and her husband.

2        Q.    You have two daughters; right?

3        A.    My daughter Deanna.

4        Q.    Deanna.

5        A.    Uh-huh.

6        Q.    And -- and Mr. Hunt was there as well?

7        A.    Yes.

8        Q.    Okay.  And, again, for -- for the

9   summertime?

10       A.    Yes.

11       Q.    Okay.  You learned on -- on Monday, the

12  26th, 2010.  How did you learn?

13       A.    I went down to the beach and she was

14  there laying there in her little white bikini.  We

15  were all facing the ocean this way (gesturing) as

16  you sit on the beach.  And I go down there and

17  ███████ is laying this way, sideways in front of our

18  beach chairs (gesturing).  And she knew they were

19  our beach chairs because our name is on the back of

20  the chairs.

21              So she was laying in a little white

22  bikini right there in front of us parallel on the

23  beach all day without moving, without -- other than

24  flipping her hair once in a while.  Didn't get

25  water.  Didn't put on lotion.  She had her top

1    undone laying there on her stomach.  No

2    conversation for the entire day.

3        Q.   You had no conversation with Jane Doe

4    during the entirety while she was there --

5        A.   None.

6        Q.   -- on the beach?

7        A.   None.

8        Q.   Did your daughter?

9        A.   No.  Nobody did.

10       Q.   How far away were you from one another?

11       A.   Probably from me to you.

12       Q.   Okay.  We heard some testimony yesterday

13   from Mr. Hunt that you had confronted him about a

14   text message.  Do you recall that?

15       A.   I do.

16       Q.   All right.  Again, I'm not -- I'm not

17   trying to intercept whatever you said to Mr. Hunt

18   or vice versa.  How did you come to see the text

19   message?

20       A.   Okay.  We were on the beach on Monday.

21   On Tuesday morning, my husband goes for a run and

22   he leaves his phone.  He doesn't usually leave his

23   phone, but he left his phone behind.

24            So there was a ding on the phone so I

25   looked at it to see if it was something important.

MAGNA
LEGAL SERVICES

1  And in that process I saw there were two text

2  messages from ████ ██████  One of the messages

3  said, can I borrow some salt and pepper?  And his

4  response was, Janet will give it to you.

5          The other text message from her said, can

6  I go on a run with you?  And his response was, not

7  a good idea.

8          So as a result of that, I went next door

9  where she was supposed to be staying, knocked on

10 the door and there was no answer.  So I figured

11 that she had gone for a walk.  So I stood on the

12 balcony where I could see people where they walk

13 where they -- before they come into the building

14 and I could see her coming.  So I stood there and

15 waited for her to come off the elevator.

16          And when she got off the elevator, I said

17 to her, ██████ pack your bags, get off this beach

18 and don't you ever contact my husband again by

19 email, text or phone call.  Do you understand?

20          She said, yes, ma'am.  And that was the

21 last I saw of her.

22      Q.   And you saw the text message popping up

23 with the ding.

24      A.   Yes.

25      Q.   Within your own condo?

MAGNA
LEGAL SERVICES

```
 1        A.    Yes.

 2        Q.    All right.  And where was Johnny at this

 3    point?

 4        A.    He had gone for his walk.

 5        Q.    He was off for his walk.

 6        A.    Yes.

 7        Q.    Okay.  And --

 8        A.    And just so you'll know, I knew nothing

 9    about the circumstances of which happened on Sunday

10    for me to ask her to leave.  I knew nothing of

11    that.

12        Q.    You were prompted to because you were

13    offended by her presence on the beach?

14        A.    I was offended by her presence, her --

15    her lack of inappropriate -- her lack of

16    appropriateness, and the fact that she had

17    contacted my husband wanting to go for a walk.

18             And another reason I was offended by her

19    is because she had always been the one to reach out

20    to my husband in the past by text messages that I

21    knew about, never her husband contacted Johnny for

22    help.  But she was always the one reaching out to

23    him wanting help for her husband.

24             Well, that offended me because I felt

25    like another woman should not be reaching out to my
```

1    husband for help.  It should have been the husband

2    reaching out to my husband for help and not just

3    her.

4        Q.   Uh-huh.

5        A.   So I never had a gel with her in the

6    beginning because I didn't like the way she carried

7    on with things.

8        Q.   Did you --

9        A.   So I wanted her -- I felt like for -- my

10   job is to protect my husband and I saw her presence

11   as being there being right next door to us, the way

12   she was acting, I said to (indiscernible) this is

13   not a good thing.

14            And this was the last week of our

15   sabbatical and I was not going to put up with her

16   for that week invading my space.

17       Q.   Were you concerned at that time that

18   Mr. Hunt may have been committing adultery?

19       A.   No.

20       Q.   Were you concerned about Mr. Hunt

21   committing infidelity?

22       A.   No.

23       Q.   No?

24       A.   No.  And he didn't commit adultery.

25       Q.   Uh-huh.

1      A.    But, no.  I've never had a concern about
2    him being in -- having infidelity issues.
3      Q.    Before that incident?
4      A.    And still.
5      Q.    When you confronted Jane Doe, did she
6    attempt to defend herself?
7      A.    No.
8      Q.    Did she speak words to you?
9      A.    No.  She said, yes, ma'am.  When I said
10   do you understand, she said, yes, ma'am.  That was
11   all.
12     Q.    That's nothing?  Nothing else?
13     A.    Nothing else.
14     Q.    Did she display any emotion?
15     A.    No.
16     Q.    Did she seem surprised?
17     A.    No.
18     Q.    Did she -- did you read anything on her
19   face to indicate that you thought she knew she had
20   crossed a line?
21     A.    No.
22     Q.    Did you use the word home wrecker?
23     A.    No.
24     Q.    Home breaker or anything like that?
25     A.    No.  I -- I said exactly what I told

1    you --

2         Q.   Did you raise your voice --

3         A.   -- I said to her.  No.  I didn't raise my

4    voice.  I said it very firmly.

5         Q.   You were angry?

6         A.   Of course.

7         Q.   Mrs. Hunt, in the past, have you ever

8    heard of instances where Mr. Hunt had relationships

9    with other women?

10        A.   No.

11        Q.   To your knowledge, was ever there a

12   discussion within First Baptist Church Woodstock

13   about such instances?

14        A.   No.

15        Q.   In your mind, Mrs. Hunt, for a married

16   man to be alone in a condo with a woman who wasn't

17   his wife, in your mind is that wrong?

18        A.   Yes.

19        Q.   Is that a sin?

20        A.   Yes.

21        Q.   For a clergy person would that be a

22   scandal?

23        A.   No.

24        Q.   No?  Why not?

25        A.   I don't see it as a scandal.  A scandal

1   to me seems like something that's ongoing.

2       Q.   Would you consider it scandalous for a

3   clergy person to be in a condominium with a woman

4   who wasn't his wife?

5       A.   No; because it depends on what happens in

6   that room.

7       Q.   Okay.

8       A.   No.

9       Q.   If it were of an intimate nature, would

10   that be improper?

11       A.   It would be improper.

12       Q.   Yeah.  Would it be scandalous?

13       A.   How do you -- how do you define

14   scandalous?

15       Q.   Offensive to the sensibilities of the

16   community.

17       A.   Well, the community doesn't need to know

18   about what happens in private places.

19       Q.   That's another question.  I did not ask

20   that question.

21       My question to you, ma'am, was:  Would it

22   be if known to the community -- and in this case

23   I'm talking about Southern Baptists, a scandal to

24   know that their minister had been alone with a

25   woman who wasn't his wife?

1     A.    I wouldn't call it a scandal.
2     Q.    What would you call it?
3     A.    Unbecoming behavior.
4     Q.    I'll take that.
5           Has the possibility of Mr. Hunt's
6    involvement with a woman other than yourself ever
7    been alluded to at First Baptist Church Woodstock?
8     A.    No.
9     Q.    Not from the pulpit?
10    A.    Not -- no.  You mean --
11    Q.    Well --
12    A.    Repeat that question.
13    Q.    Has the possibility of Mr. Hunt's
14   involvement with another woman ever been alluded to
15   from the pulpit?
16    A.    After the Guidepost report came out, yes.
17    Q.    Reverend Morton?
18    A.    Yes.
19    Q.    Yes.  Okay.
20          Did you make any comments to other
21   people -- no other occasion?
22    A.    I'm sorry.  Repeat.
23    Q.    On no other occasion?  Just Reverend
24   Morton?
25    A.    Yes.  Just him.

1      Q.   Okay.  Did you make any comments to other

2  people who were there in Panama City Beach about

3  Jane Doe's presence other than Mr. Hunt?

4      A.   My daughter and son-in-law.

5      Q.   What did you tell them?

6      A.   Well, we discussed the fact that she was

7  acting very inappropriately and I told them that I

8  had told her to leave.

9      Q.   What did they say?

10     A.   Good.

11     Q.   Did you ever email anybody other than

12  your husband and attorneys in this matter about the

13  Guidepost report?

14     A.   No.

15     Q.   No?

16     A.   I don't believe so.

17     Q.   Text message?

18     A.   About the Guidepost report?  Well, people

19  were sending us text messages of condolences as far

20  as, you know, I read what happened, I'm so sorry.

21  And we was -- I would respond with things like

22  thank you, pray for us.

23     Q.   Uh-huh.

24     A.   Things like that.  But I never would --

25  discussed it by text message or email.

MAGNA
LEGAL SERVICES

1      Q.   Okay.  All right.  What about

2  communications over text message about the

3  encounter with -- with Jane Doe?

4      A.   No.

5      Q.   No?

6      A.   No.

7      Q.   All right.  And just to make sure that

8  this is completely covered and I know I asked you

9  about whether you had heard rumors, but without

10  involving any communications with Mr. Hunt, has he

11  ever committed infidelity in your marriage besides

12  the encounter with Jane Doe?

13      A.   No.

14           MR. MACGILL:  Object to the form of the

15  question.  Move to strike it.

16           MR. MCCORMICK:  All right.  Read back the

17  question.

18           COURT REPORTER:  And just --

19           MR. MACGILL:  It's been answered,

20  Counsel.  You need to move on.

21           MR. MCCORMICK:  No, no, no, no.  No.

22  I --

23           MR. MACGILL:  I've warned you, Counsel,

24  you were making -- you were making -- through your

25  questions, you're making a difficult situation much

MAGNA
LEGAL SERVICES

1   worse for your company.  I'm giving you fair

2   warning.

3           MR. MCCORMICK:  I'm -- I'm really not

4   concerned about that.  What's the basis --

5           MR. MACGILL:  You should be.

6           MR. MCCORMICK:  What's the basis for your

7   motion to strike?

8           MR. MACGILL:  Counsel, you are asking

9   questions that you know have no basis in fact.  You

10  know that.  And I'm -- all I can do is just explain

11  to you that this is prejudicial to your client.

12          MR. MCCORMICK:  You have made a form

13  objection.  I want to know what's the basis of the

14  form objection.

15          MR. MACGILL:  I'm explaining -- I move to

16  strike it.  You have no basis for the claims that

17  you're making.  Your -- the premises --

18          MR. MCCORMICK:  I'm unaware that I've

19  made any claims.

20          MR. MACGILL:  All right.  You -- you go

21  ahead.  Let me just -- let me just say on the

22  record that I just want to emphasize that your

23  conduct is prejudicial to your client and

24  prejudicial to an appropriate proceeding.

25          You may proceed.

MAGNA
LEGAL SERVICES

1  BY MR. MCCORMICK:

2      Q.   Mrs. Hunt, yesterday afternoon we had

3  some testimony from Mr. Hunt that he had a practice

4  of forwarding to you certain emails for you to

5  file.

6      A.   Yes.

7      Q.   You're aware -- is that correct?

8      A.   Yes.

9      Q.   And -- and I just wanted to ask you just

10 something about them.  What was the character of

11 those emails that he filed to you?

12     A.   He sends me all sorts of emails to file.

13 It could be anything.

14     Q.   And to your knowledge, some of them have

15 to do with this lawsuit?

16     A.   Yes.

17     Q.   And could you tell me what -- you know,

18 again without invading attorney-client privilege,

19 what types of emails they -- they are?

20     A.   A lot of -- a lot of law -- lawyer stuff,

21 as far as motions and. . .

22     Q.   So -- so to make this a little easier --

23     A.   Things that don't make much sense to me.

24     Q.   If I -- tell me if I'm translating your

25 answer correctly.  And I'm not trying to place

1 deceptive words in your mouth.

2          Are we talking about -- with regard to

3 the emails you just described, we're talking about

4 emails perhaps that were sent to Mr. Hunt by -- by

5 Mr. McGill's firm --

6     A.   Yes.

7     Q.   -- updating him?

8     A.   Yes.

9     Q.   Attaching copies --

10    A.   Yes.

11    Q.   -- of the magistrate --

12    A.   Yes.

13    Q.   -- judge's order?

14    A.   Yes.

15    Q.   All right.  Not counting those, are there

16 other emails that Mr. Hunt would have forwarded to

17 you that would have been descriptive of the subject

18 matter of this lawsuit?

19    A.   No.

20    Q.   Not with lawyers?

21    A.   No.

22    Q.   Okay.

23          MR. MCCORMICK:  Counsel, I know that we

24 wrapped up the end of yesterday's deposition which

25 Mr. Hunt testified accordingly.  He also testified

1   that, you know, he did have access and control over

2   those emails that are now -- that -- filed by

3   Mrs. Hunt.

4           I would only ask that, you know -- I

5   would reiterate what Mr. Klein said.  We would ask

6   for their production to the extent that they're

7   responsive and producible.

8           And if they're privileged, of course, if

9   you need to update your privilege log, that's

10  perfectly fine.  We would -- we would just simply

11  want to protect the record that we believe we have

12  a right to have them to the extent that Mr. Hunt

13  hasn't already produced them.

14          MR. MACGILL:  Understood.

15          MR. MCCORMICK:  I don't have any further

16  questions at this time.  And I thank you.

17          MS. CALLAS:  I might have a few.  How

18  about I ask a few questions and then we might

19  take a break and then --

20          MR. MACGILL:  Okay.  That's fine.

21              CROSS-EXAMINATION

22  BY MS. CALLAS:

23      Q.  So, hi, Mrs. Hunt.  It's Gretchen Callas

24  again.

25          We've talked a little bit about your --

1    your husband's phone in 2010.  Do you recall what

2    kind of phone that was?

3          A.   I'm sorry.  What's the question?

4          Q.   What kind of cell phone he had.

5          A.   Would have been an iPhone.

6          Q.   And you mentioned you heard a bing, so

7    some sort of notification from the phone occurred;

8    is that right?

9          A.   Yes.

10         Q.   And caused you to look at it was --

11         A.   Yes.

12         Q.   Did the phone have any kind of password

13   protection?

14         A.   Probably, but I know that password.

15         Q.   And that would have been my next

16   question.

17         A.   Uh-huh.

18         Q.   So you had access to your husband's phone

19   if you needed?

20         A.   Yes.

21         Q.   You mentioned that Jane Doe had texted

22   your husband prior to this July 27th, 2010; is that

23   right?

24         A.   Yes, ma'am.

25         Q.   And had you personally seen those texts?

MAGNA
LEGAL SERVICES

1      A.   No.

2      Q.   Was this text message that you saw on

3  July 27th then the first text message you actually

4  saw with your eyes between Jane Doe and your

5  husband?

6      A.   Yes, with my eyes.  But he would always

7  tell me though that she had texted him wanting to

8  have dinner or whatever to discuss ███████ problems

9  at church.

10     Q.   Now, Jane Doe and her husband were in

11  Panama City earlier in July; is that correct?

12     A.   They were.  Two weeks before.

13     Q.   And did you and your family spend time

14  with them?

15     A.   No.  I recall that Johnny went out to

16  lunch or something.  I think it was lunch with

17  them.  And then when they came back, they sat out

18  by the pool for a few minutes.  But we had no

19  communication.

20         And I didn't ever want to be around her

21  because I didn't like the way she acted.  So I

22  always chose not to go.

23         I went once with them to dinner and

24  thought I don't like this girl, she doesn't talk to

25  me, she only talks to him, they only talk about

1    church stuff.  So I didn't want to be around her so

2    I didn't go with them to lunch.  I just stayed

3    behind and let them do their business.

4         Q.   Was the dinner you just mentioned in that

5    July 8th --

6         A.   I think it was a lunch.

7         Q.   I thought you said you went to dinner

8    once.

9         A.   Oh, that was way long ago.

10        Q.   Oh, so it was not --

11        A.   I don't remember when, but it wasn't --

12   like probably wasn't even in the same year.

13        Q.   Okay.  After July 27th -- well, maybe

14   even on July 27th, 2010, did you text message with

15   the husband of Jane Doe?

16        A.   No, but I talked to him on the phone

17   because he called me.  He called me asking me why I

18   had asked her to leave the beach.  So I told him.

19             I didn't like the way she presented

20   herself.  It was very inappropriate.  Wasn't a good

21   idea for her to be next door alone.  I didn't like

22   the fact that she had asked Johnny to go for a

23   walk.  And I felt like she didn't have any business

24   being there.  And so I asked her to leave.

25        Q.   So this conversation was on your phone?

MAGNA
LEGAL SERVICES

```
 1        A.    Yes.

 2        Q.    And it occurred on the 27th or --

 3        A.    Let me think.  I -- it -- I'm not sure.

 4   It could have been the 28th.  But it was probably

 5   the 27th.  I'm not positive about that.

 6        Q.    Were there other conversations after that

 7   conversation with the husband of Jane Doe?

 8        A.    I don't believe so.

 9        Q.    No other -- either talking on the phone

10   or text messaging with him?

11        A.    No.

12        Q.    Did he ever --

13              MR. MACGILL:  With him -- and just,

14   Gretchen, you're referring with ████  ████ after

15   July 27th?

16              MS. CALLAS:  Yes.

17              MR. MACGILL:  Okay.  Sorry.  Yeah.

18        A.    No.  I don't think so.  Not that I

19   recall.

20   BY MS. CALLAS:

21        Q.    And that's -- that -- yeah.  If you would

22   like me to clarify I can.

23              So after this first call you had with

24   Jane Doe's husband, did you speak to him either on

25   the phone or through text message or email?
```

1    A.    I think just that one time when he called

2  me.

3    Q.    Now, there was a meeting where Roy

4  Blankenship was present; is that correct?

5    A.    Yes.

6    Q.    And both Jane Doe and her husband were

7  present; is that correct?

8    A.    Yes.  That would have been like in early

9  August I think when we met.

10    Q.    Any other times you recall being in the

11  presence of either Jane Doe or her husband after

12  that meeting with Mr. Blankenship in early

13  August --

14    A.    Not me.  No.

15    Q.    And no text messages between you and Jane

16  Doe --

17    A.    No.

18    Q.    -- after --

19    A.    No.

20        MS. CALLAS:  So why don't we take a

21  five-minute break and maybe we're done.

22        MR. MACGILL:   No problem.

23        VIDEOGRAPHER:  We are now going off the

24  video record.  The time is currently 11:33 a.m.

25        (Off the record; recess.)

MAGNA
LEGAL SERVICES

1          VIDEOGRAPHER:  We are now back on the

2   video record.  The time is currently 11:45 a.m.

3          MR. MCCORMICK:  I don't have any further

4   questions.

5          MS. CALLAS:  Me either.

6          MR. MACGILL:  No questions.  Thank you.

7          COURT REPORTER:  Does your client want to

8   read or waive signature?

9          MR. MACGILL:  Read.

10          COURT REPORTER:  And did you want a copy

11   of her transcript, Mr. MacGill?

12          MR. MACGILL:  Yes.

13          COURT REPORTER:  And, Ms. Callas, did you

14   want a copy of the transcript?

15          MS. CALLAS:  Yes, please.

16          VIDEOGRAPHER:  Okay.  We are now going

17   off the video record.  The time is currently 11:45

18   a.m.

19          (Proceedings concluded at 11:45 a.m.)

20

21

22

23

24

25

MAGNA
LEGAL SERVICES

```
 1                E R R A T A   P A G E
 2

     Pursuant to Rule 30(e) of the Federal Rules of
 3   Civil Procedure and/or Georgia Code Annotated
     9-11-30(e), any  changes in form or substance which
 4   you desire to make to your deposition testimony
     shall be entered upon the deposition with a
 5   statement of the reasons given for making them.
 6   To assist you in making any such corrections,
     please use the form below. If supplemental or
 7   additional pages are necessary, please furnish same
     and attach them to this errata sheet.
 8   I, the undersigned, JANET HUNT, do hereby certify
     that I have read the foregoing deposition and that,
 9   to the best of my knowledge, said deposition is
     true and accurate (with the exceptions of the
10   following corrections below).
11   Page      /Line/   /Change/              /Reason/
12   _____    /____ / _____ /_____
13   _____    /____ / _____ /_____
14   _____    /____ / _____ /_____
15   _____    /____ / _____ /_____
16   _____    /____ / _____ /_____
17   _____    /____ / _____ /_____
18   _____    /____ / _____ /_____
19   _____    /____ / _____ /_____
20   _____    /____ / _____ /_____
21   _____    /____ / _____ /_____
22   _____    /____ / _____ /_____
23   _____    /____ / _____ /_____
24   _____    /____ / _____ /_____
25   _____    /____ / _____ /_____
```

MAGNA
LEGAL SERVICES

```
 1    _____    /_____ / _____ /_____
 2    _____    /_____ / _____ /_____
 3    _____    /_____ / _____ /_____
 4    _____    /_____ / _____ /_____
 5    _____    /_____ / _____ /_____
 6    _____    /_____ / _____ /_____
 7    _____    /_____ / _____ /_____
 8    _____    /_____ / _____ /_____
 9    _____    /_____ / _____ /_____
10    _____    /_____ / _____ /_____
11    _____    /_____ / _____ /_____
12    _____    /_____ / _____ /_____
13    _____    /_____ / _____ /_____
14    _____    /_____ / _____ /_____
15    _____    /_____ / _____ /_____
16    _____    /_____ / _____ /_____
17    _____    /_____ / _____ /_____
18    _____    /_____ / _____ /_____
19
20
21           _____

             JANET HUNT
22           Sworn to and subscribed before me

             _____'
23           Notary Public, this _____day of

             _____, 202_.
24           My commission expires: _____
25
```

```
 1                    DISCLOSURE
 2
 3   Pursuant to Article 10.B of the Rules and
     Regulations of the Board of Court Reporting of the
 4   Judicial Council of Georgia, I make the following
     disclosures:
 5
     I am a Georgia Certified Court Reporter.  I am here
 6   as a representative of Regency-Brentano, Inc.
     I am not disqualified for a relationship of
 7   interest under the provisions of OCGA 9-11-28(c).
 8   Regency-Brentano, Inc. was contacted by the
     offices of Magna Legal Services to provide court
 9   reporting services for this deposition.
10   Regency-Brentano, Inc. will not be taking this
     deposition under any contract that is prohibited by
11   OCGA 15-14-37 (a) and (b).
12   Regency-Brentano, Inc. has no exclusive contract to
     provide reporting services with any party to the
13   case, any counsel in the case, or any reporter or
     reporting agency from whom a referral might have
14   been made to cover this deposition.
15   Regency-Brentano, Inc. will charge its usual and
     customary rates to all parties in the case and a
16   financial discount will not be given to any party
     to this litigation.
17
18   This the 19th day of April, 2024.
19
20
21
22                    _____
                      THERESA B. KRAMER, GA CCR B-1601
23
24
25
```

MAGNA
LEGAL SERVICES

1                     C E R T I F I C A T E

2

3

4              I hereby certify that the foregoing

5    transcript was taken down as stated in the caption,

6    that the witness was first duly sworn, and the

7    questions and answers thereto were reduced to

8    typewriting under my direction; that the foregoing

9    pages 1 through 38 represent a true, correct, and

10   complete transcript of the evidence given upon said

11   hearing, and I further certify that I am not of kin

12   or counsel to the parties in the case; am not in

13   the regular employ of counsel for any of said

14   parties; nor am I in anywise interested in the

15   result of said case.

16              The witness did reserve the right to read

17   and sign the transcript.

18              This, the 25th day of April, 2024.

19

20

21

22

23   *Theresa B. Kramer*
     _____
     THERESA B. KRAMER, GA CCR B-1601

24

25



# Magna
## Key Contacts

**Schedule a Deposition:**
Scheduling@MagnaLS.com | 866-624-6221

**Order a Transcript:**
CustomerService@MagnaLS.com | 866-624-6221

**General Billing Inquiries:**
ARTeam@MagnaLS.com | 866-624-6221

**Scheduling Operations Manager:**
Patricia Gondor (E: PGondor@MagnaLS.com | C: 215-221-9566)

**Customer Care:**
Cari Hartley (E: CHartley@MagnaLS.com | C: 843-814-0841)

**Director of Production Services:**
Ron Hickman (E:RHickman@MagnaLS.com | C: 215-982-0810)

**National Director of Discovery Support Services:**
Carmella Mazza (E: CMazza@MagnaLS.com | C: 856-495-1920)

**Billing Manager:**
Maria Capetola (E: MCapetola@MagnaLS.com | C: 215-292-9603)

**Director of Sales Operations:**
Kristina Moukina (E: KMoukina@MagnaLS.com | C: 215-796-5028)

# MAGNA
**LEGAL SERVICES**

**A**

access
32:1 33:18
accountant
7:13,16
accounting
7:14 8:9,14
accurate
39:9
acted
34:21
acting
22:12 27:7
addition
8:19
additional
39:7
admonishment
9:7
adultery
22:18,24
afternoon
30:2
age
7:2
agency
41:13
ago
35:9
agree
13:24 15:6,10
agreement
14:2
ahead
29:21
al
5:5
ALEX
2:12
allow
15:7,17
alluded

26:7,14
alongside
7:14
ANDERSON
3:4
and/or
39:3
angry
24:5
Annotated
39:3
answer
15:11,21 16:5,23
  20:10 30:25
answered
28:19
answers
15:16,18,25 42:7
anybody
27:11
anywise
42:14
Apart
7:9
APPEARANCES
2:1 3:1
appropriate
17:4 29:24
appropriateness
21:16
approximately
5:9
April
1:19 5:8 7:18 41:18
  42:18
Arant
1:17 3:9,14 5:11,11
arises
13:16
arrive
17:14
arrived
17:21
Article
41:3
asked

28:8 35:18,22,24
asking
10:20 13:2 29:8
  35:17
asset
8:15
assist
39:6
associated
8:21 9:10,17,20
Atlanta
1:18
attach
39:7
Attaching
31:9
attempt
23:6
attorneys
27:12
attorney-client
30:18
August
37:9,13
Avenue
2:13,18 3:14,19
avoid
14:7
aware
13:15 17:9,11 30:7
a.m
1:20 5:9 37:24 38:2
  38:18,19

**B**

b
1:16 41:11,22 42:23
back
14:24 18:19 28:16
  34:17 38:1
Background
6:17
bags
20:17
balance
8:15

balcony
20:12
Baptist
1:6,8 3:2 5:4 24:12
  26:7
Baptists
25:23
basis
15:18,22 29:4,6,9,13
  29:16
beach
15:1,3 17:6,14 18:13
  18:16,18,19,23 19:6
  19:20 20:17 21:13
  27:2 35:18
beginning
10:8 22:6
begins
5:2
behalf
1:12 2:1,10 3:2
behavior
26:3
believe
8:6 12:13 27:16
  32:11 36:8
BESEN
3:13
best
39:9
beyond
6:21
bikini
18:14,22
bing
33:6
bit
32:25
black
14:8
Blair
3:18
Blankenship
37:4,12
Board
41:3

**bookkeeper**
8:7 9:24
**bookkeeping**
11:20
**born**
6:19
**borrow**
20:3
**Boult**
1:17 3:9,14 5:11,12
**Bradley**
1:17 3:9,14 5:10,11
**break**
32:19 37:21
**breaker**
23:24
**Broadway**
3:10
**building**
20:13
**business**
35:3,23
**businesses**
8:21 9:9
**B-1601**
41:22 42:23

———— C ————
**C**
3:18 42:1,1
**call**
20:19 26:1,2 36:23
**Callas**
3:3 4:2 32:17,22,23
36:16,20 37:20 38:5
38:13,15
**called**
5:20 9:20 35:17,17
37:1
**caption**
42:5
**Carolina**
6:19
**carried**
22:6
**case**

25:22 41:13,13,15
42:12,15
**cause**
11:1 17:18
**caused**
33:10
**CCR**
41:22 42:23
**cell**
33:4
**CEO**
11:22
**certain**
8:21 30:4
**Certified**
1:16 41:5
**certify**
39:8 42:4,11
**chairs**
18:18,19,20
**Change**
39:11
**changes**
39:3
**character**
30:10
**charge**
41:15
**Charleston**
3:6
**child**
6:25
**chose**
34:22
**church**
7:23 24:12 26:7 34:9
35:1
**circumstances**
21:9
**City**
15:1 17:6,14 27:2
34:11
**Civil**
1:15 39:3
**claims**
29:16,19

**clarify**
36:22
**clear**
13:1 17:1
**clergy**
13:9 24:21 25:3
**client**
29:11,23 38:7
**close**
14:2
**Code**
39:3
**Coleman**
3:23 5:12
**come**
16:2 19:18 20:13,15
**coming**
20:14
**commencing**
1:19
**comments**
26:20 27:1
**commission**
40:24
**commit**
22:24
**committed**
28:11
**COMMITTEE**
1:7 3:2
**committing**
22:18,21
**communication**
16:10 34:19
**communications**
13:3,9,12 16:6 28:2
28:10
**community**
25:16,17,22
**company**
29:1
**complete**
6:23 42:10
**completely**
28:8
**concern**

23:1
**concerned**
22:17,20 29:4
**concluded**
38:19
**condo**
15:2 20:25 24:16
**condolences**
27:19
**condominium**
25:3
**conduct**
29:23
**conference**
6:9
**Conferences**
12:18
**confronted**
19:13 23:5
**Congratulations**
7:7
**connection**
8:21,25
**consider**
25:2
**contact**
20:18
**contacted**
21:17,21 41:8
**contained**
1:13
**continued**
3:1
**contract**
41:10,12
**control**
32:1
**Convention**
1:6,8 3:2 5:4
**conversation**
19:2,3 35:25 36:7
**conversations**
36:6
**copies**
31:9
**copy**

MAGNA
LEGAL SERVICES

38:10,14
**correct**
30:7 34:11 37:4,7
42:9
**corrections**
39:6,10
**correctly**
30:25
**Council**
41:4
**counsel**
2:1 3:1 5:15 9:8
15:20 16:25 28:20
28:23 29:8 31:23
41:13 42:12,13
**counting**
31:15
**course**
24:6 32:8
**court**
1:1,16 5:6,13,17
15:21 28:18 38:7,10
38:13 41:3,5,8
**courtroom**
6:12,13
**cover**
41:14
**covered**
28:8
**credits**
8:12
**crossed**
23:20
**CROSS-EXAMIN...**
5:22 32:21
**Cumming**
5:11,12
**Cummings**
1:17 3:9,14
**currently**
37:24 38:2,17
**customary**
41:15
**C.A**
1:5

**D**

**D**
2:2
**dad**
7:16
**Dallas**
3:15
**date**
5:8
**daughter**
11:8,9 18:1,3 19:8
27:4
**daughters**
7:5 11:10 18:2
**day**
1:19 11:9 12:22
18:23 19:2 40:23
41:18 42:18
**Deanna**
18:3,4
**debits**
8:12
**deceptive**
31:1
**defend**
23:6
**Defendant**
2:10 3:2
**Defendants**
1:8,12
**define**
25:13
**defined**
13:12
**depends**
25:5
**deposition**
1:11,14 5:3,10 6:4,4
8:24 14:9 16:3
31:24 39:4,4,8,9
41:9,10,14
**described**
8:5,20 31:3
**descriptive**
31:17

**desire**
39:4
**difficult**
28:25
**ding**
19:24 20:23
**dinner**
34:8,23 35:4,7
**direction**
42:8
**director**
7:22
**DISCLOSURE**
41:1
**disclosures**
41:4
**discount**
41:16
**discuss**
34:8
**discussed**
27:6,25
**discussion**
24:12
**display**
23:14
**disqualified**
41:6
**District**
1:1,1 5:5,6
**Division**
1:2 5:7
**divulge**
13:2
**Doe**
13:18,19,22,25 14:10
14:23 17:9,21 19:3
23:5 28:3,12 33:21
34:4,10 35:15 36:7
37:6,11,16
**Doe's**
14:12 27:3 36:24
**door**
20:8,10 22:11 35:21
**double-sided**
8:12

**draw**
10:3 11:24
**duly**
42:6

**E**

**E**
2:4,6,15,20 3:7,12,16
3:20 39:1,1 42:1,1
**earlier**
6:2 13:15 34:11
**early**
7:2,3 10:17,17 37:8
37:12
**easier**
30:22
**East**
3:5
**education**
6:21 7:9,10,15
**either**
17:16 36:9,24 37:11
38:5
**elevator**
20:15,16
**elicits**
16:10
**ELIZABETH**
2:3
**elizabeth.merritt@...**
2:8
**email**
20:19 27:11,25 36:25
**emails**
30:4,11,12,19 31:3,4
31:16 32:2
**emotion**
23:14
**emphasize**
29:22
**employ**
42:13
**employees**
10:13,17
**encounter**
13:16 14:17 28:3,12

MAGNA
LEGAL SERVICES

ended
10:10
entail
7:24
entered
39:4
entire
19:2
entirely
13:12 16:1
entirety
19:4
entitled
13:5
entity
9:20
errata
39:7
ESQ
2:2,3,3,11,11,12,17
3:3,4,9,13,18
estate
9:13,14
et
5:5
events
7:25
Eventually
8:3
evidence
42:10
exactly
7:11 23:25
Examination
4:1,2,2
exceptions
39:9
exclusive
41:12
EXECUTIVE
1:7 3:2
EXHIBITS
4:5
expires
40:24
explain

29:10
explaining
29:15
extent
13:11 15:11,13 32:6
32:12
eyes
34:4,6

———— F ————
F
42:1
face
23:19
facilitate
16:20
facing
18:15
fact
21:16 27:6 29:9
35:22
fair
29:1
familiar
8:11
family
10:25 11:1,7 34:13
far
19:10 27:19 30:21
fast
17:3
father
7:12
Federal
1:15 39:2
felt
21:24 22:9 35:23
fight
15:9
figured
20:10
file
30:5,12
filed
30:11 32:2
financial

8:1 41:16
fine
32:10,20
firm
5:25 7:14 9:11 14:8
31:5
firmly
24:4
first
14:22 17:17 24:12
26:7 34:3 36:23
42:6
five-minute
37:21
flipping
18:24
Floor
2:13
Florida
17:6
follow
8:23
following
39:10 41:4
follows
5:21
foregoing
39:8 42:4,8
form
28:14 29:12,14 39:3
39:6
formal
7:15
forth
8:16
forward
15:17
forwarded
31:16
forwarding
30:4
four
7:5
free
10:5
front

18:17,22
fully
6:12
furnish
39:7
further
32:15 38:3 42:11

———— G ————
G
39:1
GA
41:22 42:23
gbesen@bradley.c...
3:16
gcallas@jacksonke...
3:7
gel
22:5
GENE
3:13
Georgia
1:18 39:3 41:4,5
gesturing
18:15,18
getting
12:1 14:2
girl
34:24
give
20:4
given
8:3 15:21 39:5 41:16
42:10
giving
29:1
go
6:18 9:6 14:15 15:17
18:16 20:6 21:17
29:20 34:22 35:2,22
God
16:8
goes
19:21
going
9:6 13:13 14:10 15:7

MAGNA
LEGAL SERVICES

22:15 37:23 38:16
**Gold**
2:12 5:25
**good**
16:7 20:7 22:13
27:10 35:20
**grandchild**
7:6,6
**grandchildren**
7:5
**great**
7:5,6
**Gretchen**
3:3 32:23 36:14
**Guidepost**
1:7 2:10 5:4 6:1
26:16 27:13,18

---

**H**

**hac**
3:3,13
**hair**
18:24
**happened**
21:9 27:20
**happens**
25:5,18
**head**
13:14 17:8
**heard**
19:12 24:8 28:9 33:6
**hearing**
42:11
**Hello**
5:24
**help**
21:22,23 22:1,2
**henceforth**
13:23
**hi**
32:23
**high**
6:20,21,22,23 7:1,9
8:10,11
**hired**
11:22

**Hoggard**
6:20
**home**
23:22,24
**homemaker**
7:20
**Honor**
6:24
**hope**
14:11
**Hopefully**
15:15
**hour**
1:20
**hundred**
14:10
**Hunt**
1:3,11 3:23 5:3,4,19
5:24 6:5,16 8:25
13:4,17 16:11 18:6
19:13,17 22:18,20
24:7,8,15 27:3
28:10 30:2,3 31:4
31:16,25 32:3,12,23
39:8 40:21
**Hunt's**
7:21 9:17 26:5,13
**husband**
7:12 8:6 14:12 16:2
18:1 19:21 20:18
21:17,20,21,23 22:1
22:1,2,10 27:12
33:22 34:5,10 35:15
36:7,24 37:6,11
**husband's**
8:22 33:1,18

---

**I**

**idea**
16:7 20:7 35:21
**important**
19:25
**improper**
25:10,11
**inappropriate**
21:15 35:20

**inappropriately**
27:7
**incident**
23:3
**including**
8:6
**income**
12:2,5
**INDEX**
4:1,5
**Indiana**
2:5
**Indianapolis**
2:5
**indicate**
23:19
**indiscernible**
22:12
**infidelity**
22:21 23:2 28:11
**information**
10:19
**instances**
24:8,13
**instruct**
16:5,23
**intercept**
19:17
**interest**
41:7
**interested**
42:14
**interject**
13:6
**intimate**
25:9
**invade**
13:8
**invading**
22:16 30:18
**invite**
15:9
**involved**
11:8
**involvement**
26:6,14

**involving**
28:10
**iPhone**
33:5
**issues**
23:2

---

**J**

**J**
2:3
**Jackson**
3:4
**Jacobson**
2:18
**Jane**
13:19,22,25 14:10,12
14:23 17:9,20 19:3
23:5 27:3 28:3,12
33:21 34:4,10 35:15
36:7,24 37:6,11,15
**Janet**
1:11 5:3,19 20:4 39:8
40:21
**jlanderson@jacks...**
3:7
**job**
22:10
**John**
6:20 13:18
**Johnny**
1:3 3:23 5:3 6:5 8:25
9:17 21:2,21 34:15
35:22
**JON**
3:4
**Josh**
3:23 5:12
**judge's**
31:13
**Judicial**
41:4
**July**
14:19 17:7,12 33:22
34:3,11 35:5,13,14
36:15
**June**

17:16,17
**junior**
6:22

---
**K**
---

**KATHERINE**
2:17
**Kelly**
3:4
**kin**
42:11
**kind**
7:10 9:12 33:2,4,12
**kklein@rjfirm.com**
2:20
**Klein**
2:11,17 14:5 32:5
**klein@mintzandgo...**
2:15
**knew**
18:18 21:8,10,21
   23:19
**knocked**
20:9
**know**
6:3 8:14,15 10:1
   11:14 13:9 14:12
   15:19 17:18 21:8
   25:17,24 27:20 28:8
   29:9,10,13 30:17
   31:23 32:1,4 33:14
**knowledge**
13:11 16:2 24:11
   30:14 39:9
**known**
25:22
**Kramer**
1:16 5:14 41:22
   42:23

---
**L**
---

**L**
2:3 3:4
**lack**
21:15,15
**law**

9:11,12,14 30:20
**lawsuit**
13:16 30:15 31:18
**lawyer**
30:20
**lawyers**
16:9 31:20
**laying**
18:14,17,21 19:1
**learn**
14:23 18:12
**learned**
7:17 18:11
**leave**
19:22 21:10 27:8
   35:18,24
**leaves**
19:22
**ledger**
8:12
**Lee**
3:5
**left**
19:23
**legal**
5:13,14 6:10 41:8
**life**
7:2
**line**
23:20 39:11
**litigation**
41:16
**little**
8:3 18:14,21 30:22
   32:25
**LLC**
1:7 2:10
**LLP**
1:17 2:12 3:9,14
**log**
32:9
**long**
35:9
**look**
33:10
**looked**

19:25
**loss**
8:15
**lot**
7:17 30:20,20
**lotion**
18:25
**love**
7:2
**lunch**
34:16,16 35:2,6

---
**M**
---

**M**
1:3 3:3 5:3
**MacGill**
2:2,4 13:24 15:6,16
   15:24 16:12,15,17
   16:19,22 28:14,19
   28:23 29:5,8,15,20
   32:14,20 36:13,17
   37:22 38:6,9,11,12
**magistrate**
31:11
**Magna**
5:13,14 41:8
**making**
11:10 16:25 28:24,24
   28:25 29:17 39:5,6
**man**
24:16
**Marchetti**
3:18
**marked**
4:6
**Market**
2:4
**marriage**
28:11
**married**
6:22,25,25 7:3,20
   24:15
**matter**
5:3 27:12 31:18
**MATTHEW**
3:18

**matt@tpmblaw.com**
3:20
**ma'am**
20:20 23:9,10 25:21
   33:24
**McCormick**
2:11 4:2 5:23,25 14:6
   15:13,19 16:8,13,16
   16:18,21,24 17:5
   28:16,21 29:3,6,12
   29:18 30:1 31:23
   32:15 38:3
**mccormick@mint...**
2:15
**McGill**
13:6 17:3
**McGill's**
31:5
**mean**
26:10
**meeting**
37:3,12
**members**
10:25 11:7
**mentioned**
33:6,21 35:4
**MERRITT**
2:3
**message**
19:14,19 20:5,22
   27:17,25 28:2 34:2
   34:3 35:14 36:25
**messages**
20:2,2 21:20 27:19
   37:15
**messaging**
36:10
**met**
7:2 37:9
**Middle**
1:1 5:6
**mind**
24:15,17
**minister**
25:24
**Ministries**

**MAGNA**
**LEGAL SERVICES**

6:5 8:25 9:18 12:15
**ministry**
7:21,22 8:22
**Mintz**
2:12 5:25
**minute**
10:16
**minutes**
34:18
**Monday**
17:12 18:11 19:20
**month**
7:25
**morning**
6:2 15:10 19:21
**Morton**
26:17,24
**mother**
7:4
**motion**
29:7
**motions**
30:21
**mouth**
31:1
**move**
28:15,20 29:15
**moving**
18:23

_____
**N**
_____

**name**
14:9 18:19
**named**
13:21
**Nashville**
1:2 2:19 3:11,19 5:7
**National**
6:24
**nature**
25:9
**necessarily**
15:20
**necessary**
39:7
**need**

25:17 28:20 32:9
**needed**
33:19
**never**
21:21 22:5 23:1
27:24
**New**
2:14,14 11:9 12:15
12:22
**nightmare**
7:18
**Nods**
13:14 17:8
**NOKES**
3:9
**nonwaiver**
15:18
**North**
6:19
**Notary**
40:23
**noted**
5:15
**notification**
33:7
**N.E**
1:18

_____
**O**
_____

**oath**
6:11
**object**
16:12 17:4 28:14
**objected**
15:22
**objection**
16:14 29:13,14
**obligation**
6:10
**occasion**
26:21,23
**occurred**
33:7 36:2
**ocean**
18:15
**OCGA**

41:7,11
**offended**
21:13,14,18,24
**Offensive**
25:15
**offered**
16:19
**officer**
9:25 10:1
**offices**
41:8
**Oh**
9:12 35:9,10
**Okay**
6:15 9:5 10:13 11:15
11:17,21 12:14 13:1
13:10,14,21,21 14:4
15:15 16:12,16 17:4
17:25 18:8,11 19:12
19:20 21:7 25:7
26:19 27:1 28:1
31:22 32:20 35:13
36:17 38:16
**once**
7:25 18:24 34:23
35:8
**ongoing**
25:1
**open**
15:21
**order**
31:13
**organization**
9:3 10:8 11:2
**OTCHY**
2:12
**otchy@mintzandg...**
2:16

_____
**P**
_____

**P**
39:1
**pack**
20:17
**Page**
39:11

**pages**
39:7 42:9
**paid**
11:12
**Panama**
15:1 17:6,14 27:2
34:11
**paralegal**
14:8
**parallel**
18:22
**parties**
41:15 42:12,14
**party**
41:12,16
**password**
33:12,14
**PATRICK**
2:3
**patrick.sanders@...**
2:7
**PC**
2:4
**Peachtree**
1:18
**people**
20:12 26:21 27:2,18
**pepper**
20:3
**perfectly**
32:10
**person**
13:10,22 14:13 24:21
25:3
**personally**
13:7 33:25
**phone**
19:22,23,23,24 20:19
33:1,2,4,7,12,18
35:16,25 36:9,25
**PIETSCH**
3:18
**Pique**
3:18
**place**
13:3 14:18,25 15:2

30:25
**places**
25:18
**Plaintiff**
1:4 2:1
**Planning**
7:25
**PLC**
2:18
**please**
5:17 6:16 38:15 39:6
  39:7
**PLLC**
3:4,18
**point**
12:6 21:3
**points**
8:5
**pool**
34:18
**poor**
14:8
**popping**
20:22
**positive**
36:5
**possibility**
26:5,13
**possible**
15:20
**Poston**
3:19
**practice**
30:3
**pray**
27:22
**prejudicial**
29:11,23,24
**premises**
29:17
**presence**
21:13,14 22:10 27:3
  37:11
**present**
3:22 17:10 37:4,7
**presented**

35:19
**prior**
33:22
**privacy**
13:18
**private**
25:18
**privilege**
15:8,12,22 30:18
  32:9
**privileged**
32:8
**pro**
3:3,13
**probably**
10:6 11:1,10 19:11
  33:14 35:12 36:4
**problem**
37:22
**problems**
34:8
**Procedure**
1:15 39:3
**proceed**
16:3 29:25
**proceeding**
29:24
**Proceedings**
38:19
**process**
20:1
**produced**
32:13
**producible**
32:7
**production**
32:6
**professional**
7:10
**profit**
8:15
**prohibited**
41:10
**Promenade**
1:17
**prompted**

21:12
**protect**
22:10 32:11
**protection**
33:13
**proud**
6:24 7:4
**provide**
41:8,12
**provisions**
41:7
**public**
7:13 40:23
**Publishers**
9:21 11:5 12:11
**pull**
17:2
**pulpit**
26:9,15
**purposes**
13:17
**pursuant**
1:12 39:2 41:3
**pursue**
6:21
**put**
18:25 22:15

———————
**Q**
**question**
15:10 16:10 25:19,20
  25:21 26:12 28:15
  28:17 33:3,16
**questions**
10:23 13:13 15:25
  28:25 29:9 32:16,18
  38:4,6 42:7

———————
**R**
**R**
2:17 3:13 39:1,1 42:1
**raise**
24:2,3
**rates**
41:15
**reach**

21:19
**reaching**
21:22,25 22:2
**read**
23:18 27:20 28:16
  38:8,9 39:8 42:16
**reading**
1:13
**real**
6:13 9:13,14
**really**
9:12 29:3
**reason**
14:7 21:18 39:11
**reasons**
39:5
**rec**
5:16
**recall**
6:6 12:25 19:14 33:1
  34:15 36:19 37:10
**receive**
12:2,5
**recess**
37:25
**record**
5:1,16 17:1 29:22
  32:11 37:24,25 38:2
  38:17
**reduced**
42:7
**referral**
41:13
**referring**
13:18,22,25 14:11
  36:14
**refers**
13:25
**regard**
31:2
**regarding**
6:3
**Regency-Brentano**
41:6,8,10,12,15
**regular**
42:13

MAGNA
LEGAL SERVICES

**Regulations**
41:3
**reiterate**
32:5
**rejected**
16:22
**relationship**
41:6
**relationships**
24:8
**remember**
10:2,12,21,21,24
   11:7,14 12:6 14:17
   35:11
**reminder**
6:8
**Repeat**
26:12,22
**report**
26:16 27:13,18
**reporter**
1:16 5:13,17 28:18
   38:7,10,13 41:5,13
**reporting**
41:3,9,12,13
**represent**
6:1 42:9
**representative**
41:6
**request**
5:11
**reserve**
42:16
**reserved**
1:14
**respect**
16:14
**respond**
27:21
**response**
20:4,6
**responsibilities**
8:2
**responsive**
32:7
**result**

20:8 42:15
**Reverend**
26:17,23
**right**
8:18,22,25 9:23
   13:21 14:15,16,22
   16:15,17,18 18:2,22
   19:16 21:2 22:11
   28:1,7,16 29:20
   31:15 32:12 33:8,23
   42:16
**rights**
16:4
**Riley**
2:18
**road**
6:3
**ROBERT**
2:2
**robert.macgill@m...**
2:6
**role**
7:21 8:19,20 9:2,23
**room**
6:9 10:22 25:6
**Ross**
3:14
**Roy**
37:3
**Rule**
39:2
**rules**
1:15 6:3 39:2 41:3
**rumors**
28:9
**run**
19:21 20:6

———————— **S** ————————
**sabbatical**
22:15
**salary**

10:3 11:13,24 12:3
**salt**
20:3
**SANDERS**
2:3
**sat**
34:17
**saw**
20:1,21,22 22:10
   34:2,4
**scandal**
24:22,25,25 25:23
   26:1
**scandalous**
25:2,12,14
**SCARLETT**
3:9
**school**
6:18,20,21,23,23 7:1
   7:9 8:10,11
**SCOTT**
2:11
**secretarial**
9:16
**see**
15:23 17:13 19:18,25
   20:12,14 24:25
**seen**
33:25
**sending**
27:19
**sends**
30:12
**sense**
6:13 30:23
**sensibilities**
25:15
**sent**
31:4
**services**
5:13,14 41:8,9,12
**sheet**
39:7
**sheets**
8:15
**short**

9:11
**shutting**
16:1
**sideways**
18:17
**sign**
42:17
**signature**
38:8
**signing**
1:13
**simply**
13:3 32:10
**sin**
24:19
**SINGLETON**
3:9
**sir**
6:7,14 8:13,17
**sit**
18:16
**situation**
28:25
**snokes@bradley.c...**
3:12
**Society**
6:24
**Solutions**
1:7 2:10 5:5 6:1
**Song**
12:15
**son-in-law**
27:4
**sorry**
26:22 27:20 33:3
   36:17
**sort**
33:7
**sorts**
30:12
**Southern**
1:6,8 3:2 5:4 25:23
**space**
22:16
**speak**
23:8 36:24

MAGNA
LEGAL SERVICES

**spend**
17:18 34:13
**spousal**
15:8
**stated**
42:5
**statement**
39:5
**statements**
8:16
**States**
1:1 5:5
**stayed**
35:2
**staying**
20:9
**stenographic**
5:15
**sti**
8:3
**stipend**
8:4
**stipulations**
1:13
**stomach**
19:1
**stood**
20:11,14
**stray**
13:5
**Street**
1:18 2:4 3:5
**strike**
28:15 29:7,16
**study**
8:9
**stuff**
30:20 35:1
**subject**
31:17
**subscribed**
40:22
**substance**
13:8 39:3
**Suite**
2:5 3:5,10,15

**summer**
17:18
**summertime**
18:9
**Sunday**
14:20 17:6 21:9
**supplemental**
39:6
**supposed**
20:9
**sure**
6:6 7:17 28:7 36:3
**surprised**
23:16
**swear**
5:17
**sworn**
5:20 40:22 42:6
**system**
8:12

---
**T**

**T**
2:6,14,19 3:6,11,16
  3:20 6:20 39:1 42:1
  42:1
**take**
13:6 14:25 26:4
  32:19 37:20
**taken**
1:12 5:10 42:5
**talk**
34:24,25
**talked**
32:25 35:16
**talking**
25:23 31:2,3 36:9
**talks**
34:25
**tapes**
11:11
**Taylor**
3:18
**tell**
6:16 7:19 27:5 30:17
  30:24 34:7

**Tennessee**
1:1 2:19 3:11,19 5:6
**Terence**
2:11 5:25
**terms**
8:14
**testified**
5:21 9:7 31:25,25
**testify**
6:11 15:7
**testimony**
6:9,10 15:21 19:12
  30:3 39:4
**Texas**
3:15
**text**
19:14,18 20:1,5,19
  20:22 21:20 27:17
  27:19,25 28:2 34:2
  34:3 35:14 36:10,25
  37:15
**texted**
33:21 34:7
**texts**
33:25
**thank**
7:8 14:5 16:25 27:22
  32:16 38:6
**therapist**
13:10
**Theresa**
1:16 5:14 41:22
  42:23
**thereto**
42:7
**thing**
22:13
**things**
22:7 27:21,24 30:23
**think**
10:4 12:5 14:2 16:7,8
  34:16 35:6 36:3,18
  37:1,9
**thinking**
11:9
**Third**

**2:13**
**thought**
23:19 34:24 35:7
**time**
5:9 9:11 11:4,20
  17:10 22:17 32:16
  34:13 37:1,24 38:2
  38:17
**times**
14:10 37:10
**Timothy+Barnabas**
11:15,25 12:4
**today**
15:16,18
**Today's**
5:8
**told**
23:25 27:7,8 35:18
**top**
18:25
**Tower**
1:17
**transcript**
14:9 38:11,14 42:5
  42:10,17
**translating**
30:24
**Travel**
12:20
**true**
39:9 42:9
**trust**
13:5 17:3
**truthfully**
6:11
**try**
14:10
**trying**
15:24 17:2 19:17
  30:25
**Tuesday**
19:21
**two**
7:5 18:2 20:1 34:12
**types**
30:19

MAGNA
LEGAL SERVICES

**typewriting**
42:8

---
**U**
---

**Uh-huh**
8:1 10:9 11:12,24
  18:5 22:4,25 27:23
  33:17
**unaware**
29:18
**Unbecoming**
26:3
**undersigned**
39:8
**understand**
6:15 14:1,3,11 20:19
  23:10
**Understood**
32:14
**undone**
19:1
**United**
1:1 5:5
**Unofficially**
11:18,19
**update**
32:9
**updating**
31:7
**use**
23:22 39:6
**usual**
41:15
**usually**
19:22

---
**V**
---

**various**
8:5
**versa**
19:18
**versus**
5:4
**vice**
3:3,13 19:18
**video**

37:24 38:2,17
**videographer**
3:23 5:1,12 37:23
  38:1,16
**videotape**
5:2
**Videotaped**
1:11
**Virginia**
3:6
**voice**
24:2,4
**vs**
1:5

---
**W**
---

**W**
2:11
**Wait**
10:16
**waited**
20:15
**waive**
38:8
**waived**
15:14,23
**waiver**
15:8,17
**waiving**
15:11 16:4
**walk**
20:11,12 21:4,5,17
  35:23
**want**
13:1,4,8 15:9,9 16:1
  16:5 29:13,22 32:11
  34:20 35:1 38:7,10
  38:14
**wanted**
22:9 30:9
**wanting**
21:17,23 34:7
**warned**
28:23
**warning**
29:2

**wasn't**
9:17,19 12:1 24:16
  25:4,25 35:11,12,20
**water**
18:25
**way**
6:8 7:6 16:19 18:15
  18:17 22:6,11 34:21
  35:9,19
**week**
22:14,16
**weeks**
34:12
**went**
6:2,20,23 18:13 20:8
  34:15,23 35:7
**West**
2:18 3:6
**we'll**
13:24 15:14,17 16:6
  16:12,23
**we're**
14:1 15:7,11 31:3
  37:21
**We've**
16:19 32:25
**white**
18:14,21
**wife**
7:4 24:17 25:4,25
**Wilmington**
6:19
**wish**
13:2
**withdrawn**
14:24
**witness**
5:18,20 14:4 42:6,16

**woman**
6:25 13:17 21:25
  24:16 25:3,25 26:6
  26:14
**women**

7:25 24:9
**women's**
7:22
**Woodstock**
24:12 26:7
**word**
23:22
**words**
23:8 31:1
**work**
9:16
**worked**
7:13 9:11 11:10,17
**worse**
29:1
**wouldn't**
26:1
**wrapped**
31:24
**wrecker**
23:22
**wrong**
24:17

---
**X**
---

**Xtreme**
12:18

---
**Y**
---

**yeah**
7:19 11:3 12:11
  25:12 36:17,21
**year**
35:12
**years**
7:13,23
**yesterday**
19:12 30:2
**yesterday's**
31:24
**York**
2:14,14

---
**Z**
---

**Zoom**
2:3,12,17 3:4,18

**1**

**1**
5:2 42:9
**10**
12:7
**10.B**
41:3
**10016**
2:14
**1099**
12:9,12
**11:02**
1:20 5:9
**11:33**
37:24
**11:45**
38:2,17,19
**1200**
2:5
**1221**
3:10
**1230**
1:18
**1445**
3:14
**15th**
7:18
**15-14-37**
41:11
**156**
2:4
**1600**
3:5
**17**
7:23
**19th**
1:19 5:8 41:18
**1906**
2:18
**1970**
6:22

**2**

**2010**
14:19 17:7 18:12

33:1,22 35:14
**202**
40:23
**2024**
1:19 5:8 41:18 42:18
**212**
2:14
**214**
3:16
**2400**
3:10
**244-3556**
3:11
**25**
17:7
**25th**
2:13 14:19 42:18
**25322**
3:6
**257-9800**
3:16
**26th**
17:12 18:12
**27th**
33:22 34:3 35:13,14
  36:2,5,15
**28th**
36:4
**2908**
3:19

**3**

**3H**
9:21 11:5 12:11,20
**3:23-cv-00243**
1:6
**30(b)(6)**
6:5
**30(e)**
39:2
**30309**
1:19
**304**
3:6
**317**
2:6

**32**
4:2
**320-3225**
3:20
**320-3700**
2:19
**340-1000**
3:6
**3600**
3:15
**37203**
2:19 3:11,19
**38**
42:9

**4**

**46204**
2:5

**5**

**5**
4:2
**50**
7:13
**500**
3:5

**6**

**600**
2:13
**615**
2:19 3:11,20
**696-4848**
2:14

**7**

**721-1253**
2:6
**75202**
3:15

**8**

**8th**
35:5

**9**

**9-11-28(c)**

41:7
**9-11-30(e)**
39:3

MAGNA
LEGAL SERVICES