**IN THE UNITED STATES DISTRICT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHNNY M. HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Docket No.: 23-CV-00243** |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **SOUTHERN BAPTIST CONVETION, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT SOUTHERN BAPTIST CONVENTION'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

The Defendant, Southern Baptist Convention ("SBC" and/or "Defendant"), by and through counsel, submits this memorandum of law in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I. INTRODUCTION

In May 2022, Guidepost Solutions LLC ("Guidepost") issued its report entitled "Report of the Independent Investigation: The Southern Baptist Convention Executive Committee's Response to Sexual Abuse Allegations and an Audit of the Procedures and Actions of the Credentials Committee" (the "Guidepost Report"). The Guidepost Report, as well as its underlying investigation, was prepared in response to sustained efforts by many within the SBC community to address the problem of sexual abuse within churches, which culminated in the approval by the attendees of the 2021 SBC annual meeting in Nashville, Tennessee to create a Sexual Abuse Task Force ("Task Force") to oversee an independent third-party review and investigation into "any allegations of abuse, mishandling of abuse, mistreatment of victims, a pattern of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives"

1

by the Executive Committee of the Southern Baptist Convention ("EC") between January 1, 2000 to June 14, 2021.

Included in the Guidepost Report were allegations obtained by Guidepost investigators during the course of its investigation made by an SBC pastor and his wife ("Jane Doe") that Plaintiff, former SBC President Johnny Hunt ("Hunt"), sexually assaulted Jane Doe on July 25, 2010 (the "July 2010 Incident"). The Guidepost Report set forth all of the information Guidepost collected concerning of the allegations made about the July 2010 incident, including multiple interviews with the Jane Doe and her husband, forensic examination of electronic data, interviews of other witnesses, and two (2) interviews with Hunt. As stated in the Guidepost Report, "[Guidepost] include[d] this sexual assault allegation in the report because the [Guidepost] investigators found [Jane Doe and her husband] to be credible; their report was corroborated in part by [a third party – Roy Blankenship – Hunt's counselor] and three other credible witnesses; and [Hunt]," who denied that he had any physical contact whatsoever with Jane Doe. "The [Guidepost] investigators did not find [Hunt] to be credible in their interviews with him." Guidepost's conclusions regarding Hunt's credibility have been proven well-founded. Hunt, in this litigation, now acknowledges that he did, in fact, lie to Guidepost during its investigation of the July 2010 Incident and Jane Doe's allegation prior to the issuance of the Guidepost Report, lied again to his then-employer and lied to his congregation in the immediate aftermath of the issuance of the Guidepost Report.

Notwithstanding Hunt's own conduct and admitted lies, Hunt seeks to cast blame on the SBC itself and has asserted claims against the SBC, including defamation, false light invasion of privacy, intentional and negligent infliction of emotional distress, and public disclosure of embarrassing facts, based upon the information contained in Guidepost's Report's pertaining to its

2

investigation of Jane Doe's allegations against Hunt and the July 2010 Incident. The SBC is entitled to summary judgment on each of these claims because there is no evidence that the SBC acted with either actual malice or negligence in connection with the issuance of the Guidepost Report. In addition, there is no evidence that Hunt has suffered serious mental injury (as required to prove his emotional distress claims), nor that the matters discussed in the Guidepost Report are not matters of legitimate public concern (as required for his public disclosure of embarrassing facts claim).

In addition to the Guidepost Report, Hunt also claims that two additional statements – (1) a February 1, 2023 letter from the Credentials Committee of the SBC ("Credentials Committee") to a cooperating Southern Baptist church (the "Credentials Committee Letter") and (2) a December 5, 2022 tweet by then-President of the SBC, Bart Barber (the "Barber Tweet") – are grounds for liability against the SBC. The SBC is entitled to summary judgment on all claims arising out of the Credentials Committee Letter because the SBC did not publish it, the statements included are true and the ecclesiastical abstention doctrine prohibits this Court from adjudicating any issues related to the contents of the Credentials Committee Letter. As for claims arising from the Barber Tweet, summary judgment is necessary because it is clear that the SBC did not author nor publish the Barber Tweet.

For these reasons, and as set forth in greater detail below, the SBC is entitled to summary judgment in its favor as to all claims asserted by Hunt with prejudice.

## II. MATERIAL FACTS

### A. The SBC.

The SBC is a network of independent churches. *See* Doc. 1-2, Page ID #62. Its purpose is to "provide a general organization for Baptists in the United States and its territories for the

3

promotion of Christian missions at home and abroad." *Id.* (quoting Article II of the SBC Constitution). Over 47,000 Baptist Churches in the United States and its territories cooperate with the SBC, encompassing over 14 million people. *Id.* The SBC "is under the direction of the Messengers, i.e., the representatives of local churches that cooperate with the SBC." *Id.*, at Page ID #65. The "day-to-day functioning of the SBC" is managed by the EC whose operations are "intended to carry out the business" of the convention between the annual two-day meeting of the Messengers that convenes once a year in June. *Id.*, at Page ID #65-66.

**B.  The Credentials Committee.**

The Credentials Committee was formed in 2019 in the wake of a public outcry over sexual abuse within SBC churches and is tasked with making recommendations as to whether a church is in "friendly cooperation" with the SBC, including "mak[ing] inquiries of a church," pursuant to the criteria set forth in the SBC Constitution and Bylaws. *See* Doc. 1-2, Page ID #65; 226-227. Consistent with SBC polity and the principle of local church autonomy, neither the SBC nor the Credentials Committee have any "power" over any Baptist body, but rather merely have the responsibility to "determine whether a church 'has a faith and practice which closely identifies the [SBC's] adopted statement of faith'" and "whether a church may be acting in a manner that is 'inconsistent with the [SBC's] beliefs regarding sexual abuse.'" *Id.*, at Page ID #62-64; 226. In other words, the Credentials Committee does not "investigate what occurred or [] judge the culpability of an accused individual," but rather only reviews "how the SBC church responded to sexual abuse allegations and make recommendations as to whether those actions or inactions are consistent with the [SBC's] beliefs regarding sexual abuse." *Id.*

Since its inception, the Credentials Committee has reviewed submissions from sexual abuse survivors and others alleging that specific churches are not in "friendly cooperation" with

4

the SBC.  *Id.*, at Page ID #226.  The term "friendly cooperation" with the SBC, as defined in the SBC Constitution, means that a church must (1) have a faith and practice which closely identifies with the SBC's adopted statement of faith; (2) formally approve its intention to cooperate with the SBC; (3) make financial contributions through the Cooperative Program the SBC's Executive Committee for Convention causes or any other Convention entity during the fiscal year proceeding; (4) *not act in a manner inconsistent with the Convention's beliefs regarding sexual abuse*; and (5) not act to affirm, approve, or endorse discriminatory behavior on the basis of ethnicity.  *Id.*, at Page ID #63-64.

### C.    Johnny Hunt.

According to Hunt's own descriptions of himself, he is a nationally prominent pastor of a Georgia megachurch, First Baptist Church Woodstock,[1] and a former president of the SBC.  Hunt Depo., at 26:13-27:23.  Hunt describes himself as having been "the Joseph of the Woodstock church," one of the largest churches in America, and the "pinnacle," "voice," and "face of the Convention" in his role as "the president of the largest evangelical body in America."  *Id.*, at 36:10-22; 40:9-21; 52:6-12; 117:6-7; 124:3-5.  He describes himself as a "sought-after speaker and author" and a "noted speaker at state and national SBC conferences and conventions."  Doc. 1, Page ID #5, ¶¶ 27, 29.  Hunt has testified that his own national prominence and public exposure existed prior to his term as president of the SBC (2008-2010), which he did not need, because he already "had such a platform" due to his high public profile as the pastor of a Georgia megachurch

---

[1] First Baptist Woodstock has a high profile in the Georgia State Southern Baptist Convention and is well known within the Southern Baptist Convention nationally.  Blankenship Depo., at 82:14–25.; *see also* Hunt Depo. at 50:4 ("We were a well-known church[.]").  Hunt describes himself in the Complaint as an "extraordinarily successful" church leader with "an incredible talent for leading and growing churches" in multiple states including North Carolina and Georgia.  Doc. 1, Page ID #1, 5, at ¶¶ 2, 26-27.

5

such that the "average church-going Southern Baptist in Arkansas" knew who he was, and "everyone in the convention knew." Hunt Depo., at 41:4-17; 42:6-16; 148:19-149:6.

**D.     The Guidepost Report.**

In 2021, and after sustained efforts by many within the SBC community to address the problem of sexual abuse within SBC churches, the Task Force was created by Motion of the Messengers (the "Messengers' Motion") at the SBC annual meeting in June 2021. Doc. 1-2, at Page ID # 48-49. The Task Force was approved to oversee an independent investigation into the EC's handling of sexual abuse allegations. *Id.*, at Page ID # 49. Guidepost was engaged by the Task Force to conduct an independent investigation into various issues relating to the EC's handling of sexual abuse allegations within the SBC and to prepare an independent third-party report setting forth its factual findings and recommendations. Doc. 1-1, at Page ID #22, § 2.1; Doc. 1-2, at Page ID #49–51.

Pursuant to Guidepost's engagement letter (the "Engagement Letter") with the Task Force, Guidepost committed to investigate allegations of abuse by EC members and allegations that the EC mishandled allegations of abuse. Doc. 1-1, at Page ID #23, § 3.1. The Engagement Letter also made clear that the EC would not "conduct, direct, or otherwise manage or influence [Guidepost's] independent investigation in any matter." *Id.*, at Page ID #24, § 3.3. In order to establish safeguards to protect the independence and integrity of the investigation, the SBC formed the Committee on Cooperation "to provide financial oversight of the investigation and to ensure the full cooperation of the [EC], among other things." Doc. 1–2, at Page ID #43. While the Committee on Cooperation was made up of 5 individuals who were also EC members, they were instructed not to disclose any part of the Guidepost Report to anyone else. Howe Depo., at 275:19-22; 277:10-24.

While the Committee on Cooperation was provided the opportunity to review the factual portion of the Guidepost Report five days prior to its submission to the Task Force, its review was governed by strict protocols to ensure the independence and integrity of the final Guidepost Report. Howe Depo., at 249:5–13; Tongring Depo., at 123:7-14. This review took place in a designated room and was monitored by a Guidepost representative. Howe Depo. at 249:14-22; Tongring Depo. at 125:3-126:2. Although the Committee on Cooperation could check the facts, the polity, and the grammar of the Guidepost Report, it could not question, edit, or change the report or the conclusions set forth therein. Howe Depo., at 227:16-228:22; Tongring Depo., at 126:15-127:17.

According to the Guidepost Report, issued on May 15, 2022, during the course of Guidepost's investigation into allegations of abuse during the relevant time period – January 1, 2000 to June 14, 2021 – "an SBC pastor and his wife came forward to report that former SBC President Johnny Hunt (2008-2010), who was the immediate past president at the time, had sexually assaulted his wife on July 25, 2010" (the "July 2010 Incident"). Doc. 1-2, at Page ID # 182. The Guidepost Report went on to summarize the allegations that were reported to Guidepost pertaining to the July 2010 Incident. *Id*., at Page ID # 182-194. In the interest of judicial economy, the SBC adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the facts and discussion set forth in greater detail regarding the specific allegations and supporting evidence Guidepost obtained concerning the July 2010 Incident, as set forth by Guidepost in its separate summary judgment motion. Doc. 216-218.

As stated in the Guidepost Report, "[Guidepost] include[d] this sexual assault allegation in the report because the [Guidepost] investigators found [the couple] to be credible; their report was corroborated in part by [a third party – Roy Blankenship – Hunt's counselor] and three other credible witnesses; and [Hunt], while denying physical contact, does acknowledge that he had

7

interactions with the Survivor, including on the condo balcony during the relevant time period." *Id*., at Page ID # 194. "The [Guidepost] investigators did not find [Hunt] to be credible in their interviews with him." *Id*.

Guidepost's conclusions regarding Hunt's credibility have been proven well-founded. Hunt, in this litigation, now acknowledges that he did, in fact, lie to Guidepost during its investigation of the July 2010 Incident and Jane Doe's allegation prior to the issuance of the Guidepost Report. Specifically, Hunt lied when he told Guidepost investigators that he did not have any physical contact whatsoever with Jane Doe. Doc. 1, at Page ID # 1, 10 (Hunt admits in his Complaint that he had an "inappropriate, extramarital encounter" with Jane Doe involving what he described as "kissing and some awkward fondling" that he alleges was initiated by Jane Doe.); Hunt Depo., at 188:19-190:16; 193:1-21 (Hunt admitted to his congregation after the issuance of the Guidepost Report that he had "allowed [himself] to get too close to a compromising situation with a woman who was not [his] wife, and that he "wasn't forthcoming" with the Guidepost investigators.

The SBC further adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the specifics of Hunt's sexual contact with Jane Doe during the July 2010 Incident as set forth in greater detail by Guidepost in its separate summary judgment motion, Doc. 216-218, and by the EC. Doc. 222-224. Hunt did not disclose any of this information – that he now admits to in this litigation – to Guidepost prior to the issuance of the Guidepost Report. Specifically, the Guidepost investigators gave Hunt the opportunity to supplement what he told them – wherein he had denied any physical contact whatsoever with Jane Doe during the July 2010 Incident, and Hunt did not do so. Hunt Depo., at 104:16-18; 268:2-15.

E.      **The Credentials Committee Letter and the Barber Tweet.**

As it pertains to Hunt's separate claims arising from a February 1, 2023 letter from the Credentials Committee of the SBC ("Credentials Committee") to a cooperating Southern Baptist church (the "Credentials Committee Letter") and (2) a December 5, 2022 tweet by then-President of the SBC, Bart Barber (the "Barber Tweet") – there are likewise no grounds for liability against the SBC. 30. The "Credentials Committee Letter to Hiland Park Baptist Church was sent by the Credentials Committee only to Hiland Park Baptist Church. Doc. 1, Page ID # 15–16, ¶¶ 73–74; Doc. 1-4, Page ID # 323-324. In the Credentials Committee Letter, the Credentials Committee informed Hiland Park Baptist Church that it had been asked to determine whether Hiland Park Baptist Church was in "friendly cooperation" with the SBC and specifically whether Hiland Park Baptist Church had acted "in a manner that is consistent with the Convention's beliefs regarding sexual abuse." Doc. 1–4, Page ID #323; Barber Depo., at 180:18–182:12; 183:3–185:12; 189:20–191:23. The Credentials Committee Letter requested information from Hiland Park Baptist Church to assist it in determining whether Hiland Park Baptist Church continues to be in "friendly cooperation" with the SBC. Doc. 1–4, Page ID # 323; Barber Depo., at 180:18–182:12; 183:3–185:12; 189:20–191:23. The December 5, 2022 tweet that is described in paragraphs 70–71 of the Complaint (the "Barber Tweet") was published from the personal Twitter account of Bart Barber while he was president of the SBC. Doc. 1, Page ID # 15, ¶¶ 70–71; Doc. 1–3, Page ID # 322.

9

### III.  LAW AND ARGUMENT

**A.      Standard of Review.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The substantive law will determine which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  "So long as the movant has met its initial burden of a demonstrat[ing] the absence of a genuine issue of material fact, 'the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) and Fed. R. Civ. P. 56(e)).

**B.      The SBC is Not Liable for Defamation Claims.**

The elements of defamation are that: "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013); Sullivan v. Baptist Mem'l Hosp., 995 S.W. 2d 569, 571 (Tenn. 1999).  A plaintiff who is a public figure must prove the statement was made "with actual malice," which requires knowledge that the alleged defamatory statement

was false or a reckless disregard of whether it was false or not. *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 825 (M.D. Tenn. 2021); New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964). A plaintiff who is a private figure must prove that the defendant acted negligently. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978).

### 1. Hunt Is a Public Figure.

A public figure for purposes of defamation may be either a general-purpose or a limited public figure. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974); *Thomas M. Cooley L. Sch. v. Kurzon Straus, LLP*, 759 F.3d 522, 527 (6th Cir. 2014). A general-purpose public figure is an individual who has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz*, 418 U.S. at 351-52. A limited purpose public figure is a public figure who voluntarily injects himself into a particular public controversy. *Gertz*, 418 U.S. at 351.

Hunt is a general-purpose public figure under the facts of this case in the relevant community – the Southern Baptist evangelical community which encompasses more than 14 million people. *Gertz*, 418 U.S. at 352 ("[C]lear evidence of general fame or notoriety in the community is required for an individual to be deemed a general-purpose public figure."); *see also Waldbaum v. Fairchild Pub., Inc.*, 627 F.2d 1287, 1295, n.22 (D.C. Cir. 1980) ("[N]ationwide fame is not required."). As cited above, there is no genuine issue for trial as Hunt describes himself as a nationally prominent pastor of a Georgia megachurch, "the Joseph of the Woodstock church," one of the largest churches in America, and the "pinnacle," "voice," and "face of the Convention" in his role as "the president of the largest evangelical body in America." Hunt Depo., at 36:10-22; 40:9-21; 52:6-12; 117:6-7; 124:3-5. He describes himself as a "sought-after speaker and author"

11

and a "noted speaker at state and national SBC conferences and conventions." Doc. 1, Page ID #5, ¶¶ 27, 29.

Even if he is not a general-purpose public figure, Hunt is at least a limited public figure with respect to the public controversy concerning allegations of sexual abuse in the Southern Baptist denomination. To determine whether an individual is a limited-purpose public figure, the court must first "determine whether there is a public controversy," which is defined as "a real dispute, the outcome of which affects the general public or some identifiable segment of the public in an appreciable way." *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049 at *11, (M.D. Tenn. Jan. 10, 2022). The court must then determine whether the plaintiff "has become so involved in the public controversy as to constitute a public figure via his involvement." *Id.* To determine the level of a plaintiff's involvement in a public controversy, three factors are considered: (1) the voluntariness of his involvement; (2) the extent to which he had access to channels of communication to counteract false statements; and (3) the prominence of his role. *Id.*

There is no genuine dispute for trial that after having voluntarily served as President of the SBC and, by virtue of that office, as a member of the EC, Hunt put himself in the middle of a public controversy – allegations of abuse by EC members and allegations that the EC mishandled allegations of abuse. By responding to Guidepost's investigators and, as a prominent former President of the SBC and member of the EC, lying to cover up his own involvement in an allegedly non-consensual sexual encounter, Hunt clearly "injected himself" into the "vortex" of the sexual abuse controversy. *See* Cooley, 759 F.3d at 527; *see also* Kilpatrick Depo., at 303:1-304:10.

There is no genuine dispute for trial that Hunt had access to channels of communication to counteract any allegedly false statements. Hunt was interviewed by the Guidepost investigators and given the opportunity to provide his version of the July 2010 Incident and was even given an

12

additional 48 hours to provide the investigators with any additional information. Hunt Depo. at 268:2–15. Hunt chose to lie and deny any physical contact with Jane Doe ever took place. Hunt only changed his story into an ever-changing account that now admits to a sexual encounter with Jane Doe after the Guidepost Report was issued. In addition, Hunt confirms his "access to channels of communication" via his own description of himself as a "sought-after speaker and author" and a "noted speaker at state and national SBC conferences and conventions." Doc. 1, Page ID #5, ¶¶ 27, 29. Similarly, there is no genuine dispute for trial pertaining to the prominence of Hunt's role in the controversy. Hunt himself admits to this fact throughout his Complaint. *See, e.g.,* Doc. 1 at Page ID #2, ¶¶ 7-8 (alleging that Defendants used Hunt as their "scapegoat" in the sexual abuse controversy and noting that Hunt was "the first name mentioned in the report").

### 2. The SBC Did Not Act with Actual Malice.

As a public figure, Hunt must prove that the SBC acted with actual malice in connection with the allegedly defamatory statements at issue. To do so, "there must be sufficient evidence to permit the conclusion that [the SBC] in fact entertained serious doubts as to the truth of [the] publication, and that publishing, with such doubt, shows reckless disregard for truth or falsity and demonstrates actual malice." *Pate v. Serv. Merch. Co.*, 959 S.W. 2d 569, 577-78 (Tenn. Ct. App. 1996). There is zero evidence in the record to support, much less permit, the conclusion that the SBC knew that any of the allegations in the Guidepost Report were untrue on or before the date of its publication – May 15, 2022.

In addition, the record is clear that Guidepost took numerous steps to ensure the thoroughness of its investigation and the accuracy of the allegations published in its report. *See, e.g.,* Doc. 1–2, Page ID #51. Further still, the Supreme Court has held that, when the applicable standard of fault is actual malice, a "failure to investigate before publishing, even when a

13

reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 688 (1989); *see also Winslow v. Saltsman*, No. No. M2014–00574–COA–R3–CV, 2015 WL 6330403 (Tenn. Ct. App. Oct. 21, 2015) ("Failing to investigate information provided by others before publishing it, even when a reasonably prudent person would have done so, is not sufficient by itself to establish reckless disregard."). Instead, the publisher must have a "high degree of awareness of . . . probable falsity" to be deemed to have acted with actual malice. *Gertz*, 418 U.S. at 332 (citation omitted).

### 3. In the Alternative, the SBC Did Not Act with Negligence.

In the alternative, even if this Court determines that Hunt is not a public figure, the SBC is nevertheless entitled to summary judgment in its favor because there is no evidence that the SBC acted negligently. *See Pate*, 959 S.W.2d at 574 ("[D]efamation is not a strict liability tort. To prevail in a defamation cause of action, the plaintiff must also show some level of fault on the part of the defendant."); *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978) ("[T]he appropriate question to be determined from a preponderance of the evidence is whether the defendant exercised reasonable case and caution in checking on the truth or falsity and the defamatory character of the communication before publishing it.").

There is no evidence that the SBC acted negligently in connection with Guidepost's investigation and publication of the Guidepost Report. The SBC adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the discussion in greater detail regarding the arguments and supporting evidence set forth by Guidepost in its separate summary judgment motion, Doc. 216-218, relative to the nature and methodology of its independent investigation into, among other things, the July 2010 Incident. Based upon Guidepost's investigation and Hunt's admitted lies to Guidepost during that investigation, there is no evidence that the SBC itself acted negligently in

any respect. Based upon the record in this case, there are no material facts showing that there is a genuine issue for trial as to whether the SBC acted with actual malice or as a reasonably prudent person in connection with Guidepost's issuance of the Guidepost Report. Accordingly, the SBC is entitled to summary judgment on this claim.

## C. The SBC is Not Liable for False Light Invasion of Privacy.

The elements of false light invasion of privacy are: "(1) publicity, (2) that places the plaintiff in a false light, (3) that is 'highly offensive to a reasonable person,' and (4) that the defendant knew of or acted with reckless disregard to the 'falsity of the publicized matter and the false light in which the other would be placed.'" *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (quoting *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001)). "[A]ctual malice is the appropriate standard for false light claims when the plaintiff is a . . . public figure, or when the claim is asserted by a private individual about a matter of public concern." *West*, 53 S.W.3d at 647.

As set forth above, Hunt is a public figure. Even if he is deemed to be a private figure, the public controversy concerning allegations of sexual abuse in the Southern Baptist denomination is undeniably "a matter of public concern." *Id.; see also Snyder v. Phelps*, 562 U.S. 443, 454 (2011) (identifying "scandals involving the Catholic clergy" as an example of a "matter[] of public import"). As previously argued, there is no evidence that the SBC acted with any actual malice in connection with the publication of the Guidepost Report. Accordingly, the SBC is entitled to summary judgment on this claim.

## D. The SBC is Not Liable for Intentional Infliction of Emotional Distress.

The elements of intentional infliction of emotional distress require proof of conduct that was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and

15

(3) resulted in serious mental injury to the plaintiff." *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 21 (Tenn. 2021) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)). Additionally, because Hunt is a public figure, he must prove that the SBC acted with actual malice in connection with the publication of the Guidepost Report. *See Hustler Magazine, Inc. v. Falwell*, 486 U.S. 46, 56 (1988).

Again, as with Hunt's prior claims, the SBC is entitled to summary judgment on this claim because there is no evidence that the SBC acted with actual malice. Further, there is no evidence that any conduct by the SBC in connection with the publication of the Guidepost Report was "so outrageous that it is not tolerated by civilized society[.]" *Lemon*, 618 S.W.3d at 21. In addition, there is no evidence that Hunt has suffered any serious or severe emotional injury caused by the SBC's conduct. There is no evidence, expert or otherwise, of any treatment Hunt has received or sought from any medical doctors for emotional distress, no diagnosis, and no prescribed medication or other treatment. Hunt Depo. at 256:6–13; 258:2–5; 258:12–17. Accordingly, the SBC is entitled to summary judgment on this claim.

**E.     The SBC is Not Liable for Negligent Infliction of Emotional Distress.**

The elements of a claim for negligent infliction of emotional distress are: (i) duty; (ii) breach; (iii) injury or loss; (iv) causation in fact; (v) proximate cause; and (iv) serious or severe emotional injury caused by defendant's negligence. *Doe 1 v. Woodland Presbyterian*, 661 S.W.3d 87, 109 (Tenn. Ct. App. 2022). A plaintiff must "support his or her serious or severe injury with expert medical or scientific proof." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011). The SBC is entitled to summary judgment on this claim because there is no evidence that the SBC owed Hunt any duty nor that it breached any duty relative to the Guidepost Report. Again, there is no evidence that Hunt has suffered any serious or severe emotional injury caused by the

16

SBC's conduct, including but not limited to alleged negligence. Accordingly, the SBC is entitled to summary judgment on this claim.

**F.     The SBC is Not Liable for Public Disclosure of Embarrassing Private Facts.**

The Tennessee Supreme Court has never officially recognized this tort. *Rutherford v. First Tenn. Bank Nat. Ass'n*, No. 3:08-CV-19, 2008 WL 3307203, at *6 (E.D. Tenn. Aug. 7, 2008). Assuming this Court recognizes this claim, a claim for the tort of public disclosure of embarrassing private facts requires proof that the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. *Rutherford*, 2008 WL 3307203, at *6. In contrast to defamation, this tort gives a cause of action "for publicity given to *true* statements of fact." Restatement (Second) of Torts § 652D Special Note (Am. L. Inst. 1977) (emphasis added).

The SBC is entitled to summary judgment because, in addition to the arguments set forth above, the matters discussed in the Guidepost Report are matters of legitimate public concern. Guidepost's Report on allegations of abuse by EC members and allegations that the EC mishandled allegations of abuse, including its reporting on Jane Doe's allegations against Hunt in the July 2010 Incident, are properly categorized as reporting on a matter of public concern. *See Snyder*, 562 U.S. at 454 (identifying "scandals involving the Catholic clergy" as an example of a "matter[] of public import"). While the contents of the Guidepost Report may be embarrassing to Hunt, they are nonetheless of legitimate public concern and not subject to a claim for public disclosure of embarrassing private facts. The SBC is entitled to summary judgment on this claim.

17

**G.      The SBC is Not Liable for Claims Arising from the Credentials Committee Letter.**

**1.      The Ecclesiastical Abstention Doctrine Applies and Prohibits Judicial Scrutiny of the Credentials Committee Letter.**

Civil courts are barred by the First Amendment of the Constitution from interfering with determinations involving "questions of discipline, or of faith, or ecclesiastical rule, custom or law." *Watson v. Jones*, 80 U.S. 679, 727 (1871); *Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 941-42 (6th Cir. 1992). The ecclesiastical abstention doctrine prohibits courts from interfering with determinations regarding matters that include, among other things, "the conformity of the members of the church to the standards of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976) (quoting *Watson*, 80 U.S. at 679)). Applying the doctrine, courts have dismissed defamation claims resulting from internal church investigations when it is apparent from the Complaint that "regardless of how the claims set forth in the plaintiffs' complaint may be labeled, resolving the plaintiffs' claims would require [] this court to enter into areas implicating the First Amendment." *Ogle v. Church of God*, 153 Fed.Appx. 371, 375-76 (6th Cir. 2005) (internal citations omitted) (defamation and related tort claims of a bishop asserted against the church rejected based upon lack of subject matter jurisdiction where the claims arose out of an internal church investigation).

The Credentials Committee Letter informed Hiland Park Baptist Church that it had been asked to determine whether the Church was in "friendly cooperation" with the SBC and specifically whether the Church had acted "in a manner that is consistent with the Convention's beliefs regarding sexual abuse." Doc. 1-4, Page ID # 323; *see also* Barber Depo. at 180:18-182:12; 183:3-185:12; 189:20-191:23. The Credentials Committee Letter stated that the Credentials Committee had received information that "raises a concern that Hiland Park Baptist Church may be acting in a way that is inconsistent with the Convention's beliefs regarding sexual abuse due to

18

the church platforming Johnny Hunt, an individual who has been credibly accused of sexual abuse, according to the standards adopted by the Convention."  Doc. 1-4, Page ID # 323.  It requested information from the Church to assist it in determining whether Hiland Park Baptist Church continues to be in "friendly cooperation" with the SBC.  *Id*., Page ID # 323-24.

Hunt's claims questioning the propriety of the Credentials Committee Letter to Hiland Park Baptist Church necessarily involve the impermissible secular determination as to whether the SBC, through the Credentials Committee, ecclesiastical inquiry into whether the Hiland Park Baptist Church 'has a faith and practice which closely identifies the [SBC's] adopted statement of faith'" and "whether [the Hiland Park Baptist Church] may be acting in a manner that is 'inconsistent with the [SBC's] beliefs regarding sexual abuse" was proper.  That is the definition of questions of "conformity of the members of the church to the standards of morals required of them," "matters involving religious institutions that are ecclesiastical and internal in nature," and "disputes turning on church policy and administration or on religious doctrine and practice" that federal law forbid a civil court to inquire upon or determine.  *Milivojevich*, 426 U.S. at 708-09, 714.

Accordingly, the controversy raised by Hunt's claims arising from the Credentials Committee Letter requires this Court to delve into and intertwine itself in the underlying determinations and interpretations of whether the SBC and the Credentials Committee appropriately followed its own internal church policy and religious practice and whether the Credentials Committee Letter appropriately inquired into whether the Hiland Park Baptist Church's practices conformed with SBC beliefs and policy.  No secular evaluation of the Credentials Committee Letter can be undertaken without consideration of the underlying tenets of the SBC and Baptist churches' beliefs and morals – which necessarily include matters of church governance, discipline, and the conformity of the members of the church to the standards of morals

19

required of them. As such, this Court does not have subject matter jurisdiction over Plaintiffs' claims arising from the Credentials Committee Letter and the SBC is entitled to summary judgment in its favor.

### 2. In the Alternative, the SBC is Not Liable for Claims Arising from the Credentials Committee Letter.

There is no evidence that anything contained in the Credentials Committee Letter is false. The Credentials Committee Letter simply states that the Credentials Committee received certain information, summarized that information, and requested that Hiland Park respond to its inquiry. Doc. 1-4, Page ID # 323; *see also* Barber Depo. at 184:5–185:12 (explaining that the Credentials Committee Letter stated "the nature of the concern that was raised in the complaint or in the submission that came to" the Credentials Committee.). In addition, there is no evidence that the SBC acted with any actual malice or negligence in connection with the Credentials Committee Letter. There is no evidence that the Credentials Committee Letter caused Hunt to suffer any serious mental injury. The Credentials Committee Letter was sent to a single church and did not constitute a public disclosure. *See Finley v. Kelly*, 384 F. Supp. 3d 898, 909 (M.D. Tenn. 2019) ("[C]ommunication to a single individual or to a small group of people . . . will not give rise to liability[.]"). Finally, the matters discussed in the Credentials Committee Letter, as with the matters contained in the Guidepost Report, are a matter of legitimate public concern.

### H. The SBC is Not Liable for Claims Arising from the Barber Tweet.

The SBC did not author or publish the Barber Tweet. To the contrary, Bart Barber published the Barber Tweet from his personal Twitter account while he was president of the SBC. Doc. 1, Page ID #15, ¶ 70; Doc. 1-3, Page ID #322. The statements in the Barber Tweet are only attributable to Barber himself. There is no evidence that the SBC engaged in any conduct, much

20

less any tortious conduct, in connection with the Barber Tweet, and therefore cannot be held liable for any claims arising from it.

Even if the Barber Tweet were to be attributed to the SBC – which it cannot – the SBC is nonetheless entitled to summary judgment. First, there is no evidence that the SBC acted with either actual malice or negligence in connection with the Barber Tweet. Second, there is no evidence that the Barber Tweet caused Hunt to suffer any serious mental injury. Finally, Hunt's the Barber Tweet discussed a matter of legitimate public concern. As such, the SBC is entitled to summary judgment in its favor.

## IV. CONCLUSION

For the foregoing reasons, the SBC respectfully requests that the Court enter summary judgment in its favor on each of the claims alleged by Hunt against the SBC.

**DATED: July 3, 2024.**

Respectfully submitted,

**TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC**

By:___*/s/ Matthew C. Pietsch*_____
      L. Gino Marchetti, Jr., BPR No. 005562
      Matthew C. Pietsch, BPR No. 024659
      2908 Poston Avenue
      Nashville, TN 37203
      (615) 320-3225
      (615) 320-3244 Fax
      gmarchetti@tpmblaw.com
      matt@tpmblaw.com
      *Counsel for Defendant*
      *Southern Baptist Convention*

21

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing has been served through the Court's electronic filing system to the following on **July 3, 2024**:

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen, Esq.
Bradley Arant Boult Cummings, LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
gbesen@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katherine R. Klein, Esq.
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
600 Third Avenue, 25th Florr
New York, NY 10016
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions, LLC*

Robert D. MacGill, Esq.
Scott E. Murray, Esq.
Patrick J. Sanders, Esq.
MacGill PC
156 E. Market Street, Suite 1200
Indianapolis, IN 46204
Robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
Patrick.sanders@macgilllaw.com

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
Cole Law Group, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

*Counsel for Plaintiff*

     /s/ Matthew C. Pietsch

23