IN THE UNITED STATES DISTRICT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Docket No.: 23-CV-00243 |
| v. ) | JURY DEMAND |
| ) | |
| SOUTHERN BAPTIST CONVETION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT SOUTHERN BAPTIST CONVENTION'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, Southern Baptist Convention ("SBC" and/or "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 56, submits this Statement of Undisputed Material Facts in in support of its Motion for Summary Judgment (the "Motion").[1]

1. The SBC is a network of independent churches whose purpose is to "provide a general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad." Doc. 1-2, Page ID # 62 (quoting Article II of the SBC Constitution).

**RESPONSE:**

---

[1] In the interest of judicial economy, and to avoid unnecessary and duplicative filings, the SBC adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), the exhibits, including references to deposition transcripts, filed by Guidepost and the EC in their separate summary judgment motion. Doc. 216-228. Citations to documents previously filed in this litigation are identified by their Document and Page ID #, and citations to previously filed deposition transcripts are identified by the name of the deponent and page number ("Deponent Depo., at Page:Line).

1

2. Over 47,000 Baptist Churches in the United States and its territories cooperate with the SBC, encompassing over 14 million people. Doc. 1-2, Page ID # 62.

**RESPONSE:**


3. The SBC "is under the direction of the Messengers, i.e., the representatives of local churches that cooperate with the SBC." Doc. 1-2, Page ID # 65.

**RESPONSE:**


4. The "day-to-day functioning of the SBC" is managed by the EC whose operations are "intended to carry out the business" of the convention between the annual two-day meeting of the Messengers that convenes once a year in June. Doc. 1-2, Page ID # 65-66.

**RESPONSE:**


5. The Credentials Committee was formed in 2019 in the wake of a public outcry over sexual abuse within SBC churches and is tasked with making recommendations as to whether a church is in "friendly cooperation" with the SBC, including "mak[ing] inquiries of a church," pursuant to the criteria set forth in the SBC Constitution and Bylaws. Doc. 1-2, Page ID # 65; 226-227.

**RESPONSE:**


6. Consistent with SBC polity and the principle of local church autonomy, neither the SBC nor the Credentials Committee have any "power" over any Baptist body, but rather merely have the responsibility to "determine whether a church 'has a faith and practice which closely

identifies the [SBC's] adopted statement of faith'" and "whether a church may be acting in a manner that is 'inconsistent with the [SBC's] beliefs regarding sexual abuse.'" Doc. 1-2, Page ID # 62-64; 226.

**RESPONSE:**

7. The Credentials Committee does not "investigate what occurred or [] judge the culpability of an accused individual," but rather only reviews "how the SBC church responded to sexual abuse allegations and make recommendations as to whether those actions or inactions are consistent with the [SBC's] beliefs regarding sexual abuse." Doc. 1-2, Page ID # 62-64; 226.

**RESPONSE:**

8. Since its inception, the Credentials Committee has reviewed submissions from sexual abuse survivors and others alleging that specific churches are not in "friendly cooperation" with the SBC. Doc. 1-2, Page ID # 226.

**RESPONSE:**

9. The term "friendly cooperation" with the SBC, as defined in the SBC Constitution, means that a church must (1) have a faith and practice which closely identifies with the SBC's adopted statement of faith; (2) formally approve its intention to cooperate with the SBC; (3) make financial contributions through the Cooperative Program the SBC's Executive Committee for Convention causes or any other Convention entity during the fiscal year proceeding; (4) *not act in a manner inconsistent with the Convention's beliefs regarding sexual abuse*; and (5) not act to

3

Case 3:23-cv-00243    Document 231    Filed 07/03/24    Page 3 of 12 PageID #: 8835

affirm, approve, or endorse discriminatory behavior on the basis of ethnicity.  Doc. 1-2, Page ID # 63-64.

**RESPONSE:**


10. Hunt is a nationally prominent pastor of a Georgia megachurch, First Baptist Church Woodstock, and a former president of the SBC.  Hunt Depo., at 26:13-27:23.

**RESPONSE:**


11. Hunt describes himself as having been "the Joseph of the Woodstock church," one of the largest churches in America, and the "pinnacle," "voice," and "face of the Convention" in his role as "the president of the largest evangelical body in America."  Hunt Depo., at 36:10-22; 40:9-21; 52:6-12; 117:6-7; 124:3-5.

**RESPONSE:**


12. Hunt describes himself as a "sought-after speaker and author" and a "noted speaker at state and national SBC conferences and conventions."  Doc. 1, Page ID #5, ¶¶ 27, 29.

**RESPONSE:**


13. Hunt has testified that his own national prominence and public exposure existed prior to his term as president of the SBC (2008-2010), which he did not need, because he already "had such a platform" due to his high public profile as the pastor of a Georgia megachurch such that the "average church-going Southern Baptist in Arkansas" knew who he was, and "everyone in the convention knew."  Hunt Depo., at 41:4-17; 42:6-16; 148:19-149:6.

**RESPONSE:**

14. In 2021, and after sustained efforts by many within the SBC community to address the problem of sexual abuse within SBC churches, the Task Force was created by Motion of the Messengers (the "Messengers' Motion") at the SBC annual meeting in June 2021. Doc. 1-2, at Page ID # 48-49.

**RESPONSE:**

15. The Task Force was approved to oversee an independent investigation into the EC's handling of sexual abuse allegations. Doc. 1-2, at Page ID # 49.

**RESPONSE:**

16. Guidepost was engaged by the Task Force to conduct an independent investigation into various issues relating to the EC's handling of sexual abuse allegations within the SBC and to prepare an independent third-party report setting forth its factual findings and recommendations. Doc. 1-1, at Page ID # 22, § 2.1; Doc. 1-2, at Page ID # 49-51.

**RESPONSE:**

17. Pursuant to Guidepost's engagement letter (the "Engagement Letter") with the Task Force, Guidepost committed to investigate allegations of abuse by EC members and allegations that the EC mishandled allegations of abuse. Doc. 1-1, at Page ID # 23, § 3.1.

**RESPONSE:**

5

18. The Engagement Letter also made clear that the EC would not "conduct, direct, or otherwise manage or influence [Guidepost's] independent investigation in any matter." Doc. 1-1, at Page ID # 24, § 3.3.

**RESPONSE:**


19. In order to establish safeguards to protect the independence and integrity of the investigation, the SBC formed the Committee on Cooperation "to provide financial oversight of the investigation and to ensure the full cooperation of the [EC], among other things." Doc. 1–2, at Page ID #43.

**RESPONSE:**


20. While the Committee on Cooperation was made up of 5 individuals who were also EC members, they were instructed not to disclose any part of the Guidepost Report to anyone else. Howe Depo., at 275:19-22; 277:10-24.

**RESPONSE:**


21. While the Committee on Cooperation was provided the opportunity to review the factual portion of the Guidepost Report five days prior to its submission to the Task Force, its review was governed by strict protocols to ensure the independence and integrity of the final Guidepost Report. Howe Depo., at 249:5–13; Tongring Depo., at 123:7-14.

**RESPONSE:**

22. This review took place in a designated room and was monitored by a Guidepost representative. Howe Depo. at 249:14-22; Tongring Depo. at 125:3-126:2.

**RESPONSE:**

23. Although the Committee on Cooperation could check the facts, the polity, and the grammar of the Guidepost Report, it could not question, edit, or change the report or the conclusions set forth therein. Howe Depo., at 227:16-228:22; Tongring Depo., at 126:15-127:17.

**RESPONSE:**

24. According to the Guidepost Report, issued on May 15, 2022, during the course of Guidepost's investigation into allegations of abuse during the relevant time period – January 1, 2000 to June 14, 2021 – "an SBC pastor and his wife came forward to report that former SBC President Johnny Hunt (2008-2010), who was the immediate past president at the time, had sexually assaulted his wife on July 25, 2010" (the "July 2010 Incident"). Doc. 1-2, at Page ID # 182.

**RESPONSE:**

25. As stated in the Guidepost Report, "[Guidepost] include[d] this sexual assault allegation in the report because the [Guidepost] investigators found [the couple] to be credible; their report was corroborated in part by [a third party – Roy Blankenship – Hunt's counselor] and three other credible witnesses; and [Hunt], while denying physical contact, does acknowledge that he had interactions with the Survivor, including on the condo balcony during the relevant time

period." "The [Guidepost] investigators did not find [Hunt] to be credible in their interviews with him." Doc. 1-2, at Page ID # 194.

**RESPONSE:**


26. Hunt lied when he told Guidepost investigators that he did not have any physical contact whatsoever with Jane Doe. Doc. 1, at Page ID # 1, 10.

**RESPONSE:**


27. Hunt admits that he had an "inappropriate, extramarital encounter" with Jane Doe involving what he described as "kissing and some awkward fondling" that he alleges was initiated by Jane Doe. Doc. 1, at Page ID # 1, 10.

**RESPONSE:**


28. Hunt admitted to his congregation after the issuance of the Guidepost Report that he had "allowed [himself] to get too close to a compromising situation with a woman who was not [his] wife, and that he "wasn't forthcoming" with the Guidepost investigators. Hunt Depo., at 188:19-190:16; 193:1-21.

**RESPONSE:**


29. Hunt did not disclose any of his physical contact with Jane Doe – that he now admits to in this litigation – to Guidepost prior to the issuance of the Guidepost Report. Specifically, the Guidepost investigators gave Hunt the opportunity to supplement what he told them – wherein he

8

had denied any physical contact whatsoever with Jane Doe during the July 2010 Incident – Hunt did not do so. Hunt Depo., at 104:16-18; 268:2-15.

**RESPONSE:**


30. The February 1, <u>2023</u> letter (the "Credentials Committee Letter") to Hiland Park Baptist Church that is discussed in paragraphs 73–74 of the Complaint was sent by the SBC's Credentials Committee only to Hiland Park Baptist Church. Doc. 1, Page ID # 15–16, ¶¶ 73–74; Doc. 1-4, Page ID # 323-324.

**RESPONSE:**


31. In the Credentials Committee Letter, the Credentials Committee informed Hiland Park Baptist Church that it had been asked to determine whether Hiland Park Baptist Church was in "friendly cooperation" with the SBC and specifically whether Hiland Park Baptist Church had acted "in a manner that is consistent with the Convention's beliefs regarding sexual abuse." Doc. 1-4, Page ID #323; Barber Depo., at 180:18–182:12; 183:3–185:12; 189:20–191:23.

**RESPONSE:**


32. The Credentials Committee Letter requested information from Hiland Park Baptist Church to assist it in determining whether Hiland Park Baptist Church continues to be in "friendly cooperation" with the SBC. Doc. 1–4, Page ID # 323; Barber Depo., at 180:18–182:12; 183:3–185:12; 189:20–191:23.

**RESPONSE:**

33. The December 5, 2022 tweet that is described in paragraphs 70–71 of the Complaint (the "Barber Tweet") was published from the personal Twitter account of Bart Barber while he was president of the SBC.  Doc. 1, Page ID # 15, ¶¶ 70–71; Doc. 1–3, Page ID # 322.

**RESPONSE:**

**DATED: July 3, 2024.**

        Respectfully submitted,

        **TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC**

    By:  */s/ Matthew C. Pietsch*
        L. Gino Marchetti, Jr., BPR No. 005562
        Matthew C. Pietsch, BPR No. 024659
        2908 Poston Avenue
        Nashville, TN 37203
        (615) 320-3225
        (615) 320-3244 Fax
        gmarchetti@tpmblaw.com
        matt@tpmblaw.com
        *Counsel for Defendant*
        *Southern Baptist Convention*

**CERTIFICATE OF SERVICE**

       The undersigned certifies that a true and complete copy of the foregoing has been served through the Court's electronic filing system to the following on **July 3, 2024**:

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen, Esq.
Bradley Arant Boult Cummings, LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
gbesen@bradley.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

John R. Jacobson, Esq.
Katherine R. Klein, Esq.
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
600 Third Avenue, 25th Florr
New York, NY 10016
mintz@mintzandgold.com
mccormick@mintzandgold.com

*Counsel for Guidepost Solutions, LLC*

Robert D. MacGill, Esq.
Scott E. Murray, Esq.
Patrick J. Sanders, Esq.
MacGill PC
156 E. Market Street, Suite 1200
Indianapolis, IN 46204
Robert.macgill@macgilllaw.com
scott.murray@macgilllaw.com
Patrick.sanders@macgilllaw.com

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
Cole Law Group, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

*Counsel for Plaintiff*

                                                   /s/ Matthew C. Pietsch