IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOHNNY M. HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-00243** |
| | ) | |
| **SOUTHERN BAPTIST CONVENTION;** | ) | **Judge Campbell** |
| **GUIDEPOST SOLUTIONS LLC; and** | ) | **Magistrate Judge Frensley** |
| **EXECUTIVE COMMITTEE OF THE** | ) | **Jury Demand** |
| **SOUTHERN BAPTIST CONVENTION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO THE EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION AND SOUTHERN BAPTIST CONVENTION MOTIONS FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**


**INTRODUCTION** ........ 1

**LEGAL STANDARD** ........ 2

**ARGUMENT** ........ 3

**I. Defendants are not entitled to the actual malice standard—Pastor Johnny is not a public figure.** ........ 3

**A. Pastor Johnny is not a general celebrity; he is not a household name; and is not one of the rare individuals who qualifies as a public figure for all purposes and contexts.** ........ 3

**B. Pastor Johnny did not inject himself in the SBC's controversy in any way that could render him a public figure for purposes of this litigation.** ........ 5

**II. The EC and SBC may be found liable under the actual malice or negligence standard.** ........ 8

**A. Issues of material fact pervade questions of actual malice involving the EC and SBC.** ........ 9

**B. Pastor Johnny has cited evidence from which a jury could find that the EC and SBC acted negligently.** ........ 18

**III. There is a genuine issue of material of fact as to the EC and SBC's ability to edit the Report.** ........ 20

**IV. False Light** ........ 22

**A. Actual malice does not apply to Pastor Johnny's false light claim; if it does Pastor Johnny has presented evidence that would allow the jury to find the EC and SBC acted with actual malice.** ........ 22

**V. Intentional Infliction of Emotional Distress** ........ 23

**A. There is a genuine issue of material fact whether the EC and SBC's conduct was outrageous.** ........ 23

**B. Pastor Johnny's emotional damages are a jury issue.** ........ 25

**VI. Negligent Infliction of Emotional Distress** ........ 26

**A. There is a genuine issue of material fact as to the elements of duty and breach.** ........ 26

**B. The requirement for expert or scientific proof of emotional injury does not apply.** .....27

**VII. Public Disclosure of Private Facts** ..... 27

**A. Tennessee courts have recognized and applied the tort of public disclosure of private facts.** .....27

**B. Whether Pastor Johnny's brief, consensual encounter was a matter of private concern is a jury issue.**.....28

**VIII. SBC President and Ex Officio Member of the EC Bart Barber's Tweet** ..... 29

**A. There is a genuine issue of material fact whether Bart Barber published the tweet in his capacity as President of the SBC and Ex Officio member of the Executive Committee.** .....29

**B. The EC and SBC waived its remaining arguments relating to Mr. Barber's tweet; even if they did not, there is a jury issue relating to the claims arising from the tweet.**.....30

**IX. The Committee on Cooperation Letter** ..... 31

**A. Ecclesiastical Abstention Doctrine does not apply.**.....31

**B. The jury must determine whether the SBC or EC have responsibility for the letter.** .....33

**C. There is a genuine issue of material fact as Pastor Johnny's claims relating to the Letter.** .....34

**X. Damages.** ..... 35

**A. Pastor Johnny is entitled to recover damages from his lost book deals, lost speaking engagements, and other ministry-related income, as well as emotional damages.**.....35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alkan Elecs. Int'l, Inc. v. Flint Journal*,
1989 U.S. Dist. LEXIS 18001 (E.D. Mich. June 2, 1989).....13

*Estate of Amos v. Vanderbilt Univ.*,
62 S.W.3d 133 (Tenn. 2001).....32

*Armstrong v. Shirvell*,
596 F. App'x 433 (6th Cir. 2015).....8

*Atkins v. Parker*,
472 U.S. 115 (1985).....17

*Beard v. Akzona, Inc*,
517 F. Supp. 128 (E.D. Tenn. 1981).....33

*Biltcliffe v. Hailey's Harbor, Inc.*,
No. M2003-02408-COA-R3-CV, 2005 Tenn. App. LEXIS 676
(Ct. App. Oct. 27, 2005).....24, 25

*Celle v. Filipino Reporter Enters.*,
209 F.3d 163 (2d Cir. 2000).....21

*Clark v. Coats & Clark, Inc.*,
929 F.2d 604 (11th Cir. 1991).....29, 35

*Cobb v. Time, Inc.*,
278 F.3d 629 (6th Cir. 2002).....14, 15

*Davis v. Tennessean*,
83 S.W.3d 125 (Tenn. Ct. App. 2001).....13

*Doe et al. v. Netflix et al.*,
No. 1:22-cv-01281-TWP-MJD, 2023 U.S. Dist. LEXIS 98011
(S.D. Ind. June 6, 2023).....33

*Albert v. Mitchell*,
42 F. App'x 691 (6th Cir. 2002).....27

*Gutierrez v. Lynch*,
826 F.2d 1534 (6th Cir. 1987).....7

*Hale v. Ostrow*,
166 S.W.3d 713 (Tenn. 2005).....31

*Hibdon v. Grabowski*,
195 S.W.3d 48 (Tenn. Ct. App. 2005) ........................................................................23

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979)........................................................................................................11

*International Union v. Garner*,
601 F. Supp 187 (M.D. Tenn. 1985)...........................................................................33

*Jacobson v. CBS Broad., Inc.*,
19 N.E.3d 1165 (App. Ill) (2014) ...............................................................................10

*Kindred v. Townsend*,
No. W2021-01481-COA-R3-CV, 2022 Tenn. App. LEXIS 471
(Tenn. Ct. App. Dec. 7, 2022)......................................................................................32

*Lindberg v. Dow Jones & Co.*,
No. 20-cv-8231 (LAX), 2021 U.S. Dist. LEXIS 151397
(S.D.N.Y. Aug. 11, 2021) ............................................................................................28

*Masters Ent. Grp., Inc. v. Aurich*,
No. 3:18-cv-01314, 2022 U.S. Dist. LEXIS 105916
(M.D. Tenn. June 14, 2022)....................................................................................29, 35

*Mathis v. Phila. Newspapers, Inc.*,
455 F. Supp. 406 (E.D. Pa. 1978) ...............................................................................24

*McCall v. Wilder*,
913 S.W.2d 150 (Tenn. 1995)......................................................................................32

*McCay v. Mitchell*,
463 S.W.2d 710 (Tenn. Ct. App. 1970) ......................................................................38

*McClay v. Airport Mgmt. Servs., LLC*,
596 S.W.3d 686 (Tenn. 2020)......................................................................................40

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
966 F.3d 346 (5th Cir. 2020) ..................................................................................37, 38

*Memphis Pub. Co. v. Nichols*,
569 S.W.2d 412 (Tenn. 1978)..................................................................................13, 23

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)........................................................................................................14

*Ogle v. Hocker*,
279 F. App'x 391 (6th Cir. 2008).......................................................................... *passim*

*Parr v. Middle Tennessee State Univ.*,
No. M1999-01442-COA-R3-CV, 1999 Tenn. App. LEXIS 803
(Tenn. Ct. App. Dec. 3, 1999)....32

*Roberts v. Essex Microtel Assocs.*,
46 S.W.3d 205 (Tenn. Ct. App. 2000)....32

*Rogers v. Louisville Land Co.*,
367 S.W.3d 196 (Tenn. 2012)....30

*Sloan v. Hall*,
673 S.W.2d 548 (Tenn. Ct. App. 1984)....38

*Snyder v. Phelps*,
562 U.S. 443 (2011)....34

*St. Amant v. Thompson*,
390 U.S. 727 (1968)....14

*Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*,
759 F.3d 522 (6th Cir. 2014)....8

*Thornton v. Dutch Nats. Processing, LLC*,
629 F. Supp. 3d 777 (M.D. Tenn. 2022)....7, 19

*Waldbaum v. Fairchild Publ'ns*,
627 F.2d 1287 (D.C. Cir. 1980)....8, 9

*Wayment v. Clear Channel Broad., Inc.*,
116 P.3d 271 (Utah Sup. Ct. 2005)....10

*West v. Media Gen. Convergence, Inc.*,
53 S.W.3d 640 (Tenn. 2001)....27

*Whitehurst v. Martin Med. Ctr., P.C.*,
No. W2001-03034-COA-R3-CV, 2003 Tenn. App. LEXIS 619
(Ct. App. Aug. 28, 2003)....24

**Statutes**

Fla. Stat. Ann. § 794.011....17, 36, 39

**Other Authorities**

Fed. R. Civ. P. 56(a)....7

Restatement (Second) Torts § 580B cmt. k....24

Restatement (Second) Torts § 652 cmt. a....39

## INTRODUCTION

The Executive Committee of the Southern Baptist Convention ("EC") and the Southern Baptist Convention ("SBC") were facing a sexual abuse crisis and hired Guidepost Solutions LLC ("Guidepost") to write a public, multi-million-dollar Report for damage control. Specifically, the SBC was facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches. Despite having nothing to do with these allegations, the Report featured Pastor Johnny as the main story. Pastor Johnny's brief, consensual extramarital encounter more than 10 years prior to the Report had nothing to do with the controversy facing the EC and SBC. It should have never been included in the Report.

After publication, the EC and SBC strategically used the allegations against Pastor Johnny in an attempt to prove to the SBC community they were now responding aggressively to sexual abuse. SBC President and Ex Officio Executive Committee Member Bart Barber tweeted that Pastor Johnny had been accused of a "felony" and later wrote that he "would permanently 'defrock' Johnny Hunt if [he] had the authority to do so." The Credential Committee sent letters to churches where Pastor Johnny attempted to resume preaching accusing Pastor Johnny of committing a sex crime. As a result of Defendants' conduct, Pastor Johnny has suffered reputational, pecuniary, and emotional damages.

The EC and SBC have moved for summary judgment. The motions should be denied in their entirety. First, Pastor Johnny is neither the rare "general-purpose public figure" nor a "limited-purpose public figure" under applicable law. Second, Pastor Johnny has presented admissible evidence that would allow a jury to find that the EC and SBC each acted with the requisite level of fault to find liability. The record evidence shows that the EC and SBC knew, or

were recklessly indifferent, to the fact that that the allegations against Pastor Johnny did not amount to a sexual assault or criminal act. As set forth below, the EC and SBC's remaining arguments fail to show there is no genuine issue of material fact on the remaining claims.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must carry "its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, for an entry of summary judgment to be appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987). In ruling on a summary judgement motion, "evidence offered by the nonmovant must be accepted as true and . . . credibility judgments and weighing of the evidence are improper." *Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 785 (M.D. Tenn. 2022).

## RESPONSES TO SBC AND EC'S SEPARATE STATEMENTS OF FACTS

Each Defendant presents separate statements of facts that they contend are undisputed. Virtually all of these facts, however, are in dispute. Pastor Johnny submits responses that controvert each of Defendants' factual statements, along with record citations supporting the same. Local Rule 56.01(c). Pastor Johnny filed each factual response separately, and hereby incorporates each by reference.

## PASTOR JOHNNY'S STATEMENT OF FACTS

Defendants' separate factual statements also leave out evidence that bears on the issues they raise and that undermines their conclusory assertions. Pastor Johnny therefore submits his own statement of facts relevant to Defendants' Motions. Local Rule 56.01(c). Again, to keep his

filings orderly and manageable, Pastor Johnny filed that statement separately, and hereby incorporates it by reference.

## ARGUMENT

### I. Defendants are not entitled to the actual malice standard—Pastor Johnny is not a public figure.

Guidepost, the EC, and SBC make the common argument that Pastor Johnny is a public figure. Pastor Johnny addresses this common argument in this Opposition.

In their Motions, Defendants attempt to invoke the actual malice standard, arguing that Pastor Johnny is either (1) a "general-purpose public figure" who has achieved such pervasive fame or notoriety that he is a public figure for all purposes and in all contexts, or (2) a "limited-purpose public figure" who thrust himself to the forefront of a public controversy to influence the resolution of the issues involved. "Whether a plaintiff is a private or public figure is a question of law." *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015). Pastor Johnny is not a public figure.

#### A. Pastor Johnny is not a general celebrity; he is not a household name; and is not one of the rare individuals who qualifies as a public figure for all purposes and contexts.

"A general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'" *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). "This test is a strict one . . . . [T]he general public figure is a rare creature." *Waldbaum v. Fairchild Publ'ns,* 627 F.2d 1287, 1292 (D.C. Cir. 1980). To be a general-purpose public figure, an individual must be "a well-known 'celebrity'" and "his name a 'household word' whose ideas and actions the public in fact follows with great interest." *Id.* at 1292, 1294.

The Court previously rejected Defendants' arguments attempting to treat Pastor Johnny as a public figure. At the time of the Court's prior ruling, the Court accepted as true the facts in the Complaint: Pastor Johnny was president of the SBC over 10 years ago (Compl. ¶¶ 2, 28); Pastor Johnny was a pastor at First Baptist Woodstock, one of the "largest churches in the United States" (Compl. ¶ 27); and was a "sought-after speaker and author" (Compl. ¶ 29). The evidence cited by Defendants in support of their arguments omit important context[1] and, at most, confirms the details stated in the Complaint. Pastor Johnny is not a "public personality for all aspects of his life." *Ogle v. Hocker*, 279 F. App'x 391, 398–99 (6th Cir. 2008) (quoting *Gertz*, 418 U.S. at 352).

Defendants misleadingly argue that "nationwide fame is not required" and Pastor Johnny is well-known in the SBC community, citing *Waldbaum v. Fairchild Publ'ns*. GPS Mot. at 22; EC Mot. at 17-18; SBC Mot. At 11. Defendants failed to include the rest of the footnote in *Waldbaum*: "Rather, the question is whether the individual had achieved the necessary degree of notoriety where he was defamed i.e., ***where the defamation was published***." *Waldbaum*, 627 F.2d at 1295 n.22 (emphasis added). It cannot be disputed that the Report was published nationwide. EC 30(b)(6) Dep. 310:6-11 (The EC understood that the Report would generate "national publicity"); Wood Dep. 220:18-221:6 (testifying "[a]nyone with a computer and [] internet" could access the Report).

*Ogle v. Hocker*, is directly on point. In *Ogle*, the court held that an international evangelist was not a public figure. 279 F. App'x 391 (6th Cir. 2008). There, plaintiff-Ogle's own pleadings stated that he was "international evangelist" who attained "international fame and reputation throughout the nation, as well as other countries, with respect to his ministry." *Id.* at

[1] *See* Pastor Johnny's Resp. to GPS SOMF ¶¶ 6-11 and SBC SOMF ¶¶ 10-13.

399. Defendant argued that these statements established "Ogle as a 'self-proclaimed public figure.'" *Id.* at 399. The court rejected the argument. *Id.* The court emphasized the restrictive standard for a general-purpose public figure: "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 398-99 (quoting *Gertz*, 418 U.S. at 352). The court found that "[e]ven assuming that proclaiming oneself a public figure were sufficient, Ogle's statements admit fame only 'with respect to his ministry.'" *Id.* at 399. Therefore, Ogle "could not have conceded that he was a public figure for all purposes." *Id.*

Similar to *Ogle*, Pastor Johnny does not meet the "strict" test for becoming a "rare" general-purpose public figure. The EC and SBC make nearly identical arguments to those rejected by the court in *Ogle* arguing that "Hunt (by his own words) is a public figure." EC Mot. at 16; SBC Mot. at 13. While Pastor Johnny had attained prominence within his local church and the SBC due his service as president over ten years ago, he is not "a well-known 'celebrity'" and he is not a "household" name for all purposes and in all contexts. *See also, Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1176 (Ill. App. Ct. 2014) (finding plaintiff was not a general purpose public figure despite the fact that she "had won four Emmy awards in four years, was a well-known personality in Chicago and in local journalistic circles, and had some professional community involvement."); *Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 281 (Utah Sup. Ct. 2005) (finding that health reporter plaintiff was not a general purpose public figure despite referring to herself as a "local celebrity").

**B. Pastor Johnny did not inject himself in the SBC's controversy in any way that could render him a public figure for purposes of this litigation.**

Limited-purpose public figures are those who have "thrust[] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Ogle v.*

*Hocker*, 279 F. App'x 391, 399 (6th Cir. 2008) (quoting *Wolston v. Reader's Digest Ass'n., Inc.,* 443 U.S. 157, 164 (1979) (internal quotation marks omitted)). "Mere association or involvement in a controversy is not necessarily enough; instead the court analyzes the 'nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" *Id.* at 399 (quoting *Gertz,* 418 U.S. at 345). "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979). There is no evidence that Pastor Johnny "thrust" himself into the "vortex" of the sexual abuse controversy surrounding the SBC prior to Defendants' defamatory statements.

Guidepost repeats the same argument that the Court previously rejected: "[I]t was inevitable that allegations regarding his sexual improprieties would draw him into the vortex of the SBC's sexual abuse controversy." *Compare* GPS Mot. at 24 *with* Doc. No. 27 at 12. This misstates the applicable test. The relevant question is whether, *prior to and separate from the alleged defamatory statements*, Pastor Johnny was part of a public debate on sex abuse within the SBC. *See Hutchinson,* 443 U.S. at 135. The Sixth Circuit was clear in *Ogle* that Defendants cannot inject Pastor Johnny into a public debate by publishing defamatory statements against him, and then point to the "public stir" that their comments created as evidence of his status as a "public figure." *Ogle*, 279 F. App'x at 399. It cannot be disputed that Pastor Johnny was not part of any public debate on sex abuse within the SBC prior to Defendants' defamatory statements. Pastor Johnny testified that he "stayed out of the paper" and had no involvement with any sexual abuse matters throughout his career. Hunt Dep. 39:9-40:2; 43:7-8; 44:19-22; 188:5-9.

The EC and SBC argue that "appearing before Guidepost" or "responding to Guidepost's investigators" transformed Pastor Johnny into a limited purpose public figure. EC Mot. at 19;

SBC Mot. 12. In *Croce v. Sanders*, "a prolific author" in journals "where review and critique are expected" was found to be a private figure when the *New York Times* published an article accusing him of falsifying data and plagiarism because he did not voluntarily seek to influence the public debate. 459 F. Supp. 3d 997, 1015-17 (S.D. Ohio 2020). The court reached this conclusion notwithstanding the fact that plaintiff responded by letter to questions he received from a reporter at the *New York Times* for an article the reporter was preparing. *Id.* at 1016. The court reasoned that plaintiff only responded to the reporter and "did not make a broader or more pubic self-defense." *Id.* The court concluded that the defendant and the *New York Times* brought the plaintiff into the controversy. *Id.*

Similar to *Croce*, while Pastor Johnny met with investigators, he did not make a "broad[] and public self-defense." *Id.* Moreover, Pastor Johnny did not want to speak with Guidepost because "they wanted to talk to [him] about particulars of [his] leadership for the convention" and he did not know if he could be of any help. Hunt Dep. 116:23-117:8. Pastor Johnny only met with Guidepost when Ed Litton, a personal friend, encouraged him to do so. Hunt Dep. 116:21-117:11. Pastor Johnny did not even know the topic for the second "interview."[2] Wood Dep. 280:2-7. The allegations against Pastor Johnny were *outside the scope of any public controversy* and should have never been reported. Guidepost, the SBC, and the EC injected Pastor Johnny into the public controversy by including an almost 12-year-old consensual encounter in a Report on sex criminals. Moreover, under Defendants' reasoning, all 330 individuals interviewed by Guidepost would be limited-purpose public figures—an irrational result.

---

[2] It is disputed whether Guidepost even attempted to interview Pastor Johnny regarding the allegations against him. *See* Resp. to SOMF ¶ 31.

Finally, the Defendants argue that Pastor Johnny "cannot dispute that he played a prominent role in the controversy." EC Mot. at 19. Defendants again try to use the "public stir" that their own statements created to transform Pastor Johnny into a limited purpose public figure. *Ogle*, 279 F. App'x at 399. Any "prominent role" Pastor Johnny played in the controversy was the result of the Defendants' statements and conduct. Defendants decided to include Pastor Johnny in the Report and use him the "main story." Ex. 41. Pastor Johnny did not make these decisions and did not thrust himself into any public controversy. *Alkan Elecs. Int'l, Inc. v. Flint Journal*, 1989 U.S. Dist. LEXIS 18001, at *11 (E.D. Mich. June 2, 1989) ("The Court will not confer public figure status on plaintiffs based on their prominence in a controversy which developed as a result of the allegations in question.").

Based on the record and controlling legal principles, Pastor Johnny is not general-purpose public figure or a limited purpose public figure.

## II. The EC and SBC may be found liable under the actual malice or negligence standard.

In order to prevail on a defamation claim, a "plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Davis v. Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). The applicable standard of fault depends on whether a plaintiff is considered a public or private figure. If a plaintiff is deemed a private figure, a negligence standard applies. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978). If a plaintiff is deemed a public figure, the actual malice standard applies. *Id.* at 417-18.

As stated in Section I, Pastor Johnny is a private figure. Thus, the negligence standard applies. Regardless of the standard of fault, record evidence in the case is sufficient to allow a jury to find that the SBC and EC acted negligently or with actual malice.

**A. Issues of material fact pervade questions of actual malice involving the EC and SBC.**

**1. Actual malice standard.**

A statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "A reckless disregard for the truth means that the defendant "must have made the false publication with a high degree of awareness of . . . probable falsity." *Cobb v. Time, Inc.*, 278 F.3d 629, 637 (6th Cir. 2002) (internal quotations omitted). Reckless disregard "cannot be fully encompassed in one infallible definition" and "its outer limits will be marked out through case-by-case adjudication. . . ." *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968).

United States Supreme Court precedent provides clear guidance on the actual malice standard. In *Harte-Hanks Commc'ns v. Connaughton*, the Court concluded that evidence in the record "unmistakably" supported a finding of actual malice. Such evidence included, when the defendant: (1) made no attempt to interview a key witness, (2) did not listen to audio tapes that were provided, and (3) issued an editorial days before publication previewing the alleged defamatory article. 491 U.S. 657, 693 (1989). The Court concluded that this evidence suggested a "purposeful avoidance of the truth." *Id.* at 692. The Court reasoned that the failure to interview the witness and listen to audio tapes showed the defendant was committed to running its story and avoided any evidence that would raise doubts as to its truth. *Id.* at 682-84. The defendant's editorial that previewed the alleged defamatory article was further evidence the defendant had

already committed to publishing the story. *Id.* at 684. Thus, the deliberate effort to avoid the truth established actual malice. *Id.* at 693.

Similar to the defendant in *Harte-Hanks*, the EC and SBC were committed to issuing a Report on Pastor Johnny, regardless of the evidence. First, the EC and SBC acted with actual malice when they knew—or were recklessly indifferent to—the fact that Pastor Johnny had not been accused of a sexual assault or crime under Florida law and published the Report. Second, the EC and SBC avoided reviewing the underlying documents that would raise doubts as to the truth of the allegations. The EC and SBC's "inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [Jane Doe's] charges." *Id.* at 692. It was not a failure to investigate—it was a deliberate avoidance of the truth. This satisfies the actual malice standard, and there is, at a minimum, a genuine dispute as to the material fact of the SBC and EC's actual malice.

**2. A jury could find that the EC and SBC acted with actual malice when they knew—or were recklessly indifferent to—the fact that Pastor Johnny had not been accused of a sexual assault or crime under Florida Law.**

There is a genuine issue of material fact as to whether the EC and SBC acted with actual malice when they published the Report falsely stating that Pastor Johnny had been accused of a "sexual assault," even though his alleged conduct did not amount to a sexual assault or a crime under applicable criminal law.

The published Report stated that Pastor Johnny had been accused of a "sexual assault." Ex. 28 (Report) at 4, 149. This statement was made in the context of a Report that was focused on child molesters and other sex criminals. The first sentence of the Executive Summary sets the tone for the Report: "For almost two decades, survivors of abuse and other concerned Southern Baptists have been contacting the [SBC EC] to report child molesters and other abusers who

were in the pulpit or employed as church staff." *Id.* at 3. The second paragraph of the Executive Summary states that reports of abuse were ignored "even if it meant that convicted molesters continued in ministry with no notice or warning to their current church or congregation." *Id.* The Executive Summary discusses EC staff members who collected "news reports of Baptist ministers who [were] arrested for sexual abuse . . . ." *Id.* at 5. The summary then includes a list of bullet points referring to reports of:

- sexual abuse of a child,
- a pastor who allegedly allowed an accused abuser of young boys to be dismissed quietly,
- a student who was told not to report a rape,
- a defendant in a civil lawsuit who was accused of repeatedly abusing the plaintiff starting when he was 14 years old, and
- a gymnastics coach convicted of multiple counts of sexual assault against a minor.

*Id.* at 7. The Report defines the term "survivor" to mean "those persons who ***actually suffered*** at the hands of SBC clergy or SBC church staff or volunteers . . . ." *Id.* at 5 (emphasis added). Yet, Pastor Johnny is the first name mentioned in the entire Report. *Id.* at 4. He is the only person identified in a section of the Report titled "Allegations of Abuse by EC Staff and Members." *Id.* His accuser, Jane Doe, was labeled a "Survivor." *Id.* at 149. The allegations against Pastor Johnny were referred to as a "sexual assault." *Id.* at 4, 149.

When the Report accused Pastor Johnny of "sexual assault," a reasonable person reading the Report would have concluded Pastor Johnny was accused of a sex crime. This view is supported by record evidence. After reading the Report, SBC President and Ex Officio Executive Committee Member Bart Barber tweeted that that Pastor Johnny had been accused of a "felony" in the Report. Ex. 51. Pastor Johnny received messages from individuals who read the report and viewed it as accusing him of a sex crime. Hunt Decl. Ex. A ("Really looking forward to Johnny Hunt's next book; how to commit crimes and get away with it."); Hunt Decl. Ex. B ("Having just

read the independent investigation report of sexual abuse within the SBC, and specifically, your heinous sexual assault of a young married woman. . . ."); Hunt Decl. Ex. C ("You will pay for your crimes.").

But the allegations in the Report against Pastor Johnny, *even if true*, did not amount to a sexual assault or sex crime in Florida, the jurisdiction of the encounter. Sexual abuse crimes in Florida are enumerated broadly as "sexual battery," which is defined as "oral, anal, or female genital penetration by, or union with, the sexual organ of another or the anal or female genital penetration of another by any other object." Fla. Stat. Ann. § 794.011. The Report contains no details of "oral, anal, or female genital penetration," no "union with" the "sexual organ" of another, and no "female genital penetration of another by any other object." *See* Ex. 28 (Report) at 149-161. The impression created by the Report that Pastor Johnny had been accused of committing a sexual assault or sex crime was objectively false. Fundamentally, all citizens are "presumptively charged with knowledge of the law." *Atkins v. Parker,* 472 U.S. 115, 130 (1985).

Lack of consent is another required element for a sexual abuse in Florida and otherwise. *See* 1 FL Standard Jury Instructions in Criminal Cases 11.4. It was apparent from Report itself that consent was not evaluated by Guidepost.[3] The Report stated that Mr. Blankenship (the counselor who met with the Couple between 10-19 times in 2010)[4] "reported very similar details and events to those reported by Survivor and Pastor, ***with the only significant difference being on the issue of consent***." Ex. 28 (Report) at 155 (emphasis added). Importantly, the EC

[3] Guidepost admitted this fact at deposition. Ex. 3, Wood Dep. 156:4; 161:15-162:3; 170:16-17; 176:7-8; 189:7-8) ("[T]his wasn't about consent," "the report was not determining whether or not there was consent," "[t]his was not an issue of whether or not there was consent," "we weren't looking to see whether there was consent," and "the issue here was not consent.").

[4] Ex. 7, Blankenship Dep. 44:24-45:4.

confirmed through its corporate representative that the EC understood consensual sexual activity would **not** qualify as sexual abuse:

> Q. Did you understand at the time that you read this, sir, that, quote, sexual abuse, unquote, would include consented-to sexual-related activities?
>
> A. No.

Ex. 4., EC 30(b)(6) Dep. 159:4-17. Based on the EC's testimony and the fact that all citizens are "presumptively charged with knowledge of the law," the EC and SBC had knowledge of or – at a minimum – were recklessly indifferent to the false statement that Pastor Johnny had been accused of a sexual assault. Even a cursory review of the Report would have revealed that the necessary elements for a sexual assault or the applicable sex crime in Florida were not met. The EC and SBC did not need to review a single supporting document to reach this conclusion.

This alone satisfies the actual malice standard.

**3. A jury could find they EC and SBC acted with actual malice when they deliberately avoided evidence that would raise doubts as to the truth of the allegations.**

**a. Avoidance of evidence contradicting Jane Doe's story.**

As stated above, the EC and SBC had knowledge of or – at a minimum – were recklessly indifferent to the false statement that Pastor Johnny had been accused of committing a sexual assault. The EC and SBC's reckless disregard for the truth of the allegations against Pastor Johnny extends beyond this evidence. The EC and SBC were committed to publishing a Report on Pastor Johnny and avoided any evidence that would raise doubts as to the truth of the allegations.

The EC and SBC created a contractual right to review the Report and supporting information prior to publication and to dispute any factual findings and conclusions. *See* Resp.

GPS SOMF ¶ 38.[5] At the outset, it is important to note that the Engagement Letter waived the attorney-client privilege associated with issuance of the public Report, a decision considered so reckless that 15-20 members of the EC Board of Directors resigned, including the President of the EC. Ex. 4, EC 30(b)(6) Dep. 26:1-29:6, 35:11-39:8. Consistent with the Engagement Letter, the EC and SBC received a draft of the Report before publication. But the EC and SBC failed to take any action.

On May 10 2022, Guidepost provided the draft Report to the EC to review. *See* Ex. 62. In the section titled "Allegations of Abuse by Executive Committee Members," there were three names listed: Frank Page, Paul Pressler, and Paige Patterson. Ex. 46 at 112. That draft Report did not mention Pastor Johnny. *Id.* In this version of the Report, Pastor Johnny was not included under the section titled "Allegations of Abuse by Executive Committee Members." *Id.* The EC provided feedback to Guidepost on this version of the Report. Ex. 62 ("Guidepost was immensely helped by your feedback."). Similarly, the SBC received a version of the Report that did not include Pastor Johnny. GPS SOMF ¶ 39.

Only a few days later, on May 12 and 13, 2022, the EC and SBC were given, for the first time, the allegations against Pastor Johnny. GPS SOMF ¶¶ 41-42. This second review was not contemplated by the Engagement Letter. During the second review the EC and SBC should have

---

[5] The EC and SBC acted through the "Committee on Cooperation of the Executive Committee" ("CoC") and "SBC Task Force" ("Task Force"). Therefore, throughout this Memorandum any action taken by the CoC and Task Force is referred to as EC and SBC conduct. *Thornton*, 629 F. Supp. 3d at 785 ("[E]vidence offered by the nonmovant must be accepted as true.").

There is a genuine issue of material fact as to whether these committees were acting on behalf of the EC and SBC, which precludes entering summary judgment. This dispute is addressed in Section III.

requested underlying documentation regarding Pastor Johnny for many reasons. First, the allegations against Pastor Johnny were outside the scope of the Report, as he was not a member of the Executive Committee at the time of the encounter. Ex. 6, Guidepost 30(b)(6) Dep. 91:5-8. Second, the Report created the impression that Pastor Johnny was accused of a sexual assault. *See* Section II. Third, only a few days earlier, Guidepost included Mr. Page, Mr. Pressler, and Mr. Patterson in the "Allegations of Abuse by Executive Committee Members" section of the Report. Ex. 46 at 112. Now, Guidepost suddenly presented entirely new allegations stating Pastor Johnny had been accused of a sexual assault related to conduct from almost twelve (12) years ago, only days before the Report was due to be shared nationally.

The SBC and EC allowed the draft to move forward containing the impression that Pastor Johnny committed a sexual assault, which was directly contraindicated by the Report itself, as well as the supporting documents they failed to review. If the EC and SBC had reviewed the evidence it would have revealed:

- Mr. Blankenship (counselor), who met with Pastor Johnny, Pastor Johnny's wife, Jane Doe, and Jane Doe's Husband, individually and collectively in 2010, understood that the encounter was consensual. Ex. 7, Blankenship Dep. 45:4-8; Ex. 28 (Report) pg. 155.

- Jane Doe's written story contradicts the version in the Report. *Compare* Ex. 27 (Doe Story) at 11 [redacted], *with* Ex. 28 at 151 (Report) ("Survivor did not reciprocate").

- Husband believed Jane Doe had feelings for Pastor Johnny. Ex. 27 at 25.

- Jane Doe and her Husband did not believe there was a sexual assault for over 10 years. *Id.* at 1.

- Guidepost engaged and recommended therapists who helped Jane Doe and her Husband "articulate what had occurred." Doc. No. 75-1 at ECF 3; Ex. 65; Plaintiff's SOMF ¶¶ 32-44.

This, together with the fact that any allegation against Johnny Hunt should have been removed as outside the scope, should have led to the removal of the sex crime allegation by the EC and SBC on their second review. The EC and SBC's inaction was the "product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [Jane Doe's] charges." *Harte-Hanks*, 491 U.S. at 692.

**b. Justification for inaction.**

The inaction by the EC and SBC was driven by their previous commitment "to respond to the allegations that the SBC had not properly responded to sex crimes within Southern Baptist churches appropriately."[6] EC 30(b)(6) Dep. 178:17-22.

At the time Guidepost was engaged, the Southern Baptist Convention was facing a sexual abuse crisis. Ex. 28 (Report) at 3; Ex. 5, Barber Dep. 57:15-21. The SBC was facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches. EC 30(b)(6) Dep. 172:4-19. These allegations "posed challenges to the Convention and [were] ones that were needing to be addressed." Ex. 4, EC 30(b)(6) Dep. 173:19-174:1. Guidepost was hired for damage control and to prepare a Report to be shared with the world addressing the sexual abuse crisis within the SBC. Ex. 23. The Report was described as a "key moment in the history of the SBC." Ex. 5, Barber Dep. 85:16-20. There was "well-known and widespread" "anticipation" for the Report. Ex. 4, EC 30(b)(6) Dep. 13-19. The EC and SBC were relieved to have Pastor Johnny in their multi-million-dollar Report.

The first draft provided to the EC and SBC named Frank Page, Paul Pressler, and Paige Patterson in "Allegations of Abuse by Executive Committee Members" section of the Report.

---

[6] Evidence of ulterior motive and ill-will, when combined with other evidence, may point to actual malice. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000).

Ex. 46 at 112. The allegations against these three individuals were not news to the SBC. The SBC was already aware of the allegations against these individuals. Ex. 5, Barber Dep. 202:12-204:18. But the allegations against Pastor Johnny not known within the SBC. *Id.* 204:24-205:3. The SBC had found their main story for the highly anticipated Report, as shown by the EC and SBC's conduct after publication.

Events after publication also create a genuine issue of material fact as to the EC and SBC's reasoning for their failure to prevent publication of the Report. Mr. Bart Barber sought to capitalize on the use of Pastor Johnny in the Report in his campaign to become SBC President. Mr. Barber recognized the need to combat the sexual abuse crisis within the SBC when he was running for his first term as SBC President in 2022. Exs. 54-57; Ex. 5, Barber Dep. 48:12-14. Mr. Barber shared a "timeline of actions" he took with regard to the sexual abuse crisis in an effort to get votes. *Id.* After Mr. Barber was elected SBC President and became an Ex Officio member of the Executive Committee he appeared on 60 Minutes on behalf of the SBC and EC and stated that addressing the sexual abuse crisis was his "number one priority." Ex. 58. Then, Mr. Barber used Pastor Johnny and the Report in an attempt to prove to the SBC community he was going to address sex abuse. Mr. Barber tweeted the following in December 2022:




He did not stop there. When Pastor Johnny attempted to return to ministry, Mr. Barber released a statement (on SBC letterhead) criticizing Pastor Johnny's restoration and wrote that he would

"permanently 'defrock' Johnny Hunt if [he] the authority to do so" as a result of the allegations in the Report. Ex. 59.

The SBC, less than a month after the Report was published, expressly adopted a definition for "sexual abuse" during its 2022 annual meeting, defining the term as follows: "***Sexual abuse is defined as any sexual act that could result in criminal charges or civil liability in the jurisdiction where it occurred***." Ex. 49 (emphasis added). The EC and SBC used this definition in an attempt to prevent Pastor Johnny from preaching at churches. On February 1, 2023, the Credentials Committee sent a letter to Hiland Park and stated that Pastor Johnny is "an individual who has been credibly accused of sexual abuse, according to the standards adopted by the Convention." Ex. 43 at 1. This statement was unequivocally false by the SBC's own definition of sexual abuse.

The Report was a "key moment" in the history of the SBC. Ex. 5, Barber Dep. 85:16-20. The EC and SBC had committed to providing a public Report and needed "to respond to the allegations that the SBC had not properly responded to sex crimes within Southern Baptist churches appropriately." Ex. 4, EC 30(b)(6) Dep. 178:17-22. Given this commitment, the EC and SBC were willing to publish the Report regardless of how the evidence developed and regardless of whether or not the allegations against Pastor Johnny were credible.

**B. Pastor Johnny has cited evidence from which a jury could find that the EC and SBC acted negligently.**

Pastor Johnny is a private figure, as stated in Section I. Therefore, he must simply show "negligence in failing to ascertain the truth of the statement." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005). "In determining the issue of liability the conduct of the defendant is to be measured against what a reasonably prudent person would, or would not, have done under the same or similar circumstances." *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418

(Tenn. 1978). The record evidence cited above would allow a jury to find that the EC and SBC acted negligently when they published the Report.

The EC argues that it "is not uncommon for the absence of negligence to be determined as a matter of law at the summary judgment stage in a defamation action" and cite *Evans v. Amcash Mortg. Co.* in support. EC Mot. at 23. The EC's citation to *Evans* is not persuasive. Resolving whether the EC and SBC were negligent lies with a jury. *See Whitehurst v. Martin Med. Ctr., P.C.*, No. W2001-03034-COA-R3-CV, 2003 Tenn. App. LEXIS 619, at *26 (Tenn. Ct. App. Aug. 28, 2003) ("[D]etermining whether the defendant acted as a reasonably prudent man would have is within the province of the jury."); *see also Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 Tenn. App. LEXIS 676, at *9 (Tenn. Ct. App. Oct. 27, 2005) (In a defamation proceeding, "whether the defendant had the requite fault [is] normally [a] question[] of fact for the jury."); Restatement (Second) of Torts, § 580B cmt. k ("The determination of whether a defendant was negligent involves the application of the standard (what a reasonable person would do) to the facts that are found to exist in the particular case. This question is frequently called a fact issue and it is normally submitted to the jury.").

Moreover, despite the EC's claim that "it is indisputable that the EC acted as a reasonably prudent person would in relying on Guidepost's findings and conclusions," courts have found that negligence is best resolved by a jury no matter how reliable the defendant's source. EC Mot. at 24; *See, e.g., Mathis v. Phila. Newspapers, Inc.*, 455 F. Supp. 406, 414 (E.D. Pa. 1978) (finding that "even if plaintiff conceded that [defendant] obtained his photograph from the FBI, a jury might reasonably find that [defendant's] employees were negligent in relying upon the accuracy of that photograph").

Moreover, the factual distinctions between *Evans* and this case are significant and preclude summary judgment. In *Evans*, there was an *internal* investigation conducted by the defendant's own attorney. No. 01A01-9608-CV-00386, LEXIS 535, *3 (Tenn. Ct. App. Aug. 1, 1997). The results of the investigation stayed within the company and the allegedly defamatory communication was privileged. *Id.* at *3-4. Moreover, the allegation reported to the defendant was a recent in time. *Id.* at *3. Here, the scope of the publication was national. Ex. 4, EC 30(b)(6) Dep. 310:6-19. As the EC concedes, the Report was "required" to be published to the world. EC. Mot. at 22. Thus, a more thorough review of the allegations may be necessary. Furthermore, the allegations against Pastor Johnny were from almost 12 years ago, which would create the need for a more thorough review. Finally, the EC and SBC contracted for the right to review the draft Report and dispute factual findings and conclusions. Based on these facts, a jury could find that the EC and SBC acted negligently in publishing the Report.

* * *

Pastor Johnny's cited record evidence demonstrates, at a minimum, a genuine dispute of material fact as to whether the EC and SBC acted with negligence or actual malice.

## III. There is a genuine issue of material of fact as to the EC and SBC's ability to edit the Report.

The EC attempts to shift all responsibility for the Report to Guidepost. The EC argues that they "had absolutely no input regarding Guidepost's investigative process or responsibility for the contents of the Report." EC Mot. at 20. There is a genuine issue of material fact as to the EC and SBC's role in the Report.

The record evidence adduced shows that the EC's Committee of Cooperation ("CoC") was acting on behalf of the EC and SBC. SBC President Litton and <u>Chairman of the Executive Committee</u> Roland Slade appointed the "Committee of Cooperation of the Executive

Committee." Ex. 4, EC 30(b)(6) Dep. 148:11-15; Ex. 23. Moreover, when the SBC president appoints a committee and selects members for that committee, those committee members are serving the SBC and are acting on behalf of the SBC to carry out the will of the messengers. Ex. 5, Barber Dep. 14:11-22. Thus, the CoC was a committee directly appointed by the SBC President and Chairman of the Executive Committee and was acting on behalf of the EC and SBC in its role.

The members of the CoC further support the conclusion that the committee was acting on behalf of the EC. Paragraph 2.2 of the Engagement Letter stated "The Committee on Cooperation of the Executive Committee . . . will be headed by the President of the SBC, who will also be a member of the Committee." Ex. 23 at 4. The President of the SBC is an ex officio member of the EC. Ex. 4, EC 30(b)(6) Dep. 160:8-15. Paragraph 2.2 continues: "The remaining four members will be members of the Executive Committee who were appointed to their first term on the Executive Committee in June 2021. Two members of the Committee will be chosen by the Executive Committee, and two will be chosen by the Task Force." Ex. 23 at 4. Thus, the CoC was made up of five members—***all members of the Executive Committee***. Ex. 4, EC 30(b)(c) 275:8-11.

Further, the Sexual Abuse Task Force Vice Chair explained that "[t]he Committee on Cooperation is a way for the EC to have an official relationship with Guidepost Solutions while maintaining the independence of Guidepost." Resp. EC SOMF ¶ 4. Updates from the CoC provided directly to the EC offers evidence that the CoC was acting on behalf of the EC:

> The CoC was created as a means of assuring the investigation into the EC's handling of sexual abuse is able to proceed as planned and that ***EC trustees are represented throughout the process***.

Ex. 45; *see also*, *id.* ("Finally, ***our committee represents you in this process***. . . .") (emphasis added).

Similarly, the Task Force of the SBC was appointed by the SBC President. EC 30(b)(6) Dep. 133:10-13. The Task Force of the SBC had the ability to review the draft Report, provide edits, and was responsible for overseeing the investigation. Ex. 23.

Finally, there is evidence that the CoC and the Task Force did edit the Report, and specifically sections of the Report on Pastor Johnny. Exs. 47-48; Ex. 63; Ex. 6, Guidepost 30(b)(6) Dep. 164:10-11 (testifying that the notes were "taken on a call with [the] CoC"); Ex. 70 (confirming Tongring took notes from the CoC meeting in track changes).

Therefore, there is a factual dispute that must be resolved by the jury as to whether the CoC and the Task Force were acting on behalf of the EC and SBC.

## IV. False Light

### A. Actual malice does not apply to Pastor Johnny's false light claim; if it does Pastor Johnny has presented evidence that would allow the jury to find the EC and SBC acted with actual malice.

Under Tennessee law, "actual malice is the appropriate standard for false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001). Actual malice is not required when the claim is brought by a private plaintiff about matters of private concern. *Id.* Actual malice does not apply to Pastor Johnny's false light claims. First, as set forth in Section I, Pastor Johnny is not a public figure. Second, Pastor Johnny's encounter with Jane Doe in 2010 was a matter of private concern.

Two adults engaging in an extramarital encounter is not a matter of public concern. *See, e,g., Albert v. Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) ("That two corrections officers

engaged in an affair in violation of department rules, though perhaps appealing to the prurient interest of some members of the public and Albert, does not implicate a matter of public concern."); *Lindberg v. Dow Jones & Co.*, No. 20-cv-8231 (LAX), 2021 U.S. Dist. LEXIS 151397, at *21 (S.D.N.Y. Aug. 11, 2021) (noting that an "extramarital affair would typically not be a matter of 'public concern'"). Pastor Johnny was not the president of the SBC or a member of the Executive Committee at the time of the incident. Ex. 3, Wood Dep. 343:15-18; Ex. 28 (Report) at 37. He was merely a private citizen whose marital fidelity was nobody else's business. The fact that the SBC was enveloped in a scandal regarding sexual abuse within its ranks does not convert a private, consensual extramarital encounter into a matter of public concern. At minimum, there is a genuine issue of material fact as to whether the encounter was a matter of public concern, which should go to the jury.

Therefore, because Pastor Johnny is a private figure and his brief, consensual encounter is a matter of private concern, the negligence standard applies to Pastor Johnny's false light claim. Pastor Johnny has cited record evidence showing the EC and SBC acted negligently. *See* Section II. Finally, even if the actual malice standard did apply, Pastor Johnny has presented evidence that would allow the jury to find that the EC and SBC acted with actual malice. *See* Section II.

## V. Intentional Infliction of Emotional Distress

### A. There is a genuine issue of material fact whether the EC and SBC's conduct was outrageous.

The EC and SBC have waived all argument relating to the "outrageousness" element of Pastor Johnny's intentional infliction of emotional distress claim. The EC simply states that Pastor Johnny has "no evidence" that publication of the Report was "so outrageous that it is not tolerated by civilized society." EC Mot. at 26. The EC then provides the legal standard for

outrageous conduct and makes the conclusory statement: "It is indisputably clear that Hunt cannot meet that exacting standard and that the EC's publication of the Report was not outrageous conduct." *Id.*

Similarly, the SBC writes "there is no evidence that any conduct by the SBC in connection with the publication of the Guidepost Report was so outrageous that it is not tolerated by civilized society." SBC Mot. at 16 (quotations and alterations adopted).

The EC and SBC offer no argument. The EC and SBC cite no evidence. Instead, they have improperly attempted to shift their burden on summary judgment to Pastor Johnny. The Court should decline to craft an argument for them and instead find the argument waived. *Masters Ent. Grp., Inc. v. Aurich*, No. 3:18-cv-01314, 2022 U.S. Dist. LEXIS 105916, at *14-15 (M.D. Tenn. June 14, 2022); "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In any event, there is ample evidence that both the EC and SBC's behavior was outrageous:

- The EC and SBC intentionally published a Report creating the false impression that Pastor Johnny had committed a crime and had "sexually assaulted" Jane Doe, even though the specific allegations against him would not amount to a crime in the applicable jurisdiction or otherwise. *See* Section II.

- The EC and SBC had committed to providing a public Report and needed "to respond to the allegations that the SBC had not properly responded to sex crimes within Southern Baptist Churches appropriately." Ex. 4, EC 30(b)(6) Dep. 178:17-22. There was "well-known and widespread" "anticipation" for the Report. *Id.* 310:13-19.

- Given this commitment and anticipation, the EC and SBC were willing to publish the Report regardless of how the evidence developed and regardless of whether or not the allegations against Pastor Johnny were credible.

- The EC and SBC published the Report understanding the Report would receive "national publicity." *Id.* 310:6-11.

- The EC and SBC then published the allegations against Pastor Johnny in other locations to show the SBC-community they were being tough on sex abuse, including publishing a tweet stating Pastor Johnny had been accused of a "felony." Ex. 51; Ex. 43.

As a result, a jury could determine that the EC and SBC's behavior was sufficiently outrageous to support a finding of intentional infliction of emotional distress.

Actual malice does not apply because Pastor Johnny is not a public figure. *See* Section I. Even if it did, Pastor Johnny has presented evidence where a jury could find that the EC and SBC acted with actual malice. *See* Section II.

**B. Pastor Johnny's emotional damages are a jury issue.**

Both the EC and SBC argue that Pastor Johnny has not produced evidence of emotional damages. Pastor Johnny has proffered sufficient evidence showing his emotional distress. Pastor Johnny detailed the professional help he sought for the emotional distress resulting from Defendants' defamatory statements. Ex. 13 at Interrogatory No. 13; Hunt Decl. Ex. D. He identified in detail the emotional damages caused by Defendants' conduct. Ex. 14 at Interrogatory 14; Hunt Dec. ¶¶ 8-10. Additionally, Pastor Johnny testified at his deposition regarding emotional damages caused by Defendants' conduct. Ex. 8, Hunt Dep. 118:2-3, 118:15-21, 149:11-12; 206:18-19, 226:12-17, 227:13-14, 256:10-13. The EC and SBC ignore this evidence and attempt to create a standard for emotional damages inconsistent with applicable law. At trial, a "plaintiff may present this evidence by his or her own testimony, the testimony of lay witnesses acquainted with the plaintiff such as family, friends, and colleagues, or by the testimony of medical experts." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 210 (Tenn. 2012). No expert testimony is required. *Id.*

This evidence creates a genuine issue of material fact as to whether Pastor Johnny suffered severe emotional distress as a result of the EC and SBC's actions, and Pastor Johnny is entitled to present that evidence to the jury.

## VI. Negligent Infliction of Emotional Distress

### A. There is a genuine issue of material fact as to the elements of duty and breach.

The EC and SBC offer no argument on this topic. The EC's "argument" that Pastor Johnny is unable to show the elements of duty and breach is limited to one sentence with no evidentiary citations or supporting argument: "Hunt cannot show that the EC owed him any duty or that it breached any duty in publishing the Report." EC Mot. at 27. The SBC did the same: "The SBC is entitled to summary judgment on this claim because there is no evidence that the SBC owed Hunt any duty nor that it breached any duty relative to the Guidepost Report." SBC Mot. at 16. They have improperly attempted to shift their burden on summary judgment to Pastor Johnny.

Nevertheless, the EC and SBC had a duty to Pastor Johnny and breached that duty. "To determine whether a particular defendant owes a duty of care to a particular plaintiff, [courts] balance the foreseeability and gravity of the potential harm against the feasibility and availability of alternatives that would have prevented the harm." *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005). Here, EC and the SBC owed Pastor Johnny a legal duty to use reasonable care in reporting the allegations against him. The harm from publishing to the world false statements that someone had been accused of a sexual assault was severe and foreseeable. *See* Ex. 39 ("[redacted] The risk of reputational, pecuniary, and emotional damages is high and outweigh the burden of alternatives.

"In a negligence action, the standard of conduct is always the same. It is a standard of reasonable care in light of the apparent risk." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Whether the EC and SBC breached this duty is a jury issue. *Kindred v. Townsend*, No. W2021-01481-COA-R3-CV, 2022 Tenn. App. LEXIS 471, at *11 (Tenn. Ct. App. Dec. 7, 2022) ("[W]hether a defendant breached their duty of care is ordinarily a question of fact."). The EC and SBC breached their duty when they intentionally published a Report, to the world, that focused on child molesters and other sex criminals with Pastor Johnny as the lead story with false statements that Pastor Johnny had been accused of a sexual assault. Therefore, there is a genuine issue of material fact as to duty and breach.

**B. The requirement for expert or scientific proof of emotional injury does not apply.**

The requirement for "expert medical or scientific proof" of emotional injury is a "special evidentiary requirement[]" that applies to cases where plaintiffs allege damages from mental anguish alone. *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 136-37 (Tenn. 2001). This standard does not apply in cases like this one where "emotional damages are a 'parasitic' consequence of negligent conduct that results in multiple types of damages." *Id.* Thus, Pastor Johnny can seek emotional damages under his negligent infliction of emotional distress claim in tandem with any of his other claims.

## VII. Public Disclosure of Private Facts

**A. Tennessee courts have recognized and applied the tort of public disclosure of private facts.**

The Tennessee Court of Appeals has held: "Tennessee has adopted the common law tort of invasion of privacy." *Roberts v. Essex Microtel Assocs.,* 46 S.W.3d 205, 210-11 (Tenn. Ct. App. 2000); *see also Parr v. Middle Tennessee State Univ.,* No. M1999-01442-COA-R3-CV,

1999 Tenn. App. LEXIS 803, *8-10 (Tenn. Ct. App. Dec. 3, 1999) (recognizing a claim for invasion of privacy for public disclosure of private facts).

Two federal opinions construing Tennessee law have also followed the Restatement (Second) of Torts approach for the tort. *See International Union v. Garner,* 601 F. Supp 187, 189 (M.D. Tenn. 1985); *Beard v. Akzona, Inc,* 517 F. Supp. 128, 131 (E.D. Tenn. 1981).

### B. Whether Pastor Johnny's brief, consensual encounter was a matter of private concern is a jury issue.

The public disclosure of private facts tort "serves as a valuable source of deterrence and accountability for our ever-increasing population and the growing technological opportunities for invasion into others' lives, the compilation of private data, and the disclosure of purely personal matters." *Doe et al. v. Netflix et al.*, No. 1:22-cv-01281-TWP-MJD, 2023 U.S. Dist. LEXIS 98011, at *17-18 (S.D. Ind. June 6, 2023). This cause of action focuses on Defendants' publication of only the true facts – *i.e.*, that Pastor Johnny had a brief, consensual extramarital encounter with a married woman.

Pastor Johnny's encounter with Jane Doe was a matter of private concern as explained in Section IV.A (citing *Albert v. Mitchell* and *Lindberg v. Dow Jones & Co.*). Moreover, the cases cited by the EC and SBC do not support their arguments. The EC cites *Doe v. Word of Life Fellowship, Inc.*, in support of the statement that Pastor Johnny's version of the encounter (a brief, consensual encounter) is of legitimate concern to the public. EC Mot. at 28. First, the case was decided in a different context than a public disclosure of private facts claim. In *Word of Life Fellowship*, the plaintiff was attempting to prevent disclosure of his name in a lawsuit where there is a "public interest in open judicial proceedings." No. 11-40077-TSH, 2011 U.S. Dist. LEXIS 78383, at *4 (D. Mass. July 18, 2011). Second, the court determined that "allegations of

*sexual assault of a minor* is of public interest." *Id.* (emphasis added). Sexual abuse of a minor is not the same as a brief, consensual encounter between two adults. Thus, *Word of Life Fellowship* provides no support for the EC's position that Pastor Johnny's brief, consensual encounter with an adult (34-year-old woman) is a legitimate concern to the public.

The SBC cites *Snyder v. Phelps*, 562 U.S. 443 (2011) in support of its argument that Pastor Johnny's brief, consensual encounter is a matter of public concern. The SBC argues that the case identifies "scandals involving the Catholic clergy' as a matter[] of public import." SBC Mot. at 17. However, the context for that statement in the court's opinion was a sign that read "Priests Rape Boys." *Id*. at 448. The "scandal" was a crime and was not comparable to a brief, consensual encounter between two adults.

At minimum, there is a genuine issue of material fact as to whether the encounter was a matter of public concern, which should go to the jury.

## VIII. SBC President and Ex Officio Member of the EC Bart Barber's Tweet

### A. There is a genuine issue of material fact whether Bart Barber published the tweet in his capacity as President of the SBC and Ex Officio member of the Executive Committee.

On December 5, 2022, the then-current President of the SBC and Ex Officio Member of the Executive Committee, Bart Barber, publicly tweeted: "Hunt was the subject of a third-party investigation in response to allegations that he sexually assaulted a woman half his age in ways that would, to my knowledge, ***constitute a felony in any jurisdiction in the US***." Ex. 51 (emphasis added). Both the EC and SBC argue that they are entitled to summary judgment on claims arising from then-SBC President and Ex Officio Executive Committee Member Bart Baber's Tweet.

The EC and SBC argue they do not have any responsibility for the Tweet. But there is a factual dispute as to the capacity in which the Tweet was published. The Tweet was published by Bart Barber at the time he was President of the SBC and an Ex Officio member of the Executive Committee. EC Dep. 372:15-17. When Mr. Barber published the Tweet at issue "SBC President" was in his Twitter biography visible to anyone who clicked his public profile. Ex. 52. Mr. Barber voluntarily appeared on *60 Minutes* and told the national audience that when he speaks he is representing 50,000 churches. Ex. 4, Barber Dep. 45:24-46:5. Mr. Barber testified he used Twitter "to share material related to the SBC" to campaign for SBC President. *Id.* 57:6-12; 46:14-17; 48:8-10. There is evidence Mr. Barber did use his Twitter account to provides updates to the SBC generally. Ex. 53. Thus, there is a factual dispute whether Mr. Barber published the defamatory tweet in his personal capacity or in his role as President of the SBC and Ex Officio Member of the Executive Committee that needs to be decided by the jury. Summary judgment cannot issue on this topic.

**B. The EC and SBC waived its remaining arguments relating to Mr. Barber's Tweet; even if they did not, there is a jury issue relating to the claims arising from the Tweet.**

Both the SBC and EC fail to offer any argument or evidence in support of their conclusory statements that Pastor Johnny cannot prove essential elements of his claims with Mr. Barber's Tweet. Again, the Court should decline to craft an argument for them and instead find the argument waived. *Masters Ent. Grp.*, 2022 U.S. Dist. LEXIS 105916, at *14-15; "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608.

In any event, Pastor Johnny has offered sufficient evidence for each claim:

**Defamation and False Light.** Pastor Johnny is not a public figure, so the actual malice standard does not apply to this claim. Even assuming, *arguendo*, that it did, a jury could find actual malice. The accusations against Pastor Johnny do not amount to a sexual assault or a felony in Florida where the incident occurred. *See* Section II. In August 2022, prior to Mr. Barber's Tweet, Pastor Johnny's Counsel sent a letter to the SBC and EC explaining that the allegations against Pastor Johnny did not amount to a crime under Florida law. Ex. 60 (referencing Fla. Stat. § 794.011). When the Tweet was published after receiving this notice, SBC President and Ex Officio Executive Committee Member Bart Barber knew his statement was false, or was recklessly indifferent. Additionally, at his deposition Mr. Barber could not identify the felony in Florida that the allegations in the Report would meet and admitted he did no research into the sexual assault laws in Florida prior to his Tweet. Ex. 4, Barber Dep. 96:5-7, 97:15-18. Thus, this provides an independent reason for finding that Mr. Barber tweeted that Pastor Johnny was accused of a felony with reckless disregard for its truth. The same evidence would also be sufficient for a jury finding of negligence.

**Intentional and Negligent Infliction of Emotional Distress.** There is sufficient evidence that the Tweet caused Pastor Johnny to suffer serious mental injury. Hunt Decl. ¶¶ 8-10.

**Public Disclosure of Private Facts**. Pastor Johnny did not bring a claim for public disclosure of private facts relating to the Tweet. The private information was already public on December 5, 2022, as a result of Defendants' conduct.

## IX. The Committee on Cooperation Letter

### A. Ecclesiastical Abstention Doctrine does not apply.

The SBC and EC attempt to invoke the ecclesiastical abstention doctrine to avoid liability for the Hiland Park Letter (the "Letter"). However, the claims arising from the Letter are not

ecclesiastical in nature. Rather, they are secular civil claims and can be resolved by referring to secular standards.

The ecclesiastical abstention doctrine recognizes that the "Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) "Whether a secular court may hear a tort despite the church autonomy doctrine turns on the availability of secular standards and the ability of a court to resolve the controversy without reference to religious doctrine." *Ogle v. Hocker,* 279 F. App'x 391 (6th Cir. 2008).

Contrary to the EC's statements, Pastor Johnny is not challenging "whether Hiland Park's behavior was consistent with SBC beliefs," "whether Hiland Park was in friendly cooperation with the SBC," or the Credentials Committee's "efforts to investigate a cooperating church's continued 'platforming'" of a pastor. EC Mot. at 31. Pastor Johnny is challenging public statements made by the Credentials Committee accusing him of a secular crime. The Letter stated that Pastor Johnny was "an individual who has been credibly accused of sexual abuse, according to the standards adopted by the Convention." Ex. 46. The EC and SBC elected to define sexual abuse in secular terms and explicitly deferred to secular standards: "any sexual act that could result in criminal charges or civil liability in the jurisdiction where it occurred." Ex. 49.

The relevant questions concern questions of civil law, including whether the accusations made against Pastor Johnny were false; whether it was published; whether the EC and SBC exercised sufficient care in determining whether the accusations were true or false prior to publication; and how Pastor Johnny was damaged by the public accusations. Thus, determining whether the factual assertion made in the Letter does not require the court to apply any church

doctrine. *See, e.g., Ogle v. Hocker*, 279 F. App'x 391, 396 (6th Cir. 2008) (refusing to apply the ecclesiastical abstention doctrine because the disputed issues on plaintiff's defamation claim could "be resolved through application of secular standards without any impingement upon church doctrine or practice."); *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 347 (5th Cir. 2020) (reversing district court's dismissal of defamation, intentional interference with business relationships, and intentional infliction of emotional distress claims because the complaint "asks the court to apply neutral principles of tort law to a case").

The EC and SBC have not met their burden of showing that the ecclesiastical abstention doctrine applies.

**B. The jury must determine whether the SBC or EC have responsibility for the letter.**

There is a dispute as to whether the Credentials Committee is part of the EC or SBC. Guidepost, the EC, and the SBC have described the Credentials Committee as committee of the Executive Committee. Ex. 28 at 32. Further, the Credentials Committee is comprised of the chair of the Executive Committee and three members nominated by the Executive Committee, among other members. Resp. EC SOMF ¶ 20. Therefore, there is a genuine issue of material fact as to whether the Credentials Committee was part of the EC. This is a question for the jury. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984) ("The scope and extend of an agent's real and apparent authority are questions to be determined by the trier of fact from all of the facts and circumstances in evidence."); *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970) ("Agency is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreements or acts.").

### C. There is a genuine issue of material fact as Pastor Johnny's claims relating to the Letter.

**Defamation and False Light.** First, contrary to the EC's assertion, the Letter does not "simply state[] that the Credentials Committee received certain information, summarized that information, and requested that Hiland Park respond to its inquiry." EC Mot. at 32. It affirmatively stated that Pastor Johnny had been credibly accused of a sexual act that could result in "***criminal charges or civil liability in the jurisdiction where it occurred***." Ex. 46; Ex. 49 at 5. This is unequivocally false. Second, Pastor Johnny does not need to prove actual malice because he is a private figure. *See* Section I. In any event, prior to the publication of the Letter, Pastor Johnny's Counsel sent a letter to the SBC and EC explaining that the allegations against Pastor Johnny did not amount to a crime under Florida law. Ex. 60 (referencing Fla. Stat. § 794.011). When the Letter was published after receiving this notice, the EC and SBC knew—or were recklessly indifferent—to the truth of the statements in their Letter. This satisfies the actual malice standard and negligence standard. Third, there is evidence that the Letter caused Pastor Johnny to suffer serious mental injury. Hunt Decl. ¶¶ 8-10. Fourth, the communication to any third party is sufficient for a defamation claim, including one person. Restatement (Second) of Torts, § 652D, cmt a. Moreover, there is a genuine issue of material fact as to the extent of the publication of the Letter precluding summary judgment on the publication element of false light. The EC and SBC have not produced any evidence showing the letter was sent to only Hiland Park. Resp. to SBC SOMF ¶ 30.

**Public Disclosure of Private Facts.** Pastor Johnny is not bringing a claim for the public disclosure of private facts with the Letter. At the time the Letter was published, the Defendants had already revealed the private fact.

## X. Damages.

### A. Pastor Johnny is entitled to recover damages from his lost book deals, lost speaking engagements, and other ministry-related income, as well as emotional damages.

The EC argues that the Court should rule that Pastor Johnny should not be able to recover for his lost income from book deals, speaking engagements, and other ministry-related activities. There is a genuine issue of material fact regarding damages that needs to be resolved by the jury.

The factual assertions made by the EC in its motion are disputed, as described in Pastor Johnny's response to the EC's Statement of Material Facts. *See* Resp. EC SOMF ¶ 24-25. The EC fails to acknowledge that Pastor Johnny is engaged directly to speak at events, write and publish books, and engage in other ministry-related activities. Hunt Decl. ¶ 11-12. As a result, Pastor Johnny determines how to distribute the money he receives from his ministry involvement. *Id.* ¶ 13-14. Pastor Johnny can keep the money for himself and treat it as taxable income, or distribute the money to Johnny Hunt Ministries, Inc. Hunt Dep. 85:21-86:6. Defendants' expert recognized this distinction at his deposition. Alexander Dep. 104:11-18; 104:25-105:4; 108:21-109:3. Whether Pastor Johnny is able to recover these damages is a jury issue. *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 690 (Tenn. 2020) ("We also have long-recognized that the ascertainment of damages is a question of fact for the jury.") (collecting cases).

Finally, the EC again attempts to preclude pastor Johnny from recovering for his emotional damages caused by Defendants' conduct. Pastor Johnny's emotional damages are an issue for the jury and are supported by record evidence. *See* Section V.B.

## CONCLUSION

For all these reasons, the Court should deny the EC and SBC's motions for summary judgment, and this case should proceed to trial.

Dated: July 31, 2024

Respectfully submitted,

s/ Andrew Goldstein

**Todd G. Cole, Esq., BPR # 031078**
**Andrew Goldstein, Esq., BPR # 037042**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 490-6020
Fax: (615) 942-5914
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

*-and-*

**Robert D. MacGill, Esq. (*pro hac vice*)**
**Patrick J. Sanders, Esq. (*pro hac vice*)**
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
patrick.sanders@macgilllaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Memorandum in Support of Response in Opposition to the Executive Committee of the Southern Baptist Convention and Southern Baptist Convention's Motions for Summary Judgment to be electronically filed with the Clerk of the Court on July 31, 2024, using the CM/ECF system, which will automatically serve all counsel of record listed below:

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq.
Patrick J. Sanders, Esq.
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

John R. Jacobson, Esq.
Katharine R. Klein, Esq.
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

Scarlett Singleton Nokes, Esq.
R. Brandon Bundren, Esq.
E. Todd Presnell, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
snokes@bradley.com
bbundren@bradley.com
tpresnell@bradley.com

Gene R. Besen, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone: (214) 257-9758
gbesen@bradley.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
Scott Klein, Esq.
Adam Brody, Esq.
Alex Otchy, Esq.
MINTZ & GOLD LLP
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
brody@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Defendant Guidepost Solutions LLC*

L. Gino Marchetti, Jr., Esq.
Matt C. Pietsch, Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com
matt@tpmblaw.com

*Counsel for the Southern Baptist Convention*

Melissa J. Hogan, Esq.
QAVAH LAW
8757 Horton Hwy
College Grove, TN 37046
Telephone: (615) 293-6623
melissajhogan@qavahlaw.com

*Counsel for Jane Doe*

s/ Andrew Goldstein
ANDREW GOLDSTEIN