

**SI GLOBAL**
Partners

# REVIEW OF MAY 15, 2022 GUIDEPOST SOLUTIONS REPORT FOR THE SEXUAL ABUSE TASK FORCE OF THE SOUTHERN BAPTIST CONVENTION

Sanders Decl.

Exhibit

**20**

**SI Global Partners**
**199 Water Street, 16th Floor**
**New York, NY 10038**
**www.siglobalpartners.com**

1

**EXHIBIT**
129



**SI GLOBAL**
Partners

## <u>CONTENTS</u>

Introduction

Objective……………………………………………………………………………… 3

Background…………………………………………………………………………… 3

Methodology………………………………………………………........................ 4

Compensation…………………………………………………………………….....4

Reviewer…………………………………………………………………………… 5

Findings—Application of Quality Standards for Investigations

Introduction: Categorization of the Guidepost Solutions Report………………………8

Qualifications…………………………………………………………………….....9

Independence………………………………………………………………………10

Due Professional Care ……………………………………………………………11

Planning……………………….……………………………………………………..13

Executing Investigations………………………………………………………...14

Reporting…………………………………………………………………………...15

Managing Investigative Information……………………………………………16

Conclusion……………………………………………………17

Exhibit 1: List of Items Considered or Relied Upon…………………………………18

Exhibit 2: Prior Expert Witness Testimony………………………………………..21

Exhibit 3: Publications……………………………………………………………..23

2



**SI GLOBAL**
Partners

# <u>INTRODUCTION</u>

## <u>Objective</u>

The objective of this evaluation was to review the May 15, 2022 Guidepost Solutions Report (hereinafter the "Guidepost Solutions Report" or the "Report"), prepared by Guidepost Solutions for the Sexual Abuse Task Force of the Southern Baptist Convention (the "Task Force") and to express an expert opinion on whether the Guidepost Solutions Report was investigated, analyzed, and formally reported in a manner that was within parameters and standards considered reasonable in the conduct of internal investigations, inspections, and audits.

The review conducted by SI Global Partners ("SI Global") focused particularly on the section of the Guidepost Solutions Report that addressed an allegation of sexual assault against former Southern Baptist Convention President Johnny Hunt (hereinafter "Mr. Hunt."). <u>See</u> Report, pp. 4, 149-161. However, other portions of the Report were referred to and cited herein when relevant and necessary to formulating judgments about the overall procedures and substance utilized in the Report and the underlying investigations and analyses.

SI Global was not requested to investigate nor to reach any conclusion about the merits of the allegation against Mr. Hunt and has no opinion with respect thereto.

## <u>Background</u>

The Guidepost Solutions Report was the product of an engagement of Guidepost Solutions by the Task Force and the Southern Baptist Convention Executive Committee (the "Executive Committee") pursuant to an Engagement Letter dated October 5, 2021 (the "Engagement Letter"). Under the Engagement Letter, the Task Force was Guidepost Solutions' client and Guidepost Solutions was guaranteed complete independence in its investigation.

The Engagement Letter provided that Guidepost Solutions would conduct an investigation into: (1) allegations of abuse by Executive Committee members; (2) mishandling of abuse allegations by Executive Committee members from January 1, 2000 to June 14, 2021; (3) allegations of mistreatment of sexual abuse victims by Executive Committee members from January 1, 2000 to

3



**SI GLOBAL**
Partners

June 14, 2021; (4) patterns of intimidation of sexual abuse victims advocates from January 1, 2000 to June 14, 2021; and (5) resistance to sexual abuse reform initiatives from January 1, 2000 to June 14, 2021.  Moreover, Guidepost Solutions was required to "perform an audit of the procedures and actions of the [Southern Baptist Convention] Credentials Committee after its formation in mid-June 2019, using best standards and practices designed to ensure accountability, transparency, and care for the wellbeing of survivors of sexual abuse."  Id. at p. 5.

Methodology

The standards utilized in SI Global's review were based on years of training and practical experience in the field of investigating, supervising, and conducting executive review of internal investigations in both the private and public sectors.

The most common and frequent occurrences of internal investigations, audits, and inspections are by offices of inspectors general.  The most recognized standards for conducting and reviewing investigations are those are set forth in the Quality Standards for Investigations, as promulgated by the Council of Inspectors General on Integrity and Efficiency (CIGIE).  Accordingly, those same standards were used by SI Global in its review of the investigation, analyses, and Report of Guidepost Solutions.

Compensation

SI Global is compensated on the basis of hourly rates multiplied by the number of hours worked on an assignment. For this matter, the rate of $500.00 per hour is being charged for all expert witness and services that the Reviewer performs.  SI Global's compensation in this matter is not contingent upon the outcome or reaching of certain conclusions.  The Reviewer has no vested interest in the outcome of this matter.  Before accepting this engagement, the Reviewer confirmed that neither he nor any other person at SI Global was aware of potential conflicts of interest with the parties to this matter.

4



**SI GLOBAL**
Partners

<u>Reviewer</u>

**Managing Director Douglas Leff:**  Mr. Leff has developed a significant expertise in compliance matters through various aspects of his career in law enforcement and as a practicing attorney.

Mr. Leff served as a Special Agent with the Federal Bureau of Investigation (FBI) from 1996-2022. From the beginning of his career, he was assigned to FBI New York's Organized Crime Branch, where he worked labor racketeering cases, followed by an assignment to a squad that specialized in money laundering and asset forfeiture, which he was ultimately promoted to supervise.  His work on both squads required extensive research and investigation of public and private entities to detect suspicious activities indicative of organized crime infiltration through bribery, kickbacks, and financial manipulation.  Mr. Leff worked alongside federal, state, city, and private industry regulators to determine objectively reasonable business standards of companies ranging from machine building and construction to the communications field, and then compared those standards to evidence and intelligence collected through document subpoenas, interviews, and physical and electronic surveillance to determine whether an organization being investigated exhibited distinctions from those objective standards.  Some of Mr. Leff's investigations yielded evidence of no-show jobs, over-invoicing for municipal contracts, antitrust violations, unfair hiring practices, and other labor law violations.  After working closely with the U.S. Department of Labor Office of Inspector General to investigate a massive overbilling fraud on several federally funded construction projects, Mr. Leff was offered the opportunity to become cross designated as a Special Assistant United States Attorney in the Eastern District of New York.  There, he litigated both criminal and civil asset forfeiture cases against businesses and individuals who had committed fraud against the government or regulated industries.  In the civil forfeiture context, he wrote discovery demands that included interrogatories, notices of admission, and third-party subpoenas and took and defended lengthy depositions.  These cases resulted in the identification of red flags, best practices, and failures in the compliance programs of financial institutions and other businesses, which Mr. Leff was asked to share through written intelligence products, media interviews, and speaking on behalf of the FBI at industry, academic, and law enforcement conferences.

Mr. Leff received the Attorney General's John Marshall Award in 2005, after which the FBI promoted him to Chief of the Asset Forfeiture and Money Laundering Unit at FBI Headquarters, giving him global responsibility to work with government and industry representatives on areas

5


of compliance related to, among other things, Know Your Customer, Due Diligence, and Countering the Financing of Terrorism programs. Mr. Leff worked closely with the United States Treasury Department to draft proposed compliance regulations which were eventually passed into law as part of the Corporate Transparency Act of 2022, requiring corporations with set amounts of assets to disclose their true beneficial ownership upon registration with state and county clerks. This was achieved in part through numerous case examples which Mr. Leff provided to his U.S. Treasury and Justice Department (DOJ) counterparts, and which demonstrated the inability of companies to engage in responsible compliance when corporate customers were able to shield their true ownership. Notably, the Corporate Transparency Act not only places additional requirements on corporations but redefines the scope of due diligence that businesses and financial institutions will need in order to be compliant with relevant laws such as the Foreign Corrupt Practices Act and the Securities Exchange Act. As Mr. Leff was elevated to more senior level positions within the FBI, he took on additional leadership roles in advising industries on hallmarks associated with fraud, money laundering, and public corruption, and best practices for maintaining good and defensible compliance programs. As Assistant Special Agent in Charge of the FBI New York Field Office's Complex Financial Crimes Branch, Mr. Leff spoke at numerous industry compliance conferences and explained how law enforcement identifies and evaluates whether a compliance program was deficient, and he gave recommendations on triggers that should cause companies to consider reporting an issue to law enforcement before a formal criminal investigation is commenced. Mr. Leff jointly investigated complex frauds with the Securities and Exchange Commission and the Commodities and Futures Trading Commission and developed a good working knowledge of regulatory auditing processes along with a view of businesses who suffered serious consequences for failing to prioritize compliance or failing to properly document their compliance procedures. In 2014, the FBI promoted Mr. Leff to the federal Senior Executive Service as an Inspector at FBIHQ.

The FBI's Inspection Division conducts internal reviews of each FBI division's compliance with federal law, regulation, and policy, and reviews field office investigative programs for their interaction with private sector partners and knowledge of corporate compliance issues. Mr. Leff represented the Bureau at the FBI's annual Compliance Academy, where he spoke to industry leaders about the latest best practices and pitfalls in companies' efforts to self-police their internal processes. As an inspector, Mr. Leff reviewed dozens of previously conducted FBI investigations, both external and internal, at the request of the FBI director, Congress, and the DOJ Office of Inspector General. In each of these instances, Mr. Leff led a team which evaluated the interviews, evidence collected, analysis, and conclusions of each of the



**SI GLOBAL**
Partners

investigations designated for review, and made findings on any deficiencies in the investigations or supervision of those investigations.

In 2016, Mr. Leff was named Special Agent in Charge of the FBI San Juan Division, where he led over 400 employees spread among four offices in Puerto Rico and two in the United States Virgin Islands. The division made many large arrests for corruption in both government and the private sector, a significant portion of which was traceable to overseas transactions and revealed failures on the parts of some U.S. financial institutions and businesses to take sufficient steps to conduct due diligence. Mr. Leff spoke at several conferences held by the Puerto Rico Bankers Association and delivered presentations, some of which he provided in Spanish, to alert businesses of fact patterns indicative of corruption or money laundering. Mr. Leff also did numerous interviews and press conferences, all in the Spanish language, to provide similar information to citizens at large. The Puerto Rico governor's office and several local agencies requested Mr. Leff's participation on committees to help them pass government reforms in compliance and to set similar requirements applicable to the private sector.

Mr. Leff's final position in the FBI was Assistant Director in Charge of the Inspection Division, which is the top internal compliance investigative position in the agency. There, he authorized and reviewed hundreds of previously conducted investigations. Upon retirement from the Bureau, the Defense Department used their Highly Qualified Expert hiring authority to bring Mr. Leff in to lead the internal compliance program of the Pentagon Force Protection Agency, whose responsibilities including reviewing previously conducted law enforcement investigations. In June 2023, Mr. Leff received certification from the Defense Department's Joint Inspector General training program, the largest of its kind in the nation.

During his law enforcement career, Mr. Leff served as an expert witness on a number of occasions. He was an FBI and DOJ subject matter expert in the fields of money laundering, terrorist financing, and other complex financial crimes, and testified as an expert in federal court at criminal trials and in the Grand Jury, and also served as a money laundering expert witness for congressional committees. In addition, Mr. Leff testified for the government in civil proceedings as an expert witness in the field of compliance and administrative investigations. A list of recent trials where Mr. Leff testified as an expert witness is attached as Exhibit 2, and recent publications authored by him are attached as Exhibit 3.

7



**SI GLOBAL**
Partners

# <u>Findings—Application of Quality Standards for Evaluation</u>

## <u>Introduction:  Categorization of the Guidepost Solutions Report</u>

Initially, it is necessary to categorize the type of report under review in order to properly evaluate it.[1]  This is because there are different standards that apply depending on the type of review that was undertaken.

Generally speaking, internal reviews are divided into:

- Audits, which are fairly strict reviews of established compliance standards.

- Inspections/Evaluations, which consist of a process for evaluating and analyzing programs and activities for the purposes of: (1) providing information to managers for decision making; (2) making recommendations for improvements to programs, policies, or procedures; and (3) identifying where administrative action may be necessary.

- Investigations, which are fact-finding examinations into allegations, issues, or adverse conditions in order to provide the party authorizing the investigation with a sound basis for decisions and actions.  Normally, investigations address allegations of wrongdoing by one or more individuals and involve the systematic collection and examination of evidence that consists of testimony, documents, and, in some cases, physical evidence. The results are set forth formally in a report of investigation.

Simply put, inspections/evaluations result in observations of an organization's compliance in a particular area, and contain recommendations to remedy or improve issues found during the inspection/evaluation.  On the other hand, an investigation involves specific allegations made against one or more individuals, and a collection of facts from which a determination can be made whether the allegation should be found substantiated or unsubstantiated.

---

[1] The descriptions of each of the following categories are based on the reviewer's training and experience, as well as definitions set forth in the <u>United States Department of Defense Joint Inspector General Concept and System Guide</u> and similar usage by the United States Department of Justice, Office of Inspector General.



**SI GLOBAL**
Partners

Applying the above definitions, it is clear that while Guidepost Solutions' mission required both an inspection/evaluation and an investigation, the Report is largely dedicated to an inspection/evaluation of the Executive Committee's procedures to address sexual allegations and the prior history of its responses to such allegations.[2] The determination that the Report described mainly the results of an inspection/evaluation is supported by the fact that the vast majority of the Report details interviews and surveys undertaken to determine the organization's overall response to sexual allegations and is followed by formal observations and recommendations designed to correct deficiencies and to improve the entire process.

However, an additional part of Guidepost Solution's mission was to investigate any allegations of sexual abuse or related misconduct by Executive Committee members, and the portion of the Report dedicated to that segment of their mission, which uncovered an allegation of sexual assault by Mr. Hunt, fits squarely within the definition of a report of investigation and SI Global examined Guidepost Solutions' review of that allegation accordingly.

Below, SI Global applied the established industry standards in reviewing the Guidepost Solutions Report.

## Qualifications

"Individuals assigned to conduct the investigative activities must collectively possess professional proficiency for the tasks required." CIGIE, <u>Quality Standards for Investigations</u>, p.2.

The Guidepost Solutions investigators assigned to collect evidence on the sexual assault allegation against Mr. Hunt unmistakably possessed professional proficiency from a wide variety of investigations throughout their careers. In addition, Senior Managing Director Samantha Kilpatrick had a large amount of experience in the specific field of sex crimes investigations and prosecutions, which are among the most challenging types of allegations to investigate.

Ms. Kilpatrick, who is an attorney, worked with sexual abuse survivors for most of her career, both in law enforcement and the private sector. Deposition of Samantha Kilpatrick, pp.10-11,

---

[2] This conclusion is evident despite the use of the term "investigation" in the title of the Guidepost Solutions Report and in the underlying letter of engagement. The term "investigation" is commonly used in reports of all types of internal reviews, including inspections/evaluations, to describe the activity at hand rather than the type of review involved.

9



**SI GLOBAL**
Partners

182. The other lead investigator, Russell Holske, had 32 years of experience with the Drug Enforcement Administration. Deposition of Russell Holske, pp. 8-9.

SI Global found that both of these investigators had experience that made them well qualified to lead a challenging internal investigation into a sexual assault allegation.

## Independence

"In all matters relating to investigative work, the investigative organization must be free, both in fact and appearance, from impairments to independence; must be organizationally independent; and must maintain an independent attitude." CIGIE, Quality Standards for Investigations, p. 6.

The three classes of impairments to independence are: (1) personal; (2) external; and (3) organizational. Id., p. 7. SI Global has addressed these separately.

Personal: SI Global's review of the report and relevant exhibits, including the deposition transcripts of the investigators and Mr. Hunt, indicated that there were no preexisting relationships, opinions, involvement, biases, or financial interests that might have affected the assigned investigators or the investigation itself.

External: From the time of the signing of the Letter of Engagement through the conclusion of the Guidepost Solutions Report, the process was designed to guarantee Guidepost Solutions' freedom from interference from anyone within the entity being investigated, and no restrictions were placed on the investigators' ability to obtain relevant evidence.

Organizational: As a separate, outside entity, Guidepost Solutions was not within the hierarchy of the entity it was investigating, thereby providing additional assurance that they would not be influenced in carrying out their investigative mission.

Accordingly, SI Global found that Guidepost Solutions operated freely and separately from the Executive Committee and there was no actual nor apparent threat to the independence of the investigation.



**SI GLOBAL**
Partners

## Due Professional Care

"Due professional care must be used in preparing reports.  This standard requires a constant effort to achieve quality and professional performance.  It does not imply infallibility or absolute assurances that an investigation will reveal the truth of a matter."  CIGIE, Quality Standards for Investigations, p.8.

Guidepost Solutions conducted an investigation that was thorough, in that all logical witnesses were interviewed and were given a full opportunity to tell their version of the events related to the allegation against Mr. Hunt.  This includes Mr. Hunt himself, who was interviewed, asked about any other potential interviewees, and was given a reasonable time in which to provide any additional information to the investigators.  SI Global is also aware that Mr. Hunt's counsel wrote to Guidepost Solutions during May, 2022 but did not provide any grounds upon which to revisit their credibility determination, nor did they indicate that any additional information or witnesses existed.  See Letter from Finch McCranie LLP to Guidepost Legal Officer Anthony Collura (May 19, 2022); Letter from Finch McCranie LLP to Guidepost Senior Managing Director Samantha Kilpatrick (May 20, 2022).

With one exception, the methods and techniques used in the investigation were entirely usual and appropriate for the circumstances and objectives.  The sole variation from typical investigative techniques was the provision by the Guidepost Solutions investigators of a portion of the draft Report to the Survivor and her husband for their review and suggested editing.  This procedure was not a typical exercise under standard investigative practice.  An investigative report is a combination of the observations and impressions of the investigators, along with any statements or real evidence obtained from witnesses.  However, this departure from ordinary procedures did not infect the Report, for two reasons.  First of all, the only portion of the Report shown to the Survivor and her husband was the synopsis of her statement.  Secondly, the suggested edits and revisions provided by the Survivor and her husband were fully preserved and leave no doubt that the investigators' original factual recitations were not altered or compromised.  It should be noted that investigators typically have discretion to provide witnesses with the opportunity to submit a written statement of their own, and this could have been done here as an alternative to showing a witness any portion of a draft report of investigation.  Nonetheless, giving the Survivor and her husband a draft summary of their statement to review was a close equivalent to the accepted procedure of allowing them to submit their own statement.  Therefore, for the reasons noted above, SI Global was able to conclude that any procedural anomaly in providing a



**SI GLOBAL**
Partners

small portion of the draft Report to the Survivor and her husband was harmless under these circumstances.

The Guidepost Solutions investigation was conducted appropriately. As noted in the CIGIE standards, "All investigations must be conducted in a fair and impartial manner, with the perseverance necessary to determine the facts." CIGIE, Quality Standards for Investigations, p.8. Here, the investigators took the time to interview the key witnesses multiple times to ensure that they fully understood the facts prior to confronting Mr. Hunt with the allegation. The number of interviews of the Survivor and her husband was not unusual in any way. Notably, it is common to interview the subject of an allegation at the end of the investigation, as was done here. The reason for this best practice is that investigators who have maximized their understanding of the facts in issue are most effective at measuring the credibility of the accused subject whom they are interviewing. By having the greatest possible understanding of the facts in issue, investigators reduce the number of times they would otherwise be required to reinterview the accused subject, who in this case was interviewed twice. This is important because the excessive repetition of interviews or interrogations of an accused subject is sometimes viewed as overbearing the accused's willpower to deny an allegation of which they may be innocent. See, e.g., Richard M. Greenberg, "False Confessions, True Confessions, and Voluntariness: Selected Issues and Practice Tips" (2014).

SI Global further found that the investigation was carried out in an objective manner. "Evidence must be gathered and reported in an unbiased and independent manner in an effort to determine the validity of an allegation or to resolve an issue. This includes inculpatory and exculpatory information." CIGIE, Quality Standards for Investigations, p.8. Guidepost Solutions reported on a serious allegation that fit within the parameters they were assigned to review and explained why they believed the allegation was credible. They also stated and explained their rationale in making credibility determinations with respect to the Survivor, Mr. Hunt, and other witnesses. Notably, credibility determinations are a required undertaking for any professional investigator, as the front-line personnel who observe a witness' posture, demeanor, and other nonverbal cues are in an unparalleled position to record those observations.

SI Global found that Guidepost Solutions acted in conformance with ethical standards expected of investigators conducting sensitive internal investigations. Appropriate questions were asked to elicit necessary details, and no threats, false promises, nor other types of subtle coercion were employed by the investigators.

12



**SI GLOBAL**
Partners

SI Global also determined the investigation was carried out within an amount of time that was appropriate to the level of complexity involved.

> All investigations should be conducted and reported in a timely manner. Time is especially critical given the impact investigations have on the lives of individuals and activities of organizations. Hence, the effectiveness of an investigator depends, in part, on the promptness of finished work products, such as prepared findings and memorialized witness interviews.

Id. In the present case, the investigators set a reasonable deadline for interviewees to provide them with any additional information so that the Report could be reviewed and completed in a timely manner.

Lastly, SI Global found the Report to have been adequately documented, as evidenced by the large number of exhibits that were preserved along with it. Having done so, any future adjudication of the allegation can proceed on a fully developed record.

## Planning

"Organizational and case specific priorities must be established and objectives developed to ensure that individual case tasks are performed efficiently and effectively." CIGIE, Quality Standards for Investigations, p. 10.

Upon receiving a serious allegation against a former president of the Southern Baptist Convention, Guidepost Solutions responded by assembling a highly qualified team of investigators. Guidepost Solutions provided adequate direction and instruction to ensure an effective investigation would be carried out. Leadership all the way up to the chief executive officer were involved with oversight of this important investigation and allocated sufficient resources to be certain that the investigation would be carried out efficiently and effectively.

The extensive deposition testimony taken of the Guidepost Solutions investigators and chief executive officer brought out further details of the preparation taken to make certain that the goals and objectives of ascertaining all of the facts associated with the sexual assault allegation would be effectuated. See, e.g., Deposition of Samantha Kilpatrick, p. 106 (listing the planed components of the investigation); Deposition of Russell Holske, pp. 20-21 (describing his

13



**SI GLOBAL**
Partners

briefing on the organizational structure of the investigation and provision of templates to ensure interviews were properly focused); Deposition of Julie Myers Wood, p. 194 (establishment of a review and editing process for the Report), p. 383 (recounting that there were two investigators assigned to review the Mr. Hunt allegation and ten others assigned to other components of the overall review).

## Executing Investigations

> Investigations must be conducted in a timely, efficient, thorough, and objective manner. The investigator is a fact-gatherer and should not allow conjecture, unsubstantiated opinion, bias, or personal observations or conclusions to affect work assignments. He or she also has a duty to be receptive to evidence that is exculpatory, as well as incriminating. The investigator should collect and analyze evidence through a number of techniques, including but not limited to, interviews of complainants, witnesses, victims, and subjects; reviews of records; . . . and use of computer technology.

CIGIE, Quality Standards for Investigations, pp. 11-12. As detailed below, SI Global found that the Guidepost Solutions investigation was conducted in accordance with recommended CIGIE investigative best practices. Moreover, Guidepost Solutions used techniques that are standard and well accepted in the field of internal investigations.

The interviews conducted by Guidepost Solutions were done in a logical order and manner so as to permit the investigators to know as much as possible about the facts before proceeding to subsequent interviews. As evidenced by the Guidepost Solutions Report, each interviewee described their observations and knowledge of the incident under investigation and the actions or statements of other persons connected with the alleged event. The investigators took contemporaneous notes which were retained.

The methodology used by Guidepost Solutions to collect evidence was well planned and executed. See Guidepost Solutions Report, pp. 19-22 (document collection included over five terabytes of data placed into a keyword searchable format, and said data included news reports and other public source information, extensive document requests, archival searches, emails, written correspondence, audio recordings, notebooks, social media accounts, and others).

14



**SI GLOBAL**
Partners

<u>Reporting</u>

"Reports (oral and written) must thoroughly address all relevant aspects of the investigation and be accurate, clear, complete, concise, logically organized, timely, and objective." CIGIE, <u>Quality Standards for Investigations</u>, p. 13.

SI Global found that the Guidepost Solutions Report set forth a methodology that was consistent with best practices for internal investigations and that this methodology was followed throughout the investigation and in the reporting of the results of the investigation.

The drafts of the Report were subject to peer review (<u>see</u>, <u>e.g.</u>, Deposition of Samantha Kilpatrick, p. 112) as well review by the investigators' superiors (<u>see</u>, <u>e.g.</u>, Deposition of Russell Holske, p. 82; Deposition of Julie Myers Wood, pp. 42-43), thus ensuring that the Report objectively, accurately, clearly, and concisely reflected the relevant results of the investigators' efforts.

Reasonable investigators and supervisors can differ about the quantity or depth of facts to recount in a final report. Reviewing the context of the overall Guidepost Solutions Report, the allegation against Mr. Hunt occupied a relatively small section. A typical report of this type, reporting on the existence of a credible allegation, requires a concise description of sufficient facts to enable the reader to understand the allegation being reported and the reason it was found credible enough to warrant being reported. The Report unquestionably accomplished this.

SI Global also reviewed the facts known to the investigators to determine whether there was any "exculpatory evidence and relevant mitigating evidence," which should have been in the Report. CIGIE, <u>Quality Standards for Investigations</u>, p. 14. SI Global found that when interviewed, Mr. Hunt asserted an absolute denial of the incident. There was no basis to assess the issue of consent given the denials by Mr. Hunt. Simply put, the lack of an analysis as to consent was adequately explained by Guidepost Solution's chief executive officer as not having been placed in issue by virtue of Mr. Hunt's complete denial that a sexual encounter had even occurred. Deposition of Julie Myers Wood, pp. 156, 161-162, 169-170, 176, 189.

SI Global additionally reviewed whether or not the evidence in the Report was "supported by documentation in the investigative case file." CIGIE, <u>Quality Standards for Investigations</u>, p. 14. The collection of investigators' notes, emails, and other documents leave no doubt that the investigators' conclusions were fully supported by the evidence they had gathered.

15



**SI GLOBAL**
Partners

<u>Managing Investigative Information</u>

> Investigative data must be stored in a manner that allows effective retrieval, reference, and analysis, while ensuring the protection of sensitive data (<u>i.e.</u>, personally identifiable, confidential, proprietary, or privileged information or materials).

CIGIE, <u>Quality Standards for Investigations</u>, p. 14.

While this final investigative quality standard relates more to organizational best practices than specific investigations, SI Global was able to conclude that Guidepost Solutions maintains a sophisticated process to collect, store, retrieve, and analyze information. This was clear throughout the course of their review of the allegation against Mr. Hunt, which began with a survivor availing herself of the reporting procedures Guidepost Solutions had made available and publicized. The flow of information through the Guidepost Solutions chain of command worked effectively and efficiently, and they were able to timely open, complete, and report their investigation into the allegation against Mr. Hunt while the remainder of their large-scale review of Executive Committee practices and procedures continued.

16



**SI GLOBAL**
Partners

# <u>CONCLUSION</u>

SI Global reviewed Guidepost Solutions' response to the allegation against Mr. Hunt and, applying nationally recognized standards for internal investigations as well as decades of collective training and experience in the conduct and review of internal investigations, concluded that Guidepost Solutions utilized reasonable and accepted practices and procedures in all aspects of the evidence collection, analysis, and reporting of their investigation.

*Douglas A. Leff*
Managing Director
SI Global Partners
199 Water Street, 16th Floor
New York, NY 10038
(212) 245-2918
leff@siglobalpartners.com

17



**SI GLOBAL**
Partners

# <u>EXHIBIT 1</u>

# LIST OF ITEMS CONSIDERED OR RELIED UPON



**SI GLOBAL**
Partners

| ITEM | CITATION |
|---|---|
| Global Solutions Report | Hunt_0000131-0000418 |
| Letter of Engagement | EC-000012-000022 |
| Council of Inspectors General on Integrity and Efficiency, Quality Standards for Investigations | Microsoft Word - QSI 11-15-11.doc (ignet.gov) [last accessed 05/03/2024] |
| United States Department of Defense, Joint Inspector General Concept and System Guide | Microsoft Word - Cover Apr 11.doc (dodig.mil) [last accessed 05/03/2024] |
| Richard M. Greenberg, "False Confessions, True Confessions, and Voluntariness: Selected Issues and Practice Tips" (2014) | Materials - 5-1-14.pdf (nycourts.gov) [last accessed 05/03/2024] |
| Responses and Objections of Defendant Guidepost Solutions to Plaintiff's First Set of Interrogatories | 3:23-CV-00243, doc. 100 ex. 10 |
| Text Exchange 02/01/2022 | ███ 0000394 |
| Text Exchange 04/29/2022 | ███ 0000284 |
| Interview Notes for Johnny Hunt | Deposition of Samantha Kilpatrick ex. 23 |
| Draft of Facts Sent to ███ | GP_013506-013510 |
| Redlined Draft of Facts by ███ | GP_017795-017800 |
| Rewrite of Facts | GP_015927-015930 |
| ███ Email 04/04/2022 to Kilpatrick | GP_014233 |
| Holske 05/10/2022 Email re Edited Hunt Report | GP_018281 |
| Text Exchange 05/12/2022 | GP_007706 |
| Interview Notes re ███ | GP_007645-007652 |
| ███ Story | GP_008667-008719 |
| ███ Journal | GP_009532-009598 |
| Holske Email 04/01/2022 re Hunt Discussion | GP 014526-014527 |
| Proposed Language for Hunt/███ Incident | GP_012444-012447 |
| Draft Report of Investigation | GP_004328-004345 |
| Text Exchange 05/13/2022 | GP_007709 |
| Notes from Interview of ███ | GP_007645-007652 |
| Holske 04/12/2022 Email "No Paper Trail" | GP_014615 |
| Text Exchange 07/20/2022 | Deposition of Russell Holske ex. 22 |
| 05/12/2022 Email | GP_015927-015930 |
| 05/30/2022 Email | GP_016491-016492 |
| 04/06/2022 Email | GP_014141-014149 |
| 02/11/2022 Email Chain | GP_013133-103137 |
| 04/26/2022 Email | GP_010828-010829 |
| First 05/05/2022 Email with Attachment | GP_014618-014620 |
| Second 05/05/2022 Email with Attachment | GP_012646-012651 |
| Third 05/05/2022 Email with Attachment | GP_017805-017810 |
| 05/08/2022 Email Chain | GP_010850-010851 |

**CONFIDENTIAL**



**SI GLOBAL**
Partners

| ITEM | CITATION |
|---|---|
| 05/13/2022 Email | GP_014152 |
| Letter from Finch McCranie LLP to Guidepost Legal Officer Anthony Collura (May 19, 2022) | N/A |
| Letter from Finch McCranie LLP to Guidepost Senior Managing Director Samantha Kilpatrick (May 20, 2022) | N/A |

20



**SI GLOBAL**
Partners

# <u>EXHIBIT 2</u>

# PRIOR EXPERT WITNESS TESTIMONY



**SI GLOBAL**
Partners

| CASE | COURT | DESCRIPTION | APPROXIMATE DATE |
|---|---|---|---|
| Flaherty v. U.S. | U.S. District Court, SDNY | Expert witness on reviewing previously conducted employment discrimination investigation | 2020 |
| U.S. v Rudaj | U.S. District Court, SDNY (Grand Jury) | Expert witness on money laundering and money laundering investigations | 2009 |
| U.S. v. Arbel | U.S. District Court, EDNY (Grand Jury) | Expert witness on money laundering and financial crime investigations | 2005 |

22



**SI GLOBAL**
Partners

# <u>EXHIBIT 3</u>

# PUBLICATIONS

| PUBLICATION | APPROXIMATE DATE |
|---|---|
| "Money Laundering & Asset Forfeiture: Taking the Profit Out of Crime," FBI Law Enforcement Bulletin | 2012 and subsequently republished by U.S. Postal Inspection |
| "Money Laundering & Asset Forfeiture: Taking the Profit Out of Crime," United States Attorneys Bulletin | 2013 (updated version of previous article) |

23