UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY M. HUNT,<br><br>*Plaintiff*,<br><br>v.<br><br>SOUTHERN BAPTIST CONVENTION;<br>GUIDEPOST SOLUTIONS LLC; and<br>EXECUTIVE COMMITTEE OF THE<br>SOUTHERN BAPTIST CONVENTION,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:23-cv-00243<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE FRENSLEY<br><br>JURY DEMAND |

**REPLY IN FURTHER SUPPORT OF THE EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

I. Hunt Is a Public Figure. .......... 1

II. There Is No Evidence That the EC Acted with Actual Malice or Negligence. .......... 2

III. There Is No Genuine Issue of Material Fact Regarding the EC's Lack of Responsibility for the Report. .......... 3

IV. The EC Is Entitled to Summary Judgment on Hunt's IIED and NIED Claims. .......... 5

V. The Ecclesiastical Abstention Doctrine Precludes This Court from Adjudicating All Claims Arising from the Letter. .......... 7

CONCLUSION .......... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biltcliffe v. Hailey's Harbor, Inc.*,
No. M2003-02408-COA-R3-CV, 2005 WL 2860164 (Tenn. Ct. App. Oct. 27, 2005) ....3

*Church v. Perales*,
39 S.W.3d 149 (Tenn. Ct. App. 2000) ....7

*Mathis v. Phila. Newspapers, Inc.*,
455 F.Supp. 406 (E.D. Pa. 1978) ....3

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
966 F.3d 346 (5th Cir. 2020) ....8

*Ogle v. Hocker*,
279 Fed.Appx. 391 (6th Cir. 2008) ....1, 7, 8

*Rogers v. Louisville Land Co.*,
367 S.W.3d 196 (Tenn. 2012) ....6

*Rye v. Women's Care Ctr. of Memphis, MPLLC*,
477 S.W.3d 235 (Tenn. 2015) ....6

*Thomas M. Cooley L. Sch. v. Kurzon Straus, LLP*,
759 F.3d 522 (6th Cir. 2014) ....1

*White v. Manchester Enter., Inc.*,
871 F.Supp. 934 (E.D. Ky. 1994) ....5

*Whitehurst v. Martin Med. Ctr., P.C.*,
No. W2001-03034-COA-R3-CV, 2003 WL 22071467 (Tenn. Ct. App. Aug. 28, 2003) ....3

The Executive Committee of the Southern Baptist Convention submits the following Reply to Hunt's Response in Opposition to the EC and SBC's Motions for Summary Judgment ("Opposition").[1]

## I. Hunt Is a Public Figure.

Hunt is at least a limited-purpose public figure in the public controversy concerning allegations of sexual abuse in the Southern Baptist denomination.[2] As the EC demonstrated in its Motion, Hunt is a limited-purpose public figure because he "injected himself" into the "vortex" of the sexual abuse controversy by brazenly telling the Guidepost investigators a multitude of lies about his encounter with Jane Doe in an unsuccessful attempt to cover up her abuse allegations. *See Thomas M. Cooley L. Sch. v. Kurzon Straus, LLP*, 759 F.3d 522, 530–31 (6th Cir. 2014). (*See also* Doc. 224, PageID #8626–28.) Additionally, Hunt thrust himself into the controversy "in order to influence the resolution of the issues involved." *See Ogle v. Hocker*, 279 Fed.Appx. 391, 399 (6th Cir. 2008) (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 164 (1979)).

Hunt mischaracterizes the EC's limited-purpose public figure argument as an argument that the act of merely appearing before Guidepost "transformed [Hunt] into a limited purpose public figure." (Doc. 240, PageID #8877.) This is quite clearly *not* what the EC argued. Instead, Hunt became a limited-purpose public figure not by merely responding to Guidepost's inquiry but through voluntary action (an attempted cover-up) that was intended to influence the outcome of Guidepost's investigation. (Doc. 224, PageID #8627–28.) Hunt's absurd contention that "under

[1] Defined terms from the EC's Memorandum of Law in Support of Its Motion for Summary Judgment (the "Motion") are used herein. (*See* Doc. 224.)

[2] The EC also maintains that Hunt is a general-purpose public figure in the relevant community—namely, the Southern Baptist/evangelical community—for the reasons set forth in the Motion. (*See* Doc. 224, PageID #8625–26.)

Defendants' reasoning, all 330 individuals interviewed by Guidepost would be limited-purpose public figures" misses the mark for the same reason. (Doc. 240, Page ID #8878.)

## II. There Is No Evidence That the EC Acted with Actual Malice or Negligence.

Because Hunt is a public figure, the actual malice standard applies to his defamation and false light claims. As the EC demonstrated in its Motion, no genuine issue of material fact exists regarding whether Hunt can prove actual malice; it is clear he cannot. (*See* Doc. 224, PageID #8628–30.) Even if Hunt is a private figure and the negligence standard applies, the EC still is entitled to summary judgment because the evidence conclusively demonstrates that the EC did not act negligently. (*See id.*, PageID #8630–32.)

Hunt makes two arguments to create issues of material fact regarding whether the EC acted with actual malice. First, Hunt accuses the EC of making "a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of Jane Doe's charges[,]" and he argues that this "deliberate avoidance of the truth" satisfies the actual malice standard. (*See* Doc. 240, PageID #8881.) It is, quite frankly, incredible that Hunt has taken this position when he has admitted that he intentionally prevented the Defendants from discovering the truth about his encounter with Jane Doe by outright denying that the encounter occurred and by telling multiple other lies to Guidepost. No issue of material fact can exist regarding whether the EC's purported "deliberate avoidance of the truth" constitutes actual malice when it is undisputed that Hunt prevented the Defendants from discovering the truth through his own deliberate actions.

Hunt also argues that a jury could find that the EC acted with actual malice because the Report stated that Hunt had been accused of "sexual assault" when it purportedly did not describe conduct that would constitute a sexual assault or sex crime under Florida law. This argument fails because the Report did not allege that Hunt committed a sex crime under Florida law or the law of

any other state.[3] Instead, it used the term "sexual assault" in the colloquial sense to describe the allegations reported to Guidepost. (*See, e.g.,* Doc. 1–2, PageID #182.) Accordingly, no genuine issue of material fact exists regarding whether the EC acted with actual malice by publishing the Report, which used the term "sexual assault" to describe Jane Doe's allegations.

Hunt's argument regarding the negligence standard is primarily that negligence is often best resolved by a jury. Hunt cites three cases in support of this argument, none of which are applicable. The two Tennessee cases that Hunt cites involved appeals of a jury verdict (*Whitehurst*) and a directed verdict (*Biltcliffe*) and therefore have no bearing on whether the issue of negligence may be resolved at the summary judgment stage. *See Whitehurst v. Martin Med. Ctr., P.C.,* No. W2001-03034-COA-R3-CV, 2003 WL 22071467, at *1 (Tenn. Ct. App. Aug. 28, 2003); *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *1 (Tenn. Ct. App. Oct. 27, 2005). In the third case cited by Hunt, factual issues regarding the source of a photograph precluded summary judgment on plaintiff's defamation claim. *Mathis v. Phila. Newspapers, Inc.*, 455 F.Supp. 406, 414 (E.D. Pa. 1978). The court's ruling therefore did not turn on the question of whether the issue of negligence should be resolved by the court or the jury.[4] These cases do not compel a conclusion that summary judgment is not warranted here.

## III. There Is No Genuine Issue of Material Fact Regarding the EC's Lack of Responsibility for the Report.

Throughout his Opposition, Hunt attempts to attribute actions taken and responsibilities borne by other entities or individuals to the EC. For example, Hunt intentionally conflates four

---

[3] When the Report discussed individuals who had been charged with sex crimes, it explicitly said so. (*See, e.g.,* Doc. 1–2, PageID #103).

[4] The language from *Mathis* that Hunt quotes in his Opposition comes from a hypothetical posed by the court, not from the court's holding. (*See* Doc. 240, PageID #8890.) *See also Mathis*, 455 F.Supp. at 414–15.

separate entities (the EC, the SBC, the Committee on Cooperation, and the Task Force), explaining that he has decided to refer to "any action taken by the [Committee on Cooperation] and Task Force" as "EC and SBC conduct." (*See* Doc. 240, PageID #8885, n. 5.) Hunt asserts that, because he is the nonmovant, the court must accept his inaccurate attribution of actions taken by the Committee on Cooperation and Task Force to the EC as true. (*Id.*)

Hunt's attempt to create issues of fact regarding the EC's role with respect to the Report fails because—as the EC demonstrated in its Motion and as the evidence confirms—the EC had no oversight of Guidepost's investigation or the Report, and it had no ability to make changes to the Report before publication. (*See* Doc. 224, PageID #8617–18. *See also* Doc. 222–1, PageID #8354–57, 8361, 8374–75.) The EC also has amply demonstrated that the Task Force (which was established to engage a third party to conduct an independent investigation) and the Committee on Cooperation (which was established to facilitate cooperation between the EC and the Task Force) are separate and distinct entities from the EC. (*See* Doc. 224, PageID #8609, 8614–18. *See also* Doc. 1–1, PageID #22; Doc. 1–2, PageID #43.) In fact, because the EC was the target of Guidepost's investigation, it was critical for the Task Force and the Committee on Cooperation to maintain their independence from the EC. (*See, e.g.,* Doc. 224, PageID #8615.)

Furthermore, even if the actions of the Task Force and the Committee on Cooperation *could* be attributed to the EC, the EC has identified numerous other reasons why it is entitled to summary judgment that are distinct from its arguments grounded in the EC's separation from the entities that had oversight of the investigation and the Report. (*See, e.g.,* Part II *supra*, Parts IV-V *infra*.

*See also* Doc. 224, PageID #8625–36.) Those arguments still apply with full force even if the actions of the Task Force and the Committee on Cooperation are attributed to the EC.[5]

## IV. The EC Is Entitled to Summary Judgment on Hunt's IIED and NIED Claims.

Hunt's attempts to create issues of material fact regarding his IIED and NIED claims cannot overcome the total lack of evidence in support of those claims. For the following reasons, the EC is entitled to summary judgment on Hunt's IIED and NIED claims.

First, Hunt's contention that the EC has waived all argument relating to the "outrageousness" element of his IIED claim fails. Contrary to Hunt's assertion, the EC did not simply state the legal standard for outrageous conduct and make a conclusory statement regarding Hunt's inability to satisfy that standard. (*See* Doc. 240, PageID #8894–95.) The EC also cited case law demonstrating *why* Hunt is unable to satisfy the standard. (*See* Doc. 224, PageID #8634.) In *White v. Manchester Enter., Inc.* (the case cited by the EC), the court concluded that the defendants' publication of false statements that the plaintiff wrote bad checks and had been jailed on charges of fraud did "not constitute extreme and outrageous behavior that must be regarded as atrocious and utterly intolerable in the community"—even though the statements were "embarrassing to [the plaintiff] and damaging to her reputation" and defendants made "minimal effort to substantiate" them. 871 F.Supp. 934, 939–40 (E.D. Ky. 1994). As the EC demonstrated in its Motion, applying the analysis from *White* to the instant case—which similarly involves the publication of embarrassing statements that purportedly damaged Hunt's reputation and allegedly created the impression that he had committed a crime—shows that there is no issue of material fact regarding whether Hunt can satisfy the outrageousness element of his IIED claim.

[5] The same is true with respect to Hunt's attempts to attribute the Tweet and the Letter to the EC. The EC has identified numerous reasons why it is entitled to summary judgment on claims arising from the Tweet and the Letter that apply with equal force even if the Tweet and/or Letter could be attributed to the EC. (*See, e.g.,* Doc. 224, PageID #8637–41.)

Hunt's assertion that the EC made "no argument" regarding the duty and breach elements of his NIED claim also fails. As the EC argued at length in its Motion, there is no evidence that the EC acted negligently in publishing the Report. (*See* Doc. 224, PageID #8630–32.) Accordingly, Hunt cannot prove his NIED claim.

Finally, Hunt's efforts to create issues of fact regarding the sufficiency of his alleged emotional damages cannot compensate for the total absence of evidence that Hunt suffered serious mental injury. The following factors may support a plaintiff's claim that he has suffered a serious mental injury: (i) "evidence of physiological manifestations of emotional distress . . .;" (ii) "evidence of psychological manifestations of emotional distress . . . ;" (iii) "evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder . . . and/or was prescribed medication;" (iv) "evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;" (v) "other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning;" and (iv) "in certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 209–10 (Tenn. 2012) (cleaned up). Hunt has failed to present evidence of *any* of the factors listed above. Hunt's citations to deposition testimony stating that he felt "deeply wounded," that his relationships with certain individuals have been damaged, and that he has sought counseling (but not medical treatment) do not create an issue of material fact as to whether he suffered the requisite serious mental injury. (*See* Doc. 240, PageID #8896.) *See also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 271–72 (Tenn. 2015) (granting summary judgment on claim for emotional distress damages after finding that plaintiff, who testified in her deposition that defendants' actions caused her to feel "scared," "upset," and "very

concerned," had "offered no proof at all to demonstrate that she has suffered a severe or serious mental injury").

While the extent of a plaintiff's damages typically is an issue to be resolved by the trier of fact, a defendant is nevertheless entitled to summary judgment if the plaintiff fails to establish the existence of damages at all. *See, e.g., Church v. Perales*, 39 S.W.3d 149, 172 (Tenn. Ct. App. 2000). That is the case here. Accordingly, the EC is entitled to summary judgment on Hunt's IIED and NIED claims.

## V. The Ecclesiastical Abstention Doctrine Precludes This Court from Adjudicating All Claims Arising from the Letter.

Hunt argues that the ecclesiastical abstention doctrine does not apply to claims arising from the Letter because those claims "are not ecclesiastical in nature" and instead are "secular civil claims[.]" (Doc. 240, PageID #8902–03.) Hunt fails to recognize that, when a court is evaluating whether the doctrine applies, the "relevant question" is not simply whether the plaintiff has alleged secular civil claims but instead "is whether the court would interfere with any matters of church doctrine or practice by ruling on this case." *See Ogle*, 279 Fed. Appx. at 396. As the EC has demonstrated, the doctrine applies to claims arising from the Letter because the Letter squarely implicates matters of church governance. (*See* Doc. 224, PageID #8637–39.)

The cases cited by Hunt as support for his argument that the doctrine does not apply are distinguishable. Unlike in *Ogle*, the EC's claim for protection under the doctrine does not "derive[] mainly from context[.]" 279 Fed. Appx. at 396. Instead, it is premised on the fact that, by adjudicating claims arising from the Letter (which was sent in connection with an inquiry into whether Hiland Park continued to be in "friendly cooperation" with the SBC), the Court would be required "to delve into protected matters of church doctrine, policy, and practice." *Id.* Accordingly, this is not a case in which the Court can rule on the claims arising from the Letter "without any

impingement upon church doctrine or practice." *Id.* at 396. Additionally, unlike in *McRaney*, this is not a case in which the application of the doctrine is "premature." *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 347 (5th Cir. 2020). The *McRaney* court's decision to reverse the district court's dismissal of claims pursuant to the doctrine did not involve a conclusion that the doctrine could not apply under the circumstances at issue. *Id.* at 351. Instead, it was premised on the court's finding that many of the relevant facts had not yet been developed at the motion to dismiss stage, a point that Hunt conveniently fails to acknowledge in his opposition. *Id.* at 349.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in its Motion, the EC respectfully requests that the Court enter summary judgment against Hunt on each of his claims against the EC.

Respectfully submitted,

*/s/ Scarlett Singleton Nokes*


E. Todd Presnell (BPR #17521)
Scarlett Singleton Nokes (BPR #28994)
R. Brandon Bundren (BPR #30985)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
P: 615.252.2355
F: 615.252.6355
tpresnell@bradley.com
snokes@bradley.com
bbundren@bradley.com

Gene R. Besen (*pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Ave., Suite 3600
Dallas, Texas 75202
P: 214.257.9800
F: 214.939.8787
gbesen@bradley.com

Thomas J. Hurney, Jr. (*pro hac vice*)
Gretchen M. Callas (*pro hac vice*)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, West Virginia 25301
P. 304.340.1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Attorneys for the Executive Committee of the Southern Baptist Convention*

## CERTIFICATE OF SERVICE

I certify that on August 14, 2024, I electronically filed a true and correct copy of the Reply in Further Support of the Executive Committee of the Southern Baptist Convention's Motion for Summary Judgment with the Clerk of Court for the U.S. District Court for the Middle District of Tennessee through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

| | |
|---|---|
| Robert D. MacGill<br>Patrick J. Sanders<br>MacGill PC<br>156 E. Market Street, Suite 1200<br>Indianapolis, Indiana 46204<br>robert.macgill@macgilllaw.com<br>Patrick.sanders@macgilllaw.com<br><br>Todd G. Cole<br>Andrew Goldstein<br>Cole Law Group, P.C.<br>1648 Westgate Circle, Suite 301<br>Brentwood, Tennessee 37027<br>tcole@colelawgrouppc.com<br>agoldstein@colelawgrouppc.com<br><br>*Counsel for Plaintiff* | John R. Jacobson<br>Katherine R. Klein<br>Riley & Jacobson, PLC<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz<br>Terence W. McCormick<br>Mintz & Gold LLP<br>600 Third Avenue, 25th Floor<br>New York, New York 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br><br>*Counsel for Guidepost Solutions, LLC*<br><br>L. Gino Marchetti, Jr.<br>Matthew C. Pietsch<br>Taylor, Pique, Marchetti & Blair, PLLC<br>2908 Poston Avenue<br>Nashville, Tennessee 37203<br>gmarchetti@tpmblaw.com<br>matt@tpmblaw.com<br><br>*Counsel for Southern Baptist Convention* |

*/s/ Scarlett Singleton Nokes*
Scarlett Singleton Nokes