# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY M. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-00243 |
| | ) | Judge Campbell/Frensley |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

## I. INTRODUCTION

Johnny Hunt, a pastor and former President of the Southern Baptist Convention ("SBC"), brought this suit against the SBC, the Executive Committee of the SBC ("the Executive Committee"), and Guidepost Solutions LLC ("Guidepost") (collectively, "Defendants") alleging torts including defamation and libel related to an investigative report ("the Report") prepared by Guidepost for the SBC that includes allegations that Mr. Hunt sexually assaulted the wife ("the accuser") of another SBC pastor.[1,2]  Docket No. 1.  All three Defendants have filed Motions to Dismiss, which have been disposed of.  Docket Nos. 25, 29, 31, 150, 151.

This matter is now before the Court upon Mr. Hunt's Motion to Compel Forensic Collection.  Docket No. 204.  Mr. Hunt has also filed a Supporting Memorandum and other supporting documents.  Docket Nos. 205, 205-1, 205-2, 207, 207-1 through 207-8.[3]  Guidepost

---

[1] Guidepost was engaged by SBC to investigate possible sexual abuse by members of the Executive Committee.  Docket No. 1-1, p. 2.
[2] The accuser is also referred to as "the survivor."
[3] Some documents have been filed both under seal and in a redacted form in the public record.

has filed a Response in Opposition and supporting documents.  Docket Nos. 208, 208-1, 208-2, 210, 210-1, 210-2.  Mr. Hunt has filed a Reply.  Docket No. 211.  For the reasons set forth below, Mr. Hunt's Motion (Docket No. 204) is DENIED.

## II.  LAW AND ANALYSIS

### A.  Discovery Requests and Motions to Compel

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery.  Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'"  *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1).  The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery

outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at \*5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at \*5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). "Relevance for purposes of discovery is broadly construed and the information sought need not be admissible to be discoverable." *T.C. ex rel S.C. v. Metro Gov't of Nashville & Davidson Cty.*, No. 3:17-01098, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at \*17 (M.D. Tenn. July 9, 2018). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Carrell*, 2011 U.S. Dist. LEXIS 57435, at \*5 (internal quotation marks and citation omitted). Further, for purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## B. Mr. Hunt's Motion to Compel

Mr. Hunt brings this Motion to ask the Court to compel Guidepost "to forensically collect text messages from the phones of Julie Myers Wood, Krista Tongring, Samantha Kilpatrick, and Russell Holske," because he asserts that he "has proof that text messages have been destroyed or lost, and Guidepost failed to comply with the Court's Order and adequately search the phones of

3

[these individuals]."⁴ Docket No. 204, p. 1.

Mr. Hunt has made this request twice before. Docket Nos. 106, 107, 165. Initially, the Court denied Mr. Hunt's Motion to Compel text messages from Guidepost executives (including the general counsel) and investigators.⁵ Docket No. 158. The Court found that Mr. Hunt had not demonstrated that Guidepost had failed to produce investigators' and executives' text messages, and had failed to establish the relevance of text messages involving Guidepost's general counsel. *Id.* at 11. Mr. Hunt filed a Motion to Reconsider that Order, specifically seeking the production of text messages and asking the Court to order Guidepost to "do a forensic collection of Mr. Holske, Ms. Kilpatrick, Ms. Wood, and Ms. Tongring's phones" to retrieve responsive text messages. Docket No. 165, p. 5. Mr. Hunt cited Ms. Myers Wood's deposition testimony and Guidepost's document production as evidence that text messages had been withheld. *Id.* at 2-3.

In response, the Court found that:

> (1) the information provided by Mr. Hunt is not "new"; it was either known to the Court at the time of its prior Order or could have been presented with Mr. Hunt's motion to compel; but also (2) there may be relevant and responsive text messages that Guidepost has not yet produced. The Court was aware that Ms. Myers Wood was involved in some relevant group texts that had been produced to Mr. Hunt, and the fact that relevant texts exist that include her is not new evidence and would not change the Court's conclusion. But the Court does not understand why, that being the case, there have been no texts produced from Ms. Myers Wood's phone, and Guidepost does not attempt to explain that absence.

Docket No. 197, p. 4-5. Because it was not clear to the Court from Guidepost's submissions that

---

⁴ The Court has previously identified these individuals based on information contained in the Parties' Joint Discovery Dispute Statement: "Guidepost personnel: lead investigators (Russell Holske and Samantha Kilpatrick), Senior Managing Director (Krista Tongring), [and] Chief Executive Officer (Julie Myers Wood) . . . ." Docket No. 158, p. 9, n.5.
⁵ The Motion was granted in part, but was denied as to the production of text messages. Docket No. 158.

all relevant text messages had been produced, the Court ordered Guidepost to "search the phones of Ms. Myers Wood, Ms. Tongring, Ms. Kilpatrick, and Mr. Holske and file a notice with the Court certifying that any relevant text messages that are responsive to a discovery request from Mr. Hunt and were not previously produced from the phones of another custodian have now been produced." *Id.* at 5. The Court noted that "Mr. Hunt has not provided evidence of document destruction or loss such that a forensic examination is necessary." *Id.*, n.7.

Guidepost timely filed the Notice, certifying that the phones were searched and "all further responsive text messages in their [possession], custody, and control that were not previously produced from the phones of another custodian have now been produced." Docket No. 201, p. 1. Mr. Hunt maintains that not all responsive text messages were produced, and that a forensic collection is also necessary because "Guidepost delegated the responsibility of searching for relevant text messages to each individual witness, resulting in a limited and deficient production." Docket No. 207, p. 5.

1. **Timeliness of Mr. Hunt's Motion**

Guidepost contends that the Motion should be denied as untimely because "Hunt's motion is procedurally defective as the motion was submitted *42 days* after the Court Ordered deadline of April 19, 2024[,] for the bringing of discovery motions (ECF 147) . . . . Hunt has not attempted to explain why this motion was brought 6 weeks after the Court Ordered deadline. Nor did Hunt seek permission of the Court to file this post deadline motion." Docket No. 210, p. 2 (emphasis in original).

Mr. Hunt responds that his Motion "was timely and was required in response to Guidepost's refusal to comply with the Court's May 14, 2024 Order." Docket No. 211, p. 5. Mr. Hunt asserts that:

> The Court granted in part Plaintiff's Motion to Reconsider on May 14, 2024[,] and ordered Guidepost to search and produce text messages. (Doc. No. 197). Guidepost made a supplemental production on May 28th, which was reviewed by Plaintiff the same day. Plaintiff had a meet and confer with Guidepost's counsel on May 29th and filed his Motion to Compel on May 31, 2024. There was no delay. As soon as it was apparent that Guidepost's production was deficient, Plaintiff promptly filed his Motion to Compel.

*Id.*

Guidepost accurately states that the Court's deadline for the filing of discovery motions passed on April 19, 2024. Docket No. 147, p. 2. The Motion that undergirds the present dispute is Mr. Hunt's Motion for Reconsideration, which was timely filed on April 8, 2024. Docket No. 162. As Mr. Hunt notes, the Court ruled on that Motion on May 14, 2024, after the discovery motion deadline had passed. Docket No. 197. Necessarily, Guidepost's supplemental production (and Mr. Hunt's complaints about it) also took place after the deadline. While it would have been better for Mr. Hunt to seek leave to file his Motion past the deadline, the Court would have granted permission due to the timing of the events, and will not deny the Motion on that basis.

**2. Guidepost's Method of Collecting Text Messages**

Mr. Hunt asserts that, at the Parties' most recent meeting to confer about this discovery dispute, "Guidepost revealed that Guidepost's witnesses collected their own text messages," and that "Guidepost's self-collection procedure is inappropriate." Docket No. 207, p. 5. Citing several out-of-Circuit cases, Mr. Hunt states that "[c]ourts have held that self-collection of ESI without sufficient oversight and support results in the need for a forensic examination of a device." *Id.* at 7-8. Additionally, Mr. Hunt argues that "the supplemental text messages produced cut-off responses and omit metadata that reveals the date a text was sent or received." *Id.* at 8.

Guidepost responds that its counsel "never allowed the Guidepost witnesses to selectively

search their phones for further responsive text messages to determine what was relevant or not."

Docket No. 210, p. 2. Guidepost describes the process it used as follows:

> Guidepost's witnesses were directed by counsel to review their
> respective cell phones and provide counsel with **_any_** text messages
> which related to Plaintiff Johnny Hunt or any of his document
> requests. Guidepost's witnesses engaged in that review and
> produced the requested text messages to Guidepost's counsel.
> Upon receipt of the text messages from the Guidepost witnesses,
> Guidepost's counsel reviewed what was responsive, determined
> what had not yet been produced by other custodians, and made a
> supplemental production on May 28, 2024. (ECF 201).

*Id.* at 8 (emphasis in original).

The Court finds that Guidepost's process for collecting responsive text messages was adequate. At the time Guidepost employed this process, the Court had just found that there was no need to reach the level of a forensic collection. While it perhaps would have been better for the attorneys to receive and review the cell phones themselves, it would also have been inconvenient, expensive, and invasive to the privacy of the custodians. The Court believes that Guidepost struck a reasonable balance under the circumstances.

**3. Completeness of Guidepost's Text Message Production**

**(a) Text Thread Between Mr. Holske and Jane Doe's Husband (Exhibit E)**

Mr. Hunt points to several examples to support his assertion that Guidepost has not made a complete production of relevant, responsive text messages. First, Mr. Hunt maintains that "[t]he evidence now shows that Mr. Holske **_deleted at least 80 text messages_** with Jane Doe's Husband." Docket No. 207, p. 4 (emphasis in original). As an exhibit to his Motion, Mr. Hunt has attached a chart that shows a text message thread between those two individuals, with the texts produced by Guidepost on one side and the texts produced by the Husband on the other. Docket No. 207-3 (Exhibit E). There is no question that the Husband produced many more texts from the same

thread.  Mr. Hunt argues that "Exhibit E proves conclusively one of two realities: either (A) Mr. Holske deleted the text messages missing from that exhibit, or (B) Guidepost's collection was too rudimentary to capture them. . . .  Either reality warrants an order requiring a forensic collection." Docket No. 207, p. 4-5.

Guidepost posits another reality: "the documents [Mr. Hunt] seeks have already been produced by another custodian in this case – nonparty Jane Doe and/or Jane Doe's husband." Docket No. 210, p. 11.  Guidepost maintains that "Hunt fails to acknowledge that (1) Guidepost was only required to produce text messages that were not already produced by the cell phone of another custodian (which it has done), and (2) Hunt has been in possession of these text messages since at least December 2023." *Id.*

Mr. Hunt replies that "[t]hird-party subpoena recipients are not Guidepost custodians.  A substantial number of text messages have not been produced by any Guidepost custodian, and have only been produced by third parties."  Docket No. 211, p. 4.  Referring to Exhibit E, Mr. Hunt asserts that "Guidepost did not attempt to address, or even mention this exhibit in its opposition," so "[a]ll possible responses have been waived, and it is now definitively established: Guidepost deleted at least 84 relevant text messages."[6] *Id.* at 2.  Based on this Exhibit, Mr. Hunt concludes that "[t]he undisputed record before the Court instructs that a forensic collection of Guidepost phones is necessary to recover the deleted text messages." *Id.* at 3.

The Court disagrees.  Its prior Order was clear: Guidepost was under an obligation to

---

[6] Mr. Hunt does not provide evidence that Guidepost employees deleted text messages after being made aware of a litigation hold.  *See* Docket Nos. 207, 211.  Nor is there any evidence before the Court that Guidepost employees should have anticipated this litigation at that time. Absent such factors, the fact that an employee deleted texts, even if true. does not lead to the conclusion that there should be a forensic examination, especially when in appears that Mr. Hunt has actual possession of the "missing" texts.

produce to Mr. Hunt "any relevant text messages that are responsive to a discovery request from Mr. Hunt and were not previously produced from the phones of another custodian."  Docket No. 197, p. 5.  By limiting the production to texts "not previously produced from the phones of another custodian," the Court intended to ensure that Mr. Hunt received any relevant and responsive texts that had not already been produced to him, not that Mr. Hunt would receive additional productions of texts he already had, whether produced by a Guidepost custodian or a third-party custodian. Among other things, this represented an attempt by the Court to inject some efficiency into what has been an unnecessarily drawn-out and contentious discovery period, a topic on which the Court has already commented and has instituted procedures designed to address.  Docket No. 147.  There is little benefit in requiring Guidepost to produce texts that have already been produced (one potential benefit, cited by Mr. Hunt, is the availability of additional metadata, but the Court judged that to be de minimis compared with the primary goal of getting unproduced responsive texts to Mr. Hunt as quickly as possible as the discovery period came to a close).  As Exhibit E makes clear, Mr. Hunt is in fact in possession of all of the texts in this thread, something that he does not actually dispute.  Docket No. 207-3; *see* Docket Nos. 207, 211.  While Mr. Hunt might have preferred to receive another copy of the thread that originated from Mr. Holske's phone (and while the Court is not entirely clear why Guidepost didn't do just that), it appears to be undisputed that Mr. Hunt has all of the texts from this text thread, and there is nothing further to be produced.

### (b)  <u>**Other Texts Contended by Mr. Hunt to be Deleted**</u>

Mr. Hunt maintains that:

> The list of deleted text messages is not limited to the Exhibit E above:
>
> - Jane Doe's Husband asked Mr. Holske via text if Mr. Holske deleted documents "as requested."  (Doc. No. 102,

9

Ex. U).  This text message has not been produced ***by a Guidepost custodian.***

- There are text messages between Guidepost's investigators connecting Jane Doe and her Husband to a therapist engaged by Guidepost.  Exs. H-I.  These text messages have not been produced ***by a Guidepost custodian***.

- Before Guidepost's supplemental production, [Mr. Hunt] identified additional texts by Bates number that had not been produced by a Guidepost custodian.  *See* Ex. B.  Despite the notice, the text messages have still not been produced ***by a Guidepost custodian***.

Docket No. 207, p. 5 (emphasis added).  Mr. Hunt also asserts that "[n]ot a single text message produced by Ms. Wood related to the allegations against [Mr. Hunt], despite her testimony at deposition that she would receive texts from and send texts to Guidepost's lead investigators 'on the Johnny Hunt specific matter.'"  *Id.* at 6, *quoting* Docket No. 163-1.

As above when discussing Exhibit E, Guidepost maintains that "Guidepost was not required to re-produce text messages already produced from the phones of other custodians."  Docket No. 210, p. 8.  As to Ms. Myers Wood's texts specifically, Guidepost adds that "[t]here is no dispute that Guidepost produced text messages with Ms. Wood and the investigators directly related to [Mr. Hunt] and [Mr. Hunt's] section of the Report," and that Ms. Myers Wood's deposition testimony does not support the inference that she sent or received responsive texts that were not produced, because her testimony largely related to texts about the Report as a whole, not texts specific to Mr. Hunt.  *Id.* at 8-9.  Guidepost concedes that "one text thread which was timely provided by Guidepost to Counsel was inadvertently placed in a Mintz & Gold folder for a related case . . . .  That document has been provided to Hunt's counsel just prior to filing this response.  Counsel has since searched the related *Sills* folder and cannot locate any other documents that were inadvertently moved to that folder."  *Id.* at 5, n.3.

10

As previously discussed, the Court's intention in ordering a supplemental production of text messages from Guidepost was to ensure that Mr. Hunt received any relevant and responsive texts that had not already been produced to him, not that Mr. Hunt would receive additional productions of texts he already had, whether produced by a Guidepost custodian or a third-party custodian. Apart from simply continuing to assert that there must still be unproduced texts, Mr. Hunt does not appear to contend that he does not have these texts; rather, he is taking the position that they must be produced from the phone of a Guidepost employee, regardless of whether they are already in his possession.

With regard to Mr. Hunt's assertion that "[n]ot a single text message produced by Ms. Wood related to the allegations against [Mr. Hunt], despite her testimony at deposition that she would receive texts from and send texts to Guidepost's lead investigators 'on the Johnny Hunt specific matter,'" Ms. Myers Wood in fact testified only that it was her recollection that the investigators occasionally texted her on this matter, leaving open the possibility (which Guidepost asserts) that these texts were produced from the phones of others. Docket No. 207, *quoting* Docket No. 163-1; Docket No. 163-1, p. 3-4; Docket No. 210, p. 8, *citing* Docket No. 210-2. As to Mr. Hunt's assertion that "Ms. Wood did not produce a single text to or from Sunny Lee or Christina Bischoff," despite testifying that she had no reason to dispute that she exchanged such texts, Ms. Myers Wood testified only that she did not recall texting with those individuals about the Report, but had no reason to dispute it – not that she texted with them regarding Mr. Hunt. Docket No. 207, p. 6; Docket No. 163-1, p. 4.

As previously noted, Mr. Hunt also contends that some of the text messages in Guidepost's supplemental production are truncated, and has attached examples. Docket No. 207, p. 7-8; Docket No. 207-8. The Court has reviewed these examples (including the text conversation between Mr.

11

Holske and Ms. Tongring referenced on page 7 of Docket No. 207), and concludes that while it would have been a better practice for Guidepost to produce cleaner versions of the text threads, the truncation does not appear to omit relevant and responsive information.[7]

Guidepost's counsel has filed a signed Notice certifying that "in compliance with this Court's Order, dated May 14, 2024 (ECF 197), the phones of Ms. Myers Wood, Ms. Tongring, Ms. Kilpatrick, and Mr. Holske were searched and all further responsive text messages in their [possession], custody, and control that were not previously produced from the phones of another custodian have now been produced." Docket No. 201, p. 1. The Court takes the representations of attorneys very seriously, under the assumption that their signed certification can be relied upon because they are mindful of their status as officers of the Court, their duty of candor to the Court, and their professional responsibilities, including the responsibility of complying with Rule 11 of the Federal Rules of Civil Procedure.

In considering Mr. Hunt's request for an additional discovery process at this stage, the Court has considered all of the proportionality factors set forth in Rule 26(b) and finds that the request is not proportional to the needs of the case under the circumstances. Mr. Hunt has articulated, and the Court perceives, very little benefit likely to flow from such largely-cumulative discovery. The Court is not inclined to order such a process based primarily upon an implicit assertion that the representations of defense counsel, made in the form of a signed certification, are untrue.[8] The fact discovery period has closed and the Parties would be best served by

---

[7] The Court disputes Mr. Hunt's assertion that the answer to "[a]lso, is it possible to get someone to draft what the Hunt narrative might look like today, so we can send it to the [Accuser and her Husband] for feedback based on what we currently know. It may save time so we can just add Roy and Hunt 2. As discussed what I wrote will need to be paired down and conform with rest of doc." is "a very important question in this case." Docket No. 207, p. 7.

[8] All counsel are cautioned that evidence of behavior that violates the Rules of Professional Responsibility or Rule 11 will be taken very seriously and dealt with accordingly.

proceeding to the next stage of the litigation.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Mr. Hunt's Motion (Docket No. 204) is DENIED.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**

13