UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. HUNT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 3:23-cv-00243 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| SOUTHERN BAPTIST CONVENTION; ) | MAGISTRATE JUDGE |
| GUIDEPOST SOLUTIONS LLC; and ) | FRENSLEY |
| EXECUTIVE COMMITTEE OF THE ) | |
| SOUTHERN BAPTIST CONVENTION, ) | JURY DEMAND |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' FED R. CIV. P. 54(b) EVIDENCE AND ARGUMENT CONCERNING HUNT'S STATUS AS A PUBLIC FIGURE AT THE TIME OF THE TWEET**

Defendants Southern Baptist Convention and the Executive Committee of the Southern Baptist Convention (collectively "Defendants"), by counsel, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, hereby submit further evidence and argument concerning Hunt's status as a public figure at the time of the Tweet.

Federal Rule of Civil Procedure Rule 54(b) permits district courts to reconsider interlocutory orders when new legal arguments or evidence are submitted.[1] In its recent opinion, the Court dismissed all of plaintiff Johnny Hunt's claims except for his defamation claim related

---

[1] "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C.1994)).

to the December 5, 2022, Tweet by then SBC President, Bart Barber (the "Tweet"). The Court noted that the "parties have not adequately addressed Hunt's status as a public or private figure at the time of the Tweet." [Doc. 318 at pg. 68]. Accordingly, in resolving the motion for summary judgment, the Court stated it was "assum[ing] Hunt is a private figure for purposes of the defamation claim arising out of the Tweet," but also made clear it was open to "reconsideration upon further development of evidence and argument concerning Hunt's status at the time of the Tweet." [Doc. 318 at p.68]. Pursuant to Federal Rule of Civil Procedure 54(b), Defendants hereby submit the further evidence and argument requested by the Court.

## INTRODUCTION

As discussed below, Hunt was, at the very least, a limited-purpose public figure in early December 2022, when Barber used his personal account to tweet about Hunt. While Hunt may argue that he was pushed into the spotlight, the evidence reveals the truth: Hunt leaned in.

Far from being reluctantly drawn into the public controversy surrounding the Guidepost Report and sexual abuse within the SBC, Hunt entered into the public square. He climbed onto his social media-soapbox and loudly proclaimed that he was wronged and falsely accused. Just days later, he returned to the public eye—not only to dispute the Guidepost Report again—but also to confess a "moment of weakness" in which he got "too close to a compromising situation with a woman who was not my wife." *See* Judicial Notice Request, Exhibit C [Doc. 324-3].

Months later, Hunt "leaned in" once more when he voluntarily and publicly announced his so-called pastoral "restoration." Despite having spent decades cultivating a ministry devoted to restoring fallen pastors through the City of Refuge, he declined to follow the very process he had long championed. Instead, he enlisted four close pastor-friends to oversee his restoration. Those pastors then publicly proclaimed the outcome in a widely-shared video that received

2

national media attention. This was no quiet return to ministry in the privacy of a local church. This was a staged production intended for public consumption, a calculated move to reclaim credibility in the religious community writ large.

It is not difficult to see how Hunt wanted to have it both ways. On the one hand, a longtime, prominent pastor who has published over a dozen books and thousands of sermons wanted to publicize his "restoration" to bolster his image. But, on the other hand, when Hunt's public "restoration" sparked debate and commentary he did not like, he claimed to be merely a private figure. But the law of defamation does not allow him to have it both ways.

## FACTUAL BACKGROUND

There can be no doubt that Hunt is a prominent, well-known individual in the Christian community. Hunt served as pastor of "one of the largest churches in the United States," First Baptist Church in Woodstock, Georgia ("Woodstock") and was elected to serve as President of the SBC. [Doc. 1 at p.5]. Hunt describes himself as a "sought-after speaker and author" and a "noted speaker at state and national SBC conferences and conventions." [*Id.* at p.5].

Indeed, going back decades before 2022, Hunt published numerous Christian books. Some of those include:

- From the Poolroom to the Pulpit (1994)
- Building Your Leadership Resume (June 2009)
- Demolishing Strongholds: Finding Victory Over the Struggles That Hold You Back (Feb. 2017)
- Unspoken: What Men Won't Talk About and Why (Feb. 2018)
- Anchored in Jesus: Holding on to Truth in a Drifting World (Feb. 2020).

In addition to the store on his website, https://johnnyhunt.com/store/, many of Hunt's books can be found for sale on other commercial sites, such as Amazon. *See* Judicial Notice Request,

Exhibits J, K [Doc. 324-10, 324-11]. In fact, Hunt's Complaint specifically pled the loss of "current and future book deals" as a source of his damages. [Doc. 1 at p.13]. Beyond books, Hunt has also published thousands of sermons. Hunt's website lists over 1,500 separate items for sale, including 15 books and over 1,400 Sunday sermons.[2] *See* Judicial Notice Request, at 9-10 [Doc. 324].

Following the release of the Guidepost Report in May 2022, in an effort to negate the Guidepost Report and reestablish his status, Hunt has been vocal and intentional about getting his version of events into the public domain. In doing so, his story changed multiple times and in substantial ways. Like his responses to the Guidepost investigators, Hunt's first attempt to parry the impact of the report was to completely deny its contents. In a publicly available statement made on May 22, 2022, the same day the report was released, Hunt fully denied the contents of the report. He said, without equivocation, "I have never abused anybody," the incident "did not happen," and "[t]o put in bluntly: I vigorously deny the circumstances and characterizations set forth in the Guidepost report."

---

[2]  As more fully set forth in Defendants' Request for Judicial Notice in Support of Defendants' Fed. R. Civ. P. 54(b) Evidence and Argument ("Judicial Notice Request") [Doc. 324], all of the books, articles, and websites identified herein are the proper subject of judicial notice with respect to their existence and contents.



> **STATEMENT FROM PASTOR JOHNNY HUNT**
> May 22, 2022
>
> During my fifty years of ministry, I've always had a singular goal: to share the good news of Jesus Christ with a broken world. It has been the joy of my life to minister alongside so many selfless men and women at the North American Mission Board to spread the hope, love and grace of the Lord Jesus Christ.
>
> While I have resigned from my position at NAMB, I will continue to dedicate my life to encouraging and instructing pastors.
>
> Of course, I am aware that Guidepost Solutions issued a report earlier today. I did not see a copy of the report before today, and I have not had an opportunity to read the entire report.
>
> I want to be clear: my heart breaks for all victims of abuse. I support the rights of abuse victims to be heard and respected and made whole. I also support transparency and accountability for abusers.
>
> But transparency and accountability must be founded on truth and accuracy.
>
> To put it bluntly: I vigorously deny the circumstances and characterizations set forth in the Guidepost report. I have never abused anybody.
>
> Southern Baptists' navigating this challenging season must remember: "it is the *truth* that will set us free."
>
> –END–

*See,* Doc. 222-2, Hunt Depo. at 181:10–183:6; *See* Judicial Notice Request, Exhibit C [Doc. 324-3].

A mere five days later, on May 27, 2022, Hunt publicly shared a letter he authored and addressed to the congregation at Woodstock. In that letter, contrary to what he told Guidepost and the public, he admitted to an inappropriate relationship, calling it a "brief but improper encounter," but describing it as consensual as opposed to abusive. In his own words, Hunt stated, "I allowed myself to get too close to a compromising situation with a woman who was not my wife. It was an awful sin. Although it was consensual, it was wrong and unacceptable." Hunt also acknowledged that he was not honest with Guidepost investigators, saying that he was "sorry" he was not "more forthcoming with the interviewers because it made a bad situation worse." This admission makes clear that even Hunt understood this entire unfortunate episode was caused by his deception and could have been avoided.



*See,* Doc. 222-2, Hunt Depo., 188:12-196:25, Exhibit 16; Judicial Notice Request, Exhibit C [Doc. 324-3]. Both of Hunt's post-Report statements garnered media attention. *See* Judicial Notice Request, Exhibits A, B, and C [Docs. 324-1, 324-2, and 324-3].

Hunt's next attempt to publicly rehabilitate and reestablish his standing came months later in the form of his pastoral "restoration." Rather than go through the rigorous restoration process Hunt helped institute at a Woodstock affiliated ministry, City of Refuge, Hunt instead went to four friendly pastors to "restore" him to ministry. Specifically, in late November 2022, Hunt and his four pastor friends publicly announced Hunt's "restoration" and, thereby, his fitness to return to the ministry. They announced this through the public posting of an approximately fourteen-minute video to the Vimeo website. *See* Judicial Notice Request, at 4 [Doc. 324]. In the video, the four pastors willingly vouched for Hunt's fitness for ministry. *Id*. One of the pastors enthusiastically stated, "We believe the greatest days of ministry for Johnny Hunt are the days ahead." *Id*. For his part, Hunt, joined with his wife beside him, spoke for over three minutes. *Id*.

The public announcement of Hunt's "restoration" was clearly designed to attract attention, and it accomplished that goal. The story was picked up by not only several religious-based news

6

Case 3:23-cv-00243    Document 325    Filed 04/14/25    Page 6 of 19 PageID #: 13355

services and blogs, but national news outlets. For example, on November 29, 2022, following release of the video, Religion News Service ran an article on the video titled "Pastors say Johnny Hunt, former SBC president accused of abuse, can return to ministry":



*See* Judicial Notice Request, Exhibit D [Doc. 324-4].

Baptist News Global also ran an article on the video and Hunt's "restoration" to ministry:



*See* Judicial Notice Request, Exhibit E [Doc. 324-5].

In fact, on November 30, 2022, the Religion News Service article was picked up and published by the Washington Post:



See Judicial Notice Request, Exhibit F [Doc. 324-6].

Given Hunt's prominence, his "restoration" and its appropriateness or lack thereof not surprisingly sparked public debate in the community. On December 2, 2022, for example, another Southern Baptist pastor wrote an opinion piece in Christianity Today critical of Hunt's restoration:

## CHURCH LIFE
## A Southern Baptist Pastor's Plea: Please Listen
### CHRIS DAVIS

*Why Johnny Hunt's "restoration" convinces me we don't have ears to hear.*

See Judicial Notice Request, Exhibit G [Doc. 324-7].

Among the many critical of Hunt's "restoration" was Bart Barber. On December 4, 2022, Dr. Barber was tagged in a Tweet asking him to contrast the restoration of Hunt with that of another minister who had also recently gone through a restoration process. In his December 5, 2022, response, Dr. Barber contrasted the differences between Hunt's restoration and that of the other pastor. It was in this context that Hunt contends Dr. Barber defamed him:



See Judicial Notice Request, Exhibit H [Doc. 324-8].

In sum, by December 2022, Hunt had made three separate public statements: (1) a flat denial issued the day the Guidepost Report was released; (2) a letter of apology acknowledging a moral failing but denying the report's allegations; and (3) a "restoration" video shared with the

public. These were not coerced. These were not necessary. And they were not truthful. Hunt deliberately placed himself in the public square, desperately seeking to control the narrative and salvage his ministry. In doing so, at the very least, he made himself a limited-purpose public figure and his remaining defamation claim based solely on the Tweet must be dismissed.

**ARGUMENT**

The Court can determine that Plaintiff is a limited purpose public figure as a matter of law and end this case. "Whether a plaintiff is a private or public figure is a question of law." *Armstrong v. Shirvell*, 596 F. App. 433, 444 (6th Cir. 2015). A public figure plaintiff may be either a general-purpose public figure or a limited public figure. *Thomas M. Cooley L. Sch. v. Kurzon Straus, LLP*, 759 F.3d 522, 527 (6th Cir. 2014). A limited purpose public figure is a public figure with respect to a limited range of issues, who achieves that status by *voluntarily injecting himself* into a particular public controversy. *See Cooley*, 759 F.3d at 527 (emphasis added).

A two-step approach is used to determine whether an individual is a limited-purpose public figure. *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049 at *11, (M.D. Tenn. Jan. 10, 2022). First, the court must "determine whether there is a public controversy," which is defined as "a real dispute, the outcome of which affects the general public or some identifiable segment of the public in an appreciable way." *Id.* Second, the court must determine whether the plaintiff "has become so involved in the public controversy as to constitute a public figure via his involvement." *Id.* (citation omitted).

The Court has already found that like the "Report, the Tweet addresses a matter of legitimate public concern." [Doc. 318 at pg. 67]. Accordingly, the first element of finding a limited-purpose public figure is satisfied. The remaining element is whether Plaintiff is "a limited-purpose public figure, i.e., one who "thrust [himself] to the forefront of particular public

controvers[y] in order to influence the resolution of the issues involved." *Ogle v. Hocker*, 279 F. App. 391, 399 (6th Cir. 2008); *Cooley*, 759 F.3d at 527; *Santoni*, 2022 WL 97049 at *11.

Three factors are considered when determining the level of a plaintiff's involvement in a public controversy: (1) the voluntariness of his involvement; (2) the extent to which he had access to channels of communication to counteract false statements; and (3) the prominence of his role. *Santoni*, 2022 WL 97049 at *11. Hunt thrust himself into this public controversy and he is a public figure.

### 1. *Hunt Voluntarily Engaged the Public Controversy and Made Himself the Story.*

Hunt's involvement in the public controversy regarding sexual abuse within the SBC, including Bart Barber's Tweet, was entirely voluntary. The record evidence makes this clear. First, Hunt voluntarily involved himself by lying to Guidepost and withholding "his version"[3] of events. Second, Hunt voluntarily and publicly thrust himself into the controversy through the public statements he made between the publication of the Report and the time of Bart Barber's tweet.

Hunt lied and obfuscated and in so doing voluntarily entered the debate and discussion surrounding the public controversy. Hunt admits he lied to Guidepost multiple times and that he denied having physical contact with Jane Doe. (*See, e.g.,* Doc. 222-2, Hunt Depo. at 139:12–21; 141:19–22; 142:24–143:5; 143:19–20; 166:12–15.) His choices to lie and obfuscate prompted the need for, and undoubtedly led to, a more thorough treatment of the incident in the Report. Had Hunt truthfully disclosed the facts regarding his encounter with Jane Doe—even his version of the facts—then the Report would have been different and may not have included Hunt at all. (*See* Doc.

---

[3] This phrase is used only in its colloquial sense. Fully nailing down Hunt's story about this matter is much like endeavoring to nail smoke to a wall. He spent this litigation listening to each deposition and attempting to refine his story to fit the information he was hearing.

11

222-5, Kilpatrick Depo. at 303:1–304:10) (acknowledging that, if Guidepost had determined the encounter was consensual or even more likely than not to have been consensual, then it would have left the encounter out of the Report). However, by appearing before Guidepost and (unsuccessfully) attempting to negate Jane Doe's allegations by telling Guidepost a multitude of lies, Hunt "injected himself" into the "vortex" of the sexual abuse controversy. *See Cooley*, 759 F.3d at 527. (*See also* Doc. 222-5, Kilpatrick Depo. at 303:1–304:10.) Hunt lied about his interactions with Jane Doe specifically to "influence the resolution of the issues." *Ogle*, 279 F. App. at 399. Hunt admitted as much when he told his former church, Woodstock, he wished he was "more forthcoming with the interviewers because it made a bad situation worse."[4]

Sixth Circuit case law is clear that one achieves limited-purpose public figure status by "voluntarily injecting himself… into a particular public controversy." *Cooley*, 759 F.3d at 527 (citing *Gertz*, 418 U.S. at 351, 94 S.Ct. 2997). Indeed, Hunt marched into the virtual town square, climbed atop his soapbox, and publicly proclaimed his innocence – issuing a wholesale denial of the allegations in the Report. His precise words posted publicly on his Twitter account were crystal clear:

> *"To put it bluntly: I vigorously deny the circumstances and characterizations set forth in the Guidepost report. I have never abused anybody."*[5]

---

[4] https://www.instagram.com/johnnymhunt/p/CeErzRtuvrC/?hl=en&img_index=1

[5] Hunt's Twitter account has been deleted; however, the accurate text of this tweet was repeated in numerous articles and news stories covering Hunt's public and prominent denial. *See, e.g.*, Report: SBC leaders mistreated abuse survivors for decades. The article is available at the following web address: https://baptiststandard.com/news/baptists/report-sbc-leaders-mistreated-abuse-survivors-for-decades/

Hunt's initial post was widely viewed and reported.[6] It was an unequivocal public denial of the allegations in the Report on the very day the Report was publicly released – a day Hunt obviously prepared for. A controversy Hunt already understood he was in the middle of – after all he resigned from the North American Mission Board after his interview with Guidepost, but days before the public release of Guidepost's Report. (*See* Doc. 222-2, Hunt Depo. at 101:3–13; 106:3–20.)

Hunt again injected himself into the controversy less than a week later publicly releasing a letter and video message to Woodstock on his social media accounts including Facebook, Instagram, and Twitter.[7] This message, like his previous denial, garnered significant media coverage, especially because this statement admitted a moral failure and interactions with another pastor's wife.[8] This was the second attempt to "inject himself into the public controversy" for purposes of managing issues he had voluntarily created for himself. *Cooley*, 759 F.3d at 527. Coverage of Hunt's letter to Woodstock was extensive, including one article reporting that Hunt's letter had received more than twenty-three thousand views.[9]

When private matters are publicly broadcast to shape a narrative and influence outcomes, the Sixth Circuit has held that this amounts to a voluntary injection into a public controversy. *See Cooley*, 759 F.3d at 527. This is exactly what Hunt did when he and his friends released recorded videos declaring him restored and ready to return to ministry.[10] In November 2022, only a few months following the Guidepost Report, Hunt had himself publicly declared fit to return to

---

[6] *See* Judicial Notice Request, Exhibits A-C [Docs. 324-1, 324-2, and 324-3].
[7] https://www.instagram.com/johnnymhunt/p/CeErzRtuvrC/?hl=en&img_index=1
[8] *See* Judicial Notice Request, Exhibit C [Doc. 324-3].
[9] *See* Judicial Notice Request, Exhibit C [Doc. 324-3].

[10] Pastors/Hunt Video Combined on Vimeo. The video is available at the following web address: https://vimeo.com/773976255/97cd42e4f6?fbclid=IwAR1J_yqk-OL07iGfO5957Rp__BAYSsnRURAQcBr8ljiD8L26XZgaHfcByf0&mibextid=Zxz2cZ

ministry. This was not a mere announcement at his church of membership, but an orchestrated and intentional public proclamation that Hunt was returning to ministry after being named in the Report. This defiant return to ministry, despite the serious allegation in the Report, was reported on by mainstream and religious media outlets extensively.[11] Hunt wasn't compelled, forced, or thrust into the controversy surrounding sexual abuse in the SBC. He injected himself into the controversy repeatedly. He did so voluntarily and for the sole purpose of managing his image and controlling his outcomes.

It is anticipated Hunt will argue, as he did at the motion to dismiss stage, that his denials made soon after the release of the Guidepost Report are not voluntary involvement and cannot transform him into a public figure. [*See* Doc. 40 at pp.11-12]. Hunt's argument is belied by his own admissions. It was his deception that led to his entanglement with the public controversy. Regardless, this argument still does not carry the day for Hunt. Even excluding consideration of Hunt's statements made in the aftermath of the Guidepost Report, Hunt's claim still fails.

Instructive is the case of *Falls v. Sporting News Pub. Co.*, 714 F. Supp. 843 (E.D. Mich. 1989). Joseph Falls was fifty-seven years old and had been a sportswriter for over thirty-five years, including working as a sports editor of The Detroit News and contributing to a The Sporting News, a weekly column, from 1963 to 1985. *Id*. at 844. Following his termination from The Sporting News in 1985, Mr. Falls claimed he was defamed by both the editor and president of The Sporting News with respect to his work as a sportswriter, but the court held that Mr. Falls was a public figure with respect to his sports writing activities:

> Based upon a review of the record it is clear that Plaintiff is a public figure with regard to his sports writing activities. By virtue of the fact that Plaintiff has been a sports writer for national publications,

---

[11] *See* Judicial Notice Request, Exhibits D-G [Docs. 324-4, 324-5, 324-6 and 324-7].

14

> given radio shows and made television appearances, written books and made many speaking and personal appearances, Plaintiff has voluntarily thrust himself into the public eye within the meaning of *Gertz*.

*Id*. at 846 - 47 (citation omitted). On appeal, the Sixth Circuit affirmed. *See* 899 F.2d 1221 (Table), 1990 WL 41001 (6th Cir. Apr. 10, 1990) (unpublished). The court found the relevant test to be whether Mr. Falls' career as a sportswriter made him a public figure for purposes of commentary on him as a sportswriter. *See id*. at *4 ("The plaintiff argues that he is not a public figure because he did not thrust himself into a controversy over his firing. This is not the test. The real question is whether Mr. Falls' career as a sportswriter made him a public figure for purposes of commentary on him as a sportswriter.") (emphasis added).

Similarly, Hunt's career as a pastor, author, sought-after speaker, President of the Southern Baptist Convention, and an executive ("savior")[12] at the North American Mission Board have made him a public figure for purposes of commentary about his qualifications to serve in ministry. *Falls*, 714 F. Supp. 846-47. Bart Barber's Tweet was commentary on his purported "restoration" and his fitness to serve in ministry. It was a tweet about a public figure. A public figure who was prominent and well known for his ministry, and a public figure who thrust himself into the center of a public controversy.

### 2. *Hunt Had Access to Necessary Channels of Communication.*

Hunt could not credibly argue he lacked access to adequate channels of communication such that he could not be a limited-purpose public figure. Hunt utilized multiple social media

---

[12] When questioned about his employment at NAMB, Hunt stated, "They wanted my name. They wanted Johnny Hunt there because they were struggling a lot. They needed a name of integrity and a name of leadership to help them. And so because I couldn't go full time until 2020, but they just said if we could just have your name and you just do a number of conferences, we want you now. And that was our understanding." (Doc. 222-2, Hunt Depo. at 97:15-21.)

accounts, churches, his own website, and Vimeo to inject himself into the controversy related to sexual abuse within the SBC. His denials were public on social media and otherwise. They were reported on extensively by the mainstream and religion-focused media.

The facts clearly demonstrate that Hunt had access to channels of communication to counteract any allegedly false statements. Hunt was interviewed twice by Guidepost. (*See* Doc. 1–2, PageID #190.) During those interviews, Hunt had ample opportunity to provide his version of the events and counter any false statements. Guidepost even gave Hunt an additional 48 hours to provide the investigators with further details after the second interview concluded. (*See* Doc. 222-2, Hunt Depo. at 268:2–15.) Hunt opted not take advantage of that opportunity (despite the fact that he shared a version of the events that directly contradicted the story he told Guidepost within that 48-hour window to his then employer, the North American Mission Board ("NAMB")). (*Id.* at 106:3–107:5.) In fact, Hunt admitted he had the opportunity to talk to Guidepost again but testified he "wouldn't have contacted them if they had given [him] 96 hours." (*See id.* at 268:13–15.) In all, Hunt had channels of communication at his disposal both before the Report (when he chose not to use them) and after the publication of the Report – when he sought to use them to counteract and change a narrative he did not like.

### 3. *Hunt is a Prominent Pastoral Figure in Southern Baptist Life and In Connection With the SBC's Sexual Abuse Issues.*

As for the third factor, Hunt's complaint emphasizes the prominence of his role in the controversy throughout his Complaint. (*See, e.g.,* Doc. 1 at PageID #2, ¶¶ 7–8) (alleging that Defendants used Hunt as their "scapegoat" in the sexual abuse controversy and noting that Hunt was "the first name mentioned in the report"). He therefore cannot dispute that he played a prominent role in the controversy. His restoration drew the attention of tens of thousands through social media and otherwise. It drew the attention of the President of the Southern Baptist

16

Case 3:23-cv-00243    Document 325    Filed 04/14/25    Page 16 of 19 PageID #: 13365

Convention. It drew the attention of mainstream media outlets like the Washington Post and was also covered by religion media outlets like Christianity Today, Religion New Service, and Baptist Press. Hunt is a prominent figure in this controversy, primarily because he thrust himself into the center of the controversy time and again.

Here, already being a prominent evangelical author and speaker, and seeking to bolster and reestablish his standing in the religious community, Hunt voluntarily publicized his pastoral "restoration" in late November 2022. Hunt's actions, as one would expect, received significant media attention, including national media outlets like the Washington Post, and sparked debate. It was in the context of this debate concerning the propriety of Hunt's restoration that Dr. Barber made his December 5, 2022 Tweet. Having voluntarily sought and attained his status as an evangelical celebrity, and having voluntarily sought to proclaim his "restoration" and the attention it would undoubtedly bring, Hunt cannot realistically claim he was a mere private figure as it pertains to Dr. Barber's Tweet.

### 4. *Hunt is a Public Figure and Summary Judgment is Proper.*

Hunt's involvement in the controversy was voluntary, he utilized social media and his statements were covered extensively by media outlets across the country. He figured prominently into this scandal, mostly by and through his own lies, actions, and public statements. Hunt is a limited-purpose public figure. This Court has already ruled that Hunt cannot meet the actual malice standard: "Given this lack of evidence, a jury would be unable to find by clear and convincing evidence that the SBC or the Executive Committee acted with actual malice in connection with the Tweet." [Doc. 318 at pg. 68]. This Court can now determine Hunt's status as a limited-purpose public figure as a matter of law. The evidence and argument above makes clear

that Hunt thrust himself into the SBC abuse controversy and had made himself a limited-purpose public figure at the time of Bart Barber's Tweet.

**Dated: April 14, 2025.**

    Respectfully submitted,

    GORDON REES SCULLY MANSUKHANI, LLP

    By:   *s/ Matthew C. Pietsch*
          **Matthew C. Pietsch**, TN Bar No. 024659
          4031 Aspen Grove Drive, Suite 290
          Franklin, TN 37067
          Phone: 615-722-9000
          Fax: 615-970-7490
          mpietsch@grsm.com

          *Counsel for Defendant Southern Baptist Convention*

    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

    By:   *s/ Scarlett Singleton Nokes (w/ permission by M. Pietsch)*
          **Scarlett Singleton Nokes**, TN Bar No. 028994
          **Gene R. Besen** (pro hac vice)
          220 Ross Avenue, 20th Floor
          Dallas, TX 75201
          Phone: 469-391-7411
          Fax: 469-391-7401
          snokes@sheppardmullin.com
          gbesen@sheppardmullin.com

    JACKSON KELLY PC

          Thomas J. Hurney, Jr. (pro hac vice)
          Gretchen M. Callas (pro hac vice)
          500 Lee Street East
          Suite 1600
          Charleston, WV 25301
          Phone: 304-340-1000
          thurney@jacksonkelly.com
          gcallas@jacksonkelly.com

          *Counsel for Defendant Executive Committee of the Southern Baptist Convention*

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing has been served through the Court's electronic filing system to the following on **April 14, 2025**:

| | |
|---|---|
| Robert D. MacGill<br>Patrick J. Sanders<br>MacGill PC<br>156 E. Market Street, Suite 1200<br>Indianapolis, IN 46204<br>robert.macgill@macgilllaw.com<br>patrick.sanders@macgilllaw.com<br><br>Todd G. Cole<br>Andrew Goldstein<br>Cole Law Group, P.C.<br>1648 Westgate Circle, Suite 301<br>Brentwood, TN 37027<br>tcole@colelawgrouppc.com<br>agoldstein@colelawgrouppc.com<br>*Counsel for Plaintiff* | John R. Jacobson<br>Katherine R. Klein<br>Riley & Jacobson, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>jjacobson@rjfirm.com<br>kklein@rjfirm.com<br><br>Steven G. Mintz<br>Terence W. McCormick<br>Scott Klein<br>Adam Kahan Brody<br>Alex Otchy<br>Mintz & Gold LLP<br>600 Third Avenue, 25th Floor<br>New York, NY 10016<br>mintz@mintzandgold.com<br>mccormick@mintzandgold.com<br>klein@mintzandgold.com<br>brody@mintzandgold.com<br>otchy@mintzandgold.com<br>*Counsel for Defendant Guidepost Solutions, LLC* |
| E. Todd Presnell<br>R. Brandon Bundren<br>Bradley Arant Boult Cummings LLP<br>1600 Division Street, Suite 700<br>Nashville, TN 37203<br>tpresnell@bradley.com<br>bbundren@bradley.com<br>*Counsel for the Executive Committee of the Southern Baptist Convention* | Louis Gino Marchetti, Jr.<br>Taylor, Pigue, Marchetti & Blair, PLLC<br>2908 Poston Avenue<br>Nashville, TN 37203<br>gmarchetti@tpmblaw.com<br>*Counsel for Southern Baptist Convention*<br><br>Melissa J. Hogan<br>Qavah Law<br>8757 Horton Highway<br>College Grove, TN 37046<br>melissajhogan@qavahlaw.com<br>*Counsel for Jane Doe* |

                                           */s/ Matthew C. Pietsch*