# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY M. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-00243 |
| | ) | |
| SOUTHERN BAPTIST CONVENTION; | ) | Judge Campbell |
| GUIDEPOST SOLUTIONS LLC; and | ) | Magistrate Judge Frensley |
| EXECUTIVE COMMITTEE OF THE | ) | Jury Demand |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER NO. 316 GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN PART

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT ...................................................................................................... 3

   I.    **The Court's Public Concern Analysis.** ...................................................**3**

      A.   **Plaintiff's Twelve-Year-Old Encounter Was Not a Matter of Public Concern.** ..........3

      B.   **Placement of Plaintiff's Private Encounter in the Report Does Not Make it a Matter of Public Concern.** ...............................................................5

         1.   **The Context of the Report Does Not Transform Plaintiff's Inherently Private Matter Into One of Public Concern.** ...............................5

         2.   **Reporting Plaintiff's Private Encounter was Self-Interested and Gratuitous, as it was Not a Matter of Public Concern.** ...............7

         3.   **Plaintiff was Outside the Scope of the Report.** ...................8

      C.   **Defendants Cannot Create Their Own Defense by Recharacterizing the Encounter.** ....................................................................10

   II.   **The Court's Actual Malice Analysis.** ...................................................**11**

      A.   **Defendants Knew or Were Recklessly Indifferent to the Fact That Plaintiff Had Not Committed Sexual Assault or a Crime Under Florida law.** ...........................11

      C.   **The EC and SBC Acted with Actual Malice By Ignoring Evidence Rebutting the Truth of the Allegations.** ..........................................................18

   III.   **The Court's Negligence Analysis.** .......................................................**19**

      A.   **A Reasonable Jury Could Find That Defendants Acted Negligently When They Published the Statements on Plaintiff.** .....................................19

      B.   **Plaintiff's Argument on the EC and SBC's Negligence Was Misapprehended.** .....22

   IV.   **There is a Genuine Issue of Material Fact as to Whether Defendants' Conduct was Extreme and Outrageous.** ........................................................**23**

# INTRODUCTION

Plaintiff had a brief, consensual extramarital encounter with Jane Doe in 2010. For nearly twelve (12) years, Plaintiff, Jane Doe, and Jane Doe's husband believed the encounter to be consensual. The counselor, who met with the Couple between ten (10) and nineteen (19) times for counseling sessions in 2010, believed the encounter to be consensual. Then, in February 2022, Jane Doe's husband reported the consensual extramarital encounter to Guidepost Solutions, LLC. At the time, Guidepost was five (5) months into its engagement with the SBC but had no new allegations of sexual abuse involving an Executive Committee member to include in its highly-anticipated, multi-million-dollar Report. Guidepost was willing to consider any allegation for its Report, even those outside of the Report's scope. But before Guidepost interviewed Jane Doe in person, Guidepost connected her with Dr. Phil Monroe of Langberg, Monroe & Associates, a counselor engaged for purposes of the Report—a "Survivor Care Liaison." Jane Doe met with this counseling firm two or three times before her all-day, March 2022 interview. It was through this counseling that Jane Doe changed her view of the private consensual encounter nearly twelve (12) years prior.

Guidepost worked with Jane Doe and her husband to produce what Guidepost has labeled an "explosive" Report. Jane Doe and her husband were given—and accepted—the opportunity to provide line edits to the portion of the Report on Plaintiff. But Guidepost went beyond reporting the story they were told by Jane Doe and her husband. Guidepost deliberately altered the Couple's story to fit its desired narrative, a sexual assault. In May 2022, Defendants published the Report to the world. The Report disclosed Plaintiff's private information and falsely labeled the encounter a "sexual assault."

The consensual extramarital encounter between Plaintiff and Jane Doe was a private matter, and Guidepost's self-interested reporting cannot transform it into a matter of public concern. Plaintiff introduced evidence upon which a jury could find each Defendant liable under the negligence standard or the actual malice standard.

Plaintiff respectfully requests that the Court reconsider its Order granting Defendants' motions for summary judgment in part. Reconsideration is needed to correct clear errors of law and to prevent manifest injustice.

## LEGAL STANDARD

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Courts traditionally will find justification for reconsidering interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Layne Christensen Co. v. City of Franklin*, No. 3:17-cv-01236, 2020 U.S. Dist. LEXIS 215762, at *6 (M.D. Tenn. Nov. 18, 2020). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). District courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank (South Dakota) N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C. 1994)) (cleaned up).

2

## I.     The Court's Public Concern Analysis.

The Court's public concern analysis cannot be reconciled with settled legal principles. The Court analyzed the Report as a whole instead of focusing, as required, on the content of the specific statements challenged in this lawsuit. In doing so, the Court accepted Defendants' invitation to recharacterize the scope of the Report into one of "allegations of sexual abuse involving clergy members." Guidepost's engagement was explicit and limited to "allegations of abuse by Executive Committee Members." The portion of the Report relating to Plaintiff pertained to an inherently private matter relating to an encounter that occurred nearly twelve (12) years before publication. Plaintiff was not an Executive Committee Member at the time of the encounter. Defendants knew this at the time of publication. The encounter was not within the scope of the Report that was commissioned.

The inclusion of Plaintiff in the Report by Guidepost was self-interested and should not be afforded First Amendment protection. The encounter was not a matter of public concern.

### A.  Plaintiff's Twelve-Year-Old Encounter Was Not a Matter of Public Concern.

When determining whether speech involves a matter of public concern, courts look at the "content, form, and context of a given statement." *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 381 (6th Cir. 2024) (internal quotation marks omitted) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech. . . ." *Snyder v. Phelps*, 562 U.S. 443, 454 (2011).

Plaintiff's lawsuit is premised on a distinct section of the Report. The relevant content includes the specific portions of the Report describing Plaintiff's private encounter nearly twelve

(12) years prior to the Report's publication, and in particular, the statements under the headings: "Allegations of Abuse by EC Staff and Members" and "Allegations of Abuse Committed by Executive Committee Members." Doc. No. 248-12 (Report) at 4, 149; *See Reardon v. Tegna E. Coast Broad., LLC*, No. 1:21-cv-00356-JDL, 2022 U.S. Dist. LEXIS 111061, at *2 (D. Me. June 23, 2022) (applying the content, form, and context test and finding that the content was the single defamatory statement at issue in the lawsuit, and not the news broadcast as a whole). This Court previously recognized this legal principle in its Order on Defendants' Motions to Dismiss: "Hunt has alleged facts to support the proposition that the **parts** of the Guidepost report **pertaining to him** were not of public concern." Doc. No. 150 at 12 (emphasis added).[1]

The Sixth Circuit has confirmed that typically whether two adults engaged in an extramarital encounter does not implicate a matter of public concern. *See, e,g.*, *Albert v. Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) ("That two corrections officers engaged in an affair in violation of department rules, though perhaps appealing to the prurient interest of some members of the public and Albert, does not implicate a matter of public concern."); *see also Lindberg v. Dow Jones & Co.*, No. 20-cv-8231 (LAX), 2021 U.S. Dist. LEXIS 151397, at *21 (S.D.N.Y. Aug. 11, 2021) (noting that "an extramarital affair would typically not be a matter of 'public concern'").

The circumstances in this case provide no basis for evaluating an extramarital encounter as a matter of public concern. Plaintiff was a private citizen at the time of the encounter. He was neither the president of the SBC nor a member of the Executive Committee.

---

[1] In its April 1, 2025, Memorandum, the Court identified three "statements at issue." The Court did not include the Report as a whole as a statement at issue. Doc. No. 317 at 46.

4

A cause of action for the public disclosure of private facts focuses on Defendants' publication of only the true facts—*i.e.*, that Pastor Johnny had a brief, consensual extramarital encounter with a married woman in 2010. Restatement 2d of Torts, § 652D ("This Section provides for tort liability involving a judgment for damages for publicity given to true statements of fact."). Plaintiff presented evidence through a declaration in opposition to Defendants' Motions for Summary Judgment confirming that the encounter was not a sexual assault: "On July 25, 2010, I engaged in a brief, consensual extramarital encounter with Jane Doe." Doc. No. 246 (Hunt Decl.) ¶ 2. This "direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Resolution of the factual issues associated with what happened during the encounter is premature and inconsistent with the mandates of Federal Rule of Civil Procedure 56. The mandates of Rule 56 apply with special force here when a clear understanding of what happened during the encounter requires a review of all relevant evidence.

For the reasons stated, and each of them, Pastor Johnny's encounter with Jane Doe was a private matter and not a subject of public concern.

## B. Placement of Plaintiff's Private Encounter in the Report Does Not Make it a Matter of Public Concern.

### 1. The Context of the Report Does Not Transform Plaintiff's Inherently Private Matter Into One of Public Concern.

It is a settled legal principle that the context of a statement alone cannot transform an inherently private matter into one of public concern. *Caine v. Hardy*, 943 F.2d 1406, 1416 (5th Cir. 1991) ("[C]ontext alone cannot transform an inherently self-interested opinion into one that implicates public issues. Had [plaintiff] proclaimed his opposition to [defendant] . . . from the steps of the Mississippi capitol, the characterization of this speech [as a matter of private

5

concern] would not differ."); *Snyder v. Phelps*, 562 U.S. 443, 454-55 (2011) (rejecting plaintiff's argument that the private context of the speech made the speech one of private concern: "[t]he fact that Westboro spoke in connection with a funeral, however, cannot by itself transform the nature of Westboro's speech"); *Gersh v. Anglin*, 353 F. Supp. 3d 958, 965-66 (D. Mont. 2018) (finding that the "public context" of "an alt-right 'news' blog, which often engage[d] with political issues" did not transform the nature of the private speech at issue into a matter of public concern).

    *Mackin v. Cosmos Broad., Inc.* is instructive on this principle. No. 3:05-CV-331-H, 2008 U.S. Dist. LEXIS 40715 (W.D. Ky. May 20, 2008). There, the conduct at issue was the inclusion of information relating to a private real estate transaction on a TV segment that "throughout its existence fought consumer problems and stood up for its viewers." *Id.* at *2 (internal citation marks omitted). The defendant argued that because the focus of the TV segment generally was a matter of public concern, then anything broadcast on the TV segment was "*ipso facto* a matter of public concern." *Id.* at *15. The court rejected the defendant's argument and found that adopting such a standard was akin to allowing "those charged with defamation to create their own defense by simply deciding to publish a story about an otherwise private matter." *Id.* (cleaned up). The court concluded that "[s]uch a standard would make nearly any private issue a matter of public concern. . . ." *Id.* at *15-17.

    The fact that other sections of the Report may relate to matters of public concern does not convert Plaintiff's inherently private matter into one of public concern. The Court's Order shields Defendants from liability and an appropriate review simply because they decided to include Plaintiff's private encounter in a 288-page Report.

6

## 2. Reporting Plaintiff's Private Encounter was Self-Interested and Gratuitous, as it was Not a Matter of Public Concern.

Defendants' decision to include Plaintiff in the Report was self-interested and gratuitous. As a result, the context of the Report cannot transform Plaintiff's encounter into one of public concern. *Caine*, 943 F.2d at 1416 ("[C]ontext alone cannot transform an inherently self-interested opinion into one that implicates public issues."); *see also Hullman v. Bd. of Trs.*, 725 F. Supp. 1536, 1545 (D. Kan. 1989) ("Plaintiffs cannot bring constitutional light to their personal grievances by bootstrapping them onto issues of public concern. . . .").

In February 2022, five months into Guidepost's engagement, the company had no new allegations of sexual abuse involving an Executive Committee member to include in their highly-anticipated, multi-million-dollar Report. Doc. No. 257-5 (Guidepost 30(b)(6) Dep.) at 77:14-78:4, 78:15-20. The evidence confirms directly, or by implication, that in an attempt to justify their $4 million dollar fee, Guidepost was prepared to consider any allegation, regardless of whether it fell within the Report's parameters. Doc. No. 258-33 (SJ Ex. 72) at 1. In February 2022, Jane Doe's Husband came forward with a story from 2010—a brief, consensual extramarital encounter between Jane Doe and Plaintiff. Doc. No. 247 ¶ 25. But before Guidepost interviewed Jane Doe in person, Guidepost connected her with Dr. Phil Monroe of Langberg, Monroe & Associates, a counselor engaged for purposes of the Report—a "Survivor Care Liaison." *Id*. at ¶¶ 32-37; Doc. No. 248-12 (Report) at 28. Jane Doe met with this counseling firm two or three times before her all-day, March 2022 interview. *Id*. at ¶¶ 37-38. It was through this counseling that Jane Doe changed her view of the private consensual encounter nearly twelve (12) years ago. Doc. No. 258-7 (SJ Ex. 27) at 1 ████████████████████

████████████████████████████████████████

████████████ Jane Doe and her husband were given—and accepted—the opportunity to provide

7

line edits to the portion of Report on Plaintiff. Doc. No. 258-41 (SJ Ex. 88). Guidepost went beyond reporting the story they were told by Jane Doe and her husband. Guidepost deliberately altered the Couple's story to fit its desired narrative, a sexual assault. Doc. No. 251 at 17-20. In May 2022, Defendants published the Report to the world. The Report disclosed Pastor Johnny's private information and falsely labeled the encounter a "sexual assault."

Defendants' decision to include Plaintiff in the Report was—in the words of *Caine*— "self-interested" and the Report's context does not transform Plaintiff's private encounter to a matter of public interest.

### 3. Plaintiff was Outside the Scope of the Report.

The Court found "the Report relate[d] to broad issues of interest to the society at large, rather than matters of purely private concern. Specifically, the issues the Report highlights – allegations of sexual abuse involving clergy members and how such allegations of such abuse were handled – are matters of public import." Doc. No. 317 at 49. This finding inappropriately transforms the scope of the Report commissioned by the SBC.

The Report was commissioned to investigate "*the EC's* handling of sexual abuse allegations" and specifically the "*actions and decisions of EC staff and members . . .* with respect to allegations of abuse, mishandling of abuse, mistreatment of victims, patterns of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives." Doc. No. 248-12 (Report) at 3 (emphasis added). The scope of Guidepost's engagement was unambiguous. Guidepost was "charged with investigating":

> (1) "Allegations of abuse by EC members,"

> (2) "Mishandling of abuse allegations by EC members between January 1, 2000, to June 14, 2021,"

(3) "Allegations of mistreatment of sexual abuse victims by EC members from January 1, 2000, to June 14, 2021,"

(4) "Patters of intimidation of sexual abuse victims or advocates from January 1, 2000, to June 14, 2021," and

(5) "Resistance to sexual abuse reform initiatives from January 1, 2000, to June 14, 2021."

*Id.* at 17.

The Report specifically addressed "allegations of abuse by EC members" and "the EC's handling of sexual abuse allegations," not "allegations of sexual abuse involving clergy members." The record evidence establishes that the disclosures made to Guidepost relating to Plaintiff were outside the scope of the Report and did not involve "[a]llegations of abuse by EC members" in at least two fundamental respects.

First, Plaintiff was not SBC president or a member of the Executive Committee at the time of the encounter. Doc. No. 257-5 (Guidepost 30(b)(6) Dep.) at 89:15-18, 91:5-8. Defendants have admitted this fact from the outset of litigation. Doc. No. 155 (EC's Answer to Complaint) ¶ 47 ("The EC admits the Guidepost Report did not find that an EC member had been accused of committing sexual abuse during his or her time on the EC."); Doc. No. 161 (SBC's Answer to Complaint) ¶ 47 ("The SBC admits the Guidepost Report did not find that an EC member had been accused of committing sexual abuse during his or her time on the EC.").

Second, Jane Doe herself described and believed the encounter with Plaintiff to have been consensual until a meeting with a therapist more than ten (10) years later that had been arranged by Guidepost. Doc. No. 258-7 (SJ Ex. 27) at 1 ████████████████████████

██████████████████████████████████████████████████

██████████

The encounter involving Plaintiff was outside the scope of the Report, unrelated to the types of sexual abuse that led to Guidepost's engagement, and it should not have been included or published at all. Based on these facts, the context of the Report as a whole cannot convert Plaintiff's private encounter into one of public concern.

### C. Defendants Cannot Create Their Own Defense by Recharacterizing the Encounter.

Defendants cannot recharacterize Plaintiff's consensual encounter as a "sexual assault" in order to avoid liability.

Plaintiff provided evidence that Jane Doe herself described and believed the encounter with Plaintiff to have been consensual until a meeting with a therapist more than ten (10) years later that had been arranged by Guidepost. Doc. No. 258-7 (SJ Ex. 27) at 1 ████████████ ██████████████████████████████████████████ ███████████████████ Doc. No. 248-12 (Report) at 28 ("[T]he Guidepost team engaged Dr. Phil Monroe of Langberg, Monroe & Associates as a Survivor Care Liaison."). Guidepost then deliberately altered the Couple's story to fit their desired narrative, a sexual assault. Doc. No. 251 at 17-20. Viewing these facts and drawing all reasonable inferences in favor of Plaintiff, as the Court must at the summary judgment stage, Jane Doe did not come forward with a sexual assault allegation.

Defendants cannot through therapy or litigation argument, "transform" a twelve year old consensual encounter into a matter of public concern. Defendants should not be afforded First Amendment protection.

* * *

Plaintiff's private, extramarital encounter is not a matter of public concern. Plaintiff's public disclosure of private facts claim should proceed to the jury and Plaintiff's false light claim should be viewed under a negligence standard of fault.

## II. The Court's Actual Malice Analysis.

### A. Defendants Knew or Were Recklessly Indifferent to the Fact That Plaintiff Had Not Committed Sexual Assault or a Crime Under Florida law.

The Court failed to adjudicate whether issues of material fact exist as to whether Defendants were "recklessly indifferent" to "the fact that Plaintiff had not committed sexual assault or a crime under Florida law." Doc. No. 250 at 10-13; Doc. No. 251 at 6-10. This failure constitutes a clear legal error in the application of the actual malice standard.

Plaintiff submitted evidence and argument that a jury could find actual malice or negligence because "Pastor Johnny had not committed sexual assault or a crime under Florida law." Doc. No. 251 at 6-10; Doc. No. 250 at 10-13. When evaluating Plaintiff's argument,[2] the Court focused exclusively on Florida Law and whether Defendants "knew" Jane Doe had not been sexually assaulted when they published the Report. Doc. No. 317 at 52-54 ("Of course, caselaw is not evidence, let alone clear and convincing evidence that any of the defendants ***knew*** the statement was false.") (emphasis added); ("The Court first considers Hunt's argument that Guidepost had ***knowledge of falsity*** because the allegations against him would not amount to a

---

[2] Although the Court did evaluate reckless disregard in relation to other arguments, the Court failed to adjudicate whether there was a genuine issue of material fact as to Defendants' reckless disregard under the argument Plaintiff made on pages ten (10) to thirteen (13) of its Opposition to the EC's and SBC's Motions (Doc. No. 250) and pages six (6) to ten (10) in Opposition to Guidepost's Motion (Doc. No. 251).

11

sex crime in Florida. . . .") (emphasis added).; ("And Hunt identifies no evidence that Guidepost '***knew***' she wasn't.") (emphasis added).

Plaintiff's argument was not limited to Florida law, and satisfaction of the "actual malice" standard is not limited to knowledge of falsity alone. Proper analysis requires a determination whether Defendants acted with "reckless disregard of the truth." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (a statement is made with actual malice when it is made "with knowledge that it was false *or with reckless disregard of whether it was false or not*") (emphasis added). Plaintiff presented clear and convincing evidence from which a jury could find that the Defendants were recklessly indifferent to the false statement in the Report that Plaintiff had been accused of a sexual assault.

Plaintiff's briefing cited the testimony of Samantha Kilpatrick, one of Guidepost's lead investigators, who testified at her deposition that a sexual assault only occurs when there is no consent:

> Q. [F]or there to be a sexual assault there has to be a situation where there was not consent, right?
>
> A. That's correct.

Doc. No. 251 at 9 (citing Kilpatrick Dep. at 188:21-189:2)

Julie Myers Wood, Guidepost's CEO, confirmed at her deposition that Guidepost was not looking for consent when evaluating Jane Doe's allegations. Ms. Wood repeatedly and emphatically stated at her deposition:

> "[Guidepost was not] looking to see whether there was consent. . . ."
>
> "[T]his wasn't about consent."
>
> "The report was not having to determine whether or not a consensual sexual activity occurred. . . ."

"This was not an issue of whether or not there was consent."

"[W]e weren't looking to see whether there was consent. . . ."

"[T]he issue here was not consent."

*Id.* at 9, 14 n.7 (citing Wood Dep. at 99:16-17, 156:4; 161:15-162:3; 170:16-17; 176:7-8; 189:7-8).

Based on: (1) Ms. Kilpatrick's admission and knowledge that consensual conduct does not qualify as sexual assault, and (2) Ms. Wood's testimony that whether the encounter was consensual was not considered, there is a genuine issue of material fact as to whether Guidepost was recklessly indifferent to the false statement in the Report that Plaintiff had been accused of a sexual assault. Guidepost—knowing that there had to be no consent for a sexual assault to occur— admittedly failed to take *any steps* to determine whether the encounter between Jane Doe and Plaintiff was consensual before reporting to the world that Plaintiff was accused of a sexual assault.

Similarly, EC 30(b)(6) witness testimony confirmed that the EC understood consensual sexual activity would *not* qualify as sexual abuse:

Q. Did you understand at the time that you read this, sir, that, quote, sexual abuse, unquote, would include consented-to sexual-related activities?

A. No.

Doc. No. 250 at 13 (citing EC 30(b)(6) Dep. at 159:4-17).

Viewing these facts and drawing all reasonable inferences in favor of Plaintiff, there is a genuine dispute of material fact as to whether Defendants were, at the very least, recklessly indifferent to the false statement that Plaintiff had been accused of a sexual assault.

13

The Court relied on several lines of testimony from Samantha Kilpatrick to reject Plaintiff's first argument[3] when analyzing "knowledge of falsity." The Court stated that "it is undisputed that the Guidepost investigators used the term 'sexual assault' in the Report in the colloquial/vernacular sense." Doc. No. 317 at 53. This is disputed, but also immaterial to the Court's analysis.

Guidepost already admitted that it accused Plaintiff of a crime in the Report when Guidepost wrote the following: "Guidepost authored a report that identified Hunt as one of many sexual offenders." Doc. No. 27 at 2; Doc. No. 251 at 8. "Sex offender" is defined as a "person who has been convicted of a crime involving sex." Doc. No. 251 at 8, n.2. Regardless of whether the term was used colloquially, consensual conduct does not constitute a sexual assault. Knowing this, Guidepost intentionally created the false impression with the public that Plaintiff had been accused of committing a sexual assault and a sex crime:



Doc. No. 251 at 6 (citing Holske Dep. at 238:18-239:1).

The public viewed Plaintiff as having committed a sexual assault and a sex crime. Doc. No. 248-17 (SBC President and EC Member Bart Barber Tweet stating that Plaintiff had been accused of a felony); Doc. No. 255-1 (Hunt Decl. Ex. B) ("Having just read the independent investigation report of sexual abuse within the SBC, and specifically, your *heinous sexual assault of a young married woman*. . . .") (emphasis added). The intentional labeling of the

---

[3] Plaintiff's first argument is contained on pages six (6) to ten (10) of Plaintiff's Opposition to Guidepost's Motion for Summary Judgment (Doc. No. 251), and pages ten (10) to thirteen (13) of Plaintiff's Opposition to the SBC's and EC's Motions for Summary Judgment (Doc. No. 250).

allegations against Plaintiff as a sexual assault created the false impression that Plaintiff was accused of and committed a sexual assault. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643 (Tenn. 2001) (under a false light claim, liability is found when "another places the other before the public in a false light"); *Garner v. S. Baptist Convention*, No. E2024-00100-COA-R3-CV, 2025 Tenn. App. LEXIS 4, at *37 (Tenn. Ct. App. Jan. 8, 2025) ("Defamation by implication occurs when statements . . . imply facts that are not true.").

Viewing the evidence in the light most favorable to Plaintiff, Defendants had knowledge of, or acted with reckless disregard, as to the false statement in the Report that Pastor Johnny had been accused of a sexual assault, as well as the false light in which Plaintiff was placed. This evidence creates a genuine issue of material fact as to Defendants' actual malice.

**B. The Jury Could Find Guidepost Acted Recklessly in Publishing the Allegations Against Plaintiff.**

Plaintiff's Opposition argued there was a genuine issue of material fact "as to whether Guidepost acted with reckless disregard as to the falsity of Jane Doe's story" because "[t]he record reveal[ed] countless reasons to question the veracity of Jane Doe and her husband." Doc. No. 251 at 10. The Court rejected Plaintiff's argument based on a misapprehension of the facts, Plaintiff's position, and controlling law.

*First*, the Court determined that "Hunt cite[d] to no evidence that would allow a jury to find that Guidepost was aware Doe's memory was tainted (by the passage of time, fogginess on the day of the encounter, or anything else) such that it obviously should have doubted the veracity of her or her recollections." Doc. No. 317 at 56. The Court overlooked Plaintiff's evidence, which created a genuine issue of material fact as to whether Guidepost was aware Doe's memory was tainted.

15

The encounter at issue occurred nearly twelve (12) years before the Report was published. Plaintiff cited evidence that Jane Doe told Guidepost, in writing and in interviews, that she was foggy before, during, and after the encounter. Doc. No. 251 at 10. Ms. Kilpatrick's own interview notes confirmed that Guidepost was aware that Jane Doe "█████████ *Id.* Plaintiff also cited evidence that Jane Doe herself described and understood the encounter with Plaintiff to have been consensual until meeting with a therapist more than ten (10) years later that had been arranged by Guidepost. Doc. No. 258-7 (SJ Ex. 27) at 1. Viewing the evidence in the light most favorable to Plaintiff, a jury could reasonably find that "Guidepost was aware Doe's memory was tainted . . . such that it obviously should have doubted the veracity of her or her recollections." Doc. No. 317 at 56.

*Second*, the Court found that "Hunt's assertion that the husband's purported motives were obvious reasons to question the veracity of Doe or the accuracy of her reports is not supported by any citations to case law or other legal authority." Doc. No. 317 at 56. The relevance of Jane Doe's Husband's motives is supported by caselaw. Regardless, Plaintiff's evidence, which related to the Couple's motives, not just the husband's motives, is extensive. Doc. No. 251 at 10-12.

It was not Jane Doe who reached out to Guidepost. It was her husband. *Id.* at 10. And when he did reach out, his first concern was how Guidepost would protect the Couple from defamation claims and liability. *Id.* at 11. Jane Doe's Husband provided his journal to Guidepost. Doc. No. 257-1 (Holske Dep.) 164:12-14. He helped Jane Doe prepare the 53-page documented titled "█████████████ with Samantha B. Kilpatrick and Russell Holske" (hereinafter "Doe Story") that Guidepost's investigators relied on when writing the Report. Doc. No. 257-2 (Kilpatrick Dep.) 240:10-15. He provided recordings of counseling sessions to

16

Guidepost. Doc. No. 221-5 (Holske Dep.) 95:16-21. He was the one who told each of the three "corroborating" witnesses that Jane Doe and Pastor Johnny had an encounter in 2010. Doc. No 248-12 (Report) at 156-57. Ms. Kilpatrick acknowledged at deposition that Jane Doe's husband provided the majority of the written pages to Guidepost. Doc. No. 257-2 (Kilpatrick Dep.) 240:1-8. Jane Doe's husband was equally, if not more, responsible than Jane Doe for bringing the false allegations against Plaintiff. Recklessness may be found when there are reasons to question the accuracy "of the informant." *St. Amant v. Thompson*, 390 U.S.727, 732 (1968). Here, the informants are both Jane Doe and her husband.[4]

Separately, Plaintiff's evidence did not relate solely to Jane Doe's husband's motives. Doc. No. 317 at 56. The record confirms that Jane Doe also had financial incentives to make false allegations against Plaintiff. The Couple wrote to Guidepost: "



" Doc. No. 251 at 11 (emphasis added). Guidepost's investigator's own interview notes from a joint interview with the Couple stated that the Couple's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ *Id.* The letter Jane Doe's husband provided to Guidepost, which demanded over $2 million dollars from Plaintiff, had Jane Doe's name on the signature page and included blanks for her to insert the alleged harm caused by Plaintiff. Doc. No. 258-17 at 8-10. Jane Doe's husband asked if Guidepost would fly ***he and his wife*** to California ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Doc. No. 251 at 12.

*Third*, the Court wrote that "Doe's testimony taken in 2024 is not probative of what Guidepost knew at the time of drafting the Report in 2022." Doc. No. 317 at 56. Record evidence

---

[4] Jane Doe's Husband even asked Mr. Holske if documents relating to the investigation were destroyed ▮▮▮▮▮▮▮▮ after Plaintiff filed his lawsuit. Doc. No. 258-13.

is specific on this point as well. Jane Doe contradicted key elements of her own written story provided to Guidepost's investigators during her 2024 deposition. Plaintiff explained the significance of Jane Doe's contradictions and how it demonstrated Guidepost's failure to verify basic facts and purposeful avoidance of the truth:

> This is not a failure to investigate. Guidepost deliberately avoided the truth. Guidepost attempts to highlight the experience of their investigators throughout their Motion. GPS Mot. at 7 nn.2-3. But any investigator, even an inexperienced one, would verify basic facts before publishing a story to the world accusing someone of sexual assault, such as: did the accuser French kiss the accused back; why did she do so; what medications did the accuser take; did this medication impact her memory; did the accuser take off her necklace, put it on the end table on the accused's side and lean over the accused's lap—initiating contact before the encounter started; why did the accuser do so if there was an end table on their side of the couch. Guidepost interviewed Jane Doe and her Husband individually and collectively 10 times before publication of the Report. Ex. 16 at Interrogatory No. 2. Guidepost was not truly interested in finding the truth. Instead, they wanted an explosive report with "impact" and were purposefully ignoring the truth. Ex. 32.

Doc. No. 251 at 13-14.

*Fourth*, the Court concluded that "Hunt ignores that much of Doe's information was independently verified by other sources whose credibility he does not challenge." Doc. No. 317 at 56. But Guidepost did not simply report that there was an encounter between two adults. Guidepost labeled the encounter a "sexual assault" without seeking corroborating evidence. The record presents significant reasons to question the Couple's motives for suddenly coming forward, especially when they each viewed the encounter as consensual for over ten (10) years.

Issues of material fact exist as to whether Guidepost acted with reckless disregard when it ignored obvious and compelling reasons to question the veracity of the Couple.

## C. The EC and SBC Acted with Actual Malice By Ignoring Evidence Rebutting the Truth of the Allegations.

Plaintiff's Opposition provided argument and evidence that "the EC and SBC were committed to publishing a Report on Plaintiff and avoided any evidence that would raise doubts

18

as to the truth of the allegations." Doc. No. 250 at 13-18. The Court rejected Plaintiff's argument primarily because it found that "[h]alf of the documents Hunt faults the SBC and Executive Committee for not reviewing in May 2022 did not exist in May 2022." Doc. No. 317 at 62. The documents that existed in May 2022 create a genuine issue of material fact as to whether the SBC and EC avoided evidence that would rebut the truth of the allegations in the Report.

Plaintiff cited the Report itself, the Doe Story (which included excerpts from the husband's journal), and a series of text messages regarding counseling from February 2022—all accessible to the SBC and EC in May 2022. Doc. No. 250 at 15. If the SBC and EC would have reviewed these documents alone, they would have revealed that (1) Blankenship believed the encounter between Plaintiff and Jane Doe was consensual, (2) Jane Doe's own written narrative contradicted the story published in the Report,[5] (3) Jane Doe's husband believed his wife had feelings towards Plaintiff, and (4) that the Couple's story was significantly impacted by therapists recommended and engaged by Guidepost. This evidence, together with the fact that the allegation against Plaintiff was outside the scope of the Report, creates a genuine issue of material fact as to the SBC and EC's actual malice and deliberate choice to ignore facts that would have revealed the falsity of Jane Doe's allegations.

## III. The Court's Negligence Analysis.

### A. A Reasonable Jury Could Find That Defendants Acted Negligently When They Published the Statements on Plaintiff.

The Court stated that "Hunt does not direct the Court to any evidence of investigative deficiencies." Doc. No. 317 at 66. However, Plaintiff did provide citations to evidence that

---

[5] For example, Jane Doe wrote that she had French kissed Pastor Johnny back during encounter, which is different than the no reciprocation version published by Guidepost. *Compare* Ex. 258-7 (Doe Story) at 11 ████████████████████████████ *with* Ex. 248-12 (Report) at 151 ("Survivor did not reciprocate").

19

would allow a jury to find that Defendants acted negligently on multiple grounds when publishing the allegations against Plaintiff in the Report. Specifically, Plaintiff provided nineteen (19) pages of evidence and argument relating to Guidepost and thirteen (13) pages of evidence and argument relating to the EC and SBC.

Regarding Guidepost, Plaintiff provided nineteen (19) pages of evidence and argument "upon which a jury could find Guidepost liable under either the negligence standard or actual malice standard." Doc. No. 251 at 4-22. A jury could find that Guidepost was negligent based on the following evidence and argument in Plaintiff's Opposition:

- Guidepost labeled the allegations against Plaintiff a sexual assault, knowing that a sexual assault required non-consensual conduct, without investigating whether the encounter was consensual. Doc. No. 251 at 6-10.

- Guidepost published the story on Plaintiff despite the countless reasons to question the veracity of the Couple, including their motives for suddenly coming forward with a nearly 12-year-old encounter. *Id.* at 10-12.

- Guidepost's purposeful avoidance of the truth, including the failure to verify basic facts, such as whether Jane Doe reciprocated and French kissed Plaintiff back, whether she was taking medications that would impact her memory, etc. *Id.* at 12-14.

- Guidepost's admitted failure to evaluate consent. *Id.* at 14-16.[6]

- Guidepost's alteration of the Couple's story to fit its desired narrative, ignoring all evidence pointing to a consensual encounter. *Id.* at 16-20.

- Guidepost commitment to running its story on Plaintiff regardless of what Plaintiff said in his May 12, 2022 "interview." *Id.* at 20-21.

---

[6] The Court stated that "Hunt now attempts to use his own conduct against Guidepost, arguing it should have looked for evidence of consent." Doc. No. 317 at 66. Ms. Wood acknowledged that before accusing someone of sexual assault, Guidepost had an obligation to make its own assessment whether the encounter was consensual or non-consensual. Doc. No. 251 at 14. Guidepost admittedly failed to make any assessment of consent. Nevertheless, it is a jury issue whether Guidepost was negligent in failing to determine whether the encounter was consensual before publishing the story and labeling it a "sexual assault."

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to Guidepost's negligence.

Similarly, Plaintiff provided thirteen (13) pages of evidence and argument upon which a jury could find the "[t]he EC and SBC . . . liable under the actual malice or negligence standard." Doc. No. 250 at 8-20. A jury could find that the EC and SBC were negligent based on the following evidence and argument in Plaintiff's Opposition:

- The EC and SBC published the allegations against Plaintiff and labeled the encounter a sexual assault when a cursory review of the Report would have revealed that the necessary elements for a sexual assault or the applicable sex crime in Florida were not met. The EC and SBC published the allegations knowing that a sexual assault required non-consensual activity. Doc. No. 250 at 10-13.

- The EC and SBC's deliberate avoidance of evidence that would raise doubts as to the truth of the allegations; inaction to acquire knowledge that would confirm the falsity of Jane Doe's allegations. *Id.* at 13-18.

- The EC and SBC's negligence in relying upon Guidepost's findings and conclusions. *Id.* at 13-20.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to the SBC and EC's negligence.

The Court ruled that a "jury could conclude that Barber breached a reasonable duty of care when he accused Hunt of assaulting a woman in ways that would 'constitute a felony in any jurisdiction in the U.S.' after having been advised that the allegations against Hunt do not constitute a crime in Florida." Doc. No. 317 at 69. Each Defendants' knowledge that non-consensual conduct is required for a sexual assault, combined with their decision to publish the allegations against Plaintiff without attempting to determine if the encounter was consensual, creates a jury issue regarding negligence.

The extensive evidence Plaintiff provided on actual malice also creates a genuine issue of material fact as to Defendants' negligence. *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th

21

Cir. 1982) ("The evidence of actual malice subsumes a breach of duty which satisfies the negligence standard . . . ."); *Bean Me. Lobster, Inc. v. Monterey Bay Aquarium Found.*, No. 2:23-cv-00129-JAW, 2025 U.S. Dist. LEXIS 21289, at *162 (D. Me. Feb. 6, 2025) ("As actual malice requires a higher threshold than negligence, having found actual malice, the Court need not now undertake a separate inquiry into negligence. Thus, the Court's actual malice analysis applies to the lower standard of negligence for the private party plaintiffs."); *Khawar v. Globe Internat.*, 965 P.2d 696, 712 (Cal. 1998) ("[W]e are satisfied that the evidence we previously reviewed, and which we have concluded clearly and convincingly establishes actual malice in the form of reckless disregard, is sufficient also to sustain the finding of negligence.").

The negligence standard is axiomatic: "In determining the issue of liability the conduct of the defendant is to be measured against what a reasonably prudent person would, or would not, have done under the same or similar circumstances." *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978). The evidence presented in Plaintiff's briefing individually, and collectively, creates a genuine issue of material fact for the jury whether Defendants were negligent.

### B. Plaintiff's Argument on the EC and SBC's Negligence Was Misapprehended.

Plaintiff's argument and evidence on the EC and SBC's negligence was misapprehended.

The Court wrote:

> Hunt also submits – without citation to supporting legal authority – that a jury could find the SBC and Executive Committee acted negligently in publishing the Report because the allegations against him concerned conduct from almost 12 years before and because they had a contractual right to review the final draft of the Report and dispute factual findings and conclusions.

Doc. No. 317 at 65-66.

Plaintiff's evidence in support of the EC and SBC's negligence was not limited to the lapse of time from the encounter to the Couple's decision to speak with Guidepost and the EC and SBC's contractual right to review the final draft of the Report and dispute factual findings and conclusions. Plaintiff cited this evidence separately to distinguish the EC's citation to *Evans v. Amcash Mortg. Co.*, No. 01A01-9608-CV-00386, 1997 Tenn. App. LEXIS 535, at *3 (Tenn. Ct. App. Aug. 1, 1997); Doc. No. 250 at 20 ("[T]he factual distinctions between *Evans* and this case are significant and preclude summary judgment.").

Plaintiff provided thirteen (13) pages of evidence and argument upon which a jury could find the EC and SBC liable under the negligence standard.

## IV. There is a Genuine Issue of Material Fact as to Whether Defendants' Conduct was Extreme and Outrageous.

The Court denied Defendants' Motions to Dismiss Plaintiff's intentional infliction of emotional distress claims finding that "[w]hile a claim of intentional infliction of emotional distress is a relatively narrow cause of action, Hunt has pleaded facts, which accepted as true, could support an intentional infliction of emotional distress claim." Doc. No. 150 at 11. The Court specifically found that the following allegations "could support an intentional infliction of emotional distress claim":

> Hunt points to the allegations that Guidepost incurred over $2 million in fees to investigate five specific questions and that, despite its extensive investigation, it was unable to find even a single case of sexual abuse by a member of the Executive Committee. Hunt also points to his allegations that Defendants chose to use him as its scapegoat, intentionally decided to publish allegations against him to avoid the perception that the Southern Baptist Convention had wasted its money on the investigation, and that Guidepost intentionally created the false impression that Hunt had criminally assaulted the wife of a fellow pastor.

*Id.*

At summary judgment, Plaintiff did just that—provided evidence supporting each allegation in the Complaint to demonstrate the outrageousness of Defendants' conduct. Doc. No.

23

250 at 23-25; Doc. No. 251 at 28-30. The evidence presented by Plaintiff went beyond confirming the allegations detailed in the Complaint. Plaintiff provided evidence of additional motives and admissions that underscore the outrageous nature of Defendants' conduct. *Id.*; s*ee also* Section I.B.2. The evidence presented is more than sufficient to establish a genuine issue of material fact for the jury regarding the outrageousness of Defendants' conduct.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court reconsider its Order Granting Defendants' motions for summary judgment in part.

Dated: April 17, 2025                    Respectfully submitted,


                                         s/ Andrew Goldstein
                                         _____
                                         **Todd G. Cole, Esq., BPR # 031078**
                                         **Andrew Goldstein, Esq., BPR # 037042**
                                         COLE LAW GROUP, P.C.
                                         1648 Westgate Circle, Suite 301
                                         Brentwood, TN 37027
                                         Telephone: (615) 490-6020
                                         Fax: (615) 942-5914
                                         tcole@colelawgrouppc.com
                                         agoldstein@colelawgrouppc.com


                                         *-and-*


                                         **Robert D. MacGill, Esq. (*pro hac vice*)**
                                         **Patrick J. Sanders, Esq. (*pro hac vice*)**
                                         MACGILL PC
                                         156 E. Market St.
                                         Suite 1200
                                         Indianapolis, IN 46204
                                         Telephone: (317) 721-1253
                                         robert.macgill@macgilllaw.com
                                         patrick.sanders@macgilllaw.com


                                         *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Memorandum in Support of Motion to Reconsider Order No. 316 Granting Defendants' Motions for Summary Judgment in Part to be electronically filed with the Clerk of the Court on April 17, 2025, using the CM/ECF system, which will automatically serve all counsel of record listed below:

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq.
Patrick J. Sanders, Esq.
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

John R. Jacobson, Esq.
Katharine R. Klein, Esq.
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
Scott Klein, Esq.
Adam Brody, Esq.
Alex Otchy, Esq.
MINTZ & GOLD LLP

R. Brandon Bundren, Esq.
E. Todd Presnell, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 244-2582
bbundren@bradley.com
tpresnell@bradley.com

Scarlett Singleton Nokes, Esq. .
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Avenue, Nw Suite 100
Washington, DC 20006
Telephone: (202) 747-2309
snokes@sheppardmullin.com

Gene R. Besen, Esq.
Sheppard Mullin Richter & Hampton LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone (469) 391-7400
Facsimile (469) 391-7401
gbesen@sheppardmullin.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
brody@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Defendant*
*Guidepost Solutions LLC*

L. Gino Marchetti, Jr., Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR,
PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com

Matthew C. Pietsch, Esq.
GORDON REES SCULLY MANSUKHANI,
LLP
4031 Aspen Grove Drive, Suite 290
Franklin, TN 37067
Telephone: (615) 722-9000
mpietsch@grsm.com

*Counsel for the Southern Baptist Convention*

Melissa J. Hogan, Esq.
QAVAH LAW
8757 Horton Hwy
College Grove, TN 37046
Telephone: (615) 293-6623
melissajhogan@qavahlaw.com

*Counsel for Jane Doe*


        s/ Andrew Goldstein
        Andrew Goldstein

27