**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHNNY M. HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-00243** |
| | ) | |
| **SOUTHERN BAPTIST CONVENTION; GUIDEPOST SOLUTIONS LLC; and EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST CONVENTION,** | ) | **Judge Campbell** **Magistrate Judge Frensley** **Jury Demand** |
| | ) | |
| **Defendants.** | ) | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... **1**

**II. LEGAL STANDARD** .......... **2**

**III. RESPONSES TO SBC AND EC'S SEPARATE STATEMENTS OF FACTS** .......... **2**

**IV. STATEMENT OF FACTS** .......... **3**

A. The SBC was Facing a Sexual Abuse Crisis and Engaged Guidepost for Damage Control. .......... 3

B. Following Publication of the Report, Pastor Johnny was Forced to Discontinue His Ministry Work. .......... 4

**V. ARGUMENT** .......... **6**

A. Defendants' General-Purpose Public Figure Argument Fails on Procedural Grounds. .......... 6

B. Pastor Johnny is Not a General-Purpose Public Figure. .......... 7

C. Plaintiff is Not a Limited-Purpose Public Figure. .......... 15

1. The Relevant Public Controversy is the SBC's Sex Abuse Crisis. .......... 16

2. Pastor Johnny Has Not Thrust Himself to the Forefront of Any Public Controversy in Order to Influence its Resolution. .......... 18

3. There is No Evidence Pastor Johnny Enjoyed Significantly Greater Access to Channels of Communication to Counteract False Statements. .......... 22

4. Pastor Johnny Did Not Play a Prominent Role in Any Controversy. .......... 24

**VI. CONCLUSION** .......... **25**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alkan Elecs. Int'l, Inc. v. Flint J.*,
1989 U.S. Dist. LEXIS 18001 (E.D. Mich. June 2, 1989) .....25

*Barry v. Time, Inc.*,
584 F. Supp. 1110 (N.D. Cal. 1984) .....12

*Briggs v. Univ. of Detroit-Mercy*,
No. 13-12583, 2014 U.S. Dist. LEXIS 62917 (E.D. Mich. May 7, 2014) .....11

*Carney v. St. John*,
No. 25-cv-2525 (LAK), 2025 LX 468935 (S.D.N.Y. Oct. 20, 2025) .....13

*Chapman v. Journal Concepts, Inc.*,
528 F. Supp. 2d 1081 (D. Haw. 2007) .....12, 14

*Chapman v. Journal Concepts, Inc.*,
No. 07-00002 .....21

*Chuy v. Phila. Eagles Football Club*,
595 F.2d 1265 (3d Cir. 1979) .....11

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) .....13

*Denison Powerlifting Inc. v. Dorsey*,
No. 8:23-cv-00744-JVS-KES, 2025 U.S. Dist. LEXIS 83607 (C.D. Cal. Mar. 3, 2025) .....12

*Falls v. Sporting News Pub. Co.*,
899 F.2d 1221, 1990 U.S. App. LEXIS 5401 (6th Cir. 1990) .....11

*Foretich v. Capital Cities/ABC*,
37 F.3d 1541 (4th Cir. 1994) .....21

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) .....7, 9, 10, 23

*Gottwald v. Sebert*,
No. 2020-01908, 148 N.Y.S.3d 37 (N.Y. App. Div. Apr. 22, 2021) .....12

*Gutierrez v. Lynch*,
826 F.2d 1534 (6th Cir. 1987) .....2

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979)........................................................................................ *passim*

*Jacobson v. CBS Broad., Inc.*,
19 N.E.3d 1165 (App. Ill) (2014) ..........................................................................12

*Jenoff v. Hearst Corp.*,
644 F.2d 1004 (4th Cir. 1981) ...............................................................................21

*Khawar v. Globe International*,
965 P.2d 696 (Cal. 1998) .......................................................................................23

*Layne Christensen Co. v. City of Franklin*,
No. 3:17-cv-01236, 2020 U.S. Dist. LEXIS 215762 (M.D. Tenn. Nov. 18, 2020) ..................................................................................................................7

*Masters Ent. Grp., Inc. v. Aurich*,
No. 3:18-cv-01314, 2022 U.S. Dist. LEXIS 105916 (M.D. Tenn. June 14, 2022) ................................................................................................................24

*Muhammad v. Close*,
379 F.3d 413 (6th Cir. 2004) .................................................................................15

*Ogle v. Hocker*,
279 F. App'x 391 (6th Cir. 2008)........................................................................ *passim*

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*,
No. 08-12247, 2010 U.S. Dist. LEXIS 17323 (E.D. Mich. Feb. 26, 2010)...........19, 20, 21, 23

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Dist. Ct. 1987)........................................................................14

*Tharp v. Media Gen., Inc.*,
987 F. Supp. 2d 673 (D.S.C. 2013)........................................................................13

*Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,
759 F.3d 522 (6th Cir. 2014) ...............................................................................6, 7

*Thornton v. Dutch Nats. Processing, LLC*,
629 F. Supp. 3d 777 (M.D. Tenn. 2022).................................................................2

*Time, Inc. v. Firestone*,
424 U.S. 448 (1976)...............................................................................................10

*Waldbaum v. Fairchild Publ'ns*,
627 F.2d 1287 (D.C. Cir. 1980).........................................................................7, 13, 14

*Wayment v. Clear Channel Broad., Inc.*,
116 P.3d 271 (Utah 2005) ........................................................................................ 11, 12

*Wolston v. Reader's Digest Ass'n., Inc.*,
443 U.S. 157 (1979) ........................................................................................................ 22

## I. INTRODUCTION

Defendants' Motion for Partial Summary Judgment is their fourth attempt to procure a declaration that Pastor Johnny Hunt is a public figure. The Southern Baptist Convention and Executive Committee of the Southern Baptist Convention sought the public figure declaration at the motion to dismiss stage, in their prior motions for summary judgment, in a motion for reconsideration, and now in this Partial Motion for Summary Judgment. There is no basis for finding Pastor Johnny a public figure.

First, Pastor Johnny is not a general-purpose public figure. Defendants have not offered evidence to satisfy the demanding standard for the public figure designation, which is reserved for those who attain such pervasive fame or notoriety that they become a public figure for all purposes and in all contexts. Rather than attempt to meet this standard, Defendants argue for a "flexible" standard inconsistent with Supreme Court precedent and Sixth Circuit decisions.

Separately, Pastor Johnny would not qualify as a general-purpose public figure even if the Court accepted Defendants' relaxed standard. Defendants' proposed standard includes a scope of publication test. Specifically, the test requires proof that the individual achieved the necessary degree of notoriety in the community where the defamation was published. Here, Barber's Tweet was published nationwide (was "available to anyone and everyone who cared to look") and was not confined to the SBC community. Undisputed record evidence has not established that Pastor Johnny has achieved national notoriety for his ministry.

Second, Pastor Johnny is not a limited-purpose public figure. There is no evidence that Pastor Johnny thrust himself to the forefront of any public controversy in order to influence its outcome. Pastor Johnny was pulled unwillingly into the SBC's sex abuse controversy. As the Executive Committee admitted, Pastor Johnny's return to ministry was only of interest as a direct

and unambiguous response to Defendants' conduct; specifically, its decision to include Pastor Johnny in the Guidepost Report. Defendants' arguments contradict established Supreme Court precedent: "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979).

Pastor Johnny is neither the rare general-purpose public figure nor a limited-purpose public figure under applicable law. Defendants' Motion for Partial Summary Judgment should be denied.

## II. LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must carry "its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, for an entry of summary judgment to be appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987). In ruling on a summary judgement motion, "evidence offered by the nonmovant must be accepted as true and [] credibility judgments and weighing of the evidence are improper." *Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 785 (M.D. Tenn. 2022).

## III. RESPONSES TO SBC AND EC'S SEPARATE STATEMENTS OF FACTS

Defendants present separate statements of facts that they contend are undisputed. Pastor Johnny submits responses that controvert Defendants' factual statements, along with record citations supporting the same. Local Rule 56.01(c). Pastor Johnny incorporates by reference his response to Defendants' statement of material facts herein.

## IV. STATEMENT OF FACTS

### A. The SBC was Facing a Sexual Abuse Crisis and Engaged Guidepost for Damage Control.

In 2022, the SBC was facing a sexual abuse crisis. Ex. I (Guidepost Report) at 3; Ex. A (Barber Dep.) 57:15-21.[1] The SBC was facing allegations that it had improperly ignored reports of child molestation, rape, and other sex crimes occurring in SBC-affiliated churches. Ex. B (EC 30(b)(6) Dep.) 172:4-19. These allegations "posed challenges to the Convention and [were] ones that were needing to be addressed." *Id.* at 173:19-174:1. The SBC hired Guidepost for damage control. Ex. F (Engagement Letter).

Guidepost was commissioned to investigate "the EC's handling of sexual abuse allegations" and the "actions and decisions of EC staff and members . . . with respect to allegations of abuse, mishandling of abuse, mistreatment of victims, patterns of intimidation of victims or advocates, and resistance to sexual abuse reform initiatives." Ex. I (Report) at 3.

Guidepost agreed to produce a report ("Report") on its findings that would "be made public in its entirety. . . ." Ex. F (Engagement Letter) at 3. There was "well-known and widespread" "anticipation" for the Report. Ex. B (EC 30(b)(6) Dep.) 310:13-19. The Report was described as a "key moment in the history of the SBC." Ex. A (Barber Dep.) 85:16-20.

In May 2022, Defendants published the Report nationwide, which attracted national media attention. Ex. B (EC 30(b)(6) Dep.) 72:1-73:1 (testifying that when the Report was published, it was essentially "available worldwide"); Ex. E (Wood Dep.) 220:18-221:6 (testifying "[a]nyone with a computer and [] internet" could access the Report); Ex. D (Kilpatrick Dep.) 264:17-22 ("I expected [the Report] to be out in the national news.").

[1] All letter exhibits in this Memorandum refer to the exhibits attached to the contemporaneously filed Sanders Declaration.

The Report focused on the SBC's executive leadership's response to allegations of child abuse and other sex crimes. The first name mentioned in the Report was not a child molester or convicted sexual abuser—it was Pastor Johnny. Pastor Johnny was Defendants' main story showing an Executive Committee member committing abuse and the only name in the section titled "Allegations of Abuse Committee by EC Staff and Members" in a Report professing to focus on child molesters and other abusers. Ex. U; Ex. I (Report) at 4. The encounter involving Pastor Johnny was outside the scope of the Report, unrelated to the types of sexual abuse that led to Guidepost's engagement, and should not have been included or published at all.

### B. Following Publication of the Report, Pastor Johnny was Forced to Discontinue His Ministry Work.

As a result of Defendants' publication of the Report, Pastor Johnny was forced to discontinue his ministry work. Hunt Decl., Ex. A at ¶ 4. Pastor Johnny went through a restoration program after publication of the Report and eventually returned to ministry. *Id.* When Pastor Johnny returned to ministry in November 2022, he briefly appeared in a portion of a short video addressing his return to ministry. *Id.* This video was in response to the publication of the nationwide Report and the allegations against Pastor Johnny: "[The video] served as an explanation for my return to the ministry and was made in response to the Report and the allegations it contained against me." *Id.* The video was not "made to influence the resolution of the SBC's sexual abuse controversy." Hunt Decl., Ex. A at ¶ 5.

Shortly after Pastor Johnny returned to ministry, SBC President and *Ex Officio* Executive Committee Member Bart Barber published "A Statement on Johnny Hunt's 'Restoration'" (the "Statement") on SBC letterhead. Ex. T. The Statement centered on the SBC's sexual abuse crisis and the allegations against Pastor Johnny detailed in the Guidepost Report.

In the Statement, Barber wrote that he "would permanently 'defrock' Johnny Hunt if he had the authority to do so" and referenced the SBC's adoption of a resolution that read: "any person who has committed sexual abuse is permanently disqualified from holding office of pastor." *Id.* at 1-2. Barber further emphasized the SBC's response to the sexual abuse crisis; specifically, that the messengers of the SBC "overwhelmingly insisted that an independent investigation should be conducted about the [SBC Executive Committee's] response to allegations of sexual abuse" and the "result of [the] investigation was the publication" of the Guidepost Report. *Id.* Barber then described the allegations in the Report against Pastor Johnny:

> This report disclosed details of a pastor's wife's account of an incident in which Johnny Hunt aggressively approached her for a sexual encounter, including his pulling down her paints, pinning her down, pulling up her shirt, and sexually assaulting her with his hands and his mouth.

*Id.* Barber concluded that he "would permanently 'defrock' Johnny Hunt if he had the authority to do so." *Id.* at 2. A few days later, Barber tweeted the following: "Hunt was the subject of a third-party investigation in response to allegations that he sexually assaulted a woman half his age in ways that would, to my knowledge, constitute a felony in any jurisdiction in the US. Ex. J. The Executive Committee, which Barber was an *Ex Officio* Member of at the time of the Tweet, stated that Pastor Johnny's return to ministry was of interest due to Pastor Johnny's involvement with the Guidepost Report. Ex. B (EC 30(B)(6) Dep.) 68:8-15.

Barber's December 5, 2022 Tweet explicitly mentions the Guidepost investigation, referring to the "third-party investigation." Ex. J. This was Barber's latest in a long line of conduct attempting to combat the SBC's sexual abuse crisis, which was his "number one priority" as SBC President. Exs. L-P; Ex. A (Barber Dep.) 48:12-14.

Pastor Johnny was not involved in the SBC's sex abuse controversy prior to the publication of the Guidepost Report. Hunt Decl., Ex. A ¶ 2 There was no public controversy surrounding Pastor Johnny's ministry prior to publication of the Report. Hunt Decl., Ex. A ¶¶ 4-5.

## V. ARGUMENT

Long-standing precedent establishes that two types of public figures exist under the law: (1) "general-purpose" public figures, and (2) "limited-purpose" public figures. *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014). Pastor Johnny is neither.

### A. Defendants' General-Purpose Public Figure Argument Fails on Procedural Grounds.

Defendants' claim that Pastor Johnny is a general-public figure should fail for procedural reasons. Defendants' Motion is a motion for reconsideration, which fails to provide a basis for doing so, and exceeds the scope of the Court's Order granting Leave to File Motion for Partial Summary Judgment.

In its Summary Judgment Order, the Court stated that it was "unable to determine the applicable standard of fault because the parties have not adequately addressed Hunt's status as a public or private figure *at the time of the Tweet*." Doc. No. 317 at 68 (emphasis added). A general-purpose public figure is a public figure "*for all purposes and in all contexts*." *Cooley*, 759 F.3d at 527 (citation omitted; emphasis added). As a matter of law and logic, if Pastor Johnny is not a general-purpose public figure for purposes of the Report, he cannot be deemed a general-purpose public figure at the time of the Tweet.

Defendants repeat the same argument they advanced in their initial summary judgment briefing. *Compare*, Doc. No. 272 at 1 n.2 ("The EC also maintains that Hunt is a general-purpose public figure in the relevant community—namely, the Southern Baptist/evangelical community for the reasons set forth in the Motion"), *with* Doc. No. 372 at 1 [hereinafter "Mem."] ("Hunt is a

general-purpose public figure based upon his prominence and notoriety as a pastor, particularly within Southern Baptist community."). Defendants offer no explanation as to how their renewed general-purpose public figure argument relates to the timing of the Tweet.

"Courts traditionally will find justification for reconsidering interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Layne Christensen Co. v. City of Franklin*, No. 3:17-cv-01236, 2020 U.S. Dist. LEXIS 215762, at *6 (M.D. Tenn. Nov. 18, 2020) (citations omitted). Defendants' Motion does not meet these standards. No basis for reconsideration of the general-purpose findings have been presented. Defendants' Motion, as it relates to its general-purpose public figure argument, should be denied.

**B. Pastor Johnny is Not a General-Purpose Public Figure.**

"A general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'" *Cooley*, 759 F.3d at 527 (*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). "This test is a strict one . . . . [T]he general public figure is a rare creature." *Waldbaum v. Fairchild Publ'ns,* 627 F.2d 1287, 1292 (D.C. Cir. 1980). To be a general-purpose public figure, an individual must be "a well-known 'celebrity'" and "his name a 'household word' whose ideas and actions the public in fact follows with great interest." *Id.* at 1292, 1294. Pastor Johnny does not fit this definition.

This Court already determined that Pastor Johnny is not a general-purpose public figure:

> Based on the allegations in the complaint, while Hunt had some fame within the Southern Baptist denomination and had previously served as its president over ten years before the events at issue, this does not provide "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society" such that he should be "deemed a public personality for all aspects of his life." *Ogle v. Hocker*, 279 F. App'x 391, 398–99 (6th Cir. 2008) (quoting *Gertz*, 418 U.S. at 352). Accordingly, the complaint does not establish that Hunt was a general-purpose public figure.

Doc. No. 150 at 7.

The law has not changed since the Court's prior ruling. Neither have the facts alleged in the Complaint or the record evidence. Defendants' Motion leaves intact the Court's prior analysis and decision. At the time of the Court's prior ruling, the Court accepted as true the facts in the Complaint: Pastor Johnny was president of the SBC more than ten years ago (Doc. No. 1 at ¶¶ 2, 28); he was a pastor at First Baptist Woodstock, one of the "largest churches in the United States" (*Id.* at ¶ 27); he was a "sought-after speaker and author" (*Id.* at ¶ 29); he was seeking "lost current and future book deals"; and he had "lost the opportunity to generate income through speaking engagements" (*Id.* at ¶ 62).

Defendants nevertheless cite statements in the Complaint and Pastor Johnny's Memorandum of Law in Opposition to the Motion to Dismiss as "evidence" in support of their summary judgment motion. Mem. at 2 (citing Complaint repeatedly and motion to dismiss briefing). Defendants also cite to "evidence" confirming allegations the Court previously accepted and relied upon in its prior ruling, including that Pastor Johnny was SBC President from 2008-2010 (Mem. at 3); published books (Mem. at 2-3); and alleged damages for lost book deals and speaking engagements (Mem. at 3). Defendants' citations confirm the facts alleged in the Complaint and relied upon by the Court in its prior ruling.

This Court cited *Ogle v. Hocker*, 279 F. App'x 391 (6th Cir. 2008) in its prior decision. Its holding is again controlling. Ogle alleged in his complaint that he was an "international evangelist" who had attained "international fame and reputation throughout the nation, as well as other countries, with respect to his ministry." *Id.* at 399. Hocker argued that these allegations were sufficient to show Ogle's status as both a general-purpose and limited-purpose public figure. *Id.* at 398-99. The Sixth Circuit disagreed.

The Sixth Circuit emphasized the restrictive standard for attaining the status of a general-purpose public figure: "[A]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 398-99 (quoting *Gertz v. Robert Welch,* 418 U.S. 323, 352 (1974)). The court then continued: "Even assuming that proclaiming oneself a public figure were sufficient, Ogle's statements admit fame only 'with respect to his ministry.' Therefore, he could not have conceded that he was a public figure for all purposes." *Id.* at 399.

The same is true for Pastor Johnny. He does not meet the "strict" test for becoming the "rare" general-purpose public figure. While Pastor Johnny had attained prominence within his local church and SBC due his service as president over ten years ago, he is not "a well-known 'celebrity'" and he is not a "household" name for all purposes and in all contexts, as required.

Recognizing that Pastor Johnny has not achieved "pervasive fame or notoriety [so] that he [is] a public figure for all purposes and in all contexts" under controlling law, Defendants argue for a more relaxed standard. Specifically, Defendants advocate for a "flexible" test and contend that "merely prominence in a particular field or profession" is enough. Mem. at 9, 12. Defendants' proposed standard is inconsistent with Supreme Court precedent and caselaw in the Sixth Circuit.

In *Gertz*, the Supreme Court defined a general-purpose public figure as one who attains "such pervasive fame or notoriety that he becomes a public figure for *all purposes and in all contexts*." *Gertz*, 418 U.S. at 351 (emphasis added). The Court explained:

> We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life.

*Id.* at 352.

Shortly after *Gertz*, the Supreme Court decided *Time, Inc. v. Firestone*, 424 U.S. 448, 453 (1976) and provided further clarification on general-purpose public figures. In *Firestone*, the Court determined that Mary Alice Firestone, "the scion of one of America's wealthier industrial families" was not a public figure, despite her prominence in the Palm Beach society. *Id.* at 450. The Court first reiterated that general-purpose public figures are "those who . . . have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Id.* at 453 (quoting *Gertz*, 418 U.S. at 345). Applying that standard to Mary Alice Firestone, the Court concluded that she "did not assume any role of especial prominence in the affairs of society, other than perhaps Palm Beach society" and therefore did not qualify as a general-purpose public figure. *Id.*

In *Clark v. Am. Broad. Cos.*, the Sixth Circuit evaluated whether a plaintiff was a general-purpose public figure under the standard articulated in *Gertz*. 684 F.2d 1208, 1217 (6th Cir. 1982). Applying the strict standard, the court held that the plaintiff was "not a public figure for all purposes" because the "Plaintiff ha[d] no general fame or notoriety" and "lack[ed] any pervasive involvement in the affairs of society." *Id.*

The most recent Sixth Circuit case conducting a general-purpose public figure analysis, *Ogle*, explicitly rejected Defendants' "flexible" approach. If "merely prominence in a particular field or profession is enough" to make someone a general-purpose public figure, as Defendants' contend, then Ogle, an evangelist who stated he was an "international evangelist" who attained "international fame and reputation throughout the nation, as well as other countries, with respect to his ministry," would have qualified as a general-purpose public figure. *Ogle*, 279 F. App'x at 399. The Sixth Circuit held otherwise.

Defendants' reliance on *Falls v. Sporting News Pub. Co.*, 899 F.2d 1221, 1990 U.S. App. LEXIS 5401, at *1 (6th Cir. 1990) (table) is misplaced. The Sixth Circuit's unpublished decision in *Falls* analyzed whether the plaintiff was a public figure "for purposes of commentary on him as a sportswriter," not whether he was a general-purpose public figure. *Id.* at *10. The Court analyzed whether Mr. Falls "thrust his writing into the public eye" and whether he "enjoy[ed] significantly greater access to the channels of effective communication." *Id.* (citation omitted). This analysis is more appropriately categorized as limited-purpose public figure determination rather than general-purpose status, as confirmed by the limited citations to the decision.[2] *Clark*, 684 F.2d at 1218 (identifying the test for a limited-purpose public figure, which includes analyzing "the extent to which participation in the controversy is voluntary [and] second, the extent to which there is access to channels of effective communication. . . ."). Defendants themselves previously relied on *Falls*, and the same passages they now cite, to argue that Pastor Johnny was a limited-purpose public figure. Doc. No. 325 at 11-15 (citing *Falls* and arguing it was instructive to determine whether Pastor Johnny was a limited-purpose public figure).

Further, the authority upon which Defendants rely for their "flexible" standard appear in a distinct context in defamation law: sports figures. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1280 (3d Cir. 1979) (finding a former Philadelphia Eagles player a public figure and noting "[p]rofessional athletes, at least as to their playing careers, generally assume a position of public

---

[2] Only two cases cite to *Falls v. Sporting News Pub. Co.*, 899 F.2d 1221, 1990 U.S. App. LEXIS 5401, at *1 (6th Cir. 1990) (table) and its public figure analysis. Each case cites *Falls* for guidance on whether the plaintiff in these cases was a limited-purpose public figure, not a general-purpose public figure. *Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 282 (Utah 2005) (noting that "cases … holding reporter plaintiffs to be public figures all qualified them as limited-purpose public figures" and citing *Falls* in a string citation); *Briggs v. Univ. of Detroit-Mercy*, No. 13-12583, 2014 U.S. Dist. LEXIS 62917, at *10 (E.D. Mich. May 7, 2014) (citing *Falls* as guidance in determining whether plaintiff was a limited purpose public figure).

prominence"); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1091 (D. Haw. 2007) (finding a surfer was a public figure and noting "courts generally conclude that sports figures, entertainers and the like are public figures -- at least for the purpose of publications relating to the cause of their fame or notoriety, basis for achievement or fitness for position"); *Denison Powerlifting Inc. v. Dorsey*, No. 8:23-cv-00744-JVS-KES, 2025 U.S. Dist. LEXIS 83607, at *21 (C.D. Cal. Mar. 3, 2025) (finding United States Powerlifting Association a public figure); Bruce W. Sanford, *Libel and Privacy* § 7.4 (2d ed.) ("The courts generally conclude that sports figures, entertainers and the like are 'public figures'—at least for the purpose of publications relating to the cause of their fame or notoriety, basis for achievement or fitness for position.").[3]

Courts across the country have repeatedly held that recognition within a particular community does not meet the exacting standard required to establish general-purpose public figure status. *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1176 (App. Ill) (2014) (finding plaintiff was not a general-purpose public figure despite the fact that she "had won four Emmy awards in four years, was a well-known personality in Chicago and in local journalistic circles, and had some professional community involvement"); *Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 281 (Utah 2005) (finding that health reporter plaintiff was not a general purpose public figure despite referring to herself as a "local celebrity"); *Gottwald v. Sebert*, No. 2020-01908, 148 N.Y.S.3d 37, 43 (N.Y. App. Div. Apr. 22, 2021) (finding that a music producer associated with "famous or household word musicians" was not a general-purpose public figure; "Gottwald's

[3] This treatise was cited on page eleven (11) of Defendants' Memorandum. Defendants also cite *Barry v. Time, Inc.*, 584 F. Supp. 1110 (N.D. Cal. 1984) in support of their general-purpose public figure argument. Mem. at 9. However, *Barry* does not support Defendants' position. *Barry* is a limited-purpose public figure case and, again, in the athletic context. *Id.* at 1115. ("Both parties agree that Barry *is not an all-purpose public figure*, since there is no clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society.") (citation omitted; emphasis added).

success in the music business is not enough to bring him into the realm of a general-purpose public figure, even if the music he produces is known to the general public or he is associated with famous or household word musicians"); *Carney v. St. John,* No. 25-cv-2525 (LAK), 2025 LX 468935, at *21 (S.D.N.Y. Oct. 20, 2025) (finding that achieving "notable success and recognition" as a performer in a specific field does not elevate the performer to a general-purpose public figure); *Coleman v. Grand*, 523 F. Supp. 3d 244, 255 (E.D.N.Y. 2021) (finding that a musician with a claimed international reputation that was being hailed by the media as that of a "rising giant" does not elevate one to the level of name recognition necessary to be a general-purpose public figure); *Tharp v. Media Gen., Inc.*, 987 F. Supp. 2d 673, 680 (D.S.C. 2013) (finding that "professional activities" and "involvement in [the] local community," including writing books and running a blog, "are insufficient to render the Plaintiff a general-purpose public figure for all purposes and in all contexts"); *Abuzaid v. Almayouf*, 2023 NYLJ LEXIS 239, at *15 (N.Y. Sup. Ct. Feb. 3, 2023) (finding that "[a] plaintiff's success in a specified industry, even if it makes her well known within that industry, 'is not enough to bring [her] into the realm of a general-purpose public figure'").

There is no basis for this Court to deviate from established law and its prior rulings. Moreover, if it did, summary judgment would still be improper because a genuine issue of material fact exists regarding the scope of publication.

Defendants argue that "[t]o be a general-purpose public figure does not require nationwide fame among all audiences" and that Pastor Johnny is well-known in the SBC community; therefore, he is a general-purpose public figure. Mem. at 9. In support, Defendants cite *Waldbaum v. Fairchild Publ'ns*. *Id.*[4] However, *Waldbaum* further states: "Rather, the question is whether the

[4] Even cases applying and "guided by *Waldbaum*" have held that prominence within a particular community is insufficient to establish general-purpose public figure. *See, e.g.*, *Tavoulareas v. Piro,* 817 F.2d 762, 772 (D.C. Dist. Ct. 1987) ("William Tavoulareas is a highly prominent individual,

individual had achieved the necessary degree of notoriety where he was defamed i.e., ***where the defamation was published***." *Waldbaum*, 627 F.2d at 1295 n.22 (emphasis added); *see also Chapman*, 528 F. Supp. 2d at 1091 ("To fall under the actual malice standard, the allegedly defamatory statements must occur within the limits of the particular community in which Plaintiff is claimed to be a public figure.").

Here, there is a genuine issue of material fact as to the scope of publication. Record evidence establishes that the Tweet was published nationwide and available to anyone in the country with internet access, not just the SBC community:

> Q. Now, you tweeted that to -- this tweet, Exhibit 83, that you just read into the record and provided to this jury and this Court, this was available to anyone who -- ***this was available to anyone and everyone who cared to look, right***?
>
> A. Yes.

Ex. A (Barber Dep.) 89:4-9 (emphasis added). Barber's Twitter account was a "public account" and "anyone in the country" could follow him and see his Tweets—regardless of whether or not they had a Twitter account. *Id.* at 50:5-51:19. Barber also testified, specifically referring to the Tweet at issue, that he made his views on Pastor Johnny known beyond the SBC community:

> Q. Now, you made [your views on Pastor Johnny] known to members of the SBC; is that right?
>
> A. I made it publicly ***known to anyone***, yes.

*Id.* at 105:10-12 (emphasis added). Barber further testified that Twitter was not his primary means for delivering updates to the SBC community. *Id.* at 53:25-56:4. During his deposition, Barber denied using his Twitter to provide updates to the SBC community. *Id.* at 54:5-56:2.

---

especially in business circles, but his celebrity in society at large does not approach that of a well-known athlete or entertainer. . . .").

Viewing this evidence in the light most favorable to Pastor Johnny is required at the summary judgment stage. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) ("[D]irect evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true."). Pastor Johnny would not qualify as a general-purpose public figure even if the Court were to adopt Defendants' "flexible" general-purpose public figure standard because the defamatory statement was published nationwide and "available to anyone and everyone who cared to look." Ex. A (Barber Dep.) 89:4-9.

**C. Plaintiff is Not a Limited-Purpose Public Figure.**

Limited-purpose public figures are those who have "thrust[] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Ogle v. Hocker*, 279 F. App'x at 399 (quoting *Wolston v. Reader's Digest Ass'n., Inc.,* 443 U.S. 157, 164 (1979) (citation omitted). "Mere association or involvement in a controversy is not necessarily enough; instead the court analyzes the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 399 (citation omitted).

"The nature and extent of an individual's participation is determined by considering three factors: first, the extent to which participation in the controversy is voluntary; second, the extent to which there is access to channels of effective communication in order to counteract false statements; and third, the prominence of the role played in the public controversy." *Clark*, 684 F.2d at 1218. Importantly, the plaintiff's involvement in a particular controversy cannot be the result of Defendants' own conduct. The Supreme Court has warned: "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson,* 443 U.S. at 135.

### 1. The Relevant Public Controversy is the SBC's Sex Abuse Crisis.

Defendants attempt to re-characterize the relevant public controversy, disregarding their own conduct in creating the circumstances they now rely upon to label Pastor Johnny a public figure.

Defendants have previously admitted that the relevant controversy for purposes of making an appropriate legal analysis is the SBC's sexual abuse crisis. Defendants defined the public controversy stating: "Hunt's involvement in the public controversy regarding sexual abuse within the SBC, *including Bart Barber's Tweet*, was entirely voluntary." Doc. No. 325 at 11 (emphasis added). This is the relevant nature of inquiry for the Court's analysis of whether Pastor Johnny "thrust[] [himself] to the forefront of a particular public controvers[y] in order to influence the resolution of the issues involved." *Ogle*, 279 F. App'x at 399 (citation omitted).

Defendants now attempt to narrow the controversy to "Hunt's purported 'restoration' and his fitness to continue as an acclaimed Southern Baptist pastor." Mem. at 16. This reframing is impermissibly narrow and ignores the specific timeline of events in the case and the relationship between: (1) Defendants' publication of the Report and statements relating to Pastor Johnny, (2) Pastor Johnny discontinuing ministry as a result of the Report and his return to ministry, (3) Barber's "Statement" focused on the SBC's sexual abuse crisis and the allegations against Pastor Johnny detailed in the Guidepost Report, and (4) Barber's Tweet referring to the Report.

There was no independent public controversy concerning Pastor Johnny's ministry separate and apart from Defendants' publication of the Guidepost Report. Hunt Decl. ¶¶ 4-5. The purpose of the Guidepost Report was "to respond to the allegations that the SBC had not properly responded to sex crimes within Southern Baptist churches appropriately." Ex. B (EC 30(b)(6) Dep.) 178:17-22. Pastor Johnny was the first name mentioned in the Guidepost Report. Ex. I

(Report) at 4. Pastor Johnny was forced to "discontinue" his ministry after publication of the Report. Hunt Decl., Ex. A ¶ 4. The Executive Committee's corporate representative conceded that Pastor Johnny's return to ministry was only of interest because of "his involvement in the Guidepost Report":

> Q. And why was [Pastor Johnny's return to ministry video] a matter of religious interest?
>
> A. Due to his involvement in the Guidepost Report.

Ex. B (EC 30(B)(6) Dep.) 68:13-15.

Barber released a Statement on November 30, 2022, prior to the defamatory Tweet at issue. Ex. T. The Statement focused on the SBC's sexual abuse crisis and the allegations against Pastor Johnny detailed in the Guidepost Report. *Id.* Barber referenced Pastor Johnny's return to ministry, but expressly noted the SBC's sex abuse crisis and the Guidepost Report's findings relating to Pastor Johnny before concluding that, based on the conduct in the Guidepost Report, Pastor Johnny should be "permanently defrock[ed]." *Id.* at 2.

Barber's Tweet, only a few days after his Statement, likewise tied Pastor Johnny directly to the Guidepost Report and the SBC's sexual abuse crisis. Barber's Tweet explicitly refers to the Guidepost Report: "***Hunt was the subject of a third-party investigation***. . . ." Ex. J (emphasis added).

Only a few months before Barber's Tweet, he recognized the need to combat the sexual abuse crisis within the SBC during his 2022 campaign for his first term as SBC President. Exs. M-P; Ex. A (Barber Dep.) 48:12-14. Barber shared a "timeline of actions" he took with regard to the sexual abuse crisis in an effort to get votes. Ex. A (Barber Dep.) 62:14-25. Less than two months before his tweet, when Barber was elected SBC President and became an *Ex Officio* member of the Executive Committee, he appeared on *60 Minutes* representing the SBC and EC. During the

broadcast, he told the national audience that addressing the sexual abuse crisis was his "number one priority." *Id*. at 70:2-7; Ex. L. Barber used Pastor Johnny and the Report in an attempt to prove to the SBC community he was going to address sex abuse.

These facts are central to an appropriate public figure analysis. Defendants' attempt to define the public controversy as Pastor Johnny's restoration improperly isolates a consequence of their own publication of the Report and treats Pastor Johnny's restoration as the controversy itself. The relevant public controversy for the Court's analysis remains the SBC's sex abuse crisis.

At a minimum, even if the Court were to determine Pastor Johnny's return to ministry is the relevant public controversy, the evidence establishes that it arose because of Defendants' publication of the Report. To the extent Plaintiff's ministry became a matter of public controversy, it was a consequence of Defendants' own publication of the Report and statements on Plaintiff. Hunt Decl. ¶¶ 4-5; Ex. B (EC 30(b)(6) Dep.) 68:8-15.

**2. Pastor Johnny Has Not Thrust Himself to the Forefront of Any Public Controversy in Order to Influence its Resolution.**

The sole basis for Defendants' limited-purpose public figure argument is that Pastor Johnny appeared in a short video in direct response to Defendants' publication of the Guidepost Report and statements made in the Report. Mem. at 17-18. This argument is contrary to well-established law providing that a defendant, through its own conduct, may not "*create* a public figure and then seek shelter from liability on the basis of that person's consequent public figure status." *Sack on Defamation* § 5:3.3. (5th ed. 2017) (emphasis in original); *Hutchinson,* 443 U.S. at 135 ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."); *Ogle*, 279 F. App'x at 399 (cautioning that Defendants cannot inject a plaintiff into a public debate by publishing defamatory statements against him and then pointing to the "public stir" that their comments created as evidence of his

status as a "public figure"). There is no evidence that Pastor Johnny thrust himself into the sexual abuse controversy surrounding the SBC (or any dispute regarding his ministry) separate and apart from Defendants' publication of the Report. Plaintiff was pulled unwillingly into the controversy by Defendants.

Pastor Johnny was not part of any public debate on sex abuse within the SBC prior to Defendants' statements in the Report. Hunt Decl., Ex. A ¶ 2 ("I was not part of any public debate on sexual abuse within the SBC before Defendants' publication of the Guidepost Report."). Pastor Johnny confirmed at deposition that he "stayed out of the paper" and had no involvement with any sexual abuse matters throughout his career. Ex. C (Hunt Dep.) 39:9-40:2; 43:7-8; 44:19-22; 188:5-9. Defendants have offered no evidence to the contrary. Any involvement by Pastor Johnny in the SBC's sexual abuse controversy was caused by Defendants' own conduct.

Similarly, Pastor Johnny was not part of any public debate regarding his fitness for ministry prior to Defendants' statements in the Report. Hunt Decl. ¶¶ 4-5 ("There was no public controversy associated with my ministry prior to the publication of the Guidepost Report."). Defendants have admitted that his return to ministry was only in question "[d]ue to his involvement in the Guidepost Report"—their own conduct. Ex. B (EC 30(B)(6) Dep.) 68:8-15. Any involvement by Pastor Johnny in a public controversy was caused by Defendants' conduct.

The *Park* case provides useful guidance for the Court's analysis. *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 08-12247, 2010 U.S. Dist. LEXIS 17323 (E.D. Mich. Feb. 26, 2010). In *Park W. Galleries, Inc.*, the court found that the plaintiff "did not thrust itself to the forefront of the [] controversy in order to influence the resolution of the controversy" because the plaintiff's involvement in the controversy did not occur "until after the alleged defamatory statements . . . were published." *Id.* at *38. The defendant argued that the plaintiff had "easy access

to the media and [had] used the access to vigorously and publicly inject itself into the controversy and influence the outcome. . . .” *Id.* at 30. In support of its argument, the defendant cited articles the plaintiff had published to defend itself, the plaintiff's responses to press inquiries and interviews, as well as money the plaintiff spent on advertising and its website on reputation management. *Id.* at 30-33. The court rejected the defendant's argument, recognizing the Supreme Court precedent that "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Id.* at 33 (quoting *Hutchinson*, 443 U.S. at 135). Specifically, the court stated:

> [T]he fact that [the plaintiff]: (1) wrote articles defending itself (*e.g.*, the Morris Shapiro article), (2) responded to press inquiries and/or engaged in interviews (*e.g.*, the interview on the Paul W. Smith show), and (3) spent money on advertising (approximately $ 600,000 since 2007) and its own website (the Reputation Management section, the Press Release section and the YouTube videos), fail to demonstrate that [the plaintiff] voluntarily injected itself to the forefront of the public controversy.

*Id.* at *33-34. The court concluded that the plaintiff's "activities constitute reactions to the alleged defamatory statements and reflect that [the plaintiff] 'was dragged unwillingly into the controversy.'" *Id.* at 34 (quoting *Wolston*, 443 U.S. at 167).

Here, Defendants point to Pastor Johnny appearing in a short video pertaining to his return to ministry to argue he injected himself into a public controversy. Mem. at 18. Pastor Johnny's actions constitute a reaction to Defendants' statements in the Report and confirm that Pastor Johnny was dragged unwillingly into the controversy. Hunt Decl., Ex. A ¶¶ 2-5.

Pastor Johnny's response following the publication of the Report was limited, especially compared to the actions taken by the plaintiff in *Park W. Galleries, Inc.*, which the court deemed acceptable. He has done no more than necessary to respond to Defendants' statements in the Report. Plaintiff has not voluntarily injected himself to the forefront of any public controversy by

issuing a response to Defendants' publication. *Park W. Galleries, Inc*., 2010 U.S. Dist. LEXIS 17323, at *33-34; *Hutchinson,* 443 U.S. at 135 (Defendants "cannot, by their own conduct, create their own defense by making the claimant a public figure."); *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1558 (4th Cir. 1994) ("Therefore, we hold that a person who has been publicly accused of committing an act of serious sexual misconduct that (if committed in the place of publication and proved beyond a reasonable doubt) would be punishable by imprisonment cannot be deemed a 'limited[]purpose public figure' merely because he or she makes reasonable public replies to those accusations."); *Jenoff v. Hearst Corp.*, 644 F.2d 1004, 1007 (4th Cir. 1981) (finding the plaintiff was not a public figure because "he [had] assumed no prominence in any public controversy, except as a result of the [allegedly defamatory] charges levelled against him").

Defendants cannot use their own statements in the Report, and Plaintiff's responses to those statements, to transform Plaintiff into a public figure relating to the Tweet. Courts have rejected this type of "bootstrapping" where there is a "nexus" between an earlier publication and the later defamatory statement. *Chapman v. Journal Concepts, Inc.*, No. 07-00002 JMS/LEK, 2007 U.S. Dist. LEXIS 91621, at *8 (D. Haw. Dec. 12, 2007) ("Prior publications, however, are not a likely source of 'bootstrapping' unless a nexus exists between the prior publications and the defamatory statements.").

An express nexus exists between the Report and Barber's tweet. The Guidepost Report and Barber's Tweet are inextricable, each substantial factors in producing Pastor Johnny's injuries, and arise from the SBC's public response to the sexual abuse crisis. Both statements were published by the same Defendants, the SBC and EC. Plaintiff's return to ministry was a response to the Report and only necessary because of Defendants' statements. Hunt Decl., Ex. A ¶¶ 4-5.

Barber's Tweet expressly referred to the Guidepost investigation. Ex. J ("Hunt was the subject of a third-party investigation. . . ."). Barber testified that the Guidepost Report formed the basis for his Tweet. Ex. A (Barber Dep.) 93:14-18. The Executive Committee's corporate representative testified that Plaintiff's return to ministry was only of interest because of the Report. Ex. B (EC 30(b)(6) Dep.) 68:8-15.

Furthermore, every article cited by Defendants discussing Pastor Johnny's return to ministry ***refers to their own conduct in publishing the Report***, including the allegations against Pastor Johnny in the Report. Doc. No. 377-4 at 2 ("[A] third-party investigation found [Plaintiff] was 'credibly accused' of sexual assault."); Doc. No. 377-2 at 2 (stating that Plaintiff "was called out in the independent investigation of the SBC and sexual abuse cases produced by Guidepost Solutions"); Doc. No. 377-3 at 2 (stating that Plaintiff "was named earlier this year in the Guidepost Solutions report").

Therefore, it is no defense that Pastor Johnny's return to ministry video predated Barber's defamatory Tweet. Pastor Johnny's return to ministry was a foreseeable and direct response to Defendants' own conduct. Pastor Johnny did not "thrust" himself into the "vortex" of the SBC's sexual abuse controversy or any controversy surrounding his ministry *prior to and separate from* Defendants' publication of the Report; Plaintiff "was dragged unwillingly into the controversy." *Wolston*, 443 U.S. at 167.

**3. There is No Evidence Pastor Johnny Enjoyed Significantly Greater Access to Channels of Communication to Counteract False Statements.**

There is no evidence that Pastor Johnny enjoyed "significantly greater access to the channels of effective communication and hence [had] a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz*, 418 U.S. at 344.

Defendants offer a one-sentence argument—without a single supporting citation—to argue that Pastor Johnny has greater access to channels of communications to counteract false statements. Defendants assert that: "[Pastor Johnny] utilized the internet, as well as having extensive access to social media accounts and his own website." Mem. at 18.

Pastor Johnny's appearance in a short video[5] constitutes a reaction to the alleged defamatory statements; it does not transform him into a public figure. *See Park W. Galleries, Inc.*, 2010 U.S. Dist. LEXIS 17323, at *33-34. Even assuming there was evidence of social media and personal website use, this is the same access any private individual facing the same accusations in a nationwide publication would have access to.

In *Khawar*, the court determined the plaintiff's interview that occurred "after and in response" to publication did not demonstrate "significant media access." *Khawar v. Globe International*, 965 P.2d 696, 702-03 (Cal. 1998). The court reasoned that:

> If such access were sufficient to support a public figure characterization, any member of the media--any newspaper, magazine, television or radio network or local station--could confer public figure status simply by publishing sensational defamatory accusations against any private individual. This the United States Supreme Court has consistently declined to permit.

*Id.* at 703.

The same reasoning applies here. Defendants simply direct the Court to Pastor Johnny's response to their own statements as "evidence" of Pastor Johnny's access to channels of communication. The same channels of communication would be available to any private individual who was accused of sexual assault in "highly-anticipated" report that was published nationwide. Plaintiff's access to the media was limited to responding to the statements in the Report. Hunt

---

[5] Defendants' statement of facts only provides evidence of the existence of a video. Doc. No. 373 at SOMF ¶ 22. Defendants cited no evidence of "extensive access to social media accounts" or evidence he used his website to enter into any public controversy. Mem. at 18.

Decl., Ex. A ¶¶ 3-5; *Hutchinson,* 443 U.S. at 136 ("[W]e cannot agree that [the plaintiff] had such access to the media that he should be classified as a public figure. [The plaintiff's] access was limited to responding to the announcement of the Golden Fleece Award.").

Plaintiff did not have significantly greater access to the channels of effective communication than private individuals normally enjoy. Anyone subject to Defendants' statements would have access to the same channels of communication.

**4. Pastor Johnny Did Not Play a Prominent Role in Any Controversy.**

Defendants make no real attempt to argue that Pastor Johnny played a prominent role in any public controversy. Defendants simply state, again, with no supporting citations, that "Hunt himself sought to incite a public discussion of his 'restoration.'" Mem. at 18. The Court should decline to craft an argument for them and instead find the argument waived. *Masters Ent. Grp., Inc. v. Aurich*, No. 3:18-cv-01314, 2022 U.S. Dist. LEXIS 105916, at *14-15 (M.D. Tenn. June 14, 2022).

Defendants offered no evidence to support that Pastor Johnny in any way "sought to incite a public discussion." Mem. at 18. Instead, the evidence shows that Pastor Johnny appeared in a video that "served as an explanation for [his] return to the ministry and was made in response to the Report and the allegations it contained against [him]." Hunt. Decl., Ex. A ¶ 4. Pastor Johnny's "responses to the Report were not made to influence the resolution of the SBC's sexual abuse controversy." Hunt. Decl., Ex. A ¶ 5.

To the extent Pastor Johnny played any "prominent role" in the controversy was the result of Defendants' own statements and conduct. *See* Section V.C.1, 2, *supra.* Defendants injected Pastor Johnny into the public controversy by including an almost 12-year-old consensual encounter in the Report. Defendants decided to include Pastor Johnny in the Report and feature

him as the main story showing an Executive Committee member committing abuse. Ex. U. Defendants decided to name Pastor Johnny as the first individual in the Report. Ex. I (Report) at 4. Defendants wanted to create an impact with the story in the Report on Pastor Johnny. Ex. H. Defendants did so knowing that Plaintiff was outside the scope of the Report and that the Report would attract national media attention. Doc. No. 155 (EC's Answer to Complaint) ¶ 47 ("The EC admits the Guidepost Report did not find that an EC member had been accused of committing sexual abuse during his or her time on the EC."); Doc. No. 161 (SBC's Answer to Complaint) ¶ 47 ("The SBC admits the Guidepost Report did not find that an EC member had been accused of committing sexual abuse during his or her time on the EC."); Ex. B (EC 30(b)(6) Dep.) 72:1-73:1 (testifying that when the Report was published, it was essentially "available worldwide"). Plaintiff did not make any of these decisions and did not thrust himself into any public controversy. *Alkan Elecs. Int'l, Inc. v. Flint J.*, 1989 U.S. Dist. LEXIS 18001, at *11 (E.D. Mich. June 2, 1989) ("The Court will not confer public figure status on plaintiffs based on their prominence in a controversy which developed as a result of the allegations in question.").

Pastor Johnny played no prominent role in any controversy; any role he played was the result of Defendants' own conduct. Pastor Johnny is not a limited purpose public figure.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Partial Summary Judgment.

Dated: February 25, 2026

Respectfully submitted,

s/ *Robert D. MacGill*

**Robert D. MacGill, Esq. (*pro hac vice*)**
**Patrick J. Sanders, Esq. (*pro hac vice*)**
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
patrick.sanders@macgilllaw.com

**Todd G. Cole, Esq., BPR # 031078**
**Andrew Goldstein, Esq., BPR # 037042**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 490-6020
Fax: (615) 942-5914
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment Concerning Plaintiff's Public Figure Status at the Time of the Tweet filed with the Clerk of the Court on February 25, 2026, using the CM/ECF system, which will automatically serve all counsel of record listed below:

Todd G. Cole, Esq.
Andrew Goldstein, Esq.
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com

Robert D. MacGill, Esq.
Patrick J. Sanders, Esq.
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
robert.macgill@macgilllaw.com
patrick.sanders@macgilllaw.com

*Counsel for Plaintiff*

John R. Jacobson, Esq.
Katharine R. Klein, Esq.
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 *Facsimile*
jjacobson@rjfirm.com
kklein@rjfirm.com

Steven G. Mintz, Esq.
Terence W. McCormick, Esq.
Scott Klein, Esq.
Adam Brody, Esq.
Alex Otchy, Esq.
MINTZ & GOLD LLP

Scarlett Singleton Nokes, Esq.
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Avenue, Nw Suite 100
Washington, DC 20006
Telephone: (202) 747-2309
snokes@sheppardmullin.com

Gene R. Besen, Esq.
Sheppard Mullin Richter & Hampton LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone (469) 391-7400
Facsimile (469) 391-7401
gbesen@sheppardmullin.com

Thomas J. Hurney, Jr., Esq.
Gretchen M. Callas, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: 304-340-1000
thurney@jacksonkelly.com
gcallas@jacksonkelly.com

*Counsel for the Executive Committee of the Southern Baptist Convention*

L. Gino Marchetti, Jr., Esq.
TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
2908 Poston Avenue
Nashville, TN 37203
Telephone: (615) 320-3225
gmarchetti@tpmblaw.com

Matt C. Pietsch, Esq.
GORDON REES SCULLY MANSUKHANI, LLP

600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
mintz@mintzandgold.com
mccormick@mintzandgold.com
klein@mintzandgold.com
brody@mintzandgold.com
otchy@mintzandgold.com

*Counsel for Defendant Guidepost Solutions LLC*

4031 Aspen Grove Drive, Suite 290
Franklin, TN 37067
Telephone: (615) 722-9000
mpietsch@grsm.com

*Counsel for the Southern Baptist Convention*

Melissa J. Hogan, Esq.
QAVAH LAW
8757 Horton Hwy
College Grove, TN 37046
Telephone: (615) 293-6623
melissajhogan@qavahlaw.com

*Counsel for Jane Doe*

s/ *Robert D. MacGill*
Robert D. MacGill