UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

- - - - - - - - - - - - - - - - - - - :
JOHNNY M. HUNT, :
:
Plaintiff, : CASE NO.
:
vs. : 3:23-cv-0000243
:
SOUTHERN BAPTIST CONVENTION, :
GUIDEPOST SOLUTIONS LLC and :
EXECUTIVE COMMITTEE OF THE :
SOUTHERN BAPTIST CONVENTION :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - :

Sanders Decl.
Ex. D

VIDEO DEPOSITION OF SAMANTHA KILPATRICK

DATE: February 2, 2024
TIME: 9:12 a.m.
LOCATION: Veritext Legal Solutions
1250 I Street, NW
Suite 901
Washington, DC 20005

REPORTED BY: Constance H. Rhodes
Reporter, Notary

Veritext Legal Solutions
1250 Eye Street, Northwest
Washington, DC 20005

answer.

THE WITNESS: I don't believe that witness two used the word sexual assault or sexual abuse, but said that he told him about Dr. Hunt abusing survivor and did not give specific details but shared it was sexual in nature.

BY MR. MACGILL:

Q And so to your knowledge, [redacted] never told witness two that there had been a sexual abuse or sexual assault in his conference with him -- or communication with him in 2012.

MR. KLEIN: Objection. Asked and answered. You can answer again.

THE WITNESS: He talked to witness two -- or witness two shared with us that Mr. [redacted] shared with him about Dr. Hunt abusing survivor and also shared that it was sexual in nature.

BY MR. MACGILL:

Q Okay. So do you conclude that that was a report of sexual abuse by [redacted]?

A What witness two reported to us was a report that [redacted] had reported to him



sexual abuse of Mrs. [redacted].

Q Witness three. Did [redacted] report to witness three that there had been sexual abuse or sexual assault of his wife?

A Witness three did not use the words sexual abuse or sexual assault. He told us that [redacted] told him about Dr. Hunt making advances on survivor and groping her and then subsequently covering it up.

Q Were you told after the publication of this report by [redacted] that Guidepost report causes the readers to think that he had known it was a sexual assault at the time?

A I don't recall that statement.

(KILPATRICK Exhibit Number 30 was marked for identification.)

BY MR. MACGILL:

Q I'm going to hand you Exhibit 30. I'm going to ask you about the email. This is an email chain. Did you receive -- looking at the bottom email, on May 29, 2022, did [redacted] forward to you an article?



A Yes.

Q And then on May 30, did [redacted] -- did he send you an email on that day at 9:06 a.m. forwarding an article and his commentary on that article?

Do you see what I'm referring to.

A Yes.

Q I'm just referring to -- did you get that email on May 30?

A Yes, I did.

Q All right. I'm going to ask you, Exhibit 31.

(KILPATRICK Exhibit Number 31 was marked for identification.)

BY MR. MACGILL:

Q Exhibit 31, is this the article that he forwarded to you?

A Let me go back. I'm not sure -- I received this article at some point. I'm not sure if it was originally sent to me or if it was a part of a forward email of your email you are referencing on May 30th. I'm not sure.



Q You're not sure. Okay. Focusing on May 30 --

MR. KLEIN: Before you ask, the document you just gave us, is this Exhibit 32?

MR. MACGILL: 31.

MR. KLEIN: 31. Hold on. This does not have a Bates number. Was this produced by someone or did you find this --

MR. MACGILL: Yeah. It was produced by you as a part of this document -- not produced by you, but it's referenced here.

MR. KLEIN: Okay.

BY MR. MACGILL:

Q All right. Now, sir, do you -- ma'am, do you see -- is this -- you can't tell us whether 31, exhibit 31, is the email or is the article attached to this email?

A No.

MR. KLEIN: You can answer if you know.

THE WITNESS: I don't know. I don't know if that is. It may be. I don't know.

Page 262

BY MR. MACGILL:
Q Now, is this -- do you recognize this article as to who the author -- where was this article published. Do you know?
A I don't. I mean I can read here that it says Protestia.com.
Q Do you know an entity called Protestia?
A It does not ring a bell.
Q Now, can you look at this article at 31, exhibit 31, is this the kind of article that you anticipated as one of the investigators here that you would have within a few days a headline entitled op-ed "Johnny Hunt assaulted a young pastor's wife. Her husband should be disqualified from the ministry." Do you anticipate that kind of press associated with the work that you had done, ma'am?
MR. KLEIN: Objection. Calls for speculation.
THE WITNESS: I don't know. I don't -- I don't know what I anticipated.

Page 263

BY MR. MACGILL:
Q It's just logical, isn't it, that somebody like you doing the kind of work that you did, making the statements that you made, that the logical extension of what you did was articles like this, Exhibit 31, right?
MR. KLEIN: Objection. Argumentative. You can answer.
THE WITNESS: I -- I don't know what I expected the articles would be. There would be articles on all sides of the issue.
BY MR. MACGILL:
Q How in the world, ma'am, could you not have expected a media firestorm in relation to the Guidepost report that you were a lead investigator on. Are you telling us you had no expectation of a press firestorm?
MR. KLEIN: Objection. Compound. You can answer.
THE WITNESS: I had an expectation that the report would generate media. I did not have an expectation for specifically this article or what

Page 264

the articles would actually be like. I expected them to be all over the spectrum.
BY MR. MACGILL:
Q All over the media spectrum.
A Yes.
Q You expected that the results of your report would be on national news of different types, right?
A I mean I expected that -- yeah, I expected it would be out there.
Q Okay. It would be out there. You expected it would be, for example, on NBC Nightly News, didn't you?
A I don't know if I expected it to be on a news channel, but I expected it to be out there in the public space.
Q National news. You expected your report to be national news, right?
MR. KLEIN: Objection. Asked and answered. You can answer.
THE WITNESS: I expected it to be out in the national news.

Page 265

BY MR. MACGILL:
Q And you know, we've seen some of your texts. We'll get more of them, I'm sure, if we -- if the court so orders. But some of your texts you were starting to congratulate yourself and your co-investigator, lead investigator, even before the report, right?
MR. KLEIN: Objection as to form. You can answer.
THE WITNESS: I -- I don't recall. I'm happy to take a look at the texts and explain --
BY MR. MACGILL:
Q Now, wait a minute. Before the break we showed you one text. You don't think that was self-congratulatory, that text that I showed you before the break, where you and Mr. Holske are exchanging the information that you did?
A I would not describe it as self-congratulatory.
Q You wouldn't?
A No.
Q Okay. Well, but look at yourself here

Page 266

and your role here. You and the people you work in concert with, you expected that you would have "impact" from the moment this report was published, didn't you?

MR. KLEIN: Objection. Mischaracterizes her testimony and asked and answered. You can answer.

THE WITNESS: I think I said earlier in my testimony it depends on what you define impact to mean.

BY MR. MACGILL:

Q National news, ma'am. NBC national news, ABC national news, Fox national news. That's what I'm indicating when I talk about the kind of impact that you anticipated from what you called an "investigation"?

MR. KLEIN: Objection. Argumentative. You can answer.

THE WITNESS: We expected for this to be a very important report that would be out in the national media and that people were going to -- like people were interested in it. People were following

Page 267

it the whole time. They were -- you know, they were -- we had an email for people to contact us if they wanted to participate in the investigation. There was news media all around it from the beginning.

BY MR. MACGILL:

Q What evidence did you have that people would have any interest in a 12-year-old event between [redacted] and Pastor Johnny Hunt? What indication did you have that that would be of interest to anyone?

MR. KLEIN: Objection. Mischaracterizes her statement. You can answer.

THE WITNESS: I'm saying the engagement as a whole was of interest to people who were in the Southern Baptist Convention and people who followed the denomination. There has been, for several years, a reform on sexual abuse, and there were a lot of people that were interested in what the investigation would find.

BY MR. MACGILL:

Q Right. And you found nothing, ma'am. You and your co-investigator, you found nothing

Page 268

new of import to anybody or any person in the United States except a 12-year-old allegation by [redacted] and her husband, right?

MR. KLEIN: Objection. Argumentive. You can answer.

THE WITNESS: I would say we found a number of things. The only thing that fell under that first prong of abuse by an Executive Committee member was the situation involving Mr. Hunt.

MR. MACGILL: There was no Executive Committee member at the time of this incident. He wasn't an Executive Committee member, ma'am. You've already admitted that.

MR. KLEIN: Objection. Asked and answered. You can answer again.

BY MR. MACGILL:

Q You've admitted already he was not an Executive Committee member at the time of this incident, right?

MR. KLEIN: Objection. Asked and answered.

Page 269

BY MR. MACGILL:

Q Right?

MR. KLEIN: You can answer.

THE WITNESS: At the time of the assault Mr. Hunt was not an Executive Committee member. But what I also told you was prior to that. While he was an Executive Committee member, there were instances in time where he showed special treatment and attention to [redacted] -- kisses on the hand, statements about, hey, hang back with me on the golf cart, and different things. And I would say in my experience that those indicate grooming.

BY MR. MACGILL:

Q Grooming. Now, that's a term. So is grooming a term of art, ma'am, in your business?

A Grooming is -- yeah, I would say it's a term of art that's part of different types of abuse.

Q Ma'am, on Exhibit 30, Mr. [redacted] on May 30, this is eight day after the publication of the report says: "[redacted]