# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY HUNT, | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:23-cv-00243 |
| | ) | |
| SOUTHERN BAPTIST CONVENTION; | ) | JUDGE CAMPBELL |
| GUIDEPOST SOLUTIONS LLC; and | ) | MAGISTRATE JUDGE FRENSLEY |
| EXECUTIVE COMMITTEE OF THE | ) | |
| SOUTHERN BAPTIST CONVENTION, | ) | |
| | ) | |
|   Defendants. | ) | |

## <u>MEMORANDUM</u>

This memorandum addresses the narrow issue of Johnny Hunt's status as a public or private figure in November 2022 when he was the subject of a Tweet by then SBC President Bart Barber.[1] Hunt asserts two claims against the Southern Baptist Convention ("SBC") and the Executive Committee of the SBC ("Executive Committee") (collectively, the "SBC Defendants") based on Barber's Tweet: (1) false light invasion of privacy; and (2) defamation. The Court granted summary judgment in favor of the SBC Defendants on the claim for false light invasion of privacy. (*See* Memorandum, Doc. No. 317 at 67-68). Only the defamation claim arising out of the Tweet remains. (*Id.*).

As discussed in the prior memorandum, resolution of the defamation claim turns on Hunt's status as a public or private figure.[2] (*Id.* at 63, 67-68). If Hunt is a public figure, the actual malice

---

[1]     Hunt's claims arising out of Guidepost Solutions LLC's Report of Independent Investigation (the "Report") have been resolved. (*See* Doc. Nos. 316, 317). The factual and procedural history is detailed in the Court's April 1, 2025 Memorandum. (Doc. No. 317).

[2]     In the April 1, 2025 Memorandum addressing this claim, the Court assumed that Hunt was a private figure, but left the determination subject to reconsideration upon further development of evidence and argument concerning Hunt's status at the time of the Tweet. (*See* Doc. No. 317 at 67-68).

standard applies; and the Court has previously found that Hunt does not have evidence that the Tweet was made with actual malice. On the other hand, if Hunt is a private figure, the negligence standard applies. (*Id*. (citing *Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024)). The Court previously found that Hunt has offered evidence from which a jury could conclude that the Tweet was made negligently. (*Id*.).

The Court allowed the SBC Defendants to file a motion for partial summary judgment on the narrow issue of Plaintiff's status as a public or private figure. (Doc. No. 376). That motion is now before the Court and is fully briefed. (*See* Doc. Nos. 371, 373, 381, 383, 391).

For the reasons stated herein, the Court finds Hunt is a public figure. Accordingly, the SBC Defendants' motion for partial summary judgment is **GRANTED**.

## I.       STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence,

judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## II.    ANALYSIS

The Tennessee Supreme Court has recognized "three kinds of public figures: general purpose, limited purpose, and involuntary." *See Charles*, 693 S.W.3d at 274. The SBC Defendants contend Hunt is either a general purpose or a limited purpose public figure. "A general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'" *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014) (citing *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 351 (1974)). A limited purpose public figure, on the other hand, is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id*. Whether Hunt is a public or private figure is a question of law. *See Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015).

The SBC Defendants argue Hunt was a general purpose figure within the Southern Baptist community for all purposes, particularly with respect to his activities as a minister and for purposes of commentary in that regard. Defendants further argue Hunt is at least a limited purpose public figure in the public controversy about "pastoral restoration," a public controversy in which he voluntarily injected himself when he announced his returned to ministry on public platforms with the assistance of public relations consultants. Hunt argues that he is not a public figure of any kind

3

Case 3:23-cv-00243    Document 396    Filed 08/12/26    Page 3 of 9 PageID #: 14744

and that public attention connected to the publication of the Report cannot serve as a basis for finding him to be a public figure. (Doc. No. 382 at 18 (arguing the SBC Defendants cannot make Hunt a public figure through their own conduct) (citing *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."))). In other words, Hunt can only be a public figure for purposes of the Tweet if he was a public figure *before* the statements about him were published in the Report. The Court finds that he was.[3]

As stated above, "[a] general-purpose public figure is one who attains 'such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'" *Thomas M. Cooley L. Sch.,* 759 F.3d at 527. The parties dispute the degree of notoriety required. Hunt argues that to be a general-purpose public figure, a person must be "'a well-known celebrity' and 'his name a 'household word' whose ideas and actions the public in fact follows with great interest.'" (Doc. No. 382 at 7 (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980)).

The SBC Defendants argue a person need not be a "celebrity" as the term is commonly used. They contend it is enough to be a household name within a particular field or community and that a person can be a public figure with respect to a particular area without regard to the "controversy" typically required for a limited purpose public figure. (Doc. No. 372 at 10 (citing

---

[3]     Hunt argues the Court should not consider whether he is a general-purpose public figure (*i.e.*, that he was a public figure before the Report was published) because it is a procedurally improper motion for reconsideration and exceeds the scope of the Court's order granting permission to file a motion for partial summary judgment concerning Hunt's status "at the time of the Tweet." (Doc. No. 382 at 6). This argument is plainly without merit. The Court may reconsider any issue prior to the entry of final judgment. Reconsideration is appropriate here because the issue is a question of law for the Court and resolution of the issue prior to trial will conserve judicial and party resources.

*Falls v. Sporting News Pub. Co.*, 714 F. Supp. 843, 846-47 (E.D. Mich. 1989), *affirmed,* 899 F.2d 1221 (Table), 1990 WL 41001 at *4 (6th Cir. Apr. 10, 1990))).

*Falls* is instructive. In that case, the district court found that a sports-writer was a public figure with respect to his sports writing activities because he had thrust himself into the public eye by virtue of writing for national publications, appearing on radio shows, writing books, and making speaking and personal appearances. *Falls*, 714 F. Supp. 843, 846-47.  The Sixth Circuit affirmed finding the "real question is whether Mr. Falls' career as a sportswriter made him a public figure for purposes of commentary on him as a sportswriter." *Falls*, 899 F.2d 1221 (Table), 1990 WL 41001 at *4.

The Sixth Circuit also applied the community standard in *Ogle v. Hocker*, 279 F. App'x 391 (6th Cir. 2008). There, the plaintiff was not a general public figure "absent clear evidence of general fame or notoriety *in the community*." *Id*. at 398-99 (emphasis added). In *Ogle*, the fact that the Plaintiff himself declared in his pleadings that he had attained "international fame and reputation throughout the nation, as well as other countries, with respect to his ministry" was insufficient to establish that he was a general-purpose public figure. *Ogle*, 279 F. App'x at 399. The court noted that Ogle could "hardly be said to possess pervasive fame when [a bishop within his church] had not heard of him." *Id*. at 399, n.8. The *Ogle* court also observed that, even if proclaiming oneself a public figure were sufficient, Ogle admitted fame only "with respect to his ministry," which the court said would not be enough to concede that he was a public figure for all purposes.

Hunt argues that, like the plaintiff of self-proclaimed international fame in *Ogle*, he does not meet the "'strict' test for becoming the 'rare' general-purpose public figure." Like Ogle, Hunt professed renown, describing himself as the "pinnacle," "face of the Convention," someone that

5

"everyone in the convention knew," a "sought-after speaker and author," and a "noted speaker at state and national SBC conferences and conventions."[4] But unlike Ogle, Hunt was, in fact, well-known within the community of Southern Baptists and beyond. He was pastor of one of the largest churches in the United States for over 30 years (over 15,000 members with 6,000 attendees on Sundays).[5] From 2008-2010, Hunt was President of the SBC, which, with over 12 million members, is one of the largest evangelical bodies in the country.[6] Then, in 2019, because they "wanted [his] name," the SBC-affiliated North American Mission Board ("NAMB") hired him as Executive Vice President.[7]

More than that, however, his sermons were streamed on the Internet and available for purchase;[8] he published and sold numerous books;[9] and he published other materials online on what "became an extremely popular website for pastors around the world."[10]  For over a decade Hunt had one of the "most popular devotions in America" that was published by Harper Collins,

---

[4]     Hunt Dep. at 37, 150; Compl., Doc. No. 1 at ¶ 29.

[5]     Hunt Dep. at 27.

[6]     Hunt Dep. at 38.

[7]     In his deposition, Hunt explained why he was offered the position at NAMB: "And I will just be real clear. They wanted my name. They wanted Johnny Hunt there because they were struggling a lot. They needed a name of integrity and a name of leadership to help them. And so because I couldn't go full time until 2020, but they just said if we could just have your name and you just do a number of conferences, we want you now. And that was our understanding." Hunt Dep. at 98.

Hunt tendered his resignation from NAMB on May 13, 2022, after he was interviewed by Guidepost investigator, but before the Report was publicly released on May 22, 2022. Hunt Dep. at 101, 152.

[8]     Hunt Dep. at 28.

[9]     Hunt Dep. at 96, 264; *see also*, Doc. Nos. 377-5 and 392-2 (showing items for sale on Hunt's website, johnnyhunt.com, in 2022 and currently).

[10]    Hunt Dep. at 28.

6

the second-largest consumer book publisher in the world.[11] In 2022 and currently, Hunt's website lists approximately 1,500 items for sale, including books and sermons.[12] Hunt claims nearly $4 million in damages for lost book sales alone.[13] Hunt hosted various conferences each year, including a men's conference every year for 30 years.[14] He spoke to groups across the country.[15] In 2010, Hunt incorporated "Johnny Hunt Ministries," through which his publications and speaking engagements are channeled.[16]

Moreover, on November 23, 2022, after working with a publicist and his "restoration team," Hunt released a scripted fourteen-minute video announcing his "restoration" and return to ministry.[17] Hunt's announcement of his restoration drew attention from religious and mainstream

---

[11] Hunt Dep. at 264; www.harpercollins.com/pages/aboutus.

[12] Doc. No. 389, 392-2 (screenshots of Hunt's website, www.johnnyhunt.com, showing items listed for sale now and in 2022). The Court finds content of the website is appropriate for judicial notice. *See* Fed. R. Evid. 201(a)-(b).

[13] *See* Doc. No. 383 at ¶ 8; Doc. No. 248-7 at 2 (Damages Statement).

[14] Hunt Dep. at 28, 45.

[15] Hunt has spoken at most, if not all, of the 42 state and regional Baptist conventions that cooperate with the SBC and has regularly spoken at other conferences and churches. Hunt Dep. at 42; Doc. No. 383 at ¶ 13 at 9-10.

[16] Hunt Dep. at 84, 86, 265, 267; Johnny Hunt Ministries 30(b)(6) Dep., Doc. No. 221-11 at 14. Johnny Hunt Ministries also pays Hunt's legal fees. Hunt Dep. at 206.

[17] *See* SBC Def. Exs. A-C, Doc. No. 375.

The Court takes judicial notice of the existence and contents of Plaintiff's "Restoration" video posted on the Vimeo website and that the video is publicly available. *See* Fed. R. Evid. 201(a)-(b) (The Court may take judicial notice of an adjudicative fact that "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The video is available at: https://vimeo.com/773976255/97cd42e4f6?cjdata= MXxOfDB8WXww&fbclid=IwAR1J_yqkOL07iGfO5957Rp__BAYSsnRURAQcBr8ljiD8L26XZgaHfc Byf0&mibextid=Zxz2cZ&utm_ca (last accessed Aug. 4, 2026).

news outlets.[18] The video, Hunt's website, and extensive publications, and the wide-spread attention from the press at the time show that Hunt had and still has access to channels of communication and therefore, had a "more realistic opportunity to counteract false statements than private individuals normally enjoy." *See Gertz*, 418 U.S. at 344. Hunt's contention that his access to channels of communication is no more than that of any other private individual is belied by the record – including his use of a publicist to promote his "restoration," contracts with one of the largest publishing companies in the world, his internet presence, and other communications directed at the public.

Based on the foregoing, the Court concludes that Hunt was a public figure during the relevant time. And because he was a public figure, the actual malice standard applies to his defamation claims. As the Court previously explained, Hunt does not have evidence that the Tweet (or any of the publications) was made with actual malice. (*See* Doc. No. 317).

---

[18] Pursuant to Federal Rule of Evidence 201(a)-(b), the Court takes judicial notice of the following news articles: Bob Smietana, *SBC President Bart Barber Says Predecessor Johnny Hunt is Unfit to Return to Ministry*, RELIGION NEWS SERVICE (Nov. 30, 2022), https://religionnews.com/2022/11/30/sbc-president-bart-barber-says-predecessor-johnny-hunt-is-unfit-to-return-to-ministry/; Mark Wingfield, *Panel of Four Male Pastors Clears Johnny Hunt to Return to Ministry*, BAPTIST NEWS GLOBAL (Nov. 30, 2022), https://baptistnews.com/article/panel-of-four-male-pastors-clears-johnny-hunt-to-returnto-ministry/; Bob Smietana, *Pastors Say Johnny Hunt, Former SBC President Accused of Abuse, Can Return to Ministry*, WASHINGTON POST (Nov. 30, 2022), https://www.washingtonpost.com/religion/2022/11/30/johnny-hunt-southern-baptistconvention/; Mark Wingfield, *SBC President Blasts Idea of Johnny Hunt's "Restoration" to Ministry*, BAPTIST NEWS GLOBAL (Dec. 1, 2022), https://baptistnews.com/article/sbc-president-blasts-idea-of-johnny-hunts-restoration-to-ministry/; Chris Davis, *A Southern Baptist Pastor's Plea: Please Listen, Why Johnny Hunt's "restoration" Convinces Me We Don't Have Ears to Hear*, CHRISTIANITY TODAY (Dec. 2, 2022), https://www.christianitytoday.com/2022/12/southern-baptist-ministry-requirements-abuse-johnny-hunt/; Ruth Graham, *Popular Pastor Returns After Absence Over an 'Inappropriate' Online Relationship*, THE NEW YORK TIMES (Dec. 4, 2022), https://www.nytimes.com/2022/12/04/us/matt-chandler-village-church-dallas.html?searchResultPosition=1 (observing that "The question of how quickly and under what circumstances a pastor should be restored to ministry has been the subject of wider debate among many evangelicals over the last few weeks").

8

### III. CONCLUSION

For the reasons stated herein, the SBC Defendants' motion for partial summary judgment (Doc. No. 371) is **GRANTED** and judgment will be entered in favor of Defendants on Plaintiff's defamation claim arising out of the Tweet.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE